

FILED

11 OCT 28 PM 3: 23

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

1  GABRIEL A. JACKSON, State Bar No. 98119
   gaby@jjr-law.com
2  DANIEL D. O'SHEA, State Bar No. 238534
   doshea@jjr-law.com
3  JACKSON JENKINS RENSTROM LLP
   55 Francisco Street, 6th Floor
4  San Francisco, CA  94133
   Tel:    415.982.3600
5  Fax:    415.982.3700

6  Attorneys for Defendant
   BATH IRON WORKS CORPORATION
7

8              UNITED STATES DISTRICT COURT

9             CENTRAL DISTRICT OF CALIFORNIA

10                LOS ANGELES DIVISION

11  JAMES MCINDOE and                USDC Case No. CV11-8970-GHK(JCGx)
    CAROL MCINDOE,
12                                   (Los Angeles Superior Court Case No.
                Plaintiffs,          469749)
13
         v.                          **DEFENDANT BATH IRON WORKS**
14                                   **CORPORATION'S NOTICE OF**
                                     **REMOVAL**
15  ASBESTOS CORPORATION LIMITED;
    CROWN CORK & SEAL COMPANY, INC.;
16  JOHN CRANE, INC.;

17

18

19

20

21

22

23

24

25

26

27

28
                                     1
                        DEFENDANT BATH IRON WORKS' NOTICE OF REMOVAL

1  GABRIEL A. JACKSON, State Bar No. 98119
   gaby@jjr-law.com
2  DANIEL D. O'SHEA, State Bar No. 238534
   doshea@jjr-law.com
3  JACKSON JENKINS RENSTROM LLP
   55 Francisco Street, 6th Floor
4  San Francisco, CA  94133
   Tel:    415.982.3600
5  Fax:    415.982.3700

6  Attorneys for Defendant
   BATH IRON WORKS CORPORATION
7

8                   UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10                    LOS ANGELES DIVISION

11 JAMES MCINDOE and              USDC Case No. _____
   CAROL MCINDOE,
12                                (Los Angeles Superior Court Case No.
                                  469749)
13            Plaintiffs,
                                  **DEFENDANT BATH IRON WORKS**
14      v.                        **CORPORATION'S NOTICE OF**
                                  **REMOVAL**
15 ASBESTOS CORPORATION LIMITED;
   CROWN CORK & SEAL COMPANY, INC.;
16 JOHN CRANE, INC.;

17

18

19

20

21

22

23

24

25

26

27

28

                                1

| | |
|---|---|
| 1 | CRANE CO.;<br>THOMAS DEE ENGINEERING |
| 2 | COMPANY;<br>FOSTER WHEELER LLC (FKA FOSTER |
| 3 | WHEELER CORPORATION);<br>GENERAL REFRACTORIES COMPANY; |
| 4 | GENERAL ELECTRIC COMPANY;<br>HONEYWELL INTERNATIONAL, INC.; |
| 5 | INGERSOLL-RAND COMPANY;<br>METROPOLITAN LIFE INSURANCE |
| 6 | COMPANY;<br>OWENS-ILLINOIS, INC.; |
| 7 | PARKER-HANNIFIN CORPORATION;<br>CBS CORPORATION (FKA VIACOM |
| 8 | INC., FKA WESTINGHOUSE ELECTRIC<br>CORPORATION); |
| 9 | FORD MOTOR COMPANY;<br>THE GOODYEAR TIRE & RUBBER |
| 10 | COMPANY;<br>GOULDS PUMPS, INC.; |
| 11 | IMO INDUSTRIES, INC.;<br>THE PEP BOYS MANNY MOE & JACK |
| 12 | OF CALIFORNIA;<br>VELAN VALVE CORPORATION; |
| 13 | YARWAY CORPORATION;<br>YORK INTERNATIONAL |
| 14 | CORPORATION;<br>WARREN PUMPS, LLC; |
| 15 | HUNTINGTON INGALLS<br>INCORPORATED (FKA NORTHROP |
| 16 | GRUMMAN SHIPBUILDING, INC.);<br>BATH IRON WORKS CORPORATION; |
| 17 | TODD SHIPYARDS CORPORATION;<br>HOPEMAN BROTHERS, INC.; |
| 18 | J.T. THORPE & SON, INC.;<br>AMERICAN CHEMET CORPORATION; |
| 19 | CYPRUS AMAX MINERALS COMPANY;<br>PFIZER, INC.; |
| 20 | R.T. VANDERBILT COMPANY, INC.;<br>SOCO WEST, INC.; |
| 21 | VWR INTERNATIONAL, INC.;<br>and DOES 1 through 800, inclusive, |
| 22 | |
| 23 | Defendants. |

USDC Case No. _____

(Los Angeles Superior Court Case No. 469749)

**DEFENDANT BATH IRON WORKS CORPORATION'S NOTICE OF REMOVAL**

| | |
|---|---|
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

2

1   TO THE CLERK OF THE UNITED STATES DISTRICT COURT, CENTRAL

2   DISTRICT OF CALIFORNIA:

3        PLEASE TAKE NOTICE that Defendant Bath Iron Works Corporation hereby files its

4   Notice of Removal of the above-entitled action from the Superior Court of the State of California,

5   County of Los Angeles, to this Court pursuant to 28 U.S.C. §§1442 (a)(1) and 1446.

6        **I.      BASIS FOR FEDERAL JURISDICTION**

7        1. This is a civil matter over which this Court has subject matter jurisdiction, pursuant to

8   28 U.S.C. §1331, for it is an action which arises under the Constitution, laws, or treaties of the

9   United States within the meaning of Section 1331 by virtue of Plaintiffs' attempt to adjudicate

10  claims with respect to persons acting under an officer of the United States pursuant to 28 U.S.C.

11  §1442(a)(1).

12       2. On September 21, 2011, Plaintiffs James and Carol McIndoe ("Plaintiffs") filed their

13  Complaint for Personal Injury - Asbestos in the Superior Court of the State of California, County

14  of Los Angeles, Case No. BC 469749 against several defendants, including Bath Iron Works

15  Corporation.  Plaintiffs served the Summons of Complaint on Bath Iron Works Corporation on

16  September 29, 2011 by process server.  A true and correct copy of the Summons and Complaint

17  served on Bath Iron Works Corporation are attached hereto as Exhibit '1'.

18       **II.     PROCEDURAL COMPLIANCE**

19       3. Bath Iron Works Corporation's Notice of Removal is timely because it is filed within

20  thirty (30) days after receipt by Bath Iron Works Corporation of a copy of the initial paper setting

21  forth the allegations against it.  (28 U.S.C. §1446(b); *Murphy Brothers, Inc. v. Michetti Pipe*

22  *Stringing, Inc.*, (1999) 526 U.S. 344.)

23       4. Bath Iron Works Corporation, pursuant to 28 U.S.C §1446(a), hereby attaches a copy of

24  all process, pleadings, and orders served upon Bath Iron Works Corporation in this action to date

25  hereto as Exhibit '1,' specifically, the Summons and Complaint, Notice of Order to Show Cause

26  Hearing and Case Management Conference (Exhibit "2"), and letter from plaintiff counsel dated

27  September 29, 2011 (Exhibit "3").

28       5. Bath Iron Works Corporation will also provide written notice of the filing of this Notice

1   of Removal to Plaintiffs and the other defendants in this action (those known to Bath Iron Works

2   Corporation), together with a copy of the Notice to Adverse Party of Removal to Federal Court

3   and supporting papers with the Superior Court of California, County of Los Angeles, as required

4   by 28 U.S.C §1446(d).

5          6. Bath Iron Works Corporation is a government contractor that constructed and repaired

6   military destroyers for the United States Navy, including the USS WORDEN (DLG-18) pursuant

7   to contract with the Department of Defense.

8          7. Plaintiffs' Complaint alleges that Mr. McIndoe was exposed to asbestos-containing

9   products for which Bath Iron Works Corporation, and others, are liable.  According to Plaintiffs'

10  Complaint, Mr. McIndoe was allegedly exposed to asbestos aboard the USS WORDEN (DLG-

11  18), built by Bath Iron Works Corporation, while employed as an engineer by the United States

12  Navy 1966-1968 at Hunter's Point Naval Shipyard.  See Exhibit 1, Page 29:20-22.

13         8. Based on Plaintiffs' allegations, Bath Iron Works Corporation is entitled to remove this

14  action because (a) Bath Iron Works Corporation is a person that has a colorable federal defense;

15  (b) Bath Iron Works Corporation acted under the authority or direction of an officer or agency of

16  the United States within the meaning of 28 U.S.C. §1442 (a)(1); and (c) there is a causal nexus

17  between Plaintiffs' claims and the conduct performed by Bath Iron Works Corporation under the

18  color of federal office.  (*Mesa v. California* 489 U.S. 121 (1989); *Boyle v. United Technologies*

19  *Corp.*, 487 U.S. 500 (1988); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-572 (N.D. Cal. 1992);

20  *Yearsley v. W. A. Ross Constr. Co.*, 309 U.S. 18 (1940); *McKay v. Rockwell International Corp.*,

21  704 F.2d 444, 448 (9th Cir. Cal. 1983).)

22         9. Further, Bath Iron Works Corporation requests that this case be added as a tag-along

23  case to the Multi-District Litigation No. 875 (MDL-875) (*In re Asbestos Cases*, in the U.S.

24  District Court, Eastern District of Pennsylvania) as discussed below.

25  **III.    FEDERAL OFFICER REMOVAL IS APPROPRIATE UNDER 28 U.S.C.**

26  **1442 (A)(1)**

27         10.  Removal under the "federal officer" basis is to be interpreted broadly, in favor of

28  removal, unlike removal under 28 U.S.C. §1441, which is construed strictly in favor of remand.

4

1   (*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. Cal. 2006).)  The "federal

2   officer" removal statute is not narrow or limited, and it should not be frustrated by a narrow

3   interpretation of 28 U.S.C. §1442(a)(1).  "We take from this history a clear command from both

4   Congress and the Supreme Court that when federal officers and their agents are seeking a federal

5   forum, we are to interpret section 1442 **broadly in favor of removal**." (*Durham*, supra, 445 F.3d

6   at 1252.)  [Emphasis added.]  The reason for this broad interpretation is that for government to

7   ensure its existence, it must act through "officers" and they sometimes act within state borders to

8   fulfill the purpose of the government, i.e., "whether they're enforcing unpopular tariffs in South

9   Carolina in the 1830s, killing recalcitrant moonshiners in self-defense in Tennessee in the 1880s,

10  or exposing servicemen to asbestos to make military aircraft in the 1970s. If the federal

11  government can't guarantee its agents access to a federal forum if they are sued or prosecuted, it

12  may have difficulty finding anyone willing to act on its behalf." (*Id.*, at 1253.)  (See also

13  *Ballenger v. Agco Corp.*, 2007 U.S. Dist. LEXIS 47042 (N.D. Cal. June 22, 2007.)

14       11. Numerous courts have upheld the assertion of the government contractor defense in

15  cases alleging asbestos exposure from such equipment.  (*Oberstar v. CBS Corp.*, (No. CV08-

16  118PA (JWJx) (C.D. Cal. Feb. 11, 2008); *Ballenger, supra*, 2007 U.S. Dist. LEXIS 47042;

17  *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51 (D. Mass. 2008);  *Contois v. Able

18  Industries Inc.*, 523 F. Supp. 2d 155, 164 (D. Conn. 2007); *Machnik v. Buffalo Pumps Inc.*, 506 F.

19  Supp. 2d 99, 104 (D. Conn. 2007); *Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725, 730

20  (N.D. Ohio 2007); *Nesbiet v. General Electric Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005).)

21       12. The government contractor defense is applicable to Bath Iron Works Corporation in

22  this matter. (*Yearsley*, supra, 309 U.S. 18; *McKay*, supra, 704 F.2d at 448; *Boyle*, supra, 487 U.S.

23  500; and *Fung*, supra, 816 F.Supp. at 573.) .Specifically "[t]his rule, first articulated by the

24  Supreme Court in *Yearsley v. W.A. Ross Construction Co.*, supra, at 84 protects a government

25  contractor from liability for acts done by him while complying with government specifications

26  during execution of performance of a contract with the United States [omitted citations] The rule

27  has been applied when the United States is immune from suit." (*McKay*, supra, 704 F.2d at 448.)

28       More recently, the Supreme Court in *Boyle,* 487 U.S. 500 (1988), supra, established that a

5

1   government contractor is not liable for injuries caused by design defects in equipment when the

2   contractor built such equipment according to reasonably precise government-approved design

3   specifications. (*Boyle*, supra, 487 U.S. at 512.) Although the specific holding of *Boyle* dealt

4   with strict liability for product defects and not with "performance contract", i.e. in this case Mr.

5   McIndoe claims exposure to asbestos while aboard a Navy warship, *Boyle*'s dictum and the

6   opinions it relied on clearly mandates that government immunity is a viable defense for Bath Iron

7   Works Corporation in this situation.

- "The present case involves an independent contractor performing its obligation under a procurement contract, rather than an official performing his duty as a federal employee, but there is obviously implicated the same interest in getting the Government's work done." (*Id.*, at 505.)
- "We think the reasons for considering these closely related areas to be of "uniquely federal" interest apply as well to the civil liabilities **arising out of the performance of federal procurement contracts."** (*Id.*, at 505-506.) [Emphasis added.]
- "The federal interest justifying this holding surely exists as much in procurement contracts as in performance contracts; we see no basis for a distinction." (*Id.*, at 506.)
- "It makes little sense to insulate the Government against financial liability for the judgment that a particular feature of military equipment is necessary when the Government produces the equipment itself, but not when it contracts for the production." (*Id.*, at 512.)

15   Our 9th Circuit court also agrees with this position, stating "[a]s a threshold matter, we

16   agree with Defendants that the government contractor defense applies not only to claims

17   challenging the physical design of a military product, but also to the process by which such

18   equipment is produced. Accordingly, a contractor who agrees to operate a production facility

19   pursuant to government specifications may qualify for the defense." (*Phillips v. E.I. Dupont De*

20   *Nemours & Co.* (*In re Hanford Nuclear Reservation Litig.*), 497 F.3d 1005, 1018 (9th Cir. Wash.

21   2007).)

22   Another court also agreed stating:

23   Although Boyle referred specifically to procurement contracts, the analysis it requires is not designed to promote all-or-nothing rules
24   regarding different classes of contract. Rather, the question is whether subjecting a contractor to liability under state tort law
25   would create a significant conflict with a unique federal interest. We would be hard-pressed to conclude that the unique federal
26   interest recognized in Boyle, as well as the potential for significant conflict with state law, are not likewise manifest in the present case.
27   The formulation of design specifications and the articulation of maintenance protocols involve the exercise of the very same
28   discretion to <u>decide how a military fleet of airworthy craft will be</u>

6

1                <u>readied</u>. Holding a contractor liable under state law for
2                <u>conscientiously maintaining military aircraft</u> according to specified
               procedures would threaten government officials' discretion in
3                precisely the same manner as holding contractors liable for
               departing from design specifications.

4        (*McMahon v. Presidential Airways*, 410 F. Supp. 2d 1189, 1198 (M.D. Fla. 2006).)

5 [Emphasis added.]

6           In sum, there is no serious disagreement that a contractor performing acts required of it

7 under federal service/procurement contract and using materials/equipment/parts whose

8 "reasonably precise" specifications were approved by the United States can assert a government

9 contractor defense.  In other words, if the United States would be insulated from liability in

10 performance of this contract, so too should the contractor who is hired by the United States to

11 perform the contract; i.e. "[i]t makes little sense to insulate the Government against financial

12 liability for the judgment that a particular feature of military equipment is necessary when the

13 Government produces the equipment itself, but not when it contracts for the production." (*Boyle*,

14 supra, 487 U.S. at 512.)

15           In effect, there is little difference between a shipyard contracting with the US Navy to

16 built a ship and the same shipyard contracting with the US Navy to repair a ship if both functions

17 are performed pursuant to a government contract which has (1) reasonably precise specifications,

18 (2) the equipment conformed to these specifications; and (3) the supplier warned the US about

19 dangers in the use of equipment that were known to the supplier but not to the United States. (*Id.*)

20        13. Bath Iron Works Corporation does not need to prove that the defense will be

21 meritorious.  Rather, it needs only to demonstrate that it has a colorable defense based on its

22 status as a federal contractor.  Once Bath Iron Works Corporation has done so, it is entitled to

23 have the validity of that defense tried in federal court. (*Mesa*, supra, 489 U.S. at 129.)  Further,

24 this court in *Fung,* supra, wrote: "[t]he question is not whether Bath Iron Works Corporation's

25 claimed defense is meritorious, but only whether a colorable claim to such a defense has been

26 made." (*Fung*, supra, 816 F. Supp. at 573.)  To be "colorable", the defense need only be plausible

27 and not completely frivolous. (*Jefferson County, Ala. v. Acker* (1999) 527 U.S. 423, 432.)

28        **A.**       **BATH IRON WORKS CORPORATION IS A "PERSON"**

7

1      14. Bath Iron Works Corporation is a "person" within the meaning of 28 U.S.C. §1442

2  (a)(1).  It is a "corporation … engaged in activities that amount to the implementation of a federal

3  policy under the direction of a federal officer" and manufactures/manufactured submarines for the

4  United States Navy pursuant to strict military specifications.  (*Fung*, supra, 816 F. Supp. at 572,

5  and *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir., 1998), holding that

6  corporate entities are "persons" under 28 U.S.C. §1442 (a)(1).)

7      **B.**      **BATH IRON WORKS CORPORATION "ACTED UNDER" THE**

8                 **AUTHORITY OR DISCRETION OF THE NAVY**

9      15. The words "acting under" the direction of a federal officer are given a broad meaning.

10  Indeed, a removing party can show that it was acting under the direction of a federal officer if the

11  officer had "direct and detailed control" over the party.  (*Fung*, supra, 816 F. Supp. at 572.)

12      16. Bath Iron Works Corporation "acted under" the authority of the of the United States

13  Navy, as it built the ship at issue in this matter for the United States Navy pursuant to strict

14  military specifications set forth in specific contracts into which it entered into with the United

15  States Navy.  (Declaration of Admiral Roger B. Horne, Jr., attached as Exhibit '4' in support of

16  this Removal Petition, at §§1-7 and 10-11; hereinafter "Horne Decl.").

17      17. As evidenced by Admiral Horne declaration, the United States Navy issued

18  specifications and other technical documents identified in applicable contract documents that

19  controlled the materials, products, equipment and parts that were used by Bath Iron Works

20  Corporation (a division of Bath Iron Works Corporation) in the construction of the USS

21  WORDEN (DLG-18), including those containing asbestos.  The Navy retained ultimate decision-

22  making authority with respect to the repair work and final approval of all work, including

23  installation, removal, and repair of parts and equipment aboard the USS WORDEN (DLG-18).

24      The USS WORDEN (DLG-18) was manufactured by Bath Iron Works Corporation under

25  these precise specifications and other technical documentation dictated by the United States

26  Government and identified in applicable contract documents.  Those documents required, among

27  other things, inclusion by Bath Iron Works Corporation of any asbestos-containing materials to

28  which Plaintiffs now claim Mr. McIndoe was exposed.  (Horne Decl., §§6-13.)  (See also *Nesbiet*

8

1  *v. General Electric Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005) (denying remand motion filed by

2  plaintiffs in response to naval equipment manufacturer defendant's removal to federal court on

3  grounds of the government contractor defense); *Miller v. Diamond Shamrock Co.*, 275 F.3d 414,

4  419 (5th Cir. 2001).))

5        18. The Navy's specifications for ships also covered the nature of any communication

6  affixed to ships or equipment supplied to the Navy.  Therefore, Bath Iron Works Corporation was

7  required to submit for approval and acceptance by the federal government drafts of any manuals,

8  drawings, or other written materials required to be provided with regard to the USS WORDEN

9  (DLG-18).  (Horne Decl., §§14-15.)

10        19. In accordance with its policies and practices pertaining to the construction and repair

11  of its ships, and in the further exercise of its discretion, the Navy required Bath Iron Works

12  Corporation to conform to detailed, uniform specifications regarding the exact wording of any

13  written communications.  The Navy would not have permitted Bath Iron Works Corporation

14  (either under the Navy's specifications or as a matter of Navy's practice) to attach any type of

15  warning or cautionary statement not required and approved by the Navy, including any statements

16  related to asbestos, without prior discussion, approval, and acceptance by the Navy.  (Horne

17  Decl., §§14-15.)

18        20. The Navy's strict control over all aspects of the repair/re-outfitting and delivery of any

19  ship built by Bath Iron Works Corporation aboard which Mr. McIndoe allegedly worked at the

20  time of re-outfitting demonstrates that Bath Iron Works Corporation was, at all times, "acting

21  under" the direct and detailed authority and control of an officer of the United States government

22  (specifically, the Navy) in carrying out its contracts for the repair/re-outfitting of a naval vessel.

23  (Horne Decl., §§1-14.)  (*Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 418 (5th Cir. Tex.

24  2001; *Ballenger*, supra, 2007 U.S. Dist. LEXIS 47042 (N.D. Cal. June 22, 2007.)

25        21.  The United States Military was aware of the potential hazards of asbestos by early

26  1930's.  By the mid-to-late 1960's, the Military's knowledge regarding the potential hazards of

27  asbestos was quite complete.  Indeed, at the time the Navy issued specifications governing any

28  equipment it procured from Bath Iron Works Corporation for construction of the USS WORDEN

DEFENDANT BATH IRON WORKS' NOTICE OF REMOVAL

1   (DLG-18), the Navy was already aware of potential hazards of asbestos, nullifying the need for

2   Corporation Iron Works to otherwise warn the Navy.  (Horne Decl., §16; *Contois v. Able*

3   *Industries, Inc.* 523 F.Supp. 2d 155 (D. Conn. 2007) and *Niemann v. McDonnell Douglas Corp.*,

4   721 F.Supp. 1019 (S.D. Ill., 1989) where courts found that Navy had superior knowledge of

5   asbestos health hazard and upheld removal.)

C.   **THE CAUSAL NEXUS BETWEEN PLAINTIFFS' CLAIMS AND BATH IRON WORKS CORPORATION'S ALLEGED CONDUCT**

8   22. Bath Iron Works Corporation has demonstrated a causal nexus between Bath Iron

9   Works Corporation's actions undertaken at the government's direction and the harm that

10   Plaintiffs allege, namely, Mr. McIndoe's asbestos-related disease.  Specifically, Plaintiffs claim

11   that Mr. McIndoe s exposure to asbestos during his work aboard the USS WORDEN (DLG-18)

12   caused his illness.  Any work with products, materials, and equipment specified in the contract by

13   the US Navy and performed by Bath Iron Works Corporation was in accordance with the strict

14   military specifications from which Bath Iron Works Corporation could not deviate.  (Horne Decl.,

15   §§1-15.)  Since, regulations required Bath Iron Works Corporation to use asbestos-containing

16   materials/products, exposure to which Plaintiffs complain about, the causal nexus requirement is

17   met here.  (*Ballenger*, supra, 2007 U.S. Dist. LEXIS 47042 (N.D. Cal. June 22, 2007; see

18   *McMahon v. Presidential Airways, Inc.* 410 F. Supp. 2d 1189, 1199 (M.D. Fla, 2006) [wherein

19   the court found that plaintiff's injury resulted from negligence in matters stemming from a

20   contract the defendant therein had with the United States military.])  Simply put, every action that

21   Bath Iron Works Corporation undertook was at the direction of the Navy.  Private shipyards

22   building/repairing ships for the Navy were directed to follow the Navy's specifications, period.

D.   **BATH IRON WORKS CORPORATION HAS A COLORABLE FEDERAL DEFENSE-GOVERNMENT CONTRACTOR IMMUNITY**

25   23.   As recognized in *Boyle v. United Technologies Corp.*, Bath Iron Works

26   Corporation has, *inter alia*, a "colorable federal defense" to this action, i.e., government

27   contractor immunity from liability for injuries arising from any exposure to asbestos aboard ships

28   repaired by Bath Iron Works Corporation.  (*Ballenger*, supra, 2007 U.S. Dist. LEXIS 47042

1  (N.D. Cal. June 22, 2007); *Nesbiet*, supra, 399 F. Supp. 2d 205 (S.D.N.Y. 2005); *Oberstar v. CBS*

2  *Corp.*, 2008 U.S. Dist. LEXIS 14023 (C.D. Cal. Feb. 11, 2008); *Machnik*, supra, 506 F. Supp. 2d

3  at 101; *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 416 (5th Cir. Tex. 2001).)

4      24. Bath Iron Works Corporation has satisfied the requirements for removal pursuant to

5  28 U.S.C. §1442a), as set forth above.  It is not required to notify or obtain the consent or joinder

6  of any other defendant in this action in order to remove Plaintiffs' action as a whole pursuant to

7  28 U.S.C. §1442 (a)(1).  (*Ely Valley Mines, Inc. v. Hartford Accident Indemnity Co.* 644 F.2d

8  1310, 1315 (9th Cir., 1981).)

9      26. Bath Iron Works Corporation hereby requests a full and fair opportunity to brief,

10  respond, and argue against any Motion for Remand filed by Plaintiffs.

11      27. Wherefore, Bath Iron Works Corporation, pursuant to 28 U.S.C. §1442 (a)(1) and 28

12  U.S.C. §1446 removes this action for trial from the Superior Court of California, County of Los

13  Angeles, to this, the United States District Court, Northern District of California.

14

15                              **Procedural Matter**

16      **Transfer Of This Action To Multi-District Litigation Asbestos Proceedings**

17      Bath Iron Works Corporation also intends to seek transfer of this action to the Eastern

18  District of Pennsylvania, where all Federal Court asbestos actions have been centralized in a

19  single forum, ie., *In re Asbestos Products Liability Litigation* (Multi District Litigation Docket

20  No. 875), pursuant to 28 U.S.C. §1407.  Accordingly, Bath Iron Works Corporation is

21  concurrently-filing a Notice of Pendency of Other Action regarding MDL 875.

22  Dated: October 28 , 2011              JACKSON JENKINS RENSTROM LLP

23

24                              By: _____

25                                  DANIEL D. O'SHEA
                                    Attorneys for Defendant
26                                  BATH IRON WORKS CORPORATION

27

28

                                     11

# EXHIBIT 1

SEP 29 2011

12 pm

**SUM-100**

**SUMMONS ON FIRST AMENDED COMPLAINT**
**(CITATION JUDICIAL)**

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**CONFORMED COPY**
**ORIGINAL FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 21 2011

John A. Clarke, Executive Officer/Clerk

BY _____, Deputy
Gina Grider

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**
ASBESTOS CORPORATION LIMITED;
AND SEE ATTACHED LIST.

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

JAMES McINDOE and CAROL McINDOE

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucort.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is:<br>(El nombre y dirección de la corte es):<br>LOS ANGELES COUNTY SUPERIOR COURT<br>111 N. Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>(Número del Caso):<br>BC469749 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección de teléfono del abogado del demandante, o del demandante que no tien abogado, es):
DAVID R. DONADIO, ESQ., STATE BAR NO. 154436
BRAYTON♦PURCELL LLP
222 Rush Landing Road, Novato, CA 94948-6169          (415) 898-1555

| DATE:<br>(Fecha) | John A. Clarke | Clerk, by<br>(Secretario) | GINA GRIDER | Deputy<br>(Adjunto) |
|---|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

SEP 21 2011

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): Bath Iron Works Corporation

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association of partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☒ by personal delivery on (date): SEP 29 2011

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS ON FIRST AMENDED COMPLAINT**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| JAMES McINDOE and CAROL McINDOE V. ASBESTOS CORPORATION LIMITED, et al., | BC469749 |

## INSTRUCTIONS FOR USE

► This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
► If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff     ☒ Defendant     ☐ Cross-Complainant     ☐ Cross-Defendant

ASBESTOS CORPORATION LIMITED;
CROWN CORK & SEAL COMPANY, INC.;
JOHN CRANE, INC.;
CRANE CO.;
THOMAS DEE ENGINEERING COMPANY;
FOSTER WHEELER LLC (FKA FOSTER
    WHEELER CORPORATION);
GENERAL REFRACTORIES COMPANY;
GENERAL ELECTRIC COMPANY;
HONEYWELL INTERNATIONAL, INC.;
INGERSOLL-RAND COMPANY;
METROPOLITAN LIFE INSURANCE
    COMPANY;
OWENS-ILLINOIS, INC.;
PARKER-HANNIFIN CORPORATION;
CBS CORPORATION (FKA VIACOM INC., FKA
    WESTINGHOUSE ELECTRIC
    CORPORATION);
FORD MOTOR COMPANY;
THE GOODYEAR TIRE & RUBBER
    COMPANY;
GOULDS PUMPS, INC.;
IMO INDUSTRIES, INC.;
THE PEP BOYS MANNY MOE & JACK OF
    CALIFORNIA;
VELAN VALVE CORPORATION;
YARWAY CORPORATION;
YORK INTERNATIONAL CORPORATION;
WARREN PUMPS, LLC;
HUNTINGTON INGALLS INCORPORATED
    (FKA NORTHROP GRUMMAN
    SHIPBUILDING, INC.);
BATH IRON WORKS CORPORATION;
TODD SHIPYARDS CORPORATION;
HOPEMAN BROTHERS, INC.;
J.T. THORPE & SON, INC.;
AMERICAN CHEMET CORPORATION;
CYPRUS AMAX MINERALS COMPANY;
PFIZER, INC.;
R.T. VANDERBILT COMPANY, INC.;
SOCO WEST, INC.;
VWR INTERNATIONAL, INC.
and DOES 1 through 800, inclusive.

Page __1__ of __1__

Form Adopted by Rule 982(a)(9)(A)
Judicial Council of California
982(a)(9)(A) [New January 1, 1993]

*Judicial Council Forms for HotDocs* ™

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1    ALAN R. BRAYTON, ESQ., S.B. #73685
     DAVID R. DONADIO, ESQ., S.B. #154436
2    KSENIA L. SNYLYK, ESQ., S.B. #265399
     BRAYTON✦PURCELL LLP
3    Attorneys at Law
     222 Rush Landing Road
4    P.O. Box 6169
     Novato, California 94948-6169
5    (415) 898-1555

6    Attorneys for Plaintiffs

7

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF LOS ANGELES

10

11   JAMES McINDOE and                      )   ASBESTOS
     CAROL McINDOE,                         )   No. BC469749
12                                          )
                Plaintiffs,                 )   FIRST AMENDED COMPLAINT FOR
13                                          )   PERSONAL INJURY, LOSS OF
     vs.                                    )   CONSORTIUM - ASBESTOS
14                                          )
     ASBESTOS CORPORATION LIMITED;          )
15   CROWN CORK & SEAL COMPANY, INC.;       )
     JOHN CRANE, INC.;                      )
16   CRANE CO.;                             )   Honorable Richard E. Rico
     THOMAS DEE ENGINEERING COMPANY;        )   Department 17
17   FOSTER WHEELER LLC (FKA FOSTER         )
          WHEELER CORPORATION);             )
18   GENERAL REFRACTORIES COMPANY;          )
     GENERAL ELECTRIC COMPANY;              )
19   HONEYWELL INTERNATIONAL, INC.;         )
     INGERSOLL-RAND COMPANY;                )
20   METROPOLITAN LIFE INSURANCE            )
          COMPANY;                          )
21   OWENS-ILLINOIS, INC.;                  )
     PARKER-HANNIFIN CORPORATION;           )
22   CBS CORPORATION (FKA VIACOM INC., FKA  )
          WESTINGHOUSE ELECTRIC             )
23        CORPORATION);                     )
     FORD MOTOR COMPANY;                    )
24   THE GOODYEAR TIRE & RUBBER             )
          COMPANY;                          )
25   GOULDS PUMPS, INC.;                    )
     IMO INDUSTRIES, INC.;                  )
26   THE PEP BOYS MANNY MOE & JACK OF       )
          CALIFORNIA;                       )
27   VELAN VALVE CORPORATION;               )
     YARWAY CORPORATION;                    )
28   YORK INTERNATIONAL CORPORATION;        )

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 2 1 2011

John A. Clarke, Executive Officer/Clerk
BY
          Glen Grider       Deputy

                                    1

| | |
|---|---|
| 1 | WARREN PUMPS, LLC; |
| | HUNTINGTON INGALLS INCORPORATED |
| 2 | (FKA NORTHROP GRUMMAN |
| | SHIPBUILDING, INC.); |
| 3 | BATH IRON WORKS CORPORATION; |
| | TODD SHIPYARDS CORPORATION; |
| 4 | HOPEMAN BROTHERS, INC.; |
| | J.T. THORPE & SON, INC.; |
| 5 | AMERICAN CHEMET CORPORATION; |
| | CYPRUS AMAX MINERALS COMPANY; |
| 6 | PFIZER, INC.; |
| | R.T. VANDERBILT COMPANY, INC.; |
| 7 | SOCO WEST, INC.; |
| | VWR INTERNATIONAL, INC.; |
| 8 | and DOES 1 through 800, inclusive, |
| 9 |                 Defendants. |

10

11              FIRST CAUSE OF ACTION
                   (Negligence)

12

13       PLAINTIFF JAMES McINDOE COMPLAINS OF DEFENDANTS HEREINBELOW

14   NAMED IN PARAGRAPH 3, THEIR "ALTERNATE ENTITIES" AND EACH OF THEM,

15   AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

16          1.      The true names and capacities, whether individual, corporate, associate,

17   governmental or otherwise, of defendants DOES 1 through 500, inclusive, are unknown to

18   plaintiff at this time, who therefore sues said defendants by such fictitious names.  When the true

19   names and capacities of said defendants have been ascertained, plaintiff will amend this

20   complaint accordingly.  Plaintiff is informed and believes, and thereon alleges, that each

21   defendant designated herein as a DOE is responsible, negligently or in some other actionable

22   manner, for the events and happenings hereinafter referred to, and caused injuries and damages

23   proximately thereby to the plaintiff, as hereinafter alleged.

24          2.      At all times herein mentioned, each of the defendants was the agent, servant,

25   employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

26   defendant was acting in the full course and scope of said agency, service, employment and/or

27   joint venture.

28   ///

3.   Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, defendants: ASBESTOS CORPORATION LIMITED; CROWN CORK & SEAL COMPANY, INC.; JOHN CRANE, INC.; CRANE CO.; THOMAS DEE ENGINEERING COMPANY; FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION); GENERAL REFRACTORIES COMPANY; GENERAL ELECTRIC COMPANY; HONEYWELL INTERNATIONAL, INC.; INGERSOLL-RAND COMPANY; METROPOLITAN LIFE INSURANCE COMPANY; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION; CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION); FORD MOTOR COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY; GOULDS PUMPS, INC.; IMO INDUSTRIES, INC.; THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA; VELAN VALVE CORPORATION; YARWAY CORPORATION; YORK INTERNATIONAL CORPORATION; WARREN PUMPS, LLC; HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.); BATH IRON WORKS CORPORATION; TODD SHIPYARDS CORPORATION; HOPEMAN BROTHERS, INC.; J.T. THORPE & SON, INC.; AMERICAN CHEMET CORPORATION; CYPRUS AMAX MINERALS COMPANY; PFIZER, INC.; R.T. VANDERBILT COMPANY, INC.; SOCO WEST, INC.; VWR INTERNATIONAL, INC.; and DOES 1 through 300, inclusive, were individuals, or corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

4.   At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of

1  which is asbestos and other products containing said substance.  Said entities shall hereinafter

2  collectively be called "alternate entities."  Each of the herein named defendants is liable for the

3  tortious conduct of each successor, successor in business, successor in product line or a portion

4  thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or

5  partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded,

6  that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled,

7  distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,

8  contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and

9  advertised a certain substance, the generic name of which is asbestos and other products

10  containing said substance.  The following defendants, and each of them, are liable for the acts of

11  each and every "alternate entity," and each of them, in that there has been a virtual destruction of

12  plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have

13  acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such

14  "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy

15  against each such "alternate entity"; each such defendant has the ability to assume the risk-

16  spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

17  originally attached to each such "alternate entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ASBESTOS CORPORATION LIMITED | GENERAL DYNAMICS CORPORATION |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK COMPANY |
| JOHN CRANE, INC. | CRANE PACKING CO. |
| THOMAS DEE ENGINEERING COMPANY | THOMAS DEE ENGINEERING CO., INC. DEE ENGINEERING COMPANY |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |

26  ///

27  ///

28  ///

4

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| | |
| INGERSOLL-RAND COMPANY | INGERSOLL-DRESSER PUMP |
| | DRESSER-RAND CO. |
| | PACIFIC PUMP WORKS |
| | FLOWSERVE CORPORATION |
| | INGERSOLL ROCK DRILL COMPANY |
| | TERRY STEAM TURBINE CO. |
| | WHITON MACHINE COMPANY |
| | RAND DRILL COMPANY |
| | RAND & WARING DRILL AND COMPRESSOR COMPANY |
| | INGERSOLL-SERGEANT |
| | SCHLAGE LOCK COMPANY |
| | VON DUPRIN |
| | THE TORRINGTON COMPANY |
| | BLAW-KNOX COMPANY |
| | ALDRICH PUMPS |
| | HUSSMANN CORPORATION |
| | |
| PARKER-HANNIFIN CORPORATION | SACOMA-SIERRA, INC. |
| | SACOMA MANUFACTURING COMPANY |
| | E.I.S. AUTOMOTIVE CORPORATION |
| | CONDREN CORPORATION, THE |
| | PARKER SEAL COMPANY |
| | DENISON HYDRAULICS INC. |
| | GREER HYDRAULICS CORPORATION |
| | |
| HONEYWELL INTERNATIONAL, INC. | HONEYWELL, INC. |
| | HONEYWELL CONTROLS |
| | ALLIEDSIGNAL, INC. |
| | AIRESEARCH DOMESTIC INTERNATIONAL SALES CORPORATION |
| | ALLIED-SIGNAL, INC. |
| | THE BENDIX CORPORATION |
| | BENDIX PRODUCTS AUTOMOTIVE DIVISION |
| | BENDIX PRODUCTS DIVISION, BENDIX AVIATION CORP. |
| | BENDIX HOME SYSTEMS |
| | ALLIED CORPORATION |
| | ALLIED CHEMICAL CORPORATION |
| | GENERAL CHEMICAL CORPORATION |
| | FRAM |
| | FRICTION MATERIALS OF LOS ANGELES |
| | NORTH AMERICAN REFRACTORIES COMPANY |
| | EM SECTOR HOLDINGS INC. |
| | UNIVERSAL OIL PRODUCTS COMPANY |
| | BOYLSTON CORPORATION |
| | EHRHART & ASSOCIATES, INC. |

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

| DEFENDANT | ALTERNATE ENTITY |
|-----------|------------------|
| HONEYWELL INTERNATIONAL, INC. (Cont'd) | EHRHART & ARTHUR, INC. |
| | GARRETT AIR RESEARCH CORP. |
| | STANLEY G. FLAGG & CO. |
| | MERGENTHALER LINOTYPE COMPANY |
| | ELTRA CORPORATION |
| | BUNKER RAMO-ELTRA CORPORATION |
| | UNION TEXAS NATURAL GAS CORPORATION |
| | UNION OIL AND GAS OF LOUISIANA |
| | UNION SULPHUR AND OIL CORPORATION |
| | UNION SULPHUR COMPANY, INC., THE |
| | MINNEAPOLIS-HONEYWELL REGULATOR COMPANY |
| | SIGNAL COMPANIES, INC., THE |
| | HANCOCK OIL COMPANY |
| | BARRETT DIVISION, ALLIED CHEMICAL & DYE CORPORATION |
| | SIGNAL COMPANIES, INC., THE |
| | SIGNAL OIL & GAS CO. |
| | BANKLINE OIL COMPANY |
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. |
| | CBS CORPORATION |
| | WESTINGHOUSE ELECTRIC CORPORATION |
| | WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY |
| | B.F. STURTEVANT |
| | KPIX TELEVISION STATION |
| | PARAMOUNT COMMUNICATIONS, INC |
| | GULF & WESTERN INDUSTRIES, INC. |
| | NORTH & JUDD MANUFACTURING COMPANY |
| OWENS-ILLINOIS, INC. | OWENS-ILLINOIS GLASS COMPANY |
| THE GOODYEAR TIRE & RUBBER COMPANY | GOODYEAR AEROSPACE CORP. |
| | LOCKHEED MARTIN TACTICAL SYSTEMS, INC. |
| | LORAL CORPORATION |
| | AIRCRAFT BRAKING SYSTEMS CORP. |
| GOULDS PUMPS, INC. | GOULDS PUMPS (IPG), INC. |
| | MORRIS PUMPS, INC. |
| | MORRIS MACHINE WORKS |
| | U.S. PUMPS, INC. |
| IMO INDUSTRIES, INC. | TRANSAMERICA DELAVAL, INC. |
| | ENTERPRISE ENGINE & MACHINERY CO. |
| | DE LAVAL STEAM TURBINE, INC. |
| | DELAVAL STEAM TURBINE |
| | DELAVAL INDUSTRIES INC. |
| | DE LAVAL TURBINE, INC. |
| | GENERAL METALS CORPORATION |
| | CROW CENTRIFUGAL PUMPS |
| /// | |
| /// | |

| | DEFENDANT | ALTERNATE ENTITY |
|---|---|---|
| 1 | WARREN PUMPS, LLC | WARREN PUMPS, INC. |
| 2 | | QUIMBY PUMP COMPANY |
| | | WARREN STEAM PUMPS COMPANY |
| 3 | | |
| | HUNTINGTON INGALLS | AVONDALE INDUSTRIES, INC. |
| 4 | INCORPORATED | AVONDALE SHIPYARDS, INC. |
| | (FKA NORTHROP | CONTINENTAL MARITIME INDUSTRIES, INC. |
| 5 | GRUMMAN SHIPBUILDING, INC.) | EASTERN IDAHO CONSTRUCTION COMPANY |
| | | INGALLS SHIPBUILDING, INC. |
| 6 | | NEWPORT NEWS SHIPBUILDING AND DRY DOCK |
| | | COMPANY |
| 7 | | NORTH CAROLINA SHIPBUILDING |
| | | NORTHROP-GRUMMAN SHIP SYSTEMS, INC. |
| 8 | | SERVICE ENGINEERING INDUSTRIES, INC. |
| 9 | YARWAY CORPORATION | YARNALL-WARING COMPANY |
| | | YARNALL-WARING CO. |
| 10 | | |
| | YORK INTERNATIONAL CORPORATION | YORK OPERATING COMPANY |
| 11 | | YORK HOLDINGS |
| | | YORK HOLDING CORPORATION |
| 12 | | CENTRAL ENVIRONMENTAL SYSTEMS |
| | | BORG-WARNER AIR CONDITIONING, INC. |
| 13 | | BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS |
| | | YORK DIVISION, BORG-WARNER |
| 14 | | YORK AIR CONDITIONING DIVISION, BORG WARNER |
| | | YORK-LUXAIRE, INC. |
| 15 | | YORK CORPORATION |
| | | LUXAIRE |
| 16 | | YORK CORPORATION |
| | | YORK ICE MACHINERY |
| 17 | | YORK MANUFACTURING |
| | | FRICK COMPANY |
| 18 | | YORK ACQUISITION CORPORATION |
| | | LILCO, INC. |
| 19 | | NATKIN SERVICE |
| | | YIC HOLDINGS CORPORATION |
| 20 | | YORK HEATING AND AIR CONDITIONING |
| | | NORTHFIELD FREEZING SYSTEMS |
| 21 | | UNITED MECHANICAL SERVICES, INC. |
| | | JOHNSON SUPPLY & EQUIPMENT CORPORATION |
| 22 | | YORK INTERNATIONAL CORPORATION CES |
| | | (CENTRAL SYSTEMS) |
| 23 | | YORK INTERNATIONAL SALES & SERVICE |
| | | APPLIED SYSTEMS |
| 24 | | FRASER JOHNSTON |
| 25 | TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION |
| | | SEATTLE-TACOMA SHIPBUILDING CORP. |
| 26 | /// | |
| 27 | /// | |
| 28 | /// | |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CYPRUS AMAX MINERALS COMPANY | CYPRUS MINERAL COMPANY |
| | CYPRUS MINES CORPORATION |
| | CYPRUS INDUSTRIAL MINERALS CORPORATION |
| | SIERRA TALC AND CLAY COMPANY |
| | SIERRA TALC COMPANY |
| | PACIFIC COAST TALC COMPANY |
| | INYO TALC COMPANY |
| | UNITED SIERRA DIVISION CYPRUS MINES CORPORATION |
| | PAUL W. WOOD COMPANY |
| R. T. VANDERBILT COMPANY | WESTERN TALC COMPANY |
| | INTERNATIONAL TALC COMPANY |
| SOCO WEST, INC. | BRENNTAG WEST, INC. |
| | SOCO-LYNCH CORPORATION |
| | A.J. LYNCH & COMPANY |
| | WESTERN CHEMICAL & MANUFACTURING COMPANY |
| PFIZER, INC. | CHARLES PFIZER AND COMPANY |
| | CHARLES PFIZER, LTD. |
| | SOUTHERN CALIFORNIA MINERALS COMPANY |
| | C. K. WILLIAMS COMPANY |
| | KENNEDY MINERALS COMPANY |
| | DESERT MINERALS, INC. |
| | CONTINENTAL MINERALS CORPORATION |
| | GRANTHAM MINES |
| | BLUE STAR MINES |
| | PARKE, DAVIS & COMPANY |
| | PARKE-DAVIS PHARMACEUTICAL COMPANY |
| | WARNER-LAMBERT COMPANY |
| VWR INTERNATIONAL, INC. | VWR SCIENTIFIC PRODUCTS CORPORATION |
| | CENTRAL SCIENTIFIC COMPANY |
| HOPEMAN BROTHERS, INC. | HOPEMAN BROTHERS MARINE INTERIORS, LLC |
| J.T. THORPE & SON, INC. | THE THORPE COMPANY |
| | THORPE PRODUCTS CO. |
| | J.T. THORPE NORTHWEST |

5.     At all times herein mentioned, defendants, their "alternate entities," and each of

them, were and are engaged in the business of researching, manufacturing, fabricating, designing,

modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying,

selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,

warranting, rebranding, manufacturing for others, packaging and advertising a certain substance,

the generic name of which is asbestos and other products containing said substance.

///

6.      At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain substance, the generic name of which is asbestos and other products containing said substance, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by "exposed persons."

7.      Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

8.      Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

9.      Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products, and talc and talc-containing products, would be used or handled as specified in Exhibit "A," which is attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos

///

1  fibers, and that through such foreseeable use and/or handling "exposed persons," including

2  plaintiff herein, would be in proximity to and exposed to said asbestos fibers.

3      10.    Plaintiff JAMES McINDOE has used, handled or been otherwise exposed to

4  asbestos and asbestos-containing products, and talc and talc-containing products, referred to

5  herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-

6  containing products, and talc and talc-containing products, occurred at various locations as set

7  forth in Exhibit "A," which is attached hereto and incorporated by reference herein.

8      11.    As a direct and proximate result of the conduct of the defendants, their "alternate

9  entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

10  products, and talc and talc-containing products, caused severe and permanent injury to the

11  plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit

12  "B," which is attached hereto and incorporated by reference herein.

13      12.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

14  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

15  perceptible trauma and that said disease results from exposure to asbestos and asbestos-

16  containing products, and talc and talc-containing products, over a period of time.

17      13.    Plaintiff JAMES McINDOE suffers from a condition related to exposure to

18  asbestos and asbestos-containing products, and talc and talc-containing products. Plaintiff was

19  not aware at the time of exposure that asbestos or asbestos-containing products, and talc and talc-

20  containing products, presented any risk of injury and/or disease.

21      14.    As a direct and proximate result of the aforesaid conduct of defendants, their

22  "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

23  injuries and/or future increased risk of injuries to his person, body and health, including, but not

24  limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

25  attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

26  sum in excess of the jurisdictional limits of the Municipal Court.

27      15.    As a direct and proximate result of the aforesaid conduct of the defendants, their

28  "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

K:\LA\11624EPLD\CMP-1AMD-LA-FIL.OC.wpd                 10

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

1   in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays

2   and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

3   time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost

4   thereof is ascertained.

5       16.    As a further direct and proximate result of the said conduct of the defendants,

6   their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income,

7   wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses,

8

9   the full nature and extent of which are not yet known to plaintiff, and leave is requested to amend

10  this complaint to conform to proof at the time of trial.

11      17.    Defendants, their "alternate entities," and each of them, and their officers,

12  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

13  had full knowledge of, or should have known of, each of the acts set forth herein.

14      18.    Defendants, their "alternate entities," and each of them, are liable for the

15  fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each

16  defendant's officers, directors and managing agents participated in, authorized, expressly and

17  impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their

18  "alternate entities" as set forth herein.

19      19.    The herein-described conduct of said defendants, their "alternate entities," and

20  each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard

21  and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example

22  and by way of punishing said defendants, seeks punitive damages according to proof.

23      WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities,"

24  and each of them, as hereinafter set forth.

25                  SECOND CAUSE OF ACTION
                        (Products Liability)

26

27      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

28  ACTION FOR STRICT LIABILITY, PLAINTIFF JAMES McINDOE COMPLAINS OF

DEFENDANTS NAMED IN PARAGRAPH 3 HEREINABOVE, AND EACH OF THEM, AND

ALLEGES AS FOLLOWS:

20.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

allegations contained in Paragraphs 1 through 5 and 8 through 16 of the First Cause of Action

herein.

21.    Defendants, their "alternate entities," and each of them, knew and intended that

the above-referenced asbestos and asbestos-containing products, and talc and talc-containing

products, would be used by the purchaser

or user without inspection for defects therein or in any of their component parts and without

knowledge of the hazards involved in such use.

22.    Said asbestos and asbestos-containing products, and talc and talc-containing

products, were defective and unsafe for their intended purpose in that the inhalation of asbestos

fibers causes serious disease and/or death.  The defect existed in the said products at the time

they left the possession of defendants, their "alternate entities," and each of them.  Said products

did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to

"exposed persons," including plaintiff herein, while being used in a reasonably foreseeable

manner, thereby rendering the same defective, unsafe and dangerous for use.

23.    "Exposed persons" did not know of the substantial danger of using said products.

Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

"alternate entities," and each of them, further failed to adequately warn of the risks to which

plaintiff and others similarly situated were exposed.

24.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

and asbestos-containing products, and talc and talc-containing products, defendants, their

"alternate entities," and each of them, did so with conscious disregard for the safety of "exposed

1   persons" who came in contact with said asbestos and asbestos-containing products, and talc and

2   talc-containing products, in that said defendants, their "alternate entities," and each of them, had

3   prior knowledge that there was a substantial risk of injury or death resulting from exposure to

4   asbestos or asbestos- containing products, including, but not limited to, asbestosis, other lung

5   disabilities and cancer.  Said knowledge was obtained, in part, from scientific studies performed

6   by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each

7   of them, and which knowledge was obtained by said defendants, their "alternate entities," and

8   each of them on or before 1930, and thereafter.

9       25.    On or before 1930, and thereafter, said defendants, their "alternate entities" and

10  each of them, were aware that members of the general public and other "exposed persons," who

11  would come in contact with their asbestos and asbestos-containing products, and talc and talc-

12  containing products, had no knowledge or information indicating that asbestos or asbestos-

13  containing products, and talc and talc-containing products, could cause injury, and said

14  defendants, their "alternate entities," and each of them, knew that members of the general public

15  and other "exposed persons," who came in contact with asbestos and asbestos-containing

16  products, and talc and talc-containing products, would assume, and in fact did assume, that

17  exposure to asbestos and asbestos-containing products, and talc and talc-containing products,

18  was safe, when in fact said exposure was extremely hazardous to health and human life.

19      26.    With said knowledge, said defendants, their "alternate entities," and each of them,

20  opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

21  offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

22  warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

23  containing products without attempting to protect "exposed persons" from or warn "exposed

24  persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

25  containing products, and talc and talc-containing products.  Rather than attempting to protect

26  "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting

27  from exposure to asbestos and asbestos-containing products, and talc and talc-containing

28  products, defendants, their "alternate entities," and each of them, intentionally failed to reveal

1   their knowledge of said risk, and consciously and actively concealed and suppressed said

2   knowledge from "exposed persons" and members of the general public, thus impliedly

3   representing to "exposed persons" and members of the general public that asbestos and asbestos-

4   containing products, and talc and talc-containing products, were safe for all reasonably

5   foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this

6   conduct and made these implied representations with the knowledge of the falsity of said implied

7   representations.

8       27.     The above-referenced conduct of said defendants, their "alternate entities," and

9   each of them, was motivated by the financial interest of said defendants, their "alternate entities,"

10  and each of them, in the continuing, uninterrupted research, design, modification, manufacture,

11  fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale,

12  inspection, installation, contracting for installation, repair, marketing, warranting, rebranding,

13  manufacturing for others, packaging and advertising of asbestos and asbestos-containing

14  products, and talc and talc-containing products. In pursuance of said financial motivation, said

15  defendants, their "alternate entities," and each of them, consciously disregarded the safety of

16  "exposed persons" and in fact were consciously willing and intended to permit asbestos and

17  asbestos-containing products, and talc and talc-containing products, to cause injury to "exposed

18  persons" and induced persons to work with and be exposed thereto, including plaintiff.

19      28.     Plaintiff alleges that the aforementioned defendants, their "alternate entities," and

20  each of them impliedly warranted their asbestos and asbestos-containing products, and talc and

21  talc-containing products, to be safe for their intended use but that their asbestos and asbestos-

22  containing products, and talc and talc-containing products, created an unreasonable risk of bodily

23  harm to exposed persons.

24      29.     Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

25  and various asbestos-containing products, and talc and talc-containing products, manufactured,

26  fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled,

27  distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,

28  contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others,

1  packaged and advertised by the aforementioned defendants, their "alternate entities," and each of

2  them and that plaintiff cannot identify precisely which asbestos or asbestos-containing products,

3  and talc and talc-containing products, caused the injuries complained of herein.

4      30.     Plaintiff relied upon defendants', their "alternate entities'," and each of their

5  representations, lack of warnings, and implied warranties of fitness of asbestos and their

6  asbestos-containing products, and talc and talc-containing products. As a direct, foreseeable and

7  proximate result thereof, plaintiff has been injured permanently as alleged herein.

8      31.     As a direct and proximate result of the actions and conduct outlined herein,

9  plaintiff has suffered the injuries and damages previously alleged.

10     WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

11 each of them, as hereinafter set forth.

12                        THIRD CAUSE OF ACTION
13                    (Premises Owner/Contractor Liability)

14     AS AND FOR A FURTHER AND THIRD, SEPARATE AND DISTINCT CAUSE OF

15 ACTION, PLAINTIFF JAMES McINDOE COMPLAINS OF DEFENDANTS THOMAS DEE

16 ENGINEERING COMPANY; HOPEMAN BROTHERS, INC.; J.T. THORPE & SON, INC.;

17 AND DOES 301 THROUGH 400 (hereinafter "Premises Owner/Contractor Liability

18 Defendants") AND ALLEGES AS FOLLOWS:

19     32.     Plaintiff, by this reference, incorporates the allegations contained in paragraphs 12

20 through 18 of the First Cause of Action.

21     33.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned

22 herein, the Premises Owner/Contractor Liability Defendants and DOES 301 through 400, were

23 individuals, or corporations, partnerships and/or unincorporated associations organized and

24 existing under and by virtue of the laws of the State of California, or the laws of some other state

25 or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do

26 and are doing business in the State of California.

27     34.     At all times herein mentioned, each of the Premises Owner/Contractor Liability

28 Defendants was a successor, successor-in-business, assign, predecessor, predecessor-in-business,

1   parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity

2   causing certain asbestos- and silica-containing insulation, other building materials, products and

3   toxic substances to be constructed, installed, maintained, used, replaced and/or repaired on the

4   respective premises owned, leased, maintained, managed and/or controlled by them.  Said

5   entities shall hereinafter collectively be called "alternate entities."  Each of the herein-named

6   defendants is liable for the tortious conduct of each successor, successor-in-business, assign,

7   predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned

8   entity, that caused the presence as aforesaid of said asbestos- and silica-containing insulation and

9   other toxic substances.  Said defendants, and each of them, are liable for the acts of each and

10  every "alternate entity,"  and each of them, in that there has been a virtual destruction of

11  plaintiff's remedy against each such  alternate entity; defendants, and each of them, have acquired

12  the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have

13  caused the destruction of plaintiff's remedy against each such alternate entity; each such

14  defendant has the ability to assume the risk-spreading role of each such alternate entity, and that

15  each such defendant enjoys the goodwill originally attached to each such alternate entity.

16      35.     At all times mentioned herein, the Premises Owner/Contractor Liability

17  Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or

18  controlled the following premises where plaintiff JAMES McINDOE was present.  The

19  following information provided is preliminary, based on recall over events covering many years

20  and further investigation and discovery may produce more reliable information:

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| THOMAS DEE ENGINEERING COMPANY | Various | Various |
| HOPEMAN BROTHERS, INC.; | Various | Various |
| J.T. THORPE & SON, INC.; | Various | Various |

26      Additionally, plaintiff JAMES McINDOE might have been present at these or other

27  Premises Owner/Contractor Liability Defendants' premises at other locations and on other

28  occasions.

36.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, and/or repaired on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

37.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed while present on each of the aforesaid respective premises.

38.     At all times relevant herein, plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation.  In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

39.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

40.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where plaintiff was performing his work.

///

41.   At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

42.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

43.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

44.   Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, and/or repaired on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

45.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them:

   a. Should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken;

///

///

1           b.  Knew or had reason to know, that the contractors it had selected and hired to

2    install, remove, abate or otherwise handle asbestos-containing materials were unfit, unskilled or

3    otherwise unqualified to do so;

4           c.  Failed to use reasonable care to discover whether the contractors it selected and

5    hired to install, remove, abate or otherwise handle asbestos-containing materials were competent

6    or qualified to do so.

7        46.   In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other

8    toxic substances by reason of such contractors' failure to take the necessary precautions.

9        47.   The work of contractors on premises controlled by the Premises

10   Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of

11   the release of dangerous quantities of toxic substances including but not limited to asbestos.

12       48.   The unsafe premise or work place was created, in part, by the negligent conduct of

13   the contractors employed by the Premises Owner/Contractor Defendants.  Said negligent conduct

14   includes but is not limited to:

15          a.  Failure to warn of asbestos and other toxic dusts;

16          b.  Failure to suppress the asbestos-containing or toxic dusts;

17          c.  Failure to remove the asbestos-containing and toxic dusts through use of

18   ventilation or appropriate means;

19          d.  Failure to provide adequate breathing protection, i.e., approved respirators

20   or masks;

21          e.  Failure to inspect and/or test the air;

22          f.  Failure to provide medical monitoring.

23          g.  Failure to select and hire a careful and competent contractor or

24   subcontractor.

25       49.   The Premises Owner/Contractor Defendants' duty to maintain and provide safe

26   premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said

27   duties arise out of common law, Civil Code §1714, and Labor Code §6400, et seq., or Health and

28   Safety Code § 40.200, et seq., and regulations promulgated thereunder.  Therefore, the Premises

1   Owner/Contractor Defendants are responsible for any breach of said duties whether by

2   themselves or others.

3       50.     Prior to and at said times and places, said Premises Owner/Contractor Liability

4   Defendants were subject to certain ordinances, statutes, and other government regulations

5   promulgated by the United States Government, the State of California, and others, including but

6   not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code

7   §6400 and the California Administrative Code under the Division of Industrial Safety,

8   Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of

9   Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values

10  as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety

11  Orders; additionally, California Health and Safety Code § 40.200, et seq., which empowers the

12  South Coast Area Air Quality Management District to promulgate regulations including but not

13  limited to S.C.A.A.Q.M.D., Rule 1403; Title 40 Code of Federal Regulations, Chapter 1, Part 61,

14  et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said

15  Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to

16  prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

17  Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and

18  precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants

19  failed to provide the required safeguards and precautions.  Defendants' violations of said codes

20  include but are not limited to:

21          (a)     Failing to comply with statutes and allowing ambient levels of airborne

22  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

23  statutes;

24          (b)     Failing to segregate work involving the release of asbestos or other toxic

25  dusts;

26          (c)     Failing to suppress dust using prescribed ventilation techniques;

27          (d)     Failing to suppress dust using prescribed "wet down" techniques;

28  ///

1        (e)    Failing to warn or educate plaintiff or others regarding asbestos or other

2  toxic substances on the premises;

3        (f)    Failing to provide approved respiratory protection devices;

4        (g)    Failing to ensure "approved" respiratory protection devices were used

5  properly;

6        (h)    Failing to provide for an on-going health screening program for those

7  exposed to asbestos on the premises;

8        (i)    Failing to provide adequate housekeeping and clean-up of the work place;

9        (j)    Failing to properly warn of the hazards associated with asbestos as

10 required by these statutes;

11       (k)    Failing to properly report renovation and disturbance of asbestos-

12 containing materials, including but not limited to S.C.A.A.Q.M.D. Rule 1403;

13       (l)    Failing to have an asbestos removal supervisor as required by regulation;

14       (m)    Failing to get approval for renovation as required by statutes; and

15       (n)    Failing to maintain records as required by statute.

16     51.    Premises Owner/Contractor Liability Defendants, and each of them, were the

17 "statutory employer" of plaintiff as defined by the California Labor Code and California case law.

18     52.    Plaintiff at all times was unaware of the hazardous condition or the risk of

19 personal injury created by defendants' violation of said regulations, ordinances or statutes.

20     53.    At all times mentioned herein, plaintiff was a member of the class of persons

21 whose safety was intended to be protected by the regulations, statutes or ordinances described in

22 the foregoing paragraphs.

23     54.    At all times mentioned herein, said Premises Owner/Contractor Liability

24 Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should

25 have known, that the premises that were in their control would be used without knowledge of, or

26 inspection for, defects or dangerous conditions, that the persons present and using said premises

27 would not be aware of the aforesaid hazardous conditions to which they were exposed on the

28 ///

1  premises, and that such persons were unaware of the aforesaid violations of codes, regulations

2  and statutes.

3       55.    As a legal consequence of the foregoing, plaintiff JAMES McINDOE developed

4  an asbestos-related illness, which has caused great injury and disability as previously set forth,

5  and plaintiff has suffered damages as herein alleged.

6       WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities,"

7  and each of them, as hereinafter set forth.

8                          FOURTH CAUSE OF ACTION
                            Aiding and Abetting Battery
9            [Against Metropolitan Life Insurance Company
                      and Does 750-790, Inclusive]
10

11      AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF

12  ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF

13  DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY, DOES 750-790, THEIR

14  ALTERNATE ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

15      56.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

16  and every allegation of the First, Second, Fourth through Fifth Causes of Action as though fully

17  set forth herein.

18      57.    This cause of action is for the aiding and abetting of battery by METROPOLITAN

19  LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director

20  Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

21      58.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

22  mentioned defendant MET LIFE was and is a corporation organized and existing under and by

23  virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction,

24  and that this defendant was and is authorized to do and/or was and is doing business in the State

25  of California, and regularly conducted or conducts business in the County of Los Angeles, State

26  of California.  At times relevant to this cause of action, MET LIFE was an insurer of J-M.

27      59.    Plaintiff, was exposed to asbestos-containing dust created by the use of the

28  asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

1  asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease

2  and injuries.

3      60.    Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-

4  related disease in Canadian mines and mills, including those of J-M. Those studies revealed that

5  miners and mill workers were contracting asbestosis at relatively low levels of dust. McGill

6  University, which conducted the studies, sought permission from MET LIFE to publish the

7  results but they were never published. MET LIFE prepared its own report of these studies.

8      61.    Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.

9  plants manufacturing asbestos-containing products, including a J-M plant. Those studies showed

10  that workers in substantial numbers were contracting asbestosis, at levels less than what became

11  the Threshold Limit Value ('TLV") of 5mppcf. The MET LIFE report was never published or

12  disseminated except to plant owners, including J-M.

13      62.    In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,

14  New Jersey. Results were consistent with those of the Canadian and previous U.S. plant studies.

15  They were never published.

16      63.    In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

17  LIFE that it should issue a report of its studies.

18      64.    MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and

19  business reasons, that certain critical parts of the draft be changed. MET LIFE's official in

20  charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

21      (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

22              should be less than that for silica;

23      (b)    Addition of the phrase that asbestosis clinically appeared to be milder than

24              silicosis.

25  The report, thus altered, was published in 1935. It was misleading, and intentionally so, because

26  it conveyed the incorrect propositions that asbestosis was a less serious disease process than

27  silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases

28  than was the case for silica dust.

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

65.   MET LIFE had a close relationship with J-M.  It invested money in J-M.  It provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply industrial hygiene services to J-M, including dust counts, training employees to monitor dust levels, examining employees, and recommending protective equipment.  MET LIFE and Lanza were viewed as experts on industrial dusts.

66.   In 1933, MET LIFE through Lanza issued the following advice to J-M:

(a)   Disagreeing with the recommendation of a J-M plant physician, MET LIFE advised against warning workers of the fact that asbestos dust is hazardous to their health, basing its advice in view of the extraordinary legal situation;

(b)   When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

67.   J-M followed the MET LIFE advices and did not warn its workers, including plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

68.   In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

69.   MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust.  MET LIFE nonetheless promoted that TLV as proper.

70.   In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.  That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease.  MET LIFE was a member of the IHF and Lanza was on its medical

1  committee.  The Hemeon report, which was supplied to J-M and other owners, never was
2  published.

3      71.    In 1936, J-M and other asbestos companies agreed with a leading medical
4  research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M
5  and the others retained control over publication of the results.  In 1943 Saranac's Dr. Leroy
6  Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed
7  to long fiber asbestos contracted cancer.

8      72.    Dr. Gardner died in 1946.  J-M and other companies wanted parts of the Saranac
9  results published and enlisted the assistance of MET LIFE's Lanza.  J-M and other companies
10 decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as
11 Saranac's critique of existing dust standards.  Lanza directed Saranac to delete the offending
12 materials.  Saranac did so, and the altered report was published in 1951 by Saranac's Dr.
13 Vorwald, in the *AMA Archives of Industrial Hygiene*.

14     73.    Lanza left MET LIFE at the end of 1948, and took a position at New York
15 University, funded by MET LIFE.  He continued to misrepresent that asbestos does not cause
16 cancer into the 1950s.

17     74.    The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE
18 official was on its medical committee, through Drs. Braun and Truan conducted a study of
19 Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in
20 persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken,
21 and the report published in 1958 contained the false conclusion that asbestos exposure alone did
22 not increase the risk of lung cancer.

23     75.    The false and misleading reports that a link between asbestos exposure and cancer
24 was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low
25 or zero.

26 ///
27 ///
28 ///

76.   J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the hazard. J-M committed battery on workers in its plants, including plaintiff, by that conduct.

77.   MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff, through MET LIFE's conduct described above, including by:

(a)   Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff;

(b)   Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe TLV which specified maximum levels of silica dust, and promoting a false and unsafe TLV which specified maximum levels of dust for workers, including plaintiff, which MET LIFE knew was wrong through its own studies;

(c)   Advising J-M to keep certain workers continuing to work at dusty areas in the plant even after J-M was aware that their lungs showed asbestos-induced changes, lest other workers including plaintiff be alerted to the dangers of working in the dust.

WHEREFORE, plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

### FIFTH CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF CAROL McINDOE COMPLAINS OF DEFENDANTS,  DOES 1-500, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

///

1    78.    Plaintiff incorporates by reference each and every paragraph of the First through

2  Fourth Causes of Action herein.

3    79.    Plaintiffs JAMES McINDOE and CAROL McINDOE were married on June 12,

4  1956, and at all times relevant to this action were, and are now, husband and wife.

5    80.    Prior to plaintiff JAMES McINDOE's injuries as alleged, he was able and did

6  perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, JAMES

7  McINDOE has been unable to perform the necessary duties as a spouse and the work and service

8  usually performed in the care, maintenance and management of the family home, and he will be

9  unable to perform such work, service and duties in the future.  As a proximate result thereof,

10  plaintiff CAROL McINDOE has been permanently deprived and will be deprived of the

11  consortium of her spouse, including the performance of duties, all to her damages, in an amount

12  presently unknown but which will be proved at the time of trial.

13    81.    Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first

14  occurred within one year of the date this complaint was filed.

15    82.    As a direct and proximate result of the acts of defendants, their "alternate entities,"

16  and each of them, and the severe injuries caused thereby to plaintiff JAMES McINDOE as set

17  forth in this complaint, plaintiff CAROL McINDOE has suffered, and for a long period of time

18  will continue to suffer loss of consortium, including but not by way of limitation, loss of services,

19  marital relations, society, comfort, companionship, love and affection of said spouse, and has

20  suffered severe mental and emotional distress and general nervousness as a result thereof.

21    WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and

22  each of them, as follows:

23  Plaintiff JAMES McINDOE:

24    1.    For plaintiff's general damages according to proof;

25    2.    For plaintiff's loss of income, wages and earning potential according to proof;

26    3.    For plaintiff's medical and related expenses according to proof;

27  Plaintiff CAROL McINDOE:

28  ///

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

1    4.    For plaintiff's damages for loss of consortium according to proof;

2    Plaintiffs JAMES McINDOE and CAROL McINDOE:

3    5.    For plaintiffs' cost of suit herein;

4    6.    For exemplary or punitive damages according to proof;

5    7.    For damages for fraud according to proof; and

6    8.    For such other and further relief as the court may deem just and proper, including

7    costs and pre-judgment interest as provided in C.C.P. § 998, C.C.P. § 1032, and related

8    provisions of law.

9    Dated:   9| A| 11                        BRAYTON✤PURCELL LLP

10

11                                           By:

12                                           David R. Donadio
                                             Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

<u>EXHIBIT A</u>

2

3       Plaintiff's exposure to asbestos and asbestos-containing products occurred at various

4   locations both inside and outside the State of California, including but not limited to:

5

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
|---|---|---|---|
| Goodyear Tire & Rubber | Goodyear Tire & Rubber Los Angeles, CA | Trainee | 1955 - 1956 (1 year) |
| US Navy | GENERAL W.A. MANN (TAP-112) | Navigator | 1956 - 1958 |
|  | Willamette Iron & Steel Co. (WISCO) Portland, OR |  | 4 - 5 months |
| Goodyear Tire & Rubber | Goodyear Tire & Rubber Los Angeles, CA | Trainee | 1959-1960 (1 year) |
| US Navy | CORAL SEA (CVA-43) | Engineer | 1960 - 1963 |
|  | Puget Sound Naval Shipyard Bremerton, WA |  | 1960 |
|  | Hunters Point Naval Shipyard San Francisco, CA |  | 2 years (on and off) |
| US Navy | Hunters Point Naval Shipyard San Francisco, CA | Administrator | 1963 - 1965 |
| US Navy | WORDEN (DLG-18) | Engineer | 1966 - 1968 |
|  | Hunters Point Naval Shipyard San Francisco, CA |  |  |
| US Navy | Naval Post Graduate School Monterey, CA | Trainee | 1968 (8 - 10 months) |
| US Navy | STORMES (DD-780) | Officer | 1970 - 1971 |
|  | Norfolk Naval Shipyard Portsmouth, VA |  |  |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ///                                                                                   EXHIBIT A

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

EXHIBIT A (cont'd.)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | FORT SNELLING (LSD-30) | Engineer | 8/1973 - 9/1975 |
| | Norfolk Naval Shipyard Portsmouth, VA | | |
| US Navy | Various naval vessels Pacific Theater | Officer | 1978 - 1981 |

NON-OCCUPATIONAL EXPOSURE:

AUTOMOBILE REPAIR:

During plaintiff's life he has performed approximately 9 brake jobs on his own personal vehicles.

1961 Volvo- plaintiff purchased this vehicle used and replaced the brakes on two occasions with BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK).

1966 Chevy - plaintiff purchased this vehicle used and replaced the brakes on one occasion with BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK).

1978 MERCEDES - plaintiff purchased this vehicle new. Plaintiff performed 5 brake jobs on this vehicle, including removing the original equipment manufacturer's brakes

1973 FORD Ranger-plaintiff purchased this vehicle new and removed the original equipment manufacturer's brakes and replaced them with BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK).

Plaintiff currently contends he was exposed to asbestos during this automobile repair work.

HOME REPAIR:

Plaintiff used UNITED STATES GYPSUM COMPANY and GOLD BOND (ASBESTOS CLAIMS MANAGEMENT CORPORATION) premixed joint and taping compounds and textures which he applied and sanded to patch walls in his home in Virginia in approximately 1976.

///

EXHIBIT A

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

1

## EXHIBIT B

2

3      Plaintiff retired from his last place of employment at regular retirement age.  He had

4  therefore suffered no disability from his asbestos-related disease as "disability" is defined in

5  California Code of Civil Procedure §340.2.

6      Plaintiff was diagnosed with mesothelioma on or about February 2011.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  ///                                                                                              EXHIBIT B

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(name, state bar number, and address):*
DAVID R. DONADIO, ESQ., STATE BAR NO. 154436
BRAYTON✦PURCELL LLP
222 Rush Landing Road
Novato, California 94948-6169
TELEPHONE NO.: (415) 898-1555          FAX NO.: (415) 898-1247
ATTORNEY FOR *(Name):* Plaintiff(s)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS:    111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME:

CASE NAME:
James Mcindoe and Carol Mcindoe vs. Asbestos Corporation Limited, et al.

FOR COURT USE ONLY

**CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court**

**SEP 16 2011**

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
SHAUNYA WESLEY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000)  ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | BC 469749 |
| | | JUDGE: |
| | | DEPT: |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☒ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental / Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial post-judgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☒ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date:

Ksenia L. Snylyk
(TYPE OR PRINT NAME)          ▶          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet shall be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SHORT TITLE: | CASE NUMBER |
|---|---|
| JAMES McINDOE and CAROL McINDOE V. ASBESTOS CORPORATION LIMITED, et al., | BC469749 |

## CIVIL CASE COVER SHEET ADDENDUM
### CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT

**This form is required in all new civil case filings in the Los Angeles Superior Court**

I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

[X] JURY OR [ ] NON-JURY AND CLASS ACTION? [ ] YES [X] NO   TIME ESTIMATED FOR TRIAL 14 [ ] HOURS/ [X] DAYS.

II. Select the correct district (4 steps):

**1** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column 1, the Civil Case Cover Sheet case type you selected.

**2** Check **one** Superior Court type of action in Column 2 which best describes the nature of this case.

**3** In Column 3 below, circle the reason for your choice of district that applies to the type of action you have checked.

### Applicable Reasons for Choosing District (See Column 3 below)

1. Class Actions must be filed in Central District.
2. May be filed in Central (Non-PI/PD/Out-of-county PI/PD)
3. District where cause of action arose.
4. District where injury, death or damage occurred.
5. District where performance is expressly required.
6. District where property is located.
7. District where petitioner resides.
8. District where defendant/respondent functions wholly therein.
9. District where one or more of the parties reside.
10. District where Labor Commissioner Office located.

**4** Fill in the information requested on page 4 in item III; complete item IV. Sign the certificate.

| | -1-<br>Civil Case Cover<br>Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100 Motor Vehicle -Personal Injury/Property Dam./Wrongful Death<br>Is this an uninsured motorist case? [ ] Yes [ ] No | 1., 2., 4. |
| **Other PI/PD/WD Tort** | Asbestos (04) | [ ] A6070 Asbestos Property Damage<br>[X] A7221 Asbestosis - Personal Injury/Wrongful Death | 2.<br>(2) |
| | Product Liability (24) | [ ] A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210 Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | Other PI/PDNVD (23) | [ ] A7250 Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230 Intentional PI/PDNVD (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7220 Other Personal Injury/Property Dam./Wrongful Death | 1., 2., 4. |
| **Non-PI/PDMD (Other)** | Business Tort (07) | [ ] A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 2., 3. |
| | Civil Rights (08) | [ ] A6005 Civil Rights | 1., 2., 3. |
| | Defamation (13) | [ ] A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013 Fraud (no contract) | 1., 2., 3., 5. |
| | Intellectual Proprty (19) | [ ] A6016 Intellectual Property | 2., 3. |
| | Prof. Negligence<br>(25) | [ ] A7240 Other Professional Health Care Malpractice | 1., 2., 3. |
| | | [ ] A6017 Legal Malpractice | 1., 2., 3. |
| | | [ ] A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3. |

982.2(b)(1)A 76C134
R1/00

**CIVIL CASE COVER SHEET ADDENDUM**
**CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT**

LASC Rule 2.0(d)
Page 1 of 4 pages
CA County Forms for HotDocs™
LA-182

| SHORT TITLE: | CASE NUMBER |
|---|---|
| JAMES McINDOE and CAROL McINDOE V. ASBESTOS CORPORATION LIMITED, et al., | |

| | -1-<br>Civil Case Cover<br>Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Above |
|---|---|---|---|
| **Employment** | Other Non-PI/PDNVD<br>Tort (35) | ☐ A6025 Other Intentional Tort Complaint (not PI/WD/PD) | 1., 2., 3. |
| | | ☐ A6026 Other Tort Complaint Case (not Intentional or PI/WD/PD) | 1., 2., 3. |
| | Wrongful Termination<br>(35) | ☐ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment<br>(15) | ☐ A6024 Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109 Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/<br>Warranty<br>(06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not LID or wrongful eviction) | 2., 5. |
| | | ☐ A6008 Contract/Warranty Breach -Seller Plaintiff(no fraud/negligence) | 2., 5. |
| | | ☐ A6019 Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections<br>(09) | ☐ A6002 Collections Case-Seller Plaintiff | 2., 5. |
| | | ☐ A6012 Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage<br>(18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract<br>(37) | ☐ A6009 Contractural Fraud | 1., 2., 3., 5. |
| | | ☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Emnt Dom/Inv. Cond.<br>(14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels _____ | 2. |
| | Wrongful Eviction<br>(33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property<br>(26) | ☐ A6018 Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032 Quiet Title | 2., 6. |
| | | ☐ A6060 Other Real Property(not em. domain, land lord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Det-<br>Comm(31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Det-Resid<br>(32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Det-Drugs<br>(38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration<br>Award (11) | ☐ A6115 Petition to Compel/Confirm Arbitration | 2., 6. |

**982.2(b)(1)A** 76C134<br>R1/00

**CIVIL CASE COVER SHEET ADDENDUM**<br>**CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT**

LASC Rule 2.0(d)

| SHORT TITLE: | CASE NUMBER |
|---|---|
| JAMES McINDOE and CAROL McINDOE V. ASBESTOS CORPORATION LIMITED, et al., | |

| -1-<br>Civil Case Cover<br>Sheet Category No. | -2-<br>Type of Action<br>(Check only one) | -3-<br>Applicable Reasons -<br>See Above |
|---|---|---|
| **Judicial Review (continued)** | | |
| Writ of Mandate<br><br>(02) | ☐ A6151 Writ - Administrative Mandamus | 2., 8. |
| | ☐ A6152 Writ - Mandamus on Limited Court Case Matter | 2. |
| | ☐ A6153 Writ - Other Limited Court Case Review | 2. |
| Oth. Jud. Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litig.** | | |
| Antitrust/Trade Reg.<br>(03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| Cnstrction Defect (10) | ☐ A6007 Construction defect | 1., 2., 3. |
| Clm. Inv Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| Securities Litig. (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| Tox. Tort/Envronm (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| Ins Covrage Clms from<br>Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | | |
| Enforcement<br>of Judgment<br><br>(20) | ☐ A6141 Sister State Judgment | 2., 9. |
| | ☐ A6160 Abstract of Judgment | 2., 6. |
| | ☐ A6107 Confession of Judgment (non-domestic relations) | 2., 9. |
| | ☐ A6140 Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | ☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | ☐ A6112 Other Enforcement of Judgment Case | 2., 8., 9. |
| RICO (27) | ☐ A6033 Racketeering Case | 1., 2., 8. |
| **Misc Clv Cmplts** | | |
| Other Complaints<br>(Not Specified Above)<br><br>(42) | ☐ A6030 Declaratory Relief Only | 1., 2., 8. |
| | ☐ A6040 Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | ☐ A6011 Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | ☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Prtnrshp/Crp. Gov.(21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| **Misc Civil Petitions** | | |
| Other Petitions<br>(Not Specified Above)<br><br>(43) | ☐ A6121 Civil/Workplace Harassment | 2., 3., 9. |
| | ☐ A6190 Election Contest | 2. |
| | ☐ A6110 Petition for Change of Name | 2., 7. |
| | ☐ A6170 Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | ☐ A6100 Other Civil Petition | 2., 9. |

**-4-**

**982.2(b)(1)A** 76C134

R1/00

**CIVIL CASE COVER SHEET ADDENDUM**
**CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT**

LASC Rule 2.0(d)

Page 3 of 4 pages

*CA County Forms for HotDocs™*
LA-182

| SHORT TITLE | CASE NUMBER |
|---|---|
| JAMES McINDOE and CAROL McINDOE vs ASBESTOS CORPORATION LIMITED, et al., | |

III. Choose the district: Enter the address of the accident, party residence or place of business, required performance, or other circumstance you have circled in Column 3 as the proper reason for filing in the district you selected.

| REASON CHECK THE NUMBER YOU CIRCLED IN 3 WHICH APPLIES IN THIS CASE. | ADDRESS: |
|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | Filed in the Central District pursuant to First Amended General Order No. 1 contained in the general order file, File No. C 700000 |
| CITY          STATE      ZIP CODE | |
| Los Angeles      CA      90012 | |

IV. Certificate/Declaration of Assignment: The undersigned hereby certifies and declares that the above entitled matter is properly filed for assignment to the _____Central_____ District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 2(b), (c) and (d) of this court for the reason checked above. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and this declaration was executed on ____9/16/11____ at, ____Los Angeles____ California.
(date)                    (city)

(SIGNATURE OF ATTORNEY/FILING PARTY)

## New Civil Case Filing Instructions

This addendum form is required so that the court can assign your case to the correct court district for filing and hearing. It satisfies the requirement for a certificate as to reasons for authorizing filing in the district, as set forth in Los Angeles Superior Court Local Rule 2 (d). It must be completed and submitted to the court along with the Civil Case Cover Sheet and the original Complaint or Petition in ALL civil cases filed in any district (including the Central District) of the Los Angeles County Superior Court.

**PLEASE HAVE THE FOLLOWING DOCUMENTS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk (Summons forms available at the Forms Counter).

3. Civil Case Cover Sheet form required by California Rule of Court 982.2(b)(1), completely filled out (Cover Sheet forms available at the Forms Counter).

4. This "Addendum to Civil Case Cover Sheet" form (Superior Court Form Number 982.2(b)(1)A, revised 7/99), completely filled out and submitted with the Civil Case Cover Sheet.

5. Payment in full of the filing fee or an Order of the Court waiving payment of filing fees in forma pauperis (fee waiver application forms available at the Filing Window)

6. In case of a plaintiff or petitioner who is a minor under 18 years of age, an Order of the Court appointing an adult as a guardian ad litem to act on behalf of the minor (Guardian ad Litem Application and Order forms available at the Forms Counter).

7. Additional copies of documents presented for endorsement by the Clerk and return to you.

* With the exception of cases concerning personal injury (including wrongful death) and property damage occurring in this County, Labor Commissioner Appeals, and those types of actions required to be filed in the Central District by Local Court Rule. 2(b), all civil actions may be optionally filed either in the Central District or in whichever other district the rule would allow them to be filed. When a party elects to file an action in Central District which would also be eligible for filing in one or more of the other districts, this form must still be submitted with location and assignment information completed.

| 982.2(b)(1)A 76C136 | CIVIL CASE COVER SHEET ADDENDUM | LASC Rule 2.0(d) |
|---|---|---|
| R1/00 | CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO DISTRICT | Page 4 of 4 pages |
| | | CA County Forms for HotDocs™ |
| | | LA-182 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE

BC 469749

Case Number:

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Steven J. Kleifield | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | **Hon. Emilie H. Elias\*** | **324** | **CCW** |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

**\*Class Actions**
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By _____ , Deputy Clerk

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Seven Rules were effective January 1, 1994.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE) and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

### Cases for Which Mediation May Be Appropriate
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

### Cases for Which Mediation May Not Be Appropriate
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." *Binding* arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

### Cases for Which Arbitration May Be Appropriate
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

### Cases for Which Arbitration May Not Be Appropriate
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

### Cases for Which Neutral Evaluation May Be Appropriate
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

### Cases for Which Neutral Evaluation May Not Be Appropriate
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a settlement officer to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**

- Civil Action Mediation (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878; Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- Retired Judge Settlement Conference
- Neutral Evaluation (Governed by Los Angeles Superior Court Rules, chapter 12.)
- Judicial Arbitration (Governed by Code of Civil Procedure sections 1141.10-1141.33, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- Eminent Domain Mediation (Governed by Code of Civil Procedure section 1250.420.)
- Civil Harassment Mediation
- Small Claims Mediation

**FAMILY LAW (non-custody):**

- Mediation
- Forensic Certified Public Accountant (CPA) Settlement Conference
- Settlement Conference
- Nonbinding Arbitration (Governed by Family Code section 2554.)

**PROBATE:**

- Mediation
- Settlement Conference

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| Party Select Panel | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| Random Select Panel | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| Private Neutral | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| | | | | | |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1206 | Chatsworth, CA 91311 | (818)576-8585 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-6151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-8425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

**Partially Funded by the Los Angeles County Dispute Resolution Program**
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):             FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
    (INSERT DATE)                                        (INSERT DATE)
    complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

The following parties stipulate:

Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)
Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)
Date:

_____          ➤  _____
    (TYPE OR PRINT NAME)                             (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

---

LACIV 036 (new)
LASC Approved 04/11

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR DEFENDANT)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:  FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR PLAINTIFF)

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR DEFENDANT)

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

Date:

_____     ➤  _____
(TYPE OR PRINT NAME)                          (ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date:   _____      _____
                                                        JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: | FAX NO. (Optional): | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   - ☐ Request for Informal Discovery Conference
   - ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

LACIV 094 (new)
LASC Approved 04/11

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

CIV-050

## – DO NOT FILE WITH THE COURT –
### – UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 –

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO. |
|---|---|
| DAVID R. DONADIO, ESQ.    (Bar # 154436)<br>BRAYTON✦PURCELL LLP<br>222 Rush Landing Road<br>Novato, California  94948-6169 | (415) 898-1555 |
| | FAX NO. |
| | (415) 898-1247 |

ATTORNEY FOR *(name):* .Plaintiff(s)

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: P.O. Box 151
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME:

PLAINTIFF: JAMES McINDOE and CAROL McINDOE
DEFENDANT: ASBESTOS CORPORATION LIMITED, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>BC 469749 |
|---|---|

To *(name of one defendant only):* BATH IRON WORKS CORPORATION

Plaintiff *(name of one plaintiff only):* JAMES McINDOE
seeks damages in the above-entitled action, as follows:

| | | | | AMOUNT |
|---|---|---|---|---|
| **1. General damages** | | | | |
| | a. | ☒ | Pain, suffering, and inconvenience | $ 1,000,000.00 |
| | b. | ☒ | Emotional distress | $ 1,000,000.00 |
| | c. | ☐ | Loss of consortium | $ _____ |
| | d. | ☐ | Loss of society and companionship *(wrongful death actions only)* | $ _____ |
| | e. | ☐ | Other *(specify)* | $ _____ |
| | f. | ☐ | Other *(specify)* | $ _____ |
| | g. | ☐ | Continued on Attachment 1.g. | |
| **2. Special damages** | | | | |
| | a. | ☒ | Medical expenses *(to date)* | $ 200,000.00 |
| | b. | ☒ | Future medical expenses *(present value)* | $ 200,000.00 |
| | c. | ☐ | Loss of earnings *(to date)* | $ _____ |
| | d. | ☒ | Loss of future earning capacity *(present value)* | $ 1,500,000.00 |
| | e. | ☐ | Property damage | $ _____ |
| | f. | ☐ | Funeral expenses *(wrongful death actions only)* | $ _____ |
| | g. | ☐ | Future contributions *(present value) (wrongful death actions only)* | $ _____ |
| | h. | ☐ | Value of personal service, advice, or training *(wrongful death actions only)* | $ _____ |
| | i. | ☒ | Other *(specify)*  LOSS OF HOUSEHOLD SERVICES | $ 1,000,000.00 |
| | j. | ☐ | Other *(specify)* | $ _____ |
| | k. | ☐ | Continued on Attachment 2.k. | |
| **3.** | | ☒ | **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* | $ 5,000,000.00 |

when pursuing a judgment in the suit filed against you.

Date:        September 23, 2011

David R. Donadio
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

(Proof of service on reverse)

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

Code of Civil Procedure, §§ 425.11, 425.115
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

CIV-050

## – DO NOT FILE WITH THE COURT –
## – UNLESS YOU ARE APPLYING FOR A DEFAULT JUDGMENT UNDER CODE OF CIVIL PROCEDURE § 585 –

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name and Address):* | TELEPHONE NO. |
|---|---|
| DAVID R. DONADIO, ESQ.   (Bar # 154436)<br>BRAYTON◆PURCELL LLP<br>222 Rush Landing Road<br>Novato, California  94948-6169<br>ATTORNEY FOR *(name):*  Plaintiff(s) | (415) 898-1555<br>FAX NO.<br>(415) 898-1247 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: P.O. Box 151
CITY AND ZIP CODE: Los Angeles  90012
BRANCH NAME:

PLAINTIFF:      JAMES McINDOE and CAROL McINDOE
DEFENDANT:   ASBESTOS CORPORATION LIMITED, et al.

| STATEMENT OF DAMAGES<br>(Personal Injury or Wrongful Death) | CASE NUMBER:<br>BC 469749 |
|---|---|

To *(name of one defendant only):* BATH IRON WORKS CORPORATION

Plaintiff *(name of one plaintiff only):* CAROL McINDOE
seeks damages in the above-entitled action, as follows:

|  |  |  | AMOUNT |
|---|---|---|---|
| 1. | **General damages** | | |
| | a. ☐ | Pain, suffering, and inconvenience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | b. ☐ | Emotional distress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | c. ☒ | Loss of consortium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 1,000,000.00 |
| | d. ☐ | Loss of society and companionship *(wrongful death actions only)* . . . . . . . . . | $ _____ |
| | e. ☐ | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | f. ☐ | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | g. ☐ | Continued on Attachment 1.g. | |
| 2. | **Special damages** | | |
| | a. ☐ | Medical expenses *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | b. ☐ | Future medical expenses *(present value)* . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | c. ☐ | Loss of earnings *(to date)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | d. ☐ | Loss of future earning capacity *(present value)* . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | e. ☐ | Property damage  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | f. ☐ | Funeral expenses *(wrongful death actions only)* . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | g. ☐ | Future contributions *(present value) (wrongful death actions only)* . . . . . . . . . | $ _____ |
| | h. ☐ | Value of personal service, advice, or training *(wrongful death actions only)* . . . . . . . . . | $ _____ |
| | i. ☐ | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | j. ☐ | Other *(specify)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ _____ |
| | k. ☐ | Continued on Attachment 2.k. | |

3. ☒   **Punitive damages:** Plaintiff reserves the right to seek punitive damages in the amount of *(specify)* . . . . . . $ 5,000,000.00
        when pursuing a judgment in the suit filed against you.

Date:        September 23, 2011

David R. Donadio
(TYPE OR PRINT NAME)
(Proof of service on reverse)

▶ _(signature)_
(SIGNATURE OF PLAINTIFF OR ATTORNEY FOR PLAINTIFF)

**STATEMENT OF DAMAGES**
**(Personal Injury or Wrongful Death)**

Code of Civil Procedure, §§ 425.11, 425.115
www.courtinfo.ca.gov

*LexisNexis® Automated California Judicial Council Forms*

EXHIBIT 2

RECEIVED

SEP 3 0 2011

JACKSON JENKINS RENSTROM LLP

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
2   NANCY T. WILLIAMS, ESQ., S.B. #201095
    BRAYTON❖PURCELL LLP
3   Attorneys at Law
    222 Rush Landing Road
4   P.O. Box 6169
    Novato, California  94948-616 SENT TO CALENDAR
5   (415) 898-1555
                                        SEP 3 0 2011
6
    Attorneys for Plaintiffs        JACKSON JENKINS RENSTROM LLP
7

*handwritten: GAT / 000 / RSS / 112C / (root m Lms) / on service list / cc DTP*

8                 SUPERIOR COURT OF CALIFORNIA

9                   COUNTY OF LOS ANGELES

10  JAMES McINDOE and              )   ASBESTOS
    CAROL McINDOE,                 )   No. BC469749
11                                 )
              Plaintiffs,          )   NOTICE OF ORDER TO SHOW CAUSE
12                                 )   HEARING AND CASE MANAGEMENT
    vs.                            )   CONFERENCE
13                                 )
    ASBESTOS CORPORATION LIMITED,  )
14  et al.,                        )   Honorable Richard E. Rico
                                   )   Department 17
15            Defendants.          )

16

17  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

18      PLEASE TAKE NOTICE that an Order to Show Cause Hearing re: Failure to File Proof

19  of Service has been scheduled for **November 15, 2011, at 8:30 a.m. in Department 17** of this

20  Court.  A true and correct copy of the Court's Order to Show Cause Hearing is attached hereto as

21  Exhibit A.

22      PLEASE TAKE FURTHER NOTICE that a Case Management Conference has been

23  scheduled for **January 17, 2012, at 8:30 a.m. in Department 17** of this Court.  A true and

24  correct copy of the Court's Notice of Case Management Conference is attached hereto as

25  Exhibit B.  Plaintiffs' counsel was ordered to give notice.

26  Dated: *SEPT. 29, 2011*            BRAYTON❖PURCELL LLP

27

28                                     By: *[signature]*
                                           Nancy T. Williams
                                           Attorneys for Plaintiffs

K:\LA\116248\PLD\no-11-15-11-osc-1-17-12-cmc.wpd                    1
NOTICE OF ORDER TO SHOW CAUSE HEARING AND CASE MANAGEMENT CONFERENCE

96766

# Exhibit A

**SCANNED**

NOTICE SENT TO:

Brayton, Alan R., Esq.
Brayton & Purcell LLP
222 Rush Landing Road, P.O. Box 6169
Novato,         CA  94948-6169

FILE STAMP

**ORIGINAL FILED**

SEP 19 2011

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

JAMES MCINDOE ET AL

Plaintiff(s),

VS.

ASBESTOS CORPORATION LIMITED ET AL

Defendant(s).

CASE NUMBER

BC469749

### ORDER TO SHOW CAUSE HEARING

To the party/attorney of record:

You are ordered to appear for an Order to Show Cause Hearing on November 15, 2011 at 8:30 am in Dept. 17 of this court, Central District, 111 North Hill Street, Los Angeles, California 90012, and show cause why sanctions should not be imposed for:

**Failure to file Proof of Service of [ ] Petition [✓] Summons and [✓] Complaint [ ] Cross-Complaint pursuant to California Rules of Court, rule 3.110(b) and (c) as to:**

Failure to comply or appear may result in sanctions, pursuant to one or more of the following: California Rules of Court, rule 2.30, and rule 3.1340; Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.310, 583.360, 583.410, 583.420, 583.430; and Government Code section 68608.

[✓] To avoid a mandatory appearance all required documents must be filed in [ ] this Dept [✓] Clerk's Office, Room 102 at least 5 court days prior to the date of the hearing.

[ ] The Court may infer from your failure to appear that possession of the premises is no longer at issue, and that your case is not entitled to preference in setting pursuant to Code of Civil Procedure section 1179a.

[ ] You are ordered to give notice of said hearing forthwith to any party served with summons and complaint prior to OSC Hearing and file a Proof of Service in this department or Clerk's Office at least 5 court days prior to the date of the hearing.

Dated: September 19, 2011

Judicial Officer
RICHARD E. RICO

### CERTIFICATE OF MAILING

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Order to Show Cause Hearing upon each party or counsel named above by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown above with the postage thereon fully prepaid.

Date: September 19, 2011

John A. Clarke, EXECUTIVE OFFICER/CLERK

By _____, Deputy Clerk

### ORDER TO SHOW CAUSE HEARING

LACIV 166-1 (Rev. 09/08)
LASC Approved 06-04

LASC Local Rules, Chapter 7
Cal. Rules of Court, rule 2.30

EXHIBIT A

# Exhibit B

SCANNED

NOTICE SENT TO:

Brayton, Alan R., Esq.
Brayton & Purcell LLP
222 Rush Landing Road, P.O. Box 6169
Novato,        CA  94948-6169

ORIGINAL FILED

FILED
SEP 19 2011

LOS ANGELES
SUPERIOR COURT

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| JAMES MCINDOE ET AL | CASE NUMBER |
| Plaintiff(s), | BC469749 |
| VS. | |
| ASBESTOS CORPORATION LIMITED ET AL | NOTICE OF CASE |
| Defendant(s). | MANAGEMENT CONFERENCE |

**TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:**

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for January 17, 2012 at 8:30 am in Dept. 17 at 111 North Hill Street, Los Angeles, California 90012.

**NOTICE TO DEFENDANT:     THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.).

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date:  September 19, 2011

Judicial Officer
RICHARD E. RICO

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[✓] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[  ] by personally giving the party notice upon filing the complaint.
Date:  September 19, 2011

John A. Clarke, Executive Officer/Clerk

by _____  Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

EXHIBIT B

PROOF OF SERVICE BY MAIL

1

2   I am employed in the County of Marin, State of California.  I am over the age of 18
years and am not a party to the within action.  My business address is 222 Rush Landing Road,
3   P.O. Box 6169, Novato, California 94948-6169.

4   On _Sept. 29_____, 2011, I served the following document(s) described as:

5   NOTICE OF ORDER TO SHOW CAUSE HEARING AND CASE MANAGEMENT
CONFERENCE
6
on the interested party(ies) in this action as follows:
7
SEE ATTACHED LIST
8

9        ____   BY PERSONAL MAILING:
10
I deposited in the U.S. Mail at Novato, California, the above-described document(s), in a
11   sealed envelope, with postage fully prepaid, addressed to the party(ies) as stated above.

12        X    BY OFFICE MAILING:
13
I am readily familiar with this office's practice of collection and processing
14   correspondence, pleadings and other matters for mailing with the United States Postal
Service on that same day with postage thereon fully prepaid at Petaluma, California in
15   the ordinary course of business.  I placed in the outgoing office mail, the above-
described document(s), in a sealed envelope, addressed to the party(ies) as stated above,
16   for collection and processing for mailing the same day in accordance with ordinary
office practices.
17
Executed _Sept. 29_____, 2011, at Novato, California.
18
I declare under penalty of perjury under the laws of the State of California that the
19   foregoing is true and correct.

20

21                                          Jennifer S. Harwood

22

23

24

25

26

27   James McIndoe, et al. v. Asbestos Corporation Limited, et al.
Los Angeles Superior Court Case No.  BC469749
28

PROOF OF SERVICE BY MAIL

BRAYTON◆PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

Brayton-Purcell Service List

1

Date Created: 9/29/2011-11:39:39 AM
(JSH)
Created by: LitSupport - ServiceList - Live
Matter Number: 116248.001 - James McIndoe

Run By : Harwood, Jennifer S.

**Armstrong & Associates, LLP**
One Kaiser Plaza, Suite 625
Oakland, CA 94612
510-433-1830   510-433-1836 (fax)
Defendants:
   Crown Cork & Seal Company, Inc.
   (CC&S)

**Bassi, Edlin, Huie & Blum LLP**
500 Washington Street
Suite 700
San Francisco, CA 94111
415-397-9006   415-397-1339 (fax)
Defendants:
   Hopeman Brothers, Inc. (HOPE)
   J.T. Thorpe & Son, Inc. (THORPE)

**Bishop, Barry, Drath**
Watergate Tower III
2000 Powell Street, Suite 1425
Emeryville, CA 94608
510-596-0888   510-596-0899 (fax)
Defendants:
   American Chemet Corporation
   (AMECHM)

**Booth, Mitchel & Strange LLP**
707 Wilshire Blvd., Suite 4450
Los Angeles, CA 90017
213-738-0100   213-380-3308 (fax)
Defendants:
   York International Corporation (YORKIN)

**Brydon Hugo & Parker**
135 Main Street, 20th Floor
San Francisco, CA 94105
415-808-0300   415-808-0333 (fax)
Defendants:
   Foster Wheeler LLC (FKA Foster Wheeler
   Corporation) (FOSTER)

**Crosby & Rowell, LLP**
299 Third Street, 2nd Floor
Oakland, CA 94607
510-267-0300   510-839-6610 (fax)
Defendants:
   Goulds Pumps, Inc. (GOULDP)

**Drinker Biddle & Reath LLP**
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
415-591-7500   415-591-7510 (fax)
Defendants:
   VWR International, Inc. (VWRINT)

**Gordon & Rees LLP**
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
415-986-5900   415-986-8054 (fax)
Defendants:
   Ingersoll-Rand Company (INGRSL)

**Hassard Bonnington LLP**
Two Embarcadero Center
Suite 1800
San Francisco, CA 94111
415-288-9800   415-288-9802 (fax)
Defendants:
   John Crane, Inc. (CRANE)

**Howard Rome Martin & Ridley**
1775 Woodside Road, Suite 200
Redwood City, CA 94061
650-365-7715   650-364-5297 (fax)
Defendants:
   IMO Industries, Inc. (IMOIND)

**Jackson Jenkins Renstrom LLP**
55 Francisco Street, 6th Floor
San Francisco, CA 94133
415-982-3600   415-982-3700 (fax)
Defendants:
   Bath Iron Works Corporation (BATHIR)

**K & L Gates LLP**
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
415-882-8200   415-882-8220 (fax)
Defendants:
   Crane Co. (CRANCO)

**K&L Gates, LLP**
10100 Santa Monica Boulevard, Seventh
Floor
Los Angeles, CA 90067
310-552-5000   310-552-5001 (fax)
Defendants:
   Crane Co. (CRANCO)

**Kasowitz, Benson, Torres & Friedman,
LLP**
101 California Street
Suite 2050
San Francisco, CA 94111
415-421-6140   415-398-5030 (fax)
Defendants:
   Cyprus Amax Minerals Company
   (CAMCO)

**Lankford Crawford Moreno LLP**
1850 Mt. Diablo Blvd.
Suite 600
Walnut Creek, CA 94596
925-300-3520   925-300-3386 (fax)
Defendants:
   Ford Motor Company (FORD)

**Lewis Brisbois Bisgaard & Smith LLP**
221 North Figueroa Street
Suite 1200
Los Angeles, CA 90012
213-250-1800   213-580-7942 (fax)
Defendants:
   Goodyear Tire & Rubber Company, The
   (GOODYR)

**Liner, Grode, Stein, Yankelevitz Sunshine
Regenstreif & Taylor LLP**
199 Fremont Street
20th Floor
San Francisco, CA 94105-2255
415-489-7700   415-489-7701 (fax)
Defendants:
   Warren Pumps, LLC (WARPUM)

**McKenna Long & Aldridge**
300 S. Grand Avenue
Suite 1400
Los Angeles, CA 90071-2901
213-688-1000   213-243-6330 (fax)
Defendants:
   Velan Valve Corporation (VELVAL)

**Morgan, Lewis & Bockius LLP**
One Market, Spear Tower
San Francisco, CA 94105
415-442-1000   415-442-1001 (fax)
Defendants:
   Yarway Corporation (YARWAY)

**Morris, Polich & Purdy**
1055 West Seventh St.
24th Floor
Los Angeles, CA 90017
213-891-9100   213-488-1178 (fax)
Defendants:
   Crown Cork & Seal Company, Inc.
   (CC&S)

**Murrin & Associates LLC**
71 Lafayette Circle
Suite B
Lafayette, CA 94549
925-284-5770   925-262-2111 (fax)
Defendants:
   Soco West, Inc. (SOCWES)

Date Created: 9/29/2011-11:39:39 AM                     Run By : Harwood, Jennifer S.
(JSH)
Created by: LitSupport - ServiceList - Live
Matter Number: 116248.001 - James McIndoe

**Perkins Coie LLP**
1888 Century Park E
Suite 1700
Los Angeles, CA  90067-1721
310-788-9900   310-788-3399 (fax)
Defendants:
  Honeywell International, Inc.  (HONEYW)

**Pond North, LLP**
350 South Grand Avenue
Suite 3300
Los Angeles, CA  90071
213-617-6170   213-623-3594 (fax)
Defendants:
  CBS Corporation (fka Viacom Inc., fka
Westinghouse Electric Corporation)
(VIACOM)

**Recordtrak - Headquarters**
651 Allendale Road
P.O. Box 61591
King of Prussia, PA  19406
610-992-5000   610-992-1416 (fax)
Defendants:
  Recordtrak - Headquarters (RECTHQ)

**Schiff Hardin LLP**
One Market Plaza
Spear Street Tower, 32nd Floor
San Francisco, CA  94105
415-901-8700   415-901-8701 (fax)
Defendants:
  General Refractories Company (GENREF)
  Owens-Illinois, Inc.  (OI)

**Sedgwick LLP**
801 South Figueroa Street
18th Floor
Los Angeles, CA  90017
213-426-6900   213-426-6921 (fax)
Defendants:
  Parker-Hannifin Corporation (PARKHF)

**Sedgwick LLP**
333 Bush Street
30th Floor
San Francisco, CA  94104-2834
415-781-7900   415-781-2635 (fax)
Defendants:
  General Electric Company (GE)

**Selman Breitman LLP**
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA  90025
310-445-0800   310-473-2525 (fax)
Defendants:
  Pep Boys Manny Moe & Jack of
California, The (PEPBOY)
  R.T. Vanderbilt Company, Inc.
(VANDER)
  Yarway Corporation (YARWAY)

**Selman Breitman LLP**
33 New Montgomery
6th Floor
San Francisco, CA  94105
415-979-0400   415-979-2099 (fax)
Defendants:
  Pep Boys Manny Moe & Jack of
California, The (PEPBOY)

**Steptoe & Johnson LLP**
633 West Fifth St., 7th Floor
Los Angeles, CA  90071
213-439-9400   213-439-9599 (fax)
Defendants:
  Metropolitan Life Insurance Company
(MET)

**Tucker Ellis & West LLP**
135 Main Street, Suite 700
San Francisco, CA  94105
415-617-2400   415-617-2409 (fax)
Defendants:
  Huntington Ingalls Incorporated (fka
Northrop Grumman Shipbuilding, Inc.)
(NGSHBU)

**Walsworth, Franklin, Bevins & McCall**
One City Boulevard W.
5th Floor
Orange, CA  92868-3677
714-634-2522   714-634-0686 (fax)
Defendants:
  Thomas Dee Engineering Company (DEE)

**Wilson, Elser, Moskowitz, Edelman &
Dicker LLP**
555 South Flower Street
Suite 2900
Los Angeles, CA  90071
213-443-5100   213-443-5101 (fax)
Defendants:
  Asbestos Corporation Limited (ASBLTD)

**Wilson, Elser, Moskowitz, Edelman &
Dicker LLP**
525 Market Street, 17th Floor
San Francisco, CA  94105-2725
415-433-0990   415-434-1370 (fax)
Defendants:
  Asbestos Corporation Limited (ASBLTD)

**Yaron & Associates**
601 California Street, 21st Floor
San Francisco, CA  94108
415-658-2929   415-658-2930 (fax)
Defendants:
  Todd Shipyards Corporation (TODD)

**Yukevich Calfo & Cavanaugh**
355 South Grand Avenue
15th Floor
Los Angeles, CA  90071-1560
213-362-7777   213-362-7788 (fax)
Defendants:
  Ford Motor Company (FORD)

EXHIBIT 3

# Brayton✦Purcell LLP

### TRIAL LAWYERS

ALAN R. BRAYTON
GILBERT L. PURCELL

DAVID R. DONADIO
LLOYD F. LEROY

OF COUNSEL
JEFFREY D. EISENBERG*

* ADMITTED ONLY IN STATES
OTHER THAN CALIFORNIA

222 Rush Landing Road
P O Box 6169
Novato, California 94948-6169
Telephone: (415) 898-1555
Facsimile: (415) 898-1247

Portland: (503) 295-4931
Los Angeles: (415) 898-1555
Salt Lake City: (801) 366-9100

Email: mail@braytonlaw.com
www.braytonlaw.com



September 29, 2011

RECEIVED

SEP 30 2011

JACKSON JENKINS RENSTROM LLP

To All Counsel:

Re:   James McIndoe, et al., v. Asbestos Corporation Limited, et al.
      Los Angeles Superior Court Case No. BC469749

      Our client, James McIndoe, plaintiff in the above action, died on September 27, 2011.  It is our contention that any discovery you have propounded (in this case only), to which plaintiff had not yet responded, is moot.  Once it is determined that this action will be continued, you will be notified of any motion to substitute Personal Representative or Successor-in-Interest in this action.  At that time, you may contact us to discuss whether to consider your discovery directed to the heirs or if you wish to serve new discovery.

Very truly yours,

Amanda Mendoza
Paralegal

K:\LAU\16MISC\CORRESP\tu-death defs.wpd

96765

## PROOF OF SERVICE BY MAIL

I am employed in the County of Sonoma, State of California.  I am over the age of 18 years and am not a party to the within action.  My business address is 1324 Rand Street, Petaluma, California 94954.

On _____SEP 2 9 2011_____, I served the within:

**DEATH NOTICE**

on the interested parties in this action by transmitting a true copy thereof in the following manner.

I placed in a sealed envelope, postage thereon prepaid, addressed and served as follows:

See Attached Service List

BY MAIL SERVICE:    I am readily familiar with the business practice at my place of business for collection and processing of correspondence for delivery by mail. Correspondence so collected and processed is deposited with the United States Postal Service on the same day in the ordinary course of business. On the above date the said envelope was collected for the United States Postal Service following ordinary business practices.

Executed _____SEP 2 9 2011_____, at Petaluma, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

James McIndoe, et al., v. Asbestos Corporation Limited, et al.,
Los Angeles Superior Court Case No. BC469749

BRAYTON✦PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

PROOF OF SERVICE BY MAIL

Brayton-Purcell Service List

1

Date Created: 9/29/2011-3:35:43 PM
Created by: LitSupport - ServiceList - Live
Matter Number: 116248.001 - James McIndoe

Run By : Mendoza, Amanda (AXM)

AGENT FOR SERVICE
Asbestos Corporation Limited
840 Blvd Ouellet Ouest
Thetford Mines
Quebec, QC  G6G 7A5
418-692-3751   418-692-2887 (fax)
**Defendants:**
   Asbestos Corporation Limited (ASBLTD)

AGENT FOR SERVICE
C T Corporation System, Inc.
1801 West Bay Drive NW
Suite 206
Olympia, WA 98502
360-357-6794
**Defendants:**
   Todd Shipyards Corporation (TODD)

AGENT FOR SERVICE
C T Corporation System, Inc. - Los Angeles
818 West Seventh Street
2nd Floor
Los Angeles, CA  90017
213-627-8252   213-614-9347 (fax)
**Defendants:**
   Bath Iron Works Corporation (BATHIR)
   Crane Co. (CRANCO)
   Ford Motor Company (FORD)
   General Electric Company (GE)
   Goulds Pumps, Inc. (GOULDP)
   Huntington Ingalls Incorporated (fka Northrop Grumman Shipbuilding, Inc.) (NGSHBU)
   Ingersoll-Rand Company (INGRSL)
   John Crane, Inc. (CRANE)
   Yarway Corporation (YARWAY)
   York International Corporation (YORKIN)

AGENT FOR SERVICE
Conway, John W.
One Crown Way
Philadelphia, PA  19154
**Defendants:**
   Crown Cork & Seal Company, Inc. (CC&S)

AGENT FOR SERVICE
Corporation Service Company - DE
2711 Centerville Road, # 400
Wilmington, DE  19808
302-636-5400   302-636-5454 (fax)
**Defendants:**
   Cyprus Amax Minerals Company (CAMCO)

AGENT FOR SERVICE
Corporation Service Company - MA
84 State St
Boston, MA  02109
**Defendants:**
   Warren Pumps, LLC (WARPUM)

AGENT FOR SERVICE
CSC - Lawyers Incorporating Service
2730 Gateway Oaks Drive, #100
Sacramento, CA  95833
800-222-2122   916-563-2121 (fax)
**Defendants:**
   Goodyear Tire & Rubber Company, The (GOODYR)
   Honeywell International, Inc. (HONEYW)

AGENT FOR SERVICE
CSC-Lawyers Incorporating Services, Inc.
2730 Gateway Oaks #100
Sacramento, CA  95833
800-222-2122   916-563-2121 (fax)
**Defendants:**
   IMO Industries, Inc. (IMOIND)

AGENT FOR SERVICE
Darger & Errante, LLP
116 East 27th Street at Park Avenue
12th Floor
New York, NY  10016
212-452-5300   212-452-5301 (fax)
**Defendants:**
   Pep Boys Manny Moe & Jack of California, The (PEPBOY)

AGENT FOR SERVICE
Donald J. Harman
MetLife
1095 Avenue of the Americas
New York, NY  10036
**Defendants:**
   Metropolitan Life Insurance Company (MET)

AGENT FOR SERVICE
Eckert, Seamans, Cherin & Mellott, LLC
Case Management and Technology Center
U.S. Steel Tower, 600 Grant Street, 5th Floor
Pittsburgh, PA  15219
412-566-6000   412-566-6099 (fax)
**Defendants:**
   CBS Corporation (fka Viacom Inc., fka Westinghouse Electric Corporation) (VIACOM)

AGENT FOR SERVICE
Foster Wheeler LLC (FKA Foster Wheeler Corporation)
Perryville Corporate Park
Clinton, NJ  08809-4000
908-730-4000   908-730-5315 (fax)
**Defendants:**
   Foster Wheeler LLC (FKA Foster Wheeler Corporation) (FOSTER)

AGENT FOR SERVICE
Huffman, Mona
Owens-Illinois, Inc.
1 Michael Owens Way
Perrysburg, OH  43551
**Defendants:**
   Owens-Illinois, Inc. (OI)

AGENT FOR SERVICE
Jeff Fadeff, Esq.
Bassi, Martini, Edlin & Blum
500 Washington Street, Suite 700
San Francisco, CA  94111
415-397-9006   415-397-1339 (fax)
**Defendants:**
   J.T. Thorpe & Son, Inc. (THORPE)

AGENT FOR SERVICE
Parker-Hannifin Corp.
Dianne McFarlane-Legal Dept.
6035 Parkland Blvd.
Cleveland, OH  44124-4141
216-896-3000   216-896-4000 (fax)
**Defendants:**
   Parker-Hannifin Corporation (PARKHF)

Brayton-Purcell Service List                                              2

Date Created: 9/29/2011-3:35:43 PM                    Run By : Mendoza, Amanda (AXM)
Created by: LitSupport - ServiceList - Live
Matter Number: 116248.001 - James McIndoe

AGENT FOR SERVICE
Parsons, Michael
94 Avenue C
Williston, VT 05495
Defendants:
    Velan Valve Corporation (VELVAL)

AGENT FOR SERVICE
Prentice Hall Corporation Systems, Inc.
2730 Gateway Oaks Blvd.
Suite 100
Sacramento, CA 95833
800-222-2122  916-563-2121 (fax)
Defendants:
    VWR International, Inc. (VWRINT)

AGENT FOR SERVICE
President
President
1 Bala Ave. Suite 310
Bala Cynwyd, PA 19004
Defendants:
    General Refractories Company (GENREF)

AGENT FOR SERVICE
Sanford, Thomas C.
170 S. Euclid Ave.
Pasadena, CA 91101-2421
Defendants:
    Soco West, Inc. (SOCWES)

AGENT FOR SERVICE
Schindler, E.L.
Highway 518 and BN RR Box 1160
East Helena, MT 59635
Defendants:
    American Chemet Corporation
(AMECHM)

AGENT FOR SERVICE
Thomas Dee, Jr., C.E.O.
4314 Redwood Highway #300
San Rafael, CA 94903
Defendants:
    Thomas Dee Engineering Company (DEE)

AGENT FOR SERVICE
United States Corporation Company
1201 Hayes Street
Tallahassee, FL 32301
Defendants:
    R.T. Vanderbilt Company, Inc.
(VANDER)

AGENT FOR SERVICE
Ward, Don
Special Claims Services, Inc.
809 Coshocton Ave., Suite 1
Mount Vernon, OH 43050
Defendants:
    Hopeman Brothers, Inc. (HOPE)

Armstrong & Associates, LLP
One Kaiser Plaza, Suite 625
Oakland, CA 94612
510-433-1830   510-433-1836 (fax)
Defendants:
    Crown Cork & Seal Company, Inc.
(CC&S)

Bassi, Edlin, Huie & Blum LLP
500 Washington Street
Suite 700
San Francisco, CA 94111
415-397-9006   415-397-1339 (fax)
Defendants:
    Hopeman Brothers, Inc. (HOPE)
    J.T. Thorpe & Son, Inc. (THORPE)

Bishop, Barry, Drath
Watergate Tower III
2000 Powell Street, Suite 1425
Emeryville, CA 94608
510-596-0888   510-596-0899 (fax)
Defendants:
    American Chemet Corporation
(AMECHM)

Booth, Mitchel & Strange LLP
707 Wilshire Blvd., Suite 4450
Los Angeles, CA 90017
213-738-0100   213-380-3308 (fax)
Defendants:
    York International Corporation (YORKIN)

Brydon Hugo & Parker
135 Main Street, 20th Floor
San Francisco, CA 94105
415-808-0300   415-808-0333 (fax)
Defendants:
    Foster Wheeler LLC (FKA Foster Wheeler
Corporation) (FOSTER)

Crosby & Rowell, LLP
299 Third Street, 2nd Floor
Oakland, CA 94607
510-267-0300   510-839-6610 (fax)
Defendants:
    Goulds Pumps, Inc. (GOULDP)

Drinker Biddle & Reath LLP
50 Fremont Street, 20th Floor
San Francisco, CA 94105-2235
415-591-7500   415-591-7510 (fax)
Defendants:
    VWR International, Inc. (VWRINT)

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111
415-986-5900   415-986-8054 (fax)
Defendants:
    Ingersoll-Rand Company (INGRSL)

Hassard Bonnington LLP
Two Embarcadero Center
Suite 1800
San Francisco, CA 94111
415-288-9800   415-288-9802 (fax)
Defendants:
    John Crane, Inc. (CRANE)

Howard Rome Martin & Ridley
1775 Woodside Road, Suite 200
Redwood City, CA 94061
650-365-7715   650-364-5297 (fax)
Defendants:
    IMO Industries, Inc. (IMOIND)

Jackson Jenkins Renstrom LLP
55 Francisco Street, 6th Floor
San Francisco, CA 94133
415-982-3600   415-982-3700 (fax)
Defendants:
    Bath Iron Works Corporation (BATHIR)

K & L Gates LLP
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111
415-882-8200   415-882-8220 (fax)
Defendants:
    Crane Co. (CRANCO)

K&L Gates, LLP
10100 Santa Monica Boulevard, Seventh
Floor
Los Angeles, CA 90067
310-552-5000   310-552-5001 (fax)
Defendants:
    Crane Co. (CRANCO)

Date Created: 9/29/2011-3:35:43 PM                      Run By : Mendoza, Amanda (AXM)
Created by: LitSupport - ServiceList - Live
Matter Number: 116248.001 - James McIndoe

**Kasowitz, Benson, Torres & Friedman, LLP**
101 California Street
Suite 2050
San Francisco, CA 94111
415-421-6140   415-398-5030 (fax)
Defendants:
  Cyprus Amax Minerals Company (CAMCO)

**Lankford Crawford Moreno LLP**
1850 Mt. Diablo Blvd.
Suite 600
Walnut Creek, CA 94596
925-300-3520   925-300-3386 (fax)
Defendants:
  Ford Motor Company (FORD)

**Lewis Brisbois Bisgaard & Smith LLP**
221 North Figueroa Street
Suite 1200
Los Angeles, CA 90012
213-250-1800   213-580-7942 (fax)
Defendants:
  Goodyear Tire & Rubber Company, The (GOODYR)

**Liner, Grode, Stein, Yankelevitz Sunshine Regenstreif & Taylor LLP**
199 Fremont Street
20th Floor
San Francisco, CA 94105-2255
415-489-7700   415-489-7701 (fax)
Defendants:
  Warren Pumps, LLC (WARPUM)

**McKenna Long & Aldridge**
300 S. Grand Avenue
Suite 1400
Los Angeles, CA 90071-2901
213-688-1000   213-243-6330 (fax)
Defendants:
  Velan Valve Corporation (VELVAL)

**Morgan, Lewis & Bockius LLP**
One Market, Spear Tower
San Francisco, CA 94105
415-442-1000   415-442-1001 (fax)
Defendants:
  Yarway Corporation (YARWAY)

**Morris, Polich & Purdy**
1055 West Seventh St.
24th Floor
Los Angeles, CA 90017
213-891-9100   213-488-1178 (fax)
Defendants:
  Crown Cork & Seal Company, Inc. (CC&S)

**Murrin & Associates LLC**
71 Lafayette Circle
Suite B
Lafayette, CA 94549
925-284-5770   925-262-2111 (fax)
Defendants:
  Soco West, Inc. (SOCWES)

**Perkins Coie LLP**
1888 Century Park E
Suite 1700
Los Angeles, CA 90067-1721
310-788-9900   310-788-3399 (fax)
Defendants:
  Honeywell International, Inc. (HONEYW)

**Pond North, LLP**
350 South Grand Avenue
Suite 3300
Los Angeles, CA 90071
213-617-6170   213-623-3594 (fax)
Defendants:
  CBS Corporation (fka Viacom Inc., fka Westinghouse Electric Corporation) (VIACOM)

**Recordtrak - Headquarters**
651 Allendale Road
P.O. Box 61591
King of Prussia, PA 19406
610-992-5000   610-992-1416 (fax)
Defendants:
  Recordtrak - Headquarters (RECTHQ)

**Schiff Hardin LLP**
One Market Plaza
Spear Street Tower, 32nd Floor
San Francisco, CA 94105
415-901-8700   415-901-8701 (fax)
Defendants:
  General Refractories Company (GENREF)
  Owens-Illinois, Inc. (OI)

**Sedgwick LLP**
801 South Figueroa Street
18th Floor
Los Angeles, CA 90017
213-426-6900   213-426-6921 (fax)
Defendants:
  Parker-Hannifin Corporation (PARKHF)

**Sedgwick LLP**
333 Bush Street
30th Floor
San Francisco, CA 94104-2834
415-781-7900   415-781-2635 (fax)
Defendants:
  General Electric Company (GE)

**Selman Breitman LLP**
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA 90025
310-445-0800   310-473-2525 (fax)
Defendants:
  Pep Boys Manny Moe & Jack of California, The (PEPBOY)
  R.T. Vanderbilt Company, Inc. (VANDER)
  Yarway Corporation (YARWAY)

**Selman Breitman LLP**
33 New Montgomery
6th Floor
San Francisco, CA 94105
415-979-0400   415-979-2099 (fax)
Defendants:
  Pep Boys Manny Moe & Jack of California, The (PEPBOY)

**Steptoe & Johnson LLP**
633 West Fifth St., 7th Floor
Los Angeles, CA 90071
213-439-9400   213-439-9599 (fax)
Defendants:
  Metropolitan Life Insurance Company (MET)

**Tucker Ellis & West LLP**
135 Main Street, Suite 700
San Francisco, CA 94105
415-617-2400   415-617-2409 (fax)
Defendants:
  Huntington Ingalls Incorporated (fka Northrop Grumman Shipbuilding, Inc.) (NGSHBU)

Brayton-Purcell Service List                                              4

Date Created: 9/29/2011-3:35:43 PM                          Run By : Mendoza, Amanda (AXM)
Created by: LitSupport - ServiceList - Live
Matter Number: 116248.001 - James McIndoe

**Walsworth, Franklin, Bevins & McCall**
One City Boulevard W.
5th Floor
Orange, CA  92868-3677
714-634-2522   714-634-0686 (fax)
Defendants:
   Thomas Dee Engineering Company (DEE)

**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
555 South Flower Street
Suite 2900
Los Angeles, CA  90071
213-443-5100   213-443-5101 (fax)
Defendants:
   Asbestos Corporation Limited (ASBLTD)

**Wilson, Elser, Moskowitz, Edelman & Dicker LLP**
525 Market Street, 17th Floor
San Francisco, CA  94105-2725
415-433-0990   415-434-1370 (fax)
Defendants:
   Asbestos Corporation Limited (ASBLTD)

**Yaron & Associates**
601 California Street, 21st Floor
San Francisco, CA  94108
415-658-2929   415-658-2930 (fax)
Defendants:
   Todd Shipyards Corporation (TODD)

**Yukevich Calfo & Cavanaugh**
355 South Grand Avenue
15th Floor
Los Angeles, CA  90071-1560
213-362-7777   213-362-7788 (fax)
Defendants:
   Ford Motor Company (FORD)

EXHIBIT 4

1  GABRIEL A. JACKSON, State Bar No. 98119
   DANIEL D. O'SHEA, State Bar No. 238534
2  JACKSON JENKINS RENSTROM LLP
   55 Francisco Street, 6th Floor
3  San Francisco, CA 94133
   Tel:   415.982.3600
4  Fax:   415.982.3700

5  Attorneys for Defendant BATH IRON WORKS

6

7                  UNITED STATES DISTRICT COURT

8                 CENTRAL DISTRICT OF CALIFORNIA

9                     LOS ANGELES DIVISION

10  JAMES MCINDOE and                USDC Case No. _____
    CAROL MCINDOE,
11                                   (LASC Case No. 469749)
                 Plaintiffs,
12
                                     DECLARATION OF ROGER B.
13      v.                           HORNE, JR., IN SUPPORT OF BATH
                                     IRON WORKS' NOTICE OF
14  ASBESTOS CORPORATION LIMITED, et REMOVAL
    al.,
15
                 Defendants.
16

17

18      I, Roger B. Horne, Jr., declare:

19      1.      I am a retired Rear Admiral of the United States Navy, in which I served between

20  1956 and 1991.  I am personally familiar with the facts set forth to competently testify to them if

21  required to do so.  I hereby refer to my Curriculum Vitae, a true and correct copy of which is

22  attached hereto as Exhibit "A," for a description of the various fields in which I served as an

23  expert witness, which may be found under the "Professional Competence" section thereof.

24      2.      I began my Navy career in 1956, immediately after receiving a Bachelor of

25  Science degree in Naval Engineering from the United States Naval Academy at Annapolis.  I

26  have also received extensive post-graduate education in naval engineering, including a Master of

27  Science Degree in Mechanical Engineering from the U.S. Naval Postgraduate School, and have

28

1    taught Naval Engineering as a Visiting Professor at the University of Michigan.

2          Throughout my Navy career, I concentrated in areas of ship design, engineering,

3    construction, overhaul and inspection.  Ultimately, I achieved the rank of Chief Engineer and

4    Deputy Commander, Naval Sea Systems Command ("NAVSEA") for Ship Design and

5    Engineering.  Prior to that, I served as Deputy Commander, NAVSEA for Facilities and Industrial

6    Management; Commander, Puget Sound Naval Shipyard; Commander, Engineering Duty Officer

7    School; Production and Repair Officer, Mare Island Naval Shipyard; Nuclear Engineering

8    Manager, Puget Sound Naval Shipyard; Nuclear Submarine Inspection Officer, Supervisor of

9    Shipbuilding Office, Ingalls Shipyard.

10         3.      During my time in the Navy, I was also responsible for maintaining naval ship

11   military specifications and for monitoring compliance with the specifications by all vendors and

12   contractors of naval equipment.  Military specifications ("MilSpecs") were applicable to

13   equipment manufacturers.  Equipment manufacturers, Naval Machinery Inspectors and others

14   relied on these MilSpecs to ensure strict compliance with NAVSEA demands and requirements

15   for combat-ready vessels.

16         4.      In addition to my training and experience as outlined above, I have been

17   recognized for achievements in the field of marine machinery and engineering, and have received

18   three Navy Legion of Merit Awards, three Meritorious Service Awards for Engineering and

19   Industrial Achievement, and an award from the Marine Machinery Association.

20         5.      I have personal knowledge that the United States Navy dictated every aspect of the

21   design, manufacture, installation, overhaul, written documentations and warnings associated with

22   its ships, including the ships built or repaired by Bath Iron Works that are included in plaintiff

23   James McIndoe's work history (the 'ships at issue'), and that the Navy did not permit any

24   deviations from its contracts.

25         6.      As to any Navy vessels built or undergoing any repairs, re-outfitting, or overhauls,

26   the Navy was in full control of and dictated the type of work to be done and the equipment or

27   systems to be removed, replaced, or installed.  The Navy designated the specific

28   model/type/manufacturer of the equipment that the contractor was to use and monitored

1    compliance with its regulations.

2          The Navy retailed ultimate decision making authority with respect to the construction,

3    repair work and final approval of all work, including removal, repair, and installation of parts and

4    equipment aboard the ships at issue.

5          7.      Equipment and materials used aboard a Navy ship were manufactured according to

6    detailed specifications prepared, written and issued exclusively by, and plans approved by, the

7    Navy, specifically NAVSEA or BUSHIPS.  In my role as Chief Engineer and Deputy

8    Commander for NAVSEA's Ship Design and Engineering Division, I was personally responsible

9    to the Commander of NAVSEA for developing ship designs and for overall technical support to

10   the operating fleet, maintenance of ships, and ships under construction.  I was also responsible for

11   maintaining naval ship military specifications and for monitoring compliance with the

12   specifications by all vendors and contractors of naval equipment.

13         8.      The Navy's chain of command concerning ship constructions and repair involves

14   several layers of authority related to technical and contractual control over Navy shipbuilding.

15   The Secretary of the Navy has ultimate authority over the Navy and Navy shipbuilding;

16   immediately below the Secretary, as has been the case since the creation of NAVSEA, is the

17   Chief of Naval Operations ("CNO"), to whom NAVSEA reports.  Prior to the establishment of

18   NAVSEA, BUSHIPS controlled all combat ship design and construction and reported to the CNO

19   as well as a civilian Assistant Secretary.  Since the creation of NAVSEA, NAVSEA reports to the

20   CNO for all military ship design and construction.

21         9.      Under the command of NAVSEA, as was the case with BUSHIPS, the Navy's

22   shipbuilding structure was comprised of several divisions and levels of authority concerning

23   ships' design, construction, repair and inspection.  Technical and contractual control over

24   shipboard equipment and materials was directed by the Commander of Naval Sea Systems and

25   the Commander of Naval Supply.

26         Each of these two organizations had oversight responsibility concerning, among other

27   things, any repairs performed to Navy vessels.  Compliance with the standards and specifications

28   required for equipment installed into Navy's ships was directly monitored by Naval Machinery

1   Inspectors under both of these divisions: the Machinery Inspectors under Naval Supply worked

2   on-site at the vendor's manufacturing facility, and the Machinery Inspectors under Naval Sea

3   Systems Commands carried out their responsibilities at the shipbuilding yards.  Moreover, it was

4   common in my experience for Directors of the Machinery and Propulsion Equipment Groups,

5   who worked for me at times during my career, to inspect the manufacturing process at vendors'

6   plants.

7        10.   I have personal knowledge of the comprehensive plans, specifications and

8   requirements which governed manufacturers and suppliers of equipment for use aboard Navy

9   ships.  More particularly, I can attest that any and all construction and work performed on Navy

10  ships was performed to the requirements specified by the Navy, and that the work was reviewed

11  and inspected by Navy personnel in the vendor's plant and in the shipbuilding yards.  In many

12  instances during my career I personally inspected work and equipment to verify conformance

13  with the requirements specified, although more immediate supervision typically was exercised by

14  officers and other Navy personnel under my command or the command of NAVSEA or its

15  predecessor, the Bureau of Ships ("BUSHIPS").

16       11.   The reason the Navy had such direct, detailed, and ultimate control over the

17  construction of and work performed aboard a Navy ship is due to the fact that Naval ships and

18  their equipment require special characteristics necessary to satisfy reliability in combat situations

19  and during long intervals at sea.  Naval ships and equipment are maintained with parts from a

20  naval supply system that provides spare parts and proven consumables aboard ship and at stock

21  points in remote geographic locations.  The problem of maintenance support is made more

22  complex by the fact there are hundreds of naval ships.  For these reasons, the Navy cannot

23  tolerate variations in its equipment or the parts and consumables associated with them.

24       Any deviation from equipment military specifications requires specific written approval

25  from the Navy.  The Navy must know that the design and material that goes into its ships and

26  equipment are in strict adherence to specifications – without this assurance we would not have a

27  reliable and serviceable Navy.

28

12.     All Naval vessels built or repaired by Bath Iron Works and subsequently accepted by the Navy would have had comply with the specifications, instructions, and guidelines found in Navy's contracts regarding this work.

13.     Thus, if any materials, equipment or parts contained asbestos the ships at issue, they did so pursuant to and mandated by specific requirements of the Navy.

14.     The Navy also had detailed specifications that govern the form and content of written materials affixed to a ship and equipment supplied to the Navy. These written materials typically consisted of technical or instruction manuals that were designed to assist the Navy engineering staff in servicing and maintaining the equipment. Navy personnel participated in and approved the preparation of this kind of information. The Navy specifications for these manuals contained detailed direction as to the kinds of information to be included.

15.     I can attest that no private contractor could have affixed a written warning anywhere aboard an active duty Naval warship, advising the risk of asbestos exposure, except by permission of the United States Navy. To do so without the Navy's express approval would be a deviation from the detailed and specific instructions allowed by the Navy.

16.     I can attest based on my personal knowledge that the Navy knew of asbestos health hazards in the early 1930's and certainly by mid-to-late 1960's knew of the cancer hazard associated with it - definitely prior to the time Mr. McIndoe allegedly worked aboard the ships at issue. I have reviewed numerous Navy documents dealing with the subject of asbestos health hazards and attended many meetings where this hazard was discussed in the early 1960s.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed October 26 2011, at Seabeck, Washington.

Roger B. Horne Jr. RADM USN (Ret.)

1952169

JACKSON JENKINS
RENSTROM LLP
SAN FRANCISCO

DECLARATION OF ADMIRAL ROGER B. HORNE
SUPPORTING BATH IRON WORKS' PETITION FOR REMOVAL

# EXHIBIT A

**Roger B. Horne, Jr.**
**Rear Admiral, USN (Ret.)**

**Professional Competence**
Design engineering, construction and operation of ships and ship systems. Shipyard operations including contract administration and major ship construction, overhaul and inspection. Industrial processes and inspection techniques related to shipyard and other major industrial work. Nuclear power plant design, construction, refueling, maintenance, and quality control. Development and interpretation of industrial specifications contract administration and financial management of large industrial projects.

**Background and Professional Honors**
B.S. (Naval Engineering), U.S. Naval Academy
M.S. (Mechanical Engineering), U.S. Naval Postgraduate School
M.B.A. (Executive), Golden Gate University
Shipyard Nuclear Shift Test Engineering School
Ship Construction School, Portsmouth Naval Shipyard
Dynamic Shock Analysis Course, Princeton
Navy Destroyer Engineering Course, Damage Control Course, and Fire Fighting Course
Qualified Naval Surface Ships and Submarines (Engineering Duty)
Recipient, Institute of Industrial Engineering Outstanding Achievement in Industrial
 Management Award
Recipient, Jack Flannigan award for Contributions to the Quality of Marine Machinery
 given by the Marine Machinery Association
Three Navy Legion of Merit awards and three Meritorious Service Awards for
 Engineering and Industrial Achievements
Patent for Timber Sterilization

**Professional Profile**
Principal Engineer and Head of the Marine and Aviation Practice Area.
 Exponent, Failure Analysis Associates, Inc.
Visiting Professor,
 Ship Construction, University of Michigan
Chief Engineer and Deputy Commander
 Naval Sea Systems Command for Ship Design and Engineering
Deputy Commander
 Naval Sea Systems Command for Facilities and Industrial Management
Commander,
 Puget Sound Naval Shipyard
Commander,
 Engineering Duty Officer's School
Production and Repair Officer,
 Mare Island Naval Shipyard
Nuclear Engineering Manager,
 Puget Sound Naval Shipyard
Nuclear Submarine Inspection Officer, Supervisor of Shipbuilding Office,
 Ingalls Shipbuilding
Chief Engineer
 USS OZBOURN DD 846
Past Member of the American Bureau of Shipping Technical Committee
Member, Society of Naval Engineers

Past Member Society of Naval Architects and Marine Engineers
Past member Society of Industrial Engineers
Past member American Bureau of Shipping

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐)<br>JAMES MCINDOE and CAROL MCINDOE | DEFENDANTS<br>ASBESTOS CORPORATION LIMITED, et al. |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)<br><br>JACKSON JENKINS RENSTROM LLP<br>55 Francisco Street, Sixth Floor, San Francisco, CA 94133; T: 415.982.3600<br>Attorneys for Defendant BATH IRON WORKS CORPORATION | Attorneys (If Known)<br>Gabriel A. Jackson, State Bar No. 98119<br>Daniel D. O'Shea, State Bar No. 238534 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant    ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding    ☑ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify):    ☐ 6 Multi-District Litigation    ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No    ☐ MONEY DEMANDED IN COMPLAINT: $ ACCORDING TO PROOF

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1442; 28 U.S.C. 1331 - FEDERAL OFFICER

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| | ☐ 190 Other Contract | | ☐ 444 Welfare | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☑ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)        CIVIL COVER SHEET        Page 1 of 2

CV 11-8970- GHK (JCGx)

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No  ☑ Yes
If yes, list case number(s): __IN RE: ASBESTOS PRODUCTS LIABILITY (MDL 875)__

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☑ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | MAINE |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| UNKNOWN   Los Angeles |  |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
    Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| UNKNOWN   Los Angeles |  |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date October 28, 2011

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |