**CT Corporation**

## Service of Process Transmittal
10/14/2011
CT Log Number 519318981

**TO:** Barbara Hyman
CNA Financial Corporation
333 South Wabash
Chicago, IL 60604

**RE:** **Process Served in Louisiana**

**FOR:** The Continental Insurance Company (Domestic State: PA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Rendon Joseph Francis, Petitioner vs. Union Carbide Corporation et al. including The Continental Insurance Company, Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Letter, Citation, Third Supplemental, Order, Exhibit(s) |
| **COURT/AGENCY:** | Orleans Civil District Court, Parish of Orleans, LA Case # 201102520 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 10/14/2011 postmarked on 10/13/2011 |
| **JURISDICTION SERVED :** | Louisiana |
| **APPEARANCE OR ANSWER DUE:** | Within 15 days |
| **ATTORNEY(S) / SENDER(S):** | Frank J. Swarr Landry & Swarr, L.L.C. 1010 Common Street, Suite 2050 New Orleans, LA 70112 504-299-1214 |
| **REMARKS:** | Process forwarded by the Louisiana Secretary of State on 10/13/11. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/14/2011, Expected Purge Date: 10/19/2011 Image SOP Email Notification, Barbara Hyman barbara.hyman@cna.com |
| **SIGNED:** **PER:** **ADDRESS:** | C T Corporation System Lisa Uttech 5615 Corporate Blvd Suite 400B Baton Rouge, LA 70808 |
| **TELEPHONE:** | 225-922-4490 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
10/14/2011
CT Log Number 519318981

**TO:** Barbara Hyman
CNA Financial Corporation
333 South Wabash
Chicago, IL 60604

**RE:** **Process Served in Louisiana**

**FOR:** The Continental Insurance Company (Domestic State: PA)

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| Letters, Witness and Exhibit Lists, Attachment(s) | By Regular Mail on 06/29/2011 postmarked on 06/27/2011 | Barbara Hyman CNA Financial Corporation | 518751317 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# State of Louisiana
## Secretary of State

10/13/2011

Legal Services Section
P.O. Box 94125, Baton Rouge, LA 70804-9125
(225) 922-0415

CONTINENTAL INSURANCE COMPANY
C/O CT CORPORATION SYSTEM
5615 CORPORATE BLVD.
SUITE 400B
BATON ROUGE, LA 70808

Suit No.: 201102520
CIVIL DISTRICT COURT
ORLEANS PARISH

RENDON JOSEPH FRANCIS
vs
UNION CARBIDE CORPORATION, ET AL

Dear Sir/Madam:

I am enclosing citation served in regard to the above entitled proceeding. Please call the attorney that filed this document if you have any questions regarding this proceeding. If you received this document in error, please return it to the above address with a letter of explanation.

Yours very truly,

TOM SCHEDLER
Secretary of State

Served on: TOM SCHEDLER
Served by: E CUMMINS

Date: 10/12/2011
Title: DEPUTY SHERIFF

**No: 855178**



TG

**ATTORNEY'S NAME:** Swarr, Frank    23322
**AND ADDRESS:**    Ste 2050,  1010 Common St
New Orleans    LA 70112-0400

### CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS
### STATE OF LOUISIANA

NO:    2011 -- 02520    63    DIVISION: " N "    SECTION: 8

FRANCIS, RENDON JOSEPH VERSUS UNION CARBIDE CORPORATION    ET AL

# CITATION

**TO:** CONTINENTAL INSURANCE COMPANY
    THROUGH:  THE LOUISIANA SECRETARY OF STATE

BATON ROUGE    LA

SERVED ON
TOM SCHEDLER

**YOU HAVE BEEN SUED:**

OCT 12 2011

You must either comply with the demand contained in the petition
THIRD SUPP. & AMENDING PETITION FOR DAMAGES

SECRETARY OF STATE
COMMERCIAL DIVISION

a certified copy of which accompanies this citation, or file an answer or other legal pleading in the office of the Clerk
of this Court, Room 402, Civil Courts Building, 421 Loyola Avenue, New Orleans, LA, within fifteen (15) days after the
service hereof under penalty of default

#### ADDITIONAL INFORMATION
Legal assistance is advisable. If you want a lawyer and can't find one, you may call the New Orleans
Lawyer Referral Service at 504-561- 8828.  This Referral Service operates in conjunction with the
New Orleans Bar Association.  If you qualify, you may be entitled to free legal assistance through the
New Orleans Legal Assistance Corp. You may call them at 800-624-4771 or 504-525-4431.
**********COURT PERSONNEL ARE NOT PERMITTED TO GIVE LEGAL ADVICE*********

**IN WITNESS HEREOF, I have hereunto set my hand and affix the seal of the Civil District Court for
the Parish of Orleans, State of LA**    October 5, 2011    .

**Clerk's Office,  Room 402,  Civil Courts**
**421  Loyola  Avenue**
**New Orleans,  LA**

**DALE N. ATKINS,  Clerk of**
**The Civil District Court**
**for the Parish of Orleans**
**State of LA**
by
**Deputy Clerk**

#### SHERIFF'S RETURN
(for use of process servers only)

| PERSONAL SERVICE | DOMICILIARY SERVICE |
|---|---|
| On this _____ day of _____ | On this _____ day of _____ |
| _____ served a copy of the w/i petition | _____ served a copy of the w/i petition |
| THIRD SUPP. & AMENDING PETITION FOR DAMAGES | THIRD SUPP. & AMENDING PETITION FOR DAMAGES |
| On | On |
| CONTINENTAL INSURANCE COMPANY | CONTINENTAL INSURANCE COMPANY |
| THROUGH:  THE LOUISIANA SECRETARY OF STATE | THROUGH:  THE LOUISIANA SECRETARY OF STATE |
|  | by leaving same at the dwelling house, or usual place of abode, in the hands of _____ |
| Returned  same  day | a person of suitable age and discretion residing therein as a member of the domiciliary establishment, whose name and other facts connected with this service I learned by interrogating  HIM / HER the said _____ |
| _____ No. | |
| Deputy Sheriff of _____ | CONTINENTAL INSURANCE COMPANY |
| Mileage: $_____ | |
| _____/ ENTERED /_____ | being absent from the domicile at time of said service. |
| PAPER    RETURN | Returned  same  day |
| _____/_____/_____ | _____ No. |
| SERIAL NO.   DEPUTY   PARISH | Deputy Sheriff of _____ |



FILED

2011 SEP 27 P 2: 3

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 2011-02520          **SECTION 8**          **DIVISION "N"**

**RENDON JOSEPH FRANCIS**

**VERSUS**

**UNION CARBIDE CORPORATION, ET AL.**

FILED:_____      _____
                                      DEPUTY CLERK

## THIRD SUPPLEMENTAL AND AMENDING PETITION FOR DAMAGES

**COMES NOW** Petitioner, by and through undersigned counsel, who respectfully supplements and amends all previously filed Petitions for Damages, including all previously filed Supplemental and Amending Petitions, such that the entirety of Plaintiff's Petition shall henceforth be as follows:

1. Petitioner Rendon Joseph Francis is an adult resident citizen and domiciliary of the State of Georgia.

2. Made Defendants herein are the following persons, either foreign corporations licensed to do and doing business in the State of Louisiana or domestic corporations licensed to do and doing business in the State of Louisiana, or are individuals that are liable unto the Plaintiff, for the claims asserted herein as identified in Exhibit "A".

3. Orleans Parish is a proper venue for this action pursuant to Louisiana Code of Civil Procedure Article 74, because Plaintiff's exposure to asbestos and subsequent contraction of malignant mesothelioma occurred within Orleans Parish.

## BACKGROUND

4. Petitioner Rendon Francis was exposed to injurious levels of asbestos from the following sources:

     a. Direct occupational exposure to asbestos from 1970 until approximately 1980 as a result of his work at the National Gypsum facility located in Orleans Parish, State of

Louisiana. While Petitioner used, handled, and/or was in the vicinity of others using or handling asbestos and/or asbestos-containing products at this facility, hazardous levels of asbestos fibers escaped into the ambient air of Petitioner's work place; and

b. Household and/or secondary exposure from asbestos fibers brought home on the clothes and person of his father, Calvin Francis, as a result of his work in New Orleans, Louisiana, while employed by Gulf Engineering Company in 1943 and Pendleton Shipyards from 1943 through 1945. While Petitioner's father used, handled, and/or was in the vicinity of others using or handling asbestos or asbestos-containing products at these facilities, dangerously high levels of asbestos fibers escaped into the ambient air of the work place and contaminated his work clothes and subsequently the family home and Petitioner, all of which occurred in Orleans Parish, State of Louisiana.

5.      Before and during Petitioner's exposure period, each of the defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products for use at, including but not limited to, each of the facilities and/or individuals listed in Paragraph 4, where Petitioner's husband and sons were exposed to asbestos-containing products, equipment, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

6.      When inhaled or otherwise ingested, asbestos causes irreparable and progressive lung damage that can manifest itself as asbestos-related pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

7.      Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to Petitioner, of the health hazards inherent in the asbestos-containing products they were selling and/or using. Instead of warning Petitioner and the general public about these dangers, the defendants ignored or actively concealed such information, or condoned such concealment, in order to sell asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation. Those defendants who have engaged in intentional misconduct, fraud or concealment or conspiracy to defraud or conceal the dangers of asbestos-containing products are specifically set forth and their

conduct specifically described hereinafter in the section which, in addition to negligence or strict liability, identifies other forms of specified misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

8.    As a direct and proximate result of having inhaled, ingested or otherwise been exposed to asbestos as described in Paragraph 4, Petitioner Rendon Francis contracted malignant mesothelioma, an incurable and terminal cancer caused from asbestos exposure.   Rendon Francis' malignant mesothelioma was diagnosed in or around January of 2011.

9.    Because of the latency period between exposure to asbestos and the onset of malignant mesothelioma, and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, Petitioner has only recently discovered his injuries and not more than one year preceding this filing of this Petition for Damages.

10.    Plaintiff disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.  Plaintiff also disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government.

## NEGLIGENCE AND STRICT LIABILITY OF ASBESTOS MINERS/MANUFACTURERS/SELLERS/SUPPLIERS/DISTRIBUTORS

11.    The Defendants identified in Exhibit "A" as "Asbestos Miners/ Manufacturers/ Seller/ Suppliers/ Distributors" were all miners, manufacturers, sellers, users, distributors and/or suppliers of asbestos products and were engaged in the business of using, manufacturing or facilitating the manufacture of asbestos products, or representing themselves as manufacturers of asbestos products, or were professional vendors of asbestos or asbestos-containing products, which were expected to and did reach, including but not limited to, each of the facilities listed in Paragraph 4, from which Rendon Francis was exposed.

12.    The products mined, manufactured, sold, distributed, supplied and/or used by these defendants were defective, unreasonably dangerous, and unreasonably dangerous per se, to Petitioner who was an intended and foreseeable user and bystander who was exposed to these products.  These defects include, without limitation, the following:

> a. the mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

b. the mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to the Plaintiff who would be foreseeably exposed to them in as a result of their intended use;

c. lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

d. lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

e. failure of defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f. failure to test or adequately test these products for defects or hazards they could present to the intended or foreseeable users;

g. failure to truthfully report or adequately report the results of product testing and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

h. failure to properly design these products when the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i. defects in the composition and construction of these products;

j. failure to recall these products mined, manufactured, sold, distributed and/or supplied;

k. failure to properly package these products so that they could be safely transported, handled, stored or disposed of;

l. overwarranting the safety of these products that were manufactured, sold, supplied and/or used by Defendants; and

m. liability to Petitioner in strict liability for things in their garde, possession, custody or control, pursuant to article 2317 of the Louisiana Code of Civil Procedure that have caused harm to Petitioner.

13. The defective conditions of defendants' products and fault, as noted above, are a

proximate cause of Petitioner's injuries complained of herein.

14. Petitioner also alleges that each and every one of the foregoing defendants were also negligent in engaging in the substandard conduct enumerated above and that this negligence was also a proximate cause of Petitioner's injuries.

## NEGLIGENCE OF EMPLOYER DEFENDANTS

15. While Plaintiff lived with his father in the family home, Plaintiff's father worked in New Orleans, Louisiana, as an employee of Gulf Engineering Company and Pendleton Shipyards, where he worked with and around asbestos and asbestos containing products. Plaintiff was exposed to asbestos-containing products via secondary exposure from his father's work clothes and person. Plaintiff's exposure to asbestos products occurred without fault on his or his father's part. Petitioner hereby alleges that these employers and their Executive Officers are liable for injuries, as alleged, arising out of the negligent conduct detailed herein, and, in failing to provide a safe place in which to work free from the dangers of respirable asbestos-containing dust.

16. As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos from his father's work clothes and person, Plaintiff has received injuries, both physically and mentally, including, without limitation, all of the ramifications of malignant mesothelioma

17. These employers negligently, recklessly, willfully and/or because of gross and wanton negligence or fault, failed to properly discharge their duties to the Plaintiff in the following:

 a. failed to provide the plaintiff's father with a safe work environment;

 b.  failed to provide the plaintiff's father with correct, adequate, or proper safety equipment;

 d.  recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to the plaintiff's father regarding asbestos hazards in general and with regard to those specific hazards at the work site;

 e. recklessly concealed and negligently omitted to reveal critical medical and safety information from the plaintiff's father regarding the safety and health risks associated with the asbestos and asbestos-containing products at the worksites;

 f. failed to timely remove asbestos hazards from the work place;

 g.  failed to properly supervise or monitor the work areas for compliance with safety regulations;

h.      failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air; and

i. failed to provide the necessary facilities, practices and procedures that would lessen or eliminate the transfer of asbestos from the workplace to the home on the clothing and/or person of Plaintiff's father.

18.     The above-described negligence, fault, and willful misconduct of these employers was a proximate cause of the Plaintiffs' injuries.

19.     Pursuant to Louisiana Revised Statute 22:1269, Plaintiff herein asserts a direct action against Continental Insurance Company, f/k/a Fidelity & Casualty Company of New York, who at all times material herein, was the general liability carrier covering Pendleton Shipyards ("Pendleton") for the liability asserted herein. Also, upon knowledge and belief, Pendleton has incurred a civil death by corporate dissolution in 1951. Thus, Pendleton is deceased under Louisiana law allowing a direct action against its insurer, Continental Insurance Company, pursuant to LSA-R.S. 22:1269(B)(1)(f). In addition, since Pendleton is dead, it cannot be served with citation or other process allowing a direct action against its insurer, Continental Insurance Company, pursuant to LSA-R.S. 22:1269(B)(1)(c). Furthermore, the voluntary dissolution of Pendleton pursuant to LSA-R.S. 12:141 through 149, liquidated the assets (except insurance policies) of the corporation and rendered the corporation insolvent, allowing a direct action against its insurer, Continental Insurance Company, pursuant to LSA-R.S. 22:1269(B)(1) (b). Also LSA-R.S. 22:1269 vested the plaintiff with rights in the insurance contract distinct from the insured by operation of law. Additionally, the insurance policies of Continental Insurance Company insuring Pendleton are undistributed assets of the tort debtor, Pendleton. Thus, Continental Insurance Company is subject to suit pursuant to LSA-R.S. 12:147(C) which allows a direct suit against the undistributed assets of a dissolved corporation.

## NEGLIGENCE AND STRICT LIABILITY OF ASBESTOS FIBER SUPPLIER DEFENDANTS

20.     During the course of the Plaintiff's life he was exposed to asbestos or asbestos containing products as a result of negligence and/or strict liability of the asbestos fiber supplier defendants or caused by the defective design, manufacture, distribution, marketing, sale, or supply of asbestos by the Defendants, including but not limited to Antony Gibbs & Co., which was an international banking, trading firm of long standing, selling asbestos to JM on its own account as its product for use in the JM Marrero Asbestos Cement Pipe operation. It would purchase

asbestos from South Africa, and other places, from various mining operations and ship it to the Port of New Orleans to be used at the Marrero Plant. Antony Gibbs arranged to sell and ship the fiber as its product, which was submitted to Johns-Manville as an Antony Gibbs product to meet the Johns-Manville asbestos-containing pipe spec(s) and was approved as such.  In the alternative, Plaintiff alleges, on information and belief, that Antony Gibbs & Co. is now known as, or otherwise acquired by, Balmac International, Inc. (f/k/a and successor-in-interest of Balfour Maclaine International, Inc.) based on evidence of a series of complicated corporate transactions, which resulted in Balfour Maclaine International, Inc. (n/k/a Balmac International, Inc.) acquiring full control of Antony Gibbs.

21.    Defendant OneBeacon f/k/a Commercial Union Assurance Company Limited, on information and belief, had in full force and effect a policy or policies of liability insurance insuring Antony Gibbs & Sons Limited and/or Antony Gibbs & Co. against the causes of action asserted herein and covering the premises, matters, persons, things, actions, inactions, and damages that are the subject of this petition, and, as such, Defendant OneBeacon is directly liable to Petitioner under the provisions of the Louisiana Revised Statutes, Title 22, Section 655 (now 22:1269).

22.    Defendant Certain Underwriters at Lloyd's of London, on information and belief, had in full force and effect a policy or policies of liability insurance insuring Antony Gibbs & Sons Limited and/or Antony Gibbs & Co. against the causes of action asserted herein and covering the premises, matters, persons, things, actions, inactions, and damages that are the subject of this petition, and, as such, Defendant Certain Underwriters at Lloyd's of London is directly liable to Petitioner under the provisions of the Louisiana Revised Statutes, Title 22, Section 655 (now 22:1269).

## LIABILITY OF 3M COMPANY

23.    Plaintiff, Rendon Francis, worked at the National Gypsum plant in New Orleans, LA from 1974 to 1984.  National Gypsum manufactured asbestos containing products at their New Orleans plant.

24.    National Gypsum issued Plaintiff a 3M mask to protect Plaintiff from the asbestos dust created by the handling/processing of raw asbestos and asbestos-containing finished products being made in the plant.  Plaintiff wore this mask at all times in the plant, except when on lunch break.

25.     Upon information and belief, and at all times hereinafter mentioned, 3M COMPANY a/k/a Minnesota Mining & Manufacturing (hereinafter "3M") is a Minnesota business entity with its principal place of business located in Minnesota.  For the purposes of this Complaint, 3M shall include the present business entity, as well as all of its predecessor corporations and entities as applicable. Upon information and belief and at all times hereinafter mentioned, 3M: (a) was and still is a foreign corporation, duly authorized to do business in the Commonwealth of Pennsylvania; (b) in person or through an agent, transacts business in the Commonwealth of Pennsylvania; (c) regularly does and/or solicits business within the Commonwealth of Pennsylvania; (d) derives substantial revenue from goods used or consumed in the Commonwealth of Pennsylvania; (e) expected or should have expected its acts to have consequences within the Commonwealth of Pennsylvania and derives substantial revenue from interstate and/or international commerce; and (f) owns, uses or possesses real property situated within the Commonwealth of Pennsylvania. At all relevant times, 3M designed, marketed, manufactured, distributed, supplied, sold, and made misrepresentations regarding its 8710 respirators and/or other breathing equipment.

    <u>3M 8710 Respirator</u>

26.     In 1972, the 3M 8710 was approved by the National Institute for Occupational Safety & Health ("NIOSH").

27.     At the time of 8710's approval, 3M knew that the approval was based on testing for a coarse dust that did not evaluate penetration of fine particles 0.1 to 1.0 microns in size that 3M considered such particles to be lung damaging.  In addition, 3M knew that the approval did not include a fit test, fit check, or a quality assurance program, and only consisted of minimal criteria based on 1930s technology.

28.     In fact, regarding the limitations of the approval process during that time, 3M stated that the respirator approval tests did not assure worker protection, and that "NIOSH testing does more harm than good based on the fact that the tests have little, if any, correlation to actual field conditions..." 3M went on to state that "NIOSH approvals are a marketing device having no true merit..." and that the  "present system of the MSHA ("Mine Safety & Health Administration") and NIOSH approval of devices does not guarantee end user utility or safety."  In spite of these 3M criticisms of their own approval, 3M promoted the 8710 respirator as being "so effective it has received Bureau of Mines approval."  3M made this assurance despite the statements by the

Bureau of Mines and NIOSH stated that "approval was not an endorsement of the respirator by the Bureau of Mines and NIOSH, and such endorsement shall not be stated or implied in advertisements or other publicity."

<u>3M 8710 Fit Checking</u>

29.     The aforementioned approval did not evaluate the fit of a facemask. However, effective usage necessitated the application of fit checks and fit tests as recommended in national concordance standards and government regulations.  In fact, 3M knew that fit checking as recommended in the 1950's and mandated by OSHA in the early-1970's "may be difficult or impossible to carry out on valve-less respirators," like the 8710; and 3M stated that fit checks were imprecise and only capable of detecting large leaks.  Moreover, in the relevant period, the 3M fit check instructions never recommended that the user evaluate fit during inhalation, and 3M's instructions were never field tested or evaluated in a group of unscreened, unbiased and untrained subjects.

30.     Los Alamos National Laboratory reported that one-size-fits-all masks cannot provide protection for the large range of facial sizes that will be encountered. They noted that other respirator manufacturers provided masks in three sizes.

31.     3M also inaccurately claimed that the 8710 passed NIOSH fit checks 100s of times over 20 years.  Though, as discussed above, NIOSH never evaluated the fits of these masks, and that certification is not a guarantee that the mask will perform well.

32.     Despite this knowledge, 3M continued to state through the mid 1970s on the 8710 packaging that the 8710 mask fit all faces (even though the 8710 was only available in one size).

<u>3M 8710 Fit Testing</u>

33.     Like fit checking, 3M knew that fit testing the respirator the was also recommended in the 1950's and mandated by OSHA in the early-1970's, but was not possible or practical for the 8710 prior to 1982.  3M also knew that there was a tremendous risk of exposure to the wearer of any respirator that had not been properly fit tested.  Again, despite this knowledge, 3M misrepresented that the 8710 had passed government fit tests for 20 years.  In fact, NIOSH never evaluated the effectiveness, reliability and safety of the fit checking or fit testing procedures as a condition of granting certificates of approval.

34.     When fit testing of the 8710 was finally possible in 1982, 3M used a subjective, non-standardized, qualitative test utilizing a large 2.0 micron aerosol that could not be used to evaluate faceseal leakage to smaller particles that 3M considered lung damaging.

35.     Even as late as November 1992, 3M stated that, "a stage where test protocols, data analyses, and data interpretation can be standardized has not been reached…Further research on how sampling bias and other variables affect in-facepiece sampling results in the workplace appears necessary before validated methods for determining and interpreting protection factors can be agreed upon."

<u>3M 8710 Filter Efficiency</u>

36.     In addition to fit, 3M also misrepresented the filter efficiency of the 8710.

37.     In this regard, 3M promoted that the respirator had 99% efficiency against particles with a mean diameter of 0.4-0.6 microns. 3M made these statements despite 8710 laboratory testing in the 1970s and early 1980s indicating up to 50% filter penetration for sub-micron particles for the 8710 with the omega filter.

38.     In 1975, 3M internally reported that the current version of the 8710 had a protection factor of 3, meaning that 33% of the contaminants passed through or around the mask.

39.     None of the above information was ever passed on to purchasers and/or users of the 8710.

40.     3M even promoted the use of the 8710 in a children's hospital bone marrow transplant ward for protection against sub-micron viruses, without any limitations, falsely stating that it was 99% efficient against a monodispersed aerosol particle size with a narrow range 0.4-0.6 microns.

<u>3M 8710 Advertising</u>

41.     3M knew that the 8710 was not a high-efficiency respirator, could not fit all workers, and did not protect workers from asbestos exposure.

42.     During the relevant period, 3M also stated that distributors should present their products "strictly in accordance with our product literature, setting forth the use capabilities and limitations of the products."

43.     But 3M advertised the 8710 as a high efficiency, one size fits all, respirator that provides maximum protection against dust.

44.     In addition, 3M improperly promoted the 8710 for use in high asbestos exposure areas, such as asbestos insulating, asbestos processing and asbestos mining. 3M also advertised that the

8710 stops pneumoconiosis and fibrosis dusts from ever reaching the lungs, was for use in thick choking dusts, can be used in high dust concentration jobs, and was efficient enough to filter out everything harmful to a worker's lungs.

<u>3M Representations on the 8710 Container and in 8710 Advertisements</u>

45.    3M 8710 usage information on the packaging was false and misleading.

46.    On the 8710 container, 3M represented that the 8710 was approved and could provide protection against dusts and mists, including asbestos and lead.  As set forth, 3M knew that the NIOSH/MSHA approval process did not test particle sizes of asbestos dust, and did not include fit testing or fit checking for the respirator.

47.    In an advertisement by 3M for its 8710 respirator, 3M warranted that its 8710 respirator offered maximum protection against dusts, including asbestos.

48.    In another advertisement for the 8710 respirator, 3M represented that the 8710 "stops pneumoconiosis and fibrosis producing dusts from ever reaching the lungs.  Included in the list of dusts that the 8710 protected the user against was asbestos.

<u>3M 8710 Asbestos-Related Chronology</u>

49.    In the late-1960's, prior to Plaintiff's use of the 8710 at National Gypsum, 3M was aware that asbestos was a suspected carcinogen.  They also knew asbestos caused asbestosis and that such disease frequently resulted in disability and death.  3M had a 1971 medical report stating that even one single asbestos fiber can produce microscopic changes in the lung such as asbestosis.

50.    Despite this knowledge, 3M recommended in the 1970s that the 8710 could be used to protect against user exposure to asbestos.

51.    In 1980, NIOSH reported that without a good fit test, the 8710 (and masks like it) should no longer be used around asbestos.  In response, while other manufacturers asked NIOSH to withdraw their asbestos approval, and some added a warning "not approved for asbestos," 3M continued to recommend the 8710 for any level of asbestos until 1982.

52.    From 1982-1986, 3M continued to recommend the 8710 for exposures of asbestos up to 10 times permissible exposure limits.

53.    In 1986, 3M petitioned the court to stay the OSHA standard that would have prevented the 8710 for use around asbestos. In support of its petition, 3M argued that it would suffer

irreparable financial harm. In response, OSHA criticized 3M's workplace protection studies. 3M's petition was denied.

54.     In 1987, after selling 450,000,000 8710 masks 3M finally took asbestos off its usage.

55.     3M never put a plain language warning on its mask or packaging stating that the mask should not be worn around activities that were often associated with asbestos exposure.

56.     In 1992, Donald Wimes of 3M co-chaired the subcommittee that drafted the American National Standard for Respiratory Protection and it recommended that only high efficiency filters, which 8710 was not, be used if the particle size is not known or less than 2 microns in size.

57.     3M never passed this information on to employers, purchasers and/or users, of the 8710.

58.     During the relevant time, there existed occupational safety standards supposedly designed to protect individuals working in or around industrial operations.

59.     However, these standards were undermined and/or defeated by 3M and others who often participated in the development of the standards, were aware of the deficiencies of the standards and their respirators, and, in order to promote their equipment, provided misinformation about the effectiveness and applicability of their products in the workplace.

60.     In 1955, the Bureau of Mines published criteria for approving respirators. This standard included testing methods for respirators to be used by workers exposed to respirable silica dust. Over the years, this standard was updated by the Bureau of Mines and NIOSH. As set forth, 3M was fully aware that the approval tests only evaluated loading by mass, did not adequately evaluate the true efficiency of the filter to small sub-micron particles, the effects of filter degradation, or the fit of the respirator.

61.     In 1959, national concordance standards were published to help provide guidance for the selection and application of respiratory protection. This standard relies on the respirator manufacturer to provide information on the usage and limitations of their equipment; however, the information provided by 3M was misleading and inadequate for the proper selection, application and protection of the worker.

62.     In 1971, the Occupational Safety and Health Administration established federal workplace standards. The respirator manufacturer necessarily plays a vital role in the proper application of these standards, and can undermine their effectiveness and contribute to over-exposure.

63.     Specifically, Section 1910.134 requires the user's employer to perform a certain function.  First, the employer must establish a written respiratory protection program.  To do so, the employer relies on the respirator manufacturer for much of this information.

64.     In this case, 3M was aware of approval, fitting, leakage, filter penetration or concentration usage deficiencies that they did not disclose to the employers and users.

65.     Section 1910.134 also requires employers to conduct dust monitoring to select the proper respirator.  However, 3M represented that their masks were completely protective, misrepresented the contaminants they would protect against and did not provide an upper usage limit until the 1980s, and never provided a particle size limitation.  These actions necessarily discouraged the employer from conducting any dust monitoring, provided 3M's masks were used.

66.     Employers are also required to establish safe work practices to be used in conjunction with selected respiratory protection, including selecting the appropriate respirator for various activities.  False or unsubstantiated claims made by 3M, as set forth above, left the employer unable to select the appropriate respirator.

67.     Section 1910.134 requires that employers provide properly fitting approved respirators for work around contaminants.  However, the 3M's respirators only came in one-size, and 3M was aware that their respirators could not fit everyone.  Despite this knowledge, 3M still claimed that their respirators fit, or could be formed to fit, all faces and sizes.  Relying on 3M's misrepresentation an employer would not believe it had to fit test a respirator that fit everyone.  In addition, the fit of the 3M's respirators could not be evaluated with suitable, practical or effective qualitative fit check or fit test or quantitative fit test.  In effect, as a result of 3M's misrepresentations and inactions, the employer was left unable to comply with this part of the standard.

68.     The employer was also required to inform of the consequences of exposure.  However, 3M's representations that its respirators fit everyone and could it be used in any contaminant level, as long as employees wore the respirator in the manner it was intended, there could not be exposure or subsequent consequences.

69.     The employer was also required to monitor work practices to assure that appropriate equipment was supplied, used and maintained.  Once again, the employer would necessarily have to rely, at least in part, on the respirator manufacturer to help him select the

appropriate respirator, and provide instructions to assure that it is used properly. 3M's misrepresentations regarding their respirators, as set forth above, defrauded employers and the users of the respirators.

70. Finally, the employer was required to periodically medically evaluate the workers. However, if the employer relied on the assurances of 3M that, by following the manufacturer's recommendations, the employee will not be over-exposed, the employer would be less likely to have the employee medically evaluated or would reduce the frequency of these evaluations.

## FRAUD – MISREPRESENTATION AND CONCEALMENT BY 3M

71. The allegations in paragraphs One (1) through Seventy (70) above are realleged and incorporated by reference within this Count.

72. The information distributed to the public, the insulation and commercial industry and the Plaintiff, Rendon Francis, by 3M contained material misrepresentations and/or failed to disclose material facts. Such misrepresentations and concealment include, but are not limited to:

a. Falsely claiming that the 8710 and Dustfoe 66 respirators offered protection against the inhalation of dusts, including asbestos dusts;

b. Falsely claiming that a one-size-fits-all respirator can provide protection against asbestos dusts for all users;

c. Falsely claiming that said respirators provided a dust-tight seal;

d. Falsely claiming that the MSHA and NIOSH approval of said respirators guaranteed end user utility and safety;

e. Falsely claiming that said respirators passed NIOSH fit checks despite knowledge that NIOSH never evaluated the fit of masks;

f. Falsely claiming that said respirators had passed government fit tests despite knowledge that NIOSH never evaluated the effectiveness, reliability and safety of the fit checking or fit testing procedures as a condition of approval;

g. Falsely claiming that said respirators had 99% efficiency against particles with a mean diameter of 0.4-0.6 microns;

h. Falsely claiming that said respirators were high-efficiency;

i.      Falsely claiming that said respirators were designed and appropriate for use in high asbestos exposure areas;

j.      Falsely claiming that said respirators stop pneumoconiosis and fibrosis dusts from ever reaching the lungs, were for use in thick choking dusts, can be used in high dust concentration jobs, and were efficient enough to filter out everything harmful to a worker's lungs;

k.      Falsely claiming that said respirators could be used around any level of asbestos;

l.      Falsely promoting said respirators as providing respiratory protection against all dust concentrations, fibrosis-producing dusts, toxic dusts and mists;

m.      Concealing limitations of said respirators with respect to asbestos dusts;

n.      Concealing filter degradation from humidity, temperature and other environmental conditions; and

o.      Concealing test results which would have led to greater knowledge and awareness on the part of the respirator user with respect to the respirator limitations.

73.     Defendant knew that such statement, information and representation were false, in and of themselves, and in light of the true facts which were concealed or failed to be disclosed.

74.     It was the purpose and intent of Defendant in making these representation, and in failing to disclose the true facts, to deceive and defraud the public, including Plaintiff and Plaintiff's employer, to gain the confidence of the public, to falsely ensure the quality and fitness for use of said respirators and to induce the public to purchase and use said respirators and remain brand-loyal.

75.     Plaintiff and Plaintiff's employer actually and reasonably relied upon the false statements, as well as the overall fraudulent message, conveyed by Defendant, and relied upon the omission of material facts, and was thereby induced to purchase and use the 8710 and Dustfoe 66 respirators, which did not, in fact, protect Plaintiff from asbestos exposure.

76.     At the time that Defendant fraudulently misrepresented and concealed material facts, Plaintiff Rendon Francis did not know the true facts about said respirators which were misrepresented and concealed by Defendant.

77.     As a proximate result of Defendant'S misconduct, Plaintiff Rendon Francis has developed mesothelioma; he has endured, and will continue to endure rounds of debilitating

cancer treatments and medical procedures; he has experienced, and will experience, physical pain and suffering, mental anguish, emotional distress, loss of enjoyment of life, disabilities, and loss of bodily functions; he has incurred, and will continue to incur medical expenses; and he has suffered from any and all other damages associated with the diagnosis, treatment, and medical course of his cancer and has otherwise suffered injury and damages. Plaintiff Rendon Francis has incurred and will continue to incur substantial loss of income.

## NEGLIGENCE AND STRICT LIABILITY – FAILURE TO WARN OF 3M

78.    The allegations in paragraphs One (1) through Seventy-Seven (77) above are realleged and incorporated by reference within this Count.

79.    That all times material hereto, Defendant knew or should have known of the harmful effects of exposure to asbestos dust and fibers to human health, including the health of Plaintiff Rendon Francis.

80.    At all times herein relevant, the Defendant had a duty to exercise reasonable care and caution for the safety of Plaintiff Rendon Francis and others working with and around the Defendant's asbestos-containing products.

81.    Moreover, Defendant had a duty to provide adequate warnings of all latent dangers of use of Defendant's respirators and masks, including the limitations of said respirators and masks with respect to their inability to protect its user from asbestos dusts.

82.    Defendant manufactured and marketed respirators and dust masks which Defendant sold and distributed claiming said respirators and masks would protect workers from the dangers of breathing, inhaling and absorbing asbestos dusts.

83.    Defendant negligently produced, sold, supplied or otherwise put into the stream of commerce asbestos and asbestos-containing products and/or machinery requiring the use of asbestos and/or asbestos-containing products.

84.    The Plaintiff used Defendant 3M's 8710 respirator and MSA's Dustfoe 66 respirator in the manner in which they were intended.

85.    Plaintiff did not know that his use of Defendant's respirators during his work with asbestos products would not protect him from airborne asbestos dust.

86.    In fact, Defendant falsely represented that their respirators were safe and provided protection against the inhalation of asbestos dusts.

87.     The Defendant knew or should have known that its respirators and masks were not adequate protection against asbestos fibers and their toxic, poisonous, and highly deleterious effect upon persons such as Plaintiff.

88.     Although Defendant knew or reasonably should have known that their respiratory protection products were inadequate to protect their users from asbestos dusts and posed a highly harmful threat to Plaintiff's health, the Defendant was negligent in that they failed to exercise ordinary care and caution for the safety of Rendon Francis in one or more of the following respects:

a.  Failed to provide any or adequate warnings to persons using their respirators and masks while working with and around asbestos-containing products and their airborne dusts;

b.  Failed to advise or warn Plaintiff of the inadequacies and limitations inherent in their respirators and masks;

c.  Failed to provide any or adequate instructions concerning the methods of using said respirators and masks, including specific instructions on how to fit test and fit check the respirator and the limitations of the respirators as a protection against asbestos;

d.  Failed to place any warnings on the respirator or its container regarding the product's limitations and inadequacies in protecting the user from the inhalation and/or absorption of harmful asbestos dusts;

e.  Failed to conduct tests on the masks with respect to asbestos dusts to determine the limitations of the masks for users;

f.  Designed, manufactured and sold masks that failed to adequately protect its users from asbestos and other dusts.

g.  Failed to provide Plaintiff with the knowledge to protect himself from being harmed by exposure to asbestos and asbestos-containing products; and

h.  Failed to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan, including fit check, fit test and efficiency tests for the respirators.

89.     The lack of adequate warnings on Defendant's respirators or their containers rendered the products defective and unreasonably dangerous.

90.     The Plaintiff was exposed to asbestos-containing products and their airborne dusts because of the inadequacy, defect, and unreasonably dangerous nature of the Defendant's respirators.

91.     As a proximate result of Defendant's misconduct, Plaintiff Rendon Francis has developed mesothelioma and suffered all damages as set forth above.

**STRICT PRODUCT LIABILITY – DEFECTIVE DESIGN BY 3M**

92.     The allegations in paragraphs One (1) through Ninety-One (91) above are realleged and incorporated by reference within this Count.

93.     Defendant, while regularly engaged in the business activities aforementioned, did design, develop, manufacture, sell, market and distribute their 8710 and Dustfoe 66 respirators, which were purchased by Plaintiff's employer and used by Plaintiff.

94.     The Defendant placed their inadequate respiratory protection products on the market and knew or should have known they would be used without inspection for defects.

95.     3M's 8710 respirator and MSA's Dustfoe 66 respirator were expected to reach and did reach the usual consumers, including Plaintiff Rendon Francis, without substantial change in the condition in which they were designed, produced, manufactured, sold, distributed and marketed by Defendant.

96.     Defendant failed to design, develop, manufacture, sell, market and distribute their respirators in such a manner as to render them safe for their intended and foreseeable uses by companies and users to which Defendants marketed these products.  By way of example and not limitation, Defendant:

    a.     Failed to design, develop, manufacture and test their respiratory protection products in such a manner as to render them safe for their intended and foreseeable users, when Defendant knew or should have known that the foreseeable use of intended purpose of its products was by persons, specifically Plaintiff, who worked with and around asbestos products;

    b.     Marketed and sold said products as sufficient respiratory protection against asbestos dusts while the same was in an unreasonably dangerous and defective condition, presenting a hazardous risk to Plaintiff's well-being;

    c.          Failed to recall or attempt to repair the defective products when Defendants were and had been aware of the propensity of said products to injure Plaintiff;

97.     Moreover, when Defendant's respiratory protection products left the Defendant's possession and were placed on the market, the products were defective in that:

    a. When used in the intended or reasonably foreseeable manner, the products were not reasonably safe for their intended use;

b. When used in the intended or reasonably foreseeable manner, the products failed to perform as safely as would be expected by an ordinary user or consumer;

c. When used in the intended or reasonably foreseeable manner, the products caused a risk of harm beyond that which would be contemplated by the ordinary user or consumer.

98. Defendant knew that their respiratory protection products were in a defective condition with respect to asbestos dusts and not reasonably safe for their marketed and intended use.

99. With this knowledge, Defendant voluntarily designed, manufactured and distributed their respective 8710 and Dustfoe 66 respirators in a defective condition for use by the public and, in particular, plaintiff Rendon Francis.

100. As a direct and proximate result of using Defendant's defective products for the general purpose for which they were designed and intended, Rendon Francis was overexposed to asbestos, contracted mesothelioma and has suffered and continues to suffer the injuries and damages set forth herein.

101. Accordingly, Defendant is strictly liable to Plaintiff Rendon Francis for defective design and manufacture and/or marketing, distributing, supplying and selling a defective product.

102. As a proximate result of Defendants' misconduct, Plaintiff Rendon Francis has developed mesothelioma and suffered all damages as set forth above.

## BREACH OF EXPRESS WARRANTY BY 3M

103. The allegations in paragraphs One (1) through One Hundred Two (102) above are realleged and incorporated by reference within this Count.

104. Defendant affirmatively represented their 8710 and Dustfoe 66 respirators (respectively) to be safe and effective protection against asbestos dusts in their advertising, promotional and safety materials, and information disseminated to employers and end-users like Plaintiff.

105. Defendant promoted and marketed said respirators as providing respiratory protection against asbestos dusts when the purported benefits were unfounded.

106. Defendant's promotional and safety materials and representations constitute affirmations, promises and descriptions, which became part of the basis of the bargain and

created an express warranty that said respirators should confirm to Defendant's affirmations or promises.

107. At the time that Plaintiff and Plaintiff's employer paid for said respirators, Defendant's express warranties were not true and said respirators did not provide protection against asbestos dusts, were not safe, and were not reasonably suitable and fit for use around asbestos as advertising and represented by Defendant.

108. The foregoing statements, descriptions and misrepresentations caused Plaintiff to suffer ascertainable losses in that he and his employer purchased respirators without knowing the true and complete risks and benefits of said respirators as it relates to providing protection against the inhalation, ingestion and absorption of asbestos dusts.

109. Plaintiff would not have used said respirators had Plaintiff known the true and complete risks inherent with said respirators.

110. As a proximate result of Defendant's breach of express warranty, Plaintiff Rendon Francis has developed mesothelioma and suffered all damages as set forth above.

## BREACH OF IMPLIED WARRANTY BY 3M

111. The allegations in paragraphs One (1) through One Hundred Ten (110) above are realleged and incorporated by reference within this Count.

112. At all relevant times herein, Defendant marketed, tested, manufactured, promoted, distributed and sold their respective 8710 and Dustfoe 66 respirators for use by the public at large, including Plaintiff. Defendant knew the uses for which their respirators were intended and impliedly warranted said products to be of merchantable quality, safe and fit for the uses Defendant marketed.

113. Plaintiff and Plaintiff's employer reasonably relied on the skill and judgment of Defendant, and as such, the implied warranty, in using the 8710 and Dustfoe 66 respirators when working with or around asbestos dusts.

114. Contrary to the implied warranty, said respirators were not of merchantable quality or safe or fit for their intended use around asbestos dusts, which rendered the respirators unreasonably dangerous and unfit for the purpose for which it was intended to be used.

115. As a proximate result of Defendant's breach of implied warranty, Plaintiff Rendon Francis has developed mesothelioma and suffered all damages as set forth above.

## FRAUDULENT CONDUCT. MALICE AND GROSS NEGLIGENCE BY 3M

116.     The allegations in paragraph One (1) through One Hundred Fifteen (115) above are realleged and incorporated by reference within this Count.

117.     The Defendant had a duty to refrain from gross negligence, fraud and/or malicious acts or omissions which would harm Plaintiff.

118.     Defendant is guilty of one or more of the following acts or omissions amounting to fraudulent misconduct, malice and gross negligence:

   a.     Intentionally or with gross negligence for the safety of Plaintiff, manufactured, sold and distributed respiratory protection products inadequate to protect against airborne asbestos dusts, even though it was completely foreseeable and could or should have been anticipated that persons such as Plaintiff would wear the respirator while working with or around airborne asbestos dusts;

   b.     Intentionally or with gross negligence for the safety of Plaintiff, designed, manufactured, marketed, sold and distributed a defective product which was unreasonably dangerous when used in the manner for which it was marketed and intended to be used;

   c.     Intentionally or with gross negligence for the safety of Plaintiff, failed to provide any or adequate warnings to persons using their products believing them to sufficiently protect against the inhalation, ingestion or absorption of asbestos fibers;

   d.     Intentionally or with gross negligence for the safety of Plaintiff, failed to provide any or adequate instructions concerning the limitations and inadequacies of their respirators to protect against asbestos dust, including specific instructions on how to avoid using said respirators while working with or around airborne asbestos dust;

   e.     Intentionally or with gross negligence for the safety of Plaintiff, failed to conduct tests to determine the limitations and inadequacies of the respirators in protecting against the inhalation, ingestion and absorption of asbestos dusts in order to determine the hazards to which persons such as Plaintiff might be exposed while working with and around asbestos products;

   f.     Intentionally or with gross negligence for the safety of Plaintiff, failed to adequately label, warn, package, market or distribute the respirator in a reasonable manner which would minimize or eliminate the penetration of asbestos dust fibers through the respirators, thereby adding to the exposure of Plaintiff and others similarly situated; and

   g.     Intentionally or with gross negligence for the safety of Plaintiff, failed to take adequate steps to remedy the above failures, including but not limited to: (1) failure to recall the respirators; (2) ongoing failure to conduct research to determine the respirator's limitations, capabilities and efficiency; and (3) failure to promptly remedy the inadequacies and shortcomings of the respirators to or to warn he end user of same.

119.     As a direct and proximate result of one or more of the foregoing actions and/or omissions of Defendant, Plaintiff Rendon Francis was exposed to asbestos, has contracted mesothelioma and has suffered and continues to suffer the injuries and damages as described herein despite his continued and proper use of Defendant's respirators, which Defendant claimed would protect Plaintiff against asbestos dust exposure.

**WHEREFORE**, on the basis of all of the foregoing premises set out in paragraphs 1 through 119, Petitioner requests that defendants be served with this Petition and that there be judgment against these defendants jointly, severally and in solido in a sum sufficient to compensate Petitioner for the following:

      a.  all past, present and future medical costs or expenses related thereto;

      b.  all past, present and future lost earnings;

      c.  all past, present and future mental suffering, anguish, and pain;

      d.  all past, present and future physical pain and suffering;

      e.  loss of consortium, love, affection, services and society;

      f.  loss of quality of life; and

      g.  interest from the date of judicial demand until paid, and costs of these proceedings.

**WHEREFORE** Petitioner prays that after due proceedings had, there be judgment herein in favor of Petitioner and against the defendants as prayed for.

Respectfully submitted,

**LANDRY, SWARR & CANNELLA, L.L.C.**

**FRANK J. SWARR, Bar No. 23322**
**MICKEY P. LANDRY, Bar No. 22817**
**DAVID R. CANNELLA, Bar No. 26231**
**PHILIP C. HOFFMAN, Bar No. 32277**
**1010 Common Street, Suite 2050**
**New Orleans, Louisiana 70112**
**Telephone:  (504) 299-1214**
**Facsimile:  (504) 299-1215**
lslaw@landryswarr.com

and

**MAUNE RAICHLE HARTLEY FRENCH & MUDD**
Nathaniel D. Mudd, MO Bar No. 51720
One Metropolitan Square
211 N. Broadway, Suite 2940
St Louis, MO 63102
Telephone: 314/244-1397
Facsimile: 314/621-5990

**ATTORNEYS FOR PLAINTIFF**

## **ORDER**

Let the above and foregoing Supplement and Amendment to the Original Petition for

Damages be filed as prayed for.

SO ORDERED this the _3_ day of _Oct_____, 2011.

**(Sgd.) Ethel S. Julien**

_____
JUDGE

A TRUE COPY

DEPUTY CLERK, CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

## EXHIBIT "A"

**PLEASE SERVE THE FOLLOWING:**

1. **Gulf Engineering Company, L.L.C.**
   Through its registered agent for service:
   Stuart Vint Massimini
   611 Hill Street
   Jefferson, Louisiana 70121

   This is an Employer Defendant.

2. **Continental Insurance Company**
   Through the Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, LA 70809

   This is an Employer Defendant.

3. **3M Company**
   Through its registered agent for service:
   C T Corporation
   5615 Corporate Boulevard, Suite 400B
   Baton Rouge, LA 70808

4. **BALMAC INTERNATIONAL, INC. f/k/a and successor-in-interest of BALFOUR MACLAINE INTERNATIONAL LIMITED**
   through the Louisiana Long Arm Statute to:
   (A) Chairman or Chief Executive Officer Anthonie C. VanEkris
       45 Broadway
       New York, New York, 10006

       And

   (B) Its Registered Agent via Long Arm
       Corporation Service Company
       2711 Centerville Road, Suite 400
       Wilmington, Delaware 19808

   This is an Asbestos Miner/Manufacturer/Seller/Supplier/Distributor Defendant, and an Asbestos Fiber Supplier Defendant.

5. **ONEBEACON INSURANCE COMPANY f/k/a COMMERCIAL UNION ASSURANCE COMPANY LIMITED**
   Through the Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, LA 70809

   This is an Asbestos Miner/Manufacturer/Seller/Supplier/Distributor Defendant, and an Asbestos Fiber Supplier Defendant.

6. **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**
   Through the Louisiana Secretary of State
   8585 Archives Avenue
   Baton Rouge, LA 70809

   This is an Asbestos Miner/Manufacturer/Seller/Supplier/Distributor Defendant, and an Asbestos Fiber Supplier Defendant.

**THE FOLLOWING DEFENDANTS WILL BE SERVED VIA LA. C. C.P. 1313:**

1. **Asbestos Corporation Limited**
   Through its counsel of record:
   Thomas G. Milazzo
   Pajares & Schexnaydre
   68031 Capital Trace Row
   Mandeville, Louisiana 70471

   This is an Asbestos Miner/Manufacturer/Seller/Supplier/Distributor Defendant, and an Asbestos Fiber Supplier Defendant.

2. **Eagle, Inc.**
   Through its counsel of record:
   Susan B. Kohn
   Simon, Peragine, Smith & Redfearn
   1100 Poydras Street
   30th Floor – Energy Centre
   New Orleans, LA 70163

   This is an Asbestos Miner/Manufacturer/Seller/ Supplier/Distributor Defendant.

3. **The McCarty Corporation**
   Through its counsel of record:
   Susan B. Kohn
   Simon, Peragine, Smith & Redfearn
   1100 Poydras Street
   30th Floor – Energy Centre
   New Orleans, LA 70163

   This is an Asbestos Miner/Manufacturer/Seller/ Supplier/Distributor Defendant.

4. **Reilly Benton Company, Inc.**
   Through its counsel of record:
   Diane M. Sweezer
   Willingham, Fultz & Cougill, LLP
   808 Travis Street, Suite 1608
   Houston, Texas 77002

   This is an Asbestos Miner/Manufacturer/Seller/ Supplier/Distributor Defendant.

5. **Taylor Seidenbach**
   Through its counsel of record:
   C. Kelly Lightfoot
   Hailey, McNamara, Hall
   One Galleria Boulevard, Suite 1400
   Metairie, Louisiana 70001

   This is an Asbestos Miner/Manufacturer/Seller/ Supplier/Distributor.

6. **Uniroyal, Inc.**
   Through its counsel of record:
   Dean Church
   Forman Perry Watkins Krutz & Tardy
   1515 Poydras St Ste 1300
   New Orleans, Louisiana 70112

   This is an Asbestos Miner/Manufacturer/Seller/Supplier/Distributor Defendant.

7. **Union Carbide Corporation**
   Through its counsel of record:

Michael H. Abraham
Kuchler Polk Schell Weiner
1615 Poydras Street, Suite 1300
New Orleans, Louisiana 70112

This is an Asbestos Miner/Manufacturer/Seller/ Supplier/Distributor Defendant.

8. **Metropolitan Life Insurance Company**
Through its counsel of record:
Patrick Roquemore
Kean Miller
400 Convention Street, Suite 700
Baton Rouge, Louisiana 70802

This is an Asbestos Minter/Manufacturer/Seller/Supplier/Distributor Defendant

9. **One Beacon Insurance Company, in its capacity as the insurer of Eagle, Inc.**
Through its counsel of record:
Samuel Rosamond
Crawford Lewis
400 Poydras Street, Suite 2100
New Orleans, LA 70130

This is an Asbestos Minter/Manufacturer/Seller/Supplier/Distributor Defendant

10. **CSR, Ltd.f/k/a COLONIAL SUGAR**
Through its counsel of record:
Frank Accardo, Esq.,
Puch, Accardo, Haas & Radecker, LLP
3200 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163-3200

This is an Asbestos Miner/Manufacturer/Seller/Supplier/Distributor Defendant, and an
Asbestos Fiber Supplier Defendant.



**TOM SCHEDLER**
**SECRETARY OF STATE**
**P.O. BOX 94125**
**BATON ROUGE, LA 70804-9125**



First Class Mail
ComBasPrice

UNITED STATES POSTAGE
PITNEY BOWES

02 1M        $ 05.09⁰
0004234138   OCT 13 2011
MAILED FROM ZIP CODE 70802





SS151-A