

# UNITED STATES OF AMERICA
## State of Louisiana

### Jay Dardenne
### SECRETARY OF STATE

*As Secretary of State of the State of Louisiana I do hereby Certify that*

the attached document(s) of

**PENDLETON SHIPYARDS CO., INC.**

are true and correct and are filed in the Louisiana Secretary of State's Office.

```
              ORIGF   11/5/1941    12 page(s)
   19603350   AMEND   11/21/1946   6 page(s)
   19604520   AMEND   12/7/1946    2 page(s)
   19803390   NOFDI   5/22/1947    3 page(s)
   21701880   DISSO   12/31/1951   1 page(s)
```

In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,

November 13, 2009

*Secretary of State*

AG 17601390D



**Certificate ID:** 10022948#XMI51

To validate this certificate, visit the following web site, go to **Commercial Division**, **Certificate Validation**, then follow the instructions displayed.
**www.sos.louisiana.gov**

Page 1 of 1 on 11/13/2009 10:27:29 AM

CI-HA-002534

Form 108—3M—84636

NOV—4 41 00248 — H...R 0.50

# W. P. HICKEY
## Recorder of Mortgages for the Parish of Orleans

### OFFICE

Corner Royal and Conti Streets

NEW ORLEANS, LA. *Nov 4* 19 *41*

I, the undersigned Recorder of Mortgages, in and for the Parish of Orleans, State of Louisiana,

do hereby certify that the above and foregoing Act of Incorporation of the *Pendleton*

*Shipyards Co. Inc.*

was this day duly recorded in my office, in Book No. *1629* Folio ——, *as folios*

New Orleans, *Nov 4* 19 *41*

*A. L. Magruins*
Recorder of Mortgages.

CI-HA-002535

UNITED STATES OF AMERICA )
STATE OF LOUISIANA      ( :::
PARISH OF ORLEANS       )

BE IT KNOWN, That on this 4th day of the month of November
in the year of our Lord, one thousand nine hundred and forty-one (1941), and of
the Independence of the United States of America, the one hundred and sixty-
fifth;

BEFORE ME, WATTS K. LEVERICH, a Notary Public, duly commissioned
and qualified in and for the Parish and State aforesaid, therein residing, and
in the presence of the witnesses hereinafter named and undersigned;

PERSONALLY CAME AND APPEARED:

The several persons whose names are hereunto subscribed, who
declared that, availing themselves of the laws of the State of Louisiana
relative to the organization of corporations, and particularly of Act 250
of 1928, as well as acts amendatory thereof and supplementary thereto, they
have covenanted and agreed, and do by these presents covenant, agree, bind,
form and constitute themselves, as well as such persons as may hereafter
join or become associated with them, into a corporation or body politic in
law, for the objects and purposes and under the agreements and stipulations
following, to-wit:

ARTICLE I.

The name of this Corporation shall be

PENDLETON SHIPYARDS CO., INC.

ARTICLE II.

The objects and purposes for which this Corporation is established,
and the nature of the business to be carried on by it, are hereby declared to be:

To buy, lease or otherwise acquire, hold, own, sell and operate plants
for building, outfitting, reconditioning and repairing ships, barges, tugs, and
other watercraft, and also for the manufacture and repair of all sorts of machinery,

CI-HA-002536

apparatus and equipment; to operate dry docks, machine shops, ship repair plants, and other conveniences for building, repairing and drydocking ships, barges, tugs and other watercraft, and engines, boilers, machinery, tackle, appurtenances, apparatus and equipment of any and every character.

To manufacture, purchase or otherwise acquire, own, mortgage, pledge, sell, assign and transfer, or otherwise dispose of, to invest, trade, deal in and deal with goods, wares and merchandise and personal property of every class and description.

To acquire all or any part of the good will, rights, assets, property and business of any person, entity, partnership, association or corporation, whether heretofore or hereafter engaged in any business similar to any business which the Corporation has power to conduct, or not; to pay for the same in cash or in stocks, bonds or other obligations of the Corporation, or otherwise; to hold, utilize and in any manner dispose of the whole or any part of the rights and property so acquired, and to undertake and assume in connection therewith any liabilities of any such person, entity, partnership, association or corporation and conduct in any lawful manner the whole or any part of the business thus acquired.

To acquire, hold, use, sell, assign, lease, grant licenses in respect of, mortgage or otherwise dispose of letters patent of the United States or any foreign country, patent rights, licenses and privileges, inventions, improvements and processes, copyrights, trade-marks and trade names, relating to or useful in connection with any business of this Corporation.

To make any guarantees with respect to, and to purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of, shares of the capital stock of, or dividends thereon, or any bonds, interest, securities, or evidences of indebtedness, contracts or other obligations, created by any other corporation or corporations organized under the laws of this State or any other State, country, nation or government, so far as the same may be permitted to be done by a corporation organized under the laws of Louisiana, and while the owner thereof to exercise all the rights, powers and privileges of ownership, including the right to vote thereon.

To enter into, make and perform contracts of every kind and description with any person, firm, association, corporation, municipality, county, state, body politic or government or colony or dependency thereof.

CI-HA-002537

To borrow or raise moneys for any of the purposes of the Corporation and, from time to time, without limit as to amount, to draw, make, accept, endorse, execute and issue promissory notes, drafts, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness, and to secure the payment of any thereof and of the interest thereon by mortgage upon or pledge, conveyance or assignment in trust of the whole or any part of the property of the Corporation, whether at the time owned or thereafter acquired and to sell, pledge or otherwise dispose of such bonds or other obligations of the Corporation for its corporate purposes.

To have one or more offices to carry on all or any of its operations and business, and without restriction or limit as to amount to purchase or otherwise acquire, hold, own, mortgage, sell, convey, or otherwise dispose of real and personal property of every class and description in any of the States, Districts, Territories or Colonies of the United States, and in any and all foreign countries, subject to the laws of such State, District, Territory, Colony or Country.

To loan its uninvested funds and/or surplus from time to time to such extent as the Corporation may deem advisable in call and/or time loans, upon such security, if any, as the Board of Directors may determine.

To purchase, hold, sell, transfer, reissue or cancel the shares of its own capital stock or any securities or other obligations of the Corporation in the manner and to the extent now or hereafter permitted by the laws of Louisiana; provided that the Corporation shall not use its funds or other assets for the purchase of its own shares of stock when such use would cause any impairment of the capital of the Corporation, and provided further that shares of its own capital stock belonging to the Corporation shall not be voted directly or indirectly.

In general, to carry on any business not contrary to the laws of Louisiana and to have and exercise all of the powers conferred by the laws of Louisiana upon corporations formed thereunder; and to do any and all of the acts and things herein set forth to the same extent as natural persons could do, and in any part of the world, as principal, factor, agent, contractor, trustee or otherwise, either alone or in company with any person, entity, syndicate, partnership, association or corporation; to establish and maintain offices and agencies within, and anywhere outside

-3-



CI-HA-002538

of, the State of Louisiana; and to exercise all or any of its corporate powers and rights in the State of Louisiana and in any and all other States, territories, districts, colonies, possessions or dependencies of the United States of America and in any foreign countries.

To do everything necessary, proper, advisable or convenient for the accomplishment of any of the purposes or the attainment of any of the objects or the furtherance of any of the powers herein set forth and to do every other act and thing incidental thereto or connected therewith, provided the same be not forbidden by the laws of Louisiana.

In general, to carry on and undertake any other business or operation which may from time to time seem to the Board of Directors capable of being conveniently carried on in connection with the foregoing objects and purposes, and/or any lawful business which a general trading corporation may do under the provisions of Act #50 of 1928 and all amendments thereof.

The objects, purposes and terms specified in any clause herein shall be in no manner limited or restricted by reference to or inference from any other clause, but the objects, purposes and powers specified in each of the clauses of this paragraph shall be regarded as independent objects, purposes and powers and in furtherance and not in limitation of the general powers conferred by the laws of the State of Louisiana.

ARTICLE III.

The duration of this Corporation shall be for ninety-nine years from the date hereof.

ARTICLE IV.

The location of the postoffice address of its registered office is: 1811 Masonic Temple Building, 333 St. Charles Street, New Orleans, Louisiana.

ARTICLE V.

The full names and postoffice addresses of its registered agents are:

Pendleton E. Lehde,    1811 Masonic Temple Building, New Orleans, Louisiana.
Edmund B. Glenny,      1735 Bordeaux Street,         New Orleans, Louisiana.

ARTICLE VI.

The total number of shares of capital stock which the Corporation is authorized to issue is 8,250. Said stock shall be divided into two classes, to

-4-

CI-HA-002539

be known as Preferred Stock and Common Stock.   The Preferred Stock shall consist
of 5,000 shares of a par value of One Hundred ($100.00) Dollars per share.   The
Common Stock shall consist of 3,250 shares of a par value of Ten ($10.00) Dollars
per share.   Subject to the limitations hereinafter contained, the whole or any
part of the stock may be issued at such times and in such amounts and manner and
for such consideration permitted by law as the Board of Directors may determine
and direct.

The distinguishing preferences, rights, voting powers, privileges, res-
trictions and qualifications of the preferred and common stock, and a description of
the terms on which the respective classes are created, are as follows:

PREFERRED STOCK

Section 1.   Every share of preferred stock shall be equal in all
respects to every other share of preferred stock.

(a)  The holders of the preferred stock shall be entitled to receive,
when and as declared by the Board of Directors of the Corporation, out of the surplus
or net profits of the Corporation, dividends at the rate of Five Dollars ($5.00) per
share per annum, and no more, payable semi-annually on the first days of January and
July of each year, before any dividends shall be paid upon or set apart for the
common stock.   Dividends on such preferred stock shall be cumulative (but without
interest) from January 1, 1942, and shall have preference and priority over the common
stock, and the first cumulative dividend (hereinafter called the initial dividend), in
the sum of $2.50 per share, shall be payable July 1, 1942.

(b)  In no event shall any dividend whatsoever be declared or paid, or any
distribution be made, upon the common stock while any of the preferred stock is out-
standing, unless (a) at such time, all dividends on the preferred stock, at the rate of
$5.00 per share per annum, which shall have matured, shall have been declared and paid
in full; (b) the full cumulative dividend, as aforesaid, for the initial dividend
period, or the current semi-annual dividend, as the case may be, on the preferred
stock, shall have been declared and paid, or provided for; (c) an amount equal to
$2.50 per share on all the outstanding preferred stock shall have been set aside out
of earnings to pay the semi-annual dividend on the outstanding preferred stock, at
the next ensuing semi-annual dividend date.

-5-

CI-HA-002540

Subject to the foregoing provisions, and not otherwise, such dividends (payable either in cash or otherwise) as may be determined by the Board of Directors may be declared and paid on the shares of common stock from time to time out of the remaining surplus or net profits of the Corporation, and, in the event of the declaration and payment of any such dividends, the holders of the common stock shall be entitled, to the exclusion of the holders of the preferred stock, to share ratably therein.

No common stock shall be purchased, redeemed or otherwise acquired by the Corporation, for any consideration, so long as any of the said preferred stock is outstanding, except out of funds available for dividends on such common stock, in which case the Corporation may acquire and sell or otherwise reissue such common stock for such consideration as from time to time may be determined by the Board of Directors.

(e) The Corporation may redeem the whole or any part of the outstanding preferred stock on any semi-annual dividend date (unless said dividend payment date be on a Sunday or holiday, and then on the next succeeding business day), at the option of the Board of Directors, upon not less than thirty (30) days nor more than sixty (60) days previous notice given by mail to the holders of record thereof, at their addresses as the same appear on the books of the Corporation, and by (1) paying One Hundred and Five ($105.00) Dollars for each share thereof, together with a sum of money equivalent to dividends at the rate of $5.00 per share per annum from the date or dates on which the dividends on said shares of preferred stock so to be redeemed became cumulative, to the date fixed for such redemption, less the amount of dividends theretofore paid thereon (herein called "redemption price"), or, in lieu of such payment, by (2) depositing such redemption price, in cash, on or prior to said redemption date, with such Bank or Trust Company in the City of New Orleans, Louisiana, as may be designated by the Board of Directors of the Corporation, in trust, for payment on said redemption date to the holders of the preferred stock so to be redeemed.  On and after the date fixed in such notice as the date of redemption (unless default be made by the Corporation in payment and/or deposit of the redemption price pursuant to such notice), all dividends on the preferred stock so called for redemption shall cease to accrue and, on such date, or on any date prior thereto on which the funds for such redemption shall be deposited in trust, as aforesaid, with such Bank or Trust Company in the City of New Orleans,

CI-HA-002541

Louisiana, (notice of redemption having been given as aforesaid), all rights of the holders of record of said preferred stock as stockholders of the Corporation shall cease and determine, except the right to receive the redemption price upon surrender duly endorsed for transfer of certificates representing said preferred stock. In the event that less than all of the outstanding preferred stock is to be redeemed, the amount to be redeemed shall be determined by resolution of the Board of Directors, and the shares to be redeemed shall be selected by lot, in any usual manner fixed by the Board of Directors. None of said preferred stock so redeemed shall be reissued, and no preferred stock of equal or superior rank shall be issued in lieu thereof or in exchange therefor.

To the extent not prohibited by law, and subject to the provisions of this Article, the Corporation may acquire funds for or otherwise effect the redemption or purchase of any of its shares of preferred stock through issuance or sale of any of its shares of stock, bonds or other securities.

(d) The preferred stock shall be entirely without voting power, except as herein otherwise expressly provided, unless and until the Corporation shall be in default in the payment in full of an aggregate of three (3) semi-annual dividends on the preferred stock, and such default shall have continued for a period of thirty (30) days, and then and in any such event, and so long as such default continues, the holders of the preferred stock shall have, for all corporate purposes, one vote for each share of preferred stock held by them. As and when all defaulted dividends shall be paid in full, and such payments of such defaulted dividends shall be made as promptly as shall be consistent with the best interests of the Corporation, the holders of the preferred stock shall be divested of such voting privileges, and the exclusive voting power for the election of directors, and for all other corporate purposes, shall then re-vest in the holders of the common stock as before, but always subject to the same provisions for the vesting of voting power in the preferred stock in the case of any future default in the payment in full of an aggregate of three (3) semi-annual dividends on the preferred stock, and subject also to the re-vesting of such exclusive voting power in the common stock in the event that such default shall be cured as above provided.

Upon the vesting of voting power in the holders of the preferred stock, as above provided, any holder of preferred stock shall have the privilege, upon notice similar to that provided in the by-laws for an annual meeting, to waive a

-7-

CI-HA-002542

meeting of the stockholders to be called by addressing a request in writing to the
Secretary of the Corporation, at its principal office, and in the event of the
failure on the part of the Secretary or other proper officer of the Corporation to
give such notice, then such meeting may be called and shall be held upon notice
similar to that provided in the bylaws for an annual meeting, given by any holder of
the preferred stock. At such meeting, new directors may be elected to replace the
directors in office, whose term of office will automatically expire upon the quali-
fication of their successors elected at such meeting. At any meeting so called, the
stockholders may take up and pass upon any other matters that might properly be
acted upon at an annual meeting of the stockholders. At any such meeting, to
constitute a quorum there shall be present, in person or by proxy, the holders of
at least a majority in number of the total shares of preferred and common stock
outstanding at the time, and a vote of a majority of the stock, common and preferred,
represented at such meeting, shall constitute the valid action of such stockholders'
meeting.

(e) The preferred stock shall be preferred as to both earnings and
assets, and, in the event of any liquidation or dissolution or winding up, whether
voluntarily or involuntarily, of the Corporation, or any resolution of its capital
or capital stock resulting in the distribution of any of its assets to stockholders,
except in case of redemption made in the manner above provided, the holders of the
preferred stock shall be entitled, before any assets of the Corporation shall be
distributed among or paid over to the holders of the common stock, to be paid the
sum of One Hundred ($100.00) Dollars per share, together with a sum of money
(payable as a debt and out of the surplus and/or capital of the Corporation) equal
to $5.00 per share per annum from the date on which dividends on such preferred stock
become cumulative, to the date of payment thereof, less the amount of dividends there-
tofore paid thereon; and, after the making of such payment to the holders of the pre-
ferred stock, the remaining assets and funds of the Corporation shall be distributed
among the holders of the shares of common stock, share and share alike. If, upon such
liquidation, dissolution or winding up, or distribution, the assets of the Corporation
distributable as aforesaid among the stockholders of the preferred stock, shall be
insufficient to permit the payment to them of said amounts, then the entire assets

-8-

CI-HA-002543

of the Corporation shall be distributed ratably among the holders of the preferred stock.

(f) The Board of Directors is authorized, in its discretion, and upon compliance with the requirements of law, presently to issue the entire 5,000 shares of preferred stock hereby authorized, and the entire 2,250 shares of common stock hereby authorized, for such consideration in cash, property or services as may be determined by the Board of Directors.   So long as the presently authorized preferred stock or any part thereof, is outstanding:

    (1)  No preferred stock or common stock in addition to that presently authorized may be issued;

    (2)  No mortgage shall be granted by the Corporation except for the unpaid purchase price of property hereafter purchased by the Corporation;   and

    (3)  No amendment shall be made to this charter;

except, in each of said three cases, with the consent of two-thirds of the then outstanding preferred stock.

## COMMON STOCK

Section 2.   Every share of common stock shall be equal in all respects to every other share of common stock.  Shares of common stock shall have a par value of Ten Dollars ($10.00) per share.  The said shares shall be entitled to participate in the distribution of assets upon the liquidation of the Corporation, and in dividends, subject to the preferences and priorities established in favor of the preferred stock.  Subject to the foregoing provisions relative to the rights of the holders of the preferred stock, the Board of Directors may declare dividends payable upon the common stock, out of the remaining surplus or net profits of the Corporation.  The common stock shall, in all matters, have exclusive voting power, each share being entitled to one vote, except when voting power is also vested in the preferred stock as hereinabove provided, in which case both the preferred and the common stock shall be entitled to vote each share of common stock having one vote and each share of preferred stock having one vote.

## INCREASED STOCK

Section 3.   Subject to the provisions of the laws of the State of Louisiana, the stock of this Corporation, whether preferred or common, may be

CI-HA-002544

increased. Said increased stock may be issued for such consideration, at such time, and on such terms and conditions, as the Board of Directors may deem advisable, provided that the written consent of the holders of at least two-thirds of the number of shares of preferred stock at the time outstanding (in addition to any other vote or consent at the time required by law) shall have been first obtained. Unless otherwise specifically provided in the charter amendment providing for such additional increase, and in the written consent of the holders of two-thirds of preferred stock, the holders of the preferred and of the common stock shall each have a preemptive right with respect to any such new authorized stock, during a reasonable time to be fixed by the Board of Directors, to subscribe, at such price and upon such terms as may be fixed by the Board, for that proportion of the shares to be allotted as the number of shares, preferred and/or common, held by him, bears to the total number of shares, both preferred and common, then outstanding.

In like manner, if any shares of stock herein presently authorized are not subscribed, issued and sold prior to July 1, 1942, upon any further allotment of such shares herein authorized but unissued as of said date, the holders of the common stock and/or preferred stock shall have, for a reasonable time, a preemptive right in proportion to the number of shares held by each.

ARTICLE VII.

The amount of paid in capital with which the Corporation will begin business is One Thousand ($1,000.00) Dollars.

ARTICLE VIII.

Unless and until otherwise provided in the by-laws, all powers of this Corporation shall be vested in a Board composed of not less than five (5) nor more than fifteen (15) Directors, the precise number of Directors within said limits to be fixed by the by-laws. Any Director absent from a meeting may be represented by any other Director or shareholder, who may cast the vote of the absent Director according to the written instructions, general or special, of said absent Director.

Any Director or officer may be removed at any time, with or without cause, by the votes of holders of two-thirds of the capital stock then outstanding, at any regular meeting of stockholders or any special meeting called for such purpose. Subject to

CI-HA-002545

the right of the stockholders at any time to change the same, the Board of Directors may adopt, and from time to time repeal, amend and supplement, by-laws containing any provisions with respect to the government of the Corporation and the powers of Directors and stockholders not prohibited by law and not inconsistent with this charter. All Directors shall be of the same class and shall hold office for a term of one year, or until their successors are elected and qualified. The names and postoffice addresses of the first Directors are:

| | |
|---|---|
| Pendleton E. Lehde | 1811 Masonic Temple Bldg., New Orleans, La. |
| Mariah L. Thompson | c/o U. S. Treasury Department, Washington, D.C. |
| Edmund B. Glenny | 1735 Bordeaux, New Orleans, La. |
| John A. Bechtold | Pontchartrain Hotel, New Orleans, La. |
| Robert L. Simpson | 800 S. Peters, New Orleans, La. |

ARTICLE IX.

The names and postoffice addresses of the incorporators, and a statement of the number of shares subscribed by each, are as follows:

| | | Shares | |
|---|---|---|---|
| | | Preferred | Common |
| Pendleton E. Lehde | 1811 Masonic Temple Bldg., New Orleans, La. | | 25 |
| Edmund B. Glenny | 1735 Bordeaux, New Orleans, La. | | 25 |
| John A. Bechtold | Pontchartrain Hotel, New Orleans, La. | | 25 |
| Robert L. Simpson | 800 S. Peters, New Orleans, La. | | 25 |

THUS DONE AND PASSED at my office in the City of New Orleans, on the day, month and year first above written, in the presence of _____ Yvonne G. Gifford _____ and _____ Bill Schilling _____, competent witnesses, who have hereunto subscribed their names together with me, Notary, and the said appearers, after due reading of the whole.

(Original signed)

WITNESSES:

Yvonne G. Gifford

Bill Schilling

Pendleton E. Lehde

E. B. Glenny

R. L. Simpson

John A. Bechtold

STATE OF LOUISIANA
PARISH OF ORLEANS

I hereby certify the foregoing to be a true and correct copy of the Original ...

Watts K. Leverich, Not. Pub.

NOTARY PUBLIC

CI-HA-002546

BE IT KNOWN, That on this 12th day of the month of November, in the
year of our Lord, one thousand nine hundred and forty-six (1946),

BEFORE ME, WATTS K. LEVERICH, a Notary Public duly commissioned and
qualified in and for the Parish of Orleans, State of Louisiana, therein residing,
and in the presence of the witnesses hereinafter named and undersigned,

PERSONALLY CAME AND APPEARED:

PENDLETON E. LYNDS,

a resident of the City of New Orleans, State of Louisiana, who declared that
he appears before me, Notary, in his capacity as President of PENDLETON SHIPYARDS
COMPANY, INC., a corporation organized under the laws of the State of Louisiana
by act before Watts K. Leverich, Notary Public, dated November 4, 1941, recorded
in M.O.B. 1629, Folio 92, acting under the authority of a resolution adopted at
a meeting of the stockholders of said Company held on the 12th day of November,
1946, at the offices of the Company in the City of New Orleans, Louisiana.

WHEREUPON, the said appearer declared that at a meeting of the stockholders
of PENDLETON SHIPYARDS COMPANY, INC., duly convened and held at the offices of the
Company in New Orleans, Louisiana, on November 12, 1946, at 2:00 P.M., which said
meeting was held pursuant to due notice sent to all the stockholders of the cor-
poration, at their last known postoffice addresses, under date of October 30, 1946,
and at which meeting there was represented, in person or by proxy, 1687 1/2  shares
of stock out of a total of 1931 1/2  shares of outstanding stock, by unanimous
vote of all stockholders present in person or by proxy, it was resolved to reduce
the capital stock of the Company by (a) cancelling the authorization for the issue
of any Preferred Stock, (b) by reducing the par value of the Common Stock from
$10.00 par share to $1.00 par share, and (c) by reducing the number of shares of
capital stock authorized to 2,000 shares of Common Stock.

Said appearer further declared that Article VI of the said charter was, at
the meeting of the stockholders of PENDLETON SHIPYARDS COMPANY, INC., amended to
read as follows:

CI-HA-002547

"ARTICLE VI

"The total number of shares of capital stock which the corporation is authorized to issue is Two Thousand (2,000) Shares of a par value of One Dollar ($1.00) each. The whole or any part of the stock may be issued at such times and in such amounts and manner and for such consideration permitted by law as the Board of Directors may determine and direct. All shares of stock shall be full paid and non-assessable. No transfer of stock shall be binding upon the corporation unless made upon its books, and all certificates of stock shall be signed by such officers as may be designated by the Board of Directors."

That in all other respects, the charter of the said corporation to remain unchanged and unaltered.

Said appearer did further state that the financial condition of the Company was and is substantially as set out in the Statement of the Company dated September 30, 1946, which follows:

Statement of Assets and Liabilities
Pendleton Shipyards Company, Inc.
September 30, 1946

## Assets

| | |
|---|---|
| Cash on hand and in banks | $ 185,693.00 |
| Accounts Receivable | 110,222.34 |
| Fixed Assets | 23,555.00 |
| Deferred Charges | 7,843.98 |
| Other Assets | 4,351.19 |
| **Total Assets** | $ 331,665.51 |

## Liabilities

| | |
|---|---|
| Accounts Payable | $ 49,127.46 |
| Accrued Liabilities | 1,971.12 |
| Other Liabilities, including | |
| Reserve for Income Taxes | 169,967.59 |
| Capital Stock: | |
| Preferred | 0 |
| Common | 19,315.00 |
| Surplus | 71,284.32 |
| **Total Liabilities** | $ 331,665.51 |

CI-HA-002548

and further declared that the proposed reduction will not reduce the actual value of the assets of the corporation to an amount less than the total amount of its debts and liabilities plus the amount of its capital stock as so reduced.

And now, under the direction and institution of said appearer, I, Notary, have incorporated in this act said change and amendment of Article VI of the charter of said corporation, in the manner and form hereinabove set forth, in order that the same may be recorded according to law and become binding and operative on all persons who are now or may hereafter become stockholders of said corporation or become otherwise interested therein.

THUS DONE AND SIGNED in my notarial office in the City of New Orleans, Louisiana, on the day, month and year above written, in the presence of _____Chas. M. Mackie, Jr._____ and _____F. W. Gaudin_____, competent witnesses, who hereunto sign their names together with said appearer and me, Notary, after due reading of the whole.

*(Original Signed)*

WITNESSES:

/s/ Chas. M. Mackie, Jr.

/s/ F. W. Gaudin

Watts K. Leverich
NOTARY PUBLIC

STATE OF LOUISIANA }
PARISH OF ORLEANS }

I hereby certify the foregoing to be a true and correct copy of the Original of record in my office.
New Orleans, La.

CI-HA-002549

A special meeting of the stockholders of PENDLETON SHIPYARDS COMPANY, INC., was held in the office of the Company, 1411 Masonic Temple Building, New Orleans, Louisiana, on November 12, 1946, at 2:00 P.M., pursuant to notice duly mailed to each stockholder, said notice being dated October 31, 1946, copy of which notice is attached hereto and made a part hereof.

1. **Organization of the Meeting:** The meeting was called to order by the President, Mr. Pendleton E. Lehde. Mr. Lehde stated that it would be in order to elect a Chairman of the meeting. Upon motion of Mr. Mackie, seconded by Mr. Gaudin, and unanimously carried, Mr. Lehde was nominated Chairman of the meeting, and Mr. J. Raburn Monroe was nominated Secretary of the meeting. Mr. Monroe then proceeded with the reading of the call of the meeting.

2. **Appointment of Committee on Proxies:** Mr. Lehde then appointed a committee on proxies, consisting of Messrs. Chas. W. Mackie and Mr. Felix W. Gaudin. All proxies were then turned over to this committee, together with a list of stockholders and the committee thereupon proceeded to check the proxies.

3. **Stockholders Present and Voting in Person:** The following stockholders were present and voting in person, the number of shares of stock represented being as follows:

| Name | No. of Common Shares |
|------|----------------------|
| Chas. W. Mackie | 5 |
| Arthur J. Waguin | 2 |
| Felix W. Gaudin | 144 |
| Pendleton E. Lehde | 944 |
| | 1095 |

4. **Report of the Committee on Proxies:** The committee on proxies reported that after a careful check of the proxies which had been turned over to them, they found that stockholders representing an aggregate total of 555 shares of common stock had appointed Messrs. Lehde, Elsasser, Walker, or any one of them, or others present, to vote in their behalf.

5. **Quorum:** It was then determined that there were present and voting in person stockholders representing 1095 shares of common stock, together with 555 shares voted by proxy, making a total of 1650 shares of voting stock represented at this stockholders' meeting out of a total of 1931½ outstanding, and that, therefore, there was a quorum present.

6. **Report of the President:** Mr. Lehde then recited the events which transpired at the Board meeting held on October 25, 1946 and reviewed the present operating and financial position of the Company. After a full discussion, on motion by Mr. Gaudin, seconded by Mr. Mackie, the following resolution was unanimously carried, all stockholders present, both in person and by proxy, totaling 1650 shares, voting in favor thereof:

> WHEREAS all of the outstanding Preferred Stock of this corporation has been heretofore redeemed by the corporation;
>
> RESOLVED, That the charter of this corporation be amended so that (1) the authorized Preferred Stock of the corporation be cancelled, (2) the number of shares of Capital Stock authorized be reduced to Two Thousand (2,000) shares, and (3) the par value of the authorized stock be reduced from Ten Dollars ($10.00) per share to One Dollar ($1.00) per share.
>
> RESOLVED, FURTHER, That Article VI of the charter of the corporation be amended so as to read as follows:

CI-HA-002550

## "ARTICLE VI

"The total number of shares of capital stock which the corporation is authorized to issue is Two Thousand (2,000) Shares of a par value of One Dollar ($1.00) each. The whole or any part of the stock may be issued at such times and in such amounts and manner and for such consideration permitted by law as the Board of Directors may determine and direct. All shares of stock shall be full paid and non-assessable. No transfer of stock shall be binding upon the corporation unless made upon its books, and all certificates of stock shall be signed by such officers as may be designated by the Board of Directors."

RESOLVED, FURTHER, That Pendleton E. Lehde, President, be and he is hereby authorized, on behalf of the corporation, to appear before a Notary Public to execute an authentic act effecting such amendment and reduction of capital stock, and on behalf of the corporation to execute such other papers and documents as may be necessary to effect such amendment and reduction.

RESOLVED, FURTHER, That upon such amendment to the charter and such reduction of capital stock hereinabove authorized becoming effective, Sidney H. Walker, Treasurer, be and he is hereby authorized and directed to pay to each of the holders of record of the outstanding Common Stock a sum equal to Nine Dollars ($9.00) per share for each share of which he is the record owner, upon presentation by each of the said stockholders of his certificate of stock to the said Sidney H. Walker, Treasurer, and upon said Sidney H. Walker's noting on said certificate the words "Par Value reduced to One Dollar ($1.00) per share by charter amendment by act before Watts K. Leverich, Notary Public, dated November 12, 1946; Nine Dollars ($9.00) per share this day paid on this certificate", together with the date and signature of the said Sidney H. Walker.

There being no further business, the meeting adjourned at 3:30 P.M.

I, the undersigned Secretary of the special meeting of the Stockholders of PENDLETON SHIPYARDS COMPANY, INC., held on November 12, 1946, at 2:00 P.M., in the offices of the Company, 1411 Masonic Temple Building, 333 St.Charles Street, New Orleans, La., hereby certify that the foregoing is a true and correct copy of the minutes of said meeting of Stockholders held on that date and at that place.

CI-HA-002551

Form 102—2M—55149

H⁹Y-14-46 · 0 0 0 2 9 · ᴬᴾᴾᴿ H CRT · 0.50

Mortgage Office

# W. P. HICKEY

# Recorder of Mortgages for the Parish of Orleans

### OFFICE

### Corner Royal and Conti Streets

NEW ORLEANS, LA., *Nov. 14,* 1946

I, the undersigned Recorder of Mortgages, in and for the Parish of Orleans, State of Louisiana, *Amendment*

do hereby certify that the above and foregoing Act of ~~Incorporation~~ of the...........................................

*Pendleton Shipyards Company, Inc.*

was this day duly recorded in my office, in Book No. *1709* Folio......—...... @ *9⁴⁰ a. m.*

New Orleans, *Nov. 14,* 1946

*Wm. Schoenfeld,*

*Dy.* Recorder of Mortgages.

22

CI-HA-002552

CERTIFICATE OF REDEMPTION OF PREFERRED STOCK

We, the undersigned, Pendleton E. Lehde, President, and Sidney H. Walker, Secretary and Treasurer, of PENDLETON SHIPYARDS COMPANY, INC., do hereby certify that under date of July 1, 1946, the corporation redeemed all of its outstanding Preferred Stock in accordance with the provisions of Article VI of its charter, by paying One Hundred and Five ($105.00) Dollars therefor. The number and class of shares so redeemed were

_____2366_____ shares of Preferred Stock, and the amount of capital used for such redemption was Two Hundred Forty-Eight Thousand Four Hundred Thirty ($248,430.00 ) Dollars.

STATE OF LOUISIANA )

PARISH OF ORLEANS (

Before me, the undersigned Notary Public, this day personally came and appeared:

PENDLETON E. LEHDE and SIDNEY H. WALKER,

to me well known, who being duly sworn, did depose and say:

That they are, respectively, the President and the Secretary-Treasurer of PENDLETON SHIPYARDS COMPANY, INC., and that they acknowledge that they executed the foregoing certificate in their capacities as aforesaid, for the purposes therein stated, as their free act and deed.

IN WITNESS WHEREOF, I have hereunto affixed my official signature and seal of office, on this _____ day of _____, 1946.

_____
NOTARY PUBLIC

CI-HA-002553

Form 101—2M—24146          NOV 26-46   0 0 0 8 8   — H CRT          0.50

# W. P. HICKEY

Mortgage Office

# Recorder of Mortgages for the Parish of Orleans

### OFFICE

### Corner Royal and Conti Streets

NEW ORLEANS, LA., *Nov. 26*, 19*46*

I, the undersigned Recorder of Mortgages, in and for the Parish of Orleans, State of Louisiana,

*Stock Redemption*

do hereby certify that the above and foregoing Act of ~~Incorporation~~ of the ...........................

*Pendleton Shipyards Company, Inc.*

was this day duly recorded in my office, in Book No. *1 7 0 9* Folio ........... *@ 9:25 a.m.*

New Orleans, *Nov 26*, 19*46*

*Wm. Schoenfeld,*
*By* Recorder of Mortgages.

22

CI-HA-002554

RESOLVED That

WHEREAS it is deemed advisable and for the best interests of Pendleton Shipyards Company, Inc., and its stockholders that said corporation be dissolved and that the assets thereof be completely liquidated; and

WHEREAS, in order to protect the stockholders against possible liabilities, it is deemed advisable to liquidate and distribute to its shareholders only a portion of its assets at the present time, and to liquidate and distribute to its shareholders the balance of its assets at a later time or times, all of which distributions, however, to be made for the purpose of completely liquidating the assets of said corporation pursuant to the plan hereinafter set forth;

NOW, THEREFORE, the following plan for distribution and liquidation of Pendleton Shipyards Company, Inc., is hereby adopted:

1. Pendleton Shipyards Company, Inc. shall be dissolved voluntarily and its affairs shall be wound up out of Court; and all documents and instruments necessary to effect such dissolution shall be promptly filed with the proper authorities of the State of Louisiana.

2. Pendleton E. Lehde and Sidney H. Walker shall be and they hereby are appointed Liquidators, without bond, to conduct the winding up of said corporation; that the compensation of said Liquidators is hereby fixed at $1,000.00 each; that the said Liquidators are hereby given full power to pay all proper debts and obligations of said corporation, to make any and all tax returns and pay any taxes due from said corporation, to collect and receive any moneys that may be due to said corporation, to distribute the assets of said corporation to the stockholders thereof, to receive for cancellation and to cancel the outstanding stock of said corporation, to effect the sale of the remaining physical assets of the corporation, and in that connection to execute such acts of sale, assignments and other documents as they deem appropriate, to make a final accounting of the liquidation, and to do any and all other acts necessary or appropriate in connection with the liquidation and winding up of said corporation, all of which powers shall be exercised by the said liquidators in accordance with the provisions contained in this plan of dissolution and liquidation.

3. After the formal placing of the Company in liquidation, a liquidating dividend of $30.00 per share on all outstanding common stock shall be immediately paid from the remaining assets of said corporation to the stockholders thereof.

4. The balance of the assets of the corporation, upon liquidation, shall be distributed to its shareholders in liquidation at such time, or from time to time, as the said Liquidators shall deem advisable, but the final distribution in liquidation shall be made as soon as all of the liabilities of said corporation shall have been terminated, and such final distribution shall be completed, in any event, not later than May 1, 1949.

5. Upon the distribution of the first dividend in liquidation, the outstanding stock certificates of said corporation shall be surrendered by the respective holders thereof, and upon and after the date fixed for such distribution, all of the outstanding stock of said corporation shall be deemed to have been cancelled. For the stock certificates so surrendered, the said Liquidators shall issue their receipts. Any and all further distributions in liquidation shall be made by check payable to the registered holders of such receipts, as the same may appear on the records of the Liquidators, and the Liquidators shall be deemed to have discharged their duty with respect to the holders of such receipts by mailing such checks to the several holders thereof, at their addresses appearing on the records of the Liquidators.

CI-HA-002555

6. If, upon the date fixed by the said Liquidators for distribution of the final liquidating dividend, any stockholder shall have failed to surrender the stock certificates or certificates held by such stockholder, the said Liquidators shall deliver to a banking corporation which is a member of the New Orleans Clearing House Association, selected by the Liquidators, the funds allocated by them for distribution in liquidation to each such stockholder, to be held by said bank for the account of each such stockholder until such stockholder shall have surrendered his or her stock certificate or otherwise established to the satisfaction of such bank his or her right to such funds. Delivery of such funds to said bank shall constitute payment by the said Liquidators to the several stockholders for whose benefit such delivery is made, and such stockholders shall thereafter look only to said bank; and all liability and responsibility of said Liquidators with respect to any and all such stock shall be terminated and forever discharged. For the purpose hereof, said Liquidators are authorized to enter into an agreement or agreements with the said bank so selected and to provide for payment for its services from the funds so delivered to it, or otherwise.

7. That Pendleton E. Lehde is hereby authorized, on behalf of the stockholders, to acknowledge this resolution as required by law.

I, the undersigned Secretary of PENDLETON SHIPYARDS COMPANY, INC., do hereby certify that the foregoing is a true and correct copy of a resolution adopted by the stockholders of PENDLETON SHIPYARDS COMPANY, INC., at a meeting duly held on May 19, 1947.

_____
Secretary

STATE OF LOUISIANA )
PARISH OF ORLEANS (

On this 19th day of May, 1947, before me personally came and appeared PENDLETON E. LEHDE, to me well known and known to be the person described in the foregoing resolution, who, being duly sworn, did depose and say: that he was authorized by the stockholders of PENDLETON SHIPYARDS COMPANY, INC., in the foregoing resolution, to acknowledge said foregoing resolution, and that he does hereby acknowledge said resolution and states that said resolution was duly adopted by the stockholders at a meeting held on May 19, 1947.

Sworn to and subscribed before me,

this 19th day of May, 1947.

_____
NOTARY PUBLIC

WATTS K. LEVERICH
Notary Public, Orleans Parish
Commission Expires At Death

# The Times-Picayune Publishing Company

**The Times-Picayune**
ESTABLISHED JANUARY 25, 1837
ISSUED EVERY MORNING AND SUNDAY

**NEW ORLEANS STATES**
ESTABLISHED JANUARY 5, 1880
ISSUED EVERY EVENING EXCEPT SUNDAY

LAFAYETTE SQUARE                    NEW ORLEANS 4



State of Louisiana

Parish of Orleans

    Personally appeared before me, a Notary

in and for the Parish of Orleans, Mr. T. J.

Adams, who deposes and says that he is

Credit Manager of THE TIMES-PICAYUNE PUB-

LISHING COMPANY, a Corporation doing busi-

ness in the City of New Orleans and State of

Louisiana, and that the

attached notice of dissolution of ........

Pendleton Shipyards Company, Inc. .......

Advertisement of

........ Monroe & Lemann, ...................

........ 1424 Whitney Bldg. ...............

........ City ................................

was published in THE TIMES-PICAYUNE May 21st,

. and NEW ORLEANS STATES May 20th, 1947.

.............................................

.............................................

    Sworn to and subscribed before me this

.... 21st ... day of ... May ...... A. D. 1947 ....

.............................................
Notary Public

My commission expires at my death.

CERTIFICATE OF DISSOLUTION

The undersigned, Pendleton E. Lehde and Sidney H. Walker, the duly appointed Liquidators of PENDLETON SHIPYARDS COMPANY, INC., do hereby certify that this corporation has been completely wound up and is dissolved.

IN TESTIMONY WHEREOF, we have hereunto affixed our hands and seals at New Orleans, Louisiana, this _19_ day of December, 1951.

_____
Pendleton E. Lehde

_____
Sidney H. Walker

STATE OF LOUISIANA )
                   (
PARISH OF ORLEANS  )

On this _28th_ day of December, 1951, before me, the undersigned authority, personally came and appeared: PENDLETON E. LEHDE and SIDNEY H. WALKER, to me well known and known to be the persons described in and who executed the foregoing instrument, and who acknowledged that they executed the same as their free act and deed, for the uses and purposes therein stated.

IN WITNESS WHEREOF, I have hereunto affixed my official signature and seal of office at New Orleans, Louisiana, this _28th_ day of December, 1951.

_____
NOTARY PUBLIC

CI-HA-002558