(JCGx), DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-08970-GHK-JCG

James McIndoe et al v. Asbestos Corporation Limited et al
Assigned to: Judge George H. King
Referred to: Magistrate Judge Jay C. Gandhi
Case in other court: Superior Court of California, Los
                 Angeles County, BC469749
Cause: 28:1441 Notice of Removal - Asbestos Litigation

Date Filed: 10/28/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**James McIndoe**             represented by   **Alan R Brayton**
Brayton and Purcell LLP
222 Rush Landing Road
P O Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: mail@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**David R Donadio**
Brayton and Purcell LLP
222 Rush Landing Road
P O Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: ddonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Ksenia L Snylyk**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Carol McIndoe**             represented by   **Alan R Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ksenia L Snylyk**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Asbestos Corporation Limited**

**Defendant**

**Crown Cork and Seal Company Inc**

**Defendant**

**John Crane Inc**

**Defendant**

**Crane Co**

**Defendant**

**Thomas Dee Engineering Company**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**General Refractories Company**

**Defendant**

**General Electric Company**

**Defendant**

**Honeywell International Inc**

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**Metropolitan Life Insurance Company**

**Defendant**

**Owens-Illinois Inc**

**Defendant**

**Parker-Hannifin Corporation**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc fka Westinghouse Electric
Corporation

**Defendant**

**Ford Motor Company**

**Defendant**

**The Goodyear Tire and Rubber
Company**

**Defendant**

**Goulds Pumps Inc**

**Defendant**

**IMO Industries Inc**

**Defendant**

**The Pep Boys Manny Moe and Jack
of California**

**Defendant**

**Velan Valve Corporation**

**Defendant**

**Yarway Corporation**

**Defendant**

**York International Corporation**

**Defendant**

**Warren Pumps LLC**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding Inc

**Defendant**

**Bath Iron Works Corporation**                    represented by  **Daniel D O'Shea**
                                                                   Jackson Jenkins Renstrom LLP
                                                                   55 Francisco Street 6th Floor

San Francisco, CA 94133
415-982-3600
Fax: 415-982-3700
Email: doshea@jjr-law.com
*ATTORNEY TO BE NOTICED*

**Gabriel A Jackson**
Jackson Jenkins Renstrom LLP
55 Francisco Street 6th Floor
San Francisco, CA 94133
415-982-6300
Fax: 415-982-3700
*ATTORNEY TO BE NOTICED*

**Defendant**

**Todd Shipyards Corporation**

**Defendant**

**Hopeman Brothers Inc**

**Defendant**

**JT Thorpe and Son Inc**

**Defendant**

**American Chemet Corporation**

**Defendant**

**Cyprus Amax Minerals Company**

**Defendant**

**Pfizer Inc**

**Defendant**

**RT Vanderbilt Company Inc**

**Defendant**

**Soco West Inc**

**Defendant**

**VWR International Inc**

**Defendant**

**Does**
*1 through 800, inclusive*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/28/2011 | 1 | NOTICE OF REMOVAL from the Superior Court of California, Los Angeles |

| | | |
|---|---|---|
| | | County, case number BC469749 with CONFORMED copies of summons and First Amended Complaint. Case assigned to Judge George H. King, discovery to Magistrate Judge Jay C. Gandhi; (Filing fee $ 350 PAID ); filed by defendant Bath Iron Works Corporation.(esa) (Additional attachment(s) added on 11/2/2011: # 1 Ntc of Asgmt) (mg). (Additional attachment(s) added on 11/2/2011: # 2 Ntc to Adverse Party and State Court of Removal) (mg). (Entered: 11/01/2011) |
| 10/28/2011 | | SUPERIOR COURT CONFORMED COPY OF FIRST AMENDED COMPLAINT; Jury Demand against defendants,filed by plaintiffs James McIndoe, Carol McIndoe (esa) (Entered: 11/01/2011) |
| 10/28/2011 | 2 | CERTIFICATION AND NOTICE OF INTERESTED PARTIES filed by defendant Bath Iron Works Corporation, identifying Other Affiliate General Dynamics Corporation for Bath Iron Works Corporation. (esa) (mg). (Entered: 11/01/2011) |
| 10/28/2011 | 3 | NOTICE OF PENDENCY OF OTHER ACTIONS OR PROCEEDINGS filed by defendant Bath Iron Works Corporation. (esa) (mg). (Entered: 11/01/2011) |
| 10/28/2011 | 4 | NOTICE OF TAG-ALONG ACTION filed by defendant Bath Iron Works Corporation. (esa) (mg). (Entered: 11/01/2011) |
| 10/28/2011 | 5 | CERTIFICATE OF SERVICE filed by defendant Bath Iron Works Corporation, re Notice of Tag-Along Action 4 , Notice of Removal, 1 , Notice of Pendency 3 , Certificate of Interested Parties 2 served on 10/28/11. (esa) (mg). (Entered: 11/01/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/03/2011 10:45:23 | | |
| **PACER Login:** sd0076 | **Client Code:** 05045-079666 | |
| **Description:** Docket Report | **Search Criteria:** 2:11-cv-08970-GHK-JCG End date: 11/3/2011 | |
| **Billable Pages:** 4 | **Cost:** 0.32 | |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
2  KSENIA L. SNYLYK, ESQ., S.B. #265399
BRAYTON❖PURCELL LLP
3  Attorneys at Law
222 Rush Landing Road
4  P.O. Box 6169
Novato, California 94948-6169
5  (415) 898-1555

6  Attorneys for Plaintiffs

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

SEP 2 1 2011

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy
Gina Grider

7

8              **SUPERIOR COURT OF CALIFORNIA**

9                   **COUNTY OF LOS ANGELES**

10

11  JAMES McINDOE and              ) **ASBESTOS**
    CAROL McINDOE,                 ) No.  BC469749
12                                 )
              Plaintiffs,          ) FIRST AMENDED COMPLAINT FOR
13                                 ) PERSONAL INJURY, LOSS OF
    vs.                            ) CONSORTIUM - ASBESTOS
14                                 )
    ASBESTOS CORPORATION LIMITED;  )
15  CROWN CORK & SEAL COMPANY, INC.;  )
    JOHN CRANE, INC.;              )
16  CRANE CO.;                     ) Honorable Richard E. Rico
    THOMAS DEE ENGINEERING COMPANY;  ) Department 17
17  FOSTER WHEELER LLC (FKA FOSTER )
       WHEELER CORPORATION);       )
18  GENERAL REFRACTORIES COMPANY;  )
    GENERAL ELECTRIC COMPANY;      )
19  HONEYWELL INTERNATIONAL, INC.; )
    INGERSOLL-RAND COMPANY;        )
20  METROPOLITAN LIFE INSURANCE    )
       COMPANY;                    )
21  OWENS-ILLINOIS, INC.;          )
    PARKER-HANNIFIN CORPORATION;   )
22  CBS CORPORATION (FKA VIACOM INC., FKA  )
       WESTINGHOUSE ELECTRIC       )
23     CORPORATION);               )
    FORD MOTOR COMPANY;            )
24  THE GOODYEAR TIRE & RUBBER     )
       COMPANY;                    )
25  GOULDS PUMPS, INC.;            )
    IMO INDUSTRIES, INC.;          )
26  THE PEP BOYS MANNY MOE & JACK OF  )
       CALIFORNIA;                 )
27  VELAN VALVE CORPORATION;       )
    YARWAY CORPORATION;            )
28  YORK INTERNATIONAL CORPORATION;  )

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

| | |
|---|---|
| 1 | WARREN PUMPS, LLC; |
| | HUNTINGTON INGALLS INCORPORATED |
| 2 | (FKA NORTHROP GRUMMAN |
| | SHIPBUILDING, INC.); |
| 3 | BATH IRON WORKS CORPORATION; |
| | TODD SHIPYARDS CORPORATION; |
| 4 | HOPEMAN BROTHERS, INC.; |
| | J.T. THORPE & SON, INC.; |
| 5 | AMERICAN CHEMET CORPORATION; |
| | CYPRUS AMAX MINERALS COMPANY; |
| 6 | PFIZER, INC.; |
| | R.T. VANDERBILT COMPANY, INC.; |
| 7 | SOCO WEST, INC.; |
| | VWR INTERNATIONAL, INC.; |
| 8 | and DOES 1 through 800, inclusive, |
| 9 | Defendants. |

10

11 **FIRST CAUSE OF ACTION**
(Negligence)

12

13     PLAINTIFF JAMES McINDOE COMPLAINS OF DEFENDANTS HEREINBELOW

14 NAMED IN PARAGRAPH 3, THEIR "ALTERNATE ENTITIES" AND EACH OF THEM,

15 AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

16     1.     The true names and capacities, whether individual, corporate, associate,

17 governmental or otherwise, of defendants DOES 1 through 500, inclusive, are unknown to

18 plaintiff at this time, who therefore sues said defendants by such fictitious names. When the true

19 names and capacities of said defendants have been ascertained, plaintiff will amend this

20 complaint accordingly. Plaintiff is informed and believes, and thereon alleges, that each

21 defendant designated herein as a DOE is responsible, negligently or in some other actionable

22 manner, for the events and happenings hereinafter referred to, and caused injuries and damages

23 proximately thereby to the plaintiff, as hereinafter alleged.

24     2.     At all times herein mentioned, each of the defendants was the agent, servant,

25 employee and/or joint venturer of his co-defendants, and each of them, and at all said times, each

26 defendant was acting in the full course and scope of said agency, service, employment and/or

27 joint venture.

28 ///

3.    Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, defendants: ASBESTOS CORPORATION LIMITED; CROWN CORK & SEAL COMPANY, INC.; JOHN CRANE, INC.; CRANE CO.; THOMAS DEE ENGINEERING COMPANY; FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION); GENERAL REFRACTORIES COMPANY; GENERAL ELECTRIC COMPANY; HONEYWELL INTERNATIONAL, INC.; INGERSOLL-RAND COMPANY; METROPOLITAN LIFE INSURANCE COMPANY; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN CORPORATION; CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION); FORD MOTOR COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY; GOULDS PUMPS, INC.; IMO INDUSTRIES, INC.; THE PEP BOYS MANNY MOE & JACK OF CALIFORNIA; VELAN VALVE CORPORATION; YARWAY CORPORATION; YORK INTERNATIONAL CORPORATION; WARREN PUMPS, LLC; HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.); BATH IRON WORKS CORPORATION; TODD SHIPYARDS CORPORATION; HOPEMAN BROTHERS, INC.; J.T. THORPE & SON, INC.; AMERICAN CHEMET CORPORATION; CYPRUS AMAX MINERALS COMPANY; PFIZER, INC.; R.T. VANDERBILT COMPANY, INC.; SOCO WEST, INC.; VWR INTERNATIONAL, INC.; and DOES 1 through 300, inclusive, were individuals, or corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of Los Angeles, State of California.

4.    At all times herein mentioned, each of the named defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of

1   which is asbestos and other products containing said substance.  Said entities shall hereinafter

2   collectively be called "alternate entities."  Each of the herein named defendants is liable for the

3   tortious conduct of each successor, successor in business, successor in product line or a portion

4   thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or

5   partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded,

6   that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled,

7   distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,

8   contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and

9   advertised a certain substance, the generic name of which is asbestos and other products

10  containing said substance.  The following defendants, and each of them, are liable for the acts of

11  each and every "alternate entity," and each of them, in that there has been a virtual destruction of

12  plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have

13  acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such

14  "alternate entity"; defendants, and each of them, caused the destruction of plaintiff's remedy

15  against each such "alternate entity"; each such defendant has the ability to assume the risk-

16  spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill

17  originally attached to each such "alternate entity."

18  <u>DEFENDANT</u>                                  <u>ALTERNATE ENTITY</u>

19  ASBESTOS CORPORATION LIMITED        GENERAL DYNAMICS CORPORATION

20  CROWN CORK & SEAL COMPANY,           MUNDET CORK COMPANY
    INC.

21

22  JOHN CRANE, INC.                               CRANE PACKING CO.

23  THOMAS DEE ENGINEERING COMPANY    THOMAS DEE ENGINEERING CO., INC.
                                                          DEE ENGINEERING COMPANY

24
    FOSTER WHEELER LLC                        FOSTER WHEELER CORPORATION
25

26  ///

27  ///

28  ///

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| INGERSOLL-RAND COMPANY | INGERSOLL-DRESSER PUMP |
| | DRESSER-RAND CO. |
| | PACIFIC PUMP WORKS |
| | FLOWSERVE CORPORATION |
| | INGERSOLL ROCK DRILL COMPANY |
| | TERRY STEAM TURBINE CO. |
| | WHITON MACHINE COMPANY |
| | RAND DRILL COMPANY |
| | RAND & WARING DRILL AND COMPRESSOR COMPANY |
| | INGERSOLL-SERGEANT |
| | SCHLAGE LOCK COMPANY |
| | VON DUPRIN |
| | THE TORRINGTON COMPANY |
| | BLAW-KNOX COMPANY |
| | ALDRICH PUMPS |
| | HUSSMANN CORPORATION |
| PARKER-HANNIFIN CORPORATION | SACOMA-SIERRA, INC. |
| | SACOMA MANUFACTURING COMPANY |
| | E.I.S. AUTOMOTIVE CORPORATION |
| | CONDREN CORPORATION, THE |
| | PARKER SEAL COMPANY |
| | DENISON HYDRAULICS INC. |
| | GREER HYDRAULICS CORPORATION |
| HONEYWELL INTERNATIONAL, INC. | HONEYWELL, INC. |
| | HONEYWELL CONTROLS |
| | ALLIEDSIGNAL, INC. |
| | AIRESEARCH DOMESTIC INTERNATIONAL SALES CORPORATION |
| | ALLIED-SIGNAL, INC. |
| | THE BENDIX CORPORATION |
| | BENDIX PRODUCTS AUTOMOTIVE DIVISION |
| | BENDIX PRODUCTS DIVISION, BENDIX AVIATION CORP. |
| | BENDIX HOME SYSTEMS |
| | ALLIED CORPORATION |
| | ALLIED CHEMICAL CORPORATION |
| | GENERAL CHEMICAL CORPORATION |
| | FRAM |
| | FRICTION MATERIALS OF LOS ANGELES |
| | NORTH AMERICAN REFRACTORIES COMPANY |
| | EM SECTOR HOLDINGS INC. |
| | UNIVERSAL OIL PRODUCTS COMPANY |
| | BOYLSTON CORPORATION |
| | EHRHART & ASSOCIATES, INC. |

| | DEFENDANT | ALTERNATE ENTITY |
|---|---|---|
| 1 | | |
| 2 | HONEYWELL INTERNATIONAL, INC. (Cont'd) | EHRHART & ARTHUR, INC. |
| 3 | | GARRETT AIR RESEARCH CORP. |
| | | STANLEY G. FLAGG & CO. |
| 4 | | MERGENTHALER LINOTYPE COMPANY |
| | | ELTRA CORPORATION |
| 5 | | BUNKER RAMO-ELTRA CORPORATION |
| | | UNION TEXAS NATURAL GAS CORPORATION |
| 6 | | UNION OIL AND GAS OF LOUISIANA |
| | | UNION SULPHUR AND OIL CORPORATION |
| 7 | | UNION SULPHUR COMPANY, INC., THE |
| | | MINNEAPOLIS-HONEYWELL REGULATOR COMPANY |
| 8 | | SIGNAL COMPANIES, INC., THE |
| | | HANCOCK OIL COMPANY |
| 9 | | BARRETT DIVISION, ALLIED CHEMICAL & DYE CORPORATION |
| 10 | | SIGNAL COMPANIES, INC., THE |
| | | SIGNAL OIL & GAS CO. |
| 11 | | BANKLINE OIL COMPANY |
| 12 | CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. |
| 13 | | CBS CORPORATION |
| | | WESTINGHOUSE ELECTRIC CORPORATION |
| 14 | | WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY |
| | | B.F. STURTEVANT |
| 15 | | KPIX TELEVISION STATION |
| | | PARAMOUNT COMMUNICATIONS, INC |
| 16 | | GULF & WESTERN INDUSTRIES, INC. |
| | | NORTH & JUDD MANUFACTURING COMPANY |
| 17 | OWENS-ILLINOIS, INC. | OWENS-ILLINOIS GLASS COMPANY |
| 18 | THE GOODYEAR TIRE & RUBBER COMPANY | GOODYEAR AEROSPACE CORP. |
| 19 | | LOCKHEED MARTIN TACTICAL SYSTEMS, INC. |
| | | LORAL CORPORATION |
| 20 | | AIRCRAFT BRAKING SYSTEMS CORP. |
| 21 | GOULDS PUMPS, INC. | GOULDS PUMPS (IPG), INC. |
| | | MORRIS PUMPS, INC. |
| 22 | | MORRIS MACHINE WORKS |
| | | U.S. PUMPS, INC. |
| 23 | IMO INDUSTRIES, INC. | TRANSAMERICA DELAVAL, INC. |
| 24 | | ENTERPRISE ENGINE & MACHINERY CO. |
| | | DE LAVAL STEAM TURBINE, INC. |
| 25 | | DELAVAL STEAM TURBINE |
| | | DELAVAL INDUSTRIES INC. |
| 26 | | DE LAVAL TURBINE, INC. |
| | | GENERAL METALS CORPORATION |
| 27 | /// | CROW CENTRIFUGAL PUMPS |
| 28 | /// | |

| | DEFENDANT | ALTERNATE ENTITY |
|---|---|---|
| 1 | WARREN PUMPS, LLC | WARREN PUMPS, INC. |
| 2 | | QUIMBY PUMP COMPANY |
| | | WARREN STEAM PUMPS COMPANY |
| 3 | | |
| 4 | HUNTINGTON INGALLS INCORPORATED | AVONDALE INDUSTRIES, INC. |
| | | AVONDALE SHIPYARDS, INC. |
| 5 | (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | CONTINENTAL MARITIME INDUSTRIES, INC. |
| | | EASTERN IDAHO CONSTRUCTION COMPANY |
| 6 | | INGALLS SHIPBUILDING, INC. |
| | | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| 7 | | NORTH CAROLINA SHIPBUILDING |
| | | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| 8 | | SERVICE ENGINEERING INDUSTRIES, INC. |
| 9 | YARWAY CORPORATION | YARNALL-WARING COMPANY |
| | | YARNALL-WARING CO. |
| 10 | | |
| 11 | YORK INTERNATIONAL CORPORATION | YORK OPERATING COMPANY |
| | | YORK HOLDINGS |
| 12 | | YORK HOLDING CORPORATION |
| | | CENTRAL ENVIRONMENTAL SYSTEMS |
| 13 | | BORG-WARNER AIR CONDITIONING, INC. |
| | | BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS |
| | | YORK DIVISION, BORG-WARNER |
| 14 | | YORK AIR CONDITIONING DIVISION, BORG-WARNER |
| | | YORK-LUXAIRE, INC. |
| 15 | | YORK CORPORATION |
| | | LUXAIRE |
| 16 | | YORK CORPORATION |
| | | YORK ICE MACHINERY |
| 17 | | YORK MANUFACTURING |
| | | FRICK COMPANY |
| 18 | | YORK ACQUISITION CORPORATION |
| | | LILCO, INC. |
| 19 | | NATKIN SERVICE |
| | | YIC HOLDINGS CORPORATION |
| 20 | | YORK HEATING AND AIR CONDITIONING |
| | | NORTHFIELD FREEZING SYSTEMS |
| 21 | | UNITED MECHANICAL SERVICES, INC. |
| | | JOHNSON SUPPLY & EQUIPMENT CORPORATION |
| 22 | | YORK INTERNATIONAL CORPORATION CES (CENTRAL SYSTEMS) |
| 23 | | YORK INTERNATIONAL SALES & SERVICE |
| | | APPLIED SYSTEMS |
| 24 | | FRASER JOHNSTON |
| 25 | TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION |
| | | SEATTLE-TACOMA SHIPBUILDING CORP. |
| 26 | /// | |
| 27 | /// | |
| 28 | /// | |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CYPRUS AMAX MINERALS COMPANY | CYPRUS MINERAL COMPANY |
| | CYPRUS MINES CORPORATION |
| | CYPRUS INDUSTRIAL MINERALS CORPORATION |
| | SIERRA TALC AND CLAY COMPANY |
| | SIERRA TALC COMPANY |
| | PACIFIC COAST TALC COMPANY |
| | INYO TALC COMPANY |
| | UNITED SIERRA DIVISION CYPRUS MINES CORPORATION |
| | PAUL W. WOOD COMPANY |
| R. T. VANDERBILT COMPANY | WESTERN TALC COMPANY |
| | INTERNATIONAL TALC COMPANY |
| SOCO WEST, INC. | BRENNTAG WEST, INC. |
| | SOCO-LYNCH CORPORATION |
| | A.J. LYNCH & COMPANY |
| | WESTERN CHEMICAL & MANUFACTURING COMPANY |
| PFIZER, INC. | CHARLES PFIZER AND COMPANY |
| | CHARLES PFIZER, LTD. |
| | SOUTHERN CALIFORNIA MINERALS COMPANY |
| | C. K. WILLIAMS COMPANY |
| | KENNEDY MINERALS COMPANY |
| | DESERT MINERALS, INC. |
| | CONTINENTAL MINERALS CORPORATION |
| | GRANTHAM MINES |
| | BLUE STAR MINES |
| | PARKE, DAVIS & COMPANY |
| | PARKE-DAVIS PHARMACEUTICAL COMPANY |
| | WARNER-LAMBERT COMPANY |
| VWR INTERNATIONAL, INC. | VWR SCIENTIFIC PRODUCTS CORPORATION |
| | CENTRAL SCIENTIFIC COMPANY |
| HOPEMAN BROTHERS, INC. | HOPEMAN BROTHERS MARINE INTERIORS, LLC |
| J.T. THORPE & SON, INC. | THE THORPE COMPANY |
| | THORPE PRODUCTS CO. |
| | J.T. THORPE NORTHWEST |

5.    At all times herein mentioned, defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos and other products containing said substance.

///

6.     At all times herein mentioned, defendants, their "alternate entities" and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain substance, the generic name of which is asbestos and other products containing said substance, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by "exposed persons."

7.     Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

8.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers.

9.     Defendants, their "alternate entities" and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products, and talc and talc-containing products, would be used or handled as specified in Exhibit "A," which is attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos

///

1   fibers, and that through such foreseeable use and/or handling "exposed persons," including

2   plaintiff herein, would be in proximity to and exposed to said asbestos fibers.

3       10.    Plaintiff JAMES McINDOE has used, handled or been otherwise exposed to

4   asbestos and asbestos-containing products, and talc and talc-containing products, referred to

5   herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-

6   containing products, and talc and talc-containing products, occurred at various locations as set

7   forth in Exhibit "A," which is attached hereto and incorporated by reference herein.

8       11.    As a direct and proximate result of the conduct of the defendants, their "alternate

9   entities," and each of them, as aforesaid, plaintiff's exposure to asbestos and asbestos-containing

10  products, and talc and talc-containing products, caused severe and permanent injury to the

11  plaintiff, the nature of which, along with the date of plaintiff's diagnosis, are set forth in Exhibit

12  "B," which is attached hereto and incorporated by reference herein.

13      12.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

14  disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without

15  perceptible trauma and that said disease results from exposure to asbestos and asbestos-

16  containing products, and talc and talc-containing products, over a period of time.

17      13.    Plaintiff JAMES McINDOE suffers from a condition related to exposure to

18  asbestos and asbestos-containing products, and talc and talc-containing products. Plaintiff was

19  not aware at the time of exposure that asbestos or asbestos-containing products, and talc and talc-

20  containing products, presented any risk of injury and/or disease.

21      14.    As a direct and proximate result of the aforesaid conduct of defendants, their

22  "alternate entities," and each of them, plaintiff has suffered, and continues to suffer, permanent

23  injuries and/or future increased risk of injuries to his person, body and health, including, but not

24  limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress

25  attendant thereto, from the effect of exposure to asbestos fibers, all to his general damage in the

26  sum in excess of the jurisdictional limits of the Municipal Court.

27      15.    As a direct and proximate result of the aforesaid conduct of the defendants, their

28  "alternate entities," and each of them, plaintiff has incurred, is presently incurring, and will incur

1   in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays

2   and other medical treatment, the true and exact amount thereof being unknown to plaintiff at this

3   time, and plaintiff prays leave to amend this complaint accordingly when the true and exact cost

4   thereof is ascertained.

5       16.   As a further direct and proximate result of the said conduct of the defendants,

6   their "alternate entities," and each of them, plaintiff has incurred, and will incur, loss of income,

7   wages, profits and commissions, a diminishment of earning potential, and other pecuniary losses,

8

9   the full nature and extent of which are not yet known to plaintiff; and leave is requested to amend

10   this complaint to conform to proof at the time of trial.

11       17.   Defendants, their "alternate entities," and each of them, and their officers,

12   directors and managing agents participated in, authorized, expressly and impliedly ratified, and

13   had full knowledge of, or should have known of, each of the acts set forth herein.

14       18.   Defendants, their "alternate entities," and each of them, are liable for the

15   fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each

16   defendant's officers, directors and managing agents participated in, authorized, expressly and

17   impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their

18   "alternate entities" as set forth herein.

19       19.   The herein-described conduct of said defendants, their "alternate entities," and

20   each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard

21   and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example

22   and by way of punishing said defendants, seeks punitive damages according to proof.

23       WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities,"

24   and each of them, as hereinafter set forth.

25   SECOND CAUSE OF ACTION<br>(Products Liability)

26

27       AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

28   ACTION FOR STRICT LIABILITY, PLAINTIFF JAMES McINDOE COMPLAINS OF

1  DEFENDANTS NAMED IN PARAGRAPH 3 HEREINABOVE, AND EACH OF THEM, AND

2  ALLEGES AS FOLLOWS:

3      20.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

4  allegations contained in Paragraphs 1 through 5 and 8 through 16 of the First Cause of Action

5  herein.

6      21.    Defendants, their "alternate entities," and each of them, knew and intended that

7  the above-referenced asbestos and asbestos-containing products, and talc and talc-containing

8  products, would be used by the purchaser

9

10  or user without inspection for defects therein or in any of their component parts and without

11  knowledge of the hazards involved in such use.

12      22.    Said asbestos and asbestos-containing products, and talc and talc-containing

13  products, were defective and unsafe for their intended purpose in that the inhalation of asbestos

14  fibers causes serious disease and/or death.  The defect existed in the said products at the time

15  they left the possession of defendants, their "alternate entities," and each of them.  Said products

16  did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to

17  "exposed persons," including plaintiff herein, while being used in a reasonably foreseeable

18  manner, thereby rendering the same defective, unsafe and dangerous for use.

19      23.    "Exposed persons" did not know of the substantial danger of using said products.

20  Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

21  "alternate entities," and each of them, further failed to adequately warn of the risks to which

22  plaintiff and others similarly situated were exposed.

23      24.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

24  to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

25  sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

26  marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

27  and asbestos-containing products, and talc and talc-containing products, defendants, their

28  "alternate entities," and each of them, did so with conscious disregard for the safety of "exposed

1  persons" who came in contact with said asbestos and asbestos-containing products, and talc and

2  talc-containing products, in that said defendants, their "alternate entities," and each of them, had

3  prior knowledge that there was a substantial risk of injury or death resulting from exposure to

4  asbestos or asbestos- containing products, including, but not limited to, asbestosis, other lung

5  disabilities and cancer.  Said knowledge was obtained, in part, from scientific studies performed

6  by, at the request of, or with the assistance of, said defendants, their "alternate entities," and each

7  of them, and which knowledge was obtained by said defendants, their "alternate entities," and

8  each of them on or before 1930, and thereafter.

9      25.    On or before 1930, and thereafter, said defendants, their "alternate entities" and

10  each of them, were aware that members of the general public and other "exposed persons," who

11  would come in contact with their asbestos and asbestos-containing products, and talc and talc-

12  containing products, had no knowledge or information indicating that asbestos or asbestos-

13  containing products, and talc and talc-containing products, could cause injury, and said

14  defendants, their "alternate entities," and each of them, knew that members of the general public

15  and other "exposed persons," who came in contact with asbestos and asbestos-containing

16  products, and talc and talc-containing products, would assume, and in fact did assume, that

17  exposure to asbestos and asbestos-containing products, and talc and talc-containing products,

18  was safe, when in fact said exposure was extremely hazardous to health and human life.

19      26.    With said knowledge, said defendants, their "alternate entities," and each of them,

20  opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy,

21  offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market,

22  warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-

23  containing products without attempting to protect "exposed persons" from or warn "exposed

24  persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-

25  containing products, and talc and talc-containing products.  Rather than attempting to protect

26  "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting

27  from exposure to asbestos and asbestos-containing products, and talc and talc-containing

28  products, defendants, their "alternate entities," and each of them, intentionally failed to reveal

1  their knowledge of said risk, and consciously and actively concealed and suppressed said

2  knowledge from "exposed persons" and members of the general public, thus impliedly

3  representing to "exposed persons" and members of the general public that asbestos and asbestos-

4  containing products, and talc and talc-containing products, were safe for all reasonably

5  foreseeable uses. Defendants, their "alternate entities," and each of them, engaged in this

6  conduct and made these implied representations with the knowledge of the falsity of said implied

7  representations.

8      27. The above-referenced conduct of said defendants, their "alternate entities," and

9  each of them, was motivated by the financial interest of said defendants, their "alternate entities,"

10  and each of them, in the continuing, uninterrupted research, design, modification, manufacture,

11  fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale,

12  inspection, installation, contracting for installation, repair, marketing, warranting, rebranding,

13  manufacturing for others, packaging and advertising of asbestos and asbestos-containing

14  products, and talc and talc-containing products. In pursuance of said financial motivation, said

15  defendants, their "alternate entities," and each of them, consciously disregarded the safety of

16  "exposed persons" and in fact were consciously willing and intended to permit asbestos and

17  asbestos-containing products, and talc and talc-containing products, to cause injury to "exposed

18  persons" and induced persons to work with and be exposed thereto, including plaintiff.

19      28. Plaintiff alleges that the aforementioned defendants, their "alternate entities," and

20  each of them impliedly warranted their asbestos and asbestos-containing products, and talc and

21  talc-containing products, to be safe for their intended use but that their asbestos and asbestos-

22  containing products, and talc and talc-containing products, created an unreasonable risk of bodily

23  harm to exposed persons.

24      29. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

25  and various asbestos-containing products, and talc and talc-containing products, manufactured,

26  fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled,

27  distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed,

28  contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others,

1  packaged and advertised by the aforementioned defendants, their "alternate entities," and each of

2  them and that plaintiff cannot identify precisely which asbestos or asbestos-containing products,

3  and talc and talc-containing products, caused the injuries complained of herein.

4       30.    Plaintiff relied upon defendants', their "alternate entities'," and each of their

5  representations, lack of warnings, and implied warranties of fitness of asbestos and their

6  asbestos-containing products, and talc and talc-containing products. As a direct, foreseeable and

7  proximate result thereof, plaintiff has been injured permanently as alleged herein.

8       31.    As a direct and proximate result of the actions and conduct outlined herein,

9  plaintiff has suffered the injuries and damages previously alleged.

10       WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities," and

11  each of them, as hereinafter set forth.

12  

**THIRD CAUSE OF ACTION**
(Premises Owner/Contractor Liability)

13  

14       AS AND FOR A FURTHER AND THIRD, SEPARATE AND DISTINCT CAUSE OF

15  ACTION, PLAINTIFF JAMES McINDOE COMPLAINS OF DEFENDANTS THOMAS DEE

16  ENGINEERING COMPANY; HOPEMAN BROTHERS, INC.; J.T. THORPE & SON, INC.;

17  AND DOES 301 THROUGH 400 (hereinafter "Premises Owner/Contractor Liability

18  Defendants") AND ALLEGES AS FOLLOWS:

19       32.    Plaintiff, by this reference, incorporates the allegations contained in paragraphs 12

20  through 18 of the First Cause of Action.

21       33.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned

22  herein, the Premises Owner/Contractor Liability Defendants and DOES 301 through 400, were

23  individuals, or corporations, partnerships and/or unincorporated associations organized and

24  existing under and by virtue of the laws of the State of California, or the laws of some other state

25  or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do

26  and are doing business in the State of California.

27       34.    At all times herein mentioned, each of the Premises Owner/Contractor Liability

28  Defendants was a successor, successor-in-business, assign, predecessor, predecessor-in-business,

1  parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity

2  causing certain asbestos- and silica-containing insulation, other building materials, products and

3  toxic substances to be constructed, installed, maintained, used, replaced and/or repaired on the

4  respective premises owned, leased, maintained, managed and/or controlled by them.  Said

5  entities shall hereinafter collectively be called "alternate entities."  Each of the herein-named

6  defendants is liable for the tortious conduct of each successor, successor-in-business, assign,

7  predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned

8  entity, that caused the presence as aforesaid of said asbestos- and silica-containing insulation and

9  other toxic substances.  Said defendants, and each of them, are liable for the acts of each and

10 every "alternate entity,"  and each of them, in that there has been a virtual destruction of

11 plaintiff's remedy against each such  alternate entity; defendants, and each of them, have acquired

12 the assets, or a portion thereof, of each such alternate entity; defendants, and each of them, have

13 caused the destruction of plaintiff's remedy against each such alternate entity; each such

14 defendant has the ability to assume the risk-spreading role of each such alternate entity, and that

15 each such defendant enjoys the goodwill originally attached to each such alternate entity.

16     35.    At all times mentioned herein, the Premises Owner/Contractor Liability

17 Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or

18 controlled the following premises where plaintiff JAMES McINDOE was present.  The

19 following information provided is preliminary, based on recall over events covering many years

20 and further investigation and discovery may produce more reliable information:

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| THOMAS DEE ENGINEERING COMPANY | Various | Various |
| HOPEMAN BROTHERS, INC.; | Various | Various |
| J.T. THORPE & SON, INC.; | Various | Various |

26     Additionally, plaintiff JAMES McINDOE might have been present at these or other

27 Premises Owner/Contractor Liability Defendants' premises at other locations and on other

28 occasions.

36. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, and/or repaired on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

37. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to plaintiff and other workers or persons so exposed while present on each of the aforesaid respective premises.

38. At all times relevant herein, plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' benefit and advantage and at each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

39. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

40. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where plaintiff was performing his work.

///

41.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants owed to plaintiff and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

42.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

43.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

44.     Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, and/or repaired on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

45.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them:

a. Should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken;

///

///

1        b. Knew or had reason to know, that the contractors it had selected and hired to

2  install, remove, abate or otherwise handle asbestos-containing materials were unfit, unskilled or

3  otherwise unqualified to do so;

4        c. Failed to use reasonable care to discover whether the contractors it selected and

5  hired to install, remove, abate or otherwise handle asbestos-containing materials were competent

6  or qualified to do so.

7     46.    In part, plaintiff was exposed to dangerous quantities of asbestos fibers and other

8  toxic substances by reason of such contractors' failure to take the necessary precautions.

9     47.    The work of contractors on premises controlled by the Premises

10  Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of

11  the release of dangerous quantities of toxic substances including but not limited to asbestos.

12     48.    The unsafe premise or work place was created, in part, by the negligent conduct of

13  the contractors employed by the Premises Owner/Contractor Defendants.  Said negligent conduct

14  includes but is not limited to:

15        a.    Failure to warn of asbestos and other toxic dusts;

16        b.    Failure to suppress the asbestos-containing or toxic dusts;

17        c.    Failure to remove the asbestos-containing and toxic dusts through use of

18  ventilation or appropriate means;

19        d.    Failure to provide adequate breathing protection, i.e., approved respirators

20  or masks;

21        e.    Failure to inspect and/or test the air;

22        f.    Failure to provide medical monitoring.

23        g.    Failure to select and hire a careful and competent contractor or

24  subcontractor.

25     49.    The Premises Owner/Contractor Defendants' duty to maintain and provide safe

26  premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said

27  duties arise out of common law, Civil Code §1714, and Labor Code §6400, et seq., or Health and

28  Safety Code § 40.200, et seq., and regulations promulgated thereunder.  Therefore, the Premises

1  Owner/Contractor Defendants are responsible for any breach of said duties whether by

2  themselves or others.

3      50.     Prior to and at said times and places, said Premises Owner/Contractor Liability

4  Defendants were subject to certain ordinances, statutes, and other government regulations

5  promulgated by the United States Government, the State of California, and others, including but

6  not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code

7  §6400 and the California Administrative Code under the Division of Industrial Safety,

8  Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of

9  Hazardous Substances), Article 81, §§4150, 4106, 4107, and 4108, and Threshold Limit Values

10  as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety

11  Orders; additionally, California Health and Safety Code § 40.200, et seq., which empowers the

12  South Coast Area Air Quality Management District to promulgate regulations including but not

13  limited to S.C.A.A.Q.M.D., Rule 1403; Title 40 Code of Federal Regulations, Chapter 1, Part 61,

14  et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said

15  Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to

16  prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

17  Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and

18  precautions, or contractors employed by the Premises Owner/Contractor Liability Defendants

19  failed to provide the required safeguards and precautions.  Defendants' violations of said codes

20  include but are not limited to:

21      (a)     Failing to comply with statutes and allowing ambient levels of airborne

22  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

23  statutes;

24      (b)     Failing to segregate work involving the release of asbestos or other toxic

25  dusts;

26      (c)     Failing to suppress dust using prescribed ventilation techniques;

27      (d)     Failing to suppress dust using prescribed "wet down" techniques;

28  ///

1         (e)     Failing to warn or educate plaintiff or others regarding asbestos or other

2 toxic substances on the premises;

3         (f)     Failing to provide approved respiratory protection devices;

4         (g)     Failing to ensure "approved" respiratory protection devices were used

5 properly;

6         (h)     Failing to provide for an on-going health screening program for those

7 exposed to asbestos on the premises;

8         (i)     Failing to provide adequate housekeeping and clean-up of the work place;

9         (j)     Failing to properly warn of the hazards associated with asbestos as

10 required by these statutes;

11         (k)     Failing to properly report renovation and disturbance of asbestos-

12 containing materials, including but not limited to S.C.A.A.Q.M.D. Rule 1403;

13         (l)     Failing to have an asbestos removal supervisor as required by regulation;

14         (m)    ~~Failing to get approval for renovation as required by statutes; and~~

15         (n)     Failing to maintain records as required by statute.

16     51.    Premises Owner/Contractor Liability Defendants, and each of them, were the

17 "statutory employer" of plaintiff as defined by the California Labor Code and California case law.

18     52.    Plaintiff at all times was unaware of the hazardous condition or the risk of

19 personal injury created by defendants' violation of said regulations, ordinances or statutes.

20     53.    At all times mentioned herein, plaintiff was a member of the class of persons

21 whose safety was intended to be protected by the regulations, statutes or ordinances described in

22 the foregoing paragraphs.

23     54.    At all times mentioned herein, said Premises Owner/Contractor Liability

24 Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should

25 have known, that the premises that were in their control would be used without knowledge of, or

26 inspection for, defects or dangerous conditions, that the persons present and using said premises

27 would not be aware of the aforesaid hazardous conditions to which they were exposed on the

28 ///

1    premises, and that such persons were unaware of the aforesaid violations of codes, regulations

2    and statutes.

3          55.       As a legal consequence of the foregoing, plaintiff JAMES McINDOE developed

4    an asbestos-related illness, which has caused great injury and disability as previously set forth,

5    and plaintiff has suffered damages as herein alleged.

6          WHEREFORE, plaintiff prays judgment against defendants, their "alternate entities,"

7    and each of them, as hereinafter set forth.

8                              FOURTH CAUSE OF ACTION
                                  Aiding and Abetting Battery
9                       [Against Metropolitan Life Insurance Company
                               and Does 750-790, Inclusive]
10

11         AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF

12   ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF

13   DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY, DOES 750-790, THEIR

14   ALTERNATE ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

15         56.       Plaintiff incorporates herein by reference, as though fully set forth hereat, each

16   and every allegation of the First, Second, Fourth through Fifth Causes of Action as though fully

17   set forth herein.

18         57.       This cause of action is for the aiding and abetting of battery by METROPOLITAN

19   LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director

20   Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

21         58.       Plaintiff is informed and believes, and thereon alleges, that at all times herein

22   mentioned defendant MET LIFE was and is a corporation organized and existing under and by

23   virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction,

24   and that this defendant was and is authorized to do and/or was and is doing business in the State

25   of California, and regularly conducted or conducts business in the County of Los Angeles, State

26   of California.  At times relevant to this cause of action, MET LIFE was an insurer of J-M.

27         59.       Plaintiff, was exposed to asbestos-containing dust created by the use of the

28   asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

1  asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease
2  and injuries.

3       60.    Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-
4  related disease in Canadian mines and mills, including those of J-M. Those studies revealed that
5  miners and mill workers were contracting asbestosis at relatively low levels of dust. McGill
6  University, which conducted the studies, sought permission from MET LIFE to publish the
7  results but they were never published. MET LIFE prepared its own report of these studies.

8       61.    Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.
9  plants manufacturing asbestos-containing products, including a J-M plant. Those studies showed
10 that workers in substantial numbers were contracting asbestosis, at levels less than what became
11 the Threshold Limit Value ('TLV") of 5mppcf. The MET LIFE report was never published or
12 disseminated except to plant owners, including J-M.

13      62.    In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,
14 New Jersey. Results were consistent with those of the Canadian and previous U.S. plant studies.
15 They were never published.

16      63.    In 1934, J-M and others whose plants MET LIFE had studied agreed with MET
17 LIFE that it should issue a report of its studies.

18      64.    MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and
19 business reasons, that certain critical parts of the draft be changed. MET LIFE's official in
20 charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

21      (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos
22              should be less than that for silica;

23      (b)    Addition of the phrase that asbestosis clinically appeared to be milder than
24              silicosis.

25 The report, thus altered, was published in 1935. It was misleading, and intentionally so, because
26 it conveyed the incorrect propositions that asbestosis was a less serious disease process than
27 silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases
28 than was the case for silica dust.

65.     MET LIFE had a close relationship with J-M.  It invested money in J-M.  It provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply industrial hygiene services to J-M, including dust counts, training employees to monitor dust levels, examining employees, and recommending protective equipment.  MET LIFE and Lanza were viewed as experts on industrial dusts.

66.     In 1933, MET LIFE through Lanza issued the following advice to J-M:

(a)     Disagreeing with the recommendation of a J-M plant physician, MET LIFE advised against warning workers of the fact that asbestos dust is hazardous to their health, basing its advice in view of the extraordinary legal situation;

(b)     When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

67.     J-M followed the MET LIFE advices and did not warn its workers, including plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

68.     In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

69.     MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust.  MET LIFE nonetheless promoted that TLV as proper.

70.     In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.  That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease.  MET LIFE was a member of the IHF and Lanza was on its medical

1 | committee. The Hemeon report, which was supplied to J-M and other owners, never was

2 | published.

3 |     71.    In 1936, J-M and other asbestos companies agreed with a leading medical

4 | research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M

5 | and the others retained control over publication of the results. In 1943 Saranac's Dr. Leroy

6 | Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed

7 | to long fiber asbestos contracted cancer.

8 |     72.    Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac

9 | results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies

10 | decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

11 | Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending

12 | materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

13 | Vorwald, in the *AMA Archives of Industrial Hygiene.*

14 |     73.    Lanza left MET LIFE at the end of 1948, and took a position at New York

15 | University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause

16 | cancer into the 1950s.

17 |     74.    The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

18 | official was on its medical committee, through Drs. Braun and Truan conducted a study of

19 | Canadian miners. The original report, in 1957, found an increased incidence of lung cancer in

20 | persons exposed to asbestos. The sponsors, including J-M, caused those findings to be stricken,

21 | and the report published in 1958 contained the false conclusion that asbestos exposure alone did

22 | not increase the risk of lung cancer.

23 |     75.    The false and misleading reports that a link between asbestos exposure and cancer

24 | was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low

25 | or zero.

26 | ///

27 | ///

28 | ///

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

76.    J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the hazard. J-M committed battery on workers in its plants, including plaintiff, by that conduct.

77.    MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff, through MET LIFE's conduct described above, including by:

(a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff;

(b)    Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe TLV which specified maximum levels of silica dust, and promoting a false and unsafe TLV which specified maximum levels of dust for workers, including plaintiff, which MET LIFE knew was wrong through its own studies;

(c)    Advising J-M to keep certain workers continuing to work at dusty areas in the plant even after J-M was aware that their lungs showed asbestos-induced changes, lest other workers including plaintiff be alerted to the dangers of working in the dust.

WHEREFORE, plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

### FIFTH CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF CAROL McINDOE COMPLAINS OF DEFENDANTS,  DOES 1-500, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

///

78. Plaintiff incorporates by reference each and every paragraph of the First through Fourth Causes of Action herein.

79. Plaintiffs JAMES McINDOE and CAROL McINDOE were married on June 12, 1956, and at all times relevant to this action were, and are now, husband and wife.

80. Prior to plaintiff JAMES McINDOE's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, JAMES McINDOE has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, plaintiff CAROL McINDOE has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

81. Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

82. As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to plaintiff JAMES McINDOE as set forth in this complaint, plaintiff CAROL McINDOE has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

• WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as follows:

Plaintiff JAMES McINDOE:

1. For plaintiff's general damages according to proof;

2. For plaintiff's loss of income, wages and earning potential according to proof;

3. For plaintiff's medical and related expenses according to proof;

Plaintiff CAROL McINDOE:

///

1         4.     For plaintiff's damages for loss of consortium according to proof;

2   Plaintiffs JAMES McINDOE and CAROL McINDOE:

3         5.     For plaintiffs' cost of suit herein;

4         6.     For exemplary or punitive damages according to proof;

5         7.     For damages for fraud according to proof; and

6         8.     For such other and further relief as the court may deem just and proper, including

7   costs and pre-judgment interest as provided in C.C.P. § 998, C.C.P. § 1032, and related

8   provisions of law.

9   Dated: _____              BRAYTON❖PURCELL LLP

10

11                            By: _____

12                               David R. Donadio
                                  Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## EXHIBIT A

2

3    Plaintiff's exposure to asbestos and asbestos-containing products occurred at various

4    locations both inside and outside the State of California, including but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Goodyear Tire & Rubber | Goodyear Tire & Rubber Los Angeles, CA | Trainee | 1955 - 1956 (1 year) |
| US Navy | GENERAL W.A. MANN (TAP-112) | Navigator | 1956 - 1958 |
| | Willamette Iron & Steel Co. (WISCO) Portland, OR | | 4 - 5 months |
| Goodyear Tire & Rubber | Goodyear Tire & Rubber Los Angeles, CA | Trainee | 1959-1960 (1 year) |
| US Navy | CORAL SEA (CVA-43) | Engineer | 1960 - 1963 |
| | Puget Sound Naval Shipyard Bremerton, WA | | 1960 |
| | Hunters Point Naval Shipyard San Francisco, CA | | 2 years (on and off) |
| US Navy | Hunters Point Naval Shipyard San Francisco, CA | Administrator | 1963 - 1965 |
| US Navy | WORDEN (DLG-18) | Engineer | 1966 - 1968 |
| | Hunters Point Naval Shipyard San Francisco, CA | | |
| US Navy | Naval Post Graduate School Monterey, CA | Trainee | 1968 (8 - 10 months) |
| US Navy | STORMES (DD-780) | Officer | 1970 - 1971 |
| | Norfolk Naval Shipyard Portsmouth, VA | | |

///                                                                        EXHIBIT A

1

### EXHIBIT A (cont'd.)

2

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | FORT SNELLING (LSD-30) | Engineer | 8/1973 - 9/1975 |
|  | Norfolk Naval Shipyard Portsmouth, VA |  |  |
| US Navy | Various naval vessels Pacific Theater | Officer | 1978 - 1981 |

8   NON-OCCUPATIONAL EXPOSURE:

9   AUTOMOBILE REPAIR:

10   During plaintiff's life he has performed approximately 9 brake jobs on his own personal vehicles.

11   1961 Volvo- plaintiff purchased this vehicle used and replaced the brakes on two occasions with
12   BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK).

13   1966 Chevy - plaintiff purchased this vehicle used and replaced the brakes on one occasion with
14   BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK).

15   1978 MERCEDES - plaintiff purchased this vehicle new.  Plaintiff performed 5 brake jobs on
16   this vehicle, including removing the original equipment manufacturer's brakes

17   1973 FORD Ranger-plaintiff purchased this vehicle new and removed the original equipment
     manufacturer's brakes and replaced them with BENDIX (HONEYWELL INTERNATIONAL,
     INC.) brakes purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK).

18
19   Plaintiff currently contends he was exposed to asbestos during this automobile repair work.

20   HOME REPAIR:

21   Plaintiff used UNITED STATES GYPSUM COMPANY and GOLD BOND (ASBESTOS
     CLAIMS MANAGEMENT CORPORATION) premixed joint and taping compounds and
22   textures which he applied and sanded to patch walls in his home in Virginia in approximately
     1976.

23

24

25

26

27

28   ///                                                                                              EXHIBIT A

FIRST AMENDED COMPLAINT FOR PERSONAL INJURY, LOSS OF CONSORTIUM - ASBESTOS

1

2    <u>EXHIBIT B</u>

3         Plaintiff retired from his last place of employment at regular retirement age.  He had

4    therefore suffered no disability from his asbestos-related disease as "disability" is defined in

5    California Code of Civil Procedure §340.2.

6         Plaintiff was diagnosed with mesothelioma on or about February 2011.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ///                                                                    EXHIBIT B