EFILE

**U.S. District Court**
**United States District Court for the District of Connecticut (New Haven)**
**CIVIL DOCKET FOR CASE #: 3:11-cv-01554-VLB**

| | |
|---|---|
| Voliva v. Curtiss-Wright Corporation et al | Date Filed: 10/11/2011 |
| Assigned to: Judge Vanessa L. Bryant | Jury Demand: Defendant |
| Cause: 28:1446 Petition for Removal- Personal Injury | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Federal Question |

**Plaintiff**

**James Voliva**                          represented by **Douglas von Oiste**
Karst & von Oiste LLP
19500 State Hwy 249
Suite 420
Houston, TX 77070
281-970-9988
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick F. Lennon**
Lennon Murphy & Lennon
Tide Mill Landing
2425 Post Road, Suite 302
Southport, CT 06890
203-256-8600
Fax: 203-256-8615
Email: pfl@lenmur.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Curtiss-Wright Corporation**              represented by **Bryna Rosen Misiura**
Governo Law Firm LLC
Two International Place
Boston, MA 02110
617-737-9045
Fax: 617-737-9046
Email: bmisiura@governo.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dana Companies LLC**                       represented by **Matthew Jason Zamaloff**
*formerly known as*                          Cetrulo & Capone - Boston

Dana Corp

Exchange Place
Two Seaport Lane, 10th Fl.
Boston, MA 02210
617-217-5226
Fax: 617-217-5200
Email: mzamaloff@cetcap.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**General Electric Company**

represented by **Dan E. LaBelle**
Halloran & Sage
315 Post Rd. West
Westport, CT 06880
203-227-2855
Email: labelle@halloran-sage.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Georgia Pacific LLC**
*formerly known as*
Georgia Pacific Corp

**Defendant**

**Henkel Corp**
*Successor*
Dexter Corporation

**Defendant**

**Honeywell Intl Inc**
*formerly known as*
Allied Signal, Inc.
*Successor*
Bendix Corp

represented by **Matthew Jason Zamaloff**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**IMO Indus Inc**
*Individually*
*Successor*
DeLaval Turbine Inc
*Successor*
Adel

represented by **Richard M. Dighello , Jr.**
Updike, Kelly & Spellacy, P.C.
100 Pearl St., Po Box 231277
Hartford, CT 06123-1277
860-548-2600
Email: rdighello@uks.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Minnesota Mining & Manufacturing Company**
*also known as*

represented by **Thomas M. Crispi**
Schiff Hardin LLP
666 Fifth Avenue, 17th Floor

3M Company Corporation

New York, NY 10103
212-753-5000
Fax: 212-753-5044
Email: tcrispi@schiffhardin.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Parker Hannifin Corporation**

**Defendant**

**Rolls-Royce Corp**
*Successor*
Allison Engine Company Corporation

**Defendant**

**Dow Chemical Company**

**Defendant**

**Union Carbide Corp**

**Defendant**

**United Technologies Corporation**
*Successor*
Pratt & Whitney

represented by **John W. Bradley , Jr.**
Rome McGuigan, P.C.
One State Street
13th Floor
Hartford, CT 06103-3101
860-549-1000
Fax: 860-724-3921
Email: jbradley@rms-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Robert Chappell**
Rome McGuigan, P.C.
One State Street
13th Floor
Hartford, CT 06103
860-549-1000
Fax: 860-724-3921
Email: jchappell@rms-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Vellumold Inc**

**Cross Claimant**

**United Technologies Corporation**

represented by **John W. Bradley , Jr.**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Robert Chappell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Curtiss-Wright Corporation**

**Cross Defendant**

**Dana Companies LLC**

**Cross Defendant**

**Dow Chemical Company**

**Cross Defendant**

**General Electric Company**                    represented by  **Dan E. LaBelle**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Georgia Pacific LLC**

**Cross Defendant**

**Henkel Corp**

**Cross Defendant**

**Honeywell Intl Inc**

**Cross Defendant**

**IMO Indus Inc**
*Individually*

**Cross Defendant**

**Minnesota Mining & Manufacturing
Company**

**Cross Defendant**

**Parker Hannifin Corporation**

**Cross Defendant**

**Rolls-Royce Corp**

**Cross Defendant**

**Union Carbide Corp**

**Cross Defendant**

**Vellumold Inc**

**Cross Claimant**

**Curtiss-Wright Corporation**

       represented by  **Bryna Rosen Misiura**
                    (See above for address)
                    *LEAD ATTORNEY*
                    *ATTORNEY TO BE NOTICED*

V.

**Cross Defendant**

**Dana Companies LLC**

**Cross Defendant**

**Dow Chemical Company**

**Cross Defendant**

**General Electric Company**

       represented by  **Dan E. LaBelle**
                    (See above for address)
                    *LEAD ATTORNEY*
                    *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Georgia Pacific LLC**

**Cross Defendant**

**Henkel Corp** .

**Cross Defendant**

**Honeywell Intl Inc**

**Cross Defendant**

**IMO Indus Inc**
*Individually*

       represented by  **Richard M. Dighello , Jr.**
                    (See above for address)
                    *LEAD ATTORNEY*
                    *ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Minnesota Mining & Manufacturing
Company**

**Cross Defendant**

**Parker Hannifin Corporation**

**Cross Defendant**

**Rolls-Royce Corp**

**Cross Defendant**

**Union Carbide Corp**

**Cross Defendant**

**United Technologies Corporation**     represented by  **John W. Bradley , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Robert Chappell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cross Defendant**

**Vellumold Inc**

| Date Filed | # | Docket Text |
|---|---|---|
| 10/11/2011 | 1 | NOTICE OF REMOVAL by United Technologies Corporation from Judicial District of Bridgeport, case number cv11-66022355-S., filed by United Technologies Corporation. (Attachments: # 1 Exhibit A-C, # 2 Civil Cover Sheet)(Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | | Filing fee received from Rome McGuigan PC: $ 350.00, receipt number CTXH00001943 (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 2 | Order on Pretrial Deadlines: Motions to Dismiss due on 1/11/2012. Amended Pleadings due by 12/10/2011 Discovery due by 4/11/2012 Dispositive Motions due by 5/11/2012. Signed by Clerk on 10/11/2011. (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 3 | ELECTRONIC FILING ORDER - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER. Signed by Judge Vanessa L. Bryant on 10/11/2011. (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 4 | ORDER RE: Judge's Chambers Practices. Counsel are directed to read and comply with the Chambers Practices and Standing Orders prior to filing any document. So ordered. Signed by Judge Vanessa L. Bryant on 10/11/2011. (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 5 | NOTICE certifying service to adverse parties by United Technologies Corporation re 1 Notice of Removal (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 6 | NOTICE of Appearance by Jonathan Robert Chappell on behalf of United Technologies Corporation (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 7 | NOTICE of no pending motions by United Technologies Corporation |

| | | |
|---|---|---|
| | | (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 8 | NOTICE of compliance with standing order in removed cases by United Technologies Corporation (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 9 | Corporate Disclosure Statement by United Technologies Corporation. (Montgomery, A.) (Entered: 10/13/2011) |
| 10/11/2011 | 10 | NOTICE of Tag-along action by United Technologies Corporation (Montgomery, A.) (Entered: 10/13/2011) |
| 10/13/2011 | 11 | NOTICE TO COUNSEL: Counsel initiating or removing this action is responsible for serving all parties with attached documents and copies of 3 Electronic Filing Order, 8 Notice (Other) filed by United Technologies Corporation, 2 Order on Pretrial Deadlines, 4 Order Re: Chambers Practices, 5 Notice (Other) filed by United Technologies Corporation, 7 Notice (Other) filed by United Technologies Corporation, 1 Notice of Removal filed by United Technologies Corporation, 9 Corporate Disclosure Statement filed by United Technologies Corporation, 10 Notice (Other) filed by United Technologies Corporation, 6 Notice of Appearance filed by United Technologies Corporation. Signed by Clerk on 10/13/2011. (Attachments: # 1 Standing Order in Removed Cases)(Montgomery, A.) (Entered: 10/13/2011) |
| 10/13/2011 | 12 | NOTICE TO COUNSEL Regarding Local Rule 83.1 Admission of Attorneys by James Voliva (Montgomery, A.) (Entered: 10/13/2011) |
| 10/14/2011 | 13 | CERTIFICATE OF SERVICE by United Technologies Corporation *Standing Orders* (Bradley, John) (Entered: 10/14/2011) |
| 10/18/2011 | 14 | NOTICE of Appearance by Dan E. LaBelle on behalf of General Electric Company (LaBelle, Dan) (Entered: 10/18/2011) |
| 10/18/2011 | 15 | Corporate Disclosure Statement by General Electric Company. (LaBelle, Dan) (Entered: 10/18/2011) |
| 10/19/2011 | 16 | ANSWER to Complaint (Notice of Removal), CROSSCLAIM against All Defendants by United Technologies Corporation.(Bradley, John) (Entered: 10/19/2011) |
| 10/25/2011 | 17 | NOTICE of Appearance by Richard M. Dighello, Jr on behalf of IMO Indus Inc (Dighello, Richard) (Entered: 10/25/2011) |
| 10/25/2011 | 18 | ENTERED IN ERROR . . . NOTICE of Appearance by Richard M. Dighello, Jr on behalf of IMO Indus Inc *NOTICE OF DAVID PAUL* (Dighello, Richard) Modified on 10/26/2011 (Grady, B.). (Entered: 10/25/2011) |
| 10/25/2011 | 19 | First Corporate Disclosure Statement by IMO Indus Inc identifying Corporate Parent Colfax Corporation, Corporate Parent CLFX Corp, Corporate Parent Imo Holdings for IMO Indus Inc. (Dighello, Richard) (Entered: 10/25/2011) |
| 11/01/2011 | 20 | NOTICE of Appearance by Bryna Rosen Misiura on behalf of Curtiss-Wright Corporation (Misiura, Bryna) (Entered: 11/01/2011) |
| 11/01/2011 | 21 | ANSWER to 1 Complaint with Affirmative Defenses with Jury Demand *Answers to Cross-Claims*, CROSSCLAIM against Dana Companies LLC, Dow |

| | | |
|---|---|---|
| | | Chemical Company, General Electric Company, Georgia Pacific LLC, Henkel Corp, Honeywell Intl Inc, IMO Indus Inc, Minnesota Mining & Manufacturing Company, Parker Hannifin Corporation, Rolls-Royce Corp, Union Carbide Corp, United Technologies Corporation, Vellumold Inc by Curtiss-Wright Corporation.(Misiura, Bryna) Modified on 11/10/2011 to link to complaint (Grady, B.). Modified on 11/10/2011 to add association (Grady, B.). (Entered: 11/01/2011) |
| 11/01/2011 | 22 | MOTION to Remand to State Court by James Voliva.Responses due by 11/22/2011 (Lennon, Patrick) (Entered: 11/01/2011) |
| 11/01/2011 | 23 | Memorandum in Support re 22 MOTION to Remand to State Court filed by James Voliva. (Attachments: # 1 Exhibit Exhibits A-C)(Lennon, Patrick) (Entered: 11/01/2011) |
| 11/04/2011 | 24 | NOTICE of Appearance by Matthew Jason Zamaloff on behalf of Dana Companies LLC (Zamaloff, Matthew) (Entered: 11/04/2011) |
| 11/04/2011 | 25 | First Corporate Disclosure Statement by Dana Companies LLC. (Zamaloff, Matthew) (Entered: 11/04/2011) |
| 11/04/2011 | 26 | NOTICE of Appearance by Matthew Jason Zamaloff on behalf of Honeywell Intl Inc (Zamaloff, Matthew) (Entered: 11/04/2011) |
| 11/04/2011 | 27 | First Corporate Disclosure Statement by Honeywell Intl Inc. (Zamaloff, Matthew) (Entered: 11/04/2011) |
| 11/08/2011 | 28 | NOTICE of Appearance by Thomas M. Crispi on behalf of Minnesota Mining & Manufacturing Company (Crispi, Thomas) (Entered: 11/08/2011) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 11/10/2011 14:39:46 | | |
| **PACER Login:** | te0445 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-01554-VLB |
| **Billable Pages:** | 6 | **Cost:** | 0.48 |

RETURN DATE: 9/27/2011

JAMES VOLIVA

VS.

**CURTISS-WRIGHT CORPORATION;
DANA COMPANIES LLC FKA DANA
CORPORATION;
GENERAL ELETRIC COMPANY;
GEORGIA PACIFIC LLC fka Georgia-
Pacific Corporation;
HENKEL CORPORATION as
Successor in Interest to the Dexter
Corporation;
HONEYWELL INTERNATIONAL INC
formerly known as AlliedSignal Inc
successor in interest to The Bendix
Corporation;
IMO INDUSTRIES INC Individually
and as Successor in Interest to
DeLaval Turbine Inc. and Adel;
MINNESOTA MINING AND
MANUFACTURING COMPANY aka
3M COMPANY;
PARKER HANNIFIN CORPORATION;
ROLLS-ROYCE    CORPORATION    as
Successor   in   Interest   to   Allison
Engine Company;
THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
UNITED TECHNOLOGIES
CORPORATION as Successor in
Interest to Pratt & Whitney;
VELLUMOID INC;**

§  SUPERIOR COURT
§
§  JUDICIAL DISTRICT OF FAIRFIELD AT
§  BRIDGEPORT
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

## **<u>COMPLAINT</u>**

    1.    The plaintiff, JAMES VOLIVA, currently resides at 5309 Autry Rd.,

Rocky Mount, North Carolina 27803.

## COUNT I

### (as to Plaintiff JAMES VOLIVA and all Defendants)

2.    Plaintiff repeats and realleges all allegations contained in all paragraphs as if fully set forth herein.

3.    Each of the defendants, and/or their predecessors in interest (hereinafter referred to as the "Defendants"), named in the caption above conducted business in the state of Connecticut, has produced, manufactured or distributed asbestos and/or asbestos products with the reasonable expectation that such products were so used or consumed, and/or has committed the tortuous acts set forth below.

4.    The employer or employers of the plaintiff were engaged in various businesses in which they bought and/or installed asbestos products and materials.

5.    The plaintiff was exposed to various asbestos containing products through his work at Norfolk Naval Air Station in Norfolk, Virginia, Pratt & Whitney in Connecticut and Allison Engine Company in Indianapolis, Indiana from 1956-1993 as an aircraft engine mechanic apprentice, aircraft engine mechanic, quality control inspector of engines, materials planner where he purchased aircraft engine materials, maintenance, foreman of aircraft engine mechanics, progressman in production control, production supervisor, management analyst, and supervising management analyst and such exposure in Connecticut contributed in part or totally to the plaintiff's contraction of Mesothelioma.

6.    During the period of time set forth above, the plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust fibers,

and particles came from the asbestos products which were contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed and/or sold by the defendants.

7. Upon information and belief, the defendants, through their agents and employees, mined, processed, manufactured, designed, tested and/or packaged various asbestos-containing products, and supplied, distributed, delivered, marketed and/or sold said asbestos containing products to the employer(s) of JAMES VOLIVA or to others working at the various jobsites in Connecticut where the plaintiff was employed, or to third persons who, in turn, delivered and sold such products and materials to such employers or to others working at such jobsites for use by employees, including the plaintiff.

8. At all relevant times that the plaintiff was exposed to asbestos materials and products from various sources, the plaintiff was forced to come into contact with and breathe, inhale, and ingest asbestos fibers and particles coming from said asbestos products and materials.

9. At all times pertinent hereto, the defendants were engaged in the business of contracting for, mining, milling, processing, manufacturing, designing, testing, assembling, fashioning, fabricating, packaging, supplying, distributing, delivering, marketing and/or selling asbestos and asbestos products.

10. At all times pertinent hereto, the asbestos products contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed, delivered, marketed, and/or sold by the

defendants reached the plaintiff without any substantial change in their condition from the time they wee sold.

11.    The actions of the defendants described and alleged above were wrongful under Section 52-572m, et seq., in one or more of the following ways:

(a)    Said asbestos-containing products were unreasonably defective in one or more of the following ways:

1.    in that said products were and are unavoidably unsafe, and failed to carry proper, adequate and correct warnings about their hazards about which the defendant knew or should have known;

2.    in that said products were and are unreasonably dangerous in that they were and are dangerous to an extent beyond that which the ordinary worker in the position of the plaintiff would contemplate;

3.    in that any warnings, information and/or safety instruction said products may have carried, were improper and inadequate in that they failed to apprise users and/or others, including the plaintiff, adequately and reasonably of the full hazards and dangers of coming in contact with said products, including the risk of cancer;

(b)    The defendants knew or should have known that said asbestos-containing products were inherently dangerous to those who used them, yet the defendants failed to use reasonable and/or ordinary care in seeing to it that said products carried proper, adequate and correct warnings of said products, and the exposure of the plaintiff and others like the plaintiff to these products was reasonably foreseeable to the defendants;

(c)     The defendants breached warranties, either implied or expressed, in that these products were not fit and/or safe for their known and intended purposes and uses.

12.     As a result of the above, the plaintiff is caused to sustain severe, painful and permanent injuries referred to in Paragraph 5 and/or other asbestos-related pathologies caused by the plaintiff coming into contact with and breathing, inhaling and ingesting asbestos fibers.  The injuries and diseases from which the plaintiff suffered caused the plaintiff to suffer great pain, suffering, mental anxiety, distress of mind, humiliation, emotional trauma and mental anguish.

13.     The disease, diseases or injuries from which the plaintiff suffers was directly and proximately caused by the plaintiff's exposure to asbestos and asbestos products which wee mined, milled, manufactured, designed, assembled, distributed, supplied, constructed, processed, packaged, distributed, delivered, purchased and/or sold by the defendants.

14.     As a result thereof, the plaintiff's life span has been shortened and the plaintiff's capacity to carry on life's activities is impaired along with the plaintiff's capacity to enjoy life and family, to engage in any gainful employment and to participate in civic affairs.

15.     As a result of said illness, the plaintiff is obligated to incur expenses for medical, hospital and surgical treatment, drugs, medicines, x-rays, and medical apparatus.

16.     As a further result of said illness, the plaintiff's earning capacity is impaired.

17. The defendants knew or should have known that the asbestos products and materials were inherently dangerous to those who used, handled, or came in contact with said products and materials.

18. The defendants failed to provide proper, adequate and correct warnings and information concerning the dangers of the products and materials to persons using, handling, or coming into contact therewith.

19. The defendants failed to provide, proper, adequate and correct warnings and instruction of safety precautions to be observed by users, handlers and persons, including the plaintiff, who would reasonably and foreseeably come into contact with the said products and materials.

20. Any warnings, information and/or instructions of safety precautions were improper and inadequate in that, among other things, they failed to adequately and reasonably to apprise users, handlers and persons coming into contact with the said products and materials, including the plaintiff, of the full scope and danger to their health of contact with asbestos products and materials, including the risk of cancer.

21. The defendants have been possessed of medical and scientific data, studies and reports since approximately 1929, which information clearly indicated that asbestos and asbestos-containing products were hazardous to the health and safety of the plaintiff and other human beings.

22. The defendants, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies and reports, which information conclusively established that asbestos and asbestos-containing

products were hazardous to the health and safety of the plaintiff and all humans exposed to the products.

23.     The defendants have since the 1930's had numerous workers' compensation claims filed against them by former asbestos workers/employees.

24.     The defendants, since the 1920's, have consistently failed to acknowledge, publish, or in any way advise of studies and reports known throughout the industry, including studies conducted by or on behalf of various defendants in the asbestos industry.

25.     Notwithstanding that the defendants possessed the foregoing information, the defendant wrongfully contracted for, mined, milled, processed, manufactured, designed, tested, assembled, fashioned, fabricated, packaged, supplied, distributed,, delivered, marketed, and sold asbestos products and materials to the plaintiff and/or to others working at the various jobsites and places of employment of the plaintiff and the defendants failed to render proper, adequate and correct warnings, advice, instruction and information and so acted in a grossly negligent, malicious, willful and wanton manner, failed to use reasonable care under all circumstances, and wrongfully acted in other respects.

26.     It was the continuing duty of the defendants to advise and warn purchasers, consumers, and users, and all prior purchasers, consumers, and users, of all dangers, characteristics, potentialities and/or defects discovered subsequent to their initial marketing or sale of said asbestos and asbestos products.

27.     The defendants breached these duties by:

(a)    failing to warn the plaintiff of the dangers, characteristics, and/or potentialities of the product or products when they knew or should have known that the exposure to the product(s) would cause disease and injury;

(b)    failing to warn the plaintiff of the dangers to which the plaintiff was exposed when they knew or should have known of the dangers;

(c)    failing to exercise reasonable care to warn the plaintiff of what would be safe, sufficient, and properly protective clothing, equipment, and appliances when working with, near or during exposure to asbestos and asbestos products;

(d)    supplying asbestos or asbestos products that were packaged, bagged, boxed and/or supplied to the plaintiff in packaging, bagging, boxes or other containers that wee inadequate and/or improper;

(e)    supplying asbestos or asbestos products that were delivered to and reached the plaintiff without adequate or proper handling instructions, facemasks and/or respirators;

(f)    failing to test the asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure;

(g)    failing to conduct such research that should have been conducted in the exercise of reasonable care in order to ascertain the dangers involved upon exposure;

(h)    failing to remove the product or products from the market when the defendants' corporation knew or should have known of the hazards of exposure of asbestos and asbestos products;

(i)    failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos adequately to warn and apprise the plaintiff of the dangers, hazards, and potentialities discovered;

28.    The plaintiff brings this Count pursuant to Connecticut General Statutes Sections 52-240a, 52-240b, and 52, 272m et seq.

WHEREFORE, the Plaintiff, JAMES VOLIVA, claims damages.

## COUNT II

**(as to Plaintiff JAMES VOLIVA and against Defendant(s)
Metropolitan Life Insurance Company, Asbestos Claims Management
Corporation fka National Gypsum, U.S. Gypsum Co.
and T&N Industries Inc fka Turner & Newall PLC Only)**

1-28   Plaintiff repeats and realleges all allegations contained in all paragraphs above as if fully set forth herein.

29.    Defendant(s), individually and as agents of one another and as co-conspirators, aided, abetted, encouraged, counseled, assisted, agreed, and conspired among themselves and with other asbestos manufacturers and distributors to injure Plaintiff.

30.    The defendant(s) knew that the others' conduct constituted a breach of duty and gave substantial assistance or encouragement to the others so to conduct itself.

31.    The defendant(s) acted in the following fashion:

a.    Conspirator Metropolitan Life Insurance Company (hereinafter "Met Life") required a tangible quid pro quo from McGill University in the 1920's in exchange for them providing funding for a study of asbestos disease in Canadian

miners. The study revealed asbestos miners suffered from asbestosis. The study was never published and agents of Met Life materially misrepresented in the published literature this known fact.

b.    In 1932, Met Life, through its agents Dr. Anthony Lanza, Dr. Fellows, and other, assisted co-conspirator Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of his study showed that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issues of asbestos disease. Further collaboration between the conspiring asbestos producers and Met Life officials continued this trend of intentional cover-up.

c.    Beginning in approximately 1934, conspirator Johns-Manville Corporation, through its agents, Vandiver Brown and Attorney J.C. Hobart, and conspirator Raybestos-Manhattan, hereinafter referred to as "Raybestos", through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Lanza, Association Medical Director of Met Life (insurer of conspirators Johns-Manville, Raybestos, and others) that Dr. Lanza publish a study on asbestosis in which Dr. Lanza would affirmatively misrepresent a material fact about asbestos exposure, i.e., the seriousness of the disease process, asbestosis. This was accomplished through intentional deletion of Dr. Lanza's description of asbestosis as "fatal" and through other selective editing at the behest of the asbestos industry that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was

known to be then.  As a result, Dr. Lanza's study was published in the medical literature in this misleading fashion in 1935.  The defendant Met Life was motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits and workers' compensation claims involving Manville, Raybestos, and others, as well as Met Life, the insurer.

d.      In 1936, conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter ego to defendant Turner & Newall), Raybestos, Union Asbestos and Rubber Company, and United States Gypsum Company, entered into an agreement with the Saranac Laboratories.  Under this agreement, these companies acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control what form such publications were to occur.  This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data resulting in numerous misstatements of fact being made at scientific meetings.

e.      On November 11, 1948, representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then an alter-ego to defendant Turner & Newall), Raybestos-

Manhattan, Inc, Thermoid Company, Union Asbestos and Rubber Company, and U.S. Gypsum Company. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

f.     At this November 11, 1948 meeting, these co-conspirators and their respective representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with  critical review of the then-existing standards of dust exposure for asbestos and asbestos-containing products.

g.     At this meeting, the co-conspirators intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published it in the medical literature as edited by Dr. Arthur Vorwald. The acts of these co-conspirators were carried out by co-conspirator Met Life's agent, Dr. Lanza. These co-conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, Plaintiff.

h.     As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in January, 1952, in the <u>Archives of Industrial Hygiene and Occupational Medicine</u> (Vol. 3, No. 1), a journal of the American Medical Association. The published version stressed those

portions of Gardner's work that the co-conspirators wished stressed, but omitted referenced to cancer, to human asbestosis, and to the inadequacy of the then-established threshold limit values (TLVs). Furthermore, that article made a false claim that the published report was the "complete survey" of Dr. Gardner's work. The defendant(s) thereby fraudulently, affirmatively, and deliberately disseminated this misleading Dr. Vorwald publication to university libraries, government officials, medical doctors, agencies, the public, and others.

     i.     Such action constituted a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

     j.     The following conspirators and others were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada (individually and as successor to Quebec Asbestos Corporation), the Celotex Corporation (successor to Quebec Asbestos Corporation), National Gypsum Company (n/k/a Asbestos Claims Management Corporation), and Turner & Newall (individually and successor to Bell Asbestos). The members of Q.A.M.A. participated in the above-described misrepresentation of the work of Dr. Gardner published by Dr. Vorwald in the <u>AMA Archives of Industrial Health</u> in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns-Manville's membership in the Q.A.M.A., as well as correspondence from co-conspirators indicating close monitoring of the editing

process by Q.A.M.A.'s representative Ivan Sabouria, acting on behalf of all Q.A.M.A. members.

k.    The conspirators who were members of the Q.A.M.A., began on or about 1950 to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject and then touting and disseminating this literature to the public and the organizations and legislative bodies responsible for regulatory controls of asbestos with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific date in their possession and control.

l.    This plan  of misrepresentation and influence over the medical literature began on or about 1950 when Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos.  After a preliminary report authored by Dr. Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, the Q.A.M.A. members refused to further fund the study and it was terminated and never publicly discussed.

m.    As a result of the termination of this study, these conspirators fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators' agents Kenneth W. Smith, M.D., Paul Cartier, M.D., Arthur J. Vorwald, M.D., Anthony L. Lanza, M.D., Vandiver Brown, and Ivan Mambourin, said misrepresentations being

directed to, <u>inter alia</u>, U.S. government officials, Canadian government officials, U.S. National Cancer Institute, and the general public, including Plaintiff.

n.    Subsequently, the Q.A.M.A. conspirators contracted with the Industrial Hygiene Foundation (I.H.F.) and Dr. Daniel Braun to further study the relationship between asbestos exposure, asbestosis and lung cancer.  In 1957, Drs. Braun and Truan reported to the Q.A.M.A. that asbestosis did increase a worker's chances of incurring lung cancer.

o.    The Q.A.M.A. conspirators thereafter caused, in 1958, a publication of the work by Braun and Truan in which the findings regarding increased incidence of cancer in persons with asbestosis was edited out by agents of the Q.A.M.A.  The published version of this study contained a conclusion that asbestos exposure did not increase the incidence of lung cancer, a conclusion known by the conspirators to be patently false.

p.    By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer and simultaneously omitting a documented finding that asbestosis did increase the risk of lung cancer, the Q.A.M.A. conspirators affirmatively misrepresented to the public and concealed from the public the extent of risks associated with inhalation of asbestos fibers.

q.    In approximately 1958, the Q.A.M.A. conspirators publicized the edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

r.      The fraudulent misrepresentations beginning 1946, as elaborated above and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for the TLVs, and inhibited the lowering of the threshold limit value due to the cancer risk associated with asbestos inhalation.

s.      In 1967, Q.A.M.A. conspirators determined at their trade association meeting that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

t.      In 1952, a symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators were in attendance: Johns-Manville, Turner & Newall, Raybestos and Q.A.M.A. members by way of their agents, Cartier, Sabourin and LeChance.

u.      At this meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed. In an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to prevent publication of the record of this 1952 Saranac Symposium and it was not published. In addition, the conspirators induced Dr. Vorwald not to announce the results of his and dr. Gardner's animal studies showing excess cancers in animals that thereby fraudulently misrepresenting existing data, albeit secret, that could not be publicized because of the secrecy provisions contained in the 1936 Saranac Agreement required by the asbestos industry members.

v.    The following conspirators were members of the Magnesia Insulation Manufacturers Association (MIMA): Philip Carey corporation (predecessors to Celotex), Johns-Manville, and others.

w.    In 1955, these conspirators caused to be published the MIMA 85% Magnesia Insulation Manual. This manual falsely and fraudulently misrepresented that asbestos-containing products offered no hazard to workers who used these products.

x.    The following conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI): Raybestos, Johns-Manville, H.K. Porter, Keasby & Mattison (individually and through its alter-ego defendant Turner & Newall), National Gypsum (n/k/a Asbestos Claims Management Corporation), and others.

y.    In 1947, the members of the ATI, received a report from W.C.L. Hemeon regarding asbestosis that suggested re-evaluation of the then-existing TLVs for asbestos exposure. These conspirators caused this report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then-existing TLV was acceptable. Thereafter, these conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluations of TLVs for asbestos exposure.

z.    In 1953, conspirator National Gypsum (n/k/a Asbestos Claims Management Corporation) through its agents, in response to  an inquiry from the

Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products. National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed from such applicators the need for respirators.

aa.    In 1955, conspirator Johns-Manville, through its agent Kenneth W. Smith, M.D. caused to be published in the <u>AMA Archives of Industrial Health</u>, an article entitled "Pulmonary Disability in Asbestos Workers". This published study materially altered Dr. Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

bb.    In 1955, the National Cancer Institute held a meeting at which conspirators Johns-Manville (Individually and as an agent for other alleged co-conspirators) and Dr. Vorwald (as agent of co-conspirators) affirmatively misrepresented that there were no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, the conspirators were in secret possession of several studies that demonstrated that positive evidence did exist.

cc.    In 1957, the members of the ATI, jointly rejected a proposed research on cancer and asbestos and this resulted in fraudulent concealment from the public of material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos-exposure and lung cancer.

dd.   In 1964, the members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently discussed by Dr. Irving J. Selikoff, Thereafter, these members of the ATI embarked upon a campaign to further misrepresent the association between asbestos exposure and lung cancer.

ee.   In 1970, through their agents, co-conspirators, the Celotex Corporation and Carey-Canada, affirmatively misrepresented that they had been in the asbestos business since 1918 and found no reported conditions of asbestosis or lung disease.  This constituted a fraudulent misrepresentation about the material facts known to these conspirators.

ff.   All conspirators approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos, and Anthony J. Lanza, M.D., acting on behalf of conspirator Met Life, and all alleged co-conspirators during the relevant time period and circumstances alleged above, acted as agents and co-conspirators for the other conspirators.

32.   All of the aforementioned defendant(s):

a.   did a tortuous act in concert with the other or pursuant to a common design with them; and/or

b.   knew that each other's conduct constituted a breach of duty and they each gave substantial assistance or encouragement to the other so to conduct himself; and/or

c.      gave substantial assistance to the other in accomplishing a tortuous result and its own conduct, separately considered, constitutes a breach of duty to the Plaintiff.

33.    The acts of the defendant(s) as described above, constitute a fraudulent concealment and/or a fraudulent misrepresentation that proximately caused injury to the Plaintiff in the following manner:

a.      The material published or caused to be published by the defendant(S) was false and incomplete in that the Defendant(s) knowingly and deliberately deleted references to the known health hazards of asbestos and asbestos-containing products.

b.      Defendant(s) individually, as members of a conspiracy, as agents of other co-conspirators, and as aiders and abettors of each other intended that the publication of false and misleading reports and/or the nondisclosure of documented reports of the health hazards of asbestos would:

(1)     maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

(2)     assist in the continued pecuniary gain of the defendant(s) through the sale of their products;

(3)     influence proposed legislation to regulate asbestos exposure to the defendant(s) benefit;

(4)     provide a defense in lawsuits brought for injury resulting from asbestos disease.

c.     Plaintiff(s) continued to be exposed to asbestos because of a belief that it was safe due to Plaintiff(s) reasonable reliance upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-containing products and the absence of published medical and scientific reports on the extent, nature, and existence of hazards of asbestos and asbestos-containing products.

d.     Defendant(s) individually, as members of a conspiracy, and as agents of each other intended that Plaintiff(s) rely upon the published report regarding the safety of asbestos and asbestos-containing products and upon the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue Plaintiff's exposure to these products.

e.     Defendant(s), individually, as members of a conspiracy, as agents of each other, as aiders and abettors of each other are and were in a position of superior knowledge regarding the health hazards of asbestos and therefore Plaintiff had a right to rely on the published reports commissioned by the defendant(s) regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-containing products.

f.     Plaintiffs suffered and will continue to suffer injury as a direct result and proximate result of the acts alleged herein.

34.     As a direct and proximate result of the acts of the Defendant(s), Plaintiff-worker suffered serious bodily injury, endured and will continue to endure great pain and suffering, incurred and will continue to incur medical expenses,

suffered and will continue to suffer mental anguish, lost earnings and earning capacity, required medical monitoring and was otherwise damaged.

### COUNT III
### (FRAUDULENT MISREPRESENTATION AGAINST PREMISES DEFENDANTS

Comes now the Plaintiff, JAMES VOLIVA by his attorneys, Karst & von Oiste LLP for his cause of action against Defendants, **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney** states as follows:

1.    Plaintiff repeats and realleges Count I and II for this Count III.

2.    During the course of his employment at the location mentioned above, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed large amounts of asbestos fibers emanating from certain products he was working with and around, which products were supplied by Defendants.

3.    Plaintiff was unaware of the dangers of the asbestos-containing products which rendered them unsafe for their intended use.  At the time Plaintiff used or worked around these products, such use was in a manner that was reasonably anticipated by.

4.    That on or about June 17, 2011, Plaintiff first became aware that he had developed MESOTHELIOMA an asbestos-induced disease, and that said disease was wrongfully caused.

5.    Defendants, through its officers and employees, knew or should have known at least by 1930 that asbestos-containing products which it supplied and which were used extensively throughout the facilities, were a health hazard to people who worked with and around them, and in the alternative, had no positive proof that prolonged

exposure to asbestos was safe.   Notwithstanding this knowledge, these Defendants engaged in the following omissions or commissions:

    (a)    It deliberately, intentionally, wantonly and designedly furnished asbestos-containing products to Plaintiff for use in his duties at the facility;

    (b)    It deliberately, intentionally, wantonly and designedly failed to warn Plaintiff about the known dangers of asbestos exposure at the facility;

    (c)    It deliberately, intentionally, wantonly and designedly failed to inform Plaintiff of its known potentially hazardous work place as a result of asbestos exposure;

    (d)    It deliberately, intentionally, wantonly and designedly failed to replace the hazardous asbestos-containing products with asbestos substitutes which it knew or should have known by 1930 were available;

    (e)    It deliberately, intentionally, wantonly and designedly failed to abate or contain the unsafe work environment although it knew or should have known in the 1930s that containment and abatement were available;

    (f)    It deliberately, intentionally, wantonly and designedly made Plaintiff work in dangerous areas of the facility knowing that it posed a significant health hazard to people because of the friable and deteriorating condition of asbestos-containing products;

    (g)    It deliberately, intentionally, wantonly and designedly failed to restrict Plaintiff from working in dangerous areas of the facility which had been identified as posing a significant health hazard because of the friable or deteriorating condition of asbestos-containing products;

    (h)    It deliberately, intentionally, wantonly and designedly failed to provide any or adequate instructions concerning the safe methods of working

with and around the products it supplied, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers;

(i)    It deliberately, intentionally, wantonly and designedly failed to provide masks, respirators or other protective apparel to Plaintiff, thereby permitting Plaintiff to work around hazardous asbestos-containing material without protection; and

(j)    It deliberately, intentionally, wantonly and designedly failed 1) to provide medical examinations (until the 1980s), 2) failed to determine past asbestos exposure of its employees and workers, and 3) failed to identify those trades that came into contact with asbestos-containing products it supplied.

6.    In failing to act on each of these items as listed in Paragraph 5, both individually and collectively, these defendants deliberately, intentionally, wantonly and designedly engaged in conduct designed to actively conceal and suppress material facts knowing Plaintiff would rely on these facts to his detriment and cause him bodily harm.

7.    In failing to act on each of these items as listed in Paragraph 5, both individually and collectively, Defendants through its silence deliberately, intentionally, wantonly and designedly engaged in false and deceptive conduct of a material nature, knowing or believing said conduct to be false and doing it for the purpose of inducing Plaintiff to continue to work at **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney** causing him bodily harm.   Plaintiff reasonably believed and relied on Defendants' conduct to his detriment.

8.    In failing to act on each of these items as listed in Paragraph 5, both individually and collectively, Defendants committed, commanded or expressly authorized

the concealment of the known dangers of asbestos intending that the Plaintiff would rely on its silence and thereby inhale, ingest or otherwise absorb asbestos fibers and become injured.

9.    Defendants undertook a duty to provide a safe work place for Plaintiff. Defendants knew that Plaintiff relied on it to provide a safe work place.  In permitting and knowing that Plaintiff would rely on Defendant to provide a safe work place, the Defendants deliberately, intentionally, wantonly and designedly engaged in a false representation of a material fact, knowing it to be false and doing it for the purpose of inducing Plaintiff to continue to work at **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney.**  Plaintiff reasonably believed and relied on Defendants' false representation to his detriment.  By this conduct, the Defendants intended to cause bodily harm to Plaintiff.

10.    As a proximate cause of each of the foregoing acts or omissions, active concealments and false representations, and intentional and wanton conduct, both individually and collectively, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers without his consent, causing Plaintiff to develop MESOTHELIOMA; the Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Plaintiff has in the past and will in the future experience great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of said asbestos fibers; and that as a further result of his asbestos-induced disease and

conditions, the Plaintiff has in the past and will in the future be hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him.

## COUNT IV
### (BATTERY AGAINST PREMISES DEFENDANTS)

Now comes the Plaintiff, JAMES VOLIVA by his attorneys, Karst & von Oiste LLP for his cause of action against the Defendants, **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney** states as follows:

1.      Plaintiff repeats and realleges previous counts for this count.

2. - 5.  Plaintiff repeats and realleges Paragraphs 2, 3, 4 and 5 of Count III as and for Paragraphs 2, 3, 4 and 5 of this Count.

6.      In failing to act on each of these items as listed in Paragraph 5, both individually and collectively the Defendants, through their silence deliberately, intentionally, wantonly and designedly concealed the known dangers of asbestos, intending that Plaintiff would come in contact with asbestos and that asbestos fibers would become trapped in Plaintiff's lungs without his consent.

7.      In failing to act on each of these items as listed in Paragraph 5, both individually and collectively, the Defendants, through their silence deliberately, intentionally, wantonly and designedly engaged in a course of conduct intending that Plaintiff would inhale, ingest or otherwise absorb asbestos fibers and become injured.

8.      In failing to act on each of these items as listed in Paragraph 5, both individually and collectively, the Defendants committed, commanded or expressly

authorized the concealment of the known dangers of asbestos intending that the Plaintiff would come in contact with asbestos and inhale, ingest, or otherwise absorb asbestos fibers which would result in Plaintiff's injury.

9.      Plaintiff repeats and realleges Paragraph 10 of Count III as and for Paragraph 9 of this Count IV.

## COUNT V
## (NEGLIGENCE AGAINST PREMISES DEFENDANTS)

Now comes the Plaintiff, JAMES VOLIVAR by his attorneys, Karst & von Oiste LLP for her cause of action against the Defendants, **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney**, states as follows:

1.      Plaintiff repeats and realleges previous counts.

2. - 4.  Plaintiff repeats and realleges Paragraphs 2, 3, and 4 of previous counts.

5.      The Defendants, through their officers and employees, knew or should have known at least by 1930 that asbestos-containing products which it supplied and which were used extensively throughout the facilities, were a health hazard to people who worked with and around them, and in the alternative, had no positive proof that prolonged exposure to asbestos was safe.

6.      The Defendants, as employers of Plaintiff, owed to Plaintiff a duty to provide a safe place to work and a duty to give Plaintiff timely notice of latent or concealed dangers which were known or should have been known by the Defendants.

7.      Defendants breached its duties to Plaintiff by engaging in the following omissions or commissions:

(a)   It negligently furnished asbestos-containing products to Plaintiff for use in his duties at the facility;

(b)   It negligently failed to warn Plaintiff about the known dangers of asbestos exposure at the facility;

(c)   It negligently failed to inform Plaintiff of its known potentially hazardous work place as a result of asbestos exposure;

(d)   It negligently failed to replace the hazardous asbestos-containing products with asbestos substitutes which it knew or should have known by 1930 were available;

(e)   It negligently failed to abate or contain the unsafe work environment although it knew or should have known in the 1930s that containment and abatement were available;

(f)   It negligently made Plaintiff work in dangerous areas of the facility knowing that it posed a significant health hazard to people because of the friable and deteriorating condition of asbestos-containing products;

(g)   It negligently failed to restrict Plaintiff from working in dangerous areas of the facility which had been identified as posing a significant health hazard because of the friable or deteriorating condition of asbestos-containing products;

(h)   It negligently failed to provide any or adequate instructions concerning the safe methods of working with and around the products it supplied, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers;

(i)   It negligently failed to provide masks, respirators or other protective apparel to Plaintiff, thereby permitting Plaintiff to work around hazardous asbestos-containing material without protection; and

(j)   It negligently failed 1) to provide medical examinations (until the 1980s), 2) failed to

determine past asbestos exposure of its employees and workers, and 3) failed to identify those trades that came into contact with asbestos-containing products it supplied.

8.     Defendants undertook a duty to provide a safe work place for Plaintiff. Defendants knew that Plaintiff relied on it to provide a safe work place. In permitting and knowing that Plaintiff would rely on Defendant to provide a safe work place, the Defendants negligently engaged in a false representation of a material fact, knowing it to be false and doing it for the purpose of inducing Plaintiff to continue to work at **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney.** Plaintiff reasonably believed and relied on Defendants' representation to his detriment.

9.     The breach by Defendants of its duties to Plaintiff was a direct and proximate cause of his development and contraction of an asbestos-related disease, including MESOTHELIOMA, and resulted in damages more particularly described below.

10.     As a direct and proximate cause of each of the foregoing negligent acts or omissions, both individually and collectively, the Plaintiff was exposed to and inhaled, ingested or otherwise absorbed great amounts of asbestos fibers without his consent, causing him to develop MESOTHELIOMA; the Plaintiff has in the past and will in the future be compelled to expend and become liable for large sums of monies for hospital, medical and other health care services necessary for the treatment of his asbestos-induced disease and conditions; the Plaintiff has in the past and will in the future experience great physical pain and mental anguish as a result of the inhalation, ingestion and absorption of

said asbestos fibers; and that as a further result of his asbestos-induced disease and conditions, the Plaintiff has in the past and will in the future be hindered and prevented from pursuing his normal course of employment, thereby losing large sums of money which otherwise would have accrued to him.

## COUNT VI
## (WILLFUL AND WANTON COUNT AGAINST PREMISES DEFENDANTS)

Now comes the Plaintiff, JAMES VOLIVAR, by his attorneys, Karst & von Oiste LLP for his cause of action against the Defendants, **ROLLS-ROYCE CORPORATION as Successor in Interest to Allison Engine Company and UNITED TECHNOLOGIES CORPORATION as Successor in Interest to Pratt & Whitney** states:

1. Plaintiff repeats and realleges previous counts

2. - 4. Plaintiff repeats and realleges Paragraphs 2, 3, and 4 of previous counts.

5. Defendants, through its officers and employees, knew or should have known at least by 1930 that asbestos-containing products which it supplied and which were used extensively throughout the facilities, were a health hazard to people who worked with and around them, and in the alternative, had no positive proof that prolonged exposure to asbestos was safe.

6. Defendants are guilty of one or more of the following acts or omissions amounting to willful and wanton misconduct:

(a) It intentionally or with reckless disregard for the safety of Plaintiff, furnished asbestos-containing products to Plaintiff for use in his duties at the facility;

(b) It intentionally or with reckless disregard for the safety of Plaintiff, failed to warn Plaintiff about the known dangers of asbestos exposure at the facility;

(c)     It intentionally or with a reckless disregard for the safety of Plaintiff, failed to inform Plaintiff of its known potentially hazardous work place as a result of asbestos exposure;

(d)     It intentionally or with reckless disregard for the safety of Plaintiff, failed to replace the hazardous asbestos-containing products with asbestos substitutes which it knew or should have known by 1930 were available;

(e)     It intentionally or with reckless disregard for the safety of Plaintiff, failed to abate or contain the unsafe work environment although it knew or should have known in the 1930s that containment and abatement were available;

(f)     It intentionally or with reckless disregard for the safety of Plaintiff, made Plaintiff work in dangerous areas of the facility knowing that it posed a significant health hazard to people because of the friable and deteriorating condition of asbestos-containing products;

(g)     It intentionally or with reckless disregard for the safety of Plaintiff, failed to restrict Plaintiff from working in dangerous areas of the facility which had been identified as posing a significant health hazard because of the friable or deteriorating condition of asbestos-containing products;

(h)     It intentionally or with reckless disregard for the safety of Plaintiff, failed to provide any or adequate instructions concerning the safe methods of working with and around the products it supplied, including specific instructions on how to avoid inhaling, ingesting or otherwise absorbing the asbestos fibers;

(i)     It intentionally or with reckless disregard for the safety of Plaintiff, failed to provide masks, respirators or other protective apparel to Plaintiff, thereby permitting Plaintiff to work around hazardous asbestos-containing material without protection; and

    (j)    It intentionally or with reckless disregard for the safety of Plaintiff, failed 1) to provide medical examinations (until the 1980s), 2) failed to determine past asbestos exposure of its employees and workers, and 3) failed to identify those trades that came into contact with asbestos-containing products it supplied.

7.    In failing to act on each of these items as listed in Paragraph 6, both individually and collectively, Defendants intentionally or with reckless disregard for the safety of Plaintiff engaged in a course of conduct designed to actively conceal and suppress material facts knowing Plaintiff would rely on those facts to his detriment and cause him bodily harm.

8.    In failing to act on each of these items as listed in Paragraph 6, both individually and collectively, the Defendants, through their silence, intentionally or with reckless disregard for the safety of Plaintiff, engaged in false and deceptive conduct of a material nature, knowing or believing said conduct to be false and doing it for the purpose of inducing Plaintiff to continue to work at its facility, causing him bodily harm. Plaintiff reasonably believed and relied on Defendant's conduct to his detriment.

9.    Plaintiff repeats and realleges Paragraph 10 of Count III as and for Paragraph 9 of this Count VI.

WHEREFORE Plaintiff(s) demand judgment and damages against the Defendant(s), jointly and severally, plus interest, costs, and whatever other further relief this Honorable Court deems right and just.

Respectfully submitted,

KARST & VON OISTE LLP

Douglas von Oiste
CT Bar No.:   406943
Erik P. Karst
TX Bar No.: 24032616
J. Kyle Beale
TX Bar No. 24009892
19500 State Hwy 249, Ste 420
Houston, TX 77070
PHONE: 281-970-9988
FACSIMILE: 281-970-9856
douglas@vonoiste.com
epk@karstvonoiste.com
jkb@karstvonoiste.com

RETURN DATE: 9/27/2011    §   SUPERIOR COURT

           §

JAMES VOLIVA       §   JUDICIAL DISTRICT OF FAIRFIELD AT

           §   BRIDGEPORT

VS.           §

           §

**CURTISS-WRIGHT CORPORATION;** §

**DANA COMPANIES LLC FKA DANA** §

**CORPORATION;** §

**GENERAL ELETRIC COMPANY;** §

**GEORGIA PACIFIC LLC fka Georgia-** §

**Pacific Corporation;** §

**HENKEL CORPORATION as** §

**Successor in Interest to the Dexter** §

**Corporation;** §

**HONEYWELL INTERNATIONAL INC** §

**formerly known as AlliedSignal Inc** §

**successor in interest to The Bendix** §

**Corporation;** §

**IMO INDUSTRIES INC Individually** §

**and as Successor in Interest to** §

**DeLaval Turbine Inc. and Adel;** §

**MINNESOTA MINING AND** §

**MANUFACTURING COMPANY aka** §

**3M COMPANY;** §

**PARKER HANNIFIN CORPORATION;** §

**ROLLS-ROYCE   CORPORATION   as** §

**Successor in Interest to Allison** §

**Engine Company;** §

**THE DOW CHEMICAL COMPANY;** §

**UNION CARBIDE CORPORATION;** §

**UNITED TECHNOLOGIES** §

**CORPORATION as Successor in** §

**Interest to Pratt & Whitney;** §

**VELLUMOID INC;** §

WHEREFORE, the plaintiff, JAMES VOLIVA, claims as to the defendants:

1.   Full, fair, and just money damages;

2.   Punitive and exemplary damages, including attorney's fees;

3.   Statutory punitive damages and reasonable attorney's fees pursuant

   to General Statutes Sections 52-240a and 52-240b (First Count);

4.      Costs of this action.

Respectfully submitted,

KARST & VON OISTE LLP

Douglas von Oiste
CT Bar No.:    406943
Erik P. Karst
TX Bar No.: 24032616
J. Kyle Beale
TX Bar No. 24009892
19500 State Hwy 249, Ste 420
Houston, TX 77070
PHONE: 281-970-9988
FACSIMILE: 281-970-9856
douglas@jvonoiste.com
epk@karstvonoiste.com
jkb@karstvonoiste.com

RETURN DATE: 9/27/2011       §    SUPERIOR COURT

                                           §

JAMES VOLIVA                   §    JUDICIAL DISTRICT OF FAIRFIELD AT

                                           §    BRIDGEPORT

VS.                                     §

                                           §

**CURTISS-WRIGHT CORPORATION;**    §

**DANA COMPANIES LLC FKA DANA**    §

**CORPORATION;**                             §

**GENERAL ELETRIC COMPANY;**       §

**GEORGIA PACIFIC LLC fka Georgia-**    §

**Pacific Corporation;**                   §

**HENKEL CORPORATION as**         §

**Successor in Interest to the Dexter**    §

**Corporation;**                               §

**HONEYWELL INTERNATIONAL INC**    §

**formerly known as AlliedSignal Inc**    §

**successor in interest to The Bendix**    §

**Corporation;**                               §

**IMO INDUSTRIES INC Individually**     §

**and as Successor in Interest to**       §

**DeLaval Turbine Inc. and Adel;**      §

**MINNESOTA MINING AND**          §

**MANUFACTURING COMPANY aka**     §

**3M COMPANY;**                          §

**PARKER HANNIFIN CORPORATION;**    §

**ROLLS-ROYCE CORPORATION as**     §

**Successor in Interest to Allison**      §

**Engine Company;**                   §

**THE DOW CHEMICAL COMPANY;**      §

**UNION CARBIDE CORPORATION;**      §

**UNITED TECHNOLOGIES**           §

**CORPORATION as Successor in**       §

**Interest to Pratt & Whitney;**        §

**VELLUMOID INC;**

The amount of legal interest and property in demand is not less than

$15,000.00, exclusive of interest and costs.

Respectfully submitted,

KARST & VON OISTE LLP

---

Douglas von Oiste
CT Bar No.:   406943
Erik P. Karst
TX Bar No.: 24032616
J. Kyle Beale
TX Bar No. 24009892
19500 State Hwy 249, Ste 420
Houston, TX 77070
PHONE: 281-970-9988
FACSIMILE: 281-970-9856
douglas@vonoiste.com
epk@karstvonoiste.com
jkb@karstvonoiste.com

**COVER SHEET**

**BAL MODEL COMPLAINT**

I.        Plaintiff's name and address:

  JAMES VOLIVA

  5309 Autry Rd., Rocky Mount, North Carolina 27803

Plaintiff's asbestos-related disease(s):

  \_\_\_\_   Pleural plaques or pleural thickening

  \_\_\_\_   Asbestosis (interstitial fibrosis)

  \_\_\_\_   Lung cancer

  \_X\_   Mesothelioma

  \_\_\_\_   Other cancer _____

  \_X\_   Other asbestos-related pathologies

II.       BAL Number:

  \_\_\_\_   BAE   all of Karst & von Oiste LLP's cases

  \_\_\_\_   BA1   Construction trade – multiple exposure sites

IV.      Plaintiff's occupation/trade and years of occupational or other asbestos exposure:

| Occupation | Years |
|---|---|
| **Norfolk Naval Air Station** | **1956-1993** |
| (while at Norfolk Naval Air Station) | |
| Aircraft Engine Mechanic Apprentice | 1956 (4-5 yrs) |
| Aircraft Engine Mechanic | 1960 (4-5 yrs) |
| Quality Control Inspector of Engines | 1965 (2 yrs) |

| | |
|---|---|
| Materials Planner, purchased aircraft Engine materials such as nuts and bolts | 1967 (3 yrs) |
| Maintenance | 1970 (6 mos) |
| Foreman – aircraft engine mechanics | 1971 (4 yrs) |
| Progressman in production control | 1975 (5 yrs) |
| Production Supervisor | 1980 (3-4 yrs) |
| Management Analyst | 1983 (5 yrs) |
| Supervising Management Analyst | 1988 (5 yrs) |

**Pratt & Whitney**

**Allison Engine Company**

V.      Defendants:

**CURTISS-WRIGHT CORPORATION;
DANA COMPANIES LLC FKA DANA CORPORATION;
GENERAL ELETRIC COMPANY;
GEORGIA PACIFIC LLC fka Georgia-Pacific Corporation;
HENKEL CORPORATION as Successor in Interest to the Dexter
Corporation;
HONEYWELL INTERNATIONAL INC formerly known as
AlliedSignal Inc successor in interest to The Bendix Corporation;
IMO INDUSTRIES INC Individually and as Successor in Interest to
DeLaval Turbine Inc. and Adel;
MINNESOTA MINING AND MANUFACTURING COMPANY aka 3M
COMPANY;
PARKER HANNIFIN CORPORATION;
ROLLS-ROYCE CORPORATION as Successor in Interest to Allison
Engine Company;
THE DOW CHEMICAL COMPANY;
UNION CARBIDE CORPORATION;
UNITED TECHNOLOGIES CORPORATION as Successor in Interest
to Pratt & Whitney;
VELLUMOID INC;**

VI.      Applicable counts in Model BAL Complaint:

PRODUCTS LIABIITY (FIRST)

WRONGFUL DEATH (SECOND)

LOSS OF CONSORTIUM (THIRD)

PUNITIVE DAMAGES (FOURTH)

CIVIL CONSPIRACY (FIFTH)

Dated at New Haven, Connecticut this 13th day of September, 2011.

Respectfully submitted,

KARST & VON OISTE LLP

Douglas von Oiste
CT Bar No.:   406943
Erik P. Karst
TX Bar No.: 24032616
J. Kyle Beale
TX Bar No. 24009892
19500 State Hwy 249, Ste 420
Houston, TX 77070
PHONE: 281-970-9988
FACSIMILE: 281-970-9856
douglas@vonoiste.com
epk@karstvonoiste.com
jkb@karstvonoiste.com