(VBKx), DISCOVERY

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## (Western Division - Los Angeles)
## CIVIL DOCKET FOR CASE #: 2:11-cv-09418-SVW-VBK

Katherine Brueggeman v. 3M Company et al
Assigned to: Judge Stephen V. Wilson
Referred to: Magistrate Judge Victor B. Kenton
Case in other court: Superior Court of California, Los
                        Angeles County, BC461201
Cause: 28:1441 Notice of Removal - Asbestos Litigation

Date Filed: 11/14/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Katherine Brueggeman**
*Individually and as successor in interest*
*to David E. Brueggeman, Deceased*

represented by **Eric L Brown**
Deblase Brown Eyerly LLP
10990 Wilshire Boulevard Suite 1060
Los Angeles, CA 90024
310-575-9955
Fax: 310-575-9919
Email: brown@dbelegal.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**3M Company**

**Defendant**

**Aurora Pump Company**

**Defendant**

**AW Chesterton Company**

**Defendant**

**Buffalo Pumps Inc**

**Defendant**

**Calaveras Asbestos Ltd**

**Defendant**

**Carrier Corporation**

**Defendant**

**CBS Corporation**
*formerly known as*

Viacom Inc, successor by merger to
CBS Corporation fka Westinghouse
Electric Corporation

**Defendant**

**Certaineed Corporation**

**Defendant**

**Crane Co**
*individually and as successor in interest*
*to Chapman Valves, Jenkins Valves*
*Inc., and Stockham Valves and Fittings*

**Defendant**

**Crane Pumps and Systems**

**Defendant**

**Deming Pumps**

**Defendant**

**General Electric Company**

**Defendant**

**Grinnell Corporation**

**Defendant**

**Griscom-Russell Company**

**Defendant**

**Hanson Permanente Cement Inc**
*formerly known as*
Kaiser Cement Corporation,
individually and as successor-in-interest
to Kaiser Gypsum Company Inc

**Defendant**

**Hill Brothers Chemical Company**

**Defendant**

**Hopeman Brothers Inc**

**Defendant**

**IMO Industries Inc**
*(individually and as successor in*
*interest to Delaval Turbine Co)*

**Defendant**

**J T Thorpe and Sons Inc**

**Defendant**

**Kaiser Gypsum Company Inc**

**Defendant**

**Kaiser Cement Corporation**
*(individually and/or as successor to
Kaiser Gypsum Company, Inc)*

**Defendant**

**Mechanical Drives and Belting**
*formerly known as*
L A Rubber Company

**Defendant**

**Metropolitan Life Insurance
Company**

**Defendant**

**M Slayen and Associates Inc**

**Defendant**

**Nash Engineering**

**Defendant**

**Parker Haniffin Corporation**
*individually and as successor in interest
to Sacoma Sierra Company*

**Defendant**

**Soco West Inc**
*formerly known as*
Brenntag West, Inc fka Soco-Lynch
Corporation, fka Soco-Western
Chemical Corporation, fka Stinnes-
Western Chemical Corporation

**Defendant**

**Union Carbide Corporation**

**Defendant**

**Viacom Inc**
*as successor in interest by merger to
CBS Corp., and Westinghouse Electric
Corporation*

**Defendant**

**Yarway Corporation**

**Defendant**

**Does**
*1-300*

**<u>Defendant</u>**

**Foster Wheeler Energy Corporation**          represented by   **Edward R Hugo**
*formerly Doe Defendant*                                                      Brydon Hugo and Parker
                                                                                               135 Main Street 20th Floor
                                                                                               San Francisco, CA 94105
                                                                                               415-808-0300
                                                                                               Fax: 415-808-0333
                                                                                               *ATTORNEY TO BE NOTICED*

                                                                                               **Shaghig D Agopian**
                                                                                               Brydon Hugo & Parker
                                                                                               135 Main Street 20th Floor
                                                                                               San Francisco, CA 94105
                                                                                               415-808-0300
                                                                                               Fax: 415-808-0333
                                                                                               Email: sagopian@bhplaw.com
                                                                                               *ATTORNEY TO BE NOTICED*

                                                                                               **Thomas Jeffrey Moses**
                                                                                               Brydon Hugo and Parker
                                                                                               135 Main Street 20th Floor
                                                                                               San Francisco, CA 94105
                                                                                               415-808-0300
                                                                                               Fax: 415-808-0333
                                                                                               Email: tmoses@bhplaw.com
                                                                                               *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/14/2011 | 1 | NOTICE OF REMOVAL from the Superior Court of California, Los Angeles County, case number BC461201 with CONFORMED copies of summons and complaint. Case assigned to Judge Stephen V. Wilson, discovery to Magistrate Judge Victor B Kenton; (Filing fee $ 350 PAID ); filed by defendant Foster Wheeler Energy Corporation.(esa) (Additional attachment(s) added on 11/17/2011: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F-H, # 7 Exhibit I-J, # 8 Exhibit K-M, # 9 Exhibit N-O, # 10 Ntc of Asgmt) (mg). (Additional attachment(s) added on 11/17/2011: # 11 Civil Cover Sheet) (mg). (Entered: 11/16/2011) |
| 11/14/2011 | 2 | DISCLOSURE STATEMENT AND CERTIFICATION AS TO INTERESTED PARTIES filed by defendant Foster Wheeler Energy Corporation identifying Other Affiliate Foster Wheeler LLC for Foster Wheeler Energy Corporation. (esa) (mg). (Entered: 11/16/2011) |
| 11/14/2011 | 3 | NOTICE OF RELATED CASES filed by defendant Foster Wheeler Energy Corporation. Related Case(s): 2:11-CV-6192 PA (AGRx); CV10-9658 DSF (SHx); CV10-2313 MMM (SSx); [SEE DOCUMENT FOR MORE CASES] |

| | | (esa) (mg). (Entered: 11/16/2011) |
|---|---|---|
| 11/14/2011 | 4 | NOTICE OF TAG-ALONG ACTION filed by defendant Foster Wheeler Energy Corporation. (esa) (mg). (Entered: 11/16/2011) |
| 11/14/2011 | 5 | CERTIFICATE OF SERVICE filed by defendant Foster Wheeler Energy Corporation, documents served on 7/27/11. (esa) (Entered: 11/16/2011) |
| 11/18/2011 | 6 | OF SERVICE filed by Defendant Foster Wheeler Energy Corporation, re Corporate Disclosure Statement 2 , Notice of Related Case(s) 3 , Notice of Removal,, 1 , Notice (Other) 4 served on November 14, 2011. (Attachments: # 1 Affidavit Certificate of Service)(Moses, Thomas) (Entered: 11/18/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/18/2011 10:21:27 | | | |
| **PACER Login:** | bh1524 | **Client Code:** | 4801-2550 |
| **Description:** | Docket Report | **Search Criteria:** | 2:11-cv-09418-SVW-VBK End date: 11/18/2011 |
| **Billable Pages:** | 4 | **Cost:** | 0.32 |

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

3M Company, Inc., et al. (see Additional Parties Attachment)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTA DEMANDANDO EL DEMANDANTE):*

KATHERINE BRUEGGEMAN, Individually and as successor in interest to David E. Brueggeman, Deceased,

---

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**CONFORMED COPY**
**OF ORIGINAL FILED**
Los Angeles Superior Court

**MAY 09 2011**

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
SHAUNDA WESLEY

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

The name and address of the court is:
*(El nombre y dirección de la corte es):*

Los Angeles Superior Court - Central District
111 North Hill Street, Los Angeles, CA 90012

**CASE NUMBER:**
*(Número del Caso):*

B C 4 6 7 2 0 1

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Eric L. Brown, Esq., 10990 Wilshire Boulevard, Suite 1060, Los Angeles, CA 90024, Ph: 310-575-9955

---

DATE:                          Clerk, by                              , Deputy
*(Fecha)*                      *(Secretario)*                         *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☑ as the person sued under the fictitious name of *(specify):* POE 4
   FOSTER WHEELER ENERGY CORPORATION
3. ☑ on behalf of *(specify):*

   under: ☑ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

---

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Page 1 of 1

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Brueggeman, et al. vs. 3M Company, Inc., et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

AURORA PUMP COMPANY;
AW CHESTERTON COMPANY;
BUFFALO PUMPS, INC.;
CALAVERAS ASBESTOS, LTD.;
CARRIER CORPORATION;
CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION
F/K/A WESTINGHOUSE ELECTRIC CORPORATION;
CERTAINTEED CORPORATION;
CRANE CO.individually and as successor in interest to Chapman Valves, Jenkins Valves Inc., and
Stockham Valves and Fittings;
Crane Pumps & Systems;
Deming Pumps;
GENERAL ELECTRIC COMPANY;
GRINNELL CORPORATION;
GRISCOM-RUSSELL COMPANY;
HANSON PERMANENTE CEMENT, INC., f/k/a Kaiser Cement Corporation, individually and as
successor-in-interest to Kaiser Gypsum Company, Inc.;
HILL BROTHERS CHEMICAL COMPANY;
HOPEMAN BROTHERS, INC.;
IMO INDUSTRIES, INC. (Individually and as successor in interest to Delaval Turbine Co.;
J.T. THORPE AND SONS, INC.;
Kaiser Gypsum Company, Inc.;
Kaiser Cement Corporation (Individually
and/ or as successor to Kaiser Gypsum Company, Inc. );
MECHANICAL DRIVES & BELTING, f/k/a L.A. Rubber Company;
METROPOLITAN LIFE INSURANCE COMPANY;
M. SLAYEN & ASSOCIATES, INC.;
NASH ENGINEERING;
PARKER HANIFFIN CORPORATION, individually and as successor in interest to
Sacoma Sierra Company;
SOCO WEST, INC., f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical
Corporation, f/k/a Stinnes-Western Chemical Corporation;
UNION CARBIDE CORPORATION;
VIACOM, INC., as successor in interest by merger to CBS Corp., and Westinghouse Electric Corporation;
YARWAY CORPORATION;
and DOES 1-300

Page ___1___ of ___1___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

American LegalNet, Inc.
www.FormsWorkflow.com

1  Patrick DeBlase (167138)
   Eric L. Brown (232887)
2  Michael C. Eyerly (178693)
   Stephen Blackburn (232887)
3  DEBLASE BROWN EYERLY LLP
   10990 Wilshire Boulevard, Suite 1060
4  Los Angeles, California 90024
   Telephone: 310-575-9955
5  Facsimile: 310-575-9919

6

7  Attorneys for Plaintiffs

8

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 09 2011

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Shanye Welby

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF LOS ANGELES

                                           B C 4 6 1 2 0 1

12  KATHERINE BRUEGGEMAN, et al.          )  CASE NO:
                                          )
13                                        )  **DECLARATION OF KATHERINE**
              Plaintiff(s),               )  **BRUEGGEMAN PURSUANT TO**
14                                        )  **CALIFORNIA CODE OF CIVIL**
                                          )  **PROCEDURE 377.32**
15  vs.                                   )
                                          )
16  3M Company, et al.                    )         BY FAX
                                          )
17              Defendants.               )
    _____       )
18                                        )
                                          )
19                                        )

20

21              <u>DECLARATION OF KATHERINE BRUEGGEMAN</u>

22

23  I, KATHERINE BRUEGGEMAN Declare:

24      1.    The Decedent's name is DAVID E. BRUEGGEMAN;

25

26

27                          - 1 -                    C:\Users\jburghs\Documents\Templates\Q dec.wpd

28
    _____

                   Declaration of Katherine Brueggeman

1  Eric Brown, Esq. (229622)
   DEBLASE BROWN EYERLY LLP
2  10990 Wilshire Boulevard, Suite 1060
   Los Angeles, California 90024
3  Telephone: 310-575-9955
   Facsimile: 310-575-9919
4

5  Attorneys for Plaintiffs

6

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 09 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
    SHAUNYA WESLEY

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA

          FOR THE COUNTY OF LOS ANGELES
8

9

10  KATHERINE BRUEGGEMAN, Individually     )   CASE NO.     B C 4 6 1 2 0 1
    and as successor in interest to David E.  )
11  Brueggeman, Deceased,                   )
                                            )
12            Plaintiff,                     )   COMPLAINT FOR WRONGFUL DEATH
                                            )   AND SURVIVAL
13      vs.                                  )
                                            )
14  3M COMPANY;                             )   DEMAND FOR JURY TRIAL
    AURORA PUMP COMPANY;                     )
15  AW CHESTERTON COMPANY;                   )
    BUFFALO PUMPS, INC.;                     )   1.  Negligence
16  CALAVERAS ASBESTOS, LTD.;                )
    CARRIER CORPORATION;                     )   2.  Strict Liability
17  CBS CORPORATION, F/K/A VIACOM,           )
    INC., SUCCESSOR BY MERGER TO CBS         )   3.  Premises Owner/Contractor Liability
18  CORPORATION F/K/A WESTINGHOUSE           )
    ELECTRIC CORPORATION;                    )
19  CERTAINTEED CORPORATION;                 )   [COMPLEX ASBESTOS
    CRANE CO.individually and as successor  )   LITIGATION-SUBJECT
20  in interest to Chapman Valves, Jenkins   )   TO THE GENERAL
    Valves Inc., and Stockham Valves and     )
21  Fittings;                               )   ORDERS CONTAINED
    Crane Pumps & Systems;                   )   IN FILE NO. C700000]
22  Deming Pumps;                            )
    GENERAL ELECTRIC COMPANY;                )
23  GRINNELL CORPORATION;                    )
    GRISCOM-RUSSELL COMPANY;                 )
24  HANSON PERMANENTE CEMENT, INC.,          )
    f/k/a Kaiser Cement Corporation,         )
25  individually and as successor-in-interest to )
    Kaiser Gypsum Company, Inc.;             )
26  HILL BROTHERS CHEMICAL COMPANY;          )
    HOPEMAN BROTHERS, INC.;                  )
27  IMO INDUSTRIES, INC. (individually and   )
    as successor in interest to Delaval Turbine )
28  Co.;                                     )

-1-

1   J.T. THORPE AND SONS, INC.;         )
2   Kaiser Gypsum Company, Inc.;        )
    Kaiser Cement Corporation (Individually   )
3   and/ or as successor to Kaiser Gypsum     )
    Company, Inc. );                   )
4   MECHANICAL DRIVES & BELTING, f/k/a  )
    L.A. Rubber Company;               )
5   METROPOLITAN LIFE INSURANCE        )
    COMPANY;                          )
6   M. SLAYEN & ASSOCIATES, INC.;      )
7   NASH ENGINEERING;                  )
    PARKER HANIFFIN CORPORATION,       )
8   individually and as successor in interest to )
9   Sacoma Sierra Company;             )
    SOCO WEST, INC., f/k/a Brenntag West,     )
10  Inc., f/k/a Soco-Lynch Corporation, f/k/a  )
    Soco-Western Chemical Corporation, f/k/a  )
11  Stinnes-Western Chemical Corporation;   )
12  UNION CARBIDE CORPORATION;         )
    VIACOM, INC., as successor in interest by  )
13  merger to CBS Corp., and Westinghouse   )
    Electric Corporation;              )
14  YARWAY CORPORATION;
15  and DOES 1-300,

16
            Defendants.
17  _____

18

19

20

21       COMES NOW, Plaintiff KATHERINE BRUEGGEMAN, Individually and as successor

22  in interest to David E. Brueggeman, Deceased,("Plaintiff") and for causes of action against

23  Defendants, and each of them, complain and allege as follows:

24

25

26                        **GENERAL ALLEGATIONS**

27       1.      This case is being brought by Plaintiffs as a result of David E. Brueggeman

28  diagnosis and death from lung cancer, an asbestos-related disease caused by exposure to

    asbestos.  Throughout this complaint use of the term "Plaintiffs" shall mean KATHERINE

                                  -2-

1  BRUEGGEMAN, Individually and as successor in interest to David E. Brueggeman,

2  Deceased, The term "Decedent" shall refer to David E. Brueggeman, Deceased.

3        2.     Asbestos litigation has long been designated complex in Los Angeles County

4  for several historical reasons, including the number of parties, the length, duration and

5  complexity of anticipated deposition testimony of fact, lay and expert witnesses, the

6  wide-ranging medical issues that may or may not be involved, the complexity of industrial

7  hygiene and governmental regulations that may or may not be involved, and the

8  anticipated proportionate amount of economic, non-economic and punitive damages

9  sought for Decedent's death and the loss of consortium for plaintiffs.

10        3.     The average life expectancy of a patient diagnosed with a severe

11  asbestos-related disease (mesothelioma and/or lung cancer) is extremely short.  Some

12  patients diagnosed with such disease only live weeks or months following their diagnosis.

13  Further, as their diseases progress, their prognosis slowly worsens such that their ability to

14  participate in trial may diminish drastically.  Often, plaintiffs in these cases must present

15  videotaped deposition testimony taken at the outset of their cases, as their medical

16  condition has worsened so severely that even traveling a few miles to the courthouse is

17  impossible.  Plaintiffs in such cases routinely bring motions for trial preference and often

18  stipulate to expedited and/or shortened time periods for responsive pleadings in order to

19  permit the granting of trial dates in less than 120 days.

20

21        4.     In this matter, Decedent David E. Brueggeman died from lung cancer on or

22  about May 11, 2010.  Because of Decedent's work history, and the numerous asbestos

23  products to which he is alleged to have been exposed, Plaintiffs have named numerous

24  manufacturers of asbestos products, premises owners, contractors, and suppliers of

25  asbestos products and fibers as Defendants.

26        5.     The true names and/or capacities, whether individual, corporate, associate,

27  governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown

28  to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and

when the true names and capacities of said Defendants have been ascertained, Plaintiffs

-3-

1   will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon

2   allege that each Defendant designated herein as a DOE is responsible, negligently or in

3   some other actionable manner, for the events and happenings hereinafter referred to, and

4   caused injuries and damages proximately thereby to Decedent, as hereinafter alleged,

5   either through said Defendant's own conduct or through the conduct of its agents, servants

6   or employees, or due to the ownership, lease or sale of the instrumentality causing the

7   injury, or in some other manner.

8         6.       Plaintiffs are informed and believe, and thereon allege that at all times

9   mentioned herein, Defendants, and each of them, were the agents, servants, employees

10  and/or joint venturers of their co-Defendants and were, as such, acting within the scope,

11  course, and authority of said agency, employment and/or joint venture, in that each and

12  every Defendant, as aforesaid, when acting as a principal, was negligent in the selection

13  and hiring or each and every other Defendant as the agent, servant, employee and/or joint

14  venturer.

15        7.       Decedent was a California resident during a substantial period of his

16  asbestos exposures, upon which Plaintiffs claims are based.  Plaintiffs currently reside in

17  Georgia.

18

19        8.       Plaintiffs are informed and believe, and thereon allege, that at all times

20  mentioned herein, Defendants; 3M COMPANY; AURORA PUMP COMPANY;

21  AW CHESTERTON COMPANY; BUFFALO PUMPS, INC.; CALAVERAS ASBESTOS,

22  LTD.;CARRIER CORPORATION; CBS CORPORATION, F/K/A VIACOM, INC.,

23  SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE

24  ELECTRIC CORPORATION; CERTAINTEED CORPORATION; CRANE CO. individually

25  and as successor in interest to Chapman Valves, Jenkins Valves Inc., and Stockham

26  Valves and Fittings; Crane Pumps & Systems; Deming Pumps ;GENERAL ELECTRIC

27  COMPANY; GRINNELL CORPORATION; GRISCOM-RUSSELL COMPANY; HANSON

28  PERMANENTE CEMENT, INC., f/k/a Kaiser Cement Corporation, individually and as

-4-

successor-in-interest to Kaiser Gypsum Company, Inc.;HILL BROTHERS CHEMICAL

COMPANY; HOPEMAN BROTHERS, INC.; IMO INDUSTRIES, INC. (Individually and as

successor in interest to Delaval Turbine Co.; J.T. THORPE AND SONS, INC.;

Kaiser Gypsum Company, Inc.;Kaiser Cement Corporation (Individually and/ or as

successor to Kaiser Gypsum Company, Inc. );MECHANICAL DRIVES & BELTING, f/k/a

L.A. Rubber Company; METROPOLITAN LIFE INSURANCE COMPANY; M. SLAYEN &

ASSOCIATES, INC.; NASH ENGINEERING; PARKER HANIFFIN CORPORATION,

individually and as successor in interest to Sacoma Sierra Company; SOCO WEST, INC.,

f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical

Corporation, f/k/a Stinnes-Western Chemical Corporation; UNION CARBIDE

CORPORATION; VIACOM, INC., as successor in interest by merger to CBS Corp., and

Westinghouse Electric Corporation; YARWAY CORPORATION; and DOES 1-300,

inclusive, are corporations organized and existing under and by virtue of the laws of the

State of California, or the laws of some other state of the United States of America, or some

foreign jurisdiction, and that said Defendants were authorized to do and are doing business

in the State of California, and that said Defendants have regularly conducted business in

the State of California.

1.      At all times mentioned above, Defendants, and each of them, were engaged

in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

advertising a certain substance, the generic name of which is asbestos, and other products

containing said substance.

2.      Decedent was exposed to Defendants' asbestos and asbestos containing

products contributing to and causing the development of lung cancer. Decedent was

exposed to Defendants' asbestos and asbestos containing products, including but not

limited to, through his work in the US Navy as a machinist, through remodel work, and

through his work as a machinist at National Steel & Shipbuilding. Decedent suffered from

-5-

1  lung cancer and each of Defendants' asbestos and asbestos containing products that
2  entered his body was a substantial factor in bringing about, prolonging, or aggravating
3  Decedent's lung cancer. The asbestos and asbestos containing products Decedent was
4  exposed to were manufactured or supplied by a named Defendant and DOES 1-300.

5      3.     Federal Courts lack jurisdiction over this action; removal is therefore improper.
6  Specifically, removal based on diversity jurisdiction is unavailing due to the presence of a
7  Defendant that resides in California.  In addition, no claim of admiralty or maritime law is
8  raised, Plaintiffs sue no foreign state or agency, and Defendants lack a colorable federal
9  defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1).  Venue is proper in
10 Los Angeles County, Superior Court of California.

11
## FIRST CAUSE OF ACTION
12
13                        (Negligence)
14
                  (As Against all Defendants)
15
16      4.     Plaintiffs hereby incorporate by reference, as though fully set forth herein,
    each and every allegation contained in each paragraph above.
17
18      5.     At all times herein mentioned, each of the named Defendants and DOES 1
19 through 300 was the successor, successor in business, successor in product line or a
20 portion thereof, assign, predecessor, predecessor in business, predecessor in product line
21 or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial
22 owner of or member in an entity researching, studying, manufacturing, fabricating,
23 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
24 supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
25 marketing, warranting, re-branding, manufacturing for others, packaging and advertising as
26 certain product, namely asbestos, and other products containing asbestos. Said entities
27 shall hereinafter collectively be called "Alternate Entities." Each of the herein named
28 Defendants is liable for the tortious conduct of each successor, successor in business,

1   successor in product line or a portion thereof, assign, predecessor in product line or a
2   portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity,
3   or entity that it was a member of, or funded, that researched, studied, manufactured,
4   fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for
5   sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
6   marketed, warranted, re-branded, manufactured for others and advertised a certain product,
7   namely asbestos, and other products containing asbestos. The following Defendants, and
8   each of them, are liable for the acts of each and every "Alternate Entity," in that there has
9   been a virtual destruction of Plaintiff's remedies against each such "Alternate Entity;"
10  Defendants, and each of them, have acquired the assets, product line, or a portion thereof,
11  of each such "Alternate Entity;" Defendants, and each of them, caused the destruction of
12  Plaintiff's remedies against each such "Alternate Entity;" each such Defendant has the
13  ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such
14  Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

15

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION; |
| MECHANICAL DRIVES & BELTING | f/k/a L.A. Rubber Company |
| SOCO WEST, INC. | F/K/A Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western Chemical Corporation |

28      6.      Defendants, their "Alternate Entities," and each of them had a duty to use

1  reasonable care in manufacturing their products and to warn the customer, user, or
2  bystander that their products were dangerous and unsafe. At all times mentioned herein,
3  Defendants, their "Alternate Entities," and each of them negligently and carelessly
4  researched, tested or failed to test, manufactured, designed, developed, distributed,
5  labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified,
6  serviced, used, and sold a certain substance, the generic name of which is asbestos, and
7  other products containing said substance, in that said substance was capable of causing
8  and did, in fact, proximately cause

9  personal injuries to users and consumers thereof while being used in manner reasonably
10 foreseeable, thereby rendering said substance unsafe and dangerous for use by the
11 consumer, users, or bystanders thereof, and others to whom Defendants owe a duty,
12 including Decedent.

13        7.     Decedent is a worker who, for a substantial length of time, used, handled, and
14 was otherwise exposed to Defendants' asbestos and asbestos products, in a manner that
15 was reasonably foreseeable, while he was working as described in Paragraph 10 above.
16
17        8.     As a direct and proximate result of the above-referenced conduct of the
18 Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to said
19 asbestos caused severe and permanent injury to Decedent's lungs and body, including, but
20 not limited to the disease lung cancer.

21        9.     On or about May 11, 2010, Decedent died from lung cancer. Prior to that date,
22 Decedent, who retired for reasons not related to his asbestos-related disease, did not know,
23 nor did he have reason to know, that he had contracted this disease related to his exposure
24 to asbestos. Prior to said date, Decedent was not aware that exposure to asbestos
25 presented any risk of injury and/or disease to him, and had not been advised or informed by
26 anyone that he could contract, nor indeed did contract, any disease, sickness or injury as a
27 result of working in the vicinity of asbestos.

28        10.    Plaintiffs are informed and believe, and thereupon allege, that lung cancer is a

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

1  vicious, painful and often fatal malignancy of the lung, and that said disease results from
2  exposure to asbestos and asbestos products over a period of time.

3      11.    As a direct and proximate result of the aforesaid conduct of the Defendants,
4  their "Alternate Entities," and each of them Decedent has suffered, severe and permanent
5  injuries to his person, body and health, including, but not limited to, the disease lung cancer,
6  all to his general damage in a sum within the jurisdictional limits of this court.

7      12.    As a direct and proximate result of the aforesaid conduct of the Defendants,
8  their "Alternate Entities," and each of them Decedent was compelled to and did employ the
9  services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat
10  Plaintiff, and did incur medical, hospital and professional incidental expenses, and Plaintiffs
11  are informed and believe and thereupon allege that by reason of said injuries, Plaintiffs will
12  necessarily incur additional like expenses for an indefinite period of time in the future, and
13  when said amounts are ascertained, Plaintiffs will allege said amounts.

14
15      13.    At all times herein mentioned, Defendants, their "Alternate Entities," and each
16  of them were aware that the original gaskets and packing supplied with their equipment
17  would need to be removed and replaced with new gaskets and packing during ordinary
18  operation and maintenance of their equipment. Heat and pressure generated by operation
19  would affect the original and replacement gaskets and packing - e.g., making them brittle,
20  friable and not reusable, making replacement necessary and dangerous. It was foreseeable
21  that the process of removing old gaskets and packing, and replacing them with the new
22  materials during ordinary maintenance operations would cause the disturbance of asbestos
23  and/or asbestos containing materials, releasing asbestos into the air. It was also
24  foreseeable that Defendant's equipment needed to be insulated with asbestos containing
25  thermal insulation materials and that the negligent design of Defendants' equipment through
26  its ordinary operation caused the degradation of asbestos containing thermal insulation and
27  the foreseeable removal of these insulation materials and application of new insulation
28  materials, which would cause the disturbance of asbestos and/or asbestos containing

1  materials, releasing asbestos into the air.

2      14.    On or before 1930, the Defendants, their "Alternate Entities," and each of
3  them, have known and have possessed the true facts of medical and scientific data and
4  other knowledge which clearly indicated that asbestos and asbestos-containing products
5  were and are hazardous to the health and safety of Decedent, and others in Decedent's
6  position working in close proximity with such materials.  Specifically, Defendants, their
7  "Alternate Entities," and each of them, knew, or had a duty to know, the following
8  information:

9      (a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on*
10      *the Lung* (London: H.M. Stationary Office) put manufacturers, designers, distributors,
11
12      marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and
13

14  advertisers of asbestos and asbestos containing products on notice that exposure to
15  asbestos dust can cause pulmonary fibrosis in exposed individuals and discussed
16  processes by which asbestos dust is generated and methods for dust suppression.  As
17  such, at least as of 1930, Defendants, their "Alternate Entities," and each of them, knew or
18  had the duty to know that exposure to asbestos dust could cause a debilitating potentially
19  lethal disease, that there was a dose-response relationship between the level of asbestos
20  exposure and risk of contracting disease,  and that disease prevention requires the
21  suppression or elimination of asbestos containing dust.  In 1933, E.R.A. Merewether's
22  *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed
23  Defendants, their "Alternate Entities," and each of them, that exposure to asbestos
24  containing dust for a period of less than 5 years can cause the lung disease asbestosis,
25  which can be deadly.

26      (b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J. Ind.
27      Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers,
28      suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of

asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death. As such, at least as of 1955, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause lung cancer, a potentially lethal disease.

(c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural Lung cancer and Asbestos Exposure in the North Western Cape Province* (Br. J. Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death. The article confirmed a causal association between asbestos exposure and lung cancer, and noted that even low-level, non-occupational exposures to asbestos can cause lung cancer. As such, at least as of 1960, Defendants, their "Alternate Entities," and each of them, knew or had the duty to

know that exposure to asbestos dust could cause lung cancer, a lethal form of cancer, in those directly exposed to asbestos containing dust as well as those secondarily exposed in a residential setting.

15.     With intent to deceive Decedent, and others in Decedent's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain financial, business, and other advantages, the following acts occurred:

(a) Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos and asbestos containing materials and products with information regarding the hazards of such materials and products to the health and

safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Decedent's employer and others without advising Decedent and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Decedent that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to such materials;

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Decedent medical and scientific data and knowledge of the contents of the Lanza

-12-

1  report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of
2  them influenced A.J. Lanza to change his report, the altered version of which was published
3  in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and
4  others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each
5  of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention
6  of danger, thereby lessening the probability of notice of danger to users thereof;

7      (e) Defendants, their "Alternate Entities," and each of them, belonged to, participated
8  in, and financially supported the Asbestos Textile Institute and other industry
9  organizations which, for and on behalf of Defendants, their "Alternate Entities," and
10  each of them, actively promoted the suppression of information of danger to users of
11  the aforementioned products and materials, thereby misleading Decedent by the
12  suggestions and deceptions set forth above in this cause of action. The Dust Control
13  Committee, which changed its name to the Air Hygiene Committee, of the Asbestos
14  Textile Institute was specifically enlisted to study the subject of dust control.
15  Discussions in this committee were held many times regarding the dangers inherent
16  in asbestos and the dangers which arise from the lack of control of dust, and such
17  information was suppressed from public dissemination from 1946 to a date unknown
18  to Decedent at this time;

19  (f) Commencing in 1930 with the study of mine and mill workers at Asbestos and
20  Thetford mines in Quebec, Canada, and the study of workers at
21  Raybestos-Manhattan plants in Manheim and Charleston, South Carolina,
22  Defendants, their "Alternate Entities," and each of them, knew and possessed
23  medical and scientific information of the connection between inhalation of asbestos
24  fibers and asbestosis, which information was disseminated through the Asbestos
25  Textile Institute and other industry organizations to all other Defendants, their
26  "Alternate Entities," and each of them, herein. Between 1942 and 1950, the
27  Defendants, their "Alternate Entities," and each of them suggested to the public as a
28  fact that which is not true and disseminated other facts likely to mislead Decedent.

-13-

1   Such facts did mislead Decedent and others by withholding the afore-described

2   medical and scientific data and other knowledge and by not giving Decedent the true

3   facts concerning such knowledge of danger, which Defendants, their "Alternate

4   Entities," and each of them, were bound to disclose;

5   (g) Defendants, their "Alternate Entities," and each of them, failed to warn Decedent

6   and others of the nature of asbestos and asbestos containing materials which were

7   dangerous when breathed and which could cause pathological effects without

8   noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and

9   each of them, possessed knowledge and were under a duty to disclose that said

10  materials were dangerous and a threat to the health of persons coming into contact

11  therewith;

12  (h) Defendants, their "Alternate Entities," and each of them, failed to provide

13  Decedent with information concerning adequate protective masks and other

14  equipment devised to be used when applying and installing the products of the

15  Defendants, and each of them, despite knowing that such protective measures were

16  necessary, and that they were under a duty to disclose that such materials were

17  dangerous and would result in injury to the Decedent and others applying and

18  installing such material;

19  (i) Defendants, their "Alternate Entities," and each of them, when under a duty to so

20  disclose, concealed from Decedent the true nature of the industrial exposure of

21  Decedent and knew that Decedent and anyone similarly situated, upon inhalation of

22  asbestos would, in time, develop irreversible conditions of pneumoconiosis,

23  asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them,

24  also concealed from Decedent and others that harmful materials to which they were

25  exposed would cause pathological effects without noticeable trauma;

26

27  (j) Defendants, their "Alternate Entities," and each of them, failed to provide

28  information of the true nature of the hazards of asbestos and asbestos containing

-14-

materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Decedent and Decedent's employers so that said physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k) Defendants, their "Alternate Entities," and each of them, failed to provide adequate information to physicians and surgeons retained by Decedent's employers and their predecessor companies, for purposes of making physical examinations of Decedent and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

16.    On or before 1930, and thereafter, said Defendants, their "Alternate Entities," and each of them were aware that users of asbestos and asbestos containing products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said Defendants, their "Alternate Entities," and each of them, knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

17.    With said knowledge, said Defendants, their "Alternate Entities," and each of them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products without attempting to protect or warn users or bystanders about the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from

1 exposure to asbestos and asbestos products, Defendants, their "Alternate Entities," and
2 each of them intentionally failed to reveal their knowledge of said risk, fraudulently,
3 consciously and actively concealed and suppressed said knowledge from members of the
4 general public that asbestos and asbestos products were unsafe for all reasonably
5 foreseeable use, with the knowledge of the falsity of said implied representations.

6      18.    Despite the above referenced historical knowledge of said Defendants, their
7 "Alternate Entities," and each of them, concerning the extreme hazards of asbestos,
8 Defendants negligently, carelessly, and with a willful and conscious disregard of the rights
9 and safety of others failed to adequately test, research, label, design, distribute, sell,
10 inspect, repair, use, modify or advertise their asbestos and asbestos containing products in
11 an effort to reduce or eliminate the potential that their products would cause deadly
12 diseases in users, bystanders, and other exposed individuals.

13      19.    The above referenced conduct of said Defendants, their "Alternate Entities,"
14 and each of them was motivated by the financial interest of said Defendants in the
15 continuing, uninterrupted distribution and marketing of asbestos and asbestos containing
16 products. In pursuance of said financial motivation, said Defendants consciously
17 disregarded the safety of the users of, and persons exposed to, asbestos and asbestos
18 containing products, and were in fact consciously willing to permit asbestos and asbestos
19 containing products to cause injury to workers and users thereof, and persons exposed
20 thereto, including Decedent.
21
22      20.    An officer, director, or managing agent of Defendants, their "Alternate
23 Entities," and each of them, with advance knowledge of the extreme health hazard posed
24 by asbestos and asbestos containing products, did, with conscious disregard for the rights
25 and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify
26 such acts, including but not limited to Defendants' failure to adequately research, test, or
27 label their asbestos or asbestos-containing products and Defendants' attendant willingness
28 to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,

1  package, use, and advertise asbestos and asbestos containing products then known by
2  Defendants to be hazardous to human health.  As such, an officer, director, or managing
3  agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified
4  Defendants' failure to take reasonable and necessary efforts to reduce or eliminate the
5  potential that the asbestos and asbestos containing products Defendants manufactured,
6  designed, distributed, used, marketed, sold, supplied, installed, inspected, repaired,
7  packaged, used and advertised would cause deadly diseases, such as lung cancer, in
8  users, bystanders, and other exposed individuals.

9      21.    The above-referenced conduct of said Defendants, their "Alternate Entities,"
10  and each of them was and is willful, malicious, outrageous and/or in conscious disregard
11  and indifference to the rights and safety of users of said asbestos and asbestos containing
12  products, including Decedent. Defendants, their "Alternate Entities," and each of them are
13  guilty of oppression, fraud, or malice and engaged in conduct which was intended by the
14  Defendants to cause injury to the Decedent or conduct which was carried on by the
15  Defendants with a willful and conscious disregard of the rights and safety of others.
16  Defendants, their "Alternate Entities," and each of them subjected Decedent to cruel and
17  unjust hardship in conscious disregard of his rights and engaged in intentional
18  misrepresentation, deceit, or concealment of a material fact known to the Defendants with
19  the intention on the part of the Defendants of thereby depriving Decedent of property or
20  legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by
21  way of punishing Defendants, seek punitive damages, according to proof.

22
23
24                          **SECOND CAUSE OF ACTION**
25                                 (Strict Liability)
26                           (As Against all Defendants)
27      22.    Plaintiffs hereby incorporates by reference, as though fully set forth herein,
28  each and every allegation contained in each of the paragraphs above.

-17-

23. At all times mentioned herein, Defendants, their "Alternate Entities," and each of them researched, manufactured, tested or failed to test, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering such asbestos and asbestos containing products unsafe and dangerous for use by users, consumers, and bystanders.

24. As a direct and proximate result of the above described conduct by Defendants, their "Alternate Entities," and each of them, Decedent suffered severe and permanent injuries to his person, as alleged hereinabove.

25. At all times mentioned herein, the asbestos and products containing said substance discussed above failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the risk of danger inherent in asbestos and asbestos containing products outweighs the benefits of said substance and products.

26. At all times mentioned herein, the foreseeable use of the asbestos and products containing said substance discussed above involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, their "Alternate Entities," and each of them, and Defendants failed to

adequately warn of the substantial danger.

27. As a direct and proximate result of the above described conduct by Defendants, their "alternate entities," and each of them, Decedent suffered severe and permanent injuries to his person, as alleged hereinabove.

-18-

28.     An officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, with advance knowledge of the extreme health hazard posed by asbestos and asbestos containing products, did, with conscious disregard for the rights and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify such acts, including but not limited to Defendants' failure to adequately research, test, or label their asbestos or asbestos-containing products and Defendants' attendant willingness to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products then known by Defendants to be hazardous to human health.  As such, an officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take reasonable and necessary efforts to address the design and manufacturing defects in the asbestos and asbestos containing products that Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected, repaired, packaged, used and advertised.

29.     The above-referenced conduct of said Defendants, their "Alternate Entities," and each of them was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent. Defendants, their "Alternate Entities," and each of them are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Decedent or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Defendants, their "Alternate Entities," and each of them subjected Decedent to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Decedent of property or legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by way of punishing Defendants, seek punitive damages, according to proof.

-19-

## THIRD CAUSE OF ACTION

### (Premises Owner/Contractor Liability)

### (As Against All Defendants.; and DOES 1-300)

30.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each of the above.

31.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, owned, leased, maintained, managed, and/or controlled the premises at which Decedent was exposed to asbestos and asbestos containing products.

32.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and asbestos containing products to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on their respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe condition to Decedent and other persons exposed to said asbestos fibers while present at said premises.

33.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Decedent and other workers or persons so exposed present on each of the aforesaid respective premises.

34.     At all times relevant herein, Decedent entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Decedent was exposed to dangerous quantities of asbestos fibers released into the ambient

-20-

1  air by the aforesaid hazardous conditions and activities managed, maintained, initiated,

2  and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability

3  Defendants, their "Alternate Entities," and each of them.

4      35.    Decedent at all times was unaware of the hazardous condition or the risk of

5  personal injury created by the aforesaid presence and use of asbestos products and

6  materials on said premises.

7      36.    At all times mentioned herein, said Premises Owner/Contractor Liability

8  Defendants, their "Alternate Entities," and each of them, remained in control of the premises

9  where Decedent was performing his work.

10

11      37.    At all times mentioned herein, the Premises Owner/Contractor Liability

12  Defendants, their "Alternate Entities," and each of them, owed to Decedent and others

13  similarly situated a duty to exercise ordinary care in the management of such premises in

14  order to avoid exposing workers such as Decedent to an unreasonable risk of harm and to

15  avoid causing injury to said person.

16      38.    At all times mentioned herein, said Premises Owner/Contractor Liability

17  Defendants, their "Alternate Entities," and each of them, negligently failed to maintain,

18  manage, inspect, survey, or control said premises or to abate or correct, or to warn

19  Decedent of the existence of the aforesaid dangerous conditions and hazards on said

20  premises.

21      39.    At all times mentioned herein, said Premises Owner/Contractor Liability

22  Defendants, their "Alternate Entities," and each of them, should have recognized that the

23  work of said contractors, identified above in Paragraph 40, would create during the progress

24  of the work, dangerous, hazardous, and unsafe conditions which could or would harm

25  Decedent and others unless special precautions were taken.

26      40.    In part, Decedent was exposed to dangerous quantities of asbestos fibers by

27  reason of such contractors' failure to take necessary precautions.

28      41.    The work of contractors on premises controlled by the Premises

-21-

1   Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

2   reason of the release of dangerous quantities of asbestos fibers.

3       42.     The unsafe premise or work place was created, in part, by the negligent

4   conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said

5   negligent conduct includes but is not limited to:

6           (a) Failure to warn about the hazards of asbestos dusts;

7

8           (b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust

9           into the premises;

10          (c) Failure to remove asbestos containing dust on the premises through the use of

11          ventilation or appropriate means;

12          (d) Failure to provide adequate breathing protection, i.e., approved respirators or

13          masks to those exposed to the release of asbestos dust;

14          (e) Failure to inspect and/or test the air for the presence of asbestos fibers;

15

16          (f) Failure to provide medical monitoring to those exposed to asbestos dust.

17      43.     The Premises Owner/Contractor Defendants' duty to maintain and provide

18   safe premises, a safe place to work, and to warn of dangerous conditions are

19   non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code

20   §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated

21   thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any

22   breach of said duties whether by themselves or others.

23      44.     Prior to and at said times and places, said Premises Owner/Contractor

24   Liability Defendants, their "Alternate Entities," and each of them were subject to certain

25   ordinances,

26   statutes, and other government regulations promulgated by the United States

27   Government, the State of California, and others, including but not limited to the General

28   Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the

-22-

California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

(a) Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b) Failing to segregate work involving the release of asbestos dusts;

(c) Failing to suppress asbestos dust using prescribed ventilation techniques;

(d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

(e) Failing to warn or educate Decedent or others regarding asbestos on the premises;

(f) Failing to provide approved respiratory protection devices;

(g) Failing to ensure "approved" respiratory protection devices were used properly;

(h) Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i) Failing to provide adequate housekeeping and clean-up of the work place;

(j) Failing to properly warn of the hazards associated with asbestos as required by

statute;

(k) Failing to properly report renovation and disturbance of asbestos containing materials;

(l) Failing to have an asbestos removal supervisor as required by regulation;

(m) Failing to get approval for renovation as required by statutes; and

(n) Failing to maintain records as required by statute.

45.     Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, were the "statutory employer" of Decedent as defined by the California Labor Code and California case law.

46.     Decedent at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances, or statutes.

47.     At all times mentioned herein, Decedent was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

48.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

49.     As a legal consequence of the foregoing, Decedent developed the asbestos-related disease lung cancer, which has caused great injury and disability as previously set forth, and Decedent has suffered damages as herein alleged.

50.     An officer, director, or managing agent of Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, with advance knowledge of the

-24-

1    extreme health hazard posed by asbestos and asbestos containing products, did, with

2    conscious disregard for the rights and safety of others, commit an act of oppression, fraud,

3    or malice, or did authorize or ratify such acts, including but not limited to Defendants'

4    failure to provide workers with an adequately safe work environment and Defendants'

5    attendant willingness to continue to construct, instal, maintain, use, supply, replace, repair

6    and/or remove asbestos and asbestos containing products, thereby generating airborne

7    asbestos dust to which Decedent was exposed.  As such, an officer, director, or managing

8    agent of Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and

9    each of them, authorized or ratified Defendants' failure to take reasonable and necessary

10    efforts to ensure that workers such as Decedent were not exposed to toxic asbestos dust

11    on their premises.

12        51.     The above-referenced conduct of said Premises Owner/Contractor Liability

13    Defendants, their "Alternate Entities," and each of them, was and is willful, malicious,

14    outrageous and/or in conscious disregard and indifference to the rights and safety of users

15    of said asbestos and asbestos containing products, including Decedent. Premises

16    Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, are

17    guilty of oppression, fraud, or malice and engaged in conduct which was intended by the

18    Defendants to cause injury to the Decedent or conduct which was carried on by the

19    Defendants with a willful and conscious disregard of the rights and safety of others.

20    Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of

21    them, subjected Decedent to cruel and unjust hardship in conscious disregard of his rights

22    and engaged in intentional misrepresentation, deceit, or concealment of a material fact

23    known to the Defendants with the intention on the part of the Defendants of thereby

24    depriving Decedent of property or legal rights or otherwise causing injury. Plaintiffs

25    therefore, for the sake of example and by way of punishing Defendants, seek punitive

26    damages, according to proof.

27

28

1   WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in
2   an amount to be proven at trial in each individual case, as follows:

3       1. General damages, according to proof;

4       2. Damages for medical and related expenses, according to proof;
5

6       3. Damages for loss of earning capacity, according to proof;

7       4. Damages for loss of earnings, according to proof;

8       5. Damages for Plaintiffs' other economic losses, according to proof;

9       6. Exemplary or punitive damages, according to proof;
10
        7. Prejudgment interest, according to proof;
11
12      8. Costs of suit incurred herein; and

13      9. Such other and further relief as this Court may deem just and proper, including

14  costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related

15  provisions of law.

16

17  DATED: May 9, 2011          DEBLASE BROWN EYERLY LLP
18
19
20                      By: _____
21                              Eric L. Brown, Esq.
22                              Attorneys for Plaintiffs

23
24
25
26
27
28

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL