ADRMOP

**U.S. District Court**
**California Northern District (Oakland)**
**CIVIL DOCKET FOR CASE #: 4:11-cv-05597-SBA**

Shelly v. Asbestos Corporation Limited et al
Assigned to: Hon. Saundra Brown Armstrong
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 11/18/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Dale M. Shelly**                              represented by   **David R. Donadio**
                                                               Brayton Purcell LLP
                                                               222 Rush Landing Road
                                                               PO Box 6169
                                                               Novato, CA 94948-6169
                                                               415-898-1555
                                                               Fax: 415-898-1247
                                                               Email: DDonadio@braytonlaw.com
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Alan R. Brayton**
                                                               Brayton Purcell LLP
                                                               222 Rush Landing Road
                                                               PO Box 6169
                                                               Novato, CA 94948-6169
                                                               415-898-1555
                                                               Fax: 415-898-1247
                                                               *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Asbestos Corporation Limited**

**Defendant**

**Owens-Illinois, Inc.**

**Defendant**

**Parker-Hannifin Corporation**

**Defendant**

**Crown Cork & Seal Company, Inc.**

**Defendant**

**Hopeman Brothers, Inc.**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**General Electric Company**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**Crane Co.**

**Defendant**

**IMO Industries, Inc.**

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**Metropolitan Life Insurance Company**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

| Date Filed | # | Docket Text |
|---|---|---|
| 11/18/2011 | 6 | Declination to Proceed Before a U.S. Magistrate Judge, filed by Dale M. Shelly. (jlm, COURT STAFF) (Filed on 11/18/2011) (Entered: 11/23/2011) |
| 11/18/2011 | 5 | NOTICE of Tag-Along Action, filed by Dale M. Shelly (jlm, COURT STAFF) (Filed on 11/18/2011) (Entered: 11/23/2011) |
| 11/18/2011 | 4 | Certificate of Interested Entities, filed by Dale M. Shelly (jlm, COURT STAFF) (Filed on 11/18/2011) (Entered: 11/23/2011) |
| 11/18/2011 | 3 | Summons Issued as to Asbestos Corporation Limited, CBS Corporation, Crane Co., Crown Cork & Seal Company, Inc., Foster Wheeler LLC, General Electric Company, Hopeman Brothers, Inc., Huntington Ingalls Incorporated, IMO Industries, Inc., Ingersoll-Rand Company, Metropolitan Life Insurance Company, Owens-Illinois, Inc., Parker-Hannifin Corporation. (jlm, COURT STAFF) (Filed on 11/18/2011) (Entered: 11/23/2011) |
| 11/18/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 2/22/2012. Case Management Conference set for 2/29/2012 03:00 PM. (Attachments: # 1 Standing Order - SBA)(jlm, COURT STAFF) (Filed on 11/18/2011) (Entered: 11/23/2011) |
| 11/18/2011 | 1 | COMPLAINT with Jury Demand, against Asbestos Corporation Limited, CBS Corporation, Crane Co., Crown Cork & Seal Company, Inc., Foster Wheeler LLC, General Electric Company, Hopeman Brothers, Inc., Huntington Ingalls Incorporated, IMO Industries, Inc., Ingersoll-Rand Company, Metropolitan Life Insurance Company, Owens-Illinois, Inc., Parker-Hannifin Corporation ( Filing fee $ 350, receipt number 34611067145.). Filed by Dale M. Shelly. (Attachments: # 1 Civil Cover Sheet)(jlm, COURT STAFF) (Filed on 11/18/2011) (Entered: 11/23/2011) |

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 11/28/2011 11:15:00 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:11-cv-05597-SBA |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |



1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiff

7

8              **UNITED STATES DISTRICT COURT**            **SBA**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                **SAN FRANCISCO DIVISION**
                                                        **5597**
11  DALE M. SHELLY,                        No.

12         Plaintiff,
                                     )     COMPLAINT FOR ASBESTOS
13  vs.                              )     PERSONAL INJURY/ PRODUCTS
                                     )     LIABILITY; DEMAND FOR JURY TRIAL
14  ASBESTOS CORPORATION LIMITED;    )
    OWENS-ILLINOIS, INC.; PARKER-    )
15  HANNIFIN CORPORATION; CROWN      )
    CORK & SEAL COMPANY, INC.;       )
16  HOPEMAN BROTHERS, INC.; CBS      )
    CORPORATION (FKA VIACOM INC.,    )
17  FKA WESTINGHOUSE ELECTRIC        )
    CORPORATION); GENERAL            )
18  ELECTRIC COMPANY; FOSTER         )
    WHEELER LLC (FKA FOSTER          )
19  WHEELER CORPORATION); CRANE      )
    CO.; IMO INDUSTRIES, INC.;       )
20  INGERSOLL-RAND COMPANY;          )
    METROPOLITAN LIFE INSURANCE      )
21  COMPANY; HUNTINGTON INGALLS      )
    INCORPORATED (FKA NORTHROP       )
22  GRUMMAN SHIPBUILDING, INC.),     )
                                     )
23         Defendants.               )

24

25

26

27

28

K:\Injured\114966\FED\PLD\cmp-fed-pi-Met.wpd                    1
    COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

# I.

## PARTIES

1.     Plaintiff in this action, DALE M. SHELLY, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

2.     Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's and Plaintiff's father's, Dale W. Shelly (deceased), jobsites.

3.     The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

4.     All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff's and Plaintiff's father, Dale W. Shelly's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

5.     Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's and Plaintiff's father, Dale W. Shelly's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

7.     Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the

///

1 State of California, and that said defendants have regularly conducted business in the County of

2 San Francisco, State of California.

3 **II.**

4 **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

5 8.     Jurisdiction: Plaintiff DALE M. SHELLY is a citizen of the State of California.

6 Defendants are each corporations incorporated under the laws of and having its principal

7 places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| ASBESTOS CORPORATION LIMITED | Canada |
| OWENS-ILLINOIS, INC. | Delaware/Ohio |
| PARKER-HANNIFIN CORPORATION | Ohio |
| CROWN CORK & SEAL COMPANY, INC. | Pennsylvania |
| HOPEMAN BROTHERS, INC. | Virginia |
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |
| CRANE CO. | Delaware/Connecticut |
| IMO INDUSTRIES, INC. | Delaware/New Jersey |
| INGERSOLL-RAND COMPANY | New Jersey |
| METROPOLITAN LIFE INSURANCE COMPANY | New York |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |

24 This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

25 between citizens of different states in which the matter in controversy exceeds, exclusive of costs

26 and interest, seventy-five thousand dollars.

27 9.     Venue / Intradistrict Assignment. Venue is proper in the Northern District of

28 California and assignment to the San Francisco Division of said district is proper as a substantial

1   part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred

2   within the County of San Francisco, California, and Defendants are subject to personal

3   jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

8   PLAINTIFF DALE M. SHELLY COMPLAINS OF DEFENDANTS ASBESTOS

9   CORPORATION LIMITED; OWENS-ILLINOIS, INC.; PARKER-HANNIFIN

10  CORPORATION; CROWN CORK & SEAL COMPANY, INC.; HOPEMAN BROTHERS,

11  INC.; CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC

12  CORPORATION); GENERAL ELECTRIC COMPANY; FOSTER WHEELER LLC (FKA

13  FOSTER WHEELER CORPORATION); CRANE CO.; IMO INDUSTRIES, INC.;

14  INGERSOLL-RAND COMPANY; METROPOLITAN LIFE INSURANCE COMPANY;

15  HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN

16  SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND

17  FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

18      10.     At all times herein mentioned, each of the named defendants was the successor,

19  successor in business, successor in product line or a portion thereof, assign, predecessor,

20  predecessor in business, predecessor in product line or a portion thereof, parent, holding

21  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

22  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

23  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

24  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

25  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

26  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

27  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

28  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

1    called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

2    conduct of each successor, successor in business, successor in product line or a portion thereof,

3    assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

4    venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

5    entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

6    designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

7    sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

8    rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

9    products containing asbestos. The following defendants, and each of them, are liable for the acts

10   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

11   destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

12   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

13   ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each

14   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

15   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

16   originally attached to each such ALTERNATE ENTITY:

17   | DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ASBESTOS CORPORATION LIMITED | GENERAL DYNAMICS CORPORATION |
| OWENS-ILLINOIS, INC. | OWENS-ILLINOIS GLASS COMPANY |
| PARKER-HANNIFIN CORPORATION | SACOMA-SIERRA, INC.<br>SACOMA MANUFACTURING COMPANY<br>E.I.S. AUTOMOTIVE CORPORATION<br>CONDREN CORPORATION, THE<br>PARKER SEAL COMPANY<br>DENISON HYDRAULICS INC.<br>GREER HYDRAULICS CORPORATION |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK COMPANY |
| HOPEMAN BROTHERS, INC. | HOPEMAN BROTHERS MARINE INTERIORS, LLC |

27   ///

28   ///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| CRANE CO. | BARKSDALE CONTROL PRODUCTS<br>CHAPMAN VALVE CO.<br>COCHRANE CORP.<br>CRANE CO. VALVE DIVISION<br>CRANE PLUMBING & HEATING AKA CRANE PLUMBING-HEATING SHEETMETAL, INC.<br>CRANE PUMPS & SYSTEMS, INC.<br>CRANE SUPPLY<br>CYCLOTHERM<br>JENKINS BROS.<br>JENKINS VALVES<br>MIDWEST PIPING & SUPPLY<br>PACIFIC STEEL BOILER CORPORATION<br>PACIFIC VALVES<br>REPCAL BRASS MANUFACTURING CO. |
| INGERSOLL-RAND COMPANY | INGERSOLL-DRESSER PUMP<br>DRESSER-RAND CO.<br>PACIFIC PUMP WORKS<br>FLOWSERVE CORPORATION<br>INGERSOLL ROCK DRILL COMPANY<br>TERRY STEAM TURBINE CO.<br>WHITON MACHINE COMPANY<br>RAND DRILL COMPANY<br>RAND & WARING DRILL AND COMPRESSOR COMPANY<br>INGERSOLL-SERGEANT<br>SCHLAGE LOCK COMPANY<br>VON DUPRIN<br>THE TORRINGTON COMPANY<br>BLAW-KNOX COMPANY<br>ALDRICH PUMPS<br>HUSSMANN CORPORATION |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| IMO INDUSTRIES, INC. | TRANSAMERICA DELAVAL, INC.<br>ENTERPRISE ENGINE & MACHINERY CO.<br>DE LAVAL STEAM TURBINE, INC.<br>DELAVAL STEAM TURBINE<br>DELAVAL INDUSTRIES INC.<br>DE LAVAL TURBINE, INC.<br>GENERAL METALS CORPORATION<br>CROW CENTRIFUGAL PUMPS |
| HUNTINGTON INGALLS<br>INCORPORATED<br>(FKA NORTHROP<br>GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC.<br>AVONDALE SHIPYARDS, INC.<br>CONTINENTAL MARITIME INDUSTRIES, INC.<br>EASTERN IDAHO CONSTRUCTION COMPANY<br>INGALLS SHIPBUILDING, INC.<br>NEWPORT NEWS SHIPBUILDING AND DRY DOCK<br>COMPANY<br>NORTH CAROLINA SHIPBUILDING<br>NORTHROP GRUMMAN SHIP SYSTEMS, INC.<br>SERVICE ENGINEERING INDUSTRIES, INC. |

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter

1     collectively called "exposed persons"), while being used in a manner that was reasonably

2     foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by

3     "exposed persons." In part, and without limitation as to other defendants, defendant

4     HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN

5     SHIPBUILDING, INC.), manufactured, modified, serviced and/or repaired asbestos-containing

6     ships and vessels.

7          13.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

8     exercise due care in the pursuance of the activities mentioned above and defendants, and each of

9     them, breached said duty of due care.

10         14.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

11     have known, and intended that the aforementioned asbestos and products containing asbestos and

12     related products and equipment, would be transported by truck, rail, ship, and other common

13     carriers, that in the shipping process the products would break, crumble, or be otherwise

14     damaged; and/or that such products would be used for insulation, construction, plastering,

15     fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

16     limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

17     breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

18     release of airborne asbestos fibers, and that through such foreseeable use and/or handling

19     "exposed persons," including Plaintiff herein, and Plaintiff's father's, Dale W. Shelly, would use

20     or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging,

21     products, environment, and clothing of persons working in proximity to said products, directly or

22     through reentrainment.

23         15.     Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-

24     containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

25     exposure to asbestos and asbestos-containing products is on current information as set forth at

26     various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and

27     incorporated by reference herein.

28     ///

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

1    22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

2    directors and managing agents participated in, authorized, expressly and impliedly ratified, and

3    had full knowledge of, or should have known of, each of the acts set forth herein.

4    23.    Defendants, their "alternate entities," and each of them, are liable for the

5    fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

6    and each defendant's officers, directors and managing agents participated in, authorized,

7    expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

8    each of their ALTERNATE ENTITIES as set forth herein.

9    24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

10   and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious

11   disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of

12   example and by way of punishing said defendants, seeks punitive damages according to proof.

13   WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

14   each of them, as hereinafter set forth.

15                              SECOND CAUSE OF ACTION
                                  (Products Liability)

16

17   AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF

18   ACTION FOR PRODUCTS LIABILITY, PLAINTIFF DALE M. SHELLY COMPLAINS OF

19   DEFENDANTS ASBESTOS CORPORATION LIMITED; OWENS-ILLINOIS, INC.;

20   PARKER-HANNIFIN CORPORATION; CROWN CORK & SEAL COMPANY, INC.;

21   HOPEMAN BROTHERS, INC.; CBS CORPORATION (FKA VIACOM INC., FKA

22   WESTINGHOUSE ELECTRIC CORPORATION); GENERAL ELECTRIC COMPANY;

23   FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION); CRANE CO.; IMO

24   INDUSTRIES, INC.; INGERSOLL-RAND COMPANY; METROPOLITAN LIFE

25   INSURANCE COMPANY; HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP

26   GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF

27   THEM, AS FOLLOWS:

28   ///

1      25.    Plaintiff incorporates herein by reference, as though fully set forth herein, the

2 allegations contained in each paragraph of the First Cause of Action herein.

3      26.    Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended

4 that the above-referenced asbestos and asbestos-containing products would be used by the

5 purchaser or user without inspection for defects therein or in any of their component parts and

6 without knowledge of the hazards involved in such use.

7      27.    Said asbestos and asbestos-containing products were defective and unsafe for their

8 intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.

9 The defect existed in the said products at the time they left the possession of defendants, their

10 "alternate entities," and each of them. Said products did, in fact, cause personal injuries,

11 including asbestosis, other lung damage, and cancer to "exposed persons," including Plaintiff

12 herein,and Plaintiff's father's, Dale W. Shelly, while being used in a reasonably foreseeable

13 manner, thereby rendering the same defective, unsafe and dangerous for use.

14      28.    "Exposed persons" did not know of the substantial danger of using said products.

15 Said dangers were not readily recognizable by "exposed persons." Said defendants, their

16 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

17 which Plaintiff and others similarly situated were exposed.

18      29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

19 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

20 sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

21 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

22 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

23 did so with conscious disregard for the safety of "exposed persons" who came in contact with

24 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

25 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

26 death resulting from exposure to asbestos or asbestos-containing products, including, but not

27 limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,

28 from scientific studies performed by, at the request of, or with the assistance of, said defendants,

1    their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
2    defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

3        30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
4    ENTITIES and each of them, were aware that members of the general public and other "exposed
5    persons," who would come in contact with their asbestos and asbestos-containing products, had
6    no knowledge or information indicating that asbestos or asbestos-containing products could
7    cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
8    members of the general public and other "exposed persons," who came in contact with asbestos
9    and asbestos-containing products, would assume, and in fact did assume, that exposure to
10   asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
11   hazardous to health and human life.

12       31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
13   of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
14   lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
15   market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
16   asbestos-containing products without attempting to protect "exposed persons" from or warn
17   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
18   asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
19   "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
20   asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
21   intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
22   and suppressed said knowledge from "exposed persons" and members of the general public, thus
23   impliedly representing to "exposed persons" and members of the general public that asbestos and
24   asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
25   ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
26   representations with the knowledge of the falsity of said implied representations.

27       32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
28   and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

1    ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,
2    manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,
3    sale, inspection, installation, contracting for installation, repair, marketing, warranting,
4    rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-
5    containing products. In pursuance of said financial motivation, said defendants, their
6    ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed
7    persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
8    containing products to cause injury to "exposed persons" and induced persons to work with and
9    be exposed thereto, including Plaintiff.

10    33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE
11    ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
12    products to be safe for their intended use but that their asbestos and asbestos-containing products,
13    created an unreasonable risk of bodily harm to exposed persons.

14    34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
15    and various asbestos-containing products manufactured, fabricated, inadequately researched,
16    designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
17    for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
18    marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
19    aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
20    cannot identify precisely which asbestos or asbestos-containing products caused the injuries
21    complained of herein.

22    35.    Plaintiff relied upon defendants', their "alternate entities'," and each of their
23    representations, lack of warnings, and implied warranties of fitness of asbestos and their
24    asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
25    been injured permanently as alleged herein.

26    36.    As a direct and proximate result of the actions and conduct outlined herein,
27    Plaintiff has suffered the injuries and damages previously alleged.

28    ///

1    WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

2  ENTITIES, and each of them, as hereinafter set forth.

3                          THIRD CAUSE OF ACTION
                      (Premises Owner/Contractor Liability)
4

5    AS AND FOR A FURTHER AND THIRD SEPARATE AND DISTINCT CAUSE OF

6  ACTION, PLAINTIFF COMPLAINS OF DEFENDANT HOPEMAN BROTHERS, INC., AND

7  THEIR ALTERNATE ENTITIES (hereinafter PREMISES OWNER/CONTRACTOR

8  LIABILITY DEFENDANTS), AND ALLEGES AS FOLLOWS:

9    37.    Plaintiff incorporates herein by reference, as though fully set forth herein, each

10  paragraphs 17 through 23 of the First Cause of Action herein.

11    38.    At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR

12  LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor,

13  predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or

14  partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing

15  insulation, other building materials, products, and toxic substances to be constructed, installed,

16  maintained, used, replaced, repaired and/or removed on the respective premises owned, leased,

17  maintained, managed, and/or controlled by them.  Said entities shall hereinafter collectively be

18  called ALTERNATE ENTITIES.  Each of the herein-named defendants is liable for the tortious

19  conduct of each successor, successor-in-business, assign, predecessor-in-business, parent,

20  holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially

21  owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and

22  other toxic substances.  Said defendants, and each of them, are liable for the acts of each and

23  every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

24  plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have

25  acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of

26  them, have caused the destruction of plaintiff's remedy against each such alternate entity; each

27  such defendant has the ability to assume the risk-spreading role of each such

28  ///

1 | ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to
2 | each such ALTERNATE ENTITY.

3 |     39.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR
4 | LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained,
5 | managed, and/or controlled the premises where Plaintiff was present. The following information
6 | provided is preliminary, based on recall over events covering many years and further
7 | investigation and discovery may produce more reliable information:

8 |

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| HOPEMAN BROTHERS, INC. | Various | Various |

11 |     Additionally, plaintiff and plaintiff's father might have been present at these or other
12 | PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations
13 | and on other occasions.

14 |     40.    Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR
15 | LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing
16 | insulation, other building materials, products, and toxic substances to be constructed, installed,
17 | maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid
18 | respective premises, by their own workers and/or by various unqualified or unskilled contractors,
19 | and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances
20 | into the ambient air and thereby created a hazardous and unsafe condition to plaintiff, plaintiff's
21 | father, and other persons exposed to said asbestos fibers and toxic substances while present at
22 | said premises.

23 |     41.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
24 | LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and
25 | reasonable care should have known, that the foregoing conditions and activities created a
26 | dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to
27 | plaintiff and other workers or persons so exposed present on each of the aforesaid respective
28 | premises.

1    42.   At all times relevant herein, plaintiff and plaintiff's father entered said premises
2  and used or occupied each of said respective premises as intended and for each of the respective
3  PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and
4  at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS'
5  request and invitation. In so doing, plaintiff and plaintiff's father were exposed to dangerous
6  quantities of asbestos fibers and other toxic substances released into the ambient air by the
7  aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise
8  created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY
9  DEFENDANTS, and each of them.

10   43.   Plaintiff at all times was unaware of the hazardous condition or the risk of
11 personal injury created by the aforesaid presence and use of asbestos products and materials and
12 other toxic substances on said premises.

13   44.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
14 LIABILITY DEFENDANTS, and each of them, remained in control of the premises where
15 plaintiff and plaintiff's father were performing his work.

16   45.   Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS
17 retained control over safety and other related conditions and circumstances at plaintiff's and
18 plaintiff's father's, job site(s) and affirmatively contributed to and exercised, or failed to exercise,
19 that control in a manner that caused plaintiff's injuries from asbestos-containing products.

20   46.   At all times mentioned herein, the PREMISES OWNER/CONTRACTOR
21 LIABILITY DEFENDANTS owed to plaintiff, plaintiff's father, and others similarly situated a
22 duty to exercise ordinary care in the management of such premises so as to avoid exposing
23 workers such as plaintiff and plaintiff's father, to an unreasonable risk of harm and to avoid
24 causing injury to said person.

25   47.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
26 LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and
27 reasonable care should have known, that the premises that were in their control would be used
28 without knowledge of, or inspection for, defects or dangerous conditions and that the persons

1  present and using said premises would not be aware of the aforesaid hazardous conditions to
2  which they were exposed on the premises.

3       48.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
4  LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,
5  survey, or control said premises, or to abate, or correct, or to warn plaintiff of, the existence of
6  the aforesaid dangerous conditions and hazards on or about said premises.

7       49.    Prior to and at the times and places aforesaid, said PREMISES
8  OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused
9  certain asbestos-containing insulation, other building materials, products, and toxic substances to
10  be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their
11  aforesaid respective premises, by their own workers and/or by employing various contractors,
12  and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances
13  into the ambient air and thereby injured plaintiff.

14       50.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
15  LIABILITY DEFENDANTS, and each of them:

16       a.  Should have recognized that the work of said contractors would create during
17  the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would
18  harm plaintiff, plaintiff's father, and others unless special precautions were taken;

19       b.  Knew or had reason to know, that the contractors it had selected and hired to
20  install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled,
21  unlicenced, or otherwise unqualified to do so;

22       c.  Failed to use reasonable care to discover whether the contractors it selected and
23  hired to install, remove, abate, or otherwise handle asbestos-containing materials were
24  competent, or qualified to do so.

25       51.    In part, plaintiff's father, Dale W. Shelly, and thereafter plaintiff were exposed to
26  dangerous asbestos fibers and other toxic substances by reason of such contractors' failure to take
27  the necessary precautions.

28  ///

1    52.    The work of contractors on premises controlled by the PREMISES

2 OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe

3 work place by reason of the release of dangerous quantities of toxic substances, including but not

4 limited to asbestos.

5    53.    The unsafe premise or work place was created, in part, by the negligent conduct of

6 the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY

7 DEFENDANTS. Said negligent conduct includes, but is not limited to:

8               a.    Failure to warn of asbestos and other toxic dusts;

9               b.    Failure to suppress the asbestos-containing or toxic dusts;

10               c.    Failure to remove the asbestos-containing and toxic dusts through

11 use of ventilation or appropriate means;

12               d.    Failure to provide adequate breathing protection, i.e., approved

13 respirators or masks;

14               e.    Failure to inspect and/or test the air;

15               f.    Failure to provide medical monitoring.

16               g.    Failure to select and hire a careful and competent contractor or

17 subcontractor.

18    54.    The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties

19 to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions

20 are non-delegable; said duties arise out of, inter alia, common law, California Civil Code § 1714,

21 and California Labor Code § 6400, et seq., or California Health and Safety Code § 40.200, et

22 seq., and regulations promulgated thereunder. Accordingly, the PREMISES

23 OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said

24 duties whether by themselves or others.

25    55.    Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

26 LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other

27 government regulations promulgated by the United States Government, the State of California,

28 and others, including but not limited to the General Industry Safety Orders promulgated pursuant

1     to California Labor Code § 6400 and the California Administrative Code under the Division of

2     Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII,

3     Group 9 (Control of Hazardous Substances), Article 81, § 4150, § 4106, § 4107, and § 4108, and

4     Threshold Limit Values as documented for asbestos and other toxic substances under Appendix

5     A, Table 1 of said Safety Orders; additionally, California Health and Safety Code § 40.200, et

6     seq., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.) to

7     promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11, Rules 2 and 14,

8     Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission

9     Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/

10    CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to

11    prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

12    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the

13    required safeguards and precautions, or contractors employed by the PREMISES

14    OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards

15    and precautions. Defendants' violations of said codes include, but are not limited to:

16           (a)     Failing to comply with statutes and allowing ambient levels of airborne

17    asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

18    statutes;

19           (b)     Failing to segregate work involving the release of asbestos or other toxic

20    dusts;

21           (c)     Failing to suppress dust using prescribed ventilation techniques;

22           (d)     Failing to suppress dust using prescribed "wet down" techniques;

23           (e)     Failing to warn or educate plaintiff or others regarding asbestos or other

24    toxic substances on the premises;

25           (f)     Failing to provide approved respiratory protection devices;

26           (g)     Failing to ensure "approved" respiratory protection devices were used

27    adequately;

28    ///

1           (h)    Failing to provide for an on-going health screening program for those

2 exposed to asbestos on the premises;

3           (i)    Failing to provide adequate housekeeping and clean-up of the work place;

4           (j)    Failing to adequately warn of the hazards associated with asbestos as

5 required by these statutes;

6           (k)    Failing to adequately report renovation and disturbance of asbestos-

7 containing materials, including but not limited to B.A.A.Q.M.D. Regulation 11, Rules 2 and 14;

8           (l)    Failing to have an asbestos removal supervisor as required by regulation;

9           (m)    Failing to get approval for renovation as required by statutes; and

10           (n)    Failing to maintain records as required by statute.

11    56.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of

12 them, were the "statutory employer" of the plaintiff and plaintiff's father, as defined by the

13 California Labor Code and California case law.

14    57.    Plaintiff and plaintiff's father, at all times were unaware of the hazardous

15 condition or the risk of personal injury created by defendants' violation of said regulations,

16 ordinances, or statutes.

17    58.    At all times mentioned herein, plaintiff and plaintiff's father were members of the

18 class of persons whose safety were intended to be protected by the regulations, standards,

19 statutes, or ordinances described in the foregoing paragraphs.

20    59.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

21 LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

22 reasonable care should have known, that the premises that were in their control would be used

23 without knowledge of, or inspection for, defects or dangerous conditions, that the persons present

24 and using said premises would not be aware of the aforesaid hazardous conditions to which they

25 were exposed on the premises, and that such persons were unaware of the aforesaid violations of

26 codes, regulations, and statutes.

27 ///

28 ///

1    60.    As a proximate result of the foregoing, plaintiff developed asbestos-related illness,

2    which has caused great injury and disability as previously set forth, and plaintiff, has suffered

3    damages as herein alleged.

4    WHEREFORE, plaintiff, prays judgment against defendants, their ALTERNATE

5    ENTITIES, and each of them, as hereinafter set forth.

6                    FOURTH CAUSE OF ACTION
                       Aiding and Abetting Battery
7              [Against Metropolitan Life Insurance Company]

8    AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF

9    ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF

10   DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, THEIR ALTERNATE

11   ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

12   61.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

13   and every allegation of the First and Second Causes of Action as though fully set forth herein.

14   62.    This cause of action is for the aiding and abetting of battery by METROPOLITAN

15   LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director

16   Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

17   63.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

18   mentioned defendant MET LIFE was and is a corporation organized and existing under and by

19   virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction,

20   and that this defendant was and is authorized to do and/or was and is doing business in the State

21   of California, and regularly conducted or conducts business in the State of California.  At times

22   relevant to this cause of action, MET LIFE was an insurer of J-M.

23   64.    Plaintiff, was exposed to asbestos-containing dust created by the use of the

24   asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

25   asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease

26   and injuries.

27   65.    Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-

28   related disease in Canadian mines and mills, including those of J-M.  Those studies revealed that

1   miners and mill workers were contracting asbestosis at relatively low levels of dust. McGill

2   University, which conducted the studies, sought permission from MET LIFE to publish the

3   results but they were never published. MET LIFE prepared its own report of these studies.

4       66.    Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.

5   plants manufacturing asbestos-containing products, including a J-M plant. Those studies showed

6   that workers in substantial numbers were contracting asbestosis, at levels less than what became

7   the Threshold Limit Value ('TLV") of 5mppcf. The MET LIFE report was never published or

8   disseminated except to plant owners, including J-M.

9       67.    In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,

10  New Jersey. Results were consistent with those of the Canadian and previous U.S. plant studies.

11  They were never published.

12      68.    In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

13  LIFE that it should issue a report of its studies.

14      69.    MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and

15  business reasons, that certain critical parts of the draft be changed. MET LIFE's official in

16  charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

17      (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

18          should be less than that for silica;

19      (b)    Addition of the phrase that asbestosis clinically appeared to be milder than

20          silicosis.

21  The report, thus altered, was published in 1935. It was misleading, and intentionally so, because

22  it conveyed the incorrect propositions that asbestosis was a less serious disease process than

23  silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases

24  than was the case for silica dust.

25      70.    MET LIFE had a close relationship with J-M. It invested money in J-M. It

26  provided group health and life insurance to J-M. MET LIFE IN 1934 agreed to supply industrial

27  hygiene services to J-M, including dust counts, training employees to monitor dust levels,

28  ///

1  examining employees, and recommending protective equipment. MET LIFE and Lanza were
2  viewed as experts on industrial dusts.

3      71.    In 1933, MET LIFE through Lanza issued the following advice to J-M:

4      (a)    Disagreeing with the recommendation of a J-M plant physician, MET LIFE
5          advised against warning workers of the fact that asbestos dust is hazardous to their
6          health, basing its advice in view of the extraordinary legal situation;

7      (b)    When the plant physician judged the best disposition of an employee with
8          asbestosis was to remove him from the dust, MET LIFE advised instead that
9          disposition should depend on his age, nature of work and other factors and to
10         leave him alone if he is old and showing no disability, for, MET LIFE stated,
11         economic and production factors must be balanced against medical factors.

12     72.    J-M followed the MET LIFE advices and did not warn its workers, including
13 plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying
14 workers of their disease.

15     73.    In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation
16 ("AHF"). One of the AHF purposes was to develop standards for dust levels that would serve as
17 a defense in lawsuits and workers' compensation claims.

18     74.    MET LIFE funded partially another study that tentatively recommended in 1938 a
19 TLV for asbestos dust of 5mpccf, the same as for silica dust. MET LIFE was aware of data from
20 its own, unpublished reports that showed that level was too high for asbestos dust. MET LIFE
21 nonetheless promoted that TLV as proper.

22     75.    In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the
23 AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.
24 That report showed that workers exposed to less than the recommended maximum levels of dust
25 were developing disease. MET LIFE was a member of the IHF and Lanza was on its medical
26 committee. The Hemeon report, which was supplied to J-M and other owners, never was
27 published.

28 ///

1       76.    In 1936, J-M and other asbestos companies agreed with a leading medical

2 research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M

3 and the others retained control over publication of the results. In 1943 Saranac's Dr. Leroy

4 Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed

5 to long fiber asbestos contracted cancer.

6       77.    Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac

7 results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies

8 decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

9 Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending

10 materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

11 Vorwald, in the *AMA Archives of Industrial Hygiene*.

12      78.    Lanza left MET LIFE at the end of 1948, and took a position at New York

13 University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause

14 cancer into the 1950s.

15      79.    The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

16 official was on its medical committee, through Drs. Braun and Truan conducted a study of

17 Canadian miners. The original report, in 1957, found an increased incidence of lung cancer in

18 persons exposed to asbestos. The sponsors, including J-M, caused those findings to be stricken,

19 and the report published in 1958 contained the false conclusion that asbestos exposure alone did

20 not increase the risk of lung cancer.

21      80.    The false and misleading reports that a link between asbestos exposure and cancer

22 was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low

23 or zero.

24      81.    J-M not later than 1933 was inflicting asbestos dust on its workers in its plants

25 knowing that the dust was hazardous and was causing workers to contract disease that could and

26 would disable and kill them. As MET LIFE advised, J-M did not warn its workers of the hazard.

27 J-M committed battery on workers in its plants, including plaintiff, by that conduct.

28 ///

1    82.    MET LIFE knew that J-M's conduct constituted a breach of its duties to its

2 workers. MET LIFE gave substantial assistance to J-M in committing batteries on its workers,

3 including plaintiff, through MET LIFE's conduct described above, including by:

4       (a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in

5              view of the extraordinary legal situation, such that J-M did not warn its workers,

6              including plaintiff;

7       (b)    Deleting the findings of its own draft report that the allowable limits for asbestos

8              dust should be less than those for silica dust, and promoting a false and unsafe

9              TLV which specified maximum levels of silica dust, and promoting a false and

10             unsafe TLV which specified maximum levels of dust for workers, including

11             plaintiff, which MET LIFE knew was wrong through its own studies;

12      (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the

13             plant even after J-M was aware that their lungs showed asbestos-induced changes,

14             lest other workers including plaintiff be alerted to the dangers of working in the

15             dust.

16    WHEREFORE, plaintiff prays judgment against defendants, their ALTERNATE

17 ENTITIES, and each of them, as hereinafter set forth.

18                                         **IV.**

19                                      **PRAYER**

20    WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE

21 ENTITIES, and each of them in an amount to be proved at trial, as follows:

22      (a)    For Plaintiff's general damages according to proof;

23      (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

24      (c)    For Plaintiff's medical and related expenses according to proof;

25      (d)    For Plaintiff's cost of suit herein;

26      (e)    For exemplary or punitive damages according to proof;

27      (f)    For damages for fraud according to proof; and

28    ///

(g)     For such other and further relief as the Court may deem just and proper, including

costs and prejudgment interest.

Dated:  11/16/11                          BRAYTON❖PURCELL LLP

By: _____
        David R. Donadio
        Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues of this cause.

Dated:  11/16/11                          BRAYTON❖PURCELL LLP

By: _____
        David R. Donadio
        Attorneys for Plaintiff

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Plaintiff: DALE M. SHELLY

Plaintiff's injuries: Plaintiff was diagnosed with asbestosis on or about February 2011 and with asbestos-related pleural disease on or about April 2011.

Retirement Status:

Plaintiff retired from his last place of employment at regular retirement age. He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants: Plaintiff contends that the asbestos-containing products to which she/he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants. Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy | | | 8/31/1960 - 7/3/1964 |
| | Naval Training Center San Diego, CA | Trainee | 8/31/1960 - 11/15/1960 |
| | Naval Air Station Alameda, CA | Aviation Boatswains mate (E4) | |
| | HANCOCK (CVA - 19) | | 11/15/1960 - 7/3/1964 |
| | Fleet Training Center San Diego, CA | Trainee | 7/21/1961 - 7/30/1961 |

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy (cont'd.) | | | 8/31/1960 - 7/3/1964 |
| | Puget Sound Naval Shipyard Bremerton, WA | Aviation Boatswains mate | 1961- 1962 |
| | Hunters Point Naval Shipyard San Francisco, CA | | 1963 (2 months) |
| Naval Reserve | Naval Reserve Manpower Center Bainbridge, MD | Inactive Reservist | 7/3/1964 - 8/30/1966 |
| Hunters Point Naval Shipyard San Francisco, CA | Hunters Point Naval Shipyard San Francisco, CA | Rigger | 7/1964 - 5/1973 |
| | BLUEBACK (SS - 581) | | |
| | CHICAGO (CG - 11) | | |
| | CORAL SEA (CVA - 43) | | |
| | HALSEY (DLG - 23) | | |
| | ENTERPRISE (CVN - 65) | | |
| | HANCOCK (CVA - 19) | | |
| | HORNE (DLG - 30) | | |
| | KITTY HAWK (CVA - 63) | | |
| | MAHAN (DLG - 11) | | |
| | MAUNA KEA (AE - 22) | | |
| | MIDWAY (CVA - 41) | | |
| | ORISKANY (CVA-34) | | |
| | RANGER (CVA - 61) | | |
| | SALMON (SS- 573) | | |
| Puget Sound Naval Shipyard Bremerton, WA | Puget Sound Naval Shipyard, Bremerton, WA | Rigger | 1973 - 1975 |
| | ENTERPRISE (CVN - 65) | | |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy | Vancouver Island Keyport, WA | Rigger | 1975 - 1976 |
| | Strategic Weapons Facility Bangor, WA | | |
| Mare Island Naval Shipyard Vallejo, CA | Mare Island Naval Shipyard, Vallejo, CA | Rigger | 6/1976 - 1985 |
| | DRUM (SSN - 677) | | |
| | GUITARRO (SSN - 665) | | |
| | HAWKBILL (SSN - 666) | | |
| | PARCHE (SSN - 683) | | |
| | PERMIT (SSN - 594) | | |
| | PINTADO (SSN - 672) | | |
| | PLUNGER (SSN - 595) | | |
| | SALT LAKE CITY (SSN - 716) | | |

## PARA OCCUPATIONAL EXPOSURE:

Plaintiff's father, Dale W. Shelly, deceased, was a boiler technician in the U. S. Navy. Plaintiff lived with his father from 1943 until 1960 when he joined the Navy. During the 1950s plaintiff shook asbestos dust from and washed his father's work clothes on a regular basis. Plaintiff's father's military service is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy | Air Force Accounting Center, Westminster, CO | Boiler Technician | 1954 - 1955 |

30

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

DALE M. SHELLY

## DEFENDANTS

ASBESTOS CORPORATION LIMITED, et al.

**(b)** County of Residence of First Listed Plaintiff  Solano County, California
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David R. Donadio, Esq.
Brayton✦Purcell LLP
222 Rush Landing Road, JMD#03
Novato, California  94948-6169

Attorneys (If Known)

(3)  11-5597 BA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☒ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury— | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☒ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 370 Other Fraud | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | | & Disclosure Act | | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| | | | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| | | | ☐ 791 Empl. Ret. Inc. | | ☐ 895 Freedom of Information |
| | | | Security Act | | Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900Appeal of Fee |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | **IMMIGRATION** | or Defendant) | Determination |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party | Under Equal Access |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | ☐ 463 Habeas Corpus— | 26 USC 7609 | to Justice |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | Alien Detainee | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities– | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | State Statutes |
| | Employment | ☐ 550 Civil Rights | Actions | | |
| | ☐ 446 Amer. w/Disabilities– | ☐ 555 Prison Condition | | | |
| | Other | | | | |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Diversity of Citizenship; 28 USC Section 1332

Brief description of cause: Asbestos Personal Injury

## VII. REQUESTED IN
COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S)
IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE
"NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND  ☐ SAN JOSE  ☐ EUREKA

DATE  9/16/11

SIGNATURE OF ATTORNEY OF RECORD

DAVID R. DONADIO, Brayton✦Purcell LLP, Attorney for Plaintiff