ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-05712-JSW

Fuhrman et al v. General Electric Company et al          Date Filed: 11/29/2011
Assigned to: Hon. Jeffrey S. White                       Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Personal Injury                 Nature of Suit: 368 P.I. : Asbestos
                                                         Jurisdiction: Diversity

**Plaintiff**

**Claire Fuhrman**                      represented by    **Alan R. Brayton**
*as Wrongful Death Heir and as*                          Brayton Purcell LLP
*Successor-in-Interest to*                               222 Rush Landing Road
                                                         PO Box 6169
                                                         Novato, CA 94948-6169
                                                         415-898-1555
                                                         Fax: 415-898-1247
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David R. Donadio**
                                                         Brayton Purcell LLP
                                                         222 Rush Landing Road
                                                         PO Box 6169
                                                         Novato, CA 94948-6169
                                                         415-898-1555
                                                         Fax: 415-898-1247
                                                         Email: DDonadio@braytonlaw.com
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Richard Fuhrman**                     represented by    **Alan R. Brayton**
*Deceased*                                               (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David R. Donadio**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Linda Garner**                        represented by    **Alan R. Brayton**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David R. Donadio**
                                                         (See above for address)
                                                         *ATTORNEY TO BE NOTICED*

**<u>Plaintiff</u>**

**Laurie Lee Skahill**
*as Legal Heirs of Richard Fuhrman,*
*Deceased*

represented by **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**<u>Defendant</u>**

**General Electric Company**

**<u>Defendant</u>**

**Parker-Hannifin Corporation**

**<u>Defendant</u>**

**Asbestos Corporation Limited**

**<u>Defendant</u>**

**Owens-Illinois, Inc.**

**<u>Defendant</u>**

**Crown Cork & Seal Company, Inc.**

**<u>Defendant</u>**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**<u>Defendant</u>**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**<u>Defendant</u>**

**Metropolitan Life Insurance
Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 11/29/2011 | 6 | Summons Issued as to Asbestos Corporation Limited, CBS Corporation, Crown Cork & Seal Company, Inc., Foster Wheeler LLC, General Electric Company, Metropolitan Life Insurance Company, Owens-Illinois, Inc., Parker-Hannifin |

| | | |
|---|---|---|
| | | Corporation. (hdj, COURT STAFF) (Filed on 11/29/2011) (Entered: 11/30/2011) |
| 11/29/2011 | 5 | NOTICE of Tag-Along Action by Claire Fuhrman, Richard Fuhrman, Linda Garner, Laurie Lee Skahill (hdj, COURT STAFF) (Filed on 11/29/2011) (Entered: 11/30/2011) |
| 11/29/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Claire Fuhrman, Richard Fuhrman, Linda Garner, Laurie Lee Skahill. (hdj, COURT STAFF) (Filed on 11/29/2011) (Entered: 11/30/2011) |
| 11/29/2011 | 3 | Certificate of Interested Entities by Claire Fuhrman, Richard Fuhrman, Linda Garner, Laurie Lee Skahill (hdj, COURT STAFF) (Filed on 11/29/2011) (Entered: 11/30/2011) |
| 11/29/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 3/2/2012. Case Management Conference set for 3/9/2012 01:30 PM. (Attachments: # 1 Standing Order, # 2 Standing Order)(hdj, COURT STAFF) (Filed on 11/29/2011) (Entered: 11/30/2011) |
| 11/29/2011 | 1 | COMPLAINT against Asbestos Corporation Limited, CBS Corporation, Crown Cork & Seal Company, Inc., Foster Wheeler LLC, General Electric Company, Metropolitan Life Insurance Company, Owens-Illinois, Inc., Parker-Hannifin Corporation ( Filing fee $ 350, receipt number 34611067446.). Filed byLinda Garner, Claire Fuhrman, Richard Fuhrman, Laurie Lee Skahill. (hdj, COURT STAFF) (Filed on 11/29/2011) (Entered: 11/30/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/01/2011 08:53:02 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-05712-JSW |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✣PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

E-filing

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CLAIRE FUHRMAN, as Wrongful Death Heir, and as Successor-in-Interest to RICHARD FUHRMAN, Deceased, and LINDA GARNER, LAURIE LEE SKAHILL, as Legal Heirs of RICHARD FUHRMAN, Deceased,<br><br>             Plaintiffs,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, PARKER-HANNIFIN CORPORATION, ASBESTOS CORPORATION LIMITED, OWENS-ILLINOIS, INC., CROWN CORK & SEAL COMPANY, INC., CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), METROPOLITAN LIFE INSURANCE COMPANY,<br><br>             Defendants. | COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL |

CV 11 5712

**I.**

**PARTIES**

1.      Plaintiffs in this action are the above-captioned successor-in-interest to, or the

personal representative of the estate of Decedent; and the personal representatives on behalf of

///

BRAYTON✣PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

2  "Plaintiffs."

3       2.     The person who sustained asbestos-related lung injuries and death as a result of

4  their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

5  hereinafter "Decedent" is, with the date of death: RICHARD FUHRMAN died December 1,

6  2010.  CLAIRE FUHRMAN is the spouse of RICHARD FUHRMAN and is hereinafter referred

7  to as "surviving spouse."

8       3.     Decedent sustained an asbestos-related lung disease and death by precisely the

9  following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

10  containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related

11  diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by

12  reference herein.

13       4.     All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated

14  exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

15  and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period

16  of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,

17  resulting in cumulative, progressive, incurable lung diseases.

18       5.     Each Plaintiff claims damages for an asbestos-related disease arising from an

19  identical series of occurrences not dependent on Decedent's worksite but on the fact that

20  asbestos-containing products, when handled in the manner in which they were intended, released

21  harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The

22  allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature

23  of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are

24  all identical.

25       6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein

26  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

27  proprietorships and/or other business entities organized and existing under and by virtue of the

28  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

2

said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the State of California.

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.      Jurisdiction:  Plaintiff CLAIRE FUHRMAN is a citizen of the State of California. Plaintiff(s) LINDA GARNER, LAURIE LEE SKAHILL are citizens of the following states, respectively: California; California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| PARKER-HANNIFIN CORPORATION | Ohio/Ohio |
| ASBESTOS CORPORATION LIMITED | Canada |
| OWENS-ILLINOIS, INC. | Delaware/Ohio |
| CROWN CORK & SEAL COMPANY, INC. | Pennsylvania/Pennsylvania |
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |
| METROPOLITAN LIFE INSURANCE COMPANY | New York/New York |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.      Venue / Intradistrict Assignment.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein

///

3
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1  occurred within the County of San Francisco, California, and Defendants are subject to personal

2  jurisdiction in this district at the time the action is commenced.

3  **III.**

4  **CAUSES OF ACTION**

5  FIRST CAUSE OF ACTION
   (Negligence - Survival)

6

7  PLAINTIFF CLAIRE FUHRMAN AS SUCCESSOR-IN-INTEREST TO THE

8  DECEDENT RICHARD FUHRMAN COMPLAINS OF DEFENDANTS GENERAL

9  ELECTRIC COMPANY, PARKER-HANNIFIN CORPORATION, ASBESTOS

10 CORPORATION LIMITED, OWENS-ILLINOIS, INC., CROWN CORK & SEAL COMPANY,

11 INC., CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC

12 CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),

13 THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF

14 ACTION FOR NEGLIGENCE ALLEGES:

15     9.     At all times herein mentioned, each of the named defendants was the successor,

16 successor in business, successor in product line or a portion thereof, assign, predecessor,

17 predecessor in business, predecessor in product line or a portion thereof, parent, holding

18 company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

19 or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

20 designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

21 supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

22 representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

23 warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

24 otherwise directing and/or facilitating the use of, or advertising a certain product, namely

25 asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be

26 called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious

27 conduct of each successor, successor in business, successor in product line or a portion thereof,

28 assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

1  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

2  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

3  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

4  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

5  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

6  products containing asbestos.  The following defendants, and each of them, are liable for the acts

7  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

8  destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

9  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

10  ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each

11  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

12  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

13  originally attached to each such ALTERNATE ENTITY:

14  | DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| PARKER-HANNIFIN CORPORATION | SACOMA-SIERRA, INC. |
| | SACOMA MANUFACTURING COMPANY |
| | E.I.S. AUTOMOTIVE CORPORATION |
| | CONDREN CORPORATION, THE |
| | PARKER SEAL COMPANY |
| | DENISON HYDRAULICS INC. |
| | GREER HYDRAULICS CORPORATION |
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. |
| | CBS CORPORATION |
| | WESTINGHOUSE ELECTRIC CORPORATION |
| | WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY |
| | B.F. STURTEVANT |
| | KPIX TELEVISION STATION |
| | PARAMOUNT COMMUNICATIONS, INC |
| | GULF & WESTERN INDUSTRIES, INC. |
| | NORTH & JUDD MANUFACTURING COMPANY |

28  ///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| ASBESTOS CORPORATION LIMITED | GENERAL DYNAMICS CORPORATION |
| OWENS-ILLINOIS, INC. | OWENS-ILLINOIS GLASS COMPANY |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK COMPANY |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |

10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

///

///

12.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14.     Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

16.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers ///

1 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

2 asbestos and asbestos-containing products over a period of time.

3       17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-

4 containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-

5 containing products presented any risk of injury and/or disease.

6       18.    As a direct and proximate result of the aforesaid conduct of the defendants, their

7 "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

8 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

9 amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this

10 complaint accordingly when the true and exact cost thereof is ascertained.

11       19.    As a direct and proximate result of the aforesaid conduct of the defendants, their

12 ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value

13 of medial care provided by Decedent's family members measured by, inter alia, the costs

14 associated with the hiring a registered nurse, home hospice, or other service provider, the true

15 and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to

16 amend this complaint accordingly when the true and exact costs are known or at time of trial.

17       20.    As a direct and proximate result of the aforesaid conduct of defendants, their

18 ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person,

19 body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

20 related sequelae, and the mental and emotional distress attendant thereto, and ultimately death,

21 from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven

22 at trial.

23       21.    As a further direct and proximate result of the said conduct of the defendants,

24 their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits,

25 entitlements, wages, profits, and commissions, a diminishment of earning potential, and other

26 pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is

27 requested to amend this complaint to conform to proof at the time of trial.

28 ///

8

22.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.     Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25.     The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendants.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION
(Products Liability - Survival)

PLAINTIFF CLAIRE FUHRMAN AS SUCCESSOR-IN-INTEREST TO THE DECEDENT RICHARD FUHRMAN COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, PARKER-HANNIFIN CORPORATION, ASBESTOS CORPORATION LIMITED, OWENS-ILLINOIS, INC., CROWN CORK & SEAL COMPANY, INC., CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND,

1 SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

2 LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

3      26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

4 paragraph of the First Cause of Action  herein.

5      27.    Defendants, their "alternate entities," and each of them, knew and intended that

6 the above-referenced asbestos and asbestos-containing products would be used by the purchaser

7 or user without inspection for defects therein or in any of their component parts and without

8 knowledge of the hazards involved in such use.

9      28.    Said asbestos and asbestos-containing products were defective and unsafe for their

10 intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

11 and/or death.  The defect existed in the said products at the time they left the possession of

12 defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

13 personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

14 persons," including Decedent herein, while being used in a reasonably foreseeable manner,

15 thereby rendering the same defective, unsafe, and dangerous for use.

16      29.    "Exposed persons" did not know of the substantial danger of using said products.

17 Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

18 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

19 which Decedent and others similarly situated were exposed.

20      30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

21 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

22 sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

23 promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

24 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

25 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

26 did so with conscious disregard for the safety of "exposed persons" who came in contact with

27 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

28 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

1  death resulting from exposure to asbestos or asbestos-containing products, including, but not

2  limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,

3  from scientific studies performed by, at the request of, or with the assistance of, said defendants,

4  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

5  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

6       31.    On or before 1930, and thereafter, said defendants, their ALTERNATE

7  ENTITIES and each of them, were aware that members of the general public and other "exposed

8  persons," who would come in contact with their asbestos and asbestos-containing products, had

9  no knowledge or information indicating that asbestos or asbestos-containing products could

10  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

11  members of the general public and other "exposed persons," who came in contact with asbestos

12  and asbestos-containing products, would assume, and in fact did assume, that exposure to

13  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

14  hazardous to health and human life.

15       32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

16  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

17  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

18  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

19  asbestos-containing products without attempting to protect "exposed persons" from, or warn

20  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

21  asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

22  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

23  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

24  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

25  and suppressed said knowledge from "exposed persons" and members of the general public, thus

26  impliedly representing to "exposed persons" and members of the general public that asbestos and

27  asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

28  ///

11

1  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

2  representations with the knowledge of the falsity of said implied representations.

3      33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

4  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

5  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

6  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

7  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

8  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

9  directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

10  products.  In pursuance of said financial motivation, said defendants, their ALTERNATE

11  ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

12  were consciously willing and intended to permit asbestos and asbestos-containing products to

13  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

14  including Decedent.

15      34.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE

16  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

17  products, to be safe for their intended use, but that their asbestos and asbestos-containing

18  products, created an unreasonable risk of bodily harm to exposed persons.

19      35.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

20  their representations, lack of warnings, and implied warranties of fitness of asbestos and their

21  asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

22  suffered permanent injury and death as alleged herein.

23      36.    As a direct and proximate result of the actions and conduct outlined herein,

24  Decedent have suffered the injuries and damages herein alleged.

25      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and

26  each of them, as hereinafter set forth.

27  ///

28  ///

1

### THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

2

3      PLAINTIFF CLAIRE FUHRMAN, AS WRONGFUL DEATH HEIR, AND AS

4   SUCCESSOR-IN-INTEREST TO RICHARD FUHRMAN DECEASED, AND PLAINTIFF(S)

5   LINDA GARNER, LAURIE LEE SKAHILL AS LEGAL HEIR(S) OF DECEDENT,

6   COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, PARKER-HANNIFIN

7   CORPORATION, ASBESTOS CORPORATION LIMITED, OWENS-ILLINOIS, INC.,

8   CROWN CORK & SEAL COMPANY, INC., CBS CORPORATION (FKA VIACOM INC.,

9   FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA

10   FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF

11   THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF

12   ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

13      37.    Plaintiffs incorporate by reference each paragraph contained within the First

14   Cause of Action as though fully set forth herein.

15      38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth

16   above.

17      39.    The individuals set forth as heirs constitute all of the surviving heirs of the

18   Decedent.

19      40.    As a direct and proximate result of the conduct of the defendants, their

20   ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

21   containing products caused Decedent to develop diseases from which condition Decedent died.

22   Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

23   filing the complaint.

24      41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the

25   surviving spouse.

26      42.    As a direct and proximate result of the conduct of defendants, and each of them,

27   and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss

28   ///

1   of care, society, comfort, attention, services, and support of Decedent all to the damage of

2   Decedent's heirs.

3       43.    As a further direct and proximate result of the conduct of defendants, and each of

4   them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount

5   currently not ascertained.

6       WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as

7   hereinafter set forth.

8                          FOURTH  CAUSE OF ACTION
                    (Products Liability - Wrongful Death)

9

10      PLAINTIFF CLAIRE FUHRMAN, AS WRONGFUL DEATH HEIR, AND AS

11  SUCCESSOR-IN-INTEREST TO RICHARD FUHRMAN DECEASED, AND PLAINTIFF(S)

12  LINDA GARNER, LAURIE LEE SKAHILL AS LEGAL HEIR(S) OF DECEDENT,

13  COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, PARKER-HANNIFIN

14  CORPORATION, ASBESTOS CORPORATION LIMITED, OWENS-ILLINOIS, INC.,

15  CROWN CORK & SEAL COMPANY, INC., CBS CORPORATION (FKA VIACOM INC.,

16  FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA

17  FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF

18  THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF

19  ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS

20  FOLLOWS:

21      44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

22  paragraph of the First, Second and Third Causes of Action herein.

23      45.    As a direct and proximate result of the conduct of defendants, and each of them,

24  Decedent's heirs have sustained the injuries and damages previously alleged.

25      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

26  each of them, as hereinafter set forth.

27  ///

28  ///

FIFTH CAUSE OF ACTION
Aiding and Abetting Battery
[Against Metropolitan Life Insurance Company]

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF

ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF

DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, THEIR ALTERNATE

ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

46.     Plaintiff incorporates herein by reference, as though fully set forth hereat, each

and every allegation of the First and Second Causes of Action as though fully set forth herein.

47.     This cause of action is for the aiding and abetting of battery by METROPOLITAN

LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director

Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

48.     Plaintiff is informed and believes, and thereon alleges, that at all times herein

mentioned defendant MET LIFE was and is a corporation organized and existing under and by

virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction,

and that this defendant was and is authorized to do and/or was and is doing business in the State

of California, and regularly conducted or conducts business in the State of California.  At times

relevant to this cause of action, MET LIFE was an insurer of J-M.

49.     Decedent was exposed to asbestos-containing dust created by the use of the

asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

asbestos or asbestos-related products supplied by J-M caused plaintiff's asbestos-related disease

and injuries.

50.     Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-

related disease in Canadian mines and mills, including those of J-M.  Those studies revealed that

miners and mill workers were contracting asbestosis at relatively low levels of dust.  McGill

University, which conducted the studies, sought permission from MET LIFE to publish the

results but they were never published.  MET LIFE prepared its own report of these studies.

51.     Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.

plants manufacturing asbestos-containing products, including a J-M plant.  Those studies showed

1   that workers in substantial numbers were contracting asbestosis, at levels less than what became

2   the Threshold Limit Value ('TLV") of 5mppcf.  The MET LIFE report was never published or

3   disseminated except to plant owners, including J-M.

4         52.    In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,

5   New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant studies.

6   They were never published.

7         53.    In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

8   LIFE that it should issue a report of its studies.

9         54.    MET LIFE submitted a draft of its report to J-M.  J-M requested, for legal and

10  business reasons, that certain critical parts of the draft be changed.  MET LIFE's official in

11  charge was Lanza.  MET LIFE through Lanza did make changes that J-M requested, including:

12         (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

13                should be less than that for silica;

14         (b)    Addition of the phrase that asbestosis clinically appeared to be milder than

15                silicosis.

16  The report, thus altered, was published in 1935.  It was misleading, and intentionally so, because

17  it conveyed the incorrect propositions that asbestosis was a less serious disease process than

18  silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases

19  than was the case for silica dust.

20         55.    MET LIFE had a close relationship with J-M.  It invested money in J-M.  It

21  provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply industrial

22  hygiene services to J-M, including dust counts, training employees to monitor dust levels,

23  examining employees, and recommending protective equipment.  MET LIFE and Lanza were

24  viewed as experts on industrial dusts.

25         56.    In 1933, MET LIFE through Lanza issued the following advice to J-M:

26         (a)    Disagreeing with the recommendation of a J-M plant physician, MET LIFE

27                advised against warning workers of the fact that asbestos dust is hazardous to their

28                health, basing its advice in view of the extraordinary legal situation;

16

(b)     When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

57.     J-M followed the MET LIFE advices and did not warn its workers, including plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

58.     In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

59.     MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust.  MET LIFE nonetheless promoted that TLV as proper.

60.     In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant. That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease.  MET LIFE was a member of the IHF and Lanza was on its medical committee.  The Hemeon report, which was supplied to J-M and other owners, never was published.

61.     In 1936, J-M and other asbestos companies agreed with a leading medical research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the others retained control over publication of the results.  In 1943 Saranac's Dr. Leroy Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long fiber asbestos contracted cancer.

62.     Dr. Gardner died in 1946.  J-M and other companies wanted parts of the Saranac results published and enlisted the assistance of MET LIFE's Lanza.  J-M and other companies

1    decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

2    Saranac's critique of existing dust standards.  Lanza directed Saranac to delete the offending

3    materials.  Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

4    Vorwald, in the *AMA Archives of Industrial Hygiene*.

5           63.    Lanza left MET LIFE at the end of 1948, and took a position at New York

6    University, funded by MET LIFE.  He continued to misrepresent that asbestos does not cause

7    cancer into the 1950s.

8           64.    The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

9    official was on its medical committee, through Drs. Braun and Truan conducted a study of

10   Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in

11   persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken,

12   and the report published in 1958 contained the false conclusion that asbestos exposure alone did

13   not increase the risk of lung cancer.

14          65.    The false and misleading reports that a link between asbestos exposure and cancer

15   was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low

16   or zero.

17          66.    J-M not later than 1933 was inflicting asbestos dust on its workers in its plants

18   knowing that the dust was hazardous and was causing workers to contract disease that could and

19   would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the hazard.

20   J-M committed battery on workers in its plants, including plaintiff, by that conduct.

21          67.    MET LIFE knew that J-M's conduct constituted a breach of its duties to its

22   workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers,

23   including plaintiff, through MET LIFE's conduct described above, including by:

24          (a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in

25                 view of the extraordinary legal situation, such that J-M did not warn its workers,

26                 including plaintiff;

27          (b)    Deleting the findings of its own draft report that the allowable limits for asbestos

28                 dust should be less than those for silica dust, and promoting a false and unsafe

1    TLV which specified maximum levels of silica dust, and promoting a false and

2    unsafe TLV which specified maximum levels of dust for workers, including

3    plaintiff, which MET LIFE knew was wrong through its own studies;

4    (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the

5    plant even after J-M was aware that their lungs showed asbestos-induced changes,

6    lest other workers including plaintiff be alerted to the dangers of working in the

7    dust.

8    WHEREFORE, plaintiff prays judgment against defendants, their ALTERNATE

9    ENTITIES, and each of them, as hereinafter set forth.

10    **IV.**

11    **DAMAGES AND PRAYER**

12    WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

13    each of them in an amount to be proved at trial in each individual case, as follows:

14    (a)    For Plaintiffs' general damages according to proof;

15    (b)    For Plaintiffs' loss of income, wages and earning potential according to proof;

16    (c)    For Plaintiffs' medical and related expenses according to proof;

17    (d)    For Plaintiffs' cost of suit herein;

18    (e)    For exemplary or punitive damages according to proof;

19    (f)    For damages for fraud according to proof; and

20    (g)    For such other and further relief as the Court may deem just and proper, including

21    costs and prejudgment interest.

22    Dated:  \_\_11/28/11_____          BRAYTON❖PURCELL LLP

23

24                                                    By: _____

25                                                    David R. Donadio
                                                     Attorneys for Plaintiffs

26

27

28

K:\ln\ured\116328\FED\PLD\cmp-fed-wd-Met.wpd                    19
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1

<u>JURY DEMAND</u>

2      Plaintiffs hereby demand trial by jury of all issues of this cause.

3   Dated:  11|29|11                        BRAYTON❖PURCELL LLP

4

5                                      By: _____
                                           David R. Donadio
6                                          Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\1\16328\FED\PLD\cmp-fed-wd-Met.wpd                    20
                COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

<u>Decedent</u>:  RICHARD FUHRMAN, Deceased.

<u>Decedent's injuries</u>:  Decedent was diagnosed with lung cancer on or about September 2010.

Decedent died on December 1, 2010.

<u>Retirement Status</u>:  Decedent retired from his last place of employment as a result of becoming disabled due to an injury not related to asbestos.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure §340.2.

<u>Defendants</u>:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.   Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
| --- | --- | --- | --- |
| US Navy | <u>COHOCTON</u> (AO-101) | Water Tender | Approximately 1942 - 1946 |
| Philadelphia Quartz Berkeley, CA | Philadelphia Quartz Berkeley, CA | Machine Operator | Approximately 1946 - 1988 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL