ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-05289-MEJ

Spilmon et al v. General Electric Company
Assigned to: Magistrate Judge Maria-Elena James
Cause: 28:1331 Fed. Question: Personal Injury

Date Filed: 10/31/2011
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Marie Spilmon**
*as Wrongful Death Heir, and as*
*Successor-in-Interest to Marion*
*Spilmon, deceased*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Genevieve Spilmon**

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mark Spilmon**

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Lia Burris**

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Martin Spilmon**

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Rita Lavoy**

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joel Spilmon**
*as Legal Heirs of Marion Spilmon.*
*deceased*

represented by **David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

represented by **Daniel James Kelly**
Tucker Ellis & West LLP
135 Main Street, Suite 700
San Francisco, CA 94105
415-617-2400
Fax: 415-617-2409
Email: daniel.kelly@tuckerellis.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/31/2011 | 1 | NOTICE OF REMOVAL /no process from San Francisco County Superior Court. Their case number is CGC 11-275897. (Filing fee $350 receipt number 34611066405). Filed byHuntington Ingalls Incorporated. (ga, COURT STAFF) (Filed on 10/31/2011) (Entered: 11/02/2011) |
| 10/31/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 2/2/2012. Case Management Conference set for 2/9/2012 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 10/31/11. (Attachments: # 1 Standing Order)(ga, COURT STAFF) (Filed on 10/31/2011) (Entered: 11/02/2011) |
| 12/07/2011 | 3 | NOTICE by Huntington Ingalls Incorporated *of Tag-Along Action* (Kelly, Daniel) (Filed on 12/7/2011) (Entered: 12/07/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/09/2011 08:35:42 | | |
| **PACER Login:** | jp0001 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-05289-MEJ |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

## Superior Court of California, County of San Francisco
Case Number: CGC-11-275897
Title: MARIE SPILMON, et al VS. GENERAL ELECTRIC COMPANY
Cause of Action: ASBESTOS
Generated: Dec-08-2011 10:29 am PST

<u>Register of Actions</u>   <u>Parties</u>   <u>Attorneys</u>   <u>Calendar</u>   <u>Payments</u>   <u>Documents</u>

# Register of Actions

Date Range: First Date `Sep-13-2011`   Last Date `Dec-08-2011`   (Dates must be entered as MMM-DD-YYYY)

`Descending Date Sequence ▼`   `ALL FILING TYPES ▼`   `Submit`

| Date | Proceedings | Document | Fee |
|---|---|---|---|
| OCT-28-2011 | NOTICE OF REMOVAL (TRANSACTION ID # 40622372) FILED BY DEFENDANT GENERAL ELECTRIC COMPANY | View | 410.00 |
| OCT-28-2011 | ANSWER TO COMPLAINT (TRANSACTION ID # 40607878) FILED BY DEFENDANT HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | View | 410.00 |
| OCT-25-2011 | DEMAND FOR JURY TRIAL (TRANSACTION ID # 40553710) FILED BY DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY | View | |
| OCT-25-2011 | ANSWER TO COMPLAINT (TRANSACTION ID # 40553496) FILED BY DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY | View | 410.00 |
| OCT-21-2011 | ANSWER TO COMPLAINT (TRANSACTION ID # 40494830) FILED BY DEFENDANT YARWAY CORPORATION | View | 410.00 |
| OCT-21-2011 | REQUEST FOR DISMISSAL W/O PREJUDICE AS TO COMPLT, FROM THE THIRD CAUSE OF ACTION (FALSE REPRESENTATION) AND PUNITIVE DAMAGES ONLY, AS TO DEFT FOSTER WHEELER, LLC FKA FOSTER WHEELER CORPORATION ONLY (TRANSACTION ID # 40480499) | View | |
| SEP-15-2011 | DECLARATION OF MARIE SPILMON UNDER C.C.P. 377.32 (TRANSACTION ID # 39839321) FILED BY PLAINTIFF MARIE SPILMON, AS WRONGFUL DEATH HEIR AND AS SUCCESSOR-IN-INTEREST TO MARION SPILMON, DECEASED GENEVIEVE SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED MARK SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED LIA BURRIS, AS LEGAL HEIRS OF MARION SPILMON, DECEASED MARTIN SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED RITA LAVOY, AS LEGAL HEIRS OF MARION SPILMON, DECEASED JOEL SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED | View | |
| SEP-13-2011 | PRELIMINARY FACT SHEET FILED BY PLAINTIFF MARIE SPILMON, AS WRONGFUL DEATH HEIR AND AS SUCCESSOR-IN-INTEREST TO MARION SPILMON, DECEASED GENEVIEVE SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED MARK SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED LIA BURRIS, AS LEGAL HEIRS OF MARION SPILMON, DECEASED MARTIN SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED RITA LAVOY, AS LEGAL HEIRS OF MARION SPILMON, DECEASED JOEL SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED | | |
| SEP-13-2011 | NOTICE TO PLAINTIFF | View | |
| SEP-13-2011 | ASBESTOS, COMPLAINT FILED BY PLAINTIFF MARIE SPILMON, AS WRONGFUL DEATH HEIR AND AS SUCCESSOR-IN-INTEREST TO MARION SPILMON, DECEASED GENEVIEVE SPILMON, AS | View | 410.00 |

LEGAL HEIRS OF MARION SPILMON, DECEASED MARK
SPILMON, AS LEGAL HEIRS OF MARION SPILMON, DECEASED
LIA BURRIS, AS LEGAL HEIRS OF MARION SPILMON,
DECEASED MARTIN SPILMON, AS LEGAL HEIRS OF MARION
SPILMON, DECEASED RITA LAVOY, AS LEGAL HEIRS OF
MARION SPILMON, DECEASED JOEL SPILMON, AS LEGAL HEIRS
OF MARION SPILMON, DECEASED AS TO DEFENDANT
GENERAL ELECTRIC COMPANY ATLAS VALVE COMPANY, INC.
DOES 1-8500 FOSTER WHEELER LLC (FKA FOSTER WHEELER
CORPORATION) HUNTINGTON INGALLS INCORPORATED (FKA
NORTHROP GRUMMAN SHIPBUILDING, INC.) KAISER
VENTURES LLC MACARTHUR COMPANY METROPOLITAN LIFE
INSURANCE COMPANY WESTERN ASBESTOS COMPANY
WESTERN MACARTHUR COMPANY YARWAY CORPORATION
SUMMONS ISSUED, JUDICIAL COUNCIL CIVIL CASE COVER
SHEET FILED CASE MANAGEMENT CONFERENCE SCHEDULED
FOR AUG-16-2012

1  DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON✧PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato CA 94948-6169
   (415) 898-1555
5
   Attorneys for Plaintiffs
6

**SUMMONS ISSUED**
**FILED**
San Francisco County Superior Court

ASBESTOS
CASE MANAGEMENT CONFERENCE

SEP 1 3 2011

AUG 1 6 2012  1:30 PM    CLERK OF THE COURT
BY: _____
DEPARTMENT  220              P. NA  Deputy Clerk

7

8                    **SUPERIOR COURT OF CALIFORNIA**

9                        **COUNTY OF SAN FRANCISCO**

10

11  MARIE SPILMON, as Wrongful Death        )   **ASBESTOS**
    Heir, and as Successor-in-Interest to    )   No.
12  MARION SPILMON, Deceased; and            )   **C G C - 1 1 - 2 7 5 8 9 7**
    GENEVIEVE SPILMON, MARK                  )
13  SPILMON, LIA BURRIS, MARTIN              )   COMPLAINT FOR SURVIVAL,
    SPILMON, RITA LAVOY, and JOEL            )   WRONGFUL DEATH - ASBESTOS
14  SPILMON, as Legal Heirs of MARION        )
    SPILMON, Deceased,                       )
15                                           )
           Plaintiffs,                       )
16                                           )
    vs.                                      )
17                                           )
    GENERAL ELECTRIC COMPANY;                )
18  Defendants as Reflected on Exhibit 1     )
    attached to the Summary Complaint        )
19  herein; and DOES 1-8500.                 )

20

21       1.    MARION SPILMON (hereinafter and in the Complaint referred to as "decedent")

22  died on October 19, 2010, as a result of the asbestos-related diseases set forth on Exhibit A.

23       2.    MARIE SPILMON is the Successor-in-Interest to decedent.

24  ///

25  ///

26  ///

27                        THIS CASE IS SUBJECT TO
                          MANDATORY ELECTRONIC FILING
28                        PURSUANT TO AMENDED G.O. 158

K:\Injured\110221\pld\cmp-wdsrv2Met.wpd                    1
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

3.     The heirs-at-law of decedent and their relationships to the decedent are:

| NAME | AGE | RELATIONSHIP TO DECEDENT |
|------|-----|--------------------------|
| MARIE SPILMON | 51 Years | Daughter |
| GENEVIEVE SPILMON | Over 18 | Spouse |
| MARK SPILMON | Over 18 | Son |
| LIA BURRIS | Over 18 | Daughter |
| MARTIN SPILMON | Over 18 | Son |
| RITA LAVOY | Over 18 | Daughter |
| JOEL SPILMON | Over 18 | Son |

4.     Plaintiffs bring this action as specified in Section 377.60 of the Code of Civil Procedure as decedent's legal heirs.

5.     At all times prior to his death, decedent was a faithful and dutiful spouse to plaintiff GENEVIEVE SPILMON and parent to plaintiff children.

6.     Plaintiffs' claims are as set forth in ©**Brayton❖Purcell Master Complaint for [Survival] [Loss of Consortium] Wrongful Death** (hereinafter "Master Complaint") - Asbestos No. 828684 filed March 3, 2003, in San Francisco Superior Court.  A copy of the Master Complaint and General Order No. 55 may be obtained upon request from Brayton❖Purcell, and designated portions of the Master Complaint are incorporated by reference herein pursuant to the authority conferred by General Order No. 55.  Plaintiffs' claims are as set forth in said Master Complaint against defendants herein as follows:

///

///

///

| Cause of Action | DEFENDANTS* ON EXHIBITS: | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | B | B-1 | C | D | E | F | G | H | I | J | K | L | M | N |
| First (Negligence-Survival) | ⊠ | □ | | □ | | | | | | | □ | □ | | |
| Second (Products Liability-Survival) | ⊠ | □ | | □ | | | | | | | □ | □ | | |
| Third (False Representation) As to Defendant FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) only. | ⊠ | | | | | | | | | | | | | |
| Fourth (Loss of Consortium) | □ | | | | | | | | | | | | | |
| i...n (Negligence-Wrongful Death) | ⊠ | | | □ | | □ | | | | | □ | □ | □ | |
| Sixth (Products Liability-Wrongful Death) | ⊠ | | | □ | | □ | | | | | □ | □ | □ | |
| Seventh (Premises Owner/Contractor Liability) | □ | □ | ⊠ | □ | | □ | | | | | □ | □ | □ | |
| Eighth, Ninth, Tenth (Unseaworthiness, Negligence [Jones Act], Maintenance and Cure) | | | | | | | | | | | | | | |
| Eleventh (Longshore and Harbor Workers Compensation Act [LHWCA]) | | | | | ⊠ | | | | | | | | | |
| Twelfth, Thirteenth (F.E.L.A.) | | | | □ | | □ | | | | | | | | |
| Fourteenth, Fifteenth (Respiratory Safety Devices) | | | | | | | □ | | | | | | | |
| Sixteenth, Seventeenth (Brake Shoe Grinding) | | | | | | | □ | ⊠ | | | | | | |
| Eighteenth (Concert of Action) | | | | | | | | | ⊠ | | | | | |
| Nineteenth (Fraud, Deceit/Negligent Misrepresentation) | | | | | | | | | ⊠ | | | | | |
| Twentieth (Fraud and Deceit/Concealment) | | | | | | | | | | | | | | |
| Twenty-First (Fraud and Deceit/Intentional Misrepresentation) | | | | | | | | | | ⊠ | | | | |
| Twenty-Second (Fraud/Deceit - Kent) | | | | | | | | | | | □ | | | |
| Twenty-Third (Aiding/Abetting Battery - Met Life) | | | | | | | | | | | | | | ⊠ |

*and their alternate entities as set forth in the Master Complaint or on any Exhibit.

1      7.     Decedent's asbestos-related injury, date of diagnosis, employment status, and

2  history of exposure to asbestos are as stated on Exhibit A.

3      8.     Plaintiffs hereby amend the Master Complaint on file herein, to incorporate a

4  new Twenty-Third Cause of Action, set forth below, specially plead against the defendant listed

5  on Exhibit N, namely METROPOLITAN LIFE INSURANCE COMPANY.  (Plaintiffs are in

6  the process of amending the Master Complaint herein and will include this new Cause of Action

7  in said amendment.)

8              "TWENTY-THIRD CAUSE OF ACTION
                    Aiding and Abetting Battery
9       [Against Metropolitan Life Insurance Company
10           and Does 7501-7900, Inclusive]

11     AS AND FOR A FURTHER, TWENTY-THIRD, SEPARATE AND DISTINCT

12  CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF(S)

13  COMPLAINS OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY,

14  DEFENDANTS ON EXHIBIT N, DOES 7501-7900, THEIR ALTERNATE ENTITIES AND

15  EACH OF THEM, AND ALLEGES AS FOLLOWS:

16     239.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

17  and every allegation of the First through Third and Eighteenth, Nineteenth, Twentieth, and

18  Twenty-First Causes of Action as though fully set forth herein.  (As used throughout this cause

19  of action, 'plaintiff' refers to all named plaintiffs and/or all named decedents from whom the

20  named plaintiffs' injuries may derive.)

21     240.  This cause of action is for the aiding and abetting of battery by METROPOLITAN

22  LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical

23  director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation

24  ("J-M").

25     241.  Plaintiff is informed and believes, and thereon alleges, that at all times herein

26  mentioned defendant MET LIFE was and is a corporation organized and existing under and by

27  virtue of the laws of the State of New York or the laws of some other state or foreign

28  jurisdiction, and that this defendant was and is authorized to do and/or was and is doing

1   business in the State of California, and regularly conducted or conducts business in the County

2   of San Francisco, State of California.  At times relevant to this cause of action, MET LIFE was

3   an insurer of J-M.

4       242.  Plaintiff, was exposed to asbestos-containing dust created by the use of the

5   asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

6   asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease

7   and injuries.

8       243.  Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-

9   related disease in Canadian mines and mills, including those of J-M.  Those studies revealed

10   that miners and mill workers were contracting asbestosis at relatively low levels of dust.

11   McGill University, which conducted the studies, sought permission from MET LIFE to publish

12   the results but they were never published.  MET LIFE prepared its own report of these studies.

13       244.  Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.

14   plants manufacturing asbestos-containing products, including a J-M plant.  Those studies

15   showed that workers in substantial numbers were contracting asbestosis, at levels less than what

16   became the Threshold Limit Value ("TLV") of 5mppcf.  The MET LIFE report was never

17   published or disseminated except to plant owners, including J-M.

18       245.  In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,

19   New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant

20   studies.  They were never published.

21       246.  In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

22   LIFE that it should issue a report of its studies.

23       247.  MET LIFE submitted a draft of its report to J-M.  J-M requested, for legal and

24   business reasons, that certain critical parts of the draft be changed.  MET LIFE's official in

25   charge was Lanza.  MET LIFE through Lanza did make changes that J-M requested, including:

26       (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

27               should be less than that for silica;

28   ///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

(b)     Addition of the phrase that asbestosis clinically appeared to be milder than silicosis.

The report, thus altered, was published in 1935. It was misleading, and intentionally so, because it conveyed the incorrect propositions that asbestosis was a less serious disease process than silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases than was the case for silica dust.

248. MET LIFE had a close relationship with J-M. It invested money in J-M. It provided group health and life insurance to J-M. MET LIFE IN 1934 agreed to supply industrial hygiene services to J-M, including dust counts, training employees to monitor dust levels, examining employees, and recommending protective equipment. MET LIFE and Lanza were viewed as experts on industrial dusts.

249. In 1933, MET LIFE through Lanza issued the following advices to J-M:

(a)     Disagreeing with the recommendation of a J-M plant physician, MET LIFE advised against warning workers of the fact that asbestos dust is hazardous to their health, basing its advice in view of the extraordinary legal situation;

(b)     When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

250. J-M followed the MET LIFE advices and did not warn its workers, including plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

251. In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF"). One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

252. MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust. MET LIFE was aware of data

1  from its own, unpublished reports that showed that level was too high for asbestos dust.  MET

2  LIFE nonetheless promoted that TLV as proper.

3      253.  In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the

4  AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.

5  That report showed that workers exposed to less than the recommended maximum levels of

6  dust were developing disease.  MET LIFE was a member of the IHF and Lanza was on its

7  medical committee.  The Hemeon report, which was supplied to J-M and other owners, never

8  was published.

9      254.  In 1936, J-M and other asbestos companies agreed with a leading medical research

10  facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the

11  others retained control over publication of the results.  In 1943 Saranac's Dr. Leroy Gardner, in

12  charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long

13  fiber asbestos contracted cancer.

14      255.  Dr. Gardner died in 1946.  J-M and other companies wanted parts of the Saranac

15  results published and enlisted the assistance of MET LIFE's Lanza.  J-M and other companies

16  decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as

17  Saranac's critique of existing dust standards.  Lanza directed Saranac to delete the offending

18  materials.  Saranac did so, and the altered report was published in 1951 by Saranac's Dr.

19  Vorwald, in the *AMA Archives of Industrial Hygiene*.

20      256.  Lanza left MET LIFE at the end of 1948, and took a position at New York

21  University, funded by MET LIFE.  He continued to misrepresent that asbestos does not cause

22  cancer into the 1950s.

23      257.  The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

24  official was on its medical committee, through Drs. Braun and Truan conducted a study of

25  Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in

26  persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken,

27  and the report published in 1958 contained the false conclusion that asbestos exposure alone did

28  not increase the risk of lung cancer.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

258. The false and misleading reports that a link between asbestos exposure and cancer was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low or zero.

259. J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them. As MET LIFE advised, J-M did not warn its workers of the hazard. J-M committed battery on workers in its plants, including plaintiffs' decedent, by that conduct.

260. MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers. MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff's decedent, through MET LIFE's conduct described above, including by:

(a)     Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff's decedent;

(b)     Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe TLV which specified maximum levels of silica dust, and promoting a false and unsafe TLV which specified maximum levels of dust for workers, including plaintiffs' decedent, which MET LIFE knew was wrong through its own studies;

(c)     Advising J-M to keep certain workers continuing to work at dusty areas in the plant even after J-M was aware that their lungs showed asbestos-induced changes, lest other workers including plaintiffs' decedent be alerted to the dangers of working in the dust.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth."

///

///

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

9.    Plaintiffs do not  make a claim for either false representation or punitive

damages against any named defendant herein, except as against defendant FOSTER WHEELER

LLC (FKA FOSTER WHEELER CORPORATION).

Dated:  9/11/11                           BRAYTON❖PURCELL LLP


By: _____
        David R. Donadio
        Attorneys for Plaintiffs

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT 1

# EXHIBIT 1 - LIST OF DEFENDANTS

GENERAL ELECTRIC COMPANY
FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)
METROPOLITAN LIFE INSURANCE COMPANY
HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)
WESTERN MacARTHUR COMPANY
MacARTHUR COMPANY
WESTERN ASBESTOS COMPANY
KAISER VENTURES LLC
YARWAY CORPORATION
ATLAS VALVE COMPANY, INC.
and DOES 1-8500,

    Defendants.

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT A

1

## EXHIBIT A

2    Decedent's exposure to asbestos and asbestos-containing products occurred at various

3    locations both inside and outside the State of California, including but not limited to:

4

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy | Naval Station, Great Lakes, IL | Fireman | 4/1944 - 8/1944 |
| | PICKING (DD-685) | | 8/1944 - 12/1945 |
| U. S. Navy | SEIVER (APA-233) | Machinist Mate | 1/1946 - 6/1946 |
| | Hunters Point Naval Shipyard, San Francisco, CA | | |
| U. S. Navy | Various locations, including, but not limited to: | Machinist Mate | 3/1/1950- 9/30/1969 |
| | GENERAL J. C. BRECKINRIDGE (AP-176) | | 3/24/1950- 4/1/1950 |
| | Naval Supply Center, Pearl Harbor, HI | | 3/1950-7/1950 |
| | BRUSH (DD-745) | Machinist Mate (2nd Class) | 7/1950-12/1950 |
| | LAFFEY (DD-724) | Machinist Mate (2nd Class) | 1/1951-10/1953 |
| | ARD-16 | | 1/1954-3/1954 |
| | Boston Naval Shipyard, Boston, MA | | |
| | Naval Air Station, Newport, RI | | |
| | CORAL SEA (CVA-43) | | 4/1954-5/1956 |
| | Norfolk Naval Shipyard, Portsmouth, VA | | |

28    ///

EXHIBIT A

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

EXHIBIT A (cont'd.)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U. S. Navy (cont'd.) | Various locations, including, but not limited to: | Machinist Mate | 3/1/1950-9/30/1969 |
| | Naval Station Great Lakes, IL | | 6/1956-2/1960 |
| | KAWISHIWI (AO-146) | Chief Petty Officer, Machinist Mate Master Chief | 4/1960-1/1966 |
| | Pearl Harbor Naval Shipyard, Honolulu, HI | | |
| | Naval Repair Facility, Subic Bay, Philippines | | |
| | Ports in Vietnam and the Philippines | | |
| | Leadership School, Great Lakes, IL | Battalion Commander | 3/1966-4/1966 |
| | Naval Station, Great Lakes, IL | Battalion Commander | 4/1966-9/1969 |
| Triple P, Inc. Necedah, WI 54646 | Triple P Gaskets Necedah, WI | Maintenance Mechanic | 4/1971 - 12/1978 |

Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the decedent, including, but not limited to breathing difficulties and/or other lung damage, and ultimately, death. Decedent was diagnosed with lung cancer on or about May 2008, and with asbestosis and asbestos-related pleural disease on or about April 2009.

Decedent retired from his last place of employment as a result of becoming disabled due to an illness not related to asbestos. He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

EXHIBIT A

# EXHIBIT B

EXHIBIT B

DEFENDANTS

GENERAL ELECTRIC COMPANY
FOSTER WHEELER LLC (FKA FOSTER
  WHEELER CORPORATION)
METROPOLITAN LIFE INSURANCE
  COMPANY
HUNTINGTON INGALLS INCORPORATED
  (FKA NORTHROP GRUMMAN
    SHIPBUILDING, INC.)

WESTERN MacARTHUR COMPANY
MacARTHUR COMPANY
WESTERN ASBESTOS COMPANY
KAISER VENTURES LLC
YARWAY CORPORATION
ATLAS VALVE COMPANY, INC.
DOES 1-800

ALTERNATE ENTITY

GENERAL ELECTRIC COMPANY

MATTERN X-RAY
HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED
TRUMBULL ELECTRIC MANUFACTURING COMPANY
G E INDUSTRIAL SYSTEMS
CURTIS TURBINES
PARSONS TURBINES
GENERAL ELECTRIC JET ENGINES

FOSTER WHEELER LLC

FOSTER WHEELER CORPORATION

WESTERN MacARTHUR
  COMPANY

WESTERN ASBESTOS CO.
MAC ARTHUR COMPANY
BAY CITIES ASBESTOS COMPANY
F.K. PINNEY, INC.

KAISER VENTURES LLC

KAISER VENTURES, INC.
OREGON SHIPBUILDING CORPORATION
KAISER STEEL RESOURCES, INC.
KAISER CO., INC.
KAISER STEEL CORPORATION
KAISER RESOURCES, INC.
KAISER SHIPYARD - VANCOUVER
KSC RECOVERY, INC. (Successor to the Bankruptcy Estate
  of Kaiser Steel Corporation)

YARWAY CORPORATION

YARNALL-WARING COMPANY
YARNALL-WARING CO.

EXHIBIT B

16
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT C

EXHIBIT C

DEFENDANTS

WESTERN MacARTHUR COMPANY
MacARTHUR COMPANY
WESTERN ASBESTOS COMPANY
DOES 1001-2000

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| WESTERN MacARTHUR COMPANY/MacARTHUR COMPANY/WESTERN ASBESTOS COMPANY | Various | Various |

EXHIBIT C

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT H

1                                    <u>EXHIBIT H</u>

2    <u>DEFENDANTS</u>

3    METROPOLITAN LIFE INSURANCE COMPANY
      DOES 5000-8000

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                              EXHIBIT H

K:\Injured\110221\pld\cmp-wdsrv2Met.wpd             20

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT I

1

<u>EXHIBIT 1</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 5000-7500

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT 1

K:\Injured\11022\1\pld\lcmp-wdsrv2Met.wpd

22

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT J

1  EXHIBIT J

2  DEFENDANTS

3  METROPOLITAN LIFE INSURANCE COMPANY
   DOES 7400-7500

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  EXHIBIT J

K:\Injured\t110221\pld\cmp-wdsrv2Met.wpd
24
COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS

# EXHIBIT N

EXHIBIT N

DEFENDANTS

METROPOLITAN LIFE INSURANCE COMPANY
DOES 7501-7900

EXHIBIT N

K:\Injured\110221\pld\cmp-wdsrv2Met.wpd

26

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS