CONSENTPENDING

# United States District Court
# District of Massachusetts (Boston)
# CIVIL DOCKET FOR CASE #: 1:11-cv-12138-JCB

Anne Gillis v. Phelps Dodge Industries, Inc. et al
Assigned to: Magistrate Judge Jennifer C. Boal
Demand: $1,000,000
Case in other court: Middlesex Superior Court, 09-04998
Cause: 28:1442 Notice of Removal

Date Filed: 12/02/2011
Jury Demand: Both
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

## Plaintiff

**Anne Gills**
*Individually and as Executrix of the*
*Estate Edward A. Gillis*

V.

## Defendant

**Phelps Dodge Industries, Inc.**     represented by   **Erica Tennyson**
Day Pitney LLP
One International Place
Boston, MA 02110
617-345-4600
Fax: 617-345-4745
Email: etennyson@daypitney.com
*ATTORNEY TO BE NOTICED*

**William S. Rogers , Jr.**
Day Pitney LLP
One International Place
Boston, MA 02110
617-345-4684
Fax: 617-345-4745
Email: wsrogers@daypitney.com
*ATTORNEY TO BE NOTICED*

## Defendant

**American Optical Corporation**

## Defendant

**Anchor Packing Company**

## Defendant

**A.W. Chesterton Company**

## Defendant

**Bayer Cropscience, Inc.**
*formerly known as*
Aventis Cropscience USA, Inc.
*formerly known as*
Rhone Poulenc AGCompany, Inc.
*formerly known as*
Union Carbide Agricultural Products,
Inc.
*formerly known as*
Amchem Products Inc.

<u>Defendant</u>

**Bird, Inc.**

<u>Defendant</u>

**Bondex International, Inc.**
*a subsidiary of Bondex Company*

<u>Defendant</u>

**Buffalo Pumps, Inc.**

<u>Defendant</u>

**CBS Corporation**
*formerly known as*
Viacom, Inc.
*formerly known as*
Westington House Electrical
Corporation

<u>Defendant</u>

**Certainteed Corporation**

<u>Defendant</u>

**Cleaver-Brooks, Inc.**

<u>Defendant</u>

**Conwed Corporation**

<u>Defendant</u>

**Crown Cork & Seal Company USA,
Inc.**
*formerly known as*
Crown, Cork & Seal Company, Inc.

<u>Defendant</u>

**Dana Companies LLC**
*formerly known as*
Dana Corporation

**Defendant**

**DAP Products, Inc.**

**Defendant**

**Elliott Turbomachinery Company, Inc.**

**Defendant**

**Ericcson, Inc.**

**Defendant**

**Fairbanks Morse Pump**

**Defendant**

**Foster Wheeler Energy Corporation**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**Garlock Sealing Technology**
*formerly known as*
Garlock, Inc.

**Defendant**

**General Cable Industries, Inc.**

**Defendant**

**General Insulation Company**

**Defendant**

**Georgia Pacific LLC**
*formerly known as*
Georgia Pacific Corporation

**Defendant**

**The GoodYear Tire & Rubber Company**

**Defendant**

**Gould Pumps, Inc.**
*a subsidiary of ITT Industries, Inc.*

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**Kaiser Gypsum Company, Inc.**

**Defendant**

**National Service Industries, Inc.**
*as successor in interest to North Brothers, Inc.*

<u>Defendant</u>

**New England Insulation Company**

<u>Defendant</u>

**The Okonite Company**

<u>Defendant</u>

**Owens-Illinois, Inc.**
*formerly known as*
Owens Bottle Machine Corp.
*formerly known as*
Owens Bottle Co.
*formerly known as*
Owen-Illinois Glass Co.

<u>Defendant</u>

**Rockbestos Suprenant Cable Corporation**
*formerly known as*
Rockbestos Company

<u>Defendant</u>

**RT Vanderbuilt Company, Inc.**

<u>Defendant</u>

**Union Carbide Corporation**

<u>Defendant</u>

**Viking Pumps, Inc.**

<u>Defendant</u>

**Warren Pumps, LLC**

<u>Defendant</u>

**Yarway Corporation**

<u>Defendant</u>

**York-Shipley Global**
*a Division of Aesys Technologies, LLC*

<u>Defendant</u>

**Zurn Industries, Inc.**
*also known as*
Erie City Iron Works

| Date Filed | # | Docket Text |
|---|---|---|
| 12/02/2011 | 1 | NOTICE OF REMOVAL by Phelps Dodge Industries, Inc. from Middlesex Superior Court, case number 09-4998. ( Filing fee: $ 350, receipt number 0101-3699122 Fee Status: Filing Fee paid) (Attachments: # 1 Exhibit A - Complaint, Summons, Civil Action Cover Sheet, # 2 Exhibit B - Plaintiff's Disclosure Form, # 3 Civil Cover Sheet, # 4 Category Form)(Tennyson, Erica) (Entered: 12/02/2011) |
| 12/02/2011 | 2 | CORPORATE DISCLOSURE STATEMENT by Phelps Dodge Industries, Inc.. (Tennyson, Erica) (Entered: 12/02/2011) |
| 12/02/2011 | 3 | NOTICE of Appearance by William S. Rogers, Jr on behalf of Phelps Dodge Industries, Inc. (Rogers, William) (Entered: 12/02/2011) |
| 12/06/2011 | 4 | NOTICE of Case Assignment. Magistrate Judge Jennifer C. Boal assigned to case. Plaintiff's counsel, or defendant's counsel if this case was initiated by the filing of a Notice of Removal, are directed to the attached General Order and Notice regarding Consent to Proceed before the Magistrate Judge. These documents will be mailed to counsel not receiving notice electronically. (Abaid, Kimberly) (Entered: 12/06/2011) |
| 12/06/2011 | | Certified Copy of Notice of Removal Provided to Defense Counsel by mail (Paine, Matthew) (Entered: 12/06/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/08/2011 12:28:07 | | |
| **PACER Login:** db0024 | **Client Code:** | 405000/114950/3142 |
| **Description:** Docket Report | **Search Criteria:** | 1:11-cv-12138-JCB |
| **Billable Pages:** 4 | **Cost:** | 0.32 |

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 09-4998 | Trial Court of Massachu Superior Court Departr County: _____ |
|---|---|---|

40367599
Oct 14 2011
3:22PM

| PLAINTIFF(S) Anne Gillis, Individually and as Executrix of the Estate of Edward A. Gillis | DEFENDANT(S) American Optical Corporation, et al. |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE David Jagolinzer The Ferraro Law Firm, 4000 Ponce de Leon Blvd., #700 Miami, FL 33146   (305) 375-0111 Board of Bar Overseers number:  643971 | ATTORNEY (if known)

**COPY** |
|---|---|

### Origin code and track designation

Place an x in one box only:

- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 & 104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B19 | Asbestos Litigation | ( A) | ( X ) Yes     ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . $
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . $
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . $
4. Total physical therapy expenses . . . . . . . . . . . . . . . $
5. Total other expenses (describe) . . . . . . . . . . . . . . . $
Subtotal $

B. Documented lost wages and compensation to date . . . . . . . . $
C. Documented property damages to date . . . . . . . . . . . . . . . . $
D. Reasonably anticipated future medical and hospital expenses . . . $
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . $
F. Other documented items of damages (describe) **(PLEASE SEE ATTACHED)** $

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

**(PLEASE SEE ATTACHED)**

In Excess of
$ 1 million
**TOTAL** $

*FILED IN THE OFFICE OF THE CLERK OF COURTS FOR THE COUNTY OF MIDDLESEX DEC 23 2009 CLERK*

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

**TOTAL** $ . . . . . . . . . .

**PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT**

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____     DATE: 12/22/09

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

## **"Schedule A"**

F.     Other documented items of damages (describe)

This is an asbestos related personal injury action.   The Plaintiff alleges that he/she contracted an asbestos related disease as a result of exposure to the various defendants' asbestos and/or asbestos related products.

G.     Brief description of plaintiff's injury, including nature and extent of injury (describe).

As a result of the facts stated in paragraph F above, plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, economic losses including expenses for medical care and treatment and other losses, which plaintiff has suffered or will suffer in the future which exceed $25,000.00.

# COMMONWEALTH OF MASSACHUSETTS



**MIDDLESEX: ss.**

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

Anne Gillis, Individually and as
Executrix of the Estate of
Edward A. Gillis,

    Plaintiffs,

v.

Civil Action
No.:

**09-4998**

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
DEC 2 3 2009

CLERK

**COMPLAINT FOR
WRONGFUL DEATH**

AMERICAN OPTICAL CORPORATION,
ANCHOR PACKING COMPANY,
A.W. CHESTERTON COMPANY,
BAYER CROPSCIENCE, INC. (f/k/a AVENTIS CROPSCIENSE USA, INC. RHONE
    POULENC AG COMPANY, INC. f/k/a UNION CARBIDE AGRICULTURAL
    PRODUCTS, INC. f/k/a AMCHEM PRODUCTS, INC., A Successor to BENJAMIN
    FOSTER COMPANY),
BIRD, INC.,
BONDEX INTERNATIONAL, INC., a subsidiary of BONDEX COMPANY,
BUFFALO PUMPS, INC.,
CBS CORPORATION, f/k/a VIACOM, INC. successor by merger to CBS CORPORATION
    f/k/a WESTINGHOUSE ELECTRIC CORPORATION,
CERTAINTEED CORPORATION,
CLEAVER-BROOKS, INC.,
CONWED CORPORATION,
CROWN CORK & SEAL COMPANY USA INC., f/k/a CROWN, CORK & SEAL
    COMPANY, INC.
DANA COMPANIES LLC, f/k/a DANA CORPORATION,
DAP PRODUCTS, INC.,
ELLIOTT TURBOMACHINERY COMPANY, INC.,
ERICCSON, INC.,
FAIRBANKS MORSE PUMP,
FOSTER WHEELER ENERGY CORPORATION, f/k/a FOSTER WHEELER
    CORPORATION,
GARLOCK SEALING TECHNOLOGY f/k/a GARLOCK, INC.,
GENERAL CABLE INDUSTRIES, INC.,
GENERAL ELECTRIC CORPORATION,
GENERAL INSULATION COMPANY,
GEORGIA PACIFIC LLC, f/k/a GEORGIA PACIFIC CORPORATION,
THE GOODYEAR TIRE & RUBBER COMPANY,
GOULD PUMPS, INC., a subsidiary of ITT INDUSTRIES, INC.,

INGERSOLL-RAND COMPANY,
KAISER GYPSUM COMPANY, INC.,
NATIONAL SERVICE INDUSTRIES, INC., as successor in interest to NORTH BROTHERS, INC.,
NEW ENGLAND INSULATION COMPANY,
THE OKONITE COMPANY,
OWENS-ILLINOIS, INC. f/k/a OWENS BOTTLE MACHINE CORP f/k/a OWENS BOTTLE CO f/k/a OWENS-ILLINOIS GLASS CO.,
PHELPS-DODGE INDUSTRIES, INC,
ROCKBESTOS SUPRENANT CABLE CORPORATION, f/k/a ROCKBESTOS COMPANY,
R T VANDERBILT COMPANY, INC.,
UNION CARBIDE CORPORATION,
VIKING PUMPS, INC.,
WARREN PUMPS, LLC,
YARWAY CORPORATION,
YORK-SHIPLEY GLOBAL, a Division of AESYS TECHNOLOGIES, LLC,
ZURN INDUSTRIES, INC., a/k/a and successor-by-merger to ERIE CITY IRON WORKS,

Defendants,                                    PLAINTIFF DEMANDS
                                               A TRIAL BY JURY

-------------------------------------------------------------------------------------------------------------

Now comes the Plaintiff, by her attorney, and files the following Complaint:

1.    PARTY PLAINTIFFS

Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, resides at 205 Linden Ponds Way, Unit 309, Hingham, MA 02043.

2.    Plaintiff's decedent, Edward Gillis, lived at 205 Linden Ponds Way, Unit 309, Hingham, MA 02043, until his death on August 5, 2008.

3.    PARTY DEFENDANTS

3A.    AMERICAN OPTICAL CORPORATION,
ANCHOR PACKING COMPANY,
A.W. CHESTERTON COMPANY,
BAYER CROPSCIENCE, INC. (f/k/a AVENTIS CROPSCIENSE USA, INC. RHONE POULENC AG COMPANY, INC. f/k/a UNION CARBIDE AGRICULTURAL PRODUCTS, INC. f/k/a AMCHEM PRODUCTS, INC., A Successor to BENJAMIN FOSTER COMPANY),
BIRD, INC.,
BONDEX INTERNATIONAL, INC., a subsidiary of BONDEX COMPANY,
BUFFALO PUMPS, INC.,
CBS CORPORATION, f/k/a VIACOM, INC. successor by merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION,

CERTAINTEED CORPORATION,
CLEAVER-BROOKS, INC.,
CONWED CORPORATION,
CROWN CORK & SEAL COMPANY USA INC., f/k/a CROWN, CORK & SEAL
    COMPANY, INC.
DANA COMPANIES LLC, f/k/a DANA CORPORATION,
DAP PRODUCTS, INC.,
ELLIOTT TURBOMACHINERY COMPANY, INC.,
ERICCSON, INC.,
FAIRBANKS MORSE PUMP,
FOSTER WHEELER ENERGY CORPORATION, f/k/a FOSTER WHEELER
    CORPORATION,
GARLOCK SEALING TECHNOLOGY f/k/a GARLOCK, INC.,
GENERAL CABLE INDUSTRIES, INC.,
GENERAL ELECTRIC CORPORATION,
GENERAL INSULATION COMPANY,
GEORGIA PACIFIC LLC, f/k/a GEORGIA PACIFIC CORPORATION,
THE GOODYEAR TIRE & RUBBER COMPANY,
GOULD PUMPS, INC., a subsidiary of ITT INDUSTRIES, INC.,
INGERSOLL-RAND COMPANY,
KAISER GYPSUM COMPANY, INC.,
NATIONAL SERVICE INDUSTRIES, INC., as successor in interest to NORTH BROTHERS,
    INC.,
NEW ENGLAND INSULATION COMPANY,
THE OKONITE COMPANY,
OWENS-ILLINOIS, INC. f/k/a OWENS BOTTLE MACHINE CORP f/k/a OWENS BOTTLE
    CO f/k/a OWENS-ILLINOIS GLASS CO.,
PHELPS-DODGE INDUSTRIES, INC,
ROCKBESTOS SUPRENANT CABLE CORPORATION, f/k/a ROCKBESTOS COMPANY,
R T VANDERBILT COMPANY, INC.,
UNION CARBIDE CORPORATION,
VIKING PUMPS, INC.,
WARREN PUMPS, LLC,
YARWAY CORPORATION,
YORK-SHIPLEY GLOBAL, a Division of AESYS TECHNOLOGIES, LLC,
ZURN INDUSTRIES, INC., a/k/a and successor-by-merger to ERIE CITY IRON WORKS.

As used in this Complaint for Wrongful Death, the term "defendant" shall include any party defendants identified in paragraphs 3A-2 hereof, and their predecessors, which shall include, but is not limited to, any person, corporation, company or business entity which formed part of any combination, consolidation, merger or reorganization from which any party defendant was created or was the surviving corporation; whose assets, stock, property, products or products

line was acquired by any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

4.     The Plaintiff's cause of action arises from the defendants:  (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

5.     Plaintiff's decedent, Edward Gillis, was exposed to Defendants' asbestos and asbestos-containing materials while working as an electrician in Massachusetts beginning in 1944.

6.     During the period of time set forth in Paragraph 5, the decedent was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations.

7.     The asbestos and asbestos-containing products which the decedent was exposed to were mined, milled, manufactured, fabricated, supplied, and/or sold by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

8.     At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos and asbestos-containing products.

9.     At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations and reached the decedent without any substantial change in the condition of the product or products from the time they were sold.

## COUNT I

## NEGLIGENCE

10.     Plaintiff realleges the allegations of Paragraphs 1 through 9 of the Complaint, and by reference, makes them part of this Count.

11.     It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabricating, testing, inspection, production, marketing, packaging and sale of their asbestos and asbestos-containing products.

12.     It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos products, and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

13.     It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, consumers, and users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products.

14.     Completely disregarding the aforesaid duties, the defendant corporations, breached their duties by: (a) failing to warn the decedent of the dangers, characteristics, and potentialities of their asbestos-containing product or products when the defendant corporations knew or should have known that exposure to their asbestos-containing products would cause disease and injury;  (b) failing to warn the decedent of the dangers to which he was exposed when they knew or should have known of the dangers;  (c) failing to exercise reasonable care to warn the decedent of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working within or near or being exposed to their asbestos and asbestos-containing products;  (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos-containing product or products;  (e) failing to test their asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure therefore;  (f) failing to conduct such research as should have been conducted in the

exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products;  (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products;  (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff of the dangers, hazards, and potentialities discovered;  (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and, (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabricating, supply, or sale of their asbestos and asbestos-containing products.

15.    As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporation the plaintiff's decedent developed asbestosis and other asbestos-related diseases, as a result of which plaintiff's decedent incurred medical expenses, suffered a reduction in his life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in his enjoyment of life.

16.    The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

COUNT II

BREACH OF EXPRESSED AND IMPLIED WARRANTIES

17.    Plaintiff realleges the allegations of Paragraphs 1 through 16 of the Complaint, and by reference, makes them part of this count.

18.    The decedent was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, sec. 2-318, as the defendants knew or

had reason to know that their asbestos-containing products would be used in the construction and electrical industry and that individuals such as the decedent would come in contact with such asbestos materials.

19.    The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary and the particular purposes and requirements of decedent.

20.    The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

21.    The decedent relied upon the defendants' skill or judgment in selecting suitable insulation or construction products for safe use.

22.    The defendants breached these warranties, in that the asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

23.    As a direct and proximate result of the defendants' breach of warranties, the decedent developed asbestosis and other asbestos-related diseases, which eventually caused his premature death.  Prior to his death, Edward Gillis endured great mental and physical pain and suffering, and incurred medical expenses in connection with the treatment of asbestosis and other asbestos-related diseases.   Furthermore, the Estate of Edward Gillis has incurred funeral expenses and other expenses occasioned by his death.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

## COUNT III

### WRONGFUL DEATH

24.    Plaintiff realleges the allegations of Paragraphs 1 through 23 of the Complaint, and by reference, makes them part of this count.

25.    As a result of working with, around or near others who worked with, around or

near asbestos materials manufactured, supplied, distributed and/or installed by defendants, decedent contracted asbestosis and other asbestos-related diseases which substantially contributed to his death on August 5, 2008.

26.     Decedent is survived by his wife, Anne Gillis, who by reason of said death has been deprived of services, protection, care, society, companionship, comfort, guidance, counsel, and advice of the said plaintiff's decedent.  In addition, the estate of plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of the plaintiff's decedent.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

COUNT IV

LOSS OF CONSORTIUM

27.     Plaintiff realleges the allegations of Paragraphs 1 through 26 of the Complaint, and by reference, makes them part of this count.

28.     The Plaintiff, Anne Gillis is the widow of Edward Gillis, and at all pertinent times was the wife of Edward Gillis.

29.     As a direct and proximate result of the breach of duty and wrongdoing of the defendants and the resultant injury and death of Edward Gillis, as more particularly described in Counts I, II, and III, the Plaintiff, Anne Gillis, suffers a loss of her right to consortium with her husband, a loss of companionship, and suffers great mental anguish.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

COUNT V

MALICIOUS, WILLFUL, WANTON AND RECKLESS

CONDUCT OR GROSS NEGLIGENCE

30.     Plaintiff realleges the allegations of Paragraphs 1 through 29 of the Complaint, and by reference, makes them part of this count.

31.     As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly indicating that asbestos and asbestos-containing products were hazardous to the health and safety of Edward Gillis and others in his position.

32.     The Defendants, or some of them, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of Edward Gillis and all other persons exposed to the products.

33.     The defendants, or some of them, since the 1930's have had numerous workmen's compensation claims filed against them by former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers.

34.     Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of the defendants.

35.     The defendant acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of the decedent and other users and consumers, knowing the dangerous characteristics and propensities of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

36.     Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence in marketing their hazardous asbestos and asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the plaintiff is entitled to compensatory damages.

**WHEREFORE,** Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

Plaintiff demands a trial by jury on all issues.

DATED: _12/22/09_

Respectfully submitted,

THE FERRARO LAW FIRM
4000 Ponce de Leon Boulevard
Suite 700
Miami, Florida 33146
(305) 375-0111

By: _____
JAMES L. FERRARO, ESQ.
B.B.O. No.: 545465
DAVID A. JAGOLINZER, ESQ.
B.B.O. No.: 643971

## "Schedule A"

F.     Other documented items of damages (describe)

This is an asbestos related personal injury action.   The Plaintiff alleges that he/she contracted an asbestos related disease as a result of exposure to the various defendants' asbestos and/or asbestos related products.

G.     Brief description of plaintiff's injury, including nature and extent of injury (describe).

As a result of the facts stated in paragraph F above, plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, economic losses including expenses for medical care and treatment and other losses, which plaintiff has suffered or will suffer in the future which exceed $25,000.00.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ANNE GILLIS, Individually and as
Executrix of the Estate of EDWARD A. GILLIS,

*Plaintiff,*

v.

AMERICAN OPTICAL CORPORATION,
ANCHOR PACKING COMPANY,
A.W. CHESTERTON COMPANY,
BAYER CROPSCIENCE, INC. (f/k/a AVENTIS
     CROPSCIENSE USA, INC. RHONE POULENC AG
     COMPANY, INC. f/k/a UNION CARBIDE
     AGRICULTURAL PRODUCTS, INC. f/k/a AMCHEM
     PRODUCTS INC., a Successor to BENJAMIN FOSTER
     COMPANY),
BIRD, INC.,
BONDEX INTERNATIONAL, INC., a subsidiary of
     BONDEX COMPANY,
BUFFALO PUMPS, INC.,
CBS CORPORATION, f/k/a VIACOM, INC., successor by
     merger to CBS CORPORATION f/k/a WESTINGHOUSE
     ELECTRICAL CORPORATION,
CERTAINTEED CORPORATION,
CLEAVER-BROOKS, INC.,
CONWED CORPORATION,
CROWN CORK & SEAL COMPANY USA INC., f/k/a
     CROWN, CORK & SEAL COMPANY, INC.
DANA COMPANIES LLC, f/k/a DANA CORPORATION,
DAP PRODUCTS, INC.,
ELLIOTT TURBOMACHINERY COMPANY, INC.,
ERICCSON, INC.,
FAIRBANKS MORSE PUMP,
FOSTER WHEELER ENERGY CORPORATION, f/k/a
     FOSTER WHEELER CORPORATION,
GARLOCK SEALING TECHNOLOGY f/k/a GARLOCK,
     INC.,
GENERAL CABLE INDUSTRIES, INC.,
GENERAL INSULATION COMPANY,
GEORGIA PACIFIC LLC, f/k/a GEORGIA PACIFIC
     CORPORATION,
THE GOODYEAR TIRE & RUBBER COMPANY,
GOULD PUMPS, INC., a subsidiary of ITT INDUSTRIES,

Civil Action No. _____

**NOTICE OF REMOVAL**

**DEMAND FOR JURY TRIAL**

11cv12138-JCB



INC.,
INGERSOLL-RAND COMPANY,
KAISER GYPSUM COMPANY, INC.,
NATIONAL SERVICE INDUSTRIES, INC., as successor in
    interest to NORTH BROTHERS, INC.,
NEW ENGLAND INSULATION COMPANY,
THE OKONITE COMPANY,
OWENS-ILLINOIS, INC. f/k/a OWENS BOTTLE
    MACHINE CORP. f/k/a OWENS BOTTLE CO. f/k/a
    OWEN-ILLINOIS GLASS CO.,
PHELPS DODGE INDUSTRIES,
ROCKBESTOS SUPRENANT CABLE CORPORATION,
    f/k/a ROCKBESTOS COMPANY,
R T VANDERBILT COMPANY, INC.,
UNION CARBIDE CORPORATION,
VIKING PUMPS, INC.,
WARREN PUMPS, LLC,
YARWAY CORPORATION,
YORK-SHIPLEY GLOBAL, a Division of AESYS
    TECHNOLOGIES, LLC,
ZURN INDUSTRIES, INC., a/k/a and successor-by-merger
    TO ERIE CITY IRON WORKS,

                 *Defendants.*

TO:    CLERK OF COURT
       UNITED STATES DISTRICT COURT, DISTRICT OF MASSACHUSETTS

       PLEASE TAKE NOTICE that Defendant Phelps Dodge Industries, Inc. ("PDI"), a

defendant in the above-captioned matter, by and through its undersigned counsel, hereby files

this Notice of Removal of this action from the Superior Court of Middlesex County,

Commonwealth of Massachusetts, to the United States District Court for the District of

Massachusetts. The grounds for removal are as follows:

       1.    Plaintiff Anne Gillis ("Plaintiff"), individually and as the Executrix of the Estate

of Edward A. Gillis ("Mr. Gillis"), commenced this action by filing a Complaint for Wrongful

Death on or about December 23, 2009, in the Superior Court of Middlesex County,

Commonwealth of Massachusetts. The case was docketed as Civil Action No. 09-4998. The

83788185.3

Summons and Complaint was served on PDI on February 24, 2010, and PDI served an Acknowledgement of Service of the Complaint on February 26, 2010. (True and accurate copies of the Summons, Complaint and Civil Action Cover Sheet in Civil Action No. 09-4998 are attached hereto as Ex. A.)

2.       On July 9, 2010, Plaintiff served the Plaintiff's Motion for Leave of Court to Amend the Complaint to Add Correct Party Defendants with an attached Amended Complaint, in which the Plaintiff sought to replace the named defendant Aesys Technologies LLC, individually and as successor in interests to York Shipley, Inc., with a new defendant, Compudyne Corporation, individually and as successor in interest to York-Shipley, Inc. Neither the Plaintiff's Motion for Leave of Court to Amend the Complaint to Add Correct Party Defendants nor the Amended Complaint were ever filed with the Superior Court of Middlesex County. Instead, on or about May 19, 2011, the Plaintiff filed a Notice of Voluntary Dismissal without Prejudice as to Defendant Aesys Technologies, LLC.

3.       On October 28, 2011, Plaintiff served Notice of Filing Plaintiff's Response to Defendants' Revised Standard Request for Production of Documents and Things ("Plaintiff's Response to Standard Document Requests"). On November 1, 2010, Plaintiff served Notice of Filing Plaintiff's Answers to Defendants' Standard Interrogatories ("Plaintiff's Answers to Standard Interrogatories.").

4.       On November 8, 2011, PDI received a document from Plaintiff's counsel entitled Plaintiff's Notice of Filing Disclosure Form. (A true and accurate copy of the Plaintiff's Disclosure Form is attached hereto as Ex. B.)

5.       The Summons, Complaint, Acknowledgement of Service, Plaintiff's Motion for Leave of Court to Amend the Complaint to Add Correct Party Defendants, Plaintiff's Response

-3-

to Standard Document Requests, Plaintiff's Answers to Standard Interrogatories, and Plaintiff's

Disclosure Form represent all of the process and pleadings served upon or by PDI.  To the best

of PDI's knowledge, no other hearings or proceedings have taken place in this action and there

are no motions pending.

6.      This action is a civil matter in which the Plaintiff seeks to recover damages due to

Mr. Gillis's alleged exposure to "Defendants' asbestos and asbestos-containing materials" while

Mr. Gillis worked as an electrician in Massachusetts beginning in 1944.

7.      The Complaint simply names PDI as a defendant and does not indicate the alleged

places of exposure or the alleged asbestos-containing products for which PDI may be responsible.

(See Ex. A.)

8.      The Plaintiff's Response to Standard Document Requests and Plaintiff's Answers

to Standard Interrogatories likewise do not indicate the alleged places of exposure or the alleged

asbestos-containing products for which PDI may be responsible.

9.      In the Exposure Sheet attached to the Plaintiff's Disclosure Form served on

November 8, 2011, the Plaintiff alleged that for the first time that "Phelps Dodge Industries, Inc."

supplied asbestos-containing wire and cable with which Mr. Gillis worked at, among other sites,

government contractor General Dynamics in Quincy, MA in 1944 to 1945 and on the USS Mason

for the United States Navy in 1945 to 1946.  (Ex. B.)

10.     The only asbestos-containing products for which PDI is responsible that were sold

to the United States Navy or permitted for use on Navy vessels were Navy shipboard electrical

cables manufactured by PDI's predecessor, Phelps Dodge Copper Products Corporation,

pursuant to contracts with the United States Navy.  Such Navy shipboard cable was

manufactured in strict compliance with detailed government specifications, including marking

-4-

and labeling specifications.  The United States Navy had superior knowledge about potential health hazards.  As a result, PDI is immune from suit under the doctrine enunciated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), and under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*  Navy shipboard electrical cable constituted the vast majority of asbestos-containing products manufactured by Phelps Dodge Copper Products Corporation.  PDI itself did not produce any asbestos-containing products.

11.     This Court has jurisdiction under the provisions of 28 U.S.C. § 1442(a)(1) because this is a civil action brought against a person acting under color of an officer or agency of the United States.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 101 and 1441(a), and Local Rule 40.1(c), because the United States District Court for the District of Massachusetts, Eastern Division, is the federal judicial district and division embracing the Superior Court of Middlesex County, Commonwealth of Massachusetts, where this action was originally filed.

13.     This notice is being filed within 30 days of November 8, 2011.

14.     The matter in dispute seeks unspecified compensatory and punitive damages against PDI and other defendants.

15.     Concurrent with the filing of this Notice, PDI will serve this Notice of Removal on Plaintiff's counsel and counsel for all parties who have appeared, but have not been dismissed, in the state court action.

16.     Pursuant to 28 U.S.C. § 1446(d) and Local Rule 81.1 of this Court, within 28 days of filing this Notice of Removal, PDI will file with the Clerk of this Court certified or attested copies of all records and proceedings in the state court and a certified or attested copy of all docket entries in the state court.

83788185.3

17.     By filing a Notice of Removal in this matter, PDI does not waive its right to object to service of process, the sufficiency of process, jurisdiction over the person, or venue, and PDI specifically reserves the right to assert any defenses and/or objections to which it may be entitled.

WHEREFORE, Defendant Phelps Dodge Industries, Inc. hereby removes the above-captioned action now pending in the Superior Court, Middlesex County, Massachusetts, to this Court.

Respectfully submitted,

PHELPS DODGE INDUSTRIES, INC.,

By its attorneys,

/s/ Erica Tennyson
William S. Rogers, Jr. (BBO #549487)
Erica Tennyson (BBO #660707)
DAY PITNEY LLP
One International Place
Boston, MA 02110
(617) 345-4600
wsrogers@daypitney.com
etennyson@daypitney.com

Dated:  December 2, 2011

## CERTIFICATE OF SERVICE

I, Erica Tennyson, hereby certify that this *Notice of Removal* filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and all counsel of record in the state court action will be served by electronic service via Lexis File & Serve on December 2, 2011.

/s/ Erica Tennyson
Erica Tennyson (BBO# 660707)

-6-

# EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 09-4998 | Trial Court of Massachu Superior Court Departm County: _____ |
|---|---|---|

LEXISNEXIS' FILE & SERVE
40367599
E-SERVICE

Oct 14 2011
3:22PM

PLAINTIFF(S) Anne Gillis, Individually and as Executrix of the Estate of Edward A. Gillis

DEFENDANT(S) American Optical Corporation, et al.

ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE David Jagolinzer
The Ferraro Law Firm, 4000 Ponce de Leon Blvd., # 700
Miami, FL 33146   (305) 375-0111
Board of Bar Overseers number:   643971

ATTORNEY (if known)

# COPY

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B19 | Asbestos Litigation | ( A) | (X) Yes     ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
1.  Total hospital expenses . . . . . . . . . . . . . . . . . . . .   $ . . . . . . . . . .
2.  Total Doctor expenses . . . . . . . . . . . . . . . . . . . .   $ . . . . . . . . . .
3.  Total chiropractic expenses . . . . . . . . . . . . . . . .   $ . . . . . . . . . .
4.  Total physical therapy expenses . . . . . . . . . . . .   $ . . . . . . . . . .
5.  Total other expenses (describe) . . . . . . . . . . . .   Subtotal $ . . . . . . . . . .

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
DEC 23 2009
CLERK

B.  Documented lost wages and compensation to date . . . . . .   $ . . . . . . . . . .
C.  Documented property damages to date . . . . . . . . . . . . .   $ . . . . . . . . . .
D.  Reasonably anticipated future medical and hospital expenses .   $ . . . . . . . . . .
E.  Reasonably anticipated lost wages . . . . . . . . . . . . . . .   $ . . . . . . . . . .
F.  Other documented items of damages (describe)
(PLEASE SEE ATTACHED)   $ . . . . . . . . . .

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

(PLEASE SEE ATTACHED)

In Excess of
$ 1 million
TOTAL $

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $ . . . . . . . . . . .

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record                              DATE: 12/22/09

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

### "Schedule A"

F.      Other documented items of damages (describe)

This is an asbestos related personal injury action.   The Plaintiff alleges that he/she contracted an asbestos related disease as a result of exposure to the various defendants' asbestos and/or asbestos related products.

G.      Brief description of plaintiff's injury, including nature and extent of injury (describe).

As a result of the facts stated in paragraph F above, plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, economic losses including expenses for medical care and treatment and other losses, which plaintiff has suffered or will suffer in the future which exceed $25,000.00.

## COMMONWEALTH OF MASSACHUSETTS



COPY

MIDDLESEX: ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

Anne Gillis, Individually and as
Executrix of the Estate of
Edward A. Gillis,

Civil Action

09-4998

   Plaintiffs,

v.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

DEC 23 2009

CLERK

**COMPLAINT FOR
WRONGFUL DEATH**

AMERICAN OPTICAL CORPORATION,
ANCHOR PACKING COMPANY,
A.W. CHESTERTON COMPANY,
BAYER CROPSCIENCE, INC. (f/k/a AVENTIS CROPSCIENSE USA, INC. RHONE
     POULENC AG COMPANY, INC. f/k/a UNION CARBIDE AGRICULTURAL
     PRODUCTS, INC. f/k/a AMCHEM PRODUCTS, INC., A Successor to BENJAMIN
     FOSTER COMPANY),
BIRD, INC.,
BONDEX INTERNATIONAL, INC., a subsidiary of BONDEX COMPANY,
BUFFALO PUMPS, INC.,
CBS CORPORATION, f/k/a VIACOM, INC. successor by merger to CBS CORPORATION
     f/k/a WESTINGHOUSE ELECTRIC CORPORATION,
CERTAINTEED CORPORATION,
CLEAVER-BROOKS, INC.,
CONWED CORPORATION,
CROWN CORK & SEAL COMPANY USA INC., f/k/a CROWN, CORK & SEAL
     COMPANY, INC.
DANA COMPANIES LLC, f/k/a DANA CORPORATION,
DAP PRODUCTS, INC.,
ELLIOTT TURBOMACHINERY COMPANY, INC.,
ERICCSON, INC.,
FAIRBANKS MORSE PUMP,
FOSTER WHEELER ENERGY CORPORATION, f/k/a FOSTER WHEELER
     CORPORATION,
GARLOCK SEALING TECHNOLOGY f/k/a GARLOCK, INC.,
GENERAL CABLE INDUSTRIES, INC.,
GENERAL ELECTRIC CORPORATION,
GENERAL INSULATION COMPANY,
GEORGIA PACIFIC LLC, f/k/a GEORGIA PACIFIC CORPORATION,
THE GOODYEAR TIRE & RUBBER COMPANY,
GOULD PUMPS, INC., a subsidiary of ITT INDUSTRIES, INC.,

INGERSOLL-RAND COMPANY,
KAISER GYPSUM COMPANY, INC.,
NATIONAL SERVICE INDUSTRIES, INC., as successor in interest to NORTH BROTHERS,
    INC.,
NEW ENGLAND INSULATION COMPANY,
THE OKONITE COMPANY,
OWENS-ILLINOIS, INC. f/k/a OWENS BOTTLE MACHINE CORP f/k/a OWENS BOTTLE
    CO f/k/a OWENS-ILLINOIS GLASS CO.,
PHELPS-DODGE INDUSTRIES, INC,
ROCKBESTOS SUPRENANT CABLE CORPORATION, f/k/a ROCKBESTOS COMPANY,
R T VANDERBILT COMPANY, INC.,
UNION CARBIDE CORPORATION,
VIKING PUMPS, INC.,
WARREN PUMPS, LLC,
YARWAY CORPORATION,
YORK-SHIPLEY GLOBAL, a Division of AESYS TECHNOLOGIES, LLC,
ZURN INDUSTRIES, INC., a/k/a and successor-by-merger to ERIE CITY IRON WORKS,

       Defendants,                   **PLAINTIFF DEMANDS**
                                        **A TRIAL BY JURY**

---

Now comes the Plaintiff, by her attorney, and files the following Complaint:

1.    <u>PARTY PLAINTIFFS</u>

Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis,
resides at 205 Linden Ponds Way, Unit 309, Hingham, MA 02043.

2.    Plaintiff's decedent, Edward Gillis, lived at 205 Linden Ponds Way, Unit 309,
Hingham, MA 02043, until his death on August 5, 2008.

3.    <u>PARTY DEFENDANTS</u>

3A.   AMERICAN OPTICAL CORPORATION,
ANCHOR PACKING COMPANY,
A.W. CHESTERTON COMPANY,
BAYER CROPSCIENCE, INC. (f/k/a AVENTIS CROPSCIENSE USA, INC. RHONE
    POULENC AG COMPANY, INC. f/k/a UNION CARBIDE AGRICULTURAL
    PRODUCTS, INC. f/k/a AMCHEM PRODUCTS, INC., A Successor to BENJAMIN
    FOSTER COMPANY),
BIRD, INC.,
BONDEX INTERNATIONAL, INC., a subsidiary of BONDEX COMPANY,
BUFFALO PUMPS, INC.,
CBS CORPORATION, f/k/a VIACOM, INC. successor by merger to CBS CORPORATION
    f/k/a WESTINGHOUSE ELECTRIC CORPORATION,

CERTAINTEED CORPORATION,
CLEAVER-BROOKS, INC.,
CONWED CORPORATION,
CROWN CORK & SEAL COMPANY USA INC., f/k/a CROWN, CORK & SEAL
      COMPANY, INC.
DANA COMPANIES LLC, f/k/a DANA CORPORATION,
DAP PRODUCTS, INC.,
ELLIOTT TURBOMACHINERY COMPANY, INC.,
ERICCSON, INC.,
FAIRBANKS MORSE PUMP,
FOSTER WHEELER ENERGY CORPORATION, f/k/a FOSTER WHEELER
      CORPORATION,
GARLOCK SEALING TECHNOLOGY f/k/a GARLOCK, INC.,
GENERAL CABLE INDUSTRIES, INC.,
GENERAL ELECTRIC CORPORATION,
GENERAL INSULATION COMPANY,
GEORGIA PACIFIC LLC, f/k/a GEORGIA PACIFIC CORPORATION,
THE GOODYEAR TIRE & RUBBER COMPANY,
GOULD PUMPS, INC., a subsidiary of ITT INDUSTRIES, INC.,
INGERSOLL-RAND COMPANY,
KAISER GYPSUM COMPANY, INC.,
NATIONAL SERVICE INDUSTRIES, INC., as successor in interest to NORTH BROTHERS,
      INC.,
NEW ENGLAND INSULATION COMPANY,
THE OKONITE COMPANY,
OWENS-ILLINOIS, INC. f/k/a OWENS BOTTLE MACHINE CORP f/k/a OWENS BOTTLE
      CO f/k/a OWENS-ILLINOIS GLASS CO.,
PHELPS-DODGE INDUSTRIES, INC,
ROCKBESTOS SUPRENANT CABLE CORPORATION, f/k/a ROCKBESTOS COMPANY,
R T VANDERBILT COMPANY, INC.,
UNION CARBIDE CORPORATION,
VIKING PUMPS, INC.,
WARREN PUMPS, LLC,
YARWAY CORPORATION,
YORK-SHIPLEY GLOBAL, a Division of AESYS TECHNOLOGIES, LLC,
ZURN INDUSTRIES, INC., a/k/a and successor-by-merger to ERIE CITY IRON WORKS.

     As used in this Complaint for Wrongful Death, the term "defendant" shall include any

party defendants identified in paragraphs 3A-2 hereof, and their predecessors, which shall

include, but is not limited to, any person, corporation, company or business entity which formed

part of any combination, consolidation, merger or reorganization from which any party defendant

was created or was the surviving corporation; whose assets, stock, property, products or products

line was acquired by any party defendant; whose patent rights, trademark rights, trade secrets or goodwill was acquired by any party defendant; or, which was dominated or controlled by any party defendant to such an extent that said party defendant was the "alter ego" of said corporation.

4.    The Plaintiff's cause of action arises from the defendants:  (a) transacting business in Massachusetts; (b) contracting to supply and/or sell goods in Massachusetts; (c) doing or causing a tortious act to be done within Massachusetts; and/or, (d) causing the consequence of a tortious act to occur within Massachusetts.

5.    Plaintiff's decedent, Edward Gillis, was exposed to Defendants' asbestos and asbestos-containing materials while working as an electrician in Massachusetts beginning in 1944.

6.    During the period of time set forth in Paragraph 5, the decedent was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations.

7.    The asbestos and asbestos-containing products which the decedent was exposed to were mined, milled, manufactured, fabricated, supplied, and/or sold by the defendant corporations, acting through their duly authorized agents, servants, and employees, who were then and there acting in the course and scope of their employment and in furtherance of the business of the defendants.

8.    At all times pertinent hereto, the defendant corporations were engaged in the business of mining, milling, manufacturing, fabricating, supplying, and/or selling asbestos and asbestos-containing products.

9.    At all times pertinent hereto, the asbestos products were products mined, milled, manufactured, fabricated, supplied and/or sold by the defendant corporations and reached the decedent without any substantial change in the condition of the product or products from the time they were sold.

<u>COUNT I</u>

<u>NEGLIGENCE</u>

10.      Plaintiff realleges the allegations of Paragraphs 1 through 9 of the Complaint, and by reference, makes them part of this Count.

11.      It was the duty of the defendant corporations to use and exercise reasonable and due care in the manufacture, fabricating, testing, inspection, production, marketing, packaging and sale of their asbestos and asbestos-containing products.

12.      It was also the duty of the defendant corporations to provide detailed and adequate instructions relative to the proper and safe handling and use of their asbestos and asbestos products, and to provide detailed and adequate warnings concerning any and all dangers, characteristics, and potentialities of their asbestos and asbestos-containing products.

13.      It was the continuing duty of the defendant corporations to advise and warn purchasers, consumers, users, and prior purchasers, consumers, and users of all dangers, characteristics, potentialities and defects discovered subsequent to their initial marketing or sale of their asbestos and asbestos-containing products.

14.      Completely disregarding the aforesaid duties, the defendant corporations, breached their duties by: (a) failing to warn the decedent of the dangers, characteristics, and potentialities of their asbestos-containing product or products when the defendant corporations knew or should have known that exposure to their asbestos-containing products would cause disease and injury;  (b) failing to warn the decedent of the dangers to which he was exposed when they knew or should have known of the dangers; (c) failing to exercise reasonable care to warn the decedent of what would be safe, sufficient, and proper protective clothing, equipment, and appliances when working within or near or being exposed to their asbestos and asbestos-containing products;  (d) failing to provide safe, sufficient and proper protective clothing, equipment and appliances with their asbestos-containing product or products;  (e) failing to test their asbestos and asbestos products in order to ascertain the extent of dangers involved upon exposure therefore;  (f) failing to conduct such research as should have been conducted in the

exercise of reasonable care, in order to ascertain the dangers involved upon exposure to their asbestos and asbestos-containing products; (g) failing to remove the product or products from the market when the defendant corporations knew or should have known of the hazards of exposure to their asbestos and asbestos-containing products; (h) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to adequately warn and apprise the plaintiff of the dangers, hazards, and potentialities discovered; (i) failing upon discovery of the dangers, hazards, and potentialities of exposure to asbestos to package said asbestos and asbestos-containing products so as to eliminate said dangers, hazards, and potentialities; and, (j) generally using unreasonable, careless, and negligent conduct in the manufacture, fabricating, supply, or sale of their asbestos and asbestos-containing products.

15.   As a direct and proximate result of the unreasonable, careless, and negligent conduct of the defendant corporation the plaintiff's decedent developed asbestosis and other asbestos-related diseases, as a result of which plaintiff's decedent incurred medical expenses, suffered a reduction in his life expectancy, incurred great mental and physical pain and suffering, and suffered an impairment in his enjoyment of life.

16.   The defendants knew, or with the reasonable exercise of care, should have known of the dangerous characteristics, properties, and potentialities of asbestos and asbestos-containing products.

**WHEREFORE,** Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

## COUNT II

### BREACH OF EXPRESSED AND IMPLIED WARRANTIES

17.   Plaintiff realleges the allegations of Paragraphs 1 through 16 of the Complaint, and by reference, makes them part of this count.

18.   The decedent was a person whom the defendants could reasonably have expected to use, consume, or be affected by the defendants' asbestos and asbestos-containing products within the meaning of Massachusetts General Laws c. 106, sec. 2-318, as the defendants knew or

had reason to know that their asbestos-containing products would be used in the construction and electrical industry and that individuals such as the decedent would come in contact with such asbestos materials.

19.    The defendants expressly and impliedly warranted that the asbestos and asbestos-containing products described above were merchantable, safe, and fit for their ordinary and the particular purposes and requirements of decedent.

20.    The defendants had reason to know of the particular purposes for which their asbestos and asbestos-containing products would be used.

21.    The decedent relied upon the defendants' skill or judgment in selecting suitable insulation or construction products for safe use.

22.    The defendants breached these warranties, in that the asbestos-containing products they sold were not merchantable, safe, suitable, or fit for their ordinary or particular purposes.

23.    As a direct and proximate result of the defendants' breach of warranties, the decedent developed asbestosis and other asbestos-related diseases, which eventually caused his premature death.  Prior to his death, Edward Gillis endured great mental and physical pain and suffering, and incurred medical expenses in connection with the treatment of asbestosis and other asbestos-related diseases.   Furthermore, the Estate of Edward Gillis has incurred funeral expenses and other expenses occasioned by his death.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.


## COUNT III

### WRONGFUL DEATH

24.    Plaintiff realleges the allegations of Paragraphs 1 through 23 of the Complaint, and by reference, makes them part of this count.

25.    As a result of working with, around or near others who worked with, around or

near asbestos materials manufactured, supplied, distributed and/or installed by defendants, decedent contracted asbestosis and other asbestos-related diseases which substantially contributed to his death on August 5, 2008.

26.    Decedent is survived by his wife, Anne Gillis, who by reason of said death has been deprived of services, protection, care, society, companionship, comfort, guidance, counsel, and advice of the said plaintiff's decedent.  In addition, the estate of plaintiff's decedent has incurred reasonable funeral and burial expenses as a result of the death of the plaintiff's decedent.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

## COUNT IV

### LOSS OF CONSORTIUM

27.    Plaintiff realleges the allegations of Paragraphs 1 through 26 of the Complaint, and by reference, makes them part of this count.

28.    The Plaintiff, Anne Gillis is the widow of Edward Gillis, and at all pertinent times was the wife of Edward Gillis.

29.    As a direct and proximate result of the breach of duty and wrongdoing of the defendants and the resultant injury and death of Edward Gillis, as more particularly described in Counts I, II, and III, the Plaintiff, Anne Gillis, suffers a loss of her right to consortium with her husband, a loss of companionship, and suffers great mental anguish.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

## COUNT V

### MALICIOUS, WILLFUL, WANTON AND RECKLESS

### CONDUCT OR GROSS NEGLIGENCE

30.    Plaintiff realleges the allegations of Paragraphs 1 through 29 of the Complaint, and by reference, makes them part of this count.

31.     As early as 1929, the defendants, or some of them, possessed medical and scientific data clearly indicating that asbestos and asbestos-containing products were hazardous to the health and safety of Edward Gillis and others in his position.

32.     The Defendants, or some of them, during the 1930's, 1940's, 1950's and 1960's became possessed of voluminous medical and scientific data, studies, and reports, which information conclusively established that asbestos and asbestos-containing products were hazardous to the health and safety of Edward Gillis and all other persons exposed to the products.

33.     The defendants, or some of them, since the 1930's have had numerous workmen's compensation claims filed against them by former asbestos workers or employees, or knew such claims were filed against asbestos product suppliers and manufacturers.

34.     Prompted by pecuniary motives, the defendants ignored and failed to act upon such medical and scientific data and conspired to deprive the public, and particularly the users, from access to said medical and scientific data, thereby depriving them of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of the defendants.

35.     The defendant acted maliciously, willfully, wantonly, and recklessly, or with gross negligence, by continuing to market their asbestos products, with reckless disregard for the health and safety of the decedent and other users and consumers, knowing the dangerous characteristics and propensities of said asbestos products, but still depriving those affected by the dangers from information about those dangers.

36.     Because the defendants acted maliciously, willfully, wantonly, and recklessly, or with gross negligence in marketing their hazardous asbestos and asbestos-containing products, in ignoring the medical and scientific data which was available to them, and depriving consumers, users, and the general public from that medical and scientific data, the plaintiff is entitled to compensatory damages.

**WHEREFORE**, Plaintiff, Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis, demands compensatory damages, plus interest and costs.

Plaintiff demands a trial by jury on all issues.

DATED: 12/22/09

Respectfully submitted,

THE FERRARO LAW FIRM
4000 Ponce de Leon Boulevard
Suite 700
Miami, Florida 33146
(305) 375-0111

By: _____
JAMES L. FERRARO, ESQ.
B.B.O. No.: 545465
DAVID A. JAGOLINZER, ESQ.
B.B.O. No.: 643971

**"Schedule A"**

F.      Other documented items of damages (describe)

This is an asbestos related personal injury action.   The Plaintiff alleges that he/she contracted an asbestos related disease as a result of exposure to the various defendants' asbestos and/or asbestos related products.

G.      Brief description of plaintiff's injury, including nature and extent of injury (describe).

As a result of the facts stated in paragraph F above, plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, economic losses including expenses for medical care and treatment and other losses, which plaintiff has suffered or will suffer in the future which exceed $25,000.00.

TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED: — TORT — MOTOR VEHICLE TORT — CONTRACT — EQUITABLE RELIEF — OTHER     *LD 42357*

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX , ss

SUPERIOR COURT
DEPARTMENT
OF THE
TRIAL COURT
CIVIL ACTION
No.

09-4998

Edward A. Gillis, et al. , Plaintiff(s)

v.

Phelps-Dodge Industries, Inc.
Corporation Service Company
84 State Street
Boston, MA 02109

, Defendant(s) TRUE COPY, ATTEST

### SUMMONS

To the above-named Defendant:

James L. Ferraro, Esq.

You are hereby summoned and required to serve upon ..................................................

THE FERRARO LAW FIRM ...... plaintiff's attorney, whose address is ......... 4000 Ponce de Leon ..

Blvd., #700, Miami, FL 33146 ...................................................., an answer to the complaint which is herewith

served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you

fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also

required to file your answer to the complaint in the office of the Clerk of this court at .................................... Middlesex,

Massachusetts ........................................ either before service upon plaintiff's attorney or within a

reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may

have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's

claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at ...................................................................

the ........................................................ day of ............................................

...................., in the year of our Lord ..........................................

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.



**42357**

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM NO. SUP. — 001

# EXHIBIT B



Nov  8 2011
6:54PM

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

ANNE GILLIS, Individually and as
Executrix of the Estate of
EDWARD A. GILLIS,

     Plaintiff,

MASSACHUSETTS
ASBESTOS CASES
NO.: 09-4998

v.

American Optical Corporation, et al.,

     Defendants.

_____/

## PLAINTIFF'S NOTICE OF FILING DISCLOSURE FORM

    **COMES NOW**, the above referenced Plaintiff, by and through her undersigned counsel,

and file this her Notice of Filing Disclosure Form.

    **I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was

served electronically to all counsel of record this 8th day of November, 2011.

                 Respectfully submitted,

                 THE FERRARO LAW FIRM, P.A.
                 *Attorneys for Plaintiff*
                 4000 Ponce de Leon Blvd., Suite 700
                 Miami, Florida 33146
                 Telephone: (305) 375-0111
                 Facsimile: (305) 379-6222

                 By: _____
                    DAVID A. JAGOLINZER, ESQ.
                    BBO No.: 643971

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
DEPARTMENT OF THE
TRIAL COURT

|  |  |
|---|---|
| ANNE GILLIS, Individually and as Executrix of the Estate of EDWARD A. GILLIS, )<br><br>Plaintiff, )<br>vs. )<br><br>American Optical Corporation, et al., )<br><br>Defendants, ) | CIVIL ACTION NO.: 09-4998 |

## PLAINTIFF'S DISCLOSURE FORM

DAVID A. JAGOLINZER, ESQ.
The Ferraro Law Firm, P.A.
*Attorney for Plaintiff*
4000 Ponce de Leon Blvd., Suite 700
Miami, Florida 33146
 Telephone: (305) 375-0111
 Facsimile: (305) 379-6222

# I. IDENTIFICATION OF PLAINTIFF/DEPENDENTS

## DECEDENT INFORMATION

NAME:  Edward A. Gillis

SOCIAL SECURITY NO.:  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

ADDRESS:  Not Applicable

DATE OF BIRTH:  8/14/1927                     SEX:  Male

MARITAL STATUS:  Married

## SPOUSAL INFORMATION

NAME:  Anne Gillis

ADDRESS: 205 Linden Ponds Way, Unit 309, Hingham, MA 02043

DATE OF BIRTH: 12/9/1930          DATE OF MARRIAGE: 4/17/1955

## DEPENDENTS

NAMES:  Not Applicable

DATE OF BIRTH:                     RELATIONSHIP:

## DEATH CASE INFORMATION (see attached)

DATE OF DEATH:  8/5/2009

RESIDENCE AT DEATH:  205 Linden Ponds Way, Unit 309, Hingham, MA 02043

CAUSE OF DEATH:  Respiratory Failure, Chronic Obstructive Lung Disease

AUTOPSY:  No

# II. ASBESTOS-RELATED CONDITIONS

| CONDITION/LOCATION/DESCRIPTION(including symptoms) |
| --- |
| Decedent suffered with asbestosis.  He suffered from the typical symptoms associated with associated with asbestosis including shortness of breath, inability to engage in strenuous activities, chest pain, coughing and fatigue.  Additional symptoms, if any, can be found in the related medicals. |
| **PHYSICIAN AND HOSPITAL, IF APPLICABLE (name, address)** |
| Alvin J. Schonfeld, M.D. |
| 438 W. St. James Place |
| Chicago, Illinois 60614 |
| Date of onset of Symptoms:  **Cannot Recall** |
| Date of Diagnosis: **5/15/2010** |
| |
| CONDITION/LOCATION/DESCRIPTION (including symptoms) |
| Decedent suffered with asbestosis.  He suffered from the typical symptoms associated with associated with asbestosis including shortness of breath, inability to engage in strenuous activities, chest pain, coughing and fatigue.  Additional symptoms, if any, can be found in the related medicals. |
| **PHYSICIAN AND HOSPITAL, IF APPLICABLE (name, address)** |
| Laxminarayana C. Rao |
| 2088 Oxford Circle |
| Hinckley, Ohio 44233 |
| Date of onset of Symptoms:  **Cannot Recall** |
| Date of Diagnosis:  **8/8/2009** |

# II. ASBESTOS-RELATED CONDITIONS
# (CONTINUED)

| CONDITION/LOCATION/DESCRIPTION(including symptoms) |
|---|
| Decedent suffered with asbestosis.  He suffered from the typical symptoms associated with associated with asbestosis including shortness of breath, inability to engage in strenuous activities, chest pain, coughing and fatigue.  Additional symptoms, if any, can be found in the related medicals. |
| **PHYSICIAN AND HOSPITAL, IF APPLICABLE (name, address)** |
| Neil Berman, M.D. |
| 500 Congress Street, 3rd Floor |
| Quincy, Massachusetts 02169 |
| Date of onset of Symptoms:  **Cannot Recall** |
| Date of Diagnosis:  **Various** |

# III. SMOKING HISTORY

Was the claimant ever a smoker?  **Yes**

Type of products smoked:  **CIGARETTES       CIGARS_X_PIPE**

Please document smoking history over time:

| TOBACCO PRODUCT | QUANTITY PER DAY | BRAND NAME (FILTERED/NON-FILTERED) | FROM (YEAR) | TO (YEAR) |
|---|---|---|---|---|
| **CIGARETTES** | | | | |
| **CIGAR** | One | White Owls | 1957 | 1977 |
| **PIPE** | | | | |

# IV. EMPLOYMENT AND DISABILITY INFORMATION

Was the decedent employed at time of death?   **No.**

If yes, state whether full-time or part-time and provide employers name and describe employment.

Was the decedent  retired at time of death?  **Yes**

If yes, date and reason for retirement:

**Decedent retired in 1977.**

Was decedent lookin g for employment at time of death?  **No.**

Was plaintiff disabled?   **No.**

If yes, state:

 (a)  Whether total or partial:

 (b)  Nature and extent of disability:

 (c)  Causes(s) of disability:

 (d)  Date(s) of disability:

# V. PLAINTIFF'S PRODUCT IDENTIFICATION/EXPOSURE SHEET

INSTRUCTIONS: This Section V. (Plaintiff's Product Identification/Exposure Sheet) is to be completed <u>separately for each jobsite or other exposure site</u> and for each separate employer or time period of exposure for the same site as necessary. As indicated below, specific information is to be provided separately for each product exposure. Use additional sheets as necessary where numerous products exposures are alleged at a single site.

| Name: **Edward A. Gillis** | Civil Action No.: **09-4998** |
|---|---|
| Employer if applicable:  **Various** | |
| Jobsite or other exposure site address:<br><br>**(See Attached Exposure Sheet)** | Duties at Exposure Site:<br><br>**Electrician** |
| | |
| New construction or repair of applicable: **New construction and repair** | |

**Product Exposure 1 at above site:**

| Defendant: **A.W. Chesterton Company** | Defendant Status (manufacturer installer):<br>**manufacturer** |
|---|---|
| Product Type: **Asbestos containing packing, rope and gaskets** | Brand Name: **A.W. Chesterton** |
| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** | |
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 2 at above site:**

| | |
|---|---|
| Defendant: **American Optical Corporation** | Defendant Status (manufacturer installer):<br><br>**manufacturer, distributor** |
| Product Type: **Asbestos gloves and various other asbestos containing products** | Brand Name: **American Optical** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 3 at above site:**

| Defendant: **Anchor Packing Company** | Defendant Status (manufacturer installer): **manufacturer** |
|---|---|
| Product Type: **Asbestos-containing packing** | Brand Name: **Anchor** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 4 at above site:**

| | |
|---|---|
| Defendant:  **Bayer Cropscience, Inc. f/k/a Aventis Cropscience USA, Inc.,  Rhone-Poulenc AG Co., Inc. f/k/a Union Carbide Agricultural Products, Inc. f/k/a Amchem Products, Inc., a successor to Benjamin Foster Company** | Defendant Status (manufacturer Installer): <br><br>**manufacturer, distributor** |
| Product Type: **Cements, spray, mastics, adhesives, sealants** | Brand Name: **Benjamin Foster** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 5 at above site:**

| | |
|---|---|
| Defendant: **Bird, Inc.** | Defendant Status (manufacturer installer): <br> **manufacturer, distributor** |
| Product Type: **Roofing cement, coatings, insulation** | Brand Name: **Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 6 at above site:**

| Defendant:  **Bondex International, Inc., a subsidiary of Bondex Company** | Defendant Status (manufacturer installer): <br> **manufacturer, distributor** |
|---|---|
| Product Type:  **Joint cements, joint compounds, puttys, coatings, mastic, cement, paints** | Brand Name:  **Bondex** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 7 at above site:**

| Defendant: **Buffalo Pumps, Inc.** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Pumps, gaskets and packing** | Brand Name: **Buffalo Pumps** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 8 at above site:**

| Defendant: **CBS Corporation f/k/a Viacom, Inc., successor by merger to CBS Corporation f/k/a Westinghouse Electric Corporation** | Defendant Status (manufacturer installer):<br><br>**manufacturer, distributor** |
|---|---|
| Product Type: **Turbines, board, duct heater, Micarta, generators** | Brand Name: **Westinghouse** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** ||

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** ||

**Product Exposure 9 at above site:**

| | |
|---|---|
| Defendant:  **Certain-Teed Corporation** | Defendant Status (manufacturer Installer):<br><br>**manufacturer, distributor** |
| Product Type:  **Cement pipe, packing, sealing cement, adhesives, joint compound, boiler coating, millboard, siding, roof coating** | Brand Name:  **Palmetto, Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 10 at above site:**

| Defendant: **Cleaver-Brooks Company, Inc. f/k/a Aqua-Chem** | Defendant Status (manufacturer installer):<br>**manufacturer** |
|---|---|
| Product Type: **Boilers, insulation, cement, block, firebrick, gasket, rope, distillers** | Brand Name:  **Cleaver-Brooks** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** |
|---|

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |
|---|

**Product Exposure 11 at above site:**

| | |
|---|---|
| Defendant: **Conwed Corporation** | Defendant Status (manufacturer installer):<br>**manufacturer** |
| Product Type: **Asbestos-containing ceiling tiles** | Brand Name: **Conwed** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 12 at above site:**

| | |
|---|---|
| Defendant: **Crown Cork & Seal USA, Inc. f/k/a Crown Cork & Seal Company (USA), Inc.** | Defendant Status (manufacturer installer): **manufacturer** |
| Product Type: **85% mag pc, block & cement, molded pc, minerals, wool cement** | Brand Name: **Mundet** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 13 at above site:**

| Defendant:   **Dana Companies, LLC f/k/a Dana Corporation** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Gaskets, brakes, clutches** | Brand Name:   **Victor & Various** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** | | |
|---|---|---|

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |
|---|
| |

**Product Exposure 14 at above site:**

| | |
|---|---|
| Defendant: **Dap Products, Inc.** | Defendant Status (manufacturer installer):<br>**manufacturer, supplier** |
| Product Type: **Ceiling texture, bestwall, topping compound, joint compound, plaster, mix** | Brand Name: **DAP, various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 15 at above site:**

| | |
|---|---|
| Defendant: **Elliott Turbomachinery Company, Inc.** | Defendant Status (manufacturer installer): **manufacturer, distributor** |
| Product Type: **Turbines and boilers** | Brand Name: **Elliott** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 16 at above site:**

| Defendant: **Ericsson, Inc.** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type:   **Various asbestos containing products** | Brand Name: **Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 17 at above site:**

| Defendant: **Fairbanks Morse Pump** | Defendant Status (manufacturer installer): <br> **manufacturer, distributor** |
|---|---|
| Product Type: **Pumps, gaskets and packing** | Brand Name: **Fairbank Morse** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 18 at above site:**

| Defendant: **Foster Wheeler Energy Corporation f/k/a Foster Wheeler Corporation** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Boilers, 48 Insulation PC, Block & Cement, PC** | Brand Name: **Foster Wheeler** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 19 at above site:**

| | |
|---|---|
| Defendant: **Garlock Sealing Technology f/k/a Garlock, Inc.** | Defendant Status (manufacturer installer):<br>**manufacturer, supplier** |
| Product Type: **Gaskets, packing, rope** | Brand Name: **Garlock** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 20 at above site:**

| Defendant: **General Cable Industries, Inc.** | Defendant Status (manufacturer installer): **manufacturer, distributor** |
|---|---|
| Product Type: **Asbestos insulated wire and cable** | Brand Name: **Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 21 at above site:**

| Defendant: **General Electric Company** | Defendant Status (manufacturer installer): **manufacturer** |
|---|---|
| Product Type: **Land based steam turbines, wire, cable, arc chutes, paper, generators, Delta Beston, Vulkrene, Textolite** | Brand Name:  **General Electric, Textolite, Delta Beston** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 22 at above site:**

| Defendant: **General Insulation Company** | Defendant Status (manufacturer installer): <br> **manufacturer, distributor** |
|---|---|
| Product Type: **Joint cement, joint compound, puttys, coatings, mastics, cement, paints** | Brand Name: **Various** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.) <br><br> **Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** ||

| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.) <br><br> **Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** ||

**Product Exposure 23 at above site:**

| Defendant:   **Georgia Pacific LLC f/k/a Georgia Pacific Corporation** | Defendant Status (manufacturer installer): **manufacturer, distributor** |
|---|---|
| Product Type: **Asbestos-containing ceiling texture; bestwall, topping compound, joint compound, plaster, mix** | Brand Name: **Georgia Pacific, Bestwall** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.) |
|---|
| **Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** |

| Specific Location(s) of Exposure:  **(See Attached Exposure Sheet)** | Dates of Exposure:  **(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.) |
|---|
| **Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |

**Product Exposure 24 at above site:**

| | |
|---|---|
| Defendant:  **Goodyear   Tire   &   Rubber Company** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
| Product Type:  **Gaskets** | Brand Name:  **Goodyearite** |

| |
|---|
| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** |

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

| |
|---|
| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |

**Product Exposure 25 at above site:**

| Defendant:      **Goulds   Pumps,   Inc.   a** subsidiary of ITT Industries, Inc. | Defendant Status (manufacturer installer): **manufacturer, distributor** |
|---|---|
| Product Type: **Pumps, gaskets, packing** | Brand Name:  **Goulds** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.) |
|---|
| **Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** |

| Specific Location(s) of Exposure:  **(See Attached Exposure Sheet)** | Dates of Exposure:  **(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.) |
|---|
| **Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |

**Product Exposure 26 at above site:**

| Defendant: **Ingersoll-Rand Company** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Pumps, gaskets, packing and compressors** | Brand Name: **Ingersoll-Rand** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 27 at above site:**

| Defendant: **Kaiser Gypsum Company, Inc.** | Defendant Status (manufacturer installer): **manufacturer, distributor** |
|---|---|
| Product Type: **Joint compound, cement and textures** | Brand Name: **Kaiser, Gypsum** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.) |
|---|
| **Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** |

| Specific Location(s) of Exposure: **(See Attached Exposure Sheet)** | Dates of Exposure: **(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.) |
|---|
| **Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |

**Product Exposure 28 at above site:**

| Defendant: **National Service Industries, Inc.** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Insulation, Unibestos, Kaylo** | Brand Name: **Unibestos, Kaylo, Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 29 at above site:**

| | |
|---|---|
| Defendant: **New England Insulation Company** | Defendant Status (manufacturer installer): **distributor** |
| Product Type: **Insulation, pc, block, cement** | Brand Name: **Kaylo, Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 30 at above site:**

| Defendant: **The Okonite Company** | Defendant Status (manufacturer installer):<br><br>**manufacturer, distributor** |
|---|---|
| Product Type: **Wire, cable** | Brand Name: **Okonite** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 31 at above site:**

| Defendant: **Owens-Illinois, Inc.** | Defendant Status (manufacturer installer): **manufacturer** |
|---|---|
| Product Type: **pc and block** | Brand Name: **Kaylo** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 32 at above site:**

| Defendant: **Phelps Dodge Industries, Inc.** | Defendant Status (manufacturer installer):<br>**manufacturer** |
|---|---|
| Product Type: **Asbestos-containing wire and cable** | Brand Name: **Various** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 33 at above site:**

| | |
|---|---|
| Defendant: **R.T. Vanderbilt Company, Inc.** | Defendant Status (manufacturer installer): <br> **manufacturer, distributor** |
| Product Type: **Asbestos formed TALC** | Brand Name: **Nytal 200** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure: <br><br> **(See Attached Exposure Sheet)** | Dates of Exposure: <br><br> **(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 34 at above site:**

| Defendant:   **Rockbestos Suprenant Cable Corporation** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Wire and cable** | Brand Name: **Rockbestos, Cerro** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 35 at above site:**

| | |
|---|---|
| Defendant: **Union Carbide Corporation** | Defendant Status (manufacturer installer):<br><br>**manufacturer, distributor** |
| Product Type: **Panelboard, sealer compounds, cement, joint compound, bakelite** | Brand Name:  **Georgia Pacific, Bakelite, Calidria, Various** |

| |
|---|
| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** |

| | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

| |
|---|
| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** |

| |
|---|
| |

**Product Exposure 36 at above site:**

| Defendant: **Viking Pump, Inc., a division of IDEX Corporation** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Pumps, gaskets and packing** | Brand Name: **Viking** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 37 at above site:**

| Defendant: **Warren Pumps, LLC** | Defendant Status (manufacturer installer): **manufacturer, distributor** |
|---|---|
| Product Type: **Pumps, gaskets and packing** | Brand Name: **Warren** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** ||

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above. Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent. The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** ||

**Product Exposure 38 at above site:**

| Defendant: **Yarway Corporation** | Defendant Status (manufacturer installer):<br>**manufacturer** |
|---|---|
| Product Type:  **Valves, packing and steam traps** | Brand Name: **Yarway** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

**Product Exposure 39 at above site:**

| Defendant:  **York-Shipley Global, a division of Aesys Technologies, LLC** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
|---|---|
| Product Type: **Boilers, HVAC** | Brand Name: **York-Shipley** |

| Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)<br><br>**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.** | |
|---|---|
| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |

| Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)<br><br>**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.** | |
|---|---|
| | |

**Product Exposure 40 at above site:**

| | |
|---|---|
| Defendant:   **Zurn Industries, LLC a/k/a and successor-by-merger to Erie City Iron Works** | Defendant Status (manufacturer installer):<br>**manufacturer, distributor** |
| Product   Type:   **Boilers   and   associated products** | Brand Name:  **Erie City, Keystone, Zurn** |

Product Identification Evidence (Describe or attach documents, name and address of witnesses, etc.)

**Decedent's co-worker(s) will establish that Decedent worked with or around these asbestos-containing products on a daily basis and that the asbestos-containing products manufactured and distributed by the defendant were used, installed or otherwise present at the jobsites listed.**

| Specific Location(s) of Exposure:<br><br>**(See Attached Exposure Sheet)** | Dates of Exposure:<br><br>**(See Attached Exposure Sheet)** |
|---|---|

Exposure Evidence (Describe specific facts and circumstances establishing the nature, extent and duration of exposure to above product, e.g. whether plaintiff personally used the product and, if not, the evidence establishing the nexus between plaintiff and product exposure including reference to documents and expected co-worker testimony.)

**Decedent worked directly with and/or in close proximity to each of these products while working at the job sites listed above.  Dust was created while these products were cut, sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.  The Decedent breathed the dust created when the asbestos-containing products of the manufacturers and distributors listed on this Product Identification/Exposure Sheet were cut/sawn, mixed, applied, removed, replaced or otherwise handled by the Decedent and/or people working in close proximity to the Decedent.**

# VI. PRODUCTION OF DOCUMENTS

A.    All medical records in plaintiff's or plaintiff's attorney's possession relating to plaintiff's asbestos-related conditions(s).

**All medical records in the possession of the plaintiff's attorney are attached hereto. The plaintiff has also provided All Defense Counsel of Record with medical authorizations.**

B.    Duly executed authorizations to obtain plaintiff's medical records and other materials including x-rays and pathology.

**Authorizations have previously been provided in plaintiffs' Answers to Defendants' Revised Interrogatories.**

C.    A duly executed authorization Form SSA 7050-F3 (Department of Health and Human Services, Social Security Administration),or if available, a print-out from the Social Security Administration showing detailed earnings information for plaintiff.

**Authorizations have previously been provided in plaintiffs' Answers to Defendants' Revised Interrogatories.**

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

## Exposure Sheet

For Gillis, Deceased, Edward A. Sorted by Manufacturer then Date

The Ferraro Law Firm, P.A.

11/08/2011

**Manufacturer:** A.W. Chesterton Company

**Products:** Asbestos-containing gaskets and packing

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

**Manufacturer:** American Optical Corporation

**Products:** Asbestos gloves, Various asbestos containing products

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

**Manufacturer:** Anchor Packing Company

**Products:** Packing

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

**Manufacturer:** Bayer Cropscience, Inc. (Amchem)

**Products:** Cements, spray, mastics, adhesives, sealants

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

**Manufacturer:** Bird, Inc.

**Products:** Roofing cements, coatings, insulation

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:* Bondex International, Inc., a subsidiary of Bondex Company

*Products:* Joint cements, joint compounds, puttys, coatings, mastic, cement, paints

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* Buffalo Pumps, Inc.

*Products:* Asbestos-containing pumps, gaskets and packing

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* CBS Corporation, a Delaware Corp., f/k/a Viacom Inc. f/k/a Westinghouse Electric Corporation

*Products:* Turbines, Board, Duct Heaters

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* Certain-Teed Corporation

*Products:* Cement pipe, palmetto packing, sealing cement, adhesives, joint compound, boiler coatings, millboard, siding, roof coating

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* Cleaver-Brooks Company, Inc. f/ka Aqua-Chem

*Products:* Pre-packaged boilers and associated equipment containing asbestos insulation, cement, block, firebrick, gaskets, rope and distillers

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:*   Conwed Corporation
  *Products:*   Asbestos-Containing Ceiling Tiles

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|------------|-----------|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Crown Cork & Seal USA, Inc. f/k/a Crown Cork & Seal Company (USA), Inc.
  *Products:*   Mundet 85% mag pc, block & cement, molded pc, minerals, wool  cement

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|------------|-----------|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Dana Companies, LLC f/k/a Dana Corporation
  *Products:*   Asbestos-containing gaskets, brakes, clutches, rope and automobile products

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|------------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Dap Products, Inc.
  *Products:*   Asbestos-containing ceiling texture; bestwall, topping compound, joint compound, plaster, mix

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|------------|-----------|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Elliott Turbomachinery Co., Inc.
  *Products:*   Turbines, boilers

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|------------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Ericsson, Inc.
  *Products:*   Asbestos insulated wire and cable, Anaconda asbestos insulated wire and cable, Continental asbestos insulated wire and cable

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|------------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:*  Fairbanks Morse Pumps
   *Products:*

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  Foster Wheeler Energy Corporation f/k/a Foster Wheeler Corporation
   *Products:*  Boilers, 48 Insulation PC, Block & Cement, PC

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  Garlock Sealing Technology f/k/a Garlock, Inc.
   *Products:*  Gaskets, Rope, Packing

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1945 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  General Cable Industries, Inc.
   *Products:*  Asbestos insulated wire and cable

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  General Electric Company
   *Products:*  Steam turbines, Wire and Cable, Textolite, Brakes, Delta Beston, Vulkrene, Generators

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Case 1:11-cv-12138   Document 1-2   Filed 12/02/11   Page 55 of 74

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:*   General Insulation Company

*Products:*   Various asbestos containing insulation

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Georgia Pacific Corporation

*Products:*   Asbestos-containing ceiling texture; bestwall, topping compound, joint compound, plaster, mix

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| New England Telephone Company | | MA | 01/01/1956 | 12/31/1960 |

*Manufacturer:*   Goodyear Tire & Rubber Company

*Products:*   Goodyearite gaskets and brakes

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Goulds Pumps, Inc.

*Products:*

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*   Ingersoll-Rand Company

*Products:*   Pumps, gaskets, packing and compressors

| Jobsite | City | State | Start Date | Stop Date |
|---------|------|-------|-----------|-----------|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:*  Kaiser Gypsum Company, Inc.
*Products:*  Joint compounds, cements, textures

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| New England Telephone Company | | MA | 01/01/1960 | 12/31/1960 |

*Manufacturer:*  National Services Industries, Inc.
*Products:*  Insulation, Unibestos, Kaylo

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  New England Insulation Company
*Products:*

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  Owens-Illinois, Inc.
*Products:*  Kaylo PC & Block

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1958 |

*Manufacturer:*  Phelps Dodge Industries, Inc.
*Products:*  Asbestos-containing wire and cable

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:*  R.T. Vanderbilt Company, Inc.

*Products:*  Asbestos formed TALC

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  Rockbestos Suprenant Cable Corporation

*Products:*  Asbestos insulated wire and cable

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| General Dynamics | Quincy | MA | 01/01/1945 | 12/31/1945 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  The Okonite Company

*Products:*

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| General Dynamics | Quincy | MA | 01/01/1945 | 12/31/1945 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  Union Carbide Corporation

*Products:*  Calidria containing products, Bakelite, Joint Compounds, Cements

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:*  Viking Pumps, Inc., a division of IDEX Corporation

*Products:*  Asbestos-containing pumps, gaskets and packing

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

Gillis, Deceased, Edward A., 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, c/o The Ferraro Law Firm, P.A., 4000 Ponce de Leon Boulevard, Suite 700, Miami, Florida, 33146, Phone: (305) 375-0111

*Manufacturer:* Warren Pumps, LLC
  *Products:* Asbestos-containing pumps, gaskets and packing

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* Yarway Corporation
  *Products:* Asbestos-containing valves, packing and steam traps

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* York-Shipley Global, a Division of Aesys Technologies, LLC
  *Products:* Boilers, HVAC

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |

*Manufacturer:* Zurn Industries, LLC, a/k/a and successor-by-meger to Erie City Iron Works
  *Products:* Erie City Boilers, Keystone Boilers, Zurn Boilers

| Jobsite | City | State | Start Date | Stop Date |
|---|---|---|---|---|
| General Dynamics | Quincy | MA | 01/01/1944 | 12/31/1945 |
| U.S. Navy - USS Macon | | | 01/01/1945 | 12/31/1946 |
| New England Telephone Company | | MA | 01/01/1953 | 12/31/1960 |



**Laxminarayana C. Rao M.D., F.C.C.P., F.A.C.P.**

Board Certified in Internal Medicine and Pulmonary Medicine
NIOSH Certified 'B' Reader
Occupational Lung Disease

Name: **GILLIS, EDWARD**
SSN: 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
Chest X-Ray Date: February 15, 2008
Date of Birth: 08/14/1927

## Chest Radiograph

This film is of quality 2 because of over exposure. Irregular parenchymal opacities of category s/s involving the midlung zone bilaterally and the lower lung zone on the right side with a 1/2 profusion. There is cardiomegaly. There is evidence of coronary artery bypass graft surgery. There is the presence of an electronic pacer. There is marked cardiomegaly with bibasilar pleural effusion probably due to congestive heart failure. Parenchymal opacity of pneumoconiosis not detected at the left lower lung zone due to pleural effusion related opacity.

## Conclusion

In the presence of a significant occupational exposure history to asbestos dust, and latency period, radiological findings are consistent with a diagnosis of bilateral interstitial fibrosis due to asbestosis. In addition there is marked cardiomegaly and effusion, need to rule out a component of congestive heart failure, recommend to see a medical doctor.

L.C. Rao, M.D.,F.C.C.P., F.A.C.P., F.A.A.D.E.P.

NIOSH Certified "B" Reader

08/08/2009

**L.C. Rao MD Consultants, Inc.**
2088 Oxford Circle  Hinckley, Ohio  44233

# LAXMINARAYANA C. RAO, M.D., F.C.C.P., F.A.C.P.

Board Certified in Internal Medicine and Pulmonary Disease

NIOSH "B" READER

**WORKER**  Gillis, Edward

**WORKER'S Social Security Number**

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

**ROENTGENOGRAPHIC INTERPRETATION**

**TYPE OF READING**

☐ A  ☒ B  ☐ F

**DATE OF RADIOGRAPH**

2/15/08

---

**1.  FILM QUALITY**

☐ 1  ☒ 2  ☐ 3  ☐ U/R
(If not Grade 1, mark all boxes that apply)

☒ Overexposed (dark)
☐ Underexposed (light)
☐ Artifacts

☐ Improper position
☐ Poor contrast
☐ Poor processing

☐ Underinflation
☐ Mottle
☐ Other (please specify)

---

**2A.  ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**

YES ☒   Complete Sections 2B and 2C   NO ☐   Proceed to Section 3A

**2B.  SMALL OPACITIES**

a. SHAPE/SIZE

PRIMARY: p ☒ q t   r
SECONDARY: p ☒ q/t   r

b. ZONES
R  L
UPPER
MIDDLE ☒ ☒
LOWER ☒ ☒

c. PROFUSION
0/-  0/0  0/1
1/0  1/1  1/2
2/1  2/2  2/3
3/2  3/3  3/+

**2C.  LARGE OPACITIES**

SIZE ☒  A  B  C   Proceed to Section 3A

---

**3A.  ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**

YES ☐   Complete Sections 3B, 3C   NO ☒   Proceed to Section 4A

**3B.  PLEURAL PLAQUES**  *(mark site, calcification, extent, and width)*

| Chest wall | Size | Calcification | Extent (chest wall; combined for in profile and face on) Up to 1/4 of lateral chest wall = 1; 1/4 to 1/2 of lateral chest wall = 2; > 1/2 of lateral chest wall = 3 | Width (in profile only) (3mm minimum width required) 3 to 5 mm = a; 5 to 10 mm = b; > 10 mm = c |
|---|---|---|---|---|
| In profile | O R L | O R L | | |
| Face on | O R L | O R L | O R L  1 2 3 | O L  1 2 3 | O R  a b c | O L  a b c |
| Diaphragm | O R L | O R L | | |
| Other site(s) | O R L | O R L | | |

**3C.  COSTOPHRENIC ANGLE OBLITERATION**

☐ ☒   Proceed to Section 3D   NO ☐   Proceed to Section 4A

**3D.  DIFFUSE PLEURAL THICKENING**  *(mark site, calcification, extent, and width)*

| Chest wall | Site | Calcification | Extent (chest wall; combined for in profile and face on) Up to 1/4 of lateral chest wall = 1; 1/4 to 1/2 of lateral chest wall = 2; > 1/2 of lateral chest wall = 3 | Width (in profile only) (5mm minimum width required) 3 to 5 mm = a; 5 to 10 mm = b; > 10 mm = c |
|---|---|---|---|---|
| In profile | O R L | O R L | O R L  1 2 3 | O L  1 2 3 | O R  a b c | O L  a b c |
| Face on | O R L | O R L | | |

---

**4A.  ANY OTHER ABNORMALITIES?**

YES ☒   Complete Sections 4B, 4C, 4D, 4E   NO ☐   Proceed to Section 5

**4B.  OTHER SYMBOLS (OBLIGATORY)**

aa  at  ax  bu  ca  cg  cn  ☒ cp  cv  di  ☒  em  es  fr  hi  ho  id  ih  kl  me  pa  pb  pi  pa  ra  rp  tb

☐ od   If other diseases or significant abnormalities, findings must be recorded on reverse. (section 4C/4D)

Date Physician or Worker notified?
MONTH  DAY  YEAR

**4E.**  Should worker see personal physician because of findings in section 4?   YES ☒   NO ☐
*Proceed to Section 5*

---

**5.  PHYSICIAN**

*[signature: Laxminarayana C. Rao]*

Laxminarayana C. Rao, M.D.

**FILM READER'S INITIALS**  LCR

**DATE OF READING**
MONTH 05  DAY 08  YEAR 2009

---

2088 Oxford Circle,  Hinckley, Ohio 44233

# ALVIN J. SCHONFELD, D.O., F.C.C.P., F.A.A.D.E.P.

## PULMONARY MEDICINE
### OCCUPATIONAL LUNG DISEASE

438 W. ST. JAMES PLACE
CHICAGO, IL  60614-2750

PHONE: 1-773-472-2810
FAX:      1-773-472-2809

May 15, 2010

The Ferraro Law Firm
ATTN:  David A. Jagolinzer, Esq.
4000 Ponce de Leon Boulevard, Suite 700
Miami, FL  33146

Re:    **Patient:      Edward A. Gillis**
       **SSN:           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**
       **DOB:          08/17/27**
       **DOD:          08/05/09**

Dear Mr. Jagolinzer:

This is a physician's report pertaining to the above-named patient whom I have never met.  What follows is a medical records review based on information which I was supplied and which for the purposes of this report, I have deemed to be reliable.

**OCCUPATIONAL HISTORY:**  Mr. Gillis served in the U. S. Navy as a seaman from 1945 to 1946.  He served aboard the USS Macon CA-132 where he was exposed to asbestos.

He also worked as an electrician off and on between 1945 and 1980 and also was exposed to asbestos.

**SMOKING HISTORY:**  Up to one cigar a day, 1957 to 1977.

**REVIEW OF MEDICAL RECORDS:**  Chest x-ray dated 02/15/08 was read by Dr. Rao according to the ILO 2000 Classification as a Quality II film.  Irregular interstitial infiltrates were seen in both midlung zones and the right lower lung zone having a shape and size of s/s and a profusion of 1/2.  Bilateral costophrenic angle blunting was noted.  This may have been secondary to COPD.

Medical records from South Shore Hospital dated 09/28/06 stated: "This is an 81 year old male with a past medical history significant for coronary artery disease status post coronary artery bypass graft 22 years ago, status post pacemaker greater than ten years ago, tenuous congestive heart failure who is status post a recent admission…for decompensated systolic and diastolic heart failure."

(Continued Page 2)

DIPLOMATE - AMERICAN BOARDS OF INTERNAL MEDICINE AND PULMONARY DISEASE
NIOSH B READER
FELLOW - AMERICAN ACADEMY OF DISABILITY EVALUATING PHYSICIANS

**ALVIN J. SCHONFELD, D.O., F.C.C.P., F.A.A.D.E.P.**

To:  **The Ferraro Law Firm**
Re:  **Edward A. Gillis**
**Page 2**

The same report goes on to say: "He has a history of some sort of underlying lung disease which may be asbestosis versus interstitial lung disease versus chronic obstructive pulmonary disease with a baseline abnormal chest x-ray..."

Followup report dated October 2007 states: "This is the third admission for this patient over the last few weeks. Approximately one month ago, he presented in my office with signs of congestive heart failure... He was discharged without any diuretics and returned home... In addition to his other symptoms today, he has had some mild chest discomfort. This was nonspecific... Treatment was given for congestive heart failure."

Complete PFTs were performed at Quincy Medical Center on 10/22/08:

|          | observed | % predicted |
|----------|----------|-------------|
| FVC      | 1.41 L   | 36%         |
| FEV$_1$  | 1.10 L   | 44%         |
| FEV$_1$/FVC | 78%   |             |
| TLC      | 2.41 L   | 36%         |
| Diffusion | 2.63    | 12%         |

An attending there described "restrictive ventilatory defect with (poor handwriting)...consistent with pneumonitis or interstitial lung disease".

Mr. Gillis died on 08/05/09. The death certificate issued by the Town of Hingham, Massachusetts stated the cause of death was respiratory failure due to COPD.

**IMPRESSION:**
1) Given the patient's history of significant exposures to asbestos in the workplace and given an appropriate latency, and given the roentgenographic and pulmonary function findings described above, I feel with a reasonable degree of medical certainty that during his lifetime, Mr. Gillis was diagnosed as having interstitial fibrosis caused by bilateral pulmonary asbestosis. I feel with a reasonable degree of medical certainty that this diagnosis is causally related to his workplace exposures to asbestos as described above.
2) Death from COPD is not deemed to be asbestos- or occupationally related.
3) The above opinions are stated to a reasonable degree of medical certainty.

Thank you for sending these records for my review.

Sincerely,

Alvin J. Schonfeld, D.O., FCCP, FAADEP

AJS:hss/mh



Laxminarayana C. Rao M.D., F.C.C.P., F.A.C.P.

Board Certified in Internal Medicine and Pulmonary Medicine
NIOSH Certified 'B' Reader
Occupational Lung Disease

Name: **GILLIS, EDWARD**
SSN: 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
Chest X-Ray Date: February 15, 2008
Date of Birth: 08/14/1927

## Chest Radiograph

This film is of quality 2 because of over exposure. Irregular parenchymal opacities of category s/s involving the midlung zone bilaterally and the lower lung zone on the right side with a 1/2 profusion. There is cardiomegaly. There is evidence of coronary artery bypass graft surgery. There is the presence of an electronic pacer. There is marked cardiomegaly with bibasilar pleural effusion probably due to congestive heart failure. Parenchymal opacity of pneumoconiosis not detected at the left lower lung zone due to pleural effusion related opacity.

## Conclusion

In the presence of a significant occupational exposure history to asbestos dust, and latency period, radiological findings are consistent with a diagnosis of bilateral interstitial fibrosis due to asbestosis. In addition there is marked cardiomegaly and effusion, need to rule out a component of congestive heart failure, recommend to see a medical doctor.

L.C. Rao, M.D.,F.C.C.P., F.A.C.P., F.A.A.D.E.P.

NIOSH Certified "B" Reader

08/08/2009

L.C. Rao MD Consultants, Inc.
2068 Oxford Circle  Hinckley, Ohio  44233

## LAXMINARAYANA C. RAO, M.D., F.C.C.P., F.A.C.P.

Board Certified in Internal Medicine and Pulmonary Disease

NIOSH "B" READER

WORKER  Gillis, Edward

WORKER'S Social Security Number

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

**ROENTGENOGRAPHIC INTERPRETATION**

TYPE OF READING

A [ ]  B [X]  P [ ]

DATE OF RADIOGRAPH

2/15/08

---

**1. FILM QUALITY**

1 [ ]  2 [X]  3 [ ]  U/R [ ]
(If not Grade 1, mark all boxes that apply)

[X] Overexposed (dark)
[ ] Underexposed (light)
[ ] Artifacts

[ ] Improper position
[ ] Poor contrast
[ ] Poor processing

[ ] Underinflation
[ ] Mottle
[ ] Other (please specify)

---

**2A. ANY PARENCHYMAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES [X]   Complete Sections 2B and 2C   NO [ ]   Proceed to Section 3A

**2B. SMALL OPACITIES**

a. SHAPE/SIZE

| PRIMARY | | SECONDARY | |
|---|---|---|---|
| p [X] | s | p [X] | s |
| q | t | q | t |
| r | u | r | u |

b. ZONES

|  | R | L |
|---|---|---|
| UPPER |  |  |
| MIDDLE | [X] | [X] |
| LOWER |  |  |

c. PROFUSION

| 0/- | 0/0 | 0/1 |
| 1/0 | 1/1 | 1/2 |
| 2/1 | 2/2 | 2/3 |
| 3/2 | 3/3 | 3/+ |

**2C. LARGE OPACITIES**

SIZE  [X]  A [ ]  B [ ]  C [ ]   Proceed to Section 3A

---

**3A. ANY PLEURAL ABNORMALITIES CONSISTENT WITH PNEUMOCONIOSIS?**   YES [ ]   Complete Sections 3B, 3C   NO [X]   Proceed to Section 4A

**3B. PLEURAL PLAQUES** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall: combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| In profile | O R L | O R L | Up to 1/4 of internal chest wall = 1 | 3 to 5 mm = a |
| Face on | O R L | O R L | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
| Diaphragm | O R L | O R L | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
| Other site(s) | O R L | O R L | O  1 2 3   O  1 2 3 | O R  a b c   O L  a b c |

**3C. COSTOPHRENIC ANGLE OBLITERATION**   [X]   Proceed to Section 3D   NO [ ]   Proceed to Section 4A

**3D. DIFFUSE PLEURAL THICKENING** (mark site, calcification, extent, and width)

| Chest wall | Site | Calcification | Extent (chest wall: combined for in profile and face on) | Width (in profile only) (3mm minimum width required) |
|---|---|---|---|---|
| In profile | O R L | O R L | Up to 1/4 of lateral chest wall = 1 | 3 to 5 mm = a |
| Face on | O R L | O R L | 1/4 to 1/2 of lateral chest wall = 2 | 5 to 10 mm = b |
|  |  |  | > 1/2 of lateral chest wall = 3 | > 10 mm = c |
|  |  |  | O  1 2 3   O  1 2 3 | O R  a b c   O L  a b c |

---

**4A. ANY OTHER ABNORMALITIES?**   YES [X]   Complete Sections 4B, 4C, 4D, 4E   NO [ ]   Proceed to Section 5

**4B. OTHER SYMBOLS (OBLIGATORY)**

aa  at  ax  bu  ca  cg  cn  co  cp  cv  di [X]  ef  em  es  fr  hi  ho  id  ih  kl  me  pa  pb  pi  px  ra  rp  tb

OD [ ]  If other diseases or significant abnormalities, findings must be recorded on reverse. (section 4C/4D)

Date Physician or Worker notified?
MONTH [ ]  DAY [ ]  YEAR [ ]

**4E.** Should worker see personal physician because of findings in section 4?  YES [X]   NO [ ]
Proceed to Section 5

---

**5. PHYSICIAN**

Laxminarayana C. Rao, M.D.

FILM READER'S INITIALS  L C R

DATE OF READING
MONTH 05  DAY 08  YEAR 2008

---

2088 Oxford Circle, Hinckley, Ohio 44233

# QUINCY MEDICAL CENTER
## 114 WHITWELL STREET
## QUINCY, MA. 02169
### PULMONARY FUNCTION REPORT

**Patient ID:** 219202
**Last Name:** GILLIS
**First Name:** EDWARD
**Age:** 81
**Height:** 175.30 cm   69.02 in
**Weight:** 78.60 kg   172.92 lbs
**Second Number:** F26244756
**Smoke Status:** Quit
**Smoke Time:** 40
**Pack years:**

**Study Date:** 10/22/2008 9:38:13 AM

**Gender:** Male
**Testing Location:** A6-634
**Physician Name:** DR. BERMAN/TAN
**Smoke What:** Cigars
**Quit Time:** 24
**Technician Name:** FBN

## Spirometry

|  | Predicted | Pre-Drug Measured | Pre-Drug % Predicted | Post-Drug Measured | Post-Drug % Predicted | %Change |
|---|---|---|---|---|---|---|
| FVC | 3.95 | 1.41 | 36 | 1.34 | 34 | -6 |
| FEV.5/FVC |  | 67.92 |  | 70.36 |  |  |
| FEV1 | 2.49 | 1.10 | 44 | 1.17 | 47 | 7 |
| FEV1/FVC | 63.07 | 78.11 | 124 | 87.36 | 139 | 12 |
| FEF25-75% | 2.11 | 1.12 | 53 | 1.31 | 62 | 17 |
| FEF25% | 7.35 | 3.59 | 49 | 2.87 | 39 | -20 |
| FEF50% | 4.44 | 1.67 | 38 | 1.79 | 40 | 5 |
| FEF75% | 1.10 | 0.33 | 30 | 0.54 | 49 | 63 |
| FEFmax | 8.21 | 3.77 | 46 | 4.06 | 49 | 7 |
| TET |  | 6.96 |  | 5.79 |  |  |
| FIVC |  | 1.43 |  | 1.30 |  |  |
| FIF50% |  | 2.44 |  | 2.09 |  |  |
| FEF50/FIF50 |  | 68.41 |  | 85.47 |  |  |
| MVV | 105.00 | 36.18 | 34 |  |  |  |
| Duration |  | 12.00 |  |  |  |  |

## Lung Volumes

|  | Predicted | Pre-Drug Measured | Pre-Drug % Predicted |
|---|---|---|---|
| VC | 3.95 | 1.44 | 36 |
| TLC | 6.62 | 2.41 | 36 |
| RV | 2.66 | 0.97 | 36 |
| RV/TLC | 40.25 | 40.34 | 100 |
| FRC | 3.82 | 1.36 | 36 |
| ERV | 1.15 | 0.38 | 33 |
| IC | 2.80 | 1.06 | 38 |

## Diffusion Test

|  | Predicted | Pre-Drug Measured | Pre-Drug % Predicted |
|---|---|---|---|
| Dsb | 22.84 | 2.63 | 12 |
| DsbHb | 22.84 | 3.21 | 14 |
| VAsb | 6.62 | 2.05 | 31 |
| D/VAsb | 3.45 | 1.28 | 37 |
| D/VAsbHb | 3.45 | 1.56 | 45 |
| Hgb |  | 9.50 |  |

Last Name: GILLIS
First Name: EDWARD

Patient ID: 2192u2
Study Date: 10/22/2008 9:38:13 AM

## Technician Comments

COMPARISON STUDY.
GOOD EFFORT AND UNDERSTANDING WITH TEST RESULTS ACCEPTABLE AND REPEATABLE.
ALTHOUGH THE STUDY WAS PERFORMED WHILE IN BED AT 45 DEGREES DUE TO HIS FX HIP.
MR. EDWARD GILLIS WAS ADMITTED AFTER AN ACUTE EPISODE OF DESATURATION WHILE AT
A REHAB FACILITY FOR A FX HIP.
HISTORY OF ASBESTOSIS.
HIS C-T SCAN REVEALS A LEFT PLEURAL EFFUSION AND GROUND GLASS OPACITIES.
HE C/O SHORTNESS OF BREATH ON EXERTION.
A NEBULIZER WITH 0.5 MLS OF ALBUTEROL/NS WAS GIVEN FOR POST BRONCHODILATOR
STUDIES.
HIS O2 SATURATION WAS 94-97% ON A NASAL CANNULA AT 3 LPM AND HE HAD A NADIR OF
84% WHILE ON ROOM AIR.

## Graphs



**Last Name:** GILLIS
**First Name:** EDWARD

**Patient ID:** 219202
**Study Date:** 10/22/2008 9:38:13 AM

## Computerized Interpretation

SEVERE RESTRICTIVE VENTILATORY DEFECT.

The diffusing capacity test results are adjusted to account for the actual hemoglobin present.

~~MODERATE~~ DIFFUSION DEFECT.

*Severe.*

Bronchodilator therapy was administered followed by repeat spirometric testing.

Post-bronchodilator testing failed to demonstrate a significant change in FVC, FEV1, or FEF25-75%.

This interpretation is valid only upon physician review and signature.

## Physician Interpretation

~~[ ] IF THIS BOX IS CHECKED, THE INTERPRETING PHYSICIAN AGREES WITH THE COMPUTERIZED INTERPRETATION.~~

~~Impd~~ Restrictive ventilatory defect c̄ ~~severe~~ impaired diffusion capacity is consistent c̄ pneumonitis or interstitial lung disease.

_____
PHYSICIAN SIGNATURE

# QUINCY MEDICAL CENTER
## 114 WHITWELL STREET
## QUINCY, MA. 02169
## PULMONARY FUNCTION REPORT
### Study Date: 10/22/2008 9:38:13 AM

Patient ID: 219202
Last Name: GILLIS
First Name: EDWARD
Gender: Male   Age: 81
Height: 175.30 cm  69.02
Smoke Status: Quit
Room Number:
Physician Name: DR. BERMAN/TAN
Race: White

Birth Date: 8/14/1927
Weight: 78.60 kg  172.92 lbs
Pack years:

| Study Date | FVC FVC Pre Measured | FVC FEV1 Pre Measured | FRC TLC Pre Measured | DL Dsb Pre Measured | FVC FVC Post Measured | FVC FIV1 Post Measured |
|---|---|---|---|---|---|---|
| 10/22/2008 | 1.41 | 1.10 | 2.41 | 2.63 | 1.34 | 1.27 |
| 10/31/2007 | 1.91 | 1.73 | 3.31 | 5.23 | | |
| 1/4/1994 | 2.89 | 2.35 | 5.24 | 15.65 | | |



Case 1:11-cv-12138   Document 1-2   Filed 12/02/11   Page 69 of 74



# Granite Medical
## Atrius Health

**Patient:** Edward Gillis  
**Location:** Granite 3A  
**Provider:** Neil Berman M.D.  
         Debra Purrier

**DOB:** 08/14/1927  
**Date:** 04/08/2009  
**PCP:** Berman, Neil**

**Time:** 3:03 PM

| SUBJECTIVE |
|:----------:|

**Reason for visit given to Medical Assistant:**  
Edward is here for a follow up visit.

**Chief Complaint Overview:**  
Edward comes to the office today for evaluation of congestive heart failure and conducting system disease.

Ed is now in a NH. He complains of shortness of create with minimal exertion. He sleeps well. He has lost a lot of weight No chest pain.

**Past Cardiac History:**  
He has had a previous myocardial infarction. Edward's cardiac disease history includes CABG (bypass surgery), CHF (congestive heart failure) and atrial fibrillation.

In addition to CAD, he has a permanent pacemaker, atrial fibrillation, interstitial lung disease due to asbestosis, and PMR. He also has renal insufficiency.

Ed was admitted to QMC on 10/26/07. The immediate precipitating cause was GI bleeding but he was feeling very weak, short of breath.

This investigation did not reveal any specific cause for his GI bleeding, except that it was positive for H.pylori. This biopsy has just come back. HE had a full Endoscopy and barium enema which did not show any underlying tumors or cause for the bleeding.

His diabetes was reassessed by Dr. Chenyi Lin and he was put onto Insulin. In addition, he was seen by Dr. Wardeh of the pulmonary service. He was in some CHF and was treated with diuretics. Renal consultation was obtained with Dr. DaSilva and he was diuresed without any aggravation of his kidney condition. When he was discharged he was feeling much better than he had on admission.

**Cardiac Evaluation to Date:**

Details: -  
    Manufacturer: Guidant  
    Model: 1198  
    Date of impiant: 5/8/2006  
    Type: VVI-R

The original generator was a CPI 1230 which was changed in June 2000.  
He had a Guidant 1198 implanted in May 2006 The frequency of foloow-up is two months. Pacemaker monitored by: NJB.

Date of previous stress test was -  
    Date: 6/28/2006

The type of test was a persantine myoview stress test. Cardiac stress testing was negative for chest pain and myocardial ischemia. Myoview perfusion imaging showed fixed defect(s) involving the inferior wall but no reversible defects. The left

**Patient:** Edward Gillis

atrium was mildly dilated.

Date of most recent echocardiogram was -
   Date: 10/22/2007

By echocardiogram, the left ventricle was normal in size with normal wall thickness with mildly reduced ejection fraction. Imaging of the left ventricle showed akinesis of the inferior wall. There was mild aortic stenosis and mild aortic insufficiency.

### Angioplasty and CABG:

Date(s) of previous cardiac surgery: -
   bypass surgery -: 1992

Previous CABG with unknown specific details.

The patient has had a VVI pacemaker placed.

Date(s) of implant, generator replacement: -
   original implant: July 1996

The device was implanted for tachy-brady syndrome.

### Cardiac Changes since last exam:
Since Edward was last seen, he has had no chest pain or anginal symptoms.or shortness of breath.

### Cardiac Risk Factors:
Cardiac risk factors include hyperlipidemia, hypertension and type 2 diabetes mellitus.

### Cardiovascular Symptom Review:
The patient denies chest pain, dependent edema, diaphoresis, dyspnea on exertion, orthopnea, palpitations, PND, shortness of breath, claudication or syncope.

### Compliance and Side Effects of Current Medication:
The patient is taking all or most of the recommended doses of the prescribed medication without any significant side-effects.

### Current Medications:
STOPPED: COREG 12.5mg Tab 1 TABLET TWICE DAILY WITH FOOD, Dosage adjustment
   Adj. To 6.25mg Tab By NB
NEW: COREG 6.25mg Tab 1 TABLET TWICE DAILY WITH FOOD, Quantity: 180, 3 Refills
STOPPED: Lantus Insulin 10ml Injection 20 units at bedtime, Dosage adjustment
   Adj. To 10ml Injection By NB
NEW: Lantus Insulin 10ml Injection As Directed, Quantity: 3, 7 Refills
   8 units daily
STOPPED: FUROSEMIDE 40mg Tab 1 TABLET DAILY, Dosage adjustment
   Adj. To 40mg Tab By NB
NEW: FUROSEMIDE 40mg Tab 3 qd, Quantity: 90, 3 Refills
STOPPED: Allopurinol 100mg Tab 2 po qd, Dosage adjustment
   Adj. To 300mg Tab By NB
NEW: Allopurinol 300mg Tab 1 TABLET DAILY, Quantity: 90, 3 Refills
   Member ID# 024200745
STOPPED: Isosorbide Mononitrate 30mg Tab Sr 24h 1 TABLET EVERY MORNING, Dosage adjustment
   Adj. To 60mg Tab Sr 24h By NB
NEW: Isosorbide Mononitrate 60mg Tab Sr 24h 1 TABLET EVERY MORNING, Quantity: 90, 3 Refills
   024200745
STOPPED: Combivent 103-18mcg/act Aerosol 2 puffs 3-4 times daily, End of Regimen

**500 Congress Street, 3rd Floor, Quincy, MA  02169**
PH (617) 471-0033  FX (617) 773-0193  www.GraniteMedical.com

STOPPED: Epoetin Alfa 10000u/ml Solution As Directed, End of Regimen
STOPPED: Ferrous Sulfate 325mg Tab 1 TABLET DAILY, End of Regimen
STOPPED: NovoLog 100u/ml Solution As Directed, End of Regimen
STOPPED: Calcium-D Strength/Form Unknown As Directed, Duplicate Entry
STOPPED: Prednisone 10mg Tab 1 TABLET DAILY, End of Regimen
STOPPED: ZOCOR 40mg Tab 1 TABLET AT BEDTIME, Stopped/Adjusted by Other Provider
Allopurinol 300mg Tab 1 TABLET DAILY
   Member ID# 024200745
Aspirin 81mg Tab 1 TABLET DAILY
COREG 6.25mg Tab 1 TABLET TWICE DAILY WITH FOOD
Coumadin 5mg Tab As Directed
   emergency supply
FUROSEMIDE 40mg Tab 3 qd
Isosorbide Mononitrate 60mg Tab Sr 24h 1 TABLET EVERY MORNING
   024200745
Januvia 100mg Tablet ONE TABLET DAILY
Lantus Insulin 10ml Injection As Directed
   8 units daily
Memantine Hcl 10mg Tab 1 TABLET TWICE DAILY
Nitroglycerin 0.4mg Sl Tab 1 TAB EVERY 5 MIN AS NEEDED, UP TO 3 PER EPISODE
   024200745
Oscal 500/200 D-3 500-200mg-Iu Tab 1 po bid
Paxil 10mg Tab 1 TABLET DAILY
Prilosec 20mg Cap Dr 1 CAPSULE DAILY

### Patient Allergies:

The patient has medication allergies to Percocet.

### Past Medical History:

Amiodarone pulmonary toxicity Vascular disease history of carotid stenosis. Musculoskeletal/ Rheumatologic history of Polymyalgia Rheumatica and gout. Dermatologic history consists of squamous cell carcinoma and psoriasis. GI history of Helicobacter pylori, treated, gastritis and GI bleeding.

### Past Surgical History:

Cardio-Vascular surgical history includes CABG. Abdominal surgical history includes right inguinal hernia repair. Endoscopic procedures includes colonoscopy and esophago-gastro-duodenoscopy EGD.

### Tobacco History:

Edward does not smoke.

### Abdominal Symptom Review:

The patient denies dysphagia abdominal pain. bright red blood per rectum, change in bowel habits constipation, diarrhea, melena, nausea, reflux, vomiting, or hematemesis.

### Urinary Symptom Review:

The patient denies dysuria, hematuria, frequency, hesitancy, urgency, incontinence, nocturia,.

### Neurologic Symptom Review:

The patient denies headaches, numbness, tingling, weakness, incontinence, visual disturbances, and speech/language difficulties.

### Musculoskeletal Symptom Review:

The patient denies any functional problems involving the major joints including the neck and back. The patient specifically

denies any pain, swelling, erythema, of the major joints.

## OBJECTIVE

*Vital Signs:*

Vitals (Adults) -
  Weight in lbs: w.c.
  Blood Pressure (R )initial: 120/68

*Lung Exam:*
  Crackles are heard diffusely bilaterally.

*Heart Exam:*
  S1 is normal. Second heart sound is normally split. Regular rhythm with 3/6 mid to late systolic murmur. Carotid impulses are normal. No carotid bruits. Jugular venous pressure is mildly elevated.

*Extremities Exam:*
  There is no edema.

## ASSESSMENT

*Assessments:*
  Atrial Fibrillation, 427.31
  CAD (coronary Artery Disease) Bypass Grft-unspecified, 414.05
  CHF (Congestive Heart Failure) Unspecified, 428.0
  Diabetes Mellitus NOS Type II or unspecified type, not stated as uncontrolled, 250.00
  Hypercholesterolemia, 272.0
  Insufficiency Renal, 593.9
  Pacemaker Presence, V45.01
  Pulmonary Fibrosis, 516.3

*Cardiac General Assessment:*
  In general, CARDIAC CONDITION is fair. On the whole, Ed is doing well from a cardiac point of view. He shows no signs clinically of CHF. He is on more Lasix than he was before, but this appears to be appropriate clinically. His labs have recently been done but I do not have the results of these.

  His pacemaker is functioning adequately. The generator is about 1/4 through its lifespan so it has several years to go. The threshold on the ventricular lead is slightly up and I have reprogrammed the output to 3.5 volts. Ed is no longer on Simvastatin. He does have underlying CAD and may benefit from this, if he is not sensitive to these drugs.

*Blood Pressure Assessment:*
  I will arrange for him to have his pacemaker interrogation telephonically. I would like to see him approximately every six months to interrogate his pacemaker more thoroughly.

*General Assessment:*
  Ed has a history of pulmonary fibrosis, as well as CHF. I have found his crackles always difficult to interpret in him because sometimes pulmonary fibrosis is responsible for the crackles than CHF. A BNP is often helpful in distinguishing which of these two is acting at any particular time.

## PLAN

*Pacer Test (billing):*
  Programming Pacer, single lead, 93279

**Patient:** Edward Gillis   Case 1:11-cv-12138-DPW  Document 91-2   Filed 12/02/11   Page 23 of 37

### Cardiac Meds General Plan:
Continue on all meds as written above.

### Copy Report To:
Dr Samuelson
Linden Ponds
400 Linden Ponds Way
Hingham, MA 02043

### Revisit Orders/Patient Instructions:
Time Until Next Visit: 6 months.

### E&M Codes(Billing):
Established Patient office visit (high complexity &/or multiple problems), 99215

| RESULT |
|:------:|

### Health Maintenance Dates:

Health Maintenance Date(s): -
    Stool Cards: 10/2006
    Colonoscopy: 2001=10/07
    Bone Density: 6/06 normal
    PSA: 2003
    Pneumovax: 2006
    Flu shot: 11/2008

Diabetes Health Maintenance Date(s) -
    Hb A1C (every 3 months): 2007
    Lipid profile (yearly): 2007
    Serum creatinine (yearly): 2007
    BP and weight (every 3-6 months): 2007
    Dilated eye exam (yearly): 6/2007
    Foot exam (every 3-6 months): 9/2005
    Flu vaccine (yearly): recommended
    Nutrition consult (initial and prn): 10/03

### .Pacemaker Test:
Battery "good" -
V lead captures at 1.2 V
Rate reprogrammed to 70 on 4/26/06
V lead reprogrammed to 3.5V on 4/8/2009 because threshold increased to 1.2 V Pacing Mode: VVI. Programmed Rate: 60 BPM.

Pacemaker Output -
    Lead Impedance (Ventricular): 820

This note was electronically signed by
Neil Berman M.D.

PatID: 50894  VID: 1607097          This Document Printed on April 21, 2009 at 11:26 AM          Page 5 of 6
**500 Congress Street, 3rd Floor, Quincy, MA  02169**
**PH (617) 471-0033  FX (617) 773-0193  www.GraniteMedical.com**

# Town of Hingham
## Office of the Town Clerk

### The Commonwealth of Massachusetts
STANDARD CERTIFICATE OF DEATH
REGISTRY OF VITAL RECORDS AND STATISTICS

(INSTRUCTIONS ON REVERSE SIDE)
FOR USE BY
PHYSICIANS AND
MEDICAL EXAMINERS

STATE USE ONLY

**DECEDENT**

DECEDENT - NAME: FIRST Edward   MIDDLE A.   LAST Gillis   SEX Male   DATE OF DEATH August 5, 2009

PLACE OF DEATH (City/Town): Hingham   COUNTY OF DEATH: Plymouth   HOSPITAL OR OTHER INSTITUTION: Renaissance Gardens

PLACE OF DEATH: ☑ Nursing Home   SOCIAL SECURITY NUMBER 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   VETERAN WW II

DECEDENT OF HISPANIC ORIGIN? ☑ NO   RACE: White   DECEDENT'S EDUCATION: 4

AGE 81   UNDER 1 YEAR / UNDER 1 DAY   DATE OF BIRTH August 14, 1927   BIRTHPLACE Quincy, MA

MARRIED, NEVER MARRIED, WIDOWED or DIVORCED: Married   LAST SPOUSE: Anne B. Delforno   USUAL OCCUPATION: State Trooper   KIND OF BUSINESS OR INDUSTRY: Law Enforcement

RESIDENCE: 205 Linden Ponds Way, HG #309, Hingham, Plymouth, MA   ZIP CODE 02043

FATHER - FULL NAME: John A. Gillis   STATE OF BIRTH: Canada   MOTHER - NAME (GIVEN) (MAIDEN): Nora Kineavy   STATE OF BIRTH: Ireland

**INFORMANT**

INFORMANT'S NAME: Anne B. Gillis   MAILING ADDRESS: 205 Linden Ponds Way, HG #309, Hingham, MA 02043   RELATIONSHIP: Wife

**DISPOSITION**

METHOD OF IMMEDIATE DISPOSITION: ☑ Burial   FUNERAL SERVICE LICENSEE OR OTHER DESIGNEE: Richard T. Sweeney, Jr.   LICENSE 5633

PLACE OF DISPOSITION: Pine Hill Cemetery   LOCATION (City/Town, State): Quincy, MA

DATE OF DISPOSITION: August 10, 2009   NAME AND ADDRESS OF FACILITY OR OTHER DESIGNEE: Sweeney Brothers Home for Funerals, Inc. 1 Independence Ave, Quincy, MA 02169

PART I. IMMEDIATE CAUSE: Respiratory Failure   DUE TO chronic obstructive lung disease   days / years

PART II. dementia, hypertension

WAS AUTOPSY PERFORMED? No

MED. EXAM NOTIFIED? No   MANNER OF DEATH: ☑ Natural   DATE OF INJURY   TIME OF INJURY   INJURY AT WORK

**CERTIFIER**

NAME OF ATTENDING PHYSICIAN: August 5, 2009   HOUR OF DEATH 12:00 A   PRONOUNCED DEAD

NAME AND ADDRESS OF CERTIFYING PHYSICIAN OR MEDICAL EXAMINER: Andrew Flewelling MD   200 Linden Ponds Way Hingham MA 02043   LICENSE NO. 226799

WAS THERE A PRONOUNCEMENT FORM? Yes   Aug 5 2009   12:01 A   Tina M Phillips   ☑ R.N.

BURIAL PERMIT ISSUED August 6, 2009   RECEIVED IN THE CITY/TOWN OF Hingham   DATE OF RECORD AUG 6, 2009

SIGNATURE: Eileen A. McCracken

PERMANENT BLACK INK ONLY



I certify that the above is a true extract from the Records of the Town.

*Eileen A. McCracken*

**Town Clerk/Assistant Town Clerk**

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Anne Gillis, Individually and as Executrix of the Estate of Edward Gillis

**DEFENDANTS**

American Optical Corporation, et al.

**(b)** County of Residence of First Listed Plaintiff   Plymouth, MA
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David Jagolinzer (BBO# 643971), The Ferraro Law Firm
4000 Ponce de Leon Blvd., #700, Miami, FL 33146  (305) 375-0111

Attorneys (If Known)

James Hoban, Bowditch & Dewey
P.O. Box 15156, Worcester, MA 01615  (508) 926-3448

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☒ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original
Proceeding

☒ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1442(a)(1)

Brief description of cause:
Plaintiff alleges wrongful death resulting from exposure to asbestos

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $
1,000,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____   DOCKET NUMBER _____

DATE  12/2/11

SIGNATURE OF ATTORNEY OF RECORD
_Becca Banyon_ BBO # 660707

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
                                                                                      Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)  Anne Gillis, Individually and as Executrix of the Estate of
Edward Gillis v. American Optical Corporation, et al.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local
rule 40.1(a)(1)).

☐   I.     410, 441, 470, 535, 830*, 891, 893, 894, 895, R.23, REGARDLESS OF NATURE OF SUIT.

☐   II.    110, 130, 140, 160, 190, 196, 230, 240, 290,320,362, 370, 371, 380, 430, 440, 442-446, 710, 720, 730, 740, 790,
820*, 840*,  850, 870,  871.

☑   III.   120, 150, 151, 152, 153, 195, 210, 220, 245, 310, 315,  330, 340, 345, 350, 355, 360, 365, 368, 385, 400, 422, 423,
450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555, 610, 620, 625, 630, 640, 650, 660, 690, 791, 810, 861-
865, 875, 890, 892, 900, 950.

*Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
district please indicate the title and number of the first filed case in this court.

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐      NO ☑

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
§2403)

YES ☐      NO ☑

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐      NO ☑

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐      NO ☑

7.  Do all of the parties  in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐      NO ☑

A.     If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐          Central Division ☐          Western Division ☐

B.     If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
residing in Massachusetts reside?

Eastern Division ☑          Central Division ☐          Western Division ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If yes,
submit a separate sheet identifying the motions)

YES ☐      NO ☑

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   William S. Rogers and Erica Tennyson, Day Pitney LLP     _Erica Tennyson_   12/2/11
BBO#660707
ADDRESS   One International Place, Boston, MA 02110

TELEPHONE NO.  (617) 345-4600

(CategoryForm4-4-11.wpd  - 4/4/11)