BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MDL DOCKET NO. 875 – In re Abestos Litigation

*Akau, et al. v. Crane Co., et al.*, District of Hawaii, C.A. 1-11-cv-00637

## DEFENDANT WARREN PUMPS, LLC'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-459)

COMES NOW WARREN PUMPS, LLC ("WARREN" or "Defendant"),

and responds to Plaintiffs AMY K. AKAU, Individually, and CORRINE AKAU,

as Personal Representative of the Estate of RICHARD J. AKAU, SR., deceased's

Motion to Vacate this Panel's Conditional Transfer Order ("Motion to Vacate") in

the above styled civil action ("CTO-459").  For the reasons set forth below,

Plaintiffs AMY K. AKAU, Individually, and CORRINE AKAU, as Personal

Representative of the Estate of RICHARD J. AKAU, SR., deceased (hereinafter,

collectively "Plaintiffs") have failed to show good or sufficient cause to vacate

CTO-459.  CTO-459 is consistent with this Panel's prior precedents and with the

principles underlying the creation of MDL-875.  Thus, Defendant respectfully

request that Plaintiffs' Motion to Vacate be denied.

## I.    INTRODUCTION.

Transfer of this asbestos action to MDL-875 "is appropriate for reasons

expressed by the Panel in its original decision in this docket directing

centralization of all pending federal court actions not then in trial involving

allegations of personal injury or wrongful death caused by asbestos or asbestos containing products."  In re Asbestos Products Liab. Litig. (No. VI), 170 F. Supp. 2d 1348, 1349 (J.P.M.L. 2001).

Plaintiffs' arguments in the Motion to Vacate (i.e. that: (1) under the principle of comity, the transferor court should be allowed to decide dispositive motions before transfer to an MDL transferee court; (2) under Ninth Circuit law, the Boyle government contractor defense does not constitute a "colorable" federal defense for federal officer removal; (3) deferring to the transferor court on the issues of federal subject matter jurisdiction serves the interest of efficiency and judicial economy; and (4) MDL-875 is a "black hole") has been repeatedly rejected by the Judicial Panel on Multidistrict Litigation.  See infra.

## II.    FACTUAL BACKGROUND.

On July 29, 1991, the Judicial Panel on Multidistrict Litigation ("Judicial Panel") entered an order transferring all asbestos-related injury and wrongful death cases pending in the federal courts to the United States District Court for the Eastern District of Pennsylvania for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  That order also applies to "tag-along actions" – i.e., suits involving common questions of fact filed after January 17, 1991.  "Tag-along actions" are to be transferred to the Eastern District of Pennsylvania for inclusion

within MDL-875, which is currently pending before the Honorable Eduardo C. Robreno.

On or about, November 2010, RICHARD J. AKAU, SR. ("Mr. Akau") was diagnosed with lung cancer and other asbestos-related diseases.  Mr. Akau died on January 13, 2011.

The instant action was commenced on September 16, 2011 by the filing of a Summons and Complaint (hereafter collectively "Complaint") in the Circuit Court of the First Circuit, State of Hawaii, identified as Civil No. 11-1-2135-09 (RAN) IN RE: HAWAII STATE ASBESTOS CASES This Document Applies To: AMY K. AKAU, Individually, and CORRINE AKAU, as Personal Representative of the Estate of RICHARD J. AKAU, SR., deceased, Plaintiffs vs. CRANE COMPANY, etc., et al., Defendants.

Plaintiffs allege that Mr. Akau died from the injuries caused and/or contributed from asbestos exposure, including exposure to asbestos associated with pumps manufactured by WARREN while employed as a shipfitter at Pearl Harbor Naval Shipyard from March 1941 to January 1975.

## A.    **Defendants' Notice of Removal.**

In light of the Navy's control over and direction of the equipment the Navy purchased from WARREN, and the other removing defendants, this action may be

independently and unilaterally removed to federal court under 28 U.S.C. § 1442(a)

(i.e., the federal officer removal statute).

Accordingly, on October 21, 2011, Warren individually removed the instant

case from the First Circuit, State of Hawaii to the United States District Court for

the District of Hawaii by the filing of a <u>Notice of Removal</u> pursuant to 28 U.S.C.

§§ 1442(a) and 1446.  On October 24, 2011, Warren filed a <u>Notice of Tag-Along</u>

(or "tag along" notice) seeking the transfer of this case for inclusion with MDL-

875.  Latter that day, IMO Industries, Inc. ("IMO") filed a <u>Joinder to Warren's</u>

<u>Notice of Removal</u>.

On October 25, 2011, Defendant Crane Co.("Crane") filed a <u>Joinder</u> to

Warren's <u>Notice of Removal</u>.  On October 26, 2011, Air & Liquid Systems

Corporation, Successor by Merger to Buffalo Pumps, Inc. ("Buffalo) filed a

<u>Joinder</u> re Warren's <u>Notice of Removal</u> and a <u>Notice of Removal of Action</u>.

## B.    Defendants Conditional Transfer Order

On November 2, 2011, the United States Judicial Panel on Multidistrict

Litigation ("Panel") issued <u>Conditional Transfer Order (CTO-459)</u> for the

inclusion of this instant case in MDL-875.  The Panel also issued a <u>Notice of Filing</u>

<u>of CTO and Publication of Briefing Schedule (CTO-459)</u>.

In response, Plaintiffs filed in the Panel a <u>Notice of Opposition to</u>

<u>Conditional Transfer Order (CTO-459)</u> on November 3, 2011.  On November 4,

2011, a <u>Notice of Filing Opposition to CTO-459 and Publication of Briefing Schedule</u> was issued.

      **C.**    **<u>Plaintiffs' Motion To Remand</u>.**

On November 10, 2011, Plaintiffs filed their <u>Motion to Remand</u> and <u>Errata re Motion to Remand</u> in the United States District Court for the District of Hawaii. Plaintiff's <u>Motion for Remand</u>, primarily asserts that this Court lacks §1442(a)(1)-based subject matter jurisdiction over their asbestos-related "failure to warn" claims.

On November 14, 2011, Plaintiffs filed an <u>Evidentiary Objection to the Affidavit of David P. Sargent, Jr., Roger B. Horne, Jr. and Samuel A. Forman.</u>

On November 15, 2011Judge Richard Puglisi, pursuant to Local Rule 7.2(d) elected to decide the <u>Motion to Remand</u> to state court on the pleadings without a hearing.

      **D.**    **<u>Plaintiffs Motion to Vacate Conditional Transfer Order with Brief in Support</u>**

On November 15, 2011, Plaintiffs filed in the Panel their <u>Motion to Vacate Conditional Transfer Order with Brief in Support</u>.

      **E.**    **<u>Motion to Stay</u>.**

On November 17, 2011, Buffalo filed a <u>Motion to Stay</u> all proceedings pending the decision on transfer by the JPML in the United States District Court for the District of Hawaii.  On November 17, 2011, Judge Richard Puglisi,

pursuant to Local Rule 7.2(d) elected to decide Buffalo's <u>Motion to Stay</u> on the pleadings without a hearing.  On November 18, 2011, Buffalo filed an <u>Ex Parte Application to Apply Briefing Schedule for Motion to Remand to Motion to Stay</u> to which the court denied.

On November 30, 2011, Plaintiffs filed its Opposition to the <u>Motion to Stay</u>.

On December 5, 2011, WARREN and IMO individually filed a <u>Joinder</u> to Buffalo's <u>Motion to Stay</u>.

### F.    <u>Plaintiffs' and Defendants' Opposition.</u>

On November 28, 2011, WARREN, IMO, Buffalo, and Crane Co. filed their <u>Opposition to Plaintiffs' Motion to Remand</u>.  That same day, Buffalo filed an Objection to Plaintiffs <u>Evidentiary Objection to the Affidavit of David P. Sargent, Jr., Roger B. Horne, Jr. and Samuel A. Forman</u>.

On November 30, 2011, Plaintiffs filed its <u>Opposition</u> to the <u>Motion to Stay</u>. On December 5, 2011, WARREN and IMO individually filed a <u>Joinder</u> to Buffalo's <u>Motion to Stay</u>.

## III.   <u>ARGUMENT.</u>

Defendant asks this court to exercise its discretion in denying Plaintiff's <u>Motion to Vacate</u> as the transfer of this tag-along action to the Eastern District of Pennsylvania for coordinated or consolidated pretrial proceedings is appropriate. Moreover, Plaintiffs' arguments in their <u>Motion to Vacate</u> (i.e. that: (1) under the

principle of comity, the transferor court should be allowed to decide dispositive motions before transfer to an MDL transferee court; (2) under Ninth Circuit law, the Boyle government contractor defense does not constitute a "colorable" federal defense for federal officer removal; (3) deferring to the transferor court on the issues of federal subject matter jurisdiction serves the interest of efficiency and judicial economy; and (4) MDL -875 is a "black hole") have been repeatedly rejected by the Panel.

### A.   Transfer to the Eastern District of Pennsylvania is Appropriate for Coordinated or Consolidated Pretrial Proceedings

Transfer of this tag-along action to the Eastern District of Pennsylvania is appropriate for several reasons.  First, the Panel has the authority to transfer such case despite pending, or contemplated, jurisdictional objections.  Second, assuming a jurisdictional issue is raised, a determination of the issue is well within the transferee court's authority and should be heard by a single court.  Third, transfer and coordination or consolidation promotes judicial efficiency and consistency.

### (1)   The Panel has Authority to Transfer Despite Pending Jurisdictional Claims.

Courts have consistently held that the Panel's authority to transfer tag-along cases to multidistrict litigation withstands pending jurisdictional objections.  Jurisdictional objections alone are not grounds for opposing transfer of a case for coordinated or consolidated pretrial proceedings.  See In re Gypsum Wallboard,

302 F. Supp. 794, 794 (J.P.M.L. 1969), See also 32A Am. Jur. 2d Federal Courts §

1512 (2011); In re Vioxx Products Liability Litigation, 360 F. Supp. 2d 1352, 1354

(J.P.M.L. 2005) (Panel held that the pendency of a motion to remand to state court

is not a sufficient basis to avoid inclusion in Section 1407 proceedings).  The fact

that a case is in federal court by removal from state court has no bearing on a

motion to transfer the case for MDL proceeding.  See In re Antibiotic Drugs, 299

F. Supp. 1403, 1405 (J.P.M.L. 1969).

The Panel has the authority to transfer a case in which a motion to remand to state

court is pending.  See In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990); See also e.g.

Wolgamott v. Asbestos Defendants, 2010 U.S. Dist. LEXIS (N.D. Ca. 2010); In re

California Retail Natural Gas and Electric Antitrust Litigation., 150 F. Supp.2d

1383, 1384 (J.P.M.L. August 15, 2001); In re Bridgestone/Firestone Inc., 151 F.

Supp.2d 1381, 1382 (J.P.M.L. 2001); Meyer v. Bayer, 143 F. Supp.2d 1044, 1047

(E.D.Wis. 2001).

Moreover, it is within transferee court's authority to determine jurisdictional

issues when raised.  As expressly provided by 28 U.S.C. § 1407(a), the Panel will,

after briefing by all interested parties, determine whether the case is appropriate for

transfer or remand.  See 28 U.S.C. § 1407(a); See also In re Roberts, 178 F.3d 181

(Pa. 1999) (Under statue governing transfer and remand of cases in multidistrict

litigation, power to remand lies with Panel on Multidistrict Litigation).

Therefore, the pendency of Plaintiff's <u>Motion to Remand</u> does not compromise the Panel's authority to transfer this action for coordinated or consolidated MDL proceedings, nor does it mandate a return of this case to the transferor court.  As such Plaintiff's <u>Motion to Vacate</u> should be denied.

**(2)   <u>Transfer Promotes Judicial Efficiency and Consistency</u>.**

Through 28 U.S.C. § 1407, Congress intended to promote the "just and efficient conduct" of the actions transferred thereunder.  <u>See</u> <u>In re Ivy</u>, 901 F.2d 7 (2d Cir. 1990).  In mass tort cases consolidated under § 1407, similar jurisdictional issue are "easily capable of arising in hundreds or even thousands of case in district courts throughout the nation."  <u>Id</u>. at 9.  "Consistency and economy are both served by resolution of [motion to remand] by a single court after transfer by the J.P.M.L."  <u>Aikins v. Microsoft Corp.</u>, 2000 WL 3103991 at *1 (E.D. La., March 24, 2000).

Any suggestion that the transferor jurisdiction is better equipped to decide jurisdictional issues will not support opposition to the issuance of a transfer order because "the problem of ascertaining and applying the law of the transferor jurisdiction is frequently faced by transferee judges."  <u>In re Duane</u>, 345 F. Supp. 278. 278, 279 (J.P.M.L. 1973); <u>see, e.g.</u>, <u>In re Puerto Rico Air Disaster Litigation</u>., 340 F. Supp. 492 (D.P.R. 1972).  Indeed, remand and other motions can and have been presented to and decided by the transferee judge.  <u>See, e.g.</u>, <u>Hagen v.</u>

Benjamin Foster Co., 2010 WL 374529 (E.D. Pa. Sept. 24, 2010), Jenkins v. Allied Packing & Supply, Inc., No. 09-cv-0101DSM (LSP) (S.D. Cal. Mar. 25, 2009); Wright v. A.W. Chesterton Company, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008); Keleman v Buffalo Pumps, Inc., No. CV 08-712-R (C.D. Cal. Apr. 14, 2008); Lindquist v. Cla-Val Co., No. CV 08-501-R (C.D. Cal. Apr. 14, 2008); Munn v. Cla-Val Co., No. CV 08-282-R (C.D. Cal. Apr. 14, 2008); Nelson v. Alfa Laval, Inc., No. CV 07-8338VBF (RCx) (Feb. 8, 2008); Oberstar v. CBS Corp., CV 08-118PA (JWJx), 2008 U.S. Dist. LEXIS 14023 (C.D. Cal. Feb. 11, 2008); Ballenger v. Agco Corp., 2007 WL 1813821 (N.D. Cal. June 22, 2007); Viscosi v. American Optical Corp., 2008 WL 4426884 (D. Conn. Sept. 29, 2008); Contois v. Able Industries, Inc., 523 F.Supp.2d 155 (D. Conn. 2007); Machnik v. Buffalo Pumps, Inc., 506 F.Supp.2d 99 (D. Conn. 2007); Kirks v. General Electric Co., 654 F.Supp.2d 220 (D. Del. 2009); Marley v. Elliot Turbomachinery Co., 545 F.Supp.2d 1266 (S.D.Fla. Mar. 7, 2008); Harris v. Rapid American Corp., 2008 WL 656266 (N.D. Ill. Mar. 7, 2008); O'Connell v. Foster Wheeler, 544 F.Supp.2d 51 (D. Mass 2008); Curry v. American Standard, Inc., 2009 WL 308029 (S.D.N.Y. Feb. 6, 2009); Nesbiet v. General Electric Co., 299 F. Supp. 2d 205 (S.D.N.Y. 2005); Siegfried v. Allegheny Ludlum Corp., 2009 WL 1035001 (W.D. Pa. Apr. 17, 2009); Mitchell v. AC&S, Inc., 2004 WL 3831228 (E.D.Va. Dec. 15, 2004).25, 2010).

Moreover, the denial of a transfer order here would wholly be inconsistent with this Panel's transfer order identified as Document 7936 since this Panel granted such transfer order under like circumstances.  <u>See</u> Doc. 7936 attached hereto as Exhibit "A".  The principles of consistency give great weight to the denial of Plaintiffs' <u>Motion to Vacate</u> and the issuance of a transfer order.

Therefore, since the Panel has the authority to transfer this action despite the pendency of Plaintiffs' <u>Motion to Remand</u>, and since the transferee district is well positioned to handle such issues in a coordinated or consolidated manner, and since such coordination or consolidated promotes judicial efficiency and consistency in keeping with the congressional aims of § 1407, this Panel should deny Plaintiffs' <u>Motion to Vacate</u> and proceed with the transfer of this matter to MDL-875.

**B.** <u>**Regardless of the Principle of Comity, the Transferor Court Should Defer the Issue of Subject Matter Jurisdiction Pursuant 28 U.S.C. § 1442 to MDL Panel.**</u>

In Plaintiffs' <u>Motion to Vacate</u>, Plaintiffs asks this Panel to vacate CTO-459 under principals of comity.  However, courts have consistently held that a transfer is not precluded by pending motions.  <u>See</u> 32A Am. Jur. 2d Federal Courts § 1512 (2011); <u>See also</u> <u>In Re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation</u>, 408 F. Supp. 2d 1351, 1351 (J.P.M.L. 2005).  This includes a **motion to remand to state court**.  <u>See</u> <u>In re Gypsum Wallboard</u>, 302 F. Supp. 794, 794 (J.P.M.L. 1969); <u>See also</u> 32A Am. Jur. 2d Federal Courts § 1512 (2011);

In re Vioxx Products Liability Litigation, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) (Panel held that the pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings).

In Plaintiffs' Motion to Vacate, Plaintiffs cite to In re L.E. Lay & Co. Antitrust Litigation, 391 F. Supp. 1054 (J.P.M.L 1975), and essentially argues that their Motion to Remand is so important to the prospective District Court of Hawai'i, that principles of comity mandate that the Panel delay their ruling on transfer until the District Court of Hawai'i rules on Plaintiffs' Motion to Remand. However, Plaintiffs' reliance on In re L.E. Lay & Co., and the several other cases it cited, is misguided and/ or erroneous.

Unlike In re L.E. Lay & Co., where the movants had a motion for a preliminary injunction *sub judice* in the transferor court, the Plaintiffs in the instant case filed a Motion to Remand.  See Id. at 1056; See also In re Resource Exploration, Inc. Securities Litigation, 483 F. Supp. 817 (J.P.M.L 1980) (motion for summary judgment); In re Kaehni Patent, 311 F. Supp 1342 (motion to dismiss); In re Professional Hockey Antitrust Litigation, 352 F. Supp. 1405 (motion for preliminary injunction).  Not only is Plaintiff's Motion to Remand substantially different from the motions referenced in the cases listed in Plaintiffs' cited cases, but the Panel has held that a motion to remand is an insufficient basis

to avoid inclusion in Section 1407 proceedings.  *Cf*. <u>In re Vioxx Products Liability Litigation</u> 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005).

Therefore regardless of the principle of comity, the transferor court should defer the issue of subject matter jurisdiction under 28 U.S.C. § 1442 to the Panel and to that end, deny Plaintiffs' Motion to Vacate.

## C.  <u>Deferring to the Transferor Court on the Issues of Federal Subject Matter Jurisdiction Serves the Interest of Efficiency and Judicial Economy.</u>

Plaintiffs contends that the transferee court, here MDL, should defer the issue of subject matter jurisdiction to the transferor court, here the District Court of Hawaii, as it would otherwise be contrary to any interest of efficiency and judicial economy.  In making their argument, Plaintiffs cites to <u>Viala v. Owen-Corning Fiberglas Corp.</u>, which admittedly illustrates an example where the transferor court in the Ninth Circuit refused to defer on a motion to remand to the transferee court. 1994 U.S. Dist. LEXIS 4824.  However, not only is the basis upon which the transferor court made its decision factually distinct from the instant case, the transferor court's decision in refusing to defer the issue of subject matter jurisdiction to the Panel has no bearing of whether this Panel should defer the issue of subject matter jurisdiction to the transferor court.  Therefore any analogy to <u>Viala</u> would be misguided, erroneous and inapplicable.

In <u>Viala</u>, the transferor court described the defendants' uniformity argument as "disingenuous," noting the several waves of cases arising out of the Subic Bay exposure, to which the defendants sought removal, but where the first wave of cases (29 cases in all) had already been remanded to state court. <u>Id</u>. at *4 (*citing* <u>Acierto v. Owens-Corning Fiberglas Corp., et al</u>, No. C 93-2136 JPV (N.D. Cal., Order dated August 13, 1993).  The transferor court reasoned that "uniformity would clearly have been served if defendants have left subsequent case in state court in which it file, so that they could be decided uniformly with the first 29 Subic Bay case." <u>Id</u>.

Unlike <u>Viala</u>, it can hardly be argued that "uniformity would clearly have been served" if Defendant were to leave this case in state court in which it was first filed as the District of Hawaii has never reached the merits of removal under 28 U.S.C. § 1442 like the first 29 cases in <u>Viala</u>.  To the contrary, uniformity would clearly be served if the Panel transfers this case in light of Document 7936.  See Exhibit"A".  Therefore, Plaintiffs' analogy to the <u>Viala</u> case is clearly misguided, erroneous and inapplicable.

   **D.  <u>Under Ninth Circuit Law, the Boyle Government Contractor Defense is a "Colorable" Federal Defense for Federal Officer Removal to which WARREN Qualifies</u>.**

Plaintiffs' contend that there is no federal officer removal jurisdiction because under Ninth Circuit law, the government contractor defense does not

constitute a colorable federal defense.  <u>See</u> <u>Plaintiff's Mtn to Vacate Brief</u> at 1 ¶ 1.

However, Plaintiff is misinformed.  Under Ninth Circuit law, the government

contractor defense is colorable federal defense and applies to failure to warn

claims.  <u>See</u> <u>Getz, et al. v. The Boeing Co., et al.</u>, 2011 U.S. App. LEXIS 15877,

*11-*34 (9th Cir. 2011) (United States Court of Appeals for the Ninth held that the

government contractor defense bars each of Plaintiffs' state-law claims, including

state-law duty to warn); <u>See</u> <u>also</u> <u>Rodriguez v. Lockheed Martin Corp.</u>, 627 F.3d

1259, 1265 (9th Cir. 2010) (applying Hawaii law, a federal court recognized the

government contractor defense as a colorable federal defense).  A true and correct

copy of the <u>Getz</u> and the <u>Rodriquez</u> decision is attached hereto as Exhibit "B".

Moreover, the government contractor defense is appropriate in Defendant's

case.  As stated in <u>Boyle v. United Tech. Corp.</u> 487 U.S. 500 (1988), WARREN

has a federal defense as a government contractor, when it: 1) manufactures or

supplies equipment pursuant to reasonably precise specifications; and 2) the

equipment conforms to these specifications.  <u>Id.</u> at 512.  The third prong of the

defense is satisfied by showing that the contractor warned the United States about

hazards in its products that were known to the contractor but not to the United

States.  <u>Id.</u>

The government contractor defense is available in failure to warn cases

including, but not limited to, the asbestos context.  <u>See</u> <u>Grispo v. Eagle-Picher</u>

Industries, Inc., et al., 897 F. 2d 626 (2d Cir. 1990).  See also generally, Smith v.

Xerox Corp., 866 F.2d 135, 136-38 (5th Cir. 1989) (same); Niemann v. McDonnell

Douglas Corp., 721 F.2d 1019, 1025-27 (S.D. Ill. 1987) (same); Faddish v. General

Electric Co., 2010 WL 4146108 (E.D. Pa. Oct. 20, 2010).  As the Faddish court

noted, the "prevailing view is that an independent contractor does not have to show

an express government prohibition on all warnings, but rather, must establish that

the government 'exercised its discretion' regarding warnings to be placed on

defendant's products."  Faddish, 2010 WL 4146108 at *20-21.  See also, Butler v.

Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th Cir. 1996) (The Navy's

involvement in development process, including testing and installation, of the

product in question, was precisely the type of "back and forth dialogue culminating

in approval," and "continuous exchange between the contractor and the

government" required to satisfy the first prong of Boyle).

### (1) WARREN Manufactured Or Supplied Equipment Pursuant To Reasonably Precise Specifications.

As more fully explained in Warren's Notice of Removal and Opposition to

Plaintiffs' Motion to Remand, which is incorporated by reference herein,

equipment built for Navy vessels was manufactured according to detailed

specifications prepared, written, and issued exclusively by the Navy, specifically

NAVSEA or BUSHIPS.  The Navy retained the final say over the design of any

piece of equipment, and made the ultimate decision regarding how to resolve an

engineering disagreement between the Navy and an outside supplier.  It is clear that the Navy made the considered military decision to use asbestos in association with its ships and the equipment it required for use on those ships.  **Sargent Aff.**, ¶¶ 35-45; **Horne Aff.** ¶ 15; **Forman Aff.** ¶¶ 37.  Through specifications developed by the Navy--not equipment manufacturers—the Navy required the use of asbestos thermal insulation with equipment intended for installation on Navy ships.  **Horne Aff.,** ¶ 15.  Navy specifications also governed internal components such as sealing materials, which the Navy at times required to contain asbestos pursuant to the Navy's needs.  See **Sargent Aff.,** at ¶ 45; **Doktor Aff.** at ¶ 7.

Regarding any written communications, the Navy also developed military specifications describing in detail what it needed from equipment manufacturers in all written materials supplied with pumps. **Sargent Aff.** ¶ 56; **Horne Aff.,** ¶¶ 17-24, 46-55; **Doktor Aff.** at ¶ 9.  Equipment manufacturers, such as Warren, were required to supply drawings and plans, and at times draft technical manuals for equipment.  **Sargent Aff.** at ¶ 56.  The applicable specifications included strict instructions regarding labeling of and packaging of the pumps themselves, and for all written documentation that was procured with them.  **Sargent Aff.** at ¶ 56-58; **Horne Aff.** at ¶ 14.  Equipment manufacturers would not be permitted, under the specifications, regulations and procedures, nor under the actual practice as it evolved in the field, to vary or deviate in any respect from the Navy specifications

17

in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation aboard a Navy ship beyond those *specifically required* by the Navy without prior discussion and approval.  **Sargent Aff.** at ¶ 57.

The Navy did not require a warning for a potential hazard that was ubiquitous throughout a Navy ship or shipyard shop.  **Horne Aff.** ¶ 20; **Sargent Aff.,** ¶ 51.  Asbestos, in fact, was everywhere, and the Navy and its shipyards had the ability to identify the hazards, they had the means and methods of controlling those hazards.  See **Horne Aff.,** ¶¶ 17-24; **Sargent Aff.,** ¶¶ 40-45, 55, 62; **Forman Aff.,** ¶¶ 74-76.  Admiral Horne and Admiral Sargent averred that the Navy would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations supplied with pumps for Navy ships during the 1940s, 1950s and 1960s.  **Sargent Aff.** at ¶ 62; **Horne Aff.** ¶¶ 23-24.

Therefore, WARREN manufactured or supplied equipment pursuant to reasonably precise specifications.

### (2) Equipment Conforms To Design Specifications.

The evidence clearly shows that the Navy only accepted equipment and written materials that conformed to its specifications.  The fact that WARREN's equipment and written communications conformed to the Navy's specifications is conclusively established by the simple fact that the Navy approved and accepted

such equipment and written materials for use on its ships.  As Admiral Sargent

averred, "[e]**quipment could not have been installed aboard Navy vessels**

**unless it was first determined by the Navy to be in conformity with all**

**applicable specifications**.  **Sargent Aff.** at ¶ 29 (emphasis added).  That the Navy

accepted WARREN's equipment and any corresponding documentation is

indicative of the fact that WARREN provided the Navy what it needed, pursuant to

the applicable specifications.


### (3) Warned The United States About Hazards In Its Product Known To The Contractor But Not The Government

There is also no serious dispute that the Navy was unaware of the potential

hazards of asbestos at the time it contracted with WARREN for the pumps at issue

in this case.  WARREN has amassed overwhelming evidence to show the Navy's

knowledge of the potential hazards of asbestos, including through the Affidavit of

Dr. Forman, who averred to the extensive knowledge the United States Navy had

of the potential hazards of asbestos dating back to at least the early 1920's.  See,

e.g., **Forman Aff.** ¶ 22 and corresponding Exhibit F.  Dr. Forman went on to

discuss the vast evidence of the Navy's knowledge of the potential hazards of

asbestos, supported by the applicable documentation, including the Navy's

knowledge of those potential hazards well before Mr. Akau ever boarded a Navy

ship. See **Forman Aff.** at ¶¶ 22-42.

Therefore, it is clear that Plaintiff's claims against WARREN depend solely on the actions taken by WARREN in accordance and compliance with directions from the Navy and, therefore, all the elements of 28 U.S.C. § 1442(a)(1) are met. See Jefferson County v. Acker, 527 U.S. 423, 431 (1999) (Defendant is not required to "virtually win [its] case" to remove the action, merely to show that its federal defense has some basis in law and fact.). WARREN has thus shown that it has a colorable federal defense.

**E.   Under the Guidance of Judge Eduardo Robreno, MDL-875 Is No Longer a "Black Hole".**

In Plaintiffs' Motion to Vacate, Plaintiffs essentially argues that any transfer to MDL-875 would be "grossly inefficient" and thus tantamount to a "black hole" where MDL procedure will take an undue amount of time before it is transferred back to the District of Hawaii. See Motion to Vacate at 3-5.

Plaintiffs' "black hole" argument has been directly refuted by the procedures implemented by Judge Robreno in MDL-875. In 2008, the Panel, denying motions to vacate CTO's, noted that over 76,000 actions had been closed in MDL 875, and the procedures were available in the MDL to effectuate the remand of cases in a timely manner:

> "Under the stewardship of the transferee court, as of March 31, 2008, (1) over 76,450 actions have been closed in the transferee district, and (2) over 1,370 actions or claims therein have been returned to their originating transferor districts. To any parties that believe the

> uniqueness of their particular situation renders continued
> inclusion of their action in MDL No. 875 unnecessary or
> inadvisable, whenever the transferee court deems remand
> of any claims or actions appropriate, procedures are
> available whereby this may be accomplished with a
> minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *199
> F.R.D. at 436-38*. We are confident that the transferee
> court will continue to promptly review arguments for
> returning transferred actions or claims to their transferor
> courts and will take all appropriate steps to assure their
> speedy return whenever it is convinced that retention in
> the MDL No. 875 proceedings is no longer needed."

See In re Asbestos Products Liab. Litig., 545 F. Supp. 2d 1359, 1361 (J.P.M.L.

2008).

  Since 2008, the court, under the guidance of Judge Robreno, has, "initiated

an aggressive, pro-active policy in setting cases for settlement conferences,

motions, hearings and trail."  See www.paed.uscourts.gov/mdl875a.asp; See also

e.g., Administrative Order No. 12 (Court imposed filing requirements and

procedures to effectuate its desire to facilitate the expeditious movement of

pending cases on the MDL docket).  Moreover, the MDL-875's most recent MDL-

875 Asbestos Products Liability Litigation Land-Based Caseload Statistics reflect

that of the 121,286 cases transferred to MDL-875 between August 1, 2006 through

June 30, 2011, 108,228 cases were terminated.  See MDL-875 Asbestos Products

Liability Litigation Land-Based Caseload Statistics attached hereto as Exhibit "C".

The MDL notes that "the vast majority of transferred actions have been able to be

concluded in the transferee district during the course of pretrial proceedings."  See

In re Asbestos Products Liab. Litig., 560 F. Supp. 2d 1367, 1369; See also e.g.

Krieger v. Alfa Laval Inc., Case No. 10-69373 (E.D. Pa. 2010) (Confirming

transfer of case to MDL took less that 2 months after Defendant's filed their notice

of removal).

Therefore, given MDL-875's current "aggressive, pro-active" policies to

"facilitate the expeditious movement of pending case s on the MDL docket" and its

exceptional efficiency in resolving cases transferred to the Eastern District of

Pennsylvania, it can hardly be argued that MDL-875 is a "black hole."  As such,

Plaintiffs' Motion to Vacate should be denied.

## IV.    **CONCLUSION**.

For the reasons set forth above, WARREN respectfully submits that

Plaintiff's Motion to Vacate CTO-459 pending Plaintiff's Motion to Remand in the

District Court of Hawai'i should be denied since the transfer for inclusion to MDL-

875 is in the best interests of justice, judicial efficiency and judicial consistency.

Moreover, no undue or unnecessary delay would be suffered by Plaintiffs were this

case be transferred to MDL-875 as it has demonstrated time and time again that it

will "promptly review arguments for returning transferred actions or claims to their

transferor courts and will take all appropriate steps to assure their speedy return

whenever it is convinced that retention in the MDL No. 875 proceedings is no

longer needed."  See In re Asbestos Products Liab. Litig., 545 F. Supp. 2d 1359,

1361 (J.P.M.L. 2008).  Accordingly, WARREN respectfully requests that

Plaintiffs' Motion to Vacate CTO-459 be denied.

DATED: Honolulu, Hawaii, <u>December 9, 2011</u>.

 /s/ E. Mason Martin III
ELTON JOHN BAIN
E. MASON MARTIN III
BRADFORD K. CHUN
Attorneys for Defendant
WARREN PUMPS, LLC
