BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

MDL DOCKET NO. 875 – In re Abestos Litigation

*Leite, et al. v. Crane Co., et al.*, District of Hawaii, C.A. 1-11-cv-00636

## DEFENDANT IMO INDUSTRIES, INC.'S RESPONSE TO PLAINTIFFS' MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-458)

COMES NOW IMO INDUSTRIES, INC. ("IMO" or "Defendant"), and responds to Plaintiffs DOUGLAS P. LEITE and MARY ANN K. LEITE's <u>Motion to Vacate this Panel's Conditional Transfer Order</u> ("Motion to Vacate") in the above styled civil action ("CTO-458"). For the reasons set forth below, Plaintiffs DOUGLAS P. LEITE and MARY ANN K. LEITE (hereinafter, collectively "Plaintiffs") have failed to show good or sufficient cause to vacate CTO-458. CTO-458 is consistent with this Panel's prior precedents and with the principles underlying the creation of MDL-875. Thus, Defendant respectfully request that Plaintiffs' <u>Motion to Vacate</u> be denied.

## I.    INTRODUCTION.

Transfer of this asbestos action to MDL-875 "is appropriate for reasons expressed by the Panel in its original decision in this docket directing centralization of all pending federal court actions not then in trial involving allegations of personal injury or wrongful death caused by asbestos or asbestos containing products." <u>In re Asbestos Products Liab. Litig. (No. VI)</u>, 170 F. Supp. 2d 1348, 1349 (J.P.M.L. 2001).

Plaintiffs' arguments in the <u>Motion to Vacate</u> (i.e. that: (1) under the principle of comity, the transferor court should be allowed to decide dispositive motions before transfer to an MDL transferee court; (2) under Ninth Circuit law, the <u>Boyle</u> government contractor defense does not constitute a "colorable" federal defense for federal officer removal; (3) deferring to the transferor court on the issues of federal subject matter jurisdiction serves the interest of efficiency and judicial economy; and (4) MDL-875 is a "black hole") has been repeatedly rejected by the Judicial Panel on Multidistrict Litigation.  <u>See</u> infra.

## II.    <u>FACTUAL BACKGROUND.</u>

On July 29, 1991, the Judicial Panel on Multidistrict Litigation ("Judicial Panel") entered an order transferring all asbestos-related injury and wrongful death cases pending in the federal courts to the United States District Court for the Eastern District of Pennsylvania for coordinated pretrial proceedings pursuant to 28 U.S.C. § 1407.  That order also applies to "tag-along actions" – i.e., suits involving common questions of fact filed after January 17, 1991.  "Tag-along actions" are to be transferred to the Eastern District of Pennsylvania for inclusion within MDL-875, which is currently pending before the Honorable Eduardo C. Robreno.

On or about, May 2010, DOUGLAS P. LEITE ("Mr. Leite") was diagnosed with pleural plaques and other asbestos-related diseases.

The instant action was commenced on September 6, 2011 by the filing of a <u>Summons and Complaint</u> (hereafter collectively "<u>Complaint</u>") in the Circuit Court of

the First Circuit, State of Hawaii, identified as Civil No. 11-1-1971-09 (RAN) <u>IN RE: HAWAII STATE ASBESTOS CASES This Document Applies To: DOUGLAS P. LEITE and MARY ANN K. LEITE, Plaintiffs vs. CRANE COMPANY, etc., et al., Defendants</u>.

Plaintiffs allege that Mr. Leite died from the injuries caused and/or contributed from asbestos exposure, including exposure to asbestos associated with pumps manufactured by IMO while employed as a shipfitter at Pearl Harbor Naval Shipyard from March 1941 to January 1975.

### A.    <u>Defendants' Notice of Removal</u>.

In light of the Navy's control over and direction of the equipment the Navy purchased from IMO, and the other removing defendants, this action may be independently and unilaterally removed to federal court under 28 U.S.C. § 1442(a) (i.e., the federal officer removal statute).

On October 21, 2011, Defendant Crane Co. ("Crane"), individually removed this instant case from First Circuit, State of Hawaii to the United States District Court for the District of Hawaii by the timely filing of its <u>Notice of Removal</u> pursuant to 28 U.S.C. §§ 1442(a) and 1446, and its <u>Notice of Tag-Along</u> (or "tag along" notice) seeking to transfer of this case for inclusion with MDL-875.  On October 24, 2011, WARREN and IMO Industries, Inc. ("IMO") filed individually filed a <u>Joinder</u> to Crane's <u>Notice of Removal</u>.

On October 26, 2011, Air & Liquid Systems Corporation, Successor by Merger to Buffalo Pumps, Inc. ("Buffalo) filed a Joinder re Crane's Notice of Removal, a Notice of Removal of Action, and a Notice of Tag-Along Action.

### B.   Defendants Conditional Transfer Order

On November 2, 2011, the United States Judicial Panel on Multidistrict Litigation ("JPML" or "Panel") issued Conditional Transfer Order (CTO-458) for the inclusion of this instant case in MDL-875 and a Notice of Filing of CTO and Publication of Briefing Schedule (CTO-458).

In response, Plaintiffs filed in the Panel a Notice of Opposition to Conditional Transfer Order (CTO-458) on November 1, 2011.

### C.   Plaintiffs' Motion To Remand.

On November 10, 2011, Plaintiffs filed their Motion to Remand in the United States District Court, District of Hawaii.  Plaintiff's Motion for Remand, primarily asserts that this Court lacks §1442(a)(1)-based subject matter jurisdiction over their asbestos-related "failure to warn" claims.

On November 14, 2011, Plaintiffs filed an Evidentiary Objection to the Affidavit of David P. Sargent, Jr., Roger B. Horne, Jr. and Samuel A. Forman.

On November 15, Judge Richard Puglisi, pursuant to Local Rule 7.2(d) elected to decide the Motion to Remand to state court on the pleadings without a hearing.

**D.**    <u>**Plaintiffs' Motion to Vacate Conditional Transfer Order**</u>

On November 15, 2011, Plaintiffs filed in the Panel their <u>Motion to Vacate</u> <u>Conditional Transfer Order with Brief in Support</u>.

**E.**    <u>**Motion to Stay**</u>.

On November 17, 2011, Crane and Buffalo individually filed a <u>Motion to Stay</u> all proceedings pending the decision on transfer by the JPML in the United States District Court for the District of Hawaii.  That same day, Judge Richard Puglisi, pursuant to Local Rule 7.2(d) elected to decide Crane's <u>Motion to Stay</u> on the pleadings without a hearing.

On November 18, 2011, Buffalo filed an <u>Ex Parte Application to Apply</u> <u>Briefing Schedule for Motion to Remand to Motion to Stay</u>.  On November 21, 2011, Crane filed a <u>Joinder</u> to Buffalo filed an <u>Ex Parte Application to Apply Briefing</u> <u>Schedule for Motion to Remand to Motion to Stay</u> filed November 18, 2011. However, Buffalo's  <u>Ex Parte Application to Apply Briefing Schedule for Motion to</u> <u>Remand to Motion to Stay</u> was denied on the grounds that the court could review both  the Plaintiffs' <u>Motion to Remand</u> and Defendants' <u>Motion to Stay</u> at the same time.

<u>**Plaintiffs' and Defendants' Opposition.**</u>

On November 28, 2011, WARREN, IMO, Buffalo, and Crane Co. filed their <u>Opposition to Plaintiffs' Motion to Remand</u>.  That same day, Buffalo filed an

Response to Plaintiffs' Evidentiary Objection to the Affidavit of Davit P. Sargent, Jr.
Roger B. Horne, Jr., and Samuel A. Foreman.

On November 30, 2011, Plaintiff filed its <u>Opposition</u> to the Defendants'
<u>Motion to Stay</u>.  On December 5, 2011, Warren and IMO individually filed a <u>Joinder</u>
to Buffalo's <u>Motion to Stay</u>.

## III.   <u>ARGUMENT.</u>

Defendant asks this court to exercise its discretion in denying Plaintiff's
<u>Motion to Vacate</u> as the transfer of this tag-along action to the Eastern District of
Pennsylvania for coordinated or consolidated pretrial proceedings is appropriate.
Moreover, Plaintiffs' arguments in their <u>Motion to Vacate</u> (i.e. that: (1) under the
principle of comity, the transferor court should be allowed to decide dispositive
motions before transfer to an MDL transferee court; (2) under Ninth Circuit law, the
<u>Boyle</u> government contractor defense does not constitute a "colorable" federal
defense for federal officer removal; (3) deferring to the transferor court on the issues
of federal subject matter jurisdiction serves the interest of efficiency and judicial
economy; and (4) MDL -875 is a "black hole") have been repeatedly rejected by the
Panel.

### A.   <u>Transfer to the Eastern District of Pennsylvania is Appropriate for Coordinated or Consolidated Pretrial Proceedings</u>

Transfer of this tag-along action to the Eastern District of Pennsylvania is
appropriate for several reasons.  First, the Panel has the authority to transfer such case

despite pending, or contemplated, jurisdictional objections.  Second, assuming a

jurisdictional issue is raised, a determination of the issue is well within the transferee

court's authority and should be heard by a single court.  Third, transfer and

coordination or consolidation promotes judicial efficiency and consistency.

### (1)   The Panel has Authority to Transfer Despite Pending Jurisdictional Claims.

Courts have consistently held that the Panel's authority to transfer tag-along

cases to multidistrict litigation withstands pending jurisdictional objections.

Jurisdictional objections alone are not grounds for opposing transfer of a case for

coordinated or consolidated pretrial proceedings.  See In re Gypsum Wallboard, 302

F. Supp. 794, 794 (J.P.M.L. 1969), See also 32A Am. Jur. 2d Federal Courts § 1512

(2011); In re Vioxx Products Liability Litigation, 360 F. Supp. 2d 1352, 1354

(J.P.M.L. 2005) (Panel held that the pendency of a motion to remand to state court is

not a sufficient basis to avoid inclusion in Section 1407 proceedings).  The fact that a

case is in federal court by removal from state court has no bearing on a motion to

transfer the case for MDL proceeding.  See In re Antibiotic Drugs, 299 F. Supp.

1403, 1405 (J.P.M.L. 1969).

The Panel has the authority to transfer a case in which a motion to remand to

state court is pending.  See In re Ivy, 901 F.2d 7, 9 (2d Cir. 1990); See also e.g.

Wolgamott v. Asbestos Defendants, 2010 U.S. Dist. LEXIS (N.D. Ca. 2010); In re

California Retail Natural Gas and Electric Antitrust Litigation., 150 F. Supp.2d 1383,

1384 (J.P.M.L. August 15, 2001); In re Bridgestone/Firestone Inc., 151 F. Supp.2d 1381, 1382 (J.P.M.L. 2001); Meyer v. Bayer, 143 F. Supp.2d 1044, 1047 (E.D.Wis. 2001).

Moreover, it is within transferee court's authority to determine jurisdictional issues when raised.  As expressly provided by 28 U.S.C. § 1407(a), the Panel will, after briefing by all interested parties, determine whether the case is appropriate for transfer or remand.  See 28 U.S.C. § 1407(a); See also In re Roberts, 178 F.3d 181 (Pa. 1999) (Under statue governing transfer and remand of cases in multidistrict litigation, power to remand lies with Panel on Multidistrict Litigation).

Therefore, the pendency of Plaintiff's Motion to Remand does not compromise the Panel's authority to transfer this action for coordinated or consolidated MDL proceedings, nor does it mandate a return of this case to the transferor court.  As such Plaintiff's Motion to Vacate should be denied.

### (2)   Transfer Promotes Judicial Efficiency and Consistency.

Through 28 U.S.C. § 1407, Congress intended to promote the "just and efficient conduct" of the actions transferred thereunder.  See In re Ivy, 901 F.2d 7 (2d Cir. 1990).  In mass tort cases consolidated under § 1407, similar jurisdictional issue are "easily capable of arising in hundreds or even thousands of case in district courts throughout the nation."  Id. at 9.  "Consistency and economy are both served by resolution of [motion to remand] by a single court after transfer by the J.P.M.L." Aikins v. Microsoft Corp., 2000 WL 3103991 at *1 (E.D. La., March 24, 2000).

Any suggestion that the transferor jurisdiction is better equipped to decide

jurisdictional issues will not support opposition to the issuance of a transfer order

because "the problem of ascertaining and applying the law of the transferor

jurisdiction is frequently faced by transferee judges."  In re Duane, 345 F. Supp. 278.

278, 279 (J.P.M.L. 1973); see, e.g., In re Puerto Rico Air Disaster Litigation., 340 F.

Supp. 492 (D.P.R. 1972).  Indeed, remand and other motions can and have been

presented to and decided by the transferee judge.  See, e.g., Hagen v. Benjamin Foster

Co., 2010 WL 374529 (E.D. Pa. Sept. 24, 2010), Jenkins v. Allied Packing & Supply,

Inc., No. 09-cv-0101DSM (LSP) (S.D. Cal. Mar. 25, 2009); Wright v. A.W.

Chesterton Company, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008); Keleman v

Buffalo Pumps, Inc., No. CV 08-712-R (C.D. Cal. Apr. 14, 2008); Lindquist v. Cla-

Val Co., No. CV 08-501-R (C.D. Cal. Apr. 14, 2008); Munn v. Cla-Val Co., No. CV

08-282-R (C.D. Cal. Apr. 14, 2008); Nelson v. Alfa Laval, Inc., No. CV 07-8338VBF

(RCx) (Feb. 8, 2008); Oberstar v. CBS Corp., CV 08-118PA (JWJx), 2008 U.S. Dist.

LEXIS 14023 (C.D. Cal. Feb. 11, 2008); Ballenger v. Agco Corp., 2007 WL 1813821

(N.D. Cal. June 22, 2007); Viscosi v. American Optical Corp., 2008 WL 4426884 (D.

Conn. Sept. 29, 2008); Contois v. Able Industries, Inc., 523 F.Supp.2d 155 (D. Conn.

2007); Machnik v. Buffalo Pumps, Inc., 506 F.Supp.2d 99 (D. Conn. 2007); Kirks v.

General Electric Co., 654 F.Supp.2d 220 (D. Del. 2009); Marley v. Elliot

Turbomachinery Co., 545 F.Supp.2d 1266 (S.D.Fla. Mar. 7, 2008); Harris v. Rapid

American Corp., 2008 WL 656266 (N.D. Ill. Mar. 7, 2008); O'Connell v. Foster

<u>Wheeler</u>, 544 F.Supp.2d 51 (D. Mass 2008); <u>Curry v. American Standard, Inc.</u>, 2009 WL 308029 (S.D.N.Y. Feb. 6, 2009); <u>Nesbiet v. General Electric Co.</u>, 299 F. Supp. 2d 205 (S.D.N.Y. 2005); <u>Siegfried v. Allegheny Ludlum Corp.</u>, 2009 WL 1035001 (W.D. Pa. Apr. 17, 2009); <u>Mitchell v. AC&S, Inc.</u>, 2004 WL 3831228 (E.D.Va. Dec. 15, 2004).25, 2010).

Moreover, the denial of a transfer order here would wholly be inconsistent with this Panel's transfer order identified as Document 7936 since this Panel granted such transfer order under like circumstances.  <u>See</u> Doc. 7936 attached hereto as Exhibit "A".  The principles of consistency give great weight to the denial of Plaintiffs' <u>Motion to Vacate</u> and the issuance of a transfer order in this matter.

Therefore, since the Panel has the authority to transfer this action despite the pendency of Plaintiffs' <u>Motion to Remand</u>, and since the transferee district is well positioned to handle such issues in a coordinated or consolidated manner, and since such coordination or consolidated promotes judicial efficiency and consistency in keeping with the congressional aims of § 1407, this Panel should deny Plaintiffs' <u>Motion to Vacate</u> and proceed with the transfer of this matter to MDL-875.

### B. <u>Regardless of the Principle of Comity, the Transferor Court Should Defer the Issue of Subject Matter Jurisdiction Pursuant 28 U.S.C. § 1442 to MDL Panel.</u>

In Plaintiffs' <u>Motion to Vacate</u>, Plaintiffs asks this Panel to vacate CTO-459 under principals of comity.  However, courts have consistently held that a transfer is not precluded by pending motions.  <u>See</u> 32A Am. Jur. 2d Federal Courts § 1512

10

(2011); See also In Re Medtronic, Inc., Implantable Defibrillators Products Liability Litigation, 408 F. Supp. 2d 1351, 1351 (J.P.M.L. 2005).  This includes a **motion to remand to state court**.  See In re Gypsum Wallboard, 302 F. Supp. 794, 794 (J.P.M.L. 1969); See also 32A Am. Jur. 2d Federal Courts § 1512 (2011); In re Vioxx Products Liability Litigation, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005) (Panel held that the pendency of a motion to remand to state court is not a sufficient basis to avoid inclusion in Section 1407 proceedings).

In Plaintiffs' Motion to Vacate, Plaintiffs cite to In re L.E. Lay & Co. Antitrust Litigation, 391 F. Supp. 1054 (J.P.M.L 1975), and essentially argues that their Motion to Remand is so important to the prospective District Court of Hawai'i, that principles of comity mandate that the Panel delay their ruling on transfer until the District Court of Hawai'i rules on Plaintiffs' Motion to Remand.  However, Plaintiffs' reliance on In re L.E. Lay & Co., and the several other cases it cited, is misguided and/ or erroneous.

Unlike In re L.E. Lay & Co., where the movants had a motion for a preliminary injunction *sub judice* in the transferor court, the Plaintiffs in the instant case filed a Motion to Remand.  See Id. at 1056; See also In re Resource Exploration, Inc. Securities Litigation, 483 F. Supp. 817 (J.P.M.L 1980) (motion for summary judgment); In re Kaehni Patent, 311 F. Supp 1342 (motion to dismiss); In re Professional Hockey Antitrust Litigation, 352 F. Supp. 1405 (motion for preliminary injunction).  Not only is Plaintiff's Motion to Remand substantially different from the

motions referenced in the cases listed in Plaintiffs' cited cases, but the Panel has held

that a motion to remand is an insufficient basis to avoid inclusion in Section 1407

proceedings.  *Cf*. In re Vioxx Products Liability Litigation 360 F. Supp. 2d 1352,

1354 (J.P.M.L. 2005).

Therefore regardless of the principle of comity, the transferor court should

defer the issue of subject matter jurisdiction under 28 U.S.C. § 1442 to the Panel and

to that end, deny Plaintiffs' Motion to Vacate.

### C.  Deferring to the Transferor Court on the Issues of Federal Subject Matter Jurisdiction Serves the Interest of Efficiency and Judicial Economy.

Plaintiffs contends that the transferee court, here MDL, should defer the issue

of subject matter jurisdiction to the transferor court, here the District Court of Hawaii,

as it would otherwise be contrary to any interest of efficiency and judicial economy.

In making their argument, Plaintiffs cites to Viala v. Owen-Corning Fiberglas Corp.,

which admittedly illustrates an example where the transferor court in the Ninth

Circuit refused to defer on a motion to remand to the transferee court. 1994 U.S. Dist.

LEXIS 4824.  However, not only is the basis upon which the transferor court made its

decision factually distinct from the instant case, the transferor court's decision in

refusing to defer the issue of subject matter jurisdiction to the Panel has no bearing of

whether this Panel should defer the issue of subject matter jurisdiction to the

transferor court.  Therefore any analogy to Viala would be misguided, erroneous and

inapplicable.

In <u>Viala</u>, the transferor court described the defendants' uniformity argument as "disingenuous," noting the several waves of cases arising out of the Subic Bay exposure, to which the defendants sought removal, but where the first wave of cases (29 cases in all) had already been remanded to state court. <u>Id</u>. at *4 (*citing* <u>Acierto v. Owens-Corning Fiberglas Corp., et al</u>, No. C 93-2136 JPV (N.D. Cal., Order dated August 13, 1993).  The transferor court reasoned that "uniformity would clearly have been served if defendants have left subsequent case in state court in which it file, so that they could be decided uniformly with the first 29 Subic Bay case." <u>Id</u>.

Unlike <u>Viala</u>, it can hardly be argued that "uniformity would clearly have been served" if Defendant were to leave this case in state court in which it was first filed as the District of Hawaii has never reached the merits of removal under 28 U.S.C. § 1442 like the first 29 cases in <u>Viala</u>.  To the contrary, uniformity would clearly be served to transfer this case in light of Document 7936.  See Exhibit"A".  Therefore, Plaintiffs' analogy to the <u>Viala</u> case is clearly misguided, erroneous and inapplicable.

### D. <u>Under Ninth Circuit Law, the Boyle Government Contractor Defense is a "Colorable" Federal Defense for Federal Officer Removal to which IMO Qualifies.</u>

Plaintiffs' contend that there is no federal officer removal jurisdiction because under Ninth Circuit law, the government contractor defense does not constitutes a colorable federal defense.  <u>See</u> <u>Plaintiff's Mtn to Vacate Brief</u> at 1 ¶ 1.  However, Plaintiff is misinformed.  Under Ninth Circuit law, the government contractor defense is colorable federal defense and applies to failure to warn claims.  <u>See</u> <u>Getz, et al. v.</u>

The Boeing Co., et al., 2011 U.S. App. LEXIS 15877, *11-*34 (9th Cir. 2011) (United States Court of Appeals for the Ninth held that the government contractor defense bars each of Plaintiffs' state-law claims, including state-law duty to warn); See also Rodriguez v. Lockheed Martin Corp., 627 F.3d 1259, 1265 (9th Cir. 2010) (applying Hawaii law, a federal court recognized the government contractor defense as a colorable federal defense).  A true and correct copy of the Getz and the Rodriquez decision is attached hereto as Exhibit A.

Moreover, the government contractor defense is appropriate in Defendant's case.  As stated in Boyle v. United Tech. Corp. 487 U.S. 500 (1988), IMO has a federal defense as a government contractor, when it: 1) manufactures or supplies equipment pursuant to reasonably precise specifications; and 2) the equipment conforms to these specifications.  Id. at 512.  The third prong of the defense is satisfied by showing that the contractor warned the United States about hazards in its products that were known to the contractor but not to the United States.  Id.

The government contractor defense is available in failure to warn cases including, but not limited to, the asbestos context.  See Grispo v. Eagle-Picher Industries, Inc., et al., 897 F. 2d 626 (2d Cir. 1990).  See also generally, Smith v. Xerox Corp., 866 F.2d 135, 136-38 (5th Cir. 1989) (same); Niemann v. McDonnell Douglas Corp., 721 F.2d 1019, 1025-27 (S.D. Ill. 1987) (same); Faddish v. General Electric Co., 2010 WL 4146108 (E.D. Pa. Oct. 20, 2010).  As the Faddish court noted, the "prevailing view is that an independent contractor does not have to show

an express government prohibition on all warnings, but rather, must establish that the government 'exercised its discretion' regarding warnings to be placed on defendant's products." Faddish, 2010 WL 4146108 at *20-21.  See also, Butler v. Ingalls Shipbuilding, Inc., 89 F.3d 582, 586 (9th Cir. 1996) (The Navy's involvement in development process, including testing and installation, of the product in question, was precisely the type of "back and forth dialogue culminating in approval," and "continuous exchange between the contractor and the government" required to satisfy the first prong of Boyle).

### (1) IMO Manufactured Or Supplied Equipment Pursuant To Reasonably Precise Specifications.

As more fully explained in IMO's Joinder to Warren's Notice of Removal and Opposition to Plaintiffs' Motion to Remand, which is incorporated by reference herein, equipment built for Navy vessels was manufactured according to detailed specifications prepared, written, and issued exclusively by the Navy, specifically NAVSEA or BUSHIPS.  The Navy retained the final say over the design of any piece of equipment, and made the ultimate decision regarding how to resolve an engineering disagreement between the Navy and an outside supplier.  It is clear that the Navy made the considered military decision to use asbestos in association with its ships and the equipment, it required for use on those ships.  **Sargent Aff., ¶¶** 35-45; **Horne Aff. ¶** 15; **Dec. of Salzmann** at ¶ 6-7.  Through specifications developed by the Navy--not equipment manufacturers—the Navy required the use of asbestos

15

thermal insulation with equipment intended for installation on Navy ships.  **Horne Aff.,** ¶ 15.  Navy specifications also governed internal components such as sealing materials, which the Navy at times required to contain asbestos pursuant to the Navy's needs.  <u>See</u> **Sargent Aff.,** at ¶ 45; Doktor Aff. at ¶ 7.

Regarding any written communications, the Navy also developed military specifications describing in detail what it needed from equipment manufacturers in all written materials supplied with pumps.  **Sargent Aff.** ¶ 56; **Horne Aff.,** ¶¶ 17-24, 46-55; Doktor Aff. at ¶ 9.  Equipment manufacturers, such as **IMO**, were required to supply drawings and plans, and at times draft technical manuals for equipment.  **Sargent Aff.** at ¶ 56.  The applicable specifications included strict instructions regarding labeling of and packaging of the pumps themselves, and for all written documentation that was procured with them.  **Sargent Aff.** at ¶ 56-58; **Horne Aff.** at ¶ 14.  Equipment manufacturers would not be permitted, under the specifications, regulations and procedures, nor under the actual practice as it evolved in the field, to vary or deviate in any respect from the Navy specifications in supplying equipment, including affixing any type of warning or caution statement to equipment intended for installation aboard a Navy ship beyond those ***specifically required*** by the Navy without prior discussion and approval.  **Sargent Aff.** at ¶ 57.

The Navy did not require a warning for a potential hazard that was ubiquitous throughout a Navy ship or shipyard shop.  **Horne Aff.** ¶ 20; **Sargent Aff.,** ¶ 51.  Asbestos, in fact, was everywhere, and the Navy and its shipyards had the ability to

identify the hazards, they had the means and methods of controlling those hazards.

See **Horne Aff.**, ¶¶ 17-24; **Sargent Aff.**, ¶¶ 40-45, 55, 62; ; **Dec. of Salzmann** at ¶ 6-7.  Admiral Horne and Admiral Sargent averred that the Navy would not have permitted equipment suppliers to place asbestos-related warnings in any literature or documentations supplied with pumps for Navy ships during the 1940s, 1950s and 1960s.  **Sargent Aff.** at ¶ 62; **Horne Aff.** ¶¶ 23-24.

Therefore, IMO manufactured or supplied equipment pursuant to reasonably precise specifications.

### (2) Equipment Conforms To Design Specifications.

The evidence clearly shows that the Navy only accepted equipment and written materials that conformed to its specifications.  The fact that IMO's equipment and written communications conformed to the Navy's specifications is conclusively established by the simple fact that the Navy approved and accepted such equipment and written materials for use on its ships.  As Admiral Sargent averred, "**[e]quipment could not have been installed aboard Navy vessels unless it was first determined by the Navy to be in conformity with all applicable specifications**.  **Sargent Aff.** at ¶ 29 (emphasis added).  That the Navy accepted IMO's equipment and any corresponding documentation is indicative of the fact that IMO provided the Navy what it needed, pursuant to the applicable specifications.

### (3) Warned The United States About Hazards In Its Product Known To The Contractor But Not The Government

Plaintiffs have not argued, nor could they credibly argue, that IMO knew more about the potential hazards of asbestos than the Navy at the time the government contracts for equipment were executed.

The Navy had state of the art knowledge regarding the potential risks associated with exposure to asbestos and asbestos-related products.[1] **Horne Aff.**, at ¶ 17.  This state of the art knowledge of the potential hazards of asbestos exposure was equal or superior to that of equipment suppliers such as IMO.  The Navy developed and maintained a Medical Department which operated under a broad mandate to act on all matter that will ensure the health and well-being of Navy personnel.  **Horne Aff.** at ¶ 18.  The Navy acted on this knowledge about asbestos-related hazards and affirmatively addressed the issue of asbestos-related safety precautions.  Id.  In addressing asbestos, the Navy conducted its own training, adopted its own precautionary measures and procedures and provided its own warnings. **Horne Aff.**, at ¶ 20.  For example, a 1950 General Safety Rules Manual issued by the Puget Sound Naval Shipyard instructed workers to "[w]ear dust type or air-fed respirators for  . . . handling amosite [asbestos] insulating materials." Id.

Absolutely none of Plaintiffs' unsupported argument can fairly be said to counter **any** of these propositions.  The evidence demonstrates that the Navy

---

[1] According to the Affidavit of Samuel Forman, submitted in support of co-defendants' oppositions to Plaintiffs' motion to remand, the Navy has been since at least the early 1940s a "leader in the field of occupational medicine relating to, among other things, asbestos exposure."

exercised its discretion regarding the equipment design and inclusion of warnings with its technical manuals—and Plaintiffs do not submit any *evidence* to the contrary. The evidence demonstrates that IMO complied with the Navy design and warning specifications by providing warnings associated with the particular equipment to which the manuals related—and Plaintiffs do not submit any *evidence* to the contrary. The evidence also demonstrates that the Navy accepted the manuals, thus demonstrating that IMO was in compliance with the Navy warnings specifications. Finally, Plaintiffs do not dispute that the Navy knew of the potential hazards of asbestos at all relevant times, at least to the same extent – and in fact far more so – than did any of the equipment suppliers such as IMO.  Accordingly, IMO has established a colorable government contractor defense to Plaintiffs' failure-to-warn claim.

In sum, IMO has demonstrated each element of the modified <u>Boyle</u> test as articulated by the Ninth Circuit in <u>Getz</u> and as supported by numerous decisions in the MDL.  IMO thus presents a colorable federal defense as required under <u>Mesa</u>.

**E.  <u>Under the Guidance of Judge Eduardo Robreno, MDL-875 Is No Longer a "Black Hole"</u>.**

In Plaintiffs' <u>Motion to Vacate</u>, Plaintiffs essentially argues that any transfer to MDL-875 would be "grossly inefficient" and thus tantamount to a "black hole" where MDL procedure will take an undue amount of time before it is transferred back to the District of Hawaii.  <u>See</u> <u>Motion to Vacate</u> at 3-5.

Plaintiffs' "black hole" argument has been directly refuted by the procedures implemented by Judge Robreno in MDL-875.  In 2008, the Panel, denying motions to vacate CTO's, noted that over 76,000 actions had been closed in MDL 875, and the procedures were available in the MDL to effectuate the remand of cases in a timely manner:

> "Under the stewardship of the transferee court, as of March 31, 2008, (1) over 76,450 actions have been closed in the transferee district, and (2) over 1,370 actions or claims therein have been returned to their originating transferor districts. To any parties that believe the uniqueness of their particular situation renders continued inclusion of their action in MDL No. 875 unnecessary or inadvisable, whenever the transferee court deems remand of any claims or actions appropriate, procedures are available whereby this may be accomplished with a minimum of delay. *See* Rule 7.6, R.P.J.P.M.L., *199 F.R.D. at 436-38*. We are confident that the transferee court will continue to promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever it is convinced that retention in the MDL No. 875 proceedings is no longer needed."

See In re Asbestos Products Liab. Litig., 545 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008).

Since 2008, the court, under the guidance of Judge Robreno, has, "initiated an aggressive, pro-active policy in setting cases for settlement conferences, motions, hearings and trail."  See www.paed.uscourts.gov/mdl875a.asp; See also e.g., Administrative Order No. 12 (Court imposed filing requirements and procedures to effectuate its desire to facilitate the expeditious movement of pending cases on the MDL docket).  Moreover, the MDL-875's most recent MDL-875 Asbestos Products

<u>Liability Litigation Land-Based Caseload Statistics</u> reflect that of the 121,286 cases transferred to MDL-875 between August 1, 2006 through June 30, 2011, 108,228 cases were terminated.  <u>See</u> <u>MDL-875 Asbestos Products Liability Litigation Land-Based Caseload Statistics</u> attached hereto as Exhibit B.  The MDL notes that "the vast majority of transferred actions have been able to be concluded in the transferee district during the course of pretrial proceedings."  <u>See</u> <u>In re Asbestos Products Liab. Litig.</u>, 560 F. Supp. 2d 1367, 1369; <u>See</u> <u>also</u> <u>e.g.</u> <u>Krieger v. Alfa Laval Inc.</u>, Case No. 10-69373 (E.D. Pa. 2010) (Confirming transfer of case to MDL took less that 2 months after Defendant's filed their notice of removal).

Therefore, given MDL-875's current "aggressive, pro-active" policies to "facilitate the expeditious movement of pending case s on the MDL docket" and its exceptional efficiency in resolving cases transferred to the Eastern District of Pennsylvania, it can hardly be argued that MDL-875 is a "black hole."  As such, Plaintiffs' <u>Motion to Vacate</u> should be denied.

**IV.    <u>CONCLUSION</u>.**

For the reasons set forth above, IMO respectfully submits that Plaintiff's <u>Motion to Vacate CTO-459</u> pending Plaintiff's <u>Motion to Remand</u> in the District Court of Hawai'i should be denied since the transfer for inclusion to MDL-875 is in the best interests of justice, judicial efficiency and judicial consistency.  Moreover, no undue or unnecessary delay would be suffered by Plaintiffs were this case be

transferred to MDL-875 as it has demonstrated time and time again that it will "promptly review arguments for returning transferred actions or claims to their transferor courts and will take all appropriate steps to assure their speedy return whenever it is convinced that retention in the MDL No. 875 proceedings is no longer needed."  See In re Asbestos Products Liab. Litig., 545 F. Supp. 2d 1359, 1361 (J.P.M.L. 2008).  Accordingly, IMO respectfully requests that Plaintiffs' Motion to Vacate CTO-459 be denied.

DATED: Honolulu, Hawaii, December 9, 2011.


 /s/ E. Mason Martin III
ELTON JOHN BAIN
E. MASON MARTIN III
BRADFORD K. CHUN
Attorneys for Defendant
IMO INDUSTRIES, INC.