1
2

**BEFORE THE UNITED STATES JUDICIAL PANEL**

**ON MULTIDISTRICT LITIGATION**

3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF PENNSYLVANIA

7
8

IN RE:  ASBESTOS PRODUCTS
LIABILITY LITIGATION

**CIVIL ACTION FILE NO.  MDL 875**

9
10

NO. VI

11
12
13

**THIS DOCUMENT RELATES TO:**

14
15

**UNITED STATES DISTRICT COURT**

16

**CENTRAL DISTRICT OF CALIFORNIA**

17
18

PAUL N. KANONAS,

CA CASE NO. 11-CV-9707 R (VBKx)

19

            Plaintiff,

Los Angeles County Superior Court
Case No. BC471689

20

        v.

21

AMCORD, INC., INDIVIDUALLY
and as successor in Interest to
Riverside Cement Company;
BUFFALO PUMPS, INC.;
CBS CORPORATION, F/K/A
VIACOM, INC., SUCCESSOR BY
MERGER TO CBS
CORPORATION F/K/A
WESTINGHOUSE ELECTRIC
CORPORATION;
CERTAINTEED CORPORATION;
CLEAVER-BROOKS, INC.,
individually and f/k/a Aqua-Chem,
Inc.;
Crown Cork & Seal USA, Inc.,

**DEFENDANT'S NOTICE OF
REMOVAL OF ACTION UNDER 28
U.S.C. SECTIONS 1441, 1442 AND
1446, 16 U.S.C. SECTION 457 AND
U.S.C.A. CONST. ART. I SECTION
8, CL. 17; DEMAND FOR JURY
TRIAL**

22
23
24
25
26
27
28

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

LA:17900906.1

DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. SECTIONS 1441, 1442 AND 1446, 16 U.S.C.
SECTION 457 AND U.S.C.A. CONST. ART. I SECTION 8,
CL. 17; DEMAND FOR JURY TRIAL

1  INDIVIDUALLY AND AS
   SUCCESSOR IN INTEREST TO
2  MUNDET CORK COMPANY;
   CRANE CO., Individually and as
3  successor in interest to Chapman
   Valves;
4  FAMILIAN CORPORATION;
   GENERAL ELECTRIC
5  COMPANY;
   GEORGIA-PACIFIC, LLC, f/k/a
6  Georgia-Pacific Corporation,
   individually and as successor-in-
7  interest to Bestwall Gypsum
   Company;
8  GOULDS PUMPS INC.;
   HANSON PERMANENTE
9  CEMENT, INC., f/k/a Kaiser
   Cement Corporation;
10 IMO Industries, Inc. (Individually
   and as successor in interest to
11 Delaval Steam Turbine, Inc.);
   INGERSOLL-RAND COMPANY,
12 individually and as successor in
   interest to The Aldrich Company;
13 JM MANUFACTURING
   COMPANY, INC. (Dba JM Pipe
14 Manufacturing Company);
   Kaiser Gypsum Company, Inc.;
15 KEENAN PROPERTIES, INC.;
   KELLY-MOORE PAINT
16 COMPANY, INC.;
   MECHANICAL DRIVES &
17 BELTING (f/k/a L.A. Rubber
   Company);
18 METALCLAD INSULATION
   CORPORATION;
19 OWENS-ILLINOIS, INC.
   (Individually and as successor in
20 interest to Owens Illinois Glass
   Company and dba O-I);
21 UNION CARBIDE
   CORPORATION;
22
   and DOES 1-300,
23
                    Defendants.
24

25

26

27

28

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

LA:17900906.1

- 2 -

DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. SECTIONS 1441, 1442 AND 1446, 16 U.S.C.
SECTION 457 AND U.S.C.A. CONST. ART. I SECTION 8,
CL. 17: DEMAND FOR JURY TRIAL

1    TO THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION, AND TO

2    THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT

3    OF CALIFORNIA, PLEASE TAKE NOTICE OF THE FOLLOWING:

4

5    **DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTIONS 1441, 1442 AND 1446, 16 U.S.C. SECTION 457 AND U.S.C.A. CONST.**

6    **ART. I SECTION 8, CL. 17; DEMAND FOR JURY TRIAL**

7

8    COMES NOW Defendant, Metalclad Insulation Corporation, and hereby submits

this *"Defendant's Notice of Removal of Action under 28 U.S.C. Sections 1441, 1442 and 1446, 16*

9

10   *U.S.C. Section 457 and U.S.C.A. Const. Art. I Section 8, cl. 17; Demand for Jury Trial"*.

11

12   Dated: December 14, 2011            Respectfully submitted,

13                                       MCKENNA LONG & ALDRIDGE LLP

14

15   By:/s/ Bradford J. DeJardin, Esq.
         Bradford J. DeJardin

16       McKenna Long & Aldridge, LLP
         300 South Grand Avenue, 14th Floor

17       Los Angeles, California 90071
         email: bdejardin@mckennalong.com

18       Attorneys for Defendant

19   **METALCLAD INSULATION CORPORATION**

20

21

22

23

24

25

26

27

28

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

LA:17900906.1

- 3 -

DEFENDANT'S NOTICE OF REMOVAL OF ACTION UNDER
28 U.S.C. SECTIONS 1441, 1442 AND 1446, 16 U.S.C.
SECTION 457 AND U.S.C.A. CONST. ART. I SECTION 8,
CL. 17; DEMAND FOR JURY TRIAL

COPY

1 WILLIAM J. SAYERS (SBN 078038)
   wsayers@mckennalong.com
2 BRADFORD J. DEJARDIN (SBN 195764)
   bdejardin@mckennalong.com
3 DAVID K. SCHULTZ (SBN 150120)
   dschultz@mckennalong.com
4 MCKENNA LONG & ALDRIDGE LLP
   300 S. Grand Ave., 14th Floor
5 Los Angeles, CA 90071
   Telephone:  (213) 688-1000
6 Facsimile:  (213) 243-6330

7 Attorneys for Defendant
   **METALCLAD INSULATION**
8 **CORPORATION**

FILED
CLERK, U.S. DISTRICT COURT

NOV 2 2 2011

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

9

## UNITED STATES DISTRICT COURT

10 ## CENTRAL DISTRICT OF CALIFORNIA

11

12 PAUL N. KANONAS,

13          Plaintiff,

14    v.

15 AMCORD, INC.; INDIVIDUALLY
   and as successor in Interest to
16 Riverside Cement Company;
   BUFFALO PUMPS, INC.;
17 CBS CORPORATION, F/K/A
   VIACOM, INC., SUCCESSOR BY
18 MERGER TO CBS
   CORPORATION F/K/A
19 WESTINGHOUSE ELECTRIC
   CORPORATION;
20 CERTAINTEED CORPORATION;
   CLEAVER-BROOKS, INC.,
21 individually and f/k/a Aqua-Chem,
   Inc.;
22 Crown Cork & Seal USA, Inc.,
   INDIVIDUALLY AND AS
23 SUCCESSOR IN INTEREST TO
   MUNDET CORK COMPANY;
24 CRANE CO., Individually and as
   successor in interest to Chapman
25 Valves;
   FAMILIAN CORPORATION;
26 GENERAL ELECTRIC
   COMPANY;
27 GEORGIA-PACIFIC, LLC, f/k/a
   Georgia-Pacific Corporation,

28

CV11- 09707 JAK (AJWx)

CASE NO. - ••

Los Angeles County Superior Court
Case No. BC471689

**NOTICE OF REMOVAL OF
ACTION UNDER 28 U.S. C.
SECTIONS 1441, 1442 AND 1446, 16
U.S.C. SECTION 457, and U.S.C.A.
Const. Art. I § 8, cl. 17;**

**DEMAND FOR JURY TRIAL**

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

- 1 -

LA:17895606.1

1    individually and as successor-in-
     interest to Bestwall Gypsum
2    Company;
     GOULDS PUMPS INC.;
3    HANSON PERMANENTE
     CEMENT, INC., f/k/a Kaiser
4    Cement Corporation;
     IMO Industries, Inc. (Individually
5    and as successor in interest to
     Delaval Steam Turbine, Inc.);
6    INGERSOLL-RAND COMPANY,
     individually and as successor in
7    interest to The Aldrich Company;
     JM MANUFACTURING
8    COMPANY, INC. (Dba JM Pipe
     Manufacturing Company);
9    Kaiser Gypsum Company, Inc.;
     KEENAN PROPERTIES, INC.;
10   KELLY-MOORE PAINT
     COMPANY, INC.;
11   MECHANICAL DRIVES &
     BELTING (f/k/a L.A. Rubber
12   Company);
     METALCLAD INSULATION
13   CORPORATION;
     OWENS-ILLINOIS, INC.
14   (Individually and as successor in
     interest to Owens Illinois Glass
15   Company and dba O-I);
     UNION CARBIDE
16   CORPORATION;

17   and DOES 1-300,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

McKenna Long &
 Aldridge LLP
Attorneys At Law
 Los Angeles

LA:17895606.1

- 2 -

NOTICE OF REMOVAL

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant Metalclad Insulation Corporation hereby files its Notice of Removal in the above-referenced action, pursuant to 28 U.S.C. sections 1441, 1442 and 1446, 16 U.S.C. section 457 and U.S.C.A. Const. Art. I § 8, cl. 17, to remove this action from the Superior Court of the State of California, County of Los Angeles to the Unites States District Court for the Central District of California.  In support, Defendant respectfully offers the following:

**A.    Removal Is Timely**

1.    On or about October 17, 2011,  Plaintiff filed this lawsuit entitled *Paul N. Kanonas v. Amcord, Inc., et al.*, in the Superior Court of the State of California, Los Angeles County.  A true and correct copy of the complaint is attached hereto as Exhibit "A".  Plaintiff served the summons and complaint on Defendant Metalclad Insulation Corporation on October 24, 2011.

2.    As against all the Defendants in this action, Plaintiff alleges that he developed mesothelioma as result of his exposure to asbestos from his work while aboard several ships in the Navy from 1944 to 1945 and from 1950 to 1968, and while working as a civil service operator at Camp Pendleton  from 1968 to 1996. (Complaint, para. 10, Exh. A) Thus, removal based on federal enclave and federal officer jurisdiction is proper from Plaintiff's complaint.

3.    28 U.S.C. section 1446(b) states, in relevant part, that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . . " 28 U.S.C. section 1446(b).  In  compliance with this provision,

McKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:17895606.1

NOTICE OF REMOVAL

1   Defendant Metalclad Insulation Corporation has timely filed its Notice of Removal

2   before the expiration of the thirty days, which is November 23, 2011 because it was

3   served on October 24, 2011.

4       4.    Attached hereto as Exhibit "B" is a true and correct copy of a print-out

5   from the Los Angeles County Superior Court's docket, reflecting the filings to date

6   in this case. Pursuant to 28 U.S.C. section 1446(a), a true and correct copy of all

7   process, pleadings and orders served upon Defendant Metalclad Insulation

8   Corporation in this action is attached hereto collectively as Exhibit "C."

9   **B.**    **Removal Is Proper**

10       5.    Defendant Metaclad Insulation Corporation respectfully requests an

11   opportunity to respond more fully in writing, if any motion for remand is filed in

12   this case, but offers the following statement and citations to authority at this time in

13   satisfaction of 28 U.S.C. section 1446 to provide a short and plain statement of the

14   legal and factual basis for its removal.

15       6.    Federal enclave jurisdiction is proper in this case since the

16   Constitution grants Congress the power "[t]o exercise exclusive Legislation in all

17   cases whatsoever ... over all Places purchased by the Consent of the Legislature of

18   the State in which the Same shall be, for the Erection of Forts, Magazines,

19   Arsenals, dock-Yards, and other needful Buildings." (U.S. Const. art. I., § 8, cl. 17.)

20   In addition, 16 U.S.C. § 457 provides: "In the case of the death of any person by the

21   neglect or wrongful act of another within a national park or other place subject to

22   the exclusive jurisdiction of the United States, within the exterior boundaries of any

23   State, such right of action shall exist as though the place were under the jurisdiction

24   of the State within whose exterior boundaries such place may be; and in any action

25   brought to recover on account of injuries sustained in any such place the rights of

26   the parties shall be governed by the laws of the State within the exterior boundaries

27   of which it may be." The United States District Courts therefore have federal

28   enclave jurisdiction over actions both under a statute giving jurisdiction in cases

1    arising under the Constitution, laws and treaties of United States (Article I, Section

2    8, Clause 17) and under a statute providing that actions for death or injuries within

3    a national park or other place subject to the exclusive jurisdiction of the United

4    States. (16 U.S.C. § 457).

5        7.    Plaintiff's complaint alleges in paragraph 10 that he was exposed to

6    asbestos while working at Camp Pendleton for almost thirty years, from 1968 to

7    1996. Camp Pendleton is a federal enclave, as it is a property owned by the federal

8    government. (See *U.S. v. Jenkins* 734 F.2d 1322, 1325 (9th Cir.1983) ["Camp

9    Pendleton, where the assault occurred, is a federal enclave that falls within this

10   special territorial jurisdiction."]; *Bussey v. Edison International, Inc.* 2009 WL

11   481651 (C.D. Cal. 2009) ["the federal enclave of Camp Pendleton"]; *Janulewicz v.*

12   *Bechtel Corp.* 2007 WL 2462110, 3 (S.D.Cal.,2007) ["the federal enclave of Camp

13   Pendleton…was acquired by the federal government no later than December 31,

14   1942."] Plaintiff's complaint also alleges in paragraph 10 that he was exposed to

15   asbestos while employed in the United States Navy from 1944-1945 and 1950 to

16   1968, while serving aboard naval ships such as the USS Alcor, USS Roper and USS

17   Kearsage, in which alleged exposures occurred aboard the ships and while the ships

18   were decommissioned, which would have occurred at United States naval ports and

19   naval bases. These alleged exposures are also a sufficient and independent basis to

20   support federal enclave jurisdiction. (See *Fung v. Abex Corp.* 816 F.Supp. 569,

21   571 (N.D.Cal. 1992); *Corley v. Long-Lewis, Inc.* 688 F.Supp.2d 1315, 1324-1328

22   and cases cited therein.)

23       8.    As an additional basis for removal, as the Defendants are being sued

24   for manufacturing products and/or providing services to the Navy and federal

25   government during Plaintiff's alleged exposure, they were acting under the

26   authority, direction and control of an officer or agency of the United States for

27   purposes of 28 U.S.C.(a)(1). Thus, the Defendants can state a colorable federal-law

28   based on federal officer and/or federal contractor defenses to these claims. Removal

MCKENNA LONG &
ALDRIDGE LLP
ATTORNEYS AT LAW
LOS ANGELES

LA:17895606.1                              - 5 -

                                                        NOTICE OF REMOVAL

1    is therefore proper under 28 U.S.C. section 1442(a)(1) when (a) the defendant

2    seeking removal demonstrates that it is a "person" within the meaning of the

3    statute; (b) the defendant demonstrates a causal nexus between the defendant's

4    actions, taken pursuant to a federal offer's directions and under color of federal

5    office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal

6    defense." (See *Mesa v. California* (1989) 489 U.S. 121, 124-25, 134-35; *Kirks v.*

7    *General Elec. Co.* (D. Del. 2009) 654 F. Supp. 2d 220, 223. *See also, e.g., Nesbiet*

8    *v. General Elec. Co.* (S.D.N.Y. 2005) 399 F. Supp. 2d 205, 210; *Madden v. Able*

9    *Supply Co.* (S.D. Tex. 2002) 205 F. Supp. 2d 695, 699; *Fung v. Abex Corp.* (N.D.

10   Cal. 1992) 816 F. Supp. 569, 571-72.)

11       9.    The Defendants are "persons" within the meaning of 28 U.S.C. section

12   1442(a)(1). *Fung,* 816 F. Supp. at 572, *See, e.g., Isaacson v. Dow Chem. Co.,* (2d

13   Cir. 2008) 517 F.3d 129, 135-36; *Winters v. Diamond Shamrock Chem. Co.* (5th

14   Cir. 1998) 149 F.3d 387, 398 (5th Cir. 1998), *cert. denied,* (1999) 526 U.S. 1034);

15   *Kirks,* 654 F. Supp. 2d at 223.

16       10.    In all aspects of the alleged manufacture and/or supply of its products

17   and/or services to the Navy and the federal government, the Defendants were acting

18   under the detailed direction and control of one or more federal officers. It is

19   "axiomatic" that, if a defendant has been sued for asbestos-related injuries

20   purportedly arising from or relating to equipment that it manufactured and supplied

21   to the United States Navy and the federal government under their direction and

22   control, that defendant has been sued in relation to conduct under color of its

23   federal office, satisfying the "causal nexus" requirement. *See, e.g., Madden,* 205 F.

24   Supp. 2d at 701-702; *Harris v. Rapid American Corp.* 532 F.Supp.2d 1001,

25   1006 (N.D.Ill.,2007). Further, the Navy and the federal government were

26   independently aware of potential hazards associated with asbestos exposure. *See,*

27   *e.g. Harris,* 532 F.Supp.2d at 701-702; *Ferguson v. Lorillard Tobacco Co., Inc.*

28

IcKENNA LONG &
ALDRIDGE LLP
TTORNEYS AT LAW
LOS ANGELES

LA 17895606.1

- 6 -

NOTICE OF REMOVAL

1   475 F.Supp.2d 725, 731 (N.D.Ohio 2007); *Niemann v. McDonnell Douglas Corp.*

2   721 F.Supp. 1019, 1028 (S.D.Ill.,1989).)

3       11.    As to the question of a colorable federal-law based defense,

4   Defendants are entitled to assert a government contractor defense under *Boyle v.*

5   *United Technologies Corp.* (1988) 487 U.S. 500, 512 in that they necessarily: 1)

6   designed, manufactured and/or supplied the Navy products and/or services at issue

7   in this case in accordance with specifications promulgated or adopted by the United

8   States Navy; 2) the products and/or or services conformed with those

9   specifications; and 3) at all times relevant to this suit, the United States Navy was

10  independently aware of potential health hazards associated with asbestos exposure.

11      12.    Even if just one claim is removable, "the entire action is removed,

12  regardless of the relationship between the Section 1442 claim and the non-

13  removable claims." (*Nadler v. Mann,* 951 F.2d 301, 306 n. 9 (11th Cir.1992).)

14      13.    Because Defendants have satisfied the requirements for removal under

15  28. U.S.C. section 1442(a), they are entitled to remove this entire action and are

16  not required to notify and obtain the consent of any other defendant in this action in

17  order to remove Plaintiff's action as a whole under section 1442(a)(1). *Ely Valley*

18  *Mines, Inc. v. Hartford Acc. & Indem. Co.* (9th Cir. 1981) 644 F.2d 1310, 1314;

19  *Hunt v. Smith* (E.D. Tex 1999) 67 F. Supp. 2d. 675. *See, e.g., Durham v. Lockheed*

20  *Martin Corp.* (9th Cir. 2006) 445 F.3d 1247, 1253; *Akin v. Ashland Chem. Co.*

21  (10th Cir. 1998) 156 F.3d 1030, 1034; *Ely Valley Mines v. Hartford Accident &*

22  *Indem. Co.* (9th Cir. 1981) 644 F.2d 1310, 1315; *Fowler v. Southern Bell Tel. &*

23  *Tel. Co.* (5th Cir. 1965) 343 F.2d 150, 152 (5th Cir. 1965); *Allman v. Hanley* (5th

24  Cir. 1962) 302 F.2d 559, 562.

25      14.   Notwithstanding this, Defendant Metalclad Insulation Corporation has

26  obtained consent to the removal of this action from the defendants who have been

27  served in this action. Attached hereto collectively as Exhibit "D" are true and

28  correct copies of e-mails advising counsel for Defendant Metalclad Insulation

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

LA:17895606.1

- 7 -

NOTICE OF REMOVAL



1  Corporation that the following named defendants consent to the removal of this

2  action: (1) J-M Manufacturing Company; (2) Owens-Illinois, Inc.; (3) General

3  Electric Company; (4) Georgia Pacific, LLC; (5) Kelly-Moore Paint Company; (6)

4  Amcord, Inc.; (7) Cleaver Brooks, Inc.; (8) Hanson Permanente Cement Inc; (9)

5  Kaiser Gypsum Company, Inc.; (10) IMO Industries, Inc.; (11) Crane Co.; (12)

6  Mechanical Drives & Belting;  (13) Keenan Properties; (14) Familian Corporation;

7  (15) Ingersoll-Rand Company; (16) Goulds Pumps, Inc; (17) Union Carbide

8  Corporation; (18) CertainTeed Corporation; and (19) Crown Cork & Seal.

9      15.    Counsel for Defendant Metalclad Insulation Corporation was advised

10  by counsel for the other two named defendants, CBS Corporation and Buffalo

11  Pumps, that they are not parties to the action as they had resolved any claims.

12  Attached hereto as Exhibit "E" is an e-mail from Buffalo Pumps counsel

13  confirming such as to them. As reflected in the Los Angeles Superior Court website

14  docket attached hereto as Exhibit "B,"  there is no proof of service that has been

15  filed by Plaintiff and no answer has been filed with respect to these other two

16  named defendants, CBS Corporation and Buffalo Pumps. Based on the number of

17  defendants named in the complaint and the consent of the numerous defendants

18  attached hereto as Exhibit "D", Defendant Metalclad Insulation Corporation

19  submits that this is sufficient to support the removal. (See *Cal. Prac. Guide:*

20  *Federal Civ. Proc. Before Trial*, Section 2:3463 (TRG 2011).) Further, Defendant

21  Metalclad Insulation Corporation reserves the right to present any further evidence

22  of the consent provided by any party that may be necessary before the entry of

23  judgment. *Destfino v. Reiswig*  630 F.3d 952, 957 (9th Cir. 2011).)

## C.    Intradistrict Assignment

24

25

26      16.    The action that is being removed was originally filed in the Los

27  Angeles Superior Court, as reflected in Exhibit "A." Because this Court is the

28  United States District Court for the district and division embracing the place where

1cKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

LA:17895606.1

- 8 -

NOTICE OF REMOVAL

1  the original state court action was filed, it is the appropriate court for removal under

2  28 U.S.C. section 1446 (a).

3

4  Dated:   November  22, 2011                     Respectfully submitted,

5                                                  MCKENNA LONG & ALDRIDGE
                                                    LLP
6

7

8                                                  By: _____
                                                       William J. Sayers
9                                                      Bradford J. DeJardin
                                                       David K. Schultz
10
                                                    Attorneys for Defendant
11                                                  METALCLAD INSULATION
                                                    CORPORATION
12

13                     **DEMAND FOR JURY TRIAL**

14        Defendant Metalclad Insulation Corporation hereby demands a trial by jury

15  in this action.

16

17  Dated:   November  22, 2011                     Respectfully submitted,

18                                                  MCKENNA LONG & ALDRIDGE
                                                    LLP
19

20

21                                                 By: _____
                                                       William J. Sayers
22                                                     Bradford J. DeJardin
                                                       David K. Schultz
23
                                                    Attorneys for Defendant
24                                                  METALCLAD INSULATION
                                                    CORPORATION
25

26

27

28

McKenna Long &
Aldridge LLP
Attorneys At Law
Los Angeles

LA:17895606.1                                                    NOTICE OF REMOVAL

# EXHIBIT A



SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

OCT 17 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
SHAUNYA WESLEY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AMCORD, INC., INDIVIDUALLY and as successor in interest to
Riverside Cement Company(Additional Parties Attachment form)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PAUL N. KANONAS

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):*

**Los Angeles Superior Court - Central District**
**111 North Hill Street, Los Angeles, CA 90012**

**CASE NUMBER:**
*(Número del Caso):*

**BC471689**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Eric L. Brown, Esq., 10990 Wilshire Boulevard, Suite 1060, Los Angeles, CA 90024, Phone: 310-575-9955

DATE:            OCT 17 2011                 Clerk, by _____ Shaunya Wesley _____ , Deputy
*(Fecha)*                                    *(Secretario)*                                                    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Metal clad Insulation Corporation

    under: ☒ CCP 416.10 (corporation)              ☐ CCP 416.60 (minor)
           ☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
           ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
           ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov



Def Mark Murray

1  Patrick DeBlase (SBN 167138)
   Eric Brown (SBN 229622)
2  Michael C. Eyerly (SBN 178693)
   Stephen T. Blackburn (SBN 232887)
3  DEBLASE BROWN EYERLY LLP
   10990 Wilshire Boulevard, Suite 1060
4  Los Angeles, CA 90024
   Telephone: (310) 575-9955
5  Facsimile: (310) 575-9919

6

7  Attorneys for Plaintiff

8

**FILED**
Los Angeles Superior Court

OCT 17 2011

John A. Clarke, Executive Officer/Clerk
By _____, Deputy
   SHAUNYA WESLEY

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  FOR THE COUNTY OF LOS ANGELES

11

12  PAUL N. KANONAS                    CASE NO.  B C 4 7 1 6 8 9

13          Plaintiff,                 COMPLAINT FOR PERSONAL
                                       INJURIES AND LOSS OF
14      vs.                            CONSORTIUM

15  AMCORD, INC., INDIVIDUALLY and as  1.  Negligence
    successor in interest to          2.  Products Liability
16  Riverside Cement Company;         3.  Premises Owner/Contractor Liability
    BUFFALO PUMPS, INC.;
17  CBS CORPORATION, F/K/A VIACOM,
    INC., SUCCESSOR BY MERGER TO CBS   **[COMPLEX ASBESTOS**
18  CORPORATION F/K/A WESTINGHOUSE     **LITIGATION-SUBJECT**
    ELECTRIC CORPORATION;              **TO THE GENERAL**
19  CERTAINTEED CORPORATION;           **ORDERS CONTAINED**
    CLEAVER-BROOKS, INC., individually **IN FILE NO. C700000]**
20  and f/k/a Aqua-Chem, Inc.;
    Crown Cork & Seal USA, Inc.,
21  INDIVIDUALLY AND AS SUCCESSOR IN
    INTEREST TO MUNDET CORK            **BY FAX**
22  COMPANY;
    CRANE CO. , Individually and as
23  successor in interest to Chapman Valves;
    FAMILIAN CORPORATION;
24  GENERAL ELECTRIC COMPANY;
    GEORGIA-PACIFIC, LLC, f/k/a
25  Georgia-Pacific Corporation, individually
    and as successor-in-interest to Bestwall
26  Gypsum Company;
    GOULDS PUMPS, INC.;
27  HANSON PERMANENTE CEMENT, INC.,
    f/k/a Kaiser Cement Corporation;
28  IMO Industries, Inc. (Individually and as
    successor in interest to Delaval Steam
    Turbine, Inc.);

-1-

ORIGINAL COMPLAINT

1  INGERSOLL-RAND COMPANY,
2  individually and as successor in interest to
   The Aldrich Company;
3  JM MANUFACTURING COMPANY, INC.
   (Dba JM Pipe Manufacturing Company);
4  Kaiser Gypsum Company, Inc.;
   KEENAN PROPERTIES, INC.;
5  KELLY-MOORE PAINT COMPANY, INC.;
   MECHANICAL DRIVES & BELTING (f/k/a
6  L.A. Rubber Company);
   METALCLAD INSULATION
7  CORPORATION;
   OWENS-ILLINOIS, INC. (Individually and
8  as successor in interest to Owens Illinois
   Glass Company and dba O-I);
9  UNION CARBIDE CORPORATION;

10  and DOES 1-300

11         Defendants.

12  _____

13     COME NOW Plaintiff Paul N. Kanonas for causes of action against Defendants,

14  and each of them, complains and alleges as follows:

15

16

17                    GENERAL ALLEGATIONS

18     1.    This case is being brought by Paul N. Kanonas as a result of PAUL N.

19  KANONAS having been diagnosed with an asbestos-related disease, mesothelioma,

20  caused by exposure to asbestos.  Throughout this complaint use of the term "Plaintiff"

21  shall, where appropriate, mean Paul N. Kanonas unless the context of its use clearly

22  means one or the other.

23     2.    Asbestos litigation has long been designated complex in Los Angeles County

24  for several historical reasons, including the number of parties, the length, duration and

25  complexity of anticipated deposition testimony of fact, lay and expert witnesses, the

26  wide-ranging medical issues that may or may not be involved, the complexity of industrial

27  hygiene and governmental regulations that may or may not be involved, and the

28  anticipated proportionate amount of economic, non-economic and punitive damages

sought for plaintiff's anticipated death and the loss of consortium for his dependants.



3.     The average life expectancy of a patient diagnosed with a severe asbestos-related disease (mesothelioma and/or lung cancer) is extremely short.  Some patients diagnosed with such disease only live weeks or months following their diagnosis.  Further, as their diseases progress, their prognosis slowly worsens such that their ability to participate in trial may diminish drastically.  Often, plaintiffs in these cases must present videotaped deposition testimony taken at the outset of their cases, as their medical condition has worsened so severely that even traveling a few miles to the courthouse is impossible.  A Plaintiff in such cases routinely brings motions for trial preference and often stipulate to expedited and/or shortened time periods for responsive pleadings in order to permit the granting of trial dates in less than 120 days.

4.     In this matter, Plaintiff PAUL N. KANONAS was diagnosed with mesothelioma on or about June 2011. Because of Plaintiff's work history, and the numerous asbestos products to which he is alleged to have been exposed, Plaintiff has named numerous manufacturers of asbestos products, premises owners, contractors, and suppliers of asbestos products and fibers as Defendants.

5.     The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to Plaintiff at this time; who, therefore, sues said Defendants by such fictitious names; and when the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiff is informed and believes, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged, either through said Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, lease or sale of the instrumentality causing the injury, or in some other manner.

6.     Plaintiff is informed and believes, and thereon allege that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees

-3-

1  and/or joint venturers of their co-Defendants and were, as such, acting within the scope,

2  course, and authority of said agency, employment and/or joint venture, in that each and

3  every Defendant, as aforesaid, when acting as a principal, was negligent in the selection

4  and hiring or each and every other Defendant as the agent, servant, employee and/or joint

5  venturer.

6      7.    Plaintiffs were California residents during a substantial period of Plaintiff

7  PAUL N. KANONAS's asbestos exposures, upon which Plaintiff's claims are based.

8      8.    Plaintiff is informed and believes, and thereon allege, that at all times

9  mentioned herein, Defendants AMCORD, INC., INDIVIDUALLY and as  successor in

10 interest to Riverside Cement Company; BUFFALO PUMPS, INC.;CBS CORPORATION,

11 F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A

12 WESTINGHOUSE ELECTRIC CORPORATION; CERTAINTEED CORPORATION;

13 CLEAVER-BROOKS, INC., individually and f/k/a Aqua-Chem, Inc.;

14 Crown Cork & Seal USA, Inc., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO

15 MUNDET CORK COMPANY; CRANE CO. , Individually and as successor in interest to

16 Chapman Valves; FAMILIAN CORPORATION; GENERAL ELECTRIC COMPANY;

17 GEORGIA-PACIFIC, LLC, f/k/a Georgia-Pacific Corporation, individually and as

18 successor-in-interest to Bestwall Gypsum Company; GOULDS PUMPS, INC.; HANSON

19 PERMANENTE CEMENT, INC., f/k/a Kaiser Cement Corporation; IMO Industries, Inc.

20 (Individually and as successor in interest to Delaval Steam Turbine, Inc.);

21 INGERSOLL-RAND COMPANY, individually and as successor in interest to The Aldrich

22 Company; JM MANUFACTURING COMPANY, INC. (Dba JM Pipe Manufacturing

23 Company); Kaiser Gypsum Company, Inc.; KEENAN PROPERTIES, INC.;KELLY-MOORE

24 PAINT COMPANY, INC.; MECHANICAL DRIVES & BELTING (f/k/a L.A. Rubber

25 Company); METALCLAD INSULATION CORPORATION; OWENS-ILLINOIS, INC.

26 (Individually and as successor in interest to Owens Illinois Glass Company and dba

27 O-I);UNION CARBIDE CORPORATION; and DOES 1-300 inclusive, are corporations

28 organized and existing under and by virtue of the laws of the State of California, or the laws

-4-

ORIGINAL COMPLAINT

One W.KMalir/Kanonas, Paul& DSK Drafial Cases\ Pleadings\3 - COMPLAINT TEMPLATE.wpd

1 of some other state of the United States of America, or some foreign jurisdiction, and that

2 said Defendants were authorized to do and are doing business in the State of California,

3 and that said Defendants have regularly conducted business in the State of California.

4       9.     At all times mentioned above, Defendants, and each of them, were engaged

5 in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

6 buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

7 advertising a certain substance, the generic name of which is asbestos, and other products

8 containing said substance.

9       10.    Plaintiff PAUL N. KANONAS was exposed to Defendants' asbestos and

10 asbestos containing products contributing to and causing the development of lung cancer.

11 Plaintiff was exposed to Defendants' asbestos and asbestos containing products including

12 but not limited to through his service as a member of the U.S. Navy starting at age sixteen

13 through eighteen from 1944-45.  He served in World War II on the USS ALCOR and USS

14 ROPER.  He was in charge of the dispensary on the USS ALCOR and also stood fire

15 watch throughout the ship.  He took part in the decommissioning of the USS ROPER at

16 MINSY in 1945.  He rejoined the navy in 1950 where he remained until 1968, working in

17 many roles including serving on the USS KEARSAGE.  This work exposed him to asbestos

18 from numerous products and equipment. From 1968 through 1996, Plaintiff was employed

19 as a civil service operator at the Camp Pendleton water department.  There he cut transite

20 water pipe manually and with electrical power saws, exposing him to asbestos fibers.

21 Plaintiffs was also exposed to asbestos products thru home remodeling projects and

22 construction.  Plaintiff PAUL N. KANONAS suffers from mesothelioma and each of

23 Defendants' asbestos and asbestos containing products that entered his body was a

24 substantial factor in bringing about, prolonging, or aggravating Plaintiff's mesothelioma.

25 The asbestos and asbestos containing products Plaintiff was exposed to were

26 manufactured or supplied by a named Defendant and DOES 1-300.

27       11.    Federal Courts lack jurisdiction over this action; removal is therefore

28 improper.  Specifically, removal based on diversity jurisdiction is unavailing due to the

-5-




1   presence of a Defendant that resides in California.  In addition, no claim of admiralty or

2   maritime law is raised, Plaintiffs sue no foreign state or agency, and Defendants lack a

3   colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1).

4   Venue is proper in Los Angeles County, Superior Court of California.

### FIRST CAUSE OF ACTION

(Negligence)

(As Against all Defendants)

8       12.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,

9   each and every allegation contained in each paragraph above.

10      13.    At all times herein mentioned, each of the named Defendants and DOES 1

11  through 300 was the successor, successor in business, successor in product line or a

12  portion thereof, assign, predecessor, predecessor in business, predecessor in product line

13  or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial

14  owner of or member in an entity researching, studying, manufacturing, fabricating,

15  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

16  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

17  marketing, warranting, re-branding, manufacturing for others, packaging and advertising as

18  certain product, namely asbestos, and other products containing asbestos. Said entities

19  shall hereinafter collectively be called "Alternate Entities." Each of the herein named

20  Defendants is liable for the tortious conduct of each successor, successor in business,

21  successor in product line or a portion thereof, assign, predecessor in product line or a

22  portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

23  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

24  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for

25  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

26  marketed, warranted, re-branded, manufactured for others and advertised a certain

27  product, namely asbestos, and other products containing asbestos. The following

28  Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"

ORIGINAL COMPLAINT




in that there has been a virtual destruction of Plaintiffs' remedies against each such "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiffs' remedies against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| AMCORD, INC. | INDIVIDUALLY and as  successor in interest to Riverside Cement Company |
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION |
| CLEAVER-BROOKS, INC. | individually and f/k/a Aqua-Chem, Inc. |
| Crown Cork & Seal USA, Inc. | INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO MUNDET CORK COMPANY |
| CRANE CO. | Individually and as successor in interest to Chapman Valves; FAMILIAN CORPORATION |
| GEORGIA-PACIFIC, LLC | f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company |
| HANSON PERMANENTE CEMENT, INC. | f/k/a Kaiser Cement Corporation |
| IMO Industries, Inc. | (Individually and as successor in interest to Delaval Steam Turbine, Inc.) |

ORIGINAL COMPLAINT

9/Hd W:\Clients\Orndras, Paul\6. Old Dated Docs\6. Pleadings\3 - COMPLAINT TEMPLATE.wpd




| INGERSOLL-RAND COMPANY | individually and as successor in interest to The Aldrich Company |
|---|---|
| JM MANUFACTURING COMPANY, INC. | (Dba JM Pipe Manufacturing Company) |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |

14.    Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, their "Alternate Entities," and each of them negligently and carelessly researched, tested or failed to test, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, used, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Plaintiff PAUL N. KANONAS.

15.    Plaintiff PAUL N. KANONAS is a worker who, for a substantial length of time, used, handled, and was otherwise exposed to Defendants' asbestos and asbestos products, in a manner that was reasonably foreseeable, while he was working as described in Paragraph 6 above.

16.    As a direct and proximate result of the above-referenced conduct of the Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to said asbestos caused severe and permanent injury to Plaintiff's lungs and body, including, but not limited to the disease mesothelioma.

17.    On or about June 2011, Plaintiff PAUL N. KANONAS was diagnosed with the

-8-



1  asbestos-related disease mesothelioma. Prior to that date, Plaintiff, did not know, nor did

2  he have reason to know, that he had contracted this disease related to his exposure to

3  asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos presented

4  any risk of injury and/or disease to him, and had not been advised or informed by anyone

5  that he could contract, nor indeed did contract, any disease, sickness or injury as a result

6  of working in the vicinity of asbestos.

7      18.    Plaintiff is informed and believes, and thereupon allege, that mesothelioma is

8  a vicious, painful and often fatal malignancy of the lung, and that said disease results from

9  exposure to asbestos and asbestos products over a period of time.

10     19.    As a direct and proximate result of the aforesaid conduct of the Defendants,

11 their "Alternate Entities," and each of them Plaintiff PAUL N. KANONAS has suffered, and

12 continues to suffer, severe and permanent injuries to his person, body and health,

13 including, but not limited to, the disease mesothelioma, all to his general damage in a sum

14 within the jurisdictional limits of this court.

15     20.    As a direct and proximate result of the aforesaid conduct of the Defendants,

16 their "Alternate Entities," and each of them Plaintiffs were compelled to and did employ the

17 services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat

18 Plaintiff PAUL N. KANONAS, and did incur medical, hospital and professional incidental

19 expenses, and Plaintiff is informed and believes and thereupon allege that by reason of

20 said injuries, Plaintiff PAUL N. KANONAS will necessarily incur additional like expenses for

21 an indefinite period of time in the future, and when said amounts are ascertained, Plaintiff

22 will allege said amounts.

23     21.    At all times herein mentioned, Defendants, their "Alternate Entities," and each

24 of them were aware that the original gaskets and packing supplied with their equipment

25 would need to be removed and replaced with new gaskets and packing during ordinary

26 operation and maintenance of their equipment. Heat and pressure generated by operation

27 would affect the original and replacement gaskets and packing - e.g., making them brittle,

28 friable and not reusable, making replacement necessary and dangerous. It was

-9-



1   foreseeable that the process of removing old gaskets and packing, and replacing them with

2   the new materials during ordinary maintenance operations would cause the disturbance of

3   asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also

4   foreseeable that Defendant's equipment needed to be insulated with asbestos containing

5   thermal insulation materials and that the negligent design of Defendants' equipment

6   through its ordinary operation caused the degradation of asbestos containing thermal

7   insulation and the foreseeable removal of these insulation materials and application of new

8   insulation materials, which would cause the disturbance of asbestos and/or asbestos

9   containing materials, releasing asbestos into the air.

10        22.    On or before 1930, the Defendants, their "Alternate Entities," and each of

11   them, have known and have possessed the true facts of medical and scientific data and

12   other knowledge which clearly indicated that asbestos and asbestos-containing products

13   were and are hazardous to the health and safety of Plaintiff PAUL N. KANONAS, and

14   others in Plaintiff's position working in close proximity with such materials.  Specifically,

15   Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the

16   following information:

17        (a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on*

18        *the Lung* (London: H.M. Stationary Office) put manufacturers, designers,

19        distributors, marketers, sellers, suppliers, inspectors and advertisers of asbestos

20        and asbestos containing products on notice that exposure to asbestos dust can

21        cause pulmonary fibrosis in exposed individuals and discussed processes by which

22        asbestos dust is generated and methods for dust suppression.  As such, at least as

23        of 1930, Defendants, their "Alternate Entities," and each of them, knew or had the

24        duty to know that exposure to asbestos dust could cause a debilitating potentially

25        lethal disease, that there was a dose-response relationship between the level of

26        asbestos exposure and risk of contracting disease,  and that disease prevention

27        requires the suppression or elimination of asbestos containing dust.  In 1933, E.R.A.

28        Merewether's *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33,

-10-



December) informed Defendants, their "Alternate Entities," and each of them, that exposure to asbestos containing dust for a period of less than 5 years can cause the lung disease asbestosis, which can be deadly.

(b) R. Doll's 1955 article, *Mortality from Mesothelioma in Asbestos Workers* (Br. J. Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers, suppliers, inspectors and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause mesothelioma in exposed individuals, resulting in death.  As such, at least as of 1955, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause mesothelioma, a potentially lethal disease.

(c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural Mesothelioma and Asbestos Exposure in the North Western Cape Province* (Br. J. Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers, suppliers, inspectors and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause mesothelioma in exposed individuals, resulting in death.  The article confirmed a causal association between asbestos exposure and mesothelioma, and noted that even low-level, non-occupational exposures to asbestos can cause mesothelioma.  As such, at least as of 1960, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause mesothelioma, a lethal form of cancer, in those directly exposed to asbestos containing dust as well as those secondarily exposed in a residential setting.

23.   With intent to deceive Plaintiff PAUL N. KANONAS, and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain financial, business, and other advantages, the following acts occurred:

(a) Defendants, their "Alternate Entities," and each of them, did not label any of the

-11-




aforementioned asbestos and asbestos containing materials and products with information regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Plaintiff's employer and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Plaintiff that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity to such materials;

ORIGINAL COMPLAINT

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e) Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their



"Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants, their "Alternate Entities," and each of them, were bound to disclose;

(g) Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff and others of the nature of asbestos and asbestos containing materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h) Defendants, their "Alternate Entities," and each of them, failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i) Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them, also concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j) Defendants, their "Alternate Entities," and each of them, failed to provide

-14-



1   information of the true nature of the hazards of asbestos and asbestos containing
2   materials and that exposure to these materials would cause pathological effects
3   without noticeable trauma to the public, including buyers, users, and physicians
4   employed by Plaintiff and Plaintiff's employers so that said physicians could
5   examine, diagnose and treat Plaintiff and others who were exposed to asbestos,
6   despite the fact that Defendants, their "Alternate Entities," and each of them, were
7   under a duty to so inform and said failure was misleading; and
8   (k) Defendants, their "Alternate Entities," and each of them, failed to provide
9   adequate information to physicians and surgeons retained by Plaintiff's employers
10  and their predecessor companies, for purposes of making physical examinations of
11  Plaintiff and other employees as to the true nature of the risk of such materials and
12  exposure thereto when they in fact possessed such information and had a duty to
13  disclose it.
14      24.    On or before 1930, and thereafter, said Defendants, their "Alternate Entities,"
15  and each of them were aware that users of asbestos and asbestos containing products, as
16  well as members of the general public who would be exposed to asbestos and asbestos
17  products, had no knowledge or information indicating that asbestos could cause injury, and
18  said Defendants, their "Alternate Entities," and each of them, knew that the users of
19  asbestos and asbestos products, as well as members of the general public who were
20  exposed to asbestos and asbestos products, would assume, and in fact did assume, that
21  exposure to asbestos and asbestos products was safe, when in fact said exposure was
22  extremely hazardous to human life.
23      25.    With said knowledge, said Defendants, their "Alternate Entities," and each of
24  them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,
25  package, use, and advertise asbestos and asbestos containing products without
26  attempting to protect or warn users or bystanders about the high risk of injury or death
27  resulting from exposure to asbestos and asbestos products. Rather than attempting to
28  protect users and workers from, or warn workers and users of, the high risk of injury or

ORIGINAL COMPLAINT

1  death resulting from exposure to asbestos and asbestos products, Defendants, their

2  "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said

3  risk, fraudulently, consciously and actively concealed and suppressed said knowledge from

4  members of the general public that asbestos and asbestos products were unsafe for all

5  reasonably foreseeable use, with the knowledge of the falsity of said implied

6  representations.

7       26.     Despite the above referenced historical knowledge of said Defendants, their

8  "Alternate Entities," and each of them, concerning the extreme hazards of asbestos,

9  Defendants negligently, carelessly, and with a willful and conscious disregard of the rights

10  and safety of others failed to adequately test, research, label, design, distribute, sell,

11  inspect, repair, use, modify or advertise their asbestos and asbestos containing products in

12  an effort to reduce or eliminate the potential that their products would cause deadly

13  diseases in users, bystanders, and other exposed individuals.

14       27.     The above referenced conduct of said Defendants, their "Alternate Entities,"

15  and each of them was motivated by the financial interest of said Defendants in the

16  continuing, uninterrupted distribution and marketing of asbestos and asbestos containing

17  products.  In pursuance of said financial motivation, said Defendants consciously

18  disregarded the safety of the users of, and persons exposed to, asbestos and asbestos

19  containing products, and were in fact consciously willing to permit asbestos and asbestos

20  containing products to cause injury to workers and users thereof, and persons exposed

21  thereto, including Plaintiff PAUL N. KANONAS.

22       28.     The above reference conduct, including but not limited to, each Defendant's

23  conscious suppression of the dangers of their product, each Defendant's failure to warn of

24  the dangers, and each Defendant's decision to continue to manufacture, sell, and distribute

25  its asbestos-containing products, despite the health risks posed by those products and

26  known by each Defendant, were decisions and conduct committed by one or more officers,

27  directors, or managing agents of each Defendant, acting on behalf of said Defendant, or

28  were authorized, known, adopted or approved by an officer, director, or managing agent of

-16-



1   each Defendant.

2        29.    The above referenced conduct, including but not limited to, each Defendant's

3   conscious suppression of the dangers of their product, each Defendant's failure to warn of

4   the dangers, and each Defendant's decision to continue to manufacture, sell, and distribute

5   its asbestos-containing products, despite the health risks posed by those products and

6   known by each Defendant, were decisions and conduct committed by an employee of

7   Defendant who exercised substantial independent authority and judgment in his or her

8   corporate decision-making such that his or her decisions ultimately determine corporate

9   policy.

10       30.    Within the corporate hierarchy of each Defendant, authorized persons acted

11  despicably in willful and conscious disregard of the rights and safety of others, including

12  Plaintiffs.  These persons engaged in the above reference conduct, including by not limited

13  to each Defendant's conscious suppression of the dangers of its asbestos-containing

14  products, each Defendant's failure to warn of the dangers, and each Defendant's decision

15  to continue to manufacture, sell, and distribute its products despite the health risks posed

16  by so doing.

17       31.    The information concerning the health risks of asbestos, and described

18  above, was in the possession of each corporate Defendant and the structure of each

19  Defendant permitted that information to, in fact, move upward to the point were corporate

20  policy was formulated.  It became the corporate policy of each Defendant to consciously

21  suppress the dangers of their asbestos-containing products, and fail to warn of the dangers

22  of their asbestos-containing products, and to continue to manufacture, sell, and distribute

23  its asbestos-containing products well after the dangers of asbestos were known to each

24  Defendant for the purpose of maximizing their own profits.  It was the corporate policy of

25  each Defendant to choose profit over consumer and worker safety.  Defendants, and each

26  of them, through its officers, directors and managing agents engaged in conduct and

27  promulgated corporate policy, that could, and did, kill people.

28       32.    An officer, director, or managing agent of Defendants, their "Alternate

-17-

ORIGINAL COMPLAINT



1  Entities," and each of them, with advance knowledge of the extreme health hazard posed
2  by asbestos and asbestos containing products, did, with conscious disregard for the rights
3  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or
4  ratify such acts, including but not limited to Defendants' failure to adequately research, test,
5  or label their asbestos or asbestos-containing products and Defendants' attendant
6  willingness to continue to manufacture, design, distribute, market, sell, supply, install,
7  inspect, repair, package, use, and advertise asbestos and asbestos containing products
8  then known by Defendants to be hazardous to human health.  As such, an officer, director,
9  or managing agent of Defendants, their "Alternate Entities," and each of them, authorized
10 or ratified Defendants' failure to take reasonable and necessary efforts to reduce or
11 eliminate the potential that the asbestos and asbestos containing products Defendants
12 manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,
13 repaired, packaged, used and advertised would cause deadly diseases, such as
14 mesothelioma, in users, bystanders, and other exposed individuals.
15      33.     The above-referenced conduct of said Defendants, their "Alternate Entities,"
16 and each of them was and is willful, malicious, outrageous and/or in conscious disregard
17 and indifference to the rights and safety of users of said asbestos and asbestos containing
18 products, including Plaintiff PAUL N. KANONAS. Defendants, their "Alternate Entities," and
19 each of them are guilty of oppression, fraud, or malice and engaged in conduct which was
20 intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried
21 on by the Defendants with a willful and conscious disregard of the rights and safety of
22 others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to cruel
23 and unjust hardship in conscious disregard of their rights and engaged in intentional
24 misrepresentation, deceit, or concealment of a material fact known to the Defendants with
25 the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal
26 rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of
27 punishing Defendants, seeks punitive damages, according to proof.
28              **SECOND CAUSE OF ACTION**

-18-