ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-06382-RS

| | |
|---|---|
| Meyer et al v. General Electric Company et al | Date Filed: 12/16/2011 |
| Assigned to: Hon. Richard Seeborg | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Asbestos Litigation | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Diversity |

**Plaintiff**

**Ruth Ann Meyer**                    represented by    **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Clayton Meyer**                     represented by    **Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**CBS Corporation**
*formerly known as*

Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**Harley-Davidson Motor Company, Inc.**

**Defendant**

**Huntington Ingalss Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**General Dynamics Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/16/2011 | 1 | COMPLAINT for Asbestos Personal Injury/Products Liability/Loss of Consortium; Demand for Jury Trial against CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Harley-Davidson Motor Company, Inc., Huntington Ingalss Incorporated (Filing fee $ 350.00, receipt number 34611068276). Filed by Ruth Ann Meyer, Clayton Meyer. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 2 | Certificate of Interested Entities by Clayton Meyer, Ruth Ann Meyer (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 3 | NOTICE of Tag-Along Action by Clayton Meyer, Ruth Ann Meyer (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 4 | Summons Issued as to CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Harley-Davidson Motor Company, Inc., Huntington Ingalss Incorporated. (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by Clayton Meyer, Ruth Ann Meyer. (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 3/22/2012. Case Management Conference set for 3/29/2012 10:00 AM in Courtroom 3, 17th Floor, San Francisco. (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| | | |

| 12/21/2011 | 7 | RECUSAL ORDER. Signed by Judge Richard Seeborg on 12/21/11. (cl, COURT STAFF) (Filed on 12/21/2011) (Entered: 12/21/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/21/2011 10:31:34 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-06382-RS |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |



1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

E-filing

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

RS

10               SAN FRANCISCO DIVISION

11  RUTH ANN MEYER and              ) No. __11__        6382
    CLAYTON MEYER,                  )
12                                  )
          Plaintiffs,               )   COMPLAINT FOR ASBESTOS
13                                  )   PERSONAL INJURY/ PRODUCTS
    vs.                             )   LIABILITY/LOSS OF CONSORTIUM;
14                                  )   DEMAND FOR JURY TRIAL
    GENERAL ELECTRIC COMPANY, CBS   )
15  CORPORATION (FKA VIACOM INC.,   )
    FKA WESTINGHOUSE ELECTRIC       )
16  CORPORATION), FOSTER WHEELER    )
    LLC (FKA FOSTER WHEELER         )
17  CORPORATION), HARLEY-           )
    DAVIDSON MOTOR COMPANY, INC.,   )
18  HUNTINGTON INGALLS              )
    INCORPORATED (FKA NORTHROP      )
19  GRUMMAN SHIPBUILDING, INC.),    )
    GENERAL DYNAMICS                )
20  CORPORATION,                    )
                                    )
21        Defendants.               )

22

23

24

25

26

27

28

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

FILED
2011 DEC 16 P 2:41

RS

**I.**

**PARTIES**

1.    Plaintiff in this action, RUTH ANN MEYER, has sustained asbestos-related lung injuries as a result of her inhalation of asbestos fibers through her husband, CLAYTON MEYER's occupational exposure to asbestos. Plaintiff, CLAYTON MEYER, has sustained loss of consortium as set forth in the Fourth Cause of Action.

2.    Plaintiff RUTH ANN MEYER sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's husband, CLAYTON MEYER's jobsites.

3.    The pathogenesis of Plaintiff RUTH ANN MEYER's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4.    All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff's husband, CLAYTON MEYER's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff RUTH ANN MEYER, resulting in cumulative, progressive, incurable lung diseases.

5.    Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's husband, CLAYTON MEYER's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.    As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff RUTH ANN MEYER.

7.    Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the

///

1  State of California, and that said defendants have regularly conducted business in the County of

2  San Francisco, State of California.

3  **II.**

4  **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

5         8.     Jurisdiction: Plaintiffs RUTH ANN MEYER and CLAYTON MEYER are both

6  citizens of the State of Washington.

7        Defendants are each corporations incorporated under the laws of and having its principal

8  places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |
| HARLEY-DAVIDSON MOTOR COMPANY, INC. | Wisconsin |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia/California |
| GENERAL DYNAMICS CORPORATION | Delaware/Virginia |

19        This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action

20  between citizens of different states in which the matter in controversy exceeds, exclusive of costs

21  and interest, seventy-five thousand dollars.

22         9.     Venue / Intradistrict Assignment. Venue is proper in the Northern District of

23  California and assignment to the San Francisco Division of said district is proper as a substantial

24  part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred

25  within the County of San Francisco, California, and Defendants are subject to personal

26  jurisdiction in this district at the time the action is commenced.

27  ///

28  ///

# III.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF RUTH ANN MEYER COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), HARLEY-DAVIDSON MOTOR COMPANY, INC., HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.    At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

1  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

2  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

3  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

4  products containing asbestos. The following defendants, and each of them, are liable for the acts

5  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

6  destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

7  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

8  ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each

9  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

10  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

11  originally attached to each such ALTERNATE ENTITY:

12  | DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC.<br>AVONDALE SHIPYARDS, INC.<br>CONTINENTAL MARITIME INDUSTRIES, INC.<br>EASTERN IDAHO CONSTRUCTION COMPANY<br>INGALLS SHIPBUILDING, INC.<br>NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY<br>NORTH CAROLINA SHIPBUILDING<br>NORTHROP GRUMMAN SHIP SYSTEMS, INC.<br>SERVICE ENGINEERING INDUSTRIES, INC. |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL DYNAMICS CORPORATION | CONVAIR<br>VULTEE AIRCRAFT INC.<br>CONSOLIDATED VULTEE AIRCRAFT CORPORATION<br>ASBESTOS CORPORATION LIMITED |

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

///

14.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Plaintiff's husband, CLAYTON MEYER, and those persons with whom he may have come into the physical proximity of, including but not limited to, persons in his family such as Plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.     Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

1     18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

2  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

3  containing products presented risk of injury and/or disease.

4     19.    As a direct and proximate result of the aforesaid conduct of defendants, their

5  ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,

6  permanent injuries and/or future increased risk of injuries to their persons, body and health,

7  including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

8  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to

9  Plaintiff's general damage.

10     20.    As a direct and proximate result of the aforesaid conduct of the defendants, their

11  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur

12  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

13  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

14  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

15  thereof is ascertained.

16     21.    As a further direct and proximate result of the said conduct of the defendants,

17  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature

18  and extent of which are not yet known to Plaintiff; and leave is requested to amend this

19  complaint to conform to proof at the time of trial.

20     22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

21  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

22  had full knowledge of, or should have known of, each of the acts set forth herein.

23     23.    Defendants, their "alternate entities," and each of them, are liable for the

24  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

25  and each defendant's officers, directors and managing agents participated in, authorized,

26  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

27  each of their ALTERNATE ENTITIES as set forth herein.

28  ///

1    24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
2    and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
3    disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of
4    example and by way of punishing said defendants, seeks punitive damages according to proof.

5    WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and
6    each of them, as hereinafter set forth.

7                              SECOND CAUSE OF ACTION
                                   (Products Liability)
8

9    AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
10   ACTION FOR PRODUCTS LIABILITY, PLAINTIFF RUTH ANN MEYER COMPLAINS OF
11   DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM
12   INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC
13   (FKA FOSTER WHEELER CORPORATION), HARLEY-DAVIDSON MOTOR COMPANY,
14   INC., HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN
15   SHIPBUILDING, INC.), GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE
16   ENTITIES," AND EACH OF THEM, AS FOLLOWS:

17   25.    Plaintiff incorporates herein by reference, as though fully set forth herein, the
18   allegations contained in each paragraph of the First Cause of Action herein.

19   26.    Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended
20   that the above-referenced asbestos and asbestos-containing products would be used by the
21   purchaser or user without inspection for defects therein or in any of their component parts and
22   without knowledge of the hazards involved in such use.

23   27.    Said asbestos and asbestos-containing products were defective and unsafe for their
24   intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.
25   The defect existed in the said products at the time they left the possession of defendants, their
26   "alternate entities," and each of them. Said products did, in fact, cause personal injuries,
27   including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff
28   herein who was exposed to asbestos from her husband, CLAYTON MEYER, whose exposure to

K:\Injured\115643\FED\PLD\cmp-pilcp2expMet.wpd                9
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1 products was while they were being used in a reasonably foreseeable manner, thereby rendering
2 the same defective, unsafe and dangerous for use.

3     28.    "Exposed persons" did not know of the substantial danger of using said products.
4 Said dangers were not readily recognizable by "exposed persons." Said defendants, their
5 ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to
6 which Plaintiff and others similarly situated were exposed.

7     29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing
8 to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for
9 sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,
10 marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos
11 and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
12 did so with conscious disregard for the safety of "exposed persons" who came in contact with
13 said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE
14 ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or
15 death resulting from exposure to asbestos or asbestos-containing products, including, but not
16 limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,
17 from scientific studies performed by, at the request of, or with the assistance of, said defendants,
18 their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
19 defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

20     30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
21 ENTITIES and each of them, were aware that members of the general public and other "exposed
22 persons", who would come in contact with their asbestos and asbestos-containing products, had
23 no knowledge or information indicating that asbestos or asbestos-containing products could
24 cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
25 members of the general public and other "exposed persons", who came in contact with asbestos
26 and asbestos-containing products, would assume, and in fact did assume, that exposure to
27 asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
28 hazardous to health and human life.

1    31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

2 of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

3 lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

4 market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

5 asbestos-containing products without attempting to protect "exposed persons" from or warn

6 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

7 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn

8 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

9 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

10 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

11 and suppressed said knowledge from "exposed persons" and members of the general public, thus

12 impliedly representing to "exposed persons" and members of the general public that asbestos and

13 asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their

14 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

15 representations with the knowledge of the falsity of said implied representations.

16    32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

17 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

18 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

19 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

20 sale, inspection, installation, contracting for installation, repair, marketing, warranting,

21 rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

22 containing products. In pursuance of said financial motivation, said defendants, their

23 ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed

24 persons" and in fact were consciously willing and intended to permit asbestos and asbestos-

25 containing products to cause injury to "exposed persons" and induced persons to work with and

26 be exposed thereto, including Plaintiff.

27    33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE

28 ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

1 | products to be safe for their intended use but that their asbestos and asbestos-containing products,
2 | created an unreasonable risk of bodily harm to exposed persons.

3 |      34.     Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
4 | and various asbestos-containing products manufactured, fabricated, inadequately researched,
5 | designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
6 | for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
7 | marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
8 | aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
9 | cannot identify precisely which asbestos or asbestos-containing products caused the injuries
10 | complained of herein.

11 |      35.     Plaintiff relied upon defendants', their "alternate entities'", and each of their
12 | representations, lack of warnings, and implied warranties of fitness of asbestos and their
13 | asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
14 | been injured permanently as alleged herein.

15 |      36.     As a direct and proximate result of the actions and conduct outlined herein,
16 | Plaintiff has suffered the injuries and damages previously alleged.

17 |      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
18 | ENTITIES, and each of them, as hereinafter set forth.

19 | THIRD CAUSE OF ACTION<br>(Premises Owner/Contractor Liability)
20 |

21 |      AS AND FOR A FURTHER AND THIRD SEPARATE AND DISTINCT CAUSE OF
22 | ACTION, PLAINTIFF COMPLAINS OF DEFENDANT HUNTINGTON INGALLS
23 | INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), AND THEIR
24 | ALTERNATE ENTITIES (hereinafter PREMISES OWNER/CONTRACTOR LIABILITY
25 | DEFENDANTS), AND ALLEGES AS FOLLOWS:

26 |      37.     Plaintiff incorporates herein by reference, as though fully set forth herein, each
27 | paragraphs 17 through 23 of the First Cause of Action herein.
28 | ///

1        38.    At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR

2 LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor,

3 predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or

4 partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing

5 insulation, other building materials, products, and toxic substances to be constructed, installed,

6 maintained, used, replaced, repaired and/or removed on the respective premises owned, leased,

7 maintained, managed, and/or controlled by them. Said entities shall hereinafter collectively be

8 called ALTERNATE ENTITIES. Each of the herein-named defendants is liable for the tortious

9 conduct of each successor, successor-in-business, assign, predecessor-in-business, parent,

10 holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially

11 owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and

12 other toxic substances. Said defendants, and each of them, are liable for the acts of each and

13 every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

14 Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have

15 acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of

16 them, have caused the destruction of Plaintiff's remedy against each such alternate entity; each

17 such defendant has the ability to assume the risk-spreading role of each such

18 ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to

19 each such ALTERNATE ENTITY.

20        39.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

21 LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained,

22 managed, and/or controlled the premises. The information provided is preliminary, based on

23 recall over events covering many years and further investigation and discovery may produce

24 more reliable information:

25 ///

26 ///

27 ///

28

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| **Newport News Shipbuilding and Dry Dock Company** | Puget Sound Naval Shipyard, Bremerton, WA | 1973-3/1981 |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) (Alternate entities: NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY; INGALLS SHIPBUILDING, INC.) | ABRAHAM LINCOLN SSBN-602 | 1973-3/1981 |
| | ARKANSAS CGN-41 | 1/1980-3/1981 |
| | CALIFORNIA CGN-36 | 1978-3/1981 |
| | CORAL SEA CVB-43; CVA-43; CV-43 | Mid 1970s |
| | ENTERPRISE CVAN-65L CVN-65 | 1973-3/1981 |
| | ETHAN ALLEN SSBN-608; SSN-608 | 1978-3/1981 |
| | HUNLEY AS-31 | 1973-1976 |
| | LEWIS AND CLARK SSBN-644 | 1978-3/1981 |
| | PATRICK HENRY SSBN-599; SSN-599 | 1973-3/1981 |
| | Puget Sound Naval Shipyard, Bremerton, WA | 1973-3/1981 |
| | QUEENFISH SSN-651 | 1973-3/1981 |
| | RANGER CVA-61; CV-61 | 1973-1978 |
| | RAY SSN-653 | 1973-3/1981 |
| | ROBERT E. LEE SSBN-601 | 1973-3/1981 |
| | SAM HOUSTON SSBN-609 | 1973-3/1981 |
| **INGALLS SHIPBUILDING, INC.** | | |
| | BARB SSN-596 | 1978-3/1981 |
| | BLUEBACK SS-581 | 1973-3/1981 |
| | DARTER SS-576 | 1973-3/1981 |
| | GATO SSN-615 | 4/1973-3/1981 |
| | GRAYLING SSN-646 | 4/1973-3/1981 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| **INGALLS SHIPBUILDING, INC.** **HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)** (Alternate entities: NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY; INGALLS SHIPBUILDING, INC.) (cont'd.) | Puget Sound Naval Shipyard, Bremerton, WA <br><br> POGY SSN-647 | 1973-3/1981 <br><br> 1973-3/1981 |
| | SCULPIN SSN-590 | 1973-3/1981 |

Additionally, Plaintiff's husband, CLAYTON MEYER, might have been present at these or other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

40.    Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid respective premises, by their own workers and/or by various unqualified or unskilled contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff's husband, CLAYTON MEYER, and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

41.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

42.    At all times relevant herein, Plaintiff's husband, CLAYTON MEYER, entered said premises and used or occupied each of said respective premises as intended and for each of

1  the respective PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS' benefit and
2  advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY
3  DEFENDANTS' request and invitation. In so doing, Plaintiff's husband, CLAYTON MEYER,
4  was exposed to dangerous quantities of asbestos fibers and other toxic substances released into
5  the ambient air by the aforesaid hazardous conditions and activities managed, maintained,
6  initiated, and/or otherwise created, controlled, or caused by said PREMISES
7  OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

8      43.    Plaintiff at all times was unaware of the hazardous condition or the risk of
9  personal injury created by the aforesaid presence and use of asbestos products and materials and
10  other toxic substances on said premises.

11      44.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
12  LIABILITY DEFENDANTS, and each of them, remained in control of the premises where
13  Plaintiff's husband, CLAYTON MEYER, was performing his work.

14      45.    Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS
15  retained control over safety and other related conditions and circumstances at Plaintiff's husband,
16  CLAYTON MEYER's job site(s) and affirmatively contributed to and exercised, or failed to
17  exercise, that control in a manner that caused Plaintiff's injuries from asbestos-containing
18  products.

19      46.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR
20  LIABILITY DEFENDANTS owed to Plaintiff's husband, CLAYTON MEYER, and others
21  similarly situated a duty to exercise ordinary care in the management of such premises so as to
22  avoid exposing workers such as Plaintiff's husband, CLAYTON MEYER, to an unreasonable
23  risk of harm and to avoid causing injury to said person.

24      47.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
25  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and
26  reasonable care should have known, that the premises that were in their control would be used
27  without knowledge of, or inspection for, defects or dangerous conditions and that the persons
28  ///

1  present and using said premises would not be aware of the aforesaid hazardous conditions to
2  which they were exposed on the premises.

3      48.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
4  LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,
5  survey, or control said premises, or to abate, or correct, or to warn Plaintiff of, the existence of
6  the aforesaid dangerous conditions and hazards on or about said premises.

7      49.    Prior to and at the times and places aforesaid, said PREMISES
8  OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused
9  certain asbestos-containing insulation, other building materials, products, and toxic substances to
10  be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their
11  aforesaid respective premises, by their own workers and/or by employing various contractors,
12  and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances
13  into the ambient air and thereby injured Plaintiff.

14      50.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR
15  LIABILITY DEFENDANTS, and each of them:

16          a.  Should have recognized that the work of said contractors would create during
17  the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would
18  harm Plaintiff's husband, CLAYTON MEYER, and others unless special precautions were taken;

19          b.  Knew or had reason to know, that the contractors it had selected and hired to
20  install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled,
21  unlicenced, or otherwise unqualified to do so;

22          c.  Failed to use reasonable care to discover whether the contractors it selected and
23  hired to install, remove, abate, or otherwise handle asbestos-containing materials were
24  competent, or qualified to do so.

25      51.    In part, Plaintiff's husband, CLAYTON MEYER, and thereafter Plaintiff were
26  exposed to dangerous asbestos fibers and other toxic substances by reason of such contractors'
27  failure to take the necessary precautions.

28  ///

1       52.     The work of contractors on premises controlled by the PREMISES

2 OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe

3 work place by reason of the release of dangerous quantities of toxic substances, including but not

4 limited to asbestos.

5       53.     The unsafe premise or work place was created, in part, by the negligent conduct of

6 the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY

7 DEFENDANTS. Said negligent conduct includes, but is not limited to:

8                a.     Failure to warn of asbestos and other toxic dusts;

9                b.     Failure to suppress the asbestos-containing or toxic dusts;

10                c.     Failure to remove the asbestos-containing and toxic dusts through

11 use of ventilation or appropriate means;

12                d.     Failure to provide adequate breathing protection, i.e., approved

13 respirators or masks;

14                e.     Failure to inspect and/or test the air;

15                f.     Failure to provide medical monitoring.

16                g.     Failure to select and hire a careful and competent contractor or

17 subcontractor.

18       54.     The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties

19 to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions

20 are non-delegable; said duties arise out of, inter alia, common law, California Civil Code § 1714,

21 and California Labor Code § 6400, et seq., or California Health and Safety Code § 40.200, et

22 seq., and regulations promulgated thereunder. Accordingly, the PREMISES

23 OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said

24 duties whether by themselves or others.

25       55.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

26 LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other

27 government regulations promulgated by the United States Government, the State of California,

28 and others, including but not limited to the General Industry Safety Orders promulgated pursuant

1 to California Labor Code § 6400 and the California Administrative Code under the Division of

2 Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII,

3 Group 9 (Control of Hazardous Substances), Article 81, § 4150, § 4106, § 4107, and § 4108,

4 and Threshold Limit Values as documented for asbestos and other toxic substances under

5 Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code

6 § 40.200, et seq., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.)

7 to promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11, Rules 2 and

8 14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission

9 Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/

10 CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to

11 prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

12 PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the

13 required safeguards and precautions, or contractors employed by the PREMISES

14 OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards

15 and precautions. Defendants' violations of said codes include, but are not limited to:

16        (a)    Failing to comply with statutes and allowing ambient levels of airborne

17 asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

18 statutes;

19        (b)    Failing to segregate work involving the release of asbestos or other toxic

20 dusts;

21        (c)    Failing to suppress dust using prescribed ventilation techniques;

22        (d)    Failing to suppress dust using prescribed "wet down" techniques;

23        (e)    Failing to warn or educate Plaintiff or others regarding asbestos or other

24 toxic substances on the premises;

25        (f)    Failing to provide approved respiratory protection devices;

26        (g)    Failing to ensure "approved" respiratory protection devices were used

27 adequately;

28 ///

1     (h)  Failing to provide for an on-going health screening program for those

2 exposed to asbestos on the premises;

3     (i)  Failing to provide adequate housekeeping and clean-up of the work place;

4     (j)  Failing to adequately warn of the hazards associated with asbestos as

5 required by these statutes;

6     (k)  Failing to adequately report renovation and disturbance of asbestos-

7 containing materials, including but not limited to <u>B.A.A.Q.M.D. Regulation</u> 11, Rules 2 and 14;

8     (l)  Failing to have an asbestos removal supervisor as required by regulation;

9     (m)  Failing to get approval for renovation as required by statutes; and

10     (n)  Failing to maintain records as required by statute.

11  56.  PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of

12 them, were the "statutory employer" of the Plaintiff's husband, CLAYTON MEYER, as defined

13 by the <u>California Labor Code</u> and California case law.

14  57.  Plaintiff's husband, CLAYTON MEYER, at all times was unaware of the

15 hazardous condition or the risk of personal injury created by defendants' violation of said

16 regulations, ordinances, or statutes.

17  58.  At all times mentioned herein, Plaintiff's husband, CLAYTON MEYER, was a

18 member of the class of persons whose safety was intended to be protected by the regulations,

19 standards, statutes, or ordinances described in the foregoing paragraphs.

20  59.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

21 LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

22 reasonable care should have known, that the premises that were in their control would be used

23 without knowledge of, or inspection for, defects or dangerous conditions, that the persons present

24 and using said premises would not be aware of the aforesaid hazardous conditions to which they

25 were exposed on the premises, and that such persons were unaware of the aforesaid violations of

26 codes, regulations, and statutes.

27 ///

28 ///

1    60.    As a proximate result of the foregoing, Plaintiff developed asbestos-related
2  illness, which has caused great injury and disability as previously set forth, and Plaintiff, has
3  suffered damages as herein alleged.

4    WHEREFORE, Plaintiff, prays judgment against defendants, their ALTERNATE
5  ENTITIES, and each of them, as hereinafter set forth.

6    ### FOURTH CAUSE OF ACTION
7    (Loss of Consortium)

8    AS AND FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF
9  ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF CLAYTON MEYER COMPLAINS OF
10 DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM
11 INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC
12 (FKA FOSTER WHEELER CORPORATION), HARLEY-DAVIDSON MOTOR COMPANY,
13 INC., HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN
14 SHIPBUILDING, INC.), GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE
15 ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

16    61.    Plaintiffs incorporate by reference each and every paragraph of the First through
17 Third Causes of Action herein.

18    62.    Plaintiffs RUTH ANN MEYER and CLAYTON MEYER were married on
19 March 30, 1973, and at all times relevant to this action were, and are now, husband and wife.

20    63.    Prior to Plaintiff RUTH ANN MEYER's injuries as alleged, she was able and did
21 perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, RUTH
22 ANN MEYER has been unable to perform the necessary duties as a spouse and the work and
23 service usually performed in the care, maintenance and management of the family home, and she
24 will be unable to perform such work, service and duties in the future. As a proximate result
25 thereof, plaintiff CLAYTON MEYER has been permanently deprived and will be deprived of the
26 consortium of his spouse, including the performance of duties, all to his damages, in an amount
27 presently unknown but which will be proved at the time of trial.

28    ///

1    64.    Plaintiff CLAYTON MEYER's discovery of the cause of his loss of consortium,

2  as herein alleged, first occurred within one year of the date this complaint was filed.

3    65.    As a direct and proximate result of the acts of defendants, their "alternate entities,"

4  and each of them, and the severe injuries caused thereby to Plaintiff RUTH ANN MEYER as set

5  forth in this complaint, plaintiff CLAYTON MEYER has suffered, and for a long period of time

6  will continue to suffer loss of consortium, including but not by way of limitation, loss of services,

7  marital relations, society, comfort, companionship, love and affection of said spouse, and has

8  suffered severe mental and emotional distress and general nervousness as a result thereof.

9                                                **IV.**

10                                             **PRAYER**

11        WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

12  ENTITIES, and each of them in an amount to be proved at trial, as follows:

13        Plaintiff RUTH ANN MEYER:

14        (a)    For Plaintiff's general damages according to proof;

15        (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

16        (c)    For Plaintiff's medical and related expenses according to proof;

17        Plaintiff CLAYTON MEYER:

18        (d)    For Plaintiff's damages for loss of consortium according to proof;

19        Plaintiffs RUTH ANN MEYER and CLAYTON MEYER:

20        (d)    For Plaintiffs' cost of suit herein;

21        (e)    For exemplary or punitive damages according to proof;

22        (f)    For damages for fraud according to proof; and

23        (g)    For such other and further relief as the Court may deem just and proper, including

24              costs and prejudgment interest.

25  Dated:  12|5|11                          BRAYTON❖PURCELL LLP

26

27                                      By: _____
                                            David R. Donadio
28                                          Attorneys for Plaintiffs

1    ## JURY DEMAND

2    Plaintiffs hereby demand trial by jury of all issues of this cause.

3

4    Dated: ___12/15/11___                    BRAYTON❖PURCELL LLP

5

6                                            By: _____

7                                                David R. Donadio
                                                 Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\115643\FED\PLD\cmp-pilcp2expMet.wpd                    23
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

| | |
|---|---|
| 1 | EXHIBIT A |
| 2 | <u>Plaintiff</u>: RUTH ANN MEYER |
| 3 | |
| 4 | <u>Plaintiff's injuries</u>: Plaintiff was diagnosed with lung cancer on or about April 2011. |
| 5 | |
| 6 | <u>Retirement Status</u>: |
| 7 | Plaintiff retired from her last place of employment at regular retirement age. She has therefore |
| 8 | suffered no disability from her asbestos-related disease as "disability" is defined in California |
| 9 | Code of Civil Procedure § 340.2. |
| 10 | |

<u>Defendants</u>: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants. Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

<u>NON-OCCUPATIONAL EXPOSURE</u>:

Friction: Plaintiff lived with her husband, marine machinist Clayton Meyer, c/o Brayton ❖Purcell, from their marriage on March 30, 1973 until March 1981. Subsequently, plaintiff and Clayton Meyer have been living together from midsummer 1986 to present. They were remarried on Sept. 16, 1989. Plaintiff shook out and washed the dusty work clothes of her husband, Clayton Meyer, c/o Brayton ❖ Purcell, after he worked on the family vehicles from the beginning of their marriage on March 30, 1973 until March 1981, and then from midsummer 1986 to present. Plaintiff's husband removed and replaced brake shoes two dozen times, clutches at least seven times, mufflers and exhaust pipe at least twice, and gaskets, including exhaust pipe gaskets, pan gaskets and valve cover gaskets, at least 10 times. Plaintiff's husband purchased replacement auto parts, including RAYBESTOS ( RAYMARK INDUSTRIES, INC.) replacement brake shoes, from NAPA AUTO PARTS (GENUINE PARTS COMPANY) in Bremerton, Washington, and SCHUCK'S AUTO SUPPLY (CSK AUTO, INC.) in Bremerton, Washington.

Plaintiff's husband replaced the brakes in a 1970 (HARLEY (HARLEY-DAVIDSON MOTOR COMPANY, INC.) motorcycle in 1973, purchasing replacement brakes from a HARLEY (HARLEY-DAVIDSON MOTOR COMPANY, INC.) dealer in or near Bremerton, Washington. Plaintiff's husband performed this work in the garage of their home on Broad Street in Bremerton, Washington. Plaintiff currently contends she was exposed to asbestos as a result of her husband's vehicle repair work.

Home Repair: Plaintiff was present in 1973 when her husband removed and replaced drywall and vinyl floor tiles in their home on Broad Street in Bremerton, Washington, installing new ARMSTRONG (ARMSTRONG WORLD INDUSTRIES, INC.) sheet vinyl. Plaintiff currently contends she was exposed to asbestos as a result of her husband's home repair work.

| | |
|---|---|
| 28 | /// |

1  PARA-OCCUPATIONAL EXPOSURE:

2  Plaintiff lived with her husband, marine machinist Clayton Meyer, c/o Brayton ❖Purcell, from
   their marriage on March 30, 1973 until March 1981. Subsequently, plaintiff and Clayton Meyer
3  have been living together from midsummer 1986 to present. They were remarried on Sept. 16,
   1989. After work, plaintiff's husband came home in his work clothes and sat on chairs and beds
4  and walked on rugs before removing his dusty work clothes. Plaintiff stacked the clothes near the
   washing machine off the kitchen then shook them out and laundered them. Plaintiff's husband's
5  work history is as follows:

6  Plaintiff lived with her husband, marine machinist Clayton Meyer, c/o Brayton ❖Purcell, from
   their marriage on March 30, 1973, until March 1981. Subsequently, plaintiff and Clayton Meyer
7  have been living together from midsummer 1986 to present. They were remarried on September
   16, 1989. After work, plaintiff's husband came home in his work clothes and sat on chairs and
8  beds and walked on rugs before removing his dusty work clothes. Plaintiff stacked the clothes
   near the washing machine off the kitchen then shook them out and laundered them. Plaintiff's
9  husband's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1973-3/1981 |
| | ABRAHAM LINCOLN (SSBN-602) | | 1973-3/1981 |
| | ALEXANDER HAMILTON (SSBN-617) | | |
| | ARKANSAS (CGN-41) | | 1978-3/1981 |
| | BAINBRIDGE (CGN-25) | | on and off, a total of approx. 1 year |
| | BARB (SSN-596) | | |
| | BATFISH (SSN-681) | | on and off, approx. 3 months |
| | BLUEBACK (SSS-581) | | |
| | CALIFORNIA (CGN-36) | | 3/1981 (4 or 5 weeks) |
| | CONSTELLATION (CVA-64) | | 1973-3/1981 |
| | CORAL SEA (CVB-43) | | mid 1970s |
| | DANIEL BOONE (SSBN-629) | | 1973-3/1981 |
| | DANIEL WEBSTER (SSBN-626) | | approx. 1 year |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1973-3/1981 |
| | DARTER (SS-576) | | |
| | DRUM (SSN-677) | | |
| | ENTERPRISE (CVN-65) | | on and off (approx. 1 ½ years) |
| | ETHAN ALLEN (SSBN-608) | | |
| | FLASHER (SSN-613) | | |
| | FRANCIS SCOTT KEY (SSBN-657) | | |
| | GATO (SSN-615) | | |
| | GEORGE C. MARSHALL (SSBN-654) | | |
| | GEORGE WASHINGTON (SSBN-598) | | |
| | GRAYBACK (APSS-574) | | |
| | GRAYLING (SSN-646) | | |
| | GUDGEON (SS-567) | | 1973-3/1981 |
| | GUITARRO (SSN-665) | | |
| | HALIBUT (SSGN-587) | | 1973-1976 |
| | HAWKBILL (SSN-666) | | |
| | HUNLEY (AS-31) | | 1973-1976 (6 to 8 months) |
| | JOHN ADAMS (SSBN-620) | | 1972-3/1981 |
| | KITTY HAWK (CV-63) | | 1972-1978 (on and off, approx. 1 year) |
| | LEWIS AND CLARK (SSBN-644) | | 1973-1987 1973-3/1981 |

| | Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|---|
| | U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1973-3/1981 |
| | | LONG BEACH (CGN-9) | | |
| | | PATRICK HENRY (SSBN-599) | | 1973-3/1981 |
| | | PERMIT (SSN-594) | | |
| | | PINTADO (SSN-672) | | |
| | | PLUNGER (SSN-595) | | |
| | | POGY (SSN-647) | | |
| | | QUEENFISH (SSN-651) | | |
| | | RANGER (CVA-61) | | 1973-1978 (1 yr on and off) |
| | | RAY (SSN-653) | | 1973-3/1981 |
| | | ROBERT E. LEE (SSBN-601) | | |
| | | SAM HOUSTON (SSBN-609) | | |
| | | SCAMP (SSN-588) | | |
| | | SCULPIN (SSN-590) | | |
| | | STURGEON (SSN-637) | | |
| | | TAUTOG (SSN-639) | | |
| | | Machine Shop 31 | | 1973-3/1981 |

28

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

RUTH ANN MEYER and CLAYTON MEYER

**DEFENDANTS**

GENERAL ELECTRIC COMPANY, .et al.

**(b)** County of Residence of First Listed Plaintiff Kitsap
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  New York/Connecticut
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David R. Donadio, Esq.
Brayton❖Purcell LLP
222 Rush Landing Road, JMD#03
Novato, California 94948-6169

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☐ 2 U.S. Government
Defendant

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☒ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities– Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Diversity of Citizenship; 28 USC Section 1332

Brief description of cause: Asbestos Personal Injury

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE    ☐ EUREKA

DATE  12/15/11

SIGNATURE OF ATTORNEY OF RECORD

DAVID R. DONADIO, Brayton❖Purcell LLP, Attorney for Plaintiff

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** (a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553

Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.