ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:11-cv-06611-JSW

| | |
|---|---|
| Mahdi v. General Electric Company et al | Date Filed: 12/22/2011 |
| Assigned to: Hon. Jeffrey S. White | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Personal Injury | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Diversity |

**Plaintiff**

**Seleem Mahdi**   represented by   **Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

| Date Filed | # | Docket Text |
|---|---|---|
| 12/22/2011 | 1 | COMPLAINT against Foster Wheeler LLC, General Electric Company ( Filing fee $ 350, receipt number 34611068467.). Filed bySeleem Mahdi. |

|  |  |  |
|---|---|---|
|  |  | (Attachments: # 1 Civil Cover Sheet)(hdj, COURT STAFF) (Filed on 12/22/2011) (Entered: 12/27/2011) |
| 12/22/2011 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 3/30/2012. Case Management Conference set for 4/6/2012 01:30 PM. (Attachments: # 1 Standing Order, # 2 Standing Order)(hdj, COURT STAFF) (Filed on 12/22/2011) (Entered: 12/27/2011) |
| 12/22/2011 | 3 | Declination to Proceed Before a U.S. Magistrate Judge by Seleem Mahdi. (hdj, COURT STAFF) (Filed on 12/22/2011) (Entered: 12/27/2011) |
| 12/22/2011 | 4 | Certificate of Interested Entities by Seleem Mahdi (hdj, COURT STAFF) (Filed on 12/22/2011) (Entered: 12/27/2011) |
| 12/22/2011 | 5 | NOTICE of Tag-Along Action by Seleem Mahdi (hdj, COURT STAFF) (Filed on 12/22/2011) (Entered: 12/27/2011) |
| 12/22/2011 | 6 | Summons Issued as to Foster Wheeler LLC, General Electric Company. (hdj, COURT STAFF) (Filed on 12/22/2011) (Entered: 12/27/2011) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 12/28/2011 08:21:27 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-06611-JSW |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✧PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

E-filing

Attorneys for Plaintiff



UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SELEEM MAHDI,

    Plaintiff,

vs.

GENERAL ELECTRIC COMPANY,
FOSTER WHEELER LLC (FKA FOSTER
WHEELER CORPORATION),

    Defendants.

CV11 6611

COMPLAINT FOR ASBESTOS
PERSONAL INJURY/ PRODUCTS
LIABILITY; DEMAND FOR JURY TRIAL

## I.

## PARTIES

1. Plaintiff in this action, SELEEM MAHDI, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos.

2. Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3. The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

4. All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or

maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

5. Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6. As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

7. Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiff SELEEM MAHDI is a citizen of the State of California. Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF SELEEM MAHDI COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
|  | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
|  | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
|  | G E INDUSTRIAL SYSTEMS |
|  | CURTIS TURBINES |
|  | PARSONS TURBINES |
|  | GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

1  fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
2  to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
3  supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
4  installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
5  rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
6  and other products containing asbestos, in that said products caused personal injuries to users,
7  consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter
8  collectively called "exposed persons"), while being used in a manner that was reasonably
9  foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by
10 "exposed persons".
11        13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
12 exercise due care in the pursuance of the activities mentioned above and defendants, and each of
13 them, breached said duty of due care.
14        14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
15 have known, and intended that the aforementioned asbestos and products containing asbestos and
16 related products and equipment, would be transported by truck, rail, ship, and other common
17 carriers, that in the shipping process the products would break, crumble, or be otherwise
18 damaged; and/or that such products would be used for insulation, construction, plastering,
19 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
20 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
21 breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the
22 release of airborne asbestos fibers, and that through such foreseeable use and/or handling
23 "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to
24 said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
25 persons working in proximity to said products, directly or through reentrainment.
26        15.    Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-
27 containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's
28 exposure to asbestos and asbestos-containing products is on current information as set forth at

various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21. As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature

1  and extent of which are not yet known to Plaintiff; and leave is requested to amend this
2  complaint to conform to proof at the time of trial.
3      22. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
4  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
5  had full knowledge of, or should have known of, each of the acts set forth herein.
6      23. Defendants, their "alternate entities," and each of them, are liable for the
7  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
8  and each defendant's officers, directors and managing agents participated in, authorized,
9  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
10 each of their ALTERNATE ENTITIES as set forth herein.
11     24. The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
12 and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
13 disregard and indifference to the safety and health of "exposed persons."  Plaintiff, for the sake of
14 example and by way of punishing said defendants, seeks punitive damages according to proof.
15     WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and
16 each of them, as hereinafter set forth.

### SECOND CAUSE OF ACTION
(Products Liability)

19     AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
20 ACTION FOR PRODUCTS LIABILITY, PLAINTIFF SELEEM MAHDI COMPLAINS OF
21 DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA
22 FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF
23 THEM, AS FOLLOWS:
24     25. Plaintiff incorporates herein by reference, as though fully set forth herein, the
25 allegations contained in each paragraph of the First Cause of Action herein.
26     26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended
27 that the above-referenced asbestos and asbestos-containing products would be used by the
28 ///

purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30. On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed

persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

K:\Injured\112691\FED\PLD\cmp-fed-pi.wpd                             9
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1  containing products. In pursuance of said financial motivation, said defendants, their
2  ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed
3  persons" and in fact were consciously willing and intended to permit asbestos and asbestos-
4  containing products to cause injury to "exposed persons" and induced persons to work with and
5  be exposed thereto, including Plaintiff.

6      33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE
7  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing
8  products to be safe for their intended use but that their asbestos and asbestos-containing products,
9  created an unreasonable risk of bodily harm to exposed persons.

10      34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
11  and various asbestos-containing products manufactured, fabricated, inadequately researched,
12  designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
13  for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
14  marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
15  aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
16  cannot identify precisely which asbestos or asbestos-containing products caused the injuries
17  complained of herein.

18      35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their
19  representations, lack of warnings, and implied warranties of fitness of asbestos and their
20  asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
21  been injured permanently as alleged herein.

22      36.    As a direct and proximate result of the actions and conduct outlined herein,
23  Plaintiff has suffered the injuries and damages previously alleged.

24  WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
25  ENTITIES, and each of them, as hereinafter set forth.
26  ///
27  ///
28  ///

## IV.

## PRAYER

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

(a) For Plaintiff's general damages according to proof;

(b) For Plaintiff's loss of income, wages and earning potential according to proof;

(c) For Plaintiff's medical and related expenses according to proof;

(d) For Plaintiff's cost of suit herein;

(e) For exemplary or punitive damages according to proof;

(f) For damages for fraud according to proof; and

(g) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 12/28/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues of this cause.

Dated: 12/28/11

BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiff

# EXHIBIT A

# EXHIBIT A

<u>Plaintiff</u>: SELEEM MAHDI

<u>Plaintiff's injuries</u>: Plaintiff was diagnosed with lung cancer on or about May 2009 and with asbestosis and asbestos-related pleural disease on or about March 2010.

<u>Retirement Status</u>:

    Plaintiff retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center, Bainbridge, MD | Trainee | 3/14/1955-5/16/1955 |
| U.S. Navy | <u>BOSTON</u> (CAG-1); | Gunner's Mate | 5/17/1955-6/16/1957; 7/13/1957-1/21/1959 |
|  | Re-commissioning of the <u>BOSTON</u> (CAG-1) at Philadelphia Naval Shipyard, Philadelphia, PA; |  | 5/17/1955-11/1/1955 |
|  | at Long Beach Naval Shipyard, Long Beach, CA; |  | (3 months) |
|  | at Mare Island Naval Shipyard, Vallejo, CA; |  | (3 months) |
|  | at Boston Naval Shipyard, Boston, MA |  | (3 months) |
| US Navy | Naval Training Center, Dam Neck, VA | Ordnance Man | 6/17/1957-7/12/1957 |
| US Navy | US Navy Yard, Washington, DC ( Naval Weapons Plant) | Ordnance Man | 1/22/1959-7/1/1959 |

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | CANBERRA (CAG-2); | Ordnance Man | 7/2/1959-6/30/1961 |
| | at Norfolk Naval Shipyard, Portsmouth, VA; | | 7/2/1959-2/1960 |
| | Long Beach Naval Shipyard, Long Beach, CA; | | (Approx 2.5 months) |
| | Mare Island Naval Shipyard, Vallejo, CA | | (Approx 1 month) |
| US Navy | Naval Training Center, Great Lakes, IL | Trainee | 7/1/1961-8/7/1962 |
| US Navy | Naval Station, Philadelphia, PA; | Ordnance Man | 8/8/1962-4/19/1963 |
| | JOSEPH STRAUSS (DDG-16) | | 4/20/1963-2/11/1964 |
| US Navy | Naval Weapons Station, Concord, CA | Ordnance Man | 2/12/1964-4/6/1967 |
| Department of the Navy | Naval Weapons Station, Concord, CA; Building 93; Building 87; Building 97; Building 25; Building 44; | Ordnance Worker | 1/1968-1991 |
| | Various ships including but not limited to: MOUNT HOOD (AE-29) | | 4/1972 |

NON-OCCUPATIONAL EXPOSURE:

FRICTION:
Plaintiff performed dozens of brake jobs from the 1950's until approximately 1985. Plaintiff used asbestos-containing BENDIX (HONEYWELL INTERNATIONAL, INC.) and RAYBESTOS (RAYMARK INDUSTRIES, INC.) brand replacement brakes purchased at KRAGEN (CSK AUTO, INC.) and NAPA (GENUINE PARTS COMPANY) in Pittsburg, California.