ADRMOP

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:11-cv-06708-PJH

Nord v. CBS Corporation et al
Assigned to: Hon. Phyllis J. Hamilton
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 12/29/2011
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**David Nord**                        represented by   **Alan R. Brayton**
                                                        Brayton Purcell LLP
                                                        222 Rush Landing Road
                                                        PO Box 6169
                                                        Novato, CA 94948-6169
                                                        415-898-1555
                                                        Fax: 415-898-1247
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **David R. Donadio**
                                                        Brayton Purcell LLP
                                                        222 Rush Landing Road
                                                        PO Box 6169
                                                        Novato, CA 94948-6169
                                                        415-898-1555
                                                        Fax: 415-898-1247
                                                        Email: DDonadio@braytonlaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**Metropolitan Life Insurance Company**

<u>Defendant</u>

**Parker Hannifin Corporation**

<u>Defendant</u>

**Crown Cork & Seal Company, Inc.**

<u>Defendant</u>

**Hopeman Brothers, Inc.**

<u>Defendant</u>

**General Electric Company**

<u>Defendant</u>

**Ingersoll-Rand Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/29/2011 | 6 | Summons Issued as to All Defendants. (vlk, COURT STAFF) (Filed on 12/29/2011) (Entered: 01/03/2012) |
| 12/29/2011 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 4/5/2012. Case Management Conference set for 4/12/2012 at 02:00 PM before Judge Phyllis J. Hamilton. (Attachments: # 1 Standing Order)(kc, COURT STAFF) (Filed on 12/29/2011) (Entered: 12/29/2011) |
| 12/29/2011 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by David Nord. (kc, COURT STAFF) (Filed on 12/29/2011) (Entered: 12/29/2011) |
| 12/29/2011 | 3 | Certificate of Interested Entities or Persons by David Nord (kc, COURT STAFF) (Filed on 12/29/2011) (Entered: 12/29/2011) |
| 12/29/2011 | 2 | NOTICE of Tag-Along Action by David Nord (kc, COURT STAFF) (Filed on 12/29/2011) (Entered: 12/29/2011) |
| 12/29/2011 | 1 | COMPLAINT with jury demand against CBS Corporation, Crown Cork & Seal Company, Inc., Foster Wheeler LLC, General Electric Company, Hopeman Brothers, Inc., Ingersoll-Rand Company, Metropolitan Life Insurance Company, Parker Hannifin Corporation ( Filing fee $ 350, receipt number 34611068678.). Filed byDavid Nord. (kc, COURT STAFF) (Filed on 12/29/2011) (Entered: 12/29/2011) |

| PACER Service Center |
|:---:|
| **Transaction Receipt** |
| 01/03/2012 12:29:14 |

| PACER Login: | bp0355 | Client Code: | |
|--------------|--------|--------------|---|

| Description: | Docket Report | Search Criteria: | 4:11-cv-06708-PJH |
| --- | --- | --- | --- |
| Billable Pages: | 2 | Cost: | 0.16 |

1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
3  Attorneys at Law
   222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)
6  Attorneys for Plaintiff

7

8                   **UNITED STATES DISTRICT COURT**

9                   **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN FRANCISCO DIVISION**

11  DAVID NORD,                              )
                                             )
12              Plaintiff,                    )
                                             )
13  vs.                                      )  COMPLAINT FOR ASBESTOS
                                             )  PERSONAL INJURY/ PRODUCTS
14  CBS CORPORATION (FKA VIACOM              )  LIABILITY; DEMAND FOR JURY TRIAL
    INC., FKA WESTINGHOUSE                   )
15  ELECTRIC CORPORATION), FOSTER            )
    WHEELER LLC (FKA FOSTER                  )
16  WHEELER CORPORATION),                    )
    METROPOLITAN LIFE INSURANCE              )
17  COMPANY, PARKER-HANNIFIN                 )
    CORPORATION, CROWN CORK &                )
18  SEAL COMPANY, INC., HOPEMAN              )
    BROTHERS, INC., GENERAL                  )
19  ELECTRIC COMPANY, INGERSOLL-             )
    RAND COMPANY,                            )
20                                           )
                Defendants.                  )
21  _____ )

22                                **I.**

23                              **PARTIES**

24       1.       Plaintiff in this action, DAVID NORD, has sustained asbestos-related lung

25  injuries as a result of his inhalation of asbestos fibers through his occupational exposure to

26  asbestos.

27       2.       Plaintiff sustained an asbestos-related lung disease by the inhalation of asbestos

28  fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

K:\Injured\116340\FED\PLD\cmp-fed-pi-Met.wpd                    1

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

E-filing

3.     The pathogenesis of Plaintiff's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

4.     All of Plaintiff's claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff, resulting in cumulative, progressive, incurable lung diseases.

5.     Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff.

7.     Plaintiff is informed and believes, and thereon alleges that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8.     <u>Jurisdiction</u>: Plaintiff DAVID NORD is a citizen of the State of California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |

| DEFENDANT | STATE |
|---|---|
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |
| METROPOLITAN LIFE INSURANCE COMPANY | New York |
| PARKER-HANNIFIN CORPORATION | Ohio |
| CROWN CORK & SEAL COMPANY, INC. | Pennsylvania |
| HOPEMAN BROTHERS, INC. | Virginia |
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| INGERSOLL-RAND COMPANY | New Jersey |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9.      <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF DAVID NORD COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), PARKER-HANNIFIN CORPORATION, CROWN CORK & SEAL COMPANY, INC., HOPEMAN BROTHERS, INC., GENERAL ELECTRIC COMPANY, INGERSOLL-RAND COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.     At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

///

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| PARKER-HANNIFIN CORPORATION | SACOMA-SIERRA, INC.<br>SACOMA MANUFACTURING COMPANY<br>E.I.S. AUTOMOTIVE CORPORATION<br>CONDREN CORPORATION, THE<br>PARKER SEAL COMPANY<br>DENISON HYDRAULICS INC.<br>GREER HYDRAULICS CORPORATION |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK COMPANY |
| HOPEMAN BROTHERS, INC. | HOPEMAN BROTHERS MARINE INTERIORS, LLC |
| INGERSOLL-RAND COMPANY | INGERSOLL-DRESSER PUMP<br>DRESSER-RAND CO.<br>PACIFIC PUMP WORKS<br>FLOWSERVE CORPORATION<br>INGERSOLL ROCK DRILL COMPANY<br>TERRY STEAM TURBINE CO.<br>WHITON MACHINE COMPANY<br>RAND DRILL COMPANY<br>RAND & WARING DRILL AND COMPRESSOR COMPANY<br>INGERSOLL-SERGEANT<br>SCHLAGE LOCK COMPANY<br>VON DUPRIN<br>THE TORRINGTON COMPANY<br>BLAW-KNOX COMPANY<br>ALDRICH PUMPS<br>HUSSMANN CORPORATION |

///

///

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

14.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering,

fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.     Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

1  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to

2  Plaintiff's general damage.

3       20.    As a direct and proximate result of the aforesaid conduct of the defendants, their

4  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur

5  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

6  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

7  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

8  thereof is ascertained.

9       21.    As a further direct and proximate result of the said conduct of the defendants,

10  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature

11  and extent of which are not yet known to Plaintiff; and leave is requested to amend this

12  complaint to conform to proof at the time of trial.

13       22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,

14  directors and managing agents participated in, authorized, expressly and impliedly ratified, and

15  had full knowledge of, or should have known of, each of the acts set forth herein.

16       23.    Defendants, their "alternate entities," and each of them, are liable for the

17  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,

18  and each defendant's officers, directors and managing agents participated in, authorized,

19  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

20  each of their ALTERNATE ENTITIES as set forth herein.

21       24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

22  and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious

23  disregard and indifference to the safety and health of "exposed persons."  Plaintiff, for the sake of

24  example and by way of punishing said defendants, seeks punitive damages according to proof.

25       WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and

26  each of them, as hereinafter set forth.

27  ///

28  ///

## SECOND CAUSE OF ACTION
### (Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF DAVID NORD COMPLAINS OF DEFENDANTS CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), PARKER-HANNIFIN CORPORATION, CROWN CORK & SEAL COMPANY, INC., HOPEMAN BROTHERS, INC., GENERAL ELECTRIC COMPANY, INGERSOLL-RAND COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26.     Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons."  Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

///

29.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33.     Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34.     Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

1    marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

2    aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff

3    cannot identify precisely which asbestos or asbestos-containing products caused the injuries

4    complained of herein.

5         35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their

6    representations, lack of warnings, and implied warranties of fitness of asbestos and their

7    asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has

8    been injured permanently as alleged herein.

9         36.    As a direct and proximate result of the actions and conduct outlined herein,

10   Plaintiff has suffered the injuries and damages previously alleged.

11        WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

12   ENTITIES, and each of them, as hereinafter set forth.

13                          THIRD CAUSE OF ACTION
                        (Premises Owner/Contractor Liability)
14

15        AS AND FOR A FURTHER AND THIRD SEPARATE AND DISTINCT CAUSE OF

16   ACTION, PLAINTIFF COMPLAINS OF DEFENDANT HOPEMAN BROTHERS, INC., AND

17   THEIR ALTERNATE ENTITIES (hereinafter PREMISES OWNER/CONTRACTOR

18   LIABILITY DEFENDANTS), AND ALLEGES AS FOLLOWS:

19        37.    Plaintiff incorporates herein by reference, as though fully set forth herein, each

20   paragraphs 17 through 23 of the First Cause of Action herein.

21        38.    At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR

22   LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor,

23   predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or

24   partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing

25   insulation, other building materials, products, and toxic substances to be constructed, installed,

26   maintained, used, replaced, repaired and/or removed on the respective premises owned, leased,

27   maintained, managed, and/or controlled by them.  Said entities shall hereinafter collectively be

28   called ALTERNATE ENTITIES.  Each of the herein-named defendants is liable for the tortious

1  conduct of each successor, successor-in-business, assign, predecessor-in-business, parent,

2  holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially

3  owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and

4  other toxic substances.  Said defendants, and each of them, are liable for the acts of each and

5  every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

6  plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have

7  acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of

8  them, have caused the destruction of plaintiff's remedy against each such alternate entity; each

9  such defendant has the ability to assume the risk-spreading role of each such

10 ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to

11 each such ALTERNATE ENTITY.

12     39.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

13 LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained,

14 managed, and/or controlled the premises where Plaintiff was present.  The following information

15 provided is preliminary, based on recall over events covering many years and further

16 investigation and discovery may produce more reliable information:

17 | CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
   |---|---|---|
18 | HOPEMAN BROTHERS, INC. | Various | Various |

20     Additionally, plaintiff might have been present at these or other PREMISES

21 OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other

22 occasions.

23     40.    Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

24 LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing

25 insulation, other building materials, products, and toxic substances to be constructed, installed,

26 maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid

27 respective premises, by their own workers and/or by various unqualified or unskilled contractors,

28 and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances

1  into the ambient air and thereby created a hazardous and unsafe condition to plaintiff and other

2  persons exposed to said asbestos fibers and toxic substances while present at said premises.

3      41.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

4  LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and

5  reasonable care should have known, that the foregoing conditions and activities created a

6  dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to

7  plaintiff and other workers or persons so exposed present on each of the aforesaid respective

8  premises.

9      42.    At all times relevant herein, plaintiff entered said premises and used or occupied

10  each of said respective premises as intended and for each of the respective PREMISES OWNER/

11  CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the

12  respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and

13  invitation.  In so doing, plaintiff was exposed to dangerous quantities of asbestos fibers and other

14  toxic substances released into the ambient air by the aforesaid hazardous conditions and activities

15  managed, maintained, initiated, and/or otherwise created, controlled, or caused by said

16  PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

17      43.    Plaintiff at all times was unaware of the hazardous condition or the risk of

18  personal injury created by the aforesaid presence and use of asbestos products and materials and

19  other toxic substances on said premises.

20      44.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

21  LIABILITY DEFENDANTS, and each of them, remained in control of the premises where

22  plaintiff was performing his work.

23      45.    Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS

24  retained control over safety and other related conditions and circumstances at plaintiff's job

25  site(s) and affirmatively contributed to and exercised, or failed to exercise, that control in a

26  manner that caused plaintiff's injuries from asbestos-containing products.

27      46.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

28  LIABILITY DEFENDANTS owed to plaintiff and others similarly situated a duty to exercise

1  ordinary care in the management of such premises so as to avoid exposing workers such as

2  plaintiff, to an unreasonable risk of harm and to avoid causing injury to said person.

3       47.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

4  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

5  reasonable care should have known, that the premises that were in their control would be used

6  without knowledge of, or inspection for, defects or dangerous conditions and that the persons

7  present and using said premises would not be aware of the aforesaid hazardous conditions to

8  which they were exposed on the premises.

9       48.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

10  LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,

11  survey, or control said premises, or to abate, or correct, or to warn plaintiff of, the existence of

12  the aforesaid dangerous conditions and hazards on or about said premises.

13       49.    Prior to and at the times and places aforesaid, said PREMISES

14  OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused

15  certain asbestos-containing insulation, other building materials, products, and toxic substances to

16  be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their

17  aforesaid respective premises, by their own workers and/or by employing various contractors,

18  and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances

19  into the ambient air and thereby injured plaintiff.

20       50.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

21  LIABILITY DEFENDANTS, and each of them:

22       a.  Should have recognized that the work of said contractors would create during

23  the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would

24  harm plaintiff and others unless special precautions were taken;

25       b.  Knew or had reason to know, that the contractors it had selected and hired to

26  install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled,

27  unlicenced, or otherwise unqualified to do so;

28  ///

1           c.  Failed to use reasonable care to discover whether the contractors it selected and

2  hired to install, remove, abate, or otherwise handle asbestos-containing materials were

3  competent, or qualified to do so.

4      51.   In part, plaintiff was exposed to dangerous asbestos fibers and other toxic

5  substances by reason of such contractors' failure to take the necessary precautions.

6      52.   The work of contractors on premises controlled by the PREMISES

7  OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe

8  work place by reason of the release of dangerous quantities of toxic substances, including but not

9  limited to asbestos.

10      53.   The unsafe premise or work place was created, in part, by the negligent conduct of

11  the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY

12  DEFENDANTS.  Said negligent conduct includes, but is not limited to:

13           a.    Failure to warn of asbestos and other toxic dusts;

14           b.    Failure to suppress the asbestos-containing or toxic dusts;

15           c.    Failure to remove the asbestos-containing and toxic dusts through

16  use of ventilation or appropriate means;

17           d.    Failure to provide adequate breathing protection, i.e., approved

18  respirators or masks;

19           e.    Failure to inspect and/or test the air;

20           f.    Failure to provide medical monitoring.

21           g.    Failure to select and hire a careful and competent contractor or

22  subcontractor.

23      54.   The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties

24  to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions

25  are non-delegable; said duties arise out of, inter alia, common law, <u>California Civil Code</u> § 1714,

26  and <u>California Labor Code</u> § 6400, <u>et</u> seq., or <u>California Health and Safety Code</u> § 40.200, <u>et</u>

27  <u>seq.</u>, and regulations promulgated thereunder.  Accordingly, the PREMISES

28  ///

1  OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said

2  duties whether by themselves or others.

3      55.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

4  LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other

5  government regulations promulgated by the United States Government, the State of California,

6  and others, including but not limited to the General Industry Safety Orders promulgated pursuant

7  to California Labor Code § 6400 and the California Administrative Code under the Division of

8  Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII,

9  Group 9 (Control of Hazardous Substances), Article 81, § 4150, §  4106, §  4107, and §  4108,

10  and Threshold Limit Values as documented for asbestos and other toxic substances under

11  Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code

12  § 40.200, et seq., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.)

13  to promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11, Rules 2 and

14  14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission

15  Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/

16  CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to

17  prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

18  PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the

19  required safeguards and precautions, or contractors employed by the PREMISES

20  OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards

21  and precautions.  Defendants' violations of said codes include, but are not limited to:

22          (a)     Failing to comply with statutes and allowing ambient levels of airborne

23  asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

24  statutes;

25          (b)     Failing to segregate work involving the release of asbestos or other toxic

26  dusts;

27          (c)     Failing to suppress dust using prescribed ventilation techniques;

28          (d)     Failing to suppress dust using prescribed "wet down" techniques;

1        (e)     Failing to warn or educate plaintiff or others regarding asbestos or other

2  toxic substances on the premises;

3        (f)     Failing to provide approved respiratory protection devices;

4        (g)     Failing to ensure "approved" respiratory protection devices were used

5  adequately;

6        (h)     Failing to provide for an on-going health screening program for those

7  exposed to asbestos on the premises;

8        (i)     Failing to provide adequate housekeeping and clean-up of the work place;

9        (j)     Failing to adequately warn of the hazards associated with asbestos as

10  required by these statutes;

11        (k)     Failing to adequately report renovation and disturbance of asbestos-

12  containing materials, including but not limited to <u>B.A.A.Q.M.D. Regulation</u> 11, Rules 2 and 14;

13        (l)     Failing to have an asbestos removal supervisor as required by regulation;

14        (m)     Failing to get approval for renovation as required by statutes; and

15        (n)     Failing to maintain records as required by statute.

16     56.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of

17  them, were the "statutory employer" of the plaintiff as defined by the <u>California Labor Code</u> and

18  California case law.

19     57.    Plaintiff, at all times was unaware of the hazardous condition or the risk of

20  personal injury created by defendants' violation of said regulations, ordinances, or statutes.

21     58.    At all times mentioned herein, plaintiff was a member of the class of persons

22  whose safety was intended to be protected by the regulations, standards, statutes, or ordinances

23  described in the foregoing paragraphs.

24     59.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

25  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

26  reasonable care should have known, that the premises that were in their control would be used

27  without knowledge of, or inspection for, defects or dangerous conditions, that the persons present

28  and using said premises would not be aware of the aforesaid hazardous conditions to which they

1   were exposed on the premises, and that such persons were unaware of the aforesaid violations of

2   codes, regulations, and statutes.

3        60.    As a proximate result of the foregoing, plaintiff developed asbestos-related illness,

4   which has caused great injury and disability as previously set forth, and plaintiff, has suffered

5   damages as herein alleged.

6        WHEREFORE, plaintiff, prays judgment against defendants, their ALTERNATE

7   ENTITIES, and each of them, as hereinafter set forth.

8
FOURTH CAUSE OF ACTION<br/>Aiding and Abetting Battery
9
[Against Metropolitan Life Insurance Company]

10        AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF

11   ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF

12   DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, THEIR ALTERNATE

13   ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

14        61.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

15   and every allegation of the First and Second Causes of Action as though fully set forth herein.

16        62.    This cause of action is for the aiding and abetting of battery by METROPOLITAN

17   LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director

18   Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

19        63.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

20   mentioned defendant MET LIFE was and is a corporation organized and existing under and by

21   virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction,

22   and that this defendant was and is authorized to do and/or was and is doing business in the State

23   of California, and regularly conducted or conducts business in the State of California.  At times

24   relevant to this cause of action, MET LIFE was an insurer of J-M.

25        64.    Plaintiff, was exposed to asbestos-containing dust created by the use of the

26   asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

27   asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease

28   and injuries.

19

65.     Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-related disease in Canadian mines and mills, including those of J-M.  Those studies revealed that miners and mill workers were contracting asbestosis at relatively low levels of dust.  McGill University, which conducted the studies, sought permission from MET LIFE to publish the results but they were never published.  MET LIFE prepared its own report of these studies.

66.     Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S. plants manufacturing asbestos-containing products, including a J-M plant.  Those studies showed that workers in substantial numbers were contracting asbestosis, at levels less than what became the Threshold Limit Value ('TLV') of 5mppcf.  The MET LIFE report was never published or disseminated except to plant owners, including J-M.

67.     In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville, New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant studies. They were never published.

68.     In 1934, J-M and others whose plants MET LIFE had studied agreed with MET LIFE that it should issue a report of its studies.

69.     MET LIFE submitted a draft of its report to J-M.  J-M requested, for legal and business reasons, that certain critical parts of the draft be changed.  MET LIFE's official in charge was Lanza.  MET LIFE through Lanza did make changes that J-M requested, including:

    (a)     Deletion of MET LIFE's conclusion that the permissible dust level for asbestos should be less than that for silica;

    (b)     Addition of the phrase that asbestosis clinically appeared to be milder than silicosis.

The report, thus altered, was published in 1935.  It was misleading, and intentionally so, because it conveyed the incorrect propositions that asbestosis was a less serious disease process than silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases than was the case for silica dust.

70.     MET LIFE had a close relationship with J-M.  It invested money in J-M.  It provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply industrial

1   hygiene services to J-M, including dust counts, training employees to monitor dust levels,

2   examining employees, and recommending protective equipment.  MET LIFE and Lanza were

3   viewed as experts on industrial dusts.

4         71.   In 1933, MET LIFE through Lanza issued the following advice to J-M:

5         (a)   Disagreeing with the recommendation of a J-M plant physician, MET LIFE

6             advised against warning workers of the fact that asbestos dust is hazardous to their

7             health, basing its advice in view of the extraordinary legal situation;

8         (b)   When the plant physician judged the best disposition of an employee with

9             asbestosis was to remove him from the dust, MET LIFE advised instead that

10            disposition should depend on his age, nature of work and other factors and to

11            leave him alone if he is old and showing no disability, for, MET LIFE stated,

12            economic and production factors must be balanced against medical factors.

13        72.   J-M followed the MET LIFE advices and did not warn its workers, including

14  plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying

15  workers of their disease.

16        73.   In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation

17  ("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve as

18  a defense in lawsuits and workers' compensation claims.

19        74.   MET LIFE funded partially another study that tentatively recommended in 1938 a

20  TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data from

21  its own, unpublished reports that showed that level was too high for asbestos dust.  MET LIFE

22  nonetheless promoted that TLV as proper.

23        75.   In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the

24  AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.

25  That report showed that workers exposed to less than the recommended maximum levels of dust

26  were developing disease.  MET LIFE was a member of the IHF and Lanza was on its medical

27  committee.  The Hemeon report, which was supplied to J-M and other owners, never was

28  published.

76.     In 1936, J-M and other asbestos companies agreed with a leading medical research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the others retained control over publication of the results.  In 1943 Saranac's Dr. Leroy Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long fiber asbestos contracted cancer.

77.     Dr. Gardner died in 1946.  J-M and other companies wanted parts of the Saranac results published and enlisted the assistance of MET LIFE's Lanza.  J-M and other companies decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as Saranac's critique of existing dust standards.  Lanza directed Saranac to delete the offending materials.  Saranac did so, and the altered report was published in 1951 by Saranac's Dr. Vorwald, in the *AMA Archives of Industrial Hygiene*.

78.     Lanza left MET LIFE at the end of 1948, and took a position at New York University, funded by MET LIFE.  He continued to misrepresent that asbestos does not cause cancer into the 1950s.

79.     The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE official was on its medical committee, through Drs. Braun and Truan conducted a study of Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken, and the report published in 1958 contained the false conclusion that asbestos exposure alone did not increase the risk of lung cancer.

80.     The false and misleading reports that a link between asbestos exposure and cancer was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low or zero.

81.     J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the hazard. J-M committed battery on workers in its plants, including plaintiff, by that conduct.

///

82.     MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff, through MET LIFE's conduct described above, including by:

(a)     Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff;

(b)     Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe TLV which specified maximum levels of silica dust, and promoting a false and unsafe TLV which specified maximum levels of dust for workers, including plaintiff, which MET LIFE knew was wrong through its own studies;

(c)     Advising J-M to keep certain workers continuing to work at dusty areas in the plant even after J-M was aware that their lungs showed asbestos-induced changes, lest other workers including plaintiff be alerted to the dangers of working in the dust.

WHEREFORE, plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

## IV.

## PRAYER

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

(a)     For Plaintiff's general damages according to proof;

(b)     For Plaintiff's loss of income, wages and earning potential according to proof;

(c)     For Plaintiff's medical and related expenses according to proof;

(d)     For Plaintiff's cost of suit herein;

(e)     For exemplary or punitive damages according to proof;

(f)     For damages for fraud according to proof; and

///

1      (g)    For such other and further relief as the Court may deem just and proper, including

2      costs and prejudgment interest.

3

4  Dated: _____        BRAYTON❖PURCELL LLP

5

6                  By: _____

7                      David R. Donadio
                    Attorneys for Plaintiff

8

9

10                      JURY DEMAND

11  Plaintiff hereby demands trial by jury of all issues of this cause.

12

13  Dated: _____        BRAYTON❖PURCELL LLP

14

15                  By: _____

16                      David R. Donadio
                    Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\116340\FED\PLD\cmp-fed-pi-Met.wpd           24

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL

EXHIBIT A

<u>Plaintiff</u>:  DAVID NORD

<u>Plaintiff's injuries</u>:  Plaintiff was diagnosed with lung cancer on or about May 2011.

<u>Retirement Status</u>:

Plaintiff retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| <u>Employer</u> | Location of <u>Exposure</u> | <u>Job Title</u> | Exposure <u>Dates</u> |
|---|---|---|---|
| US Navy | Long Beach Naval Shipyard, Long Beach, CA | Trainee | 1/1960-3/1960 |
| | Naval Training Center, Great Lakes, IL | Machinists Mate (Trainee) | 4/1960-6/1960 |
| | <u>EVERETT F. LARSON</u> (DDR-830) at Long Beach Naval Shipyard, Long Beach, CA and on Pacific Cruise | Machinists Mate | 1960-1963 |
| | <u>BLACK</u> (DD-666) at Long Beach Naval Shipyard, Long Beach, CA and on Pacific Cruise | Machinists Mate | late 1963-1/1964 (approx. 4 months) |
| Southern Pacific Pipeline Company | Southern Pacific Pipeline, Concord, CA | Equipment Operator | 3/1965 -1974 |
| | | Assistant Supervisor | 1974-3/1981 |
| | Southern Pacific Pipeline, Richmond, CA | Supervisor | 3/1981-1998 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY; DEMAND FOR JURY TRIAL