ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:12-cv-00224-EMC

Jefferis et al v. General Electric Company et al          Date Filed: 01/13/2012
Assigned to: Hon. Edward M. Chen                          Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Asbestos Litigation             Nature of Suit: 368 P.I. : Asbestos
                                                          Jurisdiction: Diversity

**Plaintiff**

**Ute Jefferis**                       represented by   **David R. Donadio**
*as Wrongful Death Heir, and as*                        Brayton Purcell LLP
*Successor-in-Interest to Dennis*                       222 Rush Landing Road
*Shervey, Deceased*                                     PO Box 6169
                                                        Novato, CA 94948-6169
                                                        415-898-1555
                                                        Fax: 415-898-1247
                                                        Email: DDonadio@braytonlaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Alan R. Brayton**
                                                        Brayton Purcell LLP
                                                        222 Rush Landing Road
                                                        PO Box 6169
                                                        Novato, CA 94948-6169
                                                        415-898-1555
                                                        Fax: 415-898-1247
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Kenneth Shervey**                    represented by   **David R. Donadio**
*as Legal Heir of Dennis Shervey,*                      (See above for address)
*Deceased*                                              *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Alan R. Brayton**
                                                        (See above for address)
                                                        *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shilo Shervey**                      represented by   **David R. Donadio**
*as Legal Heir of Dennis Shervey,*                      (See above for address)
*Deceased*                                              *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

Alan R. Brayton
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sondra Shervey**                    represented by   **David R. Donadio**
*as Legal Heir of Dennis Shervey,*                     (See above for address)
*Deceased*                                             *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Alan R. Brayton**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Metropolitan Life Insurance
Company**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 01/13/2012 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 4/27/2012. Case Management Conference set for 5/4/2012 09:00 AM in Courtroom 5, 17th Floor, San Francisco. (Attachments: # 1 Standing Order)(slh, COURT STAFF) (Filed on 1/13/2012) (Entered: 01/17/2012) |
| 01/13/2012 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Ute Jefferis, Kenneth Shervey, Shilo Shervey, Sondra Shervey. (slh, COURT STAFF) (Filed on 1/13/2012) (Entered: 01/17/2012) |
| 01/13/2012 | 3 | Certificate of Interested Entities or Persons by Ute Jefferis, Kenneth Shervey, Shilo Shervey, Sondra Shervey. (slh, COURT STAFF) (Filed on 1/13/2012) (Entered: 01/17/2012) |
| 01/13/2012 | 2 | NOTICE of Tag-Along Action by Ute Jefferis, Kenneth Shervey, Shilo Shervey, Sondra Shervey. (slh, COURT STAFF) (Filed on 1/13/2012) (Entered: 01/17/2012) |
| 01/13/2012 | 1 | COMPLAINT; summons issued against CBS Corporation, General Electric |

| | Company, Metropolitan Life Insurance Company (Filing fee $ 350, receipt number 34611069283). Filed by Kenneth Shervey, Ute Jefferis, Shilo Shervey, Sondra Shervey. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(slh, COURT STAFF) (Filed on 1/13/2012) (Entered: 01/17/2012) |

---

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/18/2012 08:57:53 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-00224-EMC |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

E-filing

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

No. **12   0224**

| | |
|---|---|
| UTE JEFFERIS, as Wrongful Death Heir, and as Successor-in-Interest to DENNIS SHERVEY, Deceased, and KENNETH SHERVEY, SHILO SHERVEY, SONDRA SHERVEY, as Legal Heirs of DENNIS SHERVEY, Deceased, | COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL |
| Plaintiffs, | |
| vs. | |
| GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), METROPOLITAN LIFE INSURANCE COMPANY, | |
| Defendants. | |

## I.

## PARTIES

1.     Plaintiffs in this action are the above-captioned successor-in-interest to, or the personal representative of the estate of Decedent; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as "Plaintiffs."

2.     The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos,

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1    hereinafter "Decedent" is, with the date of death: DENNIS SHERVEY died February 13, 2011.

2    UTE JEFFERIS is the spouse of DENNIS SHERVEY and is hereinafter referred to as "surviving

3    spouse."

4         3.    Decedent sustained an asbestos-related lung disease and death by precisely the

5    following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

6    containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related

7    diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by

8    reference herein.

9         4.    All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated

10   exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

11   and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period

12   of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent,

13   resulting in cumulative, progressive, incurable lung diseases.

14        5.    Each Plaintiff claims damages for an asbestos-related disease arising from an

15   identical series of occurrences not dependent on Decedent's worksite but on the fact that

16   asbestos-containing products, when handled in the manner in which they were intended, released

17   harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The

18   allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature

19   of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are

20   all identical.

21        6.    Plaintiffs are informed and believe, and thereon allege, that at all times herein

22   mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

23   proprietorships and/or other business entities organized and existing under and by virtue of the

24   laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

25   said defendants, and each of them, were and are authorized to do and are doing business in the

26   State of California, and that said defendants have regularly conducted business in the State of

27   California.

28   ///

## II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7.      Jurisdiction:  Plaintiff UTE JEFFERIS is a citizen of the State of Arkansas.
Plaintiff(s) KENNETH SHERVEY, SHILO SHERVEY, SONDRA SHERVEY are citizens of
the following states, respectively: Oregon; Arkansas; Arkansas.

Defendants are each corporations incorporated under the laws of and having its principal
places of business in the following States:

| DEFENDANT | STATE |
|-----------|-------|
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| METROPOLITAN LIFE INSURANCE COMPANY | New York/New York |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action
between citizens of different states in which the matter in controversy exceeds, exclusive of costs
and interest, seventy-five thousand dollars.

8.      Venue / Intradistrict Assignment.  Venue is proper in the Northern District of
California and assignment to the San Francisco Division of said district is proper as a substantial
part of the events or omissions which give rise to the claims asserted by Plaintiffs herein
occurred within the County of San Francisco, California, and Defendants are subject to personal
jurisdiction in this district at the time the action is commenced.

///

///

///

### III.

### CAUSES OF ACTION

#### FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF UTE JEFFERIS AS SUCCESSOR-IN-INTEREST TO THE DECEDENT DENNIS SHERVEY COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.      At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

1   products containing asbestos.  The following defendants, and each of them, are liable for the acts

2   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

3   destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each

4   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

5   ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each

6   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

7   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

8   originally attached to each such ALTERNATE ENTITY:

9   <u>DEFENDANT</u>                                  <u>ALTERNATE ENTITY</u>

10  GENERAL ELECTRIC COMPANY                 MATTERN X-RAY
                                                 HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED
11                                               TRUMBULL ELECTRIC MANUFACTURING COMPANY
                                                 G E INDUSTRIAL SYSTEMS
12                                               CURTIS TURBINES
                                                 PARSONS TURBINES
13                                               GENERAL ELECTRIC JET ENGINES

14  CBS CORPORATION (F/K/A VIACOM           VIACOM, INC.
        INC., F/K/A WESTINGHOUSE             CBS CORPORATION
15      ELECTRIC CORPORATION)                WESTINGHOUSE ELECTRIC CORPORATION
                                              WESTINGHOUSE ELECTRIC AND
16                                             MANUFACTURING COMPANY
                                             B.F. STURTEVANT
17                                           KPIX TELEVISION STATION
                                             PARAMOUNT COMMUNICATIONS, INC
18                                           GULF & WESTERN INDUSTRIES, INC.
                                             NORTH & JUDD MANUFACTURING COMPANY

19

20          10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

21  each of them, were and are engaged in the business of researching, manufacturing, fabricating,

22  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

23  supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

24  promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

25  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

26  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

27  asbestos and other products containing asbestos.

28  ///

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

///

14.     Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

16.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17.     Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.     Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25.     The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendants.

1   WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

2   each of them, as hereinafter set forth.

3                          SECOND CAUSE OF ACTION
                           (Products Liability - Survival)
4

5   PLAINTIFF UTE JEFFERIS AS SUCCESSOR-IN-INTEREST TO THE DECEDENT

6   DENNIS SHERVEY COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,

7   CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC

8   CORPORATION), THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A

9   SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS

10  LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

11         26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

12  paragraph of the First Cause of Action  herein.

13         27.    Defendants, their "alternate entities," and each of them, knew and intended that

14  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

15  or user without inspection for defects therein or in any of their component parts and without

16  knowledge of the hazards involved in such use.

17         28.    Said asbestos and asbestos-containing products were defective and unsafe for their

18  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

19  and/or death.  The defect existed in the said products at the time they left the possession of

20  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

21  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

22  persons," including Decedent herein, while being used in a reasonably foreseeable manner,

23  thereby rendering the same defective, unsafe, and dangerous for use.

24         29.    "Exposed persons" did not know of the substantial danger of using said products.

25  Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

26  ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

27  which Decedent and others similarly situated were exposed.

28  ///

30.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

31.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

32.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn

1    "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

2    asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

3    "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

4    asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

5    intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

6    and suppressed said knowledge from "exposed persons" and members of the general public, thus

7    impliedly representing to "exposed persons" and members of the general public that asbestos and

8    asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

9    ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

10   representations with the knowledge of the falsity of said implied representations.

11         33.   The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

12   and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

13   ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

14   manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

15   sale, inspection, installation, contracting for installation, repair, marketing, warranting,

16   rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

17   directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

18   products.  In pursuance of said financial motivation, said defendants, their ALTERNATE

19   ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

20   were consciously willing and intended to permit asbestos and asbestos-containing products to

21   cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

22   including Decedent.

23         34.   Plaintiffs allege that the aforementioned defendants, their ALTERNATE

24   ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

25   products, to be safe for their intended use, but that their asbestos and asbestos-containing

26   products, created an unreasonable risk of bodily harm to exposed persons.

27         35.   Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

28   their representations, lack of warnings, and implied warranties of fitness of asbestos and their

1  asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

2  suffered permanent injury and death as alleged herein.

3       36.     As a direct and proximate result of the actions and conduct outlined herein,

4  Decedent have suffered the injuries and damages herein alleged.

5       WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and

6  each of them, as hereinafter set forth.

7                          THIRD CAUSE OF ACTION
                          (Negligence - Wrongful Death)
8

9       PLAINTIFF UTE JEFFERIS, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-

10  IN-INTEREST TO DENNIS SHERVEY DECEASED, AND PLAINTIFF(S) KENNETH

11  SHERVEY, SHILO SHERVEY, SONDRA SHERVEY AS LEGAL HEIR(S) OF DECEDENT,

12  COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION

13  (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR

14  "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE,

15  FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL

16  DEATH), COMPLAIN AS FOLLOWS:

17       37.     Plaintiffs incorporate by reference each paragraph contained within the First

18  Cause of Action as though fully set forth herein.

19       38.     The heirs at law of the Decedent and their relationship to the Decedent is set forth

20  above.

21       39.     The individuals set forth as heirs constitute all of the surviving heirs of the

22  Decedent.

23       40.     As a direct and proximate result of the conduct of the defendants, their

24  ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-

25  containing products caused Decedent to develop diseases from which condition Decedent died.

26  Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of

27  filing the complaint.

28  ///

41.     At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

42.     As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43.     As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

FOURTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF UTE JEFFERIS, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO DENNIS SHERVEY DECEASED, AND PLAINTIFFS KENNETH SHERVEY, SHILO SHERVEY, SONDRA SHERVEY AS LEGAL HEIRS OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44.     Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45.     As a direct and proximate result of the conduct of defendants, and each of them, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

## FIFTH CAUSE OF ACTION
Aiding and Abetting Battery
[Against Metropolitan Life Insurance Company]

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFFS COMPLAIN OF DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY, THEIR ALTERNATE ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

46.    Plaintiffs incorporate herein by reference, as though fully set forth hereat, each and every allegation of the First and Second Causes of Action as though fully set forth herein.

47.    This cause of action is for the aiding and abetting of battery by METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation ("J-M").

48.    Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned defendant MET LIFE was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business in the State of California, and regularly conducted or conducts business in the State of California.  At times relevant to this cause of action, MET LIFE was an insurer of J-M.

49.    Decedent was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the asbestos or asbestos-related products supplied by J-M caused Decedent's asbestos-related disease and injuries.

50.    Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-related disease in Canadian mines and mills, including those of J-M.  Those studies revealed that miners and mill workers were contracting asbestosis at relatively low levels of dust.  McGill University, which conducted the studies, sought permission from MET LIFE to publish the results but they were never published.  MET LIFE prepared its own report of these studies.

51.    Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S. plants manufacturing asbestos-containing products, including a J-M plant.  Those studies showed

that workers in substantial numbers were contracting asbestosis, at levels less than what became the Threshold Limit Value ('TLV') of 5mppcf.  The MET LIFE report was never published or disseminated except to plant owners, including J-M.

52.     In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville, New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant studies. They were never published.

53.     In 1934, J-M and others whose plants MET LIFE had studied agreed with MET LIFE that it should issue a report of its studies.

54.     MET LIFE submitted a draft of its report to J-M.  J-M requested, for legal and business reasons, that certain critical parts of the draft be changed.  MET LIFE's official in charge was Lanza.  MET LIFE through Lanza did make changes that J-M requested, including:

(a)     Deletion of MET LIFE's conclusion that the permissible dust level for asbestos should be less than that for silica;

(b)     Addition of the phrase that asbestosis clinically appeared to be milder than silicosis.

The report, thus altered, was published in 1935.  It was misleading, and intentionally so, because it conveyed the incorrect propositions that asbestosis was a less serious disease process than silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases than was the case for silica dust.

55.     MET LIFE had a close relationship with J-M.  It invested money in J-M.  It provided group health and life insurance to J-M.  MET LIFE IN 1934 agreed to supply industrial hygiene services to J-M, including dust counts, training employees to monitor dust levels, examining employees, and recommending protective equipment.  MET LIFE and Lanza were viewed as experts on industrial dusts.

56.     In 1933, MET LIFE through Lanza issued the following advice to J-M:

(a)     Disagreeing with the recommendation of a J-M plant physician, MET LIFE advised against warning workers of the fact that asbestos dust is hazardous to their health, basing its advice in view of the extraordinary legal situation;

15

(b)     When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

57.     J-M followed the MET LIFE advices and did not warn its workers, including Decedent, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

58.     In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF").  One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

59.     MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust.  MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust.  MET LIFE nonetheless promoted that TLV as proper.

60.     In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant.  That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease.  MET LIFE was a member of the IHF and Lanza was on its medical committee.  The Hemeon report, which was supplied to J-M and other owners, never was published.

61.     In 1936, J-M and other asbestos companies agreed with a leading medical research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the others retained control over publication of the results.  In 1943 Saranac's Dr. Leroy Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long fiber asbestos contracted cancer.

62.     Dr. Gardner died in 1946.  J-M and other companies wanted parts of the Saranac results published and enlisted the assistance of MET LIFE's Lanza.  J-M and other companies

decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as Saranac's critique of existing dust standards.  Lanza directed Saranac to delete the offending materials.  Saranac did so, and the altered report was published in 1951 by Saranac's Dr. Vorwald, in the *AMA Archives of Industrial Hygiene*.

63.   Lanza left MET LIFE at the end of 1948, and took a position at New York University, funded by MET LIFE.  He continued to misrepresent that asbestos does not cause cancer into the 1950s.

64.   The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE official was on its medical committee, through Drs. Braun and Truan conducted a study of Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken, and the report published in 1958 contained the false conclusion that asbestos exposure alone did not increase the risk of lung cancer.

65.   The false and misleading reports that a link between asbestos exposure and cancer was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low or zero.

66.   J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the hazard.  J-M committed battery on workers in its plants, including Decedent, by that conduct.

67.   MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including Decedent, through MET LIFE's conduct described above, including by:

(a)   Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including Decedent;

(b)   Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe

17

1    TLV which specified maximum levels of silica dust, and promoting a false and

2    unsafe TLV which specified maximum levels of dust for workers, including

3    Decedent, which MET LIFE knew was wrong through its own studies;

4    (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the

5    plant even after J-M was aware that their lungs showed asbestos-induced changes,

6    lest other workers including Decedent be alerted to the dangers of working in the

7    dust.

8    WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE

9    ENTITIES, and each of them, as hereinafter set forth.

10                                    **IV.**

11                          **DAMAGES AND PRAYER**

12    WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

13    each of them in an amount to be proved at trial in each individual case, as follows:

14    (a)    For Plaintiffs' general damages according to proof;

15    (b)    For Plaintiffs' loss of income, wages and earning potential according to proof;

16    (c)    For Plaintiffs' medical and related expenses according to proof;

17    (d)    For Plaintiffs' cost of suit herein;

18    (e)    For exemplary or punitive damages according to proof;

19    (f)    For damages for fraud according to proof; and

20    (g)    For such other and further relief as the Court may deem just and proper, including

21    costs and prejudgment interest.

22    Dated:  4/13/12                          BRAYTON❖PURCELL LLP

23

24                                             By: _____
                                                   David R. Donadio
25                                                 Attorneys for Plaintiffs

26

27

28

1

## JURY DEMAND

2      Plaintiffs hereby demand trial by jury of all issues of this cause.

3  Dated: ____1/13/12____           BRAYTON❖PURCELL LLP

4

5                              By: _____

6                                David R. Donadio
                                Attorneys for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\Injured\113798\FED\PLD\cmp-fed-wd-Met.wpd             19

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

<u>Decedent</u>:  DENNIS SHERVEY, Deceased.

<u>Decedent's injuries</u>:  Decedent was diagnosed with lung cancer on or about August 2010, and with asbestos-related pleural disease on or about August 2010.

Decedent died on February 13, 2011.

<u>Retirement Status</u>:  Decedent stopped working on September 2009, due to his lung cancer.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | <u>ELDORADO</u> (LCC-11) | Machinist Mate | 10/16/1972- 10/17/1972 |
| | <u>MIDWAY</u> (CVA-41) | | 11/24/1972 - 3/8/1974 |
| | Hunters Point Naval Shipyard San Francisco, CA; | | Several months |
| | Naval Repair Facility, Yokosuka, Japan; Naval Repair Facility, Subic Bay, Philippines; and U.S. Navy, Vietnam | | (approximately 6 months) |
| US Navy | <u>DIXIE</u> (AD-14) | Machinist Mate | 11/26/1974- 7/23/1975 |
| Robert E. Gillespie & Robert Randall Co. Ptr. R-G No. 3 6223 SE 31st Portland, OR 97202 | Various new tract homes Portland, OR area | Laborer | 1977 |
| John L. Ferguson Jr. Ferguson Construction 56545 E. Fernwood Circle Sandy, OR 97055 | Various new tract homes Portland, OR area | Laborer | 1977 |

*///*

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Cal Beatty Plumbing Portland, OR | Various gasoline stations and sewers Portland, OR area | Laborer | 1977 - 1979 (on and off approx. 8 months - 1 year) |
| Kalberer Hotel Supply, Co. Portland, OR | Various unknown restaurants, Portland, OR | Cabinet Maker | 1984 - 1986 |
| Form and Structure Inc. 10708 NE 2nd Ave. Portland, OR 97211 | Cabinet Shop Portland, OR | Cabinet Maker | 1986 |
| West Coast Corporation 332 NE 9th Gresham, OR 97030 | Cabinet Shop Portland, OR | Cabinet Maker | 1986 |

NON-OCCUPATIONAL EXPOSURE:

AUTOMOBILE REPAIR:

Decedent performed brake jobs and clutch jobs on over twenty different personal vehicles from 1974 - 1986.  When performing brake jobs, decedent used the same routine on each occasion.  Decedent removed old drum brakes, cleaned the brake assemblies with a brush, a rag and his own breath and installed new brakes. Decedent purchased all asbestos-containing replacement parts, including BORG WARNER (BORG-WARNER CORPORATION BY ITS SUCCESSOR IN INTEREST, BORGWARNER MORSE TEC INC.) clutches and BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes from NAPA AUTO PARTS (GENUINE PARTS COMPANY). Decedent was assisted in this automotive repair work by his brother Monte Filippini, Portland, Oregon, brother-in-law Mike Brundgardt, Washington state, and Tim Hambley, Portland, Oregon  Plaintiff currently contends decedent was exposed to asbestos during these automobile repairs.