ADRMOP

# U.S. District Court
# California Northern District (Oakland)
# CIVIL DOCKET FOR CASE #: 4:12-cv-00251-CW

Dunkin et al v. General Electric Company et al
Assigned to: Hon. Claudia Wilken
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 01/17/2012
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Scott Dunkin**
*as wrongful death heir, and as successor-in-interest to Morrie Dunkin*

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Steven Dunkin**
*as legal heirs of Morrie Dunkin, deceased*

represented by **Alan R. Brayton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Puget Sound Commerce Center Inc**
*formerly known as*
Todd Shipyards Corporation

**Defendant**

**Bath Iron Works Corporation**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding Inc

| Date Filed | # | Docket Text |
|---|---|---|
| 01/17/2012 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 4/25/2012. Case Management Conference set for 5/2/2012 02:00 PM. (Attachments: # 1 Standing Order)(cp, COURT STAFF) (Filed on 1/17/2012) (Entered: 01/20/2012) |
| 01/17/2012 | 5 | Summons Issued as to All Defendants. (cp, COURT STAFF) (Filed on 1/17/2012) (Entered: 01/20/2012) |
| 01/17/2012 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Scott Dunkin, Steven Dunkin. (cp, COURT STAFF) (Filed on 1/17/2012) (cp, COURT STAFF). (Entered: 01/20/2012) |
| 01/17/2012 | 3 | Certificate of Interested Entities by Scott Dunkin, Steven Dunkin (cp, COURT STAFF) (Filed on 1/17/2012) (cp, COURT STAFF). (Entered: 01/20/2012) |
| 01/17/2012 | 2 | NOTICE of Tag-Along Action by Scott Dunkin, Steven Dunkin (cp, COURT STAFF) (Filed on 1/17/2012) (cp, COURT STAFF). (Entered: 01/20/2012) |
| 01/17/2012 | 1 | COMPLAINT; Jury Demand against Bath Iron Works Corporation, General Electric Company, Huntington Ingalls Incorporated, Puget Sound Commerce Center Inc ( Filing fee $ 350, receipt number 34611069338.). Filed bySteven Dunkin, Scott Dunkin. (cp, COURT STAFF) (Filed on 1/17/2012) (Additional attachment(s) added on 1/20/2012: # 1 Civil Cover Sheet) (cp, COURT STAFF). (Entered: 01/20/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 01/23/2012 11:45:20 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:12-cv-00251-CW |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs

ORIGINAL FILED
2012 JAN 17 P 2:34
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

CW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SCOTT DUNKIN, as Wrongful Death Heir, and as Successor-in-Interest to MORRIE DUNKIN, Deceased, and STEVEN DUNKIN, as Legal Heirs of MORRIE DUNKIN, Deceased,

Plaintiffs,

vs.

GENERAL ELECTRIC COMPANY, PUGET SOUND COMMERCE CENTER, INC. ( FKA TODD SHIPYARDS CORPORATION), BATH IRON WORKS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.),

Defendants.

No. CV 12 0251

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

I.

PARTIES

1. Plaintiffs in this action are the above-captioned successor-in-interest to, or the personal representative of the estate of Decedent; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as "Plaintiffs."

///

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

State of California, and that said defendants have regularly conducted business in the State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

7. Jurisdiction: Plaintiffs SCOTT DUNKIN and STEVEN DUNKIN are both citizens of the State of California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | New York, Connecticut |
| PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION) | Delaware, Washington |
| BATH IRON WORKS CORPORATION | Maine |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8. Venue / Intradistrict Assignment. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

FIRST CAUSE OF ACTION
(Negligence - Survival)

PLAINTIFF SCOTT DUNKIN AS SUCCESSOR-IN-INTEREST TO THE DECEDENT MORRIE DUNKIN COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,

PUGET SOUND COMMERCE CENTER, INC. ( FKA TODD SHIPYARDS CORPORATION), BATH IRON WORKS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES |
| PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION) | VIGOR SHIPYARDS, INC. ( FKA TODD PACIFIC SHIPYARDS CORPORATION)<br>SEATTLE-TACOMA SHIPBUILDING CORP.<br>TODD SEATTLE DRY DOCKS, INC. |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC.<br>AVONDALE SHIPYARDS, INC.<br>CONTINENTAL MARITIME INDUSTRIES, INC.<br>EASTERN IDAHO CONSTRUCTION COMPANY<br>INGALLS SHIPBUILDING, INC.<br>NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY<br>NORTH CAROLINA SHIPBUILDING<br>NORTHROP GRUMMAN SHIP SYSTEMS, INC.<br>SERVICE ENGINEERING INDUSTRIES, INC. |

10. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Decedent herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by "exposed persons."

12. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

13. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Decedent herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14. Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Decedent’s exposure to asbestos and asbestos-containing products is on current information as set forth at

///

various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference herein.

15. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

16. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

17. Decedent suffered from a condition related to exposure to asbestos and asbestos-containing products. Decedent was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

18. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons, nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

19. As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and

related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22. As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23. Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24. Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

25. The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in conscious or reckless disregard and indifference to the safety, health, and rights of "exposed persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive damages against said defendants.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

SECOND CAUSE OF ACTION
(Products Liability - Survival)

PLAINTIFF SCOTT DUNKIN AS SUCCESSOR-IN-INTEREST TO THE DECEDENT MORRIE DUNKIN COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), BATH IRON WORKS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS FOLLOWS:

26. Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First Cause of Action herein.

27. Defendants, their "alternate entities," and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

28. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their ALTERNATE ENTITIES, and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed persons," including Decedent herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

29. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Decedent and others similarly situated were exposed.

///

30. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

31. On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

32. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn

"exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Decedent.

34.     Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use, but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

35.     Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their

asbestos-containing products. As a direct, foreseeable, and proximate result thereof, Decedent suffered permanent injury and death as alleged herein.

36. As a direct and proximate result of the actions and conduct outlined herein, Decedent have suffered the injuries and damages herein alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

THIRD CAUSE OF ACTION
(Negligence - Wrongful Death)

PLAINTIFF SCOTT DUNKIN, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO MORRIE DUNKIN DECEASED, AND PLAINTIFF(S) STEVEN DUNKIN AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), BATH IRON WORKS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

37. Plaintiffs incorporate by reference each paragraph contained within the First Cause of Action as though fully set forth herein.

38. The heirs at law of the Decedent and their relationship to the Decedent is set forth above.

39. The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40. As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41. At all times prior to his death, Decedent was a parent to Plaintiff children.

42. As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43. As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF SCOTT DUNKIN, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO MORRIE DUNKIN DECEASED, AND PLAINTIFF(S) STEVEN DUNKIN AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION), BATH IRON WORKS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

44. Plaintiffs incorporate herein by reference, as though fully set forth herein, each paragraph of the First, Second and Third Causes of Action herein.

45. As a direct and proximate result of the conduct of defendants, and each of them, Decedent's heirs have sustained the injuries and damages previously alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

///

## IV.

## DAMAGES AND PRAYER

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them in an amount to be proved at trial in each individual case, as follows:

(a) For Plaintiffs' general damages according to proof;

(b) For Plaintiffs' loss of income, wages and earning potential according to proof;

(c) For Plaintiffs' medical and related expenses according to proof;

(d) For Plaintiffs' cost of suit herein;

(e) For exemplary or punitive damages according to proof;

(f) For damages for fraud according to proof; and

(g) For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated: 1/17/12

BRAYTON❖PURCELL LLP

By: [signature]
David R. Donadio
Attorneys for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand trial by jury of all issues of this cause.

Dated: 1/17/12

BRAYTON❖PURCELL LLP

By: [signature]
David R. Donadio
Attorneys for Plaintiffs

# EXHIBIT A

EXHIBIT A

Decedent: MORRIE DUNKIN, Deceased.

Decedent's injuries: Decedent was diagnosed with pleural disease on or about April 6, 2001, and asbestosis on or about April 6, 2001.

Decedent died on January 18, 2011.

Retirement Status: Decedent retired from his last place of employment at regular retirement age. He had therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure §340.2.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Crown Zellerbach Port Angeles, WA | Crown Zellerbach Port Angeles, WA | Stoker | 1964-1965 |
| U.S. Navy | Naval Training Center San Diego, CA | Cadet | January-March 1966 |
| U.S. Navy | Naval Training Center Great Lakes, IL; | Cadet | April-June 1966 |
| U.S. Navy | USS HOEL (DDG-13) | Boiler Operator | July 1966 - May 1970 |
| U.S. Navy | USS HULL (DD 945) | Boiler Operator | June 1970 - November 1971 |
| U.S. Navy | Naval Training Center Great Lakes, IL; | Instructor | March 1972- November 1975 |
| U.S. Navy | USS CAMDEN (AOE 2) | Petty Officer | November 1975- October 1979 |
| U.S. Navy | Naval Maintenance Facility Bremerton, WA | Inspector | November 1979- March 1982 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Repair Facility San Diego, CA | Safety Inspector | March 1982- March 1985 |
| U.S. Navy | USS GOMPERS (AD-37) | Supervisor | March 1985 - April 1987 |
| Consolidated Engineering (self-employed) | Various buildings in San Francisco, CA 2000-3000 Market Street | Field Engineer | 1987-1988 |
| Brown & Root Houston, TX | Naval Air Station El Centro, CA | Stationary Engineer | 1992-1995 |

NON-OCCUPATIONAL EXPOSURE:

Plaintiff recalls performing maintenance and repair work on his vehicles. Plaintiff recalls performing repair work on various cars and trucks including: 1954 2-door FORD, 1955 CROWN VICTORIA, 1948 CHEVROLET truck, 1965 CHEVROLET C-10, 1968 MGA, 1968 GMC truck, 1968 CHEVROLET IMPALA, 1970 FORD F-250, 1968 or 1970 BMW, 1975 DODGE truck and JEEPS. Plaintiff recalls performing work on various vehicles manufactured by: HONDA, HUNDAI, MERCEDES, NISSAN, SAAB and TOYOTA. Plaintiff recalls performing more than 50 brake repair jobs. Plaintiff recalls working on his vehicles inside his garage. Plaintiff recalls using the following tools including but not limited to: a basic wrench, brake spring pliers and air compressors. Plaintiff recalls using an angle grinder and electric sander to rough up the new brake pads. Plaintiff recalls using compressed air to clean out the brake drum. Plaintiff recalls performing approximately two or three clutch repairs yearly. Plaintiff recalls performing clutch repair work on VW and JEEPS. Plaintiff recalls buying brake and clutch parts from the following suppliers, including, but not limited to: NAPA AUTO PARTS in San Diego, California. Plaintiff also recalls the following suppliers, AUTO PARTS DISTRIBUTORS and GENUINE PARTS COMPANY. Plaintiff recalls purchasing brake products manufactured by: BENDIX.