# Exhibit B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DOUGLAS P. LEITE AND MARY ANN K. LEITE, | ) ) | CIVIL NO. 11-00636 JMS-RLP |
| | ) | FINDINGS AND RECOMMENDATION TO |
| Plaintiffs, | ) | GRANT PLAINTIFFS' MOTION FOR |
| | ) | REMAND |
| vs. | ) | |
| | ) | |
| CRANE COMPANY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT
PLAINTIFFS' MOTION FOR REMAND[1]

Before the Court is Plaintiffs Douglas P. Leite and

Mary Ann K. Leite's ("Plaintiffs") Motion to Remand, filed

November 10, 2011.  Docket No. 29.  Defendant Air & Liquid

Systems Corporation, successor-by-merger to Buffalo Pumps, Inc.

("Buffalo") filed its Opposition to the Motion to Remand on

November 28, 2011 ("Buffalo Opp.").  Docket No. 60.  Defendant

Crane Company ("Crane Co.") filed its Opposition to the Motion to

Remand on November 28, 2011 ("Crane Co. Opp.").  Docket No. 62.

Defendant IMO Industries Inc., individually and as successor-in-

interest to Delaval Turbine, Inc., and f/k/a/ IMO Delaval Inc.,

---

[1] Within fourteen days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), file written objections in the United States District Court.  A party must file any objections within the fourteen-day period allowed if that party wants to have appellate review of the Findings and Recommendation.  If no objections are filed, no appellate review will be allowed.

Transamerica Delaval Inc., and Delaval Steam Turbine Company,
("IMO") filed its Opposition to the Motion to Remand on November
28, 2011 ("IMO Opp."). Docket No. 73. Defendant Warren Pumps,
LLC ("Warren") filed its Opposition to the Motion to Remand on
November 28, 2011 ("Warren Opp."). Docket No. 80. Collectively,
Defendants Buffalo, Crane Co., IMO, and Warren are referred to
herein as "Removing Defendants." Plaintiffs filed four separate
replies addressing each of the oppositions on December 12, 2011.
Docket Nos. 89, 90, 91, and 92.

         The Court found this matter suitable for disposition
without a hearing pursuant to Rule 7.2(d) of the Local Rules of
Practice of the United States District Court for the District of
Hawaii. Docket No. 44. After carefully reviewing the
submissions of the parties and the relevant legal authority, the
Court FINDS that this case was not properly removed pursuant to
the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).
Accordingly, the Court RECOMMENDS that the district court GRANT
Plaintiffs' Motion to Remand.

BACKGROUND

         Plaintiffs filed their Complaint on September 6, 2011,
in the Circuit Court of the First Circuit, State of Hawaii,
captioned Douglas P. Leite and Mary Ann K. Leite v. Crane Co., et
al., Civil No. 11-1-1971-09 (RAN). See Compl., attached as Ex. 1
to Notice of Removal, Docket No. 3-1. The Complaint states that

2

Mr. Leite was exposed to asbestos while working as a machinist at the Pearl Harbor Naval Shipyard from approximately 1966 to 1972. Compl. ¶ 6. Mrs. Leite is his wife. Id. ¶ 1.

The Complaint identifies the following defendants: Crane Co., Aurora Pump Company, Bayer Cropscience, Inc., successor-in-interest to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Products Company, Union Carbide Corporation, Buffalo, Certainteed Corporation, Cleaver-Brooks, Inc., Goulds Pumps, Inc., IMO, Ingersoll Rand Co., John Crane, Inc., The Lynch Co., Inc., Metropolitan Life Insurance Company, Warren, The William Powell Company, Velan Valve Corp., Copes-Vulcan, a subsidiary of SPX Corp., Atwood & Morrill, a subsidiary of Weir Valves & Controls USA Inc., and Does 1 to 25 (collectively "Defendants"). Id. ¶ 2.

The Complaint alleges that Aurora, Buffalo, Cleaver-Brooks, Crane Co., Goulds, IMO, Ingersoll, Met Life, Powell, Warren, Velan, Copes, and Atwood (collectively "Supplier Defendants") "sold and supplied certain equipment to the United States Navy and Pearl Harbor Naval Shipyard and other shipyards, which contained asbestos gaskets and/or packing, required asbestos insulation, or required other asbestos containing part to function properly and also sold replacement component parts for their equipment, including asbestos gaskets and packing which were identical to their commercial counterparts." Id. ¶ 5.

3

The Complaint alleges that all other Defendants except the Supplier Defendants (collectively "Manufacturer Defendants") "manufactured, sold and/or supplied certain generically similar asbestos products which were ultimately used by insulators and others, and/or to which they came in contact, while working in their trades and occupations in the State of Hawaii and other locations" and "manufactured, sold and/or supplied certain generically similar asbestos products to Pearl Harbor Naval Shipyard and other shipyards and ships for use in the general overhaul, building, refitting and maintenance of ships." Id.

Plaintiffs allege that Mr. Leite "was repeatedly exposed to great quantities of asbestos, asbestos dust and asbestos fibers" from "asbestos products." Id. ¶ 6. Plaintiffs claim that this exposure directly and proximately caused Mr. Leite to develop "pleural plaques and other asbestos-related diseases and injuries to his lungs, chest cavity, cardiovascular system and other parts of his body." Id. Plaintiffs did not discover Mr. Leite's conditions until about May 2010. Id.

On October 21, 2011, Crane Co., one of the Supplier Defendants, filed its Notice of Removal. Docket No. 3. Defendants IMO, Warren, and Buffalo, filed separate joinders in the Notice of Removal. Docket Nos. 1, 2, 12. The present Motion for Remand followed. Although the Complaint alleges various state law claims against the Defendants, as discussed below, the

4

basis for removal is the asserted defense to Plaintiffs'
negligent failure-to-warn claim against the Supplier Defendants.
For purposes of this Motion for Remand, the Court focuses on
Plaintiffs' claim against the Supplier Defendants for negligent
failure to warn of the dangers of asbestos.  <u>See</u> Compl. ¶ 9.

LEGAL STANDARD

Remand to state court may be ordered either for lack of
subject matter jurisdiction or for any defect in removal
procedure.  <u>See</u> 28 U.S.C. § 1447(c).  A defendant who invokes the
federal court's removal jurisdiction has the burden of
establishing federal jurisdiction.  <u>See</u> <u>Emrich v. Touche Ross &
Co.</u>, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing <u>Wilson v.
Republic Iron & Steel Co.</u>, 257 U.S. 92, 97 (1921)).  Here, the
Notice of Removal was pursuant to the Federal Officer Removal
Statute, 28 U.S.C. § 1442(a)(1).  <u>See</u> Docket No. 3 at 1.

Section 1442 authorizes the removal of any civil action
commenced in state court against federal officers or their agents
"based on acts performed under color of their federal office if
they assert a colorable federal defense."  <u>Durham v. Lockheed
Martin Corp.</u>, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing 28
U.S.C. § 1442(a)(1); <u>Mesa v. Cal.</u>, 489 U.S. 121, 129 (1989)).
Generally, there is a strong presumption against removal
jurisdiction and removal statutes are to be construed strictly
against removal.  <u>See</u> <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566-67

(9th Cir. 1992).  However, removal pursuant to section 1442 is an
exception to this rule.  Durham, 445 F.3d at 1252.  The Ninth
Circuit has expressly recognized the "generous interpretation" of
section 1442 in the context of removal by a government
contractor.  See id. (citing Colorado v. Symes, 286 U.S. 510, 517
(1932)); Arizona v. Manypenny, 451 U.S. 232, 242 (1981) ("the
policy favoring removal 'should not be frustrated by a narrow,
grudging interpretation of § 1442(a)(1).'" (quoting Willingham v.
Morgan, 395 U.S. 402, 407 (1969))).  The Ninth Circuit has
acknowledged "a clear command from both Congress and the Supreme
Court that when federal officers and their agents are seeking a
federal forum, we are to interpret section 1442 broadly in favor
of removal."  Id.  Also unlike the general removal statue, under
section 1442, not all defendants need to concede to removal.  See
Eli Valley Mines, Inc. v. Hartford Accident & Indem. Co., 644
F.2d 1310, 1315 (9th Cir. 1981).

        To establish removal under section 1442, Defendants
need to show that:  (1) they are persons within the meaning of
the statute; (2) there is a causal nexus between Defendants'
actions, taken pursuant to a federal officer's directions, and
Plaintiffs' claims; and (3) Defendants can assert a "colorable
federal defense."  Durham, 445 F.3d at 1251 (citing Jefferson
Cnty., Ala. v. Acker, 527 U.S. 423, 431 (1999); Mesa, 489 U.S. at
124-25).  To satisfy the "colorable federal defense" element, the

defendant need not "win his case before he can have it removed";
however, there must be some showing that the defense asserted has
a legal and factual basis.  See Jefferson Cnty., 527 U.S. at 431
(quoting Willingham, 395 U.S. at 409).

### DISCUSSION

The Court has carefully scrutinized the voluminous
materials submitted by the parties and finds that the Removing
Defendants have failed to state a colorable federal defense to
Plaintiffs' failure-to-warn claim.[2]  Here, the Removing
Defendants assert the federal contractor defense recognized by
the Supreme Court in Boyle v. United Technologies Corporation,
487 U.S. 500, 512 (1988).  Essentially, the Removing Defendants
argue that the Navy's specifications and controls precluded
Defendants from making any warnings about asbestos for the
products that they supplied to the Navy.

Generally, the government contractor defense immunizes
government contractors from the duties imposed by state tort law
when "a significant conflict exists between an identifiable
federal policy or interest and the operation of state law."
Boyle, 487 U.S. at 507 (internal quote marks and citation
omitted).  The Supreme Court articulated the specific elements
required to assert such a defense:  the government approved

---

[2] The Court notes that this determination is for purposes of
remand only and does not preclude Defendants from asserting this
defense in the case in chief.

reasonably precise specifications; the equipment conformed to those specifications; and the supplier warned the government about the dangers in the use of the equipment that were known to the supplier but not the government.  Id. at 512.

However, in the context of a failure-to-warn claim, the Ninth Circuit has held, "a contractor cannot defeat a failure-to-warn claim simply by establishing the elements of the Boyle defense as it applies to design and manufacturing defect claims." Getz v. Boeing Co., 654 F.3d 852, 866 (9th Cir. 2011)(citing Butler v. Ingalls Shipbuildings, Inc., 89 F.3d 582, 586 (9th Cir. 1996)).  Instead, "the contractor must show that it acted in compliance with reasonably precise specifications imposed on it by the United States in deciding whether to provide a warning." Id. (citation and internal quotation marks omitted).  The contractor must demonstrate that the government "approved reasonably precise specifications" thereby limiting the contractor's "ability to comply with [its] duty to warn."  Id. at 866-67 (quoting Snell v. Bell Helicopter Textron, Inc., 107 F.3d 744, 749 (9th Cir. 1997)).  To meet this standard, a contractor can show "(1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government."  Id. at

8

866 (quoting <u>Oliver v. Oshkosh Truck Corp.</u>, 96 F.3d 992, 1003-04
(7th Cir. 1996)).  The Ninth Circuit has refused to limit the
defense to cases in which the government specifically forbids
warnings or explicitly dictates the content of the warnings
adopted.  <u>Id.</u> at 867 (rejecting the plaintiffs' argument that the
court's prior decisions in <u>Butler</u> and <u>In re Hawaii Federal</u>
<u>Asbestos Cases</u>, 960 F.2d 806 (9th Cir. 1992) limit the
application of the federal contractor defense).  "<u>Boyle</u> makes
clear that government discretion, rather then dictation, is the
standard."  <u>Id.</u> (quoting <u>Boyle</u>, 487 U.S. at 512-12).  As
discussed in detail below, the Court finds that the Removing
Defendants have not asserted a colorable federal contractor
defense.

### A.  The Removing Defendants' Evidence[3]

With its Notice of Removal, Crane Co. provided the
affidavits of Retired U.S. Navy Rear Admiral David P. Sargent,
Jr. ("Sargent Aff.") and Retired U.S. Navy Rear Admiral Roger B.
Horne, Jr. ("Horne Aff.").  <u>See</u> Exs. 4 and 5 to Notice of Removal

---

[3] Plaintiffs filed lengthy evidentiary objections, separate
from their Motion for Remand, to the evidence presented by the
Removing Defendants.  <u>See</u> Docket No. 34.  For purposes of
deciding the Motion for Remand, the Court considers the
affidavits submitted by the Removing Defendants to the extent
they provide percipient testimony and makes no findings regarding
the "expert" nature of the testimony.

(Docket Nos. 3-7 and 5).[4]  The Removing Defendants provided two affidavits from Dr. Samuel Forman, a medical doctor in preventive and occupational medicine.  See Ex. 6 to Notice of Removal, Docket 7 ("Oct. 21 Forman Aff."); Ex. 8 to Decl. of Counsel in Support of Buffalo's Opp. and Ex. to Decl. of E. Mason Martin III in Support of Warren's Opp. ("Nov. 23 Forman Aff.").

The Removing Defendants present evidence that their equipment was designed and manufactured pursuant to detailed specifications approved by the Navy.  Sargent Aff. ¶¶ 22-32; Horne Aff. ¶¶ 10-13.  Each of the Removing Defendants provided an affidavit from a corporate witness who confirmed that each Removing Defendant complied with the applicable specifications in providing equipment, including technical manuals, to the Navy. See Aff. of Anthony D. Pantaleoni ¶¶ 5-6 (Docket No. 3-3);  Aff. of Martin K. Kraft ¶¶ 5-15 (Docket No. 12-8); Decl. of Richard M. Salzmann ¶¶ 5-7 (Docket No. 76-10); and Aff. of Rolan Doktor ¶¶ 7-9 (Docket No. 80-66).  The design specifications issued by the Navy required that parts of the equipment at issue be manufactured with "asbestos sheet gaskets."  See Kraft Aff. ¶ 6 (citing MIL-P-17639 § 3.4.1.5 ("Pumps, Centrifugal, Miscellaneous

---

[4] Multiple copies of the affidavits of Admiral Sargent and Admiral Horne were provided by the other Removing Defendants in their respective joinders and oppositions.  See, e.g., Ex. 2 to Buffalo's Joinder in Notice of Removal; Exs. 6 and 18 to Decl. of Counsel in Supp. of Buffalo's Opp.; Exs. to Decls. of E. Mason Martin III in Support of IMO's Opp. and Warren's Opp.

Service, for Use on Naval Ships"), Ex. A to Kraft Aff.;
MIL-P-17840 § 3.26 ("Pumps, Centrifugal, Close-Coupled, Navy
Standard"), Ex. B to Kraft Aff.  Compliance with the
specifications for equipment to be used on Navy ships was
directly monitored by Naval Machinery Inspectors.  Sargent Aff.
¶ 29; Horne Aff. ¶¶ 7-8.  All equipment had to be in conformity
with all applicable Navy specifications before it could be
installed aboard Navy ships.  Sargent Aff. ¶ 29.

Much of the evidence submitted provides background
information related to design, construction, and oversight of
Navy shipbuilding and the Navy's historical use of asbestos.
See, e.g., Sargent Aff. ¶¶ 6-34, 35-45, 79-90; Horne Aff. ¶¶ 6-
13.  Although this background is informative, merely because the
government issued precise specifications related to design and
construction does not mean that it also exercised the same
discretion regarding warnings.  Getz, 654 F.3d at 866.  For
purposes of establishing the federal contractor defense in the
failure-to-warn context, the key evidence is that which is
related to warnings.

Regarding warnings, Admiral Sargent states that
manufacturers

> would not have been permitted . . . to vary or
> deviate in any respect from the Navy
> specifications in supplying equipment,
> including affixing any type of warning or
> caution statement to equipment intended for
> installation in a Navy ship, beyond those

11

> specifically required by the Navy without prior
> discussion and express approval by the Navy.

Sargent Aff. ¶ 57.  Admiral Sargent states that to ensure
consistency, the Navy dictated, reviewed, and approved the
contents of all technical manuals including any warning language
and would not have permitted manufacturers to include any warning
statements "beyond those required and approved by the Navy
without prior discussion and approval by the Navy." Id. ¶ 59.
Admiral Sargent testifies that "the Navy would not have permitted
equipment suppliers to place asbestos-related warnings on packing
or containers for pumps or related parts or items" or "in any
literature or documentation" supplied with the equipment. Id.
¶ 62.

Admiral Horne attests that "[w]ithout prior discussion,
approval and acceptance by the Navy, a warning related to
asbestos hazards would not have been permitted."  Horne Aff.
¶ 13.  Admiral Horne states that Defendants "would have not have
been permitted to include a warning regarding asbestos in an
equipment manual or on a product label without Navy approval."
Id. ¶ 15.  Admiral Horne states that "[a]ny warning purportedly
required by state law would not have found its way into a ship as
a permanent label on a pump or as a warning in accompanying
written materials unless it has been required specifically in the
specifications for the product that were issued by the Navy."
Id. ¶ 16.  Admiral Horne also states that "the Navy would not

12

have permitted (either under the specifications or, as a matter of Navy practices) vendors such [sic] to attach any type of warning or cautionary statement not required and approved by the Navy, including any statements related to asbestos." Id. ¶ 23.

The Removing Defendants also provided military specifications related to design and construction, identification plates, and technical manuals.  First, the military specifications regarding design and construction of the equipment at issue do not discuss warnings, but state that instruction books are to be provided in accordance with other military specifications.  See MIL-P-17639(SHIPS) (8 Oct. 1953) § 3.6, Ex. A2 to Sargent Aff. and Ex. A to Kraft Aff.; MIL-P-17840(SHIPS) (1 March 1954) § 3.28, Ex. A1 to Sargent Aff. and Ex. B to Kraft Aff.

Second, the Removing Defendants provided military specifications regarding identification plates that were required on equipment.  See MIL-I-1502(SHIPS) (19 Sept. 1952), Ex. L to Sargent Aff.; MIL-I-15024B(SHIPS) (5 Nov. 1956), Ex. M to Sargent Aff.  These label plate specifications do not specifically discuss warnings, but provide that plates should have "information necessary for the safe handling, operation and maintenance" of the equipment.  See MIL-I-1502(SHIPS) (19 Sept. 1952) § 3.4.1.7, Ex. L to Sargent Aff.

Third, the Removing Defendants provide several military

13

specifications governing technical manuals for mechanical equipment. See, e.g., MIL-B-15071(SHIPS) (1 April 1950), Ex. 0 to Sargent Aff.; MIL-B-15071A(SHIPS) (20 Oct. 1952), Ex. P to Sargent Aff.; MIL-T-15071B (SHIPS) (16 Aug. 1954), Ex. Q to Sargent Aff.; MIL-M-15071C (SHIPS) (10 Sept. 1957), Ex. R to Sargent Aff.; MIL-M-15071D(SHIPS) (6 June 1961), attached as Ex. S to Sargent Aff. and Ex. D to Horne Aff. Although it is not entirely clear from the record, presumably one or more of these military specifications would have governed the technical manuals that accompanied the equipment at issue. The most recent specification provided, MIL-M-15071D(SHIPS)(6 June 1961), states that its intent is "to accept the manufacturer's commercial type of manual or one prepared in accordance with his commercial practice whenever it is roughly equivalent to the detail requirements included herein." Ex. S to Sargent Aff. and Ex. D to Horne Aff. § 1.1; see also id. § 3.1.3 ("A class A or B manual may be the manufacturer's commercial manual, or one prepared in accordance with his commercial practice."). With respect to warnings, the military specification provides:

> Notes, cautions and warnings. — Notes, cautions and warnings should be used to emphasize important and critical instructions. The use should be as sparing as is consistent with real need.
>
> (a) "NOTE" — An operating procedure, condition, etc., which it is essential to highlight.

14

> (b) "CAUTION" — Operating procedures, practices, etc., when if not strictly observed, will result in damage or destruction of equipment.
>
> (c) "WARNING" — Operating procedures, practices, etc., which will result in personal injury or loss of life if not correctly followed.

Id. § 3.3.6; see also id. § 3.1.9 ("Operating instructions — Information shall include routine and emergency procedures, and safety precautions . . . ."). None of the other technical manual military specifications provided contain any specific requirement or prohibition regarding warnings.

Dr. Forman attests that he has "not located a single instance in which the Navy . . . instructed or permitted a supplier of equipment, such as valves, to a vessel or facility to provide any asbestos-related warning with its equipment." Oct. 21 Forman Aff. ¶ 38; see also Nov. 23 Forman Aff. ¶ 67. Dr. Forman also recounts an instance from 1960 in which the Navy determined that an unrelated asbestos-containing product should not have a toxic material label affixed to it and states that this one example "is consistent with the notion that the Navy neither sought, nor would it have accepted, asbestos-related warnings affixed to equipment or machinery or in technical documentation." Oct. 21 Forman Aff. ¶ 50; see also Nov. 23 Forman Aff. ¶ 60.

15

**B.   The Evidence Does Not Demonstrate a Colorable Federal Defense**

The Court finds that the Removing Defendants have not asserted a colorable federal contractor defense because they have not demonstrated that "a significant conflict exists between an identifiable federal policy or interest and the operation of state law." <u>Boyle</u>, 487 U.S. at 507.  Specifically, there is no evidence that the government made a discretionary decision regarding asbestos-related warnings through reasonably precise specifications, an approval or disapproval of proposed warnings, or a documented federal policy that conflicts with Defendants' obligations under state law.

First, the specifications provided by the Removing Defendants do not demonstrate an exercise of government discretion regarding warnings.  The Removing Defendants do not present any "reasonably precise specifications" imposed by the Navy that would have conflicted with their obligations under state law to warn.  <u>See</u> <u>Getz</u>, 654 F.3d at 866 (citation omitted).  As noted above, most of the specifications offer little guidance on the subject of warnings.  The design specifications cited in the affidavits do not address warnings.  The technical manual specifications do not proscribe or prohibit warnings.  Instead, the technical manual specifications suggest that warnings "should be used to emphasize important and critical instructions" and

16

"should be as sparing as is consistent with real need."  Ex. S to
Sargent Aff. and Ex. D to Horne Aff. § 3.3.6.  There is no
indication that compliance with this specification would have
prevented Defendants from warning about the hazards associated
with asbestos.  The specifications indicate that the technical
manuals, including any warnings, were drafted by the
manufacturers, subject to Navy review and approval.  Admiral
Sergeant testified that the Navy "participated intimately in the
preparation and review of these instruction books and technical
manuals."  Sargent Aff. ¶ 59.  However, the fact that the Navy
possessed final authority over the technical manuals does not
demonstrate that it exercised that authority with respect to
asbestos warnings.  Further, the Removing Defendants do not
provide any evidence that they considered the specifications of
the Navy "in deciding whether to provide a warning."  <u>See</u> <u>Getz</u>,
654 F.3d at 866.  Indeed, there is no evidence regarding the
Removing Defendants' decision making process regarding whether or
not to provide a warning related to asbestos.

        Second, there is no evidence that the Navy exercised
its discretion in approving or disapproving any proposed warnings
that conflicted with state law.  The Removing Defendants present
no evidence that they engaged in a prior discussion or submitted
for approval to the Navy any warnings related to asbestos
hazards.  Because the Removing Defendants did not suggest

warnings to the government, it is impossible that "the design feature in question," in this case the warnings, "was considered by a government officer, and not merely by the contractor itself." <u>Boyle</u>, 487 U.S. at 512.  The testimony of Admiral Sargent and Admiral Horne states that such warnings would not have been approved "without prior discussion and approval by the Navy," (Sargent Aff. ¶ 59) or "[w]ithout prior discussion, approval and acceptance by the Navy," (Horne Aff. ¶ 13).  The fact that warnings required prior approval by the Navy does not mean that the Removing Defendants were prevented from giving warnings about asbestos in their products.  The Court agrees with the reasoning of other district courts in this circuit that have determined that "the federal government cannot have exercised its discretion to preclude [the contractor] from issuing asbestos warnings if the provision of asbestos warnings was never contemplated or proposed in the first place." <u>Lindenmayer v. Allied Packing & Supply, Inc.</u>, No. C09-05800, 2010 WL 234906, at *6 (N.D. Cal. Jan. 14, 2010); <u>Luce v. A.W. Chesterson Co., Inc</u>, No. C-10-2111 MMC, 2010 WL 2991671 at *2 (N.D. Cal. June 29, 2010).  Admiral Sargent, Admiral Horne, and Dr. Forman imply in their affidavits that if Defendants had tried to warn about asbestos, the Navy would have rejected their efforts.  <u>See</u> Sergeant Aff. ¶¶ 62, 66; Horne Aff. ¶¶ 15–16; Oct. 21 Forman Aff. ¶ 50; Nov. 23 Forman Aff. ¶ 60.  The Court finds that these

statements are merely hypothetical and highly speculative.  There
is <u>no</u> evidence that the Navy actually exercised its discretion
regarding asbestos-related warnings for these products.  Where "a
contractor does not offer any evidence that it proposed a warning
to the government, the contractor cannot rely on a hypothetical
assertion that such an effort would have been futile."  <u>Luce</u>,
2010 WL 2991671 at *2 (quoting <u>Lindenmayer</u>, 2010 WL 234906, at
*6); <u>see also</u> <u>Prewett v. Goulds Pumps (IPG)</u>, No. C09-0838, 2009
WL 2959877, at *7 (W.D. Wash. Sept. 9, 2009) (granting remand
where defendant "provided no evidence that it ever attempted to
warn, or that the Navy prohibited warnings," and relied on a
"hypothetical" theory that Navy "would have not allowed"
defendant to place a warning on product if defendant had proposed
a warning).[5]  Dr. Forman recounts one example of the Navy
rejecting a warning label for an asbestos-containing product to
support his assertion that the Navy would not have accepted any
asbestos-related warnings from these Defendants.  <u>See</u> Oct. 21
Forman Aff. ¶ 50; Nov. 23 Forman Aff. ¶ 60.  However, in the
instance recounted by Dr. Forman, there is evidence that the Navy

_____

[5]  As evidenced by the numerous cases cited by both sides in
their submissions, the Court recognizes that other lower courts
have considered remand in a similar context and have reached
conflicting results.  Compare Mem. in Support of Mot. at 8
(citing cases) with Buffalo Opp. at 28 (citing cases); Crane Opp.
at 17-18 (same); IMO Opp. at 20 (same); Warren Opp. at 15-16
(same).  There is little guidance on this issue from the Ninth
Circuit because remand orders are "not reviewable on appeal or
otherwise."  28 U.S.C. § 1447(d).

exercised its discretion by considering and rejecting a warning label for that specific product.  See id.  This example underscores the fact that there is no evidence presented here that the Navy similarly considered and rejected a warning for the equipment at issue.

Third, the Court finds that the Removing Defendants have failed to point to "an identifiable federal policy or interest" that would have conflicted with their obligations to warn about asbestos under state law.  See Boyle, 487 U.S. at 507. Admiral Sargent's and Admiral Horne's affidavits suggest that the Navy had an interest in enforcing "uniformity" in safety communications and a concern that "apathy and resulting disregard of hazard" would result from "excessive warnings."  See Sergeant Aff. ¶ 61; Horne Aff. ¶ 23.  The Court finds these statements unpersuasive and contradicted by other evidence provided.  For example, Dr. Forman's affidavit details Navy safety procedures for handling asbestos during the 1950s through 1970s, which undermines any argument that proposed warnings would have been rejected for the sake of "uniformity."  See, e.g., Oct. 21 Forman Aff. ¶¶ 44, 48, 53.  The Court finds no evidence to support Admiral Horne's concern regarding apathy and disregard of safety hazards.  Dr. Forman's Affidavits chronicle the Navy's knowledge of the dangers of asbestos starting in the early 1920s and various precautions that the Navy adopted related to asbestos.

20

Oct. 21 Forman Aff. ¶¶ 21-53; Nov. 23 Forman Aff. ¶¶ 16-51. Although this evidence may show that the Navy knew about the dangers of asbestos and took steps to minimize the safety risk, there is no showing that an asbestos warning on the Defendants' equipment would have conflicted with the Navy's procedures or response to asbestos.

Even under the generous interpretation of section 1442 required by Ninth Circuit, the Court finds that the Removing Defendants have not met their burden in asserting a colorable defense. Absent evidence of reasonably precise specifications limiting the Defendants' ability to comply with state law, an exercise of discretion in approving or disapproving proposed warnings, or a federal policy or interest that conflicts with Defendants' state law obligations, the Court must conclude that the Removing Defendants have not presented a colorable federal defense to Plaintiffs' failure-to-warn claim.

CONCLUSION

Based on the foregoing, the Court FINDS that the Removing Defendants have failed to satisfy the requirements for removal under section 1442(a)(1) and RECOMMENDS that Plaintiffs' Motion for Remand be GRANTED.

///

///

///

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, JANUARY 20, 2012



_____
Richard L. Puglisi
United States Magistrate Judge

**LEITE, ET AL. V. CRANE CO., ET AL., CIVIL NO. 11-00636 JMS-RLP; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION FOR REMAND**