ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:12-cv-00366-EMC

Welch et al v. General Electric Company et al          Date Filed: 01/24/2012
Assigned to: Hon. Edward M. Chen                       Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Asbestos Litigation           Nature of Suit: 368 P.I. : Asbestos
                                                       Jurisdiction: Diversity

**Plaintiff**

**Hubert Welch**                     represented by   **David R. Donadio**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      PO Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      Email: DDonadio@braytonlaw.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Alan R. Brayton**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      PO Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Myra Welch**                       represented by   **David R. Donadio**
                                                      (See above for address)
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Alan R. Brayton**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**General Dynamics Corporation**

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding Inc

| Date Filed | # | Docket Text |
|---|---|---|
| 01/24/2012 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 4/27/2012. Case Management Conference set for 5/4/2012 09:00 AM in Courtroom 5, 17th Floor, San Francisco. (Attachments: # 1 Standing Order)(slh, COURT STAFF) (Filed on 1/24/2012) (Entered: 01/26/2012) |
| 01/24/2012 | 4 | Declination to Proceed Before a U.S. Magistrate Judge by Hubert Welch, Myra Welch. (slh, COURT STAFF) (Filed on 1/24/2012) (Entered: 01/26/2012) |
| 01/24/2012 | 3 | NOTICE of Tag-Along Action by Hubert Welch, Myra Welch. (slh, COURT STAFF) (Filed on 1/24/2012) (Entered: 01/26/2012) |
| 01/24/2012 | 2 | Certificate of Interested Entities or Persons by Hubert Welch, Myra Welch. (slh, COURT STAFF) (Filed on 1/24/2012) (Entered: 01/26/2012) |
| 01/24/2012 | 1 | COMPLAINT; summons issued against Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Huntington Ingalls Incorporated (Filing fee $ 350, receipt number 34611069624). Filed by Myra Welch, Hubert Welch. (Attachments: # 1 Civil Cover Sheet, # 2 Summons)(slh, COURT STAFF) (Filed on 1/24/2012) (Entered: 01/26/2012) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 01/27/2012 12:55:53 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-00366-EMC |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
2   BRAYTON❖PURCELL LLP
    Attorneys at Law
3   222 Rush Landing Road
    P.O. Box 6169
4   Novato, California 94948-6169
    (415) 898-1555
5   (415) 898-1247 (Fax No.)

6   Attorneys for Plaintiffs

7

8                   UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  HUBERT WELCH and MYRA WELCH,          )   No.
                                          )
12              Plaintiffs,               )
                                          )
13  vs.                                   )   COMPLAINT FOR ASBESTOS
                                          )   PERSONAL INJURY/ PRODUCTS
14  GENERAL ELECTRIC COMPANY,             )   LIABILITY/ LOSS OF CONSORTIUM;
    FOSTER WHEELER LLC (FKA FOSTER        )   DEMAND FOR JURY TRIAL
15  WHEELER CORPORATION),                 )
    GENERAL DYNAMICS                      )
16  CORPORATION, HUNTINGTON               )
    INGALLS INCORPORATED (FKA             )
17  NORTHROP GRUMMAN                      )
    SHIPBUILDING, INC.),                  )
18                                        )
                Defendants.               )
19

20                              I.

21                           PARTIES

22       1.      Plaintiff in this action, HUBERT WELCH, has sustained asbestos-related lung

23  injuries as a result of his inhalation of asbestos fibers through his occupational exposure to

24  asbestos. Plaintiff, MYRA WELCH, has sustained loss of consortium as set forth in the Third

25  Cause of Action.

26       2.      Plaintiff HUBERT WELCH sustained an asbestos-related lung disease by the

27  inhalation of asbestos fibers released during the handling of asbestos-containing products at

28  Plaintiff's jobsites.

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

3.     The pathogenesis of Plaintiff HUBERT WELCH's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4.     All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff HUBERT WELCH's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff HUBERT WELCH, resulting in cumulative, progressive, incurable lung diseases.

5.     Plaintiff HUBERT WELCH claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff HUBERT WELCH.

7.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

**II.**

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

8.     <u>Jurisdiction</u>: Plaintiff HUBERT WELCH is a citizen of the State of California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

///

///

///

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |
| GENERAL DYNAMICS CORPORATION | Delaware/Virginia |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9.    <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF HUBERT WELCH COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), GENERAL DYNAMICS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10.    At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding

1  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

2  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

3  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

4  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

5  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

6  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

7  otherwise directing and/or facilitating the use of, or advertising a certain product, namely

8  asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

9  called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

10  conduct of each successor, successor in business, successor in product line or a portion thereof,

11  assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

12  venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

13  entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

14  designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

15  sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

16  rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

17  products containing asbestos. The following defendants, and each of them, are liable for the acts

18  of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

19  destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

20  of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

21  ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each

22  such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

23  role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

24  originally attached to each such ALTERNATE ENTITY:

25  ///

26  ///

27  ///

28

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| GENERAL DYNAMICS CORPORATION | CONVAIR |
| | VULTEE AIRCRAFT INC. |
| | CONSOLIDATED VULTEE AIRCRAFT CORPORATION |
| | ASBESTOS CORPORATION LIMITED |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. |
| | AVONDALE SHIPYARDS, INC. |
| | CONTINENTAL MARITIME INDUSTRIES, INC. |
| | EASTERN IDAHO CONSTRUCTION COMPANY |
| | INGALLS SHIPBUILDING, INC. |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| | NORTH CAROLINA SHIPBUILDING |
| | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| | SERVICE ENGINEERING INDUSTRIES, INC. |

11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,

1  rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

2  and other products containing asbestos, in that said products caused personal injuries to users,

3  consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter

4  collectively called "exposed persons"), while being used in a manner that was reasonably

5  foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by

6  "exposed persons".

7      13.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

8  exercise due care in the pursuance of the activities mentioned above and defendants, and each of

9  them, breached said duty of due care.

10     14.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

11  have known, and intended that the aforementioned asbestos and products containing asbestos and

12  related products and equipment, would be transported by truck, rail, ship, and other common

13  carriers, that in the shipping process the products would break, crumble, or be otherwise

14  damaged; and/or that such products would be used for insulation, construction, plastering,

15  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

16  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

17  breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the

18  release of airborne asbestos fibers, and that through such foreseeable use and/or handling

19  "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to

20  said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

21  persons working in proximity to said products, directly or through reentrainment.

22     15.    Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-

23  containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's

24  exposure to asbestos and asbestos-containing products is on current information as set forth at

25  various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and

26  incorporated by reference herein.

27     16.    As a direct and proximate result of the acts, omissions, and conduct of the

28  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure

1  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

2  or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and

3  incorporated by reference herein.

4      17.    Plaintiff is informed and believes, and thereon alleges, that progressive lung

5  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

6  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

7  asbestos and asbestos-containing products over a period of time.

8      18.    Plaintiff suffers from a condition related to exposure to asbestos and asbestos-

9  containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-

10  containing products presented risk of injury and/or disease.

11      19.    As a direct and proximate result of the aforesaid conduct of defendants, their

12  ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer,

13  permanent injuries and/or future increased risk of injuries to their persons, body and health,

14  including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and

15  emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to

16  Plaintiff's general damage.

17      20.    As a direct and proximate result of the aforesaid conduct of the defendants, their

18  "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur

19  in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

20  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this

21  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost

22  thereof is ascertained.

23      21.    As a further direct and proximate result of the said conduct of the defendants,

24  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature

25  and extent of which are not yet known to Plaintiff; and leave is requested to amend this

26  complaint to conform to proof at the time of trial.

27  ///

28  ///

22.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

24.     The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons."  Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION<br>(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF HUBERT WELCH COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), GENERAL DYNAMICS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26.     Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the

///

purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28.     "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons."  Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

30.     On or before 1930, and thereafter, said defendants, their ALTERNATE ENTITIES and each of them, were aware that members of the general public and other "exposed

persons", who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that members of the general public and other "exposed persons", who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

31. With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32. The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-

1    containing products. In pursuance of said financial motivation, said defendants, their

2    ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed

3    persons" and in fact were consciously willing and intended to permit asbestos and asbestos-

4    containing products to cause injury to "exposed persons" and induced persons to work with and

5    be exposed thereto, including Plaintiff.

6        33.    Plaintiff alleges that the aforementioned defendants, their ALTERNATE

7    ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

8    products to be safe for their intended use but that their asbestos and asbestos-containing products,

9    created an unreasonable risk of bodily harm to exposed persons.

10        34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos

11    and various asbestos-containing products manufactured, fabricated, inadequately researched,

12    designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered

13    for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

14    marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

15    aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff

16    cannot identify precisely which asbestos or asbestos-containing products caused the injuries

17    complained of herein.

18        35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their

19    representations, lack of warnings, and implied warranties of fitness of asbestos and their

20    asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has

21    been injured permanently as alleged herein.

22        36.    As a direct and proximate result of the actions and conduct outlined herein,

23    Plaintiff has suffered the injuries and damages previously alleged.

24        WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE

25    ENTITIES, and each of them, as hereinafter set forth.

26    ///

27    ///

28    ///

THIRD CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF MYRA WELCH COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), GENERAL DYNAMICS CORPORATION, HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

37.     Plaintiffs incorporate by reference each and every paragraph of the First through Second Causes of Action herein.

38.     Plaintiffs HUBERT WELCH and MYRA WELCH were married on February 6, 1960, and at all times relevant to this action were, and are now, husband and wife.

39.     Prior to Plaintiff HUBERT WELCH's injuries as alleged, he was able and did perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, HUBERT WELCH has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future.  As a proximate result thereof, Plaintiff MYRA WELCH has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

40.     Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

41.     As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff HUBERT WELCH as set forth in this complaint, Plaintiff MYRA WELCH has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services,

///

12

1 marital relations, society, comfort, companionship, love and affection of said spouse, and has

2 suffered severe mental and emotional distress and general nervousness as a result thereof.

3       WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE

4 ENTITIES, and each of them, as hereinafter set forth.

5 **IV.**

6 **PRAYER**

7       WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE

8 ENTITIES, and each of them in an amount to be proved at trial, as follows:

9     Plaintiff HUBERT WELCH:

10     (a)    For Plaintiff's general damages according to proof;

11     (b)    For Plaintiff's loss of income, wages and earning potential according to proof;

12     (c)    For Plaintiff's medical and related expenses according to proof;

13     Plaintiff MYRA WELCH:

14     (d)    For Plaintiff's damages for loss of consortium according to proof;

15     Plaintiffs HUBERT WELCH and MYRA WELCH:

16     (e)    For Plaintiffs' cost of suit herein;

17     (f)    For exemplary or punitive damages according to proof;

18     (g)    For damages for fraud according to proof; and

19     (h)    For such other and further relief as the Court may deem just and proper, including

20     costs and prejudgment interest.

21 Dated: 12/28/11           BRAYTON❖PURCELL LLP

22                        By:

23                           David R. Donadio
                         Attorneys for Plaintiffs

24 JURY DEMAND

25     Plaintiffs hereby demand trial by jury of all issues of this cause.

26 Dated: 12/28/11           BRAYTON❖PURCELL LLP

27                        By:

28                           David R. Donadio
                         Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

EXHIBIT A

Plaintiff:  HUBERT WELCH

Plaintiff's injuries:  Plaintiff was diagnosed with asbestosis on or about September 2011 and with asbestos-related pleural disease on or about February 2011.

Retirement Status:

Plaintiff retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Air Force | US Air Force, Lackland Air Force Base, San Antonio, TX | Trainee | 12/28/1956-2/57 |
| | US Air Force, Francis E. Warren AFB, Cheyenne, WY | Teletype Operator (Trainee) | 2/1957- 6/1957 |
| | US Air Force, Scott AFB, Belleville, IL | Cryptographic Operator (Trainee) | 7/1957 - 8/1957 (Approx. 6 weeks) |
| | US Air Force, North Field, Iwo Jima, Japan | Cryptographic Operator | 9/1957 - 8/24/1958 |
| | US Air Force, Geiger AFB, Spokane, WA | Cryptographic Operator | 9/1958-2/1959 |
| | US Air Force, Yaak AFB, Lincoln County, MT | Cryptographic Operator | 2/1959-7/1959 |
| | US Air Force, Geiger AFB, Spokane, WA | Cryptographic Operator | 7/1959-11/1959 |
| | US Air Force Radar Station, Colville, WA | Cryptographic Operator | 11/1959 - 9/23/1960 |

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Mare Island Naval Shipyard, Vallejo, CA | Mare Island Naval Shipyard, Vallejo, CA: onboard various ships and submarines, including but not limited to: | Grinder | 3/13/1961-1974 |
| | | Grinder (Supervisor) | 1974-1984 |
| | | Code 365 Progress Man | 1984-1990 |
| | ANDREW JACKSON (SSBN-619) | | 7/1962-11/1963 (On and off) |
| | BAINBRIDGE (DLGN-25; CGN-25) | | 1970s |
| | BARB (SSN-596) | | 12/1963- 1970s |
| | BERGALL (SSN-667) | | 1970s |
| | DANIEL BOONE (SSBN-629) | | 2/1962-6/1963 (On and off) |
| | DRUM (SSN-677) | | 8/1968-5/1970 (On and off) |
| | FLASHER (SSN-613) | | 1970s (On and off) |
| | GRAYBACK (SSG-574/APSS-574) | | 3/1961- 1970s (On and off) |
| | GUARDFISH (SSN-612) | | 1970s (On and off) |
| | GUDGEON (SS-567) | | 3/1961- 1970s (On and off) |
| | GUITARRO (SSN-665) | | 12/1965-7/1968 (On and off) |
| | GURNARD (SSN-662) | | 12/1964-5/1967 (On and off) |
| | HADDO (SSN-604) | | 1970s (On and off) |
| | HADDOCK (SSN-621) | | late 1960's - 1970s (On and off) |
| | HALIBUT (SSN-587) | | 3/1961- 1970s (On and off approx. 5 years) |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Mare Island Naval Shipyard, Vallejo, CA (cont'd.) | Mare Island Naval Shipyard, Vallejo, CA: onboard various ships and submarines, including but not limited to: | Grinder | 3/13/1961-1974 |
| | | Grinder (Supervisor) | 1974-1984 |
| | | Code 365 Progress Man | 1984-1990 |
| | <u>HAMMERHEAD</u> (SSN-663) | | 1970s |
| | <u>HAWKBILL</u> (SSN-666) | | Late 1960s - Early 1970s |
| | <u>JOHN C. CALHOUN</u> (SSBN-630) | | Early 1970s |
| | <u>KAMEHAMEHA</u> (SSBN-642) | | 5/1963-1/1965 (On and off) |
| | <u>LA JOLLA</u> (SSN-701) | | 1976-1984 (On and off) |
| | <u>LONG BEACH</u> (CGN-9) | | 3/1961- Early 1970s, (On and off, approx. 6 months) |
| | <u>MARIANO G VALLEJO</u> (SSBN-658) | | 7/1964-10/1965 (On and off) |
| | <u>NAUTILUS</u> (SSN-571) | | 3/1980 |
| | <u>PARCHE</u> (SSN-683) | | Late 1970s -1984 (On and off) |
| | <u>PERMIT</u> (SSN-594) | | 3/1961- 1962 (On and off) |
| | <u>PINTADO</u> (SSN-672) | | 3/1961-2/1967 |
| | <u>PLUNGER</u> (SSN-595) | | 3/1961-1962 (On and off ) |
| | <u>POGY</u> (SSN-647) | | 1964-1974 (On and off) |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Mare Island Naval Shipyard, Vallejo, CA (cont'd.) | Mare Island Naval Shipyard, Vallejo, CA: onboard various ships and submarines, including but not limited to: | Grinder | 3/13/1961-1974 |
| | | Grinder (Supervisor) | 1974-1984 |
| | | Code 365 Progress Man | 1984-1990 |
| | POLLACK (SSN-603) | | Early 1970s |
| | PROTEUS (AS-19) | | 3/1961-1984 (On and off) |
| | RICHARD B. RUSSELL (SSN-687) | | Late 1970s - 1984 (On and off) |
| | ROBERT E. LEE (SSBN-601) | | 3/1961- 1970s (On and off) |
| | SALMON (SS-573; AGSS-573) | | 3/1961-1974 |
| | SCAMP (SSN-588) | | 3/1961-10/1961 (On and off) |
| | SEAWOLF (SSN-575) | | 1/1971- 6/1973; 9/1973-1987 (On and off, a total of 6 mos- 1 yr) |
| | SKATE (SSN-578) | | 3/1961- 1970s (On and off) |
| | SNOOK (SSN-592) | | 11/1961-12/1961 |
| | STONEWALL JACKSON (SSBN-634) | | 7/1962-11/1963 (On and off) |
| | TANG (AGSS-563) | | 1/1976-1/1977 (On and off) |
| | THOMAS JEFFERSON (SSBN-618) | | 3/1961-2/1962 (On and off) |
| | TRIESTE II (X-1) | | Mid 1960s |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Mare Island Naval Shipyard, Vallejo, CA (cont'd.) | Mare Island Naval Shipyard, Vallejo, CA: onboard various ships and submarines, including but not limited to: | Grinder | 3/13/1961-1974 |
| | | Grinder (Supervisor) | 1974-1984 |
| | | Code 365 Progress Man | 1984-1990 |
| | <u>TRIGGER</u> (SS-562) | | 3/1960-1984 (On and off) |
| | <u>TROUT</u> (SS-566) | | 3/1961-1978 |
| | <u>WAHOO</u> (SS-565) | | 3/1961-1969 |
| | <u>WOODROW WILSON</u> (SSBN-624) | | 9/1961-2/1963 (On and off) |
| Mare Island Naval Shipyard | Long Beach Naval Shipyard, Long Beach, CA <u>CHICAGO</u> (CG-11) | Grinder | 1974 (Approx. 1 month) |
| Mare Island Naval Shipyard | Pearl Harbor Naval Shipyard, Honolulu, HI various nuclear submarines | Driller | 1971 (Approx. 7 days) |

<u>NON-OCCUPATIONAL EXPOSURE</u>:

Friction:  Between 1963 and the mid 1980s, plaintiff helped friends and relatives remove and replace brake shoes on his and their vehicles at least 13 times.  Plaintiff handled brake shoes and helped remove clutches, disturbing gaskets.  Plaintiff purchased replacement brake shoes at DIGERUD AUTO PARTS (GENUINE PARTS COMPANY), Fairfield, California, in the 1960s, and NAPA AUTO PARTS (GENUINE PARTS COMPANY), Fairfield, California in the 1970s  In approximately 1967, plaintiff helped remove and replace the original manufacturer's brake shoes in a 1965 Plymouth (Chrysler LLC) Barracuda that he purchased new.  Plaintiff cleaned the brake assembly with an air hose.

In approximately 1974 or 1975, plaintiff helped remove and replace the original manufacturer's brake shoes in a 1971 Plymouth (Chrysler LLC) Satellite station wagon that he purchased new.  Plaintiff cleaned the brake assembly with an air hose.

In approximately 1975, plaintiff helped remove and replace the original manufacturer's brake shoes in a 1973 FORD 3/4 ton pickup truck that he purchased new.  Plaintiff cleaned the brake assembly with an air hose.

///

///

1

2

In approximately 1979, plaintiff helped remove and replace the original manufacturer's brake shoes in a 1977 CHEVROLET (GENERAL MOTORS CORPORATION) Blazer that he purchased new.  Plaintiff cleaned the brake assembly with an air hose.

3

Plaintiff currently contends he was exposed to asbestos during this vehicle repair work.

4

Home Repair:

5

6

In the 1970s, plaintiff scraped off the "popcorn" ceiling in his house at 356 E. Pacific Avenue, Fairfield, California.  Plaintiff bought this tract home in 1966 from the developer, Wilford Estates.  Plaintiff currently contends he was exposed to asbestos during this home improvement work.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28