ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:11-cv-06382-WHA

Meyer et al v. General Electric Company et al
Assigned to: Hon. William Alsup
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 12/16/2011
Jury Demand: Both
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

**Plaintiff**

**Ruth Ann Meyer**                    represented by  **Alan R. Brayton**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      PO Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      Brayton Purcell LLP
                                                      222 Rush Landing Road
                                                      PO Box 6169
                                                      Novato, CA 94948-6169
                                                      415-898-1555
                                                      Fax: 415-898-1247
                                                      Email: DDonadio@braytonlaw.com
                                                      *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Clayton Meyer**                     represented by  **Alan R. Brayton**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **David R. Donadio**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**          represented by  **Allison Michele Low**
                                                      Sedgwick LLP
                                                      333 Bush Street
                                                      30th Floor
                                                      San Francisco, CA 94104-2834

415-781-7900
Fax: 415-781-2635
Email: allison.low@sedgwicklaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Foster Wheeler LLC**                    represented by    **Shelley Kaye Tinkoff**
*formerly known as*                                          Brydon Hugo and Parker
Foster Wheeler Corporation                                   135 Main Street, 20th Floor
                                                             San Francisco, CA 94105
                                                             (415) 808-0300
                                                             Email: tinkoff@bhplaw.com
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Harley-Davidson Motor Company,**        represented by    **Randall K. Bernard**
**Inc.**                                                     Brydon Hugo & Parker
                                                             135 Main Street, 18th Floor
                                                             San Francisco, CA 94105
                                                             415 808-0358
                                                             Email: rbernard@bhplaw.com
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Huntington Ingalss Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**General Dynamics Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/16/2011 | 1 | COMPLAINT for Asbestos Personal Injury/Products Liability/Loss of Consortium; Demand for Jury Trial against CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Harley-Davidson Motor Company, Inc., Huntington Ingalss Incorporated (Filing fee $ 350.00, receipt number 34611068276). Filed by Ruth Ann Meyer, Clayton Meyer. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 2 | Certificate of Interested Entities by Clayton Meyer, Ruth Ann Meyer (gba, |

| | | |
|---|---|---|
| | | COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 3 | NOTICE of Tag-Along Action by Clayton Meyer, Ruth Ann Meyer (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 4 | Summons Issued as to CBS Corporation, Foster Wheeler LLC, General Dynamics Corporation, General Electric Company, Harley-Davidson Motor Company, Inc., Huntington Ingalss Incorporated. (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 5 | Declination to Proceed Before a U.S. Magistrate Judge by Clayton Meyer, Ruth Ann Meyer. (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/16/2011 | 6 | ADR SCHEDULING ORDER: Case Management Statement due by 3/22/2012. Case Management Conference set for 3/29/2012 10:00 AM in Courtroom 3, 17th Floor, San Francisco. (gba, COURT STAFF) (Filed on 12/16/2011) (Entered: 12/20/2011) |
| 12/21/2011 | 7 | RECUSAL ORDER. Signed by Judge Richard Seeborg on 12/21/11. (cl, COURT STAFF) (Filed on 12/21/2011) (Entered: 12/21/2011) |
| 12/28/2011 | 8 | ORDER, Case reassigned to Hon. William Alsup. Hon. Richard Seeborg no longer assigned to the case. Signed by Executive Committee on 12/28/11. (ha, COURT STAFF) (Filed on 12/28/2011) (Entered: 12/28/2011) |
| 01/24/2012 | 9 | ANSWER to Complaint with Jury Demand byGeneral Electric Company. (Low, Allison) (Filed on 1/24/2012) (Entered: 01/24/2012) |
| 01/24/2012 | 10 | Certificate of Interested Entities by General Electric Company (Low, Allison) (Filed on 1/24/2012) (Entered: 01/24/2012) |
| 01/24/2012 | 11 | NOTICE of Lis Pendens by Allison Michele Low (Low, Allison) (Filed on 1/24/2012) (Entered: 01/24/2012) |
| 01/25/2012 | 12 | ANSWER to Complaint with Jury Demand byHarley-Davidson Motor Company, Inc.. (Attachments: # 1 Certificate/Proof of Service)(Bernard, Randall) (Filed on 1/25/2012) (Entered: 01/25/2012) |
| 01/25/2012 | 13 | Certificate of Interested Entities by Harley-Davidson Motor Company, Inc. identifying Corporate Parent Harley-Davidson, Inc., Corporate Parent General Electric Company, Corporate Parent CBS Corporation (FKA VIACOM INC., fka Westinghouse Electric Corporation), Other Affiliate Foster Wheeler LLC (FKA Foster Wheeler Corporation), Other Affiliate Huntington Ingalls Incorporated (FKA Northrop Grumman Shipbuilding, Inc.) for Harley-Davidson Motor Company, Inc.. re 12 Answer to Complaint (Bernard, Randall) (Filed on 1/25/2012) (Entered: 01/25/2012) |
| 01/25/2012 | 14 | NOTICE by Harley-Davidson Motor Company, Inc. re 12 Answer to Complaint, 13 Certificate of Interested Entities,, *Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1* (Bernard, Randall) (Filed on 1/25/2012) (Entered: 01/25/2012) |
| 01/27/2012 | 15 | ANSWER to Complaint with Jury Demand *with Proof of Service* byFoster |

| | | Wheeler LLC. (Tinkoff, Shelley) (Filed on 1/27/2012) (Entered: 01/27/2012) |
|---|---|---|
| 01/27/2012 | 16 | Certificate of Interested Entities by Foster Wheeler LLC re 15 Answer to Complaint *with Proof of Service* (Tinkoff, Shelley) (Filed on 1/27/2012) (Entered: 01/27/2012) |
| 01/27/2012 | 17 | NOTICE by Foster Wheeler LLC re 15 Answer to Complaint, 16 Certificate of Interested Entities *Notice of Tag Along Action with Proof of Service* (Tinkoff, Shelley) (Filed on 1/27/2012) (Entered: 01/27/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 02/01/2012 15:20:46 | | | |
| **PACER Login:** | bh1524 | **Client Code:** | 4801-2654 |
| **Description:** | Docket Report | **Search Criteria:** | 3:11-cv-06382-WHA |
| **Billable Pages:** | 3 | **Cost:** | 0.24 |

AO 440 (Rev. 12/09) Summons in a Civil Action

I am hereby deputize and appoint R Swisher 1/4/12
my special deputy, to serve and execute the within writ.
Witness my hand this ____ Day of ____ AD

Sheriff

2012 JAN -3 A 10: 19

E-filing   16027989

## UNITED STATES DISTRICT COURT

### for the

### Northern District of California

CV 11   6882

RS

RUTH ANN MEYER and CLAYTON MEYER,
*Plaintiffs,*

v.

GENERAL ELECTRIC COMPANY, et al.,
*Defendants.*

)
)
)
)
)
)
)
)
)

Civil Action No. _____

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
SEE ATTACHED

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

David R. Donadio, Brayton✤Purcell LLP, 222 Rush Landing Road, Novato, California  94948-6169

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*
Richard W. Weiking
MARY ANN BUCKLEY

Date:   DEC 1 6 2011

_____
*Signature of Clerk of Court or Deputy Clerk*

# ATTACHMENT TO SUMMONS

GENERAL ELECTRIC COMPANY

CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)

FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)

HARLEY-DAVIDSON MOTOR COMPANY, INC.

HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)

GENERAL DYNAMICS CORPORATION

BRAYTON✦PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1   ALAN R. BRAYTON, ESQ., S.B. #73685
    DAVID R. DONADIO, ESQ., S.B. #154436
2   BRAYTON✦PURCELL LLP
    Attorneys at Law
3   222 Rush Landing Road
    P.O. Box 6169
4   Novato, California  94948-6169
    (415) 898-1555
5   (415) 898-1247 (Fax No.)

6   Attorneys for Plaintiffs

7

8                  UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                   SAN FRANCISCO DIVISION

11  RUTH ANN MEYER and                    )   CV  11        6382
    CLAYTON MEYER,                        )
12                                        )
            Plaintiffs,                   )
13                                        )   COMPLAINT FOR ASBESTOS
    vs.                                   )   PERSONAL INJURY/ PRODUCTS
14                                        )   LIABILITY/LOSS OF CONSORTIUM;
    GENERAL ELECTRIC COMPANY, CBS         )   DEMAND FOR JURY TRIAL
15  CORPORATION (FKA VIACOM INC.,         )
    FKA WESTINGHOUSE ELECTRIC             )
16  CORPORATION), FOSTER WHEELER          )
    LLC (FKA FOSTER WHEELER               )
17  CORPORATION), HARLEY-                 )
    DAVIDSON MOTOR COMPANY, INC.,         )
18  HUNTINGTON INGALLS                    )
    INCORPORATED (FKA NORTHROP            )
19  GRUMMAN SHIPBUILDING, INC.),          )
    GENERAL DYNAMICS                      )
20  CORPORATION,                          )
                                          )
21          Defendants.                   )

22

23

24

25

26

27

28

ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

E-filing

ORIGINAL FILED
2011 DEC 16  P 2: 45
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RS

K:\Injured\115643\FED\PLD\cmp-pilcp2expMet.wpd

# I.

## PARTIES

1.     Plaintiff in this action, RUTH ANN MEYER, has sustained asbestos-related lung injuries as a result of her inhalation of asbestos fibers through her husband, CLAYTON MEYER's occupational exposure to asbestos.  Plaintiff, CLAYTON MEYER, has sustained loss of consortium as set forth in the Fourth Cause of Action.

2.     Plaintiff RUTH ANN MEYER sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's husband, CLAYTON MEYER's jobsites.

3.     The pathogenesis of Plaintiff RUTH ANN MEYER's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4.     All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff's husband, CLAYTON MEYER's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff RUTH ANN MEYER, resulting in cumulative, progressive, incurable lung diseases.

5.     Plaintiff claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's husband, CLAYTON MEYER's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6.     As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff RUTH ANN MEYER.

7.     Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the

///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1 State of California, and that said defendants have regularly conducted business in the County of

2 San Francisco, State of California.

### II.

### JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiffs RUTH ANN MEYER and CLAYTON MEYER are both citizens of the State of Washington.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION) | Delaware/New York |
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |
| HARLEY-DAVIDSON MOTOR COMPANY, INC. | Wisconsin |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia/California |
| GENERAL DYNAMICS CORPORATION | Delaware/Virginia |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

///

///

# III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence)

PLAINTIFF RUTH ANN MEYER COMPLAINS OF DEFENDANTS GENERAL

ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM INC., FKA

WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER

WHEELER CORPORATION), HARLEY-DAVIDSON MOTOR COMPANY, INC.,

HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN

SHIPBUILDING, INC.), GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE

ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE

ALLEGES:

10.    At all times herein mentioned, each of the named defendants was the successor,

successor in business, successor in product line or a portion thereof, assign, predecessor,

predecessor in business, predecessor in product line or a portion thereof, parent, holding

company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole

or partial owner of or member in an entity researching, studying, manufacturing, fabricating,

designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,

representing, endorsing servicing, installing, contracting for installation, repairing, marketing,

warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

otherwise directing and/or facilitating the use of, or advertising a certain product, namely

asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be

called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

conduct of each successor, successor in business, successor in product line or a portion thereof,

assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

1   designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

2   sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

3   rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

4   products containing asbestos. The following defendants, and each of them, are liable for the acts

5   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

6   destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

7   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

8   ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each

9   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

10   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

11   originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION (F/K/A VIACOM INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) | VIACOM, INC. <br> CBS CORPORATION <br> WESTINGHOUSE ELECTRIC CORPORATION <br> WESTINGHOUSE ELECTRIC AND MANUFACTURING COMPANY <br> B.F. STURTEVANT <br> KPIX TELEVISION STATION <br> PARAMOUNT COMMUNICATIONS, INC <br> GULF & WESTERN INDUSTRIES, INC. <br> NORTH & JUDD MANUFACTURING COMPANY |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY <br> HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED <br> TRUMBULL ELECTRIC MANUFACTURING COMPANY <br> G E INDUSTRIAL SYSTEMS <br> CURTIS TURBINES <br> PARSONS TURBINES <br> GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. <br> AVONDALE SHIPYARDS, INC. <br> CONTINENTAL MARITIME INDUSTRIES, INC. <br> EASTERN IDAHO CONSTRUCTION COMPANY <br> INGALLS SHIPBUILDING, INC. <br> NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY <br> NORTH CAROLINA SHIPBUILDING <br> NORTHROP GRUMMAN SHIP SYSTEMS, INC. <br> SERVICE ENGINEERING INDUSTRIES, INC. |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL DYNAMICS CORPORATION | CONVAIR |
| | VULTEE AIRCRAFT INC. |
| | CONSOLIDATED VULTEE AIRCRAFT CORPORATION |
| | ASBESTOS CORPORATION LIMITED |

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

12. At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

13. Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

///

14.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons," including Plaintiff's husband, CLAYTON MEYER, and those persons with whom he may have come into the physical proximity of, including but not limited to, persons in his family such as Plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15.     Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17.     Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18.     Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

21.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature and extent of which are not yet known to Plaintiff; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

///

24.     The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFF RUTH ANN MEYER COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), HARLEY-DAVIDSON MOTOR COMPANY, INC., HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AS FOLLOWS:

25.     Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26.     Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein who was exposed to asbestos from her husband, CLAYTON MEYER, whose exposure to

1    products was while they were being used in a reasonably foreseeable manner, thereby rendering

2    the same defective, unsafe and dangerous for use.

3        28.    "Exposed persons" did not know of the substantial danger of using said products.

4    Said dangers were not readily recognizable by "exposed persons." Said defendants, their

5    ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

6    which Plaintiff and others similarly situated were exposed.

7        29.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

8    to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

9    sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

10    marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

11    and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

12    did so with conscious disregard for the safety of "exposed persons" who came in contact with

13    said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

14    ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

15    death resulting from exposure to asbestos or asbestos-containing products, including, but not

16    limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part,

17    from scientific studies performed by, at the request of, or with the assistance of, said defendants,

18    their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

19    defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

20        30.    On or before 1930, and thereafter, said defendants, their ALTERNATE

21    ENTITIES and each of them, were aware that members of the general public and other "exposed

22    persons", who would come in contact with their asbestos and asbestos-containing products, had

23    no knowledge or information indicating that asbestos or asbestos-containing products could

24    cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

25    members of the general public and other "exposed persons", who came in contact with asbestos

26    and asbestos-containing products, would assume, and in fact did assume, that exposure to

27    asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

28    hazardous to health and human life.

31.     With said knowledge, said defendants, their ALTERNATE ENTITIES, and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, rebrand, manufacture for others, package and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

32.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33.     Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

1   products to be safe for their intended use but that their asbestos and asbestos-containing products
2   created an unreasonable risk of bodily harm to exposed persons.

3       34.    Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos
4   and various asbestos-containing products manufactured, fabricated, inadequately researched,
5   designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered
6   for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,
7   marketed, warranted, rebranded, manufactured for others, packaged and advertised by the
8   aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff
9   cannot identify precisely which asbestos or asbestos-containing products caused the injuries
10  complained of herein.

11      35.    Plaintiff relied upon defendants', their "alternate entities'", and each of their
12  representations, lack of warnings, and implied warranties of fitness of asbestos and their
13  asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has
14  been injured permanently as alleged herein.

15      36.    As a direct and proximate result of the actions and conduct outlined herein,
16  Plaintiff has suffered the injuries and damages previously alleged.

17      WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE
18  ENTITIES, and each of them, as hereinafter set forth.

19                          THIRD CAUSE OF ACTION
                          (Premises Owner/Contractor Liability)
20

21      AS AND FOR A FURTHER AND THIRD SEPARATE AND DISTINCT CAUSE OF
22  ACTION, PLAINTIFF COMPLAINS OF DEFENDANT HUNTINGTON INGALLS
23  INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), AND THEIR
24  ALTERNATE ENTITIES (hereinafter PREMISES OWNER/CONTRACTOR LIABILITY
25  DEFENDANTS), AND ALLEGES AS FOLLOWS:

26      37.    Plaintiff incorporates herein by reference, as though fully set forth herein, each
27  paragraphs 17 through 23 of the First Cause of Action herein.

28  ///

38.     At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS was a successor, successor-in-business, assign, predecessor,

predecessor-in-business, parent, holding company, venturer, co-venturer, subsidiary, wholly or

partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing

insulation, other building materials, products, and toxic substances to be constructed, installed,

maintained, used, replaced, repaired and/or removed on the respective premises owned, leased,

maintained, managed, and/or controlled by them.  Said entities shall hereinafter collectively be

called ALTERNATE ENTITIES.  Each of the herein-named defendants is liable for the tortious

conduct of each successor, successor-in-business, assign, predecessor-in-business, parent,

holding company, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially

owned entity, that caused the presence as aforesaid of said asbestos-containing insulation and

other toxic substances.  Said defendants, and each of them, are liable for the acts of each and

every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of

Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have

acquired the assets, or a portion thereof, of each such alternate entity; defendants, and each of

them, have caused the destruction of Plaintiff's remedy against each such alternate entity; each

such defendant has the ability to assume the risk-spreading role of each such

ALTERNATE ENTITY, and that each such defendant enjoys the goodwill originally attached to

each such ALTERNATE ENTITY.

39.     At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained,

managed, and/or controlled the premises.  The information provided is preliminary, based on

recall over events covering many years and further investigation and discovery may produce

more reliable information:

///

///

///

CONTRACTOR
DEFENDANTS

**Newport News Shipbuilding and Dry Dock Company**
HUNTINGTON INGALLS INCORPORATED
(FKA NORTHROP GRUMMAN
SHIPBUILDING, INC.)
(Alternate entities:  NEWPORT NEWS
SHIPBUILDING AND DRY DOCK
COMPANY;  INGALLS SHIPBUILDING, INC.)

| LOCATION | TIME PERIOD |
|---|---|
| Puget Sound Naval Shipyard, Bremerton, WA | 1973-3/1981 |
| ABRAHAM LINCOLN SSBN-602 | 1973-3/1981 |
| ARKANSAS CGN-41 | 1/1980-3/1981 |
| CALIFORNIA CGN-36 | 1978-3/1981 |
| CORAL SEA CVB-43; CVA-43; CV-43 | Mid 1970s |
| ENTERPRISE CVAN-65L CVN-65 | 1973-3/1981 |
| ETHAN ALLEN SSBN-608; SSN-608 | 1978-3/1981 |
| HUNLEY AS-31 | 1973-1976 |
| LEWIS AND CLARK SSBN-644 | 1978-3/1981 |
| PATRICK HENRY SSBN-599; SSN-599 | 1973-3/1981 |
| Puget Sound Naval Shipyard, Bremerton, WA | 1973-3/1981 |
| QUEENFISH SSN-651 | 1973-3/1981 |
| RANGER CVA-61; CV-61 | 1973-1978 |
| RAY SSN-653 | 1973-3/1981 |
| ROBERT E. LEE SSBN-601 | 1973-3/1981 |
| SAM HOUSTON SSBN-609 | 1973-3/1981 |

**INGALLS SHIPBUILDING, INC.**

| | |
|---|---|
| BARB SSN-596 | 1978-3/1981 |
| BLUEBACK SS-581 | 1973-3/1981 |
| DARTER SS-576 | 1973-3/1981 |
| GATO SSN-615 | 4/1973-3/1981 |
| GRAYLING SSN-646 | 4/1973-3/1981 |

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| **INGALLS SHIPBUILDING, INC.** HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) (Alternate entities: NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY; INGALLS SHIPBUILDING, INC.) (cont'd.) | Puget Sound Naval Shipyard, Bremerton, WA  <br>POGY SSN-647 | 1973-3/1981  <br>1973-3/1981 |
| | SCULPIN SSN-590 | 1973-3/1981 |

Additionally, Plaintiff's husband, CLAYTON MEYER, might have been present at these or other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

40.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid respective premises, by their own workers and/or by various unqualified or unskilled contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff's husband, CLAYTON MEYER, and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

41.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition, and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

42.     At all times relevant herein, Plaintiff's husband, CLAYTON MEYER, entered said premises and used or occupied each of said respective premises as intended and for each of

1   the respective PREMISES OWNER/ CONTRACTOR LIABILITY DEFENDANTS' benefit and

2   advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY

3   DEFENDANTS' request and invitation.  In so doing, Plaintiff's husband, CLAYTON MEYER,

4   was exposed to dangerous quantities of asbestos fibers and other toxic substances released into

5   the ambient air by the aforesaid hazardous conditions and activities managed, maintained,

6   initiated, and/or otherwise created, controlled, or caused by said PREMISES

7   OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

8        43.    Plaintiff at all times was unaware of the hazardous condition or the risk of

9   personal injury created by the aforesaid presence and use of asbestos products and materials and

10  other toxic substances on said premises.

11        44.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

12  LIABILITY DEFENDANTS, and each of them, remained in control of the premises where

13  Plaintiff's husband, CLAYTON MEYER, was performing his work.

14        45.    Said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS

15  retained control over safety and other related conditions and circumstances at Plaintiff's husband,

16  CLAYTON MEYER's job site(s) and affirmatively contributed to and exercised, or failed to

17  exercise, that control in a manner that caused Plaintiff's injuries from asbestos-containing

18  products.

19        46.    At all times mentioned herein, the PREMISES OWNER/CONTRACTOR

20  LIABILITY DEFENDANTS owed to Plaintiff's husband, CLAYTON MEYER, and others

21  similarly situated a duty to exercise ordinary care in the management of such premises so as to

22  avoid exposing workers such as Plaintiff's husband, CLAYTON MEYER, to an unreasonable

23  risk of harm and to avoid causing injury to said person.

24        47.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

25  LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

26  reasonable care should have known, that the premises that were in their control would be used

27  without knowledge of, or inspection for, defects or dangerous conditions and that the persons

28  ///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1  present and using said premises would not be aware of the aforesaid hazardous conditions to

2  which they were exposed on the premises.

3       48.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

4  LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect,

5  survey, or control said premises, or to abate, or correct, or to warn Plaintiff of, the existence of

6  the aforesaid dangerous conditions and hazards on or about said premises.

7       49.    Prior to and at the times and places aforesaid, said PREMISES

8  OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused

9  certain asbestos-containing insulation, other building materials, products, and toxic substances to

10  be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their

11  aforesaid respective premises, by their own workers and/or by employing various contractors,

12  and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances

13  into the ambient air and thereby injured Plaintiff.

14       50.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

15  LIABILITY DEFENDANTS, and each of them:

16       a.  Should have recognized that the work of said contractors would create during

17  the progress of the work, dangerous, hazardous, and unsafe conditions, which could or would

18  harm Plaintiff's husband, CLAYTON MEYER, and others unless special precautions were taken;

19       b.  Knew or had reason to know, that the contractors it had selected and hired to

20  install, remove, abate, or otherwise handle asbestos-containing materials were unfit, unskilled,

21  unlicenced, or otherwise unqualified to do so;

22       c.  Failed to use reasonable care to discover whether the contractors it selected and

23  hired to install, remove, abate, or otherwise handle asbestos-containing materials were

24  competent, or qualified to do so.

25       51.    In part, Plaintiff's husband, CLAYTON MEYER, and thereafter Plaintiff were

26  exposed to dangerous asbestos fibers and other toxic substances by reason of such contractors'

27  failure to take the necessary precautions.

28  ///

52.     The work of contractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances, including but not limited to asbestos.

53.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS.  Said negligent conduct includes, but is not limited to:

a.     Failure to warn of asbestos and other toxic dusts;

b.     Failure to suppress the asbestos-containing or toxic dusts;

c.     Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

d.     Failure to provide adequate breathing protection, i.e., approved respirators or masks;

e.     Failure to inspect and/or test the air;

f.     Failure to provide medical monitoring.

g.     Failure to select and hire a careful and competent contractor or subcontractor.

54.     The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duties to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of, inter alia, common law, <u>California Civil Code</u> § 1714, and <u>California Labor Code</u> § 6400, <u>et seq.</u>, or <u>California Health and Safety Code</u> § 40.200, <u>et seq.</u>, and regulations promulgated thereunder.  Accordingly, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS are responsible for any breach of said duties whether by themselves or others.

55.     Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, standards, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant

1  to California Labor Code § 6400 and the California Administrative Code under the Division of

2  Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII,

3  Group 9 (Control of Hazardous Substances), Article 81, § 4150, § 4106, § 4107, and § 4108,

4  and Threshold Limit Values as documented for asbestos and other toxic substances under

5  Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code

6  § 40.200, et seq., which empowers the Bay Area Air Quality Management District (B.A.A.Q.D.)

7  to promulgate regulations including, but not limited to B.A.A.Q.D. Regulation 11, Rules 2 and

8  14, Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission

9  Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/

10 CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to

11 prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said

12 PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the

13 required safeguards and precautions, or contractors employed by the PREMISES

14 OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards

15 and precautions.  Defendants' violations of said codes include, but are not limited to:

16          (a)     Failing to comply with statutes and allowing ambient levels of airborne

17 asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned

18 statutes;

19          (b)     Failing to segregate work involving the release of asbestos or other toxic

20 dusts;

21          (c)     Failing to suppress dust using prescribed ventilation techniques;

22          (d)     Failing to suppress dust using prescribed "wet down" techniques;

23          (e)     Failing to warn or educate Plaintiff or others regarding asbestos or other

24 toxic substances on the premises;

25          (f)     Failing to provide approved respiratory protection devices;

26          (g)     Failing to ensure "approved" respiratory protection devices were used

27 adequately;

28 ///

1           (h)     Failing to provide for an on-going health screening program for those

2 exposed to asbestos on the premises;

3           (i)     Failing to provide adequate housekeeping and clean-up of the work place;

4           (j)     Failing to adequately warn of the hazards associated with asbestos as

5 required by these statutes;

6           (k)     Failing to adequately report renovation and disturbance of asbestos-

7 containing materials, including but not limited to <u>B.A.A.Q.M.D. Regulation</u> 11, Rules 2 and 14;

8           (l)     Failing to have an asbestos removal supervisor as required by regulation;

9           (m)    Failing to get approval for renovation as required by statutes; and

10          (n)     Failing to maintain records as required by statute.

11    56.    PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of

12 them, were the "statutory employer" of the Plaintiff's husband, CLAYTON MEYER, as defined

13 by the <u>California Labor Code</u> and California case law.

14    57.    Plaintiff's husband, CLAYTON MEYER, at all times was unaware of the

15 hazardous condition or the risk of personal injury created by defendants' violation of said

16 regulations, ordinances, or statutes.

17    58.    At all times mentioned herein, Plaintiff's husband, CLAYTON MEYER, was a

18 member of the class of persons whose safety was intended to be protected by the regulations,

19 standards, statutes, or ordinances described in the foregoing paragraphs.

20    59.    At all times mentioned herein, said PREMISES OWNER/CONTRACTOR

21 LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and

22 reasonable care should have known, that the premises that were in their control would be used

23 without knowledge of, or inspection for, defects or dangerous conditions, that the persons present

24 and using said premises would not be aware of the aforesaid hazardous conditions to which they

25 were exposed on the premises, and that such persons were unaware of the aforesaid violations of

26 codes, regulations, and statutes.

27 ///

28 ///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1    60.    As a proximate result of the foregoing, Plaintiff developed asbestos-related

2  illness, which has caused great injury and disability as previously set forth, and Plaintiff, has

3  suffered damages as herein alleged.

4    WHEREFORE, Plaintiff, prays judgment against defendants, their ALTERNATE

5  ENTITIES, and each of them, as hereinafter set forth.

FOURTH CAUSE OF ACTION
(Loss of Consortium)

8    AS AND FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF

9  ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF CLAYTON MEYER COMPLAINS OF

10  DEFENDANTS GENERAL ELECTRIC COMPANY, CBS CORPORATION (FKA VIACOM

11  INC., FKA WESTINGHOUSE ELECTRIC CORPORATION), FOSTER WHEELER LLC

12  (FKA FOSTER WHEELER CORPORATION), HARLEY-DAVIDSON MOTOR COMPANY,

13  INC., HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN

14  SHIPBUILDING, INC.), GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE

15  ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

16    61.    Plaintiffs incorporate by reference each and every paragraph of the First through

17  Third Causes of Action herein.

18    62.    Plaintiffs RUTH ANN MEYER and CLAYTON MEYER were married on

19  March 30, 1973, and at all times relevant to this action were, and are now, husband and wife.

20    63.    Prior to Plaintiff RUTH ANN MEYER's injuries as alleged, she was able and did

21  perform duties as a spouse.  Subsequent to the injuries and as a proximate result thereof, RUTH

22  ANN MEYER has been unable to perform the necessary duties as a spouse and the work and

23  service usually performed in the care, maintenance and management of the family home, and she

24  will be unable to perform such work, service and duties in the future.  As a proximate result

25  thereof, plaintiff CLAYTON MEYER has been permanently deprived and will be deprived of the

26  consortium of his spouse, including the performance of duties, all to his damages, in an amount

27  presently unknown but which will be proved at the time of trial.

28  ///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

64.     Plaintiff CLAYTON MEYER's discovery of the cause of his loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

65.     As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff RUTH ANN MEYER as set forth in this complaint, plaintiff CLAYTON MEYER has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

IV.

PRAYER

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them in an amount to be proved at trial, as follows:

Plaintiff RUTH ANN MEYER:

(a)     For Plaintiff's general damages according to proof;

(b)     For Plaintiff's loss of income, wages and earning potential according to proof;

(c)     For Plaintiff's medical and related expenses according to proof;

Plaintiff CLAYTON MEYER:

(d)     For Plaintiff's damages for loss of consortium according to proof;

Plaintiffs RUTH ANN MEYER and CLAYTON MEYER:

(d)     For Plaintiffs' cost of suit herein;

(e)     For exemplary or punitive damages according to proof;

(f)     For damages for fraud according to proof; and

(g)     For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest.

Dated:  12 | 15 | 11                         BRAYTON❖PURCELL LLP

By: _____
David R. Donadio
Attorneys for Plaintiffs

1

### JURY DEMAND

2      Plaintiffs hereby demand trial by jury of all issues of this cause.

3

4    Dated: _____ 12/15/11 _____          BRAYTON❖PURCELL LLP

5

6                                        By: _____
                                             David R. Donadio
7                                            Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

EXHIBIT A

Plaintiff: RUTH ANN MEYER

Plaintiff's injuries:  Plaintiff was diagnosed with lung cancer on or about April 2011.

Retirement Status:

Plaintiff retired from her last place of employment at regular retirement age.  She has therefore suffered no disability from her asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.  Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

NON-OCCUPATIONAL EXPOSURE:

Friction:  Plaintiff lived with her husband, marine machinist Clayton Meyer, c/o Brayton ✢Purcell, from their marriage on March 30, 1973 until March 1981.  Subsequently, plaintiff and Clayton Meyer have been living together from midsummer 1986 to present.  They were remarried on Sept. 16, 1989.  Plaintiff shook out and washed the dusty work clothes of her husband, Clayton Meyer, c/o Brayton ✢ Purcell, after he worked on the family vehicles from the beginning of their marriage on March 30, 1973 until March 1981, and then from midsummer 1986 to present.  Plaintiff's husband removed and replaced brake shoes two dozen times, clutches at least seven times,  mufflers and exhaust pipe at least twice, and gaskets, including exhaust pipe gaskets, pan gaskets and valve cover gaskets, at least 10 times. Plaintiff's husband purchased replacement auto parts, including RAYBESTOS ( RAYMARK INDUSTRIES, INC.) replacement brake shoes, from NAPA AUTO PARTS (GENUINE PARTS COMPANY) in Bremerton, Washington, and SCHUCK'S AUTO SUPPLY (CSK AUTO, INC.) in Bremerton, Washington.

Plaintiff's husband replaced the brakes in a 1970 (HARLEY (HARLEY-DAVIDSON MOTOR COMPANY, INC.) motorcycle in 1973, purchasing replacement brakes from a  HARLEY (HARLEY-DAVIDSON MOTOR COMPANY, INC.) dealer in or near  Bremerton, Washington. Plaintiff's husband performed this work in the garage of their home on Broad Street in Bremerton, Washington.  Plaintiff currently contends she was exposed to asbestos as a result of her husband's vehicle repair work.

Home Repair:  Plaintiff was present in 1973 when her husband removed and replaced drywall and vinyl floor tiles in their home on Broad Street in Bremerton, Washington, installing new ARMSTRONG (ARMSTRONG WORLD INDUSTRIES, INC.) sheet vinyl.  Plaintiff currently contends she was exposed to asbestos as a result of her husband's home repair work.

///

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1  <u>PARA-OCCUPATIONAL EXPOSURE</u>:

2  Plaintiff lived with her husband, marine machinist Clayton Meyer, c/o Brayton ❖Purcell, from
   their marriage on March 30, 1973 until March 1981.  Subsequently, plaintiff and Clayton Meyer
3  have been living together from midsummer 1986 to present.  They were remarried on Sept. 16,
   1989.  After work, plaintiff's husband came home in his work clothes and sat on chairs and beds and
4  walked on rugs before removing his dusty work clothes. Plaintiff stacked the clothes near the
   washing machine off the kitchen then shook them out and laundered them. Plaintiff's husband's
5  work history is as follows:

6  Plaintiff lived with her husband, marine machinist Clayton Meyer, c/o Brayton ❖Purcell, from
   their marriage on March 30, 1973, until March 1981.  Subsequently, plaintiff and Clayton Meyer
7  have been living together from midsummer 1986 to present.  They were remarried on September
   16, 1989.  After work, plaintiff's husband came home in his work clothes and sat on chairs and
8  beds and walked on rugs before removing his dusty work clothes.  Plaintiff stacked the clothes
   near the washing machine off the kitchen then shook them out and laundered them.  Plaintiff's
9  husband's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1973-3/1981 |
| | ABRAHAM LINCOLN (SSBN-602) | | 1973-3/1981 |
| | ALEXANDER HAMILTON (SSBN-617) | | |
| | ARKANSAS (CGN-41) | | 1978-3/1981 |
| | BAINBRIDGE (CGN-25) | | on and off, a total of approx. 1 year |
| | BARB (SSN-596) | | |
| | BATFISH (SSN-681) | | on and off, approx. 3 months |
| | BLUEBACK (SSS-581) | | |
| | CALIFORNIA (CGN-36) | | 3/1981 (4 or 5 weeks) |
| | CONSTELLATION (CVA-64) | | 1973-3/1981 |
| | CORAL SEA (CVB-43) | | mid 1970s |
| | DANIEL BOONE (SSBN-629) | | 1973-3/1981 |
| | DANIEL WEBSTER (SSBN-626) | | approx. 1 year |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1973-3/1981 |
| | DARTER (SS-576) | | |
| | DRUM (SSN-677) | | |
| | ENTERPRISE (CVN-65) | | on and off (approx. 1 ½ years) |
| | ETHAN ALLEN (SSBN-608) | | |
| | FLASHER (SSN-613) | | |
| | FRANCIS SCOTT KEY (SSBN-657) | | |
| | GATO (SSN-615) | | |
| | GEORGE C. MARSHALL (SSBN-654) | | |
| | GEORGE WASHINGTON (SSBN-598) | | |
| | GRAYBACK (APSS-574) | | |
| | GRAYLING (SSN-646) | | |
| | GUDGEON (SS-567) | | 1973-3/1981 |
| | GUITARRO (SSN-665) | | |
| | HALIBUT (SSGN-587) | | 1973-1976 |
| | HAWKBILL (SSN-666) | | |
| | HUNLEY (AS-31) | | 1973-1976 (6 to 8 months) |
| | JOHN ADAMS (SSBN-620) | | 1972-3/1981 |
| | KITTY HAWK (CV-63) | | 1972-1978 (on and off, approx. 1 year) |
| | LEWIS AND CLARK (SSBN-644) | | 1973-1987 1973-3/1981 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Marine Machinist | 1973-3/1981 |
| | LONG BEACH (CGN-9) | | |
| | PATRICK HENRY (SSBN-599) | | 1973-3/1981 |
| | PERMIT (SSN-594) | | |
| | PINTADO (SSN-672) | | |
| | PLUNGER (SSN-595) | | |
| | POGY (SSN-647) | | |
| | QUEENFISH (SSN-651) | | |
| | RANGER (CVA-61) | | 1973-1978 (1 yr on and off) |
| | RAY (SSN-653) | | 1973-3/1981 |
| | ROBERT E. LEE (SSBN-601) | | |
| | SAM HOUSTON (SSBN-609) | | |
| | SCAMP (SSN-588) | | |
| | SCULPIN (SSN-590) | | |
| | STURGEON (SSN-637) | | |
| | TAUTOG (SSN-639) | | |
| | Machine Shop 31 | | 1973-3/1981 |

COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL