ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:12-cv-00905-SI

| | |
|---|---|
| Fields et al v. General Electric Company et al | Date Filed: 02/23/2012 |
| Assigned to: Hon. Susan Illston | Jury Demand: Plaintiff |
| Cause: 28:1332 Diversity-Asbestos Litigation | Nature of Suit: 368 P.I. : Asbestos |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Donald Fields** represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Shirley Fields** represented by **David R. Donadio**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan R. Brayton**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

| Date Filed | # | Docket Text |
|---|---|---|
| 02/23/2012 | 6 | Summons Issued as to Foster Wheeler LLC, General Electric Company. (ysS, COURT STAFF) (Filed on 2/23/2012) (Entered: 02/24/2012) |
| 02/23/2012 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 6/1/2012. Case Management Conference set for 6/8/2012 02:30 PM. (Attachments: # 1 standing orders and cmc order)(ysS, COURT STAFF) (Filed on 2/23/2012) (Entered: 02/24/2012) |
| 02/23/2012 | 4 | NOTICE of Tag-Along Action by Donald Fields, Shirley Fields. (ysS, COURT STAFF) (Filed on 2/23/2012) (Entered: 02/24/2012) |
| 02/23/2012 | 3 | Declination to Proceed Before a U.S. Magistrate Judge by Donald Fields, Shirley Fields. (ysS, COURT STAFF) (Filed on 2/23/2012) (Entered: 02/24/2012) |
| 02/23/2012 | 2 | Certificate of Interested Entities or Persons by Donald Fields, Shirley Fields. (ysS, COURT STAFF) (Filed on 2/23/2012) (Entered: 02/24/2012) |
| 02/23/2012 | 1 | COMPLAINT against Foster Wheeler LLC, General Electric Company ( Filing fee $ 350, receipt number 34611070907.). Filed byShirley Fields, Donald Fields. (ysS, COURT STAFF) (Filed on 2/23/2012) (Entered: 02/24/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 02/24/2012 14:07:30 | | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-00905-SI |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

```
ALAN R. BRAYTON, ESQ., S.B. #73685
DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✦PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555
(415) 898-1247 (Fax No.)

Attorneys for Plaintiffs
```

ORIGINAL FILED
2012 FEB 23 P 1:24
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

SF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CV 12 0905

| | |
|---|---|
| DONALD FIELDS and SHIRLEY FIELDS,<br><br>Plaintiffs,<br><br>vs.<br><br>GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),<br><br>Defendants. | No. _____<br><br>COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL |

I.

**PARTIES**

1. Plaintiff in this action, DONALD FIELDS, has sustained asbestos-related lung injuries as a result of his inhalation of asbestos fibers through his occupational exposure to asbestos. Plaintiff, SHIRLEY FIELDS, has sustained loss of consortium as set forth in the Third Cause of Action.

2. Plaintiff DONALD FIELDS sustained an asbestos-related lung disease by the inhalation of asbestos fibers released during the handling of asbestos-containing products at Plaintiff's jobsites.

3. The pathogenesis of Plaintiff DONALD FIELDS's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4. All of Plaintiffs' claims arise out of repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Plaintiff DONALD FIELDS's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Plaintiff DONALD FIELDS, resulting in cumulative, progressive, incurable lung diseases.

5. Plaintiff DONALD FIELDS claims damages for an asbestos-related disease arising from a series of occurrences not dependent on Plaintiff's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Plaintiff, caused serious lung disease.

6. As used herein, Plaintiff shall mean the above-captioned asbestos-injured Plaintiff DONALD FIELDS.

7. Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned, Defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said defendants have regularly conducted business in the County of San Francisco, State of California.

## II.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

8. <u>Jurisdiction</u>: Plaintiff DONALD FIELDS is a citizen of the State of Virginia.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | New York/Connecticut |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | Delaware/New Jersey |

///

1  This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

9. <u>Venue / Intradistrict Assignment</u>. Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiff herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

### III.

### CAUSES OF ACTION

<u>FIRST CAUSE OF ACTION</u>
(Negligence)

PLAINTIFF DONALD FIELDS COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

10. At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

1  conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiff's remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |

11. At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

///

1  otherwise directing and/or facilitating the use of, or advertising a certain product, namely
2  asbestos and other products containing asbestos.
3  　　　12.　　At all times herein mentioned, defendants, their ALTERNATE ENTITIES and
4  each of them, singularly and jointly, negligently, and carelessly researched, manufactured,
5  fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
6  to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
7  supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
8  installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
9  rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
10 and other products containing asbestos, in that said products caused personal injuries to users,
11 consumers, workers, bystanders and others, including the Plaintiff herein, (hereinafter
12 collectively called "exposed persons"), while being used in a manner that was reasonably
13 foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by
14 "exposed persons".
15 　　　13.　　Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
16 exercise due care in the pursuance of the activities mentioned above and defendants, and each of
17 them, breached said duty of due care.
18 　　　14.　　Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
19 have known, and intended that the aforementioned asbestos and products containing asbestos and
20 related products and equipment, would be transported by truck, rail, ship, and other common
21 carriers, that in the shipping process the products would break, crumble, or be otherwise
22 damaged; and/or that such products would be used for insulation, construction, plastering,
23 fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
24 limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
25 breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the
26 release of airborne asbestos fibers, and that through such foreseeable use and/or handling
27 "exposed persons", including Plaintiff herein, would use or be in proximity to and exposed to
28 ///

said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

15. Plaintiff has used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff's exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to Plaintiff's complaint and incorporated by reference herein.

16. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the Plaintiff as set forth in **Exhibit A,** attached to Plaintiff's complaint and incorporated by reference herein.

17. Plaintiff is informed and believes, and thereon alleges, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

18. Plaintiff suffers from a condition related to exposure to asbestos and asbestos-containing products. Plaintiff was not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

19. As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Plaintiff has suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to Plaintiff's general damage.

20. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, Plaintiff has incurred, is presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays

1  and other medical treatment, the true and exact amount thereof being unknown to Plaintiff at this
2  time, and Plaintiff prays leave to amend this complaint accordingly when the true and exact cost
3  thereof is ascertained.

4      21.    As a further direct and proximate result of the said conduct of the defendants,
5  their "alternate entities," and each of them, Plaintiff has incurred pecuniary losses, the full nature
6  and extent of which are not yet known to Plaintiff; and leave is requested to amend this
7  complaint to conform to proof at the time of trial.

8      22.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
9  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
10 had full knowledge of, or should have known of, each of the acts set forth herein.

11     23.    Defendants, their "alternate entities," and each of them, are liable for the
12 fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
13 and each defendant's officers, directors and managing agents participated in, authorized,
14 expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
15 each of their ALTERNATE ENTITIES as set forth herein.

16     24.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
17 and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious
18 disregard and indifference to the safety and health of "exposed persons."  Plaintiff, for the sake of
19 example and by way of punishing said defendants, seeks punitive damages according to proof.

20     WHEREFORE, Plaintiff prays judgment against defendants, their "alternate entities," and
21 each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION
(Products Liability)

24 AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF
25 ACTION FOR PRODUCTS LIABILITY, PLAINTIFF DONALD FIELDS COMPLAINS OF
26 DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA
27 FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF
28 THEM, AS FOLLOWS:

25. Plaintiff incorporates herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

26. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

27. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

28. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which Plaintiff and others similarly situated were exposed.

29. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants,

1  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said
2  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

3       30.    On or before 1930, and thereafter, said defendants, their ALTERNATE
4  ENTITIES and each of them, were aware that members of the general public and other "exposed
5  persons", who would come in contact with their asbestos and asbestos-containing products, had
6  no knowledge or information indicating that asbestos or asbestos-containing products could
7  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that
8  members of the general public and other "exposed persons", who came in contact with asbestos
9  and asbestos-containing products, would assume, and in fact did assume, that exposure to
10 asbestos and asbestos-containing products was safe, when in fact said exposure was extremely
11 hazardous to health and human life.

12      31.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each
13 of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,
14 lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,
15 market, warrant, rebrand, manufacture for others, package and advertise said asbestos and
16 asbestos-containing products without attempting to protect "exposed persons" from or warn
17 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
18 asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn
19 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and
20 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,
21 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed
22 and suppressed said knowledge from "exposed persons" and members of the general public, thus
23 impliedly representing to "exposed persons" and members of the general public that asbestos and
24 asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their
25 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied
26 representations with the knowledge of the falsity of said implied representations.

27      32.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,
28 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

K:\Injured\113808\FED\PLD\cmp-fed-pilc.wpd          9
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

1  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products. In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff.

33. Plaintiff alleges that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34. Plaintiff further alleges his injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that Plaintiff cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

35. Plaintiff relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff has been injured permanently as alleged herein.

36. As a direct and proximate result of the actions and conduct outlined herein, Plaintiff has suffered the injuries and damages previously alleged.

///

WHEREFORE, Plaintiff prays judgment against defendants, their ALTERNATE ENTITIES, and each of them, as hereinafter set forth.

### THIRD CAUSE OF ACTION
(Loss of Consortium)

AS AND FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF SHIRLEY FIELDS COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

37. Plaintiffs incorporate by reference each and every paragraph of the First through Second Causes of Action herein.

38. Plaintiffs DONALD FIELDS and SHIRLEY FIELDS were married on August 15, 1991, and at all times relevant to this action were, and are now, husband and wife.

39. Prior to Plaintiff DONALD FIELDS's injuries as alleged, he was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, DONALD FIELDS has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and he will be unable to perform such work, service and duties in the future. As a proximate result thereof, Plaintiff SHIRLEY FIELDS has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

40. Plaintiff's discovery of the cause of her loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

41. As a direct and proximate result of the acts of defendants, their "alternate entities," and each of them, and the severe injuries caused thereby to Plaintiff DONALD FIELDS as set forth in this complaint, Plaintiff SHIRLEY FIELDS has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services,

///

1 | marital relations, society, comfort, companionship, love and affection of said spouse, and has
2 | suffered severe mental and emotional distress and general nervousness as a result thereof.
3 |     WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE
4 | ENTITIES, and each of them, as hereinafter set forth.

### IV.
### PRAYER

7 |     WHEREFORE, Plaintiffs pray judgment against defendants, their ALTERNATE
8 | ENTITIES, and each of them in an amount to be proved at trial, as follows:
9 | Plaintiff DONALD FIELDS:
10 |   (a)  For Plaintiff's general damages according to proof;
11 |   (b)  For Plaintiff's loss of income, wages and earning potential according to proof;
12 |   (c)  For Plaintiff's medical and related expenses according to proof;
13 | Plaintiff SHIRLEY FIELDS:
14 |   (d)  For Plaintiff's damages for loss of consortium according to proof;
15 | Plaintiffs DONALD FIELDS and SHIRLEY FIELDS:
16 |   (e)  For Plaintiffs' cost of suit herein;
17 |   (f)  For exemplary or punitive damages according to proof;
18 |   (g)  For damages for fraud according to proof; and
19 |   (h)  For such other and further relief as the Court may deem just and proper, including
20 | costs and prejudgment interest.
21 | Dated: 2/11/12     BRAYTON❖PURCELL LLP
22 |     By: _____
23 |     David R. Donadio
    Attorneys for Plaintiffs

### JURY DEMAND

25 | Plaintiffs hereby demand trial by jury of all issues of this cause.
26 | Dated: 2/11/12     BRAYTON❖PURCELL LLP
27 |     By: _____
28 |     David R. Donadio
    Attorneys for Plaintiffs

K:\Injured\113808\FED\PLD\cmp-fed-pilc.wpd      12
COMPLAINT FOR ASBESTOS PERSONAL INJURY/ PRODUCTS LIABILITY/ LOSS OF CONSORTIUM; DEMAND FOR JURY TRIAL

# EXHIBIT A

EXHIBIT A

Plaintiff: DONALD FIELDS

Plaintiff's injuries: Plaintiff was diagnosed with lung cancer on or about November 2010, with asbestosis on or about October 2010 and with asbestos-related pleural disease on or about July 2010.

Retirement Status:

Plaintiff retired from his last place of employment at regular retirement age. He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Esso Standard Oil Co. 115 Broadway New York, NY | Esso gas station, Winchester, VA | Mechanic (Assistant) | 1/1955-3/1955 (Approx. 2 weeks) |
| US Navy | Naval Training Center, Bainbridge, MD | Trainee | 1955 approx. 9 weeks |
| | CAPRICORNUS (AKA-57): Norfolk Naval Shipyard, Portsmouth, VA | Boilermaker | 12/30/1955-1960, on and off, a total of approx. 2 mos |
| | CAPRICORNUS (AKA-57): Unknown shipyard, New York | | 1959 or 1960, approx. 2 months |
| | CAPRICORNUS (AKA-57): Brooklyn Naval Shipyard, Brooklyn, NY | | 1960 approx. 2 months |
| | TUTUILA (ARG-4): Norfolk Naval Shipyard, Portsmouth, VA | | Spring or summer, 1960- 1961, approx. 1 ½ years |
| | Naval Weapons Station, Yorktown, VA | Recreational Director | Late 1961-1962, approx. 1 ½ years |
| | Naval Station, Philadelphia, PA Class B Boilermaker school | Boilermaker (Trainee) | 1962 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy (cont'd.) | JOHN WEEKS (DD-701) Norfolk Naval Shipyard, Portsmouth, VA | Boilermaker | Early 1963-1967, 1 ½ months |
| | Naval Air Station, North Island, San Diego, CA: Class C welding school | Welder (Trainee) | 1967-1968, 2 or 3 months |
| | COLUMBUS (CG-12) Norfolk Naval Shipyard, Portsmouth, VA | Boilermaker | 1968-1970, twice at this shipyard, a total of approx. 2 months |
| | SIERRA (AD-18), Norfolk Naval Shipyard, Portsmouth, VA | Boiler Tender | 3/1970-1972 |
| Robert J Ashworth RT 4 Box 4013A Virginia Beach, VA 23450 | Various commercial buildings, in and around Virginia Beach, VA, including: K-Mart, Virginia Beach, VA; Zehr's Food Markets, Virginia Beach, VA, area; Unknown bank, Great Bridge area of Chesapeake, VA | Welder | 7/1969-1970 (Approx. 4 weeks) |
| Unknown truck owner, Virginia Beach, VA | Unknown home garage, Virginia Beach, VA | Welder | 7/1969-1970, approx. 2 days |
| Melvin Curtis Allen, Crozier, VA 23039 | Waterfront, Virginia Beach, VA | Welder | 4/1970-6/1970, approx. 2 days |
| Machine Services, Inc. 3825 Holland Blvd. Chesapeake, VA 23323 | Machine Services, Inc. 3825 Holland Blvd. Chesapeake, VA; | Welder | 7/1970–9/1972 (Approx. 2 days) |
| | Norfolk Naval Shipyard, Portsmouth, VA | Boiler Tender | 7/1970–9/1972 (Approx. 2 days) |

///

///

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Little Creek Navy, Amphibious Base, Norfolk, VA | Little Creek Navy Amphibious Base, Norfolk, VA, AMSU repair shop | Boilermaker | 1972 - 9/30/1974 |
| | Little Creek Navy Amphibious Base, Norfolk, VA, Powerhouse 51 | | 3/1975-1992 |
| Tiedeman's Texaco 224 Battlefield Blvd. Chesapeake, VA 23320 | Tiedeman's Texaco 224 Battlefield Blvd. Chesapeake, VA | Mechanic (Assistant) | 7/1972-12/1972 (Approx. 2 weeks) |
| E.V. Williams Co., Inc. 925 S Military Highway Virginia Beach, VA PO Box 938 Norfolk, VA 23501 | E.V. Williams Co., Inc. 925 S Military Highway Virginia Beach, VA | Welder | 10/1973-3/1974 |
| George L. Gobble Construction, Abingdon, VA | Homes and roads, Abingdon, VA, area | Heavy Equipment Operator | 1992-09/30/2010 |

NON-OCCUPATIONAL EXPOSURE:

Friction: Plaintiff performed repair work on his personal vehicles. Plaintiff performed approximately 25 brake jobs and one clutch job prior to 1986. Plaintiff removed and replaced brakes, using his own breath and a rag to clean out the brake compartments and installing BENDIX (HONEYWELL INTERNATIONAL, INC.) brake shoes. Plaintiff regularly asked for BENDIX at auto parts stores, believing it to be the best brand available, and verified the product brand by the names on the boxes. Plaintiff hand sanded the replacement brake shoes. Plaintiff purchased the replacement clutch and brake shoes from SEARS, (SEARS, ROEBUCK AND CO.) 21st Street, Norfolk, Virginia, and PEP BOYS (PEP BOYS-MANNY, MOE & JACK), Little Creek Road, Norfolk, Virginia.

Plaintiff removed and replaced the original equipment manufacturer's brake shoes on the following vehicles:

A 1955 FORD (FORD MOTOR COMPANY) that he purchased used. Plaintiff removed and replaced the brake shoes in 1957, installing BENDIX (HONEYWELL INTERNATIONAL, INC.) replacement brake shoes that he purchased from PEP BOYS (PEP BOYS-MANNY, MOE & JACK), Little Creek Road, Norfolk, Virginia.

A 1968 PLYMOUTH (CHRYSLER LLC) that he purchased new in 1968. Plaintiff removed and replaced the brake shoes in 1970 and 1974, purchasing replacement BENDIX (HONEYWELL INTERNATIONAL, INC.) brake shoes from SEARS, ROEBUCK and CO.
A 1975 FORD (FORD MOTOR COMPANY) F-100 that he purchased new in 1975. Plaintiff removed and replaced the brake shoes four times. The first time, plaintiff purchased FORD MOTOR COMPANY brake shoes from the FORD MOTOR COMPANY dealership on Virginia Beach Blvd., Virginia Beach, California. The remaining three times, plaintiff purchased

1  replacement BENDIX (HONEYWELL INTERNATIONAL, INC.) brake shoes from SEARS, ROEBUCK and CO.

2

3  A 1970 VOLKSWAGON (VOLKSWAGEN GROUP OF AMERICA, INC. (FKA VOLKSWAGEN OF AMERICA, INC.) that he purchased in 1972.

   In 1980 or 1981, plaintiff also removed and replaced the brake shoes on a used 1967 Datsun,
4  installing brake shoes he purchased from the DATSUN (NISSAN NORTH AMERICA, INC.) dealership.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28