# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                             :
                             :
MILTON FORDHAM et al,    :   S.D.N.Y 12 Civ. 1145 (PAE)
                             :
        Plaintiffs,      :
                             :
v.                          :
                             :   Hon. Paul A. Engelmayer
ASBEKA INDUSTRIES et al.,    :
                             :
        Defendants     :
                             :
------------------------------------------------------X


### PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF THEIR EMERGENCY MOTION TO REMAND AND
### MOTION TO STRIKE DEFENDANTS' AFFIDAVITS

### ORAL ARGUMENT REQUESTED


**Kush Shukla, Esq.**
Wilentz, Goldman & Spitzer P.A.
110 William Street 26th floor,
New York, New York 10038-3927
Tel: 646-746-8916
Fax: 732-726-6604
e-mail: kshukla@wilentz.com
*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**PAGE**

I. FACTS SHOWING THE EXISTENCE AND NATURE OF EMERGENCY .........................1

II. PRELIMINARY STATEMENT ...................................................................................4

III. STATEMENT OF FACTS ..........................................................................................4

IV. LEGAL ARGUMENT ...............................................................................................5

      A.      MOTION TO STRIKE THE AFFIDAVITS OF J. THOMAS SCHROPPE, BEN J. LEHMAN, AND DAVID HOBSON .................................8

      B.      PLAINTIFFS' CASE SHOULD BE REMANDED TO STATE COURT BECAUSE DEFENDANTS HAVE FAILED TO PROVE THAT THEY WERE ACTING UNDER THE DIRECTION OF A FEDERAL OFFICER AND DO NOT HAVE A COLORABLE FEDERAL DEFENSE TO STATE-LAW LIABILITY UNDER THE GOVERNMENT CONTRACTOR DOCTRINE ..........................................................................11

            1.      Defendants' Affidavits Are Irrelevant to the Present Claims, Purely Speculative, and Insufficient to Support Their Arguments ......................14

            2.      Navy Records Support the Argument that Defendants Had Full Discretion to Provide Warnings Pursuant To State Law and to Design Their Products Pursuant to State Law Safe Design Requirements ..........................................................................................19

V. WAIVER OF CLAIMS AGAINST DEFENDANTS FOR NAVY EXPOSURE..................24

VI. CONCLUSION.........................................................................................................25

#5647537.1(135336.002)

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Alsup v. 3-Day Blinds, Inc.*,
   435 F.Supp.2d 838 (S.D.Ill. 2006) ...........................................................................7

*Anderson v. Crown Cork & Seal*,
   93 F.Supp.2d 697 (E.D. Va. 2000) ..........................................................................3

*Bautista v. Owens Coming Fiberglas Corp.*,
   1998 WL 267975 (N.D. Cal. 1998) ..........................................................................3

*Boyle v. United Techs. Corp.*
   487 U.S. 500 (U.S. 1988) ........................................................................................23

*Brewster v. A.W. Chesterton Co.*,
   2007 U.S. Dist. LEXIS 29420  (N.D. Cal. 2007) .....................................................2

*California v. Atl. Richfield Co. Products Liability Litig.*,
   488 F.3d 112 (2d Cir. 2007) .....................................................................................6

*Carter v. AC&S Inc.*,
   2002 U.S. Dist. LEXIS 24057 (E.D. Tex. 2002) .....................................................3

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
   509 U.S. 579 (1993) ...............................................................................................10

*Federal Ins. Company v. Tyco International Ltd.*,
   422 F. Supp. 2d 357 (S.D.N.Y. 2006) .....................................................................6

*Feidt v. Owens Coming Fiberglas Corp.*,
   153 F.3d 124 (3d Cir. 1998) .....................................................................................3

*Fink v. Todd Shipyards, et al.*,
   2004 U.S. Dist. LEXIS 6912 (E.D. La. 2004) .........................................................3

*Freiberg v. Swinerton & Walberg Property Services, Inc.*,
   245 F. Supp.2d 1144 (D. Colo. 2002) .....................................................................3

*Glein v. Boeing Co.*,
   2010 WL 2608284 (S.D.Ill. 2010) .......................................................................3, 7

*Granier v. Northrop Grumman Ship Sys.*,
   2008 U.S. Dist. LEXIS 103245 (E.D. La. 2008) ...................................................12

#5647537.1(135336.002)

TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Green v. A.W. Chesterton Co.*,
  366 F. Supp. 2d 149 (D. Me. 2005) .................................................................14, 18

*Hilbert v. McDonnell Douglas Corp.*,
  529 F. Supp. 2d 187 (D. Mass. 2008) ...............................................................2, 11

*Hines v. AC&S, Inc.*,
  128 F.Supp.2d 1003 (N.D. Texas 2001)..................................................................3

*In Re Agent Orange Product Liability Litigation*,
  611 F.Supp. 1223 (S.D.N.Y 1985), *affirmed*, 818 F.2d 187 (1987) .......................10

*In re Joint Eastern & Southern Dist. Asbestos Litigation*,
  715 F. Supp. 1167 (E.D.N.Y. 1988).......................................................................12

*In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*,
  2006 U.S. Dist. LEXIS 20575 (S.D.N.Y. 2006).......................................................6

*In re New York City Asbestos Litig. – Ronsini v. Garlock, Inc.*,
  256 A.D.2d 250 (N.Y. App. Div., 1st Dep't 1998)................................................11

*Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*,
  500 U.S. 72 (U.S. 1991) .........................................................................................7

*Isaacson v. Dow Chemical Co.*
  304 F. Supp.2d 404  (E.D.N.Y. 2004)) .................................................................14

*Kalamas v. Consumer Solutions REO, LLC*,
  2010 U.S. Dist. LEXIS 123034 (E.D.N.Y. 2010)....................................................6

*Lichtenfels v. Electro-Motive Diesel, Inc.*,
   2010 U.S. Dist. LEXIS 15079  (W.D. Pa. 2010) ...................................................2

*Lindenmayer v. Allied Packing & Supply, Inc.*,
  2010 U.S. Dist. LEXIS 8461 (N.D. Cal. 2010) ....................................................18

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (U.S. 2005) ........................................................................................5

*Megill v. Worthington Pump, Inc.*,
  1999 U.S. Dist. LEXIS 4433 (D. Del. 1999).........................................................3

*Meridian Sec. Inc., v. Sadowski*,
  441 F.3d 536 (7th Cir. 2006) ..................................................................................6

#5647537.1(135336.002)

## TABLE OF AUTHORITIES (cont'd)

*Mesa v. California,*
    489 U.S. 121, 109 S.Ct. 959 (1989) .......................................................................13

*Miranda v. Abex Corp.,*
    2008 U.S. Dist. LEXIS 91497 (S.D.N.Y. 2008) ..........................................3, 8, 20

*Montefiore Med. Ctr. v. Teamsters Local 272,*
    642 F.3d 321 (2d Cir. 2011) .............................................................................5

*Morgan v. Asbestos Defendants,*
    2003 WL 945987 (N.D. Cal. 2003) ....................................................................3

*Mouton v. Flexitallic, Inc.,*
    1999 WL 225438 (E.D. La. 1999) ...............................................................3, 12

*Nesbiet v. GE,*
    399 F. Supp. 2d 205 (S.D.N.Y. 2005) ...............................................3, 15, 16, 21

*Nguven v. Allied Signal. Inc.,*
    1998 WL 690854 (N.D. Cal. 1998) ....................................................................3

*Pack v. AC&S, Inc.,*
    838 F.Supp. 1099 (D.Md. 1993) .....................................................................12

*Phillips v. Reckson Assocs. Realty Corp.,*
    2006 U.S. Dist. LEXIS 83288 (E.D.N.Y. 2006) ..................................................6

*Polesky v. AC&S, Inc.,*
    1998 WL 633666 (S.D.N.Y. 1998) ....................................................................3

Prewett v. Goulds Pumps (IPG),
    2009 U.S. Dist. LEXIS 91732 (W.D. Wa. Sept. 9, 2009) ......................................23

*R.G. Barry Corp. v. Mushroom Makers*, Inc.,
    612 F.2d 651 (2d Cir. 1979) ..............................................................................6

*Rosamund v. Garlock Sealing Tech.,*
    2004 WL 1059811 (N.D.Miss.) .........................................................................2

*Ryan v. Dow Chemical Co.,*
    781 F.Supp. 934 (E.D.N.Y. 1992) ...................................................................11

*Schilz v. A.P. Green Industries, Inc.,*
    2002 WL 102608 (N.D. Cal. 2002) ....................................................................3

**PAGE**

*Sherman v. A.J. Pegno Constr. Corp.*,
    528 F. Supp. 2d 320 (S.D.N.Y. 2007)..................................................................5

*Smith v. Anchor Packing Co.*,
    2008 U.S. Dist. LEXIS 92041 (S.D.N.Y. Nov. 12, 2008) ...........................3, 19, 20

*Snowdon v. A.W. Chesterton Co.*,
    366 F. Supp. 2d 157 (D. Me. 2005*)* ..................................................................14

*Somlyo v. J. Lu-Rob Enter., Inc.*,
    932 F.2d 1043 (2d Cir. 1991) ..........................................................................6

*Sublett v. Air & Liquid Sys. Corp.*,
    2011 U.S. Dist. LEXIS 70908 (S.D. Ill. 2011) ....................................................17

*Teague v. Bell Helicopter Services, Inc.*,
    2003 WL 21135481 (N.D. Tex. 2003)..................................................................3

*Trevino v. General Dynamics Corp.*,
    865 F.2d 1474 (5th Cir. 1989) ..........................................................................13

*Vasura v. Acands*,
    84 F. Supp. 2d 531 (S.D.N.Y. 2000)..................................................................6

*Weese v. Union Carbide Corp.*,
    2007 U.S. Dist. LEXIS 73970 (S.D. Ill. 2007) ....................................................7

*Werth v. Makita Elec. Works, Ltd.*,
    950 F.2d 643 (10th Cir.1991) ..........................................................................8

**Statutes**

28 U.S.C. § 1407..................................................................................................2

28 U.S.C. § 1442(a)(1)........................................................................................7, 8

28 U.S.C. § 1447..................................................................................................4, 6

28 U.S.C. § 1447(c) ..............................................................................................7

**Rules**

CPLR 3407 ..........................................................................................................1

Fed.R.Evid. 1002 ................................................................................................8, 10, 11

Fed.R.Evid. 401 ..................................................................................................8, 11

#5647537.1(135336.002)

**PAGE**

Fed.R.Evid. 601 ......................................................................................................10

Fed.R.Evid. 602 ........................................................................................................8

Fed.R.Evid. 701 ........................................................................................................8

Fed.R.Evid. 703 ........................................................................................................8

Rule 2.1(d) ................................................................................................................2

**Other Authorities**

*Dictionary of American Naval Fighting Ships*,
   (available at http://www.history.navy.mil/danfs/h4/hazelwood-ii.htm) ....................................9

Wright & Gold, Federal Practice and Procedure, Evidence §6274 ...............................8

Plaintiffs, Milton Fordham and Edna Fordham (collectively "Plaintiffs"), by and through their counsel, Wilentz, Goldman & Spitzer, P.A., hereby submit this memorandum in support of their Emergency Motion to Remand and Motion to Strike Defendants' Affidavits.

## I. FACTS SHOWING THE EXISTENCE AND NATURE OF EMERGENCY

Milton Fordham, sub-plaintiff in *Fortunato, et al. v. ABB Lummus Crest, et. al.*; Index No.: 127150/02, filed suit in Supreme Court, New York County on December 16, 2002 based on his diagnosis of asbestosis. Years later, after being diagnosed with a second asbestos-related illness, lung cancer, Mr. Fordham filed a second lawsuit captioned *Fordham v. Asbeka Industries of New York, Inc.*, et al.; Index No.: 190414/11 on October 19, 2011. Pursuant to the May 26, 2011 Amended Case Management Order ("CMO") in *In Re New York City Asbestos Litigation* ("NYCAL") and CPLR 3407, both of which provide trial preference for terminally ill plaintiffs, Plaintiffs intended to make an application for inclusion in a consolidated cluster of asbestos cases, all of which involve *in extremis* plaintiffs, to be tried in October 2012. Acceptance into this cluster of cases would provide for an accelerated discovery schedule and expedited trial date for Plaintiffs. If remanded back to state court, this case would almost certainly be assigned to that cluster, and would receive a trial date in a matter of months. In order to be accepted into this trial cluster, Mr. Fordham "must be alive and have a pending lawsuit at the time of the application," and the application must be made "no later than ten (10) days before the designation date," which is the "first Thursday of the preceding . . . May (for October cluster)."

On February 14, 2012, defendants General Electric Company ("GE"), CBS Corporation ("Westinghouse"), and Foster Wheeler LLC ("Foster Wheeler") (collectively "Defendants") filed a notice of removal. As a result, Plaintiffs were not able to file their application for assignment to an expedited trial cluster.

On February 22, 2012, Defendants moved to transfer this action to MDL-875. The MDL Panel issued a Conditional Transfer Order on February 24, 2012. Plaintiffs' Motion to Vacate said Conditional Transfer Order is due on March 30, 2012. In essence, Defendants are attempting to misapply MDL-875 by transferring this matter before this Court has had the opportunity to rule on whether federal jurisdiction is even present. In fact, it is likely that Defendants' expectation is that plaintiff, Milton Fordham, will die of asbestos-related cancer before the case is transferred back to the original court for trial.[1] Nonetheless, according to Rule 2.1(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, the United States District Court for the Southern District of New York still retains jurisdiction over this matter. In relevant part, Rule 2.1(d) states that "[t]he pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 *does not affect or suspend orders and pretrial proceedings in any pending federal district court* action and *does not limit the pretrial jurisdiction of that court*" (emphasis added). It would be

---

[1] *See* candid discussion of defense "strategy" and "games" in the removal of asbestos cases in *Rosamund v. Garlock Sealing Tech.*, 2004 WL 1059811 (N.D.Miss.) at *6 ("the court would not be serving the interests of justice by simply ignoring the 'game' which is quite obviously being played in many, if not most, of the asbestos removals which came before it"); *Hilbert v. Aeroquip*, 486 F.Supp.2d 135, 142 (D. Mass. 2007) ("To undergo such a lengthy process to find out there is no federal jurisdiction would be a travesty of justice given Mr. Hilbert's medical condition"); *Lichtenfels v. Electro-Motive Diesel, Inc.*, 2010 U.S. Dist. LEXIS 15079 at *24-25 (W.D. Pa. 2010) (asbestos cases proceed faster in Pennsylvania State Court than in MDL-875); *Brewster v. A.W. Chesterton Co.*, 2007 U.S. Dist. LEXIS 29420 at *13 n. 2 (N.D. Cal. 2007) ("Fone perspective on this and similar tactics by asbestos-defense lawyers, see Fair Play for Navy Veterans, at http://www.mesothel.cortillegislation/navy_vetsfair_play.htm ('Navy vets who pursue civil claims are confronted by loopholes in the law that allow shrewd asbestos defense lawyers to either harmfully delay the prosecution of a claim (called 'federal officer' removal to federal court), or delay the claim altogether (called the 'MDL Black Hole')).'")

burdensome and inefficient to transfer this case to MDL-875 and require the MDL Judge to rule on this local issue, especially when this issue will be fully briefed before this Court.

Motions to Remand asbestos cases to state court which have been removed based on the federal officer removal statute, as is the case here, have been routinely decided by District Courts around the country before transfer to the MDL. *See e.g., Glein v. Boeing Co.*, 2011 U.S. Dist. LEXIS 12466 (S.D. Ill. 2011); *Smith v. Anchor Packing Co.*, 2008 U.S. Dist. LEXIS 92041 (S.D.N.Y. 2008); *Miranda v. Abex Corp.*, 2008 U.S. Dist. LEXIS 91497 (S.D.N.Y. 2008); *Nesbiet v. GE*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005). *Fink v. Todd Shipyards, et al*., 2004 U.S. Dist. LEXIS 6912 (E.D. La. 2004); *Morgan v. Asbestos Defendants*, 2003 WL 945987 (N.D. Cal. 2003); *Teague v. Bell Helicopter Services, Inc.*, 2003 WL 21135481 (N.D. Tex. 2003); *Schilz v. A.P. Green Industries, Inc.*, 2002 WL 102608 (N.D. Cal. 2002); *Freiberg v. Swinerton & Walberg Property Services, Inc.*, 245 F. Supp.2d 1144 (D. Colo. 2002); *Carter v. AC&S Inc.*, 2002 U.S. Dist. LEXIS 24057 (E.D. Tex. 2002); *Hines v. AC&S, Inc.*, 128 F.Supp.2d 1003 (N.D. Texas 2001); *Anderson v. Crown Cork & Seal*, 93 F.Supp.2d 697 (E.D. Va. 2000); *Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. LEXIS 4433 (D. Del. 1999); *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 1999); *Bautista v. Owens Coming Fiberglas Corp.*, 1998 WL 267975 (N.D. Cal. 1998); *Feidt v. Owens Coming Fiberglas Corp.*, 153 F.3d 124 (3d Cir. 1998); *Nguven v. Allied Signal. Inc.*, 1998 WL 690854 (N.D. Cal. 1998); *Polesky v. AC&S, Inc.*, 1998 WL 633666 (S.D.N.Y. 1998).

As Mr. Fordham is terminally ill, it is imperative that this matter be remanded back to state court immediately, so that Plaintiffs can make a timely application for the *in extremis* docket and allow Mr. Fordham to have his day in court.

## II.  PRELIMINARY STATEMENT

This Court clearly lacks subject matter jurisdiction, and therefore, this matter should immediately be remanded to state court pursuant to 28 U.S.C. § 1447.  In support of Defendants' notice of removal, they attach vague, irrelevant, and baseless affidavits, which are clearly not admissible pursuant to the federal rules of evidence and have been rejected by numerous district courts.  Furthermore, Defendants fail to prove that they were acting under the direction of a federal officer and do not have a colorable defense to state-law liability.

## III.  STATEMENT OF FACTS

Milton Fordham, sub-plaintiff in *Fortunato, et al. v. ABB Lummus Crest, et. al.*; Index No.: 127150/02, filed suit on December 16, 2002 for asbestosis. Thereafter, Mr. Fordham filed suit for a second asbestos-related injury, lung cancer, in *Fordham v. Asbeka Industries of New York, Inc.*, et al.; Index No.: 190414/11 on October 19, 2011. Both complaints allege exposure to asbestos in the United States Navy and at Long Island Lighting Company ("LILCO").  Milton Fordham was also a co-worker of a deceased plaintiff whose case is clustered in the NYCAL April 2012 *In Extremis* trial group. For those reasons, Mr. Fordham's deposition was noticed in two cases, as a co-worker of the deceased and as a plaintiff in his own case. Prior to his deposition, Plaintiffs' Answers to Defendants' Interrogatories were served on January 13, 2012.

On February 7, 2012, and on subsequent days thereafter, plaintiff Milton Fordham's deposition was taken by defendants. During his deposition, Mr. Fordham testified that in approximately the spring of 1963, he served onboard the USS Hazelwood, as a mess cook, for about three months. *See* Declaration of Kush Shukla in Support of Plaintiffs' Emergency Motion to Remand and Motion to Strike Defendants' Affidavits ("Declaration of Kush Shukla"), Exhibit 1 ("Shukla **Exhibit 1**") at T99:19-24; T108:1-4. According to Mr. Fordham, there were two engine rooms and two boiler rooms on the USS Hazelwood. *Id.* at T108:21-24. After three months, Mr. Fordham took a test and became an E-3 Machinist. *Id.* at T107:23-25—108:1-2. He was stationed in engine room "1" on the main control for his entire time on the Hazelwood. *Id.* at T108:13-25—109:1-6. Mr. Fordham served onboard the USS Hazelwood for two years until he was discharged in April 1965. *Id.* at T121:25—122:1-6.

On February 14, 2012, Defendants filed their notice of removal of this case from Supreme Court, New York County pursuant to 28 USC §1442 (a)(1) and 1446.

## IV. LEGAL ARGUMENT

The right of removal is a limited one, and is appropriate only when a federal interest in the matter exists. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 140 (U.S. 2005) ("By enacting the removal statute, Congress granted a right to a federal forum to a limited class of state-court defendants"). The removing party bears the burden of proffering evidence and establishing a basis for jurisdiction. *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011); *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 325 (S.D.N.Y. 2007) ("'When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'") (citing *In re Methyl Tertiary Butyl*

*Ether Prods. Liab. Litig.*, 2006 U.S. Dist. LEXIS 20575 (S.D.N.Y. 2006)) (quoting *R.G. Barry Corp. v. Mushroom Makers*, Inc., 612 F.2d 651, 655 (2d Cir. 1979)); *Meridian Sec. Inc., v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006). Doubts regarding the propriety of removal must be resolved in favor of remand to the state court. *See California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("[W]e have held that out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolv[e] any doubts against removability"); *Vasura v. Acands*, 84 F. Supp. 2d 531, 533 (S.D.N.Y. 2000) ("In resolving a motion to remand, courts must be mindful of considerations of federalism and the limited jurisdiction conferred on subject matter jurisdiction courts and should 'strictly construe' the federal removal statute, resolving all doubts 'in favor of remand.'") (internal citations omitted); *Kalamas v. Consumer Solutions REO, LLC*, 2010 U.S. Dist. LEXIS 123034 (E.D.N.Y. 2010) ("Removal jurisdiction must be 'strictly construed, and any doubts resolved against removability 'out of respect for the limited jurisdiction of the federal courts and the rights of states.'") (internal citations omitted).

The court must construe the record in the light most favorable to remand while resolving all deficiencies in the record against the proponent of removal. *See Phillips v. Reckson Assocs. Realty Corp.*, 2006 U.S. Dist. LEXIS 83288 (E.D.N.Y. 2006) ("Further, 'out of respect for the independence of state courts, and in order to control the federal docket, federal courts construe the removal statute [28 U.S.C. § 1447] narrowly, resolving any doubts against removability.'") (quoting *Federal Ins. Company v. Tyco International Ltd.*, 422 F. Supp. 2d 357, 367 (S.D.N.Y. 2006)) (citing *Somlyo v. J. Lu-Rob Enter., Inc.*, 932 F.2d 1043, 1045-46 (2d Cir. 1991)); Glein, 2011 U.S. Dist. LEXIS

12466 (S.D. Ill. 2011); *Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp.2d 838, 846 (S.D.Ill. 2006).

In the instant case, Plaintiffs seek remand on the grounds that this Court lacks subject matter jurisdiction. If there is no subject matter jurisdiction, remand is mandatory under 28 U.S.C. § 1447(c): "If *at any time* before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." (emphasis added); *see also Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72 (U.S. 1991).

Defendants removed this case, alleging federal jurisdiction exists pursuant to 28 U.S.C. § 1442(a)(1), which provides, relevant part:

> (a)     A civil action . . . commenced in a state court against any of the following persons may be removed by them to the district court of the United States for the district and division embracing the place where it is pending:
>
> (1)     Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title, or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of revenue.

28 U.S.C. § 1442(a)(1).

"As the statute makes clear, the right of removal extends not only to federal officers but to persons acting under such officers." *Weese v. Union Carbide Corp.*, 2007 U.S. Dist. LEXIS 73970 at *12 (S.D. Ill. 2007). Under the statute, Defendants must prove three elements: (1) it is a person as that term is used in section 1442(a)(1); (2) a colorable federal defense; and (3) that they were acting under a federal officer, which

subsumes the existence of a causal connection between the charged conduct and asserted official authority. *Miranda v. Abex Corp.*, 2008 U.S. Dist. LEXIS 91497, 7-8 (S.D.N.Y. 2008). Plaintiffs do not dispute that Defendants are "persons" for purposes of asserting the federal officer defense. Plaintiffs, however, do dispute that Defendants have established elements two and three.

### A. MOTION TO STRIKE THE AFFIDAVITS OF J. THOMAS SCHROPPE, BEN J. LEHMAN, AND DAVID HOBSON

As a preliminary matter, before discussing the elements of 28 U.S.C. § 1442(a)(1), Plaintiffs hereby move this court to strike the affidavits of J. Thomas Schroppe, Ben J. Lehman, and David Hobson (collectively "affiants"), as they fail to meet the minimum threshold for admissibility of an expert opinion and/or lay witness opinion. Federal Rule of Evidence 703; Federal Rule of Evidence 602; Federal Rule of Evidence 701; Federal Rule of Evidence 401. Further, the alleged Navy Specifications on which these individuals purport to rely must be proved by the documents themselves—the best evidence—and not by testimony regarding what they might say. Federal Rule of Evidence 1002. Wright & Gold, Federal Practice and Procedure, Evidence §6274, explains the foundation requirements for expert testimony as follows:

> Rule 703 permits expert opinion to be based on three possible sources: firsthand knowledge, admitted evidence, and facts or data not admitted into evidence if "of a type reasonably relied upon by experts in a particular field and forming opinions or inferences upon the subject.

(citing *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10[th] Cir. 1991)). None of these bases for admissibility have been established by any of the affidavits.

First, none of the affiants have firsthand knowledge of the specifications that placed any specific piece of equipment on the USS Hazelwood.[2]  Second, affiants Mr. Schroppe and Mr. Hobson did not begin working for Foster Wheeler and General Electric until well after the USS Hazelwood was designed and built.[3]  Third, affiant Mr. Lehman only indicates that he was "personally involved with the supervision or oversight of ship alterations and equipment overhauls at the *New York Naval Shipyard* (formerly the Brooklyn Navy Yard)." According to the *Dictionary of American Naval Fighting Ships*, the USS Hazelwood was "laid down [on the] 11[th] [of] April 1942 by the Bethlehem Shipbuilding Co., San Francisco, Calif." Therefore, Mr. Lehman lacks any firsthand knowledge of the practices and procedures of the Navy and the Bethlehem Shipbuilding Co., San Francisco, California.  Affiants' lack of personal knowledge will be described in greater detail in section B.1., *infra*, of this memorandum.

The second method of presenting expert testimony, by means of hypothetical questions at trial, obviously does not apply here.  There has been no evidence that the experts relied on facts that are of the kind that experts in the field "reasonably rely on" in forming opinions.

Federal Rule of Evidence 703 requires a party proffering evidence through an alleged expert to make a showing that the expert's opinion is based on the type of information that experts in the field rely on in making judgments on the subject.  *Daubert*

---

[2] In fact, all three affidavits appear to be generic affidavits discussing generic specifications about various equipment.  None of the affidavits address the USS Hazelwood or any designs or plans for this specific ship.

[3] According to the *Dictionary of American Naval Fighting Ships*, the USS "Hazelwood (DD-531) was laid down [on] 11 April 1942 by the Bethlehem Shipbuilding Co., San Francisco, Calif., launched 20 November 1942; sponsored by Mrs. Harold J. Fosdick; and commissioned 18 June 1943."  The Hazelwood was thereafter temporarily "decommissioned 18 January 1946" but later "recommissioned at San Diego [on] 12 September 1951." The ship's final decommission occurred in the Spring of 1965 (available at http://www.history.navy.mil/danfs/h4/hazelwood-ii.htm).

*v. Merrell Dow Pharmaceuticals, Inc.* 509 U.S. 579, 595 (1993). The objective of this requirement is to ensure that the evidence being presented has the indicia of reliability deemed by experts in that field to be sufficient; this is the *minimum* necessity for the evidence to be admitted. *See, e.g. In Re Agent Orange Product Liability Litigation,* 611 F.Supp. 1223 (S.D.N.Y 1985), *affirmed,* 818 F.2d 187 (1987). None of the affidavits contain an averment that they are basing their opinions on evidence upon which others in their field rely upon.

It is not clear from Defendants' removal papers whether they are seeking to introduce their affidavits as expert or lay opinion. If Defendants are seeking to introduce their affidavits as lay opinion, they clearly fail to meet the minimum threshold for admissibility of lay witness opinion. Pursuant to Federal Rule of Evidence 601, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has *personal knowledge* of the matter," and pursuant to Federal Rule of Evidence 701, "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception." As discussed earlier in this section, affiants do not have sufficient personal knowledge and, therefore, Defendants cannot introduce their affidavits as a basis for remand. Furthermore, as affiants lack personal knowledge in this matter, any opinion that they reach cannot be rationally based on their perception of the Navy's practices during the relevant time periods at issue in this matter.

Additionally, Defendants and their affiants have attempted to prove Navy control via references to military specifications that are nowhere contained in their submission. Federal Rule of Evidence 1002 provides that "[t]o prove the content of a writing . . . the

original writing . . . is required. Thus, pursuant to Rule 1002, at a minimum, those portions of the affidavits that reference military specifications must be stricken.

Lastly, pursuant to Federal Rule of Evidence 401, the affidavit of J. Thomas Schroppe and the second affidavit of Mr. Ben J. Lehman should be stricken because they are not relevant to the pending action, as Mr. Fordham did not even allege exposure to Foster Wheeler products aboard the USS Hazelwood.

### B. PLAINTIFFS' CASE SHOULD BE REMANDED TO STATE COURT BECAUSE DEFENDANTS HAVE FAILED TO PROVE THAT THEY WERE ACTING UNDER THE DIRECTION OF A FEDERAL OFFICER AND DO NOT HAVE A COLORABLE FEDERAL DEFENSE TO STATE-LAW LIABILITY UNDER THE GOVERNMENT CONTRACTOR DOCTRINE

To establish the second and third prong of the federal officer removal statute, Defendants must show that the Navy precluded Defendants from complying with its state-law duty to warn. *See e.g., Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D.N.Y. 1992) ("The rule established is that removal by a 'person acting under' a federal officer *must be predicated upon a showing that the acts that form the basis for the state civil . . . suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.*") (emphasis added); *In re New York City Asbestos Litig. – Ronsini v. Garlock, Inc.*, 256 A.D.2d 250, 251 (N.Y. App. Div., 1st Dep't 1998) (Shukla **Exhibit 2**) (no basis for defendant's requested government contractor defense); *Hilbert v. McDonnell Douglas Corp.,* 529 F. Supp. 2d 187, 199-200, 202 (D. Mass. 2008) (Shukla **Exhibit 3**) (rejecting defendants' "claim that the military specifications, though not explicitly forbidding warnings about asbestos, were so precise that the defendants could not simultaneously warn about asbestos and conform to the specifications," and concluding that "there is simply no basis upon which the Court can

conclude that a conflict existed between the federal contracts and the defendants' state-law duty to warn"); *In re Joint Eastern & Southern Dist. Asbestos Litigation*, 715 F. Supp. 1167 (E.D.N.Y. 1988) (Shukla **Exhibit 4**) ("[o]n the facts of *Boyle*, compliance with both federal and state mandates at once was impossible because each dictated a contrary helicopter design. The federal specifications, for reasons of military necessity, called for a hatch that opened outward, while state law called for a hatch that opened inward. By contrast, in this case, because the federal specifications were silent on the matter of warnings, defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications"); *Granier v. Northrop Grumman Ship Sys.*, 2008 U.S. Dist. LEXIS 103245 at *9-10 (E.D. La. 2008) (Shukla **Exhibit 5**) ("'[a]lthough Avondale arguably 'acted under' the Navy's direction when working by detailed instructions to build the destroyers, the specifications under the contract specified technical parameters, and only had more general references to safety regulations. The federal government provided no direction on warnings when using asbestos, and further did not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts. Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiff's failure to warn claims'") (quoting *Mouton v. Flexitallic, Inc.*, 1999 U.S. Dist. LEXIS 5632 at *19 (E.D. La. Apr. 14, 1999); *Pack v. AC&S, Inc.*, 838 F.Supp. 1099, 1103 (D. Md. 1993) (Shukla **Exhibit 6**) ("'Direct control' is established by showing strong government intervention . . . ."); *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) (Shukla **Exhibit 7**) ("If the corporation establishes

'only that the relevant acts occurred under the general auspices of' a federal officer . . . they are not entitled to § 1442(a)(1) removal.").

Further, as set forth by the Supreme Court of the United States in *Mesa v. California*:

> There must be a causal connection between what the [removing defendant] has done under asserted official authority and the state prosecution. It must appear that the prosecution of [the removing defendant], for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, *and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty.*

489 U.S. 121, 131-32, 109 S.Ct. 959 (1989) (emphasis added) (Shukla **Exhibit 8**).    In the specific context of asbestos cases, "courts generally find that the government contractor defense does not apply, absent evidence that the government mandated specific warnings or prohibited warnings." *Weese*, 2007 U.S. Dist. LEXIS 73970 at *29.

In connection with Plaintiffs' design-defect claims, Defendants' burden in establishing the availability of a government contract defense is to show that compliance with the specifications or contracts would have directly contradicted, and been incompatible with, State law safe-design requirements. Specifically, if the specifications or contracts called for a particular performance level, but did not otherwise require the use of asbestos *and only asbestos* in order to obtain that performance level, defendants cannot properly seek to hide behind a "government-made-me-do-it" defense. *See e.g., Trevino v. General Dynamics Corp.*, 865 F.2d 1474, 1486 (5th Cir. 1989) (Shukla **Exhibit 9**) (defendant "argues that the Navy approved the design specifications set forth in each of the working drawings, and points to the signature of a government official in a

box marked 'approved' at the bottom of each of the working drawings. The district court, however, found that 'the level of review here was not sufficient to constitute 'approval'. . . . The district court [correctly] held that . . . [t]he Navy set only general performance standards leaving the details to [defendant]") (cited approvingly by the Honorable Jack B. Weinstein in *Isaacson v. Dow Chemical Co. (In re "Agent Orange" Prod. Liab. Litig.)*, 304 F. Supp.2d 404, 434 (E.D.N.Y. 2004)); *Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149 (D. Me. 2005) (Shukla **Exhibit 10**) ("First, in every instance in which [affiant] speaks of asbestos-specific regulations, he does not state that the US Navy regulations or specifications specified asbestos. Rather, he states that that the US Navy regulations or specifications required asbestos. Although the distinction seems trivial, *I cannot rule out whether Viacom chose to incorporate asbestos insulation into the subject products in order to meet a performance specification as opposed to an asbestos specification.*") (emphasis added); *Snowdon v. A.W. Chesterton Co.*, 366 F. Supp. 2d 157 (D. Me. 2005) (Shukla **Exhibit 11)** (same). Moreover, the product manufacturers' supply to the government of the *same products*, following the *same defective design* that it sold commercially in nongovernment contracting contexts, enhances the manufacturer's burden in proving active government involvement in the product's design. *See,* e.*g., Isaacson, supra*, 304 F. Supp.2d 404, 434 ("Ordering ordinary off-the-shelf toothpaste in its usual commercial packaging would not satisfy this prong. Ordering special ingredients in a G.I. issue tube would").

1. Defendants' Affidavits Are Irrelevant to the Present Claims, Purely Speculative, and Insufficient to Support Their Arguments

The affidavits submitted by Defendants in their Notice of Removal are irrelevant to the present claims, purely speculative, insufficient to support their arguments, and

should be stricken or given no consideration. With or without these affidavits, there is simply no competent evidence (1) that the United States Navy prohibited Defendants from providing or issuing warnings with its products; and/or (2) that compliance with the Navy's specifications or contracts would have directly contradicted, and been incompatible with State law safe-design requirements.

These affidavits have been considered by numerous district courts. In fact, this Court, in *Nesbiet v. GE* addressed many of the affidavits at issue in this matter. *See* Shukla **Exhibit 12**, 399 F. Supp. 2d 205 (S.D.N.Y. 2005). In *Nesbiet*, Judge Shira A. Scheindlin noted that when affiant David Hobson was deposed, he "admitted that he had no personal knowledge concerning the relationship between GE and the Navy prior to 1965" and that "mentoring from the previous GE engineers was his only source of knowledge with respect to the relevant time period."[4] Shukla Exhibit 12 at 207. Based on these admissions, Judge Scheindlin found that Hobson "lack[ed] personal knowledge as to the Navy's control over such warnings when [plaintiff] was working on the USS Missouri, [and] [t]herefore, to the extent that Hobson's affidavits suggest that during the relevant time period the Navy prohibited warnings concerning the dangers of asbestos, *the statements are without foundation—and therefore inadmissible*—as being beyond the scope of Hobson's personal knowledge and experience." *Id.* (emphasis added). Additionally, the Court in *Nesbiet* discredited a second affidavit signed by Mr. Hobson and submitted by GE. Shukla Exhibit 12 at 207 n. 17 ("After his deposition, Hobson submitted two additional sworn affidavits: Hobson 3 and 4. In the first of these, Hobson asserts that 'by virtue of the knowledge I have obtained over the course of my career

---

[4] It should be noted that Defendants failed to attach Mr. Hobson's deposition transcript to their removal papers in this matter.

concerning the historical practice of GE and the U.S. Navy with regard to marine steam turbines, I can state that the practices described in my October 17, 2003 affidavit [Hobson 2] concerning the U.S. Navy's control and direction related to marine steam turbines would have been applicable at least as far back in time as World War II.' *This assertion is insufficient to establish personal knowledge with regard to whether a particular kind of warning was forbidden over twenty years prior to the start of Hobson's career.* (emphasis added) (internal citations omitted). Similarly, in this matter, Mr. Fordham served aboard the USS Hazelwood from approximately the spring of 1963 until April 1965, well before Mr. Hobson would have any personal knowledge of the Navy's control over warnings during Mr. Fordham's service aboard the USS Hazelwood. Therefore, just as the court in *Nesbiet* did, this court should strike or give no consideration to the affidavits signed by Mr. Hobson and submitted by GE.

In further support of its notice of removal, GE submits the affidavit of Ben J. Lehman. In *Nesbiet*, the court found that the deposition of Mr. Lehman, in that matter, "reveals that Lehman has *no direct knowledge as to whether the Navy specifically prohibited GE*, or other manufacturers, from providing warnings about asbestos."[5] *Id.* at 208. However, the Court did note that Mr. Lehman's "affidavit raises the inference that the Navy prohibited warnings about asbestos," and based on Mr. Lehman's position "at the *Brooklyn Navy Yard* during the relevant time period, Lehman is competent to make the statements contained in his affidavit." *Id.* (emphasis added). In this case, unlike the plaintiff in *Nesbiet*, Mr. Fordham did not work at the Brooklyn Navy Yard. Moreover, even if Mr. Lehman's affidavit were to raise the inference that the Navy prohibited

---

[5] It should be noted that Defendants failed to attach Mr. Lehman's deposition transcript to their removal papers in this matter.

warnings—which plaintiffs believe it has not—this interference is refuted by the affidavits and supporting documents submitted by Plaintiffs along with this memorandum. *See infra* Section B.2.i.

As discussed earlier, the affidavits of J. Thomas Schroppe and the second affidavit of Ben J. Lehman, which were submitted by defendant Foster Wheeler, are completely irrelevant in this matter, as Mr. Fordham has not alleged exposure to Foster Wheeler's products aboard the USS Hazelwood. Moreover, with respect to Mr. Schroppe, he only began working for Foster Wheeler well after the USS Hazelwood was laid down.

Lastly, it should be noted that defendant Westinghouse does not submit any affidavits and/or other evidence in support of its notice to remove this matter. Instead they make several unsubstantiated and baseless claims that it designed and manufactured its products at the "direction and control of one or more federal officers." Defendants' Notice of Removal ¶ 15. Therefore, Westinghouse has no support for removal of this matter to federal court.

Numerous *recent* District Court opinions have attached little significance to the very same unsubstantiated affidavits submitted by Defendants in this matter and have concluded that they do not give rise to a colorable defense. *See e.g.*, *Sublett v. Air & Liquid Sys. Corp.*, 2011 U.S. Dist. LEXIS 70908 (S.D. Ill. 2011) (Shukla **Exhibit 13**) ("In support of its claim of federal officer jurisdiction GE has submitted to the Court an affidavit given by *Ben J. Lehman*, a retired [U.S. Navy] rear admiral who served as a ship superintendent in the [U.S. Navy] and who claims in that capacity to have had personal involvement with the supervision and oversight of ship construction as well as ship

alterations and equipment overhauls. *In the past the Court has attached little significance to such evidentiary material*, unaccompanied as it is by exemplar contracts between the [U.S. Navy] and its contractors or pertinent regulations promulgated by the [U.S. Navy] or another responsible agency. Most importantly, even assuming for the sake of argument that it is the case that, as GE claims, the [U.S. Navy] exercised the final control over the content of the warnings that accompanied the equipment supplied to it by GE, this does not dispose of the possibility that GE had responsibility for designing the warnings, in whole or in part, or that the [U.S. Navy] required contractors like GE to provide safety warnings in accordance with state-law duties of care.") (internal citations omitted); *Lindenmayer v. Allied Packing & Supply, Inc.*, 2010 U.S. Dist. LEXIS 8461 at \*17-18 (N.D. Cal. 2010) (Shukla **Exhibit 14**) (analyzing the affidavits of J. Thomas Schroppe and Ben J. Lehman—the same affiants in this matter—the court stated "Foster Wheeler offers no evidence suggesting that its failure to warn should be attributed to the Navy, and identifies no conflicts between its duties under state law and its compliance with Navy specifications. The federal government cannot have exercised its discretion to preclude Foster Wheeler from issuing asbestos warnings if the provision of asbestos warnings was never contemplated or proposed in the first place. Foster Wheeler's defense to the failure-to-warn claims is therefore not 'colorable' and not, by itself, a sufficient basis for removal."); *Green*, 366 F. Supp. 2d 149, 156 (Shukla Exhibit 10 at 156). ("As for the [affidavit submitted by Viacom], I agree with [plaintiff] that the failure to incorporate as exhibits any of the actual asbestos-specific regulations or specifications that are referred to in the affidavit and are presently available to Viacom *raises a real and significant concern*. On balance, limited as I am to considering [Viacom's affidavit] on

the decisive question of whether Westinghouse was 'acting under' a federal officer or agency with specific reference to its use of asbestos-containing insulation on vessel turbines and related components, I conclude that Viacom fails to carry its burden under § 1442") (emphasis added).

Accordingly, Defendants have no support for their argument that they were acting in compliance with specifications imposed on them by the Navy. As such, remand is required.

    2.    Navy Records Support the Argument that Defendants Had Full Discretion to Provide Warnings Pursuant To State Law and to Design Their Products Pursuant to State Law Safe Design Requirements

    (i) Failure to Warn

The full Navy record supports the argument that Defendants *did* have full discretion to provide warnings pursuant to state law. Captain Arnold P. Moore,[6] a professional engineer, former Sector Vice President of Engineering for a Major Builder of U.S. warships and a retired Captain, Engineering Duty, of the U.S. Naval Reserve, has analyzed the full record of Navy specifications.[7] Captain Moore's declaration and the documents annexed thereto establish, undoubtedly, that the Navy allowed contractors and product manufacturers the discretion, and indeed encouraged and "required" them, to warn about hazards. *See* Shukla Exhibits 15, 16, 20, and 21.

Captain Moore explained, for example—as illustrative of the Navy's expectation that its product manufacturers and contactors would take the initiative to issue adequate

---

[6] Captain Arnold P. Moore has helped design six major classes of naval warships and been instrumental in the modernization of three additional classes.

[7] Attached to the Declaration of Kush Shukla as **Exhibit 15** is Captain Moore's curriculum vitae and attached thereto as **Exhibit 16** is the Declaration of Captain Arnold P. Moore, originally submitted in support of remand to the New York State court in the case of *Smith v. Anchor Packing Co.*, 2008 U.S. Dist. LEXIS 92041 (S.D.N.Y. 2008).

warnings—that one defendant, Foster Wheeler, submitted drawings subsequently approved ("rubber stamped") by the Navy, which drawings "specifically required a boiler component to be equipped with a warning plate. Clearly this drawing illustrates that the U.S. Navy did not prohibit manufacturers from providing warning plates when manufacturers deemed them necessary." Shukla Exhibit 16 at ¶ 22. This Foster Wheeler drawing referenced by Captain Moore is attached to the Declaration of Kush Shukla as **Exhibit 17**.

In *Smith*, Judge Gerard E. Lynch granted plaintiff's motion to remand the case for lack of federal jurisdiction (although principally on other grounds) but noted that "[t]he federal defense asserted [on the basis of the Lehman allegations] was in any event, for the reasons advanced by plaintiffs, somewhat *dubious*" (emphasis added). *See* Shukla **Exhibit 18**.

Additionally, it should be noted that in *Miranda v. Abex Corp.*, 2008 U.S. Dist. LEXIS 91497 (S.D.N.Y. 2008), the court stated that "[a] review of the evidence submitted by [defendant] shows that it has failed to assert a colorable federal defense [because defendant] can assert a federal defense *only* if the Air Force 'dictated' the content of warnings to it" and that "the government was silent as to whether or not [defendant was] permitted to warn, or that there was no discussion about the content of the warnings." Shukla **Exhibit 19** (emphasis added). Similarly, in the present case, Defendants have not proven that the US Navy 'dictated' the content of warnings to them, and therefore, no colorable federal defense exists.

Completely contradicting Defendants' claim that they would have had no discretion to affix warnings of their own to products they delivered to the United States

Navy during Mr. Fordham's exposure period, Shukla **Exhibit 20**, is a copy, in relevant part, of the Navy's "Interim Military Specification: Book, Instruction, Preparation, Contents and Approval"–MIL-B-15071A (Ships), effective October 20, 1952. Although admittedly in *Nesbiet*, Judge Scheindlin did not find this document to support plaintiffs' position that it imposed an affirmative requirement on contractors to warn, at a minimum, this document demonstrates that the Navy did not prohibit Defendants from warning others about the dangers associated with asbestos.

In fact, the section addressing "General Data," which equipment suppliers should include within the instruction book or manual they supply with their equipment, prescribes that this portion of the manual "shall contain data *such as* the following: a '[s]afety notice (where high voltages *or special hazards are involved*)'" *See* Shukla Exhibit 20 at § 3.4.1.1(a) (emphasis added).[8]

Further subsections within this 1952 specification advise that equipment manuals "shall contain methods of installation, alignment, *precautions*, mounting instructions, recommendations regarding shielding, grounding or bonding" *Id.* at § 3.5.1.3. It is absolutely clear that this provision, concerning information to be provided with respect to installation of the equipment, leaves it to the manufacturer/contractor to provide complete and correct "precautions" and safety guidance.

Moreover, the specification requires "simple, brief and effective instructions, including normal routines and precautions to be observed in starting, operating, and shutting down the equipment" *Id.* at § 3.5.1.5, "as well as instructions or disassembly and

---

[8] The specification annexes a sample "warning," which concerns "voltages over 300 volts," but the specification's prescription, once again, is that data "such as" any such warning shall be included, and no example is provided with regard to "special hazards" other than high voltages, leaving this to the contractor's discretion.

replacement of worn or damaged parts" *Id.*, at § 3.5.1.6. Another provision prescribes generally that "[i]nstructions shall be included stressing the importance of properly maintaining any safety devices, interlocks, provided to prevent damage to equipment or injury to personnel" *Id.* at § 3.4.1.8.1(f). This provision of the actual specification addressing "safety devices" is absolutely inconsistent with any claim that the Navy would have prohibited asbestos-related safety warnings.

As these specifications were largely otherwise silent, the manufacturer clearly retained discretion to provide the content of any such safety notice, precaution, and/or instruction, depending upon the nature of, or special hazards associated with, the particular product being supplied. In all events, the specification evinced a concern that the manufacturer adequately provide instructions and precautions with regard both to equipment maintenance and personal safety. Moreover, there is absolutely nothing whatsoever about this document that supports the view that any defendant was prevented by government regulations from issuing warnings regarding the hazards of asbestos, as Defendants would have this Court conclude.

Attached to the Declaration of Kush Shukla as **Exhibit 21** is a copy, in relevant part, of the "Military Specification: Technical Manuals for Mechanical and Electrical Equipment"–MIL-T-15071B(Ships), effective August 16, 1954. This document patterns the 1952 specification, and the two appear to be equivalent in all relevant respects.

Furthermore, contrary to the vague, generic, boilerplate, and unsupported affidavits submitted by Defendants, the Navy's own "uniform labeling program" for hazardous materials shows that it expected manufacturers to affix warnings to dangerous products in compliance with state and federal laws. *See* Office of the Navy memo, dated

September 1956, Shukla **Exhibit 22**. The scope of the labeling program was "not intended to govern (a) the type of labels to be affixed by the manufacturer. (These are governed by *State and Federal laws and regulations depending on the nature of the material . . . .*"). Exhibit 22 (emphasis added). Based on this fact alone, Defendants' removal must fail.

Given the above-described proofs, specifications, manuals, and programs, Defendants' affidavits are inaccurate and/or false. As Defendants' affidavits are completely inaccurate and false, this matter should immediately be remanded to State Court so that this case can progress as previously prescribed.

(ii) <u>Design Defect</u>

In *Prewett v. Goulds Pumps (IPG)***,** the district court addressed whether the government contractor defense was colorable for removal purposes in connection with a design defect cause of action. *See* Shukla **Exhibit 23**, 2009 U.S. Dist. LEXIS 91732 (W.D. Wa. Sept. 9, 2009). In *Prewett*, the Court indicated that state law is displaced only "where a significant conflict exists between an identifiable federal policy or interest and the operation of state law." Shukla Exhibit 23 at *11 (quoting *Boyle v. United Techs. Corp.*, 487 U.S. 500 (U.S. 1988)). Furthermore, the Court stated that "[c]ompliance with performance standards is not necessarily incompatible with state law, thus there is no conflict between state products' liability and a contractor's duties under its government contract and no displacement of state law." Shukla Exhibit 23 at *15. As in *Prewett*, Defendants in this case have failed to demonstrate "that the Navy substantively considered the use of asbestos and made a discretionary decision to approve it" with regard to Defendants' products to which Mr. Fordham was exposed; nor do Defendants

establish that the government required asbestos components and only asbestos components. Shukla Exhibit 23 at *16-17.

Attached to the Declaration of Kush Shukla as **Exhibit 24** is the Declaration of Joseph H. Chilcote, dated July 9, 1981, with exhibits. From 1942 through 1964, Mr. Chilcote was a project engineer with the Department of the Navy, Bureau of Ships. He attested that the Navy did not, and could not practicably, develop its own specifications for thermal insulation materials. Rather, the Bureau of Ships "invariably consulted with industry to determine product availability from preexisting commercial sources," and regularly met with industry representatives, from whom the specifications were derived and taken. Shukla Exhibit 24 at ¶ 3.

Furthermore, Mr. Chilcote attested that in procuring insulation or other asbestos-containing products, the Navy relied wholly upon the manufacturers' "specific and comprehensive knowledge," and adapted its needs and specifications "to products and *materials already commercially available*," as revealed by the manufacturers. Shukla Exhibit 24 at ¶3 (emphasis added). Accordingly, it was the product manufacturers' discretion, not the Navy's, which predetermined the use of asbestos insulation on any equipment supplied to the Navy during the relevant time periods. In this matter, Defendants have not provided any evidence to the contrary and, therefore, this matter should be remanded to the State Court.

## V. WAIVER OF CLAIMS AGAINST DEFENDANTS FOR NAVY EXPOSURE

As described in the preceding section, there is clearly no federal court jurisdiction in this matter based on Mr. Fordham's asbestos exposure to Defendants' products aboard the USS Hazelwood. Nonetheless, in the unlikely event that this court should find that such jurisdiction exists, Plaintiffs, in the alternative, will waive any and all claims against

Defendants stemming from Mr. Fordham's asbestos exposure on any Navy ship, vessel, or any federal premise. As such, Defendants' bases for removal are moot. In this alternative, Plaintiffs' claims against Defendants will be and are limited to Mr. Fordham's asbestos exposures arising out of his work on commercial and non-military vessels and at other work sites where Defendants' products were present. Plaintiffs' waiver moots Defendants' invocation of the federal officer removal statute and the military contractor defenses, and divests the federal district court of subject matter jurisdiction over Plaintiffs' personal-injury action.

## VI. CONCLUSION

Based on the foregoing, Plaintiffs respectfully request (i) that the affidavits submitted by Defendants in their notice of removal be stricken; (ii) that this matter be remanded immediately to state court; and (iii) any and all further relief that this Court deems just and proper.

Dated: New York, New York.
      March 27, 2012

By: /s/ Kush Shukla
    Kush Shukla, Esq. [KS-1227]
    Wilentz Goldman & Spitzer P.A.
    110 William Street 26th floor,
    New York, New York 10038-3927
    Tel: 646-746-8916
    Fax: 732-726-6604
    e-mail: kshukla@wilentz.com
    *Attorneys for Plaintiff* s