ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
### CIVIL DOCKET FOR CASE #: 3:12-cv-01578-JCS

Sundeen v. B.F. Goodrich Company et al                    Date Filed: 03/29/2012
Assigned to: Magistrate Judge Joseph C. Spero              Jury Demand: Defendant
Case in other court: Alameda County Superior Court,        Nature of Suit: 368 P.I. : Asbestos
           RG12-618605                                Jurisdiction: Federal Question
Cause: 28:1441 Petition for Removal- Product Liability

**Plaintiff**

**Norvin Sundeen**                    represented by   **Marc Ian Willick**
                                                        Napoli Bern Ripka Shkolnik &
                                                        Associates, LLP
                                                        2361 Rosecrans Avenue
                                                        Suite 450
                                                        El Segundo, CA 90245
                                                        (310) 536-1040
                                                        Fax: (310) 496-0256
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**B.F. Goodrich Company**

**Defendant**

**Boeing Co.**                        represented by   **James C. Pettis**
                                                        Bryan Cave LLP
                                                        120 Broadway
                                                        Suite 300
                                                        Santa Monica, CA 90401
                                                        310-576-2100
                                                        Fax: 310-576-2200
                                                        Email: james.pettis@bryancave.com
                                                        *ATTORNEY TO BE NOTICED*

**Defendant**

**Borg-Warner Corporation**
*(By Its Successor-In-Interest,*
*Borg-Warner Morse Tec, Inc.)*

**Defendant**

**Bridgestone/Firestone Americas Holding, Inc.**
*(N/K/A Bridgestone America's, Inc.)*

<u>Defendant</u>

**Certainteed Corporation**

<u>Defendant</u>

**CNH America, LLC**

<u>Defendant</u>

**Crown Cork & Seal Company, Inc.**

<u>Defendant</u>

**CSR Ltd.**

<u>Defendant</u>

**Deere & Company**

<u>Defendant</u>

**Ford Motor Company**

<u>Defendant</u>

**Freightliner, LLC**

<u>Defendant</u>

**General Electric Company**

<u>Defendant</u>

**General Parts International, Inc.**

<u>Defendant</u>

**Genuine Parts Company**

<u>Defendant</u>

**Georgia Pacific LLC**

<u>Defendant</u>

**Hamilton Materials, Inc.**

<u>Defendant</u>

**Honeywell International, Inc.**
*(F/K/A Alliedsignal, Inc. as Successor-In-Interest to the Bendix Corporation)*

<u>Defendant</u>

**J.T. Thorpe & Son, Inc.**

**Defendant**

**Lockheed Martin**
*also known as*
Lockheed Corporation

**Defendant**

**Manny Moe and Jack of California**

**Defendant**

**Maremont Corporation**

**Defendant**

**Massey Ferguson Co.**

**Defendant**

**McDonnell Douglas Corp.**
*also known as* .
Boeing Co.

**Defendant**

**National Automotive Parts Association**

**Defendant**

**Navistar, Inc.**
*formerly known as*
International Truck and Engine and as
Successor-In-Interest to International
Harvester Corporation

**Defendant**

**New Holland North America, Inc.**

**Defendant**

**Northrop Grumman Corporation**      represented by   **Daniel James Kelly**
Tucker Ellis & West LLP
135 Main Street, Suite 700
San Francisco, CA 94105
415-617-2400
Fax: 415-617-2409
Email: daniel.kelly@tuckerellis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Karry Son**
Tucker Ellis & West LLP
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071

213-430-3310
Fax: 213-430-3409
Email: john.son@tuckerellis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Parker Haniffin Corporation**
*(Individually and as Successor-*
*In-Interest to EIS Automotive Corp.)*

**Defendant**

**Paccar, Inc.**
*also known as*
Peterbilt Motors Company

**Defendant**

**Pneumo Abex Corporation**

**Defendant**

**Prestolite Wire, LLC**
*(and its wholly owned subsidiary*
*Prestolite Performance Group)*

**Defendant**

**Sears, Roebuck and Co.**
*a subsidiary of Sears Holdings*
*Corporation*

**Defendant**

**Union Carbide Corporation**

**Defendant**

**Western Auto Supply Company**

**Defendant**

**The Boeing Company**                    represented by  **James C. Pettis**
                                          (See above for address)
                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 03/29/2012 | 1 | NOTICE OF REMOVAL; No Process from Alameda County Superior Court. Their case number is RG12-618605. (Filing fee $350.00 receipt number 34611072317). Filed by Northrop Grumman Corporation. (Attachments: # 1 Civil Cover Sheet) (gba, COURT STAFF) (Filed on 3/29/2012) (Entered: 03/29/2012) |

| | | |
|---|---|---|
| 03/29/2012 | 1 | Answer to Complaint by Northrop Grumman Corporation. (gba, COURT STAFF) (Filed on 3/29/2012) (Entered: 03/29/2012) |
| 03/29/2012 | 2 | NOTICE of Disclosure Statement and Certification of Interested Entities by Northrop Grumman Corporation (gba, COURT STAFF) (Filed on 3/29/2012) (Entered: 03/29/2012) |
| 03/29/2012 | 3 | ADR SCHEDULING ORDER: Case Management Statement due by 7/6/2012. Case Management Conference set for 7/13/2012 01:30 PM in Courtroom G, 15th Floor, San Francisco. (gba, COURT STAFF) (Filed on 3/29/2012) (Entered: 03/29/2012) |
| 03/30/2012 | 4 | MOTION for Joinder *to Northrop Grumman Systems Corporation's Notice of Removal of Action Under 28 U.S.C. section 1442(a)(1) Federal Officer* filed by Boeing Co., The Boeing Company. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Pettis, James) (Filed on 3/30/2012) (Entered: 03/30/2012) |
| 03/30/2012 | 5 | NOTICE by Boeing Co. *of Interested Parties* (Pettis, James) (Filed on 3/30/2012) (Entered: 03/30/2012) |
| 03/30/2012 | 6 | Statement *Corporate Disclosure* by Boeing Co.. (Pettis, James) (Filed on 3/30/2012) (Entered: 03/30/2012) |
| 04/02/2012 | 7 | CERTIFICATE OF SERVICE by Northrop Grumman Corporation - *Defendant Northrop Grumman Systems Corporation's Certificate of Service* (Kelly, Daniel) (Filed on 4/2/2012) (Entered: 04/02/2012) |
| 04/03/2012 | 8 | NOTICE by Northrop Grumman Corporation - *Defendant Northrop Grumman Systems Corporation's Notice of Potential Tag-Along Action* (Kelly, Daniel) (Filed on 4/3/2012) (Entered: 04/03/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/03/2012 12:27:21 | | |
| **PACER Login:** | te0445 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-01578-JCS |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

1  Marc I. Willick (State Bar No. 175379)
2  NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP
   2361 Rosecrans Ave., Suite 450
3  El Segundo, California 90245
   Telephone:    (310) 536-1040
4  Facsimile:    (310) 496-0256

5  Attorneys for Plaintiff

6

7

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10       FOR THE COUNTY OF ALAMEDA – COURT OF UNLIMITED JURISDICTION

11  NORVIN SUNDEEN,                    )   Case No.  RG 1 2 6 1 8 6 0 5
                                       )
12                                     )
                                       )   COMPLAINT FOR PERSONAL INJURY –
13              Plaintiff,             )   ASBESTOS
                                       )
14           vs.                       )   1 – NEGLIGENCE;
                                       )   2 – STRICT LIABILITY;
15  B.F. GOODRICH COMPANY              )   3 – FALSE REPRESENTATION;
    BOEING CO.                         )   4 – INTENTIONAL TORT/INTENTIONAL;
16  BORG-WARNER CORPORATION            )   5 – PREMISES/CONTRACTOR LIABILITY;
        (BY ITS SUCCESSOR-IN-          )   6 – GENERAL NEGLIGENCE;
17      INTEREST, BORG-WARNER          )   7 – VICARIOUS LIABILITY;
        MORSE TEC, INC.)               )   8 – FRAUD and DECEIT/CONCEALMENT;
18  BRIDGESTONE/FIRESTONE              )   9 – NEGLIGENT REPRESENTATION;
19      AMERICAS HOLDING, INC.         )   10 – NEGLIGENCE- CLUTCH AND BRAKE
        (N/K/A BRIDGESTONE             )   ASSEMBLIES;
20      AMERICA'S, INC.)               )   11 – STRICT LIABILITY – CLUTCH AND
21  CERTAINTEED CORPORATION            )   BRAKE ASSEMBLIES.
    CNH AMERICA, LLC                   )
22  CROWN CORK & SEAL COMPANY,         )
        INC.                          )
23  CSR LTD.                           )
    DEERE & COMPANY                    )
24  FORD MOTOR COMPANY                 )
25  FREIGHTLINER, LLC                  )
    GENERAL ELECTRIC COMPANY           )
26  GENERAL PARTS INTERNATIONAL,       )
        INC.                          )
27  GENUINE PARTS COMPANY              )
    GEORGIA PACIFIC LLC                )
28  HAMILTON MATERIALS, INC.           )

                                 1
              COMPLAINT FOR PERSONAL INJURY – ASBESTOS

© COPY

ENDORSED
FILED
ALAMEDA COUNTY

CLERK OF THE SUPERIOR COURT
By_____
                        Deputy

| | |
|---|---|
| 1 | HONEYWELL INTERNATIONAL INC. ) |
| | (F/K/A ALLIEDSIGNAL INC., AS ) |
| 2 | SUCCESSOR-IN-INTEREST TO ) |
| | THE BENDIX CORPORATION) ) |
| 3 | J.T. THORPE & SON, INC. ) |
| | LOCKHEED MARTIN (A/K/A ) |
| 4 | LOCKHEED CORPORATION) ) |
| 5 | MANNY MOE AND JACK OF ) |
| | CALIFORNIA ) |
| 6 | MAREMONT CORPORATION ) |
| | MASSEY FERGUSON CO. ) |
| 7 | MCDONNELL DOUGLAS CORP. ) |
| | (A/K/A BOEING CO.) ) |
| 8 | NATIONAL AUTOMOTIVE PARTS ) |
| | ASSOCIATION ) |
| 9 | NAVISTAR, INC., (F/K/A ) |
| 10 | INTERNATIONAL TRUCK AND ) |
| | ENGINE AND AS SUCCESSOR- ) |
| 11 | IN-INTEREST TO ) |
| | INTERNATIONAL HARVESTER ) |
| 12 | CORPORATION) ) |
| 13 | NEW HOLLAND NORTH AMERICA, ) |
| | INC. ) |
| 14 | NORTHROP GRUMMAN ) |
| | CORPORATION ) |
| 15 | PARKER HANIFFIN CORPORATION ) |
| 16 | (INDIVIDUALLY AND AS ) |
| | SUCCESSOR-IN-INTEREST TO EIS ) |
| 17 | AUTOMOTIVE CORP.) ) |
| | PACCAR, INC. (A/K/A PETERBILT ) |
| 18 | MOTORS COMPANY) ) |
| | PNEUMO ABEX CORPORATION ) |
| 19 | PRESTOLITE WIRE, LLC (AND ITS ) |
| | WHOLLY OWNED SUBSIDIARY ) |
| 20 | PRESTOLITE PERFORMANCE ) |
| | GROUP) ) |
| 21 | SEARS, ROEBUCK AND CO., a ) |
| 22 | subsidiary of SEARS ) |
| | HOLDINGS CORPORATION ) |
| 23 | UNION CARBIDE CORPORATION ) |
| | WESTERN AUTO SUPPLY COMPANY ) |
| 24 | and DOES 1-500 INCLUSIVE, ) |
| 25 | ) |
| | Defendants. ) |
| 26 | ) |
| 27 | // |
| 28 | // |

COMPLAINT FOR PERSONAL INJURY— ASBESTOS

1

2

### GENERAL ALLEGATIONS

3      COME NOW Plaintiff NORVIN SUNDEEN and complain and allege as follows:

4      1. Plaintiff NORVIN SUNDEEN has been diagnosed with a disease related to exposure to

5  asbestos and asbestos-containing products.

6      2. Plaintiff NORVIN SUNDEEN used, handled or was otherwise exposed to asbestos and

7

8  asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff

9  NORVIN SUNDEEN's exposure to asbestos and asbestos-containing products occurred at various

10 locations as set forth in Exhibit A, attached hereto and incorporated herein by reference.

11     3. Plaintiff NORVIN SUNDEEN's   cumulative exposure to asbestos as a result of acts and

12 omissions of defendants and the defective products as hereinafter alleged, individually and together,

13 was a substantial factor in increasing Plaintiff NORVIN SUNDEEN's risk of MALIGNANT

14 MESOTHELIOMA and other related injuries and therefore a legal cause of Plaintiff NORVIN

15

16 SUNDEEN  injuries.

17     4. Plaintiff NORVIN SUNDEEN was not aware at the time of exposure that asbestos or

18 asbestos-containing products presented any risk of injury and/or disease.

19     5. As a direct and proximate result of the aforesaid conduct of defendants, their "alternate

20 entities," and each of them as set forth hereinafter, Plaintiff NORVIN SUNDEEN suffers permanent

21 injuries, including, but not limited to, asbestosis, other lung damage, and cancer, from the effect of

22 exposure to asbestos fibers, all to Plaintiffs' damage in the sum in excess of the jurisdictional limits of

23 Court of Limited Jurisdiction.

24     6. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate

25 entities," and each of them, By reason of the premises, plaintiff NORVIN SUNDEEN has been

26 compelled to incur obligations as and for physicians, surgeons, nurses, hospital care, medicine, hospices,

27 x-rays, medical supplies and other medical treatment, the true and exact amount thereof being unknown

28

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

7.   By reasons of the premises, plaintiff NORVIN SUNDEEN has been caused great pain and suffering.

8.   Each of the herein named defendants is liable for its own tortuous conduct and/or the tortuous conduct of an "alternate entity" as hereinafter defined on Exhibit D. Defendants, and each of them, are liable for the acts of their "alternate entity," and each of them, in that there has been a corporate name change, defendant is the successor by merger or successor by other acquisition resulting in a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

9.   The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

10.   At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

11.   Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants listed in the left "Defendant" column on Exhibit "C" hereto were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said

4

Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Los Angeles, State of California.

12. Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party defendant committed at the direction of an officer of the United States Government. Plaintiffs do not seek to recover against themselves, or either of themselves, as a defendant or otherwise, for any asbestos related injuries.

## FIRST CAUSE OF ACTION

### (Negligence)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", AND DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

13. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

14. At all times herein mentioned, defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos. A list of defendants and their asbestos containing products is attached hereto as Exhibit "C."

15. At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed,

modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health

hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use

of the products labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

manufactured for others, packaged, and advertised a certain substance, the generic name of which is

asbestos, and other products and equipment containing said substance, in that said substance

proximately caused personal injuries to users, consumers, workers, bystanders, and others, including

Plaintiff NORVIN SUNDEEN  (hereinafter collectively called "exposed persons"), while being used

in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous

for use by the "exposed persons".

16. Defendants, their "alternate entities," and each of them, had a duty to exercise due care in

the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty

of due care.

17. Defendants, their "alternate entities", and each of them, knew, or should have known, and

intended that the aforementioned asbestos and products containing asbestos would be transported by

truck, rail, ship and other common carriers, and that in the shipping process the products would break,

crumble or be otherwise damaged; and/or that such products would be used for insulation,

construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications,

including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal,

"rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through

such foreseeable use and/or handling "exposed persons", including  Plaintiff NORVIN SUNDEEN

herein, would use or be in proximity of and exposed to said asbestos fibers.

18. Defendants, their "alternate entities", and each of them, knew, or should have known, and

intended that the aforementioned asbestos and asbestos-containing products and equipment would be

6

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

1  used or handled as specified in paragraph 26 above and Exhibits "A," "B", "C" and each of them

2  attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos

3  fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff

4  NORVIN SUNDEEN herein, would be in proximity to and exposed to said asbestos fibers from

5

6  defendants' products.

7      19.  Plaintiff NORVIN SUNDEEN has used, handled, or was otherwise exposed to asbestos

8  and asbestos-containing products as set forth in Exhibit "C" referred to herein in a manner that was

9  reasonably foreseeable.  As a result of the exposure to defendants and each of their products as set

10  forth herein, asbestos entered plaintiff's body.  Plaintiff NORVIN SUNDEEN exposure to asbestos

11  that entered his body from defendants and each of their asbestos-containing products (Exhibit C)

12  occurred at various locations and times as set forth in Exhibit "A", which is attached hereto and

13

14  incorporated by reference herein.

15      20.  As a direct and proximate result of the conduct of the Defendants, their "alternate

16  entities", and each of them, as aforesaid, Plaintiff NORVIN SUNDEEN 's exposure to asbestos and

17  asbestos-containing products caused Plaintiff NORVIN SUNDEEN's injuries, as set forth in Exhibit

18  "B", which is attached hereto and incorporated by reference herein.  Each of defendants' asbestos

19  containing products was a substantial factor in bringing about Plaintiff NORVIN SUNDEEN 's

20

21  injuries.

22      21.  Plaintiffs are informed and believe, and thereon allege, that progressive lung disease,

23          cancer and other serious diseases are caused by inhalation of asbestos fibers without

24          perceptible trauma and that said disease results from exposure to asbestos and asbestos-

25          containing products over a period of time.

26  //

27  //

28

7

22. Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities", and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

24. The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff NORVIN SUNDEEN, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Strict Liability)

**AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

25. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

26. At all times herein mentioned, defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

8

1   rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos

2   and other products containing asbestos. A list of defendants and their asbestos containing products is

3   attached hereto as Exhibit "C."

4

5       27.  Defendants, their "alternate entities", and each of them, knew and intended that the above-

6   referenced asbestos and asbestos-containing products would be used by the purchaser or user without

7   inspection for defects therein or in any of their component parts and without knowledge of the hazards

8   involved in such use.

9       28.  Said asbestos and asbestos-containing products were defective and unsafe for their

10  intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.  The

11  defect existed in the said products at the time they left the possession of the Defendants, their

12  "alternate entities," and each of them.  Said products did, in fact, cause personal injuries, including

13  asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff NORVIN

14

15  SUNDEEN  herein, while being used in a reasonably foreseeable manner, thereby rendering the same

16  defective, unsafe, and dangerous for use.

17

18      29.  "Exposed persons" did not know of the substantial danger of using said products.  Said

19  dangers were not readily recognizable by "exposed persons."  Said Defendants, their "alternate entities",

20  and each of them, further failed to adequately warn of the risks to which Plaintiff NORVIN SUNDEEN

21  and others similarly situated were exposed.

22      30.  In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test,

23  warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale,

24  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,

25  warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-

26  containing products and equipment, Defendants, their "alternate entities", and each of them, did so with

27  conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and

28  asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer.

9

Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said Defendants, their "alternate entities", and each of them, on or before 1930, and thereafter.

31.   On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities," and each of them, knew that members of the general public, and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

32.   With said knowledge, said Defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33.   Plaintiffs allege that the aforementioned defendants, their "alternate entities," and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended

10

use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

34.   Plaintiffs further allege Plaintiff NORVIN SUNDEEN's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their "alternate entities," and each of them

35.   Plaintiff NORVIN SUNDEEN relied upon defendants', their "alternate entities'," and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff NORVIN SUNDEEN suffered injury as alleged herein.

36.   The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.

37.   In pursuance of said financial motivation, Defendants, their "alternate entities", and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff NORVIN SUNDEEN .

38.   Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

39.   Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and

11

had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

40.   The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff NORVIN SUNDEEN, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

41.   As a direct and proximate result thereof, Plaintiffs have suffered the damages previously alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (False Representation Under Restatement of Torts Section 402-B)

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

42.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations, First (Negligence) and Second (Strict Liability) Causes of Action above.

43.   At the aforementioned time when Defendants, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiff NORVIN SUNDEEN   and his

12

employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

44.   The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiff NORVIN SUNDEEN, and his employers, relied upon said representations of Defendants, their "alternate entities", and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

45.   Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiff NORVIN SUNDEEN herein.

46.   As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort/Intentional Failure to Warn)

**AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE:**

47.   Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First and Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

48.   At all times pertinent hereto, the Defendants, their "alternate entities", and each of them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of

13

California, to abstain from injuring the person, property, or rights of the Plaintiffs. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities", and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities", and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the aforementioned Civil Code sections.

49. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

50. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained great pain and suffering.

51. Since on or before 1930, the Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Plaintiff NORVIN SUNDEEN , and others in Plaintiff NORVIN SUNDEEN 's position working in close proximity with such materials. The Defendants, their "alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiff NORVIN SUNDEEN, and others in his position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)     Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such

14

materials and products to the health and safety of Plaintiff NORVIN SUNDEEN  and others in  his position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them, since on or before 1930.   By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff NORVIN SUNDEEN to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)    Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to Plaintiff NORVIN SUNDEEN  and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendant, their "alternate entities", and each of them, were bound to disclose such information;

(c)    Defendants, their "alternate entities", and each of them, sold the aforementioned products, materials, and equipment to Plaintiff NORVIN SUNDEEN's  employers and others without advising him, , his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants, their "alternate entities", and each of them, caused to be positively asserted to  Plaintiff NORVIN SUNDEEN  hat which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff NORVIN SUNDEEN  to work with or in close proximity to such materials;

(d)    Defendants, their "alternate entities", and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report."   Although bound to disclose it, Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff

15

and others to be and remain ignorant thereof. Defendants, their "alternate entities", and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff NORVIN SUNDEEN  by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, suggested to the public as a fact which is not true and disseminated other facts likely to mislead Plaintiff NORVIN SUNDEEN  . Such facts did mislead Plaintiff NORVIN SUNDEEN  and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff NORVIN SUNDEEN  the true facts concerning such knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to disclose;

(g)     Defendants, their "alternate entities", and each of them, failed to warn Plaintiff NORVIN SUNDEEN and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their

16

"alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)    Defendants, their "alternate entities", and each of them, failed to provide Plaintiff NORVIN SUNDEEN with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff NORVIN SUNDEEN and others applying and installing such material;

(i)    Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiff NORVIN SUNDEEN the true nature of the industrial exposure of Plaintiff NORVIN SUNDEEN and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities", and each of them, also concealed from Plaintiff NORVIN SUNDEEN and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)    Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff NORVIN SUNDEEN so that said physicians could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

(k)    Defendants, their "alternate entities", and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff NORVIN SUNDEEN's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff NORVIN SUNDEEN and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

52.    Defendants, their "alternate entities", and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries, as

17

required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff NORVIN SUNDEEN was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

53.   Defendants, their "alternate entities", and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff NORVIN SUNDEEN about the true facts, and knowing that Plaintiff NORVIN SUNDEEN did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiff NORVIN SUNDEEN to remain unaware of the true facts and to induce Plaintiff NORVIN SUNDEEN to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

54.   As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiff NORVIN SUNDEEN sustained the injuries and damages alleged herein.   The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".   Plaintiff NORVIN SUNDEEN, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Premises Owner/Contractor Liability)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF THE DEFENDANTS LISTED ON EXHIBIT E, AND DOES 301-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, (hereinafter "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS") AND ALLEGE AS FOLLOWS:

55.   Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

18

56.   At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, each of which is listed on attached Exhibit "E" which exhibit is incorporated by this reference, was a business, or successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and/or toxic substances to be constructed, installed, maintained, used, managed, and/or controlled by them.  Said entities shall hereinafter collectively be called "alternate entities".  Each of the herein-named defendants is liable for its own tortuous conduct and that of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, that caused the presence as aforesaid of said asbestos- and silica-containing products and insulation and other toxic substances.  Said defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity", and that each such defendant enjoys the goodwill originally attached to each such "alternate entity".

57.   At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed and/or controlled the following premises Plaintiff NORVIN SUNDEEN  worked and/or was present at.  The following information provided is preliminary and is based on recall of events covering many years, and further investigation and discovery may produce additional information: ATTACHED EXHIBITS A and B. Additionally, Plaintiff NORVIN SUNDEEN and/or his family members might have been present at other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

58.   Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff NORVIN SUNDEEN   , his family members and other persons exposed to said asbestos and toxic substances while present at said premises.

59.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise or ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff NORVIN SUNDEEN  , and other workers or persons so exposed, present at each of the aforesaid respective premises.

60.   At all times relevant herein, Plaintiff NORVIN SUNDEEN and/or his family members entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and invitation.  In so doing, Plaintiff NORVIN SUNDEEN  was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

61.   Plaintiff NORVIN SUNDEEN  at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

62.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, remained in control of the premises where Plaintiff NORVIN SUNDEEN and/or plaintiff's family members were performing their work.

63.  At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS owed to Plaintiff NORVIN SUNDEEN, and others similarly situated, a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said persons.

64.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions; and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

65.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

66. Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired, and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

67.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, should have recognized that the work of said contractors would

21

create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken.

68.   In part, Plaintiff NORVIN SUNDEEN was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.

69.   The   work   of   contractors   on   premises   controlled   by   the   PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created unsafe premises and an unsafe work place by reason of the release of dangerous quantities of toxic substances including, but not limited to, asbestos.

70.   The unsafe premises or work place was created, in part, by the negligent conduct of the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS.  Said negligent conduct includes, but is not limited to:

(a)   Failure to warn of asbestos and other toxic dusts;

(b)   Failure to suppress the asbestos-containing or toxic dusts;

(c)   Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

(d)   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e)   Failure to inspect and/or test the air;

(f)   Failure to provide medical monitoring; and

Failure to select and hire a careful and competent contractor or subcontractor.

71.   The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code of Procedure, section 1714, and California Labor Code, section 6400, et seq., or Health and Safety Code, section 40.200, et seq., and regulations promulgated there under.  Therefore, the Premises Owner/Contractor Liability Defendants are responsible for any breach of said duties whether by themselves or others.

72.   Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other governmental

regulations promulgated by the United States Government, the State of California, and others, including, but not limited to, the General Industry Safety Orders promulgated pursuant to California Labor Code, section 6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including, but not limited to: Title VIII, Group 9 (Control of Hazardous Substances), Article 81, sections 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code, section 40.200, et seq., which empowers the South Coast Area Air Quality Management District to promulgate regulations including, but limited to: S.C.A.A.Q.M.D. Rule 1403; Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions.  Defendants' violations of said codes include, but are not limited to:

      (a)    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

      (b)    Failing to segregate work involving the release of asbestos or other toxic dusts;

      (c)    Failing to suppress dust using prescribed ventilation techniques;

      (d)    Failing to suppress dust using prescribed "wet down" techniques;

      (e)    Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

      (f)    Failing to provide approved respiratory protection devices;

      (g)    Failing to ensure "approved" respiratory protection devices were used properly;

      (h)    Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

      (i)    Failing to provide adequate housekeeping and clean-up of the work place;

23

(j)     Failing to properly warn of the hazards associated with asbestos as required by these statutes;

(k)     Failing to properly report renovation and disturbance of asbestos-containing materials, including, but not limited to: S.C.A.A.Q.M.D. Rule 1403;

(l)     Failing to have an asbestos removal supervisor as required by regulation;

(m)     Failing to get approval for renovation as required by statutes; and Failing to maintain records as required by statute.

73.   PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, were the "statutory employer" of Plaintiff NORVIN SUNDEEN and/or his family members as defined in the California Labor Code and California case law.

74.  Plaintiff NORVIN SUNDEEN at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances, or statutes.

75.  At all times mentioned herein, Plaintiff NORVIN SUNDEEN was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

76.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

77.   As a legal consequence of the foregoing, Plaintiff NORVIN SUNDEEN developed an asbestos-related illness, which has caused great injury as previously set forth, and plaintiffs have suffered damages as alleged herein.

78.   Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and of their officers, directors, and managing agents.

24

79.  Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

80.  Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

81.  The herein-described conduct of said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff NORVIN SUNDEEN, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

## SIXTH CAUSE OF ACTION
### [General Negligence]

AS AND FOR A SIXTH, FURTHER, AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS ON EXHIBIT "E,"; DOES 301-350 INCLUSIVE; THEIR ALTERNATE ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SIXTH CAUSE OF ACTION FOR GENERAL NEGLIGENCE AND ALLEGE AS FOLLOWS:

82.  Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

83.  At all times herein mentioned, defendants selected, supplied, and distributed asbestos containing materials to their employees and others for use during their regular work activities in areas where defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff NORVIN SUNDEEN  worked and/or spent time as alleged herein in Exhibit A.

84.  Said employees and others handled, disturbed and otherwise manipulated these asbestos containing materials causing the release of asbestos fibers and dust.

85.  Defendants were negligent in selecting, supplying, and distributing the asbestos containing products in that said products were unsafe in that they released asbestos fibers and dust into

25

1  air when used which would be inhaled by Plaintiff NORVIN SUNDEEN and settled onto his clothes,

2  shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and by-

3  standers including Plaintiff NORVIN SUNDEEN would be exposed to dangerous asbestos dust.

4      86.  The asbestos and asbestos-containing materials described herein were unsafe in that

5  handling and disturbing products, which contain asbestos, causes the release of asbestos fibers into the

6  air, and the inhalation of asbestos fibers causes serious disease and death.  Here, the handling of

7

8  asbestos containing materials by defendants' employees and other caused personal injuries to Plaintiff

9  NORVIN SUNDEEN .

10     87.  At all times herein mentioned, defendants knew or should have known that its employees

11  and bystanders thereto, including Plaintiff NORVIN SUNDEEN , frequently encountered asbestos-

12  containing products and materials during the course and scope of their work activities.

13

14     88.  At all times herein mentioned, defendants knew or should have known that the asbestos-

15  containing materials encountered by its employees and bystanders thereto including Plaintiff

16  NORVIN SUNDEEN , were unsafe in that harmful asbestos fibers were released during the use,

17  handling, breaking, or other manipulation of asbestos-containing products and materials, and that once

18  released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts

19  of those exposed, where further activity causes the fibers to once again be released into the air where

20  they can be inhaled, all of which causes serious disease and/or death.

21

22     89.  At all times herein mentioned, defendants, and each of them knew, or in the exercise of

23  reasonable diligence should have known, that absent adequate training and supervision, their

24  employees and bystanders thereto including Plaintiff NORVIN SUNDEEN were neither qualified nor

25  able to identify asbestos-containing products nor to identify the hazardous nature of their work

26  activities involving asbestos-containing products.

27

28

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

90. At all times herein mentioned, Plaintiff NORVIN SUNDEEN was unaware of the dangerous condition and unreasonable risk of personal injury created by the aforesaid presence and use of asbestos-containing products and materials.

91. At all time herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that workers and bystanders thereto, including Plaintiff NORVIN SUNDEEN would bring dangerous dust home from the workplace and contaminate their homes, potentially causing injury to others off the premises.

92. At all times herein mentioned, defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos containing products and materials to its employees, to adequately instruct, train, and supervise their employees and to implement adequate safety policies and procedures to protect workers and persons encountering those workers, including Plaintiff NORVIN SUNDEEN , from suffering injury as a result of the asbestos hazards encountered and created by the work of defendants' employees and others.

93. Defendants' duties as alleged herein exist and existed independently of defendants' duties to maintain their premises in reasonably safe condition, free from concealed hazards.

94. Defendants negligently selected, supplied, and distributed the asbestos containing materials and failed to adequately train or supervise their employees to identify asbestos-containing products and materials; to ensure the safe handling of asbestos-containing products and materials encountered during the course of their work activities; and to guard against inhalation of asbestos fibers and against the inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products and materials during the course and scope of their employment by defendants.

COMPLAINT FOR PERSONAL INJURY-- ASBESTOS

95. Defendants failed to warn its employees and bystanders thereto including Plaintiff NORVIN SUNDEEN , of the known hazards associated with asbestos and the asbestos materials they were using and/or disturbing.

96. As a direct and proximate result of the conduct of defendants in selecting, supplying, distributing and disturbing asbestos-containing materials and failing to adequately train and supervise their employees and failing to adopt and implement adequate safety policies and procedures as alleged herein, Plaintiff NORVIN SUNDEEN became exposed to and inhaled asbestos fibers, which was a substantial factor causing Plaintiff NORVIN SUNDEEN to develop asbestos-related conditions and diseases from which plaintiffs have suffered damages as herein alleged.

97. Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and of their officers, directors, and managing agents.

98. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

99. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

100. The herein-described conduct of said defendants was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff NORVIN SUNDEEN, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants and each of them, as hereinafter set forth.

//

COMPLAINT FOR PERSONAL INJURY--ASBESTOS

1

2

### SEVENTH CAUSE OF ACTION
[Vicarious Liability of Defendants Based upon Respondeat Superior]

3   AS AND FOR A SEVENTH, FURTHER, AND DISTINCT CAUSE OF ACTION
AGAINST DEFENDANTS ON EXHIBITS "E,"; DOES 301 -350 INCLUSIVE; THEIR

4   ALTERNATE ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SEVENTH
CAUSE OF ACTION FOR VICARIOUS LIABILITY OF DEFENDANTS BASED UPON

5   RESPONDEAT SUPERIOR, AND ALLEGE AS FOLLOWS:

6

7       101.  Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

8   paragraph of the General Allegations above.

9       102.  Prior to and during all relevant times defendants employed workers (hereinafter

10  "employees") in areas where defendants owned, maintained, controlled, managed and/or conducted

11  business activities where Plaintiff worked and/or spent time as alleged herein in Exhibit A.

12      103.  At all times herein mentioned, defendants' employees frequently encountered asbestos-

13  containing products, materials, and debris during the course and scope of their employment, and

14  during their regular work activities negligently disturbed asbestos-containing materials to which

15

16  Plaintiff was exposed.

17      104.  Employees handling and disturbing asbestos-containing products in plaintiff's vicinity

18  were the agents and employees of defendants and at all times herein relevant were subject to the

19  control of defendants with respect to their acts, labor, and work involving (a) the removal, transport,

20  installation, cleaning, handling, and maintenance of asbestos-containing products, materials, and

21  debris, and (b) the implementation of safety policies and procedures.  Defendants controlled both the

22

23  means and manner of performance of the work of their employees as described herein.

24      105.  Employees handling and disturbing asbestos-containing products in Plaintiff NORVIN

25  SUNDEEN 's vicinity received monetary compensation from defendants in exchange for the work

26  performed as described herein, and these employees performed the work as described herein in the

27  transaction and furtherance of the business of defendants.

28

COMPLAINT FOR PERSONAL INJURY-- ASBESTOS

106. Harmful asbestos fibers were released during defendants' employees' use, handling, breaking, or other manipulation of asbestos-containing products and materials.

107. Once released, the asbestos fibers were inhaled; they also alighted on the clothes, shoes, skin, hair, and body parts of those exposed, including Plaintiff NORVIN SUNDEEN, and on the surfaces of work areas, where further activity caused the fibers to once again be released into the air and inhaled.

108. The asbestos and asbestos-containing materials were unsafe in that handling and disturbing products which contain asbestos causes the release of asbestos fibers into the air, and onto surrounding surfaces including persons in the area and the inhalation of asbestos fibers causes serious disease and death.

109. Defendants' employees' use, handling and manipulation of asbestos-containing materials, as required by their employment and occurring during the course and scope of their employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage to exposed persons, including Plaintiff NORVIN SUNDEEN.

110. Defendants' employees were negligent in their use, handling and manipulation in that they failed to isolate their work with asbestos and/or to suppress asbestos fibers from being released into the air and surrounding areas. They also failed to take appropriate steps to learn how to prevent exposure to asbestos, failed to warn and/or adequately warn Plaintiff NORVIN SUNDEEN that he was being exposed to asbestos, failed to adequately warn him of the harm associated with his exposure to asbestos and/or provide him with protection to prevent his inhalation of asbestos.

111. Defendants' employees knew or should have known that failure to take such steps would result in exposure to bystanders including Plaintiff NORVIN SUNDEEN.

112. Defendants' employees owed Plaintiff NORVIN SUNDEEN a duty to exercise due care and diligence in their activities while he was lawfully on the premises so as not to cause him harm.

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

113. Defendants' employees breached this duty of case as heretofore described.

114. At all times herein mentioned, Plaintiff NORVIN SUNDEEN was unaware of the dangerous condition and unreasonable risk of personal injury created by defendants' employees' use of and work with asbestos-containing products and materials.

115. As a direct result of the defendants' employees conduct, Plaintiff NORVIN SUNDEEN's exposure to asbestos and asbestos-containing materials, each individually and together, caused severe and permanent injury to him and the damages and injuries as complained of herein to plaintiffs and each of them.

116. The risks herein alleged and the resultant damages suffered by Plaintiff NORVIN SUNDEEN were typical of or broadly incidental to defendants' business enterprise. As a practical matter, the losses caused by the torts of defendants' employees as herein alleged were sure to occur in the conduct of defendants' business enterprise. Nonetheless, defendants engaged in, and sought to profit by, their business enterprises, which, on the basis of past experience, involved harm to others through the torts of employees.

117. Based on the foregoing, defendants as the employers of said employees are vicariously liable under the doctrine of respondeat superior for all negligent acts and omissions committed by their employees in the course and scope of their work that caused harm to Plaintiff NORVIN SUNDEEN.

WHEREFORE, plaintiffs prays judgment against defendants and each of them, as hereinafter set forth.

//

//

//

//

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

**EIGHTH CAUSE OF ACTION**
**(Fraud and Deceit/Concealment)**

AS AND FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FRAUD AND DECEIT/CONCEALMENT PLAINTIFFS COMPLAIN OF DEFENDANT PNEUMO ABEX CORPORATION AND DOES 351-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

118.   Plaintiffs, by this reference, incorporate and makes a part hereof as though fully set forth herein at length, each and every allegation of the First through Seventh Causes of Action.

119.   The term "conspirators", as used herein, includes, but is not limited to: Met Life, Anthony Lanza, M.D., Johns-Manville, Raybestos-Manhattan Inc., Gatke Corporation, Owens-Illinois, Inc., United States Gypsum Company [USG], American Brakeblok Corporation (now Pneumo Abex Corporation [Pneumo Abex], Keasbey-Mattison Company (now T&N PLC [T&N]), all members of the Asbestos Textile Institute [ATI], and the other entities and individuals identified in this Cause of Action.

120.   Plaintiffs is informed and believe, and thereon alleges, that at all times herein mentioned, the conspirators, their "alternate entities" and each of them, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that conspirators, their "alternate entities", and each of them, were and are authorized to do and/or were and are doing business in the State of California, and that said conspirators, their "alternate entities", and each of them, were and are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that defendants were and are authorized to do and/or were and are doing business in the State of California, and that said defendants regularly conducted and/or conducts business in the County of Los Angeles, State of California.

121.   Plaintiff NORVIN SUNDEEN was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by one or more of the conspirators and or their "alternate entities" named below.  The exposure to the asbestos or asbestos-related products supplied by the conspirators caused Plaintiff's asbestos-related disease and injuries.  The conspirators, individually and as agents of one another and as co-conspirators, agreed and conspired among themselves, with other asbestos manufacturers and distributors, and with certain individuals including, but not limited to: Anthony Lanza, M.D. (Lanza), and defendants PNEUMO ABEX CORPORATION

32

and Does 351-450 to injure the Plaintiff in the following fashion (the following is not an exclusive list of the wrongful acts of defendants, but a representative list):

(a)     Beginning in 1929, MET LIFE entered agreements with Johns-Manville and others to fund studies of the affects of asbestos exposure on Canadian asbestos miners.  When the data from these studies proved that Canadian asbestos miners were developing asbestosis, MET LIFE, Johns-Manville, and others suppressed its publication; further, Anthony Lanza, M.D. (then a MET LIFE employee) actively misrepresented the results of the Canadian study for many years thereafter to meetings of health care professionals seeking information regarding asbestos exposure.

(b)     In approximately 1934, conspirators Johns-Manville and MET LIFE', through their agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Lanza, Associate Director, MET LIFE (insurers of Johns-Manville and Raybestos), that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts and conclusions about asbestos exposure; including, but not limited to, descriptions of the seriousness of the disease process, asbestosis.  The misrepresentation was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less serious than it was known to be by the conspirators.  As a result, Lanza's study was published in the medical literature containing said misleading statements in 1935.  the conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent non-disclosure by the desire to influence proposed legislation to regulate asbestos exposure, to provide a defense in lawsuits involving Johns-Manville, Raybestos, and MET LIFE, as insurer, and to promote the use of their asbestos products.

(c)     The above-described conspiracy continued in 1936 when additional co-conspirators American Brakeblok Corporation (defendant Pneumo Abex), Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville, Keasbey & Mattison Company (then an alter-ego to conspirator Turner & Newall, (T&N PLC), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber Company and USG, entered into an agreement with a leading medical research facility named Saranac Laboratories.  Under the agreement, the conspirators acquired the power to decide what information Saranac Laboratories could publish

33

regarding asbestos disease and could also control in what form such publications were to occur. Their agreement provided these conspirators the power and ability to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. In 1945, medical studies of dust from additional co-conspirator defendant Owens-Illinois, Inc.'s insulation product Kaylo were initiated at Saranac. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact regarding the health affects of asbestos exposure being made at scientific meetings.

(d)     In furtherance of the foregoing conspiracy, in 1947, these conspirators, members of the ATI, received a report from industrial hygienist W.C.L. Hemeon (Hemeon) regarding asbestos, which suggested re-evaluation of the then-existing maximum exposure limits for asbestos exposure. These conspirators caused the Hemeon report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then existing maximum exposure limit for asbestos was acceptable. Thereafter, these conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluations of their Threshold Limit Values for asbestos exposure.

(e)     The conspirators the Mellon Institute and the Industrial Hygiene Foundation (IHF) were research institutes whose functions included involvement in research regarding the health effects of inhaling asbestos dust.

(f)     Beginning in the early 1940's, the IHF was involved in a study by Hemeon entitled Report of Preliminary Dust Investigation for Asbestos Textile Institute, June 1947. This study was done in connection with members of the Asbestos Textile Institute (ATI). This study found that workers exposed to less than the recommended maximum exposure level for asbestos were nonetheless developing disease. As a part of the conspiracy, the IHF never published this study.

(g)     Beginning in the mid-1950's, the IHF and the Mellon Institute were involved in the publication of works by Braun and Truan entitled An Epidemiological Study of Lung Cancer in Asbestos Miners. In its original, unedited form in September 1957, this study had concluded that

34

workers with asbestosis had an increased incidence of lung cancer and that the Canadian Government had been under-reporting cases of asbestosis. The final published version of this study in June 1958, deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian Government had been under-reporting asbestosis cases. The IHF and the Mellon Institute conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, and other conspirators to delete the above-described information regarding asbestos and cancer.

(h)     The above-described actions of the IHF and the Mellon Institute constituted intention deception and fraud in actively misleading the public about the extent of the hazards connected with breathing asbestos dust.

(i)     The above-described conspiratorial and fraudulent actions of the IHF and the Mellon Institute substantially contributed to retarding the development of knowledge about the hazards of asbestos and thereby substantially contributed to injuries suffered by the Plaintiff.

(j)     The conspiracy was furthered when on November 11, 1948, representatives of the following conspirators met at the Johns-Manville headquarters: Johns-Manville, American Brakeblok Division of American Brake and Shoe Foundry (defendant Pneumo Abex), Gatke Corporation, Keasbey & Mattison Company (then an alter-ego to conspirator Turner & Newall (T&N )), Raybestos-Manhattan, Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter Company), Union Asbestos and Rubber Company, United States Gypsum Company and MET LIFE. U.S. GYPSUM did not send a company employee to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and take action on its behalf.

(k)     At the November 11, 1948 meeting, these conspirators, and their representatives, decided to exert their influence to materially alter and misrepresent material facts about the substance of research conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards for asbestos dust exposure.

(l)     At this meeting, these conspirators intentionally and affirmatively decided that Dr. Gardner's work should be edited to delete material facts about the cancer-causing propensity of

35

asbestos, the health effects of asbestos on humans, and the critique of the dust standards. MET LIFE then published these deceptive and fraudulent statements in the medical literature as edited by Dr. Arthur Vorwald. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the general public and the class of persons exposed to asbestos, including Plaintiff.

(m)     As a direct result of influence exerted by the conspirators, in 1951 a Dr. Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health, in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted reference to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks. The conspirators affirmatively and deliberately disseminated this deceptive and fraudulent Vorwald publication to university libraries, government officials, agencies, and others.

(n)     Such actions constitute a material affirmative misrepresentation of the total context of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unaccredited work indicated.

(o)     When Dr. Vorwald subsequently tried to publish more complete information regarding Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac Laboratories, denied him permission to publish or complete Dr. Gardner's work, and actively discouraged institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

(p)     The following conspirators were members of the trade association known as Quebec Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada, individually and as successor to Quebec Asbestos Corporation, The Celotex Corporation, successor to Quebec Asbestos Corporation, National Gypsum Company, and Turner & Newall (T&N ), individually and successor to Bell Asbestos. These conspirators, as members of the Q.A.M.A., participated in the above-described misrepresentation of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the Journal of Industrial Hygiene, AMA Archives of Industrial Health 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-conspirator Johns Manville's membership of the Q.A.M.A., as well as correspondence from co-conspirators dated 1/29/47, 11/26/47, 3/6/48, 10/15/48, 3/8/49, and

36

9/6/50, all indicating close monitoring of the editing process of Q.A.M.A.'s representative, Ivan Sabourin, acting on behalf of all Q.A.M.A. members.

(q)     As a furtherance of the conspiracy commenced in 1929, conspirators who were members of the Q.A.M.A. as described above, began on or about 1950 to formulate a plan to influence public opinion about the relationship between asbestos and cancer by influencing the medical literature on this subject; and then touting and disseminating this literature to the public and to organizations and legislative bodies responsible for regulatory control of asbestos -- with the specific intent of misrepresenting the existing scientific information and suppressing contrary scientific data in their possession and control.

(r)     This plan of misrepresentation and influence over the medical literature began on or about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do an evaluation of whether cancer was related to asbestos. After a preliminary report authored by Dr. Arthur Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, these Q.A.M.A. members refused to further fund the study, terminated the study, and prevented any public discussion or dissemination of the results.

(s)     As a result of the termination of the Q.A.M.A/Saranac sturdy, the conspirators fraudulently withheld information from the public and affirmatively misrepresented to the public and responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative misrepresentations by conspirators and conspirators' agents K. W. Smith, M.D., Paul Cartier, M.D., A. J. Vorwald, M.D., Anthony Lanza, M.D., Vandiver Brown, and Ivan Sabourin. Said misrepresentations being directed to inter alia, U. S. Government officials, Canadian Government officials, U. S. National Cancer Institute, medical organizations, health professionals, and the general public, including Plaintiff.

(t)     In furtherance of the 1929 conspiracy, in 1952, a Symposium regarding the health effects of asbestos was held at the Saranac Laboratories. The following conspirators were in attendance: MET LIFE, Lanza, Johns-Manville, Turner & Newall (T&N), Raybestos-Manhattan, and Q.A.M.A. members by way of their agents, Cartier, Sabourin and LaChance.

(u)     At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in product users was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed. In

37

an affirmative attempt to mislead the public about the extent of health risks associated with asbestos, and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to prevent publication of the record of this 1952 Saranac Symposium and it was not published.  In addition, MET LIFE induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies showing excess cancers in animals which thereby fraudulently misrepresented existing secret data which could not be publicized owing to the secrecy provisions contained in the 1936 Saranac agreement heretofore described.

(v)      In furtherance of the foregoing conspiracy, in 1953, co-conspirator National Gypsum, through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding health hazards of asbestos spray products, refused to mail a proposed response to that division indicating that respirators should be worn by applicators of the products.  National Gypsum's response distorted and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators and fraudulently concealed form such applicators the need for respirators and thereby misrepresented the risks associated with asbestos exposure.

(w)      In furtherance of the foregoing conspiracy, in 1955, co-conspirator Johns-Manville, through its agent Dr. Kenneth Smith, caused to be published in the AMA Archives of Industrial Health an article entitled "Pulmonary Disability in Asbestos Workers."  This published study materially altered the results of an earlier study in 1949 concerning the same set of workers.  This alteration of Dr. Smiths' study constituted a fraudulent and material misrepresentation about the extent of the risk associated with asbestos inhalation.

(x)      In furtherance of the foregoing conspiracy, in 1955, the National Cancer Institute held a meeting at which conspirator Johns-Manville, individually, and as agent for other co-conspirators, and Dr. A. Vorwald, as agent of co-conspirators, affirmatively misrepresented that there was no existing animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, MET LIFE were in secret possession of several suppressed studies which demonstrated that positive evidence did exist.

(y)      In furtherance of the foregoing conspiracy, in 1957, these conspirators and members of the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in

38

fraudulently concealing from the public material facts regarding asbestos exposure and also constituted an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung cancer.

(z)     Subsequently, the Q.A.M.A. conspirators contracted with the Industrial Hygiene Foundation and Dr. Daniel Braun to further study the relationship between asbestos exposure and asbestosis and lung cancer.  In 1957, Drs. Braun and Truan (Braun and Truan) reported to the Q.A.M.A. that asbestosis did increase a worker's risk of incurring lung cancer.

(aa)     The Q.A.M.A. conspirators as a furtherance of the conspiracy commenced in 1929, thereafter caused, in 1958, a publication of the work of Braun and Truan in which the findings regarding increased incidence of cancer in persons with asbestosis was edited out (stricken) by agents of the Q.A.M.A.  The published version of the Braun/Truan study contained a conclusion that asbestos exposure, alone, did not increase the incidence of lung cancer, a conclusion known by the conspirators to be false.

(bb)     By falsifying and causing publication of studies concluding that asbestos exposure did not cause lung cancer, the conspirators affirmatively misrepresented to the public and concealed from the public the extend of risks associated with inhalation of asbestos fibers.

(cc)     In furtherance of the ongoing 1929 conspiracy, in approximately 1958, these Q.A.M.A. conspirators publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in an effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of asbestos dust would not cause cancer.

(dd)     The Fraudulent misrepresentations beginning in 1929 as elaborated above, and continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for asbestos exposure.  The developers of such standards failed to lower the maximum exposure limits because a cancer risk, associated with asbestos inhalation, had not been proven.

(ee)     In furtherance of the foregoing conspiracy, in 1964, conspirators who were members of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure that had been recently published by Dr. Irving J. Selikoff of Mount Sinai Research Center.  Thereafter,

COMPLAINT FOR PERSONAL INJURY – ASBESTOS

these members of the ATI embarked on a campaign to further misrepresent the association between asbestos exposure and lung cancer.

(ff)    In furtherance of the 1929 conspiracy, in 1967, the Q.A.M.A. conspirators decided, at their trade association meeting, that they would intentionally mislead consumers about the extent of risks involved in inhalation of asbestos products.

(gg)    The following co-conspirators were members of the trade organization known as the Asbestos Textile Institute (ATI); Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasbey & Mattison, individually and through its alter-ego Turner & Newall (T&N ), and National Gypsum, Uniroyal, Inc., individually, and through its alter-egos, CDU Holdings Company, Uniroyal Holding Company and Uniroyal Goodrich Tire Company.

(hh)    All conspirators identified above approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos-Manhattan, Lanza, and MET LIFE, and all the alleged co-conspirators during the dates and circumstances set forth above, acted as agents and co-conspirators for the other conspirators.

(ii)    As evidence of Raybestos-Manhattan's fraud, concealment, suppression, and conspiratorial misconduct and of the referenced conspirators, and each of them, as herein set forth, Raymark-Manhattan's President and/or other senior executives corresponded with other senior executives of Raymark-Manhattan's co-conspirators, which series of correspondence and related documents and papers are commonly referenced as "The Sumner Simpson Papers."

(jj)    Further, as evidence of the fraud, concealment, suppression, and conspiratorial misconduct of the members of the ATI as herein set forth, the ATI and the Industrial Hygiene Foundation kept minutes of their regular meetings, discussions, resolutions, and related actions, recorded in "The ATI Minutes." MET LIFE was an active participant in the foregoing conspiracy and benefited thereby. MET LIFE benefited from their involvement because of the following non-exclusive list:

(1)    By providing workers' compensation insurance to the co-conspirators;

(2)    By providing life insurance for employees of the co-conspirators;

(3)    By providing health insurance or health care for the employees of the co-conspirators;

COMPLAINT FOR PERSONAL INJURY-- ASBESTOS

(4)   By providing health information and resources;

(5)   By purchasing substantial stock in asbestos-related companies, including stock of co-conspirators; and

(6)   By developing information by which asbestos-related claims for compensation could be defeated.

122.   The acts of the conspirators as described above, constitute fraudulent concealment, which caused injury to the Plaintiff, in the following manner (the list is not exclusive):

(a)   The material published or caused to be published by the conspirators was false and incomplete in that the conspirators knowingly and deliberately deleted, concealed, and otherwise suppressed references to and material facts regarding the known health hazards of asbestos and asbestos-related products.

(b)   The conspirators, with intent to defraud, individually, as members of a conspiracy, and as agents of other conspirators, intended that the publication of false and misleading response to the general public and individuals therein, and/or the intentional suppression and non-disclosure of documented reports of health hazards of asbestos:

(1)   Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

(2)   Assist in the continued pecuniary gain of conspirators through the sale of their products;

(3)   Influence in the conspirators favor proposed legislation to regulate asbestos exposure; and;

(4)   Provide a defense in lawsuits brought for injury resulting from asbestos disease.

(c)   The conspirators individually, as members of a conspiracy, and as agents of other conspirators, had a duty to disclose information regarding the health hazards of asbestos within their knowledge and/or control.   The conspirators knowingly and intentionally breached this duty through their fraudulent concealment as described herein.

(d)   Plaintiff and others reasonably relied, both directly and indirectly, upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products

COMPLAINT FOR PERSONAL INJURY—ASBESTOS

and in the absence of published medical and scientific reports of the hazards of asbestos and continued

exposure to asbestos. Plaintiff believed asbestos to be safe and were unaware of the hazards due to

conspiratorial and fraudulent conduct. Plaintiff was not warned of the hazards of asbestos dust as a

direct result of the above-described conspiracy and fraudulent concealment. If Plaintiff had known of

the health hazards of asbestos, of which Plaintiff was unaware as a direct result of the conspirators'

fraudulent concealment, Plaintiff would have acted differently regarding his exposure to asbestos and

asbestos-related products.

(e)    Conspirators, individually, as members of a conspiracy, and as agents of other

conspirators, intended that Plaintiff relied on the deceptive and fraudulent reports that the conspiracy

caused to be published throughout the United States regarding the safety of asbestos and asbestos-related

products; and to rely on the absence of published medical and scientific data (because of the

conspiracy's concealment) regarding the hazards of asbestos and asbestos-related products and thereby

caused Plaintiff and others to continue their exposure to asbestos products.

(f)    Conspirators individually, as members of a conspiracy, and as agents of other co-

conspirators, were and are in a position of superior knowledge regarding the health hazards of asbestos

and therefore the Plaintiff reasonably relied (both directly and indirectly) on the published reports

commissioned by MET LIFE regarding the health hazards of asbestos and the absence of published

information (because of the suppression by the conspiracy) regarding the hazards of asbestos and

asbestos-related products.

(g)    As a direct result of the continuing and on-going conduct of the conspirators as alleged

herein, Plaintiff NORVIN SUNDEEN contracted asbestos-related disease and suffered injuries and

incurred damages, which are described in greater detail in the foregoing paragraphs.

123.  MET LIFE acted in concert with the foregoing described parties (the conspirators) and

pursuant to a common design, as previously described, to cause injury to Plaintiff.

124.  MET LIFE knew that the conduct of Johns-Manville, Raybestos-Manhattan), USG,

American Brakeblok Corporation (now defendant Pneumo Abex), Keasbey-Mattison Company (now

T&N ), and the other conspirators was coercive, fraudulent, and deceitful towards others (including

Plaintiff) and that conspirators' conduct was a breach of duty owed Plaintiff; and MET LIFE gave

42

substantial assistance and encouragement to Johns-Manville and the other conspirators in breaching their duties to Plaintiff and others.

125. MET LIFE provided substantial assistance to the foregoing conspirators in accomplishing their tortuous result and their breach of duties to Plaintiff and others.

126. Plaintiff NORVIN SUNDEEN was insured, directly or indirectly, by MET LIFE and used PNEUMO ABEX's asbestos products, and as such was owed a fiduciary duty by PNEUMO ABEX and MET LIFE, which duty was breached by its foregoing conduct and conspiracy which thereby caused Plaintiff NORVIN SUNDEEN's asbestos-related injuries.

127. The conspirators made representations to Plaintiff and others concerning asbestos-containing products including, but not limited to:

(a) The statements set forth and summarized in the foregoing paragraphs;

(b) That asbestos in commercially used insulation products was not hazardous (this statement was known false by the conspirators);

(c) The amount of asbestos in the air necessary to cause disease was five million particles per cubic foot (this statement was known to be false by the conspirators);

(d) That asbestos does not cause cancer (this statement was known to be false by the conspirators); and

(e) In addition, the conspirators actively and fraudulently concealed facts from the Plaintiff and others, including, but not limited to:

(1) That asbestos-related disease could be a fatal disease;

(2) That asbestos causes various forms of lung cancer;

(3) That individuals should protect themselves from breathing asbestos dust;

(4) The extent of asbestos disease in exposed populations;

(5) Information regarding the levels of airborne asbestos which can cause disease;

(6) Experience with workers compensation claims related to asbestos exposure; and

(7) The statements set forth in the foregoing paragraphs.

128. Further, the conspirators knew that their foregoing statements were false and that by their acts they were actively and fraudulently concealing adverse information regarding the health effects of

43

asbestos including the facts set forth above; the conspirators made the false statements and concealed the information with the intent to deceive; Plaintiff and others relied both directly and indirectly on the foregoing false statements and their lack of knowledge resulting from the fraudulent concealment, resulting in and causing asbestos-related injuries and damages as more fully set forth herein.

129.  The asbestos-containing products that conspirators manufactured, marketed, distributed, sold and otherwise supplied were defective; Plaintiff was exposed to asbestos from the conspirators' products, which caused his asbestos-related injuries as more fully set forth in the foregoing paragraphs.

130.  Additionally and alternatively, as a direct and proximate result of MET LIFE'S actions and omissions, Plaintiff NORVIN SUNDEEN  was caused to remain ignorant of all the dangers of asbestos resulting in Plaintiff, his agents, his employers, and the general public to be unaware of the true and full dangers of asbestos; depriving Plaintiff of the opportunity to decide for himself whether he wanted to take the risk of being exposed to asbestos; and denying Plaintiff the opportunity to take precautions against the dangers of asbestos; and caused Plaintiff's damages herein.

131.  As a direct and proximate result of the actions and conduct outlined herein, Plaintiff has suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

## NINTH CAUSE OF ACTION

### (Negligent Misrepresentation)

**AS AND FOR A FURTHER, NINETH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FRAUD AND DECEIT/NEGLIGENT MISREPRESENTATION, PLAINTIFFS COMPLAIN OF DEFENDANTS PNEUMO ABEX CORPORATION, DOES 301-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

132.  Plaintiffs, by this reference, incorporate and makes a part hereof each and every allegation of the General Allegations and the First through Eighth Causes of Action as though fully set forth herein.

133.  The acts of the conspirators, as incorporated herein and described above, constitute fraudulent negligent misrepresentation, which caused injury to the Plaintiff, in the following manner:

44

(a)     The material published or caused to be published by the conspirators was false, untrue, and incomplete in that the conspirators knowingly, deliberately, and with intent to deceive, made representations, product sales and assertions regarding the safety of asbestos and asbestos-related products.

(b)     The conspirators made these false, untrue and incomplete representations without any reasonable grounds for believing and/or relying on their truth; and with the intent to induce the general consuming public and individuals therein, including Plaintiff and others' direct and indirect reliance on these false, untrue, and incomplete representations.

(c)     Plaintiff and others reasonably, justifiably, and without knowledge of the falsity of the conspirators' misrepresentations, relied, both directly and indirectly, upon published data documenting the purported safety of asbestos and asbestos-related products and in the absence of published information of the hazards of asbestos and cautionary warning language on or with said conspirators' product, all resulting in continued injurious exposure to asbestos. Plaintiff was unaware of the hazards due to PNEUMO ABEX'S conduct in conspiracy with Met Life and the other co-conspirators referenced above.

134. As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs has have suffered the injuries and damages as alleged herein.

WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and each of them, as hereinafter set forth.

## TENTH CAUSE OF ACTION
### (Negligence - Clutch & Brake Components)

AS AND FOR A FURTHER, TENTH, SEPARATE AND DISTINCT CAUSE OF
ACTION FOR PRODUCTS LIABILITY (NEGLIGENCE) FOR CLUTCH COMPONENTS
AND BRAKE ASSEMBLIES, MECHANISMS AND LININGS, PLAINTIFFS COMPLAIN OF
DEFENDANTS B.F. GOODRICH COMPANY, BORG-WARNER CORPORATION,
BRIDGESTONE / FIRESTONE AMERICAS HOLDING, INC., CNH AMERICA, LLC,
DEERE & COMPANY, FORD MOTOR COMPANY, FREIGHTLINER, LLC, GENERAL
PARTS INTERNATIONAL, INC., GENUINE PARTS COMPANY, HONEYWELL
INTERNATIONAL INC., MANNY MOE AND JACK OF CALIFORNIA, MAREMONT
CORPORATION, MASSEY FERGUSON CO., NATIONAL AUTOMOTIVE PARTS
ASSOCIATION, NAVISTAR, INC., NEW HOLLAND NORTH AMERICA, INC., PARKER
HANIFFIN CORPORATION, PACCAR, INC., PNEUMO ABEX CORPORATION, SEARS,

45

1    **ROEBUCK AND CO., WESTERN AUTO SUPPLY COMPANY AND DOES 451–500, AND**
2    **ALLEGES AS FOLLOWS:**

3       135.  Plaintiff, by this reference, incorporates the allegations contained in the General

4    Allegation and the First (Negligence) Cause of Action as though fully set forth herein.

5

6       136.  DEFENDANTS B.F. GOODRICH COMPANY, BORG-WARNER CORPORATION,

7    BRIDGESTONE / FIRESTONE AMERICAS HOLDING, INC., CNH AMERICA, LLC, DEERE &

8    COMPANY, FORD MOTOR COMPANY, FREIGHTLINER, LLC, GENERAL PARTS

9    INTERNATIONAL, INC., GENUINE PARTS COMPANY, HONEYWELL INTERNATIONAL

10   INC. (BENDIX), MANNY MOE AND JACK OF CALIFORNIA, MAREMONT CORPORATION,

11   MASSEY FERGUSON CO., NATIONAL AUTOMOTIVE PARTS ASSOCIATION, NAVISTAR,

12   INC., NEW HOLLAND NORTH AMERICA, INC., PARKER HANIFFIN CORPORATION,

13   PACCAR, INC., PNEUMO ABEX CORPORATION, SEARS, ROEBUCK AND CO., WESTERN

14   AUTO SUPPLY COMPANY and DOES 451-500, and each of them (hereinafter referred to

15   collectively as the "Friction Product Defendants") manufactured or supplied defective clutch

16   components and brake assemblies or mechanisms which were incorporated into various makes and

17   models of vehicles, including but not limited to aircraft, automobiles, and trucks manufactured, sold or

18   supplied by said defendants.  Said clutch components and brake assemblies or mechanisms were

19   negligently manufactured sold or supplied in that:

20

21       a)      The design of said clutch components and brake assemblies or mechanisms

22   incorporated the use of asbestos-containing clutch facings/plates and brake linings;

23       b)      Asbestos clutch components and brake linings wear and/or deteriorate during

24   regular and ordinary use thus creating friable asbestos dust, which accumulates in the clutch

25   brake assemblies and/or mechanisms;

26       c)      The design of said clutch components and brake assemblies require as a part of

27   their normal operation, use and maintenance that the asbestos clutch components and brake

28

46

linings be removed and replaced;

d)      Said defendants required the use of asbestos-containing clutch components and brake linings throughout the time period 1940-1985;

e)      During the removal and replacement of asbestos-containing clutch components and brake linings, asbestos-containing dust was inherently generated because of the design of the clutch components and brake assemblies and/or mechanisms;

f)      Friction Product Defendants  knew or should have known that the asbestos-containing dust would be generated during the regular use and maintenance of the clutch components and brake assemblies, mechanisms and linings, and that such dust created an increased risk of asbestos disease for all users, consumers, or others who breathed said asbestos-containing dust;

g)      The Friction Product Defendants, and each of them, failed to warn and/or properly instruct users, consumers, or others of the asbestos-containing dust hazard which existed at the time of regular maintenance or replacement of asbestos clutch components and brake linings.  Such failure includes, but is not limited to:

1)      Failure to place prominent and adequate warnings or instructions in and on the clutch components and brake pads and wheel drums;

2)      Failure to place adequate warnings or instructions in the owners' manuals accompanying said aircraft, automobiles, trucks and other vehicles;

3)      Failure to place adequate warnings or instructions on various repair manuals and instructions published by defendants; and

4)      Failure to provide adequate information regarding the asbestos hazards associated with the regular use and maintenance of the clutch

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

components and brake mechanisms, assemblies and/or linings.

137.  The clutch components and brake assemblies, mechanisms and/or linings manufactured, sold or supplied by Friction Product Defendants failed to perform as safely as the ordinary consumer would expect, even though they performed as designed.

138.  Friction Product Defendants' use and design of asbestos-containing clutch components and brake linings, both as original equipment and as replacement parts, created unreasonable inherent risks which outweighed the benefits of said use and/or design.

139.  The dangers inherent in asbestos-containing clutch components and brake linings were unknown and unforeseeable to the plaintiff.

140.  Plaintiff's exposure to asbestos-containing dust, which caused his injury, was from his use and maintenance of defendants' clutch components and brake mechanisms, assemblies and/or linings.  Said work produced the release of asbestos dust, which plaintiff inhaled, thus increasing his risk for all asbestos-related disease.

141.  Friction Product Defendants' negligence and defective products as described in this cause of action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by plaintiffs.

142.  Nothing hereinabove claimed in this tenth cause of action seeks to impose liability on the Friction Product Defendants named in this cause of action for the products or actions of any third party that may have supplied replacement clutch components or brake linings used in the hereinabove described brake and clutch assemblies.  This paragraph does not disclaim liability allegations against these defendants when made in causes of action prior to the tenth cause of action.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

**ELEVENTH CAUSE OF ACTION**
**(Strict Liability - Clutch & Brake Components)**

48

1  AS AND FOR A FURTHER, ELEVENTH, SEPARATE AND DISTINCT CAUSE OF ACTION
2  FOR PRODUCTS LIABILITY (STRICT LIABILITY) FOR CLUTCH COMPONENTS AND
   BRAKE ASSEMBLIES, MECHANISMS AND LININGS, PLAINTIFFS COMPLAIN OF
3  DEFENDANTS B.F. GOODRICH COMPANY, BORG-WARNER CORPORATION,
   BRIDGESTONE / FIRESTONE AMERICAS HOLDING, INC., CNH AMERICA, LLC,
4  DEERE & COMPANY, FORD MOTOR COMPANY, FREIGHTLINER, LLC, GENERAL
   PARTS INTERNATIONAL, INC., GENUINE PARTS COMPANY, HONEYWELL
5  INTERNATIONAL INC. (BENDIX), MANNY MOE AND JACK OF CALIFORNIA,
   MAREMONT CORPORATION, MASSEY FERGUSON CO., NATIONAL AUTOMOTIVE
6  PARTS ASSOCIATION, NAVISTAR, INC., NEW HOLLAND NORTH AMERICA, INC.,
7  PARKER HANIFFIN CORPORATION, PACCAR, INC., PNEUMO ABEX CORPORATION,
   SEARS, ROEBUCK AND CO., WESTERN AUTO SUPPLY COMPANY, AND DOES 451–500,
8  AND ALLEGES AS FOLLOWS:

9       143.  Plaintiffs, by this reference, incorporate the allegations contained in the  General

10  Allegation,  the  First (Negligence) Cause of Action,  the  Second (Strict Liability) Cause of Action and

11  the Tenth (Negligence-Clutch & Brake Components) Causes of Action as though fully set forth

12  herein, excepting therefrom allegations of negligence.

13

14       144.  Friction Product Defendants' defective products as described in this cause of action did

15  not perform as safely as an ordinary consumer would have expected at the time of plaintiff's use.

16       145.  Friction Product Defendants' defective products as described in this cause of action were

17  used in a manner foreseeable by defendants.

18       146.  The gravity of the potential harm resulting from the use of Friction Product Defendants'

19  defective products as described in this cause of action, and the likelihood such harm would occur,

20  outweighed the cost of feasible alternative designs, including providing adequate warning of such

21  potential harm, including asbestos-related disease.

22

23       147.  Friction Product Defendants' conduct and defective products as described in this cause of

24  action were a direct cause of plaintiff's injuries, and the injuries and damages thereby sustained by

25  plaintiffs.

26       148.  Nothing hereinabove claimed in this eleventh cause of action seeks to impose liability on

27  the Friction Product Defendants named in this cause of action for the products or actions of any third

28

49

1  party that may have supplied replacement brake linings used in the hereinabove described brake

2  assemblies. This paragraph does not disclaim liability allegations against these defendants when made

3  in causes of action prior to the tenth cause of action.

4

5     WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each

6  of them, as hereinafter set forth.

7     WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and

8  each of them, in an amount to be proved at trial in each individual case, as follows:

9        1.    For plaintiff's general damages according to proof;

10       2.    For plaintiff's loss of income, wages, and earning potential according to proof;

11       3.    For plaintiff's medical and related expenses according to proof;

12       4.    For exemplary and punitive damages according to proof;

13       5.    For plaintiff's cost of suit herein;

14       6.    For such other and further relief as the Court may deem just and proper,

15  including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and

16  related provisions of law.

17

18  DATED:  February 24, 2012            NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP

19

20                                      By: _____

21                                          MARC I. WILLICK
                                            Attorney for Plaintiffs
22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

1

### DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand trial by jury as to all issues so triable.

3

DATED:  February 24, 2012                    NAPOLI BERN RIPKA SHKOLINIK & ASSOCIATES, LLP

4

5

6

By: _____

7

MARC I. WILLICK
Attorney for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

1

<u>EXHIBIT "A"</u>

2   Plaintiff NORVIN SUNDEEN'S exposure to asbestos and asbestos-containing products occurred

3   at various locations and times within, among other states, California, as set forth below:

4

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Bert Cole's Mechanic Shop | Southern, ND | (Helper/Gopher) | 1954 - 1960 |
| Family Farm Mechanic | Southern, ND | Farm Hand | 1956 -1962 |
| Kenny & Benny Cookhouse | Seattle, WA | Asphalt layer | 1962 |
| Russell Balzer | Seattle, WA | Laborer | 1962 |
| U.S. Forest Service | San Bernardino, CA | CAT Skinner | 1963 |
| Astro Jet | Covina, CA | Laborer/Grinder | 1964 |
| Russell Balzer | Seattle, WA | Laborer | 1964-1965 |
| U.S. Navy | San Diego, CA Puget Sound, WA Memphis, TN Comfair, Alameda, CA | Aviation Structural Mechanic | 1965-1969 |
| Todd Shipyards | Harbor Island, WA | Sheet Metal Worker | 1970-1974 |
| Pacific Car & Foundry | Sacramento, CA | Welder | 1974 |
| American Bridge (U.S. Steel) | Antioch, CA | Welder | 1975-1979 |
| Lodi Iron | Antioch, CA | Welder | 1979-1980 |
| Galt Pipe | Galt, CA | Welder & Plastic PVC Pipe Cutter | 1980 |
| Stockton Steel | Stockton, CA | Welder | 1980-1981 |
| Lodi Fabrication | Lodi, CA | Welder | 1981-1985 |
| John Sundeen Trucking | Fontana, CA | OTR Truck Driver | 1985-1988 |
| Land Star Gemini Trucking Company | Tacoma, WA | OTR Truck Driver | 1988-1998 |

52

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>EXHIBIT "B"</u>

Plaintiff NORVIN SUNDEEN's exposure to asbestos and asbestos-containing products caused severe and permanent injury to plaintiff including, but not limited to, breathing difficulties, asbestosis, pleural plaques, lung cancer, mesothelioma and/or other cancer and other lung damage.

Plaintiff NORVIN SUNDEEN was diagnosed with mesothelioma in or about January 20, 2012.

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

EXHIBIT "C"

| DEFENDANT | PRODUCTS CONTAINING ASBESTOS MANUFACTURED AND/OR SUPPLIED BY DEFENDANT BASED UPON CURRENT INFORMATION AND BELIEF |
|---|---|
| B.F. GOODRICH CORPORATION | Automotive and Aviation brakes, clutches, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| BOEING CO. | Aviation parts, jets, brakes, and clutches, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| BORG-WARNER CORPORATION (BY ITS SUCCESSOR-IN-INTEREST, BORG-WARNER MORSE TEC, INC.) | Automotive and Aviation brakes, clutches, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| BRIDGESTONE/FIRESTONE AMERICAS HOLDING, INC. (N/K/A BRIDGESTONE AMERICA'S, INC.) | Automotive and aviation brakes, clutches, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| CERTAINTEED CORPORATION | Cement pipe, siding |
| CNH AMERICA, LLC | Automotive tractors, brakes, and clutches. |
| CROWN CORK & SEAL COMPANY,      INC. | Mundet Insulation. |
| DEERE & COMPANY | Automobiles, Automotive tractors, brakes, and clutches. |
| FORD MOTOR COMPANY | Automobiles, Automotive tractors, brakes, and clutches. |
| FREIGHTLINER, LLC | Automobiles, Automotive tractors, brakes, and clutches. |
| GENERAL ELECTRIC COMPANY | Aviation Jets and Jet engines, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| GENERAL PARTS INTERNATIONAL, INC. | Auto parts dealer. |
| GENUINE PARTS COMPANY | Automotive brakes, clutches, gaskets. |
| GEORGIA PACIFIC LLC | Drywall products, Joint compound. |
| HAMILTON MATERIALS, INC. | Drywall products, joint compound. |
| HONEYWELL INTERNATIONAL INC. (F/K/A ALLIEDSIGNAL INC., AS SUCCESSOR-IN-INTEREST TO THE BENDIX CORPORATION) | Automotive and aviation brakes, clutches, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| J.T. THORPE AND SON INC. | Contractor, boiler insulation products, |

54

| | |
|---|---|
| | refractory, including at Naval Air, Alameda. |
| LOCKHEED MARTIN (A/K/A LOCKHEED CORPORATION) | Aviation Jets and Jet engines, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| MANNY MOE AND JACK OF CALIFORNIA (Pep Boys) | Automotive brakes, clutches, gaskets |
| MAREMONT CORPORATION | Automotive brakes, clutches and mufflers. Grizzly brakes. |
| MCDONNELL DOUGLAS (A/K/A BOEING CO.) | Aviation Jets and Jet engines, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| NATIONAL AUTOMOTIVE PARTS ASSOCIATION | Automotive brakes, clutches, gaskets. |
| NAVISTAR, INC., (F/K/A INTERNATIONAL TRUCK AND ENGINE AND AS SUCCESSOR-IN-INTEREST TO INTERNATIONAL HARVESTER CORPORATION) | Automobiles, Automotive tractors, brakes, and clutches. |
| NEW HOLLAND NORTH AMERICA, INC. | Automobiles, Automotive tractors, brakes, and clutches. |
| NORTHROP GRUMMAN CORPORATION | Aviation Jets and Jet engines, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA.. |
| PARKER HANIFFIN CORPORATION (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO EIS AUTOMOTIVE CORPORATION) | Brakes. |
| PACCAR, INC. (A/K/A PETERBILT MOTORS COMPANY) | Automobiles, brakes, and clutches. |
| PNEUMO ABEX CORPORATION | Automotive and aviation brakes and clutches, including, on information and belief, as an aviation structural mechanic in the US Navy in Alameda, CA. |
| PRESTOLITE WIRE, LLC (AND ITS WHOLLY OWNED SUBSIDIARY PRESTOLITE PERFORMANCE GROUP) | "Mr. Gasket" brand gaskets. |
| SEARS, ROEBUCK AND CO., a subsidiary of SEARS HOLDINGS CORPORATION | Automotive brakes and clutches dealer. |
| UNION CARBIDE CORPORATION | Raw asbestos supplier, Bakelite. |
| WESTERN AUTO SUPPLY COMPANY | Automotive brakes and clutches, gaskets. |
| DOES 1-500 | Reserved |

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

EXHIBIT "D"

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| BRIDGESTONE/FIRESTONE AMERICAS HOLDING, INC. | BRIDGESTONE AMERICA'S, INC. |
| BORG-WARNER CORPORATION | BORG-WARNER MORSE TEC, INC. |
| HONEYWELL INTERNATIONAL INC. | ALLIEDSIGNAL INC. BENDIX CORPORATION |
| LOCKHEED MARTIN | LOCKHEED CORPORATION |
| MCDONNELL DOUGLAS | BOEING CO. |
| NAVISTAR, INC. | INTERNATIONAL TRUCK AND ENGINE INTERNATIONAL HARVESTER CORPORATION |
| PARKER HANIFFIN CORPORATION | EIS AUTOMOTIVE CORPORATION |
| PACCAR, INC. | PETERBILT  MOTORS COMPANY |
| PRESTOLITE WIRE, LLC | PRESTOLITE PERFORMANCE GROUP |

COMPLAINT FOR PERSONAL INJURY– ASBESTOS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>EXHIBIT E</u>

CONTRACTOR/PREMISES DEFENDANTS

J.T. THORPE AND SON INC.

Does 300-400.

COMPLAINT FOR PERSONAL INJURY– ASBESTOS