# U.S. District Court
## Southern District of California (San Diego)
## CIVIL DOCKET FOR CASE #: 3:12-cv-00819-AJB-JMA

Willis et al v. Buffalo Pumps, Inc. et al
Assigned to: Judge Anthony J. Battaglia
Referred to: Magistrate Judge Jan M. Adler
Case in other court: Superior Court of California, County of
                     San Diego, 37-02012-00092027
Cause: 28:1442 Petition for Removal

Date Filed: 04/04/2012
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Donald Willis**

represented by **Marc I. Willick**
Napoli, Bern, Ripka, Shkolnic &
Associates, LLP
2361 Rosecrans Avenue
Suite 450
El Segundo, CA 90245
(310) 536-1040
Fax: (510) 536-1040
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Viola Willis**

represented by **Marc I. Willick**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Buffalo Pumps, Inc.**

**Defendant**

**BW/IP, Inc.**
*Individually and as Successor-In-*
*Interest to Byron Jackson Pump*
*Division*

**Defendant**

**Carrier Corporation**

**Defendant**

**CBS Corporation**
*Individually and as Successor-In-*
*Interest to Westinghouse Electric*
*Corporation*

**Defendant**
**Copes-Vulcan, Inc.**

**Defendant**
**Crane Co.**

**Defendant**
**DeZurik, Inc.**
*Individually and as Successor-In-Interest to SPX Valves & Controls*

**Defendant**
**Eaton Electrical, Inc.**
*Individually and as Successor-In-Interest to Cutler Hammer*

**Defendant**
**Elliot Turbomachinery Company**

**Defendant**
**Flowserve Corporation**
*As Successor- In-Interest to Byron Jackson Pumps*
*also known as*
BW/IP, Inc.

**Defendant**
**Foster Wheeler Energy Corporation**                     represented by **Thomas J Moses**
Brydon Hugo and Parker
135 Main Street
20th Floor
San Francisco, CA 94105
(415)808-0300
Fax: (415)808-0333
Email: tmoses@bhplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**General Electric Company**

**Defendant**
**IMO Industries, Inc.**
*Individually and as Successor-In-Interest to De Laval Steam Turbine, Inc.*

**Defendant**
**J.T. Thorpe and Son, Inc.**

**Defendant**

**Hobart Brothers Company**

**Defendant**

**Ingersoll-Rand Company**

**Defendant**

**John Crane, Inc.**

**Defendant**

**The Lincoln Electric Company**

**Defendant**

**M. Slayen & Associates**

**Defendant**

**Metalclad Insulation Corporation**

**Defendant**

**Metropolitan Life Insurance
Company**

**Defendant**

**Mueller Steam Specialty, Inc.**

**Defendant**

**Nash Engineering Company**

**Defendant**

**Peerless Industries, Inc.**
*doing business as*
Peerless Heater Company

**Defendant**

**Pneumo-Abex Corporation**

**Defendant**

**VIAD Corp.**
*Sued Individually and as Successor-In-
Interest to Griscom-Russell*

**Defendant**

**Sid Carpenter Marine**

**Defendant**

**Viking Pump, Inc.**

**Defendant**

**Warren Pumps, LLC**

<u>Defendant</u>

**Yarway Corporation**

<u>Defendant</u>

**DOES 1-500 inclusive**

| Date Filed | # | Docket Text |
|---|---|---|
| 04/04/2012 | <u>1</u> | NOTICE OF REMOVAL with Jury Demand from Superior Court of California, San Diego County, case number 37-2012-00092027-CU-AS-CTL. (Filing fee $350 receipt number 0974-4604744), filed by Foster Wheeler Energy Corporation. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit M (Part 1 of 27), # <u>15</u> Exhibit M (Part 2 of 27), # <u>16</u> Exhibit M (Part 3 of 27), # <u>17</u> Exhibit M (Part 4 of 27), # <u>18</u> Exhibit M (Part 5 of 27), # <u>19</u> Exhibit M (Part 6 of 27), # <u>20</u> Exhibit M (Part 7 of 27), # <u>21</u> Exhibit M (Part 8 of 27), # <u>22</u> Exhibit M (Part 9 of 27), # <u>23</u> Exhibit M (Part 10 of 27), # <u>24</u> Exhibit M (Part 11 of 27), # <u>25</u> Exhibit M (Part 12 of 27), # <u>26</u> Exhibit M (Part 13 of 27), # <u>27</u> Exhibit M (Part 14 of 27), # <u>28</u> Exhibit M (Part 15 of 27), # <u>29</u> Exhibit M (Part 16 of 27), # <u>30</u> Exhibit M (Part 17 of 27), # <u>31</u> Exhibit M (Part 18 of 27), # <u>32</u> Exhibit M (Part 19 of 27), # <u>33</u> Exhibit M (Part 20 of 27), # <u>34</u> Exhibit M (Part 21 of 27), # <u>35</u> Exhibit M (Part 22 of 27), # <u>36</u> Exhibit M (Part 23 of 27), # <u>37</u> Exhibit M (Part 24 of 27), # <u>38</u> Exhibit M (Part 25 of 27), # <u>39</u> Exhibit M (Part 26 of 27), # <u>40</u> Exhibit M (Part 27 of 27)) Judge Anthony J. Battaglia and Magistrate Judge Jan M. Adler are assigned to the case. (Moses, Thomas)(atty maintenance)(rlu) (Entered: 04/04/2012) |
| 04/04/2012 | <u>2</u> | NOTICE by Foster Wheeler Energy Corporation re <u>1</u> Notice of Removal,,,,,, *of Tag Along Action* (Attachments: # <u>1</u> Notice Disclosure Statement and Certification of Interested Parties)(Moses, Thomas) (Entered: 04/04/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/04/2012 13:09:13 | | |
| **PACER Login:** | bh1524 | **Client Code:** | 4801-2690 |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-00819-AJB-JMA |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

10028890
3/23/12

RECEIVED
MAR 1 9 2012
FREDERICK C. WOLSKY

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

2012 FEB 14 A 8: 56

NOTICE TO DEFENDANT:
*(AVISO AL DEMANDADO):*
BUFFALO PUMPS, INC.;
(DEFENDANTS LISTED ON ATTACHMENT)

YOU ARE BEING SUED BY PLAINTIFF:
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
DONALD WILLIS AND VIOLA WILLIS

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is: SAN DIEGO SUPERIOR COURT<br>*(El nombre y dirección de la corte es)*<br><br>330 W. Broadway<br>San Diego, CA 92101 | CASE NUMBER:<br>*(Número del Caso):*<br>37-2012-00092027-CU-ASCTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Napoli Bern Ripka Shkolnik & Assoc.,LLP,2361 Rosecrans Ave.,Ste.450,El Segundo,CA 90245 310.536.1040

| | | | |
|---|---|---|---|
| DATE: FEB 14 2012<br>*(Fecha)* | Clerk, by<br>*(Secretario)* | M. PHAM | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* Foster Wheeler Energy Corporation

under: ☑ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☑ by personal delivery on *(date):* 3/7/12

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Willis, et al. vs. Buffalo Pumps, Inc., et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

BW/IP, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BYRON JACKSON PUMP
DIVISION);CARRIER CORPORATION;CBS CORPORATION (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO WESTINGHOUSE ELECTRIC CORPORATION);COPES-VULCAN,
INC.;CRANE CO.;DEZURIK, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO SPX
VALVES & CONTROLS);EATON ELECTRICAL, INC. (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO CUTLER HAMMER);ELLIOT TURBOMACHINERY COMPANY;
FLOWSERVE CORPORATION (A/K/A BW/IP, INC. AND AS SUCCESSOR-IN-INTEREST TO
BYRON JACKSON PUMPS);FOSTER WHEELER ENERGY CORPORATION;GENERAL ELECTRIC
COMPANY;IMO INDUSTRIES, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO DE
LAVAL STEAM TURBINE, INC.);J.T. THORPE AND SON, INC.;HOBART BROTHERS COMPANY;
INGERSOLL-RAND COMPANY;JOHN CRANE, INC.;THE LINCOLN ELECTRIC COMPANY;M.
SLAYEN & ASSOCIATES;METALCLAD INSULATION CORPORATION;METROPOLITAN LIFE
INSURANCE COMPANY;MUELLER STEAM SPECIALTY, INC.;NASH ENGINEERING COMPANY;
PEERLESS INDUSTRIES, INC. (D/B/A PEERLESS HEATER COMPANY);PNEUMO-ABEX
CORPORATIONVIAD CORP., (SUED INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO
GRISCOM-RUSSELL);SID CARPENTER MARINE;VIKING PUMP, INC.;WARREN PUMPS, LLC;
YARWAY CORPORATION;and DOES 1-500 INCLUSIVE.

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Marc I. Willick, Esq. (SBN 175375)<br>NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP<br>2361 Rosecrans Ave., Ste. 450<br>El Segundo, CA 90245<br>TELEPHONE NO: (310) 536-1040    FAX NO: (310) 496-0256<br>ATTORNEY FOR (Name): Plaintiffs | 2012 FEB 16 LA 8:54<br>COURT<br>JUNTY, CA |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS: Same
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Courthouse

CASE NAME:
Willis, et al. vs. Buffalo Pumps, Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER: |
|---|---|---|---|
| ☑ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 37-2012-00092027-CU-AS-CTL<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation<br>(Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ☐ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property<br>Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☑ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse<br>condemnation (14) | above listed provisionally complex case<br>types (41) |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint (not specified above) (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition (not specified above) (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is   ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel       e. ☐ Coordination with related actions pending in one or more courts
        issues that will be time-consuming to resolve             in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence       f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought (check all that apply): a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action (specify):
5. This case ☐ is   ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: February 10, 2012

Marc J. Willick
_____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | FOR COURT USE ONLY |
|---|---|
| STREET ADDRESS:  330 West Broadway | |
| MAILING ADDRESS:  330 West Broadway | |
| CITY, STATE, & ZIP CODE: San Diego, CA  92101-3827 | |
| BRANCH NAME:  Central | |
| PLAINTIFF(S):  DONALD WILLIS et.al. | |
| DEFENDANT(S): BUFFALO PUMPS INC et.al. | |
| SHORT TITLE:  WILLIS VS. BUFFALO PUMPS INC | |

| STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: 37-2012-00092027-CU-AS-CTL |
|---|---|

Judge: Gonzalo Curiel                                                  Department: C-60

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)                    ☐  Non-binding private arbitration

☐  Mediation (private)                                      ☐  Binding private arbitration

☐  Voluntary settlement conference (private)    ☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Neutral evaluation (private)                         ☐  Non-binding judicial arbitration (discovery until 30 days before trial)

☐  Other (specify e.g., private mini-trial, private judge, etc.): _____

_____

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name) _____

_____

_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____          Date: _____

_____          _____
Name of Plaintiff                                                        Name of Defendant

_____          _____
Signature                                                                   Signature

_____          _____
Name of Plaintiff's Attorney                                         Name of Defendant's Attorney

_____          _____
Signature                                                                   Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385. Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 02/14/2012

_____
JUDGE OF THE SUPERIOR COURT

SDSC CIV-359 (Rev 12-10)          **STIPULATION TO USE OF ALTERNATIVE DISPUTE RESOLUTION**          Page: 3

3

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS:   330 West Broadway
MAILING ADDRESS:   330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:   Central
TELEPHONE NUMBER: (619) 450-7060

PLAINTIFF(S) / PETITIONER(S):   DONALD WILLIS et.al.

DEFENDANT(S) / RESPONDENT(S):  BUFFALO PUMPS INC et.al.

WILLIS VS. BUFFALO PUMPS INC

| NOTICE OF CASE ASSIGNMENT | CASE NUMBER: |
|---|---|
| | 37-2012-00092027-CU-AS-CTL |

Judge:  Gonzalo Curiel            Department: C-60

COMPLAINT/PETITION FILED: 02/14/2012

### ALL CASES MUST COMPLY WITH THE CIVIL REQUIREMENTS LISTED BELOW, EXCEPT FOR PARKING CITATION APPEALS

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except:  small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, and family law proceedings.

COMPLAINTS:  Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants, and a Certificate of Service (SDSC form #CIV-345) filed within 60 days of filing.

DEFENDANT'S APPEARANCE:  Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

DEFAULT:  If the defendant has not generally appeared and no extension has been granted, the plaintiff must request default within 45 days of the filing of the Certificate of Service.  (SDSC Local Rule 2.1.7)

CASE MANAGEMENT CONFERENCE:  A Case Management Conference will be set within 150 days of filing the complaint.

ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE.  PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).

YOU MAY ALSO BE ORDERED TO PARTICIPATE IN ARBITRATION.  IF THE CASE IS ORDERED TO ARBITRATION PURSUANT TO CODE CIV. PROC. 1411.11, THE COSTS OF ARBITRATION WILL BE PAID BY THE COURT PURSUANT TO CODE CIV. PROC. 1141.28.

FOR MORE INFORMATION, SEE THE ATTACHED ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730)

SDSC CIV-721 (Rev. 11-06)            **NOTICE OF CASE ASSIGNMENT**            Page: 1



# Superior Court of California
## County of San Diego

# NOTICE OF ASSIGNMENT
# TO IMAGING DEPARTMENT

This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed. Original documents should not be filed with pleadings. If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program"). As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file. The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website. This Program will be expanding to other civil courtrooms over time.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150. The paper filing will be imaged and held for 90 days. After that time it will be destroyed and recycled. Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

All parties are ordered to place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

# Please refer to the General Order – Imaging located on the San Diego Superior Court website at:

http://www.sdcourt.ca.gov/pls/portal/docs/page/sdcourt/civil2/civilimaging/012512_generalorder.pdf

 Superior Court of California
County of San Diego

# NOTICE TO ALL COUNSEL

# THIS CASE HAS BEEN ASSIGNED TO AN IMAGING DEPARTMENT

Pursuant to the Order of this Court, the words:

## "IMAGED FILE"

Shall be placed under the title of each pleading filed subsequent to the initial case filing.

A copy of this notice shall be served on all parties with service of the summons and complaint or other initial case filing.



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
      (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
      (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
      (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| Potential Advantages | Potential Disadvantages |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Gives parties more control over the dispute resolution process and outcome | |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:** A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference:** A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:** A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to *binding arbitration*, they waive their right to a trial and agree to accept the arbitrator's decision as final. With *nonbinding arbitration*, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:** There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute. Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:** The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection: Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005). The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:** The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:** The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience. Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:** The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:** To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at www.courtinfo.ca.gov/selfhelp/lowcost.

2012 FEB 10  A 8 54

Marc I. Willick (State Bar No. 175379)
NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP
2361 Rosecrans Ave., Suite 450
El Segundo, California 90245
Telephone:     (310) 536-1040
Facsimile:     (310) 496-0256

Attorneys for Plaintiff(s)

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

**BY FAX**

|  |  |
|---|---|
| DONALD WILLIS and VIOLA WILLIS,<br><br>Plaintiffs,<br><br>vs.<br><br>BUFFALO PUMPS, INC.;<br>BW/IP, INC. (INDIVIDUALLY AND AS<br>  SUCCESSOR-IN-INTEREST TO<br>  BYRON JACKSON PUMP<br>  DIVISION);<br>CARRIER CORPORATION;<br>CBS CORPORATION (INDIVIDUALLY<br>  AND AS SUCCESSOR-IN-INTEREST<br>  TO WESTINGHOUSE ELECTRIC<br>  CORPORATION);<br>COPES-VULCAN, INC.;<br>CRANE CO.;<br>DEZURIK, INC. (INDIVIDUALLY AND<br>  AS SUCCESSOR-IN-INTEREST TO<br>  SPX VALVES & CONTROLS);<br>EATON ELECTRICAL, INC.<br>  (INDIVIDUALLY AND AS<br>  SUCCESSOR-IN-INTEREST TO<br>  CUTLER HAMMER);<br>ELLIOT TURBOMACHINERY<br>COMPANY;<br>FLOWSERVE CORPORATION (A/K/A<br>  BW/IP, INC. AND AS SUCCESSOR- | Case No.  **37-2012-00092027-CU-AS-CTL**<br><br>COMPLAINT FOR PERSONAL INJURY AND<br>LOSS OF CONSORTIUM – ASBESTOS<br><br>1 – NEGLIGENCE;<br>2 – STRICT LIABILITY;<br>3 – FALSE REPRESENTATION;<br>4 – INTENTIONAL TORT/INTENTIONAL;<br>5 – PREMISES/CONTRACTOR LIABILITY;<br>6 – GENERAL NEGLIGENCE;<br>7 – VICARIOUS LIABILITY;<br>8 – FRAUD and DECEIT/CONCEALMENT;<br>9 – NEGLIGENT REPRESENTATION;<br>10 – LOSS OF CONSORTIUM |

1

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

```
 1    IN-INTEREST TO BYRON                        )
         JACKSON PUMPS);                          )
 2    FOSTER WHEELER ENERGY                        )
         CORPORATION;                             )
 3    GENERAL ELECTRIC COMPANY;                    )
 4    IMO INDUSTRIES, INC.                         )
         (INDIVIDUALLY AND AS                     )
 5       SUCCESSOR-IN-INTEREST TO DE              )
         LAVAL STEAM TURBINE, INC.);              )
 6    J.T. THORPE AND SON, INC.;                   )
 7    HOBART BROTHERS COMPANY;                     )
      INGERSOLL-RAND COMPANY;                      )
 8    JOHN CRANE, INC.;                            )
      THE LINCOLN ELECTRIC COMPANY                 )
 9    M. SLAYEN & ASSOCIATES;                      )
      METALCLAD INSULATION                         )
10       CORPORATION;                             )
11    METROPOLITAN LIFE INSURANCE                  )
         COMPANY;                                 )
12    MUELLER STEAM SPECIALTY, INC                 )
      NASH ENGINEERING COMPANY;                    )
13    PEERLESS INDUSTRIES, INC. (D/B/A             )
         PEERLESS HEATER COMPANY);                )
14    PNEUMO-ABEX CORPORATION                      )
15    VIAD CORP. (SUED INDIVIDUALLY                )
         AND AS SUCCESSOR-IN-INTEREST             )
16       TO GRISCOM-RUSSELL);                     )
      SID CARPENTER MARINE;                        )
17    VIKING PUMP, INC.;                           )
      WARREN PUMPS, LLC;                           )
18    YARWAY CORPORATION;                          )
19    and DOES 1-500 INCLUSIVE,                    )
20                  Defendants.                    )
21
22
23
```

## GENERAL ALLEGATIONS

COME NOW Plaintiffs DONALD WILLIS and VIOLA WILLIS and complain and allege as follows:

1. Plaintiff DONALD WILLIS has been diagnosed with a disease related to exposure to asbestos and asbestos-containing products.

2

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1    2. Plaintiff DONALD WILLIS used, handled or was otherwise exposed to asbestos and

2    asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff

3    DONALD WILLIS's  exposure to asbestos and asbestos-containing products occurred at various

4    locations as set forth in Exhibit A, attached hereto and incorporated herein by reference.

5    3. Plaintiff DONALD WILLIS's  cumulative exposure to asbestos as a result of acts and

6

7    omissions of defendants and the defective products as hereinafter alleged, individually and together,

8    was a substantial factor in increasing Plaintiff DONALD WILLIS's risk of MALIGNANT

9    MESOTHELIOMA and other related injuries and therefore a legal cause of Plaintiff DONALD

10   WILLIS injuries.

11

12   4. Plaintiff DONALD WILLIS  was not aware at the time of exposure that asbestos or asbestos-

13   containing products presented any risk of injury and/or disease.

14   5. As a direct and proximate result of the aforesaid conduct of defendants, their "alternate

15   entities," and each of them as set forth hereinafter, Plaintiff DONALD WILLIS suffers permanent

16   injuries, including, but not limited to, asbestosis, other lung damage, and cancer, from the effect of

17   exposure to asbestos fibers, all to Plaintiffs' damage in the sum in excess of the jurisdictional limits of

18   Court of Limited Jurisdiction.

19   6. As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate

20   entities," and each of them, By reason of the premises, plaintiff DONALD WILLIS has been compelled

21   to incur obligations as and for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays,

22   medical supplies and other medical treatment, the true and exact amount thereof being unknown to

23   Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and

24   exact cost thereof is ascertained.

25   7. By reasons of the premises, plaintiff DONALD WILLIS has been caused great pain and

26   suffering.

27   8. Each of the herein named defendants is liable for its own tortuous conduct and/or the tortuous

28   conduct of an "alternate entity" as hereinafter defined on Exhibit D. Defendants, and each of them, are

3

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1   liable for the acts of their "alternate entity," and each of them, in that there has been a corporate name
2   change, defendant is the successor by merger or successor by other acquisition resulting in a virtual
3   destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have
4   acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate
5   entity"; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each
6   such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each
7   such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each
8   such "alternate entity."
9        9.  The true names and capacities, whether individual, corporate, associate, governmental
10   or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiffs at this time,
11   who therefore sue said Defendants by such fictitious names. When the true names and capacities of
12   said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly.  Plaintiffs
13   are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is
14   responsible, negligently or in some other actionable manner for the events and happenings hereinafter
15   referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.
16        10.  At all times herein mentioned, each of the Defendants was the agent, servant, employee and/
17   or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting
18   in the full course and scope of said agency, service, employment and/or joint venture.
19        11.  Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned
20   each of the Defendants listed in the left "Defendant" column on Exhibit "C" hereto were individuals,
21   corporations, partnerships and/or unincorporated associations organized and existing under and by virtue
22   of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
23   said Defendants, and each of them, were and are authorized to do and are doing business in the State
24   of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each
25   of them, were and are authorized to do and are doing business in the State of California, and that said
26   Defendants have regularly conducted business in the County of Los Angeles, State of California.
27        12.  Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to
28

4

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  asbestos dust that occurred in a federal enclave.  Plaintiffs also disclaim any cause of action or recovery

2  for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party

3  defendant committed at the direction of an officer of the United States Government.  Plaintiffs do not

4  seek to recover against themselves, or either of themselves, as a defendant or otherwise, for any asbestos

5  related injuries.

**FIRST CAUSE OF ACTION**

**(Negligence)**

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", AND DOES 1-300,
THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION
FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

13.  Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

paragraph of the General Allegations above.

14.  At all times herein mentioned, defendants, their "alternate entities," and each of them,

were and are engaged in the business of researching, manufacturing, fabricating, designing,

modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying,

selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos

and other products containing asbestos. A list of defendants and their asbestos containing products is

attached hereto as Exhibit "C."

15. At all times herein mentioned, Defendants, their "alternate entities", and each of them,

singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed,

modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health

hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use

of the products labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded,

5

1  manufactured for others, packaged, and advertised a certain substance, the generic name of which is

2  asbestos, and other products and equipment containing said substance, in that said substance

3  proximately caused personal injuries to users, consumers, workers, bystanders, and others, including

4
5  Plaintiff DONALD WILLIS  (hereinafter collectively called "exposed persons"), while being used in

6  a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for

7  use by the "exposed persons".

8         16. Defendants, their "alternate entities," and each of them, had a duty to exercise due care in

9  the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty

10  of due care.

11
        17. Defendants, their "alternate entities", and each of them, knew, or should have known, and
12
    intended that the aforementioned asbestos and products containing asbestos would be transported by
13
14  truck, rail, ship and other common carriers, and that in the shipping process the products would break,

15  crumble or be otherwise damaged; and/or that such products would be used for insulation,

16  construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications;

17  including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-

18  out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such

19
    foreseeable use and/or handling "exposed persons", including  Plaintiff DONALD WILLIS  herein,
20
21  would use or be in proximity of and exposed to said asbestos fibers.

22         18. Defendants, their "alternate entities", and each of them, knew, or should have known, and

23  intended that the aforementioned asbestos and asbestos-containing products and equipment would be

24  used or handled as specified in paragraph 26 above and Exhibits "A," "B", "C" and each of them

25  attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos

26  fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff

27  DONALD WILLIS  herein, would be in proximity to and exposed to said asbestos fibers from

28

    6

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  defendants' products.

2       19. Plaintiff DONALD WILLIS has used, handled, or was otherwise exposed to asbestos and

3  asbestos-containing products as set forth in Exhibit "C" referred to herein in a manner that was

4  reasonably foreseeable. As a result of the exposure to defendants and each of their products as set

5  forth herein, asbestos entered plaintiff's body. Plaintiff DONALD WILLIS 'exposure to asbestos that

6  entered his body from defendants and each of their asbestos-containing products (Exhibit C) occurred

7  at various locations and times as set forth in Exhibit "A", which is attached hereto and incorporated by

8  reference herein.

9

10      20. As a direct and proximate result of the conduct of the Defendants, their "alternate

11  entities", and each of them, as aforesaid, Plaintiff DONALD WILLIS 's exposure to asbestos and

12  asbestos-containing products caused Plaintiff DONALD WILLIS's injuries, as set forth in

13  Exhibit "B", which is attached hereto and incorporated by reference herein. Each of defendants'

14  asbestos containing products was a substantial factor in bringing about Plaintiff DONALD WILLIS 's

15  injuries.

16

17      21. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease,

18  cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible

19  trauma and that said disease results from exposure to asbestos and asbestos-containing products over a

20  period of time.

21      22. Defendants, their "alternate entities", and each of them, and their officers, directors, and

22  managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge

23  of, or should have known of, each of the acts set forth herein.

24

25      23. Defendants, their "alternate entities", and each of them, are liable for the fraudulent,

26  oppressive, and malicious acts of their "alternate entities", and each of them, and each Defendant's

27  officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified,

28

7

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set

2  forth herein.

3      24. The herein-described conduct of said Defendants, their "alternate entities", and each of

4  them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and

5  indifference to the safety and health of "exposed persons". Plaintiff DONALD WILLIS, for the sake

6  of example and by way of punishing said Defendants, seeks punitive damages according to proof.

7

8      WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and

9  each of them, as hereinafter set forth.

10                        SECOND CAUSE OF ACTION

11                            (Strict Liability)

12      AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION

13  FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C",
    DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS

14                              FOLLOWS:

15

16      25. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

17  paragraph of the General Allegations above.

18      26. At all times herein mentioned, defendants, their "alternate entities," and each of them,

19  were and are engaged in the business of researching, manufacturing, fabricating, designing,

20  modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying,

21  selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

22  rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos

23

24  and other products containing asbestos. A list of defendants and their asbestos containing products is

25  attached hereto as Exhibit "C."

26      27. Defendants, their "alternate entities", and each of them, knew and intended that the above-

27  referenced asbestos and asbestos-containing products would be used by the purchaser or user without

28

8

1  inspection for defects therein or in any of their component parts and without knowledge of the hazards

2  involved in such use.

3          28.  Said asbestos and asbestos-containing products were defective and unsafe for their

4  intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

5  defect existed in the said products at the time they left the possession of the Defendants,

6  their "alternate entities," and each of them. Said products did, in fact, cause personal injuries,

7  including asbestosis, other lung damage, and cancer to "exposed persons" including Plaintiff

8  DONALD WILLIS herein while being used in a reasonably foreseeable manner, thereby rendering

9  the same defective, unsafe, and dangerous for use.

10

11

12          29.  "Exposed persons" did not know of the substantial danger of using said products. Said

13  dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities",

14  and each of them further failed to adequately warn of the risks to which Plaintiff DONALD WILLIS

15  and others similarly situated were exposed.

16          30.  In researching, manufacturing, fabricating, designing, modifying, testing, or failing to

17  test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale,

18  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing,

19  warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-

20  containing products and equipment, Defendants, their "alternate entities", and each of them, did so with

21  conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and

22  asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer.

23  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with

24  the assistance of, said Defendants, their "alternate entities", and each of them, on or before 1930, and

25  thereafter.

26          31.  On or before 1930, and thereafter, said Defendants, their "alternate entities" and each of

27  them, were aware that members of the general public and other "exposed persons," who would come

28  in contact with their asbestos and asbestos-containing products, had no knowledge or information

9

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1   indicating that asbestos or asbestos-containing products could cause injury, and said Defendants,

2   their "alternate entities," and each of them, knew that members of the general public, and other "exposed

3   persons," who came in contact with asbestos and asbestos-containing products, would assume, and in

4   fact did assume, that exposure to asbestos and asbestos-containing products was safe, when in fact said

5   exposure was extremely hazardous to health and human life.

6       32.   With said knowledge, said Defendants, their "alternate entities," and each of them, opted

7   to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for

8   sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand,

9   manufacture for others, package, and advertise said asbestos and asbestos-containing products without

10  attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or

11  death resulting from exposure to asbestos and asbestos-containing products.  Rather than attempting to

12  protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting

13  from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities,"

14  and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk

15  and consciously and actively concealed and suppressed said knowledge from "exposed persons" and

16  members of the general public, thus impliedly representing to "exposed persons" and members of the

17  general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable

18  uses.  Defendants, their "alternate entities", and each of them, engaged in this conduct and made these

19  implied representations with the knowledge of the falsity of said implied representations.

20      33.   Plaintiffs allege that the aforementioned defendants, their "alternate entities," and each of

21  them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended

22  use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm

23  to exposed persons.

24      34.   Plaintiffs further allege Plaintiff DONALD WILLIS's injuries are a result of cumulative

25  exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately

26  researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased,

27  bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

28

10

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1    repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the

2    aforementioned defendants, their "alternate entities," and each of them

3      35. Plaintiff DONALD WILLIS relied upon defendants', their "alternate entities'," and each of

4    their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-

5    containing products. As a direct, foreseeable and proximate result thereof, Plaintiff DONALD WILLIS

6    suffered injury as alleged herein.

7      36. The above-referenced conduct of said Defendants, their "alternate entities," and each of

8    them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of

9    them in the continuing, uninterrupted research, design, modification manufacture, fabrication, labeling,

10   assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting

11   for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and

12   advertising of asbestos and asbestos-containing products.

13      37. In pursuance of said financial motivation, Defendants, their "alternate entities", and each of

14   them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and

15   intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and

16   induced persons to work with and be exposed thereto, including Plaintiff DONALD WILLIS .

17      38. Defendants, their "alternate entities," and each of them, and their officers, directors and

18   managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of,

19   or should have known of, each of the acts set forth herein.

20      39. Defendants, their "alternate entities," and each of them, are liable for the fraudulent,

21   oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's

22   officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and

23   had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth

24   herein.

25      40. The herein-described conduct of said defendants, their "alternate entities," and each of them,

26   was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the

27   safety and health of "exposed persons." Plaintiff DONALD WILLIS, for the sake of example and by

28

11

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  way of punishing said defendants, seeks punitive damages according to proof.

2      41.  As a direct and proximate result thereof, Plaintiffs have suffered the damages previously

3  alleged.

4      WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

5  each of them, as hereinafter set forth.

6                    **THIRD CAUSE OF ACTION**

7          **(False Representation Under Restatement of Torts Section 402-B)**

8      **AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION**

9      **FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION**

10     **402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300,**
       **THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

11     42.  Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every

12  allegation contained in the General Allegations, First (Negligence) and Second (Strict Liability) Causes

13  of Action above.

14     43.  At the aforementioned time when Defendants, their "alternate entities", and each of them,

15  researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or

16  failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected,

17  serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured

18  for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove

19  set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly

20  represented to members of the general public, including the purchasers and users of said product, and

21  other "exposed persons", including, without limitation, Plaintiff DONALD WILLIS and his employers,

22  that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for

23  which they were intended.

24     44.  The purchasers and users of said asbestos and asbestos-containing products, and

25  other "exposed persons", including, without limitation, Plaintiff DONALD WILLIS, and his employers,

26  relied upon said representations of Defendants, their "alternate entities", and each of them, in the

27  selection, purchase, and use of asbestos and asbestos-containing products.

28

12

45. Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiff DONALD WILLIS herein.

46. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Intentional Tort/Intentional Failure to Warn)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE:

47. Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First and Third Causes of Action herein, excepting therefrom allegations pertaining to negligence.

48. At all times pertinent hereto, the Defendants, their "alternate entities", and each of them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Plaintiffs. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities", and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically,

13

included suggestions of fact which were not true and which Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities", and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the aforementioned Civil Code sections.

49. Since on or before 1930, the Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Plaintiff DONALD WILLIS and others in Plaintiff DONALD WILLIS 's position working in close proximity with such materials. The Defendants, their "alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time.  With intent to deceive Plaintiff DONALD WILLIS, and others in his position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)      Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiff DONALD WILLIS and others in his position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them, since on or before 1930.  By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff DONALD WILLIS to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)      Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the

14

1  suppression of information to Plaintiff DONALD WILLIS and the general public concerning the
2  dangerous nature of the aforementioned materials to workers, by not allowing such information to be
3  disseminated in a manner which would have given general notice to the public and knowledge of the
4  hazardous nature thereof when Defendant, their "alternate entities", and each of them, were bound to
5  disclose such information;
6      (c)  Defendants, their "alternate entities", and each of them, sold the aforementioned
7  products, materials, and equipment to Plaintiff DONALD WILLIS's employers and others without
8  advising him, his employer, and others of the dangers of use of such materials to persons working in
9  close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such
10  dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants,
11  their "alternate entities", and each of them, caused to be positively asserted to Plaintiff DONALD
12  WILLIS hat which was not true and that which Defendants, their "alternate entities," and each of them,
13  had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff DONALD
14  WILLIS to work with or in close proximity to such materials;
15      (d)  Defendants, their "alternate entities", and each of them, suppressed from Plaintiff
16  medical and scientific data and knowledge of the results of studies including, but not limited to, the
17  information and contents of the "Lanza Report." Although bound to disclose it, Defendants,
18  their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered
19  version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby
20  causing Plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities", and
21  each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of
22  danger, thereby lessening the probability of notice of danger to the users thereof;
23      (e)  Defendants, their "alternate entities", and each of them, belonged to, participated in, and
24  financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry
25  organizations which, for and on behalf of Defendants, their "alternate entities", and each of them,
26  actively promoted the suppression of information of danger to users of the aforementioned products and
27  materials, thereby misleading Plaintiff DONALD WILLIS by the suggestions and deceptions set forth
28

15

above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)   Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations, to all other Defendants, their "alternate entities", and each of them, herein; Between 1942 and 1950, the Defendants, their "alternate entities", and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff DONALD WILLIS .  Such facts did mislead Plaintiff DONALD WILLIS  and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff DONALD WILLIS  the true facts concerning such knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to disclose;

(g)   Defendants, their "alternate entities", and each of them, failed to warn Plaintiff DONALD WILLIS  and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)   Defendants, their "alternate entities", and each of them, failed to provide Plaintiff DONALD WILLIS  with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff

16

1   DONALD WILLIS and others applying and installing such material;

2

3     (i)    Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiff DONALD WILLIS the true nature of the industrial exposure of Plaintiff

4 DONALD WILLIS and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos

5 would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer.

6 Defendants, their "alternate entities", and each of them, also concealed from Plaintiff DONALD

7 WILLIS and others that harmful materials to which they were exposed would cause pathological effects

8 without noticeable trauma.

9     (j)    Defendants, their "alternate entities", and each of them, failed to provide information of

10 the true nature of the hazards of asbestos materials and that exposure to these material would cause

11 pathological effects without noticeable trauma to the public, including buyers, users, and physicians

12 employed by Plaintiff DONALD WILLIS so that said physicians could not examine, diagnose, and

13 treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate

14 entities", and each of them were under a duty to so inform and said failure was misleading; and

15     (k)    Defendants, their "alternate entities", and each of them, failed to provide adequate

16 information to physicians and surgeons retained by Plaintiff DONALD WILLIS's employers and their

17 predecessor companies for purposes of making physical examinations of Plaintiff DONALD WILLIS

18 and other employees as to the true nature and risk of such materials and exposure thereto when they in

19 fact possessed such information and had a duty to disclose it.

20     50.    Defendants, their "alternate entities", and each of them, willfully failed and omitted to

21 complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries, as

22 required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with

23 the State of California. Plaintiff DONALD WILLIS was in the class of persons with respect to whom a

24 duty was owed to file such reports and who would have been protected thereby if the fact of danger from

25 products complained of had become known.

26     51.    Defendants, their "alternate entities", and each of them, having such aforementioned

27 knowledge, and the duty to inform Plaintiff DONALD WILLIS about the true facts, and knowing

28

17

1  that Plaintiff DONALD WILLIS  did not possess such knowledge and would breathe such material

2  innocently, acted falsely and fraudulently and with full intent to cause Plaintiff DONALD WILLIS to

3  remain unaware of the true facts and to induce Plaintiff DONALD WILLIS to work in a dangerous

4  environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of

5  California.

6      52.  As a direct and proximate result of such intentional conduct by Defendants, their "alternate

7  entities" and each of them, Plaintiff DONALD WILLIS sustained the injuries and damages alleged

8  herein.  The herein-described conduct of said Defendants, their "alternate entities", and each of them

9  was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the

10  safety and health of "exposed persons". Plaintiff DONALD WILLIS, for the sake of example and by

11  way of punishing said Defendants, seeks punitive damages according to proof.

12      WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and

13  each of them, as is hereinafter set forth.

14

15                          **FIFTH CAUSE OF ACTION**

16                     **(Premises Owner/Contractor Liability)**

17   **AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION,**
    **PLAINTIFFS COMPLAIN OF THE DEFENDANTS LISTED ON EXHIBIT E, AND DOES 301-**
18   **350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, (hereinafter "PREMISES**
    **OWNER/CONTRACTOR LIABILITY DEFENDANTS") AND ALLEGE AS FOLLOWS:**
19

20      53.  Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

21  paragraph of the General Allegations above.

22      54.   At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR

23  LIABILITY DEFENDANTS, each of which is listed on attached Exhibit "E" which exhibit is

24  incorporated by this reference, was a business, or successor, successor-in-business, assign, predecessor,

25  predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner

26  of an entity causing certain asbestos-containing products and/or machinery requiring or calling for

27  the use of asbestos and/or asbestos-containing products and/or products which caused the release of

28  respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials,

18

1   products, and/or toxic substances to be constructed, installed, maintained, used, managed, and/or

2   controlled by them. Said entities shall hereinafter collectively be called "alternate entities". Each of the

3   herein-named defendants is liable for its own tortuous conduct and that of each successor, successor-

4   in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or

5   partially owned entity, that caused the presence as aforesaid of said asbestos- and silica-containing

6   products and insulation and other toxic substances. Said defendants, and each of them, are liable for the

7   acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of

8   plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the

9   assets, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused

10  the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the

11  ability to assume the risk-spreading role of each such "alternate entity", and that each such defendant

12  enjoys the goodwill originally attached to each such "alternate entity".

13      55.  At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY

14  DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed and/or controlled

15  the following premises Plaintiff DONALD WILLIS worked and/or was present at. The following

16  information provided is preliminary and is based on recall of events covering many years, and further

17  investigation and discovery may produce additional information: ATTACHED EXHIBITS A and B.

18  Additionally, Plaintiff DONALD WILLIS and/or his family members might have been present at other

19  PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and

20  on other occasions.

21      56.  Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

22  LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing

23  products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing

24  products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and

25  silica-containing insulation, other building materials, products, and toxic substances to be constructed,

26  installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid

27  respective premises, by their own workers and/or by various contractors, and caused the release of

28

19

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1   dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby

2   created a hazardous and unsafe condition to Plaintiff DONALD WILLIS  , his family members and

3   other persons exposed to said asbestos and toxic substances while present at said premises.

4

5       57.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY

6   DEFENDANTS, and each of them, knew or in the exercise or ordinary and reasonable care should have

7   known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition

8   and unreasonable risk of harm and personal injury to Plaintiff DONALD WILLIS  , and other workers

9   or persons so exposed, present at each of the aforesaid respective premises.

10       58.  At all times relevant herein Plaintiff DONALD WILLIS and/or his family members entered

11   said premises and used or occupied each of said respective premises as intended and for each of the

12   respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage

13   and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS'

14   request and invitation. In so doing, Plaintiff DONALD WILLIS  was exposed to dangerous quantities

15   of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous

16   conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused

17   by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

18       59.  Plaintiff DONALD WILLIS  at all times was unaware of the hazardous condition or the risk

19   of personal injury created by the aforesaid presence and use of asbestos products and materials and other

20   toxic substances on said premises.

21       60.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY

22   DEFENDANTS, and each of them, remained in control of the premises where Plaintiff DONALD

23   WILLIS and/or plaintiff's family members were performing their work.

24       61.  At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY

25   DEFENDANTS owed to Plaintiff DONALD WILLIS, and others similarly situated, a duty to exercise

26   ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff,

27   to an unreasonable risk of harm and to avoid causing injury to said persons.

28       62.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY

20

DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions; and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

63.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

64.   Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired, and/or removed on each of their aforesaid respective premises by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

65.   At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken.

66.   In part, Plaintiff DONALD WILLIS was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.

67.   The work of contractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created unsafe premises and an unsafe work place by reason of the release of dangerous quantities of toxic substances including, but not limited to, asbestos.

68.   The unsafe premises or work place was created, in part, by the negligent conduct of the

21

contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS. Said negligent conduct includes, but is not limited to:

    (a)   Failure to warn of asbestos and other toxic dusts;

    (b)   Failure to suppress the asbestos-containing or toxic dusts;

    (c)   Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

    (d)   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

    (e)   Failure to inspect and/or test the air;

    (f)   Failure to provide medical monitoring; and

Failure to select and hire a careful and competent contractor or subcontractor.

69. The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code of Procedure, section 1714, and California Labor Code, section 6400, et seq., or Health and Safety Code, section 40.200, et seq., and regulations promulgated there under. Therefore, the Premises Owner/Contractor Liability Defendants are responsible for any breach of said duties whether by themselves or others.

70. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other governmental regulations promulgated by the United States Government, the State of California, and others, including, but not limited to, the General Industry Safety Orders promulgated pursuant to California Labor Code, section 6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including, but not limited to: Title VIII, Group 9 (Control of Hazardous Substances), Article 81, sections 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code, section 40.200, et seq., which empowers the South Coast Area Air Quality Management District to promulgate regulations including, but limited to:

22

1  S.C.A.A.Q.M.D. Rule 1403; Title 40 Code of Federal Regulations, Chapter I, Part 61, et seq. -- The

2  National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/

3  CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent

4  or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES

5  OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and

6  precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY

7  DEFENDANTS failed to provide the required safeguards and precautions.  Defendants' violations of

8  said codes include, but are not limited to:

9     (a)     Failing to comply with statutes and allowing ambient levels of airborne asbestos

10  fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

11     (b)     Failing to segregate work involving the release of asbestos or other toxic dusts;

12     (c)     Failing to suppress dust using prescribed ventilation techniques;

13     (d)     Failing to suppress dust using prescribed "wet down" techniques;

14     (e)     Failing to warn or educate plaintiff or others regarding asbestos or other toxic

15  substances on the premises;

16     (f)     Failing to provide approved respiratory protection devices;

17     (g)     Failing to ensure "approved" respiratory protection devices were used properly;

18     (h)     Failing to provide for an on-going health screening program for those exposed to

19  asbestos on the premises;

20     (i)     Failing to provide adequate housekeeping and clean-up of the work place;

21     (j)     Failing to properly warn of the hazards associated with asbestos as required by

22  these statutes;

23     (k)     Failing to properly report renovation and disturbance of asbestos-containing

24  materials, including, but not limited to: S.C.A.A.Q.M.D. Rule 1403;

25     (l)     Failing to have an asbestos removal supervisor as required by regulation;

26     (m)     Failing to get approval for renovation as required by statutes; and

27  Failing to maintain records as required by statute.

28

23

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM -- ASBESTOS

71.  PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, were the "statutory employer" of Plaintiff DONALD WILLIS and/or his family members as defined in the California Labor Code and California case law.

72.  Plaintiff DONALD WILLIS at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances, or statutes.

73.  At all times mentioned herein, Plaintiff DONALD WILLIS was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

74.  At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

75.  As a legal consequence of the foregoing, Plaintiff DONALD WILLIS developed an asbestos-related illness, which has caused great injury as previously set forth, and plaintiffs have suffered damages as alleged herein.

76.  Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and of their officers, directors, and managing agents.

77.  Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

78.  Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

79.  The herein-described conduct of said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", and each of them, was and is willful, malicious, fraudulent,

24

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons".

2  Plaintiff DONALD WILLIS, for the sake of example and by way of punishing said defendants, seeks

3  punitive damages according to proof.

4

5                    SIXTH CAUSE OF ACTION
                       [General Negligence]

6

7       AS AND FOR A SIXTH, FURTHER, AND DISTINCT CAUSE OF ACTION AGAINST
   DEFENDANTS ON EXHIBIT "E,"; DOES 301-350 INCLUSIVE; THEIR ALTERNATE

8  ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SIXTH CAUSE OF ACTION
   FOR GENERAL NEGLIGENCE AND ALLEGE AS FOLLOWS:

9

10      80.  Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

11 paragraph of the General Allegations above.

12      81.  At all times herein mentioned, defendants selected, supplied, and distributed asbestos

13 containing materials to their employees and others for use during their regular work activities in areas

14 where defendants owned, maintained, controlled, managed and/or conducted business activities where

15 Plaintiff DONALD WILLIS  worked and/or spent time as alleged herein in Exhibit A.

16      82.  Said employees and others handled, disturbed and otherwise manipulated these asbestos

17 containing materials causing the release of asbestos fibers and dust.

18

19      83.  Defendants were negligent in selecting, supplying, and distributing the asbestos

20 containing products in that said products were unsafe in that they released asbestos fibers and dust into

21 air when used which would be inhaled by Plaintiff DONALD WILLIS  and settled onto  his clothes,

22 shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and by-

23 standers including Plaintiff DONALD WILLIS  would be exposed to dangerous asbestos dust.

24      84.  The asbestos and asbestos-containing materials described herein were unsafe in that

25 handling and disturbing products, which contain asbestos, causes the release of asbestos fibers into

26

27 the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of

28

   25

1   asbestos-containing materials by defendants' employees and other caused personal injuries to Plaintiff

2   DONALD WILLIS .

3       85.  At all times herein mentioned, defendants knew or should have known that its employees

4   and bystanders thereto, including Plaintiff DONALD WILLIS , frequently encountered asbestos-

5   containing products and materials during the course and scope of their work activities.

6

7       86.  At all times herein mentioned, defendants knew or should have known that the asbestos-

8   containing materials encountered by its employees and bystanders thereto including Plaintiff

9   DONALD WILLIS , were unsafe in that harmful asbestos fibers were released during the use,

10  handling, breaking, or other manipulation of asbestos-containing products and materials, and that once

11  released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts

12  of those exposed, where further activity causes the fibers to once again be released into the air where

13  they can be inhaled, all of which causes serious disease and/or death.

14

15      87.  At all times herein mentioned, defendants, and each of them knew, or in the exercise

16  of reasonable diligence should have known, that absent adequate training and supervision, their

17  employees and bystanders thereto including Plaintiff DONALD WILLIS were neither qualified

18  nor able to identify asbestos-containing products nor to identify the hazardous nature of their work

19  activities involving asbestos-containing products.

20

21      88.  At all times herein mentioned, Plaintiff DONALD WILLIS was unaware of the dangerous

22  condition and unreasonable risk of personal injury created by the aforesaid presence and use of

23  asbestos-containing products and materials.

24      89.  At all time herein mentioned, defendants, and each of them knew, or in the exercise of

25  reasonable diligence should have known, that workers and bystanders thereto, including Plaintiff

26  DONALD WILLIS would bring dangerous dust home from the workplace and contaminate their

27  homes, potentially causing injury to others off the premises.

28

26

1    90. At all times herein mentioned, defendants had a duty to use due care in the selection,

2    supply, distribution and disturbance of asbestos containing products and materials to its employees,

3    to adequately instruct, train, and supervise their employees and to implement adequate safety policies

4    and procedures to protect workers and persons encountering those workers, including Plaintiff

5    DONALD WILLIS , from suffering injury as a result of the asbestos hazards encountered and created

6

7    by the work of defendants' employees and others.

8    91. Defendants' duties as alleged herein exist and existed independently of defendants' duties

9    to maintain their premises in reasonably safe condition, free from concealed hazards.

10    92. Defendants negligently selected, supplied, and distributed the asbestos containing

11    materials and failed to adequately train or supervise their employees to identify asbestos-containing

12    products and materials; to ensure the safe handling of asbestos-containing products and materials

13

14    encountered during the course of their work activities; and to guard against inhalation of asbestos

15    fibers and against the inhalation of asbestos fibers by those who would come into close contact with

16    them after they had used, disturbed, or handled, said asbestos-containing products and materials

17    during the course and scope of their employment by defendants.

18    93. Defendants failed to warn its employees and bystanders thereto including Plaintiff

19    DONALD WILLIS , of the known hazards associated with asbestos and the asbestos materials they

20

21    were using and/or disturbing.

22    94. As a direct and proximate result of the conduct of defendants in selecting, supplying,

23    distributing and disturbing asbestos-containing materials and failing to adequately train and supervise

24    their employees and failing to adopt and implement adequate safety policies and procedures as alleged

25    herein, Plaintiff DONALD WILLIS  became exposed to and inhaled asbestos fibers, which was a

26    substantial factor causing Plaintiff DONALD WILLIS  to develop asbestos-related conditions and

27    diseases from which plaintiffs have suffered damages as herein alleged.

28

27

1    95. Defendants are liable for the fraudulent, oppressive, and malicious acts of

2  their "alternate entities," and each of them, and of their officers, directors, and managing agents.

3    96. Defendants' officers, directors and managing agents participated in, authorized,

4  expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts

5  set forth herein.

6

7    97. Defendants' officers, directors and managing agents participated in, authorized,

8  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each

9  of their "alternate entities" as set forth herein.

10    98. The herein-described conduct of said defendants was and is willful, malicious,

11  fraudulent, outrageous and in conscious disregard and indifference to the safety and health

12  of "exposed persons." Plaintiff DONALD WILLIS,  for the sake of example and by way of punishing

13  said defendants, seeks punitive damages according to proof.

14

15    WHEREFORE, plaintiffs pray judgment against defendants and each of them, as hereinafter

16 set forth.

17                    **SEVENTH CAUSE OF ACTION**
18        **[Vicarious Liability of Defendants Based upon Respondeat Superior]**

19    **AS AND FOR A SEVENTH, FURTHER, AND DISTINCT CAUSE OF ACTION
     AGAINST DEFENDANTS ON EXHIBITS "E,"; DOES 301 -350 INCLUSIVE; THEIR**
20 **ALTERNATE ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SEVENTH
     CAUSE OF ACTION FOR VICARIOUS LIABILITY OF DEFENDANTS BASED UPON**
21 **RESPONDEAT SUPERIOR, AND ALLEGE AS FOLLOWS:**

22

23    99. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

24 paragraph of the General Allegations above.

25    100. Prior to and during all relevant times defendants employed workers

26 (hereinafter "employees") in areas where defendants owned, maintained, controlled, managed and/or

27  conducted business activities where Plaintiff worked and/or spent time as alleged herein in Exhibit A.

28

    28

       COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1   101.  At all times herein mentioned, defendants' employees frequently encountered asbestos-

2   containing products, materials, and debris during the course and scope of their employment, and

3   during their regular work activities negligently disturbed asbestos-containing materials to which

4   Plaintiff was exposed.

5

6   102.  Employees handling and disturbing asbestos-containing products in plaintiff's vicinity

7   were the agents and employees of defendants and at all times herein relevant were subject to the

8   control of defendants with respect to their acts, labor, and work involving (a) the removal, transport,

9   installation, cleaning, handling, and maintenance of asbestos-containing products, materials, and

10  debris, and (b) the implementation of safety policies and procedures.  Defendants controlled both the

11  means and manner of performance of the work of their employees as described herein.

12  103.  Employees handling and disturbing asbestos-containing products in Plaintiff DONALD

13  WILLIS 's vicinity received monetary compensation from defendants in exchange for the work

14

15  performed as described herein, and these employees performed the work as described herein in the

16  transaction and furtherance of the business of defendants.

17  104.  Harmful asbestos fibers were released during defendants' employees' use, handling,

18  breaking, or other manipulation of asbestos-containing products and materials.

19

20  105.  Once released, the asbestos fibers were inhaled; they also alighted on the clothes, shoes,

21  skin, hair, and body parts of those exposed, including Plaintiff DONALD WILLIS , and on the

22  surfaces of work areas, where further activity caused the fibers to once again be released into the air

23  and inhaled.

24  106.  The asbestos and asbestos-containing materials were unsafe in that handling and

25  disturbing products which contain asbestos causes the release of asbestos fibers into the air, and onto

26  surrounding surfaces including persons in the area and the inhalation of asbestos fibers causes serious

27  disease and death.

28

29

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1    107. Defendants' employees' use, handling and manipulation of asbestos-containing

2 materials, as required by their employment and occurring during the course and scope of their

3 employment, did, in fact, cause personal injuries, including mesothelioma and other lung damage to

4 exposed persons, including Plaintiff DONALD WILLIS .

5    108. Defendants' employees were negligent in their use, handling and manipulation in that

6 they failed to isolate their work with asbestos and/or to suppress asbestos fibers from being released

7

8 into the air and surrounding areas. They also failed to take appropriate steps to learn how to prevent

9 exposure to asbestos, failed to warn and/or adequately warn Plaintiff DONALD WILLIS that he was

10 being exposed to asbestos, failed to adequately warn him of the harm associated with his exposure to

11 asbestos and/or provide him with protection to prevent his inhalation of asbestos.

12    109. Defendants' employees knew or should have known that failure to take such steps would

13

14 result in exposure to bystanders including Plaintiff DONALD WILLIS .

15    110. Defendants' employees owed Plaintiff DONALD WILLIS a duty to exercise due care

16 and diligence in their activities while he was lawfully on the premises so as not to cause him harm.

17    111. Defendants' employees breached this duty of case as heretofore described.

18    112. At all times herein mentioned, Plaintiff DONALD WILLIS was unaware of the

19 dangerous condition and unreasonable risk of personal injury created by defendants' employees' use

20

21 of and work with asbestos-containing products and materials.

22    113. As a direct result of the defendants' employees conduct, Plaintiff DONALD WILLIS 's

23 exposure to asbestos and asbestos-containing materials, each individually and together, caused severe

24 and permanent injury to him and the damages and injuries as complained of herein to plaintiffs and

25 each of them.

26    114. The risks herein alleged and the resultant damages suffered by Plaintiff DONALD

27 WILLIS were typical of or broadly incidental to defendants' business enterprise. As a practical

28

30

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  matter, the losses caused by the torts of defendants' employees as herein alleged were sure to occur

2  in the conduct of defendants' business enterprise. Nonetheless, defendants engaged in, and sought to

3  profit by, their business enterprises, which, on the basis of past experience, involved harm to others

4  through the torts of employees.

5

6  115.  Based on the foregoing, defendants as the employers of said employees are vicariously

7  liable under the doctrine of respondeat superior for all negligent acts and omissions committed

8  by their employees in the course and scope of their work that caused harm to Plaintiff DONALD

9  WILLIS.

10  WHEREFORE, plaintiffs pray judgment against defendants and each of them, as hereinafter

11  set forth.

12

13

14

15  **EIGHTH CAUSE OF ACTION**
   **(Fraud and Deceit/Concealment)**

16

17  AS AND FOR A FURTHER, EIGHTH, SEPARATE AND DISTINCT CAUSE OF ACTION
   FOR FRAUD AND DECEIT/CONCEALMENT PLAINTIFFS COMPLAIN OF DEFENDANTS

18  METROPOLITAN LIFE INSURANCE COMPANY, PNEUMO ABEX CORPORATION, AND
   DOES 351-450, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES

19  AS FOLLOWS:

20  116.  Plaintiffs, by this reference, incorporate and makes a part hereof as though fully set forth

21  herein at length, each and every allegation of the First through Seventh Causes of Action.

22  117.  The term "conspirators", as used herein, includes, but is not limited to: METROPOLITAN

23  LIFE INSURANCE COMPANY, Anthony Lanza, M.D., Johns-Manville, Raybestos-Manhattan Inc.,

24  Gatke Corporation, Owens-Illinois, Inc., United States Gypsum Company [USG], American Brakeblok

25  Corporation (now Pneumo Abex Corporation [Pneumo Abex], Keasbey-Mattison Company (now T&N

26  PLC [T&N]), all members of the Asbestos Textile Institute [ATI], and the other entities and individuals

27  identified in this Seventh Cause of Action.

28  118.  Plaintiffs is informed and believe, and thereon alleges, that at all times herein mentioned,

31

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  the conspirators, their "alternate entities" and each of them, were and are corporations organized and

2  existing under and by virtue of the laws of the State of California, or the laws of some other state or

3  foreign jurisdiction, and that conspirators, their "alternate entities", and each of them, were and are

4  authorized to do and/or were and are doing business in the State of California, and that said conspirators,

5  their "alternate entities", and each of them, were and are corporations organized and existing under and

6  by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction,

7  and that defendants were and are authorized to do and/or were and are doing business in the State of

8  California, and that said defendants regularly conducted and/or conducts business in the County of Los

9  Angeles, State of California.

10      119. Plaintiff DONALD WILLIS was exposed to asbestos-containing dust created by the use of

11  the asbestos products manufactured, distributed and/or supplied by one or more of the conspirators and

12  or their "alternate entities" named below. The exposure to the asbestos or asbestos-related products

13  supplied by the conspirators caused Plaintiff's asbestos-related disease and injuries. The conspirators,

14  individually and as agents of one another and as co-conspirators, agreed and conspired among

15  themselves, with other asbestos manufacturers and distributors, and with certain individuals including,

16  but not limited to: Anthony Lanza, M.D. (Lanza), and defendant METROPOLITAN LIFE

17  INSURANCE COMPANY (MET LIFE') to injure the Plaintiff in the following fashion (the following

18  is not an exclusive list of the wrongful acts of MET LIFE, but a representative list):

19      (a)    Beginning in 1929, MET LIFE entered agreements with Johns-Manville and others to

20  fund studies of the affects of asbestos exposure on Canadian asbestos miners. When the data from these

21  studies proved that Canadian asbestos miners were developing asbestosis, MET LIFE, Johns-Manville,

22  and others suppressed its publication; further, Anthony Lanza, M.D. (then a MET LIFE employee)

23  actively misrepresented the results of the Canadian study for many years thereafter to meetings of health

24  care professionals seeking information regarding asbestos exposure.

25      (b)    In approximately 1934, conspirators Johns-Manville and MET LIFE', through their

26  agents, Vandiver Brown and attorney J. C. Hobart, and conspirator Raybestos-Manhattan, through its

27  agents, Sumner Simpson and J. Rohrbach, suggested to Lanza, Associate Director, MET LIFE (insurers

28

32

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

of Johns-Manville and Raybestos), that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts and conclusions about asbestos exposure; including, but not limited to, descriptions of the seriousness of the disease process, asbestosis. The misrepresentation was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestosis as a disease process less serious than it was known to be by the conspirators. As a result, Lanza's study was published in the medical literature containing said misleading statements in 1935. the conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent non-disclosure by the desire to influence proposed legislation to regulate asbestos exposure, to provide a defense in lawsuits involving Johns-Manville, Raybestos, and MET LIFE, as insurer, and to promote the use of their asbestos products.

(c)     The above-described conspiracy continued in 1936 when additional co-conspirators American Brakeblok Corporation (defendant Pneumo Abex), Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville, Keasbey & Mattison Company (then an alter-ego to conspirator Turner & Newall, (T&N PLC), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H. K. Porter Company), Union Asbestos and Rubber Company and USG, entered into an agreement with a leading medical research facility named Saranac Laboratories. Under the agreement, the conspirators acquired the power to decide what information Saranac Laboratories could publish regarding asbestos disease and could also control in what form such publications were to occur. Their agreement provided these conspirators the power and ability to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. In 1945, medical studies of dust from additional co-conspirator defendant Owens-Illinois, Inc.'s insulation product Kaylo were initiated at Saranac. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact regarding the health affects of asbestos exposure being made at scientific meetings.

(d)     In furtherance of the foregoing conspiracy, in 1947, these conspirators, members of the ATI, received a report from industrial hygienist W.C.L. Hemeon (Hemeon) regarding asbestos, which

33

suggested re-evaluation of the then-existing maximum exposure limits for asbestos exposure. These conspirators caused the Hemeon report not to be published and thereby fraudulently concealed material facts about asbestos exposure from the public and affirmatively misrepresented to the public and class of persons exposed to asbestos that the then existing maximum exposure limit for asbestos was acceptable. Thereafter, these conspirators withheld additional material information on the dust standards from The American Conference of Governmental Industrial Hygienists (ACGIH), thereby further influencing evaluations of their Threshold Limit Values for asbestos exposure.

(e)     The conspirators the Mellon Institute and the Industrial Hygiene Foundation (IHF) were research institutes whose functions included involvement in research regarding the health effects of inhaling asbestos dust.

(f)     Beginning in the early 1940's, the IHF was involved in a study by Hemeon entitled Report of Preliminary Dust Investigation for Asbestos Textile Institute, June 1947. This study was done in connection with members of the Asbestos Textile Institute (ATI). This study found that workers exposed to less than the recommended maximum exposure level for asbestos were nonetheless developing disease. As a part of the conspiracy, the IHF never published this study.

(g)     Beginning in the mid-1950's, the IHF and the Mellon Institute were involved in the publication of works by Braun and Truan entitled An Epidemiological Study of Lung Cancer in Asbestos Miners. In its original, unedited form in September 1957, this study had concluded that workers with asbestosis had an increased incidence of lung cancer and that the Canadian Government had been under-reporting cases of asbestosis. The final published version of this study in June 1958, deleted the conclusion that workers with asbestosis suffered an increased incidence of lung cancer and that the Canadian Government had been under-reporting asbestosis cases. The IHF and the Mellon Institute conspired with the members of the Quebec Asbestos Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, and other conspirators to delete the above-described information regarding asbestos and cancer.

(h)     The above-described actions of the IHF and the Mellon Institute constituted intention deception and fraud in actively misleading the public about the extent of the hazards connected with

34

1    breathing asbestos dust.

2        (i)    The above-described conspiratorial and fraudulent actions of the IHF and the Mellon

3    Institute substantially contributed to retarding the development of knowledge about the hazards of

4    asbestos and thereby substantially contributed to injuries suffered by the Plaintiff.

5        (j)    The conspiracy was furthered when on November 11, 1948, representatives of the

6    following conspirators met at the Johns-Manville headquarters: Johns-Manville, American Brakeblok

7    Division of American Brake and Shoe Foundry (defendant Pneumo Abex), Gatke Corporation, Keasbey

8    & Mattison Company (then an alter-ego to conspirator Turner & Newall (T&N )), Raybestos-

9    Manhattan, Thermoid Company (whose assets and liabilities were later purchased by H. K. Porter

10   Company), Union Asbestos and Rubber Company, United States Gypsum Company and MET LIFE.

11   U.S. GYPSUM did not send a company employee to the meeting, but instead authorized Vandiver

12   Brown of Johns-Manville to represent its interest at the meeting and take action on its behalf.

13       (k)    At the November 11, 1948 meeting, these conspirators, and their representatives, decided

14   to exert their influence to materially alter and misrepresent material facts about the substance of research

15   conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research

16   involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of

17   asbestos on humans with a critical review of the then-existing standards for asbestos dust exposure.

18       (l)    At this meeting, these conspirators intentionally and affirmatively decided that Dr.

19   Gardner's work should be edited to delete material facts about the cancer-causing propensity of

20   asbestos, the health effects of asbestos on humans, and the critique of the dust standards. MET LIFE

21   then published these deceptive and fraudulent statements in the medical literature as edited by Dr.

22   Arthur Vorwald. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure

23   to the general public and the class of persons exposed to asbestos, including Plaintiff.

24       (m)    As a direct result of influence exerted by the conspirators, in 1951 a Dr. Vorwald

25   published Dr. Gardner's edited work in the <u>Journal of Industrial Hygiene</u>, <u>AMA Archives of Industrial</u>

26   <u>Hygiene and Occupational Health</u>, in a form that stressed those portions of Dr. Gardner's work that the

27   conspirators wished stressed, but which omitted reference to human asbestosis and cancer, thereby

28

35

1   fraudulently and affirmatively misrepresenting the extent of the risks.  The conspirators affirmatively

2   and deliberately disseminated this deceptive and fraudulent Vorwald publication to university libraries,

3   government officials, agencies, and others.

4       (n)     Such actions constitute a material affirmative misrepresentation of the total context of

5   material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of

6   asbestos was less of a health problem than Dr. Gardner's unaccredited work indicated.

7       (o)     When Dr. Vorwald subsequently tried to publish more complete information regarding

8   Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac Laboratories,

9   denied him permission to publish or complete Dr. Gardner's work, and actively discouraged institutions

10  of higher learning from hiring or retaining Dr. Vorwald in any capacity.

11      (p)  ·  The following conspirators were members of the trade association known as Quebec

12  Asbestos Mining Association (Q.A.M.A.): Johns-Manville Corporation, Carey-Canada, individually and

13  as successor to Quebec Asbestos Corporation, The Celotex Corporation, successor to Quebec Asbestos

14  Corporation, National Gypsum Company, and Turner & Newall (T&N ), individually and successor to

15  Bell Asbestos.  These conspirators, as members of the Q.A.M.A., participated in the above-described

16  misrepresentation of the work of Dr. Leroy Gardner published by Dr. Arthur Vorwald in the Journal of

17  Industrial Hygiene, AMA Archives of Industrial Health 1951.  Evidence of the Q.A.M.A.'s involvement

18  in this misrepresentation arises from co-conspirator Johns Manville's membership of the Q.A.M.A., as

19  well as correspondence from co-conspirators dated 1/29/47, 11/26/47, 3/6/48, 10/15/48, 3/8/49, and 9/6/

20  50, all indicating close monitoring of the editing process of Q.A.M.A.'s representative, Ivan Sabourin,

21  acting on behalf of all Q.A.M.A. members.

22      (q)     As a furtherance of the conspiracy commenced in 1929, conspirators who were members

23  of the Q.A.M.A. as described above, began on or about 1950 to formulate a plan to influence public

24  opinion about the relationship between asbestos and cancer by influencing the medical literature on this

25  subject; and then touting and disseminating this literature to the public and to organizations and

26  legislative bodies responsible for regulatory control of asbestos -- with the specific intent of

27  misrepresenting the existing scientific information and suppressing contrary scientific data in their

28

36

1
possession and control.

2
(r)   This plan of misrepresentation and influence over the medical literature began on or

3
about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do an

4
evaluation of whether cancer was related to asbestos.  After a preliminary report authored by Dr. Arthur

5
Vorwald in 1952 indicated that a cancer/asbestos relationship might exist in experimental animals, these

6
Q.A.M.A. members refused to further fund the study, terminated the study, and prevented any public

7
discussion or dissemination of the results.

8
(s)   As a result of the termination of the Q.A.M.A./Saranac sturdy, the conspirators

9
fraudulently withheld information from the public and affirmatively misrepresented to the public and

10
responsible legislative and regulatory bodies that asbestos did not cause cancer, including affirmative

11
misrepresentations by conspirators and conspirators' agents K. W. Smith, M.D., Paul Cartier, M.D., A.

12
J. Vorwald, M.D., Anthony Lanza, M.D., Vandiver Brown, and Ivan Sabourin.  Said misrepresentations

13
being directed to inter alia, U. S. Government officials, Canadian Government officials, U. S. National

14
Cancer Institute, medical organizations, health professionals, and the general public, including Plaintiff.

15
(t)   In furtherance of the 1929 conspiracy, in 1952, a Symposium regarding the health effects

16
of asbestos was held at the Saranac Laboratories.  The following conspirators were in attendance: MET

17
LIFE, Lanza, Johns-Manville, Turner & Newall (T&N), Raybestos-Manhattan, and Q.A.M.A. members

18
by way of their agents, Cartier, Sabourin and LaChance.

19
(u)   At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in product

20
users was discussed and the carcinogenic properties of all fiber types of asbestos were also discussed.  In

21
an affirmative attempt to mislead the public about the extent of health risks associated with asbestos,

22
and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to

23
prevent publication of the record of this 1952 Saranac Symposium and it was not published.  In addition,

24
MET LIFE induced Dr. Vorwald not to announce the results of his and Dr. Gardner's animal studies

25
showing excess cancers in animals which thereby fraudulently misrepresented existing secret data which

26
could not be publicized owing to the secrecy provisions contained in the 1936 Saranac agreement

27
heretofore described.

28
    37

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1    (v)    In furtherance of the foregoing conspiracy, in 1953, co-conspirator National Gypsum,

2  through its agents, in response to an inquiry from the Indiana Division of Industrial Hygiene regarding

3  health hazards of asbestos spray products, refused to mail a proposed response to that division indicating

4  that respirators should be worn by applicators of the products.  National Gypsum's response distorted

5  and fraudulently misrepresented the need for applicators of asbestos spray products to wear respirators

6  and fraudulently concealed form such applicators the need for respirators and thereby misrepresented the

7  risks associated with asbestos exposure.

8    (w)    In furtherance of the foregoing conspiracy, in 1955, co-conspirator Johns-Manville,

9  through its agent Dr. Kenneth Smith, caused to be published in the AMA Archives of Industrial Health

10  an article entitled "Pulmonary Disability in Asbestos Workers."  This published study materially altered

11  the results of an earlier study in 1949 concerning the same set of workers.  This alteration of Dr. Smiths'

12  study constituted a fraudulent and material misrepresentation about the extent of the risk associated with

13  asbestos inhalation.

14    (x)    In furtherance of the foregoing conspiracy, in 1955, the National Cancer Institute held a

15  meeting at which conspirator Johns-Manville, individually, and as agent for other co-conspirators, and

16  Dr. A. Vorwald, as agent of co-conspirators, affirmatively misrepresented that there was no existing

17  animal studies concerning the relationship between asbestos exposure and cancer, when, in fact, MET

18  LIFE were in secret possession of several suppressed studies which demonstrated that positive evidence

19  did exist.

20    (y)    In furtherance of the foregoing conspiracy, in 1957, these conspirators and members of

21  the ATI, jointly rejected a proposed research study on cancer and asbestos and this resulted in

22  fraudulently concealing from the public material facts regarding asbestos exposure and also constituted

23  an affirmative misrepresentation of the then-existing knowledge about asbestos exposure and lung

24  cancer.

25    (z)    Subsequently, the Q.A.M.A. conspirators contracted with the Industrial Hygiene

26  Foundation and Dr. Daniel Braun to further study the relationship between asbestos exposure and

27  asbestosis and lung cancer.  In 1957, Drs. Braun and Truan (Braun and Truan) reported to the Q.A.M.A.

28

38

1   that asbestosis did increase a worker's risk of incurring lung cancer.

2       (aa)   The Q.A.M.A. conspirators as a furtherance of the conspiracy commenced in 1929,

3   thereafter caused, in 1958, a publication of the work of Braun and Truan in which the findings regarding

4   increased incidence of cancer in persons with asbestosis was edited out (stricken) by agents of the

5   Q.A.M.A. The published version of the Braun/Truan study contained a conclusion that asbestos

6   exposure, alone, did not increase the incidence of lung cancer, a conclusion known by the conspirators

7   to be false.

8       (bb)   By falsifying and causing publication of studies concluding that asbestos exposure did

9   not cause lung cancer, the conspirators affirmatively misrepresented to the public and concealed from

10  the public the extend of risks associated with inhalation of asbestos fibers.

11      (cc)   In furtherance of the ongoing 1929 conspiracy, in approximately 1958, these Q.A.M.A.

12  conspirators publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in an

13  effort to fraudulently misrepresent to the public and persons exposed to asbestos that the inhalation of

14  asbestos dust would not cause cancer.

15      (dd)   The Fraudulent misrepresentations beginning in 1929 as elaborated above, and

16  continuing with the publication of the 1958 Braun/Truan study, influenced the standards set for asbestos

17  exposure. The developers of such standards failed to lower the maximum exposure limits because a

18  cancer risk, associated with asbestos inhalation, had not been proven.

19      (ee)   In furtherance of the foregoing conspiracy, in 1964, conspirators who were members of

20  the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos exposure

21  that had been recently published by Dr. Irving J. Selikoff of Mount Sinai Research Center. Thereafter,

22  these members of the ATI embarked on a campaign to further misrepresent the association between

23  asbestos exposure and lung cancer.

24      (ff)   In furtherance of the 1929 conspiracy, in 1967, the Q.A.M.A. conspirators decided, at

25  their trade association meeting, that they would intentionally mislead consumers about the extent of

26  risks involved in inhalation of asbestos products.

27      (gg)   The following co-conspirators were members of the trade organization known as the

28

39

Asbestos Textile Institute (ATI); Raybestos-Manhattan, Johns-Manville, H. K. Porter, Keasbey & Mattison, individually and through its alter-ego Turner & Newall (T&N), and National Gypsum, Uniroyal, Inc., individually, and through its alter-egos, CDU Holdings Company, Uniroyal Holding Company and Uniroyal Goodrich Tire Company.

(hh)    All conspirators identified above approved and ratified and furthered the previous conspiratorial acts of conspirators Johns-Manville, Raybestos-Manhattan, Lanza, and MET LIFE, and all the alleged co-conspirators during the dates and circumstances set forth above, acted as agents and co-conspirators for the other conspirators.

(ii)    As evidence of Raybestos-Manhattan's fraud, concealment, suppression, and conspiratorial misconduct and of the referenced conspirators, and each of them, as herein set forth, Raymark-Manhattan's President and/or other senior executives corresponded with other senior executives of Raymark-Manhattan's co-conspirators, which series of correspondence and related documents and papers are commonly referenced as "The Sumner Simpson Papers."

(jj)    Further, as evidence of the fraud, concealment, suppression, and conspiratorial misconduct of the members of the ATI as herein set forth, the ATI and the Industrial Hygiene Foundation kept minutes of their regular meetings, discussions, resolutions, and related actions, recorded in "The ATI Minutes." MET LIFE was an active participant in the foregoing conspiracy and benefited thereby. MET LIFE benefited from their involvement because of the following non-exclusive list:

(1)    By providing workers' compensation insurance to the co-conspirators;

(2)    By providing life insurance for employees of the co-conspirators;

(3)    By providing health insurance or health care for the employees of the co-conspirators;

(4)    By providing health information and resources;

(5)    By purchasing substantial stock in asbestos-related companies, including stock of co-conspirators; and

(6)    By developing information by which asbestos-related claims for compensation

40

could be defeated.

120. The acts of the conspirators as described above, constitute fraudulent concealment, which caused injury to the Plaintiff, in the following manner (the list is not exclusive):

(a)    The material published or caused to be published by the conspirators was false and incomplete in that the conspirators knowingly and deliberately deleted, concealed, and otherwise suppressed references to and material facts regarding the known health hazards of asbestos and asbestos-related products.

(b)    The conspirators, with intent to defraud, individually, as members of a conspiracy, and as agents of other conspirators, intended that the publication of false and misleading response to the general public and individuals therein, and/or the intentional suppression and non-disclosure of documented reports of health hazards of asbestos:

(1)    Maintain a favorable atmosphere for the continued sale and distribution of asbestos and asbestos-related products;

(2)    Assist in the continued pecuniary gain of conspirators through the sale of their products;

(3)    Influence in the conspirators favor proposed legislation to regulate asbestos exposure; and;

(4)    Provide a defense in lawsuits brought for injury resulting from asbestos disease.

(c)    The conspirators individually, as members of a conspiracy, and as agents of other conspirators, had a duty to disclose information regarding the health hazards of asbestos within their knowledge and/or control.  The conspirators knowingly and intentionally breached this duty through their fraudulent concealment as described herein.

(d)    Plaintiff and others reasonably relied, both directly and indirectly, upon the published medical and scientific data documenting the purported safety of asbestos and asbestos-related products and in the absence of published medical and scientific reports of the hazards of asbestos and continued exposure to asbestos.  Plaintiff believed asbestos to be safe and were unaware of the hazards due to conspiratorial and fraudulent conduct.  Plaintiff was not warned of the hazards of asbestos dust as a

41

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1  direct result of the above-described conspiracy and fraudulent concealment. If Plaintiff had known of
2  the health hazards of asbestos, of which Plaintiff was unaware as a direct result of the conspirators'
3  fraudulent concealment, Plaintiff would have acted differently regarding his exposure to asbestos and
4  asbestos-related products.
5          (e)     Conspirators, individually, as members of a conspiracy, and as agents of other
6  conspirators, intended that Plaintiff relied on the deceptive and fraudulent reports that the conspiracy
7  caused to be published throughout the United States regarding the safety of asbestos and asbestos-
8  related products; and to rely on the absence of published medical and scientific data (because of the
9  conspiracy's concealment) regarding the hazards of asbestos and asbestos-related products and thereby
10 caused Plaintiff and others to continue their exposure to asbestos products.
11         (f)     Conspirators individually, as members of a conspiracy, and as agents of other co-
12 conspirators, were and are in a position of superior knowledge regarding the health hazards of asbestos
13 and therefore the Plaintiff reasonably relied (both directly and indirectly) on the published reports
14 commissioned by MET LIFE regarding the health hazards of asbestos and the absence of published
15 information (because of the suppression by the conspiracy) regarding the hazards of asbestos and
16 asbestos-related products.
17         (g)     As a direct result of the continuing and on-going conduct of the conspirators as alleged
18 herein, Plaintiff DONALD WILLIS contracted asbestos-related disease and suffered injuries and
19 incurred damages, which are described in greater detail in the foregoing paragraphs.
20         121.   MET LIFE acted in concert with the foregoing described parties (the conspirators) and
21 pursuant to a common design, as previously described, to cause injury to Plaintiff.
22         122.   MET LIFE knew that the conduct of Johns-Manville, Raybestos-Manhattan), USG,
23 American Brakeblok Corporation (now defendant Pneumo Abex), Keasbey-Mattison Company (now
24 T&N ), and the other conspirators was coercive, fraudulent, and deceitful towards others (including
25 Plaintiff) and that conspirators' conduct was a breach of duty owed Plaintiff; and MET LIFE gave
26 substantial assistance and encouragement to Johns-Manville and the other conspirators in breaching
27 their duties to Plaintiff and others.
28
   42

1    123.  MET LIFE provided substantial assistance to the foregoing conspirators in

2    accomplishing their tortuous result and their breach of duties to Plaintiff and others.

3        124.  Plaintiff DONALD WILLIS was insured, directly or indirectly, by MET LIFE and as such

4    was owed a fiduciary duty by MET LIFE, which duty was breached by its foregoing conduct and

5    conspiracy which thereby caused Plaintiff DONALD WILLIS's asbestos-related injuries.

6        125.  The conspirators made representations to Plaintiff and others concerning asbestos-

7    containing products including, but not limited to:

8            (a) The statements set forth and summarized in the foregoing paragraphs;

9            (b) That asbestos in commercially used insulation products was not hazardous (this statement

10   was known false by the conspirators);

11           (c) The amount of asbestos in the air necessary to cause disease was five million particles

12   per cubic foot (this statement was known to be false by the conspirators);

13           (d) That asbestos does not cause cancer (this statement was known to be false by the

14   conspirators); and

15           (e) In addition, the conspirators actively and fraudulently concealed facts from the Plaintiff

16   and others, including, but not limited to:

17               (1)   That asbestos-related disease could be a fatal disease;

18               (2)   That asbestos causes various forms of lung cancer;

19               (3)   That individuals should protect themselves from breathing asbestos dust;

20               (4)   The extent of asbestos disease in exposed populations;

21               (5)   Information regarding the levels of airborne asbestos which can cause disease;

22               (6)   Experience with workers compensation claims related to asbestos exposure; and

23               (7)   The statements set forth in the foregoing paragraphs.

24       126.  Further, the conspirators knew that their foregoing statements were false and that by their

25   acts they were actively and fraudulently concealing adverse information regarding the health effects of

26   asbestos including the facts set forth above; the conspirators made the false statements and concealed the

27   information with the intent to deceive; Plaintiff and others relied both directly and indirectly on the

28

43

1   foregoing false statements and their lack of knowledge resulting from the fraudulent concealment,

2   resulting in and causing asbestos-related injuries and damages as more fully set forth herein.

3        127.  The asbestos-containing products that conspirators manufactured, marketed, distributed,

4   sold and otherwise supplied were defective; Plaintiff was exposed to asbestos from the conspirators'

5   products, which caused his asbestos-related injuries as more fully set forth in the foregoing paragraphs.

6        128.  Additionally and alternatively, as a direct and proximate result of MET LIFE'S actions and

7   omissions, Plaintiff DONALD WILLIS was caused to remain ignorant of all the dangers of asbestos

8   resulting in Plaintiff, his agents, his employers, and the general public to be unaware of the true and full

9   dangers of asbestos; depriving Plaintiff of the opportunity to decide for himself whether he wanted to

10  take the risk of being exposed to asbestos; and denying Plaintiff the opportunity to take precautions

11  against the dangers of asbestos; and caused Plaintiff's damages herein.

12       129.  As a direct and proximate result of the actions and conduct outlined herein, Plaintiff has

13  suffered the injuries and damages alleged herein.

14       WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and

15  each of them, as hereinafter set forth.

16

17                        **NINTH CAUSE OF ACTION**

18                        (Negligent Misrepresentation)

19  **AS AND FOR A FURTHER, NINETH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR
    FRAUD AND DECEIT/NEGLIGENT MISREPRESENTATION, PLAINTIFFS COMPLAIN**

20  **OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY, PNEUMO ABEX
    CORPORATION, DOES 301-450, THEIR "ALTERNATE ENTITIES"; AND EACH OF THEM,**

21                        **AND ALLEGES AS FOLLOWS:**

22       130.  Plaintiffs, by this reference, incorporate and makes a part hereof each and every allegation

23  of the General Allegations and the First through Eighth Causes of Action as though fully set forth herein.

24       131.  The acts of the conspirators, as incorporated herein and described above, constitute

25  fraudulent negligent misrepresentation, which caused injury to the Plaintiff, in the following manner:

26

27       (a)     The material published or caused to be published by the conspirators was false, untrue,

28  and incomplete in that the conspirators knowingly, deliberately, and with intent to deceive, made

44

1
representations, product sales and assertions regarding the safety of asbestos and asbestos-related

2
products.

3
      (b)     The conspirators made these false, untrue and incomplete representations without any

4
reasonable grounds for believing and/or relying on their truth; and with the intent to induce the general

5
consuming public and individuals therein, including Plaintiff and others' direct and indirect reliance on

6
these false, untrue, and incomplete representations.

7
      (c)     Plaintiff and others reasonably, justifiably, and without knowledge of the falsity of the

8
conspirators' misrepresentations, relied, both directly and indirectly, upon published data documenting

9
the purported safety of asbestos and asbestos-related products and in the absence of published

10
information of the hazards of asbestos and cautionary warning language on or with said conspirators'

11
product, all resulting in continued injurious exposure to asbestos. Plaintiff was unaware of the hazards

12
due to MET LIFE's conduct.

13
    132.  As a direct and proximate result of the actions and conduct outlined herein, Plaintiffs has

14
have suffered the injuries and damages as alleged herein.

15
    WHEREFORE, Plaintiffs pray for judgment against defendants, their "alternate entities", and

16
each of them, as hereinafter set forth.

17

18

**TENTH CAUSE OF ACTION**
(Loss of Consortium)

19

20

**AS AND FOR A FURTHER, TENTH, SEPARATE, AND DISTINCT CAUSE OF
ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF VIOLA WILLIS COMPLAINS OF
DEFENDANTS, DOES 1-500, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM,
AND ALLEGES AS FOLLOWS:**

21

22
    133.  Plaintiff VIOLA WILLIS incorporates by reference, each and every paragraph of the

23
General Allegations and the First through Thirteenth Causes of Action herein.

24
    134.  Plaintiffs DONALD WILLIS  and plaintiff VIOLA WILLIS were married on August 4th,

25
1973 and at all times relevant to this action were, and are now, husband and wife.

26
    135.  Subsequent to his injuries, Plaintiff DONALD WILLIS was and is unable to perform the

27
necessary duties as a spouse and the work and service usually performed in the care, maintenance and

28
management of the family home. As a proximate result thereof, VIOLA WILLISwas deprived of the

45

1    consortium of her spouse, including the performance of duties, all to her damages, in an amount

2    presently unknown but which will be proved at the time of trial.

3         136.  As a direct and proximate result of the acts of Defendants, their "alternate entities", and

4    each of them, and the severe injuries caused thereby to Plaintiff DONALD WILLIS as set forth in this

5    complaint, Plaintiff VIOLA WILLIS has suffered, and for a long period of time will continue to suffer,

6    loss of consortium, companionship, love and affection of said spouse, and has suffered severe mental

7    and emotional distress and general nervousness as a result thereof.

8         WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and

9    each of them, in an amount to be proved at trial in each individual case, as follows:

10   Plaintiff DONALD WILLIS:

11        1.    For plaintiff's general damages according to proof;

12        2.    For plaintiff's loss of income, wages, and earning potential according to proof;

13        3.    For plaintiff's medical and related expenses according to proof;

14        4.    For exemplary and punitive damages according to proof;

15   Plaintiff VIOLA WILLIS:

16        4.    For plaintiff's damages for loss of consortium and/or society according to proof;

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   Plaintiffs DONALD WILLIS and VIOLA WILLIS:

25        5.    For plaintiffs' cost of suit herein;

26        For such other and further relief as the Court may deem just and proper, including costs

27   and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related

28

46

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand trial by jury as to all issues so triable.

3

4   DATED: February 10, 2012                    NAPOLI BERN RIPKA SHKOLINIK & ASSOCIATES, LLP

5

6

7                                       By: _____
                                             Marc I. Willick, Esq.
8                                            Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1

EXHIBIT "A"

2        Plaintiff DONALD WILLIS's exposure to asbestos and asbestos-containing products occurred at

3   various locations and times within, among other states, California and abroad as set forth below:

4

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Portland, OR<br>San Diego, CA<br>Aboard the USS St. Paul | Boilerman | 1959-1962 |
| U.S. Navy | San Diego, CA<br>Aboard the USS Richard S. Edwards<br>[DD-950] | Boilerman | 1962-1963 |
| Overhead Door Co. | Portland, OR<br>Various premises | Repairman and Installer | 1963 |
| U.S. Navy | Alameda, CA<br>Redding, CA<br>Aboard the USS Midway [CBA 41] | Boilerman | 1964-1965 |
| U.S. Navy | Navy Boiler and Turbine Lab in Philadelphia, PA | Boiler Tech Student | 1964 |
| U.S. Navy | Aboard the USS Ranger [CVA 61] | Boilerman | 1965-1968 |
| U.S. Navy | Newport, RI<br>Boston, MA<br>Aboard the USS O'Callahan [DE 1051] | Boilerman | 1968-1969 |
| U.S. Navy | San Diego, CA<br>Aboard the USS Chicago [CG 11] | Boilerman | 1969-1970 |
| U.S. Navy | San Diego, CA | Fuel Oil and Refractory Work | 1970 |
| U.S. Navy | San Diego, CA<br>USS Brooke [FF 61] | Controls Technician | 1974-1976 |

27

28

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

1

2 EXHIBIT "A"

Plaintiff DONALD WILLIS's exposure to asbestos and asbestos-containing products occurred at
various locations and times within, among other states, California and abroad as set forth below:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Portland, OR<br>San Diego, CA<br>Aboard the USS St. Paul | Boilerman | 1959-1962 |
| U.S. Navy | San Diego, CA<br>Aboard the USS Richard S. Edwards<br>[DD-950] | Boilerman | 1962-1963 |
| Overhead Door Co. | Portland, OR<br>Various premises | Repairman and Installer | 1963 |
| U.S. Navy | Alameda, CA<br>Redding, CA<br>Aboard the USS Midway [CBA 41] | Boilerman | 1964-1965 |
| U.S. Navy | Navy Boiler and Turbine Lab in<br>Philadelphia, PA | Boiler Tech Student | 1964 |
| U.S. Navy | Aboard the USS Ranger [CVA 61] | Boilerman | 1965-1968 |
| U.S. Navy | Newport, RI<br>Boston, MA<br>Aboard the USS O'Callahan [DE 1051] | Boilerman | 1968-1969 |
| U.S. Navy | San Diego, CA<br>Aboard the USS Chicago [CG 11] | Boilerman | 1969-1970 |
| U.S. Navy | San Diego, CA | Fuel Oil and Refractory Work | 1970 |
| U.S. Navy | San Diego, CA<br>USS Brooke [FF 61] | Controls Technician | 1974-1976 |

49

1

<u>EXHIBIT "B"</u>

2

     Plaintiff DONALD WILLIS's exposure to asbestos and asbestos-containing products

3

caused severe and permanent injury to plaintiff including, but not limited to, breathing difficulties,

4

asbestosis, pleural plaques, lung cancer, and/or other cancer and other lung damage.

5

     Plaintiff DONALD WILLIS was diagnosed with MALIGNANT MESOTHELIOMA in

6

or about JANUARY 12, 2012.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

50

EXHIBIT "C"

| DEFENDANT | PRODUCTS CONTAINING ASBESTOS MANUFACTURED AND/ OR SUPPLIED BY DEFENDANT BASED UPON CURRENT INFORMATION AND BELIEF |
|---|---|
| BUFFALO PUMPS, INC.; | Pumps, gaskets, and packing, including in US Navy and Navy ships. |
| BW/IP, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BYRON JACKSON PUMP DIVISION) | Pumps, gaskets, and packing, including in US Navy and Navy ships. |
| CARRIER CORPORATION; | Compressors, gaskets, and packing, including in US Navy and Navy ships. |
| CBS CORPORATION (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO WESTINGHOUSE ELECTRIC CORPORATION, AND HAGEN CONTROLS) | Turbines, gaskets, packing, including in US Navy and Navy ships. Hagen brand controls. Used while a member of the U.S. Navy. |
| COPES-VULCAN, INC. | Valves and packing, including in US Navy and Navy ships. |
| CRANE CO. | Valves, gaskets, packing. Jenkins Valves, Pacific Valves, including in US Navy and Navy ships. |
| DEZURIK, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO SPX VALVES & CONTROLS) | Valves, gaskets, packing, including in US Navy and Navy ships. Blaw-Knox Valves, Copes-Vulcan Valves. |
| EATON ELECTRICAL, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CUTLER-HAMMER) | Vickers-Warning Valves, gaskets, packing, including in US Navy and Navy ships. |
| ELLIOT TURBOMACHINERY COMPANY | Turbines, heaters, condensers, gaskets, |

51

| | |
|---|---|
| | including in US Navy and Navy ships. |
| FLOWSERVE CORPORATION (A/K/A BW/IP, INC. AND AS SUCCESSOR IN INTEREST TO BYRON JACKSON PUMPS) | Valves, packing, and gaskets, including in US Navy and Navy ships. Used while a member of the U.S. Navy. Vogt Valves. Rockwell Valves. |
| FOSTER WHEELER ENERGY CORPORATION | Boilers and gaskets, including in US Navy and Navy ships. General Regulator controls. Used while a member of the U.S. Navy. |
| GENERAL ELECTRIC COMPANY; | Turbines, gaskets, and generators, including in US Navy and Navy ships. Used while a member of the U.S. Navy. |
| IMO INDUSTRIES INC., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO DE LAVAL STEAM TURBINE, INC.) | Pumps, turbines, gaskets and packing, including in US Navy and Navy ships. |
| J.T. THORPE AND SON INC. | Refractory Contractor, including in US Navy and Navy ships. |
| HOBART BROTHERS COMPANY | Welding rods, including in US Navy and Navy ships. |
| INGERSOLL-RAND COMPANY | Pumps, compressors, packing, and gaskets, including in US Navy and Navy ships. |
| JOHN CRANE, INC. | Asbestos supplier to Peerless Industries, Inc., including in US Navy and Navy ships. |
| THE LINCOLN ELECTRIC COMPANY | Welding rods, including in US Navy and Navy ships. |
| M SLAYEN AND ASSOCIATES | Asbestos-Containing Insulation Contractor, including in US Navy and Navy ships. |
| METAL CLAD INSULATION CORPORATION | Asbestos-containing Insulation, including in US Navy and Navy ships. |

52

| 1 | METROPOLITAN LIFE INSURANCE COMPANY | Conspirator. |
|---|---|---|
| 2<br>3 | MUELLER STEAM SPECIALTY, INC. | Valves, gaskets and packing, including in US Navy and Navy ships. |
| 4<br>5 | NASH ENGINEERING COMPANY; | Pumps, including in US Navy and Navy ships. |
| 6<br>7 | PEERLESS INDUSTRIES, INC. (D/B/A PEERLESS HEATER COMPANY) | Pumps, including in US Navy and Navy ships. |
|  | PNEUMO-ABEX CORPORATION | Conspirator. |
| 8 | SYD CARPENTER, MARINE CONTRACTOR, INC. | Marine carpenter, including in US Navy and Navy ships. |
| 9<br>10 | VIAD CORP., (SUED INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO GRISCOM-RUSSELL) | Evaporator, heater, and distiller, including in US Navy and Navy ships. |
| 11 | VIKING PUMP, INC. | Pumps, gaskets, packing, including in US Navy and Navy ships. |
| 12 | WARREN PUMPS, LLC | Pumps, gaskets, packing, including in US Navy and Navy ships. |
| 13 | YARWAY CORPORATION | Valves, gaskets, and packing, including in US Navy and Navy ships. |
| 14 | DOES 1-500 | RESERVED |

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                   EXHIBIT "D"

53

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| BW/IP, INC. | Flowserve Corporation |
| | Flowserve US, Inc. |
| | Byron Jackson Pump Division |
| | Byron Jackson Pumps |
| CBS CORPORATION | CBS Corp. |
| | Westinghouse Electric Corporation |
| | Westinghouse Electric |
| | Hagen Controls |
| CRANE CO. | Jenkins Valves |
| | Pacific Valves |
| DEZURIK, INC. | SPX Valves & Controls |
| | Copes-Vulcan, Inc. |
| | Blaw-Knox Valves |
| EATON ELECTRICAL, INC. | CUTLER-HAMMER |
| | EATON ELECTRICAL, INC. |
| | VICKERS-WARNING VALVES |
| FLOWSERVE CORPORATION | BW/IP, INC. |
| | VOGT VALVE CO. |
| | ROCKWELL MANUFACTURING CO. |
| IMO INDUSTRIES INC. | DE LAVAL STEAM TURBINE, INC. |
| | DE LAVAL PUMPS |
| PEERLESS INDUSTRIES, INC. | PEERLESS INDUSTRIES, INC. |
| | PEERLESS HEATER COMPANY |
| VIAD CORP. | GRISCOM-RUSSELL |

54

1

## EXHIBIT E

2

### CONTRACTOR/PREMISES DEFENDANTS

3

4

SYD CARPENTER, MARINE CONTRACTOR, INC.

5

J.T. THORPE AND SON INC.

6

DOES 301 - 330.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY AND LOSS OF CONSORTIUM – ASBESTOS