ADRMOP

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:12-cv-02825-CW

Mello et al v. General Electric Company et al       Date Filed: 06/01/2012
Assigned to: Hon. Claudia Wilken                    Jury Demand: Plaintiff
Cause: 28:1332 Diversity-Asbestos Litigation        Nature of Suit: 368 P.I. : Asbestos
                                                    Jurisdiction: Diversity

**Plaintiff**

**Brenda Ann Mello**                represented by   **Alan R. Brayton**
*as Wrongful Death Heir, and as*                    Brayton Purcell LLP
*Successor-in-Interest to Leonard Mello,*           222 Rush Landing Road
*Deceased*                                          PO Box 6169
                                                    Novato, CA 94948-6169
                                                    415-898-1555
                                                    Fax: 415-898-1247
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **David R. Donadio**
                                                    Brayton Purcell LLP
                                                    222 Rush Landing Road
                                                    PO Box 6169
                                                    Novato, CA 94948-6169
                                                    415-898-1555
                                                    Fax: 415-898-1247
                                                    Email: DDonadio@braytonlaw.com
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Daniel Mello**                    represented by   **Alan R. Brayton**
*as Legal Heirs of Leonard Mello,*                  (See above for address)
*Deceased*                                          *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

                                                    **David R. Donadio**
                                                    (See above for address)
                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joshua Mello**                    represented by   **Alan R. Brayton**
                                                    (See above for address)
                                                    *LEAD ATTORNEY*
                                                    *ATTORNEY TO BE NOTICED*

David R. Donadio
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Thomas Mello**                        represented by **Alan R. Brayton**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

David R. Donadio
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**General Electric Company**

**Defendant**

**Foster Wheeler LLC**
*formerly known as*
Foster Wheeler Corporation

**Defendant**

**Huntington Ingalls Incorporated**
*formerly known as*
Northrop Grumman Shipbuilding, Inc.

**Defendant**

**Lockheed Shipbuilding Company**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/01/2012 | 1 | COMPLAINT (summons issued); against Foster Wheeler LLC, General Electric Company, Huntington Ingalls Incorporated, Lockheed Shipbuilding Company ( Filing fee $ 350, receipt number 34611074738.). Filed byDaniel Mello, Brenda Ann Mello, Joshua Mello, Thomas Mello. (ysS, COURT STAFF) (Filed on 6/1/2012) (ysS, COURT STAFF). (Additional attachment(s) added on 6/2/2012: # 1 Civil Cover Sheet) (ysS, COURT STAFF). (Entered: 06/04/2012) |
| 06/01/2012 | 2 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by Brenda Ann Mello, Daniel Mello, Joshua Mello, Thomas Mello. (ysS, COURT STAFF) (Filed on 6/1/2012) (ysS, COURT STAFF). (Entered: 06/04/2012) |
| 06/01/2012 | 3 | NOTICE of Tag-Along Action by Brenda Ann Mello, Daniel Mello, Joshua Mello, Thomas Mello. (ysS, COURT STAFF) (Filed on 6/1/2012) (ysS, COURT STAFF). (Entered: 06/04/2012) |

| 06/01/2012 | 4 | ADR SCHEDULING ORDER: Case Management Statement due by 8/24/2012. Case Management Conference set for 8/31/2012 02:30 PM. (Attachments: # 1 standing orders and cmc order)(ysS, COURT STAFF) (Filed on 6/1/2012) (Entered: 06/04/2012) |
| 06/01/2012 | 5 | Summons Issued as to Foster Wheeler LLC, General Electric Company, Huntington Ingalls Incorporated, Lockheed Shipbuilding Company. (ysS, COURT STAFF) (Filed on 6/1/2012) (Entered: 06/04/2012) |
| 06/05/2012 | 6 | ORDER OF RECUSAL. Signed by Judge Susan Illston on 6/5/12. (tfS, COURT STAFF) (Filed on 6/5/2012) (Entered: 06/05/2012) |
| 06/05/2012 | 7 | ORDER, Case reassigned to Hon. Claudia Wilken. Hon. Susan Illston no longer assigned to the case.. Signed by Executive Committee on 6/5/12. (ha, COURT STAFF) (Filed on 6/5/2012) (Entered: 06/05/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/06/2012 13:24:13 | | |
| **PACER Login:** | bp0355 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:12-cv-02825-CW |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

ORIGINAL
FILED

2012 JUN -1  P 1: 57

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs                    **E-filing**

7

8              **UNITED STATES DISTRICT COURT**                **SI**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10              **SAN FRANCISCO DIVISION**

11  BRENDA ANN MELLO, as Wrongful        )    **CV   12   2825**
    Death Heir, and as Successor-in-Interest to  )
12  LEONARD MELLO, Deceased, and        )
    DANIEL MELLO, JOSHUA MELLO,          )    COMPLAINT FOR SURVIVAL,
13  THOMAS MELLO, as Legal Heirs of      )    WRONGFUL DEATH - ASBESTOS;
    LEONARD MELLO, Deceased,             )    DEMAND FOR JURY TRIAL
14                                        )
             Plaintiffs,                  )
15                                        )
    vs.                                   )
16                                        )
    GENERAL ELECTRIC COMPANY,            )
17  FOSTER WHEELER LLC (FKA FOSTER       )
    WHEELER CORPORATION),                )
18  HUNTINGTON INGALLS                   )
    INCORPORATED (FKA NORTHROP           )
19  GRUMMAN SHIPBUILDING, INC.),         )
    LOCKHEED SHIPBUILDING                )
20  COMPANY,                             )
                                          )
21           Defendants.                  )

22

23                        **I.**

24                     **PARTIES**

25        1.     Plaintiffs in this action are the above-captioned successor-in-interest to, or the

26  personal representative of the estate of Decedent; and the personal representatives on behalf of

27  the legal heirs, or the heirs-at-law, of the Decedent, and are all hereinafter referred to as

28  "Plaintiffs."

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\109759\fed\PLD\cmp-fed-wd.wpd                    1

2.     The person who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through the person's occupational exposure to asbestos, hereinafter "Decedent" is, with the date of death: LEONARD MELLO died June 4, 2011. BRENDA ANN MELLO is the spouse of LEONARD MELLO and is hereinafter referred to as "surviving spouse."

3.     Decedent sustained an asbestos-related lung disease and death by precisely the following mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at Decedent's jobsites.  The pathogenesis of Decedent's asbestos-related diseases is explained on **Exhibit A**, attached to Plaintiffs' complaint and incorporated by reference herein.

4.     All of Plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at Decedent's worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the Decedent, resulting in cumulative, progressive, incurable lung diseases.

5.     Each Plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on Decedent's worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by Decedent, caused serious lung disease.  The allegations of Plaintiffs regarding the nature of Decedent's asbestos-related diseases, the nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all identical.

6.     Plaintiffs are informed and believe, and thereon allege, that at all times herein mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole proprietorships and/or other business entities organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said defendants, and each of them, were and are authorized to do and are doing business in the ///

State of California, and that said defendants have regularly conducted business in the State of California.

II.

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

7.      <u>Jurisdiction</u>:  Plaintiff BRENDA ANN MELLO is a citizen of the State of California.  Plaintiff(s) DANIEL MELLO, JOSHUA MELLO, THOMAS MELLO are citizens of the following states, respectively: California, California, California.

Defendants are each corporations incorporated under the laws of and having its principal places of business in the following States:

| DEFENDANT | STATE |
|---|---|
| GENERAL ELECTRIC COMPANY | Connecticut/New York |
| FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION) | New Jersey/Delaware |
| HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.) | Virginia |
| LOCKHEED SHIPBUILDING COMPANY | Maryland/Nevada |

This Court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.

8.      <u>Venue / Intradistrict Assignment</u>.  Venue is proper in the Northern District of California and assignment to the San Francisco Division of said district is proper as a substantial part of the events or omissions which give rise to the claims asserted by Plaintiffs herein occurred within the County of San Francisco, California, and Defendants are subject to personal jurisdiction in this district at the time the action is commenced.

///

///

///

**III.**

**CAUSES OF ACTION**

<u>FIRST CAUSE OF ACTION</u>
(Negligence - Survival)

PLAINTIFF BRENDA ANN MELLO AS SUCCESSOR-IN-INTEREST TO THE DECEDENT LEONARD MELLO COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), LOCKHEED SHIPBUILDING COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGES:

9.     At all times herein mentioned, each of the named defendants was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting, representing, endorsing servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be called ALTERNATE ENTITIES.  Each of the herein named defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, holding company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos.  The following defendants, and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill originally attached to each such ALTERNATE ENTITY:

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| HUNTINGTON INGALLS INCORPORATED (FKA  NORTHROP GRUMMAN SHIPBUILDING, INC.) | AVONDALE INDUSTRIES, INC. |
| | AVONDALE SHIPYARDS, INC. |
| | CONTINENTAL MARITIME INDUSTRIES, INC. |
| | EASTERN IDAHO CONSTRUCTION COMPANY |
| | INGALLS SHIPBUILDING, INC. |
| | NEWPORT NEWS SHIPBUILDING AND DRY DOCK COMPANY |
| | NORTH CAROLINA SHIPBUILDING |
| | NORTHROP GRUMMAN SHIP SYSTEMS, INC. |
| | SERVICE ENGINEERING INDUSTRIES, INC. |
| LOCKHEED SHIPBUILDING COMPANY | LOCKHEED SHIPBUILDING AND CONSTRUCTION COMPANY |
| | PUGET SOUND BRIDGE & DRY DOCK COMPANY |
| | PUGET SOUND BRIDGE & DREDGING COMPANY |

10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

1   promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

2   warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

3   otherwise directing and/or facilitating the use of, or advertising a certain product, namely

4   asbestos and other products containing asbestos.

5           11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

6   each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

7   fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

8   to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

9   supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

10  installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,

11  rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

12  and other products containing asbestos, in that said products caused personal injuries to users,

13  consumers, workers, bystanders and others, including the Decedent herein, (hereinafter

14  collectively called "exposed persons"), while being used in a manner that was reasonably

15  foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by

16  "exposed persons."  In part, and without limitation as to other defendants, defendant

17  LOCKHEED SHIPBUILDING COMPANY, manufactured, modified, serviced and/or repaired

18  asbestos-containing ships and vessels.

19          12.     Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to

20  exercise due care in the pursuance of the activities mentioned above and defendants, and each of

21  them, breached said duty of due care.

22          13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should

23  have known, and intended that the aforementioned asbestos and products containing asbestos and

24  related products and equipment, would be transported by truck, rail, ship, and other common

25  carriers, that in the shipping process the products would break, crumble, or be otherwise

26  damaged; and/or that such products would be used for insulation, construction, plastering,

27  fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not

28  limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,

1   breaking, removing, maintaining, inspecting, "rip-out," and other manipulation, resulting in the

2   release of airborne asbestos fibers, and that through such foreseeable use and/or handling

3   "exposed persons," including Decedent herein, would use or be in proximity to and exposed to

4   said asbestos fibers, which contaminated the packaging, products, environment, and clothing of

5   persons working in proximity to said products, directly or through reentrainment.

6          14.    Decedent had used, handled, or been otherwise exposed to asbestos and asbestos-

7   containing products referred to herein in a manner that was reasonably foreseeable.  Decedent's

8   exposure to asbestos and asbestos-containing products is on current information as set forth at

9   various locations and circumstances in **Exhibit A,** attached hereto and incorporated by reference

10  herein.

11         15.    As a direct and proximate result of the acts, omissions, and conduct of the

12  defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, Decedent's exposure

13  to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

14  or harm to the Decedent as set forth in **Exhibit A**, attached to Plaintiffs' complaint and

15  incorporated by reference herein.

16         16.    Plaintiffs are informed and believe, and thereon allege, that progressive lung

17  disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

18  without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

19  asbestos and asbestos-containing products over a period of time.

20         17.    Decedent suffered from a condition related to exposure to asbestos and asbestos-

21  containing products.  Decedent was not aware at the time of exposure that asbestos or asbestos-

22  containing products presented any risk of injury and/or disease.

23         18.    As a direct and proximate result of the aforesaid conduct of the defendants, their

24  "alternate entities," and each of them, Decedent incurred liability for physicians, surgeons,

25  nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

26  amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this

27  complaint accordingly when the true and exact cost thereof is ascertained.

28  ///

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred liability for the reasonable value of medial care provided by Decedent's family members measured by, inter alia, the costs associated with the hiring a registered nurse, home hospice, or other service provider, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact costs are known or at time of trial.

20.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, Decedent suffered permanent injuries to his person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer and related sequelae, and the mental and emotional distress attendant thereto, and ultimately death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be proven at trial.

21.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent incurred loss of income, benefits, entitlements, wages, profits, and commissions, a diminishment of earning potential, and other pecuniary losses, the full nature and extent of which are not yet known to Plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

22.     As a further direct and proximate result of the said conduct of the defendants, their ALTERNATE ENTITIES, and each of them, Decedent's exposure to asbestos and asbestos-containing products caused severe and permanent injury to Decedent, and ultimately Decedent died on the date previously stated herein.

23.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

24.     Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors, and managing agents participated in, authorized,

///

1  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of

2  each of their ALTERNATE ENTITIES as set forth herein.

3        25.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,

4  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in

5  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed

6  persons," including Decedent herein, giving rise to Decedent's claim herein alleged for punitive

7  damages against said defendants.

8        WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

9  each of them, as hereinafter set forth.

10

SECOND CAUSE OF ACTION
(Products Liability - Survival)

11

12        PLAINTIFF BRENDA ANN MELLO AS SUCCESSOR-IN-INTEREST TO THE

13  DECEDENT LEONARD MELLO COMPLAINS OF DEFENDANTS GENERAL ELECTRIC

14  COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION),

15  HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN

16  SHIPBUILDING, INC.), LOCKHEED SHIPBUILDING COMPANY, THEIR "ALTERNATE

17  ENTITIES,"AND EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND

18  DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN

19  AS FOLLOWS:

20        26.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

21  paragraph of the First Cause of Action  herein.

22        27.    Defendants, their "alternate entities," and each of them, knew and intended that

23  the above-referenced asbestos and asbestos-containing products would be used by the purchaser

24  or user without inspection for defects therein or in any of their component parts and without

25  knowledge of the hazards involved in such use.

26        28.    Said asbestos and asbestos-containing products were defective and unsafe for their

27  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease

28  and/or death.  The defect existed in the said products at the time they left the possession of

defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause

personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed

persons," including Decedent herein, while being used in a reasonably foreseeable manner,

thereby rendering the same defective, unsafe, and dangerous for use.

29.    "Exposed persons" did not know of the substantial danger of using said products.

Said dangers were not readily recognizable by "exposed persons."  Said defendants, their

ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

which Decedent and others similarly situated were exposed.

30.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

did so with conscious disregard for the safety of "exposed persons" who came in contact with

said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

death resulting from exposure to asbestos or asbestos-containing products, including, but not

limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,

from scientific studies performed by, at the request of, or with the assistance of, said defendants,

their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

31.    On or before 1930, and thereafter, said defendants, their ALTERNATE

ENTITIES and each of them, were aware that members of the general public and other "exposed

persons," who would come in contact with their asbestos and asbestos-containing products, had

no knowledge or information indicating that asbestos or asbestos-containing products could

cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

members of the general public and other "exposed persons," who came in contact with asbestos

1  and asbestos-containing products, would assume, and in fact did assume, that exposure to

2  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

3  hazardous to health and human life.

4      32.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

5  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

6  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

7  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

8  asbestos-containing products without attempting to protect "exposed persons" from, or warn

9  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

10 asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or warn

11 "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

12 asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

13 intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

14 and suppressed said knowledge from "exposed persons" and members of the general public, thus

15 impliedly representing to "exposed persons" and members of the general public that asbestos and

16 asbestos-containing products were safe for all reasonably foreseeable uses.  Defendants, their

17 ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

18 representations with the knowledge of the falsity of said implied representations.

19     33.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

20 and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

21 ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

22 manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

23 sale, inspection, installation, contracting for installation, repair, marketing, warranting,

24 rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

25 directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

26 products.  In pursuance of said financial motivation, said defendants, their ALTERNATE

27 ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

28 were consciously willing and intended to permit asbestos and asbestos-containing products to

1  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

2  including Decedent.

3       34.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE

4  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

5  products, to be safe for their intended use, but that their asbestos and asbestos-containing

6  products, created an unreasonable risk of bodily harm to exposed persons.

7       35.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

8  their representations, lack of warnings, and implied warranties of fitness of asbestos and their

9  asbestos-containing products.  As a direct, foreseeable, and proximate result thereof, Decedent

10  suffered permanent injury and death as alleged herein.

11       36.    As a direct and proximate result of the actions and conduct outlined herein,

12  Decedent have suffered the injuries and damages herein alleged.

13       WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities", and

14  each of them, as hereinafter set forth.

15                    THIRD CAUSE OF ACTION
                     (Negligence - Wrongful Death)
16

17       PLAINTIFF BRENDA ANN MELLO, AS WRONGFUL DEATH HEIR, AND AS

18  SUCCESSOR-IN-INTEREST TO LEONARD MELLO DECEASED, AND PLAINTIFF(S)

19  DANIEL MELLO, JOSHUA MELLO, THOMAS MELLO AS LEGAL HEIR(S) OF

20  DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER

21  WHEELER LLC (FKA FOSTER WHEELER CORPORATION), HUNTINGTON INGALLS

22  INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), LOCKHEED

23  SHIPBUILDING COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;

24  EACH FOR A THIRD, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR

25  NEGLIGENCE (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

26       37.    Plaintiffs incorporate by reference each paragraph contained within the First

27  Cause of Action as though fully set forth herein.

28  ///

38.    The heirs at law of the Decedent and their relationship to the Decedent is set forth above.

39.    The individuals set forth as heirs constitute all of the surviving heirs of the Decedent.

40.    As a direct and proximate result of the conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-containing products caused Decedent to develop diseases from which condition Decedent died. Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of filing the complaint.

41.    At all times prior to his death, Decedent was a faithful and dutiful spouse to the surviving spouse.

42.    As a direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have sustained pecuniary loss resulting from the loss of care, society, comfort, attention, services, and support of Decedent all to the damage of Decedent's heirs.

43.    As a further direct and proximate result of the conduct of defendants, and each of them, and the death of Decedent, Decedent's heirs have incurred funeral expenses in an amount currently not ascertained.

WHEREFORE, Plaintiffs pray judgment against defendants, and each of them, as hereinafter set forth.

FOURTH  CAUSE OF ACTION
(Products Liability - Wrongful Death)

PLAINTIFF BRENDA ANN MELLO, AS WRONGFUL DEATH HEIR, AND AS SUCCESSOR-IN-INTEREST TO LEONARD MELLO DECEASED, AND PLAINTIFF(S) DANIEL MELLO, JOSHUA MELLO, THOMAS MELLO AS LEGAL HEIR(S) OF DECEDENT, COMPLAIN OF DEFENDANTS GENERAL ELECTRIC COMPANY, FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION), HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.), LOCKHEED

1  SHIPBUILDING COMPANY, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;

2  EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION

3  FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS FOLLOWS:

4        44.    Plaintiffs incorporate herein by reference, as though fully set forth herein, each

5  paragraph of the First, Second and Third Causes of Action herein.

6        45.    As a direct and proximate result of the conduct of defendants, and each of them,

7  Decedent's heirs have sustained the injuries and damages previously alleged.

8        WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

9  each of them, as hereinafter set forth.

10                        **IV.**

11              **DAMAGES AND PRAYER**

12        WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and

13  each of them in an amount to be proved at trial in each individual case, as follows:

14      (a)    For Plaintiffs' general damages according to proof;

15      (b)    For Plaintiffs' loss of income, wages and earning potential according to proof;

16      (c)    For Plaintiffs' medical and related expenses according to proof;

17      (d)    For Plaintiffs' cost of suit herein;

18      (e)    For exemplary or punitive damages according to proof;

19      (f)    For damages for fraud according to proof; and

20      (g)    For such other and further relief as the Court may deem just and proper, including

21  costs and prejudgment interest.

22  Dated: ___5/31/12___                BRAYTON❖PURCELL LLP

23                               By: _____
                                    David R. Donadio

24                                  Attorneys for Plaintiffs

25                        JURY DEMAND

26        Plaintiffs hereby demand trial by jury of all issues of this cause.

27  Dated: ___5/31/12___                BRAYTON❖PURCELL LLP

28                                By: _____
                                    David R. Donadio
                                    Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

15

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

EXHIBIT A

Decedent:  LEONARD MELLO, Deceased.

Decedent's injuries:  Decedent was diagnosed with asbestosis on or about May 2008 and with asbestos-related pleural disease on or about January 2009.

Decedent died on June 4, 2011.

Retirement Status:  Decedent stopped working in approximately April 2011 due to his asbestos related illness.

Defendants:  Plaintiffs contend that the asbestos-containing products to which Decedent  was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.   Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below.  The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy Reserves | Various ships and shipyards, including: | | 7/1970-4/1971 |
| | SHIELDS (DD-596) Naval Repair Facility, San Diego, CA | Seaman | 7/4/1970-7/19/1970 |
| U.S. Navy | RANGER (CV-61) | Fireman | 4/22/1971-3/19/1973 |
| | Naval Air Station, Alameda, CA | | 4/21/1971-6/21/1971 |
| | Hunters Point Naval Shipyard, San Francisco, CA | | (Approximately 1 ½  years) |

///

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| South Bay Trade School, Samson St., National City, CA | South Bay Trade School (affiliated w/ NASSCO) Samson St., National City, CA | Pipefitter (Student) | 1973 (approximately 3 months) |
| National Steel & Shipbuilding Co. 2044 India Rd. Charlottesville, VA | National Steel and Shipbuilding (NASSCO), San Diego, CA; Naval Air Station North Island, San Diego, CA; Naval Station 32nd St., San Diego, CA | Pipefitter | 3/1974-3/1977 |
| | OGDEN (LPD-5) | | 1974-1975 |
| | DENVER (LPD-9) | | 1975-1976 |
| | DULUTH (LPD-6) | | 1976-3/1977 |
| | RANGER  (CV-61) | | 1974- 3/1977 |
| Lockheed Shipbuilding Company 4500 Park Granada Woodland Hills, CA | Lockheed Shipbuilding Seattle, WA | Pipefitter | 3/1977-6/1977 |
| U.S. Department of Defense | Puget Sound Naval Shipyard, Bremerton, WA | Pipefitter | 5/14/1978-8/7/1979 |
| | RANGER  (CV-61) | | |
| | NIMITZ (CVN-68) | | |
| | ENTERPRISE (CVN-65) | | |
| Tacoma Boat Building Co 6711 Regents Blvd Tacoma, WA | Tacoma Boat Building Co. Tacoma, WA | Pipefitter | 1979-1989 |
| | BEAR (WMEC-901) | | 1979 Approximately 1 year |
| BAE Systems San Diego Ship Repair Inc-James McPhee 2205 Belt St San Diego, CA | Southwest Marine San Diego, CA | Pipefitter | 1988-11/23/09 |
| | BELLEAU WOOD (LHA-3) | | |
| | BENFOLD (DDG-65) | | 1996-11/23/09 |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| BAE Systems San Diego Ship Repair Inc-James McPhee 2205 Belt St San Diego, CA (cont'd.) | Southwest Marine San Diego, CA | Pipefitter | 1988-11/23/09 |
| | BUNKER HILL (CG-52) | | |
| | COMSTOCK (LSD-45) | Pipefitter | 1996-11/23/09 |
| | CONSTELLATION (CV-64) | | 1988-2003 |
| | CORONADO (LPD-11) | | |
| | DULUTH (LPA-6) | | |
| | GRIDLEY (CG-21) | | |
| | HEWITT (DD-966) | | |
| | HORNE (CG-30) | | 1988-1994 |
| | KIDD (DD-993) | | 1988-1998 |
| | MILIUS (DDG-69) | | 1996-11/23/09 |
| | MOBILE BAY (CG-53) | | |
| | NIMITZ (CVN-68) | | |
| | OGDEN (LPD-5) | | 1988-2007 |
| | PELELIU (LHA-5) | | |
| | RANGER (CV-61) | | 1988-1993 |
| | SAN JOSE (AFS-7) | | 1988-1993 |
| | GERMANTOWN (LSD-42) | Pipefitter | 1991-11/23/09 |
| | KITTY HAWK (CV-63) | | |

COMPLAINT FOR SURVIVAL, WRONGFUL DEATH - ASBESTOS; DEMAND FOR JURY TRIAL