ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:12-cv-02790-LB

Morris v. C.C. Moore & Co. Engineers, et al
Assigned to: Magistrate Judge Laurel Beeler
Case in other court: San Francisco Superior Court, CGC 11-275757
Cause: 28:1442 Petition for Removal

Date Filed: 05/31/2012
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Thomas Morris**

represented by **David R. Donadio**
Brayton Purcell LLP
222 Rush Landing Road
PO Box 6169
Novato, CA 94948-6169
415-898-1555
Fax: 415-898-1247
Email: DDonadio@braytonlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Christopher Solomon**
Brayton & Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, CA 94948-6169
415-898-1555
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**C.C. Moore & Co. Engineers**

**Defendant**

**Spirax Sarco, Inc.**

represented by **Lance Douglas Wilson**
Tucker Ellis LLP
135 Main Street
Suite 700
San Francisco, CA 94105
415-617-2400
Fax: 415-617-2409
Email: lance.wilson@tuckerellis.com
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Nicole Elisabet Gage**
Tucker Ellis LLP
135 Main Street
Suite 700
San Francisco, CA 94105
415-617-2105
Fax: 415-617-2409
Email: nicole.gage@tuckerellis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/04/2012 | 7 | CERTIFICATE OF SERVICE by Spirax Sarco, Inc. re 1 Notice of Removal (Gage, Nicole) (Filed on 6/4/2012) (Entered: 06/04/2012) |
| 05/31/2012 | 6 | CERTIFICATE OF SERVICE by Spirax Sarco, Inc. re 1 Notice of Removal, 3 Certificate of Interested Entities, 4 Notice (Other), 5 Notice (Other) (far, COURT STAFF) (Filed on 5/31/2012) (far, COURT STAFF). (Entered: 06/01/2012) |
| 05/31/2012 | 5 | NOTICE OF TAG-ALONG ACTION by Spirax Sarco, Inc. (far, COURT STAFF) (Filed on 5/31/2012) (far, COURT STAFF). (Entered: 06/01/2012) |
| 05/31/2012 | 4 | NOTICE OF PENDENCY of other action or proceeding by Spirax Sarco, Inc. (far, COURT STAFF) (Filed on 5/31/2012) (far, COURT STAFF). (Entered: 06/01/2012) |
| 05/31/2012 | 3 | Certificate of Interested Entities by Spirax Sarco, Inc. identifying Corporate Parent Sarco International Corporation, Corporate Parent Spirax-Sarco Investments, LTD., Corporate Parent Spirax-Sarco Engineering, plc for Spirax Sarco, Inc.. (far, COURT STAFF) (Filed on 5/31/2012) (far, COURT STAFF). (Entered: 06/01/2012) |
| 05/31/2012 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 9/27/2012. Case Management Conference set for 10/4/2012 10:30 AM in Courtroom C, 15th Floor, San Francisco. (Attachments: # 1 Standing Order)(far, COURT STAFF) (Filed on 5/31/2012) (Entered: 06/01/2012) |
| 05/31/2012 | 1 | NOTICE OF REMOVAL from San Francisco County Superior Court. Their case number is CGC-11-275757. (Filing fee $350 receipt number 34611074689). Filed bySpirax Sarco, Inc. (far, COURT STAFF) (Filed on 5/31/2012) (Additional attachment(s) added on 6/4/2012: # 2 Civil Cover Sheet) (far, COURT STAFF). (Entered: 06/01/2012) |

| **PACER Service Center** |
|---|
| **Transaction Receipt** |
| |

| 06/04/2012 14:45:50 | | | |
|---|---|---|---|
| **PACER Login:** | te0445 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-02790-LB |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

1  DAVID R. DONADIO, ESQ., S.B. #154436
   ERIC C. SOLOMON, ESQ., S.B. #119131
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5
   Attorneys for Plaintiff
6

7

**SUMMONS ISSUED**

# FILED

San Francisco County Superior Court

JAN 2 1 2011

CLERK OF THE COURT
BY: _____
                    Deputy Clerk

8              **SUPERIOR COURT OF CALIFORNIA**

9                **COUNTY OF SAN FRANCISCO**

10

11  THOMAS MORRIS,                    )    **ASBESTOS**
                                      )    No.  **CGC-11-275757**
12              Plaintiff,            )
                                      )
13  vs.                               )    COMPLAINT FOR PERSONAL INJURY -
                                      )    ASBESTOS
14  C.C. MOORE & CO. ENGINEERS;       )
    Defendants as Reflected on Exhibit 1  )
15  attached to the Summary Complaint )
    herein; and DOES 1-8500.          )
16

17      1.      Plaintiff THOMAS MORRIS was born February 25, 1944.

18      2.      The ©Brayton❖Purcell Master Complaint for Personal Injury [and Loss of

19  Consortium]- Asbestos (hereinafter "Master Complaint") was filed January 2, 2003, in San

20  Francisco Superior Court.  A copy of the Master Complaint and General Order No. 55 may be

21  obtained upon request from Brayton❖Purcell, and designated portions of the Master Complaint

22  are incorporated by reference herein pursuant to the authority conferred by General Order No. 55.

23  Plaintiff's claims are as set forth in said Master Complaint against defendants herein as follows:

24  ///

25  ///

26  ///

27

28

**THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158**

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\113918\PLD\cmp-pipMст.wpd                    1
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

| Cause of Action | B | B-1 | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First (Negligence) | ☒ | ☒ | | | | | | | | | | | | |
| Second (Strict Liability) | ☒ | ☒ | | | | | | | | | | | | |
| Third (False Representation) | ☐ | ☐ | | | | | | | | | ☐ | ☐ | | |
| Fourth (Loss of Consortium) | ☐ | ☐ | | | | | | | | | ☐ | ☐ | ☐ | |
| Fifth (Premises Owner/Contractor Liability) | | ☒ | ☒ | | | | | | | | ☐ | ☐ | ☐ | |
| Sixth, Seventh, Eighth (Unseaworthiness, Negligence [Jones Act], Maintenance and Cure) | | | | | | | | | | | | | | |
| Ninth (Longshore and Harbor Workers Compensation Act [LHWCA]) | | | | | ☐ | | | | | | | | | |
| Tenth, Eleventh (F.E.L.A.) | | | | ☐ | | ☐ | | | | | | | | |
| Twelfth, Thirteenth (Respiratory Safety Devices) | | | | | | | ☐ | | | | | | | |
| Fourteenth, Fifteenth (Brake Shoe Grinding) | | | | | | | ☐ | | | | | | | |
| Sixteenth (Concert of Action) | | | | | | | | ☒ | | | | | | |
| Seventeenth, Eighteenth (Fraud, Deceit/Negligent Misrepresentation/Concealment) | | | | | | | | | ☒ | | | | | |
| Nineteenth (Fraud/Deceit/Intentional Misrepresentation) | | | | | | | | | | ☒ | | | | |
| Twentieth (Fraud/Deceit - Kent) | | | | | | | | | | | ☒ | | | |
| Twenty-First (Aiding/Abetting Battery - Met Life) | | | | | | | | | | | | | | ☒ |
| Twenty-Second (Civil Battery) | | | | | | | | | | | | | | |

DEFENDANTS* ON EXHIBITS:

*and their alternate entities as set forth in the Master Complaint or on any Exhibit.

1      3.     Plaintiff's asbestos-related injury, date of diagnosis, employment status, and

2  history of exposure to asbestos are as stated on Exhibit A.

3      4.     Plaintiff's claims against defendant CBS CORPORATION (F/K/A VIACOM

4  INC., F/K/A WESTINGHOUSE ELECTRIC CORPORATION) exclude plaintiff's asbestos

5  exposure at military and federal government jobsites and aboard U.S. Navy vessels.

6      5.     Plaintiff hereby amends the Master Complaint on file herein, to incorporate a

7  new Twenty-First Cause of Action, set forth below, specially plead against the defendant listed

8  on Exhibit N, namely METROPOLITAN LIFE INSURANCE COMPANY.  (Plaintiffs are in

9  the process of amending the Master Complaint herein and will include this new Cause of Action

10  in said amendment.)

11                  "TWENTY-FIRST CAUSE OF ACTION
                              Aiding and Abetting Battery

12              [Against Metropolitan Life Insurance Company
                    and Does 7501-7900, Inclusive]

13

14      AS AND FOR A FURTHER, TWENTY-FIRST, SEPARATE AND DISTINCT

15  CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF

16  COMPLAINS OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY,

17  DEFENDANTS ON EXHIBIT N, DOES 7501-7900, THEIR ALTERNATE ENTITIES AND

18  EACH OF THEM, AND ALLEGES AS FOLLOWS:

19      225.    Plaintiff incorporates herein by reference, as though fully set forth hereat, each

20  and every allegation of the First through Third and Sixteenth, Seventeenth, Eighteenth and

21  Nineteenth Causes of Action as though fully set forth herein.  (As used throughout this cause of

22  action, 'plaintiff' refers to all named plaintiffs and/or all named decedents from whom the

23  named plaintiff's injuries may derive.)

24      226.  This cause of action is for the aiding and abetting of battery by METROPOLITAN

25  LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical

26  director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation

27  ("J-M").

28  ///

227.  Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned defendant MET LIFE was and is a corporation organized and existing under and by virtue of the laws of the State of New York or the laws of some other state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is doing business in the State of California, and regularly conducted or conducts business in the County of San Francisco, State of California.  At times relevant to this cause of action, MET LIFE was an insurer of J-M.

228.  Plaintiff, was exposed to asbestos-containing dust created by the use of the asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease and injuries.

229.  Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-related disease in Canadian mines and mills, including those of J-M.  Those studies revealed that miners and mill workers were contracting asbestosis at relatively low levels of dust.  McGill University, which conducted the studies, sought permission from MET LIFE to publish the results but they were never published.  MET LIFE prepared its own report of these studies.

230.  Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S. plants manufacturing asbestos-containing products, including a J-M plant.  Those studies showed that workers in substantial numbers were contracting asbestosis, at levels less than what became the Threshold Limit Value ('TLV") of 5mppcf.  The MET LIFE report was never published or disseminated except to plant owners, including J-M.

231.  In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville, New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant studies.  They were never published.

232.  In 1934, J-M and others whose plants MET LIFE had studied agreed with MET LIFE that it should issue a report of its studies.

///

///

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

1    233. MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and

2  business reasons, that certain critical parts of the draft be changed. MET LIFE's official in

3  charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

4        (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos

5                should be less than that for silica;

6        (b)    Addition of the phrase that asbestosis clinically appeared to be milder than

7                silicosis.

8  The report, thus altered, was published in 1935. It was misleading, and intentionally so,

9  because it conveyed the incorrect propositions that asbestosis was a less serious disease process

10  than silicosis and that higher levels of asbestos dust could be tolerated without contracting

11  diseases than was the case for silica dust.

12    234. MET LIFE had a close relationship with J-M. It invested money in J-M. It

13  provided group health and life insurance to J-M. MET LIFE IN 1934 agreed to supply

14  industrial hygiene services to J-M, including dust counts, training employees to monitor dust

15  levels, examining employees, and recommending protective equipment. MET LIFE and Lanza

16  were viewed as experts on industrial dusts.

17    235. In 1933, MET LIFE through Lanza issued the following advices to J-M:

18        (a)    Disagreeing with the recommendation of a J-M plant physician, MET LIFE

19                advised against warning workers of the fact that asbestos dust is hazardous to

20                their health, basing its advice in view of the extraordinary legal situation;

21        (b)    When the plant physician judged the best disposition of an employee with

22                asbestosis was to remove him from the dust, MET LIFE advised instead that

23                disposition should depend on his age, nature of work and other factors and to

24                leave him alone if he is old and showing no disability, for, MET LIFE stated,

25                economic and production factors must be balanced against medical factors.

26    236. J-M followed the MET LIFE advices and did not warn its workers, including

27  plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying

28  workers of their disease.

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

237. In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF"). One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

238. MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust. MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust. MET LIFE nonetheless promoted that TLV as proper.

239. In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant. That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease. MET LIFE was a member of the IHF and Lanza was on its medical committee. The Hemeon report, which was supplied to J-M and other owners, never was published.

240. In 1936, J-M and other asbestos companies agreed with a leading medical research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the others retained control over publication of the results. In 1943 Saranac's Dr. Leroy Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long fiber asbestos contracted cancer.

241. Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr. Vorwald, in the *AMA Archives of Industrial Hygiene*.

242. Lanza left MET LIFE at the end of 1948, and took a position at New York University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause cancer into the 1950s.

///

1    243.  The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE

2    official was on its medical committee, through Drs. Braun and Truan conducted a study of

3    Canadian miners.  The original report, in 1957, found an increased incidence of lung cancer in

4    persons exposed to asbestos.  The sponsors, including J-M, caused those findings to be stricken,

5    and the report published in 1958 contained the false conclusion that asbestos exposure alone did

6    not increase the risk of lung cancer.

7    244.  The false and misleading reports that a link between asbestos exposure and cancer

8    was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low

9    or zero.

10    245.  J-M not later than 1933 was inflicting asbestos dust on its workers in its plants

11    knowing that the dust was hazardous and was causing workers to contract disease that could

12    and would disable and kill them.  As MET LIFE advised, J-M did not warn its workers of the

13    hazard.  J-M committed battery on workers in its plants, including plaintiff, by that conduct.

14    246.  MET LIFE knew that J-M's conduct constituted a breach of its duties to its

15    workers.  MET LIFE gave substantial assistance to J-M in committing batteries on its workers,

16    including plaintiff, through MET LIFE's conduct described above, including by:

17    (a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in

18         view of the extraordinary legal situation, such that J-M did not warn its workers,

19         including plaintiff;

20    (b)    Deleting the findings of its own draft report that the allowable limits for asbestos

21         dust should be less than those for silica dust, and promoting a false and unsafe

22         TLV which specified maximum levels of silica dust, and promoting a false and

23         unsafe TLV which specified maximum levels of dust for workers, including

24         plaintiff, which MET LIFE knew was wrong through its own studies;

25    ///

26    ///

27    ///

28

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

1      (c)     Advising J-M to keep certain workers continuing to work at dusty areas in the

2      plant even after J-M was aware that their lungs showed asbestos-induced

3      changes, lest other workers including plaintiff be alerted to the dangers of

4      working in the dust.

5      WHEREFORE, plaintiff prays judgment as is hereinafter set forth."

6      6.     Plaintiff does not make a claim for either false representative or punitive

7  damages against any named defendant herein.

8  Dated:  1 | 6 | 11            BRAYTON❖PURCELL LLP

9

10                   By:  _____

11                       David R. Donadio
                             Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

1

## **EXHIBIT 1 - LIST OF DEFENDANTS**

2

3
C.C. MOORE & CO. ENGINEERS
CRANE CO.
4
THOMAS DEE ENGINEERING COMPANY
INGERSOLL-RAND COMPANY
5
METROPOLITAN LIFE INSURANCE COMPANY
6
PARKER-HANNIFIN CORPORATION
QUINTEC INDUSTRIES, INC.
7
CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)
WESTERN MacARTHUR COMPANY
8
MacARTHUR COMPANY
WESTERN ASBESTOS COMPANY
9
KENTILE FLOORS, INC.
YARWAY CORPORATION
10
HOPEMAN BROTHERS, INC.
J.T. THORPE, INC.
11
J.T. THORPE & SON, INC.
and DOES 1-8500,
12

13
    Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

EXHIBIT A

Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations both inside and outside the State of California, including but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| U.S. Navy | Various ships, including: | Engineman | 1965-1993 |
| | MULIPHEN (AKA-61) | | 1965-1968 |
| | MOCTOBI (ATF-105) | | 1971-1974 |
| | PYRO (AE-24) | | 1990's |
| | BOLSTER (ARS-38) | | 1975-1981 |
| | Various Shipyards, including: | | |
| | Schiller St. Alameda, CA | | |
| | Puget Sound Naval Shipyard Bremerton, WA | | 1981-1985 |
| | Unknown Shipyard San Diego, CA | | 1974-1975 |
| | Norfolk Naval Shipyard Portsmouth, VA | | 1965 |
| U.S. Navy | Ingalls Shipbuilding Pascagoula, MS | Engine Man | 1981 |
| | ANTIETAM (CG-54) | | |

Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, including, but not limited to breathing difficulties and/or other lung damage.  Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease on or about July 2010.

Plaintiff is still employed and therefore has suffered no disability due to his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

EXHIBIT A

# EXHIBIT B

EXHIBIT B

DEFENDANTS

| | |
|---|---|
| C.C. MOORE & CO. ENGINEERS | CBS CORPORATION (FKA VIACOM INC., FKA |
| CRANE CO. | WESTINGHOUSE ELECTRIC CORPORATION) |
| THOMAS DEE ENGINEERING COMPANY | WESTERN MacARTHUR COMPANY |
| INGERSOLL-RAND COMPANY | MacARTHUR COMPANY |
| METROPOLITAN LIFE INSURANCE | WESTERN ASBESTOS COMPANY |
| COMPANY | KENTILE FLOORS, INC. |
| PARKER-HANNIFIN CORPORATION | YARWAY CORPORATION |
| QUINTEC INDUSTRIES, INC. | DOES 1-800 |

ALTERNATE ENTITY

| | |
|---|---|
| CRANE CO. | BARKSDALE CONTROL PRODUCTS |
| | CHAPMAN VALVE CO. |
| | COCHRANE CORP. |
| | CRANE CO.  VALVE DIVISION |
| | CRANE PLUMBING & HEATING AKA CRANE PLUMBING-HEATING SHEETMETAL, INC. |
| | CRANE PUMPS & SYSTEMS, INC. |
| | CRANE SUPPLY |
| | CYCLOTHERM |
| | JENKINS BROS. |
| | JENKINS VALVES |
| | MIDWEST PIPING & SUPPLY |
| | PACIFIC STEEL BOILER CORPORATION |
| | PACIFIC VALVES |
| | REPCAL BRASS MANUFACTURING CO. |
| THOMAS DEE ENGINEERING COMPANY | THOMAS DEE ENGINEERING CO., INC. |
| | DEE ENGINEERING COMPANY |
| INGERSOLL-RAND COMPANY | INGERSOLL-DRESSER PUMP |
| | DRESSER-RAND CO. |
| | PACIFIC PUMP WORKS |
| | FLOWSERVE CORPORATION |
| | INGERSOLL ROCK DRILL COMPANY |
| | TERRY STEAM TURBINE CO. |
| | WHITON MACHINE COMPANY |
| | RAND DRILL COMPANY |
| | RAND & WARING DRILL AND COMPRESSOR COMPANY |
| | INGERSOLL-SERGEANT |
| | SCHLAGE LOCK COMPANY |
| | VON DUPRIN |
| | THE TORRINGTON COMPANY |
| | BLAW-KNOX COMPANY |
| | ALDRICH PUMPS |
| | HUSSMANN CORPORATION |

///

///

EXHIBIT B

K:\Injured\1 13918\PLD\cmp-pipMet.wpd

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B (cont'd.)

ALTERNATE ENTITY

PARKER-HANNIFIN CORPORATION

SACOMA-SIERRA, INC.
SACOMA MANUFACTURING COMPANY
E.I.S. AUTOMOTIVE CORPORATION
CONDREN CORPORATION, THE
PARKER SEAL COMPANY
DENISON HYDRAULICS INC.
GREER HYDRAULICS CORPORATION

CBS CORPORATION (F/K/A VIACOM
INC., F/K/A WESTINGHOUSE
ELECTRIC CORPORATION)

VIACOM, INC.
CBS CORPORATION
WESTINGHOUSE ELECTRIC CORPORATION
WESTINGHOUSE ELECTRIC AND
MANUFACTURING COMPANY
B.F. STURTEVANT
KPIX TELEVISION STATION
PARAMOUNT COMMUNICATIONS, INC
GULF & WESTERN INDUSTRIES, INC.
NORTH & JUDD MANUFACTURING COMPANY

WESTERN MacARTHUR
COMPANY

WESTERN ASBESTOS CO.
MAC ARTHUR COMPANY
BAY CITIES ASBESTOS COMPANY
F.K. PINNEY, INC.

YARWAY CORPORATION

YARNALL-WARING COMPANY
YARNALL-WARING CO.

EXHIBIT B

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT B-1

1

EXHIBIT B-1

2 <u>DEFENDANTS</u>

3 HOPEMAN BROTHERS, INC.
J.T. THORPE, INC.
4 THOMAS DEE ENGINEERING COMPANY
J.T. THORPE & SON, INC.
5                                          <u>ALTERNATE ENTITY</u>

6 J.T. THORPE & SON, INC.        THE THORPE COMPANY
                                 THORPE PRODUCTS CO.
7                                J.T. THORPE NORTHWEST

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                            EXHIBIT B-1

K:\Injured\113918\PLD\cmp-pipMet.wpd
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT C

EXHIBIT C

DEFENDANTS

HOPEMAN BROTHERS, INC.
J.T. THORPE, INC.
THOMAS DEE ENGINEERING COMPANY
J.T. THORPE & SON, INC.
C.C. MOORE & CO. ENGINEERS

WESTERN MacARTHUR COMPANY
MacARTHUR COMPANY
WESTERN ASBESTOS COMPANY
DOES 1001-2000

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| HOPEMAN BROTHERS, INC. | Various | Various |
| J.T. THORPE, INC. | Various | Various |
| THOMAS DEE ENGINEERING COMPANY | Various | Various |
| J.T. THORPE & SON, INC. | Various | Various |
| C.C. MOORE & CO. ENGINEERS | Various | Various |
| WESTERN MacARTHUR COMPANY/MacARTHUR COMPANY/WESTERN ASBESTOS COMPANY | Various | Various |

EXHIBIT C

# EXHIBIT H

1

<u>EXHIBIT H</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
PARKER-HANNIFIN CORPORATION

4

DOES 5000-8000

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT H

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT I

1

<u>EXHIBIT I</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 5000-7500

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>EXHIBIT I</u>

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT J

1                                 <u>EXHIBIT J</u>

2   <u>DEFENDANTS</u>

3   METROPOLITAN LIFE INSURANCE COMPANY
    DOES 7400-7500
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                          EXHIBIT J

K:\Injured\113918\PLD\cmp-pipMet.wpd                     25
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

**EXHIBIT N**

1

<u>EXHIBIT N</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 7501-7900

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT N

1  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON✣PURCELL LLP
2  Attorneys at Law
   222 Rush Landing Road
3  P.O. Box 6169
   Novato, California  94948-6169
4  (415) 898-1555

5  Attorneys for Plaintiff

6

7

8               SUPERIOR COURT OF CALIFORNIA

9                   COUNTY OF SAN FRANCISCO

10

11  THOMAS MORRIS,                    )    ASBESTOS
                                      )    No.  CGC-11-275757
12              Plaintiff,            )
                                      )
13  vs.                               )    PRELIMINARY FACT SHEET/NEW
                                      )    FILING/ASBESTOS LITIGATION
14  C.C. MOORE & CO. ENGINEERS;       )
    Defendants as Reflected on Exhibit 1 )
15  attached to the Summary Complaint )    (See General Order No. 129, In Re:
    herein; and DOES 1-8500.          )    Complex Asbestos Litigation)
16  _____   )

17                        NOTICE

18  TO NEW DEFENDANTS SERVED IN COMPLEX ASBESTOS LITIGATION IN THE
    SUPERIOR COURT IN AND FOR THE STATE OF CALIFORNIA, CITY AND COUNTY OF
19  SAN FRANCISCO

20          You have been served with process in an action which has been designated by the Court
    as complex litigation pursuant to Standard 19 of the Standards of Judicial Administration.  This
21  litigation bears the caption "In Re:  Complex Asbestos Litigation", [San Francisco Superior
    Court No. 828684].
22
            This litigation is governed by various general orders, some of which affect the judicial
23  management and/or discovery obligations, including the responsibility to answer interrogatories
    deemed propounded in the case.  You may contact the Court or Designated Defense Counsel,
24  Berry & Berry, P.O. Box 16070, 2930 Lakeshore Avenue, Oakland, CA 94610; Telephone:
    (510) 835-8330; FAX: (510) 835-5117, for further information and/or copies of these orders, at
25  your expense.

26  1. State the complete name and address of each person whose claimed exposure to asbestos is

27  the basis of this lawsuit ("exposed person"):  Thomas Morris, 522 Division Street, Port Orchard,

28  Washington 98366.

K:\Injured\113918\PLD\cmp-factst.wpd
                                           1
PRELIMINARY FACT SHEET/NEW FILING/ASBESTOS LITIGATION

FILED
San Francisco County Superior Court

JAN 21 2011

CLERK OF THE COURT
BY: _____
              Deputy Clerk

BRAYTON✣PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P.O. BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

2. Does plaintiff anticipate filing a motion for a preferential trial date within the next four
months?        _____ Yes              __X__ No
[If yes, the action will be governed by General Order No. 140; if no, the action will be governed
by General Order No. 129.]

3. Date of birth of each exposed person in item one and, if applicable, date of death:

                        Date of Birth:   __February 25, 1944__

                        Date of Death: _____ N/A _____

Social Security Number of each exposed person:

        Social Security Numbers are confidential pursuant to Calif. Rule of Court 1.20.

4. Specify the nature or type of asbestos-related disease alleged by each exposed person.

    __X__ Asbestosis              _____ Mesothelioma

    __X__ Pleural Thickening/Plaques        _____ Other Cancer:  Specify: _____

    _____ Lung Cancer Other Than Mesothelioma      _____ Other:  Specify: _____

5. For purposes of identifying the nature of exposure allegations involved in this action, please
check one or more:

    __X__ Shipyard        __X__ Construction        _____ Friction-Automotive

    _____ Premises        _____ Aerospace        __X__ Military

    _____ Other:  Specify all that apply: _____

If applicable, indicate which exposure allegations apply to which exposed person.

6. Identify each location alleged to be a source of an asbestos exposure, and to the extent known,
provide the beginning and ending year(s) of each such exposure. Also specify each exposed
person's employer and job title or job description during each period of exposure.  (For example:
"San Francisco Naval Shipyard - Pipefitter - 1939-1948").  Examples of locations of exposure
might be a specific shipyard, a specific railroad maintenance yard, or perhaps more generalized
descriptions such as "merchant marine" or "construction".  If an exposed person claims exposure
during only a portion of a year, the answer should indicate that year as the beginning and ending
year (e.g., 1947-1947).

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Various ships, including: | Engineman | 1965-1993 |
| | MULIPHEN (AKA-61) | | 1965-1968 |
| | MOCTOBI (ATF-105) | | 1971-1974 |
| | PYRO (AE-24) | | 1990's |
| | BOLSTER (ARS-38) | | 1975-1981 |
| | Various Shipyards, including: | | |
| | Schiller St. Alameda, CA | | |
| | Puget Sound Naval Shipyard Bremerton, WA | | 1981-1985 |
| | Unknown Shipyard San Diego, CA | | 1974-1975 |
| | Norfolk Naval Shipyard Portsmouth, VA | | 1965 |
| U.S. Navy | Ingalls Shipbuilding Pascagoula, MS | Engine Man | 1981 |
| | ANTIETAM (CG-54) | | |

7. For each exposed person who:

a. worked in the United States or for a U.S. agency outside the territorial United States, attach to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Earnings authorization (Exhibit N-4 to General Order No. 129);

b. may have had a Social Security disability award or is no longer employed and whose last employment was not with a United States government agency, attach to the copy of this fact sheet provided to Designated Defense Counsel a fully executed Social Security Disability authorization (Exhibit N-5 to General Order No. 129);

c. served at any time in the United States military, attach to the copy of this fact sheet provided to Designated Defense Counsel two fully executed originals of the stipulation (Exhibit N-3 to General Order No. 129);