ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:12-cv-03096-MEJ

Deuyour v. BF Goodrich Company et al
Assigned to: Magistrate Judge Maria-Elena James
Cause: 28:1441 Petition for Removal

Date Filed: 06/15/2012
Jury Demand: Both
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**Daniel Deuyour**                          represented by   **Eric Loren Brown**
                                                             Deblase Brown Everly LLP
                                                             10990 Wilshire Boulevard
                                                             Suite 1060
                                                             Los Angeles, CA 90024
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**BF Goodrich Company**

**Defendant**

**Carrier Corporation**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.
*formerly known as*
Westinghouse Electric Corporation

**Defendant**

**Crane Co.**                               represented by   **Michele Cherie Barnes**
*and as successor in interest to*                            KL Gates LLP
*Chapman Valves*                                             4 Embarcadero Center
                                                             Suite 1200
                                                             San Francisco, CA 94111
                                                             415-249-1011
                                                             Fax: 415-882-8220
                                                             Email: michele.barnes@klgates.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Zachariah David Baker**

KL Gates
Four Embarcadero Ctr., Suite 1200
4 Embarcadero Ctr, Suite 1200
SF, CA 94111
415-882-8034
Fax: 415-882-8220
Email: zac.baker@klgates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**The Dexter Corporation**
*and as successor in interest to Dexter
Aerospace, Hysol, Dexter-Hysol and
Dexter Hysol Aerospace Inc.*

**Defendant**

**Eaton Corporation**
*an as successor in interest to Cutler-
Hammer*

**Defendant**

**Foster Wheeler Energy Corporation**

**Defendant**

**General Electric Company**

**Defendant**

**Georgia-Pacific, LLC**
*successor in interest to Bestwell
Gypsum Company
formerly known as*
Georgia Pacific Corporation

**Defendant**

**The Goodyear Tire & Rubber
Company**

**Defendant**

**Honeywell International Inc.**
*and as successor in interest to Allied
Signal Inc and Bendix Corp.*

**Defendant**

**IMO Industries, Inc.**
*and as successor in interest to Delaval
Steam Turbine, Inc.*

**Defendant**

**Ingersoll-Rand Company**
*and as successor in interest to The*
*Aldrich Company*

**Defendant**

**Jerguson Gage & Valve Company**

**Defendant**

**John Crane, Inc.**

**Defendant**

**Kelly-Moore Paint Company, Inc.**

**Defendant**

**Parker Haniffin Corporation**
*sucessor in interest to Sacoma Sierra*
*Company*

**Defendant**

**Pneumo Abex LLC**
*Successor in interest to Abex Corp.*
*formerly known as*
American Brake Soe Company
*formerly known as*
Foundry Company

**Defendant**

**San Francisco Gravel Company**

**Defendant**

**Shell Oil Company**

**Defendant**

**Soco West, Inc.**
*formerly known as*
Brenntag West, Inc.
*formerly known as*
Soco-Lynch Corporation
*formerly known as*
Soco-Western Chemical Corporation
*formerly known as*
Stinnes-Western Chemical Corporation

**Defendant**

**Union Carbide Corporation**

**Defendant**

**Warren Pumps LLC**

**Defendant**

**York International Corporation**
*successor in interest to Central*
*Environmental Systems, Inc.*
*formerly known as*
Borg-Warnern Central Envieonmental
Systems, Inc.

**Defendant**

**York-Luxaire, Inc**

**Defendant**

**The C.A. Olsen Manfacturing**
**Company**
*doing business as*
Moncrief Furnaces
*doing business as*
York Heating and Air Conditioning

| Date Filed | # | Docket Text |
|---|---|---|
| 06/15/2012 | 1 | NOTICE OF REMOVAL /no process from San Francisco County Superior Court. Their case number is CGC 12-276047. (Filing fee $350 receipt number 34611075199). Filed byCrane Co.. (ga, COURT STAFF) (Filed on 6/15/2012) (Entered: 06/20/2012) |
| 06/15/2012 | 2 | Certificate of Interested Entities by Crane Co. re 1 Notice of Removal (ga, COURT STAFF) (Filed on 6/15/2012) (Entered: 06/20/2012) |
| 06/15/2012 | 3 | NOTICE OF TAG-ALONG ACTION by Crane Co. (ga, COURT STAFF) (Filed on 6/15/2012) (Entered: 06/20/2012) |
| 06/15/2012 | 4 | CERTIFICATE OF SERVICE by Crane Co. re 2 Certificate of Interested Entities, 3 Notice (Other), 1 Notice of Removal (ga, COURT STAFF) (Filed on 6/15/2012) (Entered: 06/20/2012) |
| 06/15/2012 | 5 | ADR SCHEDULING ORDER: Case Management Statement due by 9/13/2012. Case Management Conference set for 9/20/2012 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 6/15/12. (Attachments: # 1 Standing Order)(ga, COURT STAFF) (Filed on 6/15/2012) (Entered: 06/20/2012) |
| 06/20/2012 | 6 | *Defendant Crane Co.'s* ANSWER to Complaint with Jury Demand *for Personal Injury* byCrane Co.. (Baker, Zachariah) (Filed on 6/20/2012) (Entered: 06/20/2012) |

**PACER Service Center**

**Transaction Receipt**

| 06/20/2012 16:05:03 | | | |
|---|---|---|---|
| **PACER Login:** | kl0203 | **Client Code:** | 0213660.00934/11425 |
| **Description:** | Docket Report | **Search Criteria:** | 3:12-cv-03096-MEJ |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

THIS CASE IS SUBJECT TO MANDATORY ELECTRONIC FILING PURSUANT TO AMENDED G.O. 158

1  Eric Brown, Esq. (229622)
   email: brown@dbelegal.com
2  Mike Eyerly, Esq. (178693)
   email: meyerly@dbelegal.com
3  Stephen T. Blackburn (SBN 232887)
   email: blackburn@dbelegal.com
4  Brian Maucotel, Esq. (SBN 274826)
   email: maucotel@dbelegal.com
5  DEBLASE BROWN EYERLY LLP
   10990 Wilshire Boulevard, Suite 1060
6  Los Angeles, California 90024
   Telephone: 310-575-9955
7  Facsimile: 310-575-9919

8

Attorneys for Plaintiff

9

10

11

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                FOR THE COUNTY OF SAN FRANCISCO

14

15  DANIEL DEUYOUR,                    )  CASE NO.   CGC12 -276047

16              Plaintiff,             )
                                       )
17      vs.                            )  COMPLAINT FOR PERSONAL
                                       )  INJURIES
18  BF GOODRICH COMPANY;               )
    CARRIER CORPORATION;               )  1. Negligence
19  CBS CORPORATION, F/K/A VIACOM,     )  2. Products Liability
    INC., SUCCESSOR BY MERGER TO CBS   )  3. Premises Owner/Contractor Liability
20  CORPORATION F/K/A WESTINGHOUSE     )
    ELECTRIC CORPORATION;              )
21  Crane Co., individually and as successor )
    in interest to Chapman Valves;     )
22  The Dexter Corp. individually and as )        BY FAX
    successor in interest to Dexter Aerospace, )
23  Hysol, Dexter-Hysol and Dexter Hysol )
    Aerospace, Inc.;                   )
24  Eaton Corporation individually and as )
    successor in interest to Cutler-Hammer, )
25  Inc.;                              )
    FOSTER WHEELER ENERGY              )
26  CORPORATION;                       )
    GENERAL ELECTRIC COMPANY;          )
27  Georgia-Pacific LLC, F/K/A GEORGIA )
    PACIFIC CORPORATION, SUCCESSOR     )
28  IN INTEREST TO BESTWELL GYPSUM     )
    COMPANY;                           )
    The Goodyear Tire & Rubber Company; )

-1-

COMPLAINT

The Goodyear Tire & Rubber Company; )
HONEYWELL INTERNATIONAL INC., )
INDIVIDUALLY AND AS SUCCESSOR )
INTEREST TO ALLIED SIGNAL, INC. )
AND BENDIX CORPORATION; )
IMO Industries, Inc. (Individually and as )
successor in interest to Delaval Steam )
Turbine, Inc.); )
INGERSOLL-RAND COMPANY, )
individually and as successor in interest to )
The Aldrich Company; )
Jerguson Gage & Valve Company; )
JOHN CRANE, INC.; )
KELLY-MOORE PAINT COMPANY, INC.; )
PARKER HANIFFIN CORPORATION, )
individually and as successor in interest to )
Sacoma Sierra Company; )
PNEUMO-ABEX, LLC (Individually and as )
successor-in-interest to ABEX )
CORPORATION f/k/a American Brake )
Shoe Company f/k/a American Brake Shoe )
and Foundry Company including the )
American Brakebloc Division, f/k/a The )
American Brake Materials Corporation); )
SAN FRANCISCO GRAVEL COMPANY; )
Shell Oil Company; )
SOCO WEST, INC. (f/k/a Brenntag West )
Inc., f/k/a SoCo-Lynch Corporation, f/k/a )
SoCo-Western Chemical Corporation; f/k/a )
Stinnes-Western Chemical Corporation; )
UNION Carbide Corporation; )
WARREN PUMPS, LLC; )
YORK INTERNATIONAL CORPORATION, )
individually and as successor-in-interest to )
Central Environmental Systems, Inc., f/k/a )
Borg-Warner Central Environmental )
Systems, Inc.; York-Luxaire, Inc.; Luxaire, )
Inc., and The C.A. Olsen Manufacturing )
Company and d/b/a "Moncrief Furnaces" )
d/b/a York Heating & Air Conditioning; )

and DOES 1-300, )
)
)
)
Defendants. )
_____

COMES NOW Plaintiff DANIEL DEUYOUR, for causes of action against

Defendants, complain and allege as follows:

-2-

## GENERAL ALLEGATIONS

1.     This case is being brought by DANIEL DEUYOUR as a result of DANIEL DEUYOUR having been diagnosed with an asbestos-related disease caused by exposure to asbestos.  Throughout this complaint use of the term "Plaintiff" shall, where appropriate, mean both DANIEL DEUYOUR unless the context of its use clearly means one or the other.

2.     Asbestos litigation has long been designated complex in SAN FRANCISCO County for several historical reasons, including the number of parties, the length, duration and complexity of anticipated deposition testimony of fact, lay and expert witnesses, the wide-ranging medical issues that may or may not be involved, the complexity of industrial hygiene and governmental regulations that may or may not be involved, and the anticipated proportionate amount of economic, non-economic and punitive damages sought for plaintiff's anticipated death and the loss of consortium for his dependants.

3.     The average life expectancy of a patient diagnosed with a severe asbestos-related disease (mesothelioma and/or lung cancer) is extremely short.  Some patients diagnosed with such disease only live weeks or months following their diagnosis.  Further, as their diseases progress, their prognosis slowly worsens such that their ability to participate in trial may diminish drastically.  Often, plaintiffs in these cases must present videotaped deposition testimony taken at the outset of their cases, as their medical condition has worsened so severely that even traveling a few miles to the courthouse is impossible.  Plaintiffs in such cases routinely bring motions for trial preference and often stipulate to expedited and/or shortened time periods for responsive pleadings in order to permit the granting of trial dates in less than 120 days.

4.     In this matter, Plaintiff DANIEL DEUYOUR was diagnosed with lung cancer on or about May 16, 2011. Because of Plaintiff's work history, and the numerous asbestos products to which he is alleged to have been exposed, Plaintiffs have named numerous manufacturers of asbestos products, premises owners, contractors, and suppliers of asbestos products and fibers as Defendants.

1    5.    The true names and/or capacities, whether individual, corporate, associate,
2  governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown
3  to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and
4  when the true names and capacities of said Defendants have been ascertained, Plaintiffs
5  will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon
6  allege that each Defendant designated herein as a DOE is responsible, negligently or in
7  some other actionable manner, for the events and happenings hereinafter referred to, and
8  caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged,
9  either through said Defendant's own conduct or through the conduct of its agents, servants
10  or employees, or due to the ownership, lease or sale of the instrumentality causing the
11  injury, or in some other manner.

12    6.    Plaintiffs are informed and believe, and thereon allege that at all times
13  mentioned herein, Defendants, and each of them, were the agents, servants, employees
14  and/or joint venturers of their co-Defendants and were, as such, acting within the scope,
15  course, and authority of said agency, employment and/or joint venture, in that each and
16  every Defendant, as aforesaid, when acting as a principal, was negligent in the selection
17  and hiring or each and every other Defendant as the agent, servant, employee and/or joint
18  venturer.

19    7.    Plaintiffs were California residents during a substantial period of Plaintiff
20  DANIEL DEUYOUR's asbestos exposures, upon which Plaintiffs' claims are based.

21    8.    Plaintiffs are informed and believe, and thereon allege, that at all times
22  mentioned herein, Defendants BF GOODRICH COMPANY; CARRIER CORPORATION;
23  CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS
24  CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION; Crane Co. ,
25  Individually and as successor in interest to Chapman Valves;The Dexter Corp. individually
26  and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol
27  Aerospace, Inc.; Eaton Corporation individually and as successor in interest to
28  Cutler-Hammer, Inc.;FOSTER WHEELER ENERGY CORPORATION;

1  GENERAL ELECTRIC COMPANY; Georgia-Pacific LLC, F/K/A GEORGIA PACIFIC
2  CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY;
3  The Goodyear Tire & Rubber Company; HONEYWELL INTERNATIONAL INC.,
4  INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND
5  BENDIX CORPORATION; IMO Industries, Inc. (Individually and as successor in interest to
6  Delaval Steam Turbine, Inc.); INGERSOLL-RAND COMPANY, individually and as
7  successor in interest to The Aldrich Company; Jerguson Gage & Valve Company;
8  JOHN CRANE, INC.; KELLY-MOORE PAINT COMPANY, INC.;PARKER HANIFFIN
9  CORPORATION, individually and as successor in interest to Sacoma Sierra Company;
10  PNEUMO-ABEX, LLC (Individually and as successor-in-interest to ABEX CORPORATION
11  f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company
12  including the American Brakebloc Division, f/k/a The American Brake Materials
13  Corporation); SAN FRANCISCO GRAVEL COMPANY; Shell Oil Company; SOCO WEST,
14  INC. (f/k/a Brenntag West Inc., f/k/a SoCo-Lynch Corporation, f/k/a SoCo-Western
15  Chemical Corporation; f/k/a Stinnes-Western Chemical Corporation; UNION Carbide
16  Corporation; WARREN PUMPS, LLC; YORK INTERNATIONAL CORPORATION,
17  individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a
18  Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and
19  The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Heating
20  & Air Conditioning;" "Shuck's Auto Supply," and "Kragen Auto Parts";and DOES 1-300, ,
21  inclusive, are corporations organized and existing under and by virtue of the laws of the
22  State of California, or the laws of some other state of the United States of America, or
23  some foreign jurisdiction, and that said Defendants were authorized to do and are doing
24  business in the State of California, and that said Defendants have regularly conducted
25  business in the State of California.
26      9.      At all times mentioned above, Defendants, and each of them, were engaged
27  in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,
28  buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

-5-

1 | advertising a certain substance, the generic name of which is asbestos, and other products
2 | containing said substance.

3 |        10.      Plaintiff DANIEL DEUYOUR was exposed to Defendants' asbestos and
4 | asbestos containing products contributing to and causing the development of lung cancer.
5 | Plaintiff was exposed to Defendants' asbestos and asbestos containing products including
6 | but not limited to through his work as a boatswains mate in the US Navy from 1970-1974,
7 | through automotive friction work in the 1970's through the 1990's,  through personal
8 | construction work in the 1970's, and through his work as a laborer and aircraft mechanic
9 | and technician in the 1970's through the 1990's.   Plaintiff DANIEL DEUYOUR suffers from
10 | lung cancer and each of Defendants' asbestos and asbestos containing products that
11 | entered his body was a substantial factor in bringing about, prolonging, or aggravating
12 | Plaintiff's lung cancer. The asbestos and asbestos containing products Plaintiff was
13 | exposed to were manufactured or supplied by a named Defendant and DOES 1-300.

14 |        11.      Federal Courts lack jurisdiction over this action; removal is therefore
15 | improper.  Specifically, removal based on diversity jurisdiction is unavailing due to the
16 | presence of a Defendant that resides in California.  In addition, no claim of admiralty or
17 | maritime law is raised, Plaintiffs sue no foreign state or agency, and Defendants lack a
18 | colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1).
19 | Venue is proper in San Francisco County, Superior Court of California.

20 |

21 |                          **FIRST CAUSE OF ACTION**
                                     (Negligence)
22 |                           (As Against all Defendants)

23 |        12.      Plaintiffs hereby incorporate by reference, as though fully set forth herein,
24 | each and every allegation contained in each paragraph above.

25 |        13.      At all times herein mentioned, each of the named Defendants and DOES 1
26 | through 300 was the successor, successor in business, successor in product line or a
27 | portion thereof, assign, predecessor, predecessor in business, predecessor in product line
28 | or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial

1  owner of or member in an entity researching, studying, manufacturing, fabricating,

2  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

3  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

4  marketing, warranting, re-branding, manufacturing for others, packaging and advertising as

5  certain product, namely asbestos, and other products containing asbestos. Said entities

6  shall hereinafter collectively be called "Alternate Entities." Each of the herein named

7  Defendants is liable for the tortious conduct of each successor, successor in business,

8  successor in product line or a portion thereof, assign, predecessor in product line or a

9  portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

10  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

11  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for

12  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

13  marketed, warranted, re-branded, manufactured for others and advertised a certain

14  product, namely asbestos, and other products containing asbestos. The following

15  Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"

16  in that there has been a virtual destruction of Plaintiffs' remedies against each such

17  "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line,

18  or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused

19  the destruction of Plaintiffs' remedies against each such "Alternate Entity;" each such

20  Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;"

21  and that each such Defendant enjoys the goodwill originally attached to each such

22  "Alternate Entity."

23

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION |

-7-

| | |
|---|---|
| Crane Co. | Individually and as successor in interest to Chapman Valves |
| The Dexter Corp. | individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc. |
| Eaton Corporation | individually and as successor in interest to Cutler-Hammer, Inc. |
| GEORGIA PACIFIC, LLC | F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY |
| HONEYWELL INTERNATIONAL INC. | INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION |
| IMO Industries, Inc. | (Individually and as successor in interest to Delaval Steam Turbine, Inc.) |
| INGERSOLL-RAND COMPANY | individually and as successor in interest to The Aldrich Company |

COMPLAINT

| | |
|---|---|
| PARKER HANIFFIN CORPORATION | individually and as successor in interest to Sacoma Sierra Company |
| PNEUMO-ABEX, LLC | Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) |
| SOCO WEST, INC. | f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western Chemical Corporation |
| YORK INTERNATIONAL CORPORATION | individually and as successor in interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc., York-Luxaire, Inc., Luxaire, Inc., and The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Hearing & Air Conditioning; |

14.    Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein,

1    Defendants, their "Alternate Entities," and each of them negligently and carelessly
2    researched, tested or failed to test, manufactured, designed, developed, distributed,
3    labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified,
4    serviced, used, and sold a certain substance, the generic name of which is asbestos, and
5    other products containing said substance, in that said substance was capable of causing
6    and did, in fact, proximately cause personal injuries to users and consumers thereof while
7    being used in manner reasonably foreseeable, thereby rendering said substance unsafe
8    and dangerous for use by the consumer, users, or bystanders thereof, and others to whom
9    Defendants owe a duty, including Plaintiff DANIEL DEUYOUR.

10         15.    Plaintiff DANIEL DEUYOUR is a worker who, for a substantial length of time,
11   used, handled, and was otherwise exposed to Defendants' asbestos and asbestos
12   products, in a manner that was reasonably foreseeable, while he was working as described
13   in Paragraph 6 above.

14         16.    As a direct and proximate result of the above-referenced conduct of the
15   Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to
16   said asbestos caused severe and permanent injury to Plaintiff's lungs and body, including,
17   but not limited to the disease lung cancer.

18         17.    On or about May 16, 2011, Plaintiff DANIEL DEUYOUR was diagnosed with
19   the asbestos-related disease lung cancer. Prior to that date, Plaintiff, who retired for
20   reasons not related to his asbestos-related disease, did not know, nor did he have reason
21   to know, that he had contracted this disease related to his exposure to asbestos. Prior to
22   said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury
23   and/or disease to him, and had not been advised or informed by anyone that he could
24   contract, nor indeed did contract, any disease, sickness or injury as a result of working in
25   the vicinity of asbestos.

26         18.    Plaintiffs are informed and believe, and thereupon allege, that lung cancer is
27   a vicious, painful and often fatal malignancy of the lung, and that said disease results from
28   exposure to asbestos and asbestos products over a period of time.

-10-

COMPLAINT

1      19.   As a direct and proximate result of the aforesaid conduct of the Defendants,

2  their "Alternate Entities," and each of them Plaintiff DANIEL DEUYOUR has suffered, and

3  continues to suffer, severe and permanent injuries to his person, body and health,

4  including, but not limited to, the disease lung cancer, all to his general damage in a sum

5  within the jurisdictional limits of this court.

6      20.   As a direct and proximate result of the aforesaid conduct of the Defendants,

7  their "Alternate Entities," and each of them Plaintiffs were compelled to and did employ the

8  services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat

9  Plaintiff DANIEL DEUYOUR, and did incur medical, hospital and professional incidental

10  expenses, and Plaintiffs are informed and believe and thereupon allege that by reason of

11  said injuries, Plaintiff DANIEL DEUYOUR will necessarily incur additional like expenses for

12  an indefinite period of time in the future, and when said amounts are ascertained, Plaintiffs

13  will allege said amounts.

14      21.   At all times herein mentioned, Defendants, their "Alternate Entities," and each

15  of them were aware that the original gaskets and packing supplied with their equipment

16  would need to be removed and replaced with new gaskets and packing during ordinary

17  operation and maintenance of their equipment. Heat and pressure generated by operation

18  would affect the original and replacement gaskets and packing - e.g., making them brittle,

19  friable and not reusable, making replacement necessary and dangerous. It was

20  foreseeable that the process of removing old gaskets and packing, and replacing them with

21  the new materials during ordinary maintenance operations would cause the disturbance of

22  asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also

23  foreseeable that Defendant's equipment needed to be insulated with asbestos containing

24  thermal insulation materials and that the negligent design of Defendants' equipment

25  through its ordinary operation caused the degradation of asbestos containing thermal

26  insulation and the foreseeable removal of these insulation materials and application of new

27  insulation materials, which would cause the disturbance of asbestos and/or asbestos

28  containing materials, releasing asbestos into the air.

-11-

1      22.    On or before 1930, the Defendants, their "Alternate Entities," and each of

2 them, have known and have possessed the true facts of medical and scientific data and

3 other knowledge which clearly indicated that asbestos and asbestos-containing products

4 were and are hazardous to the health and safety of Plaintiff DANIEL DEUYOUR, and

5 others in Plaintiff's position working in close proximity with such materials. Specifically,

6 Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the

7 following information:

8      (a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on*

9      *the Lung* (London: H.M. Stationary Office) put manufacturers, designers,

10      distributors, marketers, sellers, suppliers, installers, inspectors, repairmen,

11      packagers, users, and advertisers of asbestos and asbestos containing products on

12      notice that exposure to asbestos dust can cause pulmonary fibrosis in exposed

13      individuals and discussed processes by which asbestos dust is generated and

14      methods for dust suppression. As such, at least as of 1930, Defendants, their

15      "Alternate Entities," and each of them, knew or had the duty to know that exposure

16      to asbestos dust could cause a debilitating potentially lethal disease, that there was

17      a dose-response relationship between the level of asbestos exposure and risk of

18      contracting disease, and that disease prevention requires the suppression or

19      elimination of asbestos containing dust. In 1933, E.R.A. Merewether's

20      *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed

21      Defendants, their "Alternate Entities," and each of them, that exposure to asbestos

22      containing dust for a period of less than 5 years can cause the lung disease

23      asbestosis, which can be deadly.

24      (b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J.

25      Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers,

26      suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of

27      asbestos and asbestos containing products on notice that exposure to asbestos

28      dust can cause lung cancer in exposed individuals, resulting in death. As such, at

-12-

1    least as of 1955, Defendants, their "Alternate Entities," and each of them, knew or

2    had the duty to know that exposure to asbestos dust could cause lung cancer, a

3    potentially lethal disease.

4    (c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural*

5    *Mesothelioma and Asbestos Exposure in the North Western Cape Province* (Br. J.

6    Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers,

7    suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of

8    asbestos and asbestos containing products on notice that exposure to asbestos

9    dust can cause lung cancer in exposed individuals, resulting in death.  The article

10   confirmed a causal association between asbestos exposure and mesothelioma, and

11   noted that even low-level, non-occupational exposures to asbestos can cause

12   mesothelioma.  As such, at least as of 1960, Defendants, their "Alternate Entities,"

13   and each of them, knew or had the duty to know that exposure to asbestos dust

14   could cause mesothelioma, a lethal form of cancer, in those directly exposed to

15   asbestos containing dust as well as those secondarily exposed in a residential

16   setting.

17       23.    With intent to deceive Plaintiff DANIEL DEUYOUR, and others in Plaintiff's

18   position, and with intent that he and such others should be and remain ignorant of such

19   facts with intent to induce Plaintiff and such others to alter his and their positions to his and

20   their injury and/or risk and in order to gain financial, business, and other advantages, the

21   following acts occurred:

22   (a) Defendants, their "Alternate Entities," and each of them, did not label any of the

23   aforementioned asbestos and asbestos containing materials and products with

24   information regarding the hazards of such materials and products to the health and

25   safety of Plaintiff and others in Plaintiff's position working in close proximity with

26   such materials until 1964, when certain of such materials were labeled by some, but

27   not all, of Defendants, their "Alternate Entities," and each of them, herein when the

28   knowledge of such hazards was existing and known to Defendants, their "Alternate

-13-

Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Plaintiff's employer and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Plaintiff that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity to such materials;

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants,

1   there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely

2   disseminated trade journal, to omit mention of danger, thereby lessening the

3   probability of notice of danger to users thereof;

4   (e) Defendants, their "Alternate Entities," and each of them, belonged to,

5   participated in, and financially supported the Asbestos Textile Institute and other

6   industry organizations which, for and on behalf of Defendants, their "Alternate

7   Entities," and each of them, actively promoted the suppression of information of

8   danger to users of the aforementioned products and materials, thereby misleading

9   Plaintiff by the suggestions and deceptions set forth above in this cause of action.

10   The Dust Control Committee, which changed its name to the Air Hygiene

11   Committee, of the Asbestos Textile Institute was specifically enlisted to study the

12   subject of dust control. Discussions in this committee were held many times

13   regarding the dangers inherent in asbestos and the dangers which arise from the

14   lack of control of dust, and such information was suppressed from public

15   dissemination from 1946 to a date unknown to Plaintiff at this time;

16   (f) Commencing in 1930 with the study of mine and mill workers at Asbestos and

17   Thetford mines in Quebec, Canada, and the study of workers at

18   Raybestos-Manhattan plants in Manheim and Charleston, South Carolina,

19   Defendants, their "Alternate Entities," and each of them, knew and possessed

20   medical and scientific information of the connection between inhalation of asbestos

21   fibers and asbestosis, which information was disseminated through the Asbestos

22   Textile Institute and other industry organizations to all other Defendants, their

23   "Alternate Entities," and each of them, herein. Between 1942 and 1950, the

24   Defendants, their "Alternate Entities," and each of them suggested to the public as a

25   fact that which is not true and disseminated other facts likely to mislead Plaintiff.

26   Such facts did mislead Plaintiff and others by withholding the afore-described

27   medical and scientific data and other knowledge and by not giving Plaintiff the true

28   facts concerning such knowledge of danger, which Defendants, their "Alternate

-15-

1    Entities," and each of them, were bound to disclose;

2    (g) Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff

3    and others of the nature of asbestos and asbestos containing materials which were

4    dangerous when breathed and which could cause pathological effects without

5    noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and

6    each of them, possessed knowledge and were under a duty to disclose that said

7    materials were dangerous and a threat to the health of persons coming into contact

8    therewith;

9    (h) Defendants, their "Alternate Entities," and each of them, failed to provide Plaintiff

10   with information concerning adequate protective masks and other equipment

11   devised to be used when applying and installing the products of the Defendants,

12   and each of them, despite knowing that such protective measures were necessary,

13   and that they were under a duty to disclose that such materials were dangerous and

14   would result in injury to the Plaintiff and others applying and installing such material;

15   (i) Defendants, their "Alternate Entities," and each of them, when under a duty to so

16   disclose, concealed from Plaintiff the true nature of the industrial exposure of

17   Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of

18   asbestos would, in time, develop irreversible conditions of pneumoconiosis,

19   asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them,

20   also concealed from Plaintiff and others that harmful materials to which they were

21   exposed would cause pathological effects without noticeable trauma;

22   (j) Defendants, their "Alternate Entities," and each of them, failed to provide

23   information of the true nature of the hazards of asbestos and asbestos containing

24   materials and that exposure to these materials would cause pathological effects

25   without noticeable trauma to the public, including buyers, users, and physicians

26   employed by Plaintiff and Plaintiff's employers so that said physicians could

27   examine, diagnose and treat Plaintiff and others who were exposed to asbestos,

28   despite the fact that Defendants, their "Alternate Entities," and each of them, were

1   under a duty to so inform and said failure was misleading; and

2   (k) Defendants, their "Alternate Entities," and each of them, failed to provide

3   adequate information to physicians and surgeons retained by Plaintiff's employers

4   and their predecessor companies, for purposes of making physical examinations of

5   Plaintiff and other employees as to the true nature of the risk of such materials and

6   exposure thereto when they in fact possessed such information and had a duty to

7   disclose it.

8   24.   On or before 1930, and thereafter, said Defendants, their "Alternate Entities,"

9   and each of them were aware that users of asbestos and asbestos containing products, as

10  well as members of the general public who would be exposed to asbestos and asbestos

11  products, had no knowledge or information indicating that asbestos could cause injury, and

12  said Defendants, their "Alternate Entities," and each of them, knew that the users of

13  asbestos and asbestos products, as well as members of the general public who were

14  exposed to asbestos and asbestos products, would assume, and in fact did assume, that

15  exposure to asbestos and asbestos products was safe, when in fact said exposure was

16  extremely hazardous to human life.

17  25.   With said knowledge, said Defendants, their "Alternate Entities," and each of

18  them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,

19  package, use, and advertise asbestos and asbestos containing products without

20  attempting to protect or warn users or bystanders about the high risk of injury or death

21  resulting from exposure to asbestos and asbestos products. Rather than attempting to

22  protect users and workers from, or warn workers and users of, the high risk of injury or

23  death resulting from exposure to asbestos and asbestos products, Defendants, their

24  "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said

25  risk, fraudulently, consciously and actively concealed and suppressed said knowledge from

26  members of the general public that asbestos and asbestos products were unsafe for all

27  reasonably foreseeable use, with the knowledge of the falsity of said implied

28  representations.

-17-

1     26.    Despite the above referenced historical knowledge of said Defendants, their

2    "Alternate Entities," and each of them, concerning the extreme hazards of asbestos,

3    Defendants negligently, carelessly, and with a willful and conscious disregard of the rights

4    and safety of others failed to adequately test, research, label, design, distribute, sell,

5    inspect, repair, use, modify or advertise their asbestos and asbestos containing products in

6    an effort to reduce or eliminate the potential that their products would cause deadly

7    diseases in users, bystanders, and other exposed individuals.

8     27.    The above referenced conduct of said Defendants, their "Alternate Entities,"

9    and each of them was motivated by the financial interest of said Defendants in the

10    continuing, uninterrupted distribution and marketing of asbestos and asbestos containing

11    products. In pursuance of said financial motivation, said Defendants consciously

12    disregarded the safety of the users of, and persons exposed to, asbestos and asbestos

13    containing products, and were in fact consciously willing to permit asbestos and asbestos

14    containing products to cause injury to workers and users thereof, and persons exposed

15    thereto, including Plaintiff DANIEL DEUYOUR.

16     28.    An officer, director, or managing agent of Defendants, their "Alternate

17    Entities," and each of them, with advance knowledge of the extreme health hazard posed

18    by asbestos and asbestos containing products, did, with conscious disregard for the rights

19    and safety of others, commit an act of oppression, fraud, or malice, or did authorize or

20    ratify such acts, including but not limited to Defendants' failure to adequately research, test,

21    or label their asbestos or asbestos-containing products and Defendants' attendant

22    willingness to continue to manufacture, design, distribute, market, sell, supply, instal,

23    inspect, repair, package, use, and advertise asbestos and asbestos containing products

24    then known by Defendants to be hazardous to human health.  As such, an officer, director,

25    or managing agent of Defendants, their "Alternate Entities," and each of them, authorized

26    or ratified Defendants' failure to take reasonable and necessary efforts to reduce or

27    eliminate the potential that the asbestos and asbestos containing products Defendants

28    manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,

1  repaired, packaged, used and advertised would cause deadly diseases, such as lung
2  cancer, in users, bystanders, and other exposed individuals.

3      29.   The above-referenced conduct of said Defendants, their "Alternate Entities,"
4  and each of them was and is willful, malicious, outrageous and/or in conscious disregard
5  and indifference to the rights and safety of users of said asbestos and asbestos containing
6  products, including Plaintiff DANIEL DEUYOUR. Defendants, their "Alternate Entities," and
7  each of them are guilty of oppression, fraud, or malice and engaged in conduct which was
8  intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried
9  on by the Defendants with a willful and conscious disregard of the rights and safety of
10 others. Defendants, their "Alternate Entities," and each of them subjected Plaintiffs to cruel
11 and unjust hardship in conscious disregard of their rights and engaged in intentional
12 misrepresentation, deceit, or concealment of a material fact known to the Defendants with
13 the intention on the part of the Defendants of thereby depriving Plaintiffs of property or
14 legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by
15 way of punishing Defendants, seek punitive damages, according to proof.

16

17                **SECOND CAUSE OF ACTION**
                       (Strict Liability)
18                     (As Against all Defendants)
19      30.   Plaintiffs hereby incorporate by reference, as though fully set forth herein,
20 each and every allegation contained in each of the paragraphs above.

21      31.   At all times mentioned herein, Defendants, their "Alternate Entities," and each
22 of them researched, manufactured, tested or failed to test, designed, labeled, distributed,
23 advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain
24 substance, the generic name of which is asbestos, and other products containing said
25 substance which Defendants knew were to be used without inspection for defects and
26 which substance contained design and manufacturing defects, in that same was capable of
27 causing and did, in fact, cause personal injuries to users, consumers, and bystanders while
28 being used in a reasonably foreseeable manner, thereby rendering such asbestos and
   asbestos containing products unsafe and dangerous for use by users, consumers, and

-19-

1 | bystanders.

2 |     32.    As a direct and proximate result of the above described conduct by

3 | Defendants, their "Alternate Entities," and each of them, Plaintiff DANIEL DEUYOUR

4 | suffered severe and permanent injuries to his person, as alleged hereinabove.

5 |     33.    At all times mentioned herein, the asbestos and products containing said

6 | substance discussed above failed to perform as safely as an ordinary consumer would

7 | expect when used in an intended or reasonably foreseeable manner, and the risk of

8 | danger inherent in asbestos and asbestos containing products outweighs the benefits of

9 | said substance and products.

10 |     34.    At all times mentioned herein, the foreseeable use of the asbestos and

11 | products containing said substance discussed above involved a substantial danger not

12 | readily recognizable to an ordinary user, consumer, or bystander, but which danger was

13 | known or knowable to Defendants, their "Alternate Entities," and each of them, and

14 | Defendants failed to adequately warn of the substantial danger.

15 |     35.    As a direct and proximate result of the above described conduct by

16 | Defendants, their "alternate entities," and each of them, Plaintiff DANIEL DEUYOUR

17 | suffered severe and permanent injuries to his person, as alleged hereinabove.

18 |     36.    An officer, director, or managing agent of Defendants, their "Alternate

19 | Entities," and each of them, with advance knowledge of the extreme health hazard posed

20 | by asbestos and asbestos containing products, did, with conscious disregard for the rights

21 | and safety of others, commit an act of oppression, fraud, or malice, or did authorize or

22 | ratify such acts, including but not limited to Defendants' failure to adequately research, test,

23 | or label their asbestos or asbestos-containing products and Defendants' attendant

24 | willingness to continue to manufacture, design, distribute, market, sell, supply, install,

25 | inspect, repair, package, use, and advertise asbestos and asbestos containing products

26 | then known by Defendants to be hazardous to human health. As such, an officer, director,

27 | or managing agent of Defendants, their "Alternate Entities," and each of them, authorized

28 | or ratified Defendants' failure to take reasonable and necessary efforts to address the

-20-

COMPLAINT

1 design and manufacturing defects in the asbestos and asbestos containing products that
2 Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed,
3 inspected, repaired, packaged, used and advertised.

4     37.     The above-referenced conduct of said Defendants, their "Alternate Entities,"
5 and each of them was and is willful, malicious, outrageous and/or in conscious disregard
6 and indifference to the rights and safety of users of said asbestos and asbestos containing
7 products, including Plaintiff DANIEL DEUYOUR. Defendants, their "Alternate Entities," and
8 each of them are guilty of oppression, fraud, or malice and engaged in conduct which was
9 intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried
10 on by the Defendants with a willful and conscious disregard of the rights and safety of
11 others. Defendants, their "Alternate Entities," and each of them subjected Plaintiffs to cruel
12 and unjust hardship in conscious disregard of their rights and engaged in intentional
13 misrepresentation, deceit, or concealment of a material fact known to the Defendants with
14 the intention on the part of the Defendants of thereby depriving Plaintiffs of property or
15 legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by
16 way of punishing Defendants, seek punitive damages, according to proof.

17

18                          **THIRD CAUSE OF ACTION**
                          (Premises Owner/Contractor Liability)
19                          (Against All Defendants and DOES 1-300)

20     38.     Plaintiffs hereby incorporate by reference, as though fully set forth herein,
21 each and every allegation contained in each of the above.

22     39.     At all times mentioned herein, the Premises Owner/Contractor Liability
23 Defendants, their "Alternate Entities," and each of them, owned, leased, maintained,
24 managed, and/or controlled the premises at which Plaintiff DANIEL DEUYOUR was
25 exposed to asbestos and asbestos containing products.

26     40.     Prior to and at said times and places, said Premises Owner/Contractor
27 Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and
28 asbestos containing products to be constructed, installed, maintained, used, supplied,

-21-

1   replaced, repaired and/or removed on their respective premises, by their own workers
2   and/or by employing various contractors, and caused the release of dangerous quantities
3   of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe
4   condition to Plaintiff DANIEL DEUYOUR and other persons exposed to said asbestos
5   fibers while present at said premises.

6        41.   At all times mentioned herein, said Premises Owner/Contractor Liability
7   Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary
8   and reasonable care should have known, that the foregoing conditions and activities
9   created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and
10  personal injury to Plaintiff DANIEL DEUYOUR and other workers or persons so exposed
11  present on each of the aforesaid respective premises.

12       42.   At all times relevant herein, Plaintiff DANIEL DEUYOUR entered said
13  premises and used or occupied each of said respective premises as intended and for each
14  of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In
15  so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers released into the
16  ambient air by the aforesaid hazardous conditions and activities managed, maintained,
17  initiated, and/or otherwise created, controlled, or caused by said Premises
18  Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them.

19       43.   Plaintiff DANIEL DEUYOUR at all times was unaware of the hazardous
20  condition or the risk of personal injury created by the aforesaid presence and use of
21  asbestos products and materials on said premises.

22       44.   At all times mentioned herein, said Premises Owner/Contractor Liability
23  Defendants, their "Alternate Entities," and each of them, remained in control of the
24  premises where Plaintiff DANIEL DEUYOUR was performing his work.

25       45.   At all times mentioned herein, the Premises Owner/Contractor Liability
26  Defendants, their "Alternate Entities," and each of them, owed to Plaintiffs and others
27  similarly situated a duty to exercise ordinary care in the management of such premises in
28  order to avoid exposing workers such as Plaintiff DANIEL DEUYOUR to an unreasonable

-22-

1  risk of harm and to avoid causing injury to said person.

2      46.   At all times mentioned herein, said Premises Owner/Contractor Liability

3  Defendants, their "Alternate Entities," and each of them, negligently failed to maintain,

4  manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff

5  of the existence of the aforesaid dangerous conditions and hazards on said premises.

6      47.   At all times mentioned herein, said Premises Owner/Contractor Liability

7  Defendants, their "Alternate Entities," and each of them, should have recognized that the

8  work of said contractors, identified above in Paragraph 40, would create during the

9  progress of the work, dangerous, hazardous, and unsafe conditions which could or would

10  harm Plaintiff DANIEL DEUYOUR and others unless special precautions were taken.

11      48.   In part, Plaintiff DANIEL DEUYOUR was exposed to dangerous quantities of

12  asbestos fibers by reason of such contractors' failure to take necessary precautions.

13      49.   The work of contractors on premises controlled by the Premises

14  Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

15  reason of the release of dangerous quantities of asbestos fibers.

16      50.   The unsafe premise or work place was created, in part, by the negligent

17  conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said

18  negligent conduct includes but is not limited to:

19          (a) Failure to warn about the hazards of asbestos dusts;

20          (b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust

21          into the premises;

22          (c) Failure to remove asbestos containing dust on the premises through the use of

23          ventilation or appropriate means;

24          (d) Failure to provide adequate breathing protection, i.e., approved respirators or

25          masks to those exposed to the release of asbestos dust;

26          (e) Failure to inspect and/or test the air for the presence of asbestos fibers;

27          (f) Failure to provide medical monitoring to those exposed to asbestos dust.

28      51.   The Premises Owner/Contractor Defendants' duty to maintain and provide

-23-

1  safe premises, a safe place to work, and to warn of dangerous conditions are

2  non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code

3  §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated

4  thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any

5  breach of said duties whether by themselves or others.

6      52.    Prior to and at said times and places, said Premises Owner/Contractor

7  Liability Defendants, their "Alternate Entities," and each of them were subject to certain

8  ordinances, statutes, and other government regulations promulgated by the United States

9  Government, the State of California, and others, including but not limited to the General

10  Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the

11  California Administrative Code under the Division of Industrial Safety, Department of

12  Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous

13  Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as

14  documented for asbestos and other toxic substances under Appendix A, Table 1 of said

15  Safety Orders; additionally, California Health & Safety Code §40200, et seq., which

16  empowers the California Air Quality Management Districts to promulgate regulations

17  covering emission standards for hazardous air pollutants. Such state and federal standards

18  required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"

19  and each of them, to provide specific safeguards or precautions to prevent or reduce the

20  inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants

21  failed to provide the required safeguards and precautions. Defendants' violations of said

22  codes include but are not limited to:

23      (a) Failing to comply with statutes and allowing ambient levels of airborne asbestos

24      fiber to exceed the permissible/allowable levels with regard to the aforementioned

25      statutes;

26      (b) Failing to segregate work involving the release of asbestos dusts;

27      (c) Failing to suppress asbestos dust using prescribed ventilation techniques;

28      (d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

1     (e) Failing to warn or educate Plaintiff DANIEL DEUYOUR or others regarding

2     asbestos on the premises;

3     (f) Failing to provide approved respiratory protection devices;

4     (g) Failing to ensure "approved" respiratory protection devices were used properly;

5     (h) Failing to provide for an on-going health and screening program for those

6     exposed to asbestos on the premises;

7     (i) Failing to provide adequate housekeeping and clean-up of the work place;

8     (j) Failing to properly warn of the hazards associated with asbestos as required by

9     statute;

10     (k) Failing to properly report renovation and disturbance of asbestos containing

11     materials;

12     (l) Failing to have an asbestos removal supervisor as required by regulation;

13     (m) Failing to get approval for renovation as required by statutes; and

14     (n) Failing to maintain records as required by statute.

15     53.    Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"

16 and each of them, were the "statutory employer" of Plaintiff DANIEL DEUYOUR as defined

17 by the California Labor Code and California case law.

18     54.    Plaintiff DANIEL DEUYOUR at all times was unaware of the hazardous

19 condition or the risk of personal injury created by Defendants' violation of said regulations,

20 ordinances, or statutes.

21     55.    At all times mentioned herein, Plaintiff DANIEL DEUYOUR was a member of

22 the class of persons whose safety was intended to be protected by the regulations,

23 statutes, or ordinances described in the foregoing paragraphs.

24     56.    At all times mentioned herein, said Premises Owner/Contractor Liability

25 Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of

26 ordinary and reasonable care should have known, that the premises that were in their

27 control would be used without knowledge of, or inspection for, defects or dangerous

28 conditions, that the persons present and using said premises would not be aware of the

1   aforesaid hazardous conditions to which they were exposed on the premises, and that

2   such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

3        57.    As a legal consequence of the foregoing, Plaintiff DANIEL DEUYOUR

4   developed the asbestos-related disease lung cancer, which has caused great injury and

5   disability as previously set forth, and Plaintiffs have suffered damages as herein alleged.

6        58.    An officer, director, or managing agent of Premises Owner/Contractor Liability

7   Defendants, their "Alternate Entities," and each of them, with advance knowledge of the

8   extreme health hazard posed by asbestos and asbestos containing products, did, with

9   conscious disregard for the rights and safety of others, commit an act of oppression, fraud,

10  or malice, or did authorize or ratify such acts, including but not limited to Defendants'

11  failure to provide workers with an adequately safe work environment and Defendants'

12  attendant willingness to continue to construct, instal, maintain, use, supply, replace, repair

13  and/or remove asbestos and asbestos containing products, thereby generating airborne

14  asbestos dust to which Plaintiff DANIEL DEUYOUR was exposed.  As such, an officer,

15  director, or managing agent of Premises Owner/Contractor Liability Defendants, their

16  "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take

17  reasonable and necessary efforts to ensure that workers such as Plaintiff DANIEL

18  DEUYOUR were not exposed to toxic asbestos dust on their premises.

19       59.    The above-referenced conduct of said Premises Owner/Contractor Liability

20  Defendants, their "Alternate Entities," and each of them, was and is willful, malicious,

21  outrageous and/or in conscious disregard and indifference to the rights and safety of users

22  of said asbestos and asbestos containing products, including Plaintiff DANIEL DEUYOUR.

23  Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of

24  them, are guilty of oppression, fraud, or malice and engaged in conduct which was

25  intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

26  on by the Defendants with a willful and conscious disregard of the rights and safety of

27  others. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and

28  each of them, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

-26-

1    their rights and engaged in intentional misrepresentation, deceit, or concealment of a

2    material fact known to the Defendants with the intention on the part of the Defendants of

3    thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs

4    therefore, for the sake of example and by way of punishing Defendants, seek punitive

5    damages, according to proof.

6        WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, in

7    an amount to be proven at trial in each individual case, as follows:

8        1. General damages, according to proof;

9        2. Damages for medical and related expenses, according to proof;

10        3. Damages for loss of earning capacity, according to proof;

11        4. Damages for loss of earnings, according to proof;

12        5. Damages for Plaintiffs' other economic losses, according to proof;

13        6. Exemplary or punitive damages, according to proof;

14        7. Prejudgment interest, according to proof;

15        8. Costs of suit incurred herein; and

16        9. Such other and further relief as this Court may deem just and proper, including

17    costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related

18    provisions of law.

19

20    DATED: May 16, 2012                    DEBLASE BROWN EYERLY LLP

21

22    By: _____
                    Michael Eyerly
23                  Attorneys for Plaintiffs

24

25

26

27

28

-27-