ADRMOP,E-Filing

# U.S. District Court
# California Northern District (San Francisco)
# CIVIL DOCKET FOR CASE #: 3:12-cv-03260-EDL

Salisbury v. Asbestos Corporation Limited et al       Date Filed: 06/22/2012
Assigned to: Magistrate Judge Elizabeth D. Laporte       Jury Demand: None
Demand: $0·                                            Nature of Suit: 368 P.I. : Asbestos
Cause: 28:1441 Petition for Removal- Asbestos Litigation   Jurisdiction: Federal Question

**Plaintiff**

**Jerry Salisbury**                    represented by   **David R. Donadio**
                                                        Brayton Purcell LLP
                                                        222 Rush Landing Road
                                                        P.O. Box 6169
                                                        Novato, CA 94948-6169
                                                        415-898-1555
                                                        Fax: 415-898-1247
                                                        Email: DDonadio@braytonlaw.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Asbestos Corporation Limited**

**Defendant**

**Huntington Ingalls Incorporated**       represented by   **Daniel James Kelly**
*formerly known as*                                        Tucker Ellis LLP
Northrop Grumman Shipbuilding, Inc.                        135 Main Street, Suite 700
                                                           San Francisco, CA 94105
                                                           415-617-2400
                                                           Fax: 415-617-2409
                                                           Email: daniel.kelly@tuckerellis.com
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/22/2012 | | CASE DESIGNATED for Electronic Filing. (tn, COURT STAFF) (Entered: 06/25/2012) |
| 06/22/2012 | 2 | ADR SCHEDULING ORDER: Joint Case Management Statement due 9/20/2012 & InitialCase Management Conference set for 9/27/2012 at 10:00 AM.. (tn, COURT |

| | | STAFF) (Filed on 6/22/2012) (Entered: 06/25/2012) |
|---|---|---|
| 06/22/2012 | | Answer to Complaint for Personal Injury-Asbestos Submitted by Huntington Ingalls Incorporated. (tn, COURT STAFF) (Filed 6/22/2012) (Entered: 06/25/2012) |
| 06/22/2012 | 1 | NOTICE OF REMOVAL - [No Process] from San Francisco County Superior Court. Their case number is CGC-12-276028. [Filing Fee: $350.00, Receipt Number 34611075550] Filed by Defendant Huntington Ingalls Incorporated. (Attachments: #(1) Civil Cover Sheet) (tn, COURT STAFF) (Filed on 6/22/2012) (Entered: 06/25/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 06/26/2012 12:55:57 | | | |
| PACER Login: | te0445 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 3:12-cv-03260-EDL |
| Billable Pages: | 2 | Cost: | 0.20 |

DAVID R. DONADIO, ESQ., S.B. #154436
BRAYTON✜PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169
(415) 898-1555

Attorneys for Plaintiff

**ASBESTOS**
**CASE MANAGEMENT CONFERENCE**

APR 1 8 2013 1:30 PM

DEPARTMENT   220

ENDORSED
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

2012 APR 25  AM 1: 10

CLERK OF THE COURT
BY:
ELIAS BLITZ
DEPUTY CLERK

*left margin:*
BRAYTON✜PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

JERRY SALISBURY,

       Plaintiff,

vs.

ASBESTOS CORPORATION LIMITED;
Defendants as Reflected on Exhibit 1
attached to the Summary Complaint
herein; and DOES 1-8500.

**ASBESTOS**
No. **CGC-12-276028**

COMPLAINT FOR PERSONAL INJURY -
ASBESTOS

1.    Plaintiff JERRY SALISBURY was born September 6, 1939.

2.    The ©**Brayton✜Purcell Master Complaint for Personal Injury [and Loss of Consortium]- Asbestos** (hereinafter "Master Complaint") was filed January 2, 2003, in San Francisco Superior Court.  A copy of the Master Complaint and General Order No. 55 may be obtained upon request from Brayton✜Purcell, and designated portions of the Master Complaint are incorporated by reference herein pursuant to the authority conferred by General Order No. 55. Plaintiff's claims are as set forth in said Master Complaint against defendants herein as follows:

///

///

///

K:\Injured\115527\PLD\cmp-pipMet.wpd

1

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

DEFENDANTS* ON EXHIBITS:

| Cause of Action | B | B-1 | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| First (Negligence) | ☒ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Second (Strict Liability) | ☒ | ☒ | | | | | ☐ | | | | ☐ | ☐ | | |
| Third (False Representation) — As to Defendants ASBESTOS CORPORATION LIMITED; FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION); OWENS-ILLINOIS, INC. only. | ☒ | ☒ | | | | | ☐ | | | | | | | |
| Fourth (Loss of Consortium) | | | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | |
| Fifth (Premises Owner/Contractor Liability) | ☐ | ☒ | ☒ | ☐ | | | | | | | | | | |
| Sixth, Seventh, Eighth (Unseaworthiness, Negligence [Jones Act], Maintenance and Cure) | | | | ☐ | | | | | | | | | | |
| Ninth (Longshore and Harbor Workers Compensation Act [LHWCA]) | | | | | ☐ | | | | | | | | | |
| Tenth, Eleventh (F.E.L.A.) | | | | | | ☐ | | | | | | | | |
| Twelfth, Thirteenth (Respiratory Safety Devices) | | | | | | | ☐ | | | | | | | |
| Fourteenth, Fifteenth (Brake Shoe Grinding) | | | | | | | ☐ | | | | | | | |
| Sixteenth (Concert of Action) | | | | | | | | ☒ | | | | | | |
| Seventeenth, Eighteenth (Fraud, Deceit/Negligent Misrepresentation/Concealment) | | | | | | | | | ☒ | | | | | |
| Nineteenth (Fraud/Deceit/ Intentional Misrepresentation) | | | | | | | | | | ☒ | | | | |
| Twentieth (Fraud/Deceit - Kent) | | | | | | | | | | | ☒ | | | |
| Twenty-First (Aiding/Abetting Battery - Met Life) | | | | | | | | | | | | | | ☒ |

*and their alternate entities as set forth in the Master Complaint or on any Exhibit.

3.     Plaintiff's asbestos-related injury, date of diagnosis, employment status, and history of exposure to asbestos are as stated on Exhibit A.

4.     Paragraph 8 of the Master Complaint is amended to add the following sentence: In part, and without limitation as to other defendants, defendants SUN SHIP, LLC; PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION); HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.); TRIPLE A MACHINE SHOP, INC., manufactured, modified, serviced and/or repaired asbestos-containing ships and vessels.

5.     Plaintiff hereby amends the Master Complaint on file herein, to incorporate a new Twenty-First Cause of Action, set forth below, specially plead against the defendant listed on Exhibit N, namely METROPOLITAN LIFE INSURANCE COMPANY.  (Plaintiffs are in the process of amending the Master Complaint herein and will include this new Cause of Action in said amendment.)

**"TWENTY-FIRST CAUSE OF ACTION**
Aiding and Abetting Battery
[Against Metropolitan Life Insurance Company
and Does 7501-7900, Inclusive]

AS AND FOR A FURTHER, TWENTY-FIRST, SEPARATE AND DISTINCT CAUSE OF ACTION FOR AIDING AND ABETTING BATTERY, PLAINTIFF COMPLAINS OF DEFENDANTS METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANTS ON EXHIBIT N, DOES 7501-7900, THEIR ALTERNATE ENTITIES AND EACH OF THEM, AND ALLEGES AS FOLLOWS:

225.     Plaintiff incorporates herein by reference, as though fully set forth hereat, each and every allegation of the First through Third and Sixteenth, Seventeenth, Eighteenth and Nineteenth Causes of Action as though fully set forth herein.  (As used throughout this cause of action, 'plaintiff' refers to all named plaintiffs and/or all named decedents from whom the named plaintiff's injuries may derive.)

226.  This cause of action is for the aiding and abetting of battery by METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), primarily through its assistant medical

1  director Anthony Lanza, M.D., of a breach of duty committed by Johns-Manville Corporation

2  ("J-M").

3      227.  Plaintiff is informed and believes, and thereon alleges, that at all times herein

4  mentioned defendant MET LIFE was and is a corporation organized and existing under and by

5  virtue of the laws of the State of New York or the laws of some other state or foreign

6  jurisdiction, and that this defendant was and is authorized to do and/or was and is doing

7  business in the State of California, and regularly conducted or conducts business in the County

8  of San Francisco, State of California.  At times relevant to this cause of action, MET LIFE was

9  an insurer of J-M.

10      228.  Plaintiff, was exposed to asbestos-containing dust created by the use of the

11  asbestos products manufactured, distributed and/or supplied by J-M. This exposure to the

12  asbestos or asbestos-related products supplied by J-M caused Plaintiff's asbestos-related disease

13  and injuries.

14      229.  Starting in 1928, MET LIFE sponsored studies of asbestos dust and asbestos-

15  related disease in Canadian mines and mills, including those of J-M.  Those studies revealed

16  that miners and mill workers were contracting asbestosis at relatively low levels of dust.

17  McGill University, which conducted the studies, sought permission from MET LIFE to publish

18  the results but they were never published.  MET LIFE prepared its own report of these studies.

19      230.  Between 1929 and 1931, MET LIFE studied dust levels and disease at five U.S.

20  plants manufacturing asbestos-containing products, including a J-M plant.  Those studies

21  showed that workers in substantial numbers were contracting asbestosis, at levels less than what

22  became the Threshold Limit Value ('TLV") of 5mppcf.  The MET LIFE report was never

23  published or disseminated except to plant owners, including J-M.

24      231.  In 1932, MET LIFE studied dust levels and disease at the J-M plant at Manville,

25  New Jersey.  Results were consistent with those of the Canadian and previous U.S. plant

26  studies.  They were never published.

27      232.  In 1934, J-M and others whose plants MET LIFE had studied agreed with MET

28  LIFE that it should issue a report of its studies.

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

233. MET LIFE submitted a draft of its report to J-M. J-M requested, for legal and business reasons, that certain critical parts of the draft be changed. MET LIFE's official in charge was Lanza. MET LIFE through Lanza did make changes that J-M requested, including:

    (a)    Deletion of MET LIFE's conclusion that the permissible dust level for asbestos should be less than that for silica;

    (b)    Addition of the phrase that asbestosis clinically appeared to be milder than silicosis.

The report, thus altered, was published in 1935. It was misleading, and intentionally so, because it conveyed the incorrect propositions that asbestosis was a less serious disease process than silicosis and that higher levels of asbestos dust could be tolerated without contracting diseases than was the case for silica dust.

234. MET LIFE had a close relationship with J-M. It invested money in J-M. It provided group health and life insurance to J-M. MET LIFE IN 1934 agreed to supply industrial hygiene services to J-M, including dust counts, training employees to monitor dust levels, examining employees, and recommending protective equipment. MET LIFE and Lanza were viewed as experts on industrial dusts.

235. In 1933, MET LIFE through Lanza issued the following advices to J-M:

    (a)    Disagreeing with the recommendation of a J-M plant physician, MET LIFE advised against warning workers of the fact that asbestos dust is hazardous to their health, basing its advice in view of the extraordinary legal situation;

    (b)    When the plant physician judged the best disposition of an employee with asbestosis was to remove him from the dust, MET LIFE advised instead that disposition should depend on his age, nature of work and other factors and to leave him alone if he is old and showing no disability, for, MET LIFE stated, economic and production factors must be balanced against medical factors.

236. J-M followed the MET LIFE advices and did not warn its workers, including plaintiff, of the hazards of asbestos dust, and J-M also intentionally refrained from notifying workers of their disease.

237. In 1936, MET LIFE, J-M and others founded the Air Hygiene Foundation ("AHF"). One of the AHF purposes was to develop standards for dust levels that would serve as a defense in lawsuits and workers' compensation claims.

238. MET LIFE funded partially another study that tentatively recommended in 1938 a TLV for asbestos dust of 5mpccf, the same as for silica dust. MET LIFE was aware of data from its own, unpublished reports that showed that level was too high for asbestos dust. MET LIFE nonetheless promoted that TLV as proper.

239. In June 1947, the Industrial Hygiene Foundation ("IHF") which succeeded to the AHF, issued a report of studies by Dr. Hemeon of U.S. asbestos plants, including a J-M plant. That report showed that workers exposed to less than the recommended maximum levels of dust were developing disease. MET LIFE was a member of the IHF and Lanza was on its medical committee. The Hemeon report, which was supplied to J-M and other owners, never was published.

240. In 1936, J-M and other asbestos companies agreed with a leading medical research facility, Saranac Laboratories, that Saranac would research asbestos disease, but J-M and the others retained control over publication of the results. In 1943 Saranac's Dr. Leroy Gardner, in charge of the research, sent a draft to J-M that revealed that 81.8% of mice exposed to long fiber asbestos contracted cancer.

241. Dr. Gardner died in 1946. J-M and other companies wanted parts of the Saranac results published and enlisted the assistance of MET LIFE's Lanza. J-M and other companies decided that Saranac's findings of cancer caused by asbestos in mice must be deleted, as well as Saranac's critique of existing dust standards. Lanza directed Saranac to delete the offending materials. Saranac did so, and the altered report was published in 1951 by Saranac's Dr. Vorwald, in the *AMA Archives of Industrial Hygiene.*

242. Lanza left MET LIFE at the end of 1948, and took a position at New York University, funded by MET LIFE. He continued to misrepresent that asbestos does not cause cancer into the 1950s.

///

243. The IHF (formerly AHF), of which MET LIFE was a member and MET LIFE official was on its medical committee, through Drs. Braun and Truan conducted a study of Canadian miners. The original report, in 1957, found an increased incidence of lung cancer in persons exposed to asbestos. The sponsors, including J-M, caused those findings to be stricken, and the report published in 1958 contained the false conclusion that asbestos exposure alone did not increase the risk of lung cancer.

244. The false and misleading reports that a link between asbestos exposure and cancer was not proven influenced the TLV, for if a substance causes cancer the TLV must be very low or zero.

245. J-M not later than 1933 was inflicting asbestos dust on its workers in its plants knowing that the dust was hazardous and was causing workers to contract disease that could and would disable and kill them. As MET LIFE advised, J-M did not warn its workers of the hazard. J-M committed battery on workers in its plants, including plaintiff, by that conduct.

246. MET LIFE knew that J-M's conduct constituted a breach of its duties to its workers. MET LIFE gave substantial assistance to J-M in committing batteries on its workers, including plaintiff, through MET LIFE's conduct described above, including by:

    (a)    Affirmatively urging J-M not to warn workers of the hazards of asbestos dust, in view of the extraordinary legal situation, such that J-M did not warn its workers, including plaintiff;

    (b)    Deleting the findings of its own draft report that the allowable limits for asbestos dust should be less than those for silica dust, and promoting a false and unsafe TLV which specified maximum levels of silica dust, and promoting a false and unsafe TLV which specified maximum levels of dust for workers, including plaintiff, which MET LIFE knew was wrong through its own studies;

    (c)    Advising J-M to keep certain workers continuing to work at dusty areas in the plant even after J-M was aware that their lungs showed asbestos-induced

///
///

7
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

1   changes, lest other workers including plaintiff be alerted to the dangers of

2   working in the dust.

3       WHEREFORE, plaintiff prays judgment as is hereinafter set forth."

4       6.    Plaintiff does not make a claim for either false representation or punitive

5   damages against any named defendant herein, except as against defendants ASBESTOS

6   CORPORATION LIMITED; FOSTER WHEELER LLC (FKA FOSTER WHEELER

7   CORPORATION); OWENS-ILLINOIS, INC.

8   Dated: 4/22/12                          BRAYTON✤PURCELL LLP

9

10                                  By: _____

11                                      David R. Donadio
                                        Attorneys for Plaintiff

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT 1

1

## **EXHIBIT 1 - LIST OF DEFENDANTS**

2

3  ASBESTOS CORPORATION LIMITED
   TRANE US, INC. FKA AMERICAN STANDARD, INC.
4  CROWN CORK & SEAL COMPANY, INC.
   THOMAS DEE ENGINEERING COMPANY
5  FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)
   GENERAL ELECTRIC COMPANY
6  METROPOLITAN LIFE INSURANCE COMPANY
   OWENS-ILLINOIS, INC.
7  PARKER-HANNIFIN CORPORATION
   CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)
8  YORK INTERNATIONAL CORPORATION
   CARRIER CORPORATION
9  COOPER INDUSTRIES, LLC (FKA COOPER INDUSTRIES, INC.)
   SUN SHIP, LLC
10 PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION)
   HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)
11 TRIPLE A MACHINE SHOP, INC.
   HOPEMAN BROTHERS, INC.
12 J.T. THORPE & SON, INC.
   and DOES 1-8500,
13

14      Defendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT A

EXHIBIT A

Plaintiff's exposure to asbestos and asbestos-containing products occurred at various locations both inside and outside the State of California, including but not limited to:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Navy | Naval Training Center/Naval Station Great Lakes, IL | Trainee | 6/24/1957-12/31/1957 |
| | UHLMAN (DD-687) | Machinist Mate (3rd Class) | 1/1958-8/2/1960 |
| | Naval Training Center San Diego, CA | Student | 9/30/1960-12/1960 |
| | HORNET (CVS-12) | Machinist Mate (3rd Class; 2nd Class; 1st Class) | 12/16/1960-9/19/1965 |
| | Hunters Point Naval Shipyard, San Francisco, CA | Machinist Mate | 1964-9/19/1965 |
| | Naval Training Center San Diego, CA | Instructor | 1/1966-10/1969 |
| | CORAL SEA (CVA-43) | Machinist Mate | 11/1969-7/1970 |
| | KITTY HAWK (CVA-63) | Machinist Mate (1st Class) | 7/1970-2/1973 |
| | HENRY W. TUCKER (DD-875) | Instructor | 2/1973-7/1973 |
| | Naval Training Center San Diego, CA | Instructor | 7/1973-2/1974 |
| | Naval Training Center Great Lakes, IL | Instructor | 2/1974-11/1976 |
| | RICHARD E. BYRD (DDG-23) | Machinist Mate (Senior Chief) | 11/1976-7/1978 |

///

EXHIBIT A

K:\Injured\115527\PLD\cmp-pipMet.wpd
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

EXHIBIT A (cont'd.)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| | Norfolk Naval Shipyard Portsmouth, VA | Inspector | 7/1978-5/30/1979 |
| Montgomery Ward Chicago, IL | Montgomery Ward Austin, MN | Appliance Repairman | 1979-1980 |

Plaintiff's exposure to asbestos and asbestos-containing products caused severe and permanent injury to the plaintiff, including, but not limited to breathing difficulties and/or other lung damage.  Plaintiff was diagnosed with asbestosis on or about December 2011 and with asbestos-related pleural disease on or about August 2011.

Plaintiff retired from his last place of employment at regular retirement age.  He has therefore suffered no disability from his asbestos-related disease as "disability" is defined in California Code of Civil Procedure § 340.2.

EXHIBIT A

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT B

EXHIBIT B

DEFENDANTS

ASBESTOS CORPORATION LIMITED
TRANE US, INC. FKA AMERICAN STANDARD, INC.
CROWN CORK & SEAL COMPANY, INC.
THOMAS DEE ENGINEERING COMPANY
FOSTER WHEELER LLC (FKA FOSTER WHEELER CORPORATION)
GENERAL ELECTRIC COMPANY
METROPOLITAN LIFE INSURANCE COMPANY
OWENS-ILLINOIS, INC.
PARKER-HANNIFIN CORPORATION
YORK INTERNATIONAL CORPORATION

CBS CORPORATION (FKA VIACOM INC., FKA WESTINGHOUSE ELECTRIC CORPORATION)
CARRIER CORPORATION
COOPER INDUSTRIES, LLC (FKA COOPER INDUSTRIES, INC.)
SUN SHIP, LLC
PUGET SOUND COMMERCE CENTER, INC. (FKA TODD SHIPYARDS CORPORATION)
HUNTINGTON INGALLS INCORPORATED (FKA NORTHROP GRUMMAN SHIPBUILDING, INC.)
TRIPLE A MACHINE SHOP, INC.
DOES 1-800

ALTERNATE ENTITY

| | |
|---|---|
| ASBESTOS CORPORATION LIMITED | GENERAL DYNAMICS CORPORATION |
| TRANE US, INC. FKA AMERICAN STANDARD, INC. | THE TRANE COMPANY<br>TRANE BOILER<br>U.S. RADIATOR<br>AMERICAN RADIATOR & STANDARD SANITARY CORP.<br>THE AMERICAN RADIATOR COMPANY<br>IDEAL BOILER<br>AMERICAN STANDARD BOILERS<br>KEWANEE BOILER CO., INC.<br>STANDARD MANUFACTURING CO.<br>WESTINGHOUSE AIR BRAKE CORPORATION<br>WABCO<br>MURRAY IRON WORKS CO.<br>MURRAY Division, The Trane Co. |
| CROWN CORK & SEAL COMPANY, INC. | MUNDET CORK COMPANY |
| THOMAS DEE ENGINEERING COMPANY | THOMAS DEE ENGINEERING CO., INC.<br>DEE ENGINEERING COMPANY |
| FOSTER WHEELER LLC | FOSTER WHEELER CORPORATION |
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY<br>HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED<br>TRUMBULL ELECTRIC MANUFACTURING COMPANY<br>G E INDUSTRIAL SYSTEMS<br>CURTIS TURBINES<br>PARSONS TURBINES<br>GENERAL ELECTRIC JET ENGINES<br>HOTPOINT, INC.<br>GENERAL ELECTRIC SUPPLY CORPORATION |

///

EXHIBIT B

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

EXHIBIT B (cont'd.)

ALTERNATE ENTITY

| | |
|---|---|
| PARKER-HANNIFIN CORPORATION | SACOMA-SIERRA, INC.<br>SACOMA MANUFACTURING COMPANY<br>E.I.S. AUTOMOTIVE CORPORATION<br>CONDREN CORPORATION, THE<br>PARKER SEAL COMPANY<br>DENISON HYDRAULICS INC.<br>GREER HYDRAULICS CORPORATION |
| CBS CORPORATION (F/K/A VIACOM<br>INC., F/K/A WESTINGHOUSE<br>ELECTRIC CORPORATION) | VIACOM, INC.<br>CBS CORPORATION<br>WESTINGHOUSE ELECTRIC CORPORATION<br>WESTINGHOUSE ELECTRIC AND<br>MANUFACTURING COMPANY<br>B.F. STURTEVANT<br>KPIX TELEVISION STATION<br>PARAMOUNT COMMUNICATIONS, INC<br>GULF & WESTERN INDUSTRIES, INC.<br>NORTH & JUDD MANUFACTURING COMPANY |
| YORK INTERNATIONAL<br>CORPORATION | YORK OPERATING COMPANY<br>YORK HOLDINGS<br>YORK HOLDING CORPORATION<br>CENTRAL ENVIRONMENTAL SYSTEMS<br>BORG-WARNER AIR CONDITIONING, INC.<br>BORG-WARNER CENTRAL ENVIRONMENTAL SYSTEMS<br>YORK DIVISION, BORG-WARNER<br>YORK AIR CONDITIONING DIVISION, BORG WARNER<br>YORK-LUXAIRE, INC.<br>YORK CORPORATION<br>LUXAIRE<br>YORK CORPORATION<br>YORK ICE MACHINERY<br>YORK MANUFACTURING<br>FRICK COMPANY<br>YORK ACQUISITION CORPORATION<br>LILCO, INC.<br>NATKIN SERVICE<br>YIC HOLDINGS CORPORATION<br>YORK HEATING AND AIR CONDITIONING<br>NORTHFIELD FREEZING SYSTEMS<br>UNITED MECHANICAL SERVICES, INC.<br>JOHNSON SUPPLY & EQUIPMENT CORPORATION<br>YORK INTERNATIONAL CORPORATION CES<br>(CENTRAL SYSTEMS)<br>YORK INTERNATIONAL SALES & SERVICE<br>APPLIED SYSTEMS<br>FRASER JOHNSTON |

///

///

EXHIBIT B

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

EXHIBIT B (cont'd.)

ALTERNATE ENTITY

CARRIER CORPORATION

UNITED TECHNOLOGIES HOLDING CORPORATION
DAY & NIGHT HEATING & AIR CONDITIONING
DAY & NIGHT MANUFACTURER COMPANY
PAYNE HEATING & AIR CONDITIONING
BRYANT HEATERS & BOILERS
STEWART BRYANT
CARRIER TRANSICOLD
ELLIOT COMPANY
CROCKER-WHEELER COMPANY
INTERNATIONAL COMFORT PRODUCTS CORPORATION
(USA)

COOPER INDUSTRIES, LLC
(FKA COOPER INDUSTRIES, INC.)

AMERICAN LAUNDRY MACHINERY, DIVISION OF
  MCGRAW EDISON CO.
ARROW-HART
COOPER INDUSTRIES, INC
CROUSE-HINDS COMPANY
DEMCO VALVES
DEMCO, INCORPORATED
HALO
MCGRAW-EDISON COMPANY

SUN SHIP, LLC

KEE LEASING COMPANY
SUN LEASING COMPANY
SUN SHIP, INC.
SUN TRANSPORT, INC.

PUGET SOUND COMMERCE CENTER,
INC.(FKA TODD SHIPYARDS
  CORPORATION)

VIGOR SHIPYARDS, INC. ( FKA TODD PACIFIC
  SHIPYARDS CORPORATION)
SEATTLE-TACOMA SHIPBUILDING CORP.
TODD SEATTLE DRY DOCKS, INC.

HUNTINGTON INGALLS
  INCORPORATED
  (FKA  NORTHROP
    GRUMMAN SHIPBUILDING, INC.)

AVONDALE INDUSTRIES, INC.
AVONDALE SHIPYARDS, INC.
CONTINENTAL MARITIME INDUSTRIES, INC.
EASTERN IDAHO CONSTRUCTION COMPANY
INGALLS SHIPBUILDING, INC.
NEWPORT NEWS SHIPBUILDING AND DRY DOCK
COMPANY
NORTH CAROLINA SHIPBUILDING
NORTHROP GRUMMAN SHIP SYSTEMS, INC.
SERVICE ENGINEERING INDUSTRIES, INC.

EXHIBIT B

K:\Injured\115527\PLD\cmp-pipMet.wpd
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

**EXHIBIT B-1**

1

<u>EXHIBIT B-1</u>

2 <u>DEFENDANTS</u>

3 HOPEMAN BROTHERS, INC.
THOMAS DEE ENGINEERING COMPANY
4 J.T. THORPE & SON, INC.

5

<u>ALTERNATE ENTITY</u>

6 J.T. THORPE & SON, INC.

THE THORPE COMPANY
THORPE PRODUCTS CO.
7 J.T. THORPE NORTHWEST

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT B-1

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT C

EXHIBIT C

DEFENDANTS

HOPEMAN BROTHERS, INC.
THOMAS DEE ENGINEERING COMPANY
J.T. THORPE & SON, INC.
DOES 1001-2000

| CONTRACTOR DEFENDANTS | LOCATION | TIME PERIOD |
|---|---|---|
| HOPEMAN BROTHERS, INC. | Various | Various |
| THOMAS DEE ENGINEERING COMPANY | Various | Various |
| J.T. THORPE & SON, INC. | Various | Various |

EXHIBIT C

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

# EXHIBIT H

1

<u>EXHIBIT H</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
PARKER-HANNIFIN CORPORATION

4

OWENS-ILLINOIS, INC.
DOES 5000-8000

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT H

23

COMPLAINT FOR PERSONAL INJURY - ASBESTOS

**EXHIBIT I**

1

EXHIBIT I

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
OWENS-ILLINOIS, INC.

4

DOES 5000-7500

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT I

# EXHIBIT J

1

EXHIBIT J

2    DEFENDANTS

3    METROPOLITAN LIFE INSURANCE COMPANY
     DOES 7400-7500
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                                        EXHIBIT J

K:\Injured\115527\PLD\cmp-pipMet.wpd           27
COMPLAINT FOR PERSONAL INJURY - ASBESTOS

**EXHIBIT N**

1

<u>EXHIBIT N</u>

2

<u>DEFENDANTS</u>

3

METROPOLITAN LIFE INSURANCE COMPANY
DOES 7501-7900

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>EXHIBIT N</u>

COMPLAINT FOR PERSONAL INJURY - ASBESTOS