ADRMOP

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:12-cv-03506-KAW

Sanders et al v. 3M Company et al                    Date Filed: 07/05/2012
Assigned to: Magistrate Judge Kandis A. Westmore     Jury Demand: None
Case in other court: San Francisco Superior Court,   Nature of Suit: 368 P.I. : Asbestos
                CGC-12-276053       Jurisdiction: Federal Question
Cause: 28:1441 Petition for Removal- Product
Liability

**Plaintiff**

**Lanny Sanders**                    represented by    **Tiffany Newlin Dickenson**
                                                       Baron and Budd P.C.
                                                       3102 Oak Lawn Ave
                                                       Suite 1100
                                                       Dallas, TX 75219
                                                       214-521-3605
                                                       Email:
                                                       tdickenson@baronbudd.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Alana Kalantzakis**
                                                       Baron & Budd, P.C.
                                                       3102 Oak Lawn Avenue, Suite
                                                       1100
                                                       Dallas, TX 72519
                                                       (214) 521-3605
                                                       Fax: (214) 520-1181
                                                       *ATTORNEY TO BE NOTICED*

                                                       **Christine Tamer**
                                                       Baron & Budd, P.C.
                                                       3102 Oak Law Avenue, Suite
                                                       1100
                                                       Dallas, TX 72519
                                                       (214) 521-3605
                                                       Fax: (214) 520-1181
                                                       *ATTORNEY TO BE NOTICED*

**Denyse Clancy**
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
(214) 521-3605
Fax: (214) 520-1181
*ATTORNEY TO BE NOTICED*

**John Langdoc**
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite
1100
Dallas, TX 72519
(214) 521-3605
Fax: (214) 520-1181
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Sandra Jensen Sanders**          represented by    **Tiffany Newlin Dickenson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alana Kalantzakis**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Christine Tamer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Denyse Clancy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Langdoc**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**3M Company**
*formerly known as*
Minnesota Mining And
Manufacturing Company
*also known as*
3M

**Defendant**

| | |
|---|---|
| **National Steel and Shipbuilding Company**<br>*also known as*<br>Nassco | represented by **Edward R. Hugo**<br>Brydon Hugo & Parker<br>135 Main Street, 20th Floor<br>San Francisco, CA 94105<br>(415) 808-0300<br>Fax: (415) 808-0333<br>Email: ehugo@bhplaw.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br><br>**Paul M. Bessette**<br>Brydon Hugo & Parker<br>135 Main Street<br>20th Floor<br>San Francisco, CA 94105<br>415-808-0300<br>Fax: 415-808-0333<br>*ATTORNEY TO BE NOTICED*<br><br>**Thomas J. Moses**<br>Brydon Hugo & Parker<br>135 Main Street, 20th Floor<br>San Francisco, CA 94105<br>(415) 808-0300<br>Fax: (415) 808-0333<br>Email: tmoses@bhplaw.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

**Advanced Composites Group, Inc.**
*a division of Umeco Structural Materials, Inc.*

**Defendant**

**Allison Engine Company, Inc.**

**Defendant**

**APV Engineered Coatings**
*formerly known as*
Akron Paint & Varnish, Inc.

**Defendant**

**Armstrong International, Inc.**

**Defendant**

**B.R. Funsten & Co.**

**Defendant**

**BASF Corporation**
*individually and as Successor in*
*interest to CIBA Specialty*
*Chemicals*
*Successor*
Reliable Manufacturing Company

**Defendant**

**Bechtel Corporation**
*Successor*
Sequoia Ventures, Inc.

**Defendant**

**Boeing American, Inc.**
*Successor*
North American Rockwell
*Successor*
North American Aviation

**Defendant**

**Bon L. Manufacturing**
**Company**
*Successor*
Capitol Products Corporation
*Successor*
Davis Engineering Corporation

**Defendant**

**Borgwarner Morse Tec, Inc.**
*Successor*
Borg-Warner Corporation

**Defendant**

**Borgwarner, Inc.**
*Successor*
Borg-Warner Corporation

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom, Inc.
*Successor*
CBS Corporation
*Successor*
Westinghouse Electric
Corporation

**Defendant**

**Cessna Aircraft Company**
*A Textron Company*
*Successor*
McCauley Propeller Company

**Defendant**

**Cirrus Enterprises, L.L.C.**
*Successor*
E.V. Roberts and Associates, Inc.
*Successor*
Evra, Inc.

**Defendant**

**Cleveland Wheels and Brakes
and Aircraft Wheel and Brake**
*a Division of Parker Hannifin
Corporation*

**Defendant**

**Continental Motors, Inc.**

**Defendant**

**Crane Co.**

*A Division of Crane Co.*
*Successor*
Hydro-Aire Inc.
*Successor*
Adel Precision Products
Corporation
*doing business as*
Crane Resistoflex, Co.

**Defendant**

**Crown Cork & Seal Company,
Inc.**
*Successor*
Mundet Cork Company

| Date Filed | # | Docket Text |
|---|---|---|
| 07/05/2012 | 1 | NOTICE OF REMOVAL (no process) from San Francisco Superior Court. Their case number is CGC-12-276053. (Filing fee $350 receipt number 34611076049). Filed byNational Steel and Shipbuilding Company. (Attachments: # 1 Civil Cover Sheet)(cjl, COURT STAFF) (Filed on 7/5/2012) (Entered: 07/10/2012) |
| 07/05/2012 | 2 | NOTICE of Tag-Along Action by National Steel and Shipbuilding Company. (cjl, COURT STAFF) (Filed on 7/5/2012) (Entered: 07/10/2012) |
| 07/05/2012 | 3 | Certificate of Interested Entities by National Steel and Shipbuilding Company identifying Corporate Parent NAASCO Holdings Incorporated, Corporate Parent General Dynamics Corporation for National Steel and Shipbuilding Company. (cjl, COURT STAFF) (Filed on 7/5/2012) (Entered: 07/10/2012) |
| 07/05/2012 | 4 | ADR SCHEDULING ORDER: Case Management Statement due by 10/2/2012. Case Management Conference set for 10/9/2012 01:30 PM in Courtroom 4, 3rd Floor, Oakland. (Attachments: # 1 Standing Order)(cjl, COURT STAFF) (Filed on 7/5/2012) (Entered: 07/10/2012) |
| 07/10/2012 | 5 | CONSENT/DECLINATION to Proceed Before a US Magistrate Judge by National Steel and Shipbuilding Company.. (Moses, Thomas) (Filed on 7/10/2012) (Entered: 07/10/2012) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 07/10/2012 14:53:27 | | | |
| **PACER Login:** | bh1524 | **Client Code:** | 4385-0282 |
| **Description:** | Docket Report | **Search Criteria:** | 4:12-cv-03506-KAW |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
**(SOLO PARA USO DE LA CORTE)**

6/4/12

2:45

**NOTICE TO DEFENDANT:**
**(AVISO AL DEMANDADO):**

3M Company (Individually and f/k/a Minnesota, Mining and Manufacturing Company a/k/a "3 M")(additional parties attachment is attached )

**YOU ARE BEING SUED BY PLAINTIFF:**
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

Lanny Sanders and Sandra Jensen Sanders

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| (El nombre y dirección de la corte es:)  Civic Center | (Número del Caso:) |
| 400 McAllister Street | CGC 12 -276053 |
| San Francisco, CA 94102 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Tiffany Dickenson, Baron & Budd, P.C., 3102 Oak Lawn Avenue, Suite 1100, Dallas, Texas 75219

| DATE: May 31, 2012 | CLERK OF THE COURT | Clerk, by | DENNIS TOYAMA | , Deputy |
|---|---|---|---|---|
| (Fecha) | | (Secretario) | | (Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☒ on behalf of (specify): National Steel and Shipbuilding Company, (A/K/A Nassco)

   under: ☒ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other (specify):
4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Page 1 of 1

John Langdoc, Esq. (SBN 235509)
Denyse Clancy, Esq. (SBN 255276)
Tiffany Dickenson, Esq. (SBN 264364)
Alana Kalantzakis, Esq. (SBN 277154)
Christine Tamer, Esq. (SBN 281812)
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 72519
Telephone: 214/521-3605; 800/222-2766
Facsimile: 214/520-1181

ATTORNEYS FOR PLAINTIFFS

ENDORSED FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

MAY 3 1 2012

CLERK OF THE COURT
BY: _____ DENNIS TOYAMA
Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| LANNY SANDERS and SANDRA JENSEN SANDERS, <br><br> Plaintiff, <br><br> vs. <br><br> 3M COMPANY (INDIVIDUALLY AND F/K/A MINNESOTA, MINING AND MANUFACTURING COMPANY A/K/A "3M"); **ADVANCED COMPOSITES GROUP, INC.,** A DIVISION OF UMECO STRUCTURAL MATERIALS, INC.; **ALLISON ENGINE COMPANY, INC.; APV ENGINEERED COATINGS,** (F/K/A AKRON PAINT & VARNISH, INC.); **ARMSTRONG INTERNATIONAL, INC.; B.R. FUNSTEN & CO.; BASF CORPORATION** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CIBA SPECIALTY CHEMICALS, AS SUCCESSOR IN INTEREST TO RELIABLE MANUFACTURING COMPANY;) **BECHTEL CORPORATION** (INDIVIDUALLY AND AS SUCCESSOR TO SEQUOIA VENTURES, INC.); **BOEING AMERICAN, INC.,** | CASE NO. CGC 12 -276053 <br><br> **COMPLAINT FOR PERSONAL INJURIES** <br><br> [ASBESTOS GENERAL ORDERS IN FILE NO. 828684] <br><br> **BY FAX** <br><br> **THIS CASE IS SUBJECT TO MANDATORY ELECTRONIC FILING PURSUANT TO AMENDED G.O. 158** |

-1-

COMPLAINT FOR PERSONAL INJURIES

| | | |
|---|---|---|
| 1 | (INDIVIDUALLY AND AS SUCCESSOR | ) |
| | IN INTEREST TO NORTH AMERICAN | ) |
| 2 | ROCKWELL AS SUCCESSOR IN | ) |
| | INTEREST TO NORTH AMERICAN | ) |
| 3 | AVIATION); | ) |
| 4 | **BON L. MANUFACTURING COMPANY,** | ) |
| | (INDIVIDUALLY AND AS SUCCESSOR | ) |
| 5 | BY MERGER TO CAPITOL PRODUCTS | ) |
| | CORPORATION | ) |
| 6 | SUCCESSOR-IN-INTEREST TO DAVIS | ) |
| 7 | ENGINEERING CORPORATION); | ) |
| | **BORGWARNER MORSE TEC, INC.,** | ) |
| 8 | (INDIVIDUALLY AND AS | ) |
| | SUCCESSOR-IN-INTEREST TO | ) |
| 9 | BORG-WARNER CORPORATION); | ) |
| | **BORGWARNER, INC.,** (INDIVIDUALLY | ) |
| 10 | AND AS SUCCESSOR-IN-INTEREST TO | ) |
| 11 | BORG-WARNER CORPORATION); | ) |
| | **CBS CORPORATION,** (F/K/A VIACOM, | ) |
| 12 | INC. SUCCESSOR-BY-MERGER TO CBS | ) |
| | CORPORATION, | ) |
| 13 | SUCCESSOR-BY-MERGER TO | ) |
| | WESTINGHOUSE ELECTRIC | ) |
| 14 | CORPORATION); | ) |
| 15 | **CESSNA AIRCRAFT COMPANY** (A | ) |
| | TEXTRON COMPANY); | ) |
| 16 | **CESSNA AIRCRAFT COMPANY,** (A | ) |
| | TEXTRON COMPANY, INDIVIDUALLY | ) |
| 17 | AND AS SUCCESSOR IN INTEREST TO | ) |
| | MCCAULEY PROPELLER COMPANY); | ) |
| 18 | **CIRRUS ENTERPRISES, L.L.C.** | ) |
| 19 | (INDIVIDUALLY AND AS | ) |
| | SUCCESSOR-IN-INTEREST TO E.V. | ) |
| 20 | ROBERTS AND ASSOCIATES, INC., AND | ) |
| | EVRA, INC.); | ) |
| 21 | **CLEVELAND WHEELS AND BRAKES** | ) |
| 22 | **AND AIRCRAFT WHEEL AND BRAKE,** | ) |
| | A DIVISION OF PARKER HANNIFIN | ) |
| 23 | CORPORATION; | ) |
| | **CONTINENTAL MOTORS, INC.;** | ) |
| 24 | **CRANE CO.,** (INDIVIDUALLY AND AS | ) |
| | SUCCESSOR-IN-INTEREST TO | ) |
| 25 | HYDRO-AIRE INC., AND ADEL | ) |
| | PRECISION PRODUCTS | ) |
| 26 | CORPORATION); | ) |
| 27 | **CRANE CO.,** (D/B/A CRANE | ) |
| | RESISTOFLEX CO., A DIVISION OF | ) |
| 28 | | |

-2-

COMPLAINT FOR PERSONAL INJURIES

CRANE CO.);
**CROWN CORK & SEAL COMPANY, INC.** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MUNDET CORK COMPANY);
**CUMMINS, INC.** (F/K/A CUMMINS ENGINEER COMPANY, INC.);
**CURTISS-WRIGHT CORPORATION;**
**CURTISS-WRIGHT FLOW CONTROL CORPORATION;**
**CYTEC INDUSTRIES, INC.,** (INDIVIDUALLY AND SUCCESSOR IN INTEREST TO AMERICAN CYANAMID COMPANY);
**DANA COMPANIES, LLC,** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO VICTOR MANUFACTURING & GASKET CO.);
**DEXTER HYSOL AEROSPACE, LLC,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO DEXTER HYSOL AEROSPACE, INC.);
**DOUGLASS INSULATION COMPANY, INC.;**
**EATON AEROQUIP, INC.;**
**EATON AEROQUIP, LLC;**
**EATON CORPORATION,** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO EATON ELECTRICAL, INC., AND AS SUCCESSOR IN INTEREST TO CUTLER-HAMMER, INC.);
**EATON ELECTRICAL, INC.,** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CUTLER-HAMMER, INC. AND F/K/A CUTLER-HAMMER, INC.);
**ESSEX CHEMICAL CORPORATION,** (INDIVIDUALLY AND AS A SUBSIDIARY OF DOW CHEMICAL COMPANY);
**ETHYL CORPORATION,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CAPITOL PRODUCTS CORPORATION SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION);
**FRASER'S BOILER SERVICE, INC.;**

-3-

COMPLAINT FOR PERSONAL INJURIES

| | |
|---|---|
| 1 | **FRYER KNOWLES, INC., A** ) |
| | **CALIFORNIA CORPORATION;** ) |
| 2 | **GENERAL ELECTRIC COMPANY;** ) |
| | **GOODRICH CORPORATION (F/K/A** ) |
| 3 | **THE B.F. GOODRICH COMPANY);** ) |
| 4 | **HARCO LABORATORIES, INC.;** ) |
| | **HAWKER BEECHCRAFT** ) |
| 5 | **CORPORATION;** ) |
| | **HENKEL CORPORATION,** ) |
| 6 | **(INDIVIDUALLY AND AS** ) |
| 7 | **SUCCESSOR-IN-INTEREST TO DEXTER** ) |
| | **HYSOL AEROSPACE, INC.);** ) |
| 8 | **HONEYWELL INTERNATIONAL, INC.** ) |
| | **(INDIVIDUALLY AND AS** ) |
| 9 | **SUCCESSOR-IN-INTEREST TO** ) |
| | **ALLIED-SIGNAL, INC. AND THE** ) |
| 10 | **BENDIX CORPORATION);** ) |
| 11 | **HOPEMAN BROTHERS, INC.;** ) |
| | **IMO INDUSTRIES, INC.** ) |
| 12 | **(INDIVIDUALLY AND AS** ) |
| | **SUCCESSOR-IN-INTEREST TO ADEL** ) |
| 13 | **PRECISION PRODUCTS, INC.);** ) |
| 14 | **INTERNATIONAL PAPER COMPANY,** ) |
| | **(INDIVIDUALLY AND AS** ) |
| 15 | **SUCCESSOR-IN-INTEREST TO LONG** ) |
| | **BELL PAPER CO.);** ) |
| 16 | **J.T. THORPE & SON, INC.;** ) |
| | **LEHIGH GASKET COMPANY;** ) |
| 17 | **LOCKHEED MARTIN CORPORATION;** ) |
| 18 | **LYCOMING ENGINES;** ) |
| | **M. SLAYEN & ASSOCIATES, INC.;** ) |
| 19 | **MCDONNELL DOUGLAS** ) |
| | **CORPORATION;** ) |
| 20 | **MECHANICAL DRIVES & BELTING** ) |
| | **(F/K/A L.A. RUBBER COMPANY);** ) |
| 21 | **METALCLAD INSULATION** ) |
| 22 | **CORPORATION;** ) |
| | **NATIONAL SERVICES INDUSTRIES,** ) |
| 23 | **INC.;** ) |
| | **NATIONAL STEEL AND** ) |
| 24 | **SHIPBUILDING COMPANY, (A/K/A** ) |
| | **NASSCO);** ) |
| 25 | **NORTHROP GRUMMAN WORLDWIDE** ) |
| 26 | **CORP.;** ) |
| | **NOVARTIS CORPORATION,** ) |
| 27 | **(INDIVIDUALLY AND AS SUCCESSOR** ) |
| | **IN INTEREST TO CIBA-GEIGY** ) |
| 28 | |

-4-

COMPLAINT FOR PERSONAL INJURIES

CORPORATION, AS SUCCESSOR IN )
INTEREST TO RELIABLE )
MANUFACTURING COMPANY); )
**PARKER-HANNIFIN CORPORATION** )
(INDIVIDUALLY AND AS SUCCESSOR )
IN INTEREST TO RESISTOFLEX); )
**PFIZER, INC.;** )
**PIPER AIRCRAFT, INC.;** )
**PLANT INSULATION COMPANY,** )
(FORMERLY ASBESTOS COMPANY OF )
CA); )
**PNEUMO ABEX, L.L.C.,** )
(INDIVIDUALLY AND AS SUCCESSOR )
BY MERGER TO PNEUMO ABEX )
CORPORATION, )
SUCCESSOR-IN-INTEREST TO ABEX )
CORPORATION F/K/A AMERICAN )
BRAKE SHOE COMPANY, F/K/A )
AMERICAN BRAKE SHOE AND )
FOUNDRY COMPANY INCLUDING THE )
AMERICAN BRAKEBLOK DIVISION, )
SUCCESSOR-BY-MERGER TO THE )
AMERICAN BRAKE SHOE AND )
FOUNDRY COMPANY AND THE )
AMERICAN BRAKEBLOK )
CORPORATION F/K/A THE AMERICAN )
BRAKE MATERIALS CORPORATION); )
**PRATT & WHITNEY POWER** )
**SYSTEMS, INC.;** )
**PRATT & WHITNEY ROCKETDYNE,** )
**INC.;** )
**PRC-DESOTO INTERNATIONAL, INC.,** )
(FORMERLY COURTAULDS )
AEROSPACE, INC., INDIVIDUALLY AND )
AS SUCCESSOR IN INTEREST TO )
PRODUCTS RESEARCH & CHEMICAL )
CORPORATION); )
**QUINTEC INDUSTRIES, INC.,** )
(INDIVIDUALLY AND )
SUCCESSOR-BY-MERGER TO WESTERN )
FIBROUS GLASS PRODUCTS COMPANY )
F/K/A WESTERN FIBERGLAS )
COMPANY); )
**ROCKWELL AUTOMATION, INC.,** )
(INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST TO )
ALLEN-BRADLEY COMPANY )

-5-

INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST TO )
ROSTONE CORPORATION); )
**ROCKWELL INTERNATIONAL, INC.;** )
**ROLLS ROYCE CORPORATION** (D/B/A )
ALLISON ENGINE COMPANY )
CORPORATION SERVICE COMPANY) )
**ROLLS-ROYCE NORTH AMERICA** )
**INC.;** )
**S B DECKING, INC.;** )
**SAN FRANCISCO GRAVEL COMPANY;** )
**SCHNEIDER ELECTRIC USA, INC.,** )
(F/K/A SQUARE D COMPANY); )
**SHELL CHEMICAL, L.P.;** )
**SMITH TUBULAR** )
**SYSTEMS-LACONIA, INC.,** )
(INDIVIDUALLY AND AS SUCCESSOR )
TO TITEFLEX CORPORATION, AND )
TITEFLEX, INC.); )
**SMOOTH-ON, INC.;** )
**SOCO WEST, INC.** (F/K/A BRENNTAG )
WEST, INC., F/K/A SOCO-LYNCH )
CORPORATION, F/K/A SOCO-WESTERN )
CHEMICAL CORPORATION, F/K/A )
STINNES-WESTERN CHEMICAL )
CORPORATION); )
**SOUTH BAY BOILER REPAIR, INC.;** )
**SYD CARPENTER MARINE** )
**CONTRACTOR, INC.;** )
**TDY INDUSTRIES, INC.,** )
(INDIVIDUALLY AND AS )
SUCCESSOR-IN-INTEREST TO )
TELEDYNE TECHNOLOGIES INC.); )
**THE BOEING COMPANY;** )
**THE BOEING COMPANY** (D/B/A )
BOEING INTEGRATED DEFENSE )
SYSTEMS, AS )
SUCCESSOR-IN-INTEREST TO )
ROCKWELL INTERNATIONAL); )
**THE DOW CHEMICAL COMPANY;** )
**THE GOODYEAR TIRE & RUBBER** )
**COMPANY;** )
**THOMAS DEE ENGINEERING CO.;** )
**THORPE INSULATION COMPANY;** )
**TITEFLEX CORPORATION;** )
**TREDEGAR CORPORATION,** )
(INDIVIDUALLY AND AS )

-6-

| | |
|---|---|
| 1 | SUCCESSOR-IN-INTEREST TO CAPITOL ) |
| | PRODUCTS CORPORATION ) |
| 2 | SUCCESSOR-IN-INTEREST TO DAVIS ) |
| | ENGINEERING CORPORATION); ) |
| 3 | **TRIUMPH** ) |
| | **AEROSTRUCTURES-VOUGHT** ) |
| 4 | **AIRCRAFT DIVISION**, (A DIVISION OF ) |
| | TRIUMPH GROUP, INC. AND TRIUMPH ) |
| 5 | GROUP, INC., INDIVIDUALLY AND AS ) |
| | SUCCESSOR IN INTEREST TO VOUGHT ) |
| 6 | AIRCRAFT INDUSTRIES, INC.); ) |
| 7 | **UNION CARBIDE CORPORATION**; ) |
| | **UNITED TECHNOLOGIES** ) |
| 8 | **CORPORATION** (INDIVIDUALLY AND ) |
| | AS SUCCESSOR-IN-INTEREST TO ) |
| 9 | PRATT & WHITNEY); ) |
| | **URS CORPORATION**, (INDIVIDUALLY ) |
| 10 | AND AS SUCCESSOR IN INTEREST TO ) |
| 11 | JOHN A. BLUME AND ASSOCIATES), and ) |
| | DOES 1-300 ) |
| 12 | ) |
| 13 | Defendants. ) |
| 14 | ) |

COME NOW, Plaintiffs LANNY SANDERS and SANDRA JENSEN SANDERS (collectively referred to herein as "Plaintiffs") and for causes of action against all named Defendants herein, and complain and allege as follows:

### I.

### GENERAL ALLEGATIONS

1.     The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and when the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly.   Plaintiffs are informed and believe, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable

-7-

COMPLAINT FOR PERSONAL INJURIES

manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged, either through said Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, lease or sale of the instrumentality causing the injury, or in some other manner.

2.      Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendants and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants and were, as such, acting within the scope, course, and authority of said agency, employment and/or joint venture, in that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring or each and every other Defendant as the agent, servant, employee and/or joint venturer.

3.      Plaintiff LANNY SANDERS resided in California during a substantial period of his asbestos exposure upon which Plaintiffs' claims are based.

4.      Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants 3M COMPANY (INDIVIDUALLY AND F/K/A MINNESOTA, MINING AND MANUFACTURING COMPANY A/K/A "3M"); ADVANCED COMPOSITES GROUP, INC. (A DIVISION OF UMECO STRUCTURAL MATERIALS, INC.); ALLISON ENGINE COMPANY, INC.; APV ENGINEERED COATINGS (F/K/A AKRON PAINT & VARNISH, INC.); ARMSTRONG INTERNATIONAL, INC.; B.R. FUNSTEN & CO.; BASF CORPORATION, (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CIBA SPECIALTY CHEMICALS, AS SUCCESSOR IN INTEREST TO RELIABLE MANUFACTURING COMPANY); BECHTEL CORPORATION (INDIVIDUALLY AND AS SUCCESSOR TO SEQUOIA VENTURES, INC.);  BOEING NORTH AMERICAN, INC., (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO NORTH AMERICAN ROCKWELL AS SUCCESSOR IN INTEREST TO NORTH AMERICAN AVIATION); BON L.

COMPLAINT FOR PERSONAL INJURIES

MANUFACTURING COMPANY, (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO CAPITOL PRODUCTS CORPORATION SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION); BORGWARNER MORSE TEC, INC., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BORG-WARNER CORPORATION); BORGWARNER, INC., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BORG-WARNER CORPORATION);  CBS CORPORATION (F/K/A VIACOM, INC. SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION); CESSNA AIRCRAFT COMPANY (A TEXTRON COMPANY); CESSNA AIRCRAFT COMPANY, (A TEXTRON COMPANY INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO MCCAULEY PROPELLER COMPANY); CIRRUS ENTERPRISES, LLC (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO E.V. ROBERTS AND ASSOCIATES, INC., AND EVRA, INC.); CLEVELAND WHEELS AND BRAKES AND AIRCRAFT WHEEL AND BRAKE, (A DIVISION OF PARKER HANNIFIN CORPORATION); CONTINENTAL MOTORS, INC.; CRANE CO., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO HYDRO-AIRE, INC. AND ADEL PRECISION PRODUCTS CORPORATION); CRANE CO. (D/B/A CRANE RESISTOFLEX CO., A DIVISION OF CRANE CO.); CROWN CORK & SEAL COMPANY, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MUNDET CORK COMPANY); CUMMINS, INC. (F/K/A CUMMINS ENGINEER COMPANY, INC.); CURTISS-WRIGHT CORPORATION; CURTISS-WRIGHT FLOW CONTROL CORPORATION; CYTEC INDUSTRIES, INC., INDIVIDUALLY AND SUCCESSOR IN INTEREST TO AMERICAN CYANAMID COMPANY; DANA COMPANIES, LLC, (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO VICTOR MANUFACTURING & GASKET CO.); DEXTER HYSOL AEROSPACE, LLC, (INDIVIDUALLY AND AS

-9-

SUCCESSOR-IN-INTEREST TO DEXTER HYSOL AEROSPACE, INC.); DOUGLASS INSULATION COMPANY, INC.; EATON AEROQUIP, INC.; EATON AEROQUIP, LLC; EATON CORPORATION, (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO EATON ELECTRICAL, INC., AND AS SUCCESSOR IN INTEREST TO CUTLER-HAMMER, INC.); EATON ELECTRICAL, INC., (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CUTLER-HAMMER, INC. AND F/K/A CUTLER-HAMMER, INC.); ESSEX CHEMICAL CORPORATION (INDIVIDUALLY AND AS A SUBSIDIARY OF DOW CHEMICAL COMPANY); ETHYL CORPORATION (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CAPITOL PRODUCTS CORPORATION SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION); FRASER'S BOILER SERVICE, INC.; FRYER KNOWLES, INC. (A CALIFORNIA CORPORATION); GENERAL ELECTRIC COMPANY; GOODRICH CORPORATION (F/K/A THE B.F. GOODRICH COMPANY); HARCO LABORATORIES, INC.; HAWKER BEECHCRAFT CORPORATION; HENKEL CORPORATION (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO DEXTER HYSOL AEROSPACE, INC.); HONEYWELL INTERNATIONAL, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ALLIED-SIGNAL, INC. AND THE BENDIX CORPORATION); HOPEMAN BROTHERS, INC.; IMO INDUSTRIES, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ADEL PRECISION PRODUCTS, INC.); INTERNATIONAL PAPER COMPANY, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO LONG BELL PAPER CO.); J.T. THORPE & SON, INC.; LEHIGH GASKET COMPANY; LOCKHEED MARTIN CORPORATION; LYCOMING ENGINES; M. SLAYEN & ASSOCIATES, INC.; MCDONNELL DOUGLAS CORPORATION; MECHANICAL DRIVES & BELTING (F/K/A L.A. RUBBER COMPANY);

COMPLAINT FOR PERSONAL INJURIES

METALCLAD INSULATION CORPORATION; NATIONAL SERVICES INDUSTRIES, INC.;   NATIONAL STEEL AND SHIPBUILDING COMPANY (A/K/A NASSCO); NORTHROP   GRUMMAN   WORLDWIDE   CORP.;   NOVARTIS   CORPORATION, (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CIBA-GEIGY CORPORATION, AS SUCCESSOR IN INTEREST TO RELIABLE MANUFACTURING COMPANY); PARKER-HANNIFIN CORPORATION (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO RESISTOFLEX); PFIZER, INC.; PIPER AIRCRAFT, INC.; PLANT INSULATION COMPANY, (FORMERLY ASBESTOS COMPANY OF CA); PNEUMO ABEX, L.L.C., INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO PNEUMO ABEX CORPORATION,   SUCCESSOR-IN-INTEREST   TO   ABEX   CORPORATION   F/K/A AMERICAN BRAKE SHOE COMPANY, F/K/A AMERICAN BRAKE SHOE AND FOUNDRY COMPANY INCLUDING THE AMERICAN BRAKEBLOK DIVISION, SUCCESSOR-BY-MERGER TO THE AMERICAN BRAKE SHOE AND FOUNDRY COMPANY  AND  THE  AMERICAN  BRAKEBLOK  CORPORATION  F/K/A  THE AMERICAN BRAKE MATERIALS CORPORATION; PRATT & WHITNEY POWER SYSTEMS,  INC.;  PRATT  &  WHITNEY  ROCKETDYNE,  INC.;  PRC-DESOTO INTERNATIONAL,   INC.,   (FORMERLY   COURTAULDS   AEROSPACE,   INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO PRODUCTS RESEARCH & CHEMICAL CORPORATION); QUINTEC INDUSTRIES, INC., (INDIVIDUALLY AND SUCCESSOR-BY-MERGER TO WESTERN FIBROUS GLASS PRODUCTS COMPANY F/K/A  WESTERN  FIBERGLAS  COMPANY);  ROCKWELL  AUTOMATION,  INC., (INDIVIDUALLY   AND   AS   SUCCESSOR-IN-INTEREST   TO   ALLEN-BRADLEY COMPANY INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ROSTONE CORPORATION); ROCKWELL INTERNATIONAL, INC.; ROLLS ROYCE CORPORATION

COMPLAINT FOR PERSONAL INJURIES

(D/B/A ALLISON ENGINE COMPANY); ROLLS-ROYCE NORTH AMERICA INC.; S B DECKING, INC.; SAN FRANCISCO GRAVEL COMPANY; SCHNEIDER ELECTRIC USA, INC. (F/K/A SQUARE D COMPANY); SHELL CHEMICAL, L.P.; SMITH TUBULAR SYSTEMS-LACONIA, INC., (INDIVIDUALLY AND AS SUCCESSOR TO TITEFLEX CORPORATION, AND TITEFLEX, INC.); SMOOTH-ON, INC.; SOCO WEST, INC. (F/K/A BRENNTAG WEST, INC., F/K/A SOCO-LYNCH CORPORATION, F/K/A SOCO-WESTERN CHEMICAL CORPORATION, F/K/A STINNES-WESTERN CHEMICAL CORPORATION); SOUTH BAY BOILER REPAIR, INC.; SYD CARPENTER MARINE CONTRACTOR, INC.; TDY INDUSTRIES, INC., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO TELEDYNE TECHNOLOGIES INC.); THE BOEING COMPANY; THE BOEING COMPANY (D/B/A BOEING INTEGRATED DEFENSE SYSTEMS, AS SUCCESSOR-IN-INTEREST TO ROCKWELL INTERNATIONAL); THE DOW CHEMICAL COMPANY; THE GOODYEAR TIRE & RUBBER COMPANY; THOMAS DEE ENGINEERING CO.; THORPE INSULATION COMPANY; TITEFLEX CORPORATION; TREDEGAR CORPORATION, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CAPITOL PRODUCTS CORPORATION SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION); TRIUMPH AEROSTRUCTURES-VOUGHT AIRCRAFT DIVISION, (A DIVISION OF TRIUMPH GROUP, INC. AND TRIUMPH GROUP, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO VOUGHT AIRCRAFT INDUSTRIES, INC.); UNION CARBIDE CORPORATION; UNITED TECHNOLOGIES CORPORATION (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO PRATT & WHITNEY); URS CORPORATION (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO JOHN A. BLUME AND ASSOCIATES), and DOES 1-300, inclusive, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States

COMPLAINT FOR PERSONAL INJURIES

of America, or some foreign jurisdiction, and that said Defendants were authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the State of California.

5.     Venue is proper in the City and County of San Francisco.  At least one Defendant maintains its principal place of business in the County of San Francisco.

6.     At all times mentioned above, Defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain substance, the generic name of which is asbestos, and other products containing asbestos.

7.     Plaintiff LANNY SANDERS was exposed to Defendants' asbestos and asbestos containing products contributing to and causing the development of the asbestos cancer, malignant mesothelioma.  As a result of exposure to Defendants' asbestos and asbestos products, asbestos fibers entered Plaintiff LANNY SANDERS' body.  Plaintiff LANNY SANDERS suffers from the asbestos cancer, malignant mesothelioma, and each of Defendants asbestos and asbestos containing products that entered his body was a substantial factor in bringing about, prolonging, or aggravating his mesothelioma.  The asbestos and asbestos containing products Plaintiff LANNY SANDERS was exposed to were designed, manufactured, marketed, brokered, distributed, sold, used or supplied by a named Defendant or were used in an unreasonable unsafe manner under the control of a named Defendant on its premises.

Specifically, Plaintiff LANNY SANDERS was exposed to asbestos from asbestos-containing products, suppliers and contractors including, but not limited to:

(A) AIRCRAFT DEFENDANTS:

**3M COMPANY** (INDIVIDUALLY AND F/K/A MINNESOTA, MINING AND MANUFACTURING COMPANY A/K/A "3M");

-13-

COMPLAINT FOR PERSONAL INJURIES

1   **ADVANCED COMPOSITES GROUP, INC.** (A DIVISION OF UMECO
STRUCTURAL MATERIALS, INC.);
2   **ALLISON ENGINE COMPANY, INC.**;
**APV ENGINEERED COATINGS** (F/K/A AKRON PAINT & VARNISH, INC.);
3   **ARMSTRONG INTERNATIONAL, INC.**;
**BASF CORPORATION**, (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST
4   TO CIBA SPECIALTY CHEMICALS, AS SUCCESSOR IN INTEREST TO
RELIABLE MANUFACTURING COMPANY);
5   **BORGWARNER MORSE TEC, INC.**, (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO BORG-WARNER CORPORATION);
6   **BORGWARNER, INC.**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST
TO BORG-WARNER CORPORATION);
7   **CBS CORPORATION** (F/K/A VIACOM, INC. SUCCESSOR-BY-MERGER TO
8   CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE
ELECTRIC CORPORATION);
9   **CESSNA AIRCRAFT COMPANY** (A TEXTRON COMPANY);
10   **CESSNA AIRCRAFT COMPANY**, A TEXTRON COMPANY (INDIVIDUALLY
AND AS SUCCESSOR IN INTEREST TO MCCAULEY PROPELLER
11   COMPANY);.
**CIRRUS ENTERPRISES, LLC** (INDIVIDUALLY AND AS
12   SUCCESSOR-IN-INTEREST TO E.V. ROBERTS AND ASSOCIATES, INC., AND
EVRA, INC.);
13   **CLEVELAND WHEELS AND BRAKES AND AIRCRAFT WHEEL AND
14   BRAKE**, (A DIVISION OF PARKER HANNIFIN CORPORATION);
**CONTINENTAL MOTORS, INC.**;
15   **CRANE CO.**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO
16   HYDRO-AIRE, INC. AND ADEL PRECISION PRODUCTS CORPORATION);
**CRANE CO.** (D/B/A CRANE RESISTOFLEX CO., A DIVISION OF CRANE CO.);
17   **CUMMINS, INC.** (F/K/A CUMMINS ENGINEER COMPANY, INC.);
**CURTISS-WRIGHT CORPORATION**;
18   **CURTISS-WRIGHT FLOW CONTROL CORPORATION**;
19   **DANA COMPANIES, LLC**, (INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO VICTOR MANUFACTURING & GASKET CO.);
20   **DEXTER HYSOL AEROSPACE, LLC**, (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO DEXTER HYSOL AEROSPACE, INC.);
21   **EATON AEROQUIP, INC.**;
**EATON AEROQUIP, LLC**; .
22   **EATON CORPORATION**, (INDIVIDUALLY AND AS SUCCESSOR IN
23   INTEREST TO EATON ELECTRICAL, INC., AND AS SUCCESSOR IN
INTEREST TO CUTLER-HAMMER, INC.);
24   **EATON ELECTRICAL, INC.**, (INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO CUTLER-HAMMER, INC. AND F/K/A CUTLER-HAMMER,
25   INC.);
**ESSEX CHEMICAL CORPORATION** (INDIVIDUALLY AND AS A
26   SUBSIDIARY OF DOW CHEMICAL COMPANY);
**GENERAL ELECTRIC COMPANY**;
27   **GOODRICH CORPORATION** (F/K/A THE B.F. GOODRICH COMPANY);
28

-14-

COMPLAINT FOR PERSONAL INJURIES

HARCO LABORATORIES, INC.;
HAWKER BEECHCRAFT CORPORATION;
HENKEL CORPORATION (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO DEXTER HYSOL AEROSPACE, INC.);
HONEYWELL INTERNATIONAL, INC. (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO ALLIED-SIGNAL, INC. AND THE BENDIX
CORPORATION);
IMO INDUSTRIES, INC. (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO ADEL PRECISION PRODUCTS, INC.);
INTERNATIONAL PAPER COMPANY, (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO LONG BELL PAPER CO.);
LEHIGH GASKET COMPANY;
LOCKHEED MARTIN CORPORATION;
LYCOMING ENGINES;
MCDONNELL DOUGLAS CORPORATION;
NORTHROP GRUMMAN WORLDWIDE CORP.;
NOVARTIS CORPORATION, (INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO CIBA-GEIGY CORPORATION, AS SUCCESSOR IN INTEREST
TO RELIABLE MANUFACTURING COMPANY);
PARKER-HANNIFIN CORPORATION (INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO RESISTOFLEX);
PIPER AIRCRAFT, INC.;
PNEUMO ABEX, L.L.C., (INDIVIDUALLY AND AS SUCCESSOR BY MERGER
TO PNEUMO ABEX CORPORATION, SUCCESSOR-IN-INTEREST TO ABEX
CORPORATION F/K/A AMERICAN BRAKE SHOE COMPANY, F/K/A
AMERICAN BRAKE SHOE AND FOUNDRY COMPANY INCLUDING THE
AMERICAN BRAKEBLOK DIVISION, SUCCESSOR-BY-MERGER TO THE
AMERICAN BRAKE SHOE AND FOUNDRY COMPANY AND THE AMERICAN
BRAKEBLOK CORPORATION F/K/A THE AMERICAN BRAKE MATERIALS
CORPORATION)
PRATT & WHITNEY POWER SYSTEMS, INC.;
PRATT & WHITNEY ROCKETDYNE, INC.;
PRC-DESOTO INTERNATIONAL, INC., (FORMERLY COURTAULDS
AEROSPACE, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO
PRODUCTS RESEARCH & CHEMICAL CORPORATION);
ROCKWELL AUTOMATION, INC. , (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO ALLEN-BRADLEY COMPANY
INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ROSTONE
CORPORATION);
ROCKWELL INTERNATIONAL, INC.;
ROLLS ROYCE CORPORATION (D/B/A ALLISON ENGINE COMPANY
CORPORATION SERVICE COMPANY);
ROLLS-ROYCE NORTH AMERICA INC.;
SCHNEIDER ELECTRIC USA, INC. (F/K/A SQUARE D COMPANY);
SHELL CHEMICAL, L.P.;
SMITH TUBULAR SYSTEMS-LACONIA, INC., (INDIVIDUALLY AND AS
SUCCESSOR TO TITEFLEX CORPORATION, AND TITEFLEX, INC.);

-15-

COMPLAINT FOR PERSONAL INJURIES

1   SMOOTH-ON, INC.;
    **TDY INDUSTRIES, INC., (INDIVIDUALLY AND AS**
2   SUCCESSOR-IN-INTEREST TO TELEDYNE TECHNOLOGIES INC.)
    **THE BOEING COMPANY;**
3   **THE BOEING COMPANY (D/B/A BOEING INTEGRATED DEFENSE**
    SYSTEMS, AS SUCCESSOR-IN-INTEREST TO ROCKWELL
4   INTERNATIONAL);
    **BOEING AMERICAN, INC., (INDIVIDUALLY AND AS SUCCESSOR IN**
5   INTEREST TO NORTH AMERICAN ROCKWELL AS SUCCESSOR IN
    INTEREST TO NORTH AMERICAN AVIATION)
6   **THE DOW CHEMICAL COMPANY;**
    **THE GOODYEAR TIRE & RUBBER COMPANY;**
7   **TITEFLEX CORPORATION;**
    **TRIUMPH AEROSTRUCTURES-VOUGHT AIRCRAFT DIVISION, A**
8   **DIVISION OF TRIUMPH GROUP, INC. AND TRIUMPH GROUP, INC.,**
    (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO VOUGHT
9   AIRCRAFT INDUSTRIES, INC.);
    **UNION CARBIDE CORPORATION;**
10  **UNITED TECHNOLOGIES CORPORATION** (INDIVIDUALLY AND AS
    SUCCESSOR-IN-INTEREST TO PRATT & WHITNEY);
11  **CYTEC INDUSTRIES, INC., (INDIVIDUALLY AND SUCCESSOR IN**
    INTEREST TO AMERICAN CYANAMID COMPANY)
12
13  (B) INSULATION/CONTRACTOR/SUPPLIER DEFENDANTS

14  **CROWN CORK & SEAL COMPANY, INC.** (INDIVIDUALLY AND AS
    SUCCESSOR-IN-INTEREST TO MUNDET CORK COMPANY);
15  **DOUGLASS INSULATION COMPANY, INC.;**
    **ETHYL CORPORATION** (INDIVIDUALLY AND AS
16  SUCCESSOR-IN-INTEREST TO CAPITOL PRODUCTS CORPORATION
    SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION);
17  **FRASER'S BOILER SERVICE, INC.;**
    **FRYER KNOWLES, INC.** (A CALIFORNIA CORPORATION);
18  **HOPEMAN BROTHERS, INC.;**
    **J.T. THORPE & SON, INC.;**
19  **M. SLAYEN & ASSOCIATES, INC.;**
    **NATIONAL SERVICES INDUSTRIES, INC.;**
20  **NATIONAL STEEL AND SHIPBUILDING COMPANY** (A/K/A NASSCO);
    **PFIZER, INC.;**
21  **BECHTEL CORPORATION** (INDIVIDUALLY AND AS SUCCESSOR TO
    SEQUOIA VENTURES, INC.);
22  **BON L. MANUFACTURING COMPANY, (INDIVIDUALLY AND AS**
    SUCCESSOR BY MERGER TO CAPITOL PRODUCTS CORPORATION
23  SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION);
    **PLANT INSULATION COMPANY, (FORMERLY ASBESTOS COMPANY OF**
24  CA);

25

26

27

28

-16-

1

2

3

4

5

6

7

8

9

10

11

12

**QUINTEC INDUSTRIES, INC.,** (INDIVIDUALLY AND
SUCCESSOR-BY-MERGER TO WESTERN FIBROUS GLASS PRODUCTS
COMPANY F/K/A WESTERN FIBERGLAS COMPANY);
**S B DECKING, INC.;**
**SOCO WEST, INC.** (F/K/A BRENNTAG WEST, INC., F/K/A SOCO-LYNCH
CORPORATION, F/K/A SOCO-WESTERN CHEMICAL CORPORATION, F/K/A
STINNES-WESTERN CHEMICAL CORPORATION);
**SOUTH BAY BOILER REPAIR, INC.;**
**SYD CARPENTER MARINE CONTRACTOR, INC.;**
**THOMAS DEE ENGINEERING CO.;**
**THORPE INSULATION COMPANY;**
**TREDEGAR CORPORATION,** (INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO CAPITOL PRODUCTS CORPORATION
SUCCESSOR-IN-INTEREST TO DAVIS ENGINEERING CORPORATION);
**URS CORPORATION** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST
TO JOHN A. BLUME AND ASSOCIATES),
**B.R. FUNSTEN & CO**
**SAN FRANCISCO GRAVEL COMPANY**
**MECHANICAL DRIVES & BELTING** (F/K/A L.A. RUBBER COMPANY)
**METALCLAD INSULATION CORPORATION;**

13

14

15

Each and every one of Defendants' asbestos products and involvement in exposing Plaintiff to asbestos substantially contributed, and was a proximate cause, to the development of Plaintiff LANNY SANDERS' asbestos cancer, malignant mesothelioma.

16

**II.**

17

18

<u>**FIRST CAUSE OF ACTION:**</u> NEGLIGENCE

19

**(Against all Defendants)**

20

8.      Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and

21

every allegation contained in the General Allegations above.

22

9.      At all times herein mentioned, each of the named Defendants and DOES 1 through

23

24

300 was the successor, successor in business, successor in product line or a portion thereof, assign,

25

predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

26

subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity

27

researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling,

28

-17-

distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products. Said entities shall hereinafter collectively be called "Alternate Entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised the asbestos and asbestos-containing products. The following Defendants, and each of them, are liable for the acts of each and every "Alternate Entity," and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" such "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiff's remedy against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| 3M COMPANY | (individually and f/k/a Minnesota, Mining and Manufacturing Company a/k/a "3M") |
| APV ENGINEERED COATINGS | f/k/a Akron Paint & Varnish, Inc. |
| ARMSTRONG INTERNATIONAL, INC. | |
| BASF CORPORATION | (Individually and as Successor in interest to Ciba Specialty Chemicals, as Successor in interest to Reliable Manufacturing Company) |
| BECHTEL CORPORATION | (individually and as successor to Sequoia Ventures, Inc.) |

-18-

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| BOEING NORTH AMERICAN, INC. | (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO NORTH AMERICAN ROCKWELL AS SUCCESSOR IN INTEREST TO NORTH AMERICAN AVIATION) |
| BON L. MANUFACTURING COMPANY | individually and as successor by merger to Capitol Products Corporation (successor-in-interest to Davis Engineering Corporation) |
| BORGWARNER MORSE TEC, INC. | individually and as successor-in-interest to Borg-Warner Corporation |
| BORGWARNER, INC. | individually and as successor-in-interest to Borg-Warner Corporation |
| CBS CORPORATION | f/k/a Viacom, Inc. (successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation) |
| CESSNA AIRCRAFT COMPANY | (Individually and as Successor in Interest to McCauley Propeller Company) |
| CIRRUS ENTERPRISES, LLC | (Individually and as Successor-in-Interest to E.V. Roberts and Associates, Inc., and Evra, Inc.) |
| CRANE CO., | (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO HYDRO-AIRE, INC. AND ADEL PRECISION PRODUCTS CORPORATION) |
| CRANE CO. | (d/b/a Crane Resistoflex Co., A Division of Crane Co.) |
| CROWN CORK & SEAL COMPANY, INC. | (individually and as successor-in-interest to Mundet Cork Company) |
| CUMMINS, INC. | (f/k/a Cummins Engineer Company, Inc.) |
| CURTISS-WRIGHT CORPORATION | |
| CURTISS-WRIGHT FLOW CONTROL CORPORATION | |
| CYTEC INDUSTRIES, INC. | (INDIVIDUALLY AND SUCCESSOR IN INTEREST TO AMERICAN CYANAMID COMPANY) |
| Dana Companies, LLC | individually and as successor in interest to Victor Manufacturing & Gasket Co. |
| DEXTER HYSOL AEROSPACE, LLC | individually and as successor-in-interest to Dexter Hysol Aerospace, Inc. |
| DOUGLASS INSULATION COMPANY, INC. | |
| EATON AEROQUIP, INC. | |
| EATON AEROQUIP, LLC | |

-19-

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| EATON CORPORATION | individually and as successor in interest to Eaton Electrical, Inc., and as successor in interest to Cutler-Hammer, Inc. |
| EATON ELECTRICAL, INC. | individually and as successor in interest to Cutler-Hammer, Inc. and f/k/a Cutler-Hammer, Inc. |
| ESSEX CHEMICAL CORPORATION | Individually and as a Subsidiary of DOW CHEMICAL COMPANY |
| ETHYL CORPORATION | individually and as successor-in-interest to Capitol Products Corporation (successor-in-interest to Davis Engineering Corporation) |
| FRASER'S BOILER SERVICE, INC. | |
| GENERAL ELECTRIC COMPANY | |
| GOODRICH CORPORATION | (f/k/a The B.F. Goodrich Company) |
| HENKEL CORPORATION | individually and as successor-in-interest to Dexter Hysol Aerospace, Inc. |
| HONEYWELL INTERNATIONAL, INC. | (individually and as successor-in-interest to Allied-Signal, Inc. and The Bendix Corporation) |
| HOPEMAN BROTHERS, INC. | |
| IMO INDUSTRIES, INC. | (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ADEL PRECISION PRODUCTS, INC.) |
| INTERNATIONAL PAPER COMPANY | individually and as successor-in-interest to Long Bell Paper Co. |
| J.T. THORPE & SON, INC. | |
| LEHIGH GASKET COMPANY | |
| LOCKHEED MARTIN CORPORATION | |
| M. SLAYEN & ASSOCIATES, INC. | |
| MCDONNELL DOUGLAS CORPORATION | |
| MECHANICAL DRIVES & BELTING | (F/K/A L.A. RUBBER COMPANY) |
| METALCLAD INSULATION CORPORATION | |
| NATIONAL SERVICES INDUSTRIES, INC. | |
| NATIONAL STEEL AND SHIPBUILDING COMPANY | (A/K/A NASSCO) |
| NOVARTIS CORPORATION | (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CIBA-GEIGY CORPORATION, AS SUCCESSOR IN INTEREST TO RELIABLE MANUFACTURING COMPANY) |
| PARKER-HANNIFIN CORPORATION | (INDIVIDUALLY AND AS SUCCESSOR |

-20-

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| | IN INTEREST TO RESISTOFLEX) |
| PFIZER, INC. | |
| PLANT INSULATION COMPANY, FORMERLY ASBESTOS COMPANY OF CA | . |
| PNEUMO ABEX, L.L.C., | (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO PNEUMO ABEX CORPORATION, SUCCESSOR-IN-INTEREST TO ABEX CORPORATION F/K/A AMERICAN BRAKE SHOE COMPANY, F/K/A AMERICAN BRAKE SHOE AND FOUNDRY COMPANY INCLUDING THE AMERICAN BRAKEBLOK DIVISION, SUCCESSOR-BY-MERGER TO THE AMERICAN BRAKE SHOE AND FOUNDRY COMPANY AND THE AMERICAN BRAKEBLOK CORPORATION F/K/A THE AMERICAN BRAKE MATERIALS CORPORATION) |
| PRATT & WHITNEY POWER SYSTEMS, INC. | |
| PRC-DESOTO INTERNATIONAL, INC. | (FORMERLY COURTAULDS AEROSPACE, INC., INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO PRODUCTS RESEARCH & CHEMICAL CORPORATION) |
| QUINTEC INDUSTRIES, INC. | individually and successor-by-merger to Western Fibrous Glass Products Company (f/k/a Western Fiberglas Company) |
| ROCKWELL AUTOMATION, INC. | individually and as successor-in-interest to Allen-Bradley Company (individually and as successor-in-interest to Rostone Corporation) |
| ROLLS ROYCE CORPORATION | (d/b/a Allison Engine Company) |
| S B DECKING, INC. | |
| SCHNEIDER ELECTRIC USA, INC. | f/k/a Square D Company |
| SHELL CHEMICAL, L.P. | |
| SMITH TUBULAR SYSTEMS-LACONIA, INC. | (Individually and as Successor to Titeflex Corporation, and Titeflex, Inc.) |
| SMOOTH-ON, INC. | |
| SOCO WEST, INC. | (f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western Chemical Corporation |

-21-

COMPLAINT FOR PERSONAL INJURIES

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| SOUTH BAY BOILER REPAIR, INC. | |
| SYD CARPENTER MARINE CONTRACTOR, INC. | |
| TDY INDUSTRIES, INC. | (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO TELEDYNE TECHNOLOGIES INC.) |
| THE BOEING COMPANY | |
| THE BOEING COMPANY | (d/b/a Boeing Integrated Defense Systems, as successor-in-interest to Rockwell International) |
| THE DOW CHEMICAL COMPANY | |
| THE GOODYEAR TIRE & RUBBER COMPANY | |
| THOMAS DEE ENGINEERING CO. | |
| THORPE INSULATION COMPANY | |
| TITEFLEX CORPORATION | |
| TREDEGAR CORPORATION | individually and as successor-in-interest to Capitol Products Corporation (successor-in-interest to Davis Engineering Corporation) |
| TRIUMPH AEROSTRUCTURES-VOUGHT AIRCRAFT DIVISION, A DIVISION OF TRIUMPH GROUP, INC. AND TRIUMPH GROUP, INC., | (Individually and as Successor in Interest to Vought Aircraft Industries, Inc.) |
| UNION CARBIDE CORPORATION | |
| UNITED TECHNOLOGIES CORPORATION | (individually and as successor-in-interest to Pratt & Whitney) |
| URS CORPORATION | Individually and as Successor in Interest to John A. Blume and Associates |

10.    Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe and to warn that unsafe asbestos products under their care control were exposing bystanders on their premises. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, supplied, re-branded, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold their asbestos and asbestos-containing products in that these products were capable of causing and did,

-22-

in fact, proximately cause personal injuries to users and consumers thereof, namely LANNY SANDERS, while being used in manner reasonably foreseeable to Defendants, thereby rendering the asbestos products unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Plaintiff LANNY SANDERS.

11.     Plaintiff LANNY SANDERS is a worker who, for a substantial length of time, has used, handled, and been otherwise exposed to Defendants' asbestos and asbestos products referred to in Paragraphs 6 and 7 above, in a manner that was reasonably foreseeable to Defendants, while he was working as an aviation electronics technician in the United States Navy from approximately 1967 through 1975. Specifically, Plaintiff LANNY SANDERS underwent basic training in San Diego, then worked as an aviation electronics technician in the Navy from approximately 1967 to 1975 at multiple naval air stations, including but not limited to LeMoore Naval Air Station and Moffett Naval Air Station as well as the USS Constellation during which time he may have been exposed to asbestos and/or asbestos containing products which include thermal insulation, gaskets, brakes, engines, seals, thermocouples, fire sleeves, asbestos sheets, mill board, paper, blankets, hoses, bakelite panels, sleeves, hoses, epoxies, shrouds, adhesives, clamps, electrical components, electrical equipment, control boxes, insulating boards, linings, heat shields, packing, straps, shrouds, tape, wire, and other electrical and aircraft related products as outlined in paragraph 7 above. As an aviation electronics technician, Plaintiff LANNY SANDERS was exposed to various asbestos and asbestos products manufactured, sold, and/or distributed by Defendants including those outlined in Paragraph 7 above.

12.     On or about April 11, 2012, Plaintiff Lanny Sanders was advised that he has the asbestos cancer, malignant mesothelioma. Prior to that date, Plaintiff did not know, nor did he have reason to know, that he had contracted this disease related to his exposure to asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury and/or

-23-

disease to him, and had not been advised or informed by anyone that he could contract, nor indeed did contract, any disease, sickness or injury as a result of working in the vicinity of asbestos.

13. Plaintiffs are informed and believe, and therefore allege, that mesothelioma is a vicious, painful, and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products over a period of time. There is no known cure for any form of malignant mesothelioma.

14. As a direct and proximate result of the Defendants conduct and asbestos products, Plaintiff LANNY SANDERS has suffered, and continues to suffer, severe and permanent injury to his person, body and health, including, but not limited to the asbestos cancer, malignant mesothelioma, all of which caused Plaintiffs general damages in a sum within the jurisdictional limits of this Court.

15. As a direct and proximate result of Defendants' conduct and asbestos products, Plaintiffs were compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat Plaintiff LANNY SANDERS' cancerous condition. Plaintiffs have incurred medical, hospital and professional incidental expenses and Plaintiffs are informed and believe, and therefore allege, that by reason of Plaintiff's injuries, Plaintiffs will necessarily incur additional medical expenses for an indefinite period of time in the future. When Plaintiffs have ascertained and calculated the total amount of medical bills, Plaintiffs will allege this figure.

16. In researching, testing, manufacturing, distributing, labeling, and marketing asbestos and asbestos products, Plaintiffs are informed and believe that Defendants did so with conscious disregard for the safety of the users of said asbestos and asbestos products, in that Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to, the asbestos cancer

-24-

malignant mesothelioma. Defendants' knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of Defendants, and which knowledge was obtained by Defendants on or before 1930, and rapidly increasingly thereafter.

17.     On or before 1930, and rapidly increasingly thereafter, Defendants were aware that users of asbestos and asbestos products, as well as members of the general public that were exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and Defendants knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe and not harmful to human life, when in fact said exposure was known by Defendants to be potentially lethal.

18.     With this knowledge, Defendants opted to design, manufacture, market, distribute and/or use their asbestos and asbestos products without attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed their knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.  The above-referenced conduct of said Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, Defendants consciously disregarded the safety of the users of, and persons exposed to,

-25-

their asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and personally exposed thereto, including Plaintiff LANNY SANDERS.

19.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff LANNY SANDERS to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to

-26-

COMPLAINT FOR PERSONAL INJURIES

Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.  Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.  Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants,

-27-

COMPLAINT FOR PERSONAL INJURIES

and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

-29-

**III.**

<u>**SECOND CAUSE OF ACTION**</u>: STRICT LIABILITY

**(Against all Defendants)**

20.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 19.

21.     At all times mentioned herein, Defendants, and each of them, researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale asbestos and asbestos-containing products which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and bystanders.

22.     As a direct and proximate result of the above described conduct by Defendants, LANNY SANDERS suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma.

23.     At all times mentioned herein, Defendants' asbestos and asbestos containing products (identified in Paragraph 7, above) failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the risk of danger inherent in this substance and products outweighs the benefits of Defendants' asbestos and asbestos-containing products.

24.     At all times mentioned herein, the foreseeable use of Defendants' asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

-30-

COMPLAINT FOR PERSONAL INJURIES

25.     As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff LANNY SANDERS suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma.

26.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff LANNY SANDERS to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to

-31-

Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants,

and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

-33-

COMPLAINT FOR PERSONAL INJURIES

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

-34-

COMPLAINT FOR PERSONAL INJURIES

## IV.

### THIRD CAUSE OF ACTION: BREACH OF WARRANTY

### (Against all Defendants)

27.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 26.

28.     Defendants, and each of them, expressly and implicitly, warranted that said substance was reasonably fit for its intended use without endangering human life, and that such substance was of interchangeable quality.

29.     Defendants and each of them breached the above described expressed and implied warranties in that said substance was defective, which defects permitted and/or caused said substance to seriously and permanently cause injury to Plaintiff LANNY SANDERS including, but not limited to, the disease mesothelioma and other lung damage, while said substance was used in a manner that was reasonably foreseeable.

30.     As a direct and proximate result of the above described breaches of warranties by Defendants, and each of them, Plaintiff suffered severe and permanent injuries to his person, including malignant mesothelioma.

31.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos.  Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs.  Defendants subjected Plaintiff LANNY SANDERS to cruel and unjust hardship in conscious disregard of his

rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)   Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)   Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)   Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of

-36-

COMPLAINT FOR PERSONAL INJURIES

such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.  Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.  Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed

COMPLAINT FOR PERSONAL INJURIES

medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein.  Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.  Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others

COMPLAINT FOR PERSONAL INJURIES

that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)    Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)    Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

## V.

### FOURTH CAUSE OF ACTION:

### FALSE REPRESENTATION UNDER RESTATE OF TORTS SECTION 402-B

### (Against All Defendants)

32.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First through Third Causes of Action.

33.    At the aforementioned time when Defendants, their "Alternate Entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised the said asbestos and

-39-

asbestos-containing products, as herein above set forth, the Defendants, their "Alternate Entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the herein and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

34.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including Plaintiff LANNY SANDERS and his employers, relied upon said representations of Defendants, their "Alternate Entities,"and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

35.     Said representations by Defendants, their "Alternate Entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "Alternate Entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including Plaintiff herein.

36.     As a direct and proximate result of said false representations by Defendants, their "Alternate Entities," and each of them, Plaintiff LANNY SANDERS sustained the injuries and damages herein above set forth.

37.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products

-40-

knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff LANNY SANDERS to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated

-41-

COMPLAINT FOR PERSONAL INJURIES

in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.  Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.  Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which

-42-

COMPLAINT FOR PERSONAL INJURIES

arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

-43-

COMPLAINT FOR PERSONAL INJURIES

(i)      Defendants,  when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)      Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)      Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

## VI.

### FIFTH CAUSE OF ACTION: INTENTIONAL TORT

### (Against All Defendants)

38.      Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First through Fourth Causes of Action.

39.      At all times pertinent hereto, the Defendants, their "Alternate Entities," and each of them, owed  a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State

-44-

of California, to abstain from injuring the person, property or rights of the .  When a duty to act was imposed, as set forth herein, the Defendants, their "Alternate Entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the  as is more fully set forth herein.  Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and more specifically, included suggestions of fact which were not true and which Defendants, their "Alternate Entities," and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "Alternate Entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the  as provided for in the aforementioned Civil Code sections.

40.     Since on or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in Plaintiff's First Cause of Action were and are hazardous to the health and safety of , and others in 's position working in close proximity with such materials.  The Defendants, their "Alternate Entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time.  With intent to deceive , and others in 's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce  and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)     Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of  and others in 's position working in close

-45-

COMPLAINT FOR PERSONAL INJURIES

proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to that it was safe for to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b)     Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to 's employer and others without advising and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for to work in close proximity to such materials;

(d)     Defendants, their "Alternate Entities," and each of them, suppressed from medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his

-46-

report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing  and others to be and remain ignorant thereof.  Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading  by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control.  Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to  at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein.  Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead .  Such facts did mislead  and others by withholding the afore-described medical

-47-

and scientific data and other knowledge and by not giving  the true facts concerning such knowledge of danger, which Defendants, their "Alternate Entities," and each of them, were bound to disclose;

(g)     Defendants, their "Alternate Entities," and each of them, failed to warn  and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "Alternate Entities," and each of them, failed to provide  with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the  and others applying and installing such material;

(i)     Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from  the true nature of the industrial exposure of  and knew that  and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants, their "Alternate Entities," and each of them, also concealed from  and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by  and 's employers so that said physicians could

-48-

examine, diagnose and treat  and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k)    Defendants, their "Alternate Entities," and each of them, failed to provide adequate information to physicians and surgeons retained by 's employers and their predecessor companies, for purposes of making physical examinations of  and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

41.    Defendants, their "Alternate Entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding 's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California.  was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

42.    Defendants, their "Alternate Entities," and each of them, having such aforementioned knowledge, and the duty to inform  about the true facts, and knowing the  did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause  to remain unaware of the true facts and to induce  to work in a dangerous environment, all in violation of sections 1708, 1709 and 1710 of the Civil Code of the State of California.

-49-

COMPLAINT FOR PERSONAL INJURIES

## VII.

### SIXTH CAUSE OF ACTION: PREMISES OWNER/CONTRACTOR LIABILITY

#### (Against All Premises and Contractor Defendants)

43.    Plaintiff, by this reference, incorporates the allegations contained in Paragraphs 1 through 42.

44.    At all times mentioned herein, the Defendants respectively, owned, leased, maintained, managed, and/or controlled the premises where Plaintiff LANNY SANDERS was present.    Additionally, Plaintiff might have been present at these or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

45.    Prior to and at said times and places, Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

46.    At all times mentioned herein, Defendants knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff  and other workers or persons so exposed present on each of the aforesaid respective premises.

47.    At all times relevant herein, Plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Defendants' request and

invitation. In so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Defendants.

48.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

49.     At all times mentioned herein, Defendants remained in control of the premises where Plaintiff was performing his work.

50.     At all times mentioned herein, the Defendants owed to Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

51.     At all times mentioned herein, Defendants negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

52.     Prior to and at the times and places aforesaid, Defendants respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff .

-51-

53.     At all times mentioned herein, Defendants should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

54.     In part, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

55.     The work of contractors on premises controlled by Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

56.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Defendants. Said negligent conduct includes but is not limited to:

(a)     Failure to warn of asbestos and other toxic dusts;

(b)     Failure to suppress the asbestos-containing or toxic dusts;

(c)     Failure to remove the asbestos-containing and toxic dusts through the use of ventilation or appropriate means;

(d)     Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e)     Failure to inspect and/or test the air;

(f)     Failure to provide medical monitoring.

57.     Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Defendants are responsible for any breach of said duties whether by themselves or others.

-52-

58.     Prior to and at said times and places, Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants.   Such state and federal standards required said Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Defendants failed to provide the required safeguards and precautions.   Defendants' violations of said codes include but are not limited to:

    (a)    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

    (b)    Failing to segregate work involving the release of asbestos or other toxic dusts;

    (c)    Failing to suppress dust using prescribed ventilation techniques;

    (d)    Failing to suppress dust using prescribed "wet down" techniques;

    (e)    Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

    (f)    Failing to provide approved respiratory protection devices;

    (g)    Failing to ensure "approved" respiratory protection devices were used properly;

-53-

(h)     Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i)     Failing to provide adequate housekeeping and clean-up of the work place;

(j)     Failing to properly warn of the hazards associated with asbestos as required by statute;

(k)     Failing to properly report renovation and disturbance of asbestos-containing materials;

(l)     Failing to have an asbestos removal supervisor as required by regulation;

(m)     Failing to get approval for renovation as required by statutes; and

(n)     Failing to maintain records as required by statute.

59.     Defendants were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

60.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

61.     At all times mentioned herein, Plaintiff  was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

62.     At all times mentioned herein, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

-54-

63.     As a legal consequence of the foregoing, Plaintiff developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff has suffered damages as herein alleged.

64.     The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff . Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

## VIII.

### SEVENTH CAUSE OF ACTION: LOSS OF CONSORTIUM

### (Against All Defendants)

65.     Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1 through 64.

66.     Plaintiffs were married at all times relevant to this action and were, and are now, husband and wife.

67.     Prior to Plaintiff LANNY SANDERS' injuries alleged herein, Plaintiff LANNY SANDERS was able and did perform duties as a spouse. Subsequent to the injuries, and as a proximate result thereof, Plaintiff LANNY SANDERS has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and

-55-

management of the family home and Plaintiff LANNY SANDERS will be unable to perform such work, services, and duties in the future.   As a proximate result thereof, Plaintiff's spouse, SANDRA JENSEN SANDERS, has been permanently deprived and will be permanently deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

68.   Further, as a direct and proximate result of the acts of Defendants, as well as the severe injuries caused thereby to Plaintiff LANNY SANDERS as set forth herein, Plaintiff SANDRA JENSEN SANDERS has suffered, and for a long period of time will continue to suffer, loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

69.   Discovery of the cause of Plaintiff SANDRA JENSEN SANDERS' loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them in and amount to be proved at trial in each individual case, as follows:

1.   General damages according to proof;

2.   Damages for medical and related expenses, according to proof;

3.   Damages for loss of earning capacity, according to proof;

4.   Damages for loss of earnings, according to proof;

5.   Damages for loss of ability to provide household services, according to proof;

6.   Damages for Plaintiffs' other economic losses, according to proof;

7.   Damages for Plaintiffs' physical pain, mental suffering, and emotional distress, according to proof;

8.   Damages for Plaintiffs' other non-economic losses, according to proof;

-56-

COMPLAINT FOR PERSONAL INJURIES

9.   Exemplary or punitive damages according to proof;

10.   Damages for loss of consortium according to proof;

11.   Prejudgment interest, according to proof;

12.   Costs of suit incurred herein; and

13.   Such other an further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and related provisions of law.

**DATED**: May 31, 2012                               BARON & BUDD, P.C.

                                                      By: _Tiffany Dickenson_____
                                                          TIFFANY DICKENSON, ESQ.
                                                          Attorney for Plaintiffs

-57-

COMPLAINT FOR PERSONAL INJURIES