Kevin M. Jordan (Texas State Bar No. 11014800)
Andrew J. Yoder (Texas State Bar No. 24051552)
Foster C. Johnson (Texas State Bar No. 24076463)
BAKER BOTTS L.L.P.
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002
(713) 229-1827
(713) 229-2827
kevin.jordan@bakerbotts.com
drew.yoder@bakerbotts.com
foster.johnson@bakerbotts.com

ATTORNEYS FOR DEFENDANT
UNION CARBIDE CORPORATION

Molly J. Mrowka (Cal. Bar No. 190133)
HARTMAN, BLACKSTOCK & MOORE
182 Howard Street #414
San Francisco, California 94105
(415) 658-7446
(415) 963-3471 (fax)
molly.mrowka@andrewshartman.com

ATTORNEYS FOR DEFENDANT
MONTELLO, INC.

## BEFORE THE JUDICIAL PANEL ON
## MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE:  ASBESTOS PRODUCTS LIABILITY LITIGATION<br><br>(NO VI)<br><br>This Document Relates To:<br><br>*Robert F. Lyman and Samantha Lyman v. Asbestos Defendants,*<br><br>Transferred from the United States District Court for the Northern District of California Cause No. C-07-4240-SBA | Consolidated Under MDL 875  (2:01-md-00875-ER)<br><br>Before the United States District Court For the Eastern District of Pennsylvania<br><br>Hon. Eduardo C. Robreno E.D. PA No.  2:09-cv-62999-ER<br><br>**JOINT MOTION TO VACATE CONDITIONAL REMAND ORDER AND BRIEF IN SUPPORT** |

**ORAL ARGUMENT REQUESTED**

TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 2

A.     Factual and procedural background .................................................................. 2

B.     Plaintiffs' failure to submit compliant expert witness reports, produce witnesses,
       or otherwise comply with the federal discovery rules. ...................................... 5

ARGUMENT ........................................................................................................................ 9

A.     The Court has not ruled upon Defendants' objections to Judge Rueter's January
       19, 2011, order denying Defendants' motion to exclude testimony of  Plaintiffs'
       expert witnesses. .............................................................................................. 9

B.     Discovery is not yet complete. ......................................................................... 10

C.     Premature remand defeats the purpose of the Multidistrict Litigation Act because
       the expert issues here are capable of arising in hundreds of the consolidated cases. ......... 14

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................... 22

INDEX OF EXHIBITS ....................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anderson v. Asbestos Corp.*,
No. 05-2-04551-5 SEA (Wash. Super. Ct. Oct. 31, 2006) .....................................................16

*Andrews v. Foster Wheeler LLC*,
138 Cal.App.4th 96 (2006) .....................................................................................................16

*Borel v. Fibreboard Paper Prods. Corp.*,
493 F.2d 1076 (5th Cir. 1973) .................................................................................................2

*Bowersfield v. Suzuki Motor Corp.*,
151 F. Supp. 2d 625 (E.D. Pa. 2001) (DuBois, J.)..............................................................13

*Brooks v. Stone Architecture, P.A.*,
934 So.2d 350 (Miss. App. 2006).........................................................................................17

*Chavers v. Gen. Motors Corp.*,
79 S.W.3d 361 (Ark. 2002) .....................................................................................................3

*Close v. General Elec. Co., et al.*,
No. 2:09-CV-70107-ER, Order Granting Summary Judgment (Mar. 30, 2012)
(Robreno, J.) .........................................................................................................................16

*Coalition to Save Our Children v. State Bd. of Educ.*,
90 F.3d 752 (3d Cir. 1996) ...................................................................................................10

*Davis v. M. Slayen & Associates, Inc.*,
No. A112305, 2006 WL 2578925 (Cal. App. 2006) .............................................................16

*De Maria v. American Hawaiian S.S. Co.*,
No. A112176, 2006 WL 2037184 (Cal. App. 2006) .......................................................16, 17

*Fontes v. Interstate Brands Corp.*,
No. B224722, 2011 WL 4937445 (Cal. App. 2011) .......................................................16, 17

*Free v. Ametek*,
No. 07-2-04091-9 SEA, 2008 WL 728387 (Wash. Super. Ct. Feb. 28, 2008).......................16

*Ga.-Pac. Corp. v. Stephens*,
239 S.W.3d 304 (Tex. App. 2007)........................................................................................15

*Glassman v. U.S.*,
   No. C 02-5154 PJH, 2005 WL 1692615 (N.D. Cal. 2005) ....................................................17

*Gregg v. V-J Auto Parts, Inc.*,
   943 A.2d 216 (Pa. 2007) ..................................................................................................... 1

*In re Aqua Dots Prods. Liab. Litig.*,
   Nos. 08-C2364, 09-C7652, 2011 WL 3325783 (N.D. Ill. Aug. 2, 2011) .....................................11

*In re Armstrong World Industries, Inc.*,
   285 B.R. 864 (Bankr. D. Del. 2002) .....................................................................................17

*In re Baycol Prods. Litig.*,
   265 F.R.D 453 (D. Minn. 2008) ..........................................................................................19

*In re Bridgestone/Firestone, Inc.*,
   128 F. Supp. 2d 1196 (S.D. Ind. 2001) ..................................................................................11

*In re CBS Color Tube Patent Litig.*,
   342 F. Supp. 1403 (J.P.M.L. 1972) ...................................................................................... 9

*In re Grossman's, Inc.*,
   389 B.R. 384 (Bankr. D. Del. 2008) ..................................................................................... 3

*In re Gypsum Wallboard*,
   340 F. Supp. 990 (J.P.M.L. 1972) .......................................................................................10

*In re Heritage Bonds Litig.*,
   217 F.Supp. 2d 1369 (J.P.M.L. 2002) ................................................................................... 9

*In re Holiday Magic Sec. & Antitrust Litig.*,
   433 F. Supp. 1125 (J.P.M.L. 1977) ......................................................................................14

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
   407 F. Supp. 254 (J.P.M.L. 1976) .......................................................................................18

*In re Ivy*,
   901 F.2d 7 (2d Cir. 1990) ...................................................................................................19

*In re Silica Prods. Liab. Litig.*,
   398 F. Supp. 2d 563 (S.D. Tex. 2005) ...................................................................................18

*In re Wilson*,
   451 F.3d 161 (3d Cir. 2006) ................................................................................................14

*In re Zyprexa Prod. Liab. Litig.*,
   375 F. Supp. 2d 170 (E.D.N.Y. 2005) (Weinstein, J.) ...............................................................18

*In re Asbestos Products Liability Litig. (No. VI)*,
   614 F. Supp. 2d 550 (E.D. Pa. 2009) (Robreno, J.) ................................................ 10

*Kananian v. Lorillard Tobacco Co.*,
   878 N.E.2d 34 (Ohio 2007) ......................................................................................... 5

*Kananian v. Lorillard Tobacco Co.*,
   No. CV-442750, 2007 WL 4913164 (Ohio Ct. Com. Pl. Cuyahoga Co. Jan. 19,
   2007) ............................................................................................................................. 5

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
   523 U.S. 26 (1998) ...................................................................................................... 19

*Lindstrom v. A-C Prod. Liab. Trust*,
   424 F.3d 488 (6th Cir. 2005) ....................................................................................... 1

*Lohnes v. Level 3 Commc'ns, Inc.*,
   272 F.3d 49 (1st Cir. 2001) ......................................................................................... 13

*Newman v. Osteopathic, Inc.*,
   60 F.3d 153 (3d Cir. 1995) .......................................................................................... 12

*Rosenthal v. Unarco Indus., Inc.*,
   297 S.E.2d 638 (S.C. 1982) .......................................................................................... 2

*Sanders v. Shaw*,
   244 U.S. 317 (1917) ..................................................................................................... 20

*Short v. Sequoia Ventures, Inc.*,
   No. A121256, 2009 WL 1163841 (Cal. App. 2009) ................................................... 16

*Thibeault v. Square D. Co.*,
   960 F.2d 239 (1st Cir. 1992) ....................................................................................... 13

*U.S. v. Columbia/HCA Healthcare Corp.*,
   498 F. Supp. 2d 25 (D.D.C. 2007) .............................................................................. 19

*Walker v. Avondale Indus.*,
   999 So. 2d 735 (La. 2009) ........................................................................................... 16

## STATUTES

28 U.S.C. § 1407(a) ........................................................................................... 9, 14, 20

28 U.S.C. § 1441 ........................................................................................................... 5

28 U.S.C. § 1446 ........................................................................................................... 5

Federal Rule of Civil Procedure 37(c)(1) ........................................................... 10, 12

Federal Rule of Civil Procedure 26(a)(2) ................................................................. 1

Federal Rule of Evidence 702(b) ............................................................................ 16

## OTHER AUTHORITIES

Mark A. Behrens, *What's New in Asbestos Litigation?* 28 REV. LITIG. 500 (2009) ................... 15

Mark A. Behrens & Cary Silverman, *Punitive Damages in Asbestos Personal Injury Litigation: the Basis for Deferral Remains Sound,* 8 RUTGERS J.L. & PUB. POL'Y 50 (2010) ............................................................................................................. 2

Mark A. Behrens & William L. Anderson, *The "Any Exposure" Theory: An Unsound Basis for Asbestos Causation and Expert Testimony*, 37 SW. U. L. REV. 479 (2008) ......... 3, 15

David E. Bernstein, *Getting to Causation in Toxic Tort Cases*, 74 BROOK. L. REV. 51, 59 (2008) ............................................................................................................. 16

Paul Davies, *Plaintiffs' Team Takes Hit on Asbestos*, WALL ST. J., Jan. 20, 2007 ...................... 5

Helen Freedman, *Selected Ethical Issues in Asbestos Litigation*, 37 SW. U. L. REV. 511 (2008) ............................................................................................................. 2

Hon. John G. Heyburn II, *A View From the Panel: Part of the Solution*, 82 TUL. L. REV. 2225 (2008) ..................................................................................................... 13, 14, 18, 19

Matthew Hirsch, *Judge: Firm Submitted Fraudulent Claim Forms*, LEGAL INTELLIGENCER (PHILA.), Jan. 22, 2007 ..................................................................... 5

*Ohio Judge Bars Calif. Firm from His Court*, NAT'L L.J., Jan. 22, 2007. ..................................... 5

Sheila Jasanoff & Dogan Perese, *Welfare State or Welfare Court: Asbestos Litigation in Comparative Perspective*, 12 J.L. & POL'Y 619 (2004) ............................................... 2

*Seattle Jury Delivers Verdict for Caterpillar*, ANDREWS ASBESTOS LITIG. REP., Jan. 12, 2007 ............................................................................................................. 16

Statement Regarding Oral Argument

Pursuant to Rule 11.1 of the Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation, Defendants suggest that oral argument would benefit the disposition of this case.  This case involves both complex issues of law and a complicated procedural history involving multiple state and federal district courts.  Defendants believe oral argument is appropriate in these circumstances as an aid to the Court's decisional process.

**INTRODUCTION**

The objective of consolidating cases for multi-district litigation is to eliminate duplicative discovery in similar cases, avoid conflicting judicial rulings, and conserve valuable judicial resources. None of those purposes are served by granting remand in the underlying case.

For more than three years, Defendants Union Carbide and Montello have been attempting to depose Plaintiffs' expert witnesses. Plaintiffs have frustrated these efforts at every turn. Despite being heavily sanctioned for their misconduct, Plaintiffs have refused to turn over expert witness reports that comply with Federal Rule of Civil Procedure 26(a)(2). As a result, Defendants have been unable to take depositions, complete discovery, or prepare for trial—in this and many other pending cases involving the same set of expert witnesses.

Plaintiffs' causation argument rests upon a controversial theory known as the "any exposure" theory. Rather than assess dose, the experts who support this theory simply opine that any occupational or product-related exposure to asbestos fibers is sufficient—there is no minimum.[1] But in the last six years, more than a dozen courts in multiple jurisdictions have excluded or criticized the "any exposure" causation theory, either as unscientific under a *Daubert* or *Frye* analysis, or as insufficient to support causation. And because Plaintiffs' experts in the underlying case are the same testifying experts in hundreds of other cases currently pending in the MDL, discovery regarding their opinions raises issues common to actions throughout the MDL.

Accordingly, remand is inappropriate at this time for four primary reasons. First, the trial court has not, in fact, "adjudicated all outstanding motions" regarding expert discovery. (*See* Suggestion of

---

[1] *See Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 498 (6th Cir. 2005) ("[P]laintiffs-appellants fail to articulate a standard that they claim is more appropriate, saying only that '[o]nce the mesothelioma is diagnosed, it is impossible to rule out any of Mr. Lindstrom's exposures as being substantially contributory.'"); *Gregg v. V-J Auto Parts, Inc.*, 943 A.2d 216, 226 (Pa. 2007) ("We recognize that it is common for plaintiffs to submit expert affidavits attesting that any exposure to asbestos, no matter how minimal, is a substantial contributing factor in asbestos disease.").

Remand, filed June 4, 2012, at 1, attached as Exhibit A.)  Second, Plaintiffs have never complied with

Magistrate Judge Rueter's January 20, 2011 order to serve expert witness reports that comply with Rule

26.  (*See* Order of January 20, 2011, attached as Exhibit B.)  Third, and as a result, expert discovery has

not been completed.  Finally, because the "common core" of expert discovery issues raised by this case

potentially affects hundreds of other cases pending in the MDL, remand is both inefficient and

premature.  For these reasons, this case is by no means "prepared for trial without delay once on the

transferor court's docket," (Ex. A at 1), and the Panel should vacate its Conditional Remand Order.

STATEMENT OF FACTS

### A.    Factual and procedural background

Asbestos litigation is the "longest-running mass tort" in U.S. history.[2]  Since this litigation

emerged over three decades ago, asbestos plaintiffs' lawyers have perpetuated the litigation with ever-

mutating theories of recovery.   In the past, asbestos claims were typically brought by plaintiffs who

worked in professions involving high-dose exposures.  They were insulators, asbestos factory workers,

and textile workers.[3]  But as the primary manufacturers of asbestos went bankrupt, the nature of asbestos

litigation began to change.[4]  Now, an increasing number of plaintiffs are bringing claims for *de minimis*

or remote exposures, such as "shade tree" brake work on the family car or a single remodeling job using

---

[2]      Helen Freedman, *Selected Ethical Issues in Asbestos Litigation*, 37 SW. U. L. REV. 511 (2008).

[3]      *See, e.g.*, *Borel v. Fibreboard Paper Prods. Corp*., 493 F.2d 1076, 1081 (5th Cir. 1973) (noting that plaintiff was "an industrial insulation worker" suing "manufacturers of insulation materials containing asbestos"); *Rosenthal v. Unarco Indus*., *Inc*., 297 S.E.2d 638, 640 (S.C. 1982) (stating that this case was one of many pending South Carolina asbestos cases involving plaintiffs who were "industrial insulators, shipyard workers, or factory workers").

[4]      *See* Sheila Jasanoff & Dogan Perese, *Welfare State or Welfare Court: Asbestos Litigation in Comparative Perspective*, 12 J.L. & POL'Y 619, 628 (2004) ("Defendants' bankruptcies . . . have not dissuaded further asbestos mass tort claims as might have been expected.  Instead, plaintiffs' lawyers are filing even more claims . . . against defendants whose involvement with asbestos production is increasingly tangential.").  Today, at least one company in nearly every U.S. industry is involved in asbestos litigation. Mark A. Behrens & Cary Silverman, *Punitive Damages in Asbestos Personal Injury Litigation: the Basis for Deferral Remains Sound*, 8 RUTGERS J.L. & PUB. POL'Y 50, 61 (2010).

2

an asbestos-containing joint compound.[5]   The foundation for these cases is a controversial theory of causation known as "any exposure" theory.[6]   This is one such case.

The plaintiff in the underlying action, Robert F. Lyman, was a smoker for more than fifty years.[7] By his own admission, Lyman smoked up to three packs of cigarettes a day between 1955 and 2007. He also admitted that his wife had smoked one pack per day in his presence during the 36 years they had been married.  And at no time in his career, did Lyman ever directly work with asbestos products.

Lyman was diagnosed with lung cancer in October 2006.  He filed a personal injury suit in California state court against dozens of defendants on December 29, 2006, alleging that the cancer in his lungs was caused by exposure to asbestos, and not by the more than one million cigarettes he chose to smoke in his lifetime.  Among his many allegations, Lyman claimed exposure to asbestos-containing drilling mud additives during his employment as an oilfield delivery driver from 1981 to 1986.

Like many other companies, Union Carbide sold asbestos for use in drilling fluids (referred to in the industry as "drilling mud" ) through its exclusive oilfield distributor, Montello, from 1968 to 1985. Union Carbide's drilling mud additives were sold under several brand names including Super Visbestos and Univis.  Each of these products was packaged in dry form in 50-pound bags bearing distinctive logos.

Lyman's extensive deposition testimony and written discovery responses made clear that there was no factual basis for his claims against Union Carbide or Montello.  Lyman's primary job in the

---

[5]      *See, e.g.*,  *In re Grossman's, Inc*., 389 B.R. 384, 387 (Bankr. D. Del. 2008) (plaintiff alleged that exposure to asbestos-containing products during 1977 remodeling projects of her home caused her injuries); *Chavers v. Gen. Motors Corp*., 79 S.W.3d 361, 364 (Ark. 2002) (involving the estate of a self-described "shade tree mechanic" who alleged that exposure to manufacturers' asbestos-containing products while working on his and relatives' vehicles caused his mesothelioma).

[6]      Mark A. Behrens & William L. Anderson, *The "Any Exposure" Theory: An Unsound Basis for Asbestos Causation and Expert Testimony*, 37 Sw. U. L. Rev. 479, 480 (2008).

[7]      The underlying facts regarding the case are summarized from Union Carbide's Motion for Summary Judgment, attached as Exhibit C.

oilfield was as a tanker truck driver for Cudd Pressure Controls (1981-82) and Baker Hughes (1982-86). Lyman testified that while employed by Cudd he never witnessed the mixing of dry drilling mud additives.  Lyman also testified that, while working for Baker Hughes, he witnessed dry ingredients being mixed with liquid drilling mud in a revolving, fully enclosed tanker truck, which was then pumped into a mud tank.  But Lyman admitted that because he was so far away from where these ingredients were being mixed (typically 40-50 feet), he was unable to identify any of the manufacturers, suppliers, distributors, or brand names of the alleged dry ingredients.  Nor did Lyman know the composition of the materials which were being added to the mixing truck, and therefore he could not and did not testify that asbestos was one of materials being added to the drilling mud.  As his attorneys were aware, this evidence was fatal to the Lyman's claims because without product identification testimony, Lyman could not establish exposure to any Union Carbide product.

Union Carbide and Montello moved for summary judgment in California state court in June and July 2007.  In response, Lyman filed declarations stating that he now clearly remembered seeing asbestos drilling mud products in the oilfield.  Coincidentally, the products he recalled—Univis and Super Visbestos— just happened to have been marketed by the only two oilfield defendants remaining in his case.  Lyman's declarations flatly contradicted his prior testimony given over the course of seven days of deposition.[8]

Of the 42 companies specifically named as defendants in Lyman's original complaint, only five remained by the time the case was called to trial in August 2007.[9]  On August 17, 2007, before opening

---

[8]    In a bumbling attempt to create a fact issue, Lyman first submitted a signed declaration in opposition to Montello's motion in which Lyman identified no product by name.  Lyman admitted that that "sometime after my deposition *my attorney called me to discuss these products* . . . [and] *refreshed my memory by telling me* how Montello described their products."  Lyman subsequently submitted an enhanced, unsigned declaration in opposition to Union Carbide's motion in which he specifically described Montello products by name that he had never mentioned or recalled during seven days of depositions.  (Exhibit C, at 15-16).

[9]    Defendants were two of the five defendants remaining after all others settled or were dismissed.

statements were made in the trial court, Union Carbide removed the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1441 and 1446, based upon the existence of complete diversity between the Lymans and the remaining defendants.  The case was subsequently transferred to MDL 875 pending in the United States District Court for the Eastern District of Pennsylvania before the Hon. Eduardo C. Robreno.

**B.**   **Plaintiffs' failure to submit compliant expert witness reports, produce witnesses, or otherwise comply with the federal discovery rules.**

Expert discovery commenced in this case in 2007.[10]  Since that time there have been numerous discovery disputes regarding Plaintiffs' misconduct, ultimately resulting in serious sanctions for their trial counsel, Brayton Purcell.[11]

On December 3, 2009, the Court entered an Amended Scheduling Order that required Plaintiffs to complete and serve all economic and medical causation reports by March 2, 2010.  (*See* Amended Scheduling Order, filed December 3, 2009, attached as Exhibit E).  Plaintiffs failed to comply with this court-ordered deadline.  Instead, on March 3, 2010, one full day after the deadline, Plaintiffs served copies of two documents from 2007 authored by Barry Ben-Zion, Ph.D, and Daniel M. Raybin, M.D.,

---

[10]     The following facts are summarized from Defendants' Objections to Order of United States Magistrate Entered January 19, 2011, attached as Exhibit D.

[11]     Plaintiffs' counsel, Brayton Purcell, is no stranger to controversy regarding their discovery practices.  In January 2007, Cleveland, Ohio Judge Harry A. Hanna, who runs Ohio's asbestos MDL docket, barred Brayton Purcell, a prominent California asbestos personal injury firm, from practicing before his court after he found that the firm and one of its partners had failed to abide by the rules of the court proscribing dishonesty, fraud, deceit, and misrepresentation.  *Kananian v. Lorillard Tobacco Co.*, No. CV-442750, 2007 WL 4913164 (Ohio Ct. Com. Pl. Cuyahoga Co.. Jan. 19, 2007).  In a harshly worded opinion, Judge Hanna listed more than a dozen instances where Brayton attorneys "either lied to the court, intentionally withheld key discovery materials, or distorted the degree of asbestos exposure alleged."  Paul Davies, *Plaintiffs' Team Takes Hit on Asbestos*, WALL ST. J., Jan. 20, 2007, at A4; *see also Ohio Judge Bars Calif. Firm from His Court*, NAT'L L.J., Jan. 22, 2007, at 3 ("An Ohio state court judge barred . . . Brayton Purcell and one of its lawyers from appearing in that court due to their alleged dishonesty in litigating a mesothelioma case."); Matthew Hirsch, *Judge: Firm Submitted Fraudulent Claim Forms*, LEGAL INTELLIGENCER (PHILA.), Jan. 22, 2007, at 4.  Judge Hanna's ruling was upheld by the Ohio Supreme Court.  *Kananian v. Lorillard Tobacco Co.*, 878 N.E.2d 34 (Ohio 2007).

that were described as "medical reports."[12]   Neither of these reports complied with the mandatory disclosure requirements of Rule 26(a)(2)(B), and Plaintiffs served no supplemental reports, apparently planning to provide them only when the case was remanded for trial, long after discovery had closed.[13]

As the period for expert discovery was coming to a close, Defendants sought to independently verify that Plaintiffs' experts had reviewed no additional evidence and developed no additional opinions following their 2007 depositions.  Accordingly, Union Carbide noticed the telephonic depositions of Dr. Samuel Hammar and Dr. William Salyer in order to verify that neither expert had reviewed any further information or developed additional opinions since they were deposed in July and August 2007.

On June 29, 2010, the deposition of Dr. Hammar was commenced, with counsel for Union Carbide asking Dr. Hammar whether he had done any work on the case since he was deposed in August 2007.  Dr. Hammar stated that, indeed, he had conducted additional review of Lyman's pathology material, which was provided to him in 2009.  Not only had Dr. Hammer reviewed a box of pathologic specimens harvested following Lyman's death in May 2008; Dr. Hammar had, in fact, developed additional opinions based upon his review of this additional pathology material.  Furthermore, Dr. Hammar revealed that his additional opinions were contained in a supplemental report, which was single-spaced and nine pages in length.  And Dr. Hammar stated that he had provided a copy of this new report to Plaintiffs' counsel in early November 2009.  Subsequently, Defendants discovered that Plaintiffs had also withheld a 2008 supplemental report by Dr. William Salyer as well.[14]

---

[12]     These "reports" were entirely deficient under Rule 26, providing no guidance as to the opinions or conclusions that Plaintiffs' experts would be offering at trial.  (*See* Ex. D at 2).

[13]     Plaintiffs later argued that under the federal discovery rules they had no obligation to produce "testifying expert witness reports" during pre-trial discovery, an argument Magistrate Judge Rueter dismissed as "frivolous."  (*See* Ex. D at 5-6).

[14]     During this same period, Plaintiffs also refused to make one of their key fact witnesses, David Weatherford, the only co-worker of Lyman ever identified by Plaintiffs, available for deposition.  On no fewer than six occasions, Defendants asked for deposition dates or contact information for all fact witnesses, including Mr. Weatherford.  (*See* Declaration of Andrew J. Yoder, attached as Exhibit F).  Despite repeated

Because the deadline for conducting expert depositions under the Amended Scheduling Order had arrived, Defendants had no choice but to file a motion and seek relief from the Court. Accordingly, Defendants filed their original Joint Motion to Exclude Testimony of Plaintiffs' Expert Witnesses, requesting that the Court exclude the testimony of all those witnesses whose expert reports Plaintiffs had failed to disclose by the March 2, 2010 deadline.

On September 23, 2010, Magistrate Judge Rueter entered an Order sanctioning Brayton Purcell for its misconduct and requiring Plaintiffs to serve all expert reports that had not previously been served within seven days of the date of the September 23 Order. (*See* Order of Sept. 23, 2010, Doc. 47, attached as Exhibit H).[15] The Order noted that "Plaintiffs' attorneys [have] violated the terms of this court's Amended Scheduling Order and have proffered frivolous reasons for doing so." (Ex. H, at 2.). The September 23 Order also modified the scheduling order to provide that expert depositions be completed by November 30, 2010, and expressly provided that "[a]ny and all experts retained by plaintiffs whose reports are not disclosed within seven (7) days of the date of this Order are excluded from offering any opinions at trial, including oral testimony and prior deposition testimony." (*Id.*)

---

requests, Brayton never provided dates or contact information for any fact witnesses, including Mr. Weatherford. *Id.* The transferee court subsequently ordered Plaintiffs to provide defense counsel with the identity and whereabouts of any fact witnesses no later than November 27, 2009. No such information was provided. Instead, on November 30, 2009, Plaintiffs' counsel sent a letter stating that they intended to call Weatherford as a fact witness and that he could be reached "c/o Brayton Purcell LLP." (*See* November 30, 2009 Letter from Frank Anders, attached as Exhibit G). As Brayton was aware, knowing that Weatherford could be reached through their offices did not resolve the issue of where he resided, making it impossible for Defendants to serve him with the requisite deposition subpoena. Despite repeated attempts by Defendants to schedule a deposition for Weatherford between December 2009 through the discovery cut-off on February 2, 2010, Plaintiffs' counsel refused to schedule a deposition with Weatherford. (Ex. D). To date, Plaintiffs have never provided deposition dates, addresses, or telephone numbers for any non-party fact witness. *Id.*

[15]      Judge Rueter ordered in part that Brayton pay all of Union Carbide's reasonable expenses in connection with bringing the motion to exclude testimony. Rather than pay, Brayton instead chose to re-litigate this dispute over a period of almost 17 months. Magistrate Judge Rueter ultimately entered a second Order on February 3, 2012, awarding Union Carbide and Montello a combined total of $21,351.00 as sanctions for Brayton's misconduct. (*See* Memorandum Order of February 3, 2012, attached as Exhibit I).

Once more, Plaintiffs failed to comply with the Court's discovery order. Instead, on October 1, 2010, Plaintiffs provided Defendants with a plethora of disorganized documents that purported to be the expert reports of eight witnesses. Only two of these reports met the plain requirements of Rule 26(a)(2)(B), while the remaining six documents were so deficient that they provided little, if any, value in preparing for deposition.[16] For example, the report of Dr. Arnold Brody contained little more than a short list of various topics about which he might testify, but revealed no opinions whatsoever. (*See* September 29, 2010 Letter from Arnold Brody to Nancy Williams of Brayton Purcell, attached as Exhibit J.) As for William Salyer, M.D., his report consisted of largely indecipherable, handwritten scribbles. (*see* Medical Expert Reports of Dr. William Salyer, attached as Exhibit K).

Presented with these reports, Defendants filed a renewed motion requesting that the Court exclude the new reports because of Plaintiffs' failure—yet again—to comply with Rule 26(a)(2)(B). On January 19, 2011, after holding a telephonic conference on the renewed motion and Plaintiffs' response, the Magistrate entered the January 19 Order denying the renewed motion and requiring Plaintiffs to file supplemental reports within twenty-one days for those experts whose reports did not fully comply with Rule 26(a)(2)(B). The Magistrate, however, also denied a request to extend discovery to allow Defendants to complete deposition of Plaintiffs' experts. Accordingly, on February 2, 2011, Defendants filed Objections to the Magistrate's Order with Judge Robreno in the District Court. This motion remains pending. Seventeen months later, Plaintiffs have still not produced compliant expert reports for eight of their ten designated expert witnesses.

---

[16]     The new reports were those of: 1) Mr. Charles Ay; 2) Arnold Brody, M.D.; 3) Kenneth Cohen, C.I.H.; 4) Richard Cohen, M.D.; 5) Daniel Raybin, M.D.; and 6) William Salyer, M.D. Only the reports of prior witnesses Barry Ben-Zion and Samuel Hammar facially complied with Rule 26.

ARGUMENT

The power to remand a case to the transferor court lies solely with the Judicial Panel on Multidistrict Litigation. See 28 U.S.C. § 1407(a) ("Each action . . . transferred [by the Panel] shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred."). In determining whether to issue a suggestion for remand to the Panel, a transferor court should be guided by the standards for remand employed by the Panel under which remand is inappropriate when continued consolidation will "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Heritage Bonds Litig.*, 217 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002).

Here, discovery is not complete, and there is an outstanding motion that needs to be considered and ruled upon. Moreover, the expert discovery sought by Defendants relates to dispositive issues common to hundreds of other cases pending in MDL 875. Remand, therefore, is premature.

**A.    The Court has not ruled upon Defendants' objections to Judge Rueter's January 19, 2011, order denying Defendants' motion to exclude testimony of Plaintiffs' expert witnesses.**

Remand is inappropriate where, as here, the transferee court has not yet ruled on all outstanding pretrial motions. *In re CBS Color Tube Patent Litig.*, 342 F. Supp. 1403, 1405 (J.P.M.L. 1972) ("In view of the pendency of [the outstanding pretrial] motion, we expressly refrain from granting . . . remand and interfering in matters within the discretion of the transferee judge.").

On February 2, 2011, Union Carbide and Montello filed joint objections to the order of United States Magistrate Judge Thomas Rueter entered on January 19, 2011 (Ex. D), requesting that the district court set aside the January 19, 2011 order and grant Defendants' renewed motion to exclude certain of Plaintiffs' expert witnesses, or, alternatively, that the court modify the January 19 order to allow

9

Defendants adequate time to depose Plaintiffs' expert witnesses.[17]  The district court has never ruled on the merits of that motion, and, accordingly, remand is inappropriate pursuant to both this Court's prior decisions and MDL 875 Administrative Order No. 18.[18]

    With discovery so close to completion, and given the transferee court's familiarity with the issues in this case, it neither makes sense nor serves judicial economy for the case to be remanded to a district court judge with no knowledge of this history and no prior participation in discovery.  Further, the transferee court is in the best position to evaluate the merits of Defendants' motion to exclude Plaintiffs' expert witnesses and resolve the other outstanding discovery disputes.  Finally, Judge Robreno's familiarity with this litigation serves the MDL's underlying purpose by affording the parties the opportunity for a more expeditious resolution of these pretrial matters than would be available in the transferor court.  Accordingly, remanding this case before Judge Robreno has ruled on Defendants' outstanding motion would not "promote the just and efficient conduct of this litigation."  *In re Gypsum Wallboard*, 340 F. Supp. 990, 992 (J.P.M.L. 1972).

## B.    Discovery is not yet complete.

    The decision whether to remand a case prior to the conclusion of pretrial proceedings "generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the

---

[17]    Under Rule 37(c), Plaintiffs' failure to timely disclose expert reports precludes them from relying upon those experts at trial unless their failure was substantially justified or harmless.  *See* FED. R. CIV. P. 37(c)(1).  Here, there is no basis for any argument that Plaintiffs' failure to disclose was either substantially justified or harmless.  Accordingly, Defendants filed their outstanding motion with the transferee court seeking exclusion of all Plaintiffs' experts who failed to serve Rule 26-compliant reports.  *See Coalition to Save Our Children v. State Bd. of Educ.*, 90 F.3d 752, 775-76 (3d Cir. 1996) (noting that "[e]xclusion of testimony is an appropriate sanction for failure to supplement in a timely manner" and upholding district court's exclusion of experts from trial).

[18]    MDL 875 Administrative Order 18 lists "factors the Court will consider" before suggesting remand to the Panel.  *See In re Asbestos Prods. Liab. Litig. (No. VI)*, 614 F. Supp. 2d 550, 551 n.8 (E.D. Pa. 2009) (Robreno, J.).  Among those factors are (1) whether a Rule 26(f) report has been submitted to the Court, (2) whether the injured plaintiff is alive, (3) whether all relevant discovery has been substantially completed, (4) whether all outstanding motions have been resolved, and (5) whether, if the case was remanded, the case is "prepared for trial without delay once on the transferor court's normal docket."  *Id.* at 552.  None of those conditions are satisfied here.

MDL." *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001).  Here, remand is also inappropriate because "[e]xpert discovery regarding issues common to all actions has yet to be completed."  *In re Aqua Dots Prods. Liab. Litig.*, Nos. 08-C2364, 09-C7652, 2011 WL 3325783 at *1 (N.D. Ill. Aug. 2, 2011) (internal quotations omitted).

>    1.    **Plaintiffs still have not complied with Judge Rueter's January 19, 2011, discovery order requiring them to produce supplemental reports for all expert witnesses.**

Magistrate Judge Rueter's January 19, 2011, order required "that within twenty-one days of this order, plaintiffs shall file Supplemental Reports" for all of their expert witness reports which "d[id] not fully comply with Fed. R. Civ. P. 26(a)(2)(B)."  (Doc. No. 60).  More than seventeen months later, Plaintiffs still have not complied, frustrating both Judge Rueter's order and the underlying purpose of the MDL docket to prepare cases for trial.

On February 9, 2011, Plaintiffs provided Defendants with supplemental disclosures pursuant to Judge Rueter's order.  But these disclosures included supplemental reports for only four of their eight witnesses: Charles Ay, Kenneth S. Cohen, Richard Cohen, M.D., and William Salyer, M.D.  None of these reports complied with all, and most failed several, of the requirements for Rule 26.  Further, despite being explicitly required by Magistrate Rueter's January 19 Order to supplement all deficient expert reports within 21 days, Plaintiffs failed to provide *any* supplemental disclosures for Dr. Arnold Brody, John Fening, James Millette, and Dr. Daniel Raybin.[19]

Counsel for Union Carbide wrote Plaintiffs on March 11, 2011, requesting that these deficiencies be corrected by providing the required disclosures pursuant to Rule 26 for *all* expert witnesses.  (*See* March 11, 2011 Letter from Andrew Yoder to Kimberly Chu, attached as Exhibit L; March 14, 2011 Letter from Molly Mrowka to Brayton Purcell counsel joining in Andrew Yoder's

---

[19]    Reports of Plaintiffs' two other expert witnesses—Barry Ben-Zion and Dr. Samuel Hammar—comply facially with the requirements of Rule 26.

correspondence, attached as Exhibit M.)  Union Carbide received no response to this request.  Despite

multiple court orders mandating that Plaintiffs comply with Rule 26, Plaintiffs still have not met their

basic obligations under the federal discovery rules to provide adequate expert reports.  As both Plaintiffs

and this Court are aware, without complete expert reports, Defendants cannot effectively prepare for

trial.  Remand is therefore inappropriate until such time that either Plaintiffs comply with Judge Rueter's

outstanding January 19 Order or the transferee court orders that Plaintiffs' expert witnesses be precluded

from testifying at trial as sanction for Plaintiffs' continued disobedience of both its authority and the

Federal Rules of Civil Procedure.

> **2.      Discovery is not yet complete as a result of Plaintiffs' failure to comply with Judge Rueter's orders.**

Expert discovery and Daubert hearings are routine pretrial matters in the MDL.  (*See* MDL-875

Case Management Flow Chart, attached as Exhibit N).  But as a result of Plaintiffs' refusal to comply

with Judge Rueter's orders, Defendants are now faced with the prospect of confronting the testimony of

ten expert witnesses for which they have received, to date, only two compliant reports out of the ten

reports required by the language of Rule 26 and numerous, unequivocal court orders.  If Plaintiffs are

not forced to comply with Rule 26, Defendants will have to face these witnesses at trial without having

been afforded the opportunity to depose these experts on the basis of the full opinions they will offer at

trial.  Likewise, Defendants will have been deprived of the opportunity to challenge the admissibility of

this testimony through substantive Daubert review.  Perversely, this state of affairs is the direct result of

Plaintiffs' willful refusal to fulfill their responsibilities under the Federal Rules of Civil Procedure.

Under Rule 37(c), Plaintiffs' failure to timely disclose expert reports precludes them from

relying upon those experts at trial unless their failure was substantially justified or harmless.  *See* FED. R.

CIV. P. 37(c)(1).  But even when exclusion of expert testimony is warranted, as it is here, the district

court has discretion to fashion an alternative remedy to fit the circumstances of the case.  *See Newman v.*

*Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995).  In similar circumstances, other courts have determined that re-opening discovery to allow depositions to be taken is the appropriate remedy to mitigate the prejudice of allowing expert testimony that is subject to preclusion.  *See Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 630 (E.D. Pa. 2001) (DuBois, J.).  Should the transferee court decline to exclude Plaintiffs' expert witnesses, that same remedy is appropriate here.

Further, equity demands that the Panel not reward Plaintiffs for their intentional failures to comply with the discovery rules by refusing Defendants the opportunity to depose their experts on the opinions that Plaintiffs will elicit at trial.  The expert disclosure rules are meant to promote disclosure of the basic issues and facts of the case to the broadest practical extent.  *See Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir. 1992).  To this end, the rules were specifically designed to eradicate the type of unfair tactical advantage gained by delaying or making inadequate disclosures to deprive opponents of the opportunity to depose experts, challenge their credentials, and prepare defenses based on full evaluations of their conclusions.  *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001).

Should the testimony of Plaintiffs' expert witnesses be allowed without an opportunity for Defendants to depose them before trial, this is precisely what will occur.  As a result of the January 19 order, Defendants are left with no opportunity to fully evaluate or test the conclusions and credentials presented by Plaintiffs' witnesses in their supplementation of the new reports.  The Panel should not allow Plaintiffs to shield their experts from deposition through a willful refusal to comply with the transferee court's discovery orders and their own responsibilities under the Rules.  Accordingly, the Panel should vacate its conditional remand order so that the transferee court may consider Defendants request to modify the January 19 order to allow Defendants an additional 120 days (approximately the period allowed under the Amended Scheduling Order) to complete depositions of Plaintiffs' expert witnesses and prepare Daubert challenges.

13

**C.** **Premature remand defeats the purpose of the Multidistrict Litigation Act because the expert issues here are capable of arising in hundreds of the consolidated cases.**

Chairman Heyburn has observed that the "Panel's purpose is to benefit the judicial system and the litigants as a whole, not any particular party."  Hon. John G. Heyburn II, *A View From the Panel: Part of the Solution*, 82 TUL. L. REV. 2225, 2237 (2008).  To that end, "the Panel considers that eliminating duplicate discovery in similar cases, avoiding conflicting judicial rulings, and conserving valuable judicial resources are sound reasons" for proceeding in an MDL transferee court.  *Id.* at 2236 (citing 28 U.S.C. § 1407(a)).  Most importantly, Congress has declared that proceeding in the transferee court is "for the convenience of parties and witnesses and [to] promote the just and efficient conduct of [the] actions" proceeding there.  28 U.S.C. § 1407(a).

Only when the MDL court's "role under Section 1407 [has] ended" does remand to the transferor court promote the purpose of the Act.  *See In re Holiday Magic Sec. & Antitrust Litig.*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977).  Here, significant issues regarding Plaintiffs' experts are still unresolved.  Because these issues effect not just this case but potentially *hundreds* of cases remaining in the MDL, the underlying purposes of consolidation are not served by remand at this time.  *In re Wilson*, 451 F.3d 161, 172 (3d Cir. 2006) (holding that remand is inappropriate when "substantive issues in [expert] discovery overlap[ping]" with hundreds of consolidated cases are unresolved).

Plaintiffs' counsel, Brayton Purcell, currently has over 200 cases pending in the MDL.  (*See* Summary of Open Brayton Purcell Cases in MDL 875, attached as Exhibit O).  Brayton Purcell has designated the same expert witnesses in this case in all these other cases as well.  (*See* Master Designation of Expert Witnesses on Behalf of All Plaintiffs Represented by Brayton Purcell LLP Pursuant to General Order No. 156, attached as Exhibit P).  Likewise, because this same small group of experts is utilized by most other asbestos plaintiffs' firms, Defendants face these same experts in hundreds of other pending actions in the MDL brought by law firms other than Brayton Purcell.  (*See*

Ex. F ¶ 12).   Thus, the expert discovery and exclusion issues that Defendants have raised before Judge Robreno in this case potentially reach the majority of the consolidated cases.

Plaintiffs' causation argument rests upon a controversial theory known as "any exposure" theory (or sometimes called the "single fiber" theory).   The experts who support this theory argue that *any* occupational or product-related exposure to asbestos fibers is sufficient—there is no minimum.[20]   The theory allows plaintiffs' counsel to sue thousands of defendants every year whose supposed "contribution" to plaintiffs' asbestos exposure is trivial and far below the dose actually known to cause or increase the risk of disease, while at the same time excluding from causation other background exposures to millions of fibers.

In the last six years, however, more than a dozen courts in multiple jurisdictions have excluded or criticized "any exposure" causation theory, either as unscientific under a *Daubert* or *Frye* analysis, or as insufficient to support causation.[21]   For example, in *Borg-Warner Corp. v. Flores*, an asbestos case brought by a retired brake mechanic, the Texas Supreme Court rejected the idea that mere proof of exposure is sufficient for causation.   232 S.W.3d 765, 773-74 (Tex. 2007).   The court held that in order to prove causation a plaintiff must show "[d]efendant-specific evidence relating to approximate dose to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease."   *Id.* at 773.

Relying on that decision, a Texas appellate court in a mesothelioma case rejected the testimony of Plaintiffs' lead medical expert, Dr. Samuel Hammar, that *any* dry wall exposures above 0.1 fibers/cc year would be a substantial contributing factor to disease.   *Ga.-Pac. Corp. v. Stephens*, 239 S.W.3d 304, 320-21 (Tex. App. 2007) (holding that medical experts had "failed to show" that the "'any exposure'

---

[20]        *See supra* note 1.

[21]        Behrens, *What's New in Asbestos Litigation?* 28 REV. LITIG. 500, 529 (2009); *see also* Behrens & Anderson, *The "Any Exposure" Theory, supra* note 6, at 480.

theory is generally accepted in the scientific community").  Similarly, two Washington State trial court decisions by different judges have also rejected Dr. Hammar's expert testimony in heavy equipment cases that every asbestos exposure was a substantial factor in causing mesothelioma.[22]

More recently the testimony of Plaintiffs' industrial hygienist, Kenneth Cohen, has been excluded by the Louisiana Supreme Court, five different California courts of appeals, and by Judge Robreno in a different asbestos case before the MDL.[23]  These decisions were unequivocal.  One California court, for example, affirmed the exclusion of Cohen's testimony "on the grounds, among others, that they lacked foundation and were 'completely speculative.'"[24]  Likewise, the breadth of alleged exposures and diseases covered by these cases demonstrates that the "any exposure" theory is failing across the spectrum of asbestos cases, regardless of disease and type of exposure.[25]

---

[22]    *See Free v. Ametek*, No. 07-2-04091-9 SEA, 2008 WL 728387, at *4 (Wash. Super. Ct. Feb. 28, 2008) (noting that there is no scientifically established safe level of exposure to asbestos, so doctors could not testify that "any exposure at the level of 0.1 fibers/cc yr or less is a substantial contributing factor to the development of mesothelioma"); *Anderson v. Asbestos Corp.*, No. 05-2-04551-5 SEA, slip op. at 144-45 (Wash. Super. Ct. Oct. 31, 2006); *see also Seattle Jury Delivers Verdict for Caterpillar*, ANDREWS ASBESTOS LITIG. REP., Jan. 12, 2007, at 5 (stating that court granted Caterpillar's challenge to certain causation opinion of Dr. Hammar and precluded Dr. Hammar from testifying that every exposure to asbestos-containing products was a substantial contributing factor of plaintiff's mesothelioma).

[23]    *See Walker v. Avondale Indust.*, 999 So. 2d 735 (La. 2009); *Fontes v. Interstate Brands Corp.*, No. B224722, 2011 WL 4937445 at *8 (Cal. App. 2011); *Andrews v. Foster Wheeler LLC*, 41 Cal. Rptr. 3d 229, 242 (Cal. App. 2006) (holding that the Cohen declaration lacked sufficient factual basis and offered virtually no explanation beyond the most general of statements about his work); *Short v. Sequoia Ventures, Inc.*, No. A121256, 2009 WL 1163841 at *5 (Cal. App. 2009); *De Maria v. American Hawaiian S.S. Co.*, No. A112176, 2006 WL 2037184 at *4 (Cal. App. 2006); *Davis v. M. Slayen & Associates, Inc.*, No. A112305, 2006 WL 2578925 at *3 (Cal. App. 2006) (affirming district court's exclusion of Cohen's testimony as "too speculative"); *Close v. General Elec. Co., et al.*, No. 2:09-CV-70107-ER, Order Granting Summary Judgment (Mar. 30, 2012) (Robreno, J.) (holding that Cohen's testimony "d[id] not meet the requirement of Federal Rule of Evidence 702(b), which requires that expert testimony be based on 'sufficient facts or data.'").

[24]    *Fontes*, 2011 WL 4937445 at *8.

[25]    *See* David E. Bernstein, *Getting to Causation in Toxic Tort Cases*, 74 BROOK. L. REV. 51, 59 (2008) ("The recent, increasingly strict exposure cases . . . reflect a welcome realization by state courts that holding defendants liable for causing asbestos-related disease when their products were responsible for only de minimis exposure to asbestos, and other parties were responsible for far greater exposure, is not just, equitable, or consistent with the substantial factor requirements of the *Restatement (Second) and Lohrmann [v. Pittsburg Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986)].").

Both Hammar and Cohen are just two among a group of expert witnesses that Plaintiffs' counsel, Brayton Purcell, regularly employs in litigating such "any exposure" asbestos cases.  Indeed, the same ten expert witnesses that Brayton has designated for testimony in this case are also designated as testifying expert witnesses in hundreds of similar actions that Brayton is pursuing in the MDL against defendants including Union Carbide and Montello.  And like Hammar and Cohen, the majority of Brayton's other experts have also been disqualified by numerous courts.[26]  But in *this* case, Plaintiffs' actions have prevented Defendants from challenging these experts or preparing defenses based on their conclusions.  Consequently, Defendants have been deprived of their rightful opportunity to exclude these experts' testimony on grounds similar to those in the many cases cited above.

The potential exclusion of these experts in pretrial challenges affects not just the underlying case but also many other cases currently pending in the MDL.  As a review of PACER confirms, Union Carbide and Montello are currently defending themselves in over 3,600 individual lawsuits consolidated in the MDL 875 docket in the Eastern District of Pennsylvania.  (*See* Ex. F).  The experts employed by Brayton in this case have been designated to testify in many—if not the majority—of these 3,600 lawsuits, as well as numerous other actions in the MDL in which Union Carbide and Montello have not been named.  (*See* Exs. F, O).  Moreover, because the exclusion of Plaintiffs' experts in the underlying case would likely result in dozens—if not hundreds—of similar exclusions, Plaintiffs' obstructionism in

---

[26]    *See, e.g., De Maria v. American Hawaiian S.S. Co.*,  2006 WL 2037184 at *4 (Cal. Ct. App. 2006) (excluding Charles Ay's testimony as "conjecture based upon inferences flowing from generalities"); *In re Armstrong World Industries, Inc.*,  285 B.R. 864, 871 (Bankr. D. Del. 2002) (excluding testimony of Dr. James Millette as being "based on nothing more than subjective belief and sheer speculation"); *Brooks v. Stone Architecture, P.A.*, 934 So. 2d 350, 355 (Miss. App. 2006) (rejecting testimony of Dr. Arnold Brody as insufficient to defeat summary judgment because "he did not know who the [plaintiffs] were, nor had he reviewed any materials relating to them in any way"); *Fontes v. Interstate Brands Corp.*, No. B224722, 2011 WL 4937445 at *8 n.11 (Cal. Ct. App. 2011) (affirming trial court that rejected Richard Cohen's testimony in its entirety); *Glassman v. U.S.*, No. C 02-5154 PJH, 2005 WL 1692615 at *12 (N.D. Cal. 2005) (rejecting testimony of Barry Ben-Zion).

this regard has frustrated the very purpose for which multidistrict consolidation was ordered in the first place.[27]

Remanding a case like this one that is nowhere near ready for trial not only frustrates the purpose of Section 1407—it actually defeats that purpose.  First, because the Plaintiffs use the same experts in many related suits against other defendants, remanding this case for trial before those experts have adequately disclosed their conclusions, methods, and credentials defeats the aims of "eliminating duplicate discovery in similar cases" and "conserving valuable judicial resources."[28]  The result is that these experts will need to be deposed in the various transferor courts before any of the related cases can go to trial.  Remanding such cases when outstanding discovery remains is "premature" and "frustrate[s] the purpose of the MDL procedures which are designed to prevent unnecessary duplicative discovery work by transferor courts."  *In re Zyprexa Prod. Liab. Litig.*, 375 F. Supp. 2d 170, 172 (E.D.N.Y. 2005) (Weinstein, J.).

Second, premature remand in this case gives Plaintiffs a significant substantive advantage because the case returns to the Northern District of California for immediate trial with no ruling on Defendants' renewed motion to exclude the testimony of certain of the expert witnesses.  Giving one party a substantive advantage defeats the aim of "benefit[ting] the judicial system and the litigants *as a whole*, *not any particular party*."[29]

Third, premature remand defeats the goal of the MDL to "insure the maximum efficiency for all parties and the judiciary"  by minimizing both the sheer number of rulings required and any

---

[27]    Defendants' point in this regard is well taken.  A similar controversy regarding inadequate expert witnesses resulted in hundreds of case dismissals and multiple expert disqualifications in the silica MDL before Judge Janis Graham Jack.  *See In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563 (S.D. Tex. 2005) (holding plaintiffs' silicosis diagnoses were inherently unreliability); Andrew P. Morris, Bruce Yandle, & Andrew Dorchak, *Regulation by Litigation*, 9 ENGAGEJ 109, 115 (2008) (discussing history of silica litigation).

[28]    Heyburn, *Part of the Solution*, *supra*, at 2236.

[29]    Heyburn, *Part of the Solution*, *supra*, at 2237 (emphasis added).

discrepancies among them.  *In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F. Supp. 254, 256 (J.P.M.L. 1976).  The Supreme Court has made clear that cases may be coordinated, and thus serve the purposes of the statute, even if all other cases have already been disposed of, so long as there is some "common core" that makes it more efficient or just that the cases continue to be handled in one court or before one judge.  *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998).  The recent exclusions by different jurisdictions of Plaintiffs' experts Richard Cohen, James Millette, and Charles Ay have raised serious questions about their practices and methodologies which, if proven here, could have a serious impact on their qualifications as experts in the MDL's other consolidated cases.  Here, the transferee court is best situated to analyze the legal and factual issues arising from expert discovery because it has already dealt with them in numerous other cases, including many involving the Brayton firm.[30]  "Efficient and fair resolution of this case" is likely to require the "particular experience that the transferee judge [has] gained from supervising this litigation," and thus remand is premature.  *U.S. v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) (citations omitted).

Fourth, premature remand to the transferor court—especially when discovery disputes remain open—undermines the aim of "avoiding conflicting judicial rulings," as the likelihood is low that the transferor courts now tasked with resolving these same disputes will do so in a completely uniform manner.  *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (holding that both "[c]onsistency as well as economy" are served when issues "capable of arising in hundreds or even thousands of cases" are resolved by a single [transferee] court and reviewed at the appellate level in due course").

Consequently, because premature remand defeats the aims of "eliminating duplicate discovery," "conserving valuable judicial resources," and benefitting the

---

[30]     It is "a fundamental assumption of the multidistrict system that having only one court sort out the facts and complex and multi-faceted transactions and occurrences which have given rise to many competing legal claims well serves the goal of judicial economy."  *In re Baycol Prods. Litig.*, 265 F.R.D 453, 455 (D. Minn. 2008).

litigants "equally,"[31] it directly undermines the stated purpose of Section 1407, to "promote the just and efficient conduct of [the] actions" and "the convenience of parties and witnesses." 28 U.S.C. § 1407(a). Remanding before resolution of essential pretrial issues is neither "just," nor "efficient," nor "convenien[t to the] parties and witnesses."

Finally, by refusing to remand the case for trial until such time that discovery is complete, the Panel also avoids unconstitutionally depriving Defendants of their right to due process.  As early as 1917, the Supreme Court observed the tenet that due process is violated when a party is not afforded the "proper opportunity to present his evidence."  *Sanders v. Shaw*, 244 U.S. 317, 319 (1917).  If trial does proceed "without delay," as suggested by Judge Robreno, Defendants will be denied the "proper opportunity to present [their] evidence" because they will be forced to meet Plaintiffs' expert witnesses with no opportunity to evaluate or test in advance the conclusions, methods, data, or credentials that support the testimony of those witnesses.  Consequently, due process requires at least that Defendants have the opportunity to depose those experts who have not yet provided a report that complies with Rule 26(a)(2)(B).

No serious argument exists that Defendants have not been prejudiced under the present circumstances.  Accordingly, the Panel should vacate its Conditional Remand Order until such time that: (1) all outstanding motions have been ruled upon; (2) Plaintiffs have complied with Judge Rueter's January 19, 2011, order; and (3) Defendants have been allowed to depose Plaintiffs' expert witnesses regarding the new opinions and information contained in their supplemented expert witness reports.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Panel vacate its Conditional Remand Order so that pretrial proceedings and discovery may be completed in the transferee court.

---

[31]    Heyburn, *Part of the Solution*, *supra*, at 2236-37

Respectfully submitted,

**BAKER BOTTS L.L.P.**

BY: _____

Andrew J. Yoder

**ATTORNEYS FOR DEFENDANT
UNION CARBIDE CORPORATION**

Dated: Wednesday, July 11, 2012


**HARTMAN, BLACKSTOCK & MOORE**

BY: _____

Molly J. Mrowka

**ATTORNEYS FOR DEFENDANT
MONTELLO, INC.**

Dated: Wednesday, July 11, 2012

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served via the Court's

CM/ECF system on the following counsel of record, each of whom has consented to electronic

service via the CM/ECF system, on the 11th day of July 2012:

Richard M. Grant
David R. Donadio
Kimberly J.W.J. Chu
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169

Molly J. Mrowka
Hartman, Blackstock & Moore, PPC
182 Howard Street #414
San Francisco, CA  94105

Catherine Morris Krow
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105

_____
Andrew J. Yoder

22

INDEX OF EXHIBITS

A.      Suggestion of Remand, filed June 4, 2012

B.      Order of January 20, 2011

C.      Union Carbide's Motion for Summary Judgment

D.      Defendants' Objections to Order of United States Magistrate Entered January 19, 2011

E.      Amended Scheduling Order, filed December 3, 2009

F.      Declaration of Andrew J. Yoder

G.      November 30, 2009 Letter from Frank Anders

H.      Order of Sept. 23, 2010, Doc 47

I.      Memorandum Order of February 3, 2012

J.      September 29, 2010 Letter from Arnold Brody to Nancy Williams of Brayton Purcell

K.      Medical Expert Reports of Dr. William Salyer

L.      March 11, 2011 Letter from Andrew Yoder to Kimberly Chu

M.      March 14, 2011 Letter from Molly Mrowka to Brayton Purcell counsel joining in Andrew Yoder's correspondence

N.      MDL-875 Case Management Flow Chart

O.      Summary of Open Brayton Purcell Cases in MDL 875

P.      Master Designation of Expert Witnesses on Behalf of All Plaintiffs Represented by Brayton Purcell LLP Pursuant to General Order No. 156