# EXHIBIT D

1    Kevin M. Jordan (Texas State Bar No. 11014800), *admitted pro hac vice*
     Andrew J. Yoder (Texas State Bar No. 24051552), *admitted pro hac vice*
2    BAKER BOTTS L.L.P.
     One Shell Plaza
3    910 Louisiana Street
     Houston, Texas 77002
4    (713) 229-1827
     (713) 229-2827
5    kevin.jordan@bakerbotts.com
     drew.yoder@bakerbotts.com
6
     ATTORNEYS FOR DEFENDANT
7    UNION CARBIDE CORPORATION

8    Molly J. Mrowka (Cal. Bar No. 190133), *admitted pro hac vice*
     HARTMAN, BLACKSTOCK & MOORE
9    182 Howard Street #414
     San Francisco, California 94105
10   (415) 658-7446
     (415) 963-3471 (fax)
11   molly.mrowka@andrewshartman.com

12   ATTORNEYS FOR DEFENDANT
     MONTELLO, INC.

13                    **UNITED STATES DISTRICT COURT**

14                 **EASTERN DISTRICT OF PENNSYLVANIA**

15   | IN RE:  ASBESTOS PRODUCTS | MDL 875  (2:01-md-00875-ER) |
     | LIABILITY LITIGATION | **Cause No. C 09-62999-ER** |
16
     | (NO VI) | |
17
     | This Document Relates To: | **DEFENDANTS' OBJECTIONS TO** |
18   | | **ORDER OF UNITED STATES** |
     | *Robert F. Lyman and Samantha Lyman v.* | **MAGISTRATE JUDGE ENTERED** |
19   | *Asbestos Defendants,* | **JANUARY 19, 2011** |
20   | Before the United States District Court for the | |
     | Northern District of California | |
21   | Cause No. C-07-4240-SBA | |

22           Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Rule
23
24   72.1.IV(a) of the Local Rules of the Eastern District of Pennsylvania, Defendants Union

     Carbide Corporation and Montello, Inc. respectfully object to the January 19, 2011 Order
25
     of Chief United States Magistrate Judge Thomas J. Rueter denying Defendants' renewed
26
27   motion to exclude testimony of Plaintiff's expert witnesses (Doc. No. 60).  Defendants

28   request that this Court set aside the January 19 Order and grant Defendants' requests in

1   the renewed motion to exclude certain of Plaintiffs' expert witnesses.  In the alternative,

2   Defendants ask the Court to modify the January 19 Order to allow Defendants adequate

3   time to depose Plaintiffs' expert witnesses.[1]

4   ### FACTUAL AND PROCEDURAL BACKGROUND

5   On December 3, 2009, the Court entered an Amended Scheduling Order

6   that required Plaintiffs to complete and serve all economic and medical causation reports

7   by March 2, 2010.  (Doc. No. 17.)  Plaintiffs wholly failed to comply with this court-

8   ordered deadline.  Instead, on March 3, 2010, one full day after the deadline, Plaintiffs

9   served copies of two documents from 2007 authored by Barry Ben-Zion, Ph.D, and Daniel

10  M. Raybin, M.D., that were described as "medical reports."  Neither of these medical

11  reports complied with the mandatory disclosure requirements of Federal Rule of Civil

12  Procedure 26(a)(2)(B), and Plaintiffs served no supplemental reports.

13  Neither the 2007 Raybin Report nor the 2007 Ben-Zion Report contained,

14  discussed, or relied upon any information developed after the case was removed to federal

15  court in August 2007.  Neither report contained or referred to any facts developed after the

16  experts were deposed in July and August 2007.  Specifically, neither report contained or

17  referred to any facts related to the death of Decedent Robert F. Lyman in May 2008,

18  including new medical or damages evidence and associated opinions developed as a

19  result.  Furthermore, neither report satisfied (or even came close to meeting) the requisites

20  of Rule 26 regarding disclosure of expert witness information.  *See* FED. R. CIV. P.

21  26(a)(2)(B).

22  When served only with the 2007 Raybin and Ben-Zion Reports,

23  Defendants suspected that Plaintiffs would not be offering any medical or economic

---

[1]    The Order states that "discovery is complete" (Doc. No. 60), but that is simply not the case.  As demonstrated below, Plaintiffs have never served expert reports that comply with Rule 26 for six of the eight experts that they intend to call at trial.  Furthermore, Union Carbide and Montello have not had the opportunity to depose these experts on the current evidence and the opinions that they plan to express at trial.  Under these circumstances, expert discovery cannot be considered complete in any sense.  Accordingly, Union Carbide and Montello bring these objections, respectfully seeking an opportunity to complete the discovery contemplated by the Federal Rules of Civil Procedure and 28 U.S.C. § 1407 before the case is remanded for trial.

1  causation expert testimony that went beyond the opinions contained within these 2007

2  reports. Based upon these reports and a March 3, 2010 letter from Plaintiffs' counsel,

3  Defendants reasonably concluded that Plaintiffs' experts had done no supplemental

4  review or analysis since 2007. Therefore, Defendants reasonably believed that Plaintiffs

5  would not be relying upon medical or expert causation testimony that went beyond the

6  conclusions set forth in the 2007 Raybin and Ben-Zion Reports.

7  Nevertheless, as the period for expert discovery was coming to a close,

8  Defendants sought to independently verify that Plaintiffs' experts had reviewed no

9  additional evidence and developed no additional opinions following their 2007

10  depositions. Accordingly, on June 18, 2010, Union Carbide noticed the telephonic

11  depositions of Dr. Samuel Hammar and Dr. William Salyer, in order to verify that neither

12  expert had reviewed any further information or developed additional opinions since they

13  were deposed in July and August 2007 (copies of the deposition notices for Drs. Hammar

14  and Salyer attached as Exhibits A and B respectively).

15  On June 29, 2010, the deposition of Dr. Hammar was commenced, with

16  counsel for Union Carbide asking Dr. Hammar whether he had done any work on the case

17  since he was deposed in August 2007. Dr. Hammar stated that, indeed, he had conducted

18  additional review of Decedent's pathology material, which was provided to him in 2009.

19  Not only had Dr. Hammer reviewed a box of pathologic specimens harvested following

20  Lyman's death in May 2008; Dr. Hammar had, in fact, developed additional opinions

21  based upon his review of this additional pathology material. Furthermore, Dr. Hammar

22  revealed that his additional opinions were contained in a supplemental report, which he

23  stated was single-spaced and nine pages in length. Furthermore, Dr. Hammar stated that

24  he had provided a copy of this new report to Plaintiffs' counsel in early November 2009.

25  After learning that Dr. Hammar's supplemental report was lengthy and

26  very detailed, counsel for Union Carbide suspended the deposition and requested a copy

27  of the 2009 report. Counsel for Plaintiffs then emailed a copy of Dr. Hammar's

28  supplemental report, which reflected two dates—"Date Received 04/23/09; Date

1   Transcribed: 11/02/09" (copy attached as Exhibit C).[2]  Before Dr. Hammar's deposition

2   began on the morning of June 29, 2010, counsel for Defendants had never been provided

3   with a copy of Dr. Hammar's supplemental report from 2009.

4           Following the suspension of Dr. Hammar's deposition and the receipt of

5   Dr. Hammar's supplemental 2009 report, counsel for Union Carbide sought dates upon

6   which to resume the deposition of Dr. Hammar and an agreement from Plaintiffs

7   regarding conducting the depositions after the July 7, 2010 deadline provided for in the

8   Court's Amended Scheduling Order. (*See* Doc. No. 17, at 1.)  Counsel for Union Carbide

9   also requested by email "copies of any amended, supplemental, or updated reports,

10  graphs, notes, or any other document prepared by or for your expert witnesses ('updated

11  reports')" (copy attached as Exhibit D).   The email specifically requested copies of

12  updated reports from Dr. Salyer. (*See id.*)

13          Plaintiffs' counsel responded to this email, apologizing for failing to serve

14  the November 2009 report from Dr. Hammar and stating:

15          *Your clients have already been served with all other*
        *economic and medical causation expert reports in this*
16      *matter.*  These reports are as follows:  Barry Ben Zion
        report, March 19, 2007; Donald Breyer reports, January 23,
17      2007, April 6, 2007, and May 9, 2007; Samuel Hammar
        reports, July 31, 2007 and November 2, 2009, Daniel
18      Raybin reports, July 23, 2007 and July 31, 2007; and
        *William Salyer reports, February 17, 2007 and April 16,*
19      *2007.*  Upon request, we will send a copy of any of these
        reports to your attention.
20

21

22  Email from Frank Anders (June 29, 2010) (attached as Exhibit E) (emphasis added).  On

23  June 29, Plaintiffs' counsel thus clearly denied the existence of any supplemental report

24  authored by Dr. Salyer or any other expert. (*See id.*)  The June 29 email also attached a

25  copy of Dr. Hammar's 2009 report.

26  [2]      It is not clear whether the reference to "date received 04/23/09" in the 2009 Hammar
    Report refers to Dr. Hammar's receipt of the pathology materials or the transcriptionist's receipt of
27  the dictated report of Dr. Hammar. The resolution of this issue is not necessary to the outcome of
    this motion, as it is undisputed that Defendants did not receive the report until June 29, 2010, long
28  past the time when it should have been served by Plaintiffs.

- 4 -

1    Review of the 2009 Hammar report itself, however, belies the

2    representation made by Plaintiffs' counsel. Indeed, Dr. Hammar's 2009 report not only

3    cites but quotes extensively from an unknown report issued by Dr. Salyer. (*See* Ex. C at

4    5-6.)[3]  In response to the June 29 email, counsel for Union Carbide pointed out that

5    Defendants had not been provided with all supplemental expert reports, specifically

6    mentioning the supplemental Salyer report to which Dr. Hammar referred in his 2010

7    report and requesting that it be provided immediately. (*See* Ex. F.)  As Union Carbide's

8    counsel noted, the paramount concern was to determine what reports had been issued and

9    which experts needed to be deposed. (*Id.*)

10    Late in the afternoon of July 2, 2010, Plaintiffs' counsel sent a letter

11    enclosing a copy of a report prepared by Dr. Salyer dated July 18, 2008, along with

12    photocopies of pathology slides created by Dr. Salyer and discussed in the report (copy

13    attached as Exhibit G).  Plaintiffs' letter, however, went on to challenge whether Plaintiffs

14    were even obligated to produce their experts' reports, stating:

15    > There appears to be some misunderstanding regarding the
     > legal ramifications relating to service of expert reports in
16    > this matter. Service of expert reports under the discovery
     > scheduling order does not constitute the parties' pre-trial
17    > disclosure of the parties' *testifying* expert witnesses under
     > FRCP 26(a)(2), which will be properly conducted by the
18    > Northern District of California once this Court remands the
     > case for trial.
19

20    Ex. G at 1 (emphasis in original).  The only "misunderstanding" that had occurred was

21    Plaintiffs' mistaken belief that they were not bound by the deadlines expressly set forth in

22    the Court's Amended Scheduling Order.  Furthermore, this statement directly contradicted

23    Plaintiffs' own representation days earlier that, "Your clients have already been served

24    with all other economic and medical causation expert reports in this matter." (*See* Ex. E)

25    The chain of correspondence detailed above shows that Defendants

26

27    _____

[3]    Though the 2009 Hammar Report did not mention the date of the report by Dr. Salyer, it
28    was clear that the Salyer report was prepared after Decedent's death in May 2008, since it referred
     explicitly to his date of death of May 20, 2008. (*See* Ex. C at 5.)

repeatedly requested full Rule 26-compliant reports from Plaintiffs. Even months after the March 2, 1010 date in the Amended Scheduling Order, Plaintiffs still refused to comply, even though they had been in possession of supplemental reports for months. Because the deadline for conducting expert depositions under the Amended Scheduling Order had arrived, Union Carbide had no choice but to file a motion and seek relief from the Court. Accordingly, Union Carbide filed its original Motion to Exclude Testimony of Plaintiffs' Expert Witnesses (Doc. No. 36), joined by Montello (Doc. No. 37), requesting that the Court exclude the testimony of all those witnesses for which Plaintiffs had failed to timely disclose expert reports on March 2, 2010, more than four months earlier.

On September 23, 2010, Magistrate Judge Rueter entered an Order that required Plaintiffs to serve all expert reports that had not previously been served within seven days (Doc. No. 47). The September 23 Order also modified the Amended Scheduling Order to provide that expert depositions be completed by November 30, 2010. The September 23 Order noted that "Plaintiffs' attorneys [have] violated the terms of this court's Amended Scheduling Order and have proffered frivolous reasons for doing so." (Doc. No. 47, at 2.) The Order further expressly provided that "[a]ny and all experts retained by plaintiffs whose reports are not disclosed within seven (7) days of the date of this Order are excluded from offering any opinions at trial, including oral testimony and prior deposition testimony." (*Id.*)

Once more, Plaintiffs failed to comply with a discovery order of the Court, and produced no reports on September 30, 2010.[4] Instead, on October 1, 2010, Plaintiffs provided Defendants with a plethora of disorganized documents that purported to be the expert reports of eight witnesses. Only two of these reports met the plain requirements of Rule 26, while the remaining six documents were so deficient that they provided little, if

---

[4]    The evening of September 30, 2010, Plaintiffs' counsel sent an email that purported to include "my letter of today[']s date with accompanying reports." (Email from Nancy Williams (Sept. 30, 2010, 9:15 p.m. CST), attached as Exhibit H.) However, only a letter from Plaintiffs' counsel was attached; no reports were actually served with the email. (*See id.*)

any, value in preparing for deposition.[5]  For example, the report of Dr. Arnold Brody

contained little more than a short list of various topics about which he might testify, but

revealed no opinions whatsoever.  (*See* Ex. I2, at 3.)  As for William Salyer, M.D., an

excerpt of his expert "report" speaks for itself (*see* Ex. I6, at 20):



---

[5]     The new reports are those of: 1) Mr. Charles Ay; 2) Arnold Brody, M.D.; 3) Kenneth
Cohen, C.I.H.; 4) Richard Cohen, M.D.; 5) Daniel Raybin, M.D.; and 6) William Salyer, M.D.
Copies of the new reports as served are attached as Exhibit I, with the cover letter followed by the
individual reports appearing as Exhibits I1-I6.  Because the remaining two reports of Barry Ben-
Zion, Ph.D, and Samuel Hammar, M.D., appear to comply facially with Rule 26, Defendants seek
no relief as to these experts at this time.

1     Presented with such "reports," on October 19, 2010, Union Carbide and

2 Montello filed a renewed motion requesting that the Court exclude the experts because of

3 Plaintiffs' continuing failure to comply with the mandatory disclosure requirements of

4 Rule 26. This time, Plaintiffs also violated a direct order of the Magistrate, one which

5 explicitly bore the penalty of exclusion if it was not complied with promptly. (*See* Doc.

6 No. 47 at 1.) But no experts were excluded, despite the fact (uncontested here[6]) that

7 Plaintiffs' expert reports did not comply with Rule 26.

8     On January 19, 2011, after holding a telephonic conference on the renewed

9 motion and Plaintiffs' response, the Magistrate entered the January 19 Order denying the

10 renewed motion and requiring Plaintiffs to file supplemental reports within twenty-one

11 days for those experts whose reports did not fully comply with Rule 26(a)(2)(B). The

12 Magistrate also orally denied a request by Union Carbide to extend discovery to allow

13 Defendants to complete deposition of Plaintiffs' experts.

14     As a result of the January 19 Order, Defendants are now faced with the

15 prospect of confronting at trial the testimony of eight expert witnesses for which they have

16 received, to date, only two of the eight reports to which they are entitled under Rule 26.

17 _____

[6]     Although Plaintiffs take the position in their response to Defendants' Renewed Motion to
18 Exclude that their reports meet the requirements of Rule 26 (Doc. No. 52 at 2), they also make the
nonsensical statement: The fact that an expert report does not contain all of the items listed in
19 FRCP 26(a)(2)(B) does not mean that an expert report is automatically considered a deficient
report." (Doc. No. 52, at 8.) Unfortunately, the case Plaintiffs cite does not stand for this
20 proposition. *See Dunkin' Donuts, Inc. v. Patel*, 174 F. Supp. 2d 202, 211 (D. N.J. 2001). Instead,
*Dunkin' Donuts* states, unequivocally:

21
                 To satisfy the Rule, 'the report must provide the substantive
22               rationale in detail with respect to the basis and reasons for the
                 proffered opinions. It must explain factually why and how the
                 witness has reached them.' [T]he purpose of the reports is to
23               avoid the disclosure of 'sketchy and vague' expert information.'

24 *Id.* Here, Plaintiffs' most of expert reports do not provide the experts' case-specific opinions, let
alone their "substantive rationale in detail with respect to the basis and reasons for the proffered
25 opinions." *See id.* As demonstrated below, what Plaintiffs have provided is precisely the "sketchy
and vague" information that Rule 26 and the court in *Dunkin' Donuts* sought to avoid. Furthermore,
26 during the telephonic hearing on January 19, 2011, Plaintiffs' counsel conceded that
the reports at issue did not necessarily comply with Rule 26. Indeed, there could be no other
27 conclusion, since Plaintiffs have still failed to provide the required list of former testimony (*see*
Fed. R. Civ. P. 26(a)(2)(B)(v)) for any of the experts at issue, despite their promise in September
28 to "provide [them] forthwith." (*See* Ex. I at 2.)

1   Moreover, Union Carbide and Montello must face these witnesses at trial without having

2   been afforded the opportunity to depose these experts on the basis of the evidence and the

3   opinions that they will express to the jury.  Perversely, this state of affairs is the direct

4   result of Plaintiffs' persistent, willful refusal to fulfill its responsibilities under the Federal

5   Rules of Civil Procedure and this Court's express orders.  This should not be allowed to

6   stand.

7   Because the January 19 Order represents clear error, Defendants request

8   that this Court set aside the January 19 Order and exclude the testimony of Mr. Charles

9   Ay; Arnold Brody, M.D.; Kenneth Cohen, C.I.H.; Richard Cohen, M.D.; Daniel Raybin,

10   M.D.; and William Salyer, M.D.  In the alternative, Defendants request that the Court

11   modify the January 19 Order to allow Defendants adequate time to depose Plaintiffs'

12   expert witnesses to cure any surprise and prejudice caused to Defendants by Plaintiffs'

13   failure to abide by the Court's previous discovery orders and the Federal Rules of Civil

14   Procedure.

15   **ARGUMENTS AND AUTHORITIES**

16   I.   **The uncured surprise and prejudice from allowing the non-complying reports**
17        **without additional time to depose the experts mandates their exclusion under**
     **_Meyers v. Pennypack Woods Home Ownership Association._**

18   Rule 72(a) provides that a district court must reverse an order of a

19   magistrate judge that is clearly erroneous or contrary to the law.  FED. R. CIV. P. 72(a); _see_

20   _also Cooper Hosp./Univ. Med. Cent. v. Sullivan_, 183 F.R.D. 119, 127 (D. N.J. 1998).

21   Under this standard, a magistrate's ruling is clearly erroneous "when, although there is

22   evidence to support it, the reviewing court is left with the definite and firm conviction that

23   a mistake has been committed." _S. Seas Catamaran, Inc. v. Motor Vessel "Leeway"_, 120

24   F.R.D. 17, 21 (D. N.J. 1988), _aff'd_ 993 F.2d 878 (3d Cir. 1993).  As non-dispositive

25   rulings, a magistrate's decisions regarding discovery disputes are subject to the clearly

26   erroneous standard.  _See, e.g., Santiago v. McDonald's Rests. of N.J._, No. 06-cv-02983,

27   2009 WL 223407, at *3 (D. N.J. Jan. 27, 2009).  The January 19 Order displays clear error

28

1    that requires reversal because of the Magistrate's failure to consider the surprise and

2    prejudice to Defendants from allowing supplementation of the new reports, as well as

3    Plaintiffs' serial non-compliance with the court's discovery orders.

4           The Court has held that exclusion of expert testimony is proper where

5    allowance would result in incurable prejudice, particularly where the opposing party is

6    prevented from fully evaluating the proffered material. *Velez v. QVC, Inc.*, No. 00-5582,

7    2004 WL 1175726, at *1 (E.D. Pa. May 25, 2004) (supplemental expert report stricken

8    where opposing party could not verify information and conduct comprehensive

9    evaluation) (Robreno, J.).   In considering whether exclusion of expert testimony is

10   necessary, the court should apply the factors discussed in *Meyers v. Pennypack Woods*

11   *Home Ownership Association*:

12          (1)    prejudice or surprise in fact of the party against
                    whom the excluded witnesses would have testified,

13

14          (2)    ability of that party to cure the prejudice,

15          (3)    extent to which waiver would disrupt orderly and
                    efficient trial of the case or of other cases in the
16                  court, and

17

18          (4)    bad faith or willfulness in failing to comply with the
                    court's order.

19

20   559 F.2d 894, 904-05 (3d Cir. 1977); *see also Tran v. Baik*, No. 09-3362, 2011 WL

21   118212, at *2 (3d Cir. Jan. 14, 2011).   As detailed below, when properly considered, these

22   factors require exclusion of the expert reports.

23   **A.    The deficiencies of Plaintiffs' expert reports prejudiced Defendants by
            preventing any meaningful deposition of the experts.**

24

25          Rule 26 mandates that a party must submit a "written report—prepared and

26   signed by the witness—if the witness is one retained or specially employed to provide

27   expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B). The rule provides parties with

28   specific guidance regarding the information that their experts' reports must contain:

The report must contain:

    (i)     a complete statement of all opinions the witness will express and the basis and reasons for them;

    (ii)    the data or other information considered by the witness in forming them;

    (iii)   any exhibits that will be used to summarize or support them;

    (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;

    (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

    (vi)   a statement of the compensation to be paid for the study and testimony in the case.

FED. R. CIV. P. 26(a)(2)(B)(i)–(vi).

     None of the reports at issue comply with all, and most fail several, of these requirements. The reports are all deficient for one or more of the following reasons: (1) failure to conform to the manner of disclosure mandated by Rule 26(a)(2)(B); (2) failure to contain a complete statement of all opinions the witness will express and the basis and reasons for them; (3) failure to include a list of the data or other information considered by the witness in forming his opinion; (4) failure to include the exhibits that the expert intends to use to summarize or support his opinions; and (5) failure to list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition. The specific deficiencies of each new report are explained in detail below, and a chart summarizing the deficiencies of each report is attached as Exhibit J for ease of reference.

     But even if Plaintiffs had complied with the September 23 Order and served expert reports in full compliance with Rule 26, Plaintiffs' willful failure to comply

- 11 -

1    with the Amended Scheduling Order would still have reduced Defendants' time to

2    conduct expert discovery from over four months to depose two indentified experts to

3    barely two months to depose eight experts. (*See* Doc. No. 17, at 1; Doc. No. 47, at 2.)  In

4    fact, however, Plaintiffs finally provided Defendants with expert reports that either simply

5    omitted data or provided woefully inadequate information about significant aspects of the

6    expert witnesses' opinions in this case.  These deficiencies in the expert reports precluded

7    Defendants from adequately preparing to depose the expert witnesses.

8
9
### 1.    Five out of six reports fail to even meet the signed, written report requirement.

10    As an example of the incomplete and fragmentary nature of Plaintiffs'

11    disclosure, five out of the six expert reports do not even comply with Rule 26's basic

12    requirement that the Plaintiff provide a "written report [] prepared and signed by the

13    witness."  *See* FED. R. CIV. P. 26(a)(2)(B)(i).  In fact, only the report of Dr. Raybin

14    manages to comply with this simple requirement. (*See* Ex. I5.)

15    Federal case law has interpreted this provision to require that an expert

16    report be whole and complete in and of itself, including all of the information identified in

17    subsections (i)-(vi); a party cannot discharge his duty of disclosure by simply submitting a

18    series of documents that may collectively contain the required information. *See Nguyen v.*

19    *IBP, Inc.*, 162 F.R.D. 675, 679 (D. Kan. 1995) (noting that "[t]he disclosures served by

20    plaintiff clearly and indisputably d[id] not comply with FED. R. CIV. P. 26(a)(2)(B)" where

21    "[t]he only document prepared and signed by the expert witness was a letter addressing

22    the expert's opinions and the basis therefore, the data considered by the expert, and

23    exhibits to be used as a summary of or support for the opinions" but the expert's

24    "curriculum vitae was . . . not signed by the witness" and "the compensation agreement

25    was not a part of the report signed by the witness.").

26    With the noted exception of Dr. Raybin's report, none of the new reports

27    comply with the manner of disclosure dictated by Rule 26(a)(2)(B).  Instead, the majority

28    of the new reports consist of nothing more than a mishmash of assorted documents. (*See*

1  Exs. I1-I6). Plaintiffs' failure to comply with Rule 26 forced Defendants to sift through

2  hundreds of pages of material just to glean the information that Plaintiffs have an

3  affirmative obligation to provide in a single coherent report. By failing to disclose the

4  information required in the proper manner, "the burden [effectively] shifted from the

5  disclosing party to the discovering party, [and] [s]uch is not contemplated by FED. R. CIV.

6  P. 26(a)(2)(B)." *Nguyen*, 162 F.R.D. at 682.

7        **2.  Four out of six reports fail to provide a full and complete**
         **statement of opinions and the basis and reasons for them.**
8

9        Rule 26(a)(2)(B)(i) requires an expert's written report to contain "a

10  complete statement of all opinions the witness will express and the basis and reasons for

11  them." FED. R. CIV. P. 26(a)(2)(B)(i). Part of the rationale for specifically requiring a

12  *complete* statement of opinions in the current version of the rule is that "[t]he information

13  disclosed under the former rule in answering interrogatories about the 'substance' of

14  expert testimony was frequently so sketchy and vague that it rarely dispensed with the

15  need to depose the expert and often was even of little help in preparing for a deposition of

16  the witness." FED. R. CIV. P. 26, Notes of Advisory Committee on 1993 Amendments.

17  *See also Dunkin' Donuts*, 174 F. Supp. 2d at 211. That is exactly the problem here.

18        "Sketchy and vague" is an apt descriptor for the statements of opinions

19  offered in the Ay, Brody, K. Cohen, and Salyer reports. Perhaps the most egregious

20  example are the "reports" of Dr. William Salyer, which are made up of a few pages of

21  handwritten notes, hastily jotted down in a characteristic physician's scrawl. (*See* Ex. I6.)

22  Likewise, Kenneth Cohen's statement of opinions contains an exhaustive list of topics

23  related to industrial hygiene and asbestos, most of which are entirely irrelevant to

24  Plaintiffs' claims against Defendants. (*See* Ex. I3, at 3-4.) Kenneth Cohen's Report fails,

25  however, to provide any information regarding the specific opinions he expects to express

26  in this case. (*See* Ex. I3.)

27        As for the Brody "report," Plaintiffs have not provided any of Dr. Brody's

28  opinions in the case. (*See* Ex. I2, at 3.) Instead, the letter refers to a series of topics upon

- 13 -

1   which Brody would opine, but contains no statement of what Dr. Brody's opinions on

2   these topics might be.  (*See id.*)  The Brody letter also mysteriously refers to a report he

3   authored, but the only report mentioned in the letter is a list of Brody's previous testimony

4   which, as set forth below, contains no information regarding his opinions or reliance

5   materials.  (*Id.*)

6           Despite their lack of detail, these reports do at least appear to be directed

7   toward some potentially relevant issue in this case.  This is in contrast to the "report" of

8   Charles Ay, who provides no opinions but instead states that he expects to testify

9   regarding "the identification, application and removal of asbestos and asbestos-containing

10  products" in various industries.  (*See* Ex. I1, at 3.)  None of those industries, however,

11  have any relation to Plaintiffs' claims against Defendants in this case.

12          These "sketchy and vague" descriptions are simply inadequate to discharge

13  Plaintiffs' disclosure obligations under the Federal Rules.  "To satisfy FED. R. CIV. P.

14  26(a)(2)(B), the report must provide the substantive rationale in detail with respect to the

15  basis and reasons for the proffered opinions.  It must explain factually why and how the

16  witness has reached them." *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 185 (D. Kan. 1997).  The

17  Ay, Brody, K. Cohen, and Salyer reports all fail to comply with this fundamental

18  requirement.

19          **3.      Two out of six reports fail to include the data or other**
            **information considered by the expert in forming his opinion.**
20

21          Closely related to the requirement that an expert report contain a complete

22  statement of his opinions is the requirement that he also disclose "the data or other

23  information considered by the expert in forming his opinion."  FED. CIV. P.

24  26(a)(2)(B)(ii).  The reports from Arnold Brody and Kenneth Cohen both fail to meet this

25  requirement of Rule 26.  (*See* Exs. I2, I3.)

26          Subsection (ii) requires more than rote recitation of some magic words; it

27  requires the expert to specifically identify the data or material he relied upon in reaching

28  his opinion. *See Hilt*, 170 F.R.D. at 185 (An expert report "does not adequately set forth

the basis and reasons for [the expert's opinions]" where "[i]t simply says they are based upon the education, training, and experience of [the expert].  Most, if not all, expert opinions reflect the education, training, and experience of the expert and her reliance upon something.  That says nothing, however, as to how she reaches her expert opinions.").

Both Brody and Cohen fail to provide any specific information regarding how they reached their respective opinions.[7]  Instead, both rely on vague pronouncements, generically invoking their education, training, and experience.  Cohen goes so far as to reference the "case-specific materials [he] ha[s] reviewed for this case," but neglects to mention precisely what materials he has reviewed.  (*See* Ex. I3, at 4.)  Given the voluminous amount of material that has been produced during the course of this litigation, a large portion of which is highly technical, this oblique reference is worse than useless—it actively prevented Defendants from adequately preparing to depose Cohen.

**4.    Four out of six reports fail to include exhibits intended to be used at trial.**

Another consistent failure of the new reports is the omission of exhibits that the expert intends to use at trial to summarize or support his opinions.  *See* FED. R. CIV. P. 26(a)(2)(B)(iii).  Of the six new reports, four of them (from Plaintiffs' experts Ay, K. Cohen, R. Cohen, and Salyer) express an intention to use exhibits, but do not specifically identify them or provide copies.  Despite the plainly-worded language of subsection (iii), none of these experts provide any justification for their failure to include the exhibits which they intend to use at trial.  Once again, this utter lack of disclosure prevented Defendants from adequately preparing to depose the expert witnesses.

**5.    None of the reports provide a list of former testimony.**

The final deficiency of the new reports is common to all of Plaintiffs' experts—the failure to provide a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition.  *See* FED. R. CIV. P.

---

[7]     This fact also comes as no surprise, considering that neither Cohen nor Brody provided a complete statement of what their opinions in this specific case actually are.

1    26(a)(2)(B)(v).  In their transmittal letter attaching the new reports, Plaintiffs attempted to

2    justify this omission by stating that "several of our experts did not have a current

3    description of all of their testimony for the last four years."  (Letter from Nancy Williams

4    enclosing Plaintiffs "Rule 26 Reports" (September 30, 2010) attached as Exhibit I.)

5              Even if this is true, however, the unpreparedness of Plaintiffs' retained

6    experts is no excuse for the failure to make timely Rule 26 disclosures.  An expert's

7    failure to maintain records in the ordinary course of his business sufficient to allow the

8    disclosures to be made, does not constitute 'substantial justification' for the failure to

9    provide required disclosures as to any retained expert expected to testify at the trial of the

10   case.  *Nguyen*, 162 F.R.D. at 682.  **The requirements of the Rule 26(a) are mandatory**

11   **as to any expert retained to testify.  If the expert is unable or unwilling to make the**

12   **disclosures he should be excluded as a possibility for retention as an expert witness in**

13   **the case.**  *Id.*(emphasis added).  Accordingly, Plaintiffs cannot blame their experts for

14   their failure to comply with Rule 26(a)(2)(B).

15              For example, one expert, Dr. Richard Cohen, attempted partial compliance

16   by attaching a list of cases that he has handled for firms other than Brayton Purcell,

17   Plaintiffs' current counsel.[8]  But this list is itself inadequate to discharge Plaintiffs' duty of

18   disclosure under Rule 26(a)(2)(B)(v).  The list required by subsection (v) "at a minimum

19   should include the courts or administrative agencies, the names of the parties, the case

20   number, and whether the testimony was by deposition or at trial."  *Nguyen*, 162 F.R.D. at

21   682.  *See also* Fed. R. Civ. P. 26(a)(2)(B)(v).  Of all this required information, only the

22   name of the plaintiff is included on Dr. Richard Cohen's partial list of testimony.  (*See* Ex.

23   I4, at 32.)

24              Courts routinely exclude the testimony of expert witnesses whose reports,

25   as here, provide insufficient disclosures and omit entire categories of the information

26

27   [8]      According to Dr. Richard Cohen's "report," the list of cases in which he has testified for
Brayton Purcell is "undergoing changes," which is the apparent reason it was not provided.  (*See*

28   Ex. I4, at 32.)

1    demanded by Rule 26(a)(2)(B).  *See Adams v. J. Meyers Builders, Inc.*, 671 F. Supp. 2d

2    262, 270 (D. N.H. 2009) (surveying cases).  In *Adams*, for example, the district court

3    properly excluded the testimony of two expert witnesses because their disclosures failed

4    to list testimony in previous cases and lacked complete statements of the opinions to be

5    expressed, along with their underlying data and methodology.  *Id.*  Citing the manifest

6    harm in such inadequate disclosures, the court went on to note that the "purposes [of Rule

7    26] are clearly frustrated by disclosures ... that tell the opposing party nothing about a

8    witness's qualifications, prior testimony, or compensation, and not enough about the bases

9    or reasons for his opinions or the data he used in forming them." *Id.*

10            As the foregoing discussion demonstrates, the new reports display exactly

11   these same inadequacies under FED. R. CIV. P. 26(a)(2)(B).  Because of the prejudice to

12   Defendants from these failures, this element of the *Meyers* factors indicates that the proper

13   remedy both under Rule 37 and the September 23 Order was exclusion.  Accordingly, the

14   failure of the Magistrate to exclude the testimony of the expert witnesses in the January 19

15   Order was clear error that requires reversal.

16   **B.    Supplementation of the new reports will not cure the prejudice to
17          Defendants.**

18           The *Meyers* test requires exclusion when the prejudice of allowing

19   inadequately disclosed expert testimony cannot be cured.  *See Velez*, 2004 WL 1175726,

20   at *1.  Under the terms of the Amended Scheduling Order, as modified by the September

21   23 Order, expert discovery is now closed.  (*See* Doc. No. 17, at 1; Doc. No. 47, at 2.)

22   Because Defendants cannot now depose the expert witnesses, even supplementation of the

23   new reports cannot cure the prejudice and surprise to Defendants from being unable to

24   make a comprehensive evaluation of the expert's claims.  *See id.* (*Meyers* analysis

25   supported exclusion of expert's supplemental report because opposing party lacked

26   opportunity to verify and fully evaluate claims).  Consequently, this factor of the *Meyers*

27   test also requires exclusion of the expert witnesses.

28

**C.    Plaintiffs' repeated failures to comply with the court's discovery orders display bad faith under *Meyers*.**

Plaintiffs have repeatedly failed to comply with court-ordered discovery deadlines in this case.  Moreover, the September 23 Order expressly noted that Plaintiffs "violated the terms of this court's Amended Scheduling Order and have proffered frivolous reasons for doing so."  (Doc. No. 47, at 2.)  Under the *Meyers* factors, this sustained pattern of unjustified non-compliance constitutes a level of bad faith that favors exclusion.  *See Tran*, 2011 WL 118212, at * 2 ("pattern of neglect and failure to comply with scheduling orders" justified exclusion under *Meyers* analysis); *see also Velez*, 2004 WL 1175726, at *1 ("The Court also finds that plaintiff's late submission of the report is willful in that plaintiff knew when the report was due under the Rules but has proffered no explanation as to why she failed to comply.").

Even after the existence of Dr. Hammar's November 2009 report came to light at the commencement of Dr. Hammar's deposition in June 2010 (over three months after the disclosure deadline, and over seven months since the report was transcribed and provided to Plaintiffs), Plaintiffs expressly denied the existence of any other expert reports, stating that "Your clients have already been served with all other economic and medical causation expert reports in this matter."  (*See* Ex. E.)

After being confronted with the fact that Dr. Salyer also issued a report— a fact made abundantly clear in Dr. Hammar's November 2009 report—Plaintiffs quickly changed course and articulated a bizarre theory that the March 2, 2010 deadline for disclosure of expert reports only applied to "non-testifying" experts, and that disclosure of "testifying experts" would be later after remand of the case for trial.  (*See* Ex. G.)  Taken to its logical conclusion, Plaintiffs' theory suggests that Drs. Raybin, Hammar and Salyer and Barry Ben-Zion are all non-testifying experts, since their reports have now been disclosed.  Moreover, Plaintiffs' own actions are in complete conflict with this novel theory since Plaintiffs: (a) have stated that they have produced ALL expert reports, (b) have presented Dr. Hammar for deposition in conjunction with the Scheduling Order

1   which requires that all expert depositions be completed by July 7, 2010, (c) have offered

2   dates for the depositions of Drs. Salyer and Hammar, and (d) have requested a deposition

3   date for Defendants' expert, Dr. Victor Roggli, and (e) suggested the extension of the

4   deadline to conduct all expert depositions from July 2010 to Sept. 2010.  Plaintiffs' own

5   actions thus preclude any reliance upon the purported "non-testifying/testifying

6   distinction"—which is nonexistent in the September 23 Order (and quite clearly a figment

7   of their imagination)—in an effort to avoid the necessary consequences of their deliberate

8   failure to abide by the Court's mandated expert discovery deadlines.

9          These fundamental inconsistencies also make clear that Plaintiffs' failure to

10  serve compliant expert reports—including but not limited to the supplemental reports of

11  Drs. Hammar and Salyer—was done intentionally, notwithstanding their purported belief

12  that expert disclosures would occur following remand to the Northern District of

13  California.  If this were true, of course, Union Carbide would be denied its right to explore

14  any of Plaintiffs' experts' current opinions and the evidence upon which they are based,

15  since expert depositions must be completed before any remand. (*See* Doc. No. 17.)  Such

16  a result cannot be what was intended by the Court in crafting the Amended Scheduling

17  Order and Plaintiffs' suggestion that it is rings hollow.

18         Unfortunately, unless relief is granted by the Court, serving only the 2007

19  Raybin and Ben-Zion reports accomplished Plaintiffs' apparent purpose—it signaled that

20  Plaintiffs were relying only upon their experts' 2007 reports and Union Carbide concluded

21  that it need not re-depose these experts.  Limiting their disclosures to only the 2007

22  Raybin and Ben-Zion reports also amounted to an effective abandonment of Plaintiffs'

23  other expert witnesses, in reliance upon which Defendants chose not pursue re-deposing

24  all of Plaintiffs' medical and economic expert witnesses.

25      **D.     Rule 37 requires that the expert reports be excluded because Plaintiffs'
               failure to disclose was not substantially justified or harmless.**
26

27         The penalty for failing to disclose information under Rule 26 is set forth in

28  Rule 37:

- 19 -

1
2
3

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

4
5
6

FED. R. CIV. P. 37(c)(1).  "Further, Rule 37 provides for exclusion of evidence if the party who intends to use certain evidence fails to follow the requirements of Rule 26 with respect to disclosure of such evidence." *Velez*, 2004 WL 1175726, at *1.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

Under Rule 37(c), Plaintiffs' failure to timely disclose expert reports precludes them from relying upon those experts at trial unless their failure was substantially justified or harmless. *See* FED. R. CIV. P. 37(c)(1).  There is no basis for an argument here that the Plaintiffs' failure to disclose was either substantially justified or harmless.  Accordingly, the Court should exclude all of Plaintiffs' experts who failed to serve timely reports in full compliance with Rule 26.  *See id.*; *Coalition to Save Our Children v. State Bd. of Educ.*, 90 F.3d 752, 775-76 (3d Cir. 1996) (noting that "[e]xclusion of testimony is an appropriate sanction for failure to supplement in a timely manner" and upholding district court's exclusion of experts from trial).  Moreover, even when the failure to disclose results from counsel's mere negligence, courts still exclude experts when discovery has concluded and trial is approaching.  *See Cuffee v. Dover Wipes Co.*, 334 F. Supp. 2d 565, 572 (D. Del. 2004) (excluding experts even absent intentional non-disclosure or bad faith, where counsel merely "dropped the ball" with respect to both expert reports).  These are precisely the facts in this case, since, absent relief from the Court, the expert discovery period has now closed, and the Court has expressed its intention to promptly remand this case for trial.

23
24
25
26
27
28

The Court's Amended Scheduling Order was clear—Plaintiffs' expert reports had to be served by March 2, 2010.  Because Plaintiffs served only the 2007 Raybin and Ben-Zion reports on March 3, 2010, they should be limited to offering the testimony of those two experts at trial.  *See* FED. R. CIV. P. 37(c)(1); *In re TMI Litig. Cases Consol. II*, 911 F. Supp. 775, 829 (M.D. Pa. 1996), *rev'd on other grounds*, 193

1   F.3d 613 (3d Cir. 1999) (limiting plaintiffs to the evidence and expert testimony disclosed

2   as of the date established by the court for expert disclosures).

3   **II.     If the experts are not excluded, only additional depositions can cure the**
4   **prejudice caused by supplementation of the new reports.**

5           Even when exclusion of expert testimony is warranted, as it is here, the

6   court has discretion to fashion an alternative remedy to fit the circumstances of the case.

7   *See Velez*, 2004 WL 1175726, at *1 (citing *Newman v. Osteopathic, Inc.*, 60 F.3d 153, 156

8   (3d Cir. 1995)).  In similar circumstances, other courts in this district have determined that

9   re-opening discovery to allow depositions to be taken is the appropriate remedy to

10  mitigate the prejudice of allowing expert testimony that is subject to preclusion.  *See*

11  *Bowersfield v. Suzuki Motor Corp.*, 151 F. Supp. 2d 625, 630 (E.D. Pa. 2001); *accord*

12  *Crisomia v. Parkway Mortg., Inc.*, 286 B.R. 604, 611-12 (Bankr. E.D. Pa. 2002) ("The

13  solution fashioned by the Bowersfield court is the appropriate course in this contested

14  matter.").

15          In *Bowersfield*, the plaintiffs' expert produced an insufficient report that

16  failed to include much of the methodology and bases for his conclusions.  *Bowersfield*,

17  151 F. Supp. 2d at 631.  Recognizing the obvious prejudice inherent in allowing testimony

18  beyond that contained in the deficient report, the court determined that the appropriate

19  remedy was to grant additional depositions to cure any prejudice to the defendants.  *See*

20  *id.* at 632.  Should the Court decline to exclude the expert witnesses, the same remedy is

21  appropriate here.

22          Further, equity demands that the Court should not reward Plaintiffs for

23  their intentional failures to comply with timely discovery rules by refusing Defendants the

24  opportunity to depose.  The expert disclosure rules are meant to promote disclosure of the

25  basic issues and facts of the case to the broadest practical extent.  *See Thibeault v. Square*

26  *D Co.*, 960 F.2d 239, 244 (1st Cir. 1992).  To this end, the rules were specifically

27  designed to eradicate the type of unfair tactical advantage gained by delaying disclosures

28  to deprive opponents of the opportunity to depose experts, challenge their credentials and

1    prepare defenses based on full evaluations of their conclusions.  *Lohnes v. Level 3*

2    *Commc'ns, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001).

3                Furthermore, the suggestion articulated by the Magistrate during the

4    hearing on January 19, 2011—that Union Carbide and Montello seek time to depose the

5    experts after the case is remanded to the Northern District of California—provides no

6    remedy, since that court expects remand only of trial-ready cases.  Moreover, taking the

7    depositions following a trial remand flies in the face of the MDL system, which is

8    designed to facilitate "coordinated or consolidated pretrial proceedings."  *In re Asbestos*

9    *Products Liability Litig.*, 771 F. Supp. 415, 421 (J.P.M.L. 1991) (quoting from 28 U.S.C.

10   § 1407).  Under this system of case management, cases are not supposed to be remanded

11   back to the jurisdiction from which they were transferred until the transferee court

12   determines that they are ready for trial.  *See, e.g., Lexecon Inc. v. Milberg Weiss Bershad*

13   *Hynes & Lerach*, 523 U.S. 26 (1998).  This case is not ready for trial, as full expert

14   discovery under the Federal Rules has been not occurred.

15               Should the Court allow the testimony of the expert witnesses and not grant

16   Union Carbide and Montello the opportunity to depose these experts on their opinions in

17   this case, Defendants will be effectively denied expert discovery.  As a result of the

18   January 19 Order, Defendants are left with no opportunity to fully evaluate or test the

19   conclusions and credentials presented by Plaintiffs' witnesses in their supplementation of

20   the new reports.  This Court should not allow Plaintiffs to shield their experts from

21   deposition through a willful refusal to comply with the Court's discovery orders and their

22   own responsibilities under the Federal Rules of Civil Procedure.  Accordingly, should the

23   Court decline to exclude them, Defendants request that the Court modify the January 19

24   Order to allow Defendants an additional 120 days (approximately the period allowed

25   under the Amended Schedule Order) to complete depositions of Plaintiffs' expert

26   witnesses.

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CONCLUSION

For these reasons, Union Carbide and Montello respectfully request that the Court set aside the Magistrate's January 19, 2011 Order and grant Defendants' request to exclude the expert witnesses.  In the alternative, Union Carbide and Montello ask that the Court modify the Order to allow Defendants adequate time to depose the expert witnesses prior to any determination that the case is ready for remand.

Respectfully submitted,

BAKER BOTTS L.L.P.

Dated: February 2, 2011            By: _____
                                        Andrew J. Yoder

ATTORNEYS FOR DEFENDANT
UNION CARBIDE CORPORATION


HARTMAN, BLACKSTOCK & MOORE

Dated: February 2, 2011            By: _____
                                        Molly J. Mrowka

ATTORNEYS FOR DEFENDANT
MONTELLO, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served via the Court's CM/ECF system on the following counsel of record, each of whom has consented to electronic service via the CM/ECF system, on the 2nd day of February 2011:

David R. Donadio
Frank J. Anders
Noah Wood
Brayton Purcell LLP
222 Rush Landing Road
P.O. Box 6169
Novato, California 94948-6169

Molly J. Mrowka
Hartman, Blackstock & Moore, PPC
182 Howard Street #414
San Francisco, CA  94105

Catherine Morris Krow
Nikka N. Rapkin
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105

_____
Andrew J. Yoder