**EXHIBIT I**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)                    MDL 875

SAMANTHA LYMAN, et al.          :
                                :
    v.                          :    EDPA
                                :    Civil Action No. 09-62999
UNION CARBIDE CORPORATION, et al. :

### MEMORANDUM ORDER

AND NOW, this 3rd day of February, 2012, upon consideration of defendant Union Carbide Corporation's Renewed Motion to Enforce Order for Costs (Doc. 80) (the "Renewed Motion to Enforce"), plaintiffs' response (Doc. 86) ("Pls.' Resp."), and defendant's reply thereto (Doc. 89), it is hereby

### ORDERED

that the Renewed Motion to Enforce is GRANTED IN PART and DENIED IN PART. As set forth more fully infra, plaintiffs' counsel shall pay defendants Union Carbide Corporation ("UCC") and Montello, Inc. a combined total of $21,351.00.

1. The court entered an Amended Scheduling Order on December 3, 2009 (Doc. 17). On July 7, 2010, defendant UCC filed a Motion to Exclude Testimony of Plaintiffs' Expert Witnesses (Doc. 36) (the "Motion to Exclude") which was joined by defendant Montello, Inc. (Doc. 37). After oral argument on the motion, the court granted in part and denied in part the motion by Order dated September 23, 2010 (Doc. 47). Although the court did not exclude plaintiffs' experts as requested by defendants in the motion, the court determined that plaintiffs failed to serve all economic and medical causation expert reports within the time frame directed by the court's Scheduling Order. Accordingly, pursuant to Rule 16(f), the court ordered

plaintiffs' attorneys to pay all reasonable expenses, including attorney's fees, incurred by defendants UCC and Montello in connection with bringing the Motion to Exclude.

      2.     By letter dated March 31, 2011, counsel for UCC requested payment of expenses and attorney fees in the amount of $13,054.64 for the preparation of the Motion to Exclude. (Mot., Ex. A.) The fees requested at this time reflected a billing rate of $346 per hour for UCC's lead counsel on the Motion to Exclude, Andrew Yoder. Mr. Yoder's billing rate at the time the work was performed on the Motion to Exclude in July 2010 was $346 per hour, although it was increased to $383 per hour effective January 1, 2011. (Mot., Ex. G.) Counsel for plaintiffs and UCC corresponded several times over the next several months, but were unable to reach a resolution on the payment of fees for the Motion to Exclude. As a result, on May 16, 2011, UCC filed a Motion to Enforce Order for Costs (Doc. 71), requesting that the court award costs and fees in the amount of $20,524.10. The fees requested in the Motion to Enforce reflected a billing rate of $383 an hour for Mr. Yoder. (Doc. 71.) Plaintiffs did not file a response to the Motion to Enforce by the required deadline due to a clerical error by plaintiffs' counsel, but instead first filed a motion to extend time to file a response to UCC's Motion to Enforce (Doc. 72) on June 17, 2011, and then filed the response on July 1, 2011 (Doc. 75). UCC opposed plaintiffs' motion to extend time on the grounds that plaintiffs failed to show good cause for missing the response deadline (Doc. 76). Plaintiffs subsequently filed a reply brief (Doc. 77). Plaintiffs also offered $3,500 to settle the claim for fees and costs related to the Motion to Exclude. See Decl. of Kimberly J. Chu, attached to Pls.' Resp. (the "Chu Decl.").

      3.     In July 2011, plaintiffs' counsel was under the belief that plaintiffs' claims against UCC had been settled. See Pls.' Resp., Decl. of David R. Donadio at ¶ 3, attached as Ex.

E to the Chu Decl. (the "Donadio Decl."). It was the understanding of plaintiffs' counsel that the settlement negotiated with UCC's counsel encompassed plaintiffs' claims against UCC, but not defendant Montello, as Montello is represented by separate counsel. Id. On August 8, 2011, counsel for UCC notified the court that plaintiffs and defendants UCC and Montello had reached an agreement to settle the underlying lawsuit; therefore, UCC withdrew its pending motion for costs (Mot., Ex. H). As a result, the undersigned entered an Order dated August 11, 2011 denying the Motion to Enforce as moot (Doc. 78). Later, plaintiffs' counsel was informed that UCC intended for the settlement negotiated in July 2011 to encompass plaintiffs' claims against UCC and Montello. (Donadio Decl. at ¶ 4.) UCC's counsel in charge of settlement acknowledged to plaintiffs' counsel that he had failed to communicate to plaintiffs' counsel that it was the intention of UCC that Montello be included in the settlement with UCC. Id. at ¶ 5. Because plaintiffs considered the proposed settlement amount to be insufficient to cover their claims against both UCC and Montello, the parties did not, in fact, settle the lawsuit. Id. at ¶ 7. On August 23, 2011, the court was notified that the parties had not reached a settlement. (Mot., Ex. I.)

    4. On September 22, 2011, pursuant to Fed. R. Civ. P. 37, UCC filed the Renewed Motion to Enforce presently before the court, requesting that the court award it $43,162.40 in fees and costs. (Mot. at 17.) In their response, plaintiffs argue that UCC's claimed expenses are excessive, unreasonable, and are based on insufficient evidence. (Pls.' Resp. at 6-17.)

    5. UCC has the burden of demonstrating that its request for attorney's fees is reasonable. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). To do so, UCC must

3

submit evidence supporting the hours worked and rates claimed. Id. The party opposing the fee award then has the burden to challenge, by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. Rode, 892 F.2 at 1183 (citing Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d Cir. 1989)). The court cannot "decrease a fee award based on factors not raised at all by the adverse party." Id. Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections. Id.

To calculate an attorney's fee award, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 314-15 (3d Cir. 2006). The result of this computation is the lodestar. Hahnemann Univer. Hosp. v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008); Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996). The lodestar is strongly presumed to yield a reasonable fee. Washington, 89 F.3d at 1035 (citing City of Burlington v. Dague, 505 U.S. 557 (1992)). However, the court has the discretion to make certain adjustments to the lodestar. Rode, 892 F.2d at 1183. As the Third Circuit has explained, "[w]hile it is true that . . . the district court cannot decrease a fee award based on factors not raised at all by the adverse party, nonetheless, the burden remains on the party requesting the fee to prove its reasonableness, and the court has a positive and affirmative function in the fee fixing process, not merely a passive role." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 713 (3d Cir. 2005) (internal quotations and citations omitted).

The first step in calculating the lodestar is determining whether the number of hours expended was reasonable. Any hours that were not "reasonably expended" must be

4

excluded from the fee calculation. McKenna v. City of Philadelphia, 582 F.3d 447, 455 (3d Cir. 2009) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode, 892 F.2d at 1183. Moreover, "[a] fee petition is required to be specific enough to allow the district court 'to determine if the hours claimed are unreasonable for the work performed.'" Id. at 1190 (quoting Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir. 1983)).

With respect to determining a reasonable hourly rate, the general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community. Washington, 89 F.3d at 1035 (citing Blum v. Stenson, 465 U.S. 886, 895-96 n.11 (1984)). The prevailing party bears the burden of establishing by way of satisfactory evidence, in addition to the attorney's own affidavits, that the requested hourly rates meet this standard. Id. (internal citations and quotations omitted). "The starting point in determining a reasonable hourly rate is the attorney's usual billing rate, but this is not dispositive." Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001) (internal quotation omitted).

      6.     Number of hours: In calculating the lodestar, the court will first determine whether the number of hours spent by UCC's counsel preparing the Motion to Exclude and the Motion to Enforce was reasonable.

      a.     Motion to Exclude: UCC has requested that the court award it 33.8 hours of Mr. Yoder's time and 3.0 hours of paralegal time for the preparation of the Motion to Exclude, UCC's reply to plaintiffs' response, and for time spent preparing for oral argument on the motion. (Mot. at 13-14.) Specifically, UCC requests reimbursement of 16.3 hours for the preparation of the Motion to Exclude, and 17.5 hours for the reply brief and preparation for the

5

hearing before the court on the motion. (Mot. at 14.) UCC also requests the court to award 3.0 hours for the work of a paralegal in connection with the same. Id. Plaintiffs contend that the number of hours spent on the Motion to Exclude were not reasonable, as they were excessive. The court agrees. The issues argued in the underlying Motion to Exclude were not novel, and the motion did not present complex legal theories. The primary issue of the Motion to Exclude was that plaintiffs' counsel failed to comply with the court's Scheduling order. The court will award hours spent by Mr. Yoder on the preparation of the Motion to Exclude and will award 10.0 hours for this work. Furthermore, the court agrees with plaintiffs that the 17.5 hours expended on the reply brief and preparation for the hearing were excessive. The reply brief was nine pages long and cited to only two new cases. As such, the court will award 8.0 hours for the work performed by Mr. Yoder on the reply brief and preparation for the hearing on the Motion to Exclude. The 3.0 hours expended by the paralegal in connection with the preparation of the motion are reasonable and will be awarded.

        b.     Motion to Enforce: The court notes that in support of its Renewed Motion to Enforce, UCC provided the court with a Declaration of Counsel which describes the tasks performed by the various UCC attorneys on the Motion to Exclude and the Motion to Enforce for which UCC seeks reimbursement. See Mot., Ex. G (the "Yoder Decl."). UCC also attached to its Renewed Motion to Enforce redacted copies of its attorneys' billing invoices provided to UCC as additional support for the claimed fees and costs. See Mot., Ex. L. However, the number of hours requested by UCC for the legal work pertaining to the Motion to Enforce is less than the hours reflected by the billing statements for such work. For instance, UCC requests reimbursement for 28.7 hours of work performed by attorney Yoder, but the

6

billing statements reflect 30.7 hours of work performed during the relevant time period. Compare Mot. at 15 with Ex. L. Similarly, UCC requests reimbursement for 30.1 hours of work performed by attorney Johnson, but the billing statements reflect 38.5 hours billed for this attorney during the relevant time period. Thus, while UCC's counsel already has reduced certain of the hours billed, it is unclear from the party's submissions which hours were reduced by UCC. As a result, the court is unable to determine by reviewing the time sheets on a line by line basis which hours billed by UCC's counsel are reasonable.

In any event, the court finds that the total attorney time of 79 hours, see Mot. at 15; Yoder Decl. at ¶ 9, requested for the Motion to Enforce is excessive. First, UCC requests the court award 28.7 hours of time for the work performed by Mr. Yoder. The court finds that no more than 14.0 hours need have been spent by a senior associate of Mr. Yoder's experience in the attempts to meet and confer with plaintiffs' counsel, the preparation of the Motion to Enforce, the supervision of the subordinate attorneys in the preparation of the motion to enforce, and UCC's opposition to plaintiffs' motion for an extension of time to file a response to the motion to enforce. Second, UCC requests the court award it a combined total of 35.3 hours for the work performed by attorneys Caire and Johnson researching and drafting the Motion to Enforce. (Mot. at 15; Yoder Decl. at ¶ 9.) The time spent by these junior associates is excessive; nearly a full week of work was not required to research and prepare a motion to enforce payment of fees and costs. Instead, the court will award 2.0 hours for the work performed by Mr. Caire, and 8.0 hours for the work performed by Mr. Johnson. Third, UCC asks the court to award 15.0 hours for the work performed by Mr. Appel researching and drafting UCC's reply to plaintiffs' motion to extend time. (Mot. at 15; Yoder Decl. at ¶ 9.) While the court finds that plaintiffs did

7

not act with reckless disregard in failing to file a timely response to the original motion to enforce, the court will award UCC fees in connection with the preparation of its opposition to plaintiffs' motion for extension of time to file a response. However, the court finds the requested 15.0 hours, nearly two full days work, for the preparation of such opposition to be excessive. Instead, the court deems 8.0 hours for the preparation of UCC's response to plaintiffs' motion to extend time to be reasonable. Thus, the court will award 8.0 hours for the work performed by Mr. Appel.

       7.    <u>Rate</u>: The court must now determine a reasonable hourly rate for the work performed by UCC's attorneys. With respect to the work performed by Messrs. Caire, Johnson, and Appel, UCC's counsel represents that the billing rate charged to UCC for such work was $293 per hour, and requests an award for these attorneys at this rate. (Yoder Decl. at ¶ 9.) With respect to Mr. Yoder's hourly rate, the court notes that UCC's letter request for fees for work performed on the Motion to Exclude was based upon a billing rate of $346 per hour; however, UCC currently requests that the fee calculation for this work and all subsequent work performed by Mr. Yoder be awarded at his current billing rate of $383 per hour. <u>See</u> Mot., Ex. A. The court notes that over six months passed between the time the court ordered plaintiffs in September 2010 to pay all reasonable expenses, including attorney's fees, incurred by UCC and Montello in connection with bringing the Motion to Exclude and March 31, 2011, when UCC first requested payment by letter. During this time, Mr. Yoder's billing rate increased from $346 per hour to $383 per hour. (Yoder Decl. at ¶ 8.)

      In support of its request for fees, UCC has provided the court with the Declaration of Mitchell L. Bach, a partner in the Philadelphia law firm Eckert Seamans Cherin & Mellot,

8

LLC (Mot., Ex. J) (the "Bach Decl."). Mr. Bach represents that, in his personal experience, the rates charged by Baker Botts LLP are usual and customary in federal district court for lawsuits of this complexity, as reflected by the rates of lawyers associated with his firm and comparable Am. Law 100 firms practicing in the Eastern District. (Bach Decl. at ¶ 10.) UCC incurred $3,959.00 in costs to retain the services of Mr. Bach to review the relevant documentation and prepare the Bach Declaration. (Yoder Decl. at ¶ 10.)

Based on a review of the Bach Declaration, and given UCC's part in the delay in the resolution of the Motion to Enforce, the court will award fees for the work performed by Mr. Yoder on the Motion to Exclude at a rate of $346 per hour, and for the work performed by Mr. Yoder on the Motion to Enforce at a rate of $383 per hour. In addition, the fee for the work performed by each of Messrs. Caire, Johnson, and Appel will be calculated using a rate of $293 per hour.

8.  Thus, in accordance with Fed. R. Civ. P. 16(f) and 37, the court awards the following:

| Motion to Exclude | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Rate** | |
| Yoder | 10.0 | $346 | $3,460.00 |
| Yoder | 8.0 | $346 | 2,768.00 |
| Kennedy | 3.0 | $176 | 528.00 |
| | | Subtotal | $6,756.00 |

| Motion to Enforce | | | |
|---|---|---|---|
| **Attorney** | **Hours** | **Rate** | |
| Yoder | 14 | $383 | $5,362.00 |
| Caire | 2 | $293 | 586.00 |
| Johnson | 8 | $293 | 2,344.00 |
| Appel | 8 | $293 | 2,344.00 |
| | | Subtotal | $10,636.00 |

The court also will award $3,959.00 for the cost of retaining Mr. Bach and the preparation of the Bach Declaration.

Thus, the total amount of expenses, fees and costs to be paid by plaintiffs' counsel to defendants UCC and Montello, Inc. is $21,351.00, calculated as follows:

| | |
|---|---|
| Motion to Exclude | $ 6,756.00 |
| Motion to Enforce | 10,636.00 |
| Retention of Mr. Bach | 3,959.00 |
| **Total** | **$ 21,351.00** |

10

9. For the foregoing reasons, defendant UCC's Renewed Motion to Enforce is granted in part and denied in part. Plaintiffs' counsel shall pay defendants UCC and Montello, Inc. a total of $21,351.00 as full and final resolution of any claim for expenses, fees and costs related to the Motion to Exclude Testimony of Plaintiffs' Expert Witnesses, in its entirety, for both defendant UCC and Montello, Inc., combined.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge