# EXHIBIT 1

ADRMOP

# U.S. District Court
## California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:12-cv-03678-DMR

Johnson et al v. A.W. Chesterton Company et al          Date Filed: 07/13/2012
Assigned to: Magistrate Judge Donna M. Ryu          Jury Demand: Defendant
Case in other court: San Francisco County Superior Court,          Nature of Suit: 368 P.I. : Asbestos
    CGC-12-276033          Jurisdiction: Federal Question
Cause: 28:1441 Petition for Removal- Asbestos Litigation

**Plaintiff**

**Elvira B. Johnson**          represented by   **Alana Kalantzakis**
*individually an as personal*          Baron & Budd, P.C.
*representative to the estate of Danny*          3102 Oak Lawn Avenue, Suite 1100
*Joe Johnson*          Dallas, TX 72519
    (214) 521-3605
    Fax: (214) 520-1181
    *LEAD ATTORNEY*
    *ATTORNEY TO BE NOTICED*

    **Christine Tamer**
    Baron & Budd, P.C.
    3102 Oak Law Avenue, Suite 1100
    Dallas, TX 72519
    (214) 521-3605
    Fax: (214) 520-1181
    *LEAD ATTORNEY*
    *ATTORNEY TO BE NOTICED*

    **Denyse Clancy**
    Baron & Budd, P.C.
    3102 Oak Lawn Avenue
    Suite 1100
    Dallas, TX 75219
    (214) 521-3605
    Fax: (214) 520-1181
    *LEAD ATTORNEY*
    *ATTORNEY TO BE NOTICED*

    **John Langdoc**
    Baron & Budd, P.C.
    3102 Oak Lawn Avenue, Suite 1100
    Dallas, TX 72519
    (214) 521-3605
    Fax: (214) 520-1181
    *LEAD ATTORNEY*
    *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Lynsie D. Johnson**                              represented by  **Alana Kalantzakis**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Christine Tamer**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Denyse Clancy**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **John Langdoc**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Jeff London**                                    represented by  **Alana Kalantzakis**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Christine Tamer**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Denyse Clancy**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **John Langdoc**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

**Plaintiff**
**Brent Revok**                                    represented by  **Alana Kalantzakis**
                                                                    (See above for address)
                                                                    *LEAD ATTORNEY*
                                                                    *ATTORNEY TO BE NOTICED*

                                                                    **Christine Tamer**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Denyse Clancy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Langdoc**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

<u>Defendant</u>

**A.W. Chesterton Company**

<u>Defendant</u>

**Amcord, Inc.**
*individually and as successor-in-*
*interest to Riverside Cement*

<u>Defendant</u>

**Aurora Pump Company**

<u>Defendant</u>

**Buffalo Pumps, Inc.**

<u>Defendant</u>

**Chevron U.S.A., Inc.**
*doing business as*
Chevron Products Company

<u>Defendant</u>

**Cleaver-Brooks, Inc.**
*formerly known as*
Aqua-Chem, Inc.

<u>Defendant</u>

**ConocoPhillips Company**

<u>Defendant</u>

**Crane Co.**
*individually and as successor-in-*
*interest to Chapman Valves*

represented by **Jason Nathaniel Haycock**
K L Gates LLP
Four Embarcadero Center
Suite 1200
San Francisco, CA 94111

**Golden Gate Drywall, Inc.**

**Defendant**
**Gould Electronics, Inc.**

**Defendant**
**Goulds Pumps Incorporated**

**Defendant**
**Hanson Permanente Cement, Inc.**
*individually and as successor-in-interest to Kaiser Gypsum Company, Inc.*
*formerly known as*
Kaiser Cement Corporation

**Defendant**
**Highland Stucco and Lime Products, Inc.**

**Defendant**
**Honeywell International, Inc.**
*individually and as successor-in-interest to Allied-Signal, Inc. and The Bendix Corporation*

**Defendant**
**Ingersoll-Rand Company**

**Defendant**
**ITT Corporation**
*individually and as successor-in-interest to "Bell & Gossett" branded products and Grinnell Corporation*
*formerly known as*
ITT Industries, Inc.

**Defendant**
**John Crane Inc.**

**Defendant**
**Kaiser Gypsum Company, Inc.**

**Defendant**
**Kelly-Moore Paint Company, Inc.**

**Defendant**
**Kentile Floors, Inc.**

**Defendant**

**Merlex Stucco, Inc.**

**Defendant**

**Montello, Inc.**

**Defendant**

**Owens-Illinois, Inc.**
*individually and as successor-in-interest to Owens-Illinois Glass Company*
*doing business as*
O-I

**Defendant**

**Parex USA, Inc.**
*individually and as successor-in-interest to Parexlahabra, Inc. and La Habra Products, Inc.*

**Defendant**

**Rich-Tex, Inc.**

**Defendant**

**Rockbestos-Surprenant Cable Corporation**
*formerly known as*
The Rockbestos Company, Inc.

**Defendant**

**San Francisco Gravel Company**

**Defendant**

**Schneider Electric USA, Inc.**
*formerly known as*
Square D Company

**Defendant**

**Shell Oil Company**

**Defendant**

**Texas Industries, Inc.**
*individually and as successor-in-interest to Riverside Cement Company*

**Defendant**

**Okonite Company, The**

**Defendant**

**TXI California, Inc.**
*individually and as successor-in-*
*interest to Riverside Cement Company*

<u>Defendant</u>

**TXI Riverside, Inc.**
*individually and as successor-in-*
*interest to Riverside Cement Company*

<u>Defendant</u>

**Union Carbide Corporation**

<u>Defendant</u>

**W.W. Grainger, Inc.**

<u>Defendant</u>

**Warren Pumps, L.L.C.**
*formerly known as*
Warren Pumps, Inc.

<u>Defendant</u>

**Westpac Materials, LLC**
*individually and as successor-in-*
*interest to Hamilton Materials, Inc.*
*formerly known as*
Hamilton Distribution, Inc.

<u>Defendant</u>

**Yarway Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 07/13/2012 | 1 | NOTICE OF REMOVAL with jury demand from San Francisco Superior Court. Their case number is CGC 12-276033. (Filing fee $350 receipt number 34611076380). Filed byCrane Co.. (vlk, COURT STAFF) (Filed on 7/13/2012) Modified on 7/17/2012 (vlk, COURT STAFF).<br><br>**Document to voluminous to efile.** (Entered: 07/17/2012) |
| 07/13/2012 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 10/10/2012. Case Management Conference set for 10/17/2012 01:30 PM. (Attachments: # 1 Standing Order)(vlk, COURT STAFF) (Filed on 7/13/2012) (Entered: 07/17/2012) |
| 07/13/2012 | 3 | NOTICE of Tag-Along Action by Crane Co. (vlk, COURT STAFF) (Filed on 7/13/2012) (Entered: 07/17/2012) |
| 07/13/2012 | 4 | Certificate of Interested Entities by Crane Co. (vlk, COURT STAFF) (Filed on 7/13/2012) (Entered: 07/17/2012) |

| 07/13/2012 | 5 | CERTIFICATE OF SERVICE by Crane Co. re 3 Notice (Other), 1 Notice of Removal, 4 Certificate of Interested Entities (vlk, COURT STAFF) (Filed on 7/13/2012) (Entered: 07/17/2012) |
|---|---|---|

| PACER Service Center | | |
|---|---|---|
| Transaction Receipt | | |
| 07/18/2012 11:45:48 | | |
| **PACER Login:** | kl0203 | **Client Code:** | 0950000.00102/11428 |
| **Description:** | Docket Report | **Search Criteria:** | 4:12-cv-03678-DMR |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |



# ORIGINAL

SUMMONS ISSUED

# FILED

San Francisco County Superior Court

MAY - 4 2012

CLERK OF THE COURT
BY: _____ DENNIS TOYAMA
Deputy Clerk

FILED BY FAX

1   John Langdoc, Esq. (SBN 235509)
2   Denyse Clancy, Esq. (SBN 255276)
    Tiffany Dickenson, Esq. (SBN 264364)
3   Alana Kalantzakis, Esq. (SBN 277154)
    Christine Tamer, Esq. (SBN 281812)
4   **BARON & BUDD, P.C.**
    3102 Oak Lawn Avenue, Suite 1100
5   Dallas, Texas 75219
    Telephone: 214/521-3605; 800/222-2766
6   Facsimile: 214/520-1181
7
    ATTORNEYS FOR PLAINTIFF
8

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

9            SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                      COUNTY OF SAN FRANCISCO

11

12   ELVIRA B. JOHNSON, Individually and as   ) CASE NO. CGC-12-276030
     Personal Representative to the Estate of    )
13   DANNY JOE JOHNSON, Deceased,               ) **COMPLAINT FOR WRONGFUL**
     LYNSIE D. JOHNSON, JEFF LONDON             ) **DEATH AND SURVIVAL**
14   and BRENT REVOK,                           )
                                                ) [COMPLEX ASBESTOS
15            Plaintiffs,                        ) LITIGATION-SUBJECT TO THE
                                                ) GENERAL ORDERS CONTAINED IN
16   vs.                                         ) FILE NO. 828684]
                                                )
17                                              )
     **A. W. CHESTERTON COMPANY;**               )
18   **AMCORD, INC.,** individually and as       )
     successor-in-interest to Riverside Cement;  )
19   **AURORA PUMP COMPANY;**                    )
     **BUFFALO PUMPS, INC.;**                    )
20   **CHEVRON U.S.A., INC.,** (individually     )
     and d/b/a Chevron Products Company);        )
21   **CLEAVER-BROOKS, INC.,**                   )
     (individually and f/k/a Aqua-Chem, Inc.);   )
22   **CONOCOPHILLIPS COMPANY;**                 )
     **CRANE CO.,** (individually and as         )
23   successor in interest to Chapman Valves);   )
     **DAP PRODUCTS, INC.;**                     )
24   **DAYTON ELECTRIC**                         )
     **MANUFACTURING, CO.** (Individually        )
25   and as a wholly-owned subsidiary of W.W.    )
     Grainger, Inc.);                            )
26   **DOWMAN PRODUCTS, INC.;**                  )
27

28                                        -1-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

| | |
|---|---|
| 1 | **ERICSSON, INC.** (individually, and as ) |
| | successor-in-interest to The Anaconda ) |
| 2 | Company , successor-in-interest to ) |
| | Anaconda-Ericsson, Inc., ) |
| 3 | successor-in-interest to Continental Wire & ) |
| 4 | Cable Company and successor-in-interest to ) |
| | Anaconda Wire & Cable Company); ) |
| 5 | **EXXON MOBIL CORPORATION;** ) |
| | **GEORGIA-PACIFIC, LLC** (f/k/a ) |
| 6 | Georgia-Pacific Corporation, individually ) |
| 7 | and as successor-in-interest to Bestwall ) |
| | Gypsum Company); ) |
| 8 | **GOLDEN GATE DRYWALL, INC.;** ) |
| | **GOULD ELECTRONICS, INC.;** ) |
| 9 | **GOULDS PUMPS INCORPORATED;** ) |
| | **HANSON PERMANENTE CEMENT,** ) |
| 10 | **INC.,** (f/k/a Kaiser Cement Corporation, ) |
| 11 | individually and as successor-in-interest to ) |
| | Kaiser Gypsum Company, Inc.); ) |
| 12 | **HIGHLAND STUCCO AND LIME** ) |
| | **PRODUCTS, INC.;** ) |
| 13 | **HONEYWELL INTERNATIONAL,** ) |
| | **INC.** (individually and as ) |
| 14 | successor-in-interest to Allied-Signal, Inc. ) |
| | and The Bendix Corporation); ) |
| 15 | **INGERSOLL-RAND COMPANY;** ) |
| | **ITT CORPORATION** (f/k/a ITT ) |
| 16 | Industries, Inc., individually and as ) |
| 17 | successor-in-interest to "Bell & Gossett" ) |
| | branded products and Grinnell ) |
| 18 | Corporation); ) |
| | **JOHN CRANE, INC.;** ) |
| 19 | **KAISER GYPSUM COMPANY, INC.;** ) |
| | **KELLY-MOORE PAINT COMPANY,** ) |
| 20 | **INC.;** ) |
| 21 | **KENTILE FLOORS, INC.;** ) |
| | **MERLEX STUCCO, INC.;** ) |
| 22 | **MONTELLO, INC.;** ) |
| | **OWENS-ILLINOIS, INC.** (individually ) |
| 23 | and as successor-in-interest to ) |
| | Owens-Illinois Glass Company and d/b/a ) |
| 24 | O-I); ) |
| 25 | **PAREX USA, INC.** (individually and as ) |
| | successor-in-interest to Parexlahabra, Inc., ) |
| 26 | and La Habra Products, Inc.); ) |
| | **RICH-TEX, INC.;** ) |
| 27 | **ROCKBESTOS-SURPRENANT** ) |
| 28 | -2- |

CABLE CORPORATION (f/k/a The Rockbestos Company, Inc.); )
SAN FRANCISCO GRAVEL COMPANY; )
SCHNEIDER ELECTRIC USA, INC. (f/k/a Square D Company); )
SHELL OIL COMPANY; )
TEXAS INDUSTRIES, INC. (Individually, and as successor-in-interest to Riverside Cement Company); )
THE OKONITE COMPANY; )
TXI CALIFORNIA, INC. (Individually, and as successor-in-interest to Riverside Cement Company); )
TXI RIVERSIDE, INC. (individually, and as successor-in-interest to Riverside Cement Company); )
UNION CARBIDE CORPORATION; )
W.W. GRAINGER, INC.; )
WARREN PUMPS, L.L.C. (f/k/a Warren Pumps, Inc.); )
WESTPAC MATERIALS, LLC, (Individually and as Successor-In-Interest to Hamilton Materials, Inc. f/k/a/ Hamilton Distribution, Inc.); )
YARWAY CORPORATION, and DOES 1-300 )

        Defendants. )

COME NOW, Plaintiffs ELVIRA B. JOHNSON Individually and as Personal Representative to the Estate of DANNY JOE JOHNSON, Deceased, LYNSIE D. JOHNSON, JEFF LONDON and BRENT REVOK and for causes of action against Defendants, and each of them, complain and allege as follows:

## GENERAL ALLEGATIONS

1.     ELVIRA B. JOHNSON appears individually and as Decedent's personal representative, and is the surviving spouse of Decedent DANNY JOE JOHNSON ("Decedent"). Plaintiffs LYNSIE D. JOHNSON, JEFF LONDON and BRENT REVOK are the heirs at law of

-3-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

decedent. At all times mentioned herein, these Plaintiffs have been and are citizens of the United States.

2. The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, Does 1 through 300, inclusive, are unknown to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and when the true names and capacities of said Defendants by such fictitious names; and when the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter alleged, either through said Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, lease or sale of the instrumentality causing the injury, or in some other manner.

3. Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendants and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants and were, as such, acting within the scope, course, and authority of said agency, employment and/or joint venture, in that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring of each and every other Defendant as the agent, servant, employee and/or joint venturer.

4. Decedent DANNY JOE JOHNSON ("Decedent") was a California resident during a substantial period of his asbestos exposure upon which Plaintiffs' claims are based.

5. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants A. W. CHESTERTON COMPANY; AMCORD, INC., individually and as successor-in-interest to Riverside Cement; AURORA PUMP COMPANY; BUFFALO PUMPS, INC.; CHEVRON U.S.A., INC., individually and d/b/a Chevron Products Company;

-4-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

Case MDL No. 875   Document 8882-1   Filed 07/19/12   Page 13 of 57

1  CLEAVER-BROOKS, INC., individually and f/k/a Aqua-Chem, Inc.; CONOCOPHILLIPS

2  COMPANY; CRANE CO., individually and as successor in interest to Chapman Valves; DAP

3  PRODUCTS, INC.; DAYTON ELECTRIC MANUFACTURING, CO., Individually and as a

4  wholly-owned subsidiary of W.W. Grainger, Inc.; DOWMAN PRODUCTS, INC.; ERICSSON,

5  INC. (individually, and as successor-in-interest to The Anaconda Company , successor-in-interest

6  to Anaconda-Ericsson, Inc., successor-in-interest to Continental Wire & Cable Company and

7  successor-in-interest to Anaconda Wire & Cable Company); EXXON MOBIL CORPORATION;

8  GEORGIA-PACIFIC, LLC, f/k/a Georgia-Pacific Corporation, individually and as

9  successor-in-interest to Bestwall Gypsum Company; GOLDEN GATE DRYWALL, INC.;

10  GOULD ELECTRONICS, INC.; GOULDS PUMPS INCORPORATED; HANSON

11  PERMANENTE CEMENT, INC., (f/k/a Kaiser Cement Corporation, individually and as

12  successor-in-interest to Kaiser Gypsum Company, Inc.); HIGHLAND STUCCO AND LIME

13  PRODUCTS, INC.; HONEYWELL INTERNATIONAL, INC. (individually and as

14  successor-in-interest to Allied-Signal, Inc. and The Bendix Corporation); INGERSOLL-RAND

15  COMPANY; ITT CORPORATION f/k/a ITT Industries, Inc., individually and as

16  successor-in-interest to "Bell & Gossett" branded products and Grinnell Corporation; JOHN

17  CRANE, INC.; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY,

18  INC.; KENTILE FLOORS, INC.; MERLEX STUCCO, INC.; MONTELLO, INC.;

19  OWENS-ILLINOIS, INC. individually and as successor-in-interest to Owens-Illinois Glass

20  Company and d/b/a O-I; PAREX USA, Inc., individually and as successor-in-interest to

21  Parexlahabra, Inc., and La Habra Products, Inc.; RICH-TEX, INC.;

22  ROCKBESTOS-SURPRENANT CABLE CORPORATION, f/k/a The Rockbestos Company,

23  Inc.; SAN FRANCISCO GRAVEL COMPANY; SCHNEIDER ELECTRIC USA, INC., f/k/a

24  Square D Company; SHELL OIL COMPANY; TEXAS INDUSTRIES, INC. (Individually, and as

25

26

27

28

-5-

successor-in-interest to Riverside Cement Company); THE OKONITE COMPANY; TXI CALIFORNIA, INC. (Individually, and as successor-in-interest to Riverside Cement Company); TXI RIVERSIDE, INC. (individually, and as successor-in-interest to Riverside Cement Company); UNION CARBIDE CORPORATION; W.W. GRAINGER, INC.; WARREN PUMPS, L.L.C., f/k/a Warren Pumps, Inc.; WESTPAC MATERIALS, LLC, Individually and as Successor-In-Interest to Hamilton Materials, Inc. (f/k/a/ Hamilton Distribution, Inc.); YARWAY CORPORATION and DOES 1-300, inclusive, are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States of America, or some foreign jurisdiction, and that said Defendants were authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the State of California.

6.     At all times mentioned above, Defendants, and each of them, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance.

7.     Decedent DANNY JOE JOHNSON was exposed to Defendants' asbestos and asbestos containing products contributing to and causing the development of the asbestos cancer, malignant mesothelioma. As a result of exposure to defendants' asbestos and asbestos containing products, asbestos fibers entered his body. Decedent suffered from the asbestos cancer, malignant mesothelioma and each of defendants asbestos and asbestos containing products that entered his body was a substantial factor in bringing about, prolonging, or aggravating Decedent's mesothelioma and, eventually, Decedent's death. The asbestos and asbestos containing products to which decedent was exposed were designed, marketed, brokered, distributed, sold, manufactured

-6-

or supplied by a named defendant or were used in an unreasonably and unsafe manner under the control of a named Defendant on its premises.

8.    Decedent DANNY JOE JOHNSON and Plaintiff ELVIRA JOHNSON were married at all times relevant to this action, and had been husband and wife. Plaintiffs LYNSIE D. JOHNSON, JEFF LONDON and BRENT REVOK are each wrongful death heirs of the Decedent.

9.    Prior to Decedent's injuries and eventual death as alleged, Decedent was able and did perform duties as a spouse. Subsequent to the injuries and as a proximate result thereof, Decedent was unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home, and due to his death, Decedent will be unable to perform such work, service and duties in the future. As a proximate result thereof, Decedent's spouse, has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to his damages, in an amount presently unknown to Plaintiffs, but which will be proved at the time of trial.

10.   Prior to Decedent's injuries and eventual death as alleged, Plaintiffs ELVIRA JOHNSON and LYNSIE D. JOHNSON, JEFF LONDON and BRENT REVOK as children of the Decedent, enjoyed love, comfort, society, companionship, solace, and moral support of Decedent. Due to Decedent's death, and as a proximate result thereof, Plaintiffs ELVIRA JOHNSON, LYNSIE D. JOHNSON, JEFF LONDON and BRENT REVOK will be deprived of such consortium of Decedent in the future, in an amount presently unknown to Plaintiffs, but which will be proved at the time of trial.

11.   Specifically, Plaintiff DANNY JOE JOHNSON was exposed to asbestos from asbestos-containing products including, but not limited to, (1) asbestos-containing stucco, caulking, roofing and construction products designed, manufactured, marketed, brokered, distributed, sold, or supplied by AMCORD, INC., individually and as successor-in-interest to

-7-

Riverside Cement; GEORGIA-PACIFIC, LLC (f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company); HANSON PERMANENTE CEMENT, INC., (f/k/a Kaiser Cement Corporation, individually and as successor-in-interest to Kaiser Gypsum Company, Inc.); HIGHLAND STUCCO AND LIME PRODUCTS, INC.; MERLEX STUCCO, INC.; PAREX USA, INC. (individually and as successor-in-interest to Parexlahabra, Inc., and La Habra Products, Inc.); TXI CALIFORNIA, INC. (Individually, and as successor-in-interest to Riverside Cement Company); TXI RIVERSIDE, INC. (individually, and as successor-in-interest to Riverside Cement Company); TEXAS INDUSTRIES, INC. (Individually, and as successor-in-interest to Riverside Cement Company); CHEVRON U.S.A., INC., (individually and d/b/a Chevron Products Company); DAP PRODUCTS, INC.; EXXON MOBIL CORPORATION; SAN FRANCISCO GRAVEL COMPANY; (2) asbestos-containing sheetrock, wall board, joint compound, wall texture, plaster, and wall system products designed, manufactured, marketed, brokered, distributed, sold, or supplied by GEORGIA-PACIFIC, LLC (f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company); DOWMAN PRODUCTS, INC.; GOLDEN GATE DRYWALL, INC.; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT COMPANY, INC.; RICH-TEX, INC.; SAN FRANCISCO GRAVEL COMPANY; WESTPAC MATERIALS, LLC, (Individually and as Successor-In-Interest to Hamilton Materials, Inc. f/k/a/ Hamilton Distribution, Inc.); (3) asbestos-containing flooring materials designed, manufactured, marketed, brokered, distributed, sold, or supplied by KENTILE FLOORS, INC.; (4) asbestos-containing thermal insulation designed, manufactured, marketed, brokered, distributed, sold, or supplied by OWENS-ILLINOIS, INC. (individually and as successor-in-interest to Owens-Illinois Glass Company and d/b/a O-I); (5) asbestos-containing gaskets, valves, pumps, steam traps and packing designed, manufactured, marketed, brokered, distributed, sold, or supplied by A.W.

-8-

1  CHESTERTON COMPANY; AURORA PUMP COMPANY; BUFFALO PUMPS, INC.;
2  CRANE CO., (individually and as successor in interest to Chapman Valves); GOULDS PUMPS
3  INCORPORATED; INGERSOLL-RAND COMPANY; ITT CORPORATION (f/k/a ITT
4  Industries, Inc., individually and as successor-in-interest to "Bell & Gossett" branded products and
5  Grinnell Corporation); JOHN CRANE, INC.; WARREN PUMPS, L.L.C. (f/k/a Warren Pumps,
6  Inc.); YARWAY CORPORATION; (6) asbestos-containing boilers designed, manufactured,
7  marketed, brokered, distributed, sold, or supplied by CLEAVER-BROOKS, INC., (individually
8  and f/k/a Aqua-Chem, Inc.); (7) asbestos drilling muds by CONOCOPHILLIPS COMPANY;
9  MONTELLO, INC.; UNION CARBIDE CORPORATION; (8) asbestos-containing electric motor
10 housings designed, manufactured, marketed, brokered, distributed, sold, or supplied by DAYTON
11 ELECTRIC MANUFACTURING, CO. (Individually and as a wholly-owned subsidiary of W.W.
12 Grainger, Inc.); HONEYWELL INTERNATIONAL, INC. (individually and as
13 successor-in-interest to Allied-Signal, Inc. and The Bendix Corporation); W.W. GRAINGER,
14 INC.; SCHNEIDER ELECTRIC USA, INC. (f/k/a Square D Company); (9) asbestos-containing
15 wire, cable, and batteries designed, manufactured, marketed, brokered, distributed, sold, or
16 supplied by ERICSSON, INC. (individually, and as successor-in-interest to The Anaconda
17 Company , successor-in-interest to Anaconda-Ericsson, Inc., successor-in-interest to Continental
18 Wire & Cable Company and successor-in-interest to Anaconda Wire & Cable Company);
19 GOULD ELECTRONICS, INC.; ROCKBESTOS-SURPRENANT CABLE CORPORATION
20 (f/k/a The Rockbestos Company, Inc.); THE OKONITE COMPANY; (10) supplier, distributor,
21 retailer of raw asbestos and asbestos containing products include GOLDEN GATE DRYWALL,
22 INC.; SAN FRANCISCO GRAVEL COMPANY; UNION CARBIDE CORPORATION; (11)
23 Further, Plaintiff may have been exposed to asbestos at premises owned, maintained and/or
24 controlled by Defendant, including but not limited to SHELL OIL COMPANY.

28

-9-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

12.     Each and every one of Defendants asbestos and asbestos products substantially contributed to and was a cause of the development of Plaintiff DANNY JOE JOHNSON's asbestos cancer, malignant mesothelioma.

13.     Discovery of the cause of Plaintiffs' loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

14.     Further, as a direct and proximate result of the acts of defendants, and each of them, and the severe injuries caused thereby to decedent as set forth in this complaint, Decedent's spouse has suffered, and for a long period of time will continue to suffer loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as a result thereof.

## FIRST CAUSE OF ACTION

### (Negligence)

### (Against all Defendants)

15.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations above.

16.     At all times herein mentioned, each of the named Defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising as certain product, namely asbestos, and other products

-10-

containing asbestos. Said entities shall hereinafter collectively be called "Alternate Entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following Defendants, and each of them, are liable for the acts of each and every "Alternate Entity," and each of them, in that there has been a virtual destruction of Plaintiff's remedy against each such "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" such "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiff's remedy against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| A. W. CHESTERTON COMPANY | |
| AMCORD, INC. | individually and as successor-in-interest to Riverside Cement |
| AURORA PUMP COMPANY | |
| BUFFALO PUMPS, INC. | |
| CHEVRON U.S.A., INC. | individually and d/b/a Chevron Products Company |
| CLEAVER-BROOKS, INC. | individually and f/k/a Aqua-Chem, Inc. |
| CONOCOPHILLIPS COMPANY | |
| CRANE CO. | individually and as successor in interest to |

-11-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
|  | Chapman Valves |
| DAP PRODUCTS, INC. |  |
| DAYTON ELECTRIC MANUFACTURING, CO. | Individually and as a wholly-owned subsidiary of W.W. Grainger, Inc. |
| DOWMAN PRODUCTS, INC. |  |
| ERICSSON, INC. | (individually, and as successor-in-interest to The Anaconda Company , successor-in-interest to Anaconda-Ericsson, Inc., successor-in-interest to Continental Wire & Cable Company and successor-in-interest to Anaconda Wire & Cable Company) |
| EXXON MOBIL CORPORATION |  |
| GEORGIA-PACIFIC, LLC | f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company |
| GOLDEN GATE DRYWALL, INC. |  |
| GOULD ELECTRONICS, INC. |  |
| GOULDS PUMPS INCORPORATED |  |
| HANSON PERMANENTE CEMENT, INC. | (f/k/a Kaiser Cement Corporation, individually and as successor-in-interest to Kaiser Gypsum Company, Inc.) |
| HIGHLAND STUCCO AND LIME PRODUCTS, INC. |  |
| HONEYWELL INTERNATIONAL, INC. | (individually and as successor-in-interest to Allied-Signal, Inc. and The Bendix Corporation) |
| INGERSOLL-RAND COMPANY |  |
| ITT CORPORATION | f/k/a ITT Industries, Inc., individually and as successor-in-interest to "Bell & Gossett" branded products and Grinnell Corporation |
| JOHN CRANE, INC. |  |
| KAISER GYPSUM COMPANY, INC. |  |
| KELLY-MOORE PAINT COMPANY, INC. |  |
| KENTILE FLOORS, INC. |  |
| MERLEX STUCCO, INC. |  |
| MONTELLO, INC. |  |

-12-

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| OWENS-ILLINOIS, INC. | individually and as successor-in-interest to Owens-Illinois Glass Company and d/b/a O-I |
| PAREX USA, Inc. | individually and as successor-in-interest to Parexlahabra, Inc., and La Habra Products, Inc. |
| RICH-TEX, INC. | |
| ROCKBESTOS-SURPRENANT CABLE CORPORATION | f/k/a The Rockbestos Company, Inc. |
| SAN FRANCISCO GRAVEL COMPANY | |
| SCHNEIDER ELECTRIC USA, INC. | f/k/a Square D Company |
| SHELL OIL COMPANY | |
| TEXAS INDUSTRIES, INC. | (Individually, and as successor-in-interest to Riverside Cement Company) |
| THE OKONITE COMPANY | |
| TXI CALIFORNIA, INC. | (Individually, and as successor-in-interest to Riverside Cement Company) |
| TXI RIVERSIDE, INC. | (individually, and as successor-in-interest to Riverside Cement Company) |
| UNION CARBIDE CORPORATION | |
| W.W. GRAINGER, INC. | |
| WARREN PUMPS, L.L.C. | f/k/a Warren Pumps, Inc. |
| WESTPAC MATERIALS, LLC | Individually and as Successor-In-Interest to Hamilton Materials, Inc. (f/k/a/ Hamilton Distribution, Inc.) |
| YARWAY CORPORATION | |

17.     Defendants had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe and to warn that unsafe products under their care and control were exposing bystanders on their premises. At all times mentioned herein, Defendants, and each of them, negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold a certain substance, the generic name

-13-

of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Decedent DANNY JOE JOHNSON.

18.    Plaintiff will show that Decedent is a worker who, for a substantial length of time used, handled or was otherwise exposed to Defendants' asbestos and asbestos products referred to in ¶ 11 in a manner that was reasonably foreseeable to Defendants while working from the 1950s through the 1960s. Specifically, Decedent was exposed to asbestos-containing joint compound, steam traps, stucco, gun plastic cement, gaskets, valves, pumps, floor tile, packing boilers, batteries, drilling mud, wire, caulking, roofing products, sheet-rock, construction products, wallboard, wall texture, plaster, wall system products, thermal insulation, packing, electric motor housings, cable, and other products while serving as a repair technician in the United States Navy from 1956 to 1960 and while working in the construction industry in the 1960s. When Decedent, and other individuals around Decedent, manipulated Defendants' asbestos-containing products, Decedent was exposed to respirable asbestos fibers which he breathed on thousands of occasions. Plaintiff specifically disclaims any and all claims that Plaintiff and/or Decedent may have that occurred on the grounds of any federal enclaves. Plaintiff further disclaims any and all claims based upon torts that may have been committed by the conduct, actions, or omissions of any and all federal officers.

19.    Plaintiff further alleges, as more specifically set out below, that Decedent has suffered illnesses, disabilities, damages, and death proximately caused by his individual exposure to asbestos-containing products, machinery and equipment utilizing asbestos-containing products designed, manufactured, sold, used and applied by Defendants.

-14-

20.     As a direct and proximate result of the Defendants conduct and asbestos products, Plaintiff DANNY JOE JOHNSON suffered severe and permanent injury to his person, body and health, including, but not limited to the asbestos cancer, malignant mesothelioma, all of which caused Plaintiff DANNY JOE JOHNSON's general damages in a sum within the jurisdictional limits of this Court.

21.     On or about December 18, 2011, Decedent DANNY JOE JOHNSON died as a result of the asbestos cancer, malignant mesothelioma.

22.     Plaintiffs are informed and believes, and thereupon alleges, that mesothelioma is a vicious, painful and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products over a period of time.  There is no known cure for any form of malignant mesothelioma.

23.     As a direct and proximate result of the aforesaid conduct of the Defendants, and each of them, Decedent suffered severe and permanent injuries leading to his eventual death from mesothelioma.

24.     As a direct and proximate result of the aforesaid conduct of the Defendants, and each of them, Decedent was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat him, and did incur medical, hospital and professional incidental expenses, including funeral expenses.  When said amounts are ascertained and calculated, plaintiffs will allege said amounts.

25.     In researching, testing, manufacturing, distributing, labeling, and marketing asbestos and asbestos products, Plaintiffs are informed and believe that Defendants did so with conscious disregard for the safety of the users of said asbestos and asbestos products, in that Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to, the asbestos cancer

-15-

malignant mesothelioma. Defendants' knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of Defendants, and which knowledge was obtained by Defendants on or before 1930, and rapidly increasingly thereafter.

26.     On or before 1930, and rapidly increasingly thereafter, Defendants were aware that users of asbestos and asbestos products, as well as members of the general public that were exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and Defendants knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe and not harmful to human life, when in fact said exposure was known by Defendants to be potentially lethal.

27.     With this knowledge, Defendants opted to design, manufacture, market, distribute and/or use their asbestos and asbestos products without attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed their knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations. The above-referenced conduct of said Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, Defendants consciously disregarded the safety of the users of, and persons exposed to,

-16-

their asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and personally exposed thereto, including Plaintiff DANNY JOE JOHNSON.

28.    Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff DANNY JOE JOHNSON to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)    Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to

-17-

Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein.  By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.  Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.  Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants,

-18-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

-19-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

-20-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

29.     Plaintiff further alleges all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent was exposed, as well as any DOE Defendants who may be determined at a later date.

## SECOND CAUSE OF ACTION

(Strict Liability)

(Against all Defendants)

30.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First and Second Causes of Action.

31.     At all times mentioned herein, Defendants, and each of them, researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and bystanders.

32.     As a direct and proximate result of the above described conduct by Defendants and each of them, Decedent DANNY JOE JOHNSON suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma as alleged hereinabove.

33.     At all times mentioned herein, Defendants asbestos and asbestos containing products failed to perform as safely as an ordinary consumer would expect when used in an

-21-

intended or reasonably foreseeable manner, and the risk of danger inherent in this substance and products outweighs the benefits of said substance and products.

34.    At all times mentioned herein, the foreseeable use of the asbestos and products containing said substance discussed above involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

35.    As a direct and proximate result of the above described conduct by Defendants and each of them, Decedent suffered severe and permanent injuries to his person, including his eventual death, as alleged hereinabove.

36.    Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff DANNY JOE JOHNSON to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)    Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such

-22-

materials and products to the health and safety of Plaintiff and others in Plaintiff's position

working in close proximity with such materials until 1964 when certain of such materials

were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein

when the knowledge of such hazards was existing and known to Defendants and/or their

"Alternate Entities," since on or before 1930. By not labeling such materials as to their said

hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to

Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in

fact it was not true and Defendants did not believe it to be true.

(b)    Defendants suppressed information relating to the danger of use of the

aforementioned asbestos and asbestos products by requesting the suppression of

information to the Plaintiff and the general public concerning the dangerous nature of the

aforementioned materials to workers, by not allowing such information to be disseminated

in a manner which would have given general notice to the public and knowledge of the

hazardous nature thereof when Defendants were bound to disclose such information;

(c)    Defendants sold the aforementioned products and materials to Plaintiff and

Plaintiff's employers and others without advising Plaintiff and others of the dangers of use

of such materials to persons working in close proximity thereto when Defendants knew of

such dangers, and had a duty to disclose such dangers all as set forth herein. By said

conduct, Defendants caused to be positively asserted to Plaintiff that which was not true

and that which Defendants had no reasonable ground for believing to be true, i.e., that it

was safe for Plaintiff to work with and in close proximity to such materials;

(d)    Defendants suppressed from Plaintiff medical and scientific data and knowledge of

the contents of the Lanza report. Although bound to disclose it, Defendants influenced A.J.

Lanza to change his report, the altered version of which was published in Public Health

-23-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by

-24-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants,  when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and

-25-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

37.     Plaintiff further alleges all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent was exposed, as well as any DOE Defendants who may be determined at a later date.

## THIRD CAUSE OF ACTION

### (Breach of Warranty)

### (Against all Defendants)

38.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First Cause of Action.

39.     Defendants, and each of them, expressly and implicitly, warranted that said substance was reasonably fit for its intended use without endangering human life, and that such substance was of interchangeable quality.

40.     Defendants and each of them breached the above described expressed and implied warranties in that said substance was defective, which defects permitted and/or caused said substance to seriously and permanently cause injury to Decedent DANNY JOE JOHNSON

-26-

including, but not limited to, the disease mesothelioma and other lung damage, while said substance was used in a manner that was reasonably foreseeable.

41.     As a direct and proximate result of the above described breaches of warranties by Defendants, and each of them, Decedent suffered severe and permanent injuries to his person, including death, as alleged hereinabove in this complaint.

42.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff DANNY JOE JOHNSON to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their

-27-

"Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

-28-

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a

-29-

duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)  Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)  Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)  Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)  Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of

-30-

such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

43.     Plaintiff further alleges all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent was exposed, as well as any DOE Defendants who may be determined at a later date.

## FOURTH CAUSE OF ACTION

(False Representation Under Restatement of Torts Section 402-B)

(Against All Defendants)

44.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First through Third Causes of Action.

45.     At the aforementioned time when Defendants, their "Alternate Entities," and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as herein above set forth, the Defendants, their "Alternate Entities," and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons," including the Decedent herein and his employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

46.     The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons," including the Decedent and his employers, relied upon said

-31-

representations of Defendants, their "Alternate Entities," and each of them, in the selection, purchase and use of asbestos and asbestos-containing products.

47.    Said representations by Defendants, their "Alternate Entities," and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "Alternate Entities," and each of them, in that asbestos and asbestos-containing products have very dangerous properties and defects whereby said products cause asbestosis, other lung damages and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons," thereby threatening the health and life of said persons including Decedent herein.

48.    As a direct and proximate result of said false representations by Defendants, their "Alternate Entities," and each of them, the Decedent sustained the injuries and damages herein above set forth.

49.    Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff DANNY JOE JOHNSON to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing

-32-

Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true

-33-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)    Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)    Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute

-34-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

-35-

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

50.     Plaintiff further alleges all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent was exposed, as well as any DOE Defendants who may be determined at a later date.

## FIFTH CAUSE OF ACTION

(Intentional Tort)

(Against All Defendants)

51.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the First through Fourth Causes of Action.

52.     At all times pertinent hereto, the Defendants, their "Alternate Entities," and each of them, owed Decedent a duty, as provided for in Section 1708, 1709 and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property or rights of the Decedent.

-36-

When a duty to act was imposed, as set forth herein, the Defendants, their "Alternate Entities," and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Decedent as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Deceit) and Section 1710 (Fraud) and more specifically, included suggestions of fact which were not true and which Defendants, their "Alternate Entities," and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "Alternate Entities," and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as are more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of the rights of the Decedent as provided for in the aforementioned Civil Code sections.

53.    Since on or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products referred to in Plaintiff's First Cause of Action were and are hazardous to the health and safety of Decedent, and others in Decedent's position working in close proximity with such materials.    The Defendants, their "Alternate Entities," and each of them, have known of the dangerous propensities of other of the aforementioned materials and products since before that time.    With intent to deceive Decedent, and others in Decedent's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)    Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position

-37-

working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b)     Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c)     Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Decedent's employer and others without advising Decedent and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Decedent that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to such materials;

-38-

(d)    Defendants, their "Alternate Entities," and each of them, suppressed from Decedent medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)    Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Decedent by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Decedent at this time;

(f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities,"

-39-

and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did mislead Decedent and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Decedent the true facts concerning such knowledge of danger, which Defendants, their "Alternate Entities," and each of them, were bound to disclose;

(g)     Defendants, their "Alternate Entities," and each of them, failed to warn Decedent and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "Alternate Entities," and each of them, failed to provide Decedent with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Decedent and others applying and installing such material;

(i)     Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Decedent the true nature of the industrial exposure of Decedent and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them, also concealed from Decedent and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

-40-

(j)     Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Decedent and Decedent's employers so that said physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k)     Defendants, their "Alternate Entities," and each of them, failed to provide adequate information to physicians and surgeons retained by Decedent's employers and their predecessor companies, for purposes of making physical examinations of Decedent and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

54.     Defendants, their "Alternate Entities," and each of them, willfully failed and omitted to complete and file First Report of Occupational Injury of Illness regarding Decedent's injuries, as required by law, and did willfully fail and omit to file report of injury and occupational disease with the State of California. Decedent was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

55.     Defendants, their "Alternate Entities," and each of them, having such aforementioned knowledge, and the duty to inform Decedent about the true facts, and knowing the Decedent did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Decedent to remain unaware of the true facts and to induce Decedent to work in a dangerous environment, all in violation of sections 1708, 1709 and 1710 of the Civil Code of the State of California.

-41-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

# SIXTH CAUSE OF ACTION

(Premises Owner/Contractor Liability)

(Against Shell Oil Company only)

56. Plaintiff, by this reference, incorporates the allegations contained in the First through Fifth Causes of Action.

57. At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, and each of them, respectively, owned, leased, maintained, managed, and/or controlled the premises where Plaintiff's Decedent was present. The information is preliminary, based on recall over events covering many years and further investigation and discovery may produce more reliable information. Additionally, Plaintiff's Decedent might have been present at these or other Premises Owner/Contractor Liability Defendants' premises at other locations and on other occasions.

58. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff's Decedent and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

59. At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe

-42-

condition and unreasonable risk of harm and personal injury to Plaintiff's Decedent and other workers or persons so exposed present on each of the aforesaid respective premises.

60.     At all times relevant herein, Plaintiff's Decedent entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Plaintiff's Decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, and each of them.

61.     Plaintiff's Decedent at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

62.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, remained in control of the premises where Plaintiff's Decedent was performing his work.

63.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, owed to Plaintiff's Decedent and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff's Decedent to an unreasonable risk of harm and to avoid causing injury to said person.

64.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff's Decedent of, the existence of the aforesaid dangerous conditions and hazards on said premises.

-43-

65.    Prior to and at the times and places aforesaid, said Premises Owner/Contractor Liability Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff's Decedent.

66.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff's Decedent and others unless special precautions were taken.

67.    In part, Plaintiff's Decedent was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

68.    The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

69.    The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

(a)    Failure to warn of asbestos and other toxic dusts;

(b)    Failure to suppress the asbestos-containing or toxicdusts;

(c)    Failure to remove the asbestos-containing and toxic dusts through the use of ventilation or appropriate means;

-44-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

(d)     Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e)     Failure to inspect and/or test the air;

(f)     Failure to provide medical monitoring.

70.     The Premises Owner/Contractor Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

71.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said Premises

-45-

Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

(a)    Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b)    Failing to segregate work involving the release of asbestos or other toxic dusts;

(c)    Failing to suppress dust using prescribed ventilation techniques;

(d)    Failing to suppress dust using prescribed "wet down" techniques;

(e)    Failing to warn or educate Plaintiff's Decedent or others regarding asbestos or other toxic substances on the premises;

(f)    Failing to provide approved respiratory protection devices;

(g)    Failing to ensure "approved" respiratory protection devices were used properly;

(h)    Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i)    Failing to provide adequate housekeeping and clean-up of the work place;

(j)    Failing to properly warn of the hazards associated with asbestos as required by statute;

(k)    Failing to properly report renovation and disturbance of asbestos-containing materials;

(l)    Failing to have an asbestos removal supervisor as required by regulation;

(m)    Failing to get approval for renovation as required by statutes; and

(n)    Failing to maintain records as required by statute.

-46-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

72.     Premises Owner/Contractor Liability Defendants, and each of them, were the "statutory employer" of Plaintiff's Decedent as defined by the California Labor Code and California case law.

73.     Plaintiff's Decedent at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

74.     At all times mentioned herein, Plaintiff's Decedent was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

75.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

76.     As a legal consequence of the foregoing, Plaintiff's Decedent developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff's Decedent has suffered damages as herein alleged.

77.     The above-referenced conduct of said Defendant was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff's Decedent. Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others. Defendant subjected Plaintiff's Decedent to cruel and unjust hardship in conscious

-47-

disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff's Decedent of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendant, seeks punitive damages, according to proof.

78. Plaintiff further alleges all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff's Decedent was exposed, as well as any DOE Defendants who may be determined at a later date.

WHEREFORE, Plaintiff prays judgment against Defendants, and each of them in and amount to be proved at trial in each individual case, as follows:

1. General damages according to proof;

2. Damages for medical and related expenses, according to proof;

3. Damages for funeral, burial, incidental, and related expenses, according to proof;

4. Damages for the present value of financial contributions which Decedent would have given Plaintiffs had he lived;

5. Damages for the pecuniary value of services which Plaintiffs might have reasonably expected to receive from Decedent;

6. Damages for loss of earning capacity, according to proof;

7. Damages for loss of earning, according to proof;

8. Damages for Decedent's other economic losses, according to proof;

9. Exemplary or punitive damages according to proof;

10. Plaintiffs' damages for loss of consortium according to proof;

-48-

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL

11.    Prejudgment interest, according to proof;

12.    Costs of suit incurred herein; and

13.    Such other an further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. § 998, C.C.P. § 1032 and related provisions of law.

**DATED:** May 4, 2012

**BARON & BUDD, P.C.**

By: _Tiffany Dickenson_
Tiffany Dickenson, Esq.
Attorneys for Plaintiffs,
ELVIRA B. JOHNSON,
LYNSIE D. JOHNSON, JEFF LONDON and
BRENT REVOK

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL