ADRMOP

# U.S. District Court
# California Northern District (Oakland)
## CIVIL DOCKET FOR CASE #: 4:12-cv-03911-PJH

Del Pino et al v. 3M Company et al
Assigned to: Hon. Phyllis J. Hamilton
Cause: 28:1331 Fed. Question

Date Filed: 07/25/2012
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

**Plaintiff**

**James Del Pino**

represented by **Alana Lynda Kalantzakis ,**
Baron Budd PC
3102 Oak Lawn Ave.
Suite 1100
Dallas, TX 75219
214-521-3605
Fax: 214-520-1181
Email: akalantz@baronbudd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Denyse Clancy**
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
(214) 521-3605
Fax: (214) 520-1181
*ATTORNEY TO BE NOTICED*

**John Landoc**
Baron & Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
(214) 521-3605
Fax: (214) 520-1181
*ATTORNEY TO BE NOTICED*

**Tiffany Newlin Dickenson**
Baron and Budd P.C.
3102 Oak Lawn Ave
Suite 1100
Dallas, TX 75219
214-521-3605
Fax: 214 520-1181
Email: tdickenson@baronbudd.com

*ATTORNEY TO BE NOTICED*

**Plaintiff**
**Beverly I. Del Pino**                    represented by    **Alana Lynda Kalantzakis** ,
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Denyse Clancy**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Landoc**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Tiffany Newlin Dickenson**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**3M Company**
*Individually*
*formerly known as*
Minnesota, Mining and Manufacturing
Company
*also known as*
"3M"

**Defendant**

**A.W. Chesterton Company**

**Defendant**

**Abb Ltd.**
*Individually and as Successor by*
*Merger to Brown Boveri Electric*
*Company and ITE Circuit Breaker*
*Company*

**Defendant**

**Aetna Insulated Wire Company**
*formerly known as*
Eastern Electric Sales Co.

**Defendant**

**Alfa Laval, Inc.**

**Defendant**

**Alliance Laundry Holdings, LLC**
*Individually and as Successor in*
*Interest to Raytheon Appliances, Inc.,*
*Successor by Merger to Amana*
*formerly known as*
Raytheon Commercial Laundry, LLC

**Defendant**

**Alliance Laundry Systems, LLC**
*Individually and (1) a Successor in*
*Interest to Raytheon Appliances, Inc.,*
*Successor by Merger to Amana*
*Refrigeration, Inc. Successor by Merger*
*to Speed Queen Company; and (2) as*
*Successor in Interest to Ajax Pressing*
*Machine Company*

**Defendant**

**Alpha Wire Corporation**

**Defendant**

**American Standard, Inc.**
*Individually and as Successor in*
*Interest to the Trane Company*

**Defendant**

**Armstrong International, Inc.**

**Defendant**

**Associated Materials, Inc.**
*As Successor in Interest to AT&T*
*Technologies, Inc., as Successor in*
*Interest to Western Electric Company,*
*Incorporated*

**Defendant**

**Avocet Enterprises, Inc.**
*formerly known as*
Ventfabrics, Inc.

**Defendant**

**Bechtel Corporation**
*Individaully and as Successor to*
*Sequoia Ventures, Inc*

**Defendant**

**Belden Wire & Cable Company**

**Defendant**
**Bentley Harris Manufacturing Co.**

**Defendant**
**Buffalo Pumps, Inc**

**Defendant**
**Carrier Corporation**
*Individually in Interest to Elliott*
*Company, Successor in Interest to*
*Crocker-Wheeler Company*

**Defendant**
**CBS Corporation**
*Successor by Merger to CBS*
*Corporation, Successor by Merger to*
*Westinghouse Electric Corporation,*
*Individually and as Successor in*
*Interest to B.F. Sturtevant Company*
*formerly known as*
Viacom, Inc.

**Defendant**
**CBS Corporation**
*Successor by Merger to CBS*
*Corporation, Successor by Merger to*
*Westinghouse Electric Corporation*
*formerly known as*
Viacom, Inc.

**Defendant**
**Cleaver-Brooks, Inc.**
*Individually*
*formerly known as*
AquaChem, Inc.

**Defendant**
**Comed**
*An Exelon Company*

**Defendant**
**Cooper Electric Supply Co.**

**Defendant**
**Cooper US, Inc.**
*Individually and as Successor in*
*Interest to Cooper Industries, Inc. And*
*the Cooper-Bessemer*

**Defendant**

**Crane Co.**
*Individually and as Successor in*
*Interest to Chapman Valves*

**Defendant**

**Crown Cork & Seal Company, Inc.**

**Defendant**

**Dana Corporation**

**Defendant**

**Eaton Corporation**
*Individually and as Successor in*
*Interest to Cutler-Hammer, Inc.*

**Defendant**

**Eaton Electrical, Inc.**
*Individually and as Successor in*
*Interest to Westinghouse Electric LLC*
*formerly known as*
Cutler-Hammer, Inc.

**Defendant**

**E.D. Bullard Company**

**Defendant**

**Electric Machinery Manufacturing**
**Co.**

**Defendant**

**Elliott Company**
*Individually*
*formerly known as*
Elliott Turbomachinery Company, Inc.

**Defendant**

**Elliott Company**
*Individually and as Successor in*
*Interest to Crocker-Wheeler Company*
*formerly known as*
Elliott Turbomachinery Co., Inc.

**Defendant**

**Emerson Electric Company**

**Defendant**

**Ericsson, Inc.**

*Individually and as Successor in
Interest to the Anaconda Company,
Successor in Interest to Anaconda-
Ericsson, Inc., Successor in Interest to
Continental Wire & Cable Company
and Successor in Interest to Anaconda
Wire & Cable Company*

### Defendant

**Exomet, Inc.**

### Defendant

**Far West Insulation Contracting**
*Individually and as Successor in
Interest to Thorpe Insulation Co.*

### Defendant

**F.B. Wright Company of Pittsburgh**

### Defendant

**Ferro Engineering**
*Individually and as a Division of
Oglebay Norton Company*

### Defendant

**Flowserve Corporation**
*Individually and as Successor by
Merger to Durco International, Inc.,
United Pumps and Worthington Pumps*

### Defendant

**Flowserve US, Inc.**
*Individually
formerly known as*
Flowserve Pump Corporation
*formerly known as*
Flowserve Red Corporation

### Defendant

**FMC Corporation**
*Individually, on Behalf of and as
Successor in Interest to Peerless Pump
Co., John Bean Pumps, Chicago
Pumps, Dayton-Dowd Pumps Co., Ohio
Apex Division, and Link Belt Company*

### Defendant

**Foseco, Inc.**

### Defendant

**Foster Wheeler AG**

Defendant

**Foster Wheeler Energy Corporation**

Defendant

**Freeport-McMoran Copper & Gold Inc.**

Defendant

**Fromm Electric**
*A Division of Cooper Electric Supply Company*

Defendant

**Fusion SemiConductor Systems Corp.**

Defendant

**FXY, Inc.**
*Individually*
*formerly known as*
Christy Refractories Company, L.L.C.
*formerly known as*
Christy Firebrick Company

Defendant

**Gardner Denver Nash, LLC**
*Individually and as Successor in Interest to the Nash Engineering Co.*

Defendant

**Gardner-Gibson, Inc.**

Defendant

**General Cable Industries, Inc.**
*Individually and as Successor by Merger to Carol Cable Company, Inc., Successor in Interest to Carol Wire & Cable Corporation*

Defendant

**General Cable Industries, Inc.**
*Individually*
*formerly known as*
General Cable Corporation

Defendant

**General Electric Company**

**Defendant**

**General Refractories Company**

**Defendant**

**Georgia-Pacific, LLC**
*Individually and as Successor in*
*Interest to Bestwall Gypsum Company*
*formerly known as*
Georgia-Pacific Corporation

**Defendant**

**Graybar Electric Company, Inc.**

**Defendant**

**Griscom Russell Company**

**Defendant**

**Guarantee Electrical Company**

**Defendant**

**Henry Vogt Machine Company**

**Defendant**

**Homasote Company**

**Defendant**

**Howden Buffalo, Inc.**
*Individually and as Successor in*
*Interest to B.F. Sturtevant*

**Defendant**

**Hubbell Incorporated**

**Defendant**

**IMO Industries, Inc.**
*Individually and as Successor in*
*interest to Delaval Turbine, Inc*

**Defendant**

**Industrial Holdings Corporation**
*Individually, Successor by Merger to*
*S.O. Minerals, Successor by Merger to*
*Carborundum Company, Successor by*
*Merger to Kennecott Industries, Inc.,*
*And Successor in Interest to Lockport*
*Felt Company*
*formerly known as*
Kennecott Mining Corp.

*formerly known as*
Kennecott Corp.

### Defendant

**Ingersol-Rand Company**

### Defendant

**Insulectro**
*Individually and as Successor in*
*Interest to Quintec Industries, Inc. And*
*Quintec Inc.*

### Defendant

**Insul Company, Inc.**

### Defendant

**Insulator Co.**

### Defendant

**Irvington Varnish & Insulator Co.**

### Defendant

**IU North America, Inc.**
*As Successor by Merger to the Garp*
*Company*
*formerly known as*
The Gage Company
*formerly known as*
Pittsburgh Gage and Supply Company

### Defendant

**J.H. France Refractories Co.**

### Defendant

**Leece-Neville Co.**

### Defendant

**M. Slayen & Associates, Inc.**

### Defendant

**M. Slayen & Co.**

### Defendant

**McMaster-Carr Supply Co.**

### Defendant

**McNally Industries LLC**
*Individually and as Successor in*
*Interest to McNally Industries, Inc.*

*formerly known as*
McNally Acquisition, LLC

**Defendant**

**Metalclad Insulation Corporation**
*Individually, as Successor in Interest to*
*Pacific Asbestos & Supply and Pacific*
*Insulation Services, Inc.*
*doing business as*
Pacific Insulation Service/Supply Co.

**Defendant**

**Mica Insulation Co.**

**Defendant**

**Mine Safety Appliances Company**

**Defendant**

**National Service Industries, Inc.**

**Defendant**

**Nibco, Inc.**

**Defendant**

**On Marine Service Company**
*Individually and as Successor by*
*Merger to Oglebay Norton Company*
*also known as*
Ferro Engineering

**Defendant**

**Osram Sylvania Inc.**

**Defendant**

**Pacific Asbestos & Supply and**
**Pacific Insulation Services, Inc**
*doing business as*
A Pacific Insulation Service/Supply Co.

**Defendant**

**Pacific States Steel Corporation**

**Defendant**

**Parker Hannifin Corp.**
*Individually and as Successor in*
*Interest to Sacoma Sierra and Scomo*
*Manufacturing Company*

**Defendant**

**Pentair, Inc.**
*Individually and as Successor in*
*Interest to Aurora Pump Company*

<u>**Defendant**</u>

**Pfizer Inc**

<u>**Defendant**</u>

**Phelps Dodge Corporation**

<u>**Defendant**</u>

**Phelps Dodge Industries, Inc.**
*Individually and as Successor in*
*Interest to Phelps Dodge Copper*
*Products Corp.*

<u>**Defendant**</u>

**Phelps Dodge International**
**Corporation**

<u>**Defendant**</u>

**Phillips Electronics North America**
**Corporation**

<u>**Defendant**</u>

**Plant Insulation Company**
*Formerly Asbestos Company of CA*

<u>**Defendant**</u>

**Pyro Minerals, Incorporated**

<u>**Defendant**</u>

**Quint-T Corp.**
*also known as*
Quinterra

<u>**Defendant**</u>

**Quintec Industries, Inc.**
*Individually and Successor by Merger*
*to Western Fibrous Glass Products*
*Company*
*formerly known as*
Western Fiberglass Company

<u>**Defendant**</u>

**Raytheon Company**
*Individually and as Successor in*
*Interest to Raytheon Appliances, Inc.*
*Successor by Merger to Amana*

*Refrigeration, Inc., Successor by*
*Merger to Speed Queen Company*

**Defendant**

**RCA Corporation**

**Defendant**

**Red Seal Electric Company**

**Defendant**

**Reichhold, Inc.**
*formerly known as*
Reichhold Chemicals, Inc.

**Defendant**

**Resinoid Engineering Corporation**

**Defendant**

**Rexel, Inc.**

**Defendant**

**Rockbestos-Surprenant Cable Corporation**
*formerly known as*
The Rockbestos Company, Inc.

**Defendant**

**Rockwell Automation, Inc.**
*Individually and as Successor in Interest to Allen-Bradley Company Individually and as Successor in Interest to Rostone Corporation*

represented by **Ferlin Peregrino Ruiz**
Tucker Ellis LLP
135 Main Street
Suite 700
San Francisco, CA 94105
415-617-2400
Fax: 415 617-2409
Email: ferlin.ruiz@tuckerellis.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nicole Elisabet Gage**
Tucker Ellis LLP
135 Main Street
Suite 700
San Francisco, CA 94105
415-617-2105
Fax: 415-617-2409
Email: nicole.gage@tuckerellis.com
*ATTORNEY TO BE NOTICED*

**Defendant**

Rome Cable Co.

### Defendant
**SSW, Inc.**

### Defendant
**Sachs Electric Company**

### Defendant
**Saint-Gobain Abrasives, Inc.**
*Individually, Successor by Merger to Carborundum Abrasives Company, and Successor in Interest to Carborundum Company*
*formerly known as*
Norton Company
*doing business as*
Carborundum Abrasives

### Defendant
**Saint-Gobain Advanced Ceramics Corporation**
*Successor in Interest to Carborundum Company, and as Successor in Interest to Carborundum Company*
*formerly known as*
Carborundum Corporation
*formerly known as*
New Carborundum Corporation
*formerly known as*
Stemcor Corp.

### Defendant
**San Francisco Gravel Company**

### Defendant
**Schneider Electric USA, Inc.**
*formerly known as*
Square D Company

### Defendant
**Solara, Ltd.**

### Defendant
**Sterling Fluid Systems (USA), L.L.C.**
*Individually and as Successor in Interest to Indian Head, Inc.*
*formerly known as*
Sterling Fluid Systems (USA), Inc.

**Defendant**

**TDY Industries, Inc.**
*Individually and as Successor in*
*Interest to Teledyne Technologies Inc.*

**Defendant**

**The Coca-Cola Company**

**Defendant**

**The Okonite Company**

**Defendant**

**The Standard Oil Company**
*Successor in Interest to Industrial*
*Holdings, Corp*
*doing business as*
The Standard Oil Company of Ohio

**Defendant**

**Thomas & Betts Corporation**

**Defendant**

**Thorpe Insulation Company**

**Defendant**

**Tyco Integrated Cable Systems, Inc.**
*Individually*
*formerly known as*
Tycom Integrated Cable Systems, Inc.
*formerly known as*
Simplex Technologies, Inc.
*formerly known as*
Simplex Wire & Cable

**Defendant**

**Tyco International (US), Inc.**
*Successor in Interest to Grinnell Fire*
*Protection Systems*

**Defendant**

**Union Carbide Corporation**                    represented by **Anne Cherry Barnett**
McKenna Long and Aldridge
101 California Street
41st Floor
San Francisco, CA 94111
415-267-4000
Email: abarnett@mckennalong.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warren Pumps, L.L.C.**
*formerly known as*
Warren Pumps, Inc.

**Defendant**

**Whiting Corporation**

**Defendant**

**Yarway Corporation**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 07/31/2012 | 12 | NOTICE by Union Carbide Corporation *of Refiling State Court Answer to Complaint for Damages* (Barnett, Anne) (Filed on 7/31/2012) (Entered: 07/31/2012) |
| 07/31/2012 | 11 | NOTICE of Appearance by Anne Cherry Barnett *and Michael Roberts* (Barnett, Anne) (Filed on 7/31/2012) (Entered: 07/31/2012) |
| 07/30/2012 | | Set/Reset Deadlines as to 6 MOTION to Remand *and Costs, Expenses, and Attorneys Fees*. Motion Hearing set for 9/5/2012 09:00 AM before Hon. Phyllis J. Hamilton. (vlk, COURT STAFF) (Filed on 7/30/2012) (Entered: 07/31/2012) |
| 07/30/2012 | 10 | Renotice Motion Hearing re 6 Motion for Remand and Costs, Expenses, and Attorneys Fees by Beverly I. Del Pino, James Del Pino (Dickenson, Tiffany) (Filed on 7/30/2012) Modified on 7/31/2012 (vlk, COURT STAFF). (Entered: 07/30/2012) |
| 07/30/2012 | 9 | ORDER REASSIGNING CASE. Case reassigned to Judge Hon. Phyllis J. Hamilton for all further proceedings. Hon. Samuel Conti no longer assigned to the case. Signed by Executive Committee on 7/30/12. (sv, COURT STAFF) (Filed on 7/30/2012) (Entered: 07/30/2012) |
| 07/30/2012 | 8 | ORDER OF RECUSAL. Signed by Judge Samuel Conti on 7/30/12. (tdm, COURT STAFF) (Filed on 7/30/2012) (Entered: 07/30/2012) |
| 07/27/2012 | 7 | MOTION to Shorten Time *to Hear Plaintiffs' Motion for Remand and Costs, Expenses and Attorneys Fees* filed by Beverly I. Del Pino. (Attachments: # 1 Declaration of Tiffany Dickenson, # 2 Proposed Order) (Dickenson, Tiffany) (Filed on 7/27/2012) (Entered: 07/27/2012) |
| 07/27/2012 | 6 | MOTION to Remand *and Costs, Expenses, and Attorneys Fees* filed by Beverly I. Del Pino, James Del Pino. Motion Hearing set for 9/7/2012 10:00 AM in Courtroom 1, 17th Floor, San Francisco before Hon. Samuel Conti. Responses due by 8/10/2012. Replies due by 8/17/2012. (Attachments: # 1 Declaration of Tiffany Dickenson, # 2 Exhibit 1 to Declaration, # 3 Exhibit 2-4 to Declaration, # 4 Exhibit 5 to Declaration, # 5 Exhibit 6-7 to Declaration, # 6 Proposed Order)(Dickenson, Tiffany) (Filed on 7/27/2012) (Entered: 07/27/2012) |

| 07/25/2012 | 5 | NOTICE OF TAG-ALONG ACTION; by Rockwell Automation, Inc. (aaa, COURT STAFF) (Filed on 7/25/2012) (Entered: 07/27/2012) |
| 07/25/2012 | 4 | NOTICE OF PENDENCY OF OTHER ACTION OR PROCEEDING; by Rockwell Automation, Inc. (aaa, COURT STAFF) (Filed on 7/25/2012) (Entered: 07/27/2012) |
| 07/25/2012 | 3 | Certificate of Interested Entities or Parties by Rockwell Automation, Inc. (aaa, COURT STAFF) (Filed on 7/25/2012) (Entered: 07/27/2012) |
| 07/25/2012 | 2 | ADR SCHEDULING ORDER: Case Management Statement due by 11/9/2012. Case Management Conference set for 11/16/2012 10:00 AM. Signed by Senior Judge Samuel Conti on 7/25/12. (Attachments: # 1 SC Standing Order, # 2 Standing Order)(aaa, COURT STAFF) (Filed on 7/25/2012) (Entered: 07/27/2012) |
| 07/25/2012 | 1 | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. 1441(a)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF FEDERAL OFFICERS)(NO PROCESS); from Superior Court of the State of California, County of San Francisco-Unlimited Jurisdiction. Their case number is CGC-12-276039. (Filing fee $350.00 receipt number 34611076828). Filed by Rockwell Automation, Inc. (aaa, COURT STAFF) (Filed on 7/25/2012) (Entered: 07/27/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/31/2012 17:34:27 | | |
| **PACER Login:** | te0445 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 4:12-cv-03911-PJH |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

John Langdoc, Esq. (SBN 235509)
Denyse Clancy, Esq. (SBN 255276)
Tiffany Dickenson, Esq. (SBN 264364)
Alana Kalantzakis, Esq. (SBN 277154)
Christine Tamer, Esq. (SBN 281812)
**BARON & BUDD, P.C.**
3102 Oak Lawn Ave., Suite 1100
Dallas, TX 72519
Telephone: 214/521-3605; 800/222-2766
Facsimile: 214/520-1181

ATTORNEYS FOR PLAINTIFFS

**F I L E D**
Superior Court of California
County of San Francisco

MAY 1 0 2012

CLERK OF THE COURT
BY: _____
Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO—UNLIMITED JURISDICTION**

JAMES DEL PINO and BEVERLY I. DEL PINO,

            Plaintiffs,

vs.

**3M COMPANY** (INDIVIDUALLY AND F/K/A MINNESOTA, MINING AND MANUFACTURING COMPANY A/K/A "3M");
**A. W. CHESTERTON COMPANY;**
**ABB LTD.** (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO BROWN BOVERI ELECTRIC COMPANY AND ITE CIRCUIT BREAKER COMPANY);
**AETNA INSULATED WIRE COMPANY** (FKA EASTERN ELECTRIC SALES CO.);
**ALFA LAVAL, INC.;**
**ALLIANCE LAUNDRY HOLDINGS, LLC** (F/K/A RAYTHEON COMMERCIAL LAUNDRY, LLC, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO RAYTHEON APPLIANCES, INC., SUCCESSOR BY MERGER TO AMANA REFRIGERATION, INC., SUCCESSOR BY MERGER TO SPEED QUEEN COMPANY);
**ALLIANCE LAUNDRY SYSTEMS,**

CASE NO. CGC 12 -276039

**COMPLAINT FOR PERSONAL INJURIES AND DAMAGES**

[COMPLEX ASBESTOS LITIGATION-SUBJECT TO THE GENERAL ORDERS CONTAINED IN FILE NO. 828684]

# BY FAX

-1-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

1    **LLC,** (INDIVIDUALLY AND (1) AS    )
SUCCESSOR-IN-INTEREST TO    )
2    RAYTHEON APPLIANCES, INC.,    )
SUCCESSOR BY MERGER TO AMANA    )
3    REFRIGERATION, INC. SUCCESSOR    )
BY MERGER TO SPEED QUEEN    )
4    COMPANY; AND (2) AS SUCCESSOR    )
IN INTEREST TO AJAX PRESSING    )
5    MACHINE COMPANY);    )
6    **ALPHA WIRE CORPORATION;**    )
**AMERICAN STANDARD, INC.,**    )
7    (INDIVIDUALLY AND AS    )
SUCCESSOR-IN-INTEREST TO THE    )
8    TRANE COMPANY);    )
9    **ARMSTRONG INTERNATIONAL,**    )
**INC.;**    )
10    **ASSOCIATED MATERIALS, INC.;**    )
**AT&T CORP.** (AS SUCCESSOR-IN-    )
11    INTEREST TO AT&T TECHNOLOGIES,    )
INC., AS SUCCESSOR-IN-INTEREST    )
12    TO WESTERN ELECTRIC COMPANY,    )
INCORPORATED);    )
13    **AVOCET ENTERPRISES, INC.** (F/K/A    )
14    VENTFABRICS, INC.);    )
**BECHTEL CORPORATION**    )
15    (INDIVIDUALLY AND AS SUCCESSOR    )
TO SEQUOIA VENTURES, INC.);    )
16    **BELDEN WIRE & CABLE**    )
**COMPANY;**    )
17    **BENTLEY HARRIS**    )
**MANUFACTURING CO.;**    )
18    **BUFFALO PUMPS, INC.;**    )
19    **CARRIER CORPORATION,**    )
(INDIVIDUALLY AND AS    )
20    SUCCESSOR-IN-INTEREST TO    )
ELLIOTT COMPANY, SUCCESSOR-IN-    )
21    INTEREST TO CROCKER-WHEELER    )
COMPANY);    )
22    **CBS CORPORATION** (F/K/A VIACOM,    )
23    INC. SUCCESSOR-BY-MERGER TO    )
CBS CORPORATION, SUCCESSOR-BY-    )
24    MERGER TO WESTINGHOUSE    )
ELECTRIC CORPORATION,    )
25    INDIVIDUALLY AND AS SUCCESSOR-    )
IN-INTEREST TO B.F. STURTEVANT    )
26    COMPANY);    )
27    **CBS CORPORATION** (F/K/A VIACOM,    )
INC., SUCCESSOR-BY-MERGER TO    )
28

-2-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

1   CBS CORPORATION, SUCCESSOR-BY-  )
    MERGER TO WESTINGHOUSE             )
2   ELECTRIC CORPORATION);             )
3   **CLEAVER-BROOKS, INC.,**          )
    (INDIVIDUALLY AND F/K/A AQUA-      )
4   CHEM, INC.);                       )
    **COMED,** (AN EXELON COMPANY);    )
5   **COOPER ELECTRIC SUPPLY CO.;**    )
    **COOPER US, INC.,** (INDIVIDUALLY )
6   AND AS SUCCESSOR-IN-INTEREST       )
    TO COOPER INDUSTRIES, INC. AND     )
7   THE COOPER-BESSEMER               )
    CORPORATION);                      )
8   **CRANE CO.,** (INDIVIDUALLY AND   )
9   AS SUCCESSOR IN INTEREST TO        )
    CHAPMAN VALVES);                   )
10  **CROWN CORK & SEAL COMPANY,**     )
    **INC.;**                          )
11  **DANA CORPORATION;**              )
    **EATON CORPORATION,**             )
12  (INDIVIDUALLY AND AS               )
13  SUCCESSOR-IN-INTEREST TO           )
    CUTLER-HAMMER, INC.);              )
14  **EATON ELECTRICAL, INC.** (F/K/A  )
    CUTLER-HAMMER, INC.,               )
15  INDIVIDUALLY AND AS SUCCESSOR-     )
    IN-INTEREST TO WESTINGHOUSE        )
16  ELECTRIC LLC.);                    )
17  **E.D. BULLARD COMPANY;**          )
    **ELECTRIC MACHINERY**             )
18  **MANUFACTURING CO.;**             )
    **ELLIOTT COMPANY**                )
19  (INDIVIDUALLY, F/K/A AND D/B/A     )
    ELLIOTT TURBOMACHINERY             )
20  COMPANY);                          )
21  **ELLIOTT COMPANY** (F/K/A ELLIOTT )
    TURBOMACHINERY CO., INC.           )
22  INDIVIDUALLY AND AS SUCCESSOR-     )
    IN-INTEREST TO CROCKER-            )
23  WHEELER COMPANY);                  )
    **EMERSON ELECTRIC COMPANY;**      )
24  **ERICSSON, INC.** (INDIVIDUALLY,  )
    AND AS SUCCESSOR-IN-INTEREST       )
25  TO THE ANACONDA COMPANY ,          )
    SUCCESSOR-IN-INTEREST TO           )
26  ANACONDA-ERICSSON, INC.,           )
27  SUCCESSOR-IN-INTEREST TO           )
    CONTINENTAL WIRE & CABLE           )
28

-3-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

COMPANY AND SUCCESSOR-IN-
INTEREST TO ANACONDA WIRE &
CABLE COMPANY);
**EXOMET, INC.;**
**FAR WEST INSULATION
CONTRACTING** (INDIVIDUALLY
AND AS SUCCESSOR IN INTEREST TO
THORPE INSULATION CO.);
**F.B. WRIGHT COMPANY OF
PITTSBURGH;**
**FERRIS KIMBALL COMPANY, LLC;**
**FERRO ENGINEERING**
(INDIVIDUALLY AND AS A DIVISION
OF OGLEBAY NORTON COMPANY);
**FLOWSERVE CORPORATION,**
(INDIVIDUALLY AND AS SUCCESSOR
BY MERGER TO DURCO
INTERNATIONAL, INC., UNITED
PUMPS AND WORTHINGTON
PUMPS);
**FLOWSERVE US, INC.,**
(INDIVIDUALLY AND F/K/A
FLOWSERVE PUMP CORPORATION,
F/K/A FLOWSERVE RED
CORPORATION);
**FMC CORPORATION,**
(INDIVIDUALLY, ON BEHALF OF
AND AS SUCCESSOR-IN-INTEREST
TO PEERLESS PUMP CO., JOHN BEAN
PUMPS, CHICAGO PUMPS, DAYTON-
DOWD PUMP CO., OHIO APEX
DIVISION, AND LINK BELT
COMPANY);
**FOSECO, INC.;**
**FOSTER WHEELER AG;**
**FOSTER WHEELER ENERGY
CORPORATION;**
**FREEPORT-MCMORAN COPPER &
GOLD INC.;**
**FROMM ELECTRIC,** (A DIVISION OF
COOPER ELECTRIC SUPPLY
COMPANY);
**FUSION SEMICONDUCTOR
SYSTEMS CORP.;**
**FXY, INC.,** (INDIVIDUALLY AND
F/K/A CHRISTY REFRACTORIES
COMPANY, L.L.C., F/K/A CHRISTY
FIREBRICK COMPANY);

-4-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

| | |
|---|---|
| 1 | **GARDNER DENVER NASH, LLC,** ) |
| | (INDIVIDUALLY AND AS ) |
| 2 | SUCCESSOR-IN-INTEREST TO THE ) |
| | NASH ENGINEERING CO.); ) |
| 3 | **GARDNER-GIBSON, INC.;** ) |
| | **GENERAL CABLE INDUSTRIES,** ) |
| 4 | **INC.,** (INDIVIDUALLY AND AS ) |
| | SUCCESSOR-BY-MERGER TO CAROL ) |
| 5 | CABLE COMPANY, INC., SUCCESSOR- ) |
| | IN-INTEREST TO CAROL WIRE & ) |
| 6 | CABLE CORPORATION); ) |
| | **GENERAL CABLE INDUSTRIES,** ) |
| 7 | **INC.** (INDIVIDUALLY AND F/K/A ) |
| 8 | GENERAL CABLE CORPORATION); ) |
| | **GENERAL ELECTRIC COMPANY;** ) |
| 9 | **GENERAL REFRACTORIES** ) |
| | **COMPANY;** ) |
| 10 | **GEORGIA-PACIFIC, LLC** (F/K/A ) |
| 11 | GEORGIA-PACIFIC CORPORATION, ) |
| | INDIVIDUALLY AND AS SUCCESSOR- ) |
| 12 | IN-INTEREST TO BESTWALL ) |
| | GYPSUM COMPANY); ) |
| 13 | **GRAYBAR ELECTRIC COMPANY,** ) |
| 14 | **INC.;** ) |
| | **GRISCOM RUSSELL COMPANY;** ) |
| 15 | **GUARANTEE ELECTRICAL** ) |
| | **COMPANY;** ) |
| 16 | **HENRY VOGT MACHINE** ) |
| | **COMPANY;** ) |
| 17 | **HOMASOTE COMPANY;** ) |
| 18 | **HOWDEN BUFFALO, INC.** ) |
| | (INDIVIDUALLY  AND AS ) |
| 19 | SUCCESSOR-IN-INTEREST TO B.F. ) |
| | STURTEVANT); ) |
| 20 | **HUBBELL INCORPORATED;** ) |
| | **IMO INDUSTRIES, INC.** ) |
| 21 | (INDIVIDUALLY AND AS ) |
| 22 | SUCCESSOR-IN-INTEREST TO ) |
| | DELAVAL TURBINE, INC.); ) |
| 23 | **INDUSTRIAL HOLDINGS** ) |
| | **CORPORATION** (INDIVIDUALLY, ) |
| 24 | F/K/A KENNECOTT MINING CORP., ) |
| | F/K/A KENNECOTT CORP., ) |
| 25 | SUCCESSOR BY MERGER TO S.O. ) |
| | MINERALS, SUCCESSOR BY MERGER ) |
| 26 | TO CARBORUNDUM COMPANY, ) |
| | SUCCESSOR BY MERGER TO ) |
| 27 | KENNECOTT INDUSTRIES, INC., AND ) |
| 28 | |

-5-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

SUCCESSOR-IN-INTEREST TO )
LOCKPORT FELT COMPANY); )
**INGERSOLL-RAND COMPANY**; )
**INSULECTRO** (INDIVIDUALLY AND )
AS SUCCESSOR-IN-INTEREST TO )
QUINTEC INDUSTRIES, INC. AND )
QUINTEC INC.); )
**INSUL COMPANY, INC.**; )
**INSULATOR CO.**; )
**IRVINGTON VARNISH &** )
**INSULATOR CO.**; )
**IU NORTH AMERICA, INC.**, (AS )
SUCCESSOR BY MERGER TO THE )
GARP COMPANY, FORMERLY )
KNOWN AS THE GAGE COMPANY, )
FORMERLY KNOWN AS PITTSBURGH
GAGE AND SUPPLY COMPANY);
**J.H. FRANCE REFRACTORIES CO.**;
**LEECE-NEVILLE CO.**;
**M. SLAYEN & ASSOCIATES, INC.**;
**M. SLAYEN & CO.**;
**McMASTER-CARR SUPPLY CO.**;
**MCNALLY INDUSTRIES LLC** (F/K/A
MCNALLY ACQUISITION, LLC,
INDIVIDUALLY AND AS SUCCESSOR-
IN-INTEREST TO MCNALLY
INDUSTRIES, INC.);
**METALCLAD INSULATION**
**CORPORATION** (INDIVIDUALLY, AS
SUCCESSOR-IN-INTEREST TO
PACIFIC ASBESTOS & SUPPLY AND
PACIFIC INSULATION SERVICES,
INC. AND D/B/A "PACIFIC
INSULATION SERVICE/SUPPLY CO.");
**MICA INSULATION CO.**;
**MINE SAFETY APPLIANCES**
**COMPANY**;
**NATIONAL SERVICE INDUSTRIES,**
**INC.**;
**NIBCO, INC.**;
**ON MARINE SERVICE COMPANY,**
(INDIVIDUALLY AND AS SUCCESSOR
BY MERGER TO OGLEBAY NORTON
COMPANY A/K/A FERRO
ENGINEERING);
**OSRAM SYLVANIA INC.**;
**PACIFIC ASBESTOS & SUPPLY AND**
**PACIFIC INSULATION SERVICES,**

-6-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

1  **INC.** (AND D/B/A, A PACIFIC
   INSULATION SERVICE/SUPPLY CO.);
2  **PACIFIC STATES STEEL**
   **CORPORATION;**
3  **PARKER HANNIFIN CORP.**
4  (INDIVIDUALLY AND AS
   SUCCESSOR-IN-INTEREST TO
5  SACOMA SIERRA AND SACOMO
   MANUFACTURING COMPANY);
6  **PENTAIR, INC.,** (INDIVIDUALLY
   AND AS SUCCESSOR-IN-INTEREST
7  TO AURORA PUMP COMPANY);
8  **PFIZER INC.;**
   **PHELPS DODGE CORPORATION;**
9  **PHELPS DODGE INDUSTRIES, INC.,**
   (INDIVIDUALLY AND AS
10 SUCCESSOR-IN-INTEREST TO
   PHELPS DODGE COPPER PRODUCTS
11 CORP.);
   **PHELPS DODGE INTERNATIONAL**
12 **CORPORATION;**
13 **PHILLIPS ELECTRONICS NORTH**
   **AMERICA CORPORATION;**
14 **PLANT INSULATION COMPANY,**
   (FORMERLY ASBESTOS COMPANY
15 OF CA);
   **PYRO MINERALS, INCORPORATED;**
16 **QUINT-T CORP.** (A/K/A QUINTERRA);
17 **QUINTEC INDUSTRIES, INC.,**
   (INDIVIDUALLY AND SUCCESSOR-
18 BY-MERGER TO WESTERN FIBROUS
   GLASS PRODUCTS COMPANY F/K/A
19 WESTERN FIBERGLAS COMPANY);
   **RAYTHEON COMPANY,**
20 (INDIVIDUALLY AND AS
   SUCCESSOR-IN-INTEREST TO
21 RAYTHEON APPLIANCES, INC.
   SUCCESSOR BY MERGER TO AMANA
22 REFRIGERATION, INC., SUCCESSOR
   BY MERGER TO SPEED QUEEN
23 COMPANY);
24 **RCA CORPORATION;**
   **RED SEAL ELECTRIC COMPANY;**
25 **REICHHOLD, INC.** (F/K/A
   REICHHOLD CHEMICALS, INC.);
26 **RESINOID ENGINEERING**
   **CORPORATION;**
27 **REXEL, INC.;**
28

-7-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ROCKBESTOS-SURPRENANT CABLE CORPORATION**, (F/K/A THE ROCKBESTOS COMPANY, INC.);
**ROCKWELL AUTOMATION, INC.** , (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ALLEN-BRADLEY COMPANY INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ROSTONE CORPORATION);
**ROME CABLE CO.;**
**SACHS ELECTRIC COMPANY;**
**SAINT-GOBAIN ABRASIVES, INC.,** (INDIVIDUALLY, F/K/A NORTON COMPANY, SUCCESSOR BY MERGER TO CARBORUNDUM ABRASIVES COMPANY, D/B/A CARBORUNDUM ABRASIVES, AND SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY);
**SAINT-GOBAIN ADVANCED CERAMICS CORPORATION**, (F/K/A CARBORUNDUM CORPORATION, F/K/A NEW CARBORUNDUM CORPORATION, SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY (F/K/A STEMCOR CORP. AND AS SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY;
**SAN FRANCISCO GRAVEL COMPANY;**
**SCHNEIDER ELECTRIC USA, INC.,** (F/K/A SQUARE D COMPANY);
**SOLARA, LTD.;**
**SSW, INC.;**
**STERLING FLUID SYSTEMS (USA), L.L.C.** (F/K/A STERLING FLUID SYSTEMS (USA), INC. AND PEERLESS PUMP COMPANY, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO INDIAN HEAD, INC.);
**TDY INDUSTRIES, INC.,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO TELEDYNE TECHNOLOGIES INC.);
**THE COCA-COLA COMPANY;**
**THE OKONITE COMPANY;**
**THE STANDARD OIL COMPANY**

-8-

(D/B/A THE STANDARD OIL
COMPANY OF OHIO, AND
SUCCESSOR-IN-INTEREST TO
INDUSTRIAL HOLDINGS, CORP.);
**THOMAS & BETTS CORPORATION;**
**THORPE INSULATION COMPANY;**
**TYCO INTERNATIONAL (US), INC.**
(SUCCESSOR-IN-INTEREST TO
GRINNELL FIRE PROTECTION
SYSTEMS);
**TYCO INTEGRATED CABLE
SYSTEMS, INC.,** (INDIVIDUALLY
AND F/K/A TYCOM INTEGRATED
CABLE SYSTEMS, INC. F/K/A
SIMPLEX TECHNOLOGIES, INC.,
F/K/A SIMPLEX WIRE & CABLE);
**UNION CARBIDE CORPORATION;**
**WARREN PUMPS, L.L.C.,** (F/K/A
WARREN PUMPS, INC.);
**WHITING CORPORATION;**
**YARWAY CORPORATION**, and DOES
1-300

Defendants.

COMES NOW, Plaintiffs JAMES DEL PINO and BEVERLY I. DEL PINO (referred to herein as "Plaintiffs") and for causes of action against all named Defendants herein, and complain and allege as follows:

## I.
### GENERAL ALLEGATIONS

1.      The true names and capacities, whether individual, corporate, associate, governmental or otherwise of Defendants DOES 1 through 300, inclusive, are unknown to Plaintiff at this time, who therefore sue said Defendants by fictitious names. When the true names and capacities of Defendants have been ascertained, Plaintiff will amend this Complaint accordingly. Plaintiff is informed and believes, and therefore alleges, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

1  the events and happenings that constitute Plaintiff's claims for personal injuries and damages,

2  and caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged.

3      2.      Plaintiff is informed and believes, and therefore alleges, that at all times

4  mentioned herein, each named Defendant was the agent, servant, employee and/or joint

5  venturer of their co-Defendants and were, as such, acting within the scope, course, and

6  authority of said agency, employment and/or joint venture, in that each and every Defendant,

7  when acting as a principal, was negligent in the selection and hiring or each and every other

8  Defendant as the agent, servant, employee and/or joint venturer.

9

10     3.      Plaintiff JAMES DEL PINO was a California resident during a substantial

11  period of his asbestos exposure upon which Plaintiff's claims are based.

12     4.      Plaintiff is informed and believes, and therefore alleges, that at all times

13  mentioned herein, Defendants **3M COMPANY** (INDIVIDUALLY AND F/K/A

14  MINNESOTA, MINING AND MANUFACTURING COMPANY A/K/A "3M"); **A. W.**

15  **CHESTERTON COMPANY; ABB LTD.** (INDIVIDUALLY AND AS SUCCESSOR BY

16  MERGER TO BROWN BOVERI ELECTRIC COMPANY AND ITE CIRCUIT BREAKER

17  COMPANY); **AETNA INSULATED WIRE COMPANY FKA EASTERN ELECTRIC**

18  **SALES CO.; ALFA LAVAL, INC.; ALLIANCE LAUNDRY HOLDINGS, LLC** (F/K/A

19  RAYTHEON COMMERCIAL LAUNDRY, LLC, INDIVIDUALLY AND AS SUCCESSOR-

20  IN-INTEREST TO RAYTHEON APPLIANCES, INC., SUCCESSOR BY MERGER TO

21  AMANA REFRIGERATION, INC., SUCCESSOR BY MERGER TO SPEED QUEEN

22  COMPANY); **ALLIANCE LAUNDRY SYSTEMS, LLC,** (INDIVIDUALLY AND (1) AS

23  SUCCESSOR-IN-INTEREST TO RAYTHEON APPLIANCES, INC., SUCCESSOR BY

24  MERGER TO AMANA REFRIGERATION, INC. SUCCESSOR BY MERGER TO SPEED

25  QUEEN COMPANY; AND (2) AS SUCCESSOR IN INTEREST TO AJAX PRESSING

26

27

28

-10-

MACHINE COMPANY); **ALPHA WIRE CORPORATION; AMERICAN STANDARD, INC.,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE TRANE COMPANY); **ARMSTRONG INTERNATIONAL, INC.; ASSOCIATED MATERIALS, INC.; AT&T CORP.** (AS SUCCESSOR-IN-INTEREST TO AT&T TECHNOLOGIES, INC., AS SUCCESSOR-IN-INTEREST TO WESTERN ELECTRIC COMPANY, INCORPORATED); **AVOCET ENTERPRISES, INC.** (F/K/A VENTFABRICS, INC.); **BECHTEL CORPORATION** (INDIVIDUALLY AND AS SUCCESSOR TO SEQUOIA VENTURES, INC.); **BELDEN WIRE & CABLE COMPANY; BENTLEY HARRIS MANUFACTURING CO.; BUFFALO PUMPS, INC.;** CARRIER CORPORATION, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ELLIOTT COMPANY, SUCCESSOR-IN-INTEREST TO CROCKER-WHEELER COMPANY); **CBS CORPORATION** (F/K/A VIACOM, INC. SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO B.F. STURTEVANT COMPANY); **CBS CORPORATION** (F/K/A VIACOM, INC., SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION); **CLEAVER-BROOKS, INC.,** (INDIVIDUALLY AND F/K/A AQUA-CHEM, INC.); **COMED,** (AN EXELON COMPANY); **COOPER ELECTRIC SUPPLY CO.; COOPER US, INC.,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO COOPER INDUSTRIES, INC. AND THE COOPER-BESSEMER CORPORATION); **CRANE CO.,** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CHAPMAN VALVES); **CROWN CORK & SEAL COMPANY, INC.; DANA CORPORATION; EATON CORPORATION,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CUTLER-HAMMER, INC.);

-11-

**EATON ELECTRICAL, INC.** (F/K/A CUTLER-HAMMER, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO WESTINGHOUSE ELECTRIC LLC.); **E.D. BULLARD COMPANY; ELECTRIC MACHINERY MANUFACTURING CO.; ELLIOTT COMPANY** (INDIVIDUALLY, F/K/A AND D/B/A ELLIOTT TURBOMACHINERY COMPANY); **ELLIOTT COMPANY** (F/K/A ELLIOTT TURBOMACHINERY CO., INC. INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CROCKER-WHEELER COMPANY); **EMERSON ELECTRIC COMPANY; ERICSSON, INC.** (INDIVIDUALLY, AND AS SUCCESSOR-IN-INTEREST TO THE ANACONDA COMPANY , SUCCESSOR-IN-INTEREST TO ANACONDA-ERICSSON, INC., SUCCESSOR-IN-INTEREST TO CONTINENTAL WIRE & CABLE COMPANY AND SUCCESSOR-IN-INTEREST TO ANACONDA WIRE & CABLE COMPANY); **EXOMET, INC.; FAR WEST INSULATION CONTRACTING** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO THORPE INSULATION CO.); **F.B. WRIGHT COMPANY OF PITTSBURGH; FERRIS KIMBALL COMPANY, LLC; FERRO ENGINEERING** (INDIVIDUALLY AND AS A DIVISION OF OGLEBAY NORTON COMPANY); **FLOWSERVE CORPORATION,** (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO DURCO INTERNATIONAL, INC., UNITED PUMPS AND WORTHINGTON PUMPS); **FLOWSERVE US, INC.,** (INDIVIDUALLY AND F/K/A FLOWSERVE PUMP CORPORATION, F/K/A FLOWSERVE RED CORPORATION); **FMC CORPORATION,** (INDIVIDUALLY, ON BEHALF OF AND AS SUCCESSOR-IN-INTEREST TO PEERLESS PUMP CO., JOHN BEAN PUMPS, CHICAGO PUMPS, DAYTON-DOWD PUMP CO., OHIO APEX DIVISION, AND LINK BELT COMPANY); **FOSECO, INC.; FOSTER WHEELER AG; FOSTER WHEELER ENERGY CORPORATION; FREEPORT-MCMORAN COPPER & GOLD INC.; FROMM**

-12-

**ELECTRIC**, (A DIVISION OF COOPER ELECTRIC SUPPLY COMPANY); **FUSION SEMICONDUCTOR SYSTEMS CORP.; FXY, INC.**, (INDIVIDUALLY AND F/K/A CHRISTY REFRACTORIES COMPANY, L.L.C., F/K/A CHRISTY FIREBRICK COMPANY); **GARDNER DENVER NASH, LLC**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE NASH ENGINEERING CO.); **GARDNER-GIBSON, INC.; GENERAL CABLE INDUSTRIES, INC.**, (INDIVIDUALLY AND AS SUCCESSOR-BY-MERGER TO CAROL CABLE COMPANY, INC., SUCCESSOR-IN-INTEREST TO CAROL WIRE & CABLE CORPORATION); **GENERAL CABLE INDUSTRIES, INC.** (INDIVIDUALLY AND F/K/A GENERAL CABLE CORPORATION); **GENERAL ELECTRIC COMPANY; GENERAL REFRACTORIES COMPANY; GEORGIA-PACIFIC, LLC** (F/K/A GEORGIA-PACIFIC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BESTWALL GYPSUM COMPANY); **GRAYBAR ELECTRIC COMPANY, INC.; GRISCOM RUSSELL COMPANY; GUARANTEE ELECTRICAL COMPANY; HENRY VOGT MACHINE COMPANY; HOMASOTE COMPANY; HOWDEN BUFFALO, INC.** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO B.F. STURTEVANT); **HUBBELL INCORPORATED; IMO INDUSTRIES, INC.** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO DELAVAL TURBINE, INC.); **INDUSTRIAL HOLDINGS CORPORATION** (INDIVIDUALLY, F/K/A KENNECOTT MINING CORP., F/K/A KENNECOTT CORP., SUCCESSOR BY MERGER TO S.O. MINERALS, SUCCESSOR BY MERGER TO CARBORUNDUM COMPANY, SUCCESSOR BY MERGER TO KENNECOTT INDUSTRIES, INC., AND SUCCESSOR-IN-INTEREST TO LOCKPORT FELT COMPANY); **INGERSOLL-RAND COMPANY; INSULECTRO** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO QUINTEC INDUSTRIES, INC. AND QUINTEC

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

INC.); **INSUL COMPANY, INC.; IRVINGTON VARNISH & INSULATOR CO.; IU NORTH AMERICA, INC.**, (AS SUCCESSOR BY MERGER TO THE GARP COMPANY, FORMERLY KNOWN AS THE GAGE COMPANY, FORMERLY KNOWN AS PITTSBURGH GAGE AND SUPPLY COMPANY); **J.H. FRANCE REFRACTORIES CO.; LEECE-NEVILLE CO.; M. SLAYEN & ASSOCIATES, INC.; M. SLAYEN & CO.; McMASTER-CARR SUPPLY CO.; MCNALLY INDUSTRIES LLC** (F/K/A MCNALLY ACQUISITION, LLC, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MCNALLY INDUSTRIES, INC.); **METALCLAD INSULATION CORPORATION** (INDIVIDUALLY, AS SUCCESSOR-IN-INTEREST TO PACIFIC ASBESTOS & SUPPLY AND PACIFIC INSULATION SERVICES, INC. AND D/B/A "PACIFIC INSULATION SERVICE/SUPPLY CO."); **MICA INSULATION CO.; MINE SAFETY APPLIANCES COMPANY; NATIONAL SERVICE INDUSTRIES, INC.; NIBCO, INC.; ON MARINE SERVICE COMPANY**, (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO OGLEBAY NORTON COMPANY A/K/A FERRO ENGINEERING); **OSRAM SYLVANIA INC.; PACIFIC ASBESTOS & SUPPLY AND PACIFIC INSULATION SERVICES, INC.** (AND D/B/A, A PACIFIC INSULATION SERVICE/SUPPLY CO.); **PACIFIC STATES STEEL CORPORATION; PARKER HANNIFIN CORP.** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO SACOMA SIERRA AND SACOMO MANUFACTURING COMPANY); **PENTAIR, INC.**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO AURORA PUMP COMPANY); **PFIZER INC.; PHELPS DODGE CORPORATION; PHELPS DODGE INDUSTRIES, INC.**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO PHELPS DODGE COPPER PRODUCTS CORP.); **PHELPS DODGE INTERNATIONAL CORPORATION; PHILLIPS ELECTRONICS NORTH AMERICA CORPORATION; PLANT INSULATION**

-14-

COMPANY, (FORMERLY ASBESTOS COMPANY OF CA); **PYRO MINERALS, INCORPORATED; QUINT-T CORP.** (A/K/A QUINTERRA); **QUINTEC INDUSTRIES, INC.,** (INDIVIDUALLY AND SUCCESSOR-BY-MERGER TO WESTERN FIBROUS GLASS PRODUCTS COMPANY F/K/A WESTERN FIBERGLAS COMPANY); **RAYTHEON COMPANY,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO RAYTHEON APPLIANCES, INC. SUCCESSOR BY MERGER TO AMANA REFRIGERATION, INC., SUCCESSOR BY MERGER TO SPEED QUEEN COMPANY); **RCA CORPORATION; RED SEAL ELECTRIC COMPANY; REICHHOLD, INC.** (F/K/A REICHHOLD CHEMICALS, INC.); **RESINOID ENGINEERING CORPORATION; REXEL, INC.; ROCKBESTOS-SURPRENANT CABLE CORPORATION,** (F/K/A THE ROCKBESTOS COMPANY, INC.); **ROCKWELL AUTOMATION, INC. ,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ALLEN-BRADLEY COMPANY INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ROSTONE CORPORATION); **ROME CABLE CO.; SACHS ELECTRIC COMPANY; SAINT-GOBAIN ABRASIVES, INC.,** (INDIVIDUALLY, F/K/A NORTON COMPANY, SUCCESSOR BY MERGER TO CARBORUNDUM ABRASIVES COMPANY, D/B/A CARBORUNDUM ABRASIVES, AND SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY); **SAINT-GOBAIN ADVANCED CERAMICS CORPORATION,** (F/K/A CARBORUNDUM CORPORATION, F/K/A NEW CARBORUNDUM CORPORATION, SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY (F/K/A STEMCOR CORP. AND AS SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY; **SAN FRANCISCO GRAVEL COMPANY; SCHNEIDER ELECTRIC USA, INC.,** (F/K/A SQUARE D COMPANY); **SOLARA, LTD.; SSW, INC.; STERLING FLUID SYSTEMS (USA), L.L.C.** (F/K/A STERLING FLUID SYSTEMS

-15-

(USA), INC. AND PEERLESS PUMP COMPANY, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO INDIAN HEAD, INC.); **TDY INDUSTRIES, INC.,**( INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO TELEDYNE TECHNOLOGIES INC.); **THE COCA-COLA COMPANY; THE OKONITE COMPANY; THE STANDARD OIL COMPANY** (D/B/A THE STANDARD OIL COMPANY OF OHIO, AND SUCCESSOR-IN-INTEREST TO INDUSTRIAL HOLDINGS, CORP.); **THOMAS & BETTS CORPORATION; THORPE INSULATION COMPANY; TYCO INTERNATIONAL (US), INC.** (SUCCESSOR-IN-INTEREST TO GRINNELL FIRE PROTECTION SYSTEMS); **TYCO INTEGRATED CABLE SYSTEMS, INC.,** (INDIVIDUALLY AND F/K/A TYCOM INTEGRATED CABLE SYSTEMS, INC. F/K/A SIMPLEX TECHNOLOGIES, INC., F/K/A SIMPLEX WIRE & CABLE); **UNION CARBIDE CORPORATION; WARREN PUMPS, L.L.C.,** (F/K/A WARREN PUMPS, INC.); **WHITING CORPORATION; YARWAY CORPORATION**, and DOES 1-300, and DOES 1-300 inclusive, (collectively referred to herein as "Defendants") are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States of America, or some foreign jurisdiction, and that Defendants were authorized to do and are doing business in the State of California, and that Defendants have regularly conducted business in the State of California.

5.     For the purposes of the claims alleged herein, any Federal Court lacks subject matter jurisdiction over this Action, as there is no federal question and incomplete diversity of citizenship due to the presence of one or more Defendants with a residency in the State of California; therefore, removal is improper. Each of Plaintiff's causes of action, if any, arising under the Constitution, treaties, or laws of the United States of America is expressly disclaimed, including any claim arising from an act or omission by a federal officer or on a federal enclave,

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

1    or of any Officer of the United States of America or any agency or person acting under him

2    occurring under color of such office. No claim of admiralty or maritime law is raised. Plaintiff

3    sues no foreign state or agency. By this allegation, Plaintiff is not disclaiming State law causes

4    of action or claims arising under State, statutory, decisional or common law. Plaintiff is only

5    disclaiming causes of action and claims which would be directed at the Federal government,

6    Federal officers, or on Federal enclaves.

7

8        6.      Venue is proper in the City and County of San Francisco. At least one Defendant

9    maintains its principal place of business in the County of San Francisco. Plaintiff shall seek

10   sanctions, attorneys' fees, and other appropriate relief in the event any Defendant moves to

11   transfer and/or remove this Action to another court without a reasonable period of meet and

12   confer discussion relating to same prior to notice of removal and/or attempted transfer of this

13   Action.

14

15       7.      Plaintiffs' claims against Defendant CBS CORPORATION (f/k/a Viacom, Inc.

16   successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric

17   Corporation) exclude military, naval, and/or and federal government jobsites.

18       8.      At all times mentioned above, Defendants were engaged in the business of

19   manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling,

20   inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain

21   substance, the generic name of which is asbestos, and other products containing asbestos.

22       9.      Plaintiff JAMES DEL PINO was exposed to Defendants' asbestos and asbestos

23   containing products contributing to and causing the development of the asbestos cancer,

24   malignant mesothelioma.    As a result of exposure to Defendants' asbestos and asbestos

25   products, asbestos fibers entered Plaintiff JAMES DEL PINO's body. Plaintiff suffers from the

26   asbestos cancer, malignant mesothelioma, and each of Defendants' asbestos and asbestos-

27

28
                                            -17-

containing products that entered his body was a substantial factor in bringing about, prolonging, and/or aggravating Plaintiff's mesothelioma. The asbestos and asbestos containing products to which Plaintiff was exposed were designed, manufactured, marketed, brokered, distributed, sold, or supplied by a named Defendant or were used in an unreasonably unsafe manner under the control of a named Defendant on its premises.

Specifically, Plaintiff JAMES DEL PINO was exposed to asbestos from asbestos-containing products, contractors, and premises owners including, but not limited to:

(A)    **NAVY DEFENDANTS:**

**A. W. CHESTERTON COMPANY;**
**ALFA LAVAL, INC.;**
**AMERICAN STANDARD, INC.,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE TRANE COMPANY);
**ARMSTRONG INTERNATIONAL, INC.;**
**BUFFALO PUMPS, INC.;**
**CARRIER CORPORATION,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ELLIOTT COMPANY, SUCCESSOR-IN-INTEREST TO CROCKER-WHEELER COMPANY);
**CBS CORPORATION** (F/K/A VIACOM, INC. SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO B.F. STURTEVANT COMPANY);
**CBS CORPORATION** (F/K/A VIACOM, INC., SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION);
**CLEAVER-BROOKS, INC.,** (INDIVIDUALLY AND F/K/A AQUA-CHEM, INC.);
**CRANE CO.,** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO CHAPMAN VALVES);
**ELLIOTT COMPANY** (INDIVIDUALLY, F/K/A AND D/B/A ELLIOTT TURBOMACHINERY COMPANY);
**ELLIOTT COMPANY** (F/K/A ELLIOTT TURBOMACHINERY CO., INC. INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CROCKER-WHEELER COMPANY);
**FLOWSERVE CORPORATION,** (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO DURCO INTERNATIONAL, INC., UNITED PUMPS AND WORTHINGTON PUMPS);
**FLOWSERVE US, INC.,** (INDIVIDUALLY AND F/K/A FLOWSERVE PUMP CORPORATION, F/K/A FLOWSERVE RED CORPORATION);
**FMC CORPORATION,** (INDIVIDUALLY, ON BEHALF OF AND AS SUCCESSOR-IN-INTEREST TO PEERLESS PUMP CO., JOHN BEAN

-18-

PUMPS, CHICAGO PUMPS, DAYTON-DOWD PUMP CO., OHIO APEX
DIVISION, AND LINK BELT COMPANY);
**FOSTER WHEELER ENERGY CORPORATION**;
**GENERAL ELECTRIC COMPANY**;
**GRISCOM RUSSELL COMPANY**;
**HENRY VOGT MACHINE COMPANY**;
**IMO INDUSTRIES, INC.** (INDIVIDUALLY AND AS SUCCESSOR-IN-
INTEREST TO DELAVAL TURBINE, INC.);
**INGERSOLL-RAND COMPANY**;
**M. SLAYEN & ASSOCIATES, INC.**;
**MCNALLY INDUSTRIES LLC** (F/K/A MCNALLY ACQUISITION, LLC,
INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO MCNALLY
INDUSTRIES, INC.);
**NIBCO, INC.**;
**PARKER HANNIFIN CORP.** (INDIVIDUALLY AND AS SUCCESSOR-IN-
INTEREST TO SACOMA SIERRA AND SACOMO MANUFACTURING
COMPANY);
**PENTAIR, INC.,** (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST
TO AURORA PUMP COMPANY);
**SSW, INC.**;
**WARREN PUMPS, L.L.C.,** (F/K/A WARREN PUMPS, INC.);
**YARWAY CORPORATION**

**(B)   ELECTRICAL DEFENDANTS:**

**ABB LTD.** (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO BROWN
BOVERI ELECTRIC COMPANY AND ITE CIRCUIT BREAKER COMPANY);
**AETNA INSULATED WIRE COMPANY** (FKA EASTERN ELECTRIC SALES
CO.);
**ALLIANCE LAUNDRY HOLDINGS, LLC** (F/K/A RAYTHEON COMMERCIAL
LAUNDRY, LLC, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO
RAYTHEON APPLIANCES, INC., SUCCESSOR BY MERGER TO AMANA
REFRIGERATION, INC., SUCCESSOR BY MERGER TO SPEED QUEEN
COMPANY);
**ALLIANCE LAUNDRY SYSTEMS, LLC,** (INDIVIDUALLY AND (1) AS
SUCCESSOR-IN-INTEREST TO RAYTHEON APPLIANCES, INC., SUCCESSOR
BY MERGER TO AMANA REFRIGERATION, INC. SUCCESSOR BY MERGER
TO SPEED QUEEN COMPANY; AND (2) AS SUCCESSOR IN INTEREST TO
AJAX PRESSING MACHINE COMPANY);
**ALPHA WIRE CORPORATION**;
**ASSOCIATED MATERIALS, INC.**;
**AT&T CORP.** (AS SUCCESSOR-IN-INTEREST TO AT&T TECHNOLOGIES,
INC., AS SUCCESSOR-IN-INTEREST TO WESTERN ELECTRIC COMPANY,
INCORPORATED); **AVOCET ENTERPRISES, INC.** (F/K/A VENTFABRICS,
INC.);
**BELDEN WIRE & CABLE COMPANY**;
**BENTLEY HARRIS MANUFACTURING CO.**;

-19-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CARRIER CORPORATION**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ELLIOTT COMPANY, SUCCESSOR-IN-INTEREST TO CROCKER-WHEELER COMPANY);

**CBS CORPORATION** (F/K/A VIACOM, INC. SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO B.F. STURTEVANT COMPANY);

**CBS CORPORATION** (F/K/A VIACOM, INC., SUCCESSOR-BY-MERGER TO CBS CORPORATION, SUCCESSOR-BY-MERGER TO WESTINGHOUSE ELECTRIC CORPORATION);

**COMED**, (AN EXELON COMPANY);

**COOPER ELECTRIC SUPPLY CO.;**

**COOPER US, INC.**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO COOPER INDUSTRIES, INC. AND THE COOPER-BESSEMER CORPORATION);

**EATON CORPORATION**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CUTLER-HAMMER, INC.);

**EATON ELECTRICAL, INC.** (F/K/A CUTLER-HAMMER, INC., INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO WESTINGHOUSE ELECTRIC LLC.);

**ELECTRIC MACHINERY MANUFACTURING CO.;**

**ELLIOTT COMPANY** (INDIVIDUALLY, F/K/A AND D/B/A ELLIOTT TURBOMACHINERY COMPANY);

**ELLIOTT COMPANY** (F/K/A ELLIOTT TURBOMACHINERY CO., INC. INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO CROCKER-WHEELER COMPANY);

**EMERSON ELECTRIC COMPANY;**

**ERICSSON, INC.** (INDIVIDUALLY, AND AS SUCCESSOR-IN-INTEREST TO THE ANACONDA COMPANY , SUCCESSOR-IN-INTEREST TO ANACONDA-ERICSSON, INC., SUCCESSOR-IN-INTEREST TO CONTINENTAL WIRE & CABLE COMPANY AND SUCCESSOR-IN-INTEREST TO ANACONDA WIRE & CABLE COMPANY);

**FOSTER WHEELER AG;**

**FOSTER WHEELER ENERGY CORPORATION;**

**FROMM ELECTRIC**, (A DIVISION OF COOPER ELECTRIC SUPPLY COMPANY);

**FUSION SEMICONDUCTOR SYSTEMS CORP.;**

**GARDNER DENVER NASH, LLC**, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO THE NASH ENGINEERING CO.);

**GARDNER-GIBSON, INC.;**

**GENERAL CABLE INDUSTRIES, INC.**, (INDIVIDUALLY AND AS SUCCESSOR-BY-MERGER TO CAROL CABLE COMPANY, INC., SUCCESSOR-IN-INTEREST TO CAROL WIRE & CABLE CORPORATION);

**GENERAL CABLE INDUSTRIES, INC.** (INDIVIDUALLY AND F/K/A GENERAL CABLE CORPORATION);

**GENERAL ELECTRIC COMPANY;**

**GRAYBAR ELECTRIC COMPANY, INC.;**

**GUARANTEE ELECTRICAL COMPANY;**

**HOMASOTE COMPANY;**

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

HOWDEN BUFFALO, INC. (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO B.F. STURTEVANT);
HUBBELL INCORPORATED;
INSULECTRO (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO QUINTEC INDUSTRIES, INC. AND QUINTEC INC.);
INSUL COMPANY, INC.;
IRVINGTON VARNISH & INSULATOR CO.;
MICA INSULATION CO.;
MINE SAFETY APPLIANCES COMPANY;
OSRAM SYLVANIA INC.;
PHELPS DODGE CORPORATION;
PHELPS DODGE INDUSTRIES, INC., (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO PHELPS DODGE COPPER PRODUCTS CORP.);
PHELPS DODGE INTERNATIONAL CORPORATION;
PHILLIPS ELECTRONICS NORTH AMERICA CORPORATION;
QUINT-T CORP. (A/K/A QUINTERRA)
QUINTEC INDUSTRIES, INC., (INDIVIDUALLY AND SUCCESSOR-BY-MERGER TO WESTERN FIBROUS GLASS PRODUCTS COMPANY F/K/A WESTERN FIBERGLAS COMPANY);
RAYTHEON COMPANY, (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO RAYTHEON APPLIANCES, INC. SUCCESSOR BY MERGER TO AMANA REFRIGERATION, INC., SUCCESSOR BY MERGER TO SPEED QUEEN COMPANY);
RCA CORPORATION;
RESINOID ENGINEERING CORPORATION;
REXEL, INC.;
ROCKBESTOS-SURPRENANT CABLE CORPORATION, (F/K/A THE ROCKBESTOS COMPANY, INC.);
ROCKWELL AUTOMATION, INC. , (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ALLEN-BRADLEY COMPANY INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO ROSTONE CORPORATION);
ROME CABLE CO.;
SACHS ELECTRIC COMPANY;
SCHNEIDER ELECTRIC USA, INC., (F/K/A SQUARE D COMPANY);
SOLARA, LTD.;
STERLING FLUID SYSTEMS (USA), L.L.C. (F/K/A STERLING FLUID SYSTEMS (USA), INC. AND PEERLESS PUMP COMPANY, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO INDIAN HEAD, INC.);
TDY INDUSTRIES, INC.,( INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO TELEDYNE TECHNOLOGIES INC.);
THE OKONITE COMPANY;
THOMAS & BETTS CORPORATION;
TYCO INTERNATIONAL (US), INC. (SUCCESSOR-IN-INTEREST TO GRINNELL FIRE PROTECTION SYSTEMS);
TYCO INTEGRATED CABLE SYSTEMS, INC., (INDIVIDUALLY AND F/K/A TYCOM INTEGRATED CABLE SYSTEMS, INC. F/K/A SIMPLEX TECHNOLOGIES, INC., F/K/A SIMPLEX WIRE & CABLE);
UNION CARBIDE CORPORATION;

-21-

**(C)   INSULATION DEFENDANTS**

**3M COMPANY** (INDIVIDUALLY AND F/K/A MINNESOTA, MINING AND MANUFACTURING COMPANY A/K/A "3M");
**FAR WEST INSULATION CONTRACTING** (INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO THORPE INSULATION CO.);
**M. SLAYEN & CO.**
**METALCLAD INSULATION CORPORATION** (INDIVIDUALLY, AS SUCCESSOR-IN-INTEREST TO PACIFIC ASBESTOS & SUPPLY AND PACIFIC INSULATION SERVICES, INC. AND D/B/A "PACIFIC INSULATION SERVICE/SUPPLY CO.");
**NATIONAL SERVICE INDUSTRIES, INC.;**
**PACIFIC ASBESTOS & SUPPLY AND PACIFIC INSULATION SERVICES, INC.** (AND D/B/A, A PACIFIC INSULATION SERVICE/SUPPLY CO.);
**PFIZER INC.;**
**PLANT INSULATION COMPANY,** (FORMERLY ASBESTOS COMPANY OF CA);
**QUINTEC INDUSTRIES, INC.,** (INDIVIDUALLY AND SUCCESSOR-BY-MERGER TO WESTERN FIBROUS GLASS PRODUCTS COMPANY F/K/A WESTERN FIBERGLAS COMPANY);
**THORPE INSULATION COMPANY**

**(D)   REFRACTORY/FOUNDRY /STEEL MILL DEFENDANTS:**

**BECHTEL CORPORATION** (INDIVIDUALLY AND AS SUCCESSOR TO SEQUOIA VENTURES, INC.)
**DANA CORPORATION**
**E.D. BULLARD COMPANY**
**EXOMET, INC.**
**F.B. WRIGHT COMPANY OF PITTSBURGH**
**FERRIS KIMBALL COMPANY, LLC**
**FERRO ENGINEERING** (INDIVIDUALLY AND AS A DIVISION OF OGLEBAY NORTON COMPANY)
**FXY, INC.,** (INDIVIDUALLY AND F/K/A CHRISTY REFRACTORIES COMPANY, L.L.C., F/K/A CHRISTY FIREBRICK COMPANY)
**GENERAL REFRACTORIES COMPANY**
**HENRY VOGT MACHINE COMPANY**
**IU NORTH AMERICA, INC.,** (AS SUCCESSOR BY MERGER TO THE GARP COMPANY, FORMERLY KNOWN AS THE GAGE COMPANY, FORMERLY KNOWN AS PITTSBURGH GAGE AND SUPPLY COMPANY)
**INDUSTRIAL HOLDINGS CORPORATION** (INDIVIDUALLY, F/K/A KENNECOTT MINING CORP., F/K/A KENNECOTT CORP., SUCCESSOR BY MERGER TO S.O. MINERALS, SUCCESSOR BY MERGER TO CARBORUNDUM COMPANY, SUCCESSOR BY MERGER TO KENNECOTT INDUSTRIES, INC., AND SUCCESSOR-IN-INTEREST TO LOCKPORT FELT COMPANY)
**J.H. FRANCE REFRACTORIES CO.; LEECE-NEVILLE CO.**
**McMASTER-CARR SUPPLY CO.**

**ON MARINE SERVICE COMPANY**, (INDIVIDUALLY AND AS SUCCESSOR BY MERGER TO OGLEBAY NORTON COMPANY A/K/A FERRO ENGINEERING)
**PYRO MINERALS, INCORPORATED**
**RED SEAL ELECTRIC COMPANY**
**REICHHOLD, INC.** (F/K/A REICHHOLD CHEMICALS, INC.)
**SAINT-GOBAIN ABRASIVES, INC.**, (INDIVIDUALLY, F/K/A NORTON COMPANY, SUCCESSOR BY MERGER TO CARBORUNDUM ABRASIVES COMPANY, D/B/A CARBORUNDUM ABRASIVES, AND SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY)
**SAINT-GOBAIN ADVANCED CERAMICS CORPORATION**, (F/K/A CARBORUNDUM CORPORATION, F/K/A NEW CARBORUNDUM CORPORATION, SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY (F/K/A STEMCOR CORP. AND AS SUCCESSOR-IN-INTEREST TO CARBORUNDUM COMPANY
**SSW, INC.**
**THE STANDARD OIL COMPANY** (D/B/A THE STANDARD OIL COMPANY OF OHIO, AND SUCCESSOR-IN-INTEREST TO INDUSTRIAL HOLDINGS, CORP.)
**WHITING CORPORATION**

**(E)   CONSTRUCTION DEFENDANTS:**

**GEORGIA-PACIFIC, LLC** (F/K/A GEORGIA-PACIFIC CORPORATION, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO BESTWALL GYPSUM COMPANY)
**SAN FRANCISCO GRAVEL COMPANY**
**UNION CARBIDE CORPORATION**

**(F)   PREMISES DEFENDANTS**

**CROWN CORK & SEAL COMPANY, INC.**
**FREEPORT-MCMORAN COPPER & GOLD INC.**
**PACIFIC STATES STEEL CORPORATION**
**THE COCA-COLA COMPANY.**

Each and every one of Defendants' asbestos products and involvement in exposing Plaintiff to asbestos substantially contributed, and was a proximate cause, to the development of Plaintiff JAMES DEL PINO's asbestos cancer, malignant mesothelioma.

## II.

### FIRST CAUSE OF ACTION: NEGLIGENCE

### (AGAINST ALL DEFENDANTS)

10.     Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 9.

11.     At all times herein mentioned, Defendants and DOES 1 through 300 were the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products. Said entities shall hereinafter collectively be called "Alternate Entities."  Each of the herein named Defendants are liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised the asbestos and asbestos-containing products. The following Defendants are liable for the acts of each and every "Alternate Entity," in that there has been a virtual destruction of Plaintiffs' remedies against each "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of

-24-

each "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiffs' remedy against each "Alternate Entity;" each Defendant has the ability to assume the risk-spreading role of each "Alternate Entity;" and each Defendant enjoys the goodwill originally attached to each such "Alternate Entity."  A list of each "Alternate Entity" is attached hereto as **Exhibit A.**

12.   Defendants had a duty to use reasonable care in manufacturing their products and to warn the customers, users, and/or bystanders that their products were dangerous and unsafe and to warn that unsafe asbestos products under their care control were exposing bystanders on their premises.  At all times mentioned herein, Defendants negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold their asbestos and asbestos-containing products in that these products were capable of causing and, in fact, proximately caused personal injuries to users and consumers thereof, namely Plaintiff JAMES DEL PINO, while being used in manner reasonably foreseeable to Defendants, thereby rendering the asbestos products unsafe and dangerous for use by the consumer, users, and/or bystanders thereof, and others to whom Defendants owed a duty, including Plaintiff JAMES DEL PINO.

13.   Plaintiff JAMES DEL PINO is a worker who, for a substantial length of time, used, handled, and was otherwise exposed to Defendants' asbestos and asbestos products referred to in Paragraphs 8 and 9 above, in a manner that was reasonably foreseeable to Defendants, while he was working as an electrician in the 1960s, 1970s, and 1980s. Specifically, Plaintiff JAMES DEL PINO worked as a maintenance electrician in the Navy from approximately 1964 to 1968 during which time he may have been exposed to asbestos containing products which include thermal insulation, gaskets, packing, valves, pumps, motors,

-25-

1  boilers, wire, cable, controllers, equipment, and other electrical products as outlined in
2  paragraph 9 above. After leaving the Navy Plaintiff JAMES DEL PINO worked as an
3  electrician at various industrial facilities. He also worked as an electrician on construction jobs.
4  On all of these jobs in the navy, at industrial facilities, and on construction sites, Plaintiff
5  JAMES DEL PINO was exposed to various asbestos products manufactured, sold, and/ or
6  distributed by Defendants including those outlined in paragraph 9 above.
7

8         14.     On or about October 21, 2011, Plaintiff JAMES DEL PINO was advised that he
9  has the asbestos cancer, malignant mesothelioma. Prior to that date, Plaintiff did not know, nor
10  did he have reason to know, that he had contracted this disease related to his exposure to
11  asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos presented any risk
12  of injury and/or disease to him, and had not been advised or informed by anyone that he could
13  contract, nor did he contract, any disease, sickness or injury as a result of working in the
14  vicinity of asbestos.
15

16         15.     Plaintiffs are informed and believe, and therefore allege, that mesothelioma is a
17  vicious, painful, and invariably fatal malignancy of the lining of the lung, stomach, or heart and
18  that said disease results from exposure to asbestos and asbestos products over a period of time.
19  There is no known cure for any form of malignant mesothelioma.

20         16.     As a direct and proximate result of Defendants' conduct and asbestos products,
21  Plaintiff JAMES DEL PINO has suffered, and continues to suffer, severe and permanent
22  injuries to his person, body and health, including, but not limited to, the asbestos cancer
23  mesothelioma, all of which cause Plaintiffs' general damages in a sum within the jurisdictional
24  limits of this Court.
25

26         17.     As a direct and proximate result of Defendants' conduct and asbestos products,
27  Plaintiffs were compelled to, and did in fact, employ the services of hospitals, surgeons,
28

-26-

physicians, nurses, and the like, to care for and treat Plaintiff JAMES DEL PINO's cancerous condition.  Plaintiffs have incurred medical, hospital and professional incidental expenses, and Plaintiffs are informed and believe, and therefore allege, that by reason of Plaintiff's injuries, Plaintiffs will necessarily incur additional medical expenses for an indefinite period of time in the future.  When Plaintiffs have ascertained and calculated the total amount of medical bills, Plaintiffs will allege this figure.

18.    In researching, testing, manufacturing, distributing, labeling, and marketing asbestos and asbestos products, Plaintiffs are informed and believe that Defendants did so with conscious disregard for the safety of the users of said asbestos and asbestos products, in that Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to, the asbestos cancer mesothelioma.  Defendants' knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of Defendants, and which knowledge was obtained by Defendants on or before 1930, and rapidly increasingly thereafter.

19.    On or before 1930, and rapidly increasingly thereafter, Defendants were aware that users of asbestos and asbestos products, as well as members of the general public that were exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and Defendants knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe and not harmful to human life, when in fact said exposure was known by Defendants to be potentially lethal.

-27-

20. With this knowledge, Defendants opted to design, manufacture, market, distribute and/or use their asbestos and asbestos products without attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed their knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations. The above-referenced conduct of said Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, Defendants consciously disregarded the safety of the users of, and persons exposed to, their asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and personally exposed thereto, including Plaintiff JAMES DEL PINO.

21. Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff JAMES DEL PINO to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional

-28-

misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.  Specific facts of Defendants' punitive conduct include:

(a)      Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930.  By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)      Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)      Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of

-29-

use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.   Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.   Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action.   The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

-30-

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein.  Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.  Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone

-31-

similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

### III.

#### SECOND CAUSE OF ACTION: STRICT LIABILITY

#### (AGAINST ALL DEFENDANTS)

22.     Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 21.

23.     At all times mentioned herein, Defendants researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale asbestos and asbestos-containing products which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that

-32-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

same was capable of causing and did, in fact, cause personal injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and bystanders.

24.     As a direct and proximate result of the above described conduct by Defendants, Plaintiff JAMES DEL PINO suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma.

25.     At all times mentioned herein, Defendants' asbestos and asbestos-containing products (identified in Paragraph 9, above) failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the risk of danger inherent in this substance and products outweighs the benefits of Defendants' asbestos and asbestos-containing products.

26.     At all times mentioned herein, the foreseeable use of Defendants' asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

27.     As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff JAMES DEL PINO suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma.

28.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of

-33-

oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff JAMES DEL PINO to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)     Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and

-34-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.   Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.  Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in

-35-

asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)    Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein.  Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.  Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)    Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)    Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials

-36-

were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

## IV.

### THIRD CAUSE OF ACTION: PREMISES OWNER/CONTRACTOR LIABILITY

#### (AGAINST ALL PREMISES AND CONTRACTOR DEFENDANTS)

29.     Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 28.

-37-

30.     At all times mentioned herein, Defendants respectively, owned, leased, maintained, managed, and/or controlled the premises where Plaintiff was present. Additionally, Plaintiff might have been present at these or other Defendants' premises at other locations and on other occasions.

31.     Prior to and at said times and places, Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

32.     At all times mentioned herein, Defendants knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

33.     At all times relevant herein, Plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Defendants' request and invitation. In so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Defendants.

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

34.     Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

35.     At all times mentioned herein, Defendants remained in control of the premises where Plaintiff was performing his work.

36.     At all times mentioned herein, Defendants owed to Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

37.     At all times mentioned herein, Defendants negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

38.     Prior to and at the times and places aforesaid, Defendants respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff.

39.     At all times mentioned herein, Defendants should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

40.     In part, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

-39-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

41.     The work of contractors on premises controlled by Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

42.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by Defendants.  Said negligent conduct includes but is not limited to:

    a.  Failure to warn of asbestos and other toxic dusts;

    b.  Failure to suppress the asbestos-containing or toxic dusts;

    c.  Failure to remove the asbestos-containing and toxic dusts through the use of ventilation or appropriate means;

    d.  Failure to provide adequate breathing protection, i.e., approved respirators or masks;

    e.  Failure to inspect and/or test the air;

    f.  Failure to provide medical monitoring.

43.     Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder.  Therefore, Defendants are responsible for any breach of said duties whether by themselves or others.

44.     Prior to and at said times and places, Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of

-40-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants.  Such state and federal standards required Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and Defendants failed to provide the required safeguards and precautions.  Defendants' violations of said codes include but are not limited to:

    a.   Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

    b.   Failing to segregate work involving the release of asbestos or other toxic dusts;

    c.   Failing to suppress dust using prescribed ventilation techniques;

    d.   Failing to suppress dust using prescribed "wet down" techniques;

    e.   Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

    f.   Failing to provide approved respiratory protection devices;

    g.   Failing to ensure "approved" respiratory protection devices were used properly;

    h.   Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

    i.   Failing to provide adequate housekeeping and clean-up of the work place;

    j.   Failing to properly warn of the hazards associated with asbestos as required by statute;

k. Failing to properly report renovation and disturbance of asbestos-containing materials;

l. Failing to have an asbestos removal supervisor as required by regulation;

m. Failing to get approval for renovation as required by statutes; and

n. Failing to maintain records as required by statute.

45. Defendants were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

46. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

47. At all times mentioned herein, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

48. At all times mentioned herein, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

49. As a legal consequence of the foregoing, Plaintiff developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff has suffered damages as herein alleged.

50. The above-referenced conduct of said Defendants was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff. Defendant is guilty of oppression, fraud, or malice

-42-

and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others.   Defendants subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.   Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.

## V.

### FOURTH CAUSE OF ACTION: LOSS OF CONSORTIUM

### (AGAINST ALL DEFENDANTS)

51.    Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1 through 52.

52.    Plaintiffs were married at all times relevant to this action and were, and are now, husband and wife.

53.    Prior to Plaintiff JAMES DEL PINO's injuries alleged herein, Plaintiff JAMES DEL PINO was able and did perform duties as a spouse.   Subsequent to the injuries, and as a proximate result thereof, Plaintiff JAMES DEL PINO has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home and Plaintiff JAMES DEL PINO will be unable to perform such work, services, and duties in the future.   As a proximate result thereof, Plaintiff's spouse, BEVERLY I. DEL PINO, has been permanently deprived and will be permanently deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

-43-

54. Further, as a direct and proximate result of the acts of Defendants, as well as the severe injuries caused thereby to Plaintiff JAMES DEL PINO as set forth herein, Plaintiff BEVERLY I. DEL PINO has suffered, and for a long period of time will continue to suffer, loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

55. Discovery of the cause of Plaintiff BEVERLY I. DEL PINO 's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

## VI.

### PRAYER

WHEREFORE, Plaintiffs demand judgment against Defendants, and each of them, in an amount to be proved at trial in each individual case, as follows:

1. General damages according to proof;

2. Damages for medical and related expenses, according to proof;

3. Damages for loss of earning capacity, according to proof;

4. Damages for loss of earnings, according to proof;

5. Damages for loss of ability to provide household services, according to proof;

6. Damages for Plaintiffs' other economic losses, according to proof;

7. Damages for Plaintiffs' physical pain, mental suffering, and emotional distress, according to proof;

8. Damages for Plaintiffs' other non-economic losses, according to proof;

9. Exemplary or punitive damages, according to proof;

10. Prejudgment interest, according to proof;

-44-

1     11.    Costs of suit incurred herein; and

2     12.    Such other and further relief as this Court may deem just and proper, including

3     costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and

4     related provisions of law.

**Dated**: May 10, 2012

**BARON & BUDD, P.C.**

**By:** _Alana Kalantzaki_

Alana Kalantzakis, Esq.
ATTORNEYS FOR PLAINTIFFS

-45-

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

**EXHIBIT A**

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| 3M COMPANY | (individually and f/k/a Minnesota, Mining and Manufacturing Company a/k/a "3M") |
| ABB LTD. | (individually and as successor by merger to Brown Boveri Electric Company and ITE Circuit Breaker Company) |
| AETNA INSULATED WIRE COMPANY | (FKA EASTERN ELECTRIC SALES CO.) |
| ALLIANCE LAUNDRY HOLDINGS, LLC | (f/k/a Raytheon Commercial Laundry, LLC), individually and as successor-in-interest to Raytheon Appliances, Inc., (successor by merger to Amana Refrigeration, Inc., successor by merger to Speed Queen Company) |
| ALLIANCE LAUNDRY SYSTEMS, LLC | (individually and (1) as successor-in-interest to Raytheon Appliances, Inc., (successor by merger to Amana Refrigeration, Inc. successor by merger to Speed Queen Company); and (2) as successor in interest to Ajax Pressing Machine Company) |
| AMERICAN STANDARD, INC. | (individually and as successor-in-interest to The TRANE COMPANY) |
| AT&T CORP. | (as successor-in-interest to AT&T Technologies, Inc., as successor-in-interest to Western Electric Company, Incorporated); |
| AVOCET ENTERPRISES, INC. | (F/K/A VENTFABRICS, INC.); |
| BECHTEL CORPORATION | (INDIVIDUALLY AND AS SUCCESSOR TO SEQUOIA VENTURES, INC.) |
| CARRIER CORPORATION | (individually and as successor-in-interest to Elliott Company, successor-in-interest to Crocker-Wheeler Company) |
| CBS CORPORATION | (f/k/a Viacom, Inc. successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation) |
| CBS CORPORATION | (f/k/a Viacom, Inc. successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation, individually and as successor-in-interest to B.F. Sturtevant Company); |
| CLEAVER-BROOKS, INC. | (individually and f/k/a Aqua-Chem, Inc.) |
| COMED | (An Exelon Company) |
| COOPER US, INC., | (individually and as successor-in-interest to Cooper Industries, Inc. and The Cooper- |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| | Bessemer Corporation) |
| CRANE CO. | (individually and as successor in interest to Chapman Valves) |
| EATON CORPORATION | (individually and as successor-in-interest to Cutler-Hammer, Inc.) |
| EATON ELECTRICAL, INC. | (f/k/a Cutler-Hammer, Inc.) individually and as successor-in-interest to Westinghouse Electric LLC. |
| ELLIOTT COMPANY | (individually, f/k/a and d/b/a Elliott Turbomachinery Company) |
| ELLIOTT COMPANY | (f/k/a Elliott Turbomachinery Co., Inc. individually and as successor-in-interest to Crocker-Wheeler Company) |
| ERICSSON, INC. | (individually, and as successor-in-interest to The Anaconda Company , successor-in-interest to Anaconda-Ericsson, Inc., successor-in-interest to Continental Wire & Cable Company and successor-in-interest to Anaconda Wire & Cable Company) |
| FAR WEST INSULATION CONTRACTING | (individually and as successor in interest to Thorpe Insulation Co.) |
| FERRO ENGINEERING | (individually and as a division of Oglebay Norton Company) |
| FLOWSERVE CORPORATION | (individually and as successor by merger to Durco International, Inc., United Pumps and Worthington Pumps) |
| FLOWSERVE US, INC. | (individually and f/k/a Flowserve Pump Corporation, f/k/a Flowserve Red Corporation) |
| FMC CORPORATION | (individually, on behalf of and as successor-in-interest to Peerless Pump Co., John Bean Pumps, Chicago Pumps, Dayton-Dowd Pump Co., Ohio Apex Division, and Link Belt Company) |
| FROMM ELECTRIC | (A Division of COOPER ELECTRIC SUPPLY COMPANY) |
| FXY, INC | (individually and f/k/a Christy Refractories Company, L.L.C., f/k/a Christy Firebrick Company) |
| GARDNER DENVER NASH, LLC | (individually and as successor-in-interest to The Nash Engineering Co.) |
| GENERAL CABLE INDUSTRIES, INC. | (individually and as successor-by-merger to Carol Cable Company, Inc., successor-in-interest to Carol Wire & Cable Corporation) |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL CABLE INDUSTRIES, INC. | (individually and f/k/a General Cable Corporation) |
| GEORGIA-PACIFIC, LLC | (f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company) |
| HOWDEN BUFFALO, INC. | (individually and as successor-in-interest to B.F. Sturtevant) |
| IMO INDUSTRIES, INC. | (individually and as successor-in-interest to DeLaval Turbine, Inc.) |
| INDUSTRIAL HOLDINGS CORPORATION | (individually, f/k/a Kennecott Mining Corp., f/k/a Kennecott Corp., successor by merger to S.O. Minerals, successor by merger to Carborundum Company, successor by merger to Kennecott Industries, Inc., and successor-in-interest to Lockport Felt Company) |
| INSULECTRO | (INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO QUINTEC INDUSTRIES, INC. AND QUINTEC INC.) |
| IU NORTH AMERICA, INC., | (as successor by merger to THE GARP COMPANY, formerly known as THE GAGE COMPANY, formerly known as PITTSBURGH GAGE AND SUPPLY COMPANY) |
| MCNALLY INDUSTRIES LLC | (f/k/a McNally Acquisition, LLC), individually and as successor-in-interest to McNally Industries, Inc. |
| METALCLAD INSULATION CORPORATION | (individually, as successor-in-interest to Pacific Asbestos & Supply and Pacific Insulation Services, Inc. and d/b/a "Pacific Insulation Service/Supply Co.") |
| ON MARINE SERVICE COMPANY | (individually and as successor by merger to Oglebay Norton Company a/k/a Ferro Engineering) |
| PACIFIC INSULATION SERVICES, INC. | (and d/b/a, A PACIFIC INSULATION SERVICE/SUPPLY CO.) |
| PARKER HANNIFIN CORP. | (individually and as successor-in-interest to SACOMA SIERRA and SACOMO MANUFACTURING COMPANY) |
| PENTAIR, INC. | (individually and as successor-in-interest to Aurora Pump Company) |
| PHELPS DODGE INDUSTRIES, INC. | (individually and as successor-in-interest to Phelps Dodge Copper Products Corp.) |
| PLANT INSULATION COMPANY | (FORMERLY ASBESTOS COMPANY |

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| | OF CA) |
| QUINTEC INDUSTRIES, INC. | (individually and successor-by-merger to Western Fibrous Glass Products Company (f/k/a Western Fiberglas Company) |
| RAYTHEON COMPANY | (individually and as successor-in-interest to Raytheon Appliances, Inc. (successor by merger to Amana Refrigeration, Inc., successor by merger to Speed Queen Company) |
| REICHHOLD, INC. | (f/k/a Reichhold Chemicals, Inc.) |
| ROCKBESTOS-SURPRENANT CABLE CORPORATION | (f/k/a The Rockbestos Company, Inc.) |
| ROCKWELL AUTOMATION, INC. | (individually and as successor-in-interest to Allen-Bradley Company individually and as successor-in-interest to Rostone Corporation) |
| SAINT-GOBAIN ABRASIVES, INC. | (individually, f/k/a Norton Company, successor by merger to Carborundum Abrasives Company, d/b/a Carborundum Abrasives, and successor-in-interest to Carborundum Company) |
| SAINT-GOBAIN ADVANCED CERAMICS CORPORATION | (f/k/a Carborundum Corporation, f/k/a New Carborundum Corporation, successor-in-interest to Carborundum Company (f/k/a Stemcor Corp. and as successor-in-interest to Carborundum Company |
| SCHNEIDER ELECTRIC USA, INC. | (f/k/a Square D Company) |
| STERLING FLUID SYSTEMS (USA), L.L.C. | (f/k/a Sterling Fluid Systems (USA), Inc. and Peerless Pump Company, individually and as successor-in-interest to Indian Head, Inc.) |
| TDY INDUSTRIES, INC., | (Individually and as successor-in-interest to Teledyne Technologies Inc.) |
| THE STANDARD OIL COMPANY | (d/b/a The Standard Oil company of Ohio, and successor-in-interest to Industrial Holdings, Corp.) |
| TYCO INTERNATIONAL (US), INC. | (successor-in-interest to Grinnell Fire Protection Systems) |
| TYCO INTEGRATED CABLE SYSTEMS, INC., | (individually and f/k/a Tycom Integrated Cable Systems, Inc. f/k/a Simplex Technologies, Inc., f/k/a Simplex Wire & Cable) |
| WARREN PUMPS, L.L.C. | (f/k/a Warren Pumps, Inc.) |