ALAN R. BRAYTON, ESQ., CA S.B. #73685
DAVID R. DONADIO, ESQ., CA S.B. #154436
RICHARD M. GRANT, ESQ., CA S.B. #55677
E-Mail:  rgrant@braytonlaw.com
BRAYTON❖PURCELL LLP
Attorneys at Law
222 Rush Landing Road
P.O. Box 6169
Novato, California  94948-6169
(415) 898-1555
(415) 898-1247 (Facsimile)

Attorneys for Plaintiffs

**BEFORE THE JUDICIAL PANEL ON**

**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. VI) | MDL DOCKET NO. 875<br>2:01-md-00875-ER |
| SAMANTHA LYMAN, as Wrongful Death Heir, and as Successor-in-Interest to ROBERT LYMAN, Deceased; and ROBERT LYMAN, JR., LAURA LYMAN, LISA CARAWAN, STEPHEN LYMAN, MICHAEL LYMAN, and KENNETH CHRISTIE, as Legal Heirs of ROBERT LYMAN, Deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>UNION CARBIDE CORPORATION and MONTELLO, INC.,<br><br>Defendants. | PLAINTIFFS' OPPOSITION TO DEFENDANTS UNION CARBIDE CORPORATION AND MONTELLO INC.'S MOTION TO VACATE CONDITIONAL REMAND ORDER<br><br>Hon. Eduardo C. Robreno<br>E.D. PA No. 2:09-cv-62999-ER<br><br>This document relates to:<br><br>*Robert Lyman, Jr., et al. v. Asbestos Defendants (B❖P),* United States District Court, Northern District of California, Case No. 4:07-cv-04240-SBA |

INTRODUCTION AND STATEMENT OF FACTS

Rather than respond to the slings and arrows of outrageous attorney posturing and indignation, plaintiffs choose instead to concentrate on and discuss the actual salient facts:

1. This matter was filed in the Superior Court for the City and County of San Francisco on December 29, 2006, over five and one-half years ago.  Defendant Montello, Inc. (hereinafter

1

PLAINTIFFS' OPPOSITION TO DEFENDANTS UNION CARBIDE CORPORATION AND MONTELLO INC.'S MOTION TO VACATE  CONDITIONAL REMAND ORDER,  CASE NO. 2:09-cv-62999

1. "Montello") filed its Answer to Complaint on January 24, 2007. Defendant Union Carbide Corporation (hereinafter "Union Carbide") filed its Answer to Complaint on February 13, 2007.

2. Trial in the matter commenced on August 6, 2007. Robert Lyman was living at the time. After trial had begun, and just before opening statements, Union Carbide filed its Notice of Removal to the United States District Court for the Northern District of California on August 17, 2007. Jurors were discharged and the trial vacated. The case was subsequently transferred to the Eastern District of Pennsylvania. Mr. Lyman died on May 20, 2008.

3. Both Union Carbide's and Montello's Motions for Summary Judgment were denied in the state court proceedings.

4. Both Union Carbide's and Montello's Motions for Summary Judgment were denied in the District Court for the Eastern District of Pennsylvania. Defendants' Joint Motion for Reconsideration was denied as untimely.

5. Defendants' motions to exclude plaintiffs' expert witnesses have been twice denied by the Eastern Pennsylvania District Court.

6. Contrary to defendants' statement in their Brief in Support of Motion to Vacate the CRO that "Plaintiffs causation argument rests upon a controversial theory known as the 'any exposure' theory," plaintiffs' position is the non-controversial opinion that any exposures an individual suffers, <u>above ambient or background air levels</u>, would, on a more likely than not basis, have been a substantial factor in causing the asbestos-related diseases. Plaintiffs' experts opine that there is no reliable scientific method for determination of exactly which asbestos exposures that a person suffered were a substantial factor and which ones were not, and that any exposures above an ambient level are substantial factors contributing to the risk of disease. See, Expert Report of Richard Cohen, M.D.,M.P.H., and Deposition Testimony of Daniel M. Raybin, M.D., F.A.C.P., F.C.C.P., attached to the Declaration of Kimberly J. Chu as Exhibits E and G, respectively.

7. The depositions of all but one of plaintiffs' experts were requested and taken prior to trial in the state court proceeding; all requested depositions went forward:

///

...

     a. The deposition of expert Barry Ben-Zion, Ph.D., was taken in the this matter on July 18, 2007, when the case was still in San Francisco Superior Court. See, Exhibit A to the Chu Declaration.

     b. The deposition of expert William Salyer, M.D. was taken in the this matter on July 24, 2007. See, Exhibit B to the Chu Declaration.

     c. The deposition of expert Charles Ay was taken in the this matter on July 24, 2007. See, Exhibit C to the Chu Declaration.

     d. The deposition of expert Richard Cohen, M.D. was taken in the this matter on July 25, 2007. See, Exhibit D to the Chu Declaration.

     e. The deposition of expert Arnold Brody, Ph.D. was taken in the this matter on July 27, 2007. See, Exhibit F to the Chu Declaration.

     f. The deposition of expert Daniel Raybin, M.D. was taken in the this matter on July 27, 2007. See, Exhibit G to the Chu Declaration.

     g. The deposition of expert Samuel P. Hammar, M.D. was taken in the this matter on August 9, 2007. See, Exhibit H to the Chu Declaration.

8. On January 19, 2011, Chief Magistrate Judge Thomas J. Reuter, in denying defendants' Renewed Motion to Exclude testimony of Plaintiffs' Expert Witnesses, ordered:

> It is further ORDERED that within twenty-one days of this order, plaintiffs shall file Supplemental Reports <u>for those experts reports which do not fully comply with Fed. R. Civ. P. 26(a)(2)(B). This is without prejudice to the right of defendants to file any motions in limine regarding these experts in the Transferor Court.</u> Since discovery is complete and the Court has denied defendants' motions for Summary Judgment, the Court recommends that the Honorable Eduardo C. Robreno remand this case for trial in the Transferor Court.

See, Judge Rueter's January 19, 2011, Order, attached as Exhibit J to the Chu Declaration (emphasis added).

9. Within the twenty-one day period proscribed by the Court, and on February 9, 2011, plaintiffs counsel forwarded supplemental/amended reports for experts Charles Ay, Kenneth Cohen, Dr. Richard Cohen and Dr. William Salyer, stating that it was believed that all initial reports were in compliance with Rule 26 but in a good faith effort to address defendant's

1  concerns, these four supplemental reports were submitted.  It was clear therefor that plaintiffs
2  believed there was no need to supplement the other four reports since they were thought already
3  in compliance with Rule 26.  See, Letter from Kimberly Chu to Drew Yoder, attached as Exhibit
4  K to the Chu Declaration.
5       10.  Although discovery cut-off for expert depositions was extended to November 30,
6  2010, defendants did not take any further depositions of plaintiffs expert witnesses.
7       11.  More than eighteen months have passed since Judge Rueter's Order regarding
8  supplemental reports and more than seventeen months have passed since plaintiffs submitted
9  their supplemental expert reports to comply with Judge Reuter's order.  Yet defendants have
10 brought no motion before the Court to enforce its order, no request for an order to show cause re:
11 contempt, nothing whatsoever to bring before the Court its alleged concerns that plaintiffs'
12 reports were still not Rule 26 compliant.

## ARGUMENT

Defendants' motion is predicated on an allegation that the District Court has not ruled on certain objections to an Order of Magistrate Judge Thomas J. Rueter.  These objections were filed on February 2, 2011.  Yet defendants chose not to apprise the Court of their alleged need for a formal ruling until after the Court entered its Suggestion of Remand, after the JPML entered its CRO and  MORE THAN 17 MONTHS following their objections.  If a party objects to a ruling of a magistrate judge, but the District Court does not expressly rule on the objections, the District Court's action may be treated as a denial of those objections.  See, *Fielding v. Thylacine* 510 F.3d175, 179 (2d Cir. 2005); *Miller v. Automobile Club of New Mexico, Inc.*, 420 F.3d 1098, 1117 (10th Cir. 2005).  Because of the lapse of time following the objections and the fact that defendants failed to bring the issue to the attention of the Court while the case continued, the objections should be treated as denied.

Moreover, defendants repeatedly complain that plaintiffs failed to comply with Magistrate Judge Reuter's Order of January 19, 2011, yet again did nothing for seventeen months to bring its complaint to the Court's attention.  Defendants also completely ignore the actual wording of the Judge Reuter's order which only states that plaintiffs shall file supplemental

reports "for those experts reports" which do not fully comply with FRCP 26. The Court never ruled that any of the reports were indeed non-compliant but only that if there were such reports, supplemental reports should be filed. This plaintiffs did on February 9, 2011. Defendants filed no follow-up motions regarding any alleged non-compliance with the Court's order. Indeed, no communication whatsoever with the Court for this seventeen month period UNTIL a Suggestion of Remand was filed. And importantly absent from defendant's plaintive assertions is that part of Judge Reuter's Order which specifically states that defendant is not foreclosed from bringing later motions in the transferor court regarding plaintiffs' experts.

When the present case was in San Francisco Superior Court, as a personal injury action for decedent Robert Lyman, defendants deposed plaintiffs' experts, with defendant Union Carbide Corporation taking lead. *See,* relevant portions of plaintiffs' experts' deposition transcripts, attached to the Declaration of Kimberly J. Chu. Defendants have already had the full and fair opportunity to ask plaintiffs' experts about causation issues related to the asbestos-related diseases at issue in this case, including lung cancer and asbestosis. Defendants specifically inquired into pulmonologist Daniel Raybin's opinions regarding the so-called "any exposure theory," about which defendants now claim ignorance, attempting to manufacture a reason to vacate the Remand Order. During defendant Union Carbide Corporation's counsel's questioning, Dr. Raybin specifically stated "It's not just exposure to one particle that causes the problem. It's the sum total of all of them." Deposition of Daniel Raybin, taken on July 27, 2007, p. 59:4-6, attached as Exhibit to the Chu Declaration.

Dr. Raybin also testified that asbestosis is a dose/response disease, and that "the greater the dose the greater the likelihood that you'll have the asbestosis, not that everybody exposed to a given dose will get it or won't get it." *Id.*, p. 59:7-17. He further went on to discuss whether lung cancer is attributable to background levels of exposure, and distinguished between trivial and substantial exposures to asbestos. See, *Id.*, p. 61:23-64:15. Defendants never suspended this deposition or moved to compel additional answers to questions; this deposition was concluded. There is no evidence that defendants sought to re-depose Dr. Raybin once the case was in Federal court, nor does defendant present any evidence that plaintiffs refused to produce Dr. Raybin .

Defendants had an extension of time to take any expert's deposition in this case and failed to take any depositions other than the ones they had already completed. Defendants sat on their hands and on their alleged rights for over a year and a half. What could have been done before was delayed until now.

Defendants simply seek to delay, rather than advance, these proceedings. But more egregiously, defendants resort to an assortment of misinformation, misstatements, half-truths, distortions and simply tired and old references[1], evidently hoping that this will somehow impact this panel. Plaintiffs trust otherwise.

> Unfortunately the terminology and deportment of the legal profession often resemble the equipment of war, loaded with the language of terror and the posturing of the invincible or the violated, as the case may be, aimed at capturing the conviction of some judge(s), as sensitive, perhaps, to the essence of smoke and powder as to the substance of fact and law. More often than not, however, such stratagems, when the haze of engagement clears, amount to little more than a smoldering disappointment at what the trier has found.

*Williams v. Volkswagenwerk Aktiengesellschaft*, 180 Cal. App. 3d 1244, fn 3. (Cal. App. 2d Dist. 1986).

Rather, plaintiffs submit that continued vitriol and attacks have no place in the law today.

> A lawyer has an obligation to cooperate with opposing counsel as a colleague in the preparation of the case for trial. Zealous representation of the client is not inconsistent with a collegial relationship with opposing counsel in service to the court. Motions and pretrial practice are often sources of friction among lawyers, which contributes to unnecessary cost and lack of collegiality in litigation. The absence of respect, cooperation, and collegiality displayed by one lawyer toward another too often breeds more of the same in a downward spiral. Lawyers have an obligation to avoid such conduct and to promote a respectful, collegial relationship with opposing counsel."

*Pioneer Drive, LLC v. Nissan Diesel Am., Inc.,* 262 F.R.D. 552 (D. Mont. 2009).

///

///

---

[1] For instance, defendants state that plaintiffs were sanctioned for "misconduct," when the fact is defendants were awarded costs because plaintiffs failed to comply timely with a scheduling order without good cause. Plaintiffs do note that defendants' application for attorneys fees was ruled "excessive" by the Court.

CONCLUSION

For the foregoing reasons Defendants' Joint Motion to Vacate the Conditional Remand Order should be denied. This case is ready to proceed in the Transferor Court.

Dated: August 1, 2012                      BRAYTON❖PURCELL LLP


By:  /s/ *Richard M. Grant*
Richard M. Grant, Esq., CA S.B. #55677
Email: rgrant@braytonlaw.com
Tel: (415) 898-1555
Fax: (415) 898-1247
Attorneys for Plaintiffs