MDL

# U.S. District Court
## District of North Dakota (Northeastern)
## CIVIL DOCKET FOR CASE #: 2:12-cv-00061-RRE-KKK
## Internal Use Only

Nisbet v. Alcatel-Lucent USA, Inc. et al
Assigned to: Chief Judge Ralph R. Erickson
Referred to: Magistrate Judge Karen K. Klein
Cause: 28:1331 Fed. Question: Personal Injury

Date Filed: 07/27/2012
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

### Plaintiff

**Marilyn J. Nisbet**
*Individually and on behalf of
estate of*
John T. Nisbet

represented by **Mark V. Larson**
LARSON LAW FIRM, P.C.
PO BOX 2004
MINOT, ND 58702-2004
701-839-1777
Email: larslaw@srt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Alcatel-Lucent USA, Inc.**
*a Delaware Corporation (sued as
successor-by-merger to Lucent
Technologies, Inc., and sued as
successor-by-interest to Western
Electric Company)*
*Successor*
Lucent Technologies, Inc.
*Successor*
Western Electric Company

### Defendant

**Arcelormittal Minorca Mine, Inc.**
*a Delaware Corporation*

### Defendant

**Arcelormittal USA LLC**
*a Delaware Corporation
formerly known as*
Arcelormittal USA, Inc.

### Defendant

**Calaveras Asbestos, Ltd**

***CERTIFIED COPY***
I hereby certify that this instrument is a true and
correct copy of the electronically filed original.
ATTEST:
ROBERT ANSLEY, CLERK
United States District Court
District of North Dakota

By _____
                                    Deputy Clerk

*a California Corporation*

### Defendant

**Cameron International Corporation**
*a Delaware Corporation*
*formerly known as*
Cooper Cameron Corporation

### Defendant

**CBS Corporation**
*(a Delaware Corporation) f/k/a*
*Viacom, Inc. (sued as successor-by-*
*merger to CBS Corporation (a*
*Pennsylvania Corporation) f/k/a*
*Westinghouse Electric Corporation*
*formerly known as*
Viacom, Inc.
*Successor*
CBS Corporation
*formerly known as*
Westinghouse Electric Corporation

### Defendant

**Chicago Pneumatic Tool Company,**
**LLC**
*a Delaware Corporation*

### Defendant

**C.L. Linfoot Co.**
*a Minnesota Corporation*

### Defendant

**Cliff Minnesota Mining Company**
*an Ohio Corporation (a subsidiary of*
*Cliffs Natural Resources, Inc.)*
*other*
Cliffs Natural Resources, Inc.

### Defendant

**Cliffs Natural Resources, Inc.**
*an Ohio Corporation (formerly*
*Cleveland-Cliffs, Inc. and its*
*subsidiary, Cliffs Minnesota Minerals)*
*formerly known as*
Cleveland-Cliffs, Inc.
*other*
Cliffs Minnesota Minerals

### Defendant

**Crane Co.**
*a Delaware Corporation*

**Defendant**

**Crown Cork & Seal Company, Inc.**
*a Pennsylvania Corporation (sued as successor-in-interest to Mundet Cork Company)*
*Successor*
Mundet Cork Company

**Defendant**

**Engineers-Architects, P.C.**
*a North Dakota Corporation*

**Defendant**

**Fischbach & Moore Electric Group, LLC**
*a Massachusetts Corporation*

**Defendant**

**FMC Corporation**
*a Delaware Corporation (sued individually and as successor-in-interest to Chicago Pump Company)*
*Successor*
Chicago Pump Company

**Defendant**

**Foster Wheeler Energy Corporation**
*a Delaware Corporation*

**Defendant**

**General Electric Company**
*a New York Corporation*

**Defendant**

**Ingersoll Rand Company**
*a New Jersey Corporation*

**Defendant**

**Johnson Laffen Galloway Architects, Ltd.**
*a North Dakota Corporation*

**Defendant**

**Lunseth Plumbing and Heating Co.**
*a North Dakota Corporation*

**Defendant**

**Metropolitan Life Insurance
Company**
*a New York Corporation*

**Defendant**

**Northshore Mining Company**
*a Delaware Corporation*

**Defendant**

**Peterson Construction Company, Inc.**

*a North Dakota Corporation*

**Defendant**

**Robert Gibb & Sons, Inc.**
*a North Dakota Corporation*

**Defendant**

**Schoen Associates, Ltd.**
*a North Dakota Corporation*

**Defendant**

**Union Carbide Corporation**
*a New York Corporation*

**Defendant**

**United Taconite LLC**
*a Delaware Corporation*

**Defendant**

**Widseth Smith Nolting & Associates,
Inc.**
*a Minnesota Corporation*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/30/2012 | 3 | Summons Issued as to All Defendants. (lh) (Entered: 07/30/2012) |
| 07/27/2012 | 2 | MOTION for Leave to Appear Pro Hac Vice Attorney Benjamin D. Braly (Filing fee $150, receipt number 312000528) by Marilyn J. Nisbet. (lf) (Entered: 07/30/2012) |
| 07/27/2012 | 1 | COMPLAINT against All Defendants (Filing fee $350, receipt number 312000527) filed by Marilyn J. Nisbet. (Attachments: # 1 Civil Cover Sheet)(lh) (Entered: 07/30/2012) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS LIABILITY  )    Civil Action No.  MDL 875
LITIGATION (NO. VI)                 )
_____ )
                                    )

This Document Relates to:

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

MARILYN J. NISBET, Individually        )
and on behalf of the Estate of JOHN T. )
NISBET                                 )    **COMPLAINT**
                                       )
                    Plaintiff,         )    Trial by Jury
                                       )
            v.                         )    Is Hereby
                                       )    Demanded
ALCATEL-LUCENT USA, INC., (sued as     )
successor-by-merger to LUCENT          )    Civil No.:
TECHNOLOGIES, INC., and sued as successor- )
by-interest to WESTERN ELECTRIC        )
COMPANY), a Delaware Corporation;      )
                                       )
**ARCELORMITTAL MINORCA MINE,**        )
**INC.**, a Delaware Corporation;      )
                                       )
**ARCELORMITTAL USA LLC f/k/a**        )
ARCELORMITTAL USA, INC., a Delaware    )
Corporation;                           )
                                       )
**CALAVERAS ASBESTOS, LTD**, a California )
Corporation;                           )
                                       )
**CAMERON INTERNATIONAL**              )
**CORPORATION** f/k/a COOPER CAMERON   )
CORPORATION, a Delaware Corporation;   )
                                       )
**CBS CORPORATION** (a Delaware        )
Corporation) f/k/a VIACOM, INC. (sued as )
successor-by-merger to CBS CORPORATION (a )
Pennsylvania Corporation) f/k/a        )

-1-

*CERTIFIED COPY*
I hereby certify that this instrument is a true and
correct copy of the electronically filed original.
ATTEST:
ROBERT ANSLEY, CLERK
United States District Court
District of North Dakota
By _____
                    Deputy Clerk

1  WESTINGHOUSE ELECTRIC
   CORPORATION);                                      )
2                                                     )
   **CHICAGO PNEUMATIC TOOL**                         )
3  **COMPANY, LLC**, a Delaware Corporation;          )
4                                                     )
   **C.L. LINFOOT CO.**, a Minnesota Corporation;     )
5                                                     )
   **CLIFF MINNESOTA MINING COMPANY**                 )
6  (a subsidiary of CLIFFS NATURAL                    )
7  RESOURCES, INC.), an Ohio Corporation;             )
                                                      )
8  **CLIFFS NATURAL RESOURCES, INC.**                 )
   (formerly CLEVELAND-CLIFFS, INC. and its           )
9  subsidiary, CLIFFS MINNESOTA MINERALS),            )
10 an Ohio Corporation;                               )
                                                      )
11 **CRANE CO.**, a Delaware Corporation;             )
                                                      )
12 **CROWN CORK & SEAL COMPANY, INC.**                )
13 (sued as successor-in-interest to MUNDET           )
   CORK COMPANY), a Pennsylvania                      )
14 Corporation;                                       )
                                                      )
15 **ENGINEERS-ARCHITECTS, P.C.**, a North            )
16 Dakota Corporation;                                )
                                                      )
17 **FISCHBACH & MOORE ELECTRIC**                     )
   **GROUP, LLC**, a Massachusetts Corporation;       )
18                                                    )
19 **FMC CORPORATION** (sued individually and         )
   as successor-in-interest to CHICAGO PUMP           )
20 COMPANY), a Delaware Corporation;                  )
                                                      )
21 **FOSTER WHEELER ENERGY**                          )
22 **CORPORATION**, a Delaware Corporation;           )
                                                      )
23 **GENERAL ELECTRIC COMPANY**, a New                )
   York Corporation;                                  )
24                                                    )
25 **INGERSOLL RAND COMPANY**, a New                  )
   Jersey Corporation;                                )
26                                                    )
27 **JOHNSON LAFFEN GALLOWAY**                        )
   **ARCHITECTS, LTD.**, a North Dakota               )
28 Corporation;                                       )

-2-

1      **LUNSETH PLUMBING AND HEATING**
2      **CO.**, a North Dakota Corporation; )

3      **METROPOLITAN LIFE INSURANCE**
4      **COMPANY**, a New York Corporation; )

5      **NORTHSHORE MINING COMPANY**, a
6      Delaware Corporation; )

7      **PETERSON CONSTRUCTION COMPANY,**
8      **INC.**, a North Dakota Corporation; )

9      **ROBERT GIBB & SONS, INC.**, a North
       Dakota Corporation; )

10
11     **SCHOEN ASSOCIATES, LTD.**, a North
       Dakota Corporation; )

12
13     **UNION CARBIDE CORPORATION**, a New
       York Corporation; )

14     **UNITED TACONITE LLC**, a Delaware
15     Corporation; )

16     **WIDSETH SMITH NOLTING &**
       **ASSOCIATES, INC.**, a Minnesota Corporation; )
17

18             Defendants. )
                                                         )
19

20
      Plaintiff, for her Complaint herein, states and alleges as follows:
21

22                      **I.**

23             **JURISDICTIONAL STATEMENT**

24       Plaintiff MARILYN J. NISBET, individually and on behalf of the estate of JOHN

25 T. NISBET as the surviving spouse of JOHN T. NISBET, deceased, brings this action, as

26 a survival and wrongful death action for personal injury damages proximately caused by

27 JOHN T. NISBET's occupational exposure to asbestos fiber.

28       Plaintiff's Decedent was exposed to various asbestos-containing products while

working as an engineer and performing electrical work and home construction at Minot

1  Air Force Base in Minot, North Dakota, Grand Forks Air Force Base in Grand Forks,

2  North Dakota, and various commercial and residential jobsites in North Dakota and

3  Minnesota. By virtue of Decedent's exposure to asbestos and asbestos-containing

4  products while employed at Minot Air Force Base and Grand Forks Air Force Base, this

5  action is one over which the United States District Court has original federal subject

6  matter jurisdiction because both are federal enclaves. U.S. Const. Art. I, sec. 8, clause 17.

7  The court has subject matter jurisdiction over any claims of exposure at other locations

8  based on supplemental jurisdiction. 28 U.S.C § 1367(a). Asbestos-related diseases are

9  progressive, latent and insidious, and on information and belief, Decedent's exposure to

10  asbestos fiber was a proximate cause of the Plaintiff's Decedent's mesothelioma.

11       As is evidenced by the caption of the instant complaint, which is specifically

12  incorporated herein, the Defendants are North Dakota corporations or foreign

13  corporations amenable to jurisdiction in the courts of North Dakota by virtue of the

14  quality of their respective direct or indirect contacts with the State of North Dakota

15  and/or their conduct of substantial and/or systematic business in North Dakota all of

16  which factors subject said Defendants to the jurisdiction of a North Dakota court pursuant

17  to Rule 4(b) of the North Dakota Rules of Civil Procedure. Each of the Defendants either

18  mined, manufactured, processed, imported, converted, compounded, wholesaled and/or

19  retailed substantial amounts of asbestos and asbestos-containing materials which are or

20  have been sold, distributed and used in North Dakota.

21  **II.**

22  **FIRST CAUSE OF ACTION**

23      1.    At all times relevant to this action, Defendants and predecessors of

24  Defendants for whose actions Defendants are legally responsible (herein collectively

25  referred to as "Defendants") were engaged in the manufacture and/or sale and/or

26  distribution and/or use of asbestos-containing products and/or raw materials.

27      2.    The Defendants, acting through their agents, servants and/or employees

28  caused certain asbestos and asbestos-related materials to be placed in the stream of

-4-

1  interstate commerce with the result that said asbestos and asbestos-related materials came
2  into use by the Plaintiff's Decedent.

3     3.     Plaintiff's Decedent for a period of time worked with, and was exposed
4  to, the asbestos and asbestos-related materials mined, manufactured, processed, imported,
5  converted, compounded, distributed and/or sold by the Defendants.

6     4.     During the course and scope of his employment, Plaintiff's Decedent
7  was exposed to Defendants' asbestos and asbestos-related materials, which exposure
8  directly and proximately caused Plaintiff's Decedent to develop mesothelioma.

9     5.     The illnesses and disabilities of the Plaintiff's Decedent are the direct
10  and proximate result of the negligence and/or recklessness and/or willfulness of the
11  Defendants, jointly and severally, in that said Defendants produced, sold and otherwise
12  put into the stream of interstate commerce, asbestos and asbestos-related materials which
13  the Defendants, and each of them, knew, or in the exercise of ordinary care, should have
14  known, was deleterious, poisonous and highly harmful to Plaintiff's Decedent's body,
15  lungs, respiratory system, skin and health.

16     6.     The illnesses and disabilities of the Plaintiff's Decedent were the direct
17  and proximate result of the negligence, recklessness and willfulness of the Defendants,
18  jointly and severally, in that, even though the Defendants knew, or, in the exercise of
19  ordinary care, should have known, that the asbestos and asbestos-related materials were
20  deleterious, poisonous and greatly harmful to Plaintiff's Decedent's body, lungs,
21  respiratory system, skin and health, the Defendants nonetheless:

22     (a)     Failed to advise the Plaintiff's Decedent of the dangerous characteristics
23           of their asbestos and asbestos-related products;

24     (b)     Failed or omitted to provide the Plaintiff's Decedent with the knowledge
25           as to what would be reasonably safe and sufficient wearing apparel and
26           proper protective equipment and appliance, if, in truth, Plaintiff's
27           Decedent was in any respect able to protect himself from being poisoned

28

and disabled as he was by exposure to such deleterious and harmful asbestos-related materials;

(c)     Failed and omitted to place any warnings or sufficient warnings on asbestos and asbestos-containing materials to warn the handlers thereof of the dangers to health in coming in contact with said asbestos and asbestos-containing materials;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt and enforce a safety plan and a safe method of handling and installing said asbestos and asbestos-containing materials;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as the Plaintiff's Decedent of the dangers to his health in coming in contact with and breathing said asbestos and asbestos-containing materials;

(f)     Did not recommend methods to improve the work environment;

(g)     Did not test their products or develop alternative products;

(h)     Continued to use the known cancer causing product of asbestos.

7.     At all times relevant, it was feasible for Defendants to have warned the Plaintiff's Decedent, tested their products and/or substituted asbestos-free products.

As a direct and proximate result of the negligence and/or recklessness and/or willfulness of the Defendants, the Plaintiff's Decedent was severely damaged as is set forth below.

**III.**

## SECOND CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 7 and the First Cause of Action and incorporates the same herein.

8.     The Defendants, and each of them, impliedly warranted that said asbestos and asbestos-containing products were of good and merchantable quality and fit for their intended use.

-6-

9.      The implied warranty made by the Defendants, and each of them, that the asbestos and asbestos-containing products were of a good and merchantable quality and fit for the particular intended use was breached, and harmful asbestos fiber was released from those products into the atmosphere as the Plaintiff's Decedent carried out his duties, working with asbestos and asbestos-containing materials.

10.     As a direct and proximate result of the Defendants' breach of the implied warranty of good and merchantable quality, and fitness for the particular intended use, the Plaintiff's Decedent developed asbestos-related diseases, which illnesses caused the resulting damages to Plaintiff's Decedent as hereinafter described.

## IV.

## **THIRD CAUSE OF ACTION**

Plaintiff realleges Paragraphs 1 through 10 and the First and Second Causes of Action and incorporates the same herein.

11.     Plaintiff's Decedent, and others in similar positions, worked in close proximity to the asbestos and asbestos-containing materials of the Defendants, and each of them, and Plaintiff's Decedent's presence, as well as that of others in his position, was known, or, in the exercise of reasonable care, should have been known to, and by the Defendants, and each of them.

12.     The Defendants, and each of them, have for many years been aware of medical and scientific data which clearly indicated that asbestos and asbestos-related products were hazardous to the health and safety of the Plaintiff's Decedent and others in his position, yet prompted by pecuniary motives, the Defendants, and each of them, individually and collectively, ignored and failed to act upon said medical and scientific data, conspired to deprive the public, and particularly the users of asbestos products of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether to expose themselves to the asbestos and asbestos-containing products of said Defendants. As a result, the Plaintiff's Decedent was severely damaged as set forth below.

-7-

## V.

### <u>FOURTH CAUSE OF ACTION</u>

Plaintiff realleges Paragraphs 1 through 12 and the First, Second and Third Causes of Action and incorporates the same herein.

13.     That at various times in the past, Defendants had actual knowledge of the dangers to the Plaintiff's Decedent of asbestos exposure, but Defendants nevertheless deliberately, intentionally and purposefully withheld such information from the Plaintiff's Decedent, and others in his position, thus preventing them from having the knowledge with which to take important precautionary measures, such as periodic x-rays and medical examinations, and avoiding further dust exposure, the specifics of Defendants intentional acts being as follows:

(a)     Failing to warn prior users of the need for monitoring due to prior asbestos exposure;

(b)     Failing to issue recall type letters or notices to prior users;

(c)     Frustrating the publication of articles on the health hazards of asbestos in literature;

(d)     Rejecting the advice of other corporate officials to warn of the hazards of their asbestos products; such actions by top management officials having been motivated by the possibility of adverse effects on profits;

(e)     Intentional inadequacy and delay of use of warnings on asbestos products;

(f)     Failing to advise users of asbestos and asbestos-containing products, such as the Plaintiff's Decedent, of medical findings known to Defendants concerning the dangers of asbestos exposure;

(g)     Suppressing the dissemination of information concerning the hazards of asbestos exposure to users of asbestos-containing products, such as the Plaintiff's Decedent.

1        14.     The foregoing deliberate, intentional and purposeful acts of the

2  Defendants were direct and proximate cause of the Plaintiff's Decedent's illnesses and of

3  the damages sustained by the Plaintiff's Decedent as hereinafter described.

4

5                  **VI.**

6            **FIFTH CAUSE OF ACTION**

7        Plaintiff realleges Paragraphs 1 through 14 and the First, Second, Third and

8  Fourth Causes of Action, and incorporates the same herein.

9        15.     That during, before and after Plaintiff's Decedent's exposure to asbestos

10  products manufactured, mined, distributed or sold by Defendants, the Defendants falsely

11  represented facts, including the dangers of asbestos exposure to the Plaintiff's Decedent,

12  in the particulars alleged in the paragraphs above, while Defendants each had actual

13  knowledge of said dangers of asbestos exposure to persons such as the Plaintiff's

14  Decedent. Defendants each knew of the falsity of their representations, and/or made such

15  representations in reckless disregard of their truth or falsity.

16        16.     The foregoing representations were material conditions precedent to

17  Plaintiff's Decedent's continued exposures to asbestos-containing products, and the

18  Defendants each intended that the Plaintiff's Decedent act upon the representations, by

19  continuing Plaintiff's Decedent's exposures to the asbestos products. Plaintiff's Decedent

20  was without knowledge of the falsity of Defendants' representations, and rightfully

21  relied, albeit to Plaintiff's Decedent's ultimate detriment, upon those representations.

22        17.     As a direct and proximate result of Plaintiff's Decedent's reliance upon

23  Defendants' false representations, Plaintiff's Decedent suffered injuries and damages as

24  hereinafter described.

25

26

27

28

**VII.**

## SIXTH CAUSE OF ACTION

Plaintiff reaglleges Paragraphs 1 through 17 and the First, Second, Third, Fourth and Fifth Causes of Action where relevant, and incorporates the same herein by reference.

18.     Plaintiff further alleges at the time the Defendants, and each of them, sold and/or delivered the aforesaid asbestos and asbestos-related products and at the time said products were used by Plaintiff's Decedent, or by others in his jobsite vicinities, in the manner and environment intended, such products were in a defective condition, and were unreasonably dangerous and unfit for their intended uses, in that they were deleterious, poisonous and highly harmful to the Plaintiff's Decedent's body.

19.     The above was the proximate cause of the severe damages sustained by Plaintiff's Decedent as hereinafter set forth.

**VIII.**

## SEVENTH CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 19 and the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action, and incorporates the same herein.

20.     Plaintiff's Decedent worked at premises owned and/or controlled by **ARCELORMITTAL MINORCA MINE, INC.; ARCELORMITTAL USA LLC** f/k/a ARCELORMITTAL USA, INC.; **CLIFF MINNESOTA MINING COMPANY** (a subsidiary of CLIFFS NATURAL RESOURCES, INC.); **CLIFFS NATURAL RESOURCES, INC.** (formerly CLEVELAND-CLIFFS, INC. and its subsidiary, CLIFFS MINNESOTA MINERALS); **NORTHSHORE MINING COMPANY**; and **UNITED TACONITE LLC** (hereinafter "Premise Defendants") at which he was exposed to asbestos products and dust from asbestos products.

21.     While present at premises owned and/or controlled by Premise Defendants, Plaintiff's Decedent was continuously exposed to asbestos and asbestos-

1  containing dust without the provision of appropriate safeguards by Premise Defendants
2  who had the responsibility for such.

3      22.    Plaintiff would further show Decedent's injuries, and diseases were the
4  result of intentional acts and/or omissions and/or negligence, gross negligence and malice
5  in the use of asbestos at Premise Defendants' premises.   Premise Defendants failed to
6  properly remove and/or abate said asbestos at these facilities during the time Plaintiff's
7  Decedent was working there.

8      23.    Plaintiff would show that Premise Defendants were negligent, grossly
9  negligent and malicious, and committed certain intentional acts, all of which were the
10  proximate cause of the disease and injuries resulting in mesothelioma from Decedent's
11  exposure to asbestos.

12      24.    In particular, Plaintiff would show that Premise Defendants
13  demonstrated such an entire want of care as to establish that their acts and omissions
14  were the result of actual conscious indifference to the rights, safety, and welfare of the
15  Plaintiff's Decedent, and that such intentional acts and omissions proximately caused his
16  disease and injuries.

17      25.    Specific intentional acts and acts constituting negligence, gross
18  negligence and malice committed by Premise Defendants that proximately caused
19  Plaintiff's Decedent's injuries, and disease include:

20      (a)    Failure to provide safe equipment for Plaintiff's Decedent to use;

21      (b)    Failure to provide adequate safety measures and protection against
22  deadly and life-threatening asbestos dust, all despite Premise
23  Defendants' knowledge of the extreme risk of harm inherent to asbestos
24  exposure;

25      (c)    Failure to adequately warn Plaintiff's Decedent of the inherent dangers
26  of asbestos contamination;

27      (d)    Failure to maintain the ambient and environmental conditions of the
28  premises in proper and safe condition;

-11-

(e)     Failure to follow and adhere to various states and U.S. Government statutes, regulations and guidelines pertaining to asbestos and the exposure to asbestos of individuals. Such failure constituted negligence per se at a minimum.

26.     Plaintiff would further show that Premise Defendants intentionally, knowingly, and/or due to negligence, gross negligence and malice, failed to ensure that individuals such as Plaintiff's Decedent was protected from the inhalation of asbestos and asbestos fibers. Such actions proximately caused Plaintiff's Decedent's injuries and illness.

27.     Additionally, specific actions or omissions on the part of Premise Defendants that proximately caused Plaintiff's Decedent's injuries and illness were:

(a)     Attempting to remove asbestos dust in Plaintiff's Decedent's workplace without taking adequate precautions for the protection of workers in the vicinity and/or in the premises generally;

(b)     Failing to provide proper protective gear for individuals exposed to asbestos;

(c)     Failing to provide adequate ventilation to ensure that individuals in the vicinity were not exposed to asbestos;

(d)     Failing to provide a proper and safe method for the use of asbestos and asbestos fibers;

(e)     Failing to adhere to industry safe standards and other established measures to protect workers from harm;

(f)     Failing to adequately warn of the extreme risk of danger of inherent to asbestos exposure.

28.     Premise Defendants demonstrated such an entire want of care as to establish that their acts and omissions alleged above were the result of actual conscious indifference to the rights, safety, and welfare of Plaintiff's Decedent.

## IX.

## EIGHTH CAUSE OF ACTION

Plaintiff realleges Paragraphs 1 through 19 and the First, Second, Third, Fourth, Fifth, and Sixth Causes of Action, and incorporates the same herein.

29.       Defendant Metropolitan Life Insurance Company conspired with its insureds and other asbestos product manufacturers and distributors, to whose products the Plaintiff's Decedent was exposed, including: Johns-Manville Corporation; Raybestos-Manhattan; H.K. Porter, Incorporated; Carey Canada; and the Celotex Corporation; GAF Corporation; Armstrong World Industries; T&N plc; United States Gypsum Company; and A.P. Green Industries, and/or these Companies' predecessors, to suppress and distort information provided to workers, physicians, and the scientific community, about the hazards of asbestos in the following manner:

(a)       In 1926, Metropolitan Life Insurance Company founded an industrial health clinic at McGill University, through which, in 1930, studies of asbestos miners were conducted at Metropolitan Life policyholder companies. Although the McGill group found asbestosis in significant numbers of the group studied, Metropolitan through its agent, Dr. Anthony Lanza, suppressed the publication of these findings, and Dr. Lanza repeatedly wrote in open scientific literature that asbestos mine and mill workers did not get asbestosis.

(b)       In 1932, Metropolitan Life Insurance Company, through its agents Dr. Anthony Lanza and Dr. Fellows, assisted the Johns-Manville Corporation with medical examinations of over 1,000 employees of Johns-Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and therefore was unavailable to scientists studying the issue of asbestos disease. Further collaboration between the conspiring asbestos producers and Metropolitan Life Insurance Company officials continued this trend of international cover-up.

(c)       Beginning in approximately 1934, Johns-Manville Corporation, through its agents, Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos-Manhattan, through its agents, Sumner Simpson and J. Rohrbach, suggested to Dr. Anthony Lanza, Associate Director of

conspirator, Metropolitan Life Insurance Company (insurers of Manville and Raybestos) that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent a material fact about asbestos exposure; that is the seriousness of the disease process asbestosis. This was accomplished through intentional deletion of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively misrepresented asbestos as a disease process less serious than it actually is and was known to be then. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. The conspirators were motivated, in part, to effectuate this fraudulent misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville and Raybestos.

(d)   Metropolitan Life Insurance, through its agent, Dr. Anthony Lanza, was a central figure in the formation of the Industrial Hygiene Foundation in 1935. This foundation performed confidential industrial hygiene and medical surveys for the Asbestos Textile Institute (ATI) in 1947, and for other industrial organizations, including the Quebec Asbestos Mining Association (QAMA), failing to disclose, and/or deleting from reports material data on the effects of asbestos exposure in the prevalence of lung cancer and asbestos exposed persons.

(e)   In 1936, defendant Metropolitan Life Insurance Company was involved with conspirators American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation, Johns-Manville Corporation, Keasby & Mattison Company (then an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company), Union Asbestos and Rubber Company and United States Gypsum Company, entered into an agreement with the Saranac Laboratories. Under this agreement, these conspirators acquired the power to decide what information Saranac Laboratories could publish about asbestos disease and control in what form such publications were to occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to suppress material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

(f)   On November 11, 1948, these conspirators and their representatives of the following conspirators met at the headquarters of Johns-Manville Corporation: American Brake Block Division of American Brake and Shoe Foundry, Gatke Corporation, Keasby & Mattison Company (then

-14-

an alter-ego to conspirator Turner & Newall), Raybestos-Manhattan, Inc., Thermoid Company (whose assets and liabilities were later purchased by H.K. Porter Company), Union Asbestos and Rubber Company and United States Gypsum Company. U.S. Gypsum did not send a representative to the meeting, but instead authorized Vandiver Brown of Johns-Manville to represent its interest at the meeting and to take action on its behalf.

(g)   At this November 11, 1948 meeting, these conspirators and their representatives decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with critical view of the then-existing standards of dust exposure for asbestos and asbestos products.

(h)   At this meeting, these conspirators intentionally and affirmatively determined that Dr. Gardner's work should be edited to specifically delete material facts about the cancer-causing propensity of asbestos and the health effects of asbestos on humans and the critique of the dust standards and then published same in the medical literature as edited by Dr. Vorwald. These Defendants thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and the class of persons exposed to asbestos, including the Plaintiff's Decedent.

(i)   As a direct result of influence exerted by the above-described conspirators, Dr. Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks. The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to university libraries, government officials, agencies and others.

(j)   Such action constituted a material affirmative misrepresentation of the total contest of material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

(k)   All conspirators identified above approved and ratified and furthered the previous conspiratorial acts of conspirators Metropolitan Life Insurance, Johns-Manville and Raybestos Manhattan, and all alleged co-conspirators during the dates and circumstances alleged above acted as agents and conspirators for the other conspirators.

1    30.    The acts of Defendant conspirator Metropolitan Life Insurance
2    Company, as described above, constituted fraudulent misrepresentation which
3    proximately caused injury to the Plaintiff's Decedent in the following manner.

4    (a)    The material published or caused to published by the conspirators was
5           false and incomplete in that the conspirators knowingly and deliberately
6           deleted references to the known health hazards of asbestos and asbestos-
7           related products.

8    (b)    Conspirators individually, as members of a conspiracy, and as agents of
9           other co-conspirators, intended that the publication of false and
10          misleading reports and/or the nondisclosure of documented reports of
11          the health hazards of asbestos:

12          (1)    maintain a favorable atmosphere for the continued sale and
13                 distribution of asbestos and asbestos-related products;

14          (2)    assist in the continued pecuniary gain of the conspirators through
15                 the sale of their products;

16          (3)    influence in the conspirators' favor proposed legislation to
17                 regulate and foster asbestos exposure; and,

18          (4)    to provide a defense in lawsuits brought for injuries resulting
                   from asbestos disease.

19   (c)    Plaintiff's Decedent reasonably relied upon the published medical and
20          scientific date documenting the purported safety of asbestos and
21          asbestos-related products, and the absence of published medical and
22          scientific reports on the hazards of asbestos and asbestos-related
23          products to continue his exposure to asbestos because he thus believed
24          asbestos to be safe.

25   (d)    Defendant Metropolitan Life Insurance Company, individually, as a
26          member of a conspiracy, and as an agent of other co-conspirators,
27          intended that Plaintiff's Decedent rely upon the published reports
28          regarding the safety of asbestos and asbestos-related products and upon

-16-

1
2
3

the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products, to continue his exposure to those products.

4
5
6
7
8
9
10

(e) Conspirators individually, as members of a conspiracy, and as agents of other co-conspirators are in a position of superior knowledge regarding the health hazards of asbestos and therefore Plaintiff's Decedent had a right to rely on the published reports commissioned by the conspirators regarding the health hazards of asbestos and the absence of published medical and scientific data regarding the hazards of asbestos and asbestos-related products.

11
12

31. Plaintiff's Decedent suffered damages as hereinafter set forth, as a direct and proximate cause of the acts alleged herein.

13

## X.

14

## NINTH CAUSE OF ACTION

15
16

Plaintiff realleges Paragraphs 1 through 19 and the First, Second, Third, Fourth, Fifth and Sixth Causes of Action and incorporates the same herein by reference.

17
18
19
20
21

32. Plaintiff further alleges, alternatively, that she may not be able to identify some or all of the specific manufacturers of the various products containing asbestos to which Plaintiff's Decedent was exposed, for the reason that there were a number of producers of the asbestos-containing products from which Plaintiff's Decedent ingested asbestos fibers during his employments.

22
23
24
25
26
27
28

33. There being a substantial period of time between the point of initial exposure, and the point of manifestation, of the asbestos-related diseases suffered by the Plaintiff's Decedent, it is now a difficult or impossible task to determine which particular exposures to asbestos dust are responsible for causing Plaintiff's Decedent's diseases, as such diseases sustained by the Plaintiff's Decedent were caused by his exposures to the fungible product of asbestos mined, distributed, manufactured, wholesaled, processed, imported, converted, compounded and/or retailed by the named Defendants.

-17-

34. Further, the named Defendants are sufficient in number so as to represent a substantial share of the market, such that it is probable that the culpable party or parties which produced the asbestos-containing products to which the Plaintiff's Decedent was exposed, and which exposure proximately caused his asbestos-related illnesses, are included among the above-named Defendants.

35. The above named Defendants, acting together and in concert, created, promoted and adhered to an industry-wide standard of safety in the manufacture, design, selection, assembly, marketing, distribution, sale, delivery and promotion of asbestos-containing products including, but not limited to, raw and processed asbestos fiber, with such industry-wide safety standards being utterly ineffective and inadequate.

36. The Plaintiff's Decedent's injuries and damages complained of herein were directly and proximately caused by the Plaintiff's Decedent's exposures to asbestos-containing products produced and promoted by the Defendants under, and in adherence to, said ineffective and inadequate industry-wide standards.

37. In light of the foregoing, the Defendants are jointly and severally liable to the Plaintiff herein.

    (a) In the alternative, Defendants herein represent a substantial share of the asbestos-containing product market in the areas within which the Plaintiff's Decedent was hired, employed and in the areas within which Plaintiff's Decedent was exposed to asbestos products.

    (b) Defendants manufactured, designed, selected, assembled, marketed, distributed, sold, supplied, delivered and promoted asbestos-containing products of the kind and nature to which the Plaintiff's Decedent was exposed during the period of his employments as described herein.

38. Therefore, Defendants are liable jointly and severally for the injuries and damages sustained by the Plaintiff's Decedent, which injuries were directly and proximately caused by Plaintiff's Decedent's exposures to asbestos-containing products produced and promoted by the Defendants, under, and in adherence to, said insufficient

-18-

1   and inadequate industry-wide standards based on the several Defendants' respective pro-

2   rated market shares within the market described herein.

3       39.    The Plaintiff further alleges that the Defendants, and each of them,

4   should be found jointly and severally liable for Plaintiff's Decedent's damages by reason

5   of these Defendants' actions and inactions, including actions and inactions resulting from

6   conspiratorial and concertive conduct on the part of said Defendants, as alleged herein.

7   The Defendants, by virtue of their collective nondisclosure of essential information

8   regarding the dangers of asbestos, effectively prevented the Plaintiff's Decedent from

9   appreciating the asbestos health dangers involved, and in the Plaintiff being able to

10  personally identify those specific miners, manufacturers, sellers and/or distributors of the

11  particular products which caused the asbestos-related diseases from which the Plaintiff's

12  Decedent suffered.

13      40.    The Plaintiff, as stated herein, specifically alleges joint and several

14  liability on the part of the named Defendants on the basis of the so-called "market share"

15  and/or "enterprise" theories of liability, as these theories have been adopted and applied

16  in reported decisional law; and, alternatively and consequently, that said Defendants are

17  also liable for the Plaintiff's Decedent's injuries and damages on the basis of the theory

18  of alternative liability.

19  **DAMAGES AND COMPENSATORY RELIEF SOUGHT**

20      41.    As a result of his development of mesothelioma, the Plaintiff's Decedent

21  suffered and sustained serious injuries and ultimately death.

22      42.    The Plaintiff's Decedent further suffered prior to his death, great pain,

23  debilitation, anxiety and mental anguish, as a direct result of the aforesaid injuries.

24      43.    The Plaintiff's Decedent's injuries and illnesses were permanent in

25  nature, and that Plaintiff's Decedent suffered same from the time of the onset of these

26  injuries and diseases for the remainder of his life, that his enjoyment of life was greatly

27  impaired and, further, that his expected life span was greatly shortened.

28

44.     Plaintiff's Decedent also was forced to incur substantial medical expenses attendant to his serious asbestos illnesses.

WHEREFORE, Plaintiff hereby demands judgment, joint and several, against the Defendants for damages in an amount greater than Seventy Five Thousand Dollars ($75,000.00), excluding interests and costs, along with an award of costs attendant to the bringing of this action.

Dated this 25 day of July, 2012.

LARSON LAW FIRM, P.C.

Mark Larson (ND Id No.: 03588)
1020 North Broadway
Minot, ND 58703
(701) 214-4510 (phone)  839-1777
(701) 839-5350 (fax)
larslaw@srt.com

SIMON GREENSTONE
PANATIER BARTLETT PC

Benjamin D. Braly (ID#24047574)
*Admitted Pro Hac Vice / Pending*
3232 McKinney Avenue, Suite 610
Dallas, TX  75204
214-276-7680
214-276-7699 Fax
bbraly@sgpblaw.com