UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH A. ARDOIN, JR.

CIVIL ACTION

VERSUS

NUMBER:

ANCO INSULATIONS, INC.,
DSM COPOLYMER, INC., THE ETHYL
CORPORATION, EXXON MOBIL
CORPORATION, OWENS-ILLINOIS, INC.,
UNIROYAL, INC., EAGLE, INC., THE MCCARTY
CORPORATION, COMMERCIAL UNION INS.
CO., NATIONAL UNION FIRE INS. CO. OF PITTSBURG,
PA, LEXINGTON INSURANCE COMPANY, ROYAL
INDEMNITY COMPANY, TRAVELERS INDEMNITY
COMPANY, NEWARK INS. CO., WESTCHESTER FIRE
INS. CO., ZURICH INS. CO., LIBERTY MUTUAL INS.
CO., BITUMINOUS INS. CO., TRAVELERS INS. CO.,
RILEY POWER, INC., UNION CARBIDE CORP., GENERAL
REFACTORIES CO., ZURN INDUSTRIES, LLC, AQUA-CHEM,
INC., CRANE CO., INGERSOLL-RAND COMPANY, DANA
CORPORATION, CEERTAINTEED CORPORATION, GABLER
INSULATIONS, INC., SEVILLE, INC., TURNER INDUSTRIES
GROUP, LLC, SHELL OIL COMPANY, SHELL CHEMICAL, LP,
GEORGIA-PACIFIC, LLC, ENTERGY GULF STATES
LOUISIANA, LLC, BASF CORPORATION, FORT JAMES CORPORATION,
GEORGIA PACIFIC CONSUMER PRODUCTS, LP, MONOCHEM, INC.,
THE TEXAS COMPANY, UNIROYAL, INC.

JUDGE:

MAGISTRATE JUDGE:

## **NOTICE OF REMOVAL**

1.

Defendant, DSM Copolymer, Inc. ("DSM"), hereby removes this civil action from

the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, to the United States

District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. §§1441,

1442(a) and 1446.

1821957_1.DOC

2.

Plaintiff's Petition for Damages ("the Petition"), which names DSM as a defendant in the matter entitled "*Joseph A. Ardoin, Jr. v. Anco Insulations, Inc., et al*," was filed in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, on February 11, 2010.  A copy of the Petition is attached, *in globo*, as Exhibit "A" along with true and correct copies of all process, pleadings and orders served upon DSM, as required by 28 U.S.C. §1446(a).

3.

DSM was served with the Petition through its agent for service of process on March 3, 2010.   This notice of removal has been filed within thirty (30) days after receipt by DSM, through service of a copy of a pleading, motion, order or other paper from which it may first be ascertained that the cause is one which is or has become removable, as allowed by 28 U.S.C. §1446(b).  DSM is not required to notify and obtain the consent of any other defendant in this action in order to remove the action as a whole under §1442(a).  Ely Valley Mine, Inc. v. Hartford Acc. And Indem. Co., 644 F.2d 1310, 1315 (9th Cir. 1981); Fowler v. Southern Bell Tel. & Tel. Co., 343 F.2d 150 (5th Cir. 1965); Allmann v. Hanley, 302 F.2d 559 (5th Cir. 1962).

4.

Removal is proper under 28 U.S.C. §1442(a).  See, this Court's August 5, 1998 Ruling in LaLonde v. Delta Field Erection, et al., Civil Action No. 96-3244-B-M3, attached hereto as Exhibit "B"; and this Court's June 14, 2002 "Magistrate Judge's Report" and the District Judge's "Ruling and Order" dated July 18, 2002, affirming the

Magistrate Judge's Ruling in <u>Barbara Catania, et al v. ACands, Inc.</u>, Civil Action No. 02-368-D-1, attached hereto as Exhibit "C." This suit involves a controversy concerning acts undertaken by a federal officer or someone acting under him, and involves a property holder whose title is derived from such United States officers. Plaintiff asserts claims arising out of alleged exposure to asbestos-containing products while working at DSM's premises during periods when the plant was owned by the United States government, but operated by DSM under the authority and direction of federal officers acting in their official capacities to direct the construction and operation of the plant, as well as during periods of ownership by DSM, but under continuing governmental control.

Federal officer removal jurisdiction is set forth in 28 U.S.C. §1442, pertinent provisions of which are:

§1442. Federal Officer Sued or Prosecuted

(a)    a civil action . . . commenced in a state court against any of the following persons may be removed by them to the District Court of The United States for the district and division embracing the place wherein it is pending:

(1)    any officer of The United States or any agency thereof, or person acting under him, for any act under color of such office . . .

(2)    a property holder whose title is derived from any such officer . . .

5.

Plaintiff alleges that he "recently" discovered he has an asbestos-related lung cancer. See Plaintiff's petition, paragraphs 14 and 15.

6.

DSM is sued for negligence and/or and premises liability.    (Plaintiffs' Petition, paragraphs 44-45).

7.

Plaintiff specifically alleges exposure at DSM facilities.  Exhibit A to the petition sets forth plaintiff's work history occurring during the following periods of time.

| | |
|---|---|
| 1/1/1950 – 1/1/1954 | 1/1/1964 – 1/1965 |
| 1/1/1953 – 1/1/1953 | 1/1/1967 – 1/1/1969 |
| 1/1/1960 – 1/1/1964 | 1/1/1970 – 1/1/1974 |

8.

During a significant part of the alleged period of exposure, DSM operated under the control and supervision of federal officers of the United States acting under color of such office.

9.

The DSM facility was constructed and acquired in October and November of 1942 by agents of the United States government as part of the World War II effort to establish synthetic rubber production.  The design and construction of the plant was accomplished under the auspices of the Defense Plant Corporation, an instrumentality of the United States Government created on August 22, 1940 under Section 5(d) of the Reconstruction Finance Corporation Act (Public Law 2, 72nd Congress, 47 Stat. 5) by the Reconstruction Finance Corporation, itself an instrumentality of the United States Government created on January 22, 1932 under the same act.

1821957_1.DOC

officer oversight for a ten-year period following the purchase, and which gave the government the unconditional right to possession and use of the plant during that ten-year period. Thus, DSM continued under the authority and control of an officer of the United States Government until 1965, which encompasses the majority of the time period during which plaintiff alleges that she was exposed to asbestos-containing products at DSM's facility.

13.

DSM may raise and rely on the government contractor defense as set forth by the United States Supreme Court in Boyle v. United Technologies Corporation, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed. 2d 442 (1988) and Yearsley v. W.A. Ross Construction Co., 309 U.S. 19, 60 S.Ct. 413, 84 L.Ed. 554 (1940). DSM also intends to raise and rely on other defenses and immunities available under the Defense Protection Act of 1950, 50 U.S.C. §2061, et seq., and its statutory predecessor, e.g., the Second War Powers Act, Ch. 199 Stat. 176 (1942), and any other federal act relating to the design, construction, and operation, and/or maintenance of DSM's premises.

14.

DSM has met the requirements of removal and qualities as a person acting under the authority of a federal officer as set forth in 28 U.S.C. §§1442 and 1442(a)(1) and/or a property holder whose title is derived from such officer as set forth in 28 U.S.C. §1442(a)(2).

15.

Contemporaneously with the filing of this Notice of Removal in this Court, DSM will promptly give written notice to all adverse parties by mail, return receipt requested, and will file a copy of this notice of removal with the Clerk of Court, in East Baton Rouge Parish, Louisiana.

16.

Plaintiff's Petition amply discloses the required nexus between the claimed injuries and the operation of DSM's facility which allegedly utilized asbestos-containing materials. The  facility was built by an agency of the United States government. For many of the years that plaintiff was allegedly exposed to asbestos-containing products, the DSM facility was operated by DSM under the control and supervision of an officer of the United States Government. Further, DSM derived its title to the premises from the United States Government.

THEREFORE, DSM removes this action to the United States District Court for the Middle District of Louisiana.

Respectfully submitted:

/s/ David K. Nelson
David K. Nelson (#17075) T.A.
Gregory M. Anding (#23622)
Allison N. Benoit (#29087)
KEAN, MILLER, HAWTHORNE, D'ARMOND,
McCOWAN & JARMAN, L.L.P.
Post Office Box 3513
Baton Rouge, LA  70821
Telephone:  (225) 387-0999
david.nelson@keanmiller.com
*Attorneys for DSM Copolymer, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on _Mar 9_, 2010, a copy of the foregoing Notice of

Removal was filed electronically with the Clerk of Court using the CM/ECF system.  I

certify that I have mailed by United States Postal Service this filing to:

> J. Burton LeBlanc, IV
> Christopher C. Colley
> Jo Ann Lea
> Jason K. Placke
> Baron & Budd, PC
> 9015 Bluebonnet Blvd.
> Baton Rouge, LA 70810

Respectfully Submitted:

/s/ David K. Nelson
David K. Nelson, #17075, T.A.
KEAN, MILLER, HAWTHORNE, D'ARMOND,
McCOWAN & JARMAN, L.L.P.
One American Place, 22nd Floor
P. O. Box 3513
Baton Rouge, LA  70821
Telephone: (225) 387-0999
allison.benoit@keanmiller.com
**Attorneys for DSM Copolymer, Inc.**

8

## UNITED STATES DISTRICT COURT

## CIVIL COVER SHEET

JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I.(a) PLAINTIFFS. JOSEPH A. ARDOIN, JR. | DEFENDANTS DSM COPOLYMER, INC. |
|---|---|
| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF (EXCEPT IN U.S. PLAINTIFF CASES)   Ascension Parish, LA | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Delaware<br><br>NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |
| (c)   Attorneys (FIRM NAME, ADDRESS AND TELEPHONE NUMBER)<br><br>J. Burton LeBlanc    Christopher Colley<br>Jo Ann Lea    Jason K. Placke<br><br>BARON & BUDD, P.C.    BARON & BUDD, P.C.<br>The Centrum    9015 Bluebonnet Blvd.<br>3102 Oak Lawn Avenue, Suite 1100    Baton Rouge, LA  70910<br>Dallas, TX  75219 | ATTORNEYS (IF KNOWN)<br><br>David K. Nelson<br>Gregory M. Anding<br>Allison N. Benoit<br><br>KEAN MILLER, et al,<br>P. O. Box 3513,<br>Baton Rouge, LA 70821-3513<br>(225) 387-0999 |

| II.  BASIS OF JURISDICTION   (PLACE AN "x" IN ONE BOX ONLY) | III.  CITIZENSHIP OF PRINCIPAL PARTIES   (PLACE AN "x" IN ONE BOX FOR PLAINTIFF (For Diversity Cases Only)   AND ONE BOX FOR DEFENDANT) |
|---|---|

| | | | | | | PTF | DEF | | | PTF | DEF |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. | U.S. Government Plaintiff | 3. | FEDERAL QUESTION (U.S. GOVERNMENT NOT A PARTY) | | Citizen of This State | 1 | 1 | Incorporated or Principal Place of Business in this State | | 4 | 4 |
| 2. | U.S. GOVERNMENT Defendant | 4. | DIVERSITY (Indicate Citizenship of Parties in Item 11) | | Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | | 5 | 5 |
| | | XXXX 5. | 28 U.S.C. 1442(a) | | Citizen or Subject of Foreign Country | 3 | 3 | Foreign Nation | | 6 | 6 |

| IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY) |
|---|

| 1. | Original Proceeding | X 2. | Removed from State Court | 3. | Remanded from Appellate Court | 4. | Reinstated or Reopened | 5. | Transferred from Another District (specify) | 6. | Multidistrict Litigation | 7. | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|---|---|---|---|---|---|---|

| V.   NATURE OF SUIT   (PLACE AN "X" IN ONE BOX ONLY) | | | | |
|---|---|---|---|---|
| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
| 110  Insurance<br>120  Marine<br>130  Miller Act<br>140  Negotiable Instrument<br>150  Recovery of Overpayment & Enforcement of Judgment<br>151  Medicare Act<br>152  Recovery of Defaulted Student Loans (Excl. Veterans)<br>153  Recovery of Overpayment of Veteran Benefits<br>160  Stockholders Suits<br>190  Other Contract<br>195  Contract Product Liability<br><br>REAL PROPERTY<br>210  Land Condemnation<br>220  Foreclosure<br>230  Rent Lease & Ejectment<br>240  Torts to Land<br>245  Tort Product Liability<br>250  All Other Real Property | PERSONAL INJURY<br>310  Airplane<br>315  Airplane Product Liability<br>320  Assault, Libel & Slander<br>330  Federal Employers Liability<br>340  Marine<br>345  Marine Product Liability<br>350  Motor Vehicle<br>355  Motor Vehicle Product Liability<br>XXX 360  Other Personal Injury<br><br>CIVIL RIGHTS<br>441  Voting<br>442  Employment<br>443  Housing/ Accommodations<br>444  Welfare<br>440  Other Civil Rights | PERSONAL INJURY<br>362  Personal Injury — Medical Malpractice<br>365  Personal Injury — Product Liability<br>368  Asbestos Personal Injury Product Liability<br><br>PERSONAL PROPERTY<br>370  Other Fraud<br>371  Truth in Lending<br>380  Other Personal Property Damage<br>385  Property Damage Product Liability<br><br>PRISONER PETITIONS<br>510  Motions to Vacate Sentence HABEAS CORPUS:<br>530  General<br>535  Death Penalty<br>540  Mandamus & Other<br>550  Civil Rights<br>555  Prison Condition | 610  Agriculture<br>620  Other Food & Drug<br>625  Drug Related Seizure of Property 21 USC 881<br>630  Liquor Laws<br>640  R.R. & Truck<br>650  Airline Regs.<br>660  Occupational Safety/Health<br>690  Other<br><br>LABOR<br>710  Fair Labor Standards Act<br>720  Labor/Mgmt. Relations<br>730  Labor/Mgmt. Reporting & Disclosure Act<br>740  Railway Labor Act<br>790  Other Labor Litigation<br>791  Empl. Ret. Inc. Security Act | 422  Appeal 28 USC 158<br>423  Withdrawal 28 USC 157<br><br>PROPERTY RIGHTS<br>820  Copyrights<br>830  Patent<br>840  Trademark<br><br>SOCIAL SECURITY<br>861  hia (1395n)<br>862  Black Lung (923)<br>863  DIWC/DIWW (405(g))<br>864  SSID (Title XVI<br>865  RSI (405(g))<br><br>FEDERAL TAX SUITS<br>870  Taxes (U.S. Plaintiff or Defendant)<br>871  IRS — Third Party 26 USC 7609 | 400  State Reapportionment<br>410  Antitrust<br>430  Banks and Banking<br>450  Commerce/ICC Rates/etc.<br>460  Deportation<br>470  Racketeer Influence and Corrupt Organizations<br>810  Selective Service<br>850  Securities/Commodities/Exchange<br>875  Customer Challenge 12 USC 3410<br>891  Agriculture Acts<br>892  Economic Stabilization Act<br>893  Environmental Matters<br>894  Energy Allocation Act<br>895  Freedom of Information Act<br>900  Appeal of Fee Determination Under Equal Access to Justice<br>950  Constitutionality of State Statutes<br>990  Other Statutory Actions |

**VI. CAUSE OF ACTION**   (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 U. S. C. 1442(a)(1) and 1442(a)(2).  This suit involves a controversy concerning acts undertaken by a federal officer or someone acting under him and involves property holder whose title is derived from such United States officers.

| VII. REQUESTED IN COMPLAINT: | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ Unspecified | CHECK YES only if demanded in complaint JURY DEMAND:    Yes    No XXX |
|---|---|---|---|

| VIII. RELATED CASE(S) (See instructions): | | | |
|---|---|---|---|
| IF ANY | JUDGE _____ | | DOCKET NUMBER _____ |

| DATE<br><br>3-9-2010 | SIGNATURE OF ATTORNEY OF RECORD<br><br>D. K. Nls |
|---|---|

For Office Use Only

ATTACHMENT E

| RECEIPT #_____ | AMOUNT _____ | APPLYING IFP _____ | JUDGE _____ | MAG. JUDGE _____ |
|---|---|---|---|---|

**ATTACHMENT A**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH A. ARDOIN, JR.                                    CIVIL ACTION

VERSUS                                                           NUMBER:

ANCO INSULATIONS, INC.,
DSM COPOLYMER, INC., THE ETHYL                JUDGE:
CORPORATION, EXXON MOBIL
CORPORATION, OWENS-ILLINOIS, INC.,           MAGISTRATE JUDGE:
UNIROYAL, INC., EAGLE, INC., THE MCCARTY
CORPORATION, COMMERCIAL UNION INS.
CO., NATIONAL UNION FIRE INS. CO. OF PITTSBURG,
PA, LEXINGTON INSURANCE COMPANY, ROYAL
INDEMNITY COMPANY, TRAVELERS INDEMNITY
COMPANY, NEWARK INS. CO., WESTCHESTER FIRE
INS. CO., ZURICH INS. CO., LIBERTY MUTUAL INS.
CO., BITUMINOUS INS. CO., TRAVELERS INS. CO.,
RILEY POWER, INC., UNION CARBIDE CORP., GENERAL
REFACTORIES CO., ZURN INDUSTRIES, LLC, AQUA-CHEM,
INC., CRANE CO., INGERSOLL-RAND COMPANY, DANA
CORPORATION, CEERTAINTEED CORPORATION, GABLER
INSULATIONS, INC., SEVILLE, INC., TURNER INDUSTRIES
GROUP, LLC, SHELL OIL COMPANY, SHELL CHEMICAL, LP,
GEORGIA-PACIFIC, LLC, ENTERGY GULF STATES
LOUISIANA, LLC, BASF CORPORATION, FORT JAMES CORPORATION,
GEORGIA PACIFIC CONSUMER PRODUCTS, LP, MONOCHEM, INC.,
THE TEXAS COMPANY, UNIROYAL, INC.

J. Burton LeBlanc, IV                                    Represent Plaintiff
Christopher C. Colley
Jo Ann Lea
Jason K. Placke
Baron & Budd, PC
9015 Bluebonnet Blvd.
Baton Rouge, LA 70810

David K. Nelson                                          Represent DSM Copolymer, Inc.
Gregory M. Anding

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH A. ARDOIN, JR.                                      CIVIL ACTION

VERSUS                                                     NUMBER:

ANCO INSULATIONS, INC.,
DSM COPOLYMER, INC., THE ETHYL              JUDGE:
CORPORATION, EXXON MOBIL
CORPORATION, OWENS-ILLINOIS, INC.,          MAGISTRATE JUDGE:
UNIROYAL, INC., EAGLE, INC., THE MCCARTY
CORPORATION, COMMERCIAL UNION INS.
CO., NATIONAL UNION FIRE INS. CO. OF PITTSBURG,
PA, LEXINGTON INSURANCE COMPANY, ROYAL
INDEMNITY COMPANY, TRAVELERS INDEMNITY
COMPANY, NEWARK INS. CO., WESTCHESTER FIRE
INS. CO., ZURICH INS. CO., LIBERTY MUTUAL INS.
CO., BITUMINOUS INS. CO., TRAVELERS INS. CO.,
RILEY POWER, INC., UNION CARBIDE CORP., GENERAL
REFACTORIES CO., ZURN INDUSTRIES, LLC, AQUA-CHEM,
INC., CRANE CO., INGERSOLL-RAND COMPANY, DANA
CORPORATION, CEERTAINTEED CORPORATION, GABLER
INSULATIONS, INC., SEVILLE, INC., TURNER INDUSTRIES
GROUP, LLC, SHELL OIL COMPANY, SHELL CHEMICAL, LP,
GEORGIA-PACIFIC, LLC, ENTERGY GULF STATES
LOUISIANA, LLC, BASF CORPORATION, FORT JAMES CORPORATION,
GEORGIA PACIFIC CONSUMER PRODUCTS, LP, MONOCHEM, INC.,
THE TEXAS COMPANY, UNIROYAL, INC.

## **AFFIDAVIT**

STATE OF LOUISIANA

PARISH OF EAST BATON ROUGE

  BEFORE ME, the undersigned authority, personally came and appeared

      DAVID K. NELSON

who, after first being duly sworn, did depose and say:

That all the allegations contained in the Notice of Removal filed herein are true

and correct to the best of his knowledge, information and belief.

_David K. Nelson_

SWORN TO and subscribed before me, Notary, this 9 day of Mar ,
2010.

NOTARY

Allison N. Benoit
Notary Public
State of Louisiana
La. Bar Roll No. 29087
My Commission is for Life.

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH A. ARDOIN, JR.                          CIVIL ACTION

VERSUS                                         NUMBER:

ANCO INSULATIONS, INC.,
DSM COPOLYMER, INC., THE ETHYL                 JUDGE:
CORPORATION, EXXON MOBIL
CORPORATION, OWENS-ILLINOIS, INC.,             MAGISTRATE JUDGE:
UNIROYAL, INC., EAGLE, INC., THE MCCARTY
CORPORATION, COMMERCIAL UNION INS.
CO., NATIONAL UNION FIRE INS. CO. OF PITTSBURG,
PA, LEXINGTON INSURANCE COMPANY, ROYAL
INDEMNITY COMPANY, TRAVELERS INDEMNITY
COMPANY, NEWARK INS. CO., WESTCHESTER FIRE
INS. CO., ZURICH INS. CO., LIBERTY MUTUAL INS.
CO., BITUMINOUS INS. CO., TRAVELERS INS. CO.,
RILEY POWER, INC., UNION CARBIDE CORP., GENERAL
REFACTORIES CO., ZURN INDUSTRIES, LLC, AQUA-CHEM,
INC., CRANE CO., INGERSOLL-RAND COMPANY, DANA
CORPORATION, CEERTAINTEED CORPORATION, GABLER
INSULATIONS, INC., SEVILLE, INC., TURNER INDUSTRIES
GROUP, LLC, SHELL OIL COMPANY, SHELL CHEMICAL, LP,
GEORGIA-PACIFIC, LLC, ENTERGY GULF STATES
LOUISIANA, LLC, BASF CORPORATION, FORT JAMES CORPORATION,
GEORGIA PACIFIC CONSUMER PRODUCTS, LP, MONOCHEM, INC.,
THE TEXAS COMPANY, UNIROYAL, INC.
AND UNIROYAL, INC.

## PROOF OF SERVICE

David K. Nelson, being duly sworn, does depose and say:

That he is the counsel for DSM Copolymer, Inc., defendant herein, and that on the _9_

day of ___March___, 2010, after the Notice of Removal had been filed with the

above court, he mailed a copy of said Notice of Removal and attachments to J. Burton,

1821957_1.DOC

IV, Christopher C. Colley, Jo Ann Lea, and Jason K. Placke, attorneys for plaintiff, by depositing same in the United States Mail, postage prepaid, and properly addressed.

Affiant further deposes and says that he hand delivered a copy of said Notice of Removal to the Clerk of Court for the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, for filing in the matter entitled "*Joseph A. Ardoin, Jr. v. Anco Insulations, Inc., et al,*" No. 587,390, Section 22 on the docket of said Court.

_____

David K. Nelson

SWORN TO and subscribed before me, Notary, this 9 day of Mar , 2010.

NOTARY

Allison N. Benoit
Notary Public
State of Louisiana
La. Bar Roll No. 29087
My Commission is for Life.

14



FedEx Revenue Barcode

FROM: Lisa Uttech (225)922-4490
Baton Rouge Fulfillment Team 1
5615 Corporate Blvd
Suite 400B
Baton Rouge, LA 70808

TO:  **Lloyd J Tabary (225)490-0021**
**DSM Copolymer, Inc.**
**8560 Anselmo Lane**

**Baton Rouge, LA 70810**
Ref: SOP/0412910/516244617/Lisa Uttech

CAD#: 8278102
SHIP DATE: 03MAR10
WEIGHT: 1 LB



DELIVERY ADDRESS (FedEx-EDR)

** 2DAY **

FRI
A2
Deliver by:
05MAR10

TRK #  7912 5841 6119      FORM
                          0201

MSY

70810   -LA-US

# 42 OPLA

CLS101110021

**EXHIBIT**

A

ALL-STATE LEGAL®

 **CT Corporation**

**Service of Process Transmittal**
03/03/2010
CT Log Number 516244617

|||||||||||||||||||||||||||||||||||||||||||||||||||||||||||

**TO:** Lloyd J Tabary, Corporate Counsel
DSM Copolymer, Inc.
8560 Anselmo Lane
Baton Rouge, LA 70810

**RE:** **Process Served in Louisiana**

**FOR:** DSM Copolymer, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Joseph A. Ardoin, Jr., Pltf./Petitioner vs. Anco Insulations, Inc., et al. including DSM Copolymer, Inc., Dfts. |
| **DOCUMENT(S) SERVED:** | Citation, Petition, Exhibits, Service List |
| **COURT/AGENCY:** | 19th Judicial District Court, Parish of East Baton Rouge, LA <br> Case # 587390 |
| **NATURE OF ACTION:** | Asbestos Litigation - Personal Injury |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Baton Rouge, LA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/03/2010 at 09:05 |
| **APPEARANCE OR ANSWER DUE:** | Within 15 days |
| **ATTORNEY(S) / SENDER(S):** | Jason K. Placke <br> Baron & Budd, PC <br> 9015 Bluebonnet Blvd. <br> Baton Rouge, LA 70810 <br> 225-927-5441 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 791258416119 <br> Email Notification, Lloyd J Tabary lloyd.tabery@taberylaw.com |
| **SIGNED:** | C T Corporation System |
| **PER:** | Lisa Uttech |
| **ADDRESS:** | 5615 Corporate Blvd <br> Suite 400B <br> Baton Rouge, LA 70808 |
| **TELEPHONE:** | 225-922-4490 |

Page 1 of  1 / NB

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

2425-10-001475

# CITATION

JOSEPH A. ARDOIN, JR
(Plaintiff)

vs.

ANCO INSULATIONS, INC., ET AL
(Defendant)

NUMBER  C587390 SECTION 22

19th JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

TO:   DSM COPOLYMER, INC.
      THROUGH THEIR AGENT FOR SERVICE OF PROCESS:
      CT CORPORATION

GREETINGS:

    Attached to this citation is a certified copy of the petition*. The petition tells you what you are being sued for.

    You must EITHER do what the petition asks OR, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleading in the office of the Clerk of Court at the Governmental Building, 222 St. Louis Street, Baton Rouge, Louisiana.

    If you do not do what the petition asks, or if you do not file an answer or legal pleading within fifteen (15) days, a judgment may be rendered against you without further notice.

    This citation was issued by the Clerk of Court for East Baton Rouge Parish on 01-MAR-2010.

BENITA GRAY/Deputy Clerk of Court for
Doug Welborn, Clerk of Court

Requesting Attorney: JASON K PLACKE

Also attached are the following documents:
PETITION FOR DAMAGES:W/EXHIBITS

---

SERVICE INFORMATION:

Received on the _____ day of _____, 20____ and on the _____ day of _____, 20_____, served on the above named party as follows:

CT CORPORATION SYSTEMS:  By tendering same to the within named, by handing same to _____.

DUE AND DILIGENT:  After diligent search and inquiry, was unable to find the within named _____ or his domicile, or anyone legally authorized to represent him.

RETURNED:  Parish of East Baton Rouge, this _____ day of _____, 20_____.

SERVICE:      $_____
MILEAGE       $_____
TOTAL:        $_____

RECEIVED

Deputy Sheriff
Parish of East Baton Rouge

CITATION 2425
E.B.R. SHERIFF'S OFFICE

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.: *587390*                         SECTION                         DIVISION "  "

JOSEPH A. ARDOIN, JR.

VERSUS

ANCO INSULATIONS, INC., ET AL

FILED: _____    _____    CONFORM *4042*
                                   DEPUTY CLERK               *513324*
                                                             FEB 1 1 2010

PETITION FOR DAMAGES

Now into Court, through undersigned counsel, comes the petitioner, Joseph A.
Ardoin, Jr., (hereinafter referred to as the Plaintiff), an adult resident of Louisiana
whose name and residence is shown on Exhibit "A" which is attached hereto and
incorporated herein, who files this his Petition for Damages:

    1.    The Plaintiff had substantial exposure to Defendants' asbestos-containing
products at the location(s) described in Exhibit "A".

    2.    The damages sought by Plaintiff, exclusive of interests and costs, exceed
the minimum jurisdictional limits of the Court.

    3.    The Defendants, identified in Exhibit "B," are all either:  (a) foreign
corporations licensed to do and doing business in the state of Louisiana, (b) domestic
corporations licensed to do business and doing business in the state of Louisiana, (c)
individuals who are domiciled in this state, (d) individuals who are not domiciled in
this state, or (e) foreign or alien insurers, that are liable to the Plaintiff for the claims
asserted herein.

    4.    Each Defendant corporation and/or its predecessor-in-interest is, or at
times material hereto, has been engaged in the mining, processing, manufacturing,
installation, removal, maintenance, sale and/or distribution of asbestos asbestos-
containing products, and/or machinery requiring or calling for the use of asbestos
and/or asbestos-containing products (hereinafter collectively referred to as "asbestos-
containing products"), or held themselves out as manufacturers of such products or
were professional vendors of such products.

REC'D C

FAX COPY FILED *2-10-10*    FEB 11
ORIGINAL FILED *2-11-10*

5.      Plaintiff worked with and/or was exposed to asbestos-containing products while working at defendants' premises in the state of Louisiana. Plaintiff's work sites, trades and years of exposure to asbestos include, but are not limited to those identified in Exhibit "A." Plaintiff has been exposed, on numerous occasions, to asbestos and/or asbestos-containing products produced, manufactured, installed, removed, maintained, sold, and/or distributed by Defendants and, in so doing, has inhaled significant quantities of asbestos fibers, and as a result has suffered injuries proximately caused by such exposure.

6.      Plaintiff was exposed to asbestos or asbestos-containing products in occupation(s) including, but not limited to, those set forth in Exhibit "A." The conduct of each Defendant was a substantial contributing factor in causing Plaintiff's injuries, such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

<u>VENUE</u>

7.      The defendants, Anco Insulations, Inc., and The McCarty Corporation are domestic corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites in Exhibit "A." Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

8.      The defendants, Exxon Mobil Corporation and Union Carbide Corporation are foreign corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites in Exhibit "A." Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

9.      Each of the defendants listed in Exhibits "B," contributed with Anco Insulations, Inc., The McCarty Corporation, Exxon Mobil Corporation and Union Carbide Corporation, to Plaintiff's exposure to asbestos at his work sites, including but

not limited to, the exposure sites located on Exhibit "A." Each of these defendants is liable in solido, with Anco Insulations, Inc., The McCarty Corporation, Exxon Mobil Corporation and Union Carbide Corporation, to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

<u>BACKGROUND</u>

10.    During Plaintiff's occupational exposure periods, each of the defendants listed below designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products as set forth below:

| Defendant | Asbestos-Containing Products |
|---|---|
| Aber, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Anco Insulations, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| B & B Engineering and Supply Co. of Louisiana, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| B & B Engineering and Supply Company, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Bituminous Insurance Company | See B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply Company, Inc. |
| Commercial Union Insurance Company | See Eagle, Inc. and The McCarty Corporation |
| Eagle, Inc. (Formerly Eagle Asbestos & Packing Co., Inc.) | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Liberty Mutual Insurance Company | See B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply |

3

| | Company, Inc. |
|---|---|
| The McCarty Corporation | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Newark Insurance Company | See Anco Insulations, Inc. |
| Royal Indemnity Company | See Aber Company, Inc. |
| Travelers Indemnity Company | See Aber Company, Inc., B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply Company, Inc. |
| Travelers Insurance Company | See Aber Company, Inc., B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply Company, Inc. |
| Westchester Fire Insurance Company | See Anco Insulations, Inc. |
| Zurich Insurance Company | See Anco Insulations, Inc. |
| Owens-Illinois, Inc. | Pipe insulation, block insulation and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Union Carbide Corporation | Asbestos fiber and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| National Union Fire Ins. Co. of Pittsburgh, PA | See The McCarty Corporation |
| Lexington Insurance Company | See The McCarty Corporation |
| Crane Co. | Pumps (boiler blow down, feed and condensate return, hydrocarbon and nuclear generation, heat transfer, fluid transfer, fuel transfer, salvage, bilge and ballast, and dewatering), valves, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |

Each of the foregoing asbestos containing products was used at Plaintiff's jobsites listed on Exhibit "A" where Plaintiff was exposed to such asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

11.     When inhaled or otherwise ingested, asbestos causes irreparable and progressive damage that can manifest itself as asbestos-related pleural diseases, such as asbestosis, lung cancer and mesothelioma, pulmonary and bronchogenic carcinomas, gastrointestinal cancers, cardiac diseases, and other diseases and injuries.

12.     Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling.   Instead of

warning the Plaintiff and the general public about these dangers, certain defendants ignored or actively concealed such information, or condoned such concealment, in order to sell asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation. Those defendants who have engaged in fraud, or concealment or conspiracy to defraud or conceal the dangers of asbestos-containing products are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence and strict liability, identifies other forms of misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

13.     In connection with their work at, including but not limited to, Plaintiff's jobsites listed on Exhibit "A" during the exposure period, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos having neither knowledge nor reason to believe that these materials were dangerous.

14.     As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos while working at, including but not limited to, the exposure sites on Exhibit "A." Plaintiff has received injuries, both physically and mentally, including, without limitation, (i) Asbestos-related Lung Cancer (ii) increased susceptibility to one of the foregoing diseases and other illnesses; and (iii) mental anguish associated with the preceding conditions, and with the fear of developing the preceding conditions.

15.     Because of the latency period of the above injuries and other injuries caused by asbestos and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently discovered his injuries, and not more than one year preceding this filing of the initial Petition for Damages.

COUNT ONE

NEGLIGENCE<br>("Defendants" in this count means all Defendants, except for the Premise<br>Defendants, Employer Defendants, and Executive Officer Defendants listed on<br>Exhibits "D" and "E")

16.     The illnesses and disabilities of Plaintiff is a direct and proximate result of

the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold and/or otherwise put into the stream of commerce asbestos or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being.  The Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Plaintiff's illnesses and disabilities:

   (a)   failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos and/or asbestos-containing products;

   (b)   failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any, to protect Plaintiff from being harmed and disabled by exposure to asbestos and/or asbestos-containing products;

   (c)   failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, to warn of the dangers to health of coming into contact with said asbestos or asbestos-containing products and/or machinery;

   (d)   failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling, installing, and/or using or removing asbestos and/or asbestos-containing products;

   (e)   failing to develop and/or use a substitute material to eliminate asbestos fibers in the asbestos-containing products;

   (f)   failing to properly design and manufacture asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

   (g)   failing to properly test asbestos-containing products before they were released for consumer use; and

(h)    failing to recall and/or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products.

## COUNT TWO

### STRICT LIABILITY
("Defendants" in this count means all Defendants, except for the Premise Defendants, Employer Defendants, and Executive Officer Defendants listed on Exhibits "D" and "E")

17.    All of the allegations contained in the previous paragraphs are realleged herein.

18.    Plaintiff was exposed to asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. The defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products were in this defective condition at the time they left the hands of Defendants. Further, said products were unreasonably dangerous per se, unreasonably dangerous due to Defendants' failure to warn, and unreasonably dangerous due to a design defect.

19.    The Defendants are engaged in the business of selling asbestos-containing products, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Plaintiff.

20.    Defendants knew that these asbestos-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, operation, maintenance and/or repair of the asbestos-containing products.

21.    Plaintiffs were unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation.

22.    During the periods that Plaintiff was exposed to the Defendants' asbestos-containing products, these asbestos-containing products were being used in a manner

which was intended and/or reasonably foreseeable by Defendants.

<u>COUNT THREE</u>

STRICT LIABILITY
AND NEGLIGENCE AGAINST THE CONTRACTOR DEFENDANTS

23.     The Defendants contracted with the owners of the jobsites identified on Exhibit "A" to perform certain activities at those jobsites prior to and/or during each Plaintiff's exposure period at each such jobsite.

24.     At times, the Defendants subcontracted with others to perform a portion of the activities that they contracted with the owners of the jobsites identified on Exhibit "A" to perform.

25.     The activities conducted by the Defendants and/or their subcontractors, included, but were not limited to, the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out, and use of asbestos-containing products at, on and/or for the jobsites identified in Exhibit "A."

26.     The foregoing activities resulted in the release of substantial quantities of asbestos dust into the work environment.

27.     Plaintiff was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result of the activities of the Contractor Defendants and their subcontractors identified in Exhibit "C."

28.     The Contractor Defendants negligently performed and/or permitted their subcontractors to negligently perform the foregoing activities in the following non-exclusive particulars:

(a)     By creating a work environment laden with asbestos dust and an unhealthy and unsafe place for Plaintiff to work;

(b)     By failing to provide warnings, or adequate warnings, to Plaintiff of the dangers and risks posed by the asbestos in the atmosphere in which Plaintiff worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazards at the jobsite in particular; and

8

of the hazards created by Defendants' activities;

(c) By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

(d) By failing to apprize Plaintiff of the need for periodic medical examinations as a result of Plaintiff's exposure to asbestos created by Defendants' activities;

(e) By failing to ventilate and/or properly ventilate the areas in which Plaintiff performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

(f) By failing to clean up and/or properly clean up the asbestos dust created by Plaintiff's activities;

(g) By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as Plaintiff, who came into contact with asbestos dust as a result of Plaintiff's activities;

(h) By recklessly concealing from Plaintiff and negligently failing to provide critical medical and safety information to Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products;

(i) By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

(j) By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

(k) By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

(l) By failing to supervise their operations and the operations of their subcontractors;

(m)  By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and co-employees to be exposed to asbestos, without protection, on a daily basis;

(n)  By failing to timely, adequately and safely remove asbestos hazards from the workplace;

(o)  By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

(p)  By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or in the exercise of reasonable diligence should have known, were unreasonably dangerous, or unreasonably dangerous per se;

(q)  By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the their activities;

(r)  By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

(s)  By failing to purchase products and materials that did not contain asbestos;

(t)  By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

(u)  By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

(v)  By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial.

10

29.     The negligent acts outlined above were a substantial contributing factor in Plaintiff's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

30.     The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Plaintiffs' injuries and damages.

31.     Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

32.     Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants were in the care, custody and control of the Contractor Defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Contractor Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

33.     Additionally, when such contractors did not employ Plaintiff, Plaintiff was exposed to the asbestos containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that were in the care, custody and control of the Contractor Defendants and were unreasonably dangerous due to the presence of asbestos.

<u>COUNT FOUR</u>

NEGLIGENCE OF PLAINTIFF'S EMPLOYERS/EMPLOYERS'
EXECUTIVE OFFICERS AND DIRECTORS
(As to Plaintiff's Employers/Employers' Executive Officers
and Directors only. "Defendants" in this
count means these Defendants only, as identified in Exhibit "D")

34.     Plaintiff alleges negligent, grossly negligent, and wanton misconduct on behalf of Plaintiff's employers and employers' executive officers and directors, as identified in Exhibit "D," in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

35.     At various times, Plaintiff was employed by the Defendant

employers/officers/directors and during such time were continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

36.    The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest undertook and assumed the duties and responsibilities owed individually and/or delegated to them for providing Plaintiff with a safe place to work and Defendants wantonly and/or negligently and/or willfully failed to provide Plaintiff a safe place to work.

37.    Plaintiff's employers delegated to the executive officers and directors, named on Exhibit "D," the responsibility to provide Plaintiff with proper supervision, safety instruction, warnings concerning dangers or hazards in the workplace, and generally to provide Plaintiff a safe workplace and to protect Plaintiff's life, health, safety and welfare while employed by the Defendant employers.  Plaintiff alleges that the executive officers and directors had the following responsibilities delegated to him by his employer or actually undertook to perform the following duties:

(a)    inspection, approval and supervision of the work of Plaintiff and his co-employees;

(b)    to see that proper safety rules were adopted, promulgated, and enforced concerning the use of respiratory protection devices;

(c)    to see that Plaintiff and his co-employees performed the duties pertaining to their work in a proper, safe and workmanlike manner;

(d)    to see that Plaintiff and his co-employees used safe and sound principals and practices in their work;

(e)    to make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices;

(f)    to keep abreast of state of the art knowledge as it pertains to the dangers of asbestos inhalation;

(g)    to provide adequate warnings, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order

to prevent Plaintiff from being harmed by exposure to asbestos in the environment which Plaintiff was required to work;

(h)    to make certain that employees, including Plaintiff, were provided a safe working environment free from asbestos dust inhalation;

(i)    to comply with applicable State and Federal regulations regulating workplace exposure to asbestos, including but not limited to those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healey Act and the Occupational Safety and Health Act; and

(j)    to provide Plaintiff with a safe place to work.

38.    Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently performing duties owed individually and/or delegated to them, directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff.   The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)    in failing to provide adequate safety equipment;

(b)    in failing to protect Plaintiff from any asbestos exposure;

(c)    in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)    in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)    in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff's exposure to asbestos dust;

(f)    in failing to properly perform safety inspections of the Plaintiff's work place;

13

(g)     in failing to properly perform engineering services, consulting and

        direction of work involving the installation, removal, maintenance and/or

        disturbance of asbestos at Plaintiff's work sites;

(h)     in failing to comply with applicable State and Federal regulations

        regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of

        asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety

        information to Plaintiff regarding the hazards of asbestos.

39.     The negligence of Plaintiff's employers' executive officers and directors

was a substantial factor and contributed in causing Plaintiff's asbestos-related injuries

and damages.

<u>COUNT FIVE</u>

INTENTIONAL TORT
(As to Plaintiffs' Employers and Employers' Officers and Directors only.
"Defendants" in this count means these Defendants only, as identified in Exhibit
"D")

40.     Defendant employers, officers and directors, identified in Exhibit "D", are

liable for their intentional, willful and wanton failure to disclose to Plaintiff the dangers

associated with exposure to asbestos, the risks associated with working in an

atmosphere contaminated with asbestos and the likely medical effects of such exposure.

41.     Because   of   Plaintiff's   good   faith   reliance   on   Defendants'

misrepresentations, Plaintiff continued to work in areas contaminated with asbestos

and continued to be exposed to asbestos.  As a result, Plaintiff contracted asbestos-

related lung cancer.

42.     Defendant employers committed the following intentional acts which

caused Plaintiff to suffer from asbestos-related diseases:

(a)     Intentionally failing to provide necessary protection to Plaintiff;

(b)     Intentionally failing to provide safety equipment as required by safety

        statutes;

(c)     Intentionally failing to provide clean, respirable air, and proper

ventilation;

(d)    Intentionally failing to provide proper medical monitoring;

(e)    Intentionally failing to monitor the extent and output of asbestos dust into

the workplace;

(f)    Intentionally failing to warn Plaintiff and other workers of the dangers

associated with asbestos and/or asbestos containing products;

(g)    Intentionally inducing the Plaintiff and other workers to work in a

workplace polluted with asbestos and/or asbestos containing products;

and

(h)    Intentionally failing to keep asbestos and/or asbestos containing dust

output into the workplace at safe levels.

43.    As a result of these acts, Defendants knew that it was substantially certain that the Plaintiff would suffer asbestos related diseases including but not limited to asbestosis, asbestos related pleural disease, lung cancer and/or malignant mesothelioma.

<u>COUNT SIX</u>

PREMISES LIABILITY
(As to Premises Liability Defendants only. "Defendants" in this case means these
defendants only, as identified in Exhibit "E")

44.    Plaintiff was exposed to asbestos and asbestos-containing materials while working at the jobsites identified in Exhibit "A". The premise defendants identified in Exhibit "E," at all times relevant to this complaint, have been either the operator and/or the manager and/or the owner and occupier of its respective facilities and in custody of the facilities during the relevant time period.   The facilities were defective in that the asbestos and asbestos-containing materials in the facilities created an unreasonable risk of harm to the Plaintiff and other persons on the premises.   Plaintiff was exposed to asbestos and asbestos-containing materials while he was an invitee at the premise defendants' facilities. The defective condition of the facilities was a proximate cause of the Plaintiff's asbestos-related injuries and damages.

45.    The Premise Defendants are liable to Plaintiff for its failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with

15

exposure to asbestos. The Premise Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees. The Premise Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm. The Premise Defendants' failure to protect Plaintiff from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of Plaintiff's asbestos-related injuries and damages.

<u>COUNT SEVEN</u>

INSURANCE ALLEGATIONS

46.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, that provided coverage for the causes of action asserted by plaintiff against The McCarty Corporation. As such, Commercial Union Insurance Company is liable for the damages alleged in the Original Petition and any supplement against The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, individually, jointly and *in solido*.

47.     Plaintiff avers that Bituminous Insurance Company issued policies of comprehensive general liability insurance to B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst, deceased, that provided coverage for the causes of action asserted by plaintiff against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst. As such, Bituminous Insurance Company is liable for the damages alleged in the Original Petition and any supplement against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst, individually, jointly and *in solido*.

48.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. and its executive officers, Fred Schuber, Jr. and Fred Schuber, IIII, that provided coverage for the causes of action

16

asserted by plaintiff against Eagle, Inc.   As such, Commercial Union Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Eagle, Inc., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III, individually, jointly and *in solido*.

49.   Plaintiff avers that Travelers Indemnity Company and/or Travelers Insurance Company issued policies of comprehensive general liability insurance to B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst, deceased, that provided coverage for the causes of action asserted by plaintiff against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst. As such, Travelers Indemnity Company is liable for the damages alleged in the Original Petition and any supplement against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst, individually, jointly and *in solido.*

50.   Plaintiff avers that Zurich Insurance Company issued policies of comprehensive general liability insurance to Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, that provided coverage for the causes of action asserted by plaintiff against Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson.  As such, Zurich Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Anco Insulations, Inc., and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson, individually, jointly and *in solido.*

51.   Plaintiff avers that Liberty Mutual Insurance Company issued policies of comprehensive general liability insurance to B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst, deceased, that provided coverage for the causes of action asserted by plaintiff against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst. As such, Liberty Mutual Insurance Company is liable for the damages

alleged in the Original Petition and any supplement against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst, individually, jointly and *in solido.*

52.   Plaintiff avers that Newark Insurance Company issued policies of comprehensive general liability insurance to Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, that provided coverage for the causes of action asserted by plaintiff against Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson.  As such, Newark Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Anco Insulations, Inc., and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson, individually, jointly and *in solido.*

53.   Plaintiff avers Royal Indemnity Company as successor in interest to Queens Insurance Company of America and to Royal Insurance Company of America issued policies of comprehensive general liability insurance to Aber Company, Inc. and its executive officers, that provided coverage for the causes of action asserted by plaintiff against Aber Company, Inc. and its executive officers.  As such, Royal Indemnity Company is liable for the damages alleged in the Original Petition and any supplement against Aber Company, Inc. and its executive officers, individually, jointly and *in solido.*

54.   Plaintiff avers Travelers Indemnity Company and/or Travelers Insurance Company issued policies of comprehensive general liability insurance to Aber Company, Inc. and its executive officers, that provided coverage for the causes of action asserted by plaintiff against Aber Company, Inc. and its executive officers.  As such, Travelers Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Aber Company, Inc. and its executive officers, individually, jointly and *in solido.*

55.   Plaintiff avers that Westchester Fire Insurance Company issued policies of comprehensive general liability insurance to Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, that provided

coverage for the causes of action asserted by plaintiff against Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson. As such, Westchester Fire Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Anco Insulations, Inc., and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson, individually, jointly and *in solido*

56.     Plaintiff avers that National Union Fire Ins. Co. of Pittsburgh, PA, issued policies of comprehensive general liability insurance and/or excess insurance coverage to The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, that provided coverage for the causes of action asserted by plaintiff against The McCarty Corporation. As such, National Union Fire Ins. Co. of Pittsburgh, PA, is liable for the damages alleged in the Original Petition and any supplement against The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, individually, jointly and *in solido*.

57.     Plaintiff avers that Lexington Insurance Company issued policies of comprehensive general liability insurance and/or excess insurance coverage to The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, that provided coverage for the causes of action asserted by plaintiff against The McCarty Corporation. As such, Lexington Insurance Company is liable for the damages alleged in the Original Petition and any supplement against The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, individually, jointly and *in solido*.

<u>COUNT EIGHT</u>

JOINT AND SOLIDARY LIABILITY

58.     All of the allegations contained in the previous paragraphs are realleged herein.

59.     Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

60.     The actions of each of the Defendants are a proximate cause of Plaintiff's injuries. As a result, all Defendants are jointly and solidarily liable for the damage caused by their combined actions.

19

## DAMAGES

61.     The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and other related physical conditions of Plaintiff as set forth in Exhibit "A." Plaintiff has been damaged in the following non-exclusive particulars:

(a)     Plaintiff has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetime;

(b)     Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which he now suffers and will continue to suffer in the future;

(c)     Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

(d)     Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

(e)     Plaintiff is subject to an extraordinarily increased likelihood of developing (or the progression and/or recurrence of) cancer of the lungs, mesothelioma and other cancers, all due to said exposure to products and/or machinery manufactured, installed, maintained, sold and/or distributed by the named Defendants;

(f)     Plaintiff will require medical monitoring throughout his lifetime to survey the progression of his asbestos-related lung disease and to aid in the early detection and treatment of any or all of the cancers described above and will be required to pay for such medical monitoring;

20

(g)    Plaintiff has suffered a progressive loss of earning capacity and will continue to suffer a loss of earning capacity and wages throughout his lifetime;

(h)    Plaintiff requires or will require domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing services;

(i)    Prior to the onset of his symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities, and as a result of his illness, Plaintiff has been and will be prevented from engaging in some of said activities which were normal to him prior to developing symptoms from asbestos-related lung disease. Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life.

62.    Plaintiff filed suit within one (1) year of the date of discovering Plaintiff's asbestos-related conditions or the existence of any asbestos-related causes of action.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against the Defendants, and each of them, jointly and severally, for general damages, special damages, for their costs expended herein, for prejudgment interest from the date of Plaintiff's filing of the lawsuit and post judgment interest on the judgment at the rate allowed by law, and for such other and further relief, both at law and in equity, to which Plaintiff may show himself justly entitled.

Respectfully submitted,

**BARON & BUDD, PC**
9015 Bluebonnet Blvd.
Baton Rouge, LA  70810
Tel:    (225) 927-5441
Fax: (225) 927-5449

J. Burton LeBlanc, IV (Bar Roll No. 20491)
Christopher C. Colley (Bar Roll No. 30322)
Jo Ann Lea (Bar Roll No. 28860)
Jason K. Placke (Bar Roll No.30019)

CERTIFIED
TRUE COPY

MAR 2 - 2010

21

<u>EXHIBIT "A"</u>

| | |
|---|---|
| Plaintiff: | Joseph A. Ardoin, Jr. |
| Address: | P.O. Box 2045<br>Prairieville, LA 70769 |
| SSN: | 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 |
| Disease: | Asbestos-related lung cancer |
| Work history: | See attached |

EXHIBIT "A"

**Employer      K Way Maintenance**
Employer Start Date    01/01/1945                      Employer End Date    12/31/1945

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Exxon [Baton Rouge LA] | 01/01/1945 | 12/31/1945 |
| | Occupation    Insulator | |

**Employer      K Way Maintenance**
Employer Start Date    01/01/1945                      Employer End Date    12/31/1948

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Exxon [Baton Rouge LA] | 01/01/1945 | 12/31/1948 |
| | Occupation    Painter | |
| Maryland Tank Farm [Baton Rouge LA] | 01/01/1945 | 12/31/1948 |
| | Occupation    Painter | |
| Maryland Tank Farm [Baton Rouge LA] | 01/01/1945 | 12/31/1948 |
| | Occupation    Painter | |

**Employer      Cannon Sline Inc.**
Employer Start Date    01/01/1950                      Employer End Date    01/01/1954

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Exxon [Baton Rouge LA] | 01/01/1950 | 01/01/1954 |
| | Occupation    Painter | |
| Gulf States Utilities [Plaquemine LA] | 01/01/1950 | 01/01/1954 |
| | Occupation    Painter | |
| Copolymer [] | 01/01/1950 | 01/01/1954 |
| | Occupation    Painter | |
| Kaiser Aluminum [Baton Rouge LA] | 01/01/1950 | 01/01/1954 |
| | Occupation    Painter | |
| Solvay Chemical [] | 01/01/1950 | 01/10/1954 |
| | Occupation    Painter | |

**Employer      Caldwell & McCann**
Employer Start Date    01/01/1953                      Employer End Date    01/01/1953

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Ethyl Corporation [Baton Rouge LA] | 01/01/1953 | 01/01/1953 |
| | Occupation | |

**Employer      M W Kellogg Co**
Employer Start Date    01/01/1953                      Employer End Date    01/01/1953

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Exxon [] | 01/01/1953 | 01/01/1953 |
| | Occupation | |

**Employer      Old Dutch Paint Shop**
Employer Start Date    01/01/1953                      Employer End Date    01/01/1953

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Copolymer [] | 01/01/1953 | 01/01/1953 |
| | Occupation | |

**Employer      W F Asbell Co**
Employer Start Date    01/01/1953                      Employer End Date    01/01/1953

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Exxon [] | 01/01/1953 | 01/01/1953 |
| | Occupation    Painter | |
| Gulf States Utilities [Plaquemine LA] | 01/01/1953 | 01/01/1953 |
| | Occupation    Painter | |

**Employer      W F Asbell Co**
Employer Start Date    01/01/1955                      Employer End Date    01/01/1957

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Exxon [] | 01/01/1955 | 01/01/1957 |
| | Occupation    Painter | |
| Gulf States Utilities [Plaquemine LA] | 01/01/1955 | 01/01/1957 |
| | Occupation    Painter | |
| US Rubber Corporation [] | 01/01/1955 | 01/01/1957 |
| | Occupation    Painter | |

**Employer      Nichols Construction Corporation**
Employer Start Date    01/01/1956                      Employer End Date    01/01/1957

| Site Name | Start Date | End Date |
| --- | --- | --- |
| Borden Chemical [Geismar LA] | 01/01/1956 | 01/01/1957 |
| | Occupation    Painter | |
| Monochem [] | 01/01/1956 | 01/01/1957 |
| | Occupation    Painter | |

EXHIBIT "A"

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Exxon [] | 01/01/1956 | 01/01/1957 | |
| | Occupation | Painter | |

**Employer**    Fluor Constructors International, Inc.
Employer Start Date    01/01/1958    Employer End Date    01/01/1958

| Site Name | Start Date | End Date | |
|---|---|---|---|
| BASF Corporation [Geismar LA] | 01/01/1958 | 01/01/1958 | |
| | Occupation | Painter | |

**Employer**    Bagwell-Neal Inc.
Employer Start Date    01/01/1960    Employer End Date    01/01/1964

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Borden Chemical [Geismar LA] | 01/01/1960 | 01/01/1964 | |
| | Occupation | Painter | |

**Employer**    Bagwell-Neal Inc., Baton Rouge, LA
Employer Start Date    01/01/1960    Employer End Date    01/01/1964

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Kaiser Aluminum [Baton Rouge LA] | 01/01/1960 | 01/01/1960 | |
| | Occupation | Painter | |

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Kaiser Aluminum [Gramercy LA] | 01/01/1960 | 01/01/1964 | |
| | Occupation | Painter | |

**Employer**    Bagwell-Neal, Inc., Baton Rouge, LA
Employer Start Date    01/01/1960    Employer End Date    01/01/1964

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Dow Chemical [Plaquemine LA] | 01/01/1960 | 01/01/1964 | |
| | Occupation | Painter | |

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Copolymer [] | 01/01/1960 | 01/01/1964 | |
| | Occupation | Painter | |

**Employer**    W D Gunnels Company
Employer Start Date    01/01/1962    Employer End Date    01/01/1963

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Exxon [Baton Rouge LA] | 01/01/1962 | 01/01/1963 | |
| | Occupation | Painter | |

**Employer**    Barnard & Burk Industrial Corp.
Employer Start Date    01/01/1962    Employer End Date    01/01/1964

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Monochem [] | 01/01/1962 | 01/01/1964 | |
| | Occupation | Painter | |

**Employer**    Barnard & Burk Industrial Corp.
Employer Start Date    01/01/1962    Employer End Date    01/01/1969

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Borden Chemical [Geismar LA] | 01/01/1962 | 01/01/1969 | |
| | Occupation | Painter | |

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Kaiser Aluminum [Gramercy LA] | 01/01/1962 | 01/01/1969 | |
| | Occupation | Painter | |

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Ormet [Burnside LA] | 01/01/1962 | 01/01/1969 | |
| | Occupation | Painter | |

**Employer**    C S Falco & Co
Employer Start Date    01/01/1964    Employer End Date    01/01/1964

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Kaiser Aluminum [Baton Rouge LA] | 01/01/1964 | 01/01/1964 | |
| | Occupation | Sandblaster | |

**Employer**    Nichols Construction Corporation
Employer Start Date    01/01/1964    Employer End Date    01/01/1965

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Exxon [] | 01/01/1964 | 01/01/1965 | |
| | Occupation | Painter | |

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Dow Chemical [Plaquemine LA] | 01/01/1964 | 01/01/1965 | |
| | Occupation | Insulator | |

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Copolymer Rubber [Addis LA] | 01/01/1964 | 01/01/1965 | |
| | Occupation | Insulator | |

**Employer**    Homer Knost Construction Co
Employer Start Date    01/01/1965    Employer End Date    01/01/1966

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Borden Chemical [Geismar LA] | 01/01/1965 | 01/01/1966 | |
| | Occupation | Painter | |

**Employer**    Gabler Insulation
Employer Start Date    01/01/1966    Employer End Date    01/01/1967

| Site Name | Start Date | End Date | |
|---|---|---|---|
| Texaco [Burnside LA] | 01/01/1966 | 01/01/1967 | |
| | Occupation | Insulator | |

EXHIBIT "A"

**Employer**   Barnard & Burk Industrial Corp.
   Employer Start Date   01/01/1966          Employer End Date   01/01/1969

| Site Name | Start Date | End Date |
|---|---|---|
| Monochem [] | 01/01/1966 | 01/01/1969 |
| | Occupation   Painter | |

**Employer**   C S Falco & Co Inc
   Employer Start Date   01/01/1967          Employer End Date   01/01/1967

| Site Name | Start Date | End Date |
|---|---|---|
| Kaiser Aluminum [Baton Rouge LA] | 01/01/1967 | 01/01/1967 |
| | Occupation   Painter | |

**Employer**   Nichols Construction Corporation
   Employer Start Date   01/01/1967          Employer End Date   01/01/1969

| Site Name | Start Date | End Date |
|---|---|---|
| Exxon [] | 01/01/1967 | 01/01/1969 |
| | Occupation   Painter | |
| Dow Chemical [Plaquemine LA] | 01/01/1967 | 01/01/1969 |
| | Occupation   Insulator | |
| Copolymer Rubber [Addis LA] | 01/01/1967 | 01/01/1969 |
| | Occupation   Insulator | |

**Employer**   Various contractors
   Employer Start Date   01/01/1967          Employer End Date   01/01/1982

| Site Name | Start Date | End Date |
|---|---|---|
| Standard Oil [] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |
| Dow Chemical [Plaquemine LA] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |
| Borden Chemical [Geismar LA] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |
| Georgia Pacific [Plaquemine LA] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |
| Crown Zellerbach [] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |
| Ormet [Burnside LA] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |
| BASF Corporation [Geismar LA] | 01/01/1967 | 01/01/1982 |
| | Occupation   Insulator | |

**Employer**   Process Insulators Inc
   Employer Start Date   01/01/1968          Employer End Date   01/01/1968

| Site Name | Start Date | End Date |
|---|---|---|
| Shell [] | 01/01/1968 | 01/01/1968 |
| | Occupation   Insulator | |

**Employer**   B & B Engineering & Supply Co of Louisiana, Inc.
   Employer Start Date   01/01/1968          Employer End Date   03/01/1968

| Site Name | Start Date | End Date |
|---|---|---|
| BASF Corporation [Geismar LA] | 01/01/1968 | 03/01/1968 |
| | Occupation   Painter | |

**Employer**   ANCO Insulations, Inc.
   Employer Start Date   01/01/1968          Employer End Date   01/01/1982

| Site Name | Start Date | End Date |
|---|---|---|
| BASF Corporation [Geismar LA] | 01/01/1968 | 01/01/1982 |
| | Occupation   Insulator | |

**Employer**   Homer Knost Construction
   Employer Start Date   01/01/1969          Employer End Date   01/01/1970

| Site Name | Start Date | End Date |
|---|---|---|
| Borden Chemical [Geismar LA] | 01/01/1969 | 01/01/1970 |
| | Occupation   Painter | |

**Employer**   Nichols Construction Corporation
   Employer Start Date   01/01/1970          Employer End Date   01/01/1974

| Site Name | Start Date | End Date |
|---|---|---|
| Exxon [] | 01/01/1970 | 01/01/1974 |
| | Occupation   Insulator | |
| Dow Chemical [Plaquemine LA] | 01/01/1970 | 01/01/1974 |
| | Occupation   Insulator | |
| Copolymer Rubber [Addis LA] | 01/01/1970 | 01/01/1974 |
| | Occupation   Insulator | |

**Employer**   Barnard & Burk Industrial Corp.
   Employer Start Date   01/01/1971          Employer End Date   01/01/1971

22C

EXHIBIT "A"

| Site Name | Start Date | End Date |
|---|---|---|
| Monochem [] | 01/01/1971 | 01/03/1971 |
| | Occupation | Insulator |

**Employer    Lurgi-Knost Inc.**
Employer Start Date   01/01/1971                    Employer End Date   01/01/1972

| Site Name | Start Date | End Date |
|---|---|---|
| Borden Chemical [Geismar LA] | 01/01/1971 | 01/01/1972 |
| | Occupation | Insulator |

**Employer    Plant Maintenance Inc.**
Employer Start Date   01/01/1972                    Employer End Date   01/01/1972

| Site Name | Start Date | End Date |
|---|---|---|
| Georgia Pacific Paper Mill [] | 01/01/1972 | 01/01/1972 |
| | Occupation | Insulator |

**Employer    McCarty Corporation, The**
Employer Start Date   01/01/1974                    Employer End Date   01/01/1977

| Site Name | Start Date | End Date |
|---|---|---|
| Dow Chemical [Plaquemine LA] | 01/01/1974 | 01/01/1977 |
| | Occupation | Insulator |

**Employer    Babcock & Wilcox**
Employer Start Date   01/01/1976                    Employer End Date   01/01/1976

| Site Name | Start Date | End Date |
|---|---|---|
| Gulf States Utilities/Willow Glenn [St. Gabriel LA] | 01/01/1976 | 01/01/1976 |
| | Occupation | Insulator |

**Employer    Insul-Contractors Inc**
Employer Start Date   01/01/1976                    Employer End Date   01/01/1976

| Site Name | Start Date | End Date |
|---|---|---|
| Georgia Pacific Paper Mill [] | 01/01/1976 | 01/01/1976 |
| | Occupation | Insulator |

**Employer    B & B Insulation of Louisiana, Inc.**
Employer Start Date   10/01/1976                    Employer End Date   09/01/1977

| Site Name | Start Date | End Date |
|---|---|---|
| Gulf States Utilities [Plaquemine LA] | 10/01/1976 | 09/01/1977 |
| | Occupation | Insulator |

**Employer    HULLUNGHORST INDUSTRIES**
Employer Start Date   01/01/1977                    Employer End Date   01/01/1978

| Site Name | Start Date | End Date |
|---|---|---|
| BASF Corporation [Geismar LA] | 01/01/1977 | 01/01/1978 |
| | Occupation | Insulator |

**Employer    Branton Insulations, Inc.**
Employer Start Date   01/01/1978                    Employer End Date   01/01/1979

| Site Name | Start Date | End Date |
|---|---|---|
| BASF Corporation [Geismar LA] | 01/01/1978 | 01/01/1979 |
| | Occupation | Insulator |

**Employer    HULLUNGHORST INDUSTRIES**
Employer Start Date   01/01/1980                    Employer End Date   01/01/1980

| Site Name | Start Date | End Date |
|---|---|---|
| BASF Corporation [Geismar LA] | 01/01/1980 | |
| | Occupation | |

## EXHIBIT "B"

1.  **Anco Insulation, Inc.**
    a domestic corporation duly organized, created and existing under and by virtue
    of the laws of the state of Louisiana, with its principal place of business in Baton
    Rouge, Louisiana and with an agent for service, to-wit:  Thomas E. Balhoff, 8440
    Jefferson Highway, Suite 301, Baton Rouge, LA 70809

2.  **Eagle, Inc.**
    (Formerly Eagle Asbestos & Packing Co., Inc.)
    a corporation duly organized, created and existing under and by virtue of the
    laws of the state of Louisiana, with its principal place of business in New
    Orleans, Louisiana and with an agent for service in the state of Louisiana, to-wit:
    Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, LA 70163

3.  **The McCarty Corporation**
    a corporation duly organized, created and existing under and by virtue of the
    laws of the state of Louisiana, with its principal place of business in Baton Rouge,
    Louisiana and with an agent for service in the state of Louisiana, to-wit:  Paul H.
    Spaht, 445 North Boulevard, Suite 300, Baton Rouge, LA 70802

4.  **Commercial Union Insurance Company**
    (as insurer for McCarty Corporation, and its Executive Officer, Marvin R.
    McCarty, deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

5.  **National Union Fire Ins. Co. of Pittsburgh, PA,**
    (as insurer for McCarty Corporation, and its Executive Officer, Marvin R.
    McCarty, deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

6.  **Lexington Insurance Company**
    (as insurer for McCarty Corporation, and its Executive Officer, Marvin R.
    McCarty, deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

7.  **Commercial Union Insurance Company**
    (as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc., and its
    Executive Officers, Fred Schuber, Jr. and Fred Schuber, III)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

8.  **Royal Indemnity Company, as successor-in-interest to Queens Insurance
    Company of America and Royal Insurance Company of America**
    (as insurer for Aber Company, Inc. and its executive officers)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

9.  **Travelers Indemnity Company**
    (as insurer for Aber Company, Inc. and its executive officers)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

10. **Newark Insurance Company**
    (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
    "Sonny" Anderson and Harold Johnson)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

11. **Westchester Fire Insurance Company**
    (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
    "Sonny" Anderson and Harold Johnson)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

12. **Zurich Insurance Company**
    (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
    "Sonny" Anderson and Harold Johnson)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

13. **Liberty Mutual Insurance Company**
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    (as insurer of B&B Engineering and Supply Co., Inc. and B&B Engineering And
    Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
    deceased a company authorized to do and doing business in the State of
    Louisiana, and who may be served through the Louisiana Secretary of State

14. **Bituminous Insurance Company**
    (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering and
    Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
    deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

15. **Travelers Indemnity Company**
    (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering And
    Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
    deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    a company authorized to do and doing business in the State of Louisiana, and
    who may be served through the Louisiana Secretary of State

16. **Riley Power, Inc.**
    (f/k/a Babcock Borsig Power, Inc., f/k/a DB Riley, Inc., f/k/a Riley Stoker
    Corporation)
    a Delaware corporation authorized to do and doing business in Louisiana, with
    an agent for service in the state of Louisiana, to-wit: C. T. Corporation Systems,
    5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA  70808

24

17. **Union Carbide Corporation**
A foreign corporation authorized to do and doing business in the State of
Louisiana, domiciled in New York, New York, with its principal place of
business located in Baton Rouge, Louisiana, and with and agent for service of
process to-wit: C. T. Corporation Systems, 5615 Corporate Blvd., Ste. 400B, Baton
Rouge, LA 70808

18. **Owens-Illinois, Inc.**
(f/k/a Owens-Illinois Glass Company)
a corporation duly organized, created and existing under and by virtue of the
laws of the state of Ohio, with its principal place of business in Shreveport, which
may be served pursuant to Louisiana Long Arm Statute, to-wit: Owens-Illinois,
Inc., One Seagate, Toledo, OH 43666

19. **General Refractories Co.**
A foreign corporation with its principal business establishment in New Orleans,
Louisiana, and who may be served pursuant the Louisiana Long Arm Statute:
225 City Avenue, Suite 114, Bala Cynwyd, PA 19004

20. **Zurn Industries, LLC.**
(f/k/a Zurn Industries, Inc., a/k/a and successor-by-merger to Erie City Iron
Works and d/b/a "Keystone" branded products)
a Delaware Corporation authorized to do and doing business in Louisiana, with
its principal place of business in Baton Rouge, Louisiana, and with an agent for
service in the state of Louisiana, to-wit: C T Corporation System, 5615 Corporate
Blvd., Ste. 400B, Baton Rouge, LA 70808

21. **Aqua-Chem, Inc.**
(individually and d/b/a Cleaver-Brooks)
A Wisconsin corporation with its principal place of business located in
Milwaukee, WI, and who may be served pursuant the Louisiana Long Arm
Statute: C. T. Corporation System, 7800 N. 113th Street, Milwaukee, WI 53224

22. **Crane Co.**
a corporation duly organized, created and existing under and by virtue of the
laws of the state of Delaware, with its principal place of business in Baton Rouge,
LA, and with an agent for service, to-wit: CT Corporation System, 5615
Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808

23. **Ingersoll-Rand Company**
A foreign corporation with its principal place of business in Baton Rouge, LA,
and who may be served through their agent for service of process, to-wit: CT
Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808;

24. **Dana Corporation**
An Ohio corporation with its principal business establishment in Toledo, OH,
and who may be served pursuant the Louisiana Long Arm Statute: P.O. Box 1000
Toledo, Ohio 43697

25. **Certainteed Corporation**
(f/k/a Saint-Gobain Investments, Inc.)
a Delaware Corporation authorized to do and doing business in Louisiana, and
with an agent for service in the state of Louisiana, to-wit: C T Corporation
System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808

26. **Gabler Insulations, Inc.**
a Louisiana Corporation authorized to do and doing business in Louisiana, domiciled in New Orleans, LA, and with agents for service in the state of Louisiana, to-wit: James H. Gabler, 111 E. Wm. David Pkwy, Metairie, LA 70005, and A. Adelaide Gabler, 2809 Palmer Avenue, New Orleans, LA 70118.

27. **Seville, Inc.**
**(f/k/a Branton Insulations, Inc.)**
a Louisiana Corporation authorized to do and doing business in Louisiana, domiciled in Harahan, LA, and with an agent for service in the state of Louisiana, to-wit: H.T. Branton 1101 Edwards Ave., Harahan, LA 70123.

28. **Turner Industries Group, LLC**
**(f/k/a Turner Industries Holding Company, LLC, as successor-in-interest to Nichols Construction Company, LLC, successor-in-interest to Nichols Construction Corporation)**
a Louisiana Corporation authorized to do and doing business in Louisiana, domiciled in Baton Rouge, LA, and with an agent for service in the state of Louisiana, to-wit: L.J. Griffon, Jr., 8687 United Plaza Blvd., Baton Rouge, LA 70809.

29. **Exxon Mobil Corporation**
**(f/k/a Exxon Corporation)**
a foreign corporation authorized to do and doing business in Louisiana, domiciled in West Trenton, NJ, with its principal place of business in Louisiana in Baton Rouge, LA, and with an agent for service in the state of Louisiana to-wit: Corporation Service Company, 320 Somerulos St., Baton Rouge, LA 70802-6129

30. **Shell Oil Company**
A Delaware corporation authorized to do and doing business in the State of Louisiana, with its principal place of business in Louisiana located in Baton Rouge, LA, and with an agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

31. **Shell Chemical, LP**
A Delaware partnership authorized to do and doing business in the State of Louisiana, with its principal place of business in Louisiana located in Baton Rouge, LA, and with an agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

32. **Georgia-Pacific LLC**
**(f/k/a Georgia Pacific Corporation, f/k/a Georgia-Pacific Plywood Company, individually and as successor to Bestwall Gypsum Company)**
A Delaware corporation doing business in the State of Louisiana, with its principal place of business in Louisiana located in Baton Rouge, LA, and with an agent for service in the state of Louisiana, to-wit: C T Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808

33. **Entergy Gulf States Louisiana, LLC.**
**(f/k/a Entergy Gulf States Louisiana, Inc., f/k/a Entergy Gulf States, Inc., f/k/a Gulf States Utilities Company)**
a domestic Corporation authorized to do and doing business in Louisiana, domiciled in Baton Rouge, Louisiana, and with an agent for service in the state of Louisiana to-wit: John A. Braymer, 446 North Blvd., Baton Rouge, LA 70802

34. **DSM Copolymer, Inc.**
A corporation authorized to do and doing business in the State of Louisiana, domiciled in Wilmington, DE, with its principal place of business in Louisiana located in Baton Rouge, LA, and with and agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

35. **BASF Corporation**
(f/k/a Inmont Corporation, f/k/a BASF Wyandotte Corporation, f/k/a Wyandotte Chemicals Corporation)
A corporation authorized to do and doing business in the State of Louisiana, domiciled in Wilmington, DE, with its principal place of business in Louisiana located in Baton Rouge, LA, and with and agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

36. **Fort James Corporation**
(as successor to James River Corporation and Crown Zellerbach Corporation)
A Virginia corporation authorized to and doing business in the State of Louisiana, with its principal place of business in Louisiana in Baton Rouge, LA , and with an agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

37. **Georgia Pacific Consumer Products, LP**
(individually and f/k/a Fort James Operating Company, as successor to Crown-Zellerbach Corporation)
A Delaware corporation authorized to and doing business in the State of Louisiana, with its principal place of business in Louisiana in Baton Rouge, LA , and with an agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

38. **Ethyl Corporation**
a Virginia corporation authorized to do and doing business in Louisiana, with an agent for service in the state of Louisiana, to-wit: C T Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808

39. **Monochem, Inc.**
a Louisiana corporation authorized to do and doing business in Louisiana, domiciled in baton Rouge, LA, with an agent for service in the state of Louisiana, to-wit: Corporation Service Company, 320 Somerulos St., Baton Rouge, LA 70802-6129.

40. **The Texas Company**
(f/k/a Texaco, Inc.)
A Delaware corporation authorized to do and doing business in the State of Louisiana, with its principal place of business in Louisiana located in Baton Rouge, LA, and with an agent for service of process to-wit: The Prentice-Hall Corporation System, Inc., 320 Somerulos St., Baton Rouge, LA 70802-6129

41. **Uniroyal, Inc.**
(f/k/a United States Rubber Company, Inc.)
A New Jersey corporation with its principal place of business in Louisiana located in New Orleans, LA, and who may be served pursuant the Louisiana Long Arm Statute: Uniroyal, Inc., 70 Great Hill Rd., Naugatuck, CT 06770;

27

<u>EXHIBIT "C"</u>

**CONTRACTOR DEFENDANTS:**

1.      **Anco Insulation, Inc.**
a domestic corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in Baton Rouge, Louisiana and with an agent for service, to-wit:  Thomas E. Balhoff, 8440 Jefferson Highway, Suite 301, Baton Rouge, LA  70809

2.      **Eagle, Inc.**
(Formerly Eagle Asbestos & Packing Co., Inc.
a corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in New Orleans, Louisiana and with an agent for service in the state of Louisiana, to-wit: Susan B. Kohn, 1100 Poydras Street, 30th Floor, New Orleans, LA 70163

3.      **The McCarty Corporation**
a corporation duly organized, created and existing under and by virtue of the laws of the state of Louisiana, with its principal place of business in Baton Rouge, Louisiana and with an agent for service in the state of Louisiana, to-wit:  Paul H. Spaht, 445 North Boulevard, Suite 300, Baton Rouge, LA 70802

4.      **Commercial Union Insurance Company**
(as insurer for McCarty Corporation, and its Executive Officer, Marvin R. McCarty, deceased)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

5.      **National Union Fire Ins. Co. of Pittsburgh, PA,**
(as insurer for McCarty Corporation, and its Executive Officer, Marvin R. McCarty, deceased)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

6.      **Lexington Insurance Company**
(as insurer for McCarty Corporation, and its Executive Officer, Marvin R. McCarty, deceased)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

7.      **Commercial Union Insurance Company**
(as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc., and its Executive Officers, Fred Schuber, Jr. and Fred Schuber, III)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

8.      **Royal Indemnity Company, as successor-in-interest to Queens Insurance Company of America and Royal Insurance Company of America**
(as insurer for Aber Company, Inc. and its executive officers)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
a company authorized to do and doing business in the State of Louisiana, and who may be served through the Louisiana Secretary of State

9.    **Travelers Indemnity Company**
      (as insurer for Aber Company, Inc. and its executive officers)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

10.   **Newark Insurance Company**
      (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
      "Sonny" Anderson and Harold Johnson)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

11.   **Westchester Fire Insurance Company**
      (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
      "Sonny" Anderson and Harold Johnson)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

12.   **Zurich Insurance Company**
      (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
      "Sonny" Anderson and Harold Johnson)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

13.   **Liberty Mutual Insurance Company**
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      (as insurer of B&B Engineering and Supply Co., Inc. and B&B Engineering And
      Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
      deceased a company authorized to do and doing business in the State of
      Louisiana, and who may be served through the Louisiana Secretary of State

14.   **Bituminous Insurance Company**
      (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering and
      Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
      deceased)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

15.   **Travelers Indemnity Company**
      (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering And
      Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
      deceased)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

16.   **Gabler Insulations, Inc.**
      a Louisiana Corporation authorized to do and doing business in Louisiana,
      domiciled in New Orleans, LA, and with agents for service in the state of
      Louisiana, to-wit: James H. Gabler, 111 E. Wm. David Pkwy, Metairie, LA 70005,
      and A. Adelaide Gabler, 2809 Palmer Avenue, New Orleans, LA 70118.

17.   Seville, Inc.
      (f/k/a Branton Insulations, Inc.)
      a Louisiana Corporation authorized to do and doing business in Louisiana,
      domiciled in Harahan, LA, and with an agent for service in the state of Louisiana,
      to-wit:  H.T. Branton 1101 Edwards Ave., Harahan, LA  70123.

18.   Turner Industries Group, LLC
      (f/k/a Turner Industries Holding Company, LLC, as successor-in-interest to
      Nichols Construction Company, LLC, successor-in-interest to Nichols
      Construction Corporation)
      a Louisiana Corporation authorized to do and doing business in Louisiana,
      domiciled in Baton Rouge, LA, and with an agent for service in the state of
      Louisiana, to-wit:  L.J. Griffon, Jr., 8687 United Plaza Blvd., Baton Rouge, LA
      70809.

<u>EXHIBIT "D"</u>

**EMPLOYER/EMPLOYERS' EXECUTIVE OFFICERS & DIRECTORS DEFENDANTS:**

1.    Anco Insulation, Inc.
      a domestic corporation duly organized, created and existing under and by virtue
      of the laws of the state of Louisiana, with its principal place of business in Baton
      Rouge, Louisiana and with an agent for service, to-wit:  Thomas E. Balhoff, 8440
      Jefferson Highway, Suite 301, Baton Rouge, LA  70809

2.    The McCarty Corporation
      a corporation duly organized, created and existing under and by virtue of the
      laws of the state of Louisiana, with its principal place of business in Baton Rouge,
      Louisiana and with an agent for service in the state of Louisiana, to-wit:  Paul H.
      Spaht, 445 North Boulevard, Suite 300, Baton Rouge, LA 70802

3.    Commercial Union Insurance Company
      (as insurer for McCarty Corporation, and its Executive Officer, Marvin R.
      McCarty, deceased)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

4.    National Union Fire Ins. Co. of Pittsburgh, PA,
      (as insurer for McCarty Corporation, and its Executive Officer, Marvin R.
      McCarty, deceased)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

5.    Lexington Insurance Company
      (as insurer for McCarty Corporation, and its Executive Officer, Marvin R.
      McCarty, deceased)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

6.    Newark Insurance Company
      (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
      "Sonny" Anderson and Harold Johnson)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

7.    Westchester Fire Insurance Company
      (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
      "Sonny" Anderson and Harold Johnson)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

8.    Zurich Insurance Company
      (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
      "Sonny" Anderson and Harold Johnson)
      (For Service of Process via the Direct Action Statute L.R.S. 22:655)
      a company authorized to do and doing business in the State of Louisiana, and
      who may be served through the Louisiana Secretary of State

9.   **Liberty Mutual Insurance Company**
     (For Service of Process via the Direct Action Statute L.R.S. 22:655)
     (as insurer of B&B Engineering and Supply Co., Inc. and B&B Engineering And
     Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
     deceased a company authorized to do and doing business in the State of
     Louisiana, and who may be served through the Louisiana Secretary of State

10.  **Bituminous Insurance Company**
     (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering and
     Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
     deceased)
     (For Service of Process via the Direct Action Statute L.R.S. 22:655)
     a company authorized to do and doing business in the State of Louisiana, and
     who may be served through the Louisiana Secretary of State

11.  **Travelers Indemnity Company**
     (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering And
     Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
     deceased)
     (For Service of Process via the Direct Action Statute L.R.S. 22:655)
     a company authorized to do and doing business in the State of Louisiana, and
     who may be served through the Louisiana Secretary of State

12.  **Gabler Insulations, Inc.**
     a Louisiana Corporation authorized to do and doing business in Louisiana,
     domiciled in New Orleans, LA, and with agents for service in the state of
     Louisiana, to-wit: James H. Gabler, 111 E. Wm. David Pkwy, Metairie, LA 70005,
     and A. Adelaide Gabler, 2809 Palmer Avenue, New Orleans, LA 70118.

13.  **Seville, Inc.**
     (f/k/a Branton Insulations, Inc.)
     a Louisiana Corporation authorized to do and doing business in Louisiana,
     domiciled in Harahan, LA, and with an agent for service in the state of Louisiana,
     to-wit: H.T. Branton 1101 Edwards Ave., Harahan, LA 70123.

14.  **Turner Industries Group, LLC**
     (f/k/a Turner Industries Holding Company, LLC, as successor-in-interest to
     Nichols Construction Company, LLC, successor-in-interest to Nichols
     Construction Corporation)
     a Louisiana Corporation authorized to do and doing business in Louisiana,
     domiciled in Baton Rouge, LA, and with an agent for service in the state of
     Louisiana, to-wit: L.J. Griffon, Jr., 8687 United Plaza Blvd., Baton Rouge, LA
     70809.

<u>EXHIBIT "E"</u>

<u>PREMISE DEFENDANTS:</u>

1.  **Exxon Mobil Corporation**
    (f/k/a Exxon Corporation)
    a foreign corporation authorized to do and doing business in Louisiana,
    domiciled in West Trenton, NJ, with its principal place of business in Louisiana
    in Baton Rouge, LA, and with an agent for service in the state of Louisiana to-wit:
    Corporation Service Company, 320 Somerulos St., Baton Rouge, LA 70802-6129

2.  **Shell Oil Company**
    A Delaware corporation authorized to do and doing business in the State of
    Louisiana, with its principal place of business in Louisiana located in Baton
    Rouge, LA, and with an agent for service of process to-wit: C. T. Corporation
    System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

3.  **Shell Chemical, LP**
    A Delaware partnership authorized to do and doing business in the State of
    Louisiana, with its principal place of business in Louisiana located in Baton
    Rouge, LA, and with an agent for service of process to-wit: C. T. Corporation
    System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

4.  **Georgia-Pacific LLC**
    (f/k/a Georgia Pacific Corporation, f/k/a Georgia-Pacific Plywood Company,
    individually and as successor to Bestwall Gypsum Company)
    A Delaware corporation doing business in the State of Louisiana, with its
    principal place of business in Louisiana located in Baton Rouge, LA, and with an
    agent for service in the state of Louisiana, to-wit:  C T Corporation System, 5615
    Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808

5.  **Entergy Gulf States Louisiana, LLC.**
    (f/k/a Entergy Gulf States Louisiana, Inc., f/k/a Entergy Gulf States, Inc., f/k/a
    Gulf States Utilities Company)
    a domestic Corporation authorized to do and doing business in Louisiana,
    domiciled in Baton Rouge, Louisiana, and with an agent for service in the state of
    Louisiana to-wit:  John A. Braymer, 446 North Blvd., Baton Rouge, LA 70802

6.  **DSM Copolymer, Inc.**
    A corporation authorized to do and doing business in the State of Louisiana,
    domiciled in Wilmington, DE, with its principal place of business in Louisiana
    located in Baton Rouge, LA, and with and agent for service of process to-wit: C.
    T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

7.  **BASF Corporation**
    (f/k/a Inmont Corporation, f/k/a BASF Wyandotte Corporation, f/k/a
    Wyandotte Chemicals Corporation)
    A corporation authorized to do and doing business in the State of Louisiana,
    domiciled in Wilmington, DE, with its principal place of business in Louisiana
    located in Baton Rouge, LA, and with and agent for service of process to-wit: C.
    T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

8.  **Fort James Corporation**
    (as successor to James River Corporation and Crown Zellerbach Corporation)
    A Virginia corporation authorized to and doing business in the State of
    Louisiana, with its principal place of business in Louisiana in Baton Rouge, LA ,
    and with an agent for service of process to-wit: C. T. Corporation System, 5615
    Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

9. **Georgia Pacific Consumer Products, LP**
(individually and f/k/a Fort James Operating Company, as successor to Crown-Zellerbach Corporation)
A Delaware corporation authorized to and doing business in the State of Louisiana, with its principal place of business in Louisiana in Baton Rouge, LA , and with an agent for service of process to-wit: C. T. Corporation System, 5615 Corporate Blvd, Ste. 400B, Baton Rouge, LA 70808

10. **Ethyl Corporation**
a Virginia corporation authorized to do and doing business in Louisiana, with an agent for service in the state of Louisiana, to-wit: C T Corporation System, 5615 Corporate Blvd., Ste. 400B, Baton Rouge, LA 70808

11. **Monochem, Inc.**
a Louisiana corporation authorized to do and doing business in Louisiana, domiciled in baton Rouge, LA, with an agent for service in the state of Louisiana, to-wit: Corporation Service Company, 320 Somerulos St., Baton Rouge, LA 70802-6129.

12. **The Texas Company**
(f/k/a Texaco, Inc.)
A Delaware corporation authorized to and doing business in the State of Louisiana, with its principal place of business in Louisiana located in Baton Rouge, LA, and with an agent for service of process to-wit: The Prentice-Hall Corporation System, Inc., 320 Somerulos St., Baton Rouge, LA 70802-6129

13. **Uniroyal, Inc.**
(f/k/a United States Rubber Company, Inc.)
A New Jersey corporation with its principal place of business in Louisiana located in New Orleans, LA, and who may be served pursuant the Louisiana Long Arm Statute: Uniroyal, Inc., 70 Great Hill Rd., Naugatuck, CT 06770;

PLEASE SERVE THE FOLLOWING DEFENDANTS:

1.    **Anco Insulation, Inc.**
Through its agent for service of process:
Thomas E. Balhoff
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809

2.    **Commercial Union Insurance Company**
(as insurer for Eagle, Inc., f/k/a Eagle Asbestos & Packing Co., Inc., and its
Executive Officers, Fred Schuber, Jr. and Fred Schuber, III)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809

3.    **Commercial Union Insurance Company**
(as insurer for The McCarty Corporation, and its Executive Officers, Marvin
McCarty, deceased)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809

4.    **Eagle, Inc.**
Through its agent for service of process:
Susan B. Kohn
1100 Poydras Street, 30th Floor
New Orleans, LA 70163

5.    **Liberty Mutual Insurance Company**
(as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering And
Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
deceased)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809

6.    **The McCarty Corporation**
Through its agent for service of process:
Paul H. Spaht
445 North Boulevard, Ste. 300
Baton Rouge, LA 70802

7.    **Riley Power, Inc.**
(f/k/a Babcock Borsig Power, Inc., f/k/a DB Riley, Inc., f/k/a Riley Stoker)
Through its agent for service of process:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

8.    **Travelers Indemnity Company**
(as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering And
Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst)
(For Service of Process via the Direct Action Statute L.R.S. 22:655)
Through the Louisiana Secretary of State
8549 United Plaza Boulevard
Baton Rouge, LA 70809

9.      Union Carbide Corporation
        Through its agent for service:
        CT Corporation System
        5615 Corporate Blvd., Ste. 400B
        Baton Rouge, LA 70808

10.     Travelers Indemnity Company
        (as insurer for Aber Company, Inc.)
        (For Service of Process via the Direct Action Statute L.R.S. 22:655)
        Through the Louisiana Secretary of State
        8549 United Plaza Boulevard
        Baton Rouge, LA 70809

11.     Westchester Fire Insurance Company
        (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
        "Sonny" Anderson and Harold Johnson)
        (For Service of Process via the Direct Action Statute L.R.S. 22:655)
        Through the Louisiana Secretary of State
        8549 United Plaza Boulevard
        Baton Rouge, LA 70809

12.     Zurich Insurance Company
        (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
        "Sonny" Anderson and Harold Johnson)
        (For Service of Process via the Direct Action Statute L.R.S. 22:655)
        Through the Louisiana Secretary of State
        8549 United Plaza Boulevard
        Baton Rouge, LA 70809

13.     Bituminous Insurance Company
        (as insurer for B&B Engineering and Supply Co., Inc. and B&B Engineering And
        Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst,
        deceased)
        (For Service of Process via the Direct Action Statute L.R.S. 22:655)
        Through the Louisiana Secretary of State
        8549 United Plaza Boulevard
        Baton Rouge, LA 70809

14.     Newark Insurance Company
        (as insurer for Anco Insulations, Inc. and its executive officers, Reuel Lacy
        "Sonny" Anderson and Harold Johnson)
        (For Service of Process via the Direct Action Statute L.R.S. 22:655)
        Through the Louisiana Secretary of State
        8549 United Plaza Boulevard
        Baton Rouge, LA 70809

15.     Royal Indemnity Company, as successor-in-interest to Queens Insurance
        Company of America and Royal Insurance Company of America
        (as insurer for Aber Company, Inc. and its executive officers)
        (For Service of Process via the Direct Action Statute L.R.S. 22:655)
        Through the Louisiana Secretary of State
        8549 United Plaza Boulevard
        Baton Rouge, LA 70809

16. **Owens-Illinois, Inc.**
    (f/k/a  Owens-Illinois Glass Company)
    Via the Louisiana Long Arm Statute:
    Owens-Illinois, Inc.
    One Seagate
    Toledo, OH 43666

17. **Zurn Industries, LLC**
    (f/k/a Zurn Industries, Inc., a/k/a and successor-by-merger to Erie City Iron
    Works and d/b/a "Keystone" branded products)
    Through its agent for service:
    CT Corporation System
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808

18. **Aqua-Chem, Inc.**
    (individually and d/b/a Cleaver-Brooks)
    Via the Louisiana Long Arm Statute:
    7800 N. 113th Street,
    Milwaukee, WI 53224

19. **National Union Fire Ins. Co. of Pittsburgh, PA**
    (as insurer for The McCarty Corporation, and its Executive Officers, Marvin
    McCarty, deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809

20. **Lexington Insurance Company**
    (as insurer for The McCarty Corporation, and its Executive Officers, Marvin
    McCarty, deceased)
    (For Service of Process via the Direct Action Statute L.R.S. 22:655)
    Through the Louisiana Secretary of State
    8549 United Plaza Boulevard
    Baton Rouge, LA 70809

21. **Exxon Mobil Corporation**
    (f/k/a Exxon Corporation)
    Through its agent for service:
    Corporation Service Company
    320 Somerulos St.
    Baton Rouge, LA 70802-6129

22. **Certainteed Corporation**
    **(f/k/a Saint-Gobain Investments, Inc.)**
    Through its agent for service:
    CT Corporation System
    5615 Corporate Blvd., Ste. 400B
    Baton Rouge, LA 70808

23. **Dana Corporation**
    Via the Louisiana Long Arm Statute:
    P.O. Box 1000
    Toledo, Ohio 43697

24.   **Crane Co.**
Through its agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

25.   **Ingersoll-Rand Company**
Through its agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

26.   **Gabler Insulations, Inc.**
Through its agents for service:
James H. Gabler
111 E. Wm. David Pkwy
Metairie, LA 70005
and
A. Adelaide Gabler
2809 Palmer Avenue
New Orleans, LA 70118

27.   **Seville, Inc.**
**(f/k/a Branton Insulations, Inc.)**
Through its agent for service:
H.T. Branton
1101 Edwards Ave.
Harahan, LA 70123.

28.   **Turner Industries Group, LLC**
**(f/k/a Turner Industries Holding Company, LLC, as successor-in-interest to**
**Nichols Construction Company, LLC, successor-in-interest to Nichols**
**Construction Corporation)**
Through its agent for service:
L.J. Griffon, Jr.
8687 United Plaza Blvd.
Baton Rouge, LA 70809.

29.   **Shell Oil Company**
Through its agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

30.   **Shell Chemical, LP**
Through its agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

31.   **Georgia-Pacific LLC**
(f/k/a Georgia Pacific Corporation, f/k/a Georgia-Pacific Plywood Company,
individually and as successor to Bestwall Gypsum Company)
Through its agent for service:
CT Corporation System
5615 Corporate Blvd., Ste. 400B
Baton Rouge, LA 70808

32.  **Entergy Gulf States Louisiana, LLC.**
     (f/k/a Entergy Gulf States Louisiana, Inc., f/k/a Entergy Gulf States, Inc., f/k/a
     Gulf States Utilities Company)
     Through its agent for service:
     John A. Braymer
     446 North Blvd.
     Baton Rouge, LA 70802

33.  **DSM Copolymer, Inc.**
     Through its agent for service:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808

34.  **BASF Corporation**
     (f/k/a Inmont Corporation, f/k/a BASF Wyandotte Corporation, f/k/a
     Wyandotte Chemicals Corporation)
     Through its agent for service:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808

35.  **Fort James Corporation**
     (as successor to James River Corporation and Crown Zellerbach Corporation)
     Through its agent for service:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808

36.  **Georgia Pacific Consumer Products, LP**
     (individually and f/k/a Fort James Operating Company, as successor to Crown-
     Zellerbach Corporation)
     Through its agent for service:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808

37.  **Ethyl Corporation**
     Through its agent for service:
     CT Corporation System
     5615 Corporate Blvd., Ste. 400B
     Baton Rouge, LA 70808

38.  **Monochem, Inc.**
     Through its agent for service:
     Corporation Service Company
     320 Somerulos St.
     Baton Rouge, LA 70802-6129

39.  **The Texas Company**
     (f/k/a Texaco, Inc.)
     Through its agent for service:
     The Prentice-Hall Corporation System, Inc.,
     320 Somerulos St.
     Baton Rouge, LA 70802-6129

40.    Uniroyal, Inc.
       (f/k/a United States Rubber Company, Inc.)
       Via the Louisiana Long Arm Statute:
       Uniroyal, Inc.
       70 Great Hill Rd.
       Naugatuck, CT 06770;


<u>PLEASE WITHHOLD SERVICE ON THE FOLLOWING DEFENDANT:</u>

1.    General Refractories Co.
      Via the Louisiana Long Arm Statute:
      225 City Avenue, Suite 114,
      Bala Cynwyd, PA  19004

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

VERA G. LALONDE, ET AL.                          CIVIL ACTION

VERSUS
                                                  NO. 96-3244-B-M3
DELTA FIELD ERECTION, ET AL.

<u>RULING</u>

This removed silicosis wrongful death action comes before the Court on plaintiff's motion to remand (rec.doc.no. 43), which has been referred to the undersigned for decision (rec.doc.no. 124). The sole issue remaining before the Court on the motion to remand is whether removal of the case by defendant DSM Copolymer ("DSM") was proper as a "federal officer removal" under 28 U.S.C. § 1442(a)(1).[1]

Section 1442(a)(1) provides in pertinent part for the removal of any action against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). In their state court petition, plaintiffs allege that between 1947 and 1976, the decedent John D. Lalonde performed sandblasting work for various employers at various locations owned or operated by various premises owners, including DSM. Plaintiffs allege that DSM and the other

_____

[1] Although fraudulent joinder initially was urged as an alternative basis for removal by other removing defendants, it since has been established beyond question that diversity jurisdiction is not present in this case because DSM, which is an indisputably non-fraudulently joined defendant, has its principal place of business in Baton Rouge, Louisiana. See rec.doc.nos. 95 & 96. Defendant DSM also initially relied, in addition, upon 28 U.S.C. § 1442(a)(2). DSM apparently has abandoned any such reliance, however, as DSM has not raised any argument in opposition to plaintiff's motion to remand under subparagraph (a)(2), instead arguing exclusively under subparagraph (a)(1). In that the removing party bears the burden of establishing the propriety of removal, the Court will treat DSM's lack of briefing and proof with regard to subparagraph (a)(2) as an abandonment of that claimed basis for removal.

DKT. & ENTERED

EXHIBIT

B

ALL-STATE LEGAL®

premises owner defendants failed to provide Mr. Lalonde with proper supervision, instruction, and warnings concerning hazards associated with sandblasting, and failed to provide adequate equipment and take other adequate safeguards to guard against the risks associated with inhalation of silica dust. In its notice of removal, DSM alleged, *inter alia*, that DSM properly removed the action under Section 1442(a)(1) as a person acting under the authority of a federal officer because part of the alleged silica exposure occurred at a government-owned synthetic rubber plant operated by DSM for and under the direction and control of an instrumentality of the federal government from 1943 through 1955. DSM further alleged that by virtue of the terms of the agreement whereby DSM purchased the plant from the federal government in 1955, federal authority and control continued for an additional ten years, that is, until 1965.

The Court will begin the jurisdictional analysis in this case at the point where all questions of federal lower court jurisdiction necessarily begin — with the language used by Congress in the statutory jurisdictional grant. *Cf. Marathon Oil Co. v. Ruhrgas*, ___ F.3d ___, 1998 WL 329842, slip op. at *2 (June 22, 1998)( federal courts other than the Supreme Court derive their jurisdiction wholly from the authority of Congress).[2] On its face, Section 1442(a)(1) requires two showings for removal in the context presented here. First, the removing defendant must be a "person acting under [any] officer ... of the United States or of any agency thereof." And, second, the removing defendant must be "sued ... for [an] act under color of such office."

_____

[2] The Court begins with the statutory language of Section 1442(a)(1) in large part because of the many varied jurisprudential statements of the elements required for removal and of the showing required to satisfy each element. Rather than extensively contrasting and harmonizing other lower federal court cases, the court's approach in this ruling is to draw the required elements, and their meaning, directly from the relevant statutory language and Supreme Court precedent.

-2-

The Supreme Court, in turn, has construed the second, "color of office" statutory element as requiring two showings. First, the high court has "interpreted the 'color of office' test to require a showing of a 'causal connection' between the charged conduct and asserted official authority." *Willingham v. Morgan*, 395 U.S. 402, 409, 89 S.Ct. 1813, 1817, 23 L.Ed.2d 396 (1969). And second, the Supreme Court has interpreted the "color of office" element as requiring that the removing defendant, in addition, raise a colorable federal defense. *E.g.*, *Mesa v. California*, 489 U.S. 121, 125-34, 109 S.Ct. 959, 962-67, 103 L.Ed.2d 99 (1989).[3]

Accordingly, under the statutory language and the controlling Supreme Court precedents, a government contractor seeking to remove a civil action under Section 1442(a)(1) must show:

   1)   that the removing defendant was acting under an officer of the United States or of an agency thereof;

   2)   that there was a causal connection between the charged conduct and the asserted official authority; and

   3)   that the removing defendant has a colorable defense under federal law.

28 U.S.C. § 1442(a)(1); *Willingham, supra*; *Mesa, supra*.

---

[3]If Section 1442(a)(1) were interpreted to permit removal of any suit arising from the performance of federal duties (*e.g.*, a simple vehicular accident) without the requirement of a colorable federal defense, then a question would arise as to whether Congress had exceeded the maximum possible grant of federal question jurisdiction permitted by the constitution. *See Mesa*, 489 U.S. at 134-39, 109 S.Ct. at 967-70.

Federal officer removal under Section 1442(a)(1) is to be distinguished from removal of federal question cases under 28 U.S.C. 1441, where removal generally cannot be predicated on the presence of a federal defense.

-3-

*"Acting Under"*

Neither the Supreme Court nor the Fifth Circuit have established what is required to show that a government contractor is "acting under" an officer of the United States or of an agency thereof. Cases from other federal district courts, which of course are not binding on this court, vary in their approach to what is required under this element.

The following specific facts bear on DSM's claim that it was acting under an officer of the United States or an agency thereof. Under an Operating Agreement in force from 1942 through 1955,[4] DSM[5] operated a government-owned synthetic rubber plant as "agent for ... and for the account and at the expense and risk of" the Rubber Reserve Corporation. The Rubber Reserve Corporation was a subsidiary of the Reconstruction Finance Corporation, which was created as an instrumentality of the United States government.[6] The Operating Agreement reflects that the Reconstruction Finance Corporation was authorized under federal law to create a corporation to produce, *inter alia*, strategic and critical materials as defined by the President, *that the President had designated synthetic rubber as a strategic and critical material under the law*, that the production of this material and expansion of capacity was important to the interests of the federal government and its national defense program, and that the Reconstruction Finance Corporation had created

---

[4]The period in question raised by the plaintiffs' petition spans from 1947 through 1976. If a particular claim is removable under Section 1442(a)(1), then the entire action becomes removable. *See Spencer v. New Orleans Levee Board*, 737 F.2d 435, 438 (5th Cir. 1984); *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1376 (5th Cir. 1980); *Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 152 (5th Cir. 1965). If the federal issues later drop from the case, the district court has the discretion to decline to exercise continued discretion over the nonfederal elements of the case. *Spencer*, 737 F.2d 438; *Ewell v. Petro Processors of Louisiana, Inc.*, 655 F.Supp. 933, 936-37 (M.D. La. 1987)..

[5]Or, actually, its predecessor-in-interest, which will be referred to as "DSM" for ease of reference.

[6]*Operating Agreement*, Section 1 (rec.doc.no. 119, exhibit "A"); *Baker Affidavit*, para. 2 (rec.doc.no. 65, exhibit "C").

-4-

and empowered the Rubber Reserve Corporation to produce synthetic rubber and related materials.[7]

Under Section 27 of the agreement, DSM specifically agreed that it would not engage in any business other than the manufacture of synthetic rubber for the Rubber Reserve Corporation under the Operating Agreement. Under Section 21 of the agreement, DSM could not assign its obligations under the contract; but the Rubber Reserve Corporation could assign its interests "to any other branch of the Government," which then would acquire all of the Rubber Reserve Corporation's rights under the agreement. Under Section 7 of the agreement, the Rubber Reserve Corporation supplied DSM with all of the butadiene and styrene needed for producing the synthetic rubber, and the title to any additional raw materials purchased by DSM vested directly in the Rubber Reserve

---

[7]*Operating Agreement*, preamble (rec.doc.no. 113, exhibit "A"). As a side note, the Court would observe that prior reported decisions reflect that the background for this case comes directly from the pages of history. As World War II approached, it became evident that the United States would be cut off from 90% of its natural rubber supply. The development of a synthetic rubber industry became a national military goal of top priority, especially after Pearl Harbor, after which access to the bulk of the country's natural rubber sources in fact were cutoff. The situation was rather pressing because prior peacetime commercial attempts to develop a viable synthetic rubber process had failed. The issue was of such import that President Roosevelt took the rather unusual step of asking the Chief Justice of the Supreme Court to lead a wartime commission to investigate rubber production. (The Chief Justice declined because the project would be inconsistent with his function as a judicial officer.) Ultimately, Congress gave the Reconstruction Finance Corporation authority to take the steps necessary to organize a synthetic rubber industry in the shortest possible time, which it accomplished through the Rubber Reserve Company, by pooling patent and research information, building plants, and signing agreements with contractors to operate those plants under federal supervision. To say that the success of this effort was crucial to Allied victory in World War II hardly is an exaggeration. The federal government's active participation in the production of synthetic rubber continued through the Korean War. *See generally General Tire & Rubber Co. v. Firestone Tire & Rubber Co.*, 489 F.2d 1105, 1107-08 (6th Cir. 1973); *Reed v. Fina Oil & Chemical Company*, 995 F.Supp. 705, 708-09 (E.D. Tex. 1998); *In re President's Commission on Organized Crime Subpoena of Scarfo*, 783 F.2d 370, 377 (3rd Cir. 1986). The Court points to this historical information merely by way of background, as the operating agreement contains the essential legal details (bare and unadorned as they may be) that are necessary for decision here and neither counsel supplied the historic backdrop from which these issues arise.

-5-

Corporation.[8] Title to the production as well as the raw materials rested in the government, which paid an operating fee to DSM for its services.[9]

During the term of the agreement, a field representative from the Rubber Reserve Corporation regularly visited the facility. The field representative's responsibilities included overseeing DSM's operations and ensuring that DSM was following government imposed production specifications, government imposed operating procedures, and government imposed laboratory product testing procedures and operations in the manufacturing of synthetic rubber. The United States, through the Rubber Reserve Corporation, controlled what type of rubber was produced at the facility, how much of it was produced, and when each type of rubber was produced. DSM could alter these requirements only with permission from the federal government. If government requirements were not followed, the field representative would bring the matter to the attention of the manager of the section where the problem was observed. If no results were obtained, the field representative would raise the matter with the plant manager, and as a last resort, would go to the federal government in Washington, which had authority to enforce compliance.[10]

The federal government imposed numerous safety requirements at the facility, such as the wearing of protective equipment. The United States required that safety meetings be held in each department on a monthly basis, and, in addition, required plant-wide safety

---

[8] *Operating Agreement*, (rec.doc.no. 113, exhibit "A").

[9] *Baker Affidavit*, para. 6 (rec.doc.no. 65, exhibit "C").

[10] *Baker Affidavit*, paras. 3-7 (rec.doc.no. 65, exhibit "C").

meetings be held on a monthly basis.  The government dictated the topics of these meetings.[11]

In summary, DSM operated a federal government-owned facility, exclusively for the government, under the oversight and ultimate control of officers of the federal government. The Court therefore concludes that the foregoing facts are sufficient to establish that DSM was "acting under an officer of the United States or of an agency thereof" for purposes of removal under Section 1442(a)(1).

Plaintiffs cite a number of district court decisions, such as *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Cal. 1996), which they contend requires the government contractor to show that the specific alleged acts giving rise to the underlying claims were also specifically directed by a federal officer.  That is, plaintiffs argue that *Overly* and similar cases require a showing of a federal directive ordering DSM *not* to warn Lalonde of the hazards of silica dust or *not* to provide him with adequate protective equipment.[12]  The Court specifically rejects and declines to follow these lower court cases to the extent plaintiff urges their applicability to the context presented here.[13]  The Court

---

[11]*Samuels' Affidavit*, paras. 4-5 (rec.doc.no. 65, exhibit "D").  Although Samuels was in charge of laboratory testing for developmental products, his affidavit speaks to the government's imposition of safety requirements for the entire facility and its practices regarding safety meetings for the entire facility.  It would not be unreasonable for a supervisor of a single department to have knowledge of the level of control exercised generally by the government over the entire facility.

[12]In *Overly*, for example, the element of "federal direction" applied by the *Overly* court was not satisfied because, while the federal government directed Avondale to install asbestos products, it gave no direction to Avondale regarding workplace warnings pertaining to asbestos exposure.

[13]*Overly* and similar cases pertain to government contractors acting as independent contractors in filling government procurement contracts at their own plants.  The cases do not involve a government contractor acting exclusively as an agent for the federal government in operating a government-owned facility.

Many of these same cases apply a similarly chary approach to the "causal connection" element.  As will be outlined in the following section of this ruling, the chary approach to the causal connection element applied
(continued...)

-7-

instead looks to Supreme Court precedent regarding application of Section 1442(a)(1), which reveals that, unlike the case with other removal statutes, there is no rule of interpretation disfavoring removal under Section 1442(a)(1). On the contrary, the statute is not "narrow" or "limited" and is not to be given a "narrow, grudging interpretation"; the test for removal under Section 1442(a)(1) "should be broader, not narrower, than the test for official immunity." *Willingham*, 395 U.S. at 405 & 406-07, 89 S.Ct. at 1815 & 1816; accord *Peterson v. Blue Cross/Blue Shield of Texas*, 508 F.2d 55, 58 (5th Cir. 1975). Any requirement that a contractor who is running a federal production facility exclusively for the government has to show that the specific details of the negligent act were done only at the instance of precise and detailed   instructions from a federal officer in order for the contractor to be "acting under" a federal officer is an "unduly grudging" requirement.

Here, DSM was no less acting under federal authority when it followed the general directives of federal authority in running the government-owned plant than it was when it was following a specific order from a federal officer regarding a particular aspect of plant operations.  Every act taken in running the plant was taken under delegated federal authority. DSM did not cease to be running the plant for and under federal authority when it made operational decisions (such as specific decisions regarding worker safety) within the ambit of its duties without a specific express federal directive as to the particulars, for DSM acted exclusively for and under the federal government in its operation of this facility.

---

[13](...continued)
in these cases is not supported by relevant Supreme Court precedent concerning removal of civil, as opposed to criminal, actions.

-8-

Any state court suit which concerns the operations of a government-owned defense production facility triggers the strong federal policy interests protecting against possible state interference with federal functions[14] -- regardless of whether the plant is being run directly by the United States or by a contractor retained and controlled by the federal government.  Whether a federal officer directly mandated the specific alleged act or omission in question has little, if anything, to do with the core policy question of whether federal interests potentially are impacted by the state court suit.  The Court accordingly finds this requirement to be an unduly grudging one that is neither compelled by the text of Section 1442(a)(1) nor supported by the policies underlying under that section.

*"Causal Connection"*

District court cases such as *Overly* apply the "causal connection" element, much like the "acting under" element, in a manner that would require the removing party to demonstrate that the federal government specifically directed, *i.e.* "caused," the removing party to commit the precise act or omission which forms the basis of the state law claim.[15] As noted previously, Supreme Court decisions do interpret "the 'color of office' test to require a showing of a 'causal connection' between the charged conduct and asserted official authority." *Willingham*, 395 U.S. at 409, 89 S.Ct. at 1817.  But, as will be shown below, the "causal connection" required in civil cases under Supreme Court precedent is of a different nature from that required in cases such as *Overly.* In particular, the governing

---

[14]These policy interests are discussed in more depth in the final section of this ruling.

[15]In *Overly*, the element of "causal nexus" was not satisfied because the federal government exercised no control over Avondale with regard to warning of workplace hazards from asbestos.  Thus, in this case, *Overly* would require DSM to establish that the federal government specifically directed DSM to not warn contractor's employees about the dangers of inhaling silica dust during sandblasting maintenance operations.

-9-

C:

precedents from the Supreme Court do not require a showing in a civil case that the alleged wrongful act or omission itself was specifically directed or compelled by federal duty or law. Rather, the controlling decisions require only a showing that the defendant committed the alleged act or omission while performing its federal duties.

In *Willingham*, a federal prisoner alleged that the penitentiary warden, chief medical officer and others had inoculated him with "a deleterious foreign substance" and had assaulted, beaten, and tortured him in various ways. In connection with what the Supreme Court described as "a 'scattergun' complaint, charging numerous wrongs on numerous different (and unspecified) dates," the prisoner alleged in seeking remand that the penitentiary officials "had been acting 'on a frolic of their own which had no relevancy [to] their official duties as employees or officers of the United States.'" 395 U.S. at 407 & 408-09, 89 S.Ct. at 1816 & 1817. The prisoner urged that his suit therefore was not removable because the wrongs alleged did not grow out of defendants' conduct under color of office. *See* 395 U.S. at 407, 89 S.Ct. at 1816.

The *Willingham* Court rejected this invitation to focus the inquiry on whether the wrongs alleged were authorized. Instead, the high court framed the question as "whether [the officials] adequately demonstrated a basis for removal by showing that their only contact with respondent occurred while they were executing their federal duties inside the penitentiary." 395 U.S. at 408, 89 S.Ct. at 1816. The Supreme Court answered this question in the affirmative, in the following passage:

> In a civil suit of this nature, we think it was sufficient for petitioners to have shown that their relationship to respondent derived solely from their official duties. Past cases have interpreted the "color of office" test to require a showing of a "causal connection" between the charged conduct and

-10-

> asserted official authority. .... "It is enough that (petitioners')
> acts or (their) presence at the place in performance of (their)
> official duty constitute the basis, though mistaken or false, of
> the state prosecution." ....  *In this case, once petitioners had
> shown that their only contact with respondent occurred inside
> the penitentiary, while they were performing their duties, we
> believe that they had demonstrated the required "causal
> connection." The connection consists, simply enough, of the
> undisputed fact that petitioners were on duty, at their place of
> federal employment, at all the relevant times.*  If the question
> raised is whether they were engaged in some kind of "frolic of
> their own" in relation to respondent, then they should have the
> opportunity to present their version of the facts to a federal, not
> a state, court.  This is exactly what the removal statute was
> designed to accomplish.

395 U.S. at 409, 89 S.Ct. at 1817 (emphasis added; citations and footnote omitted).

Explaining its reference to "a civil suit of this nature," the high court noted that in a criminal

case, a more detailed showing of causal connection "might be necessary because of the

more compelling state interest in conducting criminal trials in the state courts." 395 U.S.

at 409 n.4, 89 S.Ct. at 1817 n.4.  *Willingham* supports the conclusion that the "causal

connection" inquiry is not one of whether the federal agent's alleged wrong was federally

authorized, but rather is one of whether the alleged wrong occurred within the course of

the agent's performance of the agent's federal duties.  *Accord Magnin v. Teledyne

Continental Motors*, 91 F.3d 1424, 1427-28 (11th Cir. 1996)(similar reading of *Willingham*).

In the instant case, from 1943 through 1955, DSM operated the government-owned

synthetic rubber plant for the federal government, pursuant to the Operating Agreement

entered into between DSM and the federal instrumentality involved.  The statement that

DSM's federal duty was the operation of the synthetic rubber plant – in all of its facets and

with all that that undertaking necessarily entailed -- is not at all an oversimplification or

overgeneralization.  Rather, it is an entirely accurate statement of an essential material

-11-

fact.  It is what DSM contractually bound itself to do, as an agent of the federal government.

Against this backdrop, it is clear that the requisite "causal connection" exists between the state court suit and DSM's discharge of its federal duties.  Mr. Lalonde was sandblasting in order to maintain and refurbish plant equipment for continued use.  The question is not whether a specific federal law or order directed DSM not to warn Lalonde about the hazards of silica exposure (or even to maintain the plant equipment), but rather the question is whether that alleged failure to warn occurred while DSM was in the performance of its federal duties, *i.e.*, in the course of its operation of the plant as an agent for the federal government.  The Court therefore holds that the requisite causal connection is satisfied here.  To the extent that some lower district court cases would hold to the contrary, the Court specifically rejects the analytical underpinnings of those cases.[4]

*Colorable Federal Defense*

As noted, the existence of a "causal connection" alone is not sufficient to satisfy the "color of office" requirement under the statute.  The federal officer or agent, in addition, must raise a colorable defense under federal law.  *Mesa*, 489 U.S. at 125-34, 109 S.Ct. at 962-67.  It is equally well-established, however, that the validity of the federal defense is

---

[4] In passing, the Court would note that cases such as *Overly* are distinguishable from this case on their facts because the government contractors in those cases were performing work under a government contract as independent contractors at a contractor-owned facility that also was used for other, non-government contract work.  In such a context, under this Court's reading of the law, the causal connection requirement arguably would distinguish tort claims arising in the course of non-government contract work from claims arising in the course of government contract work.  No such distinction is needed in this case because all work being done at the government-owned facility in question here, up through 1955, was federal government work done for the government as an agent of the government.  In any event, this Court eschews reliance upon cases such as *Overly* not because of their distinguishing facts but instead because of their legal analysis.  To the extent *Overly* implies that in all situations the causal connection requirement should be applied in a manner that requires the removing defendant to prove that the actual act or omission was itself specifically federally mandated, this Court expressly rejects such a reading of the federal officer removal statute.

a "distinct subject" that involves "wholly different inquiries" that have "no connection whatever with the question of jurisdiction." *Mesa*, 489 U.S. at 129, 109 S.Ct. at 964, quoting *The Mayor v. Cooper*, 6 Wall. 247, 254, 19 L.Ed. 851 (1868).[5] The federal defense need only be a "colorable" one, not necessarily one that ultimately will prove meritorious.

In the instant case, DSM seeks to assert two federal defenses. First, DSM relies upon the government contractor defense. Second, DSM asserts immunity pursuant to the Defense Production Act, 50 U.S.C. § 2157.

Plaintiffs contend that DSM may not rely on the government contractor defense because DSM has not shown that the federal government prohibited DSM from warning Lalonde about the dangers of silica dust or from providing him with additional protective equipment. Plaintiffs rely in this regard upon the Ninth Circuit decision in *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806 (9th Cir. 1992), in which Navy sailors brought products liability actions against asbestos manufacturers who supplied asbestos insulation used in navy vessels. The Ninth Circuit, in an alternative holding, applied the standards established in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), for determining when a products liability claim against a supplier of military equipment is barred by the government contractor defense.[6] Under *Boyle*, "liability

---

[5] *See also Willingham*, 395 U.S. at 405, 89 S.Ct. at 1815 ("the test for removal should be broader, not narrower, than the test for official immunity"); *id.*, 395 U.S. at 407, 89 S.Ct. at 1815 ("one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court"). *Accord Magnin*, 91 F.3d at 1429 ("The scope of our inquiry here is only whether [the removing defendant] has advanced a colorable federal defense (including an assertion that he complied with all his federal law obligations), not whether his defense will be successful.")

[6] The Ninth Circuit's primary holding was that the asbestos insulation did not constitute military equipment and that the government contractor defense did not apply to suppliers of nonmilitary equipment. 960 F.2d at 810-12. This proposition itself hardly is a foregone conclusion, as there currently is a split of circuit authority on this issue. *See, e.g., Carley v. Wheeled Coach*, 991 F.2d 1117 (3d Cir.), *cert. denied*, 510
(continued...)

-13-

for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States." 487 U.S. at 512, 108 S.Ct. at 2518. In *In re Hawaii Federal Asbestos Cases*, the Ninth Circuit rejected the government contractor defense *on the merits* because the asbestos manufacturers conceded that the Navy had not prohibited them from placing warnings on their insulation products. The Ninth Circuit held that the manufacturers therefore had failed to establish that they had acted in compliance with reasonably precise specifications as required under *Boyle*. 960 F.2d at 812-13.

That the specifics of the *Boyle* test (and, by extension, the Ninth Circuit's *In re Hawaii Federal Asbestos Cases* decision) apply to a government contractor hired under a performance contract to operate a federally-owned production facility exclusively for and as an agent of the federal government, under federal oversight and control, is subject to some question. Indeed, the Supreme Court established the existence and contours of a federal defense for contractors hired by the federal government under a performance contract long before *Boyle*. In *Yearsley v. W.A. Ross Construction Co.* 309 U.S. 19, 60 S.Ct. 413, 84 L.Ed. 554 (1940), in an action removed to federal court, a landowner sought to recover damages from a contractor retained by the federal government to build dikes in the Missouri River for the purpose of improving navigation. The work done had been

---

[6](...continued)
U.S. 868, 114 S.Ct. 191, 126 L.Ed.2d 150 (1993). Moreover, the Ninth Circuit's holding on this issue appears to be flatly contradicted by the Supreme Court's *Yearsley* decision discussed in the text, *infra*.

-14-

authorized and directed by the government. The *Yearsley* Court concluded that there could be no liability on the part of the contractor, who had acted as an agent of the federal government, unless the contractor either had exceeded its authority or the authority was not validly conferred. 309 U.S. at 20-21, 60 S.Ct. at 414. Significantly, one of the principal questions in *Boyle* was whether, and, under what circumstances, the Supreme Court should extend its prior holding in *Yearsley* concerning the performance contract context to a manufacturer supplying military equipment as an independent contractor under a procurement contract. *See Boyle*, 487 U.S. at 505-06, 108 S.Ct. at 2515.

The specific elements that would apply to under *Yearsley* and *Boyle* for a contractor-agent in the context presented here are far from clear. One federal court of appeals has suggested that *Yearsley* establishes a separate and "analytically distinct" "government agency defense" that turns upon (1) whether the government itself would be subject to liability on account of sovereign immunity; (2) whether the contractor actually acted as an agent of the government rather than simply as an independent contractor; and (3) whether the agent was acting within the course and scope of its duties. *See Shaw v. Grumman Aerospace Corp.*, 778 F.2d 736, 789-40 (11th Cir. 1985), *cert. denied*, 487 U.S. 1233, 108 S.Ct. 2896, 101 L.Ed.2d 930 (1988). Although another portion of the *Shaw* decision was expressly rejected by the Supreme Court in *Boyle*, *Shaw's* reading of *Yearsley* was not addressed in *Boyle*. *See* 487 U.S. at 513, 108 S.Ct. at 2519. Subsequent to *Boyle*, at least one district court has followed *Shaw's* reading of *Yearsley*. *See Amtreco, Inc. v. O.H. Materials, Inc.*, 802 F.Supp. 443 (M.D. Ga. 1992).

Fifth Circuit *dicta* suggests a possibly more limited reading of *Yearsley* than that advanced in *Shaw*. In *Bynum v. FMC Corp.*, 770 F.2d 556 (5th Cir. 1985), the court

-15-

suggested that the *Yearsley* defense required a showing of an actual agency relationship with the government but that the defense may not be available to contractors who fail to follow government specifications or mismanufacture a product. 770 F.2d at 564.[7] But this standard would not necessarily require rejection of DSM's defense here, because the failure to provide warnings or protective equipment that perhaps were not required by government specifications would not constitute a failure to follow government specifications. Moreover, the *Bynum dicta* predates *Boyle's* reading of *Yearsley*. In this rapidly changing area of the law — where even seemingly established circuit precedent is subject to reinterpretation[8] — it would be quite difficult to conclude that a removing defendant could not, as a matter of law, raise a colorable federal defense based merely on *dicta* that now is nearly fifteen years old.

It further has been suggested that the restriction of sovereign immunity in the Federal Torts Claim Act, adopted in 1948, perhaps may lead to a similar curtailing of the reach of the defense available to performance contractor-agents under *Yearsley*. *See Valori v. Johns-Manville Sales Corp.*, 1985 WL 6074, slip op. at 8* (D.N.J. 1985).[9]

---

[7] *See also Ward v. Humble Oil & Refining Co.*, 321 F.2d 775, 780 (5th Cir. 1963)(applying *Yearsley* in context of mineral rights suit to quiet title).

[8] *Compare McGonigal v. Gearhart Industries, Inc.*, 851 F.2d 774, 778 (5th Cir. 1988)(government contractor defense not available to contractor that negligently manufactured, rather than defectively designed, grenade that exploded prematurely), *and Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 246-47 (5th Cir. 1990)(government contractor defense not available to contractor where claim was based on manufacturing defect rather than design defect), *with Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794 (5th Cir. 1993)(reinterpreting *McGonigal* and *Mitchell* and concluding that the defense is not limited to design defects as opposed to manufacturing defects).

[9] Of course, a portion of the time span potentially involved in this case predates 1948 to a limited extent, as plaintiff claims that he worked at various defendant facilities from 1947 through 1976. In a related vein, the Fifth Circuit made an alternative holding in *Hansen v. Johns-Manville Products Corp.*, 734 F.2d 1036 (5th Cir. 1984), to the effect that even if there were a "government specifications" defense under Texas law (for which there was no supporting caselaw), any such defense would not apply where work under the
(continued...)

-16-

The foregoing establishes that questions remain as to the continuing reach of *Yearsley* in this particular context. However, even if *Boyle* has completely supplanted any vestige of *Yearsley*, and even if *Boyle* states the test that is applicable to the factual setting presented here,[10] the Court does not find at this stage of the proceedings that either *Boyle* or the Ninth Circuit's decision in *In re Hawaii Federal Asbestos Cases* necessarily compel a ruling in plaintiffs' favor on the government contractor defense. The Ninth Circuit's decision, which is not binding authority in this Court, concluded that the asbestos manufacturers there could not establish that were acting in compliance with "reasonably precise specifications" because they had conceded that the Navy did not prohibit them from placing warnings on their insulation products. 960 F.2d at 812. However, arguably, if the Navy approved specifications for the product that did not call for the warnings and the manufactured product conformed to those specifications, then the first two elements of *Boyle* would be satisfied.[11] The only question remaining would be whether the asbestos manufacturers failed to warned the United States about dangers associated with the use

---

[9](...continued)
government contract occurred during only five of the plaintiff's twenty-six years of employment at the single facility involved there. The Court does not find—to the extent, if any, that a similar factual situation is presented here—that *Hansen* is controlling on the question of whether a colorable *federal* defense has been asserted, because *Hansen* concerned Texas law, not the federal common law that was applied under *Boyle* (which was decided four years after *Hansen*) and *Yearsley*. Any extension of *Hansen* to the federal contractor defense would be a matter to be considered on the merits.

[10]The *Boyle* test was stated in the context of a defective design products liability suit brought against a manufacturer of military equipment by a person injured by the military equipment. The instant case presents a suit against a plant operator for injuries allegedly caused to a worker by unsafe working conditions. The different context arguably might require some reformulation of the *Boyle* test to better fit the context presented.

[11]To recap, under *Boyle*, "liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States." 487 U.S. at 512, 108 S.Ct. at 2518.

-17-

of asbestos that were known to the asbestos manufacturers but not to the United States.[12]
On that issue, Fifth Circuit authority suggests that the decision to forego safety precautions
for wartime sailors might have been a knowing and conscious one by the federal
government. *Cf. Gordon v. Lykes Brothers Steamship Co., Inc.*, 835 F.2d 96, 100 (5th Cir.
1988)(government decision not to establish a safety program for World War II merchant
seamen working with asbestos was immunized by the discretionary function exception).
Thus, this Court cannot predict with any degree of certainty that the Fifth Circuit either
would follow the same analysis or reach the same result as that of the Ninth Circuit.

Furthermore, in the context of this case, it is not entirely clear that a *Boyle*-like
analysis leads to a conclusion that the government contractor defense is not available
here. If, for example, the federal government specified safety requirements for the facility
and DSM complied with those requirements, it is arguable that the first two elements of a
*Boyle* analysis would be satisfied. If the government-specified requirements did not include
the giving of warnings to workers or the taking of further precautions regarding silica
exposure, and the government was unaware that such warnings and/or precautions were
necessary, then, arguably, the question becomes whether DSM knew of the necessity for
the warning yet failed to warn the government of silica hazards resulting from the absence
of such warnings and precautions. Such an inquiry is not one to be resolved at this stage,
but rather is one for the merits. The mere fact that DSM may not have warned the

---

[12]The Ninth Circuit apparently reads *Boyle's* first element to require the contractor to show that
something omitted (such as a warning) was explicitly required to be omitted under the specifications. This
reading of *Boyle* is subject to question. Arguably, if the product conforms to the approved specifications, *i.e.*,
everything that is called for is present, then the *absence* of an allegedly required feature (such as a warning
or a safety shield) would be a matter addressed by the question of whether the contractor then warned the
United States about the hazards of this omission in a circumstance where the United States already was not
aware of the hazards.

-18-

government, by itself, is not dispositive of the issue -- the relative knowledge of DSM and the government also is a factor in applying *Boyle's* third element.[13]

The Court notes these many questions and uncertainties in the application of a government contractor defense to the facts of this case simply to illustrate that it cannot be stated categorically at this time that the federal contractor defense is unavailable to DSM.[14] Nuances such as whether, or to what extent, certain judicial decisions survive other decisions plainly are matters for resolution on the merits of the defense, not for resolution at the jurisdictional stage. That DSM raises a colorable federal defense that can be conclusively resolved only at a later stage in these proceedings suffices to sustain jurisdiction.

The Court accordingly need not reach the question of whether DSM has raised a colorable federal defense under the Defense Production Act.

*Interference with Federal Function*

The Court therefore concludes that DSM has established the prerequisites for removal under Section 1442(a)(1)(action under a federal officer, the causal connection required for action under color of office, and the presence of a colorable federal defense). Plaintiffs appear to suggest, however, that DSM further must affirmatively demonstrate that

---

[13]*Cf. Garner v. Santoro*, 865 F.2d 629, 638 (5th Cir. 1989)(mere failure to warn government of toxicity of paint used by shipyard worker did not support district court's refusal to allow government contractor defense to go to the jury because the third *Boyle* element further required consideration of whether the United States was aware of the danger presented by the paint's toxicity).

[14]Indeed, the situation here would appear to present a paradigm case for removal under Section 1442(a)(1), at least in the sense that the application of federal law here is subject to much uncertainty. *Cf. Willingham*, 395 U.S. at 407, 89 S.Ct. at 1816 ("one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court"); *id.* at 409, 89 S.Ct. at 1817 ("[T]hey should have the opportunity to present their version of the facts to a federal, not a state, court. This is exactly what the removal statute was designed to accomplish. Petitioners sufficiently put in issue the questions of official justification and immunity; the validity of their defenses should be determined in the federal courts.").

-19-

the current action "could arrest, restrict, impair, or interfere with either the actions of a federal official or the operations of the federal government," relying on the Fifth Circuit's decision in *Murray v. Murray*. *See* 621 F.2d at 107. Plaintiffs suggest that this action cannot impair federal interests because the death and suit arise almost 40 years after all operations have ceased under the contract between DSM and the federal corporate intermediaries.

The Court does not read the *Murray* decision as establishing a requirement that the removing party show, in addition to the three elements discussed above, a specific impairment of federal interests in the given case. *Murray* does stand as authority regarding the policy and rationale underlying federal officer removal: "that federal officers are entitled to, and the interest of national supremacy requires, the protection of a federal forum in those actions commenced in state court that could arrest, restrict, impair, or interfere with the exercise of federal authority by federal officials." 621 F.2d at 106. The *Murray* court referred back to this underlying rationale in holding that a garnishment action – which does not affect the United States' substantive obligation – is not removable under Section 1442(a)(1). *Id.*, at 107. In so doing, the *Murray* panel specifically reaffirmed that the statute "permits the removal of those actions commenced in state court that expose a federal official [or person acting under him] to potential civil liability ... for an act *performed in the past* under color of office." *Id.*, at 107 (emphasis added).

Insofar as frustration of federal interests is an independent concern here, the Court would note that, quite clearly, the imposition of a future liability against a government contractor for past work can as much impair federal interests as would a current liability during the term of an ongoing agreement.

-20-

> [T]he extent of a contractor's liability may, undoubtedly will, affect future dealings between the contractor and the government. .... Speculative federal interests in the obligations of war contractors are numerous. War contractors might be expected to increase the price of war materials to correspond to any extension in their potential liability. Such adjustments might have a significant effect on the federal treasury. If potential liability increased dramatically, future war contractors might attach conditions to the use of their products, or balk at supplying the military with any products whatsoever. Thus, the government's military capacities might be affected.

*In re "Agent Orange" Product Liability Litigation*, 506 F.Supp. 737, 746-47 & n.5 (E.D.N.Y.), *rev'd on other grounds* 635 F.2d 987 (2nd Cir. 1980), *quoted in Bynum v. FMC Corp.*, 770 F.2d 556, 570 n.18 (5th Cir. 1985).

That the synthetic rubber produced at DSM Copolymer in the late 1940's and early 1950's has long since made its way to its appointed tasks on distant shores, for wars that now recede into the history of a waning century, is of no moment here. What matters here is the continuing ability of the federal government to be able to respond in times of national need, and to be able to bring the resources of private industry to bear in such times. Removal by this wartime supplier of this strategic and critical material, on the basis of a federal contractor defense, therefore is clearly consonant with the policies underlying the federal officer removal statute.

## CONCLUSION

Accordingly, for the foregoing reasons, plaintiff's motion to remand (rec.doc.no. 43) is DENIED.

Baton Rouge, Louisiana, this __5th__ day of ~~August~~ 1998.

_____
UNITED STATES MAGISTRATE JUDGE

-21-

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BARBARA CATANIA, ET AL

VERSUS

AcandS, INC., ET AL

CIVIL ACTION

NUMBER 02-368-D-1

NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within ten days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June _14_, 2002.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

EXHIBIT

C

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BARBARA CATANIA, ET AL

VERSUS

ACandS, INC., ET AL

CIVIL ACTION

NUMBER 02-368-D-1

## MAGISTRATE JUDGE'S REPORT

This matter is before the court on the motion of plaintiffs Barbara Catania and Michael Catania to remand.  Record document number 11.  The motion is opposed.

Plaintiffs filed suit in state court against numerous defendants contending that Barbara Catania contracted mesothelioma from exposure to asbestos when she was a child.  Plaintiffs do not allege that Barbara Catania used any products containing asbestos or that she was present at any work site where asbestos-containing products were used.  Plaintiffs claim that she was exposed to asbestos carried on the work clothes of her uncles.  Defendant Viacom, Inc. learned that two of her uncles, Peter Giordano and Victor Reno, applied asbestos-containing insulation products at a facility owned by DSM Copolymer, Inc.  Viacom then filed a third party demand naming DSM Copolymer as a third party defendant.[1]  DSM Copolymer then removed the case to this court relying upon 28 U.S.C. §1442.  Plaintiffs moved to remand.

---

[1] Record document number 12, memorandum in support, Exhibit 4.

The foregoing procedural history of this case understates the scope of the arguments made by the plaintiffs in support of their motion to remand. Notwithstanding the breadth of the plaintiffs' procedural arguments, the issues before the court are quite straightforward: (1) did DSM Copolymer properly remove the case from state court, and (2) whether the third party demand should be severed and the remainder of the case remanded to state court. Other issues raised by the motion to remand should be addressed only if the court determines that the case was properly removed and decides not to remand the main demand.

There is no dispute that Viacom filed a third party demand against DSM Copolymer and that DSM Copolymer timely removed the case to this court. DSM Copolymer based the removal on 28 U.S.C. §1442(a)(1), asserting subject matter jurisdiction under 28 U.S.C. §1331. DSM Copolymer asserted in its notice of removal that Viacom's third party demand arises out of Barbara Catania's exposure to asbestos fibers which came from asbestos-containing products at DSM Copolymer's facility. The alleged exposure occurred during periods when the facility was owned by the United States Government but operated by DSM Copolymer under the authority and direction of federal officers acting in their official capacities to direct the construction and operation of the plant, as well as during periods of ownership by DSM Copolymer but under continuing governmental control. DSM Copolymer relied upon, and

2

attached to its notice of removal, the ruling denying the motion to remand filed by the plaintiffs in Vera G. LaLonde, et al v. Delta Field Erection, et al, CV 96-3244-B-3 (M.D. La. 1998).[2] Although LaLonde involved alleged inhalation of silica dust, the ruling thoroughly analyzed the application of section 1442(a)(1) to the same DSM Copolymer facility.

As explained in the LaLonde ruling, the party removing a case relying on section 1442(a) must show: (1) that the removing defendant was acting under an officer of the United States or an agency thereof; (2) that there was a causal connection between the charged conduct and the asserted official authority; and (3) that the removing defendant has a colorable defense under federal law. Mesa v. California, 489 U.S. 121, 125-34, 109 S.Ct. 959, 962-67 (1989); Willingham v. Morgan, 395 U.S. 402, 409, 89 S.Ct. 1813, 1817 (1969).

DSM Copolymer has made the showing required by section 1442(a)(1). The history of the DSM Copolymer facility was thoroughly set forth in the LaLonde decision and was repeated in DSM Copolymer's opposition memorandum.[3] No useful purpose would be served by restating that history. Plaintiffs' argument that DSM Copolymer has not shown it was acting under the direction of an

---

[2] Record document number 18, opposition memorandum, pp. 4-23, and Exhibit H.

[3] Id., Exhibits A-G.

3

officer of the United States or an agency thereof is factually
unsupported and unpersuasive.

DSM Copolymer has also satisfactorily demonstrated that there
is a causal connection between its alleged tortious conduct and the
asserted official authority.  The third party claim against DSM
Copolymer is based on the allegation that it failed to provide a
safe work place free from the dangers of asbestos exposure and
failure to warn of such dangers.  The affidavit of Robert R.
Dennis, Jr. establishes that the use of asbestos-containing
insulation products was essential to the operation of DSM
Copolymer's facility and that the original plans and specifications
for the design and construction of the facility required the use of
asbestos-containing insulation.[4]

DSM Copolymer has asserted a colorable federal defense.  In
determining whether the case was properly removed, the court should
not decide whether DSM Copolymer will ultimately prevail on that
defense.  Crocker v. Borden, Inc., 852 F.Supp. 1322, 1326-27 (E.D.
La. 1994); Aikin v. Big Three Industries, Inc., 851 F.Supp. 819,
823 (E.D. Tex. 1994).  Additionally, one of the most important
reasons for removal under section 1442 is to have the validity of
the defense determined by a federal court.  LaLonde, supra, at n.

---

[4] Record document number 18, opposition memorandum, Exhibit F.
See also, affidavits of Arley Ray Barker and Martin E. Samuels,
explaining that through 1955 all aspects of the operation of the
facility, including safety issues, were controlled by the United
States.  Id., Exhibits D and E.

4

14, quoting, Willingham, 395 U.S. at 407, 89 S.Ct. at 1816.  DSM

Copolymer has pled defenses based on its status as a government

contractor and under the Defense Protection Act of 1950.   These

same two defenses were asserted by DSM Copolymer in the LaLonde

case.[5]  Plaintiffs' arguments in support of their position that the

government contractor defense does not apply in this case are

addressed to the merits of the defense, not whether the defense is

at least colorable.  Relying on the LaLonde ruling, DSM Copolymer

has shown that it has asserted at least a colorable defense under

federal law.

As an alternative to remanding the entire case, the plaintiffs

urged the court to exercise its discretionary authority under 28

U.S.C. §1367 by severing the third party demand against DSM

Copolymer and remanding the remainder of the case.[6]

Under section 1367(c), this court may decline to exercise

supplemental jurisdiction if:

_____

[5] In LaLonde, the plaintiffs' claims were based on alleged
exposure to silica dust, whereas in this case the plaintiff alleged
exposure to asbestos.  The distinction is not dispositive because
in LaLonde the court relied, in part, on cases involving asbestos
exposure.    Record document number 18, opposition memorandum,
Exhibit H, pp. 13-18.  Because the claims in LaLonde against DSM
Copolymer were dismissed on other grounds, this court did not
decide whether the Defense Protection Act or the government
contractor defense was applicable.  LaLonde, record document number
189, Order and Reasons.

[6] There is no dispute that there is no independent basis for
exercising original jurisdiction over the main demand.  As to the
main demand, this court may exercise only supplemental jurisdiction
under section 1367(a).

5

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Plaintiffs relied on Crocker v. Borden, Inc., 852 F.Supp. 1322, 1329-30 (E.D. La. 1994), to support their alternative position. As in Crocker, the plaintiffs' claims are exclusively based on state law, and if the main demand is not remanded the plaintiffs face the potential of transfer to multi-district litigation.

DSM Copolymer argued that its liability for alleged exposure to asbestos will be an issue in the main demand even though it was not sued directly by the plaintiffs. Consequently, DSM Copolymer would be involved in discovery in both federal and state court if the main demand is severed and remanded. Ultimately, DSM Copolymer's employee and non-employee witnesses would be subject to testifying in two trials on the same issue arising out of the same occurrence. Finally, DSM Copolymer maintained that it is entitled to a federal forum for the determination of its federal defenses.

As noted previously, section 1367(c) permits this court to decline to exercise supplemental jurisdiction in exceptional circumstances when there are other compelling reasons for declining jurisdiction. In arguing strenuously for a remand, the plaintiffs

6

repeatedly note that the state court judge in Orleans Parish, invoking Louisiana Code of Civil Procedure Article 1573, assigned this case for trial on an expedited basis. Under that procedural rule, the state trial court is required to grant a plaintiff who is not expected to live for more than six months preferential treatment when assigning the case for trial. Based on that procedural rule, the case was assigned for trial on June 10, 2002.[7] There is no comparable Federal Rule of Civil Procedure. Although under Rule 16, Federal Rules of Civil Procedure, the court may fix the dates for the final pretrial conference and the trial early in the litigation, Rule 16 does not require preferential treatment for any party.

Considerations of judicial economy, convenience and fairness to the litigants support granting the plaintiffs' request to sever the third party demand against DSM Copolymer and remand the main demand to state court. Plaintiffs have asserted no claim against DSM Copolymer. Whether the third party demand against it is litigated in this court or in state court, DSM Copolymer and its employees will be involved in discovery. Although DSM Copolymer complains that its employee and non-employee witnesses will be involved in two trials, this is not necessarily so. It would appear that if either of the defenses relied upon by DSM Copolymer to support removal is successful--a decision which would be made in federal court--it would no longer be involved in the state court

---

[7] Record document number 12, memorandum in support, Exhibit 1.

7

case.  To the extent DSM Copolymer remains involved in litigating the third party demand in this court and the main demand in state court, discovery could be coordinated in a manner which would reduce duplication of effort and thereby reduce its expenses. Lastly, the absence of a federal procedural rule which gives the plaintiffs an opportunity to obtain an expedited trial while plaintiff Barbara Catania is still alive constitutes an exceptional circumstance and a compelling reason for this court to decline to exercise supplemental jurisdiction over the main demand.

### RECOMMENDATION

It is the recommendation of the magistrate judge that the motion of plaintiffs Barbara Catania and Michael Catania to remand be denied, insofar as the plaintiffs sought remand of the entire case.  It is the further recommendation of the magistrate judge that this court decline to exercise supplemental jurisdiction under 28 U.S.C. §1367(c) over the plaintiffs' main demand, and any other counterclaims or cross claims between or among the plaintiffs and the defendants, and all such claims be remanded to the state court, this court retaining jurisdiction only over the third party demand of Viacom, Inc. against DSM Copolymer, Inc.

Baton Rouge, Louisiana, June 14, 2002.


STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

8

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

BARBARA CATANIA, ET AL

VERSUS

ACANDS, INC., ET AL

CIVIL ACTION

NO. 02-368-D

## RULING AND ORDER

This matter is before the court on: (i) a motion (doc. 39) by defendant Viacom to stay; (ii) a motion (doc. 11) by plaintiffs to remand; and (iii) a motion (doc. 46) by plaintiffs for expedited consideration of their motion to remand. The court has carefully reviewed the record, including the numerous briefs filed by the parties and the report and recommendation (doc. 33) of the United States Magistrate Judge, dated June 14, 2002; as well as the law applicable to this action.

Preliminarily, the court grants the motion by plaintiffs for expedited consideration of the motion to remand and denies the motion by Viacom to stay. The court would normally defer action pending a decision by the Judicial Panel on Multidistrict Litigation regarding the conditional transfer order entered May 21, 2002. However, in view of Mrs. Catania's terminal condition, the court is persuaded that disposition of the motion to remand should not be postponed. Accordingly, the court turns to the report and recommendation of the magistrate judge addressing the motion to remand.

In his report, the magistrate judge concludes that third party defendant DSM Copolymer properly removed this matter from state court under 28 U.S.C. §1442(a)(1) (federal officer removal statute). The magistrate judge further concludes that the main demand is severable

from the third party demand and that the court should exercise its discretion under the supplemental jurisdiction statute to remand the main demand to state court.

After having carefully reviewed the record, the report of the magistrate judge and the briefs filed by the parties, the court hereby approves the report and adopts it in part as its opinion herein to the extent that it concludes that removal was proper under 28 U.S.C. §1442. However, as to the part of the report that concludes that the main demand should be severed and remanded, the court disagrees. Defendants persuasively argue that, even if the supplemental jurisdictional statute applies in this case, it would be impractical and very prejudicial to the defendants to try the main demand without DSM Copolymer's presence. To require DSM Copolymer to participate in the state court proceedings would effectively do an end run around the removal statute. The potential of transfer to MDL notwithstanding, the court concludes that a better exercise of discretion would be to retain jurisdiction over the entire matter but to proceed to set a trial date on an expedited basis.

Accordingly, IT IS ORDERED that plaintiffs' motion for expedited consideration (doc. 46) be and is hereby GRANTED; that defendant's motion to stay (doc. 39) be and is hereby DENIED; and that plaintiffs' motion to remand (doc. 11) be and is hereby DENIED. This matter is referred back to the magistrate judge for expedited consideration.

Baton Rouge, Louisiana, July 18th, 2002.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA

2