# Exhibit A

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO.: *587390*                    SECTION                    DIVISION " "

JOSEPH A. ARDOIN, JR.

VERSUS

ANCO INSULATIONS, INC., ET AL

FILED: _____       _____
                                                      DEPUTY CLERK

## PETITION FOR DAMAGES

Now into Court, through undersigned counsel, comes the petitioner, Joseph A. Ardoin, Jr., (hereinafter referred to as the Plaintiff), an adult resident of Louisiana whose name and residence is shown on Exhibit "A" which is attached hereto and incorporated herein, who files this his Petition for Damages:

1.      The Plaintiff had substantial exposure to Defendants' asbestos-containing products at the location(s) described in Exhibit "A".

2.      The damages sought by Plaintiff, exclusive of interests and costs, exceed the minimum jurisdictional limits of the Court.

3.      The Defendants, identified in Exhibit "B," are all either:   (a) foreign corporations licensed to do and doing business in the state of Louisiana, (b) domestic corporations licensed to do business and doing business in the state of Louisiana, (c) individuals who are domiciled in this state, (d) individuals who are not domiciled in this state, or (e) foreign or alien insurers, that are liable to the Plaintiff for the claims asserted herein.

4.      Each Defendant corporation and/or its predecessor-in-interest is, or at times material hereto, has been engaged in the mining, processing, manufacturing, installation, removal, maintenance, sale and/or distribution of asbestos asbestos-containing products, and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products (hereinafter collectively referred to as "asbestos-containing products"), or held themselves out as manufacturers of such products or were professional vendors of such products.

FAX COPY FILED 2-10-10
ORIGINAL FILED 2-11-10

5.   Plaintiff worked with and/or was exposed to asbestos-containing products while working at defendants' premises in the state of Louisiana. Plaintiff's work sites, trades and years of exposure to asbestos include, but are not limited to those identified in Exhibit "A." Plaintiff has been exposed, on numerous occasions, to asbestos and/or asbestos-containing products produced, manufactured, installed, removed, maintained, sold, and/or distributed by Defendants and, in so doing, has inhaled significant quantities of asbestos fibers, and as a result has suffered injuries proximately caused by such exposure.

6.   Plaintiff was exposed to asbestos or asbestos-containing products in occupation(s) including, but not limited to, those set forth in Exhibit "A." The conduct of each Defendant was a substantial contributing factor in causing Plaintiff's injuries, such that all Defendants are liable jointly, severally, and in solido for all of the damages complained of herein.

## VENUE

7.   The defendants, Anco Insulations, Inc., and The McCarty Corporation are domestic corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites in Exhibit "A." Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

8.   The defendants, Exxon Mobil Corporation and Union Carbide Corporation are foreign corporations with principal places of business located in this Parish. Plaintiff was exposed to products, distributed and installed by the above-referenced defendants at the work sites in Exhibit "A." Plaintiff specifically alleges that these products, in combination with other asbestos-containing products, caused his asbestos-related injuries.

9.   Each of the defendants listed in Exhibits "B," contributed with Anco Insulations, Inc., The McCarty Corporation, Exxon Mobil Corporation and Union Carbide Corporation, to Plaintiff's exposure to asbestos at his work sites, including but

not limited to, the exposure sites located on Exhibit "A." Each of these defendants is liable in solido, with Anco Insulations, Inc., The McCarty Corporation, Exxon Mobil Corporation and Union Carbide Corporation, to the Plaintiff. Thus, venue proper for these defendants is proper for all defendants pursuant to Louisiana Code of Civil Procedure articles 42 and 73.

<u>BACKGROUND</u>

10.    During Plaintiff's occupational exposure periods, each of the defendants listed below designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied and/or sold asbestos-containing products as set forth below:

| Defendant | Asbestos-Containing Products |
|---|---|
| Aber, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Anco Insulations, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| B & B Engineering and Supply Co. of Louisiana, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| B & B Engineering and Supply Company, Inc. | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Bituminous Insurance Company | See B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply Company, Inc. |
| Commercial Union Insurance Company | See Eagle, Inc. and The McCarty Corporation |
| Eagle, Inc. (Formerly Eagle Asbestos & Packing Co., Inc.) | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Liberty Mutual Insurance Company | See B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply |

3

| | Company, Inc. |
|---|---|
| The McCarty Corporation | Pipe insulation, block insulation, insulating cement, finishing cement, asphaltic mastic, weather coating, insulation fittings, blankets, felt, tape, jackets, vessel covers, board, roofing, siding, duct, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| Newark Insurance Company | See Anco Insulations, Inc. |
| Royal Indemnity Company | See Aber Company, Inc. |
| Travelers Indemnity Company | See Aber Company, Inc., B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply Company, Inc. |
| Travelers Insurance Company | See Aber Company, Inc., B & B Engineering and Supply Company of Louisiana, Inc. and B & B Engineering and Supply Company, Inc. |
| Westchester Fire Insurance Company | See Anco Insulations, Inc. |
| Zurich Insurance Company | See Anco Insulations, Inc. |
| Owens-Illinois, Inc. | Pipe insulation, block insulation and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |
| Union Carbide Corporation | Asbestos fiber and such other asbestos-containing products as may be discovered during discovery and/or proven at trial |
| National Union Fire Ins. Co. of Pittsburgh, PA | See The McCarty Corporation |
| Lexington Insurance Company | See The McCarty Corporation |
| Crane Co. | Pumps (boiler blow down, feed and condensate return, hydrocarbon and nuclear generation, heat transfer, fluid transfer, fuel transfer, salvage, bilge and ballast, and dewatering), valves, gaskets, packing and such other asbestos-containing products as may be discovered during discovery and/or proven at trial. |

Each of the foregoing asbestos containing products was used at Plaintiff's jobsites listed on Exhibit "A" where Plaintiff was exposed to such asbestos-containing products, construction materials, insulation, and products that contained fibrous, incombustible, chemical-resistant mineral substances commonly called "asbestos."

11.    When inhaled or otherwise ingested, asbestos causes irreparable and progressive damage that can manifest itself as asbestos-related pleural diseases, such as asbestosis, lung cancer and mesothelioma, pulmonary and bronchogenic carcinomas, gastrointestinal cancers, cardiac diseases, and other diseases and injuries.

12.    Each of the defendants knew or should have known through industry and medical studies, the existence of which were unknown to the Plaintiff, of the health hazards inherent in the asbestos-containing products they were selling.  Instead of

4

warning the Plaintiff and the general public about these dangers, certain defendants ignored or actively concealed such information, or condoned such concealment, in order to sell asbestos or asbestos-containing products and to avoid litigation by those who were injured from asbestos inhalation. Those defendants who have engaged in fraud, or concealment or conspiracy to defraud or conceal the dangers of asbestos-containing products are specifically set forth and their conduct specifically described hereinafter in the section which, in addition to negligence and strict liability, identifies other forms of misconduct as set out herein and similarly identified by name of the particular defendant above the specific counts of misconduct.

13.    In connection with their work at, including but not limited to, Plaintiff's jobsites listed on Exhibit "A" during the exposure period, the Plaintiff was exposed to and inhaled or otherwise ingested significant quantities of asbestos having neither knowledge nor reason to believe that these materials were dangerous.

14.    As a direct and proximate contributing result of having inhaled, ingested or otherwise having been exposed to asbestos while working at, including but not limited to, the exposure sites on Exhibit "A." Plaintiff has received injuries, both physically and mentally, including, without limitation, (i) Asbestos-related Lung Cancer (ii) increased susceptibility to one of the foregoing diseases and other illnesses; and (iii) mental anguish associated with the preceding conditions, and with the fear of developing the preceding conditions.

15.    Because of the latency period of the above injuries and other injuries caused by asbestos and because of the active concealment by some defendants of the causes and effects of exposure to asbestos, the Plaintiff has only recently discovered his injuries, and not more than one year preceding this filing of the initial Petition for Damages.

### COUNT ONE

#### NEGLIGENCE
("Defendants" in this count means all Defendants, except for the Premise
Defendants, Employer Defendants, and Executive Officer Defendants listed on
Exhibits "D" and "E")

16.    The illnesses and disabilities of Plaintiff is a direct and proximate result of

the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, sold and/or otherwise put into the stream of commerce asbestos or asbestos-containing products, which the Defendants knew, or in the exercise of ordinary care, should have known were deleterious and highly harmful to Plaintiff's health and well-being. The Defendants were negligent in one, some or all of the following respects, among others, same being the proximate cause of Plaintiff's illnesses and disabilities:

(a)     failing to timely and adequately warn Plaintiff of the dangerous characteristics and serious health hazards associated with exposure to asbestos and/or asbestos-containing products;

(b)     failing to provide Plaintiff with information as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances, if any, to protect Plaintiff from being harmed and disabled by exposure to asbestos and/or asbestos-containing products;

(c)     failing to place timely and adequate warnings on the containers of said asbestos, or asbestos-containing products, to warn of the dangers to health of coming into contact with said asbestos or asbestos-containing products and/or machinery;

(d)     failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling, installing, and/or using or removing asbestos and/or asbestos-containing products;

(e)     failing to develop and/or use a substitute material to eliminate asbestos fibers in the asbestos-containing products;

(f)     failing to properly design and manufacture asbestos and/or asbestos-containing products for safe use under conditions of use that were reasonably anticipated;

(g)     failing to properly test asbestos-containing products before they were released for consumer use; and

(h)   failing to recall and/or remove from the stream of commerce said asbestos-containing products despite knowledge of the unsafe and dangerous nature of such products.

<u>COUNT TWO</u>

STRICT LIABILITY
("Defendants" in this count means all Defendants, except for the Premise Defendants, Employer Defendants, and Executive Officer Defendants listed on Exhibits "D" and "E")

17.     All of the allegations contained in the previous paragraphs are realleged herein.

18.     Plaintiff was exposed to asbestos-containing products that were manufactured and distributed by the Defendants and/or their predecessors-in-interest for use as construction materials and/or machinery in industrial operations. The defective condition of the products rendered such products unreasonably dangerous, and the asbestos-containing products were in this defective condition at the time they left the hands of Defendants. Further, said products were unreasonably dangerous per se, unreasonably dangerous due to Defendants' failure to warn, and unreasonably dangerous due to a design defect.

19.     The Defendants are engaged in the business of selling asbestos-containing products, and these products, without substantial change in the condition in which they were sold, were a proximate cause of the injuries of Plaintiff.

20.     Defendants knew that these asbestos-containing products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include safe manipulation, installation, operation, maintenance and/or repair of the asbestos-containing products.

21.     Plaintiffs were unaware of the hazards and defects in the asbestos-containing products of the Defendants which made them unsafe for purposes of manipulation and/or installation.

22.     During the periods that Plaintiff was exposed to the Defendants' asbestos-containing products, these asbestos-containing products were being used in a manner

which was intended and/or reasonably foreseeable by Defendants.

**COUNT THREE**

**STRICT LIABILITY
AND NEGLIGENCE AGAINST THE CONTRACTOR DEFENDANTS**

23.     The Defendants contracted with the owners of the jobsites identified on Exhibit "A" to perform certain activities at those jobsites prior to and/or during each Plaintiff's exposure period at each such jobsite.

24.     At times, the Defendants subcontracted with others to perform a portion of the activities that they contracted with the owners of the jobsites identified on Exhibit "A" to perform.

25.     The activities conducted by the Defendants and/or their subcontractors, included, but were not limited to, the application, demolition, displacement, disturbance, fabrication, installation, purchase, removal, repair, replacement, tearing out, and use of asbestos-containing products at, on and/or for the jobsites identified in Exhibit "A."

26.     The foregoing activities resulted in the release of substantial quantities of asbestos dust into the work environment.

27.     Plaintiff was exposed to and inhaled substantial quantities of asbestos dust as a direct and proximate result of the activities of the Contractor Defendants and their subcontractors identified in Exhibit "C."

28.     The Contractor Defendants negligently performed and/or permitted their subcontractors to negligently perform the foregoing activities in the following non-exclusive particulars:

(a)     By creating a work environment laden with asbestos dust and an unhealthy and unsafe place for Plaintiff to work;

(b)     By failing to provide warnings, or adequate warnings, to Plaintiff of the dangers and risks posed by the asbestos in the atmosphere in which Plaintiff worked; of the need for correct, adequate, and/or appropriate safety equipment; of critical medical and safety information regarding asbestos hazards in general and of hazards at the jobsite in particular; and

8

of the hazards created by Defendants' activities;

(c)    By failing to test, or adequately test, the work environment for the presence of toxic, hazardous and carcinogenic chemicals, particularly asbestos;

(d)    By failing to apprize Plaintiff of the need for periodic medical examinations as a result of Plaintiff's exposure to asbestos created by Defendants' activities;

(e)    By failing to ventilate and/or properly ventilate the areas in which Plaintiff performed activities, or otherwise provide a safe and suitable means of eliminating the amount of asbestos dust in the air;

(f)    By failing to clean up and/or properly clean up the asbestos dust created by Plaintiff's activities;

(g)    By failing to formulate policies and adopt plans, procedures, and supervision necessary for the adequate protection of persons, such as Plaintiff, who came into contact with asbestos dust as a result of Plaintiff's activities;

(h)    By recklessly concealing from Plaintiff and negligently failing to provide critical medical and safety information to Plaintiff regarding the safety and health risks associated with the asbestos and asbestos-containing products;

(i)    By failing to adopt and/or failing to enforce safety rules after such rules were actually adopted;

(j)    By failing to keep abreast of the scientific and engineering knowledge regarding the dangers of, and protection against, occupational exposure to asbestos;

(k)    By failing to properly supervise and/or monitor their work areas for compliance with safety regulations;

(l)    By failing to supervise their operations and the operations of their subcontractors;

(m)   By commencing and continuing operations, which were under their control and supervision when they knew or should have known that such operations would cause Plaintiff and co-employees to be exposed to asbestos, without protection, on a daily basis;

(n)   By failing to timely, adequately and safely remove asbestos hazards from the workplace;

(o)   By failing to comply with applicable State and Federal regulations regulating workplace exposure to asbestos (including, but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh-Healey Public Contracts Act and the Occupational Safety and Health Act);

(p)   By applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that Defendants knew, or in the exercise of reasonable diligence should have known, were unreasonably dangerous, or unreasonably dangerous per se;

(q)   By not providing safety instructions or sufficient safety instructions for eliminating or reducing the health risks associated with the their activities;

(r)   By failing to test or adequately test the materials with which they were working to determine the presence of asbestos;

(s)   By failing to purchase products and materials that did not contain asbestos;

(t)   By purchasing, using, applying, demolishing, displacing, disturbing, fabricating, installing, removing, repairing, replacing, and tearing out products that contained asbestos;

(u)   By failing to properly label products that they purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and tore out as containing asbestos; and

(v)   By conducting their activities through such other negligent acts or omissions, as may be revealed in discovery and/or proven at trial.

29.   The negligent acts outlined above were a substantial contributing factor in Plaintiff's exposure to dangerous and hazardous levels of asbestos, and resultant damages.

30.   The foregoing negligent acts of the Contractor Defendants were a cause-in-fact and proximate cause of the Plaintiffs' injuries and damages.

31.   Additionally, the Contractor Defendants are liable for the acts of their subcontractors under the doctrine of *respondeat superior* and Louisiana Civil Code article 2320.

32.   Additionally and alternatively, the asbestos-containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants were in the care, custody and control of the Contractor Defendants, were unreasonably dangerous due to the presence of asbestos, and were a proximate cause and cause-in-fact of the Plaintiff's injuries.  Therefore, the Contractor Defendants are strictly liable for Plaintiff's damages pursuant to Louisiana Civil Code article 2317.

33.   Additionally, when such contractors did not employ Plaintiff, Plaintiff was exposed to the asbestos containing products that were purchased, used, applied, demolished, displaced, disturbed, fabricated, installed, removed, repaired, replaced, and torn out by the Contractor Defendants that were in the care, custody and control of the Contractor Defendants and were unreasonably dangerous due to the presence of asbestos.

## COUNT FOUR

### NEGLIGENCE OF PLAINTIFF'S EMPLOYERS/EMPLOYERS' EXECUTIVE OFFICERS AND DIRECTORS
(As to Plaintiff's Employers/Employers' Executive Officers and Directors only.  "Defendants" in this count means these Defendants only, as identified in Exhibit "D")

34.   Plaintiff alleges negligent, grossly negligent, and wanton misconduct on behalf of Plaintiff's employers and employers' executive officers and directors, as identified in Exhibit "D," in failing to provide and/or ensure a safe workplace for their employees, free of hazardous concentrations of asbestos and asbestos-containing dust.

35.   At various times, Plaintiff was employed by the Defendant

employers/officers/directors and during such time were continuously exposed to asbestos and asbestos-containing dust without the provision of appropriate safeguards by Defendants.

36.    The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest undertook and assumed the duties and responsibilities owed individually and/or delegated to them for providing Plaintiff with a safe place to work and Defendants wantonly and/or negligently and/or willfully failed to provide Plaintiff a safe place to work.

37.    Plaintiff's employers delegated to the executive officers and directors, named on Exhibit "D," the responsibility to provide Plaintiff with proper supervision, safety instruction, warnings concerning dangers or hazards in the workplace, and generally to provide Plaintiff a safe workplace and to protect Plaintiff's life, health, safety and welfare while employed by the Defendant employers.  Plaintiff alleges that the executive officers and directors had the following responsibilities delegated to him by his employer or actually undertook to perform the following duties:

(a)    inspection, approval and supervision of the work of Plaintiff and his co-employees;

(b)    to see that proper safety rules were adopted, promulgated, and enforced concerning the use of respiratory protection devices;

(c)    to see that Plaintiff and his co-employees performed the duties pertaining to their work in a proper, safe and workmanlike manner;

(d)    to see that Plaintiff and his co-employees used safe and sound principals and practices in their work;

(e)    to make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices;

(f)    to keep abreast of state of the art knowledge as it pertains to the dangers of asbestos inhalation;

(g)    to provide adequate warnings, physical examinations, safety equipment, ventilation, and breathing apparatus, where such was necessary in order

to prevent Plaintiff from being harmed by exposure to asbestos in the environment which Plaintiff was required to work;

(h)    to make certain that employees, including Plaintiff, were provided a safe working environment free from asbestos dust inhalation;

(i)    to comply with applicable State and Federal regulations regulating workplace exposure to asbestos, including but not limited to those regulations promulgated by the U.S. Department of Labor pursuant to the Walsh/Healey Act and the Occupational Safety and Health Act; and

(j)    to provide Plaintiff with a safe place to work.

38.    Each of the Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest, individually and/or in concert, breached their duty of ordinary care to the Plaintiff by negligently performing duties owed individually and/or delegated to them, directly and proximately causing the asbestos-related injuries, illnesses and disabilities of Plaintiff. The Defendants and/or their predecessors-in-interest, subsidiaries, or successors-in-interest were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of Plaintiff's asbestos-related injuries, illnesses and disabilities:

(a)    in failing to provide adequate safety equipment;

(b)    in failing to protect Plaintiff from any asbestos exposure;

(c)    in failing to provide Plaintiff sufficient personal protective equipment, safety devices and work procedures intended to prevent or substantially eliminate the effects of asbestos exposure;

(d)    in failing to supervise or insure compliance with safety guidelines concerning exposure to asbestos or asbestos-containing products;

(e)    in failing to use or misusing equipment and instrumentalities within their control which were intended to minimize Plaintiff's exposure to asbestos dust;

(f)    in failing to properly perform safety inspections of the Plaintiff's work place;

(g)     in failing to properly perform engineering services, consulting and
direction of work involving the installation, removal, maintenance and/or
disturbance of asbestos at Plaintiff's work sites;

(h)     in failing to comply with applicable State and Federal regulations
regarding workplace exposure to asbestos; and

(i)     in failing to properly perform or direct the removal and abatement of
asbestos in place at Plaintiff's work sites; and

(j)     in negligently failing to disclose, warn or reveal medical and safety
information to Plaintiff regarding the hazards of asbestos.

39.     The negligence of Plaintiff's employers' executive officers and directors
was a substantial factor and contributed in causing Plaintiff's asbestos-related injuries
and damages.

## COUNT FIVE

### INTENTIONAL TORT
**(As to Plaintiffs' Employers and Employers' Officers and Directors only.
"Defendants" in this count means these Defendants only, as identified in Exhibit
"D")**

40.     Defendant employers, officers and directors, identified in Exhibit "D", are
liable for their intentional, willful and wanton failure to disclose to Plaintiff the dangers
associated with exposure to asbestos, the risks associated with working in an
atmosphere contaminated with asbestos and the likely medical effects of such exposure.

41.     Because of Plaintiff's good faith reliance on Defendants'
misrepresentations, Plaintiff continued to work in areas contaminated with asbestos
and continued to be exposed to asbestos.   As a result, Plaintiff contracted asbestos-
related lung cancer.

42.     Defendant employers committed the following intentional acts which
caused Plaintiff to suffer from asbestos-related diseases:

(a)     Intentionally failing to provide necessary protection to Plaintiff;

(b)     Intentionally failing to provide safety equipment as required by safety
statutes;

(c)     Intentionally failing to provide clean, respirable air, and proper

14

ventilation;

(d)     Intentionally failing to provide proper medical monitoring;

(e)     Intentionally failing to monitor the extent and output of asbestos dust into the workplace;

(f)     Intentionally failing to warn Plaintiff and other workers of the dangers associated with asbestos and/or asbestos containing products;

(g)     Intentionally inducing the Plaintiff and other workers to work in a workplace polluted with asbestos and/or asbestos containing products; and

(h)     Intentionally failing to keep asbestos and/or asbestos containing dust output into the workplace at safe levels.

43.     As a result of these acts, Defendants knew that it was substantially certain that the Plaintiff would suffer asbestos related diseases including but not limited to asbestosis, asbestos related pleural disease, lung cancer and/or malignant mesothelioma.

## COUNT SIX

### PREMISES LIABILITY
**(As to Premises Liability Defendants only. "Defendants" in this case means these defendants only, as identified in Exhibit "E")**

44.     Plaintiff was exposed to asbestos and asbestos-containing materials while working at the jobsites identified in Exhibit "A". The premise defendants identified in Exhibit "E," at all times relevant to this complaint, have been either the operator and/or the manager and/or the owner and occupier of its respective facilities and in custody of the facilities during the relevant time period.  The facilities were defective in that the asbestos and asbestos-containing materials in the facilities created an unreasonable risk of harm to the Plaintiff and other persons on the premises.  Plaintiff was exposed to asbestos and asbestos-containing materials while he was an invitee at the premise defendants' facilities. The defective condition of the facilities was a proximate cause of the Plaintiff's asbestos-related injuries and damages.

45.     The Premise Defendants are liable to Plaintiff for its failure to exercise reasonable care to protect Plaintiff from the foreseeable dangers associated with

15

exposure to asbestos. The Premise Defendants, as the premises operator and/or manager and/or owner and occupier, and/or custodian, had a non-delegable duty to keep the premises safe for invitees. The Premise Defendants knew or should have known of the unreasonable risk of harm inherent in exposure to asbestos and asbestos-containing materials but failed to protect Plaintiff from said risk of harm. The Premise Defendants' failure to protect Plaintiff from known and/or foreseeable dangers constitutes negligence. Said negligence was a proximate cause of Plaintiff's asbestos-related injuries and damages.

**COUNT SEVEN**

**INSURANCE ALLEGATIONS**

46.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, that provided coverage for the causes of action asserted by plaintiff against The McCarty Corporation. As such, Commercial Union Insurance Company is liable for the damages alleged in the Original Petition and any supplement against The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, individually, jointly and *in solido*.

47.     Plaintiff avers that Bituminous Insurance Company issued policies of comprehensive general liability insurance to B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst, deceased, that provided coverage for the causes of action asserted by plaintiff against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst. As such, Bituminous Insurance Company is liable for the damages alleged in the Original Petition and any supplement against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst, individually, jointly and *in solido*.

48.     Plaintiff avers that Commercial Union Insurance Company issued policies of comprehensive general liability insurance to Eagle, Inc. and its executive officers, Fred Schuber, Jr. and Fred Schuber, IIII, that provided coverage for the causes of action

asserted by plaintiff against Eagle, Inc.   As such, Commercial Union Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Eagle, Inc., and its executive officers, Fred Schuber, Jr. and Fred Schuber, III, individually, jointly and *in solido.*

49.   Plaintiff avers that Travelers Indemnity Company and/or Travelers Insurance Company issued policies of comprehensive general liability insurance to B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst, deceased, that provided coverage for the causes of action asserted by plaintiff against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst. As such, Travelers Indemnity Company is liable for the damages alleged in the Original Petition and any supplement against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst, individually, jointly and *in solido.*

50.   Plaintiff avers that Zurich Insurance Company issued policies of comprehensive general liability insurance to Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, that provided coverage for the causes of action asserted by plaintiff against Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson.  As such, Zurich Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Anco Insulations, Inc., and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson, individually, jointly and *in solido.*

51.   Plaintiff avers that Liberty Mutual Insurance Company issued policies of comprehensive general liability insurance to B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst, deceased, that provided coverage for the causes of action asserted by plaintiff against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc. and its executive officer, Armand Hullinghorst. As such, Liberty Mutual Insurance Company is liable for the damages

alleged in the Original Petition and any supplement against B & B Engineering and Supply Co., Inc. and B & B Engineering and Supply Co. of Louisiana, Inc., and its executive officer, Armand Hullinghorst, individually, jointly and *in solido*.

52.    Plaintiff avers that Newark Insurance Company issued policies of comprehensive general liability insurance to Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, that provided coverage for the causes of action asserted by plaintiff against Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson.  As such, Newark Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Anco Insulations, Inc., and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson, individually, jointly and *in solido*.

53.    Plaintiff avers Royal Indemnity Company as successor in interest to Queens Insurance Company of America and to Royal Insurance Company of America issued policies of comprehensive general liability insurance to Aber Company, Inc. and its executive officers, that provided coverage for the causes of action asserted by plaintiff against Aber Company, Inc. and its executive officers.  As such, Royal Indemnity Company is liable for the damages alleged in the Original Petition and any supplement against Aber Company, Inc. and its executive officers, individually, jointly and *in solido*.

54.    Plaintiff avers Travelers Indemnity Company and/or Travelers Insurance Company issued policies of comprehensive general liability insurance to Aber Company, Inc. and its executive officers, that provided coverage for the causes of action asserted by plaintiff against Aber Company, Inc. and its executive officers.  As such, Travelers Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Aber Company, Inc. and its executive officers, individually, jointly and *in solido*.

55.    Plaintiff avers that Westchester Fire Insurance Company issued policies of comprehensive general liability insurance to Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, that provided

coverage for the causes of action asserted by plaintiff against Anco Insulations, Inc. and its executive officers, Reuel Lacy "Sonny" Anderson, Jr. and Harold Johnson.  As such, Westchester Fire Insurance Company is liable for the damages alleged in the Original Petition and any supplement against Anco Insulations, Inc., and its executive officers, Reuel Lacy "Sonny" Anderson, Jr.  and Harold Johnson, individually, jointly and *in solido*

56.    Plaintiff avers that National Union Fire Ins. Co. of Pittsburgh, PA, issued policies of comprehensive general liability insurance and/or excess insurance coverage to The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, that provided coverage for the causes of action asserted by plaintiff against The McCarty Corporation.  As such, National Union Fire Ins. Co. of Pittsburgh, PA, is liable for the damages alleged in the Original Petition and any supplement against The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, individually, jointly and *in solido*.

57.    Plaintiff avers that Lexington Insurance Company issued policies of comprehensive general liability insurance and/or excess insurance coverage to The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, that provided coverage for the causes of action asserted by plaintiff against The McCarty Corporation.  As such, Lexington Insurance Company is liable for the damages alleged in the Original Petition and any supplement against The McCarty Corporation and its executive officer, Marvin R. McCarty, deceased, individually, jointly and *in solido*.

COUNT EIGHT

JOINT AND SOLIDARY LIABILITY

58.    All of the allegations contained in the previous paragraphs are realleged herein.

59.    Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries of the Plaintiff.

60.    The actions of each of the Defendants are a proximate cause of Plaintiff's injuries.  As a result, all Defendants are jointly and solidarily liable for the damage caused by their combined actions.

19

## DAMAGES

61.    The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and other related physical conditions of Plaintiff as set forth in Exhibit "A." Plaintiff has been damaged in the following non-exclusive particulars:

(a)    Plaintiff has suffered great physical pain and mental anguish and will continue to suffer great pain of body and mind throughout his lifetime;

(b)    Plaintiff has incurred hospital and/or medical and/or pharmaceutical and/or other expenses and will continue to incur such expenses in the future due to the progressively disabling character of asbestos-related lung disease and other related physical conditions from which he now suffers and will continue to suffer in the future;

(c)    Plaintiff suffers a physical impairment at this time and will continue to suffer this impairment in the future due to the disabling character of asbestos-related lung disease and other related physical conditions;

(d)    Plaintiff suffers a permanent partial disability at this time and will become permanently and totally disabled in the future due to the progressive character of asbestos-related lung disease and other related physical conditions;

(e)    Plaintiff is subject to an extraordinarily increased likelihood of developing (or the progression and/or recurrence of) cancer of the lungs, mesothelioma and other cancers, all due to said exposure to products and/or machinery manufactured, installed, maintained, sold and/or distributed by the named Defendants;

(f)    Plaintiff will require medical monitoring throughout his lifetime to survey the progression of his asbestos-related lung disease and to aid in the early detection and treatment of any or all of the cancers described above and will be required to pay for such medical monitoring;

(g)     Plaintiff has suffered a progressive loss of earning capacity and will

        continue to suffer a loss of earning capacity and wages throughout his

        lifetime;

(h)     Plaintiff requires or will require domestic help and nursing care due to his

        disabilities and has been or will be required to pay for such domestic help

        and nursing services;

(i)     Prior to the onset of his symptoms, Plaintiff was extremely active and

        participated in numerous hobbies and activities, and as a result of his

        illness, Plaintiff has been and will be prevented from engaging in some of

        said activities which were normal to him prior to developing symptoms

        from asbestos-related lung disease.  Plaintiff has been and will otherwise

        be prevented from participating in and enjoying the benefits of a full and

        complete life.

62.     Plaintiff filed suit within one (1) year of the date of discovering Plaintiff's

asbestos-related conditions or the existence of any asbestos-related causes of action.

        WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment against

the Defendants, and each of them, jointly and severally, for general damages, special

damages, for their costs expended herein, for prejudgment interest from the date of

Plaintiff's filing of the lawsuit and post judgment interest on the judgment at the rate

allowed by law, and for such other and further relief, both at law and in equity, to

which Plaintiff may show himself justly entitled.

                                        Respectfully submitted,

                                        **BARON & BUDD, PC**
                                        9015 Bluebonnet Blvd.
                                        Baton Rouge, LA  70810
                                        Tel:    (225) 927-5441
                                        Fax: (225) 927-5449

                                        J. Burton LeBlanc, IV (Bar Roll No. 20491)
                                        Christopher C. Colley (Bar Roll No. 30322)
                                        Jo Ann Lea (Bar Roll No. 28860)
                                        Jason K. Placke (Bar Roll No.30019)

# Exhibit B

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JOSEPH A. ARDOIN, JR.                                    CIVIL ACTION

VERSUS                                                   NUMBER:

ANCO INSULATIONS, INC.,
DSM COPOLYMER, INC., THE ETHYL                           JUDGE:
CORPORATION, EXXON MOBIL
CORPORATION, OWENS-ILLINOIS, INC.,                       MAGISTRATE JUDGE:
UNIROYAL, INC., EAGLE, INC., THE MCCARTY
CORPORATION, COMMERCIAL UNION INS.
CO., NATIONAL UNION FIRE INS. CO. OF PITTSBURG,
PA, LEXINGTON INSURANCE COMPANY, ROYAL
INDEMNITY COMPANY, TRAVELERS INDEMNITY
COMPANY, NEWARK INS. CO., WESTCHESTER FIRE
INS. CO., ZURICH INS. CO., LIBERTY MUTUAL INS.
CO., BITUMINOUS INS. CO., TRAVELERS INS. CO.,
RILEY POWER, INC., UNION CARBIDE CORP., GENERAL
REFACTORIES CO., ZURN INDUSTRIES, LLC, AQUA-CHEM,
INC., CRANE CO., INGERSOLL-RAND COMPANY, DANA
CORPORATION, CEERTAINTEED CORPORATION, GABLER
INSULATIONS, INC., SEVILLE, INC., TURNER INDUSTRIES
GROUP, LLC, SHELL OIL COMPANY, SHELL CHEMICAL, LP,
GEORGIA-PACIFIC, LLC, ENTERGY GULF STATES
LOUISIANA, LLC, BASF CORPORATION, FORT JAMES CORPORATION,
GEORGIA PACIFIC CONSUMER PRODUCTS, LP, MONOCHEM, INC.,
THE TEXAS COMPANY, UNIROYAL, INC.

**NOTICE OF REMOVAL**

1.

Defendant, DSM Copolymer, Inc. ("DSM"), hereby removes this civil action from

the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, to the United States

District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. §§1441,

1442(a) and 1446.

2.

Plaintiff's Petition for Damages ("the Petition"), which names DSM as a defendant in the matter entitled "*Joseph A. Ardoin, Jr. v. Anco Insulations, Inc., et al*," was filed in the 19th Judicial District Court, Parish of East Baton Rouge, Louisiana, on February 11, 2010. A copy of the Petition is attached, *in globo*, as Exhibit "A" along with true and correct copies of all process, pleadings and orders served upon DSM, as required by 28 U.S.C. §1446(a).

3.

DSM was served with the Petition through its agent for service of process on March 3, 2010. This notice of removal has been filed within thirty (30) days after receipt by DSM, through service of a copy of a pleading, motion, order or other paper from which it may first be ascertained that the cause is one which is or has become removable, as allowed by 28 U.S.C. §1446(b). DSM is not required to notify and obtain the consent of any other defendant in this action in order to remove the action as a whole under §1442(a). Ely Valley Mine, Inc. v. Hartford Acc. And Indem. Co., 644 F.2d 1310, 1315 (9th Cir. 1981); Fowler v. Southern Bell Tel. & Tel. Co., 343 F.2d 150 (5th Cir. 1965); Allmann v. Hanley, 302 F.2d 559 (5th Cir. 1962).

4.

Removal is proper under 28 U.S.C. §1442(a). See, this Court's August 5, 1998 Ruling in LaLonde v. Delta Field Erection, et al., Civil Action No. 96-3244-B-M3, attached hereto as Exhibit "B"; and this Court's June 14, 2002 "Magistrate Judge's Report" and the District Judge's "Ruling and Order" dated July 18, 2002, affirming the

Magistrate Judge's Ruling in <u>Barbara Catania, et al v. ACands, Inc.</u>, Civil Action No. 02-368-D-1, attached hereto as Exhibit "C." This suit involves a controversy concerning acts undertaken by a federal officer or someone acting under him, and involves a property holder whose title is derived from such United States officers. Plaintiff asserts claims arising out of alleged exposure to asbestos-containing products while working at DSM's premises during periods when the plant was owned by the United States government, but operated by DSM under the authority and direction of federal officers acting in their official capacities to direct the construction and operation of the plant, as well as during periods of ownership by DSM, but under continuing governmental control.

Federal officer removal jurisdiction is set forth in 28 U.S.C. §1442, pertinent provisions of which are:

§1442. Federal Officer Sued or Prosecuted

(a)   a civil action . . . commenced in a state court against any of the following persons may be removed by them to the District Court of The United States for the district and division embracing the place wherein it is pending:

(1)   any officer of The United States or any agency thereof, or person acting under him, for any act under color of such office . . .

(2)   a property holder whose title is derived from any such officer . . .

5.

Plaintiff alleges that he "recently" discovered he has an asbestos-related lung cancer. See Plaintiff's petition, paragraphs 14 and 15.

3

6.

DSM is sued for negligence and/or and premises liability.   (Plaintiffs' Petition,

paragraphs 44-45).

7.

Plaintiff specifically alleges exposure at DSM facilities.  Exhibit A to the petition

sets forth plaintiff's work history occurring during the following periods of time.

| | |
|---|---|
| 1/1/1950 – 1/1/1954 | 1/1/1964 – 1/1/1965 |
| 1/1/1953 – 1/1/1953 | 1/1/1967 – 1/1/1969 |
| 1/1/1960 – 1/1/1964 | 1/1/1970 – 1/1/1974 |

8.

During a significant part of the alleged period of exposure, DSM operated under

the control and supervision of federal officers of the United States acting under color of

such office.

9.

The DSM facility was constructed and acquired in October and November of 1942

by agents of the United States government as part of the World War II effort to establish

synthetic rubber production.  The design and construction of the plant was accomplished

under the auspices of the Defense Plant Corporation, an instrumentality of the United

States Government created on August 22, 1940 under Section 5(d) of the Reconstruction

Finance Corporation Act (Public Law 2, 72nd Congress, 47 Stat. 5) by the Reconstruction

Finance Corporation, itself an instrumentality of the United States Government created

on January 22, 1932 under the same act.

4

officer oversight for a ten-year period following the purchase, and which gave the government the unconditional right to possession and use of the plant during that ten-year period. Thus, DSM continued under the authority and control of an officer of the United States Government until 1965, which encompasses the majority of the time period during which plaintiff alleges that she was exposed to asbestos-containing products at DSM's facility.

13.

DSM may raise and rely on the government contractor defense as set forth by the United States Supreme Court in Boyle v. United Technologies Corporation, 487 U.S. 500, 108 S.Ct. 2510, 101 L.Ed. 2d 442 (1988) and Yearsley v. W.A. Ross Construction Co., 309 U.S. 19, 60 S.Ct. 413, 84 L.Ed. 554 (1940). DSM also intends to raise and rely on other defenses and immunities available under the Defense Protection Act of 1950, 50 U.S.C. §2061, et seq., and its statutory predecessor, e.g., the Second War Powers Act, Ch. 199 Stat. 176 (1942), and any other federal act relating to the design, construction, and operation, and/or maintenance of DSM's premises.

14.

DSM has met the requirements of removal and qualities as a person acting under the authority of a federal officer as set forth in 28 U.S.C. §§1442 and 1442(a)(1) and/or a property holder whose title is derived from such officer as set forth in 28 U.S.C. §1442(a)(2).

15.

6

Contemporaneously with the filing of this Notice of Removal in this Court, DSM will promptly give written notice to all adverse parties by mail, return receipt requested, and will file a copy of this notice of removal with the Clerk of Court, in East Baton Rouge Parish, Louisiana.

16.

Plaintiff's Petition amply discloses the required nexus between the claimed injuries and the operation of DSM's facility which allegedly utilized asbestos-containing materials.  The  facility was built by an agency of the United States government.  For many of the years that plaintiff was allegedly exposed to asbestos-containing products, the DSM facility was operated by DSM under the control and supervision of an officer of the United States Government.  Further, DSM derived its title to the premises from the United States Government.

THEREFORE, DSM removes this action to the United States District Court for the Middle District of Louisiana.

Respectfully submitted:

/s/ David K. Nelson
David K. Nelson (#17075) T.A.
Gregory M. Anding (#23622)
Allison N. Benoit (#29087)
KEAN, MILLER, HAWTHORNE, D'ARMOND,
McCOWAN & JARMAN, L.L.P.
Post Office Box 3513
Baton Rouge, LA  70821
Telephone:  (225) 387-0999
david.nelson@keanmiller.com
*Attorneys for DSM Copolymer, Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that on _Mar 9_, 2010, a copy of the foregoing Notice of

Removal was filed electronically with the Clerk of Court using the CM/ECF system. I

certify that I have mailed by United States Postal Service this filing to:

> J. Burton LeBlanc, IV
> Christopher C. Colley
> Jo Ann Lea
> Jason K. Placke
> Baron & Budd, PC
> 9015 Bluebonnet Blvd.
> Baton Rouge, LA 70810

Respectfully Submitted:

/s/ David K. Nelson
David K. Nelson, #17075, T.A.
KEAN, MILLER, HAWTHORNE, D'ARMOND,
McCOWAN & JARMAN, L.L.P.
One American Place, 22nd Floor
P. O. Box 3513
Baton Rouge, LA 70821
Telephone: (225) 387-0999
allison.benoit@keanmiller.com
**Attorneys for DSM Copolymer, Inc.**

8

# Exhibit C

# UNITED STATES DISTRICT COURT
## FOR THE Eastern District of Pennsylvania

| | | |
|---|---|---|
| **IN RE: ASBESTOS PRODUCTS** | : | **MDL 875** |
| **LIABILITY LITIGATION** | : | |
| **ALL ACTIONS** | : | |
| **(See attached schedule for case list)** | : | |

## TRANSFER ORDER NO. 766

The Court hereby ORDERS the Clerk of the District Court for the Eastern District of Pennsylvania, the Transferee Court, to initiate the procedures for the transfer of MDL–875 cases from the District Court for the Middle District of Louisiana, the Transferor Court, in accordance with the terms of this Court's Administrative Order No. 11, a copy of which is attached hereto.

The effective date of transfer is upon entry of this order.

**BY THE COURT**

s/EDUARDO C. ROBRENO
**EDUARDO C. ROBRENO, J.**

Date: 5–17–10

Case 2:01-md-00875-ER   Document 7277-1   Filed 05/17/10   Page 1 of 1

| DATE | PA E.D. # (10-) | TRANSFER # | NAME OF PLAINTIFF | TRANSFER DIST./DIV. |
|------|------------------|------------|--------------------|----------------------|
| 5/17/2010 | 04804 | 10-00104 | Arduin, Joseph A., Jr. | LOUISIANA MIDDLE - 3 |

1

# Exhibit D

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:   ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. IV):                         **Civil Action No. MDL 875**

| | | |
|---|---|---|
| JOSEPH A. ARDOIN, JR. | § | EDPA Civil Action No.: |
| | § | 2:10-CV-68064 |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | Transferor District Court: |
| ANCO INSULATION, INC., ET AL | § | Middle District of Louisiana |
| | § | Case No. 3:10-CV-00164 |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S MOTION FOR SUGGESTION OF REMAND

NOW INTO COURT, through undersigned counsel, comes Plaintiff, **JOSEPH A. ARDOIN, JR**, who, for the reasons more fully explained in the accompanying Memorandum, respectfully requests that this case be remanded to the United States District Court for the Middle District of Louisiana for trial, and for any other relief to which Plaintiff may be entitled.

Respectfully submitted,

**BARON & BUDD, PC**

  /s/Christopher C. Colley
Denyse F. Clancy, Bar No. 32968
Christopher Colley, Bar No. 30322
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas  75219
Phone:  (214) 521-3605
Fax:  (214) 520-1181

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

On August 8, 2012, I served the following documents by electronically serving the document described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website.

/s/ Christopher C. Colley
Christopher C. Colley

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:   ASBESTOS PRODUCTS LIABILITY LITIGATION (NO. IV): | Civil Action No. MDL 875 |

| | | |
|---|---|---|
| JOSEPH A. ARDOIN, JR. | § | EDPA Civil Action No.: |
| | § | 2:10-CV-68064 |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| | § | Transferor District Court: |
| ANCO INSULATION, INC., ET AL | § | Middle District of Louisiana |
| | § | Case No. 3:10-CV-00164 |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUGGESTION OF REMAND

### TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

NOW INTO COURT, through undersigned counsel, comes Plaintiff, JOSEPH A. ARDOIN, JR, who respectfully requests that this Court remand this case to the United States District Court for the Middle District of Louisiana. In support thereof, Plaintiff respectfully shows the Court as follows:

Joseph Ardoin was diagnosed with asbestos-related lung cancer on February 12, 2009. *See* Pathology Report of Dr. Mason, attached hereto as **Exhibit "A."** Mr. Ardoin was occupationally exposed to asbestos while he worked as a painter and an insulator at various industrial facilities in Louisiana throughout the 1940s, 1950s, 1960s, and 1970s. *See* Excerpts of Social Security Records of Joseph Ardoin, attached hereto as **Exhibit "B;"** *see also e.g.* Excerpts of Deposition of Joseph Ardoin ("Ardoin Depo.), April 10, 2000 at 11, attached hereto as **Exhibit "C."** Mr. Ardoin was exposed to asbestos while working with and around asbestos-containing insulation. *Id.*

This case was originally filed in Louisiana state court on February 10, 2010 based on Mr. Ardoin's exposure to asbestos from Defendants' products, while employed by Defendants, and/or while working on Defendants' premises and subsequent diagnosis of lung cancer in the case entitled *Joseph A. Ardoin, Jr. v. Anco Insulations, Inc., et al*, No. 587-390 in the 19th Judicial District Court for the Parish of East Baton Rouge. *See* Excerpts of Plaintiff's Original Petition for Damages (exhibits omitted), attached hereto as **Exhibit "D."**

Defendant DSM Copolymer, Inc. removed the case to the United States District Court for the Middle District of Louisiana on March 9, 2010. *See* Notice of Removal of Action Under 28 U.S.C §§ 1442 and 1446 (exhibits omitted), attached hereto as **Exhibit "E."** The civil action number of the case in the Middle District of Louisiana was Case No. 3:10-CV-00164. The case was transferred to the Eastern District of Pennsylvania's MDL 875 on May 17, 2010. *See* Transfer Order No. 766, attached hereto as **Exhibit "F."** It was given a case number of 2:10-CV-68064. *Id.*

Plaintiff has complied with Administrative Order 12. *See* Plaintiff Submission Form Pursuant to Administrative Order No. 12, July 19, 2010, attached hereto as **Exhibit "G."**

The remaining viable Defendants in this action are:

- Anco Insulations, Inc.
- The McCarty Corporation
- Royal Indemnity Company
- Gabler Insulations, Inc.
- Exxon Mobil Corporation
- Georgia-Pacific LLC
- Entergy Gulf States Louisiana, LLC
- BASF Corporation
- Fort James Corporation
- Georgia Pacific Consumer Products, LP
- The Texas Company

2

Remand is appropriate in this case for several reasons. First, Plaintiff has complied with Administrative Order 12. *See* **Exhibit "G."** Second, all relevant discovery has been completed. Third, although there have been no formal settlement conferences to date, the parties have engaged in settlement negotiations. Fourth, there are no outstanding motions remaining in the case. Several defendants filed Motions for Summary Judgment in March 2011, and Plaintiff did not oppose any. Thus, only the viable defendants against whom Plaintiff has a valid claim, listed *infra*, remain in this case. Although the clerk of the Middle District of Louisiana was unable to inform Plaintiff's counsel as to the status of congestion in the Middle District of Louisiana, Plaintiff is prepared to begin trial without delay upon remand.

For the foregoing reasons, Plaintiff respectfully requests that this case be remanded to the United States District Court for the Middle District of Louisiana for trial, and for any other relief to which Plaintiff may be entitled.

Respectfully submitted,

**BARON & BUDD, PC**


  /s/Christopher C. Colley
Denyse F. Clancy, Bar No. 32968
Christopher Colley, Bar No. 30322
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas   75219
Phone:  (214) 521-3605
Fax:  (214) 520-1181

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On August 8, 2012, I served the following documents by electronically serving the document described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website.

 /s/ Christopher C. Colley_____
Christopher C. Colley

4

# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS    :    Consolidated Under
LIABILITY LITIGATION (No. VI) :    MDL DOCKET NO. 875
                          :
                          :    Transferred from the Middle
ARDOIN                 :    District of Louisiana,
                     **FILED** Case No. 10-00164
   v.            :
                 SEP 26 2012
DSM COPOLYMER, INC., et al.  :    E.D. PA No. 2:10-cv-68064
               MICHAEL E. KUNZ, Clerk
               By_____ Dep. Clerk

<u>SUGGESTION OF REMAND</u>

     **AND NOW**, this **25th** day of **September, 2012**, it is hereby
**ORDERED** that, upon review of the above captioned case under MDL-
875 Administrative Order No. 18, No. 01-875 (E.D. Pa. April 30,
2009), ECF No. 6197, the Court finds that, as to the above-
captioned case:

     a.) Plaintiff has complied with MDL-875 Administrative
    Orders 12 and 12A (<u>see</u> the MDL 875 website's Administrative
    Orders page, at <u>http://www.paed.uscourts.gov/mdl875d.asp</u>).
    b.) Parties have completed their obligations under the Rule
    16 order issued by the Court (<u>see</u> ECF No. 64).
    c.) All discovery has been completed.
    d.) The Court has adjudicated all outstanding motions,
    including dispositive motions. Particularly relevant rulings
    include:

        i.   Certain motions for summary judgment were

1

granted as unopposed (ECF No. 70).

e.) Rule 18 settlement discussions have been exhausted at this time as to the remaining viable defendants.

f.) The Court finds that this case is prepared for trial without delay once on the transferor court's docket, subject to any trial-related motions in limine (including Daubert challenges).

g.) The remaining viable Defendants for trial are:

- Anco Insulations, Inc.
- The McCarty Corporation
- Royal Indemnity Company
- Gabler Insulations, Inc.
- Exxon Mobil Corporation
- Georgia-Pacific LLC
- Entergy Gulf States Louisiana, LLC
- BASF Corporation
- Fort James Corporation
- Georgia Pacific Consumer Products, LP
- The Texas Company

h.) Any demand for punitive damages is severed, and claims for punitive or exemplary damages are retained by the MDL-875 Court. See Fed. R. Civ. P. 42(b).

Accordingly, the Court **SUGGESTS** that the above-captioned case should be **REMANDED** to the United States District Court for

2

the **Middle District of Louisiana** for resolution of all matters

pending within this case except punitive damages.[1]

   Alternatively, parties in the below-listed cases have **seven**

**(7) days** within which to consent to a trial before an Article III

or Magistrate Judge in the Eastern District of Pennsylvania.   In

such an event, if consent is granted, a trial will be scheduled

within sixty (60) days, on a date convenient to the parties in

Philadelphia, Pennsylvania, and the Suggestion of Remand will be

vacated.

                    **AND IT IS SO ORDERED.**


                              _____
                              EDUARDO C. ROBRENO, J.

--------------------------------------------------------

   [1]   The Court finds that the issue of punitive damages
must be resolved at a future date with regard to the entire MDL-
875 action, and therefore any claims for punitive or exemplary
damages are hereby **SEVERED** from this case and retained by the
MDL-875 Court in the Eastern District of Pennsylvania. See In re
Collins, 233 F.3d 809, 810 (3d Cir. 2000) ("It is responsible
public policy to give priority to compensatory claims over
exemplary punitive damage windfalls; this prudent conservation
more than vindicates the Panel's decision to withhold punitive
damage claims on remand."); see also In re Roberts, 178 F.3d 181
(3d Cir. 1999).

# SUGGESTION OF REMAND MEMORANDUM
### Updated September 5, 2012

**To:** Transferor Judge
**From:** Judge Eduardo C. Robreno, Presiding Judicial Officer, MDL 875
**Re:** Asbestos case that has been transferred to your court

## Status of the case that has been transferred from the Eastern District of Pennsylvania

This case has been transferred back to the transferor court, from the MDL 875 Court in the Eastern District of Pennsylvania.

Cases that are remanded to transferor courts are ordinarily ready for trial, pursuant to this Court's Administrative Order No. 18 (see http://www.paed.uscourts.gov/mdl875d.asp).

Specific information regarding the history of a specific case while it was in the MDL 875 Court can be found in the Suggestion of Remand (above) that the MDL Court submitted to the Judicial Panel on Multidistrict Litigation in connection with its Order.

## History of MDL 875, In re: Asbestos Products Liability Litigation

MDL 875, In re: Asbestos Products Liability Litigation, involves issues relating to personal injury damages caused by asbestos products. It currently consists of about 6,000 cases transferred by the Judicial Panel on Multidistrict Litigation, which has been transferring cases to the Eastern District of Pennsylvania since 1991. Each case typically consists of claims by multiple plaintiffs against multiple defendants. Since its inception, the litigation has involved more than 100,000 cases and up to ten million claims, including land-based and maritime claims ("MARDOC").

Beginning with Administrative Order No. 12 (see http://www.paed.uscourts.gov/mdl875d.asp) in 2008, the Court initiated an aggressive, pro-active policy to facilitate the processing of cases. The policy involves giving newly transferred cases scheduling orders; setting cases for settlement conferences; having motion hearings; and remanding trial-ready cases to transferor courts, or, in the alternative, holding trials in the Eastern District of Pennsylvania (if so requested by the parties).

## Resources available for transferor courts on the MDL 875 website

More information about the history of MDL 875 can be found on the Eastern District of Pennsylvania's MDL 875 website at http://www.paed.uscourts.gov/mdl875a.asp. Additionally, all Administrative Orders issued in this litigation (including current Orders and those no longer in effect) can be found at http://www.paed.uscourts.gov/mdl875d.asp.

4

Also on the website is an Excel spreadsheet of all decisions issued by the Presiding Officer on substantive and procedural matters since 2008 (see http://www.paed.uscourts.gov/mdl875n.asp). This spreadsheet is updated regularly, and it can be sorted by jurisdiction, case caption, subject matter, party name, etc. It is also word searchable. The MDL-875 Court intends this spreadsheet to be a helpful resource for transferor courts addressing issues similar to those already addressed by the MDL-875 Court.

Other options available to assist the Transferor Court with legal research include searchable databases created by LexisNexis and Westlaw. Directions on how to access these databases can be found on http://www.paed.uscourts.gov/mdl875n.asp.

## Contact information for the MDL 875 Court

The MDL 875 Court is ready, willing and able to assist the transferor court with any matters relating to the transfer of the case or any substantive or procedural issues that may arise.

You may contact the Presiding Judicial Officer (Judge_Eduardo_Robreno@paed.uscourts.gov), the MDL 875 law clerk (Michele_Ventura@paed.uscourts.gov or (267) 299-7422), or the Clerk's Office ((267) 299-7012) for further assistance.

## Intercircuit Assignment Committee

The Intercircuit Assignment Committee of the Judicial Conference, under the leadership of Judge J. Frederick Motz of the District of Maryland, can assist in the identification and assignment of a senior judge from another District who is ready, willing and able to preside over the trial of this case. If appropriate, please contact Judge Motz at Judge_J_Frederick_Motz@mdd.uscourts.gov or (410) 962-0782.

# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | Consolidated Under |
| LIABILITY LITIGATION (No. VI) | : | MDL DOCKET NO. 875 |
| | : | |
| **FILED** | : | Transferred from the Northern |
| WRIGHT            MAY 1 6 2012 | : | District of Illinois, |
| | : | Case No. 11-CV-01954 |
| v.        **MICHAEL E. KUNZ, Clerk** | : | |
| **By_____Dep. Clerk** | : | |
| A.W. CHESTERTON CO., et al. | : | E.D. PA No. 11-cv-66748 |

## SUGGESTION OF REMAND

**AND NOW**, this **15th** day of **May, 2012**, it is hereby
**ORDERED** that, upon review of the above captioned case under MDL-875 Administrative Order no. 18 (01-md-875, doc. no. 6197), the Court finds that, as to the above-captioned case:

a.) Plaintiff has complied with MDL-875 Administrative Orders 12 and 12A (see the MDL 875 website's Administrative Orders page, at http://www.paed.uscourts.gov/mdl875d.asp).

b.) Parties have completed their obligations under the Rule 16 order issued by the Court (see doc. no. 18).

c.) All discovery has been completed.

d.) The Court has adjudicated all outstanding motions, including dispositive motions. Particularly relevant rulings include:

      i.    The motions for summary judgment of CBS Corp. and John Crane, Inc. were denied (doc. nos. 244, 245).

1

e.) Rule 18 settlement discussions have been exhausted at this time as to the remaining viable defendants.

f.) The Court finds that this case is prepared for trial without delay once on the transferor court's docket, subject to any trial-related motions in limine (including Daubert challenges).[1]

g.) The remaining viable Defendants for trial are:

    i.   John Crane Inc.

    ii.  CBS Corporation

---

[1]   Defendant CBS Corp. ("CBS") has argued to the MDL Court that a suggestion of remand of this case is premature at this point.

    First, CBS argues that because Judge Strawbridge has not explicitly approved remand of this case, and because Plaintiff has not listed specific reasons why the case should be remanded, remand is premature. The MDL Court rejects these arguments, because cases are routinely remanded without magistrate judges' express approval. The language that CBS cites indicating that a "mediator" must approve remand does not apply to Magistrate Judge Strawbridge, who is not a "mediator" in this case. Additionally, it is the policy of the MDL Court to suggest remand of cases that have gone through the summary judgment stage. (Of course, the option remains open for counsel to consent to having a trial in the Eastern District of Pennsylvania, as discussed infra.)

    CBS also argues that Daubert motions are outstanding. Specifically, there is an outstanding Daubert motion that will affect fifty cases in MDL 875 in the cases represented by Cascino Vaughan Law Offices. However, both Plaintiffs' counsel and Defense counsel in the Cascino Vaughan cases chose the fifty cases to which that Daubert motion would apply, and the present case is not on that list. Defendant can bring any outstanding pre-trial evidentiary issues to the attention of the transferor court, which, as the trial court for this case, would be best equipped to expeditiously decide such issues in advance of trial.

h.) Any demand for punitive damages is severed, and claims for punitive or exemplary damages are retained by the MDL-875 Court. <u>See</u> Fed. R. Civ. P. 42(b).

Accordingly, the Court **SUGGESTS** that the above-captioned case should be **REMANDED** to the United States District Court for the **Northern District of Illinois** for resolution of all matters pending within this case except punitive damages.[2]

Alternatively, parties in the below-listed cases have **seven (7) days** within which to consent to a trial before an Article III or Magistrate Judge in the Eastern District of Pennsylvania. In such an event, if consent is granted, a trial will be scheduled within sixty (60) days, on a date convenient to the parties in Philadelphia, Pennsylvania, and the Suggestion of Remand will be vacated.

**AND IT IS SO ORDERED.**

_____
**EDUARDO C. ROBRENO, J.**

---

[2]     The Court finds that the issue of punitive damages must be resolved at a future date with regard to the entire MDL-875 action, and therefore any claims for punitive or exemplary damages are hereby **SEVERED** from this case and retained by the MDL-875 Court in the Eastern District of Pennsylvania. See <u>In re Collins</u>, 233 F.3d 809, 810 (3d Cir. 2000) ("It is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls; this prudent conservation more than vindicates the Panel's decision to withhold punitive damage claims on remand."); <u>see also</u> <u>In re Roberts</u>, 178 F.3d 181 (3d Cir. 1999).

3

## SUGGESTION OF REMAND MEMORANDUM
Updated November 4, 2011

**To:** Transferor Judge
**From:** Judge Eduardo C. Robreno, Presiding Judicial Officer, MDL 875
**Re:** Asbestos case that has been transferred to your court

---

### Status of the case that has been transferred from the Eastern District of Pennsylvania

This case has been transferred back to the transferor court, from the MDL 875 Court in the Eastern District of Pennsylvania.

Cases that are remanded to transferor courts are ordinarily ready for trial, pursuant to this Court's Administrative Order No. 18 (see http://www.paed.uscourts.gov/mdl875d.asp).

Specific information regarding the history of a specific case while it was in the MDL 875 Court can be found in the Suggestion of Remand (above) that the MDL Court submitted to the Judicial Panel on Multidistrict Litigation in connection with its Order.

### History of MDL 875, In re: Asbestos Products Liability Litigation

MDL 875, In re: Asbestos Products Liability Litigation, involves issues relating to personal injury damages caused by asbestos products. It currently consists of about 12,000 cases transferred by the Judicial Panel on Multidistrict Litigation, which has been transferring cases to the Eastern District of Pennsylvania since 1991. Each case typically consists of claims by multiple plaintiffs against multiple defendants. Since its inception, the litigation has involved more than 100,000 cases and up to ten million claims, including land-based and maritime claims ("MARDOC").

Beginning with Administrative Order No. 12 (see http://www.paed.uscourts.gov/mdl875d.asp) in 2008, the Court initiated an aggressive, pro-active policy to facilitate the processing of cases. The policy involves giving newly transferred cases scheduling orders; setting cases for settlement conferences; having motion hearings; and remanding trial-ready cases to transferor courts, or, in the alternative, holding trials in the Eastern District of Pennsylvania (if so requested by the parties).

### Resources available for transferor courts on the MDL 875 website

More information about the history of MDL 875 can be found on the Eastern District of Pennsylvania's MDL 875 website at http://www.paed.uscourts.gov/mdl875a.asp. Additionally, all Administrative Orders issued in this litigation (including current Orders and those no longer in effect) can be found at http://www.paed.uscourts.gov/mdl875d.asp.

Also on the website is an Excel spreadsheet of all decisions issued by the Presiding Officer on

substantive and procedural matters since 2008 (see http://www.paed.uscourts.gov/mdl875n.asp). This spreadsheet is updated regularly, and it can be sorted by jurisdiction, case caption, subject matter, party name, etc. It is also word searchable. The MDL-875 Court intends this spreadsheet to be a helpful resource for transferor courts addressing issues similar to those already addressed by the MDL-875 Court.

Other options available to assist the Transferor Court with legal research include searchable databases created by LexisNexis and Westlaw. Directions on how to access these databases can be found on http://www.paed.uscourts.gov/mdl875n.asp.

## Contact information for the MDL 875 Court

The MDL 875 Court is ready, willing and able to assist the transferor court with any matters relating to the transfer of the case or any substantive or procedural issues that may arise.

You may contact the Presiding Judicial Officer (Judge_Eduardo_Robreno@paed.uscourts.gov), the MDL 875 asbestos law clerk (Michele_Ventura@paed.uscourts.gov or (267) 299-7422), or the Clerk's Office ((267) 299-7012) for further assistance.

## Intercircuit Assignment Committee

The Intercircuit Assignment Committee of the Judicial Conference, under the leadership of Judge J. Frederick Motz of the District of Maryland, can assist in the identification and assignment of a senior judge from another District who is ready, willing and able to preside over the trial of this case. If appropriate, please contact Judge Motz at Judge_J_Frederick_Motz@mdd.uscourts.gov or (410) 962-0782.

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS          :     Consolidated Under
LIABILITY LITIGATION (No. VI)  :     MDL DOCKET NO. 875
                                                :
JOSEPH A. ARDOIN, JR.,              :
ET AL.,                                         :
                                                :
                                                :
            v.                                :     Case No. 10-68064
                                                :
ANCO INSULATIONS, ET AL.       :

**FILED**

**JUL 2 9 2011**

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

### O R D E R

**AND NOW,** this **28th** day of **July, 2011,** it is hereby **ORDERED**

that Defendants' Motions for Summary Judgment, listed in Exhibit

"A," attached, are **GRANTED** as unopposed.[1]

**AND IT IS SO ORDERED.**

_____
**EDUARDO C. ROBRENO, J.**

---

[1]    Plaintiffs have not opposed Defendants' motions for
summary judgment.  As provided under local rules, the Court must
independently determine that the moving party is entitled to
judgment as a matter of law.  See Loc. R. Civ. P. 7.1(c).

    The basis for Defendants' motions is that Plaintiff has
failed to raise a genuine issue of material fact as to whether
Plaintiff Joseph Ardoin Jr.'s, asbestos-related injuries were
caused by products manufactured, supplied, or distributed by
these Defendants.

    Based on the uncontested evidence presented by Defendants,
the Court concludes that these Defendants are entitled to
judgment as a matter of law.

1

## Exhibit A

| | |
|---|---|
| 43 | MOTION for Summary Judgment<br>*Motion filed:* 03/22/2011<br>*Filed by:* INGERSOLL-RAND COMPANY |
| 44 | MOTION for Summary Judgment *as to All Claims, with Certificate of Service*<br>*Motion filed:* 03/22/2011<br>*Filed by:* ROYAL INDEMNITY COMPANY |
| 47 | MOTION for Summary Judgment *and Incorporated Memorandum in Support of Its Motion for Summary Judgment*<br>*Motion filed:* 03/22/2011<br>*Filed by:* OWENS-ILLINOIS, INC. |
| 49 | MOTION for Summary Judgment<br>*Motion filed:* 03/22/2011<br>*Filed by:* UNION CARBIDE CORPORATION |
| 51 | MOTION for Summary Judgment<br>*Motion filed:* 03/22/2011<br>*Filed by:* CRANE CO. |
| 52 | MOTION for Summary Judgment<br>*Motion filed:* 03/22/2011<br>*Filed by:* TURNER INDUSTRIES GROUP, LLC |
| 53 | MOTION for Summary Judgment<br>*Motion filed:* 03/22/2011<br>*Filed by:* LIBERTY MUTUAL INSURANCE COMPANY |

# Exhibit H





**BARON** **BUDD, P.C.**

DALLAS | AUSTIN | BEVERLY HILLS | BATON ROUGE | MIAMI

800.222.2766
tel 214.521.3605
fax 214.520.1181

3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219-4281

November 23, 2010

TO ALL COUNSEL OF RECORD                    <u>Via Email & Facsimile</u>

Re:    <u>MDL No. 875; In Re: Asbestos Products Liability Litigation</u>
       Civil Action No. 2:10-CV-68064
       Joseph Ardoin, Jr. vs. Anco Insulation, Inc., et al
       *Transferred from:*
       *U.S. District Court for the Middle District of Louisiana No. 3:10-CV-00164*
       *Transferred from:*
       *19th Judicial District Court for the Parish of East Baton Rouge, Louisiana, No. 587,390*

Dear Counsel:

       Enclosed please find Joseph Ardoin, Jr.'s SSPO, Work History and expert report in regard to
the above referenced case. Plaintiff's Answers to Defendants' Master Set of Interrogatories and
Requests for Production of Documents will be forthcoming.

       Thank you for your kind attention.

                                            Sincerely,

                                            BARON & BUDD, P.C.

                                            Lindsey Goldstein

LG/kh
Enclosure



## DEFENSE COUNSEL:

Allison N.  Benoit
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place
22nd Floor, Suite 2200
301 Main Street
Baton Rouge, LA  70821
(225) 389-3748 (Phone)
(225) 388-9133 (Fax)
      Attorneys for TEXACO, INC.

Gary A. Bezet
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place
22nd Floor, Suite 2200
301 Main Street
Baton Rouge, LA  70821
(225) 389-3748 (Phone)
(225) 388-9133 (Fax)
      Attorneys for BASF CORPORATION, EXXON MOBIL CORPORATION, SHELL OIL
      COMPANY

David M. Bienvenu, Jr.
Taylor, Porter, Brooks & Phillips, LLP
Chase Tower South
Eighth Floor
451 Florida Street
Baton Rouge, LA  70801
(225) 387-3221 (Phone)
(225) 346-8049 (Fax)
      Attorneys for ETHYL CORPORATION

David J. Bourgeois
Duplass, Zwain, Bourgeois, Pfister & Weinstock
Three Lakeway Center
3838 N. Causeway Blvd., Suite 2900
Metairie, LA  70002
(504)832-3700 (Phone)
(504)837-3119 (Fax)
      Attorneys for BRANTON INSULATIONS, INC.

Angela M. Bowlin
Frilot, L.L.C.
1100 Poydras St., Ste. 3700
New Orleans, LA 70163
(504) 599-8000 (Phone)
(504) 599-8100 (Fax)
     Attorneys for FORT JAMES CORPORATION, FORT JAMES OPERATING COMPANY

Cynthia C. Branch
Spyridon, Palermo & Dornan
Three Lakeway Center
3838 N. Causeway Blvd., Suite 3010
Metairie, LA 70002
(504)830-7800 (Phone)
(504)830-7810 (Fax)
     Attorneys for TURNER INDUSTRIES, LLC

Alix K. Cornett
Thompson, Coe, Cousins & Irons, L.L.P.
One Riverway, Suite 1600
Houston, TX 77056
(713) 401-8210 (Phone)
(713) 403-8299 (Fax)
     Attorneys for LEXINGTON INSURANCE COMPANY, NATIONAL UNION FIRE INS.
     CO. OF PITTSBURGH

Thomas L. Cougill
Willingham, Fultz & Cougill, LLP
Niels Eperson Building
808 Travis Street, Suite 1608
Houston, TX 77002
(713) 333-7600 (Phone)
(713) 333-7601 (Fax)
     Attorneys for REILLY-BENTON COMPANY, INC.

Kaye N. Courington
Duncan, Courington & Rydberg, LLC
400 Poydras Street, Suite 1200
New Orleans, LA 70130
(504) 524-5566 (Phone)
(504) 524-7887 (Fax)
     Attorneys for BITUMINOUS FIRE & MARINE INSURANCE CORPORATION,
     LIBERTY MUTUAL INSURANCE COMPANY

Elia Diaz-Yaeger
Lugenbuhl, Wheaton, Peck, Rankin & Hubbard
Pan American Life Center
601 Poydras Street, Suite 2775
New Orleans, LA  70130-6027
(504) 568-1990 (Phone)
(504) 310-9195 (Fax)
        Attorneys for TRAVELERS INSURANCE COMPANY, THE

Ernest G. Foundas
Kuchler, Polk, Schell, Weiner & Richardson, LLC
1615 Poydras Street
Suite 1300
New Orleans, LA  70112
(504) 592-0691 (Phone)
(504) 592-0697 (Fax)
        Attorneys for UNION CARBIDE CORPORATION

John J. Hainkel, III
Frilot, L.L.C.
1100 Poydras St., Ste. 3700
New Orleans, LA  70163
(504) 599-8000 (Phone)
(504) 599-8100 (Fax)
        Attorneys for CLEAVER-BROOKS, INC.

William C. Harrison, Jr.
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA  71030-3672
(504) 581-5141 (Phone)
(504) 566-1201 (Fax)
        Attorneys for CERTAINTEED CORPORATION, DANA CORPORATION

Margaret M. Joffe
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA  70130-3672
(504)581-5141 (Phone)
(504)566-1201 (Fax)
        Attorneys for ANCO INSULATIONS, INC.

Susan B. Kohn
Simon, Peragine, Smith & Redfearn, LLP
Entergy Centre
30th Floor
1100 Poydras Street
New Orleans, LA  70163-3000
(504) 569-2030 (Phone)
(504) 569-2999 (Fax)
     Attorneys for EAGLE, INC., MCCARTY CORPORATION, THE

William "Bill" T. McCall
Guillory & McCall, L.L.C.
901 Lakeshore Drive, Suite 1030
Lake Charles, LA  70602
(337) 433-9996 (Phone)
(337) 433-9937 (Fax)
     Attorneys for WESTCHESTER FIRE INSURANCE COMPANY

Glen E. Mercer
Salley, Hite & Mercer, LLC
One Canal Place
365 Canal Street, Suite 1710
New Orleans, LA  70130
(504) 566-8804 (Phone)
(504) 566-8828 (Fax)
     Attorneys for ZURICH INSURANCE COMPANY

JOSEPH B. MORTON, III
Forman, Perry, Watkins, Krutz & Tardy, P.L.L.C.
1515 Poydras Street, Ste. 1300
New Orleans, LA  70112
(504)799-4383 (Phone)
(504)799-4384 (Fax)
     Attorneys for INGERSOLL-RAND COMPANY

David K. Nelson
Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, L.L.P.
One American Place
22nd Floor, Suite 2200
301 Main Street
Baton Rouge, LA  70821
(225) 389-3748 (Phone)
(225) 388-9133 (Fax)
     Attorneys for DSM COPOLYMER, INC.

Dwight C. Paulsen, III
Bradley, Murchison, Kelly & Shea, LLC
1100 Poydras Street, Suite 2700
New Orleans, LA  70163
(504)596-6300 (Phone)
(504)596-6301 (Fax)
     Attorneys for MONOCHEM, INC.

Jacqueline A. Romero
Pugh, Accardo, Haas & Radecker, LLC
1100 Poydras St., Suite 3200
New Orleans, LA  70163-1132
(504) 799-4500 (Phone)
(504) 799-4520 (Fax)
     Attorneys for NEWARK INSURANCE COMPANY

Samuel M. Rosamond, III
Crawford Lewis, P.L.L.C.
400 Poydras Street, Suite 2100
New Orleans, LA  70130
(504) 568-1933 (Phone)
(504) 568-9699 (Fax)
     Attorneys for COMMERCIAL UNION INSURANCE COMPANY, COMMERCIAL
     UNION INSURANCE COMPANY (AS INSURER FOR CORBESCO, MCCARTY)

Theodore L. White
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA  77130-3672
(504) 581-5141 (Phone)
(504) 566-1201 (Fax)
     Attorneys for RILEY POWER, INC., ZURN INDUSTRIES, INC.

Forrest Ren Wilkes, III
Forman, Perry, Watkins, Krutz & Tardy, P.L.L.C.
1515 Poydras Street, Suite 1300
New Orleans, LA  70112
(504)799-4383 (Phone)
(504)799-4384 (Fax)
     Attorneys for GEORGIA-PACIFIC, LLC, OWENS-ILLINOIS, INC., UNIROYAL, INC.



Robert W. Wilkinson
Dogan & Wilkinson, PLLC
734 Delmas Ave.
Pascagoula, MS  39567-4225
(228) 762-2272 (Phone)
(228) 762-3223 (Fax)
     Attorneys for CRANE CO.

Michael J. Zukowski
K&L Gates, L.L.P.
210 6th Ave.
Pittsburgh, PA  15222-2602
(412) 355-6500 (Phone)
(412) 355-6501 (Fax)
     Attorneys for CRANE CO.

Sunil K. Prashar, M.D.
1831 Mintwood Place, NW
Washington, DC 20009
(202) 705-3553
Board Certified in
Anatomic Pathology and Forensic Pathology by
The American Board of Pathology

Russell Budd
Baron & Budd
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219

March 28th, 2010

Re:  Joseph A. Ardoin, Jr.
     SSN:  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
     DOB: 3/21/1929

Dear Mr. Budd,

I have completed a review of the medical records and work history in the case of Joseph
A. Ardoin, Jr.

Mr. Ardoin was occupationally exposed to asbestos.  Between 1945 and 1980, Mr.
Ardoin worked as a painter, insulator, and sandblaster at various commercial and
industrial job sites.

In March 2000, Mr. Ardoin was a 70-year-old gentleman who presented to Glenn M.
Gomes, M.D. to evaluate for occupational lung disease.  Mr. Ardoin complained of
shortness of breath.  Mr. Ardoin had a medical history of polio, hypertension, and heart
murmur.  Mr. Ardoin had a 40+ pack-year smoking history.  Physical examination of the
chest revealed diminished breath sounds and bilateral rales.  Dr. Gomes reviewed prior
chest x-rays taken 9/17/1993 and 12/4/1996.  Dr. Gomes performed a NIOSH-certified B-
read of a chest x-ray taken 3/16/2000 which showed diffuse interstitial fibrosis
bilaterally, profusion 2/1, and right pleural thickening.  Compared with the prior x-rays,
Dr. Gomes noted a progression of pulmonary parenchymal fibrosis and pleural fibrotic
changes.  Pulmonary function testing demonstrated a mixed obstructive and restrictive
defect with reduced diffusion.  The findings led Dr. Gomes to diagnose pulmonary
asbestosis.

Sunil K. Prashar, M.D.
1831 Mintwood Place, NW
Washington, DC 20009
(202) 705-3553
Board Certified in
Anatomic Pathology and Forensic Pathology by
The American Board of Pathology

In February 2009, Mr. Ardoin presented to physicians with what was thought to be an exacerbation of his chronic obstructive pulmonary disease. CT scan of the chest and subsequent left lower lobe lung biopsy demonstrated a non-small cell carcinoma.

It is my opinion that Joseph A. Ardoin, Jr. was diagnosed with asbestosis in March 2000 and with lung cancer in February 2009; and that within reasonable medical probability, his asbestos exposure was a significant contributing cause of the lung cancer.

Please let me know if I can be of further assistance in this matter.

Sincerely,

Sunil K. Prashar, M.D