# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

FILE NO.: 1:12-cv-311

| | | |
|---|---|---|
| BILLY DAVID HARRIS and ROBIN L. HARRIS, Spouse, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| AJAX BOILER, INC, Individually and as successor-in-interest to AJAX BOILER AND HEATER COMPANY; | ) ) ) ) | **CIVIL ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| AMERICAN STANDARD, INC., Individually and as successor-in-interest to AMERICAN RADIATOR & STANDARD SANITARY MANUFACTURING COMPANY; | ) ) ) ) ) ) | |
| AMETEK, INC., Individually and as successor-in-interest to HERCULES, INC., successor-in-interest to HERCULES POWDER COMPANY, successor-in-interest to HAVEG INDUSTRIES, INC., successor by merger to HAVEG CORPORATION; | ) ) ) ) ) ) ) ) | |
| ARMSTRONG INTERNATIONAL, INC.; | ) ) | |
| BURNHAM CORPORATION, Individually and as successor-in-interest to KEWANEE BOILER CORPORATION; | ) ) ) ) | |
| CHAMPLAIN CABLE COMPANY, Individually and as successor-in-interest to HERCULES, INC., Individually and as successor-in-interest to HAVEG INDUSTRIES, INC.; | ) ) ) ) ) ) | |
| CLEAVER BROOKS, INC., Individually and as successor-in-interest to AQUACHEM and NEBRASKA BOILER DIVISION; | ) ) ) ) ) | |
| CRANE CO.; | ) | |

DEFENDANT'S EXHIBIT
ALL-STATE LEGAL®
1

CRANE CO., Individually and as                    )
    successor-in-interest to NATIONAL           )
    U.S. RADIATOR;                              )
CRANE CO., Individually and as                    )
    successor-in-interest PACIFIC               )
    STEEL BOILER;                               )
FOSTER-WHEELER ENERGY                             )
    CORPORATION;                                )
GEORGIA-PACIFIC, LLC,                             )
    Individually and as successor-in-           )
    interest to GEORGIA PACIFIC                 )
    CORPORATION;                                )
HAJOCA CORPORATION;                              )
HERCULES, INC., Individually and as              )
    successor-in-interest to HERCULES           )
    POWDER COMPANY, successor-                  )
    in-interest to HAVEG                        )
    INDUSTRIES, INC., successor by              )
    merger to HAVEG CORPORATION;                )
INGERSOLL RAND CO.;                              )
JOHN CRANE, INC.;                                )
OAKFABCO, INC., Individually and as              )
    successor-in-interest to  KEWANEE           )
    BOILER CORPORATION;                         )
RILEY POWER, INC, individually and               )
    as successor-in-interest to                 )
    BABCOCK BORSIG POWER,                       )
    INC. and RILEY STOKER                       )
    CORPORATION, Individually and               )
    as successor-in-interest to D.B.            )
    RILEY;                                      )
SPIRAX SARCO COMPANY, INC.,                       )
    Individually and as successor-in-           )
    interest to SARCO COMPANY,                  )
    INC.;                                       )
TRANE U.S. INC., As successor-in-                )
    interest to AMERICAN                        )
    STANDARD, INC.;                             )
TRANE U.S., INC., As successor-in-               )
    interest to AMERICAN                        )
    RADIATOR AND STANDARD                       )
    SANITARY CORPORATION;                       )
UNION CARBIDE CORPORATION;                       )
WEIL-MCLAIN, INC.;                               )
YARWAY CORPORATION;                             )
ZURN INDUSTRIES, Individually and                )

as successor-in-interest to ERIE CITY       )
IRON WORKS;                                  )
                                             )
      Defendants.                               )

## CIVIL ACTION COMPLAINT

PLAINTIFFS, Billy David Harris and Robin Lee Harris, his spouse, by and through their attorneys, Wallace and Graham, PA, hereby bring this Civil Action Complaint, whereof the following is a statement:

### JURISDICTION AND VENUE

1.      This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

2.      Further, this Court has diversity jurisdiction over the parties because the Plaintiffs are citizens of the State of North Carolina and none of the Defendants are citizens of the State of North Carolina. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

3.      Pursuant to 28 U.S.C A. §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

### PARTIES

4.      Plaintiff, Billy David Harris (hereinafter "Plaintiff"), is a citizen and resident of the Gaston County in the State of North Carolina. The Plaintiff-spouse, Robin L. Harris, (hereinafter "Plaintiff-spouse"), is and for all relevant times has been a citizen and resident of the Gaston County in the State of North Carolina, and is the wife of Billy David Harris.

5.     Plaintiffs bring this action for monetary damages as a result of Plaintiff contracting an incurable asbestos cancer that Mr. Harris was diagnosed with as a result of breathing asbestos dust. Plaintiff was diagnosed with Malignant Mesothelioma, a signal tumor for exposure to asbestos, on or about October 25, 2011. Mr. Harris worked full days in construction and manual labor jobs where he was exposed to asbestos beginning in approximately 1973.  Asbestos dust released from construction and industrial equipment is invisible to the naked eye.  During the time period that Mr. Harris was exposed to asbestos, the manufacturers of asbestos products failed to adequately warn of the lethal hazards of breathing asbestos dust, often failing to issue any waning at all, despite the fact that these asbestos companies knew that breathing small amounts of asbestos dust could be fatal.  When the asbestos dust is breathed in, it can cause asbestos cancer forty years later.  The scientific and regulatory communities around the world are in unanimous agreement that all types of asbestos released from asbestos products cause cancer, and that there is no safe level of exposure to asbestos.   Mr. Harris's work in the industrial and construction trades placed him around asbestos gaskets, boilers, valves, pumps, steam traps, and joint compound, all of which can release vast amounts of asbestos dust into the air when disturbed. The investigation continues into Mr. Harris's work with asbestos products and his exposures to those products.  At present, it is known that Mr. Harris's construction and industrial employment related to these allegations includes the following work sites:

Daniel Construction Co. Inc at Duke Energy's Cliffside NC facility in 1973;

Cooks' Insulation Co., Inc. at various sites from approx. 1974 to 1976;

Ranny's Home Improvement at various sites from approx. 1976 to 1979.

Duke Energy's Cherokee and McGuire NC facilities from approx. 1979 to 1985;

6.      All of the named defendants listed on the caption and on the attached list, which is incorporated by reference herein, are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in North Carolina. The plaintiff was exposed to various asbestos-containing products while working at various jobs listed in paragraph 5 above.

### FIRST CAUSE OF ACTION
### NEGLIGENCE

7.      Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

8.      At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

9.      The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment came into use by the plaintiff.

10.     The dangers of breathing asbestos were first published in the medical literature in the 1890s.  By the late 1950s, there were hundreds of medical articles highlighting the dangers of being around asbestos dust.  Confidential corporate documents from many of the named defendant companies reveal that (a) the dangers of asbestos were well understood; (b) asbestos was cheaper to use in the products than replacement substances such as clay; (c) the product manufacturing industry actively fought governmental regulation and the banning of asbestos.  To this day industry has been successful in their lobbying efforts to keep asbestos legal in the United States.

11.     Throughout the course of his employment, Plaintiff worked with and was exposed to the asbestos and asbestos-containing materials, products or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

12.     During the course and scope of his employment, plaintiff was exposed to defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

13.     Defendants, acting by and through its servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

14.     Plaintiff, whose livelihood was dependent upon the work that he did for

the various employers listed in paragraph 6 above  was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed as Plaintiff would be required to and would come into contact with and would work in close proximity to said products.

15.    Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of his reasonable care. Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general well-being. Further, defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

16.    Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of defendants, jointly and severally, in that, even though the defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to plaintiffs body, lungs, respiratory system, skin, and health.

17.    Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)   Failed to advise plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b)   Failed or omitted to provide the plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)   Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d)   Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e)   Inadequately warned, if, in fact, they warned at all, persons such as plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f)   Did not recommend methods to improve the work environment;

(g)   Did not develop alternative products;

(h)   Continued to use a known cancer-causing product, to-wit: asbestos; and

(i)   After discovering that the asbestos exposure caused a progressive lung disease, the defendants did not inform the plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

18.    Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the defendants.

19.    Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to the Plaintiff

and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment at issue in the stream of commerce.

20.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to plaintiff were reasonably foreseeable, or should have been reasonably foreseen by defendants.

21.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the plaintiff developed Mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

22.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## <u>BREACH OF IMPLIED WARRANTY</u>

23.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

24.     The defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

25.     The implied warranty made by the defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

26.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, plaintiff developed an illness, to-wit: Mesothelioma.

27.     As a result of the above, plaintiffs seek damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION
### GROSS NEGLIGENCE-WILFUL, WANTON, AND RECKLESS CONDUCT

28.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

29.     Plaintiff and others in his position worked in close proximity to the asbestos and asbestos-related materials use or manufactured by the defendants, and the exposure and hazard to each of them, in plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the defendants, and each of them.

30.     The defendants have known or should have known since at least 1929, and possibly as early as 1890, of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of the plaintiff and others in the plaintiff's position, and prompted by pecuniary motives, the defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said defendants. As a result, the plaintiff has been severely damaged as is set forth below.

31.     The defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through the 1970s, thus denying plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)     failure to warn prior users when the defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)     The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

32.     The acts of the defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of plaintiff and others similarly situated at a time when defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including plaintiff and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and

would be used in the future to the detriment of the health of plaintiff and others similarly situated, and plaintiff is thereby entitled to punitive damages.

33.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiff therefore seeks exemplary and punitive damages against defendants to punish the defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

### FOURTH CAUSE OF ACTION
### FALSE REPRESENTATION

34.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

35.     During, before, and after plaintiffs exposure to asbestos products manufactured, installed or otherwise used by defendants, the defendants falsely represented facts, including the dangers of asbestos exposure, to plaintiff in the particulars alleged in the paragraphs above, while defendants each had actual knowledge of said dangers of asbestos exposure to persons such as plaintiff, and while defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

36.     The foregoing representations were material conditions precedent to plaintiff's continued exposure to asbestos containing products, and defendants each intended that plaintiff act upon the representations by continuing his exposure to the asbestos products. Plaintiff was ignorant of the falsity of defendants' representations and

rightfully relied upon the representations.

37.     As a direct and proximate result of plaintiff's reliance upon defendants' false representations, plaintiff has suffered injury and damages hereinafter described.

### FIFTH CAUSE OF ACTION
### FAILURE TO WARN

38.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

39.     At all times material hereto, the Defendants knew or should have known of the harmful effects and/or harmful dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and that exposures to inhalable asbestos.

40.     Defendants had a duty to warn individuals working at the Plaintiff's jobsites, including but not limited to Plaintiff, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

41.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants failed to warn and/or inadequately warned Plaintiff of the dangers, including but not limited to:

(a)     Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with its products which should have been designed to provide to the Plaintiff knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(b)     Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide to the Plaintiff knowledge about the hazards caused by exposure to its products and how to eliminate such hazards;

(c)     Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how

to eliminate the hazards;

(d)     Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as Plaintiff;

(e)     Failing to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(f)     Failing to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(g)     Failing to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(h)     Failing to recall their defective product or manufacture a reasonably safer alternative;

(i)     Failing to take adequate precautions and industrial hygiene measures to protect Plaintiff and exposed workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to Plaintiff and workers in the facilities at issue that exposure to dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)     otherwise failing to act reasonably under the totality of the circumstances.

42.     Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment, for Plaintiff's employer, and these products were used by Plaintiffs various employers. Thus, Defendants had a duty to warn individuals working at Plaintiffs jobsites, including but not limited to the Plaintiff, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or

asbestos-containing products, materials, or equipment.

43.     Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

44.     At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that it knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as the Plaintiff. In the alternative, after the asbestos-containing products left Defendants' control, Defendant became aware of or in the exercise of ordinary care should have known that their product posed a substantial risk of harm to a reasonably foreseeable user, such as the Plaintiff, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

45.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused Plaintiff to develop Mesothelioma as a consequence of which he has been injured and damaged and claims damages of the Defendant jointly and severally.

46.     As a result of the Defendants' failure to warn, the Plaintiff suffered and will continue to suffer the following injuries and damages hereinafter alleged.

## PUNITIVE DAMAGES

47.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

48.     As a result of the willful, wanton and gross misconduct and gross negligence of the Defendants as alleged herein, the Plaintiff seeks and requests punitive or exemplary damages.  Defendants malicious and outrageous disregard for the safety of users of asbestos products, including Mr. Harris, including but not limited to their intentional concealment of the dangers of asbestos that they knew of yet consciously refused to warn users of those dangers evidences a conscious indifference to the safety and health of users and bystanders of the products they profited from selling.  Plaintiffs therefore, for the sale of example and by way of punishing defendants, seeks punitive damages, according to proof.

## DAMAGES

49.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

50.     As a result of the development of asbestos related diseases, plaintiff has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

51.     Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

52.     Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; that he has been forced to remove himself from his job due to his poor health resulting in substantial lost wages and loss of earning

capacity; and further, that his expected life span has been greatly shortened.

53.    Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

54.    Plaintiff requires or will require domestic help and nursing care due to his disabilities and has been or will be required to pay for such domestic help and nursing services.

55.    Prior to the onset of his symptoms, Plaintiff was extremely active and participated in numerous hobbies and activities, and as a result of his illnesses, Plaintiff has been and will be prevented from engaging in some of said activities which were normal to him prior to developing symptoms from asbestos-related lung disease. Plaintiff has been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life.

WHEREFORE, the Plaintiff verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## DAMAGES FOR LOSS OF CONSORTIUM

56.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

57.     As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff, Billy David Harris, and as a direct and proximate result of the acts and omissions of the defendants, Plaintiff-spouse, Robin L. Harris, has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and therefore the Plaintiff-spouse, Robin Lee Harris, is entitled to damages for her loss of consortium, both past and future. Mr. Harris has been unable to perform the necessary duties of a spouse and the work and service usually performed in the care, maintenance, and management of the family home, and Mr. Harris will be unable to perform such work, services, and duties in the future. As a proximate result thereof, Mrs. Harris has been permanently deprived and will be deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

58.     Discovery of the cause of Mrs. Harris's loss of consortium, as herein alleged, occurred within one year of the date this complaint was filed.

WHEREFORE, the Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in amounts to be determined by the trier of fact, and plus costs of this action.

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
WALLACE AND GRAHAM, P.A.


/s/William M. Graham
William M. Graham
NC Bar No. 17972
Cathy A. Williams
NC Bar No. 33534
Attorneys for Plaintiff
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel. No. (704) 633-5244
Fax: (704) 633-9434
E-Mail: bgraham@wallacegraham.com
E-Mail: cwilliams@wallacegraham.com

Date: 10/1/2012

## DEFENDANT SERVICE LIST

Ajax Boiler, Inc., Individually and as successor-in-interest to Ajax Boiler and Heater
    Company
c/o Jane Terry
2701 S. Harbor Blvd
Santa Ana, CA 92704

American Standard, Inc.; F/K/A American Radiator & Standard Sanitary Manufacturing
    Company
CT Corporation System
150 Fayetteville St
Box 1011
Raleigh, NC 27601

Ametek, Inc., Individually and as Successor-In-Interest to Hercules, Inc., Successor-In-
    Interest to Hercules Powder Company, Successor-In-Interest to Haveg Industries,
    Inc., Successor by Merger to Haveg Corporation;
100 West Tenth Street
Wilmington, DE 19801

Armstrong International, Inc.
David Dykstra, Registered Agent
900 Maple St.
Three Rivers, MI 49093

Burnham Corporation, Individually and as successor-in-interest to Kewanee Boiler
    Corporation
ATTN: Albert Morrison, President
P.O. Box 3205
1241 Harrisburg Ave.
Lancaster, PA 17604
*and*
Corporation Trust Company
1209 Orange Street
Wilmington, DE  19801

Cleaver Brooks, Inc., Individually And as Successor-In-Interest to AquaChem and
    Nebraska Boiler Division
11950 W Lake Park Dr
Milwaukee, WI 53224

Champlain Cable Company, Individually and as Successor-In-Interest to Hercules, Inc.,
    Individually and as Successor-In-Interest to Haveg Industries, Inc.
175 Hercules Drive
Colchester, VT 05446

Crane Co.
Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Crane Co., Individually and as Successor-In-Interest to National U.S. Radiator
Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Crane Co., Individually and as Successor-In-Interest Pacific Steel Boiler
Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Foster-Wheeler Energy Corporation
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Georgia-Pacific, LLC, Individually and as Successor-In-Interest to Georgia Pacific
      Corporation
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Hajoca Corporation
Corporation Service Company
327 Hillsborough Street
Raleigh, NC  27603

Hercules, Inc., Individually and as Successor-In-Interest to Hercules Powder Company,
      Successor-In-Interest to Haveg Industries, Inc., Successor by Merger to Haveg
      Corporation
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, NC 27601

Ingersoll-Rand Company
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

John Crane Co.
CT Corporation System
150 Fayetteville St.
Box 1011
Raleigh, NC 27601

Oakfabco, Inc., Individually and as Successor-In-Interest to Kewanee Boiler Corporation
Frederick Stein, President
1 Lincoln Center
Suite 1100
Oak Bridge Terrace, IL 60181

Riley Power, Inc, Individually and as Successor-In-Interest to Babcock Borsig Power,
    Inc. and Riley Stoker Corporation, Individually and as Successor-In-Interest to D.B.
    Riley
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Spirax Sarco Company, Inc., Individually and as Successor-In-Interest to Sarco
    Company, Inc.
1150 Northpoint Blvd.
Blythewood, SC 29016

Trane U.S. Inc., f/k/a American Standard Inc.
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Trane U.S., Inc., as Successor-In-Interest to American Radiator and Standard Sanitary
    Corporation
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Union Carbide Corporation
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Weil-McLain, Inc.
Corporate Headquarters:
500 Blaine St
Michigan City, IN 46360

Yarway Corporation
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Zurn Industries Individually and as successor-in-interest to Erie City Iron Works
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601