# U.S. District Court
## North Carolina Middle District (NCMD)
## CIVIL DOCKET FOR CASE #: 1:12-cv-01353-CCE
## Internal Use Only

LOGAN et al v. AIR PRODUCTS AND CHEMICALS, INC. et al

Assigned to: JUDGE CATHERINE C. EAGLES

Case in other court: Eastern District of Pennslyvania, MDL-875

Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 12/20/2012

Jury Demand: Plaintiff

Nature of Suit: 368 P.I. : Asbestos

Jurisdiction: Diversity

**Plaintiff**

**RALPH EARL LOGAN**

represented by **JANET WARD BLACK**
WARD BLACK LAW
208 W. WENDOVER AVE.
GREENSBORO, NC 27401
336-273-3812
Fax: 336-379-9415
Email: jwblack@wardblacklaw.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**LOIS LOGAN**

represented by **JANET WARD BLACK**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**AIR PRODUCTS AND CHEMICALS, INC.**
*individually and as successor-by-merger to Catalytic, Inc.*
*formerly known as*
CATALYTIC CONSTRUCTION COMPANY

**Defendant**

**BW/IP INTERNATIONAL, INC.**
*individually and as successor-in-interest to Byron Jackson Pump Company*

**Defendant**

**CAMERON INTERNATIONAL CORPORATION**
*individually and as successor-in-interest to The Cooper-Bessemer Corporation formerly known as*
COOPER CAMERON CORPORATION

<u>Defendant</u>

**CBS CORPORATION**
*a Delaware Corporation formerly known as*
VIACOM, INC., sued as successor-by-merger to CBS Corporation, a Pennsylvania Corporation, fka Westinghouse Electric Corporation and also as successor-in-interest to BF Sturtevant

<u>Defendant</u>

**CRANE CO.**
*individually and as successor-in-interest to Cochrane Corporation, Chapman Valve Company, and Deming Pump Company*

<u>Defendant</u>

**CROWN CORK & SEAL COMPANY, INC.**
*individually and as successor-in-interest to Mundet Cork Company*

<u>Defendant</u>

**FLOWSERVE US, INC.**
*individually and as successor-in-interest to Byron Jackson Pump Company*

<u>Defendant</u>

**FOSTER WHEELER ENERGY CORPORATION**

<u>Defendant</u>

**GARDNER DENVER, INC.**

<u>Defendant</u>

**GENERAL ELECTRIC COMPANY**

**Defendant**

**GOULDS PUMPS, INC.**

**Defendant**

**IMO INDUSTRIES, INC.**
*individually and as successor-in-interest*
*to DeLaval Turbines, Inc.*

**Defendant**

**JOHN CRANE, INC.**

**Defendant**

**METROPOLITAN LIFE INSURANCE**
**COMPANY**

**Defendant**

**PFIZER, INC.**

**Defendant**

**SULZER PUMPS (US), INC.**
*individually and as successor-in-interest*
*to Paco Pumps f/k/a Pacific Pumping*
*Company*
*doing business as*
SULZER PUMPS HOUSTON, INC.

**Defendant**

**UNION CARBIDE CORPORATION**

**Defendant**

**WARREN PUMPS, LLC**

**Defendant**

**THE WILLIAM POWELL COMPANY**

**Defendant**

**INGERSOLL RAND COMPANY**

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/20/2012 | 1 | COMPLAINT against All Defendants (Filing fee $350 receipt number 0418-1231155.), filed by RALPH EARL LOGAN, LOIS LOGAN. (BLACK, JANET WARD) (Entered: 12/20/2012) |

| 12/26/2012 | | Case ASSIGNED to JUDGE CATHERINE C. EAGLES. (Garland, Leah) (Entered: 12/26/2012) |

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
File No.:

**CIVIL ACTION COMPLAINT**

|  |  |  |
|---|---|---|
| Ralph Earl Logan and Lois Logan, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| Air Products and Chemicals, Inc., individually and as | : | |
| successor-by-merger to Catalytic, Inc. f/k/a | : | |
| Catalytic Construction Company; | : | |
| BW/IP International, Inc., individually and as successor-in- | : | |
| interest to Byron Jackson Pump Company; | : | |
| Cameron International Corporation f/k/a Cooper Cameron | : | |
| Corporation, individually and as successor-in- | : | |
| interest to The Cooper-Bessemer Corporation; | : | |
| CBS Corporation, a Delaware Corporation, f/k/a Viacom, | : | |
| Inc., sued as successor-by-merger to CBS | : | |
| Corporation, a Pennsylvania Corporation, f/k/a | : | **JURY TRIAL DEMANDED** |
| Westinghouse Electric Corporation and also as | : | |
| successor-in-interest to BF Sturtevant; | : | |
| Crane Co., individually and as successor-in-interest to | : | |
| Cochrane Corporation, Chapman Valve Company, | : | |
| and Deming Pump Company; | : | |
| Crown Cork & Seal Company, Inc., individually and as | : | |
| successor-in-interest to Mundet Cork Company; | : | |
| Flowserve US, Inc., individually and as successor-in- | : | |
| interest to Byron Jackson Pump Company; | : | |
| Foster Wheeler Energy Corporation; | : | |
| Gardner Denver, Inc.; | : | |
| General Electric Company; | : | |
| Goulds Pumps, Inc.; | : | |
| IMO Industries, Inc., individually and as successor-in- | : | |
| interest to DeLaval Turbines, Inc.; | : | |
| Ingersoll Rand Company; | : | |
| John Crane, Inc.; | : | |
| Metropolitan Life Insurance Company; | : | |
| Pfizer Inc.; | : | |
| Sulzer Pumps (US), Inc. d/b/a  Sulzer Pumps Houston, | : | |
| Inc., individually and as successor-in-interest to | : | |

1

Paco Pumps f/k/a Pacific Pumping Company;      :
Union Carbide Corporation;      :
Warren Pumps, LLC;      :
The William Powell Company;      :
      :
                Defendants.      :

## CIVIL ACTION COMPLAINT

Plaintiffs Ralph Earl Logan and Lois Logan sue the above-named Defendants for compensatory and punitive damages and allege:

## PARTIES

1.      Plaintiffs Ralph Earl Logan and Lois Logan are citizens and residents of the County of Forsyth, State of North Carolina.

2.      Plaintiffs bring this action for monetary damages as a result of Plaintiff Ralph Earl Logan contracting an asbestos-related disease. Plaintiff Ralph Earl Logan was diagnosed with mesothelioma on or about October 16, 2012.

3.      Plaintiff Ralph Earl Logan's exposure to asbestos and/or asbestos-containing products occurred during his employment at the sites listed on the attached Schedule I, which is incorporated by reference herein.

4.      At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants.

5.      At all material times, the Defendants manufactured, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos and/or asbestos-containing products, materials, or equipment either directly or indirectly to Plaintiff Ralph Earl Logan's

2

employers or to such other entities so that these materials were caused to be used at the Plaintiff Ralph Earl Logan's job sites.

6.      At all material times, the Defendant, Metropolitan Life Insurance Company, has conspired with other Defendants to disseminate false and misleading medical and/or scientific information regarding the safety of asbestos and demonstrated a clear disregard for the health, safety and welfare of individuals such as Plaintiff Ralph Earl Logan.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

8.      Pursuant to 28 U.S.C.A. §1391, venue is proper in this judicial district because Plaintiffs reside in Winston-Salem, North Carolina and/or a substantial part of the events or omissions occurred in North Carolina.

9.      Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the Plaintiffs are citizens of the State of North Carolina and none of the Defendants are citizens of the State of North Carolina.  The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

10.     Plaintiffs have satisfied all conditions precedent to the filing of this action.

11.     All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each Defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of

3

asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in North Carolina.  Plaintiff Ralph Earl Logan was exposed to various asbestos-containing products while working at various jobs, as listed on the attached Schedule I.

## FIRST CAUSE OF ACTION
## NEGLIGENCE
**(Against all named Defendants except Metropolitan Life Insurance Company and Air Products and Chemicals, Inc., individually and as successor-by-merger to Catalytic, Inc. f/k/a Catalytic Construction Company)**

12.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

13.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

14.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment came into use by Plaintiff Ralph Earl Logan.

15.     Throughout the course of his employment, Plaintiff Ralph Earl Logan worked with and was exposed to the asbestos and asbestos-containing materials, products or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

16.     During the course and scope of his employment, Plaintiff Ralph Earl Logan was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment,

which exposure directly and proximately caused him to develop an illness known and designated as mesothelioma.

17.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn Plaintiff Ralph Earl Logan and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

18.     Plaintiff Ralph Earl Logan, whose livelihood was dependent upon the work that he did for the various employers listed in Schedule I, was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that were manufactured, processed, distributed, supplied and/or sold by Defendants.  Defendants knew or should have known that persons employed as Plaintiff Ralph Earl Logan would be required to and would come into contact with and would work in close proximity to said products.

19.     Plaintiff Ralph Earl Logan sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care.  Plaintiff Ralph Earl Logan's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff Ralph Earl Logan's body, lungs, respiratory system, skin, health, and general well-being.  Further, Defendants knew or in the exercise of

5

reasonable care should have known that Plaintiff Ralph Earl Logan would not know of such danger to his health.

20.     Plaintiff Ralph Earl Logan's illness and/or disabilities are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to Plaintiff Ralph Earl Logan's body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)     Failed to advise Plaintiff Ralph Earl Logan of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;

(b)     Failed or omitted to provide the Plaintiff Ralph Earl Logan with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(c)     Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff Ralph Earl Logan of the dangers to their health in coming in contact with and breathing said asbestos fibers  from asbestos and/or asbestos-containing materials, products or equipment;

(f)     Did not recommend methods to improve the work environment;

(g)     Did not develop alternative products;

(h)     Continued to use a known cancer-causing product, to-wit:  asbestos; and

(i)     After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform Plaintiff Ralph Earl Logan of the need for

6

monitoring and periodic evaluations up to and including the filing of this complaint.

21.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products.  The products in question were defective at the time they left the control of the Defendants.

22.     Defendants were negligent and breached their duty of due care to Plaintiff Ralph Earl Logan by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff Ralph Earl Logan and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment at issue in the stream of commerce.

23.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to Plaintiff Ralph Earl Logan were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

24.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff Ralph Earl Logan developed mesothelioma, as a consequence of which, through no fault of his own, he was severely injured, disabled and damaged.

25.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY
**(Against all named Defendants except Metropolitan Life Insurance Company and Air Products and Chemicals, Inc., individually and as successor-by-merger to Catalytic, Inc. f/k/a Catalytic Construction Company)**

26.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

7

27.     The Defendants impliedly warranted that said asbestos materials were of good and merchantable quality and fit for their intended use.

28.     The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein Plaintiff Ralph Earl Logan carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

29.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff Ralph Earl Logan developed an illness, to-wit: mesothelioma.

30.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

**THIRD CAUSE OF ACTION**
**WILLFUL AND WANTON CONDUCT**
**(Against all named Defendants except Metropolitan Life Insurance Company and**
**Air Products and Chemicals, Inc., individually and as successor-by-merger to**
**Catalytic, Inc. f/k/a Catalytic Construction Company)**

31.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

32.     Plaintiff Ralph Earl Logan and others in his position worked in close proximity to the asbestos and asbestos-related materials used or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff Ralph Earl Logan's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

33.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing

8

products, were hazardous to the health and safety of Plaintiff Ralph Earl Logan and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants.  As a result, the Plaintiff Ralph Earl Logan was severely damaged as is set forth below.

34.    The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff Ralph Earl Logan the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)    failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)    failure to issue recall type letters to prior users;

(c)    frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)    rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)    delaying the use of and/or providing intentionally inadequate warnings on asbestos products.

35.    The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, done with willful disregard of the safety of Plaintiff Ralph Earl Logan and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including Plaintiff Ralph Earl Logan and others similarly situated, and even though forewarned by tests, standards,

promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff Ralph Earl Logan and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

36.     Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of the user or consumer, such as Plaintiff Ralph Earl Logan, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of their products.

**FOURTH CAUSE OF ACTION**
**FALSE REPRESENTATION/FRAUD**
**(Against all Defendants except Metropolitan Life Insurance Company and Air Products and Chemicals, Inc., individually and as successor-by-merger to Catalytic, Inc. f/k/a Catalytic Construction Company)**

37.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

38.     During, before, and after Plaintiff Ralph Earl Logan's exposure to asbestos products manufactured, installed or otherwise used by Defendants, the Defendants falsely represented facts, including the dangers of asbestos exposure, to Plaintiff Ralph Earl Logan in the particulars alleged in the paragraphs above, while Defendants each had actual knowledge of said dangers of asbestos exposure to persons such as Plaintiff Ralph Earl Logan, and while Defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

39.     The foregoing representations were material conditions precedent to Plaintiff Ralph Earl Logan's continued exposure to asbestos-containing products, and Defendants each intended that Plaintiff Ralph Earl Logan act upon the representations by continuing his exposure

10

to the asbestos products. Plaintiff Ralph Earl Logan was ignorant of the falsity of Defendants' representations and rightfully relied upon the representations.

40.    As a direct and proximate result of Plaintiff Ralph Earl Logan's reliance upon Defendants' false representations and fraud, Plaintiff Ralph Earl Logan suffered injury and damages hereinafter described and seeks recovery for compensatory and punitive damages against these Defendants.

**FIFTH CAUSE OF ACTION**
**FAILURE TO WARN**
**(Against all named Defendants except Metropolitan Life Insurance Company and Air Products and Chemicals, Inc., individually and as successor-by-merger to Catalytic, Inc. f/k/a Catalytic Construction Company)**

41.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

42.    At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and of exposures to inhalable asbestos.

43.    Defendants had a duty to warn individuals working at Plaintiff Ralph Earl Logan's jobsites, including but not limited to Plaintiff Ralph Earl Logan, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

44.    Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants failed to warn and/or inadequately warned Plaintiff Ralph Earl Logan of the dangers, including but not limited to:

(a)    Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with their products which should have been designed to provide to Plaintiff Ralph Earl Logan knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

11

(b)     Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide to Plaintiff Ralph Earl Logan knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c)     Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(d)     Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as Plaintiff Ralph Earl Logan;

(e)     Failing to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(f)     Failing to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

(g)     Failing to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(h)     Failing to recall their defective product or manufacture a reasonably safer alternative;

(i)     Failing to take adequate precautions and industrial hygiene measures to protect Plaintiff Ralph Earl Logan and exposed workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to Plaintiff Ralph Earl Logan and workers in the facilities at issue that exposure to dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)     Otherwise failing to act reasonably under the totality of the circumstances.

45.     Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment to Plaintiff Ralph Earl Logan's employers, and

12

these products were used by Plaintiff Ralph Earl Logan's various employers.  Thus, Defendants had a duty to warn individuals working at Plaintiff Ralph Earl Logan's jobsites, including but not limited to the Plaintiff Ralph Earl Logan, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment.

46.    Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

47.    At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Plaintiff Ralph Earl Logan. In the alternative, after the asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable user, such as the Plaintiff Ralph Earl Logan, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

48.    Defendants' failure to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused Plaintiff Ralph Earl Logan to develop mesothelioma as a consequence of which he was injured and damaged, and Plaintiffs hereby make a claim for damages from the Defendants jointly and severally.

13

49.    As a result of the Defendants' failure to warn, the Plaintiff Ralph Earl Logan suffered the injuries, illnesses, and/or damages hereinafter alleged.

### SIXTH CAUSE OF ACTION
### CONSPIRACY AND PUNITIVE DAMAGES
### Against Metropolitan Life Insurance Company, Only

50.    Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products to which Plaintiff Ralph Earl Logan was exposed, and such assistance by METROPOLITAN LIFE aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products by such manufacturers which proximately caused Plaintiff Ralph Earl Logan's illness, injuries, and/or disabilities.

51.    In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos.   METROPOLITAN LIFE also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

52.    Plaintiff Ralph Earl Logan unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE's tests and information dissemination, the results of which METROPOLITAN LIFE published in leading medical journals.

53.    As a direct and proximate contributing result of METROPOLITAN LIFE's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Ralph Earl Logan from asbestos exposure was increased, and (ii) Plaintiff Ralph Earl Logan suffered the injuries previously described.

14

54.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE acted willfully, wantonly, and with malice in calculated disregard for the welfare of the general public, including Plaintiff Ralph Earl Logan. Plaintiffs seek compensatory and punitive damages against METROPOLITAN LIFE as a result.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE
**(Against Contractor Defendants Air Products and Chemicals, Inc., individually and as successor-by-merger to Catalytic, Inc. f/k/a Catalytic Construction Company and Foster Wheeler Energy Corporation)**

55.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

56.     At all material times, Defendants are or were engaged in the business of supplying, installing, replacing, repairing, and/or tearing out asbestos or asbestos-containing products during the course of construction or maintenance activities at the various job-sites listed in Schedule I.

57.     Upon information and belief, Defendants entered into various contracts to perform construction, maintenance, renovation and/or asbestos abatement work at some or all of the jobsites listed in Schedule I.

58.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be used, applied, installed, repaired, or torn out in the vicinity of Plaintiff while he was working at his various job-sites.

15

59.     Defendants herein, contracted, employed, retained and/or otherwise hired individuals, servants, agents, and/or employees to perform the work described herein and for which the Defendants had been hired, retained and/or contracted.

60.     Defendants herein are vicariously responsible for the negligent, willful and/or wanton acts of their employees, servants and/or agents, who, while committing such negligent, willful and/or wanton acts were acting generally within the scope of their assigned, duties and employment with said Defendant employers.

61.     In furtherance of their duties as general contractors, Defendants, by their agents, servants and/or employees, purchased, transported, cut, fitted, sawed, installed, and otherwise handled asbestos-containing materials in and throughout certain jobsites identified on Schedule I.

62.     The construction, maintenance, and installation of asbestos-containing insulation and other asbestos-containing materials, occurred while Plaintiff was employed and actively working in and throughout the plants and in close proximity to the Defendants' workers and employees.

63.     Plaintiff, for a long period of time, worked with or around and was exposed to the asbestos and asbestos-containing materials, products or equipment installed, replaced, repaired, and/or torn out by the Defendants.

64.     During the course and scope of his employment, Plaintiff has been exposed to Defendants' use of asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

65.     At all material times, Defendants knew or should of have known that exposure to asbestos or asbestos-containing materials is deleterious, carcinogenic and otherwise harmful to persons exposed to asbestos fibers.

66.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to perform work as described herein in a reasonably safe manner and a duty to prevent injury to individuals,

16

including Plaintiff, who was working in and around the work and/or job areas of the Defendants, their agents, servants, and/or employees.

67.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to warn the Plaintiff and other foreseeable individuals working in and around the work and/or job areas of the Defendants, their agents, servants, and/or employees of the dangers associated with asbestos exposure which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

68.     Plaintiff, whose livelihood was dependent upon the work that he did for the various employers listed in Schedule I, was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that were used, applied, installed, torn out, or replaced by Defendants.  Defendants knew or should have known that persons employed as Plaintiff would be required to and would come into contact with and would work in close proximity to said products.

69.     Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care.  Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they supplied, applied, installed, replaced, repaired, and/or tore out said asbestos or asbestos-containing products, materials or equipment while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general well-being.  Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

70.     Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly

17

harmful to Plaintiff's body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)    While performing their duties and obligations to provide general and/or specific plant maintenance the Defendants, their employees, agents and/or servants, handled and/or distributed asbestos-containing material in such a way as to expose Plaintiff herein to airborne asbestos dust and fibers;

(b)    Failed to provide a safe work environment for Plaintiff and others working in the vicinity of Defendants;

(c)    Failing to properly enclose, encapsulate, seal, contain and/or safeguard the worksite in and around asbestos materials in order to prevent the escape and/or release into the surrounding area of airborne asbestos fibers;

(d)    Failing to properly warn Plaintiff of the presence of airborne asbestos fibers which had been released into the air as a direct and proximate result of the Defendants, their employees, agents and/or servants;

(e)    Failing to properly label areas of the plant, plant appurtenances and structures, including but not limited to, building insulation, pipes, boilers, walls, ceilings, floors and other areas as to the existence of friable or potentially friable asbestos-containing material;

(f)    Failing to take reasonable precautions to publish, disseminate or otherwise make available to Plaintiff, warnings of the dangerous nature of the existence in the plant of asbestos and/or asbestos-containing material and/or prepare, implement or disseminate any reasonable plan to protect Plaintiff from overall exposure to asbestos-containing materials.

(g)    Failed to advise Plaintiff of the dangerous characteristics of the asbestos and/or asbestos-containing materials, products or equipment used at Plaintiff's job-site;

(h)    Failed or omitted to provide Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;

(i)    Failed and omitted to place any warnings or sufficient warnings on the containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment;

18

(j)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(k)     Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers  from asbestos and/or asbestos-containing materials, products or equipment;

(l)     Did not recommend methods to improve the work environment;

(m)     Did not use alternative products;

(n)     Continued to use a known cancer-causing product, to-wit:  asbestos;

(o)     During the time period that the Defendants constructed and/or maintained the plant at which Plaintiff worked, including its buildings and appurtenances, the Defendants, their agents, servants, and/or employees failed to provide employees of the plants, including Plaintiff, who was employed and working in the plants at the time, with any and/or all inadequate protection from exposure to airborne asbestos materials and fibers which were negligently released into the work area by Defendants, their employees, agents and/or servants; and

(p)     After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform Plaintiff of the need for monitoring and periodic evaluations.

71.     At all material times, Defendants knew, or in the exercise of reasonable care, should have known about the risks associated with exposure to asbestos or asbestos-containing products.

72.     Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the negligent use and application of the asbestos and/or asbestos-containing products, materials or equipment at issue.

73.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to Plaintiff were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

19

74.     As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Plaintiff developed Mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

75.     As a result of the above, Plaintiffs seek damages as are hereinafter demanded.

## EIGHTH CAUSE OF ACTION
## NEGLIGENT HIRING, TRAINING AND/OR
## SUPERVISION OF DEFENDANTS-EMPLOYEES
**(Against Contractor Defendants Air Products and Chemicals, Inc., individually and as successor-by-merger to Catalytic, Inc. f/k/a Catalytic Construction Company and Foster Wheeler Energy Corporation)**

76.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

77.     That the Defendants herein hired, retained and/or otherwise employed individuals in order to perform the Defendants' obligations and duties at certain jobsites listed in Schedule I.

78.     Defendants herein had a duty to hire employees and supervisors who were competent and who would otherwise perform their job functions and assignments in a reasonably safe manner, and a duty to properly and adequately train their supervisors and employees in the proper and safe manner in which to perform their functions and assignments.

79.     Defendants were negligent in that they hired, retained and/or otherwise employed individuals who were untrained, incompetent, unsafe, careless, reckless and who otherwise acted in an unreasonable and unsafe manner in the performance of their job functions and assignments, including but not limited to, their purchase, transportation, installation, handling, cutting, sawing, fitting, demolition, removal and/or packaging of asbestos and asbestos-containing materials.

80.     The Defendants were negligent in that they failed to properly train, inform, equip and monitor supervisors and employees and the activities of their workers who were employed at the various sites listed on the attached Schedule I.

81.     That the transportation, installation, cutting, removal and/or otherwise handling of asbestos and asbestos-containing materials by Defendants' employees, servants and/or agents

20

was done in such a negligent and irresponsible manner that surrounding work area at times appeared like clouds of white smoke, and that the dust-contained asbestos was like a snowstorm, clouding and fogging the entire room and work areas.

82.    The handling of asbestos-containing materials by Defendants, their responsible employees, agents and/or servants was done in such a negligent and irresponsible manner that hammers and objects of the like were used to knock asbestos insulation and materials off of pipes, boiler, ceilings, walls, and other areas.

83.    Defendants, their employees, agents and/or servants handled and worked with asbestos-containing material in such a negligent and irresponsible manner that the air surrounding said job site was not encapsulated or properly ventilated to prevent the release into surrounding areas of airborne asbestos dust and fibers into the breathing space occupied by Plaintiff.

84.    As a direct and proximate result of the Defendants' negligent hiring, training and/or supervision of their employees, agents and/or servants, Plaintiff was exposed to airborne asbestos dust and fibers causing injury.

85.    Accordingly, Plaintiffs seek damages as are hereinafter demanded.

**NINTH CAUSE OF ACTION**
**GROSS NEGLIGENCE—WILFUL, WANTON, AND RECKLESS CONDUCT**
**(Against All Named Defendants)**

86.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

87.    Plaintiff and others in his position worked in close proximity to the asbestos and asbestos-related materials use or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

88.    The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing

21

products, were hazardous to the health and safety of Plaintiff and others in Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said defendants.  As a result, the Plaintiffs have been severely damaged as is set forth below.

89.    The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through 1970's, thus denying Plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)    failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)    failure to issue recall type letters to prior users;

(c)    frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)    rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)    The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

90.    The acts of Defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including Plaintiff and others similarly situated, and

22

even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Plaintiff and others similarly situated, and Plaintiffs are thereby entitled to punitive damages.

91.     Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiffs therefore seek exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

## DAMAGES
## LOSS OF CONSORTIUM

92.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

93.     As a direct and proximate result of the injuries and damages complained of herein with respect to Plaintiff Ralph Earl Logan, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse Lois Logan, has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband; and therefore the Plaintiff-Spouse, Lois Logan, is entitled to damages for her loss of consortium, both past and future.

## DAMAGES

94.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

95.     As a result of the above-alleged conduct of the Defendants, Plaintiff Ralph Earl Logan developed mesothelioma, as a consequence of which, he has been damaged as follows:

23

(a)    hospital and medical expenses incidental to Plaintiff Ralph Earl Logan's illness;

(b)    loss of earnings and future earning power of Plaintiff Ralph Earl Logan;

(e)    loss of Plaintiff Ralph Earl Logan's general health, strength, and vitality;

(c)    loss of pecuniary contributions to the heirs of Plaintiff Ralph Earl Logan;

(d)    loss of consortium, society, aid, companionship and services to the heirs of Plaintiff Ralph Earl Logan;

(e)    future loss of consortium, society, aid, companionship and services to the heirs of the Plaintiff Ralph Earl Logan;

(f)    pain and suffering of the Plaintiff Ralph Earl Logan;

(g)    all other damages recoverable under said Act.

WHEREFORE, the Plaintiffs verily believe they are entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty and willful, wanton, fraudulent and malicious conduct as alleged herein proximately caused by the fault of the Defendants.  Plaintiffs pray for judgment against all Defendants for actual and punitive damages, lost wages and special damages in an amount to be determined by the trier of fact, in excess of $75,000, plus interest as provided by law and the costs of this action.

24

**PLAINTIFFS REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 20th day of December, 2012.

/s/ Janet Ward Black
Janet Ward Black
NC State Bar 12869
Attorney for Plaintiffs
Ward Black Law
208 W. Wendover Ave.
Greensboro, NC  27401
336-333-2244
jwblack@wardblacklaw.com

25

Ralph Earl Logan
SCHEDULE I
Plaintiff-Worker Employment History
Asbestos Exposure Worksite Information

OCCUPATION:
Apprentice Electrician, Engineer, and Engineer Supervisor

| EMPLOYER/WORKSITE: | APPROXIMATE DATES: |
| --- | --- |
| Robert Chew & Son – Elmer, NJ | 1945 – 1946 |
| The Texas Company/Texaco – Westville, NJ | 1951-1956 |
| Gettys/ Texaco Oil Refinery – Delaware City, DE | 1956-1986 |

PRODUCTS CONTAINING ASBESTOS:

Pumps, compressors, turbines, valves, gaskets and packing, insulation, boilers and other asbestos-containing materials.

26