# U.S. District Court
## North Carolina Middle District (NCMD)
## CIVIL DOCKET FOR CASE #: 1:13-cv-00112-JAB-JLW
## Internal Use Only

BECK v. CERTAINTEED CORPORATION et al
Assigned to: JUDGE JAMES A. BEATY, JR
Referred to: MAG/JUDGE JOE L. WEBSTER
Case in other court: Eastern District of Pennslyvania, MDL-875
Cause: 28:1332 Diversity-Asbestos Litigation

Date Filed: 02/07/2013
Jury Demand: Plaintiff
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Diversity

## **Plaintiff**

**HELEN G. BECK**
*Administratrix of the Estate of Kenneth Wiseman Beck, Deceased*

represented by **MONA LISA WALLACE**
WALLACE AND GRAHAM, P.A.
525 N. MAIN ST.
SALISBURY, NC 28144
704-633-5244
Fax: 704-633-9434
Email: mwallace@wallacegraham.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

## **Defendant**

**CERTAINTEED CORPORATION**

## **Defendant**

**INGERSOLL-RAND COMPANY**

## **Defendant**

**METROPOLITAN LIFE INSURANCE COMPANY**
*A Wholly-Owned Subsidiary of Metlife Inc.*

## **Defendant**

**OWENS ILLINOIS, INC.**

| Date Filed | # | Docket Text |
|---|---|---|
| 02/07/2013 | 1 | COMPLAINT against CERTAINTEED CORPORATION, INTERSOLL-RAND COMPANY, METROPOLITAN LIFE INSURANCE COMPANY, OWENS ILLINOIS, INC. (Filing fee $350 receipt number 0418-1256499), filed by HELEN G BECK. (WALLACE, MONA) Modified on 2/8/2013 to list out all Defendants. (Garland, Leah) |

| | | |
|---|---|---|
| | | (Entered: 02/07/2013) |
| 02/08/2013 | 2 | Summons Issued as to CERTAINTEED CORPORATION, INGERSOLL-RAND COMPANY, METROPOLITAN LIFE INSURANCE COMPANY, OWENS ILLINOIS, INC. (Attachments: # 1 Summons to Ingersoll-Rand Company, # 2 Summons to Metropolitan Life Insurance Company, # 3 Summons to Owens Illinois, Inc.) (Garland, Leah) (Entered: 02/08/2013) |
| 02/08/2013 | 3 | Notice of Right to Consent. Counsel shall serve the attached form on all parties. (Garland, Leah) (Entered: 02/08/2013) |
| 02/08/2013 | 🔒 | (Court only) Case ASSIGNED to JUDGE JAMES A. BEATY, JR and MAG/JUDGE JOE L. WEBSTER. Set Magistrate Judge Flag for Judge Joe L. Webster. (Garland, Leah) (Entered: 02/08/2013) |

# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

### FILE NO.: 1:13-cv-112

| | | |
|---|---|---|
| HELEN G. BECK, | ) | |
| ADMINISTRATRIX | ) | |
| OF THE ESTATE OF KENNETH | ) | |
| WISEMAN BECK, DECEASED, | ) | |
| | ) | |
|     PLAINTIFF, | ) | |
| v. | ) | **CIVIL ACTION COMPLAINT** |
| | ) | |
| CERTAINTEED CORPORATION; | ) | **JURY TRIAL DEMANDED** |
| INGERSOLL-RAND COMPANY; | ) | |
| METROPOLITAN LIFE INSURANCE | ) | |
|     COMPANY; A WHOLLY- | ) | |
|     OWNED SUBSIDIARY OF | ) | |
|     METLIFE INC., | ) | |
| OWENS ILLINOIS, INC., | ) | |
| | ) | |
|     DEFENDANTS. | ) | |

## CIVIL ACTION COMPLAINT

PLAINTIFF, Helen G. Beck, Administratrix of the Estate of Kenneth Wiseman Beck, Deceased, by and through her attorneys, Wallace and Graham, PA, hereby brings this Civil Action Complaint, against the above-named Defendants for compensatory and punitive damages, whereas the following is alleged:

1.    This action is brought pursuant to the Wrongful Death Act, N.C. Gen. Stat. 28A-18-1 et seq., for the wrongful death of Kenneth Wiseman Beck on behalf of all persons entitled to recover damages as a result of his contracting an incurable asbestos cancer.

2.    Kenneth Wiseman Beck was diagnosed with mesothelioma on or about

1

January 25, 2011 and died on February 16, 2011, in Rowan County, North Carolina.

## PARTIES

3.      Plaintiff Helen G. Beck, is the surviving spouse of Kenneth Wiseman Beck, Deceased (hereinafter "Decedent") and is the Administratrix of the Estate of Kenneth Wiseman Beck, Deceased. Plaintiff Helen G. Beck and the Decedent were, at all times relevant, citizens and residents of the State of North Carolina.

4.      Plaintiff Helen G. Beck was appointed Administratrix of the Estate of Kenneth Wiseman Beck, Deceased on or about February 16, 2011. Plaintiff Helen G. Beck maintains this action on behalf of the Estate pursuant to her powers under N.C. Gen. Stat. 28A-13-3 and on behalf of herself individually as a result of her loss of consortium of her husband, the Decedent, during his illness.

5.      Plaintiff Helen G. Beck brings this action pursuant to the Decedent's diagnosis of Malignant Mesothelioma, a signal tumor for exposure to asbestos. The Decedent worked full days in an industrial environment where he was exposed to asbestos beginning in approximately 1947. During the time period the Decedent was exposed to asbestos, the manufacturers of asbestos products failed to adequately warn of the lethal hazards of breathing asbestos dust, often failing to issue any waning at all, despite the fact that these asbestos companies knew that breathing small amounts of asbestos dust could be fatal.  The scientific and regulatory communities around the world are in unanimous agreement that all types of asbestos released from asbestos products cause cancer, and that there is no safe level of exposure to asbestos. The Decedent's work in the textile, rail and electrical industry and trade placed him around asbestos-

containing insulation, mastics, gaskets, packing, boilers, valves, pumps, steam traps, piping, turbines, and panels all of which can release vast amounts of asbestos dust into the air when disturbed. The investigation continues into the Decedent's work with asbestos products and his exposures to those products.  This lawsuit specifically excludes any allegations of exposures to only those parts on locomotive and railcars that are expressly considered safety appliances as defined by Kurns v. Railroad Friction 132 S. CT. 1261 (2012). At present, it is known the Decedent's industrial employment related to these allegations includes the following work site: Lexington Furniture Industries in Thomasville, NC, NC Finishing in Salisbury, NC, Bahnson Company in Winston-Salem, NC, Erwin Mills, Inc., and Cooleeme Mills both in Cooleemee, NC, and Southern Railway Company in Spencer NC. It is believed that all exposure alleged for purposes of this suit occurred pre 1980.

6.      The Defendants in this action are all corporations, none of which are incorporated or have their principal place in the State of North Carolina:

A.      The Defendant, CERTAINTEED CORPORATION, is a corporation incorporated under the laws of the State of Delaware, having its principal place of business located in the State of Pennsylvania.

B.      The Defendant, INGERSOLL-RAND COMPANY, is a corporation incorporated under the laws of the State of New Jersey, having its principal place of business located in the State of New Jersey.

C.      The Defendant, METROPOLITAN LIFE INSURANCE COMPANY, A Wholly-owned Subsidiary of METLIFE INC., is a corporation incorporated under the laws of the State of New York with its principal place of

business in the State of New York.

D.      The Defendant, OWENS ILLINOIS, INC., is a corporation incorporated under the laws of the State of Ohio, having its principal place of business located in the State of Ohio.

7.      All of the named defendants listed above are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each defendant corporation does or in the past mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, which are or in the past were sold, distributed, and used in North Carolina. Mr. Beck was exposed to various asbestos-containing products while working at various job sites listed in Paragraph 5 above.

## JURISDICTION AND VENUE

8.      Plaintiff Helen G. Beck incorporates by reference the preceding paragraphs as if fully set forth herein.

9.      This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina.

10.      Further, this Court has diversity jurisdiction over the parties because the Plaintiff is a citizen of the State of North Carolina and none of the Defendants are

4

citizens of the State of North Carolina. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00).

11.     Pursuant to 28 U.S.C A. §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.


### FIRST CAUSE OF ACTION
### <u>NEGLIGENCE</u>

12.     Plaintiff Helen G. Beck incorporates by reference the preceding paragraphs as if fully set forth herein.

13.     At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment.

14.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment came into use by the Decedent.

15.     The dangers of breathing asbestos were first published in the medical literature in the 1890s.  By the late 1950s, there were hundreds of medical articles highlighting the dangers of being around asbestos dust.   Confidential corporate documents from many of the named defendant companies reveal that (a) the dangers of asbestos were well understood; (b) asbestos was cheaper to use in the products than replacement substances such as clay; (c) the product manufacturing industry actively fought governmental regulation and the banning of asbestos.

16.     Throughout the course of his employment, up to 1980 as to then defendants, the Decedent worked with and was exposed to the asbestos and asbestos-containing materials, products or equipment mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most of the exposure being within the State of North Carolina.

17.     During the course and scope of his employment, the Decedent was exposed to defendants' asbestos and asbestos-containing materials, products or equipment, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

18.     Defendants, acting by and through its servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Decedent and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

19.     The Decedent, whose livelihood was dependent upon the work that he did at the work site listed in Paragraph 5 above was required to work with and around asbestos and/or asbestos-containing products, materials or equipment that manufactured, processed, distributed, supplied and/or sold by Defendants. Defendants knew or should have known that persons employed, such as the Decedent, would be required to and would come into contact with and would work in close proximity to said products.

20.     The Decedent sustained injuries caused by no fault of his own and which could not be avoided through the use of his reasonable care. The Decedent's development

of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to the Decedent's body, lungs, respiratory system, skin, health, and general well-being. Further, defendants knew or in the exercise of reasonable care should have known that the Decedent would not know of such danger to his health.

21.     The Decedent's illness and disability are the direct and proximate result of the negligence and carelessness of defendants, jointly and severally, in that, even though the defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment were deleterious, poisonous, and highly harmful to plaintiffs body, lungs, respiratory system, skin, and health.

22.     Defendants breached their duties and were negligent in the following acts and/or omissions:

> (a)     Failed to advise the Decedent of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment;
> (b)     Failed or omitted to provide the Decedent with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment;
> (c)     Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment to warn the handlers of the dangers to health in

7

coming in contact with said asbestos and asbestos-containing materials, products or equipment;

(d)     Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment;

(e)     Inadequately warned, if, in fact, they warned at all, persons such as the Decedent of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment;

(f)     Did not recommend methods to improve the work environment;

(g)     Did not develop alternative products;

(h)     Continued to use a known cancer-causing product, to-wit: asbestos; and

(i)     After discovering that the asbestos exposure caused a progressive lung disease, the defendants did not inform the Decedent of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

23.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the defendants.

24.     Defendants were negligent and breached their duty of due care to the Decedent by taking or failing to take the actions as previously alleged to avoid harm to the Decedent and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment at issue in the stream of commerce.

25.     The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment and the resulting injuries and damages to the Decedent were reasonably foreseeable, or should have been reasonably foreseen by defendants.

26.     As a direct and proximate result of the aforesaid negligent acts and/or

omissions by the Defendants, the Decedent developed mesothelioma, as a consequence of which, through no fault of his own, he was severely injured, disabled, damaged and has since died.

27.     As a result of the above, Plaintiff Helen G. Beck seeks damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## <u>BREACH OF IMPLIED WARRANTY</u>

28.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

29.     The Defendants impliedly warranted that their relevant products, equipment and asbestos materials were of good and merchantable quality and fit for their intended use.

30.     The implied warranty made by the defendants that the asbestos and asbestos-containing materials, products, or equipment were of good and merchantable quality and for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the atmosphere wherein the Decedent carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

31.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, the Decedent developed an illness, to-wit: mesothelioma.

32.     As a direct and proximate result of the above, Plaintiff Helen G. Beck seeks damages as are hereinafter demanded.

9

## THIRD CAUSE OF ACTION
## <u>STRICT LIABILITY</u>

33.     Plaintiff incorporates by reference the allegations contained in the

preceding paragraphs as though fully set forth herein.

34.     During the pertinent times, Plaintiff was injured by his exposure to

asbestos fibers associated with the products and equipments manufactured and sold bu

the Defendants.

35.     Defendants' relevant products and equipments was at the time of the

harmful asbestos exposure in materially the same condition as when it left the hands of

the Defendants.

36.     Plaintiff's injury herein occurred because the products and the equipment

of the Defendants were in a defective condition unreasonably dangerous to the user.

37.     At the time the Defendants, and each of them sold and/or delivered the

aforesaid asbestos and asbestos-containing products and at the time said products were used

by Plaintiff or by others in his vicinity in the manner and environment intended, they were in

a defective condition and were unreasonably dangerous and unfit for their intended use in

that they were deleterious, poisonous and highly harmful to Plaintiff. The above was the

proximate cause of the severe damages sustained by the Plaintiff as herein set forth.


## FOURTH CAUSE OF ACTION
## <u>GROSS NEGLIGENCE-WILFUL, WANTON, AND RECKLESS CONDUCT</u>

38.     Plaintiff Helen G. Beck incorporates by reference the preceding

paragraphs as if fully set forth herein.

10

39.     The Decedent and others in his position worked in close proximity to the asbestos and asbestos-related materials use or manufactured by the Defendants, and the exposure and hazard to each of them, in the Decedent's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the defendants, and each of them.

40.     The Defendants have known or should have known since at least 1929, and possibly as early as 1890, of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, were hazardous to the health and safety of the Decedent and others in the Decedent's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the asbestos products of said Defendants. As a result, the Decedent has been severely damaged as is set forth herein.

41.     The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure from 1929 through the 1970s, thus denying the Decedent the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

(a)     failure to warn prior users when the defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users;

(c)     frustrating the publication of articles and literature from the 1930's

11

through at least 1976;

(d)    rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)    The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

42.    The acts of the defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of the Decedent and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment upon the body of human beings, including plaintiff arid others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of the Decedent and others similarly situated, and Plaintiff Helen G. Beck is thereby entitled to punitive damages.

43.    Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as the Decedent, Plaintiff Helen G. Beck therefore seeks exemplary and punitive damages against defendants to punish the defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

## FIFTH CAUSE OF ACTION
## <u>FALSE REPRESENTATION</u>

44.     Plaintiff Helen G. Beck incorporates by reference the preceding paragraphs as if fully set forth herein.

45.      During, before, and after the Decedent's exposure to asbestos products manufactured, installed or otherwise used by defendants, the defendants falsely represented facts, including the dangers of asbestos exposure, to the Decedent in the particulars alleged in the paragraphs above, while defendants each had actual knowledge of said dangers of asbestos exposure to persons such as the Decedent, and while defendants each knew of the falsity of their representations and/or made the representations in reckless disregard of their truth or falsity.

46.     The foregoing representations were material conditions precedent to the Decedent's continued exposure to asbestos containing products, and Defendants each intended that the Decedent act upon the representations by continuing his exposure to the asbestos products. The Decedent was ignorant of the falsity of defendants' representations and rightfully relied upon the representations.

47.     As a direct and proximate result of the Decedent's reliance upon Defendants' false representations, the Decedent has suffered injury, damages and death hereinafter described.

## SIXTH CAUSE OF ACTION
## <u>FAILURE TO WARN</u>

48.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

13

49.      At all times material hereto, the Defendants knew or should have known of the harmful effects and/or harmful dangers of working with asbestos and/or asbestos-containing products, materials, or equipment and that exposures to inhalable asbestos.

50.      Defendants had a duty to warn individuals working at the Decedent's jobsites, including but not limited to the Decedent, of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

51.      Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants failed to warn and/or inadequately warned the Decedent of the dangers, including but not limited to:

(a)      Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with its products which should have been designed to provide to the Decedent knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(b)      Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with their products which should have been designed to provide to the Decedent knowledge about the hazards caused by exposure to its products and how to eliminate such hazards;

(c)      Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards caused by exposure to the products, and how to eliminate the hazards;

(d)      Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed workers such as the Decedent;

(e)      Failing to inspect the workplace in which their products were being used to determine whether the products being used were deleterious to the health of exposed workers;

(f)      Failing to design, process and transport their products in a manner intended to minimize exposure during normal working conditions;

14

(g)   Failing to specify and market their products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of the products after it was known or should have been known that adequate protective measures were not being implemented;

(h)   Failing to recall their defective product or manufacture a reasonably safer alternative;

(i)   Failing to take adequate precautions and industrial hygiene measures to protect the Decedent and exposed workers when installing, repairing, or tearing out asbestos and/or asbestos-containing products, materials, or equipment including, but not limited to, providing protection from dust and fibers emanating from the installation, repair, and/or removal process; failing to use local ventilation; failing to provide warnings to the Decedent and workers in the facilities at issue that exposure to dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment was hazardous and carcinogenic; failing to adequately clean up debris from the installation, repair and/or removal process; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)   otherwise failing to act reasonably under the totality of the circumstances.

52.   Defendants manufactured, processed and/or sold asbestos and/or asbestos-containing products, materials, or equipment, for the Decedent's employer, and these products were used by the Decedent's various employers. Thus, Defendants had a duty to warn individuals working at the Decedent's jobsites, including but not limited to the Decedent, of the dangers associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment.

53.   Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from asbestos and/or asbestos-containing products, materials, or equipment, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment.

54.     At the time the asbestos and/or asbestos-containing products, materials, or equipment left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that it knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as the Decedent. In the alternative, after the asbestos-containing products left Defendants' control, Defendant became aware of or in the exercise of ordinary care should have known that their product posed a substantial risk of harm to a reasonably foreseeable user, such as the Decedent, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

55.     Defendants' failure to provide adequate warnings as to the hazards associated with exposure to asbestos and/or asbestos-containing products, materials, or equipment or to provide proper instructions on the use, handling, and storage of asbestos and/or asbestos-containing products, materials, or equipment caused the Decedent to develop Mesothelioma as a consequence of which he has been injured and damaged and claims damages of the Defendant jointly and severally.

56.     As a result of the Defendants' failure to warn, the Decedent suffered injury, damages and death hereinafter alleged.

### SEVENTH CAUSE OF ACTION
### (Conspiracy, Concert of Action - Defendant Metropolitan Life Insurance Company)

57.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

58.     Beginning in the late 1920's, conspirators including Defendant Metropolitan Life Insurance Company ("Met Life"), as well as Johns-Manville,

Raybestos-Manhattan and others, undertook a duty to conduct research on asbestos-related health problems and to inform the public about any health risks that could be associated therewith. In or about 1929, Met Life, through its agents and employees acting within the scope of their agency and employment, including but not limited to Dr. Anthony J. Lanza ("Lanza"), began an investigation of asbestos-related health hazards. In 1935, this study was altered by Lanza, with the full knowledge of Met Life, at the request of and in concert with the asbestos industry in order to wrongly influence the United States Public Health Service, the United States medical community and various state legislatures.

59.     Thereafter, Defendant Met Life though the acts and omissions of its employees, most notably Lanza, undertook a series of activities with various members of the asbestos industry including but not limited to Johns-Manville, Raybestos-Manhattanl Raymark Industries, Inc., United States Gypsum, American Brake BloklAbex, and others to suppress and misrepresent the dangers of exposure to asbestos dust to employees of Met Life's insureds and the general public and the medical community.

60.     The conspirators through their agent, Lanza of Met Life, made a concerted effort to discredit and to terminate the studies and experiments of certain scientists who were developing data of profound importance for the area of public health in relation to the cancer hazard which existed for workers and bystanders in the asbestos industry.

61.     As a direct and proximate result of Met Life's intentional publication of deceptive and misleading medical data and information, and other conspiratorial acts and omissions, Defendant caused asbestos to be used in the occupational settings from which Plaintiff breathed asbestos dust which resulted in Plaintiffs injuries. Defendant Met Life,

through its agents and employees and officers, aided and abetted and gave substantial

assistance to Johns-Manville and Raybestos-Manhattan in their tortious selling of

asbestos products and voluntarily undertook a duty to warn the United States Public

Health Service, the medical community, and others about the danger of asbestos arid

consciously and negligently misrepresented the dangers of asbestos to the United States

Public Health Service, the medical community, and others, all to the ultimate harm of

Plaintiff herein.

62.     Defendant Met Life rendered substantial aid and assistance to the

manufacturers of asbestos-containing products to which Plaintiff was exposed, and such

assistance by Met Life aided and abetted the negligence and the marketing of

unreasonably dangerous asbestos-containing products by such manufacturers which

proximately caused Plaintiffs illness.

63.     In both conducting tests and in publishing their alleged results, Met Life

failed to exercise reasonable care to conduct or publish complete, adequate and accurate

tests of the health effects of asbestos. Met Life also caused to be published intentionally

false, misleading, inaccurate and deceptive information about the health effects of

asbestos exposure.

64.     Plaintiff unwittingly and justifiably relied upon the thoroughness of Met

Life's tests and information dissemination, the results of which Met Life published in

leading medical journals.

65.     As a direct and proximate contributing result of Met Life's failures to

conduct or accurately publish adequate tests or disseminate accurate and truthful

information, after undertaking to do so; (i) the risk of harm to Plaintiff from asbestos

18

exposure was increased, and (ii) Plaintiff suffered the injuries described herein.

66.     In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; and in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for its own profit and gain, Met Life acted recklessly, wantonly, and in calculated disregard for the welfare of the general public, including Plaintiff.

67.     Additionally and alternatively, as a direct and proximate result of Met Life's actions and omissions, Plaintiff was caused to remain ignorant of all the dangers of asbestos resulting in Plaintiff, his employers and the general public to be unaware of the true and full dangers of asbestos, depriving Plaintiff of the opportunity to decide for himself whether he wanted to take the risk of being exposed to asbestos, denied Plaintiff the opportunity to take precautions against the dangers of asbestos and proximately caused Plaintiffs damages herein.

68.     During the relevant time period the Plaintiff was exposed to and did inhale and/or ingest asbestos dust, fibers, and particles, which dust, fibers, and particles came from the asbestos or asbestos-containing products which were mined, milled, manufactured, fabricated, supplied, and/or sold by the Johns Manville and/or Raybestos/Raymark.

69.     Defendant, Met Life, together with Manville, Raymark and other persons and entities, known and unknown at times relevant hereto, engages in a conspiracy or

concert of action to inflict injury on the Plaintiff and to withhold, alter, suppress and misrepresent information about the health effects of asbestos exposure. One or more of said conspirators did cause tortious injury to the Plaintiff in the course of or as a consequence of the conspiracy of concert of action. At least the following enumerated acts were undertaken by the conspirators in the course of and in furtherance of the conspiracy or concert of action.

(a)     In 1932, Met Life, through Lanza and others, assisted Manville with medical examinations of over 1,000 employees of Manville's factory in Manville, New Jersey. The report of this study shows that a large percentage of the employees suffered from asbestosis including employees not directly involved in the manufacturing process. This 1932 medical survey was not published in the medical literature and, therefore, was unavailable to scientists studying the issue of asbestos-related disease. Further collaboration between Manville and Met Life continued the cover-up.

(b)     Beginning in approximately 1934, Manville, through its agents, Vandiver Brown and Attorney J.C. Hobart, suggested to Lanza, Associate Director of Met Life, which was then insurer of Manville and Raymark, that Lanza publish a study on asbestosis in which Lanza would affirmatively misrepresent material facts about the health consequences of asbestos exposure. This was accomplished through intentional deletion of Lanza's description of asbestosis as 'fatal' and through other selective editing that affirmatively misrepresent asbestosis as a disease process less serious than it actually is and was known to be. As a result, Lanza's study was published in the medical literature in this misleading fashion in 1935. The conspirators were motivated, in part, to effectuate this fraudulent

misrepresentation and fraudulent nondisclosure by the desire to influence proposed legislation to regulate asbestos exposure and to provide a defense in lawsuits involving Manville, Raymark, and Met Life as insurer. Furthermore, upon information and belief, it is alleged that Met Life, at all times relevant hereto, had substantial monetary investments in Manville and Raymark, among other asbestos product manufacturers and distributors.

(c)     In 1936, the conspirators or some of them entered into an agreement with the Saranac Laboratories. Under this agreement, these conspirators acquired the power to decide what information Saranac could publish about asbestos disease and to control in what form such publications would occur. This agreement gave these conspirators power to affirmatively misrepresent the results of the work at Saranac, and also gave these conspirators power to material facts included in any study. On numerous occasions thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing material scientific data, resulting in numerous misstatements of fact being made at scientific meetings.

(d)     By November 1948, or earlier, Manville, Met Life (acting though Lanza), Raymark, and others decided to exert their influence to materially alter and misrepresent material facts about the substance of research started by Dr. Leroy Gardner at the Saranac Laboratories beginning in 1936. Dr. Gardner's research involved carcinogenicity of asbestos in mice and also included an evaluation of the health effects of asbestos on humans with a critical review of the then-existing standards of dust exposure for asbestos and asbestos products.

(e)     At a meeting on November 11, 1948, these conspirators and others intentionally and affirmatively determined that Dr. Gardner's work should be

21

edited to specifically delete material facts about the cancer-causing propensities of asbestos and the health effects of asbestos on humans and they determined that only an edited version would be published. These conspirators thereby fraudulently misrepresented the risks of asbestos exposure to the public, in general, and to the class of persons exposed to asbestos, including the Plaintiff.

(f)     As a direct result of influence exerted by the above described conspirators, Dr. Arthur Vorwald published Dr. Gardner's edited work in the Journal of Industrial Hygiene, AMA Archives of Industrial Hygiene and Occupational Health in 1951 in a form that stressed those portions of Dr. Gardner's work that the conspirators wished stressed, but which omitted references to human asbestosis and cancer, thereby fraudulently and affirmatively misrepresenting the extent of the risks. The conspirators affirmatively and deliberately disseminated this misleading Vorwald publication to universities, libraries, government officials, agencies arid others.

(g)     Such action constituted a material affirmative misrepresentation of the material facts involved in Dr. Gardner's work and resulted in creating an appearance that inhalation of asbestos was a less serious health concern than Dr. Gardner's unedited work indicated.

(h)     for many decades, Met Life, individually, jointly and in conspiracy with Manville and Raymark, have been in possession of medical and scientific data, literature, and test reports which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary foreseeable use of said asbestos-containing products and/or machinery requiring or calling for the use of asbestos or asbestos-containing products were unreasonably dangerous, hazardous,

22

deleterious to human health, carcinogenic, and potentially deadly.

(i)      Despite the medical and scientific data, literature and test reports possessed by and available to Met Life, individually and in conspiracy with Manville and Raymark, Fraudulently, willfully and maliciously withheld, concealed and suppressed said medical and scientific data, literature and test reports regarding the risks of asbestosis, cancer, mesothelioma, and other illnesses and diseases from Plaintiff who using and being exposed to Manville or Raymark asbestos containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products; caused to be released, published and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of asbestosis, cancer, mesothelioma and other illnesses and diseases, which Metropolitan, Manville and Raymark knew were either incorrect, incomplete, outdated and misleading; distorted the results of medical examinations conducted upon workers who were using asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and being exposed to the inhalation of asbestos dust and fibers by falsely stating and/or concealing the nature and extent of the harm which workers suffered; and failed to adequately warn the Plaintiff of the dangers to which he was exposed when they knew of the dangers.

(j)      by the false and fraudulent representations, omissions, failures, and concealments set forth above, Met Life, Manville and Raymark, individually, jointly, and in conspiracy with each other, intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions, failures, and

concealments, to continue to expose themselves to the dangers inherent in the use of and exposure to their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products. Said misrepresentations were false, incomplete, and misleading and constitute negligent misrepresentations as defined by Sections 311 and 522 of the Restatement (Second) of Torts.

70.    Plaintiff reasonably and in good faith relied upon the false and fraudulent representations, omissions, failures, and concealments made by Met Life, Manville, and Raymark regarding the nature of their asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products.

71.    As a direct and proximate result of the conspiracy and concert of action between Met Life, Manville and Raymark, the Plaintiff has been deprived of the opportunity of informed free choice and connection with the use of and exposure to Manville and Raymark's asbestos and asbestos-containing products, and therefore continued to work with and be exposed to the co-conspirator corporation's asbestos and asbestos-containing products and as a result contracted asbestos-related diseases and other conditions, and/or aggravated pre-existing conditions, as a result of which the Plaintiff has been damaged.

**DAMAGES**
**(As to all Defendants)**

72.    Plaintiff Helen G. Beck incorporates by reference the preceding paragraphs as if fully set forth herein.

73.    Plaintiff Helen G. Beck files this action under and pursuant to N.C. Gen.

24

Stat §§ 28A-18-1, et seq. and seeks to recover any and all damages allowable and incurred by the Estate of Kenneth Wiseman Beck and all beneficiaries.

74.     As a result of the above alleged conduct of the Defendants, the Decedent developed mesothelioma, suffered and sustained very serious injury to his person and died, a consequence of which he was damaged as follows:

75.     As a result of the development of asbestos related diseases, the Decedent suffered and sustained very serious injuries to his person, to wit: mesothelioma.

76.     The Decedent suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

77.     The Decedent's enjoyment of life has been greatly impaired; that the Decedent incurred substantial lost wages and loss of earning capacity; and further, that his expected life span has been greatly shortened.

78.     Plaintiff Helen G. Beck alleges that as a result of the aforesaid illnesses, the Decedent was forced to incur large amounts of medical expenses by way of doctor and drug bills.

79.     The Decedent required domestic help and nursing care due to his disabilities and was required to pay for such domestic help and nursing services.

80.     Prior to the onset of his symptoms, the Decedent was extremely active and participated in numerous hobbies and activities, and as a result of his illness, the Decedent was prevented from engaging in some of said activities which were normal to him prior to developing symptoms from asbestos-related lung disease. The Decedent was otherwise prevented from participating in and enjoying the benefits of a full and complete life.

81.     WHEREFORE, the Plaintiff Helen G. Beck verily believes the Decedent is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

## DAMAGES FOR LOSS OF CONSORTIUM
### (As to all Defendants)

82.     Plaintiff Helen G. Beck incorporates by reference the preceding paragraphs as if fully set forth herein.

83.     As a direct and proximate result of the injuries and damages complained of herein with respect to the Decedent, and as a direct and proximate result of the acts and omissions of the defendants, Plaintiff Helen G. Beck has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of her husband, the Decedent; and therefore Plaintiff Helen G. Beck is entitled to damages for her loss of consortium, both past and future. The Decedent was unable to perform the necessary duties of a spouse and the work and service usually performed in the care, maintenance, and management of the family home, and the Decedent will be unable to perform such work, services, and duties in the future.

84.     As a proximate result thereof, Plaintiff Helen G. Beck, has been permanently deprived and will be deprived of the consortium of her husband, the Decedent, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

85.     Discovery of the cause of Helen G. Beck's loss of consortium, as herein

alleged, occurred within one year of the date this complaint was filed.

86.    WHEREFORE, the Plaintiff prays for judgment against all Defendants for actual and punitive damages, lost wages and special damages in amounts to be determined by the trier of fact, and plus costs of this action.

### PUNITIVE DAMAGES
**(As to all Defendants)**

87.    Plaintiff Helen G. Beck incorporates by reference the preceding paragraphs as if fully set forth herein.

88.    During the pertinent times, Defendants had actual knowledge of the dangers to individuals similarly situated to the Plaintiff of asbestos exposure, nevertheless, Defendants deliberately, intentionally and purposefully withheld such information from Plaintiff, this denying Plaintiff of the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations and avoiding further dust exposure, the specifics of Defendants' intentional acts upon information and belief being as follows:

(a)    Failing to warn users of the need for monitoring due to asbestos exposure;

(b)    Never issuing recall-type letters of notices to users;

(c)    Rejecting advice of corporate officials and others to warn of the hazards of their products; such rejection being motivated by the possibility of adverse effects on profits;

(d)    Delaying the use of asbestos warnings and diluting the content of such warnings for asbestos-related products,

(e)    Failure to advise Plaintiff of medical findings known to Defendants concerning the dangers of asbestos exposure; and

27

(f)      Suppressed the dissemination of information to Plaintiff concerning the hazards of asbestos exposure.

89.      The forgoing deliberate, intentional and purposeful acts of the Defendants were the direct and proximate cause of Plaintiff's injuries and damages hereinafter described, and the Plaintiff is therefore, entitled to compensation and punitive damages.

90.      As a result of the willful, wanton and gross misconduct and gross negligence of the Defendants as alleged herein, the Plaintiff Helen G. Beck seeks and requests punitive or exemplary damages. Defendants malicious and outrageous disregard for the safety of users of asbestos products, including the Decedent, including but not limited to their intentional concealment of the dangers of asbestos that they knew of yet consciously refused to warn users of those dangers evidences a conscious indifference to the safety and health of users and bystanders of the products they profited from selling.

91.      WHEREFORE, Plaintiff Helen G. Beck therefore for example and by way of punishing Defendants, seeks punitive damages, according to proof.

**PLAINTIFF'S REQUEST TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
WALLACE AND GRAHAM, P.A.

/s/Mona Lisa Wallace
Mona Lisa Wallace
NC Bar No. 9021
Attorneys for Plaintiff
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
Tel. No. (704) 633-5244
Fax: (704) 633-9434
E-Mail: mwallace@wallacegraham.com

Date: 02/07/2013

28

**<u>DEFENDANT SERVICE LIST</u>**

Certainteed Corporation
CT Corporation System
150 Fayetteville Street, Box 1011
Raleigh, NC 27601

Ingersoll-Rand Company
CT Corporation System
150 Fayetteville St Box 1011
Raleigh, NC 27601

Owens Illinois
Managing Agent
One Michael Owens Way
Perrysburg, OH 43551

Metropolitan Life Insurance Company
Corporate Headquarters
200 Park Ave.
New York, NY 10166

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 7th day of February, 2013, I filed the foregoing Amended Complaint to the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record in this case and by depositing copies thereof in the United States Mail, postage prepaid, addressed to the Defendants, which have not yet made an appearance as follows:

Charles M. Sprinkle, III, Esq.
Haynsworth Sinkler Boyd, PA
P.O. Box 2048
Greenville, SC 29602
*Certainteed Corporation*

Timothy Peck, Esq.
Smith Moore LLP
P.O. Box 21927
Greensboro, NC 27420
*Counsel for Ingersoll-Rand Company*

Keith Coltran, Esquire
Wall Templeton & Haldrup P.A.
1001 Wade Ave, Ste 423
PO Box 10937
Raleigh, NC 27605
*Counsel for Metropolitan Life Insurance Company*

Robert Meriwether, Esquire
Nelson Mullins Riley & Scarborough LLP
PO Box 11070
Columbia, SC 29211
*Counsel for Owens-Illinois, Inc.*

Respectfully submitted,
WALLACE AND GRAHAM, P.A.

/s/Mona Lisa Wallace
Mona Lisa Wallace