ADRMOP

# U.S. District Court
## California Northern District (San Francisco)
## CIVIL DOCKET FOR CASE #: 3:13-cv-01879-MEJ

Sutherland et al v. B.R. Funsten & Co. et al
Assigned to: Magistrate Judge Maria-Elena James
Case in other court: San Francisco County Superior Court,
CGC 12-276023
Cause: 28:1331 Fed. Question: Personal Injury

Date Filed: 04/24/2013
Jury Demand: None
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

### Plaintiff

**Barbara Sutherland**
*and as personal representative to the*
*Estate of Allen Sutherland, Deceased*

represented by **Denyse Finn Clancy**
Baron Budd, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
(214) 521-3605
Email: dclancy@baronbudd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Asher Policastro**
Baron & Budd, PC
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 72519
214-521-3605
Fax: 214-520-1181
Email: epolicastro@ghjhlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Langdoc**
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 72519
(214) 521-3605
Fax: (214) 520-1181
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany Newlin Dickenson**
Baron and Budd P.C.
3102 Oak Lawn Ave
Suite 1100
Dallas, TX 75219
214-521-3605

Email: tdickenson@baronbudd.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Ann Sutherland**                    represented by **Denyse Finn Clancy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric Asher Policastro**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Langdoc**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tiffany Newlin Dickenson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**B.R. Funsten & Co.**

**Defendant**

**CBS Corporation**
*formerly known as*
Viacom Inc.

**Defendant**

**Cleaver-Brooks, Inc.**
*formerly known as*
Aqua-Chem. Inc.

**Defendant**

**Douglas Insulation Company, Inc.**

**Defendant**

**Georgia-Pacific LLC**
*formerly known as*
Georgia-Pacific Corporation

**Defendant**

**Hanson Permanente Cement, Inc.**
*formerly known as*
Kaiser Cement Corporation

<u>Defendant</u>

**Hill Brothers Chemical Company**

<u>Defendant</u>

**Ingersoll-Rand Company**                 represented by **Arpi Galfayan**
Prindle, Amaro, Goetz, Hillyard, Barnes
and Reinholtz LLP
310 Golden Shore, 4th Floor
Long Beach, CA 90802
562-436-3946
Fax: 562-495-0564
Email: agalfayan@prindlelaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**J and H Marine**

<u>Defendant</u>

**J.T. Thorpe & Son, Inc.**

<u>Defendant</u>

**Kaiser Gypsum Company, Inc.**

<u>Defendant</u>

**Kelly-Moore Paint Company, Inc.**

<u>Defendant</u>

**Owens-Illinois Inc.**

<u>Defendant</u>

**Thomas Dee Engineering Co.**

<u>Defendant</u>

**Triple A Machine Shop, Inc.**
*also known as*
Triple A. Shipyard

<u>Defendant</u>

**Yarway Corporation**

<u>Defendant</u>

**Fraser-Edwards Company**                 represented by **Vernice Trina Louie**
Low, Ball & Lynch
505 Montgomery Street

7th Floor
San Francisco, CA 94111
415-981-6630
Fax: 415-982-1634
Email: vlouie@lowball.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sonja E. Blomquist**
Low, Ball & Lynch
505 Montgomery Street, 7th Floor
San Francisco, CA 94111-2584
415-981-6630
Fax: 415-982-1634
Email: sblomquist@lowball.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Frasers Boiler Services Inc.**          represented by   **Carlos A. Silva**
Pond North
350 South Grand Avenue
Suite 3300
San Francisco, CA 90071
(213) 617-6170
Fax: (213) 623-3594
Email: csilva@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Kathleen Burnam Ebrahimi**
Pond North LLP
350 South Grand Avenue
Suite 3300
Los Angeles, CA 90071
(213) 617-6170
Fax: (213) 623-3594
Email: kebrahimi@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**IMO Industries Inc.**          represented by   **Frederick W Gatt**
Howard Rome Martin Ridley
1775 Woodside Road
Suite 200
Redwood City, CA 94061
United Sta
650-365-7715
Fax: 650-364-5297
Email: fgatt@hrmrlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Henry David Rome**
Howard Rome Martin & Ridley LLP
1775 Woodside Rd., Suite 200
Redwood City, CA 94061-3436
650-365-7715
Fax: 650-364-5297
Email: hrome@hrmrlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**FMC Corporation**                     represented by **John F. Kazanovicz , II**
Pond North LLP
350 South Grand Avenue
Suite 3300
Los Angeles, CA 90071
213-617-6170
Fax: 213-623-3594
Email: jkazanovicz@pondnorth.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Union Carbide Corporation**           represented by **Anne Cherry Barnett**
McKenna Long and Aldridge
101 California Street
41st Floor
San Francisco, CA 94111
415-267-4000
Email: abarnett@mckennalong.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/24/2013 | 1 | NOTICE OF REMOVAL /no process from San Francisco County Superior. Their case number is CGC 12-276023. (Filing fee $350 receipt number 34611085413). Filed byIngersoll-Rand Company. (gaS, COURT STAFF) (Filed on 4/24/2013) (Entered: 04/26/2013) |
| 04/24/2013 | 2 | Certificate of Interested Entities by Ingersoll-Rand Company re 1 Notice of Removal (gaS, COURT STAFF) (Filed on 4/24/2013) (Entered: 04/26/2013) |
| 04/24/2013 | 3 | **ADR SCHEDULING ORDER: Case Management Statement due by 7/18/2013. Case Management Conference set for 7/25/2013 10:00 AM in Courtroom B, 15th Floor, San Francisco.. Signed by Judge Maria-Elena James on 4/24/13. (Attachments: # 1 Standing Order)(gaS, COURT STAFF) (Filed on 4/24/2013) (Entered: 04/26/2013)** |
| 04/30/2013 | 4 | ANSWER to Complaint byFraser-Edwards Company. (Blomquist, Sonja) (Filed on 4/30/2013) (Entered: 04/30/2013) |
| 04/30/2013 | 5 | NOTICE of Appearance by Sonja E. Blomquist (Blomquist, Sonja) (Filed on |

| | | 4/30/2013) (Entered: 04/30/2013) |
|---|---|---|
| 04/30/2013 | 6 | Certificate of Interested Entities by Fraser-Edwards Company (Blomquist, Sonja) (Filed on 4/30/2013) (Entered: 04/30/2013) |
| 04/30/2013 | 7 | NOTICE by Fraser-Edwards Company *Initial Disclosures* (Blomquist, Sonja) (Filed on 4/30/2013) (Entered: 04/30/2013) |
| 05/01/2013 | 8 | NOTICE by Frasers Boiler Services Inc. *of Filing State Court Answer to Complaint and Demand for Jury Trial* (Silva, Carlos) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 9 | Certificate of Interested Entities by Frasers Boiler Services Inc. *or Persons Pursuant to Local Rule 3-16 and FRCP 7.1* (Silva, Carlos) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 10 | NOTICE of Appearance by Kathleen Burnam Ebrahimi *for Fraser's Boiler Service, Inc.* (Ebrahimi, Kathleen) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 11 | NOTICE of Appearance by Henry David Rome *on Behalf of Defendant Imo Industries Inc.* (Rome, Henry) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 12 | NOTICE of Appearance by Frederick W Gatt *on Behalf of Defendant Imo Industries Inc.* (Gatt, Frederick) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 13 | Certificate of Interested Entities by IMO Industries Inc. identifying Corporate Parent Colfax Corporation for IMO Industries Inc.. (Gatt, Frederick) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 14 | NOTICE by IMO Industries Inc. *of Filing State Court Answer to First Amended Complaint* (Gatt, Frederick) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 15 | Certificate of Interested Entities by FMC Corporation *on behalf of its former Peerless Pump and Chicago Pump Businesses* (Kazanovicz, John) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 16 | NOTICE by FMC Corporation *on behalf of its former Peerless Pump and Chicago Pump Businesses of Filing State Court Answer to Complaint and Demand for Jury Trial* (Kazanovicz, John) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/01/2013 | 17 | NOTICE by Ingersoll-Rand Company *of Tag Along Action* (Galfayan, Arpi) (Filed on 5/1/2013) (Entered: 05/01/2013) |
| 05/08/2013 | 18 | NOTICE by Union Carbide Corporation *of Refiling State Court Answer to Complaint* (Barnett, Anne) (Filed on 5/8/2013) (Entered: 05/08/2013) |
| 05/08/2013 | 19 | Certificate of Interested Entities by Union Carbide Corporation identifying Corporate Parent Dow Chemical Company for Union Carbide Corporation. (Barnett, Anne) (Filed on 5/8/2013) (Entered: 05/08/2013) |
| 05/09/2013 | 20 | MOTION to Substitute Attorney filed by Ann Sutherland, Barbara Sutherland. (Attachments: # 1 Proposed Order)(Clancy, Denyse) (Filed on 5/9/2013) (Entered: 05/09/2013) |

| 05/10/2013 | 21 | NOTICE of Appearance by Anne Cherry Barnett *and Angela E. Fones* (Barnett, Anne) (Filed on 5/10/2013) (Entered: 05/10/2013) |
|---|---|---|

**PACER Service Center**

**Transaction Receipt**

05/13/2013 14:01:10

| PACER Login: | pd0152 | Client Code: | IRSF-0088 |
|---|---|---|---|
| Description: | Docket Report | Search Criteria: | 3:13-cv-01879-MEJ |
| Billable Pages: | 5 | Cost: | 0.50 |

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING,
PURSUANT TO AMENDED G.O. 158

1 | John Langdoc, Esq. (SBN 235509)
2 | Denyse Clancy, Esq. (SBN 255276)
   | Tiffany Dickenson, Esq. (SBN 264364)
3 | Eric Policastro, Esq. (SBN 264605)
   | **BARON & BUDD, P.C.**
4 | 3102 Oak Lawn Ave., Suite 1100
   | Dallas, TX 72519
5 | Telephone: 214/521-3605; 800/222-2766
   | Facsimile: 214/520-1181
6 |
7 | ATTORNEYS FOR PLAINTIFFS
8 |
   | SUPERIOR COURT OF THE STATE OF CALIFORNIA
9 |
   | COUNTY OF SAN FRANCISCO—UNLIMITED JURISDICTION
10 |

| | | |
|---|---|---|
| 11 | ALLEN SUTHERLAND and BARBARA ANN SUTHERLAND, | ) CASE NO. **CGC-12-276023** |
| 12 | | ) |
| 13 | Plaintiffs, | ) **COMPLAINT FOR PERSONAL INJURIES AND DAMAGES** |
| 14 | vs. | ) [COMPLEX ASBESTOS LITIGATION- |
| 15 | **B.R. FUNSTEN & CO.;** | ) SUBJECT TO THE GENERAL ORDERS CONTAINED IN FILE NO. 828684] |
| 16 | **CBS CORPORATION** (f/k/a Viacom, Inc., Successor-by-Merger to CBS | ) |
| 17 | Corporation, Successor-by-Merger to Westinghouse Electric Corporation); | ) |
| 18 | **CLEAVER-BROOKS, INC.,** (individually and f/k/a Aqua-Chem, Inc.); | ) |
| 19 | **DOUGLASS INSULATION COMPANY, INC.;** | ) |
| 20 | **GEORGIA-PACIFIC, LLC,** (f/k/a Georgia-Pacific Corporation, Individually | ) |
| 21 | and as Successor-in-Interest to Bestwall Gypsum Company); | ) |
| 22 | **HANSON PERMANENTE CEMENT, INC.,** (f/k/a Kaiser Cement Corporation, | ) |
| 23 | Individually and as Successor-in-Interest to Kaiser Gypsum Company, Inc.); | ) |
| 24 | **HILL BROTHERS CHEMICAL COMPANY;** | ) |
| 25 | **INGERSOLL-RAND COMPANY;** | ) |
| 26 | **J AND H MARINE;** | ) |
| 27 | **J.T. THORPE & SON, INC.;** | ) |
| 28 | **KAISER GYPSUM COMPANY, INC.;** | ) |

BY FAX

-1-

1   **KELLY-MOORE PAINT COMPANY,**
    **INC.;**
2   **OWENS-ILLINOIS, INC.** (Individually
    and as Successor-in-Interest to Owens-
3   Illinois Glass Company and d/b/a O-I);
    **THOMAS DEE ENGINEERING CO.;**
4   **TRIPLE A MACHINE SHOP, INC.**
    (a/k/a Triple A Shipyard);
5   **YARWAY CORPORATION,** and
    DOES 1-300,
6
7                       Defendants.
8
9
         COME   NOW,   Plaintiffs   ALLEN   SUTHERLAND   and   BARBARA   ANN
10
SUTHERLAND (collectively referred to herein as "Plaintiffs") and for causes of action against
11
all named Defendants herein, and complain and allege as follows:
12

13                                          **I.**
                                  GENERAL ALLEGATIONS
14
         1.      The   true   names   and   capacities,   whether   individual,   corporate,   associate,
15
governmental or otherwise, of Defendants DOES 1 through 300, inclusive, are unknown to
16
Plaintiffs at this time, who therefore sue said Defendants by fictitious names. When the true
17
names and capacities of Defendants have been ascertained, Plaintiffs will amend this Complaint
18
accordingly. Plaintiffs are informed and believe, and therefore allege, that each Defendant
19
designated herein as a DOE is responsible, negligently or in some other actionable manner, for
20
the events and happenings that constitute Plaintiffs' claims for personal injuries and damages,
21
and caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged.
22
         2.      Plaintiffs are informed and believe, and therefore allege, that at all times
23
mentioned herein, each named Defendant was the agent, servant, employee and/or joint
24
venturer of their co-Defendants and were, as such, acting within the scope, course, and
25
authority of said agency, employment and/or joint venture, in that each and every Defendant,
26

27

28                                         -2-

1    when acting as a principal, was negligent in the selection and hiring or each and every other

2    Defendant as the agent, servant, employee and/or joint venturer.

3         3.     Plaintiff ALLEN SUTHERLAND was a California resident during a substantial

4    period of his asbestos exposure upon which Plaintiffs' claims are based.  He is currently a

5    California resident.

6

7         4.     Plaintiffs are informed and believe, and therefore allege, that at all times

8    mentioned herein, Defendants B.R. FUNSTEN & CO.; CBS CORPORATION (f/k/a Viacom,

9    Inc., Successor-by-Merger to CBS Corporation, Successor-by-Merger to Westinghouse Electric

10    Corporation); CLEAVER-BROOKS, INC., (individually and f/k/a Aqua-Chem, Inc.);

11    DOUGLASS INSULATION COMPANY, INC.; GEORGIA-PACIFIC, LLC, (f/k/a Georgia-

12    Pacific Corporation, Individually and as Successor-in-Interest to Bestwall Gypsum Company);

13    HANSON PERMANENTE CEMENT, INC., (f/k/a Kaiser Cement Corporation, Individually

14    and as Successor-in-Interest to Kaiser Gypsum Company, Inc.); HILL BROTHERS

15    CHEMICAL COMPANY; INGERSOLL-RAND COMPANY; J AND H MARINE; J.T.

16    THORPE & SON, INC.; KAISER GYPSUM COMPANY, INC.; KELLY-MOORE PAINT

17

18    COMPANY, INC.; OWENS-ILLINOIS, INC. (Individually and as Successor-in-Interest to

19    Owens-Illinois Glass Company and d/b/a O-I); THOMAS DEE ENGINEERING CO.; TRIPLE

20    A MACHINE SHOP, INC. (a/k/a Triple A Shipyard); YARWAY CORPORATION and DOES

21    1 through 300, inclusive, (collectively referred to herein as "Defendants") are corporations

22    organized and existing under and by virtue of the laws of the State of California, or the laws of

23    some other state of the United States of America, or some foreign jurisdiction, and that

24    Defendants were authorized to do and are doing business in the State of California, and that

25    Defendants have regularly conducted business in the State of California.

26

27

28

COMPLAINT FOR PERSONAL INJURIES

5.    The Federal Courts lack jurisdiction over this action and removal is therefore improper.  There is incomplete diversity of citizenship due to the presence of a California defendant.  Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed.  This includes any claim arising from an act on a Federal Enclave as defined by Article I, section 8, clause 17 of the United States Constitution.  This also includes any claim arising from any act or omission of the United States, any agency thereof, any officer of the United States, or a claim against any other person or entity that is based on an act that was performed under specific direction of the United States, any agency thereof or any Officer of the United States.  No claim or admiralty or maritime law is raised.  Plaintiffs sue no foreign state or agency.  Venue is proper in San Francisco County, Superior Court of California.

6.    At all times mentioned above, Defendants were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain substance, the generic name of which is asbestos, and other products containing asbestos.

7.    Plaintiff ALLEN SUTHERLAND was exposed to Defendants' asbestos and asbestos containing products contributing to and causing the development of the asbestos cancer, malignant mesothelioma.    Plaintiff ALLEN SUTHERLAND was exposed to Defendants' asbestos and asbestos containing products through his occupational work as a laborer and welder while working at jobsites, including but not limited to the following: McCloud River Lumber Co. in McCloud, California from approximately 1958-1960, Hunters Point Naval Shipyard from approximately 1965-1973 in San Francisco, California and Concord Naval Air Station in Concord, California from approximately 1973-1994.  As a result of exposure to Defendants' asbestos and asbestos products, asbestos fibers entered Plaintiff ALLEN SUTHERLAND's body.  Plaintiff suffers from the asbestos cancer, malignant

-4-

mesothelioma, and each of Defendants' asbestos and asbestos-containing products that entered his body was a substantial factor in bringing about, prolonging, and/or aggravating Plaintiff's mesothelioma. The asbestos and asbestos containing products to which Plaintiff was exposed were designed, manufactured, marketed, brokered, distributed, sold, used or supplied by a named Defendant.

## II.

### FIRST CAUSE OF ACTION: NEGLIGENCE

### (AGAINST ALL DEFENDANTS)

8.   Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 7.

9.   At all times herein mentioned, Defendants and DOES 1 through 300 were the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products. Said entities shall hereinafter collectively be called "Alternate Entities." Each of the herein named Defendants are liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold,

-5-

1  inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-

2  branded, manufactured for others and advertised the asbestos and asbestos-containing products.

3  The following Defendants are liable for the acts of each and every "Alternate Entity," in that

4  there has been a virtual destruction of Plaintiffs' remedies against each "Alternate Entity;"

5  Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of

6  each "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiffs'

7  remedy against each "Alternate Entity;" each Defendant has the ability to assume the risk-

8  spreading role of each "Alternate Entity;" and each Defendant enjoys the goodwill originally

9  attached to each such "Alternate Entity."

10

11

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| B.R. FUNSTEN & CO. | |
| CBS CORPORATION | (f/k/a Viacom, Inc., successor-by-merger to CBS Corporation, successor-by-merger to Westinghouse Electric Corporation) |
| CLEAVER-BROOKS, INC. | (individually and f/k/a Aqua-Chem, Inc.) |
| DOUGLASS INSULATION COMPANY, INC. | |
| GEORGIA-PACIFIC, LLC | (f/k/a Georgia-Pacific Corporation, individually and as successor-in-interest to Bestwall Gypsum Company) |
| HANSON PERMANENTE CEMENT, INC. | (f/k/a Kaiser Cement Corporation, individually and as successor-in-interest to Kaiser Gypsum Company, Inc.) |
| HILL BROTHERS CHEMICAL COMPANY | |
| INGERSOLL-RAND COMPANY | |
| J AND H MARINE | |
| J.T. THORPE & SON, INC. | |
| KAISER GYPSUM COMPANY, INC. | |
| KELLY-MOORE PAINT COMPANY, INC. | |
| OWENS-ILLINOIS, INC. | (individually and as successor-in-interest to Owens-Illinois Glass Company and d/b/a O-I) |
| THOMAS DEE ENGINEERING CO. | |
| TRIPLE A MACHINE SHOP, INC. | (a/k/a Triple A Shipyard) |
| YARWAY CORPORATION | |

-6-

COMPLAINT FOR PERSONAL INJURIES

10.    Defendants had a duty to use reasonable care in manufacturing their products and to warn the customers, users, and/or bystanders that their products were dangerous and unsafe.  At all times mentioned herein, Defendants negligently and carelessly researched, tested, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, and sold their asbestos and asbestos-containing products in that these products were capable of causing and, in fact, proximately caused personal injuries to users and consumers thereof, namely Plaintiff ALLEN SUTHERLAND, while being used in manner reasonably foreseeable to Defendants, thereby rendering the asbestos products unsafe and dangerous for use by the consumer, users, and/or bystanders thereof, and others to whom Defendants owed a duty, including Plaintiff ALLEN SUTHERLAND.

11.    Plaintiff ALLEN SUTHERLAND is a worker who has been exposed to the asbestos and asbestos products referred to in Paragraphs 6 and 7 above, in a manner that was reasonably foreseeable to Defendants, while he was working as a laborer and welder at the following jobsites: McCloud River Lumber Co. in McCloud, California from approximately 1958-1960, Hunters Point Naval Shipyard from approximately 1965-1973 in San Francisco, California and Concord Naval Air Station in Concord, California from approximately 1973-1994.

12.    As a direct and proximate result of the above-referenced conduct of the Defendants, and each of them, as aforesaid, said exposure to said asbestos caused severe and permanent injury to Plaintiff's lung and body, including, but not limited to the disease mesothelioma.

13.    On or about November 23, 2011, Plaintiff ALLEN SUTHERLAND was advised that he has the asbestos cancer, malignant mesothelioma.  Prior to that date, Plaintiff did not

-7-

COMPLAINT FOR PERSONAL INJURIES

know, nor did he have reason to know, that he had contracted this disease related to his exposure to asbestos. Prior to said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury and/or disease to him, and had not been advised or informed by anyone that he could contract, nor indeed did contract, any disease, sickness or injury as a result of working in the vicinity of asbestos.

14.     Plaintiffs are informed and believe, and therefore allege, that mesothelioma is a vicious, painful, and invariably fatal malignancy of the lining of the lung, stomach, or heart and that said disease results from exposure to asbestos and asbestos products over a period of time. There is no known cure for any form of malignant mesothelioma.

15.     As a direct and proximate result of Defendants' conduct and asbestos products, Plaintiff ALLEN SUTHERLAND has suffered, and continues to suffer, severe and permanent injuries to his person, body and health, including, but not limited to, the asbestos cancer mesothelioma, all to Plaintiffs' general damage in a sum within the jurisdictional limits of this Court.

16.     At all times herein mentioned, Defendants, and each of them were aware that the original gaskets and packing supplied with their equipment would need to be removed and replaced with new gaskets and packing during ordinary operation and maintenance of their equipment. Heat and pressure generated by operation would affect the original and replacement gaskets and packing – e.g., making them brittle, friable and not reusable, making replacement necessary and dangerous. It was foreseeable that the process of removing old gaskets and packing, and replacing them with the new materials during ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's equipment needed to be insualted with asbestos containing thermal insulation materials and that the negligent design of Defendant's

-8-

equipment through its ordinary operation caused the degradation of asbestos containing thermal insulation and the foreseeable removal of these insulation materials and application of new insulation materials, which would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air.

17.     As a direct and proximate result of Defendants' conduct and asbestos products, Plaintiffs were compelled to, and did in fact, employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat Plaintiff ALLEN SUTHERLAND's cancerous condition.   Plaintiffs have incurred medical, hospital and professional incidental expenses, and Plaintiffs are informed and believe, and therefore allege, that by reason of Plaintiffs' injuries, Plaintiffs will necessarily incur additional medical expenses for an indefinite period of time in the future.   When Plaintiffs have ascertained and calculated the total amount of medical bills, Plaintiffs will allege this figure.

18.     In researching, testing, manufacturing, distributing, labeling, and marketing asbestos and asbestos products, Plaintiffs are informed and believe that Defendants did so with conscious disregard for the safety of the users of said asbestos and asbestos products, in that Defendants had specific prior knowledge that there was a high risk of injury or death resulting from exposure to asbestos or asbestos products, including but not limited to, the asbestos cancer mesothelioma. Defendants' knowledge was obtained, in part, from scientific studies, government data, and medical data to which Defendants had access, as well as scientific studies performed by, at the request of, or with the assistance of Defendants, and which knowledge was obtained by Defendants on or before 1930, and rapidly increasingly thereafter.

19.     On or before 1930, and rapidly increasingly thereafter, Defendants were aware that users of asbestos and asbestos products, as well as members of the general public that were exposed to asbestos and asbestos products, had no knowledge or information indicating that

-9-

asbestos could cause injury, and Defendants knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe and not harmful to human life, when in fact said exposure was known by Defendants to be potentially lethal.

20.    With this knowledge, Defendants opted to design, manufacture, market, distribute and/or use their asbestos and asbestos products without attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed and suppressed their knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations. The above-referenced conduct of said Defendants was motivated by the financial interest of Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos products. In pursuance of said financial motivation, Defendants consciously disregarded the safety of the users of, and persons exposed to, their asbestos and asbestos products, and were in fact, consciously willing to permit asbestos and asbestos products to cause injury to workers and users thereof, and personally exposed thereto, including Plaintiff ALLEN SUTHERLAND.

21.    Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-

-10-

containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos. Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs. Defendants subjected Plaintiff ALLEN SUTHERLAND to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof. Specific facts of Defendants' punitive conduct include:

(a)    Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930. By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities," caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)    Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be

disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)     Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)     Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.   Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.   Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action.   The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control.

-12-

Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein. Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials

-13-

COMPLAINT FOR PERSONAL INJURIES

were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

22.     Plaintiffs further allege all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff was exposed, as well as any DOE Defendants who may be determined at a later date.

COMPLAINT FOR PERSONAL INJURIES

## III.

### SECOND CAUSE OF ACTION: STRICT LIABILITY

#### (AGAINST ALL DEFENDANTS)

23.     Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 22.

24.     At all times mentioned herein, Defendants researched, manufactured, tested, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale asbestos and asbestos-containing products which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to the users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering same unsafe and dangerous for use by the consumers, users, and bystanders.

25.     As a direct and proximate result of the above described conduct by Defendants, Plaintiff ALLEN SUTHERLAND suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma.

26.     At all times mentioned herein, Defendants' asbestos and asbestos-containing products discussed above failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the risk of danger inherent in this substance and products outweighs the benefits of Defendants' asbestos and asbestos-containing products.

27.     At all times mentioned herein, the foreseeable use of Defendants' asbestos and asbestos-containing products involved a substantial danger not readily recognizable to an ordinary user, consumer, or bystander, but which danger was known or knowable to Defendants, and Defendants failed to adequately warn of the substantial danger.

-15-

28.     As a direct and proximate result of the above described conduct by Defendants and each of them, Plaintiff ALLEN SUTHERLAND suffered severe and permanent injuries to his person, including the development of the asbestos cancer, malignant mesothelioma.

29.     Defendants' above-referenced conduct was and is willful, despicable, malicious and intended by Defendants to cause injury to Plaintiffs, and knowingly carried on by Defendants with a conscious disregard of the rights or safety of others and Plaintiffs when Defendants continued to manufacture, design, distribute, and otherwise sell its asbestos-containing products knowing that it could kill the users, bystanders, and/or the user's and bystander's family members that came into contact with the asbestos.  Defendants are guilty of oppression, fraud, and/or malice and engaged in conduct that was intended by Defendants to cause injury to Plaintiffs.  Defendants subjected Plaintiff ALLEN SUTHERLAND to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known with the intention on the part of Defendants to deprive Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs, therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.  Specific facts of Defendants' punitive conduct include:

(a)     Defendants and/or their "Alternate Entities," did not label any of the aforementioned asbestos-containing materials and products regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964 when certain of such materials were labeled by some, but not all, of Defendants and/or their "Alternate Entities," herein when the knowledge of such hazards was existing and known to Defendants and/or their "Alternate Entities," since on or before 1930.  By not labeling such materials as to their said hazards, Defendants and/or their "Alternate Entities,"

-16-

caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants did not believe it to be true.

(b)    Defendants suppressed information relating to the danger of use of the aforementioned asbestos and asbestos products by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information;

(c)    Defendants sold the aforementioned products and materials to Plaintiff and Plaintiff's employers and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants caused to be positively asserted to Plaintiff that which was not true and that which Defendants had no reasonable ground for believing to be true, i.e., that it was safe for Plaintiff to work with and in close proximity to such materials;

(d)    Defendants suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report.   Although bound to disclose it, Defendants influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof.   Defendants caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e)     Defendants belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, and actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action.  The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiffs at this time;

(f)     Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants herein.  Between 1942 and 1950, the Defendants suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff.  Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants were bound to disclose;

(g)     Defendants failed to warn Plaintiff and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects

-18-

without noticeable trauma, despite the fact that Defendants possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i)     Defendants, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer.  Defendants concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants were under a duty to so inform and said failure was misleading; and

(k)     Defendants failed to provide adequate information to physicians and surgeons retained by Plaintiff's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff and other employees as to the true nature of

-19-

the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

30.     Plaintiffs further allege all of the foregoing portions of this cause of action specifically against those Defendants who supplied asbestos fibers (as pled against those Defendants who manufactured asbestos products), and any other asbestos fiber supplier or distributor to manufacturers of the asbestos-containing products to which Plaintiff was exposed, as well as any DOE Defendants who may be determined at a later date.

## IV.

### THIRD CAUSE OF ACTION: PREMISES OWNER/CONTRACTOR LIABILITY

#### (AGAINST PREMISES AND CONTRACTOR DEFENDANTS LISTED ON EXHIBIT "A")

31.     Plaintiffs incorporate by reference, as though fully set forth herein, each and every allegation contained in Paragraphs 1 through 30.

32.     At all times mentioned herein, Defendants respectively, owned, leased, maintained, managed, and/or controlled the premises where Plaintiff was present. Additionally, Plaintiff might have been present at these or other Defendants' premises at other locations and on other occasions.

33.     Prior to and at said times and places, Defendants, and each of them, respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff and other persons exposed to said asbestos fibers and toxic substances while present at said premises.

-20-

34.    At all times mentioned herein, Defendants knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Plaintiff and other workers or persons so exposed present on each of the aforesaid respective premises.

35.    At all times relevant herein, Plaintiff entered said premises and used or occupied each of said respective premises as intended and for each of the respective Defendants' request and invitation.  In so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Defendants.

36.    Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

37.    At all times mentioned herein, Defendants remained in control of the premises where Plaintiff was performing his work.

38.    At all times mentioned herein, Defendants owed to Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said person.

39.    At all times mentioned herein, Defendants negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

-21-

40.     Prior to and at the times and places aforesaid, Defendants respectively, caused certain asbestos-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured Plaintiff.

41.     At all times mentioned herein, Defendants should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Plaintiff and others unless special precautions were taken.

42.     In part, Plaintiff was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take necessary precautions.

43.     The work of contractors on premises controlled by Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of toxic substances including but not limited to asbestos.

44.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by Defendants.  Said negligent conduct includes but is not limited to:

    a.   Failure to warn of asbestos and other toxic dusts;

    b.   Failure to suppress the asbestos-containing or toxic dusts;

    c.   Failure to remove the asbestos-containing and toxic dusts through the use of ventilation or appropriate means;

    d.   Failure to provide adequate breathing protection, i.e., approved respirators or masks;

-22-

COMPLAINT FOR PERSONAL INJURIES

e.  Failure to inspect and/or test the air;

f.  Failure to provide medical monitoring.

45.   Defendants' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder.  Therefore, Defendants are responsible for any breach of said duties whether by themselves or others.

46.   Prior to and at said times and places, Defendants were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants.  Such state and federal standards required Defendants to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and Defendants failed to provide the required safeguards and precautions.  Defendants' violations of said codes include but are not limited to:

a.  Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

-23-

COMPLAINT FOR PERSONAL INJURIES

b. Failing to segregate work involving the release of asbestos or other toxic dusts;

c. Failing to suppress dust using prescribed ventilation techniques;

d. Failing to suppress dust using prescribed "wet down" techniques;

e. Failing to warn or educate Plaintiff or others regarding asbestos or other toxic substances on the premises;

f. Failing to provide approved respiratory protection devices;

g. Failing to ensure "approved" respiratory protection devices were used properly;

h. Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

i. Failing to provide adequate housekeeping and clean-up of the work place;

j. Failing to properly warn of the hazards associated with asbestos as required by statute;

k. Failing to properly report renovation and disturbance of asbestos-containing materials;

l. Failing to have an asbestos removal supervisor as required by regulation;

m. Failing to get approval for renovation as required by statutes; and

n. Failing to maintain records as required by statute.

47. Defendants were the "statutory employer" of Plaintiff as defined by the California Labor Code and California case law.

48. Plaintiff at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances or statutes.

-24-

49.     At all times mentioned herein, Plaintiff was a member of the class of persons whose safety was intended to be protected by the regulations, statutes or ordinances described in the foregoing paragraphs.

50.     At all times mentioned herein, Defendants knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations and statutes.

51.     As a legal consequence of the foregoing, Plaintiff developed an asbestos-related illness - mesothelioma, which has caused great injury and disability as previously set forth, and Plaintiff has suffered damages as herein alleged.

52.     The above-referenced conduct of said Defendants was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the safety of users of said asbestos and asbestos products, including Plaintiff.  Defendant is guilty of oppression, fraud, or malice and engaged in conduct which was intended by the defendant to cause injury to the plaintiff or conduct which was carried on by the defendant with a conscious disregard of the rights or safety of others.  Defendants subjected Plaintiff to cruel and unjust hardship in conscious disregard of his rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving Plaintiff of property or legal rights or otherwise causing injury.  Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.

-25-

## V.

### FOURTH CAUSE OF ACTION: LOSS OF CONSORTIUM

#### (AGAINST ALL DEFENDANTS)

53.     Plaintiffs incorporate by reference, as if fully set forth herein, Paragraphs 1 through 52.

54.     Plaintiffs were married at all times relevant to this action and were, and are now, husband and wife.

55.     Prior to Plaintiff ALLEN SUTHERLAND's injuries alleged herein, Plaintiff ALLEN SUTHERLAND was able and did perform duties as a spouse.  Subsequent to the injuries, and as a proximate result thereof, Plaintiff ALLEN SUTHERLAND has been unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home and Plaintiff ALLEN SUTHERLAND will be unable to perform such work, services, and duties in the future.  As a proximate result thereof, Plaintiff's spouse, BARBARA ANN SUTHERLAND, has been permanently deprived and will be permanently deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown to Plaintiffs but which will be proved at the time of trial.

56.     Further, as a direct and proximate result of the acts of Defendants, as well as the severe injuries caused thereby to Plaintiff ALLEN SUTHERLAND as set forth herein, Plaintiff BARBARA ANN SUTHERLAND has suffered, and for a long period of time will continue to suffer, loss of consortium, including but not by way of limitation, loss of services, marital relations, society, comfort, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress as general nervousness as a result thereof.

-26-

57.     Discovery of the cause of Plaintiff BARBARA ANN SUTHERLAND's loss of consortium, as herein alleged, first occurred within one year of the date this complaint was filed.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in an amount to be proved at trial in each individual case, as follows:

1.      General damages according to proof;

2.      Damages for medical and related expenses, according to proof;

3.      Damages for loss of earning capacity, according to proof;

4.      Damages for loss of earnings, according to proof;

5.      Damages for Plaintiffs' other economic losses, according to proof;

6.      Exemplary or punitive damages according to proof;

7.      Damages for loss of consortium according to proof;

8.      Prejudgment interest, according to proof;

9.      Costs of suit incurred herein; and

10.     Such other and further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related provisions of law.

Dated: April 10, 2012                           BARON & BUDD, P.C.


                                            By: _____
                                                Tiffany Dickenson, Esq.
                                                ATTORNEYS FOR PLAINTIFFS

-27-

COMPLAINT FOR PERSONAL INJURIES

1

## EXHIBIT A

2
3
4
5
6

On information and belief, Plaintiffs' counsel will establish that the following contractors were present and controlled some of the premises on which Plaintiff worked as described in Paragraphs 6 and 7 of the above complaint, i.e., these defendants and each of them are being alleged as having contractor liability:

7      1.   DOUGLASS INSULATION COMPANY;

8      2.   J AND H MARINE;

9      3.   J.T. THORPE & SON, INC.;

10     4.   THOMAS DEE ENGINEERING CO.; and

11     5.   TRIPLE A MACHINE SHOP, INC. (a/k/a Triple A Shipyard).

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-1-

EXHIBIT A