BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. 875 |
| LAURIE DEUYOUR, et al., | |
| Plaintiffs, | Transferor Court: C.D.Cal.-CAN/ 13-02333-BRO (AJWx) |
| v. | |
| BF GOODRICH COMPANY; et al., | |
| Defendants. | |

**DEFENDANT CARRIER CORPORATION'S OPPOSITION TO PLAINTIFFS'
MOTION TO VACATE CONDITIONAL TRANSFER ORDER NO. 549**

**I.      INTRODUCTION**

The motion of wrongful death plaintiffs Laurie Deuyour, Nicholas Deuyour, and Desiree

Deuyour to vacate Conditional Transfer Order No. 549 ("CTO-549") should be denied.  While

Carrier Corporation ("Carrier") acknowledges that the Judicial Panel on Multidistrict Litigation

("Panel") no longer transfers cases from the Central District of California, this case is closely

related to the Northern District of California case of Daniel Deuyour which was previously

transferred to the MDL and is currently pending in the Eastern District of Pennsylvania.  The two

cases arise out of the same facts, the same products, virtually identical defendants, and the same

history of exposure to asbestos and alleged injuries suffered by decedent Daniel Deuyour, and

meet the criteria for transfer under 28 U.S.C. § 1407.  Plaintiffs' forum shopping, which is the

only discernible reason this case was filed in the County of Los Angeles (from which the case

was removed to the Central District of California) should not prevent this case from being

transferred to the MDL as a tag-along action to the factually identical Northern District of

California case previously transferred to the MDL.  Carrier respectfully requests that plaintiffs'

motion to vacate CTO-549 be denied.

011939.004787/898836

## II.   FACTS

On May 16, 2012, Daniel Deuyour filed a personal injury action arising out of his alleged exposure to asbestos in the state court of California, **County of San Francisco**, bearing case number CGC-12-276047 ("personal injury case"). [Personal Injury Complaint, attached hereto as Exhibit A.]  On June 15, 2012, the personal injury case was removed to the United States District Court for the Northern District of California and assigned case number 3:12-cv-03096-MEJ.  On July 20, 2012, the Panel transferred the personal injury case to the United States District Court for the Eastern District of Pennsylvania ("EDPA") for inclusion in MDL 875 pursuant to 28 U.S.C. § 1407.  The case was assigned number 2:12-cv-60167-ER in the EDPA. On or about August 1, 2012, Mr. Deuyour passed away.

On January 28, 2013, Mr. Deuyour's heirs filed this wrongful death case for the death of Mr. Deuyour ("wrongful death case") in the state court of California, **County of Los Angeles**. [Wrongful Death Complain, attached hereto as Exhibit B.]  This case was removed the United States District Court for the Central District of California, case number 2:13-cv-02333-BRO-AJW.[1]  The wrongful death case involves the same subject matter as the Northern District of California case (the personal injury case) currently pending in the EDPA.  Both cases arise out of Mr. Deuyour's alleged injuries caused by exposure to asbestos and asbestos-containing products, assert the same causes of action, are against virtually identical defendants, and are brought by the same plaintiffs' counsel.[2]

///

///

///

///

---

[1] The case was originally assigned number 2:13-cv-02333-ABC-AJW, but was subsequently reassigned to a new judge and assigned the current number.

[2] The wrongful death case excludes defendants Crane Co. and John Crane Inc., which were in the personal injury case; and includes one additional defendant, Mechanical Drives & Belting, which was not named in the personal injury case.

CARRIER CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE CTO-549

011939.004787/898836

### III.   ARGUMENT

**A.     Plaintiffs' Wrongful Death Case is Related to the Northern District of California Case Previously Transferred to the EDPA Under 28 U.S.C. § 1407**

Carrier is mindful of the Panel's December 13, 2011 Order suspending the transfer of cases from the Central District of California to the MDL.  [MDL No. 875, Doc. # 8213.] However, because this case is directly related to the Northern District of California case previously transferred to the EDPA, case number 2:12-cv-60167-ER, Carrier requests that the Panel exercise its authority under 28 U.S.C. § 1407 and transfer this case to the MDL as a tag-along action.  Under 28 U.S.C. § 1407:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.  Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

The Honorable Eduardo C. Robreno has specifically suggested that this case be transferred to the EDPA "as it is closely related to [the] Northern District of California action (E.D. Pa. C.A. No. 2:12-60167) previously transferred to the MDL."  [CTO-549, fn. 1.]  Indeed, the two cases arise out of Mr. Deuyour's alleged exposure to asbestos and involve the same facts, the same injuries to Mr. Deuyour, the same products, virtually identical defendants, the same causes of action, and the same plaintiffs' firm.  The two cases will also involve the same issues, the same defenses, the same discovery, and the same pretrial motions.  The fact that this case involves different plaintiffs is simply a distinction without a difference in determining whether the cases are related for purposes of transferring the wrongful death case to the MDL, which will promote the purposes of 28 U.S.C. § 1407, including judicial economy and the need for decisional consistency.

Plaintiffs' contention that this case is solely a wrongful death action that is unrelated to Mr. Deuyour's personal injury claims is completely without merit and contradicted by their own

011939.004787/898836

allegations in the complaint.  Both complaints are substantively identical and assert the same causes of action.  In fact, plaintiffs do not allege <u>any</u> personal injuries or harm suffered by them as a result of Mr. Deuyour's death independent of the alleged injuries suffered by Mr. Deuyour. Similarly, plaintiffs' complaint appears to include the survival claims of Mr. Deuyour, as plaintiff Laurie Deuyour alleges she is suing on behalf of herself and the estate of Mr. Deuyour as its success-in-interest, and because plaintiffs seek punitive damages which, under California law, are available only in survival actions and <u>not</u> to wrongful death plaintiffs.  Cal. Code Civ. Proc., §§ 377.61, 377.34; *Wilson v. John Crane, Inc.*, 81 Cal.App.4th 847, 861.

In short, this case arises out of the same facts and involve the same issues as the Northern District of California case previously transferred to the MDL and should be transferred to the MDL as a tag-along action and consolidated with the related case in the EDPA.

### B.      The Northern District of California Case Previously Transferred to the MDL is Active in the Eastern District of Pennsylvania

Contrary to plaintiffs' contention, the previously transferred case is actively pending in the EDPA.  Plaintiffs' representation that the entire action was dismissed in the EDPA upon the court's granting of a defendant's motion is controverted by the record.  In the court's September 11, 2012 order, and its order dated September 14, 2012, upon which plaintiffs rely, the court granted Document No. 12 on the court's docket, which was defendant John Crane Inc.'s Federal Rule of Civil Procedure 12(b)(6) motion to dismiss based on plaintiff's failure to state a claim against John Crane Inc.  [Orders Dated September 11 and 12, 2012, Exhibit C hereto; John Crane Inc.'s Motion to Dismiss (Doc. #12 in case no. 2:12-cv-60167-ER), Exhibit D hereto.]  The effect of the court's order was a dismissal of the complaint against John Crane Inc., not a dismissal of the entire action.

Accordingly, the related Northern District of California case previously transferred to the MDL is actively pending in the EDPA.

///

///

CARRIER CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE CTO-549

011939.004787/898836

### C.    Plaintiffs' Forum-Shopping at The Expense of Judicial Economy Should Be Discouraged

This case is clearly the result of forum-shopping by plaintiffs to avoid the MDL and potential adverse rulings in the EDPA.  Mr. Deuyour originally filed his personal injury action in the County of San Francisco alleging that venue was proper there.  [Personal Injury Complaint, ¶ 11, Exhibit A.]  The case was removed by Crane Co., which is not named a defendant in the new wrongful death complaint, and transferred to the EDPA pursuant to 28 U.S.C. § 1407.

On August 23, 2012, plaintiffs' counsel filed notice of Mr. Deuyour's death, stating that "[his] family members are currently contemplating the filing of a wrongful death complaint." [See Status Conference Statement and Suggestion of the Death of Plaintiff Daniel Deuyour, Exhibit E hereto.]  Mr. Deuyour's family members failed to file a motion for substitution within the statutory time to do so under Federal Rule of Civil Procedure 25, which provide that a motion for substitution must be filed within 90 days after service of a notice of death, and are apparently trying to circumvent Rule 25 by filing a new complaint in a different forum.  Plaintiffs' counsel are now alleging that venue is proper in the County of Los Angeles, not San Francisco, in an obvious attempt to avoid the MDL by re-filing in a venue which no longer transfers cases to the MDL.

Plaintiffs' choice of forum is entitled to little deference when there is evidence of forum shopping.  See *Forrand v. Federal Exp. Corp.*, 2008 WL 276389, *3(N.D.Cal. 2008), in which the court, ruling on a motion to transfer venue, noted:

> [T]his Court finds substantial evidence of forum shopping in this case, and Plaintiffs' choice of forum is therefore entitled to "little deference." *Williams*, 157 F.Supp.2d at 1106.  While it is true that Forrand was not a named plaintiff in the Karamian action, Plaintiffs are incorrect that Karamian therefore has no relevance to Defendant's motion to transfer.  Plaintiffs do not dispute that this case raises the same claims as Karamian, and the two cases were brought by the same counsel.  While not a named plaintiff in Karamian, Forrand was part of the putative class.  Forrand also resides in Los Angeles County, which is located in the Central District.  Most significantly, the timing between Judge Fischer's unfavorable ruling regarding class certification in Karamian and the filing of this case strongly indicates a causal relationship

CARRIER CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE CTO-549

> between the two. This Court cannot reach the incredible
> conclusion that counsel representing a plaintiff who resides in the
> Central District, where counsel had previously filed a lawsuit
> asserting claims on behalf of a putative class that included the
> plaintiff, were not engaged in forum shopping when they chose to
> file a nearly identical class action in the Northern District days
> after the judge in the earlier-filed Central District case issued an
> unfavorable ruling. To the contrary, the Court concludes that
> Plaintiffs - including Plaintiff Forrand - filed this case in this
> district in an improper attempt to forum shop, and the Court
> therefore need not give substantial deference to Plaintiffs' choice
> of forum.

Similarly, the Panel should consider plaintiffs' forum shopping as a factor in denying the

motion to vacate the conditional transfer order. There was no legitimate reason, other than forum

shopping, for plaintiffs filing a new wrongful death complaint in the County of Los Angeles

rather than a timely motion for substitution in the EDPA. There was no legitimate reason, other

than forum shopping, for plaintiffs filing their wrongful death complaint in the County of Los

Angeles instead of the County of San Francisco where plaintiffs' counsel previously alleged

venue was proper. Plaintiffs' forum shopping frustrates the purposes of multidistrict litigation

and the Panel's prior order transferring the related Northern District of California case to the

MDL. Accordingly, the Panel should deny plaintiffs' motion to vacate CTO-549.

## IV.    CONCLUSION

Common questions of fact exist between plaintiffs' wrongful death case and the Northern

District of California case previously transferred to MDL 875. For all of the foregoing reasons,

Carrier respectfully requests that the Panel deny plaintiffs' motion to vacate CTO-549.

DATED: May 29, 2013                          RESPECTFULLY SUBMITTED,

By:  /s/ John K. Son
     John K. Son
     TUCKER ELLIS LLP
     515 South Flower Street, 42nd Floor
     Los Angeles, CA 90071
     Telephone: 213.430.3400
     Facsimile: 213.430.3409
     john.son@tuckerellis.com
     Attorneys for Defendant
     **CARRIER CORPORATION**

CARRIER CORPORATION'S OPPOSITION TO
PLAINTIFFS' MOTION TO VACATE CTO-549

*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT A

THIS CASE IS SUBJECT TO
MANDATORY ELECTRONIC FILING
PURSUANT TO AMENDED G.O. 158

1  Eric Brown, Esq. (229622)
   email: brown@dbelegal.com
2  Mike Eyerly, Esq. (178693)
   email: meyerly@dbelegal.com
3  Stephen T. Blackburn (SBN 232887)
   email: blackburn@dbelegal.com
4  Brian Maucotel, Esq. (SBN 274826)
   email: maucotel@dbelegal.com
5  DEBLASE BROWN EYERLY LLP
   10990 Wilshire Boulevard, Suite 1060
6  Los Angeles, California 90024
   Telephone: 310-575-9955
7  Facsimile: 310-575-9919

8

Attorneys for Plaintiff

9

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                 FOR THE COUNTY OF SAN FRANCISCO

13

14

15  DANIEL DEUYOUR,                       CASE NO.   CGC12 -276047

16              Plaintiff,
                                          COMPLAINT FOR PERSONAL
17        vs.                             INJURIES

18  BF GOODRICH COMPANY;                  1.  Negligence
    CARRIER CORPORATION;                  2.  Products Liability
19  CBS CORPORATION, F/K/A VIACOM,        3.  Premises Owner/Contractor Liability
    INC., SUCCESSOR BY MERGER TO CBS
20  CORPORATION F/K/A WESTINGHOUSE
    ELECTRIC CORPORATION;
21  Crane Co., individually and as successor        **BY FAX**
    in interest to Chapman Valves;
22  The Dexter Corp. individually and as
    successor in interest to Dexter Aerospace,
23  Hysol, Dexter-Hysol and Dexter Hysol
    Aerospace, Inc.;
24  Eaton Corporation individually and as
    successor in interest to Cutler-Hammer,
25  Inc.;
    FOSTER WHEELER ENERGY
26  CORPORATION;
    GENERAL ELECTRIC COMPANY;
27  Georgia-Pacific LLC, F/K/A GEORGIA
    PACIFIC CORPORATION, SUCCESSOR
28  IN INTEREST TO BESTWELL GYPSUM
    COMPANY;
    The Goodyear Tire & Rubber Company;

                              -1-

                            COMPLAINT

ENDORSED
F I L E D
San Francisco County Superior Court

MAY 1 6 2012

CLERK OF THE COURT
BY:   DEBORAH STEPPE
                    Deputy Clerk

1 The Goodyear Tire & Rubber Company;
2 HONEYWELL INTERNATIONAL INC.,
INDIVIDUALLY AND AS SUCCESSOR
3 INTEREST TO ALLIED SIGNAL, INC.
AND BENDIX CORPORATION;
4 IMO Industries, Inc. (Individually and as
successor in interest to Delaval Steam
5 Turbine, Inc.);
INGERSOLL-RAND COMPANY,
6 individually and as successor in interest to
The Aldrich Company;
7 Jerguson Gage & Valve Company;
JOHN CRANE, INC.;
8 KELLY-MOORE PAINT COMPANY, INC.;
PARKER HANIFFIN CORPORATION,
9 individually and as successor in interest to
Sacoma Sierra Company;
10 PNEUMO-ABEX, LLC (Individually and as
successor-in-interest to ABEX
11 CORPORATION f/k/a American Brake
Shoe Company f/k/a American Brake Shoe
12 and Foundry Company including the
American Brakebloc Division, f/k/a The
13 American Brake Materials Corporation);
SAN FRANCISCO GRAVEL COMPANY;
14 Shell Oil Company;
SOCO WEST, INC. (f/k/a Brenntag West
15 Inc., f/k/a SoCo-Lynch Corporation, f/k/a
SoCo-Western Chemical Corporation; f/k/a
16 Stinnes-Western Chemical Corporation;
UNION Carbide Corporation;
17 WARREN PUMPS, LLC;
YORK INTERNATIONAL CORPORATION,
18 individually and as successor-in-interest to
Central Environmental Systems, Inc., f/k/a
19 Borg-Warner Central Environmental
Systems, Inc.; York-Luxaire, Inc.; Luxaire,
20 Inc., and The C.A. Olsen Manufacturing
Company and d/b/a "Moncrief Furnaces"
21 d/b/a York Heating & Air Conditioning;

22 and DOES 1-300,

23          Defendants.

24 _____

25

26     COMES NOW Plaintiff DANIEL DEUYOUR, for causes of action against

27 Defendants, complain and allege as follows:

28

-2-

## GENERAL ALLEGATIONS

1.     This case is being brought by DANIEL DEUYOUR as a result of DANIEL DEUYOUR having been diagnosed with an asbestos-related disease caused by exposure to asbestos. Throughout this complaint use of the term "Plaintiff" shall, where appropriate, mean both DANIEL DEUYOUR unless the context of its use clearly means one or the other.

2.     Asbestos litigation has long been designated complex in SAN FRANCISCO County for several historical reasons, including the number of parties, the length, duration and complexity of anticipated deposition testimony of fact, lay and expert witnesses, the wide-ranging medical issues that may or may not be involved, the complexity of industrial hygiene and governmental regulations that may or may not be involved, and the anticipated proportionate amount of economic, non-economic and punitive damages sought for plaintiff's anticipated death and the loss of consortium for his dependants.

3.     The average life expectancy of a patient diagnosed with a severe asbestos-related disease (mesothelioma and/or lung cancer) is extremely short. Some patients diagnosed with such disease only live weeks or months following their diagnosis. Further, as their diseases progress, their prognosis slowly worsens such that their ability to participate in trial may diminish drastically. Often, plaintiffs in these cases must present videotaped deposition testimony taken at the outset of their cases, as their medical condition has worsened so severely that even traveling a few miles to the courthouse is impossible. Plaintiffs in such cases routinely bring motions for trial preference and often stipulate to expedited and/or shortened time periods for responsive pleadings in order to permit the granting of trial dates in less than 120 days.

4.     In this matter, Plaintiff DANIEL DEUYOUR was diagnosed with lung cancer on or about May 16, 2011. Because of Plaintiff's work history, and the numerous asbestos products to which he is alleged to have been exposed, Plaintiffs have named numerous manufacturers of asbestos products, premises owners, contractors, and suppliers of asbestos products and fibers as Defendants.

-3-

5.    The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and when the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged, either through said Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, lease or sale of the instrumentality causing the injury, or in some other manner.

6.    Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants and were, as such, acting within the scope, course, and authority of said agency, employment and/or joint venture, in that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring or each and every other Defendant as the agent, servant, employee and/or joint venturer.

7.    Plaintiffs were California residents during a substantial period of Plaintiff DANIEL DEUYOUR's asbestos exposures, upon which Plaintiffs' claims are based.

8.    Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants BF GOODRICH COMPANY; CARRIER CORPORATION; CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION; Crane Co. , Individually and as successor in interest to Chapman Valves; The Dexter Corp. individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc.; Eaton Corporation individually and as successor in interest to Cutler-Hammer, Inc.; FOSTER WHEELER ENERGY CORPORATION;

-4-

1  GENERAL ELECTRIC COMPANY; Georgia-Pacific LLC, F/K/A GEORGIA PACIFIC

2  CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY;

3  The Goodyear Tire & Rubber Company; HONEYWELL INTERNATIONAL INC.,

4  INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND

5  BENDIX CORPORATION; IMO Industries, Inc. (Individually and as successor in interest to

6  Delaval Steam Turbine, Inc.); INGERSOLL-RAND COMPANY, individually and as

7  successor in interest to The Aldrich Company; Jerguson Gage & Valve Company;

8  JOHN CRANE, INC.; KELLY-MOORE PAINT COMPANY, INC.;PARKER HANIFFIN

9  CORPORATION, individually and as successor in interest to Sacoma Sierra Company;

10  PNEUMO-ABEX, LLC (Individually and as successor-in-interest to ABEX CORPORATION

11  f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company

12  including the American Brakebloc Division, f/k/a The American Brake Materials

13  Corporation); SAN FRANCISCO GRAVEL COMPANY; Shell Oil Company; SOCO WEST,

14  INC. (f/k/a Brenntag West Inc., f/k/a SoCo-Lynch Corporation, f/k/a SoCo-Western

15  Chemical Corporation; f/k/a Stinnes-Western Chemical Corporation; UNION Carbide

16  Corporation; WARREN PUMPS, LLC; YORK INTERNATIONAL CORPORATION,

17  individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a

18  Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and

19  The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Heating

20  & Air Conditioning;" "Shuck's Auto Supply," and "Kragen Auto Parts";and DOES 1-300, ,

21  inclusive, are corporations organized and existing under and by virtue of the laws of the

22  State of California, or the laws of some other state of the United States of America, or

23  some foreign jurisdiction, and that said Defendants were authorized to do and are doing

24  business in the State of California, and that said Defendants have regularly conducted

25  business in the State of California.

26          9.       At all times mentioned above, Defendants, and each of them, were engaged

27  in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

28  buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

1  advertising a certain substance, the generic name of which is asbestos, and other products

2  containing said substance.

3      10.    Plaintiff DANIEL DEUYOUR was exposed to Defendants' asbestos and

4  asbestos containing products contributing to and causing the development of lung cancer.

5  Plaintiff was exposed to Defendants' asbestos and asbestos containing products including

6  but not limited to through his work as a boatswains mate in the US Navy from 1970-1974,

7  through automotive friction work in the 1970's through the 1990's, through personal

8  construction work in the 1970's, and through his work as a laborer and aircraft mechanic

9  and technician in the 1970's through the 1990's.   Plaintiff DANIEL DEUYOUR suffers from

10  lung cancer and each of Defendants' asbestos and asbestos containing products that

11  entered his body was a substantial factor in bringing about, prolonging, or aggravating

12  Plaintiff's lung cancer. The asbestos and asbestos containing products Plaintiff was

13  exposed to were manufactured or supplied by a named Defendant and DOES 1-300.

14      11.    Federal Courts lack jurisdiction over this action; removal is therefore

15  improper.  Specifically, removal based on diversity jurisdiction is unavailing due to the

16  presence of a Defendant that resides in California.  In addition, no claim of admiralty or

17  maritime law is raised, Plaintiffs sue no foreign state or agency, and Defendants lack a

18  colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1).

19  Venue is proper in San Francisco County, Superior Court of California.

20

21                          **FIRST CAUSE OF ACTION**
                                      (Negligence)
22                          (As Against all Defendants)

23      12.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,

24  each and every allegation contained in each paragraph above.

25      13.    At all times herein mentioned, each of the named Defendants and DOES 1

26  through 300 was the successor, successor in business, successor in product line or a

27  portion thereof, assign, predecessor, predecessor in business, predecessor in product line

28  or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial

-6-

1  owner of or member in an entity researching, studying, manufacturing, fabricating,

2  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

3  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

4  marketing, warranting, re-branding, manufacturing for others, packaging and advertising as

5  certain product, namely asbestos, and other products containing asbestos. Said entities

6  shall hereinafter collectively be called "Alternate Entities." Each of the herein named

7  Defendants is liable for the tortious conduct of each successor, successor in business,

8  successor in product line or a portion thereof, assign, predecessor in product line or a

9  portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

10  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

11  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for

12  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

13  marketed, warranted, re-branded, manufactured for others and advertised a certain

14  product, namely asbestos, and other products containing asbestos. The following

15  Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"

16  in that there has been a virtual destruction of Plaintiffs' remedies against each such

17  "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line,

18  or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused

19  the destruction of Plaintiffs' remedies against each such "Alternate Entity;" each such

20  Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;"

21  and that each such Defendant enjoys the goodwill originally attached to each such

22  "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION |

-7-

| | |
|---|---|
| Crane Co. | Individually and as successor in interest to Chapman Valves |
| The Dexter Corp. | individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc. |
| Eaton Corporation | individually and as successor in interest to Cutler-Hammer, Inc. |
| GEORGIA PACIFIC, LLC | F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY |
| HONEYWELL INTERNATIONAL INC. | INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION |
| IMO Industries, Inc. | (Individually and as successor in interest to Delaval Steam Turbine, Inc.) |
| INGERSOLL-RAND COMPANY | individually and as successor in interest to The Aldrich Company |

COMPLAINT

| PARKER HANIFFIN CORPORATION | individually and as successor in interest to Sacoma Sierra Company |
| --- | --- |
| PNEUMO-ABEX, LLC | Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) |
| SOCO WEST, INC. | f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western Chemical Corporation |
| YORK INTERNATIONAL CORPORATION | individually and as successor in interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc., York-Luxaire, Inc., Luxaire, Inc., and The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Hearing & Air Conditioning; |

14.     Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein,

1    Defendants, their "Alternate Entities," and each of them negligently and carelessly

2    researched, tested or failed to test, manufactured, designed, developed, distributed,

3    labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified,

4    serviced, used, and sold a certain substance, the generic name of which is asbestos, and

5    other products containing said substance, in that said substance was capable of causing

6    and did, in fact, proximately cause personal injuries to users and consumers thereof while

7    being used in manner reasonably foreseeable, thereby rendering said substance unsafe

8    and dangerous for use by the consumer, users, or bystanders thereof, and others to whom

9    Defendants owe a duty, including Plaintiff DANIEL DEUYOUR.

10        15.    Plaintiff DANIEL DEUYOUR is a worker who, for a substantial length of time,

11   used, handled, and was otherwise exposed to Defendants' asbestos and asbestos

12   products, in a manner that was reasonably foreseeable, while he was working as described

13   in Paragraph 6 above.

14        16.    As a direct and proximate result of the above-referenced conduct of the

15   Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to

16   said asbestos caused severe and permanent injury to Plaintiff's lungs and body, including,

17   but not limited to the disease lung cancer.

18        17.    On or about May 16, 2011, Plaintiff DANIEL DEUYOUR was diagnosed with

19   the asbestos-related disease lung cancer. Prior to that date, Plaintiff, who retired for

20   reasons not related to his asbestos-related disease, did not know, nor did he have reason

21   to know, that he had contracted this disease related to his exposure to asbestos. Prior to

22   said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury

23   and/or disease to him, and had not been advised or informed by anyone that he could

24   contract, nor indeed did contract, any disease, sickness or injury as a result of working in

25   the vicinity of asbestos.

26        18.    Plaintiffs are informed and believe, and thereupon allege, that lung cancer is

27   a vicious, painful and often fatal malignancy of the lung, and that said disease results from

28   exposure to asbestos and asbestos products over a period of time.

-10-

19.   As a direct and proximate result of the aforesaid conduct of the Defendants, their "Alternate Entities," and each of them Plaintiff DANIEL DEUYOUR has suffered, and continues to suffer, severe and permanent injuries to his person, body and health, including, but not limited to, the disease lung cancer, all to his general damage in a sum within the jurisdictional limits of this court.

20.   As a direct and proximate result of the aforesaid conduct of the Defendants, their "Alternate Entities," and each of them Plaintiffs were compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat Plaintiff DANIEL DEUYOUR, and did incur medical, hospital and professional incidental expenses, and Plaintiffs are informed and believe and thereupon allege that by reason of said injuries, Plaintiff DANIEL DEUYOUR will necessarily incur additional like expenses for an indefinite period of time in the future, and when said amounts are ascertained, Plaintiffs will allege said amounts.

21.   At all times herein mentioned, Defendants, their "Alternate Entities," and each of them were aware that the original gaskets and packing supplied with their equipment would need to be removed and replaced with new gaskets and packing during ordinary operation and maintenance of their equipment. Heat and pressure generated by operation would affect the original and replacement gaskets and packing - e.g., making them brittle, friable and not reusable, making replacement necessary and dangerous. It was foreseeable that the process of removing old gaskets and packing, and replacing them with the new materials during ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's equipment needed to be insulated with asbestos containing thermal insulation materials and that the negligent design of Defendants' equipment through its ordinary operation caused the degradation of asbestos containing thermal insulation and the foreseeable removal of these insulation materials and application of new insulation materials, which would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air.

-11-

22.    On or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that asbestos and asbestos-containing products were and are hazardous to the health and safety of Plaintiff DANIEL DEUYOUR, and others in Plaintiff's position working in close proximity with such materials. Specifically, Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the following information:

(a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on the Lung* (London: H.M. Stationary Office) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause pulmonary fibrosis in exposed individuals and discussed processes by which asbestos dust is generated and methods for dust suppression. As such, at least as of 1930, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause a debilitating potentially lethal disease, that there was a dose-response relationship between the level of asbestos exposure and risk of contracting disease, and that disease prevention requires the suppression or elimination of asbestos containing dust. In 1933, E.R.A. Merewether's *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed Defendants, their "Alternate Entities," and each of them, that exposure to asbestos containing dust for a period of less than 5 years can cause the lung disease asbestosis, which can be deadly.

(b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J. Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death. As such, at

1    least as of 1955, Defendants, their "Alternate Entities," and each of them, knew or

2    had the duty to know that exposure to asbestos dust could cause lung cancer, a

3    potentially lethal disease.

4    (c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural*

5    *Mesothelioma and Asbestos Exposure in the North Western Cape Province* (Br. J.

6    Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers,

7    suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of

8    asbestos and asbestos containing products on notice that exposure to asbestos

9    dust can cause lung cancer in exposed individuals, resulting in death.  The article

10   confirmed a causal association between asbestos exposure and mesothelioma, and

11   noted that even low-level, non-occupational exposures to asbestos can cause

12   mesothelioma.  As such, at least as of 1960, Defendants, their "Alternate Entities,"

13   and each of them, knew or had the duty to know that exposure to asbestos dust

14   could cause mesothelioma, a lethal form of cancer, in those directly exposed to

15   asbestos containing dust as well as those secondarily exposed in a residential

16   setting.

17       23.    With intent to deceive Plaintiff DANIEL DEUYOUR, and others in Plaintiff's

18   position, and with intent that he and such others should be and remain ignorant of such

19   facts with intent to induce Plaintiff and such others to alter his and their positions to his and

20   their injury and/or risk and in order to gain financial, business, and other advantages, the

21   following acts occurred:

22   (a) Defendants, their "Alternate Entities," and each of them, did not label any of the

23   aforementioned asbestos and asbestos containing materials and products with

24   information regarding the hazards of such materials and products to the health and

25   safety of Plaintiff and others in Plaintiff's position working in close proximity with

26   such materials until 1964, when certain of such materials were labeled by some, but

27   not all, of Defendants, their "Alternate Entities," and each of them, herein when the

28   knowledge of such hazards was existing and known to Defendants, their "Alternate

-13-

COMPLAINT

Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Plaintiff and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Plaintiff's employer and others without advising Plaintiff and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Plaintiff that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity to such materials;

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants,

there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e) Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants, their "Alternate

-15-

Entities," and each of them, were bound to disclose;

(g) Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff and others of the nature of asbestos and asbestos containing materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h) Defendants, their "Alternate Entities," and each of them, failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i) Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them, also concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j) Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos and asbestos containing materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were

1  under a duty to so inform and said failure was misleading; and

2  (k) Defendants, their "Alternate Entities," and each of them, failed to provide

3  adequate information to physicians and surgeons retained by Plaintiff's employers

4  and their predecessor companies, for purposes of making physical examinations of

5  Plaintiff and other employees as to the true nature of the risk of such materials and

6  exposure thereto when they in fact possessed such information and had a duty to

7  disclose it.

8      24.    On or before 1930, and thereafter, said Defendants, their "Alternate Entities,"

9  and each of them were aware that users of asbestos and asbestos containing products, as

10  well as members of the general public who would be exposed to asbestos and asbestos

11  products, had no knowledge or information indicating that asbestos could cause injury, and

12  said Defendants, their "Alternate Entities," and each of them, knew that the users of

13  asbestos and asbestos products, as well as members of the general public who were

14  exposed to asbestos and asbestos products, would assume, and in fact did assume, that

15  exposure to asbestos and asbestos products was safe, when in fact said exposure was

16  extremely hazardous to human life.

17      25.    With said knowledge, said Defendants, their "Alternate Entities," and each of

18  them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,

19  package, use, and advertise asbestos and asbestos containing products without

20  attempting to protect or warn users or bystanders about the high risk of injury or death

21  resulting from exposure to asbestos and asbestos products. Rather than attempting to

22  protect users and workers from, or warn workers and users of, the high risk of injury or

23  death resulting from exposure to asbestos and asbestos products, Defendants, their

24  "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said

25  risk, fraudulently, consciously and actively concealed and suppressed said knowledge from

26  members of the general public that asbestos and asbestos products were unsafe for all

27  reasonably foreseeable use, with the knowledge of the falsity of said implied

28  representations.

-17-

1    26.    Despite the above referenced historical knowledge of said Defendants, their

2  "Alternate Entities," and each of them, concerning the extreme hazards of asbestos,

3  Defendants negligently, carelessly, and with a willful and conscious disregard of the rights

4  and safety of others failed to adequately test, research, label, design, distribute, sell,

5  inspect, repair, use, modify or advertise their asbestos and asbestos containing products in

6  an effort to reduce or eliminate the potential that their products would cause deadly

7  diseases in users, bystanders, and other exposed individuals.

8    27.    The above referenced conduct of said Defendants, their "Alternate Entities,"

9  and each of them was motivated by the financial interest of said Defendants in the

10  continuing, uninterrupted distribution and marketing of asbestos and asbestos containing

11  products. In pursuance of said financial motivation, said Defendants consciously

12  disregarded the safety of the users of, and persons exposed to, asbestos and asbestos

13  containing products, and were in fact consciously willing to permit asbestos and asbestos

14  containing products to cause injury to workers and users thereof, and persons exposed

15  thereto, including Plaintiff DANIEL DEUYOUR.

16    28.    An officer, director, or managing agent of Defendants, their "Alternate

17  Entities," and each of them, with advance knowledge of the extreme health hazard posed

18  by asbestos and asbestos containing products, did, with conscious disregard for the rights

19  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or

20  ratify such acts, including but not limited to Defendants' failure to adequately research, test,

21  or label their asbestos or asbestos-containing products and Defendants' attendant

22  willingness to continue to manufacture, design, distribute, market, sell, supply, instal,

23  inspect, repair, package, use, and advertise asbestos and asbestos containing products

24  then known by Defendants to be hazardous to human health.  As such, an officer, director,

25  or managing agent of Defendants, their "Alternate Entities," and each of them, authorized

26  or ratified Defendants' failure to take reasonable and necessary efforts to reduce or

27  eliminate the potential that the asbestos and asbestos containing products Defendants

28  manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,

1  repaired, packaged, used and advertised would cause deadly diseases, such as lung

2  cancer, in users, bystanders, and other exposed individuals.

3     29.   The above-referenced conduct of said Defendants, their "Alternate Entities,"

4  and each of them was and is willful, malicious, outrageous and/or in conscious disregard

5  and indifference to the rights and safety of users of said asbestos and asbestos containing

6  products, including Plaintiff DANIEL DEUYOUR. Defendants, their "Alternate Entities," and

7  each of them are guilty of oppression, fraud, or malice and engaged in conduct which was

8  intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

9  on by the Defendants with a willful and conscious disregard of the rights and safety of

10 others. Defendants, their "Alternate Entities," and each of them subjected Plaintiffs to cruel

11 and unjust hardship in conscious disregard of their rights and engaged in intentional

12 misrepresentation, deceit, or concealment of a material fact known to the Defendants with

13 the intention on the part of the Defendants of thereby depriving Plaintiffs of property or

14 legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by

15 way of punishing Defendants, seek punitive damages, according to proof.

16

17                    **SECOND CAUSE OF ACTION**
                          (Strict Liability)
18                      (As Against all Defendants)

19     30.   Plaintiffs hereby incorporate by reference, as though fully set forth herein,

20 each and every allegation contained in each of the paragraphs above.

21     31.   At all times mentioned herein, Defendants, their "Alternate Entities," and each

22 of them researched, manufactured, tested or failed to test, designed, labeled, distributed,

23 advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain

24 substance, the generic name of which is asbestos, and other products containing said

25 substance which Defendants knew were to be used without inspection for defects and

26 which substance contained design and manufacturing defects, in that same was capable of

27 causing and did, in fact, cause personal injuries to users, consumers, and bystanders while

28 being used in a reasonably foreseeable manner, thereby rendering such asbestos and

asbestos containing products unsafe and dangerous for use by users, consumers, and

-19-

1  bystanders.

2      32.    As a direct and proximate result of the above described conduct by

3  Defendants, their "Alternate Entities," and each of them, Plaintiff DANIEL DEUYOUR

4  suffered severe and permanent injuries to his person, as alleged hereinabove.

5      33.    At all times mentioned herein, the asbestos and products containing said

6  substance discussed above failed to perform as safely as an ordinary consumer would

7  expect when used in an intended or reasonably foreseeable manner, and the risk of

8  danger inherent in asbestos and asbestos containing products outweighs the benefits of

9  said substance and products.

10      34.    At all times mentioned herein, the foreseeable use of the asbestos and

11  products containing said substance discussed above involved a substantial danger not

12  readily recognizable to an ordinary user, consumer, or bystander, but which danger was

13  known or knowable to Defendants, their "Alternate Entities," and each of them, and

14  Defendants failed to adequately warn of the substantial danger.

15      35.    As a direct and proximate result of the above described conduct by

16  Defendants, their "alternate entities," and each of them, Plaintiff DANIEL DEUYOUR

17  suffered severe and permanent injuries to his person, as alleged hereinabove.

18      36.    An officer, director, or managing agent of Defendants, their "Alternate

19  Entities," and each of them, with advance knowledge of the extreme health hazard posed

20  by asbestos and asbestos containing products, did, with conscious disregard for the rights

21  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or

22  ratify such acts, including but not limited to Defendants' failure to adequately research, test,

23  or label their asbestos or asbestos-containing products and Defendants' attendant

24  willingness to continue to manufacture, design, distribute, market, sell, supply, instal,

25  inspect, repair, package, use, and advertise asbestos and asbestos containing products

26  then known by Defendants to be hazardous to human health. As such, an officer, director,

27  or managing agent of Defendants, their "Alternate Entities," and each of them, authorized

28  or ratified Defendants' failure to take reasonable and necessary efforts to address the

1  design and manufacturing defects in the asbestos and asbestos containing products that

2  Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed,

3  inspected, repaired, packaged, used and advertised.

4      37.    The above-referenced conduct of said Defendants, their "Alternate Entities,"

5  and each of them was and is willful, malicious, outrageous and/or in conscious disregard

6  and indifference to the rights and safety of users of said asbestos and asbestos containing

7  products, including Plaintiff DANIEL DEUYOUR. Defendants, their "Alternate Entities," and

8  each of them are guilty of oppression, fraud, or malice and engaged in conduct which was

9  intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

10  on by the Defendants with a willful and conscious disregard of the rights and safety of

11  others. Defendants, their "Alternate Entities," and each of them subjected Plaintiffs to cruel

12  and unjust hardship in conscious disregard of their rights and engaged in intentional

13  misrepresentation, deceit, or concealment of a material fact known to the Defendants with

14  the intention on the part of the Defendants of thereby depriving Plaintiffs of property or

15  legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by

16  way of punishing Defendants, seek punitive damages, according to proof.

17

18                             **THIRD CAUSE OF ACTION**
                   (Premises Owner/Contractor Liability)

19              (Against All Defendants and DOES 1-300)

20      38.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,

21  each and every allegation contained in each of the above.

22      39.    At all times mentioned herein, the Premises Owner/Contractor Liability

23  Defendants, their "Alternate Entities," and each of them, owned, leased, maintained,

24  managed, and/or controlled the premises at which Plaintiff DANIEL DEUYOUR was

25  exposed to asbestos and asbestos containing products.

26      40.    Prior to and at said times and places, said Premises Owner/Contractor

27  Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and

28  asbestos containing products to be constructed, installed, maintained, used, supplied,

-21-

1  replaced, repaired and/or removed on their respective premises, by their own workers

2  and/or by employing various contractors, and caused the release of dangerous quantities

3  of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe

4  condition to Plaintiff DANIEL DEUYOUR and other persons exposed to said asbestos

5  fibers while present at said premises.

6       41.    At all times mentioned herein, said Premises Owner/Contractor Liability

7  Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary

8  and reasonable care should have known, that the foregoing conditions and activities

9  created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and

10  personal injury to Plaintiff DANIEL DEUYOUR and other workers or persons so exposed

11  present on each of the aforesaid respective premises.

12       42.    At all times relevant herein, Plaintiff DANIEL DEUYOUR entered said

13  premises and used or occupied each of said respective premises as intended and for each

14  of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In

15  so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers released into the

16  ambient air by the aforesaid hazardous conditions and activities managed, maintained,

17  initiated, and/or otherwise created, controlled, or caused by said Premises

18  Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them.

19       43.    Plaintiff DANIEL DEUYOUR at all times was unaware of the hazardous

20  condition or the risk of personal injury created by the aforesaid presence and use of

21  asbestos products and materials on said premises.

22       44.    At all times mentioned herein, said Premises Owner/Contractor Liability

23  Defendants, their "Alternate Entities," and each of them, remained in control of the

24  premises where Plaintiff DANIEL DEUYOUR was performing his work.

25       45.    At all times mentioned herein, the Premises Owner/Contractor Liability

26  Defendants, their "Alternate Entities," and each of them, owed to Plaintiffs and others

27  similarly situated a duty to exercise ordinary care in the management of such premises in

28  order to avoid exposing workers such as Plaintiff DANIEL DEUYOUR to an unreasonable

-22-

1    risk of harm and to avoid causing injury to said person.

2         46.    At all times mentioned herein, said Premises Owner/Contractor Liability

3    Defendants, their "Alternate Entities," and each of them, negligently failed to maintain,

4    manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff

5    of the existence of the aforesaid dangerous conditions and hazards on said premises.

6         47.    At all times mentioned herein, said Premises Owner/Contractor Liability

7    Defendants, their "Alternate Entities," and each of them, should have recognized that the

8    work of said contractors, identified above in Paragraph 40, would create during the

9    progress of the work, dangerous, hazardous, and unsafe conditions which could or would

10   harm Plaintiff DANIEL DEUYOUR and others unless special precautions were taken.

11        48.    In part, Plaintiff DANIEL DEUYOUR was exposed to dangerous quantities of

12   asbestos fibers by reason of such contractors' failure to take necessary precautions.

13        49.    The work of contractors on premises controlled by the Premises

14   Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

15   reason of the release of dangerous quantities of asbestos fibers.

16        50.    The unsafe premise or work place was created, in part, by the negligent

17   conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said

18   negligent conduct includes but is not limited to:

19        (a) Failure to warn about the hazards of asbestos dusts;

20        (b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust

21        into the premises;

22        (c) Failure to remove asbestos containing dust on the premises through the use of

23        ventilation or appropriate means;

24        (d) Failure to provide adequate breathing protection, i.e., approved respirators or

25        masks to those exposed to the release of asbestos dust;

26        (e) Failure to inspect and/or test the air for the presence of asbestos fibers;

27        (f) Failure to provide medical monitoring to those exposed to asbestos dust.

28        51.    The Premises Owner/Contractor Defendants' duty to maintain and provide

-23-

1  safe premises, a safe place to work, and to warn of dangerous conditions are

2  non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code

3  §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated

4  thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any

5  breach of said duties whether by themselves or others.

6       52.    Prior to and at said times and places, said Premises Owner/Contractor

7  Liability Defendants, their "Alternate Entities," and each of them were subject to certain

8  ordinances, statutes, and other government regulations promulgated by the United States

9  Government, the State of California, and others, including but not limited to the General

10  Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the

11  California Administrative Code under the Division of Industrial Safety, Department of

12  Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous

13  Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as

14  documented for asbestos and other toxic substances under Appendix A, Table 1 of said

15  Safety Orders; additionally, California Health & Safety Code §40200, et seq., which

16  empowers the California Air Quality Management Districts to promulgate regulations

17  covering emission standards for hazardous air pollutants. Such state and federal standards

18  required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"

19  and each of them, to provide specific safeguards or precautions to prevent or reduce the

20  inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants

21  failed to provide the required safeguards and precautions. Defendants' violations of said

22  codes include but are not limited to:

23      (a) Failing to comply with statutes and allowing ambient levels of airborne asbestos

24      fiber to exceed the permissible/allowable levels with regard to the aforementioned

25      statutes;

26      (b) Failing to segregate work involving the release of asbestos dusts;

27      (c) Failing to suppress asbestos dust using prescribed ventilation techniques;

28      (d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

1    (e) Failing to warn or educate Plaintiff DANIEL DEUYOUR or others regarding

2    asbestos on the premises;

3    (f) Failing to provide approved respiratory protection devices;

4    (g) Failing to ensure "approved" respiratory protection devices were used properly;

5    (h) Failing to provide for an on-going health and screening program for those

6    exposed to asbestos on the premises;

7    (i) Failing to provide adequate housekeeping and clean-up of the work place;

8    (j) Failing to properly warn of the hazards associated with asbestos as required by

9    statute;

10    (k) Failing to properly report renovation and disturbance of asbestos containing

11    materials;

12    (l) Failing to have an asbestos removal supervisor as required by regulation;

13    (m) Failing to get approval for renovation as required by statutes; and

14    (n) Failing to maintain records as required by statute.

15    53.    Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"

16 and each of them, were the "statutory employer" of Plaintiff DANIEL DEUYOUR as defined

17 by the California Labor Code and California case law.

18    54.    Plaintiff DANIEL DEUYOUR at all times was unaware of the hazardous

19 condition or the risk of personal injury created by Defendants' violation of said regulations,

20 ordinances, or statutes.

21    55.    At all times mentioned herein, Plaintiff DANIEL DEUYOUR was a member of

22 the class of persons whose safety was intended to be protected by the regulations,

23 statutes, or ordinances described in the foregoing paragraphs.

24    56.    At all times mentioned herein, said Premises Owner/Contractor Liability

25 Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of

26 ordinary and reasonable care should have known, that the premises that were in their

27 control would be used without knowledge of, or inspection for, defects or dangerous

28 conditions, that the persons present and using said premises would not be aware of the

1  aforesaid hazardous conditions to which they were exposed on the premises, and that

2  such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

3      57.    As a legal consequence of the foregoing, Plaintiff DANIEL DEUYOUR

4  developed the asbestos-related disease lung cancer, which has caused great injury and

5  disability as previously set forth, and Plaintiffs have suffered damages as herein alleged.

6      58.    An officer, director, or managing agent of Premises Owner/Contractor Liability

7  Defendants, their "Alternate Entities," and each of them, with advance knowledge of the

8  extreme health hazard posed by asbestos and asbestos containing products, did, with

9  conscious disregard for the rights and safety of others, commit an act of oppression, fraud,

10  or malice, or did authorize or ratify such acts, including but not limited to Defendants'

11  failure to provide workers with an adequately safe work environment and Defendants'

12  attendant willingness to continue to construct, instal, maintain, use, supply, replace, repair

13  and/or remove asbestos and asbestos containing products, thereby generating airborne

14  asbestos dust to which Plaintiff DANIEL DEUYOUR was exposed.  As such, an officer,

15  director, or managing agent of Premises Owner/Contractor Liability Defendants, their

16  "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take

17  reasonable and necessary efforts to ensure that workers such as Plaintiff DANIEL

18  DEUYOUR were not exposed to toxic asbestos dust on their premises.

19      59.    The above-referenced conduct of said Premises Owner/Contractor Liability

20  Defendants, their "Alternate Entities," and each of them, was and is willful, malicious,

21  outrageous and/or in conscious disregard and indifference to the rights and safety of users

22  of said asbestos and asbestos containing products, including Plaintiff DANIEL DEUYOUR.

23  Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of

24  them, are guilty of oppression, fraud, or malice and engaged in conduct which was

25  intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

26  on by the Defendants with a willful and conscious disregard of the rights and safety of

27  others. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and

28  each of them, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

1  their rights and engaged in intentional misrepresentation, deceit, or concealment of a

2  material fact known to the Defendants with the intention on the part of the Defendants of

3  thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs

4  therefore, for the sake of example and by way of punishing Defendants, seek punitive

5  damages, according to proof.

6      WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, in

7  an amount to be proven at trial in each individual case, as follows:

8      1. General damages, according to proof;

9      2. Damages for medical and related expenses, according to proof;

10     3. Damages for loss of earning capacity, according to proof;

11     4. Damages for loss of earnings, according to proof;

12     5. Damages for Plaintiffs' other economic losses, according to proof;

13     6. Exemplary or punitive damages, according to proof;

14     7.Prejudgment interest, according to proof;

15     8. Costs of suit incurred herein; and

16     9. Such other and further relief as this Court may deem just and proper, including

17  costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related

18  provisions of law.

19

20  DATED: May 16, 2012                    DEBLASE BROWN EYERLY LLP

21

22                                        By: _____

23                                            Michael Eyerly
                                              Attorneys for Plaintiffs

24

25

26

27

28

-27-

COMPLAINT

```
  ####   ### ###   ### #
     #     #   #   #    ##
     #     #   #   #
     #     # #       ####
#    #   ###           #
#    #    #  #         #
#    #    #    #   ##    #
 ###    ###   ## #  ###
```

```
Job : 38
Date: 5/23/2013
Time: 11:17:11 AM
```

*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT B

1  Patrick DeBlase (SBN 167138)
   Eric Brown (SBN 229622)
2  Michael C. Eyerly (SBN 178693)
   Stephen T. Blackburn (SBN 232887)
3  DEBLASE BROWN EYERLY LLP
   680 S. Santa Fe Avenue
4  Los Angeles, CA 90021
   Telephone: (310) 575-9955
5  Facsimile: (310) 575-9919

6

7  Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 28 2013

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
SHADRYA WESLEY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

BC500011

LAURIE DEUYOUR INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO DANIEL
DEUYOUR, DECEASED, NICHOLAS DEUYOUR
AND DESIREE DEUYOUR;

PLAINTIFFS,

VS.

BF GOODRICH COMPANY;
CARRIER CORPORATION;
CBS CORPORATION, F/K/A VIACOM,
INC., SUCCESSOR BY MERGER TO CBS
CORPORATION F/K/A WESTINGHOUSE
ELECTRIC CORPORATION;
THE DEXTER CORP. INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO DEXTER
AEROSPACE, HYSOL, DEXTER-HYSOL AND
DEXTER HYSOL AEROSPACE, INC.;
EATON CORPORATION INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO
CUTLER-HAMMER, INC.;
FOSTER WHEELER ENERGY
CORPORATION;
GENERAL ELECTRIC COMPANY;
GEORGIA-PACIFIC LLC, F/K/A GEORGIA
PACIFIC CORPORATION, SUCCESSOR
IN INTEREST TO BESTWELL GYPSUM
COMPANY;
THE GOODYEAR TIRE & RUBBER COMPANY;

CASE NO.

COMPLAINT FOR WRONGFUL DEATH

1. Negligence
2. Products Liability
3. Premises Owner/Contractor Liability

[COMPLEX ASBESTOS
LITIGATION-SUBJECT
TO THE GENERAL
ORDERS CONTAINED
IN FILE NO. C700000]

BY FAX

-1-

1   HONEYWELL INTERNATIONAL INC.,
2   INDIVIDUALLY AND AS SUCCESSOR
    INTEREST TO ALLIED SIGNAL, INC. AND
3   BENDIX CORPORATION;
    IMO INDUSTRIES, INC. (INDIVIDUALLY AND AS
4   SUCCESSOR IN INTEREST TO DELAVAL STEAM
    TURBINE, INC.);
5   INGERSOLL-RAND COMPANY,
    INDIVIDUALLY AND AS SUCCESSOR IN INTEREST
6   TO THE ALDRICH COMPANY;
    JERGUSON GAGE & VALVE COMPANY;
7   KELLY-MOORE PAINT COMPANY, INC.;
    MECHANICAL DRIVES & BELTING, F/K/A
8   L.A. RUBBER COMPANY;
    PARKER HANIFFIN CORPORATION,
9   INDIVIDUALLY AND AS SUCCESSOR IN INTEREST
    TO SACOMA SIERRA COMPANY;
10  PNEUMO-ABEX, LLC (INDIVIDUALLY AND AS
    SUCCESSOR-IN-INTEREST TO ABEX
11  CORPORATION F/K/A AMERICAN BRAKE
    SHOE COMPANY F/K/A AMERICAN BRAKE
12  SHOE AND FOUNDRY COMPANY ;INCLUDING
    THE AMERICAN BRAKEBLOC DIVISION, F/K/A
13  THE AMERICAN BRAKE MATERIALS
    CORPORATION)
14  SAN FRANCISCO GRAVEL COMPANY
    SHELL OIL COMPANY;
15  SOCO WEST, INC. (F/K/A BRENNTAG WEST
    INC., F/K/A SOCO-LYNCH CORPORATION,
16  F/K/A SOCO-WESTERN CHEMICAL
    CORPORATION; F/K/A STINNES-WESTERN
17  CHEMICAL CORPORATION;
    UNION CARBIDE CORPORATION;
18  WARREN PUMPS, LLC;
    YORK INTERNATIONAL CORPORATION,
19  INDIVIDUALLY AND AS
    SUCCESSOR-IN-INTEREST TO CENTRAL
20  ENVIRONMENTAL SYSTEMS, INC., F/K/A
    BORG-WARNER CENTRAL ENVIRONMENTAL
21  SYSTEMS, INC.; YORK-LUXAIRE, INC.;
    LUXAIRE, INC., AND THE C.A. OLSEN
22  MANUFACTURING COMPANY AND D/B/A .
    "MONCRIEF FURNACES" D/B/A YORK HEATING
23  & AIR CONDITIONING;

24  AND DOES 1-300.

25

26          Defendants.

27

28

-2-

1    COME NOW Plaintiffs Laurie Deuyour Individually and as Successor in Interest to

2  DANIEL DEUYOUR, Deceased, Nicholas Deuyour and Desiree Deuyour for causes of

3  action against Defendants, and each of them, complain and allege as follows:

4

5                                **GENERAL ALLEGATIONS**

6    1.    This case is being brought by Plaintiffs Laurie Deuyour, Nicholas Deuyour

7  and Desiree Deyour, as a result of DANIEL DEUYOUR having been diagnosed with an

8  asbestos-related disease caused by exposure to asbestos.  Throughout this complaint use

9  of the term "Plaintiffs" shall, where appropriate, mean Laurie Deuyour, Nicholas Deuyour

10  and Desiree Deyour unless the context of its use clearly means only the Decedent, DANIEL

11  DEUYOUR.

12    2.    Asbestos litigation has long been designated complex in Los Angeles County

13  for several historical reasons, including the number of parties, the length, duration and

14  complexity of anticipated deposition testimony of fact, lay and expert witnesses, the

15  wide-ranging medical issues that may or may not be involved, the complexity of industrial

16  hygiene and governmental regulations that may or may not be involved, and the anticipated

17  proportionate amount of economic, non-economic and punitive damages sought for

18  Decedent DANIEL DEUYOUR's death and the loss for his dependants.

19    3.    The average life expectancy of a patient diagnosed with a severe

20  asbestos-related disease ( and/or lung cancer) is extremely short.  Some patients

21  diagnosed with such disease only live weeks or months following their diagnosis.  Further,

22  as their diseases progress, their prognosis slowly worsens such that their ability to

23  participate in trial may diminish drastically.  Often, plaintiffs in these cases must present

24  videotaped deposition testimony taken at the outset of their cases, as their medical

25  condition has worsened so severely that even traveling a few miles to the courthouse is

26  impossible.

27    4.    In this matter, Decedent DANIEL DEUYOUR was diagnosed with lung cancer

28  on or about May 16, 2011 and died as a result on August 1, 2012 . Because of Decedent's

1 | work history, and the numerous asbestos products to which he is alleged to have been
2 | exposed, Plaintiffs have named numerous manufacturers of asbestos products, premises
3 | owners, contractors, and suppliers of asbestos products and fibers as Defendants.

4 |      5.     The true names and/or capacities, whether individual, corporate, associate,
5 | governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to
6 | Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and
7 | when the true names and capacities of said Defendants have been ascertained, Plaintiff
8 | will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon
9 | allege that each Defendant designated herein as a DOE is responsible, negligently or in
10 | some other actionable manner, for the events and happenings hereinafter referred to, and
11 | caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged, either
12 | through said Defendant's own conduct or through the conduct of its agents, servants or
13 | employees, or due to the ownership, lease or sale of the instrumentality causing the injury,
14 | or in some other manner.

15 |      6.     Plaintiffs are informed and believe, and thereon allege that at all times
16 | mentioned herein, Defendants, and each of them, were the agents, servants, employees
17 | and/or joint venturers of their co-Defendants and were, as such, acting within the scope,
18 | course, and authority of said agency, employment and/or joint venture, in that each and
19 | every Defendant, as aforesaid, when acting as a principal, was negligent in the selection
20 | and hiring or each and every other Defendant as the agent, servant, employee and/or joint
21 | venturer.

22 |      7.     DECEDENT was a California resident during a substantial period of Decedent
23 | DANIEL DEUYOUR's asbestos exposures, upon which Plaintiffs' claims are based.

24 |      8.     Plaintiffs are informed and believe, and thereon allege, that at all times
25 | mentioned herein, Defendants BF GOODRICH COMPANY; CARRIER CORPORATION;
26 | CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS
27 | CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION;

28 |

COMPLAINT FOR WRONGFUL DEATH

The Dexter Corp. individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc.; Eaton Corporation individually and as successor in interest to Cutler-Hammer, Inc.; FOSTER WHEELER ENERGY CORPORATION; GENERAL ELECTRIC COMPANY; Georgia-Pacific LLC, F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY; The Goodyear Tire & Rubber Company; HONEYWELL INTERNATIONAL INC., INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION; IMO Industries, Inc. (Individually and as successor in interest to Delaval Steam Turbine, Inc.); INGERSOLL-RAND COMPANY, individually and as successor in interest to The Aldrich Company; Jerguson Gage & Valve Company; KELLY-MOORE PAINT COMPANY, INC.; MECHANICAL DRIVES & BELTING, f/k/a L.A. Rubber Company; PARKER HANIFFIN CORPORATION, individually and as successor in interest to Sacoma Sierra Company; PNEUMO-ABEX, LLC (Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company ;including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) SAN FRANCISCO GRAVEL COMPANY Shell Oil Company; SOCO WEST, INC. (f/k/a Brenntag West Inc., f/k/a SoCo-Lynch Corporation, f/k/a SoCo-Western Chemical Corporation; f/k/a Stinnes-Western Chemical Corporation; UNION Carbide Corporation; WARREN PUMPS, LLC; YORK INTERNATIONAL CORPORATION, individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Heating & Air Conditioning; and DOES 1-300., are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States of America, or some foreign jurisdiction, and that said Defendants were authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the State of California.

9.    At all times mentioned above, Defendants, and each of them, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance.

10.    Decedent DANIEL DEUYOUR was exposed to Defendants' asbestos and asbestos containing products contributing to and causing the development of lung cancer. Decedent was exposed to Defendants' asbestos and asbestos containing products including but not limited to through his work as a boatswains mate in the US Navy from 1970-1974,  through automotive friction work in the 1970's through the 1990's,  through personal construction work in the 1970's, and through his work as a laborer and aircraft mechanic and technician in the 1970's through the 1990's. Decedent DANIEL DEUYOUR suffered from lung cancer and death. Each of Defendants' asbestos and asbestos containing products that entered his body was a substantial factor in bringing about, prolonging, or aggravating Decedent's lung cancer. The asbestos and asbestos containing products Decedent was exposed to were manufactured or supplied by a named Defendant and DOES 1-300.

11.    Federal Courts lack jurisdiction over this action; removal is therefore improper.  Specifically, removal based on diversity jurisdiction is unavailing due to the presence of a Defendant that resides in California.  In addition, no claim of admiralty or maritime law is raised, Plaintiff sues no foreign state or agency, and Defendants lack a colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1). Venue is proper in Los Angeles County, Superior Court of California.

## **FIRST CAUSE OF ACTION**

### (Negligence)

### (As Against all Defendants)

12.    Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each paragraph above.

-6-

13.     At all times herein mentioned, each of the named Defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising as certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "Alternate Entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following Defendants, and each of them, are liable for the acts of each and every "Alternate Entity," in that there has been a virtual destruction of Plaintiffs' remedies against each such "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiffs' remedies against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A |

-7-

| | |
|---|---|
| | WESTINGHOUSE ELECTRIC CORPORATION; |
| The Dexter Corp. | individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc.; |
| Eaton Corporation | individually and as successor in interest to Cutler-Hammer, Inc.; |
| Georgia-Pacific LLC | F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY; |
| HONEYWELL INTERNATIONAL INC | INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION; |
| | IMO Industries, Inc. (Individually and as successor in interest to Delaval Steam Turbine, Inc.); |
| INGERSOLL-RAND COMPANY | individually and as successor in interest to The Aldrich Company; |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |
| PARKER HANIFFIN CORPORATION, | individually and as successor in interest to Sacoma Sierra Company; |
| PNEUMO-ABEX, LLC | (Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company ;including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) |
| SOCO WEST, INC. | (F/K/A BRENNTAG WEST, INC., F/K/A SOCO-LYNCH CORPORATION, F/K/A SOCO-WESTERN CHEMICAL CORPORATION, F/K/A STINNES-WESTERN CHEMICAL CORPORATION); |
| YORK INTERNATIONAL CORPORATION, | individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and The C.A. Olsen Manufacturing |

-8-

| | Company and d/b/a "Moncrief Furnaces" d/b/a York Heating & Air Conditioning |
|---|---|

14.    Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, their "Alternate Entities," and each of them negligently and carelessly researched, tested or failed to test, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, used, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Decedent DANIEL DEUYOUR.

15.    Decedent DANIEL DEUYOUR is a worker who, for a substantial length of time, used, handled, and was otherwise exposed to Defendants' asbestos and asbestos products, in a manner that was reasonably foreseeable, while he was working as described in Paragraph 6 above.

16.    As a direct and proximate result of the above-referenced conduct of the Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to said asbestos caused severe and permanent injury to Decedent's lungs and body, including, but not limited to the disease lung cancer.

17.    In May 2011, Decedent DANIEL DEUYOUR was diagnosed with the asbestos-related disease lung cancer. Prior to that date, Decedent, who retired for reasons not related to his asbestos-related disease, did not know, nor did he have reason to know, that he had contracted this disease related to his exposure to asbestos. Prior to said date, Decedent was not aware that exposure to asbestos presented any risk of injury and/or disease to him, and had not been advised or informed by anyone that he could contract,

-9-

nor indeed did contract, any disease, sickness or injury as a result of working in the vicinity of asbestos.

18.     Plaintiffs are informed and believe and thereupon allege, that lung cancer is a vicious, painful and often fatal malignancy of the lung, and that said disease results from exposure to asbestos and asbestos products over a period of time.

19.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "Alternate Entities," and each of them Decedent DANIEL DEUYOUR has suffered, severe and permanent injuries to his person, body and health, including, but not limited to, the disease lung cancer and his resulting death, all to his general damage in a sum within the jurisdictional limits of this court.

20.     As a direct and proximate result of the aforesaid conduct of the Defendants, their "Alternate Entities," and each of them Plaintiff was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat Decedent DANIEL DEUYOUR, and did incur medical, hospital and professional incidental expenses.

21.     At all times herein mentioned, Defendants, their "Alternate Entities," and each of them were aware that the original gaskets and packing supplied with their equipment would need to be removed and replaced with new gaskets and packing during ordinary operation and maintenance of their equipment. Heat and pressure generated by operation would affect the original and replacement gaskets and packing - e.g., making them brittle, friable and not reusable, making replacement necessary and dangerous. It was foreseeable that the process of removing old gaskets and packing, and replacing them with the new materials during ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's equipment needed to be insulated with asbestos containing thermal insulation materials and that the negligent design of Defendants' equipment through its ordinary operation caused the degradation of asbestos containing thermal insulation and the foreseeable removal of these insulation materials and application of new insulation materials, which would cause the disturbance of asbestos and/or asbestos

-10-

containing materials, releasing asbestos into the air.

22.     On or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that asbestos and asbestos-containing products were and are hazardous to the health and safety of Decedent DANIEL DEUYOUR, and others in Decedent's position working in close proximity with such materials.  Specifically, Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the following information:

(a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on the Lung* (London: H.M. Stationary Office) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause pulmonary fibrosis in exposed individuals and discussed processes by which asbestos dust is generated and methods for dust suppression.  As such, at least as of 1930, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause a debilitating potentially lethal disease, that there was a dose-response relationship between the level of asbestos exposure and risk of contracting disease,  and that disease prevention requires the suppression or elimination of asbestos containing dust.  In 1933, E.R.A. Merewether's *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed Defendants, their "Alternate Entities," and each of them, that exposure to asbestos containing dust for a period of less than 5 years can cause the lung disease asbestosis, which can be deadly.

(b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J. Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death.  As such, at least

-11-

as of 1955, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause lung cancer, a potentially lethal disease.

(c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural and Asbestos Exposure in the North Western Cape Province* (Br. J. Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause  in exposed individuals, resulting in death.  The article confirmed a causal association between asbestos exposure and , and noted that even low-level, non-occupational exposures to asbestos can cause .  As such, at least as of 1960, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause , a lethal form of cancer, in those directly exposed to asbestos containing dust as well as those secondarily exposed in a residential setting.

23.     With intent to deceive Decedent DANIEL DEUYOUR, and others in his position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Decedent and such others to alter his and their positions to his and their injury and/or risk and in order to gain financial, business, and other advantages, the following acts occurred:

(a) Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos and asbestos containing materials and products with information regarding the hazards of such materials and products to the health and safety of Decedent and others in Decedent's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate Entities," and each of them, since on or before 1930. By not labeling such materials as to their said hazards, Defendants, their "Alternate Entities," and each of them, caused to be suggested as a fact to Decedent that it was safe for Decedent to work

-12-

in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Decedent's employer and others without advising Decedent and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Decedent that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to such materials;

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Decedent medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e) Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Decedent by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Decedent at this time;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did mislead Decedent and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Decedent the true facts concerning such knowledge of danger, which Defendants, their "Alternate Entities," and each of them, were bound to disclose;

(g) Defendants, their "Alternate Entities," and each of them, failed to warn Decedent and others of the nature of asbestos and asbestos containing materials which were

-14-

dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h) Defendants, their "Alternate Entities," and each of them, failed to provide Decedent with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Decedent and others applying and installing such material;

(i) Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Decedent the true nature of the industrial exposure of Decedent and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them, also concealed from Decedent and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j) Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos and asbestos containing materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Decedent and Decedent's employers so that said physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k) Defendants, their "Alternate Entities," and each of them, failed to provide

-15-

adequate information to physicians and surgeons retained by Decedent's employers and their predecessor companies, for purposes of making physical examinations of Decedent and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

24.     On or before 1930, and thereafter, said Defendants, their "Alternate Entities," and each of them were aware that users of asbestos and asbestos containing products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said Defendants, their "Alternate Entities," and each of them, knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

25.     With said knowledge, said Defendants, their "Alternate Entities," and each of them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products without attempting to protect or warn users or bystanders about the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants, their "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said risk, fraudulently, consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.

26.     Despite the above referenced historical knowledge of said Defendants, their "Alternate Entities," and each of them, concerning the extreme hazards of asbestos, Defendants negligently, carelessly, and with a willful and conscious disregard of the rights

and safety of others failed to adequately test, research, label, design, distribute, sell, inspect, repair, use, modify or advertise their asbestos and asbestos containing products in an effort to reduce or eliminate the potential that their products would cause deadly diseases in users, bystanders, and other exposed individuals.

27.     The above referenced conduct of said Defendants, their "Alternate Entities," and each of them was motivated by the financial interest of said Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos containing products. In pursuance of said financial motivation, said Defendants consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos containing products, and were in fact consciously willing to permit asbestos and asbestos containing products to cause injury to workers and users thereof, and persons exposed thereto, including Decedent DANIEL DEUYOUR.

28.     An officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, with advance knowledge of the extreme health hazard posed by asbestos and asbestos containing products, did, with conscious disregard for the rights and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify such acts, including but not limited to Defendants' failure to adequately research, test, or label their asbestos or asbestos-containing products and Defendants' attendant willingness to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products then known by Defendants to be hazardous to human health.  As such, an officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take reasonable and necessary efforts to reduce or eliminate the potential that the asbestos and asbestos containing products Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected, repaired, packaged, used and advertised would cause deadly diseases, such as lung cancer, in users, bystanders, and other exposed individuals.

29.     The above-referenced conduct of said Defendants, their "Alternate Entities,"

-17-

and each of them was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent DANIEL DEUYOUR. Defendants, their "Alternate Entities," and each of them are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Plaintiff or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.

## SECOND CAUSE OF ACTION

(Strict Liability)

(As Against all Defendants)

30.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each of the paragraphs above.

31.     At all times mentioned herein, Defendants, their "Alternate Entities," and each of them researched, manufactured, tested or failed to test, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering such asbestos and asbestos containing products unsafe and dangerous for use by users, consumers, and bystanders.

32.     As a direct and proximate result of the above described conduct by

-18-

1  Defendants, their "Alternate Entities," and each of them, Decedent DANIEL DEUYOUR

2  suffered severe and permanent injuries to his person, as alleged hereinabove.

3        33.    At all times mentioned herein, the asbestos and products containing said

4  substance discussed above failed to perform as safely as an ordinary consumer would

5  expect when used in an intended or reasonably foreseeable manner, and the risk of danger

6  inherent in asbestos and asbestos containing products outweighs the benefits of said

7  substance and products.

8        34.    At all times mentioned herein, the foreseeable use of the asbestos and

9  products containing said substance discussed above involved a substantial danger not

10  readily recognizable to an ordinary user, consumer, or bystander, but which danger was

11  known or knowable to Defendants, their "Alternate Entities," and each of them, and

12  Defendants failed to adequately warn of the substantial danger.

13        35.    As a direct and proximate result of the above described conduct by

14  Defendants, their "alternate entities," and each of them, Decedent DANIEL DEUYOUR

15  suffered severe and permanent injuries to his person, as alleged hereinabove.

16        36.    An officer, director, or managing agent of Defendants, their "Alternate

17  Entities," and each of them, with advance knowledge of the extreme health hazard posed

18  by asbestos and asbestos containing products, did, with conscious disregard for the rights

19  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify

20  such acts, including but not limited to Defendants' failure to adequately research, test, or

21  label their asbestos or asbestos-containing products and Defendants' attendant willingness

22  to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,

23  package, use, and advertise asbestos and asbestos containing products then known by

24  Defendants to be hazardous to human health.  As such, an officer, director, or managing

25  agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified

26  Defendants' failure to take reasonable and necessary efforts to address the design and

27  manufacturing defects in the asbestos and asbestos containing products that Defendants

28  manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,

repaired, packaged, used and advertised.

37.     The above-referenced conduct of said Defendants, their "Alternate Entities," and each of them was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent DANIEL DEUYOUR. Defendants, their "Alternate Entities," and each of them are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Plaintiff or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.

## THIRD CAUSE OF ACTION

(Premises Owner/Contractor Liability)

(As Against Defendants, and DOES 1-300)

38.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each of the above.

39.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, owned, leased, maintained, managed, and/or controlled the premises at which Decedent DANIEL DEUYOUR was exposed to asbestos and asbestos containing products.

40.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and asbestos containing products to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on their respective premises, by their own workers

and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe condition to Decedent DANIEL DEUYOUR and other persons exposed to said asbestos fibers while present at said premises.

41.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Decedent DANIEL DEUYOUR and other workers or persons so exposed present on each of the aforesaid respective premises.

42.   At all times relevant herein, Decedent DANIEL DEUYOUR entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Decedent was exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them.

43.   Decedent DANIEL DEUYOUR at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials on said premises.

44.   At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, remained in control of the premises where Decedent DANIEL DEUYOUR was performing his work.

45.   At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, owed to Decedent, Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Decedent DANIEL DEUYOUR to an unreasonable risk of harm and to avoid causing injury and death to said person.

46.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Decedent of the existence of the aforesaid dangerous conditions and hazards on said premises.

47.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, should have recognized that the work of said contractors, identified above in Paragraph 40, would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Decedent DANIEL DEUYOUR and others unless special precautions were taken.

48.     In part, Decedent DANIEL DEUYOUR was exposed to dangerous quantities of asbestos fibers by reason of such contractors' failure to take necessary precautions.

49.     The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of asbestos fibers.

50.     The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

(a) Failure to warn about the hazards of asbestos dusts;

(b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust into the premises;

(c) Failure to remove asbestos containing dust on the premises through the use of ventilation or appropriate means;

(d) Failure to provide adequate breathing protection, i.e., approved respirators or masks to those exposed to the release of asbestos dust;

(e) Failure to inspect and/or test the air for the presence of asbestos fibers;

(f) Failure to provide medical monitoring to those exposed to asbestos dust.

51.     The Premises Owner/Contractor Defendants' duty to maintain and provide

safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

52.    Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

(a) Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b) Failing to segregate work involving the release of asbestos dusts;

(c) Failing to suppress asbestos dust using prescribed ventilation techniques;

(d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

(e) Failing to warn or educate Decedent DANIEL DEUYOUR or others regarding asbestos on the premises;

(f) Failing to provide approved respiratory protection devices;

(g) Failing to ensure "approved" respiratory protection devices were used properly;

(h) Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i) Failing to provide adequate housekeeping and clean-up of the work place;

(j) Failing to properly warn of the hazards associated with asbestos as required by statute;

(k) Failing to properly report renovation and disturbance of asbestos containing materials;

(l) Failing to have an asbestos removal supervisor as required by regulation;

(m) Failing to get approval for renovation as required by statutes; and

(n) Failing to maintain records as required by statute.

53.     Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, were the "statutory employer" of Decedent DANIEL DEUYOUR as defined by the California Labor Code and California case law.

54.     Decedent DANIEL DEUYOUR at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances, or statutes.

55.     At all times mentioned herein, Decedent DANIEL DEUYOUR was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

56.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the

-24-

aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

57.   As a legal consequence of the foregoing, Decedent DANIEL DEUYOUR developed the asbestos-related disease lung cancer, which has caused great injury and disability as previously set forth, and Plaintiffs have suffered damages as herein alleged.

58.   An officer, director, or managing agent of Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, with advance knowledge of the extreme health hazard posed by asbestos and asbestos containing products, did, with conscious disregard for the rights and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify such acts, including but not limited to Defendants' failure to provide workers with an adequately safe work environment and Defendants' attendant willingness to continue to construct, instal, maintain, use, supply, replace, repair and/or remove asbestos and asbestos containing products, thereby generating airborne asbestos dust to which Decedent DANIEL DEUYOUR was exposed. As such, an officer, director, or managing agent of Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take reasonable and necessary efforts to ensure that workers such as Decedent DANIEL DEUYOUR were not exposed to toxic asbestos dust on their premises.

59.   The above-referenced conduct of said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent DANIEL DEUYOUR. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Plaintiff or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights

-25-

and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by way of punishing Defendants, seek punitive damages, according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in an amount to be proven at trial in each individual case, as follows:

1. General damages, according to proof;

2. Damages for medical and related expenses, according to proof;

3. Damages for loss of earning capacity, according to proof;

4. Damages for loss of earnings, according to proof;

5. Damages for Plaintiff's other economic losses, according to proof;

6. Exemplary or punitive damages, according to proof;

7. Plaintiff's children's damages for loss of consortium, according to proof;

8. Prejudgment interest, according to proof;

9. Costs of suit incurred herein; and

10. Such other and further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related provisions of law.

DATED: January 28, 2013                    DEBLASE BROWN EYERLY LLP

By: _____

Eric L. Brown

Attorneys for Plaintiff

-26-

*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT C

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF PENNSYLVANIA

DANIEL DEUYOUR,

Plaintiff,

vs.

BF GOODRICH COMPANY, et al.,

Defendants.

**FILED**

SEP 11 2012

MICHAEL E. KUNZ, Clerk
Dep. Clerk

Consolidated MDL Docket No. 875
E.D. PA Case No. 2:12-cv-60167

*Honorable Eduardo C. Robreno, Jr.*

Transferor Court: Northern District of California Civil Action No.: 3:12-cv-03096

**[PROPOSED] ORDER GRANTING DEFENDANT JOHN CRANE INC.'S FRCP 12(b)(6) MOTION TO DISMISS**

Defendant John Crane Inc.'s FRCP 12(b)(6) motion to dismiss came on regularly for hearing before this Court. The Court has considered the papers submitted in support and in opposition to the motion, the authorities cited by the parties, and the argument of counsel.

After due deliberation, this Court has determined that the Complaint, as presently drafted, fails to state a claim upon which relief may be granted. Therefore,

IT IS ORDERED that:

The motion to dismiss is GRANTED with prejudice.

Dated: Sept. 11, 2012

Judge, U.S. District Court for the
Eastern District of Pennsylvania

Eduardo C. Robreno

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: ASBESTOS PRODUCTS          :     Consolidated Under
LIABILITY LITIGATION (No. VI)  :     MDL DOCKET NO. 875
                                         :
VARIOUS PLAINTIFFS   **FILED**:
                                         :
        v.                    SEP 1 7 2012:     Cases in Exhibit "A,"
                                         :     attached
VARIOUS DEFENDANTS  MICHAEL E. KUNZ, Clerk
                             By_____Dep. Clerk

12-60167

### ORDER

   **AND NOW,** this **14th** day of **September, 2012,** it is hereby

**ORDERED** that the Motions to Dismiss listed in Exhibit "A,"

attached are **GRANTED** as unopposed.


              **AND IT IS SO ORDERED.**




                          _____
                          **EDUARDO C. ROBRENO, J.**

1

EXHIBIT A

| Case Number | District | Caption | Filed By | Motion Type | Doc. No. |
|---|---|---|---|---|---|
| 06-61617 | VA-E | Holmes v. AC&S, Inc. et al | CBS Corp. f/k/a Westinghouse Electric Corporation | Dismiss | 46 |
| 09-93727 | GA-S | Kelly v. General Electric Company et al | Anderson Kelly Linda Kelly Ingersoll Rand Company | Dismiss | 42 |
| 10-67134 | DE | Wood et al v. A.W. Chesterton Company et al | Crane Company | Dismiss | 189 |
| 10-69379 | CA-N | Floyd et al v. Air & Liquid Systems Corporation et al | John Crane, Inc. | Dismiss | 241 |
| 11-66391 | AL-N | Childress v. 3M et al | Saint-Gobain Abrasives Inc, F/K/A Norton Company | Dismiss | 244 |
| 11-67281 | LA-E | Vedros et al v. Northrop Grumman Shipbuilding, Inc. et al | Northrop Grumman Shipbuilding, Inc. | Dismiss | 73 |
| 11-67750 | RI | Knowles et al v. A.W. Chesterton Company et al | Laura Knowles Wilford Knowles | Dismiss | 53 |
| 11-67807 | NC-W | Mcswain v. Basf Catalysts Llc et al | Eastern Magnesia Talc Company Basf Catalysts Llc | Dismiss | 24 |
| 12-60157 | NC-W | Sellers v. Air & Liquid Systems Corporation et al | William Powell Company | Dismiss | 55 |
| 12-60163 | NY-S | Leong et al v. Air & Liquid Systems Corporation et al | Plaintiff(s) | Dismiss | 36 |
| 12-60167 | CA-N | Deuyour v. Bf Goodrich Company et al | John Crane, Inc. | Dismiss | 12 |

2

*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT D

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIEL DEUYOUR, | Consolidated MDL Docket No. 875 |
| Plaintiff, | E.D. PA Case No. 2:12-cv-60167 |
| | *Honorable Eduardo C. Robreno, Jr.* |
| vs. | Transferor Court: Northern District of |
| BF GOODRICH COMPANY, et al., | California Civil Action No.: 3:12-cv-03096 |
| Defendants. | |

**DEFENDANT JOHN CRANE INC.'S NOTICE OF MOTION AND MOTION
TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP 12(b)(6)**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT**, in above-referenced Court, defendant

John Crane Inc. ("JCI") will and hereby does move this Court for an order dismissing the

complaint of plaintiff DANIEL DEUYOUR ("plaintiff") (COMPLAINT FOR DAMAGES,

hereinafter identified as "Complaint") for failure to state a claim upon which relief can be

granted pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6).

Plaintiff's Complaint consists of nothing more than legal and factual

conclusions, and fails to allege any specific facts as to causation or the entitlement to

punitive damages, and therefore fails to state a claim for which relief can be granted.

JCI will therefore request that the Court dismiss plaintiffs' Complaint in its entirety.

Alternatively, JCI requests that the Court dismiss each and every cause of action

individually. Likewise, plaintiff's Complaint is devoid of any facts which would

substantiate an award of punitive damages, warranting dismissal of this claim for

damages as a matter of law.

This motion is based upon the authority of FRCP 12(b)(6); Bell Atlantic

Corp. v. Twombly (2007) 550 U.S. 544; and Ashcroft v. Iqbal (2009) 129 S.Ct. 1937, as

well as this notice; the attached memorandum of points and authorities; the declaration

of Nicole T. Roberts and all exhibits thereto, all filed concurrently herewith; and on the files and records of this Court.

Dated: July 12, 2012.

HASSARD BONNINGTON LLP

By: _____ /s/ Nicole T. Roberts _____
Robert L. Nelder
CA State Bar No. 125426
E-mail: rln@hassard.com

Nicole T. Roberts, Esq.
CA State Bar No. 203789
E-mail: ntr@hassard.com

HASSARD BONNINGTON LLP
Two Embarcadero Center, Suite 1800
San Francisco, California  94111-3941
Telephone: (415) 288-9800
FAX: (415) 288-9802

Attorneys for Defendant
JOHN CRANE INC.

## CERTIFICATE OF SERVICE

**CASE NAME:**      **Daniel Deuyour v. BF Goodrich Company, et al.**

**COURT:**      **United States District Court, Eastern District of Pennsylvania**

**CASE NUMBER:**      **2:12-cv-60167**

    1.    At the time of service I was over 18 years of age and not a party to this action.

    2.    My business address is Two Embarcadero Center, Suite 1800, San Francisco, CA 94111.

    3.    July 13, 2012, I served the following documents:

DEFENDANT JOHN CRANE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP 12(b)(6);

DEFENDANT JOHN CRANE INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP 12(b)(6);

DECLARATION OF NICOLE T. ROBERTS IN SUPPORT OF DEFENDANT JOHN CRANE INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP 12(b)(6); and

[PROPOSED] ORDER GRANTING DEFENDANT JOHN CRANE INC.'S FRCP 12(b)(6) MOTION TO DISMISS

    4.    I served the documents on the **person(s)** below as follows:

  X   **By electronically** serving the document(s) described above via United States District Court Electronic Case Filing website (CM/ECF notification system) on the recipients designated on the electronic service list that is located on the Pacer website, and these documents are now available for viewing and downloading from the ECF system.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:   July 13, 2012.

*Michele Smith*
Michele Smith

-3-

DEFENDANT JOHN CRANE INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FRCP 12(b)(6)

P:\Wdocs\HBMAIN\01850\01502\00687841.DOC-71312

*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT E

Michael C. Eyerly (CA SBN 178693)
eyerly@dbelegal.com
Eric Brown, Esq. (*pro hac vice* admission pending)
brown@dbelegal.com
Stephen T. Blackburn, Esq. (*pro hac vice* admission pending)
blackburn@dbelegal.com
DEBLASE BROWN EYERLY LLP
10990 Wilshire Boulevard, Suite 1060
Los Angeles, California 90024
Telephone: (310) 575-9955
Facsimile: (310) 575-9919

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | ) ) ) ) | MDL DOCKET NO. 875 EDPA Case No. 2:12-cv-60167-ER |
| This Document Relates To: | ) ) ) | |
| DANIEL DEUYOUR, | ) ) | Transferred from the U.S. Dist. Court, District of Delaware |
| Plaintiff, | ) ) ) | Civil Case No. C-12-3096 MEJ |
| vs. | ) ) ) | **STATUS CONFERENCE STATEMENT AND SUGGESTION OF THE DEATH OF PLAINTIFF DANIEL DEUYOUR** |
| BF GOODRICH COMPANY, et al., | ) ) ) | |
| Defendants | ) ) | Date:  August 30, 2012 |
| | ) ) ) ) ) | Time:  3:30 p.m. Location:  Courtroom 15A |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiff Daniel Deuyour passed away on August 1, 2012.

On August 13, 2012, prior to counsel learning of his death, Plaintiff's Statement of Case Status

pursuant to Administrative Order No. 12 was filed.  The family members are currently

contemplating the filing of a wrongful death complaint.


Dated: August 23, 2012                          DEBLASE BROWN EYERLY LLP



                                                _____
                                                Michael C. Eyerly (SBN 178693)
                                                Eric Brown (SBN 229622)
                                                Stephen T. Blackburn (SBN 232887)
                                                10990 Wilshire Boulevard, Suite 1060
                                                Los Angeles, CA 90024
                                                Telephone: (310) 575-9955
                                                Facsimile: (310) 575-9919

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
CERTIFICATE OF SERVICE**

*Deuyour vs. BF Goodrich Company, et al.*

I hereby certify that on the 23RD day of August, 2012, a copy of the foregoing document has been served via ECF upon all counsel of record in the Court's electronic filing system.

I am employed in the County of Los Angeles, State of California, I am over the age of 18 years and not a party to the within action. My business address is 10990 Wilshire Blvd, Suite 1060, Los Angeles, CA 90024. Michael Eyerly, Esq. is a member of the California Bar, and I made the service referred to below at his direction.

On August 23, 2012, I caused to be served the foregoing:

**STATUS CONFERENCE STATEMENT AND SUGGESTION OF THE
DEATH OF PLAINTIFF DANIEL DEUYOUR**

and a copy of this document to the interested parties herein as follows:

[ ]   VIA PERSONAL DELIVERY

[ ]   VIA FACSIMILE

By transmittal from a facsimile machine whose fax number is **SEE
ATTACHED SERVICE LIST**

[X]   VIA U.S. MAIL: TO ALL COUNSEL – SEE ATTACHED
SERVICE LIST

By placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States postal service at Los Angeles, California

[X] STATE: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

[X] FEDERAL: I declare the above to be true and correct.

Executed in Los Angeles, California.

DATE:  AUGUST 23, 2012

CARRIE ARDOIN

PROOF OF SERVICE
W:\Delegan\Clients\Deuyour, Daniel\I. Pleadings\I. Service\PROOF OF SERVICE NOTICE OF DEATH.doc

1

2

3

## **SERVICE LIST**

4

5

6  ZACHARIAH DAVID BAKER
   K&L GATES
7  4 EMBARCADERO CTR. STE 1200
   SAN FRANCISCO, CA 94111
8  *Attorneys for Crane Co.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

I am employed in the County of San Francisco, State of California.  I am over the age of

eighteen years and am not a party to this action.  My business address is Tucker Ellis LLP, 135

Main Street, Suite 700, San Francisco, California  94105, in said County and State.

On May 29, 2013, I served the following document(s) entitled **DEFENDANT**

**CARRIER CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO VACATE**

**CONDITIONAL TRANSFER ORDER NO. 549** as follows:

X   **VIA ELECTRONIC SERVICE** by causing such documents to be served on the
interested parties to this action by submitting an electronic version of the documents via
ECF website.

X   **BY MAIL:**  By placing ( ) the original(s); (**X**) a true copy thereof enclosed in a sealed
envelope(s) addressed as above, and placing each for collection and mailing on that date
following ordinary business practices.  I am readily familiar with this business's practice
for collecting and processing correspondence for mailing.  On the same day that
correspondence is placed for collection and mailing, it is deposited in the ordinary course
of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope
with postage fully prepaid.

**See Service List**

☑   (**FEDERAL**)  I declare under penalty of perjury under the laws of the State of California
that the foregoing is true and correct.

Executed on May 29, 2013 at San Francisco, California.

*Anna Pasynkova*

Anna Pasynkova

## <u>SERVICE LIST</u>

CBS Corporation

c/o CSC Corporation Service Company

2710 Gateway Oaks Drive

#150N

Sacramento, CA 95833

Foster Wheeler Energy Corporation

c/o CT Corporation

818 W Seventh Street

Los Angeles, CA 90017

Georgia-Pacific LLC

c/o CT Corporation

818 W Seventh Street

Los Angeles, CA 90017

Honeywell International Inc.

c/o CSC Corporation Service Company

2710 Gateway Oaks Drive

#150N

Sacramento, CA 95833

Kelly-Moore Paint Company Inc.

Registered Agent of Process

987 Commercial Street

San Carlos, CA 94070

Luxaire Inc.

c/o The Prentice Hall Corporation System, Inc.

2710 Gateway Oaks Drive

Suite 150N

Sacramento, CA 95833


Shell Oil Company

c/o CT Corporation

818 W Seventh Street

Los Angeles, CA 90017


Union Carbide Corporation

c/o CT Corporation

818 W Seventh Street

Los Angeles, CA 90017


Yorke-Luxaire Inc.

c/o The Prentice Hall Corporation System, Inc.

2710 Gateway Oaks Drive

Suite 150N

Sacramento, CA 95833