*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT A

THIS CASE IS SUBJECT TO MANDATORY ELECTRONIC FILING PURSUANT TO AMENDED G.O. 158

1  Eric Brown, Esq. (229622)
   email: brown@dbelegal.com
2  Mike Eyerly, Esq. (178693)
   email: meyerly@dbelegal.com
3  Stephen T. Blackburn (SBN 232887)
   email: blackburn@dbelegal.com
4  Brian Maucotel, Esq. (SBN 274826)
   email: maucotel@dbelegal.com
5  DEBLASE BROWN EYERLY LLP
   10990 Wilshire Boulevard, Suite 1060
6  Los Angeles, California 90024
   Telephone: 310-575-9955
7  Facsimile: 310-575-9919

8
   Attorneys for Plaintiff
9

10

11

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

                     FOR THE COUNTY OF SAN FRANCISCO
13

14

15  DANIEL DEUYOUR,                        )  CASE NO.   CGC12 -276047
                                           )
16            Plaintiff,                    )
                                           )  COMPLAINT FOR PERSONAL
17        vs.                               )  INJURIES
                                           )
18  BF GOODRICH COMPANY;                   )  1.  Negligence
    CARRIER CORPORATION;                    )  2.  Products Liability
19  CBS CORPORATION, F/K/A VIACOM,          )  3.  Premises Owner/Contractor Liability
    INC., SUCCESSOR BY MERGER TO CBS        )
20  CORPORATION F/K/A WESTINGHOUSE          )
    ELECTRIC CORPORATION;                   )
21  Crane Co. , individually and as successor )
    in interest to Chapman Valves;          )         BY FAX
22  The Dexter Corp. individually and as     )
    successor in interest to Dexter Aerospace, )
23  Hysol, Dexter-Hysol and Dexter Hysol    )
    Aerospace, Inc.;                        )
24  Eaton Corporation individually and as    )
    successor in interest to Cutler-Hammer, )
25  Inc.;                                    )
    FOSTER WHEELER ENERGY                    )
26  CORPORATION;                             )
    GENERAL ELECTRIC COMPANY;               )
27  Georgia-Pacific LLC, F/K/A GEORGIA       )
    PACIFIC CORPORATION, SUCCESSOR          )
28  IN INTEREST TO BESTWELL GYPSUM          )
    COMPANY;                                 )
    The Goodyear Tire & Rubber Company;     )

                                -1-

COMPLAINT

1  The Goodyear Tire & Rubber Company;
2  HONEYWELL INTERNATIONAL INC.,
   INDIVIDUALLY AND AS SUCCESSOR
3  INTEREST TO ALLIED SIGNAL, INC.
   AND BENDIX CORPORATION;
4  IMO Industries, Inc. (Individually and as
   successor in interest to Delaval Steam
5  Turbine, Inc.);
   INGERSOLL-RAND COMPANY,
6  individually and as successor in interest to
   The Aldrich Company;
7  Jerguson Gage & Valve Company;
   JOHN CRANE, INC.;
8  KELLY-MOORE PAINT COMPANY, INC.;
   PARKER HANIFFIN CORPORATION,
9  individually and as successor in interest to
   Sacoma Sierra Company;
10 PNEUMO-ABEX, LLC (Individually and as
   successor-in-interest to ABEX
11 CORPORATION f/k/a American Brake
   Shoe Company f/k/a American Brake Shoe
12 and Foundry Company including the
   American Brakebloc Division, f/k/a The
13 American Brake Materials Corporation);
   SAN FRANCISCO GRAVEL COMPANY;
14 Shell Oil Company;
   SOCO WEST, INC. (f/k/a Brenntag West
15 Inc., f/k/a SoCo-Lynch Corporation, f/k/a
   SoCo-Western Chemical Corporation; f/k/a
16 Stinnes-Western Chemical Corporation;
   UNION Carbide Corporation;
17 WARREN PUMPS, LLC;
   YORK INTERNATIONAL CORPORATION,
18 individually and as successor-in-interest to
   Central Environmental Systems, Inc., f/k/a
19 Borg-Warner Central Environmental
   Systems, Inc.; York-Luxaire, Inc.; Luxaire,
20 Inc., and The C.A. Olsen Manufacturing
   Company and d/b/a "Moncrief Furnaces"
21 d/b/a York Heating & Air Conditioning;

22 and DOES 1-300,

23          Defendants.
24  ——————————————————————
25
26      COMES NOW Plaintiff DANIEL DEUYOUR, for causes of action against
27 Defendants, complain and allege as follows:
28

## GENERAL ALLEGATIONS

1.      This case is being brought by DANIEL DEUYOUR as a result of DANIEL DEUYOUR having been diagnosed with an asbestos-related disease caused by exposure to asbestos.  Throughout this complaint use of the term "Plaintiff" shall, where appropriate, mean both DANIEL DEUYOUR unless the context of its use clearly means one or the other.

2.      Asbestos litigation has long been designated complex in SAN FRANCISCO County for several historical reasons, including the number of parties, the length, duration and complexity of anticipated deposition testimony of fact, lay and expert witnesses, the wide-ranging medical issues that may or may not be involved, the complexity of industrial hygiene and governmental regulations that may or may not be involved, and the anticipated proportionate amount of economic, non-economic and punitive damages sought for plaintiff's anticipated death and the loss of consortium for his dependants.

3.      The average life expectancy of a patient diagnosed with a severe asbestos-related disease (mesothelioma and/or lung cancer) is extremely short.  Some patients diagnosed with such disease only live weeks or months following their diagnosis. Further, as their diseases progress, their prognosis slowly worsens such that their ability to participate in trial may diminish drastically.  Often, plaintiffs in these cases must present videotaped deposition testimony taken at the outset of their cases, as their medical condition has worsened so severely that even traveling a few miles to the courthouse is impossible.  Plaintiffs in such cases routinely bring motions for trial preference and often stipulate to expedited and/or shortened time periods for responsive pleadings in order to permit the granting of trial dates in less than 120 days.

4.      In this matter, Plaintiff DANIEL DEUYOUR was diagnosed with lung cancer on or about May 16, 2011. Because of Plaintiff's work history, and the numerous asbestos products to which he is alleged to have been exposed, Plaintiffs have named numerous manufacturers of asbestos products, premises owners, contractors, and suppliers of asbestos products and fibers as Defendants.

-3-

5.     The true names and/or capacities, whether individual, corporate, associate, governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and when the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon allege that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiffs, as hereinafter alleged, either through said Defendant's own conduct or through the conduct of its agents, servants or employees, or due to the ownership, lease or sale of the instrumentality causing the injury, or in some other manner.

6.     Plaintiffs are informed and believe, and thereon allege that at all times mentioned herein, Defendants, and each of them, were the agents, servants, employees and/or joint venturers of their co-Defendants and were, as such, acting within the scope, course, and authority of said agency, employment and/or joint venture, in that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring or each and every other Defendant as the agent, servant, employee and/or joint venturer.

7.     Plaintiffs were California residents during a substantial period of Plaintiff DANIEL DEUYOUR's asbestos exposures, upon which Plaintiffs' claims are based.

8.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants BF GOODRICH COMPANY; CARRIER CORPORATION; CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION; Crane Co. , Individually and as successor in interest to Chapman Valves;The Dexter Corp. individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc.; Eaton Corporation individually and as successor in interest to Cutler-Hammer, Inc.;FOSTER WHEELER ENERGY CORPORATION;

COMPLAINT

1  GENERAL ELECTRIC COMPANY; Georgia-Pacific LLC, F/K/A GEORGIA PACIFIC

2  CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY;

3  The Goodyear Tire & Rubber Company; HONEYWELL INTERNATIONAL INC.,

4  INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND

5  BENDIX CORPORATION; IMO Industries, Inc. (Individually and as successor in interest to

6  Delaval Steam Turbine, Inc.); INGERSOLL-RAND COMPANY, individually and as

7  successor in interest to The Aldrich Company; Jerguson Gage & Valve Company;

8  JOHN CRANE, INC.; KELLY-MOORE PAINT COMPANY, INC.;PARKER HANIFFIN

9  CORPORATION, individually and as successor in interest to Sacoma Sierra Company;

10 PNEUMO-ABEX, LLC (Individually and as successor-in-interest to ABEX CORPORATION

11 f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company

12 including the American Brakebloc Division, f/k/a The American Brake Materials

13 Corporation); SAN FRANCISCO GRAVEL COMPANY; Shell Oil Company; SOCO WEST,

14 INC. (f/k/a Brenntag West Inc., f/k/a SoCo-Lynch Corporation, f/k/a SoCo-Western

15 Chemical Corporation; f/k/a Stinnes-Western Chemical Corporation; UNION Carbide

16 Corporation; WARREN PUMPS, LLC; YORK INTERNATIONAL CORPORATION,

17 individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a

18 Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and

19 The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Heating

20 & Air Conditioning;" "Shuck's Auto Supply," and "Kragen Auto Parts";and DOES 1-300, ,

21 inclusive, are corporations organized and existing under and by virtue of the laws of the

22 State of California, or the laws of some other state of the United States of America, or

23 some foreign jurisdiction, and that said Defendants were authorized to do and are doing

24 business in the State of California, and that said Defendants have regularly conducted

25 business in the State of California.

26      9.    At all times mentioned above, Defendants, and each of them, were engaged

27 in the business of manufacturing, fabricating, designing, assembling, distributing, leasing,

28 buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and

1    advertising a certain substance, the generic name of which is asbestos, and other products

2    containing said substance.

3         10.    Plaintiff DANIEL DEUYOUR was exposed to Defendants' asbestos and

4    asbestos containing products contributing to and causing the development of lung cancer.

5    Plaintiff was exposed to Defendants' asbestos and asbestos containing products including

6    but not limited to through his work as a boatswains mate in the US Navy from 1970-1974,

7    through automotive friction work in the 1970's through the 1990's,  through personal

8    construction work in the 1970's, and through his work as a laborer and aircraft mechanic

9    and technician in the 1970's through the 1990's.   Plaintiff DANIEL DEUYOUR suffers from

10   lung cancer and each of Defendants' asbestos and asbestos containing products that

11   entered his body was a substantial factor in bringing about, prolonging, or aggravating

12   Plaintiff's lung cancer. The asbestos and asbestos containing products Plaintiff was

13   exposed to were manufactured or supplied by a named Defendant and DOES 1-300.

14        11.    Federal Courts lack jurisdiction over this action; removal is therefore

15   improper.  Specifically, removal based on diversity jurisdiction is unavailing due to the

16   presence of a Defendant that resides in California.  In addition, no claim of admiralty or

17   maritime law is raised, Plaintiffs sue no foreign state or agency, and Defendants lack a

18   colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1).

19   Venue is proper in San Francisco County, Superior Court of California.

20

21                    **FIRST CAUSE OF ACTION**
                          (Negligence)
22                    (As Against all Defendants)

23        12.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,

24   each and every allegation contained in each paragraph above.

25        13.    At all times herein mentioned, each of the named Defendants and DOES 1

26   through 300 was the successor, successor in business, successor in product line or a

27   portion thereof, assign, predecessor, predecessor in business, predecessor in product line

28   or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial

-6-

1  owner of or member in an entity researching, studying, manufacturing, fabricating,

2  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

3  supplying, selling, inspecting, servicing, installing, contracting for installation, repairing,

4  marketing, warranting, re-branding, manufacturing for others, packaging and advertising as

5  certain product, namely asbestos, and other products containing asbestos. Said entities

6  shall hereinafter collectively be called "Alternate Entities." Each of the herein named

7  Defendants is liable for the tortious conduct of each successor, successor in business,

8  successor in product line or a portion thereof, assign, predecessor in product line or a

9  portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned

10  entity, or entity that it was a member of, or funded, that researched, studied, manufactured,

11  fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for

12  sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired,

13  marketed, warranted, re-branded, manufactured for others and advertised a certain

14  product, namely asbestos, and other products containing asbestos. The following

15  Defendants, and each of them, are liable for the acts of each and every "Alternate Entity,"

16  in that there has been a virtual destruction of Plaintiffs' remedies against each such

17  "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line,

18  or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused

19  the destruction of Plaintiffs' remedies against each such "Alternate Entity;" each such

20  Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;"

21  and that each such Defendant enjoys the goodwill originally attached to each such

22  "Alternate Entity."

23

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION |

-7-

COMPLAINT

| | |
|---|---|
| Crane Co. | Individually and as successor in interest to Chapman Valves |
| The Dexter Corp. | individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc. |
| Eaton Corporation | individually and as successor in interest to Cutler-Hammer, Inc. |
| GEORGIA PACIFIC, LLC | F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY |
| HONEYWELL INTERNATIONAL INC. | INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION |
| IMO Industries, Inc. | (Individually and as successor in interest to Delaval Steam Turbine, Inc.) |
| INGERSOLL-RAND COMPANY | individually and as successor in interest to The Aldrich Company |

-8-

| PARKER HANIFFIN CORPORATION | individually and as successor in interest to Sacoma Sierra Company |
|---|---|
| PNEUMO-ABEX, LLC | Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) |
| SOCO WEST, INC. | f/k/a Brenntag West, Inc., f/k/a Soco-Lynch Corporation, f/k/a Soco-Western Chemical Corporation, f/k/a Stinnes-Western Chemical Corporation |
| YORK INTERNATIONAL CORPORATION | individually and as successor in interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc., York-Luxaire, Inc., Luxaire, Inc., and The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Hearing & Air Conditioning; |

14.     Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein,

-9-

1  Defendants, their "Alternate Entities," and each of them negligently and carelessly

2  researched, tested or failed to test, manufactured, designed, developed, distributed,

3  labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified,

4  serviced, used, and sold a certain substance, the generic name of which is asbestos, and

5  other products containing said substance, in that said substance was capable of causing

6  and did, in fact, proximately cause personal injuries to users and consumers thereof while

7  being used in manner reasonably foreseeable, thereby rendering said substance unsafe

8  and dangerous for use by the consumer, users, or bystanders thereof, and others to whom

9  Defendants owe a duty, including Plaintiff DANIEL DEUYOUR.

10        15.    Plaintiff DANIEL DEUYOUR is a worker who, for a substantial length of time,

11  used, handled, and was otherwise exposed to Defendants' asbestos and asbestos

12  products, in a manner that was reasonably foreseeable, while he was working as described

13  in Paragraph 6 above.

14        16.    As a direct and proximate result of the above-referenced conduct of the

15  Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to

16  said asbestos caused severe and permanent injury to Plaintiff's lungs and body, including,

17  but not limited to the disease lung cancer.

18        17.    On or about May 16, 2011, Plaintiff DANIEL DEUYOUR was diagnosed with

19  the asbestos-related disease lung cancer. Prior to that date, Plaintiff, who retired for

20  reasons not related to his asbestos-related disease, did not know, nor did he have reason

21  to know, that he had contracted this disease related to his exposure to asbestos. Prior to

22  said date, Plaintiff was not aware that exposure to asbestos presented any risk of injury

23  and/or disease to him, and had not been advised or informed by anyone that he could

24  contract, nor indeed did contract, any disease, sickness or injury as a result of working in

25  the vicinity of asbestos.

26        18.    Plaintiffs are informed and believe, and thereupon allege, that lung cancer is

27  a vicious, painful and often fatal malignancy of the lung, and that said disease results from

28  exposure to asbestos and asbestos products over a period of time.

COMPLAINT

19. As a direct and proximate result of the aforesaid conduct of the Defendants, their "Alternate Entities," and each of them Plaintiff DANIEL DEUYOUR has suffered, and continues to suffer, severe and permanent injuries to his person, body and health, including, but not limited to, the disease lung cancer, all to his general damage in a sum within the jurisdictional limits of this court.

20. As a direct and proximate result of the aforesaid conduct of the Defendants, their "Alternate Entities," and each of them Plaintiffs were compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat Plaintiff DANIEL DEUYOUR, and did incur medical, hospital and professional incidental expenses, and Plaintiffs are informed and believe and thereupon allege that by reason of said injuries, Plaintiff DANIEL DEUYOUR will necessarily incur additional like expenses for an indefinite period of time in the future, and when said amounts are ascertained, Plaintiffs will allege said amounts.

21. At all times herein mentioned, Defendants, their "Alternate Entities," and each of them were aware that the original gaskets and packing supplied with their equipment would need to be removed and replaced with new gaskets and packing during ordinary operation and maintenance of their equipment. Heat and pressure generated by operation would affect the original and replacement gaskets and packing - e.g., making them brittle, friable and not reusable, making replacement necessary and dangerous. It was foreseeable that the process of removing old gaskets and packing, and replacing them with the new materials during ordinary maintenance operations would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air. It was also foreseeable that Defendant's equipment needed to be insulated with asbestos containing thermal insulation materials and that the negligent design of Defendants' equipment through its ordinary operation caused the degradation of asbestos containing thermal insulation and the foreseeable removal of these insulation materials and application of new insulation materials, which would cause the disturbance of asbestos and/or asbestos containing materials, releasing asbestos into the air.

-11-

22.   On or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that asbestos and asbestos-containing products were and are hazardous to the health and safety of Plaintiff DANIEL DEUYOUR, and others in Plaintiff's position working in close proximity with such materials.  Specifically, Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the following information:

(a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on the Lung* (London: H.M. Stationary Office) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause pulmonary fibrosis in exposed individuals and discussed processes by which asbestos dust is generated and methods for dust suppression.  As such, at least as of 1930, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause a debilitating potentially lethal disease, that there was a dose-response relationship between the level of asbestos exposure and risk of contracting disease,  and that disease prevention requires the suppression or elimination of asbestos containing dust.  In 1933, E.R.A. Merewether's *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed Defendants, their "Alternate Entities," and each of them, that exposure to asbestos containing dust for a period of less than 5 years can cause the lung disease asbestosis, which can be deadly.

(b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J. Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death.  As such, at

-12-

least as of 1955, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause lung cancer, a potentially lethal disease.

(c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural Mesothelioma and Asbestos Exposure in the North Western Cape Province* (Br. J. Ind. Med., Vol. 17) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death. The article confirmed a causal association between asbestos exposure and mesothelioma, and noted that even low-level, non-occupational exposures to asbestos can cause mesothelioma. As such, at least as of 1960, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause mesothelioma, a lethal form of cancer, in those directly exposed to asbestos containing dust as well as those secondarily exposed in a residential setting.

23.    With intent to deceive Plaintiff DANIEL DEUYOUR, and others in Plaintiff's position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain financial, business, and other advantages, the following acts occurred:

(a) Defendants, their "Alternate Entities," and each of them, did not label any of the aforementioned asbestos and asbestos containing materials and products with information regarding the hazards of such materials and products to the health and safety of Plaintiff and others in Plaintiff's position working in close proximity with such materials until 1964, when certain of such materials were labeled by some, but not all, of Defendants, their "Alternate Entities," and each of them, herein when the knowledge of such hazards was existing and known to Defendants, their "Alternate

1   Entities," and each of them, since on or before 1930. By not labeling such materials

2   as to their said hazards, Defendants, their "Alternate Entities," and each of them,

3   caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff to work in

4   close proximity to such materials when in fact it was not true and Defendants, their

5   "Alternate Entities," and each of them, did not believe it to be true.

6   (b) Defendants, their "Alternate Entities," and each of them, suppressed information

7   relating the danger of use of the aforementioned materials by requesting the

8   suppression of information to the Plaintiff and the general public concerning the

9   dangerous nature of the aforementioned materials to workers, by not allowing such

10  information to be disseminated in a manner which would have given general notice

11  to the public and knowledge of the hazardous nature thereof when Defendants, their

12  "Alternate Entities," and each of them, were bound to disclose such information;

13  (c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned

14  products and materials to Plaintiff's employer and others without advising Plaintiff

15  and others of the dangers of use of such materials to persons working in close

16  proximity thereto when Defendants, their "Alternate Entities," and each of them,

17  knew of such dangers, and had a duty to disclose such dangers all as set forth

18  herein. By said conduct, Defendants, their "Alternate Entities," and each of them,

19  caused to be positively asserted to Plaintiff that which was not true and that which

20  Defendants, their "Alternate Entities," and each of them, had not reasonable ground

21  for believing to be true, to wit, that it was safe for Plaintiff to work in close proximity

22  to such materials;

23  (d) Defendants, their "Alternate Entities," and each of them, suppressed from

24  Plaintiff medical and scientific data and knowledge of the contents of the Lanza

25  report. Although bound to disclose it, Defendants, their "Alternate Entities," and

26  each of them influenced A.J. Lanza to change his report, the altered version of

27  which was published in Public Health Reports, Volume 50 at page 1 in 1935,

28  thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants,

-14-

there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

(e) Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Plaintiff at this time;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff. Such facts did mislead Plaintiff and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff the true facts concerning such knowledge of danger, which Defendants, their "Alternate

-15-

Entities," and each of them, were bound to disclose;

(g) Defendants, their "Alternate Entities," and each of them, failed to warn Plaintiff and others of the nature of asbestos and asbestos containing materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h) Defendants, their "Alternate Entities," and each of them, failed to provide Plaintiff with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Plaintiff and others applying and installing such material;

(i) Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Plaintiff the true nature of the industrial exposure of Plaintiff and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them, also concealed from Plaintiff and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j) Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos and asbestos containing materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff and Plaintiff's employers so that said physicians could examine, diagnose and treat Plaintiff and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were

1    under a duty to so inform and said failure was misleading; and

2    (k) Defendants, their "Alternate Entities," and each of them, failed to provide

3    adequate information to physicians and surgeons retained by Plaintiff's employers

4    and their predecessor companies, for purposes of making physical examinations of

5    Plaintiff and other employees as to the true nature of the risk of such materials and

6    exposure thereto when they in fact possessed such information and had a duty to

7    disclose it.

8        24.    On or before 1930, and thereafter, said Defendants, their "Alternate Entities,"

9    and each of them were aware that users of asbestos and asbestos containing products, as

10   well as members of the general public who would be exposed to asbestos and asbestos

11   products, had no knowledge or information indicating that asbestos could cause injury, and

12   said Defendants, their "Alternate Entities," and each of them, knew that the users of

13   asbestos and asbestos products, as well as members of the general public who were

14   exposed to asbestos and asbestos products, would assume, and in fact did assume, that

15   exposure to asbestos and asbestos products was safe, when in fact said exposure was

16   extremely hazardous to human life.

17       25.    With said knowledge, said Defendants, their "Alternate Entities," and each of

18   them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,

19   package, use, and advertise asbestos and asbestos containing products without

20   attempting to protect or warn users or bystanders about the high risk of injury or death

21   resulting from exposure to asbestos and asbestos products. Rather than attempting to

22   protect users and workers from, or warn workers and users of, the high risk of injury or

23   death resulting from exposure to asbestos and asbestos products, Defendants, their

24   "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said

25   risk, fraudulently, consciously and actively concealed and suppressed said knowledge from

26   members of the general public that asbestos and asbestos products were unsafe for all

27   reasonably foreseeable use, with the knowledge of the falsity of said implied

28   representations.

-17-

COMPLAINT

26.     Despite the above referenced historical knowledge of said Defendants, their "Alternate Entities," and each of them, concerning the extreme hazards of asbestos, Defendants negligently, carelessly, and with a willful and conscious disregard of the rights and safety of others failed to adequately test, research, label, design, distribute, sell, inspect, repair, use, modify or advertise their asbestos and asbestos containing products in an effort to reduce or eliminate the potential that their products would cause deadly diseases in users, bystanders, and other exposed individuals.

27.     The above referenced conduct of said Defendants, their "Alternate Entities," and each of them was motivated by the financial interest of said Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos containing products. In pursuance of said financial motivation, said Defendants consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos containing products, and were in fact consciously willing to permit asbestos and asbestos containing products to cause injury to workers and users thereof, and persons exposed thereto, including Plaintiff DANIEL DEUYOUR.

28.     An officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, with advance knowledge of the extreme health hazard posed by asbestos and asbestos containing products, did, with conscious disregard for the rights and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify such acts, including but not limited to Defendants' failure to adequately research, test, or label their asbestos or asbestos-containing products and Defendants' attendant willingness to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products then known by Defendants to be hazardous to human health.  As such, an officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take reasonable and necessary efforts to reduce or eliminate the potential that the asbestos and asbestos containing products Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,

1    repaired, packaged, used and advertised would cause deadly diseases, such as lung

2    cancer, in users, bystanders, and other exposed individuals.

3        29.    The above-referenced conduct of said Defendants, their "Alternate Entities,"

4    and each of them was and is willful, malicious, outrageous and/or in conscious disregard

5    and indifference to the rights and safety of users of said asbestos and asbestos containing

6    products, including Plaintiff DANIEL DEUYOUR. Defendants, their "Alternate Entities," and

7    each of them are guilty of oppression, fraud, or malice and engaged in conduct which was

8    intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

9    on by the Defendants with a willful and conscious disregard of the rights and safety of

10   others. Defendants, their "Alternate Entities," and each of them subjected Plaintiffs to cruel

11   and unjust hardship in conscious disregard of their rights and engaged in intentional

12   misrepresentation, deceit, or concealment of a material fact known to the Defendants with

13   the intention on the part of the Defendants of thereby depriving Plaintiffs of property or

14   legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by

15   way of punishing Defendants, seek punitive damages, according to proof.

16

17                        **SECOND CAUSE OF ACTION**
                               (Strict Liability)
18                          (As Against all Defendants)

         30.    Plaintiffs hereby incorporate by reference, as though fully set forth herein,
19
     each and every allegation contained in each of the paragraphs above.
20
         31.    At all times mentioned herein, Defendants, their "Alternate Entities," and each
21
     of them researched, manufactured, tested or failed to test, designed, labeled, distributed,
22
     advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain
23
     substance, the generic name of which is asbestos, and other products containing said
24
     substance which Defendants knew were to be used without inspection for defects and
25
     which substance contained design and manufacturing defects, in that same was capable of
26
     causing and did, in fact, cause personal injuries to users, consumers, and bystanders while
27
     being used in a reasonably foreseeable manner, thereby rendering such asbestos and
28
     asbestos containing products unsafe and dangerous for use by users, consumers, and

-19-

1  bystanders.

2      32.    As a direct and proximate result of the above described conduct by

3  Defendants, their "Alternate Entities," and each of them, Plaintiff DANIEL DEUYOUR

4  suffered severe and permanent injuries to his person, as alleged hereinabove.

5      33.    At all times mentioned herein, the asbestos and products containing said

6  substance discussed above failed to perform as safely as an ordinary consumer would

7  expect when used in an intended or reasonably foreseeable manner, and the risk of

8  danger inherent in asbestos and asbestos containing products outweighs the benefits of

9  said substance and products.

10      34.    At all times mentioned herein, the foreseeable use of the asbestos and

11  products containing said substance discussed above involved a substantial danger not

12  readily recognizable to an ordinary user, consumer, or bystander, but which danger was

13  known or knowable to Defendants, their "Alternate Entities," and each of them, and

14  Defendants failed to adequately warn of the substantial danger.

15      35.    As a direct and proximate result of the above described conduct by

16  Defendants, their "alternate entities," and each of them, Plaintiff DANIEL DEUYOUR

17  suffered severe and permanent injuries to his person, as alleged hereinabove.

18      36.    An officer, director, or managing agent of Defendants, their "Alternate

19  Entities," and each of them, with advance knowledge of the extreme health hazard posed

20  by asbestos and asbestos containing products, did, with conscious disregard for the rights

21  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or

22  ratify such acts, including but not limited to Defendants' failure to adequately research, test,

23  or label their asbestos or asbestos-containing products and Defendants' attendant

24  willingness to continue to manufacture, design, distribute, market, sell, supply, instal,

25  inspect, repair, package, use, and advertise asbestos and asbestos containing products

26  then known by Defendants to be hazardous to human health.  As such, an officer, director,

27  or managing agent of Defendants, their "Alternate Entities," and each of them, authorized

28  or ratified Defendants' failure to take reasonable and necessary efforts to address the

-20-

COMPLAINT

1  design and manufacturing defects in the asbestos and asbestos containing products that

2  Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed,

3  inspected, repaired, packaged, used and advertised.

4      37.   The above-referenced conduct of said Defendants, their "Alternate Entities,"

5  and each of them was and is willful, malicious, outrageous and/or in conscious disregard

6  and indifference to the rights and safety of users of said asbestos and asbestos containing

7  products, including Plaintiff DANIEL DEUYOUR. Defendants, their "Alternate Entities," and

8  each of them are guilty of oppression, fraud, or malice and engaged in conduct which was

9  intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

10  on by the Defendants with a willful and conscious disregard of the rights and safety of

11  others. Defendants, their "Alternate Entities," and each of them subjected Plaintiffs to cruel

12  and unjust hardship in conscious disregard of their rights and engaged in intentional

13  misrepresentation, deceit, or concealment of a material fact known to the Defendants with

14  the intention on the part of the Defendants of thereby depriving Plaintiffs of property or

15  legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by

16  way of punishing Defendants, seek punitive damages, according to proof.

17

18              **THIRD CAUSE OF ACTION**
                (Premises Owner/Contractor Liability)
19              (Against All Defendants and DOES 1-300)

20      38.   Plaintiffs hereby incorporate by reference, as though fully set forth herein,

21  each and every allegation contained in each of the above.

22      39.   At all times mentioned herein, the Premises Owner/Contractor Liability

23  Defendants, their "Alternate Entities," and each of them, owned, leased, maintained,

24  managed, and/or controlled the premises at which Plaintiff DANIEL DEUYOUR was

25  exposed to asbestos and asbestos containing products.

26      40.   Prior to and at said times and places, said Premises Owner/Contractor

27  Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and

28  asbestos containing products to be constructed, installed, maintained, used, supplied,

1   replaced, repaired and/or removed on their respective premises, by their own workers

2   and/or by employing various contractors, and caused the release of dangerous quantities

3   of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe

4   condition to Plaintiff DANIEL DEUYOUR and other persons exposed to said asbestos

5   fibers while present at said premises.

6      41.   At all times mentioned herein, said Premises Owner/Contractor Liability

7   Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary

8   and reasonable care should have known, that the foregoing conditions and activities

9   created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and

10  personal injury to Plaintiff DANIEL DEUYOUR and other workers or persons so exposed

11  present on each of the aforesaid respective premises.

12     42.   At all times relevant herein, Plaintiff DANIEL DEUYOUR entered said

13  premises and used or occupied each of said respective premises as intended and for each

14  of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In

15  so doing, Plaintiff was exposed to dangerous quantities of asbestos fibers released into the

16  ambient air by the aforesaid hazardous conditions and activities managed, maintained,

17  initiated, and/or otherwise created, controlled, or caused by said Premises

18  Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them.

19     43.   Plaintiff DANIEL DEUYOUR at all times was unaware of the hazardous

20  condition or the risk of personal injury created by the aforesaid presence and use of

21  asbestos products and materials on said premises.

22     44.   At all times mentioned herein, said Premises Owner/Contractor Liability

23  Defendants, their "Alternate Entities," and each of them, remained in control of the

24  premises where Plaintiff DANIEL DEUYOUR was performing his work.

25     45.   At all times mentioned herein, the Premises Owner/Contractor Liability

26  Defendants, their "Alternate Entities," and each of them, owed to Plaintiffs and others

27  similarly situated a duty to exercise ordinary care in the management of such premises in

28  order to avoid exposing workers such as Plaintiff DANIEL DEUYOUR to an unreasonable

1   risk of harm and to avoid causing injury to said person.

2       46.     At all times mentioned herein, said Premises Owner/Contractor Liability

3   Defendants, their "Alternate Entities," and each of them, negligently failed to maintain,

4   manage, inspect, survey, or control said premises or to abate or correct, or to warn Plaintiff

5   of the existence of the aforesaid dangerous conditions and hazards on said premises.

6       47.     At all times mentioned herein, said Premises Owner/Contractor Liability

7   Defendants, their "Alternate Entities," and each of them, should have recognized that the

8   work of said contractors, identified above in Paragraph 40, would create during the

9   progress of the work, dangerous, hazardous, and unsafe conditions which could or would

10  harm Plaintiff DANIEL DEUYOUR and others unless special precautions were taken.

11      48.     In part, Plaintiff DANIEL DEUYOUR was exposed to dangerous quantities of

12  asbestos fibers by reason of such contractors' failure to take necessary precautions.

13      49.     The work of contractors on premises controlled by the Premises

14  Owner/Contractor Defendants created an unsafe premise and an unsafe work place by

15  reason of the release of dangerous quantities of asbestos fibers.

16      50.     The unsafe premise or work place was created, in part, by the negligent

17  conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said

18  negligent conduct includes but is not limited to:

19          (a) Failure to warn about the hazards of asbestos dusts;

20          (b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust

21          into the premises;

22          (c) Failure to remove asbestos containing dust on the premises through the use of

23          ventilation or appropriate means;

24          (d) Failure to provide adequate breathing protection, i.e., approved respirators or

25          masks to those exposed to the release of asbestos dust;

26          (e) Failure to inspect and/or test the air for the presence of asbestos fibers;

27          (f) Failure to provide medical monitoring to those exposed to asbestos dust.

28      51.     The Premises Owner/Contractor Defendants' duty to maintain and provide

-23-

1  safe premises, a safe place to work, and to warn of dangerous conditions are

2  non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code

3  §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated

4  thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any

5  breach of said duties whether by themselves or others.

6       52.    Prior to and at said times and places, said Premises Owner/Contractor

7  Liability Defendants, their "Alternate Entities," and each of them were subject to certain

8  ordinances, statutes, and other government regulations promulgated by the United States

9  Government, the State of California, and others, including but not limited to the General

10  Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the

11  California Administrative Code under the Division of Industrial Safety, Department of

12  Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous

13  Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as

14  documented for asbestos and other toxic substances under Appendix A, Table 1 of said

15  Safety Orders; additionally, California Health & Safety Code §40200, et seq., which

16  empowers the California Air Quality Management Districts to promulgate regulations

17  covering emission standards for hazardous air pollutants. Such state and federal standards

18  required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities,"

19  and each of them, to provide specific safeguards or precautions to prevent or reduce the

20  inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants

21  failed to provide the required safeguards and precautions. Defendants' violations of said

22  codes include but are not limited to:

23      (a) Failing to comply with statutes and allowing ambient levels of airborne asbestos

24      fiber to exceed the permissible/allowable levels with regard to the aforementioned

25      statutes;

26      (b) Failing to segregate work involving the release of asbestos dusts;

27      (c) Failing to suppress asbestos dust using prescribed ventilation techniques;

28      (d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

(e) Failing to warn or educate Plaintiff DANIEL DEUYOUR or others regarding asbestos on the premises;

(f) Failing to provide approved respiratory protection devices;

(g) Failing to ensure "approved" respiratory protection devices were used properly;

(h) Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i) Failing to provide adequate housekeeping and clean-up of the work place;

(j) Failing to properly warn of the hazards associated with asbestos as required by statute;

(k) Failing to properly report renovation and disturbance of asbestos containing materials;

(l) Failing to have an asbestos removal supervisor as required by regulation;

(m) Failing to get approval for renovation as required by statutes; and

(n) Failing to maintain records as required by statute.

53.     Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, were the "statutory employer" of Plaintiff DANIEL DEUYOUR as defined by the California Labor Code and California case law.

54.     Plaintiff DANIEL DEUYOUR at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances, or statutes.

55.     At all times mentioned herein, Plaintiff DANIEL DEUYOUR was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

56.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the

1    aforesaid hazardous conditions to which they were exposed on the premises, and that

2    such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

3       57.     As a legal consequence of the foregoing, Plaintiff DANIEL DEUYOUR

4    developed the asbestos-related disease lung cancer, which has caused great injury and

5    disability as previously set forth, and Plaintiffs have suffered damages as herein alleged.

6       58.     An officer, director, or managing agent of Premises Owner/Contractor Liability

7    Defendants, their "Alternate Entities," and each of them, with advance knowledge of the

8    extreme health hazard posed by asbestos and asbestos containing products, did, with

9    conscious disregard for the rights and safety of others, commit an act of oppression, fraud,

10    or malice, or did authorize or ratify such acts, including but not limited to Defendants'

11    failure to provide workers with an adequately safe work environment and Defendants'

12    attendant willingness to continue to construct, instal, maintain, use, supply, replace, repair

13    and/or remove asbestos and asbestos containing products, thereby generating airborne

14    asbestos dust to which Plaintiff DANIEL DEUYOUR was exposed.  As such, an officer,

15    director, or managing agent of Premises Owner/Contractor Liability Defendants, their

16    "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take

17    reasonable and necessary efforts to ensure that workers such as Plaintiff DANIEL

18    DEUYOUR were not exposed to toxic asbestos dust on their premises.

19       59.     The above-referenced conduct of said Premises Owner/Contractor Liability

20    Defendants, their "Alternate Entities," and each of them, was and is willful, malicious,

21    outrageous and/or in conscious disregard and indifference to the rights and safety of users

22    of said asbestos and asbestos containing products, including Plaintiff DANIEL DEUYOUR.

23    Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of

24    them, are guilty of oppression, fraud, or malice and engaged in conduct which was

25    intended by the Defendants to cause injury to the Plaintiffs or conduct which was carried

26    on by the Defendants with a willful and conscious disregard of the rights and safety of

27    others. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and

28    each of them, subjected Plaintiffs to cruel and unjust hardship in conscious disregard of

1    their rights and engaged in intentional misrepresentation, deceit, or concealment of a

2    material fact known to the Defendants with the intention on the part of the Defendants of

3    thereby depriving Plaintiffs of property or legal rights or otherwise causing injury. Plaintiffs

4    therefore, for the sake of example and by way of punishing Defendants, seek punitive

5    damages, according to proof.

6        WHEREFORE, Plaintiff prays judgment against Defendants, and each of them, in

7    an amount to be proven at trial in each individual case, as follows:

8        1. General damages, according to proof;

9        2. Damages for medical and related expenses, according to proof;

10        3. Damages for loss of earning capacity, according to proof;

11        4. Damages for loss of earnings, according to proof;

12        5. Damages for Plaintiffs' other economic losses, according to proof;

13        6. Exemplary or punitive damages, according to proof;

14        7.Prejudgment interest, according to proof;

15        8. Costs of suit incurred herein; and

16        9. Such other and further relief as this Court may deem just and proper, including

17    costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related

18    provisions of law.

19

20    DATED: May 16, 2012            DEBLASE BROWN EYERLY LLP

21

22                               By: _____

23                                   Michael Eyerly

                                      Attorneys for Plaintiffs

24

25

26

27

28

-27-

```
   ####  ### ###   ### #
      #     #   #   #    ##
      #     #   #   #
      #     # #        ####
 #    #    ###              #
 #    #     #   #           #
 #    #     #   #   ##      #
  ###      ###  ## # ###
```

```
Job : 38
Date: 5/23/2013
Time: 11:17:11 AM
```