*DEUYOUR v BF GOODRICH COMPANY, et al.*

# EXHIBIT B

1   Patrick DeBlase (SBN 167138)
    Eric Brown (SBN 229622)
2   Michael C. Eyerly (SBN 178693)
    Stephen T. Blackburn (SBN 232887)
3   DEBLASE BROWN EYERLY LLP
    680 S. Santa Fe Avenue
4   Los Angeles, CA 90021
    Telephone: (310) 575-9955
5   Facsimile: (310) 575-9919

6

7   Attorneys for Plaintiffs

8

9

10                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                        FOR THE COUNTY OF LOS ANGELES

12                                          B C 5 0 0 0 1 1

13   LAURIE DEUYOUR INDIVIDUALLY AND AS     )  CASE NO.
     SUCCESSOR IN INTEREST TO DANIEL        )
14   DEUYOUR, DECEASED, NICHOLAS DEUYOUR    )
     AND DESIREE DEUYOUR;                   )  COMPLAINT FOR WRONGFUL DEATH
15                                          )
                                            )  1.  Negligence
16                                          )  2.  Products Liability
                                            )  3.  Premises Owner/Contractor Liability
17              PLAINTIFFS,                  )
                                            )
18        VS.                               )
                                            )  [COMPLEX ASBESTOS
19   BF GOODRICH COMPANY;                   )  LITIGATION–SUBJECT
     CARRIER CORPORATION;                   )  TO THE GENERAL
20   CBS CORPORATION, F/K/A VIACOM,         )  ORDERS CONTAINED
     INC., SUCCESSOR BY MERGER TO CBS       )  IN FILE NO. C700000]
21   CORPORATION F/K/A WESTINGHOUSE         )
     ELECTRIC CORPORATION;                  )
22   THE DEXTER CORP. INDIVIDUALLY AND AS   )  BY FAX
     SUCCESSOR IN INTEREST TO DEXTER        )
23   AEROSPACE, HYSOL, DEXTER-HYSOL AND     )
     DEXTER HYSOL AEROSPACE, INC.;          )
24   EATON CORPORATION INDIVIDUALLY AND AS  )
     SUCCESSOR IN INTEREST TO               )
25   CUTLER-HAMMER, INC.;                   )
     FOSTER WHEELER ENERGY                  )
26   CORPORATION;                           )
     GENERAL ELECTRIC COMPANY;              )
27   GEORGIA-PACIFIC LLC, F/K/A GEORGIA     )
     PACIFIC CORPORATION, SUCCESSOR         )
28   IN INTEREST TO BESTWELL GYPSUM         )
     COMPANY;                               )
     THE GOODYEAR TIRE & RUBBER COMPANY;    )

                                   -1-

                      COMPLAINT FOR WRONGFUL DEATH

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

JAN 28 2013

John A. Clarke, Executive Officer/Clerk
By _____ Deputy
SHAUNYA WESLEY

1  HONEYWELL INTERNATIONAL INC.,
2  INDIVIDUALLY AND AS SUCCESSOR
   INTEREST TO ALLIED SIGNAL, INC. AND
3  BENDIX CORPORATION;
   IMO INDUSTRIES, INC. (INDIVIDUALLY AND AS
4  SUCCESSOR IN INTEREST TO DELAVAL STEAM
   TURBINE, INC.);
5  INGERSOLL-RAND COMPANY,
   INDIVIDUALLY AND AS SUCCESSOR IN INTEREST
6  TO THE ALDRICH COMPANY;
   JERGUSON GAGE & VALVE COMPANY;
7  KELLY-MOORE PAINT COMPANY, INC.;
   MECHANICAL DRIVES & BELTING, F/K/A
8  L.A. RUBBER COMPANY;
   PARKER HANIFFIN CORPORATION,
9  INDIVIDUALLY AND AS SUCCESSOR IN INTEREST
   TO SACOMA SIERRA COMPANY;
10 PNEUMO-ABEX, LLC (INDIVIDUALLY AND AS
   SUCCESSOR-IN-INTEREST TO ABEX
11 CORPORATION F/K/A AMERICAN BRAKE
   SHOE COMPANY F/K/A AMERICAN BRAKE
12 SHOE AND FOUNDRY COMPANY ;INCLUDING
   THE AMERICAN BRAKEBLOC DIVISION, F/K/A
13 THE AMERICAN BRAKE MATERIALS
   CORPORATION)
14 SAN FRANCISCO GRAVEL COMPANY
   SHELL OIL COMPANY;
15 SOCO WEST, INC. (F/K/A BRENNTAG WEST
   INC., F/K/A SOCO-LYNCH CORPORATION,
16 F/K/A SOCO-WESTERN CHEMICAL
   CORPORATION; F/K/A STINNES-WESTERN
17 CHEMICAL CORPORATION;
   UNION CARBIDE CORPORATION;
18 WARREN PUMPS, LLC;
   YORK INTERNATIONAL CORPORATION,
19 INDIVIDUALLY AND AS
   SUCCESSOR-IN-INTEREST TO CENTRAL
20 ENVIRONMENTAL SYSTEMS, INC., F/K/A
   BORG-WARNER CENTRAL ENVIRONMENTAL
21 SYSTEMS, INC.; YORK-LUXAIRE, INC.;
   LUXAIRE, INC., AND THE C.A. OLSEN
22 MANUFACTURING COMPANY AND D/B/A .
   "MONCRIEF FURNACES" D/B/A YORK HEATING
23 & AIR CONDITIONING;

24 AND DOES 1-300.

25

26          Defendants.

27 _____

28

COMPLAINT FOR WRONGFUL DEATH

1   COME NOW Plaintiffs Laurie Deuyour Individually and as Successor in Interest to

2   DANIEL DEUYOUR, Deceased, Nicholas Deuyour and Desiree Deuyour for causes of

3   action against Defendants, and each of them, complain and allege as follows:

4

5                                    **GENERAL ALLEGATIONS**

6       1.      This case is being brought by Plaintiffs Laurie Deuyour, Nicholas Deuyour

7   and Desiree Deyour, as a result of DANIEL DEUYOUR having been diagnosed with an

8   asbestos-related disease caused by exposure to asbestos.  Throughout this complaint use

9   of the term "Plaintiffs" shall, where appropriate, mean Laurie Deuyour, Nicholas Deuyour

10  and Desiree Deyour unless the context of its use clearly means only the Decedent, DANIEL

11  DEUYOUR.

12      2.      Asbestos litigation has long been designated complex in Los Angeles County

13  for several historical reasons, including the number of parties, the length, duration and

14  complexity of anticipated deposition testimony of fact, lay and expert witnesses, the

15  wide-ranging medical issues that may or may not be involved, the complexity of industrial

16  hygiene and governmental regulations that may or may not be involved, and the anticipated

17  proportionate amount of economic, non-economic and punitive damages sought for

18  Decedent DANIEL DEUYOUR's death and the loss for his dependants.

19      3.      The average life expectancy of a patient diagnosed with a severe

20  asbestos-related disease ( and/or lung cancer) is extremely short.  Some patients

21  diagnosed with such disease only live weeks or months following their diagnosis.  Further,

22  as their diseases progress, their prognosis slowly worsens such that their ability to

23  participate in trial may diminish drastically.  Often, plaintiffs in these cases must present

24  videotaped deposition testimony taken at the outset of their cases, as their medical

25  condition has worsened so severely that even traveling a few miles to the courthouse is

26  impossible.

27      4.      In this matter, Decedent DANIEL DEUYOUR was diagnosed with lung cancer

28  on or about May 16, 2011 and died as a result on August 1, 2012 . Because of Decedent's

-3-

1   work history, and the numerous asbestos products to which he is alleged to have been
2   exposed, Plaintiffs have named numerous manufacturers of asbestos products, premises
3   owners, contractors, and suppliers of asbestos products and fibers as Defendants.

4       5.      The true names and/or capacities, whether individual, corporate, associate,
5   governmental, or otherwise, of Defendants, DOES 1 through 300, inclusive, are unknown to
6   Plaintiffs at this time; who, therefore, sue said Defendants by such fictitious names; and
7   when the true names and capacities of said Defendants have been ascertained, Plaintiff
8   will amend this complaint accordingly. Plaintiffs are informed and believe, and thereon
9   allege that each Defendant designated herein as a DOE is responsible, negligently or in
10  some other actionable manner, for the events and happenings hereinafter referred to, and
11  caused injuries and damages proximately thereby to Plaintiff, as hereinafter alleged, either
12  through said Defendant's own conduct or through the conduct of its agents, servants or
13  employees, or due to the ownership, lease or sale of the instrumentality causing the injury,
14  or in some other manner.

15      6.      Plaintiffs are informed and believe, and thereon allege that at all times
16  mentioned herein, Defendants, and each of them, were the agents, servants, employees
17  and/or joint venturers of their co-Defendants and were, as such, acting within the scope,
18  course, and authority of said agency, employment and/or joint venture, in that each and
19  every Defendant, as aforesaid, when acting as a principal, was negligent in the selection
20  and hiring or each and every other Defendant as the agent, servant, employee and/or joint
21  venturer.

22      7.      DECEDENT was a California resident during a substantial period of Decedent
23  DANIEL DEUYOUR's asbestos exposures, upon which Plaintiffs' claims are based.

24      8.      Plaintiffs are informed and believe, and thereon allege, that at all times
25  mentioned herein, Defendants BF GOODRICH COMPANY; CARRIER CORPORATION;
26  CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS
27  CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION;

28

-4-

The Dexter Corp. individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc.; Eaton Corporation individually and as successor in interest to Cutler-Hammer, Inc.; FOSTER WHEELER ENERGY CORPORATION; GENERAL ELECTRIC COMPANY; Georgia-Pacific LLC, F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY; The Goodyear Tire & Rubber Company; HONEYWELL INTERNATIONAL INC., INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION; IMO Industries, Inc. (Individually and as successor in interest to Delaval Steam Turbine, Inc.); INGERSOLL-RAND COMPANY, individually and as successor in interest to The Aldrich Company; Jerguson Gage & Valve Company; KELLY-MOORE PAINT COMPANY, INC.; MECHANICAL DRIVES & BELTING, f/k/a L.A. Rubber Company; PARKER HANIFFIN CORPORATION, individually and as successor in interest to Sacoma Sierra Company; PNEUMO-ABEX, LLC (Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company ;including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) SAN FRANCISCO GRAVEL COMPANY Shell Oil Company; SOCO WEST, INC. (f/k/a Brenntag West Inc., f/k/a SoCo-Lynch Corporation, f/k/a SoCo-Western Chemical Corporation; f/k/a Stinnes-Western Chemical Corporation; UNION Carbide Corporation; WARREN PUMPS, LLC; YORK INTERNATIONAL CORPORATION, individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and The C.A. Olsen Manufacturing Company and d/b/a "Moncrief Furnaces" d/b/a York Heating & Air Conditioning; and DOES 1-300., are corporations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state of the United States of America, or some foreign jurisdiction, and that said Defendants were authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the State of California.

COMPLAINT FOR WRONGFUL DEATH

9.     At all times mentioned above, Defendants, and each of them, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, leasing, buying, selling, inspecting, servicing, installing, repairing, marketing, warranting, and advertising a certain substance, the generic name of which is asbestos, and other products containing said substance.

10.     Decedent DANIEL DEUYOUR was exposed to Defendants' asbestos and asbestos containing products contributing to and causing the development of lung cancer. Decedent was exposed to Defendants' asbestos and asbestos containing products including but not limited to through his work as a boatswains mate in the US Navy from 1970-1974, through automotive friction work in the 1970's through the 1990's, through personal construction work in the 1970's, and through his work as a laborer and aircraft mechanic and technician in the 1970's through the 1990's. Decedent DANIEL DEUYOUR suffered from lung cancer and death. Each of Defendants' asbestos and asbestos containing products that entered his body was a substantial factor in bringing about, prolonging, or aggravating Decedent's lung cancer. The asbestos and asbestos containing products Decedent was exposed to were manufactured or supplied by a named Defendant and DOES 1-300.

11.     Federal Courts lack jurisdiction over this action; removal is therefore improper. Specifically, removal based on diversity jurisdiction is unavailing due to the presence of a Defendant that resides in California. In addition, no claim of admiralty or maritime law is raised, Plaintiff sues no foreign state or agency, and Defendants lack a colorable federal defense that would warrant removal pursuant to 28 U.S.C. 1442(a)(1). Venue is proper in Los Angeles County, Superior Court of California.

## FIRST CAUSE OF ACTION

### (Negligence)

### (As Against all Defendants)

12.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each paragraph above.

-6-

13.     At all times herein mentioned, each of the named Defendants and DOES 1 through 300 was the successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in an entity researching, studying, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging and advertising as certain product, namely asbestos, and other products containing asbestos. Said entities shall hereinafter collectively be called "Alternate Entities." Each of the herein named Defendants is liable for the tortious conduct of each successor, successor in business, successor in product line or a portion thereof, assign, predecessor in product line or a portion thereof, parent, subsidiary, whole or partial owner, or wholly or partially owned entity, or entity that it was a member of, or funded, that researched, studied, manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others and advertised a certain product, namely asbestos, and other products containing asbestos. The following Defendants, and each of them, are liable for the acts of each and every "Alternate Entity," in that there has been a virtual destruction of Plaintiffs' remedies against each such "Alternate Entity;" Defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "Alternate Entity;" Defendants, and each of them, caused the destruction of Plaintiffs' remedies against each such "Alternate Entity;" each such Defendant has the ability to assume the risk-spreading role of each such "Alternate Entity;" and that each such Defendant enjoys the goodwill originally attached to each such "Alternate Entity."

| DEFENDANT | ALTERNATE ENTITY |
| --- | --- |
| CBS CORPORATION | F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A |

| | |
|---|---|
| | WESTINGHOUSE ELECTRIC CORPORATION; |
| The Dexter Corp. | individually and as successor in interest to Dexter Aerospace, Hysol, Dexter-Hysol and Dexter Hysol Aerospace, Inc.; |
| Eaton Corporation | individually and as successor in interest to Cutler-Hammer, Inc.; |
| Georgia-Pacific LLC | F/K/A GEORGIA PACIFIC CORPORATION, SUCCESSOR IN INTEREST TO BESTWELL GYPSUM COMPANY; |
| HONEYWELL INTERNATIONAL INC | INDIVIDUALLY AND AS SUCCESSOR INTEREST TO ALLIED SIGNAL, INC. AND BENDIX CORPORATION; |
| | IMO Industries, Inc. (Individually and as successor in interest to Delaval Steam Turbine, Inc.); |
| INGERSOLL-RAND COMPANY | individually and as successor in interest to The Aldrich Company; |
| MECHANICAL DRIVES & BELTING | (f/k/a L.A. Rubber Company) |
| PARKER HANIFFIN CORPORATION, | individually and as successor in interest to Sacoma Sierra Company; |
| PNEUMO-ABEX, LLC | (Individually and as successor-in-interest to ABEX CORPORATION f/k/a American Brake Shoe Company f/k/a American Brake Shoe and Foundry Company ;including the American Brakebloc Division, f/k/a The American Brake Materials Corporation) |
| SOCO WEST, INC. | (F/K/A BRENNTAG WEST, INC., F/K/A SOCO-LYNCH CORPORATION, F/K/A SOCO-WESTERN CHEMICAL CORPORATION, F/K/A STINNES-WESTERN CHEMICAL CORPORATION); |
| YORK INTERNATIONAL CORPORATION, | individually and as successor-in-interest to Central Environmental Systems, Inc., f/k/a Borg-Warner Central Environmental Systems, Inc.; York-Luxaire, Inc.; Luxaire, Inc., and The C.A. Olsen Manufacturing |

-8-

| | Company and d/b/a "Moncrief Furnaces" d/b/a York Heating & Air Conditioning |
|---|---|

14.    Defendants, their "Alternate Entities," and each of them had a duty to use reasonable care in manufacturing their products and to warn the customer, user, or bystander that their products were dangerous and unsafe. At all times mentioned herein, Defendants, their "Alternate Entities," and each of them negligently and carelessly researched, tested or failed to test, manufactured, designed, developed, distributed, labeled, advertised, marketed, warranted, inspected, repaired, fabricated, modified, serviced, used, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance, in that said substance was capable of causing and did, in fact, proximately cause personal injuries to users and consumers thereof while being used in manner reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the consumer, users, or bystanders thereof, and others to whom Defendants owe a duty, including Decedent DANIEL DEUYOUR.

15.    Decedent DANIEL DEUYOUR is a worker who, for a substantial length of time, used, handled, and was otherwise exposed to Defendants' asbestos and asbestos products, in a manner that was reasonably foreseeable, while he was working as described in Paragraph 6 above.

16.    As a direct and proximate result of the above-referenced conduct of the Defendants, their "Alternate Entities," and each of them, as aforesaid, said exposure to said asbestos caused severe and permanent injury to Decedent's lungs and body, including, but not limited to the disease lung cancer.

17.    In May 2011, Decedent DANIEL DEUYOUR was diagnosed with the asbestos-related disease lung cancer. Prior to that date, Decedent, who retired for reasons not related to his asbestos-related disease, did not know, nor did he have reason to know, that he had contracted this disease related to his exposure to asbestos. Prior to said date, Decedent was not aware that exposure to asbestos presented any risk of injury and/or disease to him, and had not been advised or informed by anyone that he could contract,

-9-

1   nor indeed did contract, any disease, sickness or injury as a result of working in the vicinity

2   of asbestos.

3        18.   Plaintiffs are informed and believe and thereupon allege, that lung cancer is a

4   vicious, painful and often fatal malignancy of the lung, and that said disease results from

5   exposure to asbestos and asbestos products over a period of time.

6        19.   As a direct and proximate result of the aforesaid conduct of the Defendants,

7   their "Alternate Entities," and each of them Decedent DANIEL DEUYOUR has suffered,

8   severe and permanent injuries to his person, body and health, including, but not limited to,

9   the disease lung cancer and his resulting death, all to his general damage in a sum within

10   the jurisdictional limits of this court.

11        20.   As a direct and proximate result of the aforesaid conduct of the Defendants,

12   their "Alternate Entities," and each of them Plaintiff was compelled to and did employ the

13   services of hospitals, surgeons, physicians, nurses, and the like, to care for and treat

14   Decedent DANIEL DEUYOUR, and did incur medical, hospital and professional incidental

15   expenses.

16        21.   At all times herein mentioned, Defendants, their "Alternate Entities," and each

17   of them were aware that the original gaskets and packing supplied with their equipment

18   would need to be removed and replaced with new gaskets and packing during ordinary

19   operation and maintenance of their equipment. Heat and pressure generated by operation

20   would affect the original and replacement gaskets and packing - e.g., making them brittle,

21   friable and not reusable, making replacement necessary and dangerous. It was foreseeable

22   that the process of removing old gaskets and packing, and replacing them with the new

23   materials during ordinary maintenance operations would cause the disturbance of asbestos

24   and/or asbestos containing materials, releasing asbestos into the air. It was also

25   foreseeable that Defendant's equipment needed to be insulated with asbestos containing

26   thermal insulation materials and that the negligent design of Defendants' equipment

27   through its ordinary operation caused the degradation of asbestos containing thermal

28   insulation and the foreseeable removal of these insulation materials and application of new

insulation materials, which would cause the disturbance of asbestos and/or asbestos

-10-

containing materials, releasing asbestos into the air.

22.    On or before 1930, the Defendants, their "Alternate Entities," and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that asbestos and asbestos-containing products were and are hazardous to the health and safety of Decedent DANIEL DEUYOUR, and others in Decedent's position working in close proximity with such materials.  Specifically, Defendants, their "Alternate Entities," and each of them, knew, or had a duty to know, the following information:

(a) E.R.A. Merewether & C.W. Price's 1930 *Report on Effects of Asbestos Dust on the Lung* (London: H.M. Stationary Office) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause pulmonary fibrosis in exposed individuals and discussed processes by which asbestos dust is generated and methods for dust suppression.  As such, at least as of 1930, Defendants, their "Alternate Entities," and each of them, knew or had the duty to know that exposure to asbestos dust could cause a debilitating potentially lethal disease, that there was a dose-response relationship between the level of asbestos exposure and risk of contracting disease,  and that disease prevention requires the suppression or elimination of asbestos containing dust.  In 1933, E.R.A. Merewether's *Memorandum on Asbestosis* (Tubercle, Vol. XIV — 1932-33, December) informed Defendants, their "Alternate Entities," and each of them, that exposure to asbestos containing dust for a period of less than 5 years can cause the lung disease asbestosis, which can be deadly.

(b) R. Doll's 1955 article, *Mortality from Lung Cancer in Asbestos Workers* (Br. J. Ind. Med., Vol. 12) put manufacturers, designers, distributors, marketers, sellers, suppliers, installers, inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos containing products on notice that exposure to asbestos dust can cause lung cancer in exposed individuals, resulting in death.  As such, at least

-11-

1      as of 1955, Defendants, their "Alternate Entities," and each of them, knew or had the

2      duty to know that exposure to asbestos dust could cause lung cancer, a potentially

3      lethal disease.

4      (c) J.C. Wagner, C.A. Sleggs, & P. Marchland's 1960 article *Diffuse Pleural and*

5      *Asbestos Exposure in the North Western Cape Province* (Br. J. Ind. Med., Vol. 17)

6      put manufacturers, designers, distributors, marketers, sellers, suppliers, installers,

7      inspectors, repairmen, packagers, users, and advertisers of asbestos and asbestos

8      containing products on notice that exposure to asbestos dust can cause  in exposed

9      individuals, resulting in death.  The article confirmed a causal association between

10      asbestos exposure and , and noted that even low-level, non-occupational exposures

11      to asbestos can cause .  As such, at least as of 1960, Defendants, their "Alternate

12      Entities," and each of them, knew or had the duty to know that exposure to asbestos

13      dust could cause , a lethal form of cancer, in those directly exposed to asbestos

14      containing dust as well as those secondarily exposed in a residential setting.

15        23.      With intent to deceive Decedent DANIEL DEUYOUR, and others in his

16 position, and with intent that he and such others should be and remain ignorant of such

17 facts with intent to induce Decedent and such others to alter his and their positions to his

18 and their injury and/or risk and in order to gain financial, business, and other advantages,

19 the following acts occurred:

20      (a) Defendants, their "Alternate Entities," and each of them, did not label any of the

21      aforementioned asbestos and asbestos containing materials and products with

22      information regarding the hazards of such materials and products to the health and

23      safety of Decedent and others in Decedent's position working in close proximity with

24      such materials until 1964, when certain of such materials were labeled by some, but

25      not all, of Defendants, their "Alternate Entities," and each of them, herein when the

26      knowledge of such hazards was existing and known to Defendants, their "Alternate

27      Entities," and each of them, since on or before 1930. By not labeling such materials

28      as to their said hazards, Defendants, their "Alternate Entities," and each of them,

     caused to be suggested as a fact to Decedent that it was safe for Decedent to work

-12-

in close proximity to such materials when in fact it was not true and Defendants, their "Alternate Entities," and each of them, did not believe it to be true.

(b) Defendants, their "Alternate Entities," and each of them, suppressed information relating the danger of use of the aforementioned materials by requesting the suppression of information to the Decedent and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the hazardous nature thereof when Defendants, their "Alternate Entities," and each of them, were bound to disclose such information;

(c) Defendants, their "Alternate Entities," and each of them, sold the aforementioned products and materials to Decedent's employer and others without advising Decedent and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "Alternate Entities," and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "Alternate Entities," and each of them, caused to be positively asserted to Decedent that which was not true and that which Defendants, their "Alternate Entities," and each of them, had not reasonable ground for believing to be true, to wit, that it was safe for Decedent to work in close proximity to such materials;

(d) Defendants, their "Alternate Entities," and each of them, suppressed from Decedent medical and scientific data and knowledge of the contents of the Lanza report. Although bound to disclose it, Defendants, their "Alternate Entities," and each of them influenced A.J. Lanza to change his report, the altered version of which was published in Public Health Reports, Volume 50 at page 1 in 1935, thereby causing Decedent and others to be and remain ignorant thereof. Defendants, there "Alternate Entities," and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to users thereof;

-13-

(e) Defendants, their "Alternate Entities," and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute and other industry organizations which, for and on behalf of Defendants, their "Alternate Entities," and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Decedent by the suggestions and deceptions set forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers which arise from the lack of control of dust, and such information was suppressed from public dissemination from 1946 to a date unknown to Decedent at this time;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "Alternate Entities," and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "Alternate Entities," and each of them, herein. Between 1942 and 1950, the Defendants, their "Alternate Entities," and each of them suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Decedent. Such facts did mislead Decedent and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Decedent the true facts concerning such knowledge of danger, which Defendants, their "Alternate Entities," and each of them, were bound to disclose;

(g) Defendants, their "Alternate Entities," and each of them, failed to warn Decedent and others of the nature of asbestos and asbestos containing materials which were

dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "Alternate Entities," and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h) Defendants, their "Alternate Entities," and each of them, failed to provide Decedent with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to the Decedent and others applying and installing such material;

(i) Defendants, their "Alternate Entities," and each of them, when under a duty to so disclose, concealed from Decedent the true nature of the industrial exposure of Decedent and knew that Decedent and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis and/or cancer. Defendants, their "Alternate Entities," and each of them, also concealed from Decedent and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j) Defendants, their "Alternate Entities," and each of them, failed to provide information of the true nature of the hazards of asbestos and asbestos containing materials and that exposure to these materials would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Decedent and Decedent's employers so that said physicians could examine, diagnose and treat Decedent and others who were exposed to asbestos, despite the fact that Defendants, their "Alternate Entities," and each of them, were under a duty to so inform and said failure was misleading; and

(k) Defendants, their "Alternate Entities," and each of them, failed to provide

adequate information to physicians and surgeons retained by Decedent's employers and their predecessor companies, for purposes of making physical examinations of Decedent and other employees as to the true nature of the risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

24.     On or before 1930, and thereafter, said Defendants, their "Alternate Entities," and each of them were aware that users of asbestos and asbestos containing products, as well as members of the general public who would be exposed to asbestos and asbestos products, had no knowledge or information indicating that asbestos could cause injury, and said Defendants, their "Alternate Entities," and each of them, knew that the users of asbestos and asbestos products, as well as members of the general public who were exposed to asbestos and asbestos products, would assume, and in fact did assume, that exposure to asbestos and asbestos products was safe, when in fact said exposure was extremely hazardous to human life.

25.     With said knowledge, said Defendants, their "Alternate Entities," and each of them opted to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products without attempting to protect or warn users or bystanders about the high risk of injury or death resulting from exposure to asbestos and asbestos products. Rather than attempting to protect users and workers from, or warn workers and users of, the high risk of injury or death resulting from exposure to asbestos and asbestos products, Defendants, their "Alternate Entities," and each of them intentionally failed to reveal their knowledge of said risk, fraudulently, consciously and actively concealed and suppressed said knowledge from members of the general public that asbestos and asbestos products were unsafe for all reasonably foreseeable use, with the knowledge of the falsity of said implied representations.

26.     Despite the above referenced historical knowledge of said Defendants, their "Alternate Entities," and each of them, concerning the extreme hazards of asbestos, Defendants negligently, carelessly, and with a willful and conscious disregard of the rights

and safety of others failed to adequately test, research, label, design, distribute, sell, inspect, repair, use, modify or advertise their asbestos and asbestos containing products in an effort to reduce or eliminate the potential that their products would cause deadly diseases in users, bystanders, and other exposed individuals.

27.    The above referenced conduct of said Defendants, their "Alternate Entities," and each of them was motivated by the financial interest of said Defendants in the continuing, uninterrupted distribution and marketing of asbestos and asbestos containing products. In pursuance of said financial motivation, said Defendants consciously disregarded the safety of the users of, and persons exposed to, asbestos and asbestos containing products, and were in fact consciously willing to permit asbestos and asbestos containing products to cause injury to workers and users thereof, and persons exposed thereto, including Decedent DANIEL DEUYOUR.

28.    An officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, with advance knowledge of the extreme health hazard posed by asbestos and asbestos containing products, did, with conscious disregard for the rights and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify such acts, including but not limited to Defendants' failure to adequately research, test, or label their asbestos or asbestos-containing products and Defendants' attendant willingness to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair, package, use, and advertise asbestos and asbestos containing products then known by Defendants to be hazardous to human health. As such, an officer, director, or managing agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take reasonable and necessary efforts to reduce or eliminate the potential that the asbestos and asbestos containing products Defendants manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected, repaired, packaged, used and advertised would cause deadly diseases, such as lung cancer, in users, bystanders, and other exposed individuals.

29.    The above-referenced conduct of said Defendants, their "Alternate Entities,"

and each of them was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent DANIEL DEUYOUR. Defendants, their "Alternate Entities," and each of them are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Plaintiff or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.

## SECOND CAUSE OF ACTION

### (Strict Liability)

### (As Against all Defendants)

30.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each of the paragraphs above.

31.     At all times mentioned herein, Defendants, their "Alternate Entities," and each of them researched, manufactured, tested or failed to test, designed, labeled, distributed, advertised, marketed, warranted, inspected, repaired, offered for sale, and sold a certain substance, the generic name of which is asbestos, and other products containing said substance which Defendants knew were to be used without inspection for defects and which substance contained design and manufacturing defects, in that same was capable of causing and did, in fact, cause personal injuries to users, consumers, and bystanders while being used in a reasonably foreseeable manner, thereby rendering such asbestos and asbestos containing products unsafe and dangerous for use by users, consumers, and bystanders.

32.     As a direct and proximate result of the above described conduct by

1  Defendants, their "Alternate Entities," and each of them, Decedent DANIEL DEUYOUR
2  suffered severe and permanent injuries to his person, as alleged hereinabove.

3       33.    At all times mentioned herein, the asbestos and products containing said
4  substance discussed above failed to perform as safely as an ordinary consumer would
5  expect when used in an intended or reasonably foreseeable manner, and the risk of danger
6  inherent in asbestos and asbestos containing products outweighs the benefits of said
7  substance and products.

8       34.    At all times mentioned herein, the foreseeable use of the asbestos and
9  products containing said substance discussed above involved a substantial danger not
10  readily recognizable to an ordinary user, consumer, or bystander, but which danger was
11  known or knowable to Defendants, their "Alternate Entities," and each of them, and
12  Defendants failed to adequately warn of the substantial danger.

13       35.    As a direct and proximate result of the above described conduct by
14  Defendants, their "alternate entities," and each of them, Decedent DANIEL DEUYOUR
15  suffered severe and permanent injuries to his person, as alleged hereinabove.

16       36.    An officer, director, or managing agent of Defendants, their "Alternate
17  Entities," and each of them, with advance knowledge of the extreme health hazard posed .
18  by asbestos and asbestos containing products, did, with conscious disregard for the rights
19  and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify
20  such acts, including but not limited to Defendants' failure to adequately research, test, or
21  label their asbestos or asbestos-containing products and Defendants' attendant willingness
22  to continue to manufacture, design, distribute, market, sell, supply, instal, inspect, repair,
23  package, use, and advertise asbestos and asbestos containing products then known by
24  Defendants to be hazardous to human health.  As such, an officer, director, or managing
25  agent of Defendants, their "Alternate Entities," and each of them, authorized or ratified
26  Defendants' failure to take reasonable and necessary efforts to address the design and
27  manufacturing defects in the asbestos and asbestos containing products that Defendants
28  manufactured, designed, distributed, used, marketed, sold, supplied, installed, inspected,

-19-

repaired, packaged, used and advertised.

37.     The above-referenced conduct of said Defendants, their "Alternate Entities," and each of them was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent DANIEL DEUYOUR. Defendants, their "Alternate Entities," and each of them are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Plaintiff or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Defendants, their "Alternate Entities," and each of them subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiff therefore, for the sake of example and by way of punishing Defendants, seeks punitive damages, according to proof.

## THIRD CAUSE OF ACTION

(Premises Owner/Contractor Liability)

(As Against Defendants, and DOES 1-300)

38.     Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in each of the above.

39.     At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, owned, leased, maintained, managed, and/or controlled the premises at which Decedent DANIEL DEUYOUR was exposed to asbestos and asbestos containing products.

40.     Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, caused asbestos and asbestos containing products to be constructed, installed, maintained, used, supplied, replaced, repaired and/or removed on their respective premises, by their own workers

and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers into the ambient air and thereby created a hazardous and unsafe condition to Decedent DANIEL DEUYOUR and other persons exposed to said asbestos fibers while present at said premises.

41.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew or in the exercise of ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition and unreasonable risk of harm and personal injury to Decedent DANIEL DEUYOUR and other workers or persons so exposed present on each of the aforesaid respective premises.

42.    At all times relevant herein, Decedent DANIEL DEUYOUR entered said premises and used or occupied each of said respective premises as intended and for each of the respective Premises Owner/Contractor Liability Defendants' request and invitation. In so doing, Decedent was exposed to dangerous quantities of asbestos fibers released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them.

43.    Decedent DANIEL DEUYOUR at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials on said premises.

44.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, remained in control of the premises where Decedent DANIEL DEUYOUR was performing his work.

45.    At all times mentioned herein, the Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, owed to Decedent, Plaintiffs and others similarly situated a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Decedent DANIEL DEUYOUR to an unreasonable risk of harm and to avoid causing injury and death to said person.

46.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn Decedent of the existence of the aforesaid dangerous conditions and hazards on said premises.

47.    At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, should have recognized that the work of said contractors, identified above in Paragraph 40, would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm Decedent DANIEL DEUYOUR and others unless special precautions were taken.

48.    In part, Decedent DANIEL DEUYOUR was exposed to dangerous quantities of asbestos fibers by reason of such contractors' failure to take necessary precautions.

49.    The work of contractors on premises controlled by the Premises Owner/Contractor Defendants created an unsafe premise and an unsafe work place by reason of the release of dangerous quantities of asbestos fibers.

50.    The unsafe premise or work place was created, in part, by the negligent conduct of the contractors employed by the Premises Owner/Contractor Defendants. Said negligent conduct includes but is not limited to:

(a) Failure to warn about the hazards of asbestos dusts;

(b) Failure to suppress, reduce, or eliminate the release of asbestos containing dust into the premises;

(c) Failure to remove asbestos containing dust on the premises through the use of ventilation or appropriate means;

(d) Failure to provide adequate breathing protection, i.e., approved respirators or masks to those exposed to the release of asbestos dust;

(e) Failure to inspect and/or test the air for the presence of asbestos fibers;

(f) Failure to provide medical monitoring to those exposed to asbestos dust.

51.    The Premises Owner/Contractor Defendants' duty to maintain and provide

safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code §1708, and Labor Code §6400, et seq., or Health & Safety Code §40200, et seq., and regulations promulgated thereunder. Therefore, the Premises Owner/Contractor Defendants are responsible for any breach of said duties whether by themselves or others.

52. Prior to and at said times and places, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them were subject to certain ordinances, statutes, and other government regulations promulgated by the United States Government, the State of California, and others, including but not limited to the General Industry Safety Orders promulgated pursuant to California Labor Code §6400 and the California Administrative Code under the Division of Industrial Safety, Department of Industrial Relations, including but not limited to Title VIII, Group 9 (Control of Hazardous Substances), Article 81, §§4105, 4106, 4107 and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health & Safety Code §40200, et seq., which empowers the California Air Quality Management Districts to promulgate regulations covering emission standards for hazardous air pollutants. Such state and federal standards required said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust; and said Premises Owner/Contractor Liability Defendants failed to provide the required safeguards and precautions. Defendants' violations of said codes include but are not limited to:

(a) Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b) Failing to segregate work involving the release of asbestos dusts;

(c) Failing to suppress asbestos dust using prescribed ventilation techniques;

(d) Failing to suppress asbestos dust using prescribed "wet down" techniques;

(e) Failing to warn or educate Decedent DANIEL DEUYOUR or others regarding asbestos on the premises;

(f) Failing to provide approved respiratory protection devices;

(g) Failing to ensure "approved" respiratory protection devices were used properly;

(h) Failing to provide for an on-going health and screening program for those exposed to asbestos on the premises;

(i) Failing to provide adequate housekeeping and clean-up of the work place;

(j) Failing to properly warn of the hazards associated with asbestos as required by statute;

(k) Failing to properly report renovation and disturbance of asbestos containing materials;

(l) Failing to have an asbestos removal supervisor as required by regulation;

(m) Failing to get approval for renovation as required by statutes; and

(n) Failing to maintain records as required by statute.

53.     Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, were the "statutory employer" of Decedent DANIEL DEUYOUR as defined by the California Labor Code and California case law.

54.     Decedent DANIEL DEUYOUR at all times was unaware of the hazardous condition or the risk of personal injury created by Defendants' violation of said regulations, ordinances, or statutes.

55.     At all times mentioned herein, Decedent DANIEL DEUYOUR was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

56.     At all times mentioned herein, said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the

aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

57.     As a legal consequence of the foregoing, Decedent DANIEL DEUYOUR developed the asbestos-related disease lung cancer, which has caused great injury and disability as previously set forth, and Plaintiffs have suffered damages as herein alleged.

58.     An officer, director, or managing agent of Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, with advance knowledge of the extreme health hazard posed by asbestos and asbestos containing products, did, with conscious disregard for the rights and safety of others, commit an act of oppression, fraud, or malice, or did authorize or ratify such acts, including but not limited to Defendants' failure to provide workers with an adequately safe work environment and Defendants' attendant willingness to continue to construct, instal, maintain, use, supply, replace, repair and/or remove asbestos and asbestos containing products, thereby generating airborne asbestos dust to which Decedent DANIEL DEUYOUR was exposed. As such, an officer, director, or managing agent of Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, authorized or ratified Defendants' failure to take reasonable and necessary efforts to ensure that workers such as Decedent DANIEL DEUYOUR were not exposed to toxic asbestos dust on their premises.

59.     The above-referenced conduct of said Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, was and is willful, malicious, outrageous and/or in conscious disregard and indifference to the rights and safety of users of said asbestos and asbestos containing products, including Decedent DANIEL DEUYOUR. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, are guilty of oppression, fraud, or malice and engaged in conduct which was intended by the Defendants to cause injury to the Plaintiff or conduct which was carried on by the Defendants with a willful and conscious disregard of the rights and safety of others. Premises Owner/Contractor Liability Defendants, their "Alternate Entities," and each of them, subjected Plaintiff to cruel and unjust hardship in conscious disregard of their rights

and engaged in intentional misrepresentation, deceit, or concealment of a material fact known to the Defendants with the intention on the part of the Defendants of thereby depriving Plaintiff of property or legal rights or otherwise causing injury. Plaintiffs therefore, for the sake of example and by way of punishing Defendants, seek punitive damages, according to proof.

WHEREFORE, Plaintiffs pray judgment against Defendants, and each of them, in an amount to be proven at trial in each individual case, as follows:

1. General damages, according to proof;

2. Damages for medical and related expenses, according to proof;

3. Damages for loss of earning capacity, according to proof;

4. Damages for loss of earnings, according to proof;

5. Damages for Plaintiff's other economic losses, according to proof;

6. Exemplary or punitive damages, according to proof;

7. Plaintiff's children's damages for loss of consortium, according to proof;

8. Prejudgment interest, according to proof;

9. Costs of suit incurred herein; and

10. Such other and further relief as this Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. §998, C.C.P. §1032 and related provisions of law.

DATED: January 28, 2013                    DEBLASE BROWN EYERLY LLP

                                           By: _____

                                               Eric L. Brown

                                               Attorneys for Plaintiff

COMPLAINT FOR WRONGFUL DEATH