ATTACHMENT 1 of 1 of 9

FRANK D. POND (Bar No. 126191)
KEVIN D. JAMISON (Bar No. 222105)
kjamison@pondnorth.com
KIMBERLY L. RIVERA (Bar No. 205528)
krivera@pondnorth.com
MARY KATHERINE BACK (Bar No. 234021)
mback@pondnorth.com
JUSTIN F. CRONIN (Bar No. 260188)
jcronin@pondnorth.com
POND NORTH LLP
350 South Grand Avenue, Suite 3300
Los Angeles, CA  90071
Telephone:  (213) 617-6170
Facsimile:  (213) 623-3594

Attorneys for Defendant CBS Corporation, a Delaware
corporation, f/k/a Viacom Inc., successor by merger to
CBS Corporation, a Pennsylvania corporation, f/k/a
Westinghouse Electric Corporation

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHARLES LOCKETT AND DORI LOCKETT**,<br><br>Plaintiffs,<br><br>vs.<br><br>**A.O. SMITH CORPORATION; AIR & LIQUID SYSTEMS CORPORATION**, a/k/a BUFFALO PUMPS, INC.; **ALLIED INSULATION SUPPLY COMPANY, INC**.; **AMERICAN OPTICAL COMPANY**; **ARMSTRONG INTERNATIONAL, INC.; ASBESTOS CORPORATION LTD.; BASF CATALYST, LLC; BECHTEL CORPORATION; BORGWARNER MORSE TEC, INC**. AS SUCCESSOR-BY-MERGER to BORG-WARNER CORPORATION; **BURNHAM, LLC**, f/k/a BURNHAM CORPORATION; **CARRIER CORPORATION; CARVER PUMP COMPANY**; **CBS CORPORATION**, A DELAWARE CORP. f/k/a VIACOM INC., SUCCESSOR BY MERGER TO CBS CORP., A PENNSYLVANIA CORP. f/k/a WESTINGHOUSE ELECTRIC CORP.; **CERTAINTEED** | Case No:<br><br>**NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK** |

1

1  CORPORATION; CHEVRON U.S.A.
   INC.; CHICAGO PNEUMATIC TOOL
2  COMPANY, LLC; CLEAVER-
   BROOKS, INC., f/k/a CLEAVER –
3  BROOKS, A DIVISION OF AQUA-
   CHEM, INC.; CRANE CO.; DAP, INC.;
4  DORSETT & JACKSON, INC.;
   ELEMENTIS CHEMICALS, INC.;
5  ELLIOT COMPANY INDIVIDUALLY
   AND AS SUCCESSOR IN INTEREST
6  TO ELLIOTT TURBOMACHINERY
   CO., INC.; EXXON MOBIL OIL
7  CORPORATION; EXXONMOBIL OIL
   CORPORATION f/k/a MOBIL OIL
8  CORPORATION; FABCO
   AUTOMOTIVE CORPORATION;
9  FERRO ENGINEERING, DIVISION
   OF ON MARINE SERVICES; FMC
10 CORPORATION INDIVIDUALLY &
   AS SUCCESSOR TO NORTHERN
11 PUMP COMPANY, COFFIN, PEERLESS
   PUMP COMPANY AND CHICAGO
12 PUMP COMPANY; FORD MOTOR
   COMPANY; FOSECO INC.; FOSTER
13 WHEELER ENERGY
   CORPORATION; FRYER-KNOWLES
14 INC.; GENERAL ELECTRIC
   COMPANY; GENUINE PARTS
15 COMPANY; GEORGIA PACIFIC,
   LLC f/k/a GEORGIA-PACIFIC
16 CORPORATION; GRINNELL LLC,
   FORMERLY KNOWN AS GRINNELL
17 CORPORATION, SUED
   INDIVIDUALLY AND AS SUCCESSOR
18 IN INTEREST TO GRINNELL FIRE
   PROTECTION SYSTEMS COMPANY,
19 INC,.; HANSON PERMANENTE
   CEMENT, INC.; HILL BROTHERS
20 CHEMICAL COMPANY;
   HOLLINGSWORTH & VOSE
21 COMPANY; HOMASOTE
   COMPANY; HONEYWELL
22 INTERNATIONAL, INC.; f/k/a
   ALLIEDSIGNAL, INC. f/k/a THE
23 BENDIX CORPORATION; IMO
   INDUSTRIES, INC.; INGERSOLL-
24 RAND COMPANY; ITT
   CORPORATION; J-M
25 MANUFACTURING COMPANY,
   INC.; JOHN CRANE, INC.; JOHN K.
26 BICE, INC.; KAISER GYPSUM
   COMPANY, INC.; KELLY MOORE
27 PAINT COMPANY; LORILLARD
   TOBACCO COMPANY;
28 MAREMOUNT CORPORATION;

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND
FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK
4520-3974:4825-4177-8968.v1

1 | **MELRATH GASKET, INC.**,
**METALCLAD INSULATION**
2 | **CORPORATION**; **NMBFIL, INC.**;
**OAKFABCO, INC.**, f/k/a KEWANEE
3 | BOILER CORP.; **PARKER-HANNIFIN**
**CORPORATION**, INDIVIDUALLY
4 | AND AS SUCCESSOR IN INTEREST
TO SACOMO-SIERRA CORP.;
5 | **PARSONS CORPORATION**; **PEP**
**BOYS MANNY MOE & JACK OF**
6 | **CALIFORNIA**; **PNEUMO ABEX**
**CORPORATION**; **PRIMESOURCE**
7 | **BUILDING PRODUCTS, INC.**;
**REPUBLIC SUPPLY COMPANY**;
8 | **RICH-TEX, INC.**; **RILEY POWER,**
**INC.**, f/k/a RILEY STOKER
9 | CORPORATION, INDIVIDUALLY AND
AS SUCCESSOR IN INTEREST TO
10 | UNION IRON WORKS; **RSCC WIRE &**
**CABLE, LLC**, INDIVIDUALLY AND
11 | AS SUCCESSOR-IN-INTEREST TO
RSCC WIRE & CABLE, INC.; **SCOTT**
12 | **COMPANY OF CALIFORNIA**;
**SEQUOIA VENTURES, INC**. f/k/a
13 | BECHTEL CORPORATION; **SHELL**
**OIL COMPANY**; **SOCO-WEST, INC.**,
14 | f/k/a BRENNTAG WEST, INC., f/k/a
SOCO-LYNCH CORPORATION;
15 | SUCCESSOR-IN-INTEREST TO
WESTERN CHEMICAL &
16 | MANUFACTURING CO.; **THE**
**LUNKENHEIMER COMPANY**; **THE**
17 | **WILLIAM POWELL COMPANY**;
**THOMAS DEE ENGINEERING CO.**,
18 | **INC.**; **TRANE US, INC.**, f/k/a
AMERICAN STANDARD, INC.;
19 | **UNION CARBIDE CORPORATION**;
**UNION OIL COMPANY OF**
20 | **CALIFORNIA**; **VELAN VALVE**
**CORP.**; **WARREN PUMPS, LLC**;
21 | **WASHINGTON GROUP**
**INTERNATIONAL, INC.**,
22 | INDIVIDUALLY AND AS
SUCCESSOR-IN-INTEREST TO
23 | MORRISON-KNUDSEN, INC.; **ZURN**
**INDUSTRIES, LLC**, INDIVIDUALLY
24 | AND AS SUCCESSOR TO ERIE CITY
IRONWORKS; **ALLIED PACKING &**
25 | **SUPPLY, INC. (DOE 1)**; and **DOES 1 –**
**500 INCLUSIVE;**
26 |
Defendants.
27 |
28 |

3

**PLEASE TAKE NOTICE** that Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation ("Westinghouse")[1] hereby files its Notice of Removal of the above-styled civil action, removing said matter to this Court pursuant to 28 U.S.C. §§ 1442 and 1446.

## BACKGROUND

1. Upon information and belief, on July 9, 2013, Plaintiffs Charles P. Lockett and Dori Lockett (together, the "Plaintiffs") commenced an action in the Superior Court of the State of California for the County of Alameda, which was assigned Alameda Superior Court Case Number RG13-086746 (the "State Court Action"), by filing a Complaint for Damages. [Declaration of Mary Katherine Back ("Back Decl."), ¶ 3, Exh. 1]. Westinghouse was not served with the initial Complaint or process relating thereto in the State Court Action. [Back Decl., ¶ 4]. A true and correct copy of the initial Complaint as obtained from the Alameda Superior Court Domain Web website is attached hereto as Exhibit 1. [Back Decl., ¶ 3, Exh. 1].

2. On August 6, 2013, Plaintiffs filed their First Amended Complaint in the State Court Action. [Back Decl., ¶ 5, Exh. 2]. True and correct copies of the Summons, First Amended Complaint, and accompanying papers are collectively attached hereto as Exhibit 2. [Back Decl. ¶ 5, Exh. 2]. Plaintiffs' First Amended Complaint alleged: 1) that Plaintiff Charles P. Lockett ("Mr. Lockett") was exposed to asbestos while working in various capacities including as a pipefitter at (i) Todd Shipyard in Seattle, Washington, (ii) at Lockheed Shipyard in Seattle Washington, (iii) and at various industrial sites and refineries in Alameda County, Los Angeles County, Contra Costa County, other unnamed California counties, and other unnamed Washington counties, as well as while doing personal construction work in the State of Washington and performing shade tree automotive work in and near Ventura, California; and 2) that Mr. Lockett had been exposed to

---

[1] CBS Corporation (a Delaware corporation f/k/a Viacom Inc.) is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation). CBS Corporation was erroneously sued herein as "Viacom, Inc., as successor in interest by merger to CBS Corp., and Westinghouse Electric Corporation."

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK
4520-3974:4825-4177-8968.v1

Westinghouse-attributable asbestos-containing "Turbines, Phoenalics [sic], Pumps, [and] Electrical Equipment." [Back Decl., ¶ 6, <u>Exh. 2</u> (First Amended Complaint at ¶¶ 2, 3, and 19, and Exhibits A and C thereto)].

3.       Plaintiffs served Westinghouse with their First Amended Complaint in the State Court Action on August 14, 2013. [Back Decl., ¶ 7]. Westinghouse made its appearance in the State Court Action by filing its Answer to the First Amended Complaint on September 30, 2013, and filed a Demand for Jury Trial at the same time. [Back Decl., ¶ 8, <u>Exhs. 3 & 4</u>]. A true and correct copy of Westinghouse's Answer to the First Amended Complaint in the State Court Action and its Demand for Jury Trial are attached hereto as <u>Exhibits 3 and 4</u>, respectively. [Back Decl., ¶ 8, <u>Exhs. 3 & 4</u>].

4.       On December 13, 2013, Plaintiffs filed their Second Amended Complaint (the operative pleading) in the State Court Action. [Back Decl., ¶ 9, <u>Exh. 5</u>].  A true and correct copy of the Summons, Second Amended Complaint, and accompanying papers are attached collectively hereto as <u>Exhibit 5</u>.  [Back Decl., ¶ 9, <u>Exh. 5</u>]. Plaintiffs' Second Amended Complaint contained identical allegations as within the First Amended Complaint. [Back Decl., ¶ 10, <u>Exh. 5</u> (Second Amended Complaint at ¶¶ 2, 3, and 19, and Exhibits A and C thereto)].

5.       Plaintiffs served Westinghouse with their Second Amended Complaint on December 13, 2013. [Back Decl. ¶ 11].  Westinghouse timely filed its Answer to the Second Amended Complaint in the State Court Action on January 10, 2014, a true and correct copy of which is attached hereto as <u>Exhibit 6</u>. [Back Decl., ¶ 12, <u>Exh. 6</u>].

6.       On December 27, 2013, Plaintiffs served their Amended Responses to Alameda Superior Court General Order Standard Interrogatories, a true and correct copy of which is attached as <u>Exhibit 7</u>, in which Plaintiffs stated (in response to Interrogatory No. 29) that Mr. Lockett worked at (i) Todd Shipyard, Harbor Island in Seattle, Washington from 1977 to 1979, from 1980 to 1989, and from 1993 to 1994, and at (ii) Lockheed Shipbuilding in Seattle, Washington from 1984 to 1986, where, at both shipyards, he worked as a pipefitter/welder and "worked with valves, pumps, piping, boilers, gaskets, packing, insulation, turbines, electrical equipment, phoenalics [sic], grinding wheels, decking material, and scaffolding" and claims exposure to asbestos therefrom. [Back Decl., ¶ 13, <u>Exh. 7</u> at 20:25-21:4, 21:15-22]. Additionally, within the same document, in response to

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK

4520-3974:4825-4177-8968.v1

Interrogatory No. 30, Plaintiffs specifically claim that Mr. Lockett worked on various ships, including the *USS Thomaston* (from 1977 to 1979), and further, that he removed and replaced asbestos-containing "gaskets, packing, and insulation directly associated with the pipes, boilers, turbines, forced draft blowers, and other heavy machinery . . ." [Back Decl., ¶ 14, Exh. 7 at 28:19-25, 29:14-16]. This document was the first instance in which the names of the ships on which it is alleged Mr. Lockett worked, including the *USS Thomaston*, have been disclosed. [Back Decl. ¶ 15].

7.     Westinghouse did, in fact, supply certain items of propulsion equipment for use aboard the *USS Thomaston* (LSD-28) under contract to the United States Department of the Navy. [Back Decl. ¶ 16].

5.     This Notice of Removal has thus been filed, in accordance with 28 U.S.C. §1446(b), within thirty (30) days of Westinghouse's first notice of Plaintiffs' claim that Mr. Lockett was allegedly injured due to asbestos exposure associated with Westinghouse equipment aboard the *USS Thomaston.  See, e.g.*, *Contois v. Able Indus.*, 523 F. Supp. 2d 155, 158-59 (D. Conn. 2007); *Carter v. ACandS, Inc.*, 2002 WL 31682352 at *3 (E.D. Tex. June 27, 2002).  *Cf.*, *Bosky v. Kroger Texas, L.P.*, 288 F.3d 208, 211 (5th Cir. 2002); *Akin v. Big Three Indus.*, 851 F. Supp. 819, 824 (E.D. Tex. 1994).

6.     The basis for this removal is that this action involves a person, *i.e.*, Westinghouse, who—in relation to the claims being stated against it and as summarized herein—acted under the authority, direction and control of an officer or agency of the United States for purposes of 28 U.S.C. § 1442(a)(1) and who can state at least a colorable federal law-based "government contractor" defense to those claims.

7.     Westinghouse respectfully requests an opportunity to respond more fully in writing to any motion for remand in this case, but offers the following statement and citations to authority at this time in satisfaction of its obligation under 28 U.S.C. § 1446 to provide a short and plain statement of the legal and factual basis for its removal.  Removal is proper under 28 U.S.C. § 1442(a)(1) when (a) the defendant seeking removal demonstrates that it is a "person" within the meaning of the statute; (b) the defendant demonstrates a causal nexus between the defendant's actions, taken pursuant to a federal offer's directions and under color of federal office, and the plaintiff's claims; and (c) the defendant asserts a "colorable federal defense." *Mesa v. California*, 489 U.S. 121, 124-25, 134-35

(1989); *Kirks v. General Elec. Co.*, 654 F. Supp. 2d 220, 223 (D. Del. 2009); *see also, e.g.*, *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205, 210 (S.D.N.Y. 2005); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 699 (S.D. Tex. 2002); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322, 1325 (E.D. La. 1994); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099, 1101 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).

8.     Westinghouse is a "person" within the meaning of 28 U.S.C. § 1442(a)(1).  *Fung*, 816 F. Supp. at 572; *see, e.g.*, *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135-36 (2d Cir. 2008); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998), *cert. denied*, 526 U.S. 1034 (1999); *Kirks*, 654 F. Supp. 2d at 223.

9.     In all aspects of the design, manufacture and supply of its Navy propulsion equipment, including the provision of warnings and/or other verbal or written communications(if any) with that equipment, Westinghouse was acting under the detailed direction and control of one or more federal officers.  More specifically, such equipment was designed, manufactured and supplied according to precise, detailed, specifications promulgated and/or approved by Navy Sea Systems Command. Moreover, an Inspector of Naval Machinery, who had offices on the premises of Westinghouse's plants, personally oversaw the manufacturing process and enforced compliance with the Navy design specifications.  Further, the Navy propulsion equipment was subject to various tests and trials supervised by the Navy before it was approved for use on military vessels.  In sum, no material aspect of the design, manufacture or supply of the Westinghouse propulsion equipment allegedly at issue in this case escaped the close control of the Navy and its officers.  Numerous federal district courts have, in fact, held—in light of these facts—that Westinghouse was "acting under a federal officer" in relation to its design, manufacture and supply of turbines and/or similar equipment for use aboard United States Navy vessels.  *See, e.g.*, *Allen v. CBS Corp.*, 2009 WL 4730747 at *2 (D. Conn. Dec. 1, 2009); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 at *2 (E.D. Va. Dec. 15, 2004); *Madden*, 205 F. Supp. 2d at 700-01; *Carter*, 2002 WL 31682352 at *4-5; *Crocker*, 852 F. Supp. at 1326; *Pack*, 838 F. Supp. at 1103; *Fung*, 816 F. Supp. at 572.

10.     It is "axiomatic" that, if a defendant has been sued for asbestos-related injuries purportedly arising from or relating to equipment that it manufactured and supplied to the United

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK

4520-3974:4825-4177-8968.v1

States Navy under the Navy's detailed direction and control, that defendant has been sued in relation to conduct under color of its federal office, satisfying the "causal nexus" requirement. *See, e.g.*, *Madden*, 205 F. Supp. 2d at 701-02.

11.     As to the question of a colorable federal-law based defense, Westinghouse hereby asserts a government contractor defense under *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512 (1988) in that: 1) it designed, manufactured and supplied the Navy equipment at issue in this case in accordance with "reasonably precise specifications" promulgated or adopted by the United States Navy; 2) the Westinghouse Navy equipment conformed with those specifications; and 3) at all times relevant to this suit, the United States Navy was independently aware of potential health hazards associated with asbestos exposure.  Once again, numerous courts considering the propriety of the removal of asbestos-related claims involving Westinghouse's design and manufacture of such turbines and/or related equipment have found that Westinghouse can, accordingly, state at least a colorable government contractor defense in relation to such claims.  *See, e.g.*, *Allen*, 2009 WL 4730747 at *5; *Mitchell*, 2004 WL 3831228 at *4; *Crocker*, 852 F. Supp. at 1327; *Pack*, 838 F. Supp. at 1103. Similarly, Westinghouse is entitled to, and pursuant thereto can assert a colorable defense of, government contractor immunity for Plaintiffs' failure-to-warn claims. *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1003-04 (7th Cir. 1996).

12.     All material aspects of the design of Westinghouse's Navy turbines (including the provision of warnings, if any) were subject to reasonably precise specifications which were promulgated or approved by the Navy—specifications which, in particular, required the use of asbestos.  Compare *Glassco v. Miller Equip. Co.*, 966 F.2d 641 (11th Cir. 1992).

13.     The Westinghouse Navy equipment allegedly at issue in this case complied with the reasonably precise specifications which had been promulgated or approved by the Navy, and were accepted only after such compliance had been verified through rigorous Navy tests and inspections. *See, e.g.*, *Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 420 (5th Cir. 2001); *Allen*, 2009 WL 4730747 at *5; *Murphy v. General Electric Co.*, 2009 WL 2151192 at *4 (D. Conn. July 15, 2009); *Machnik*, 506 F. Supp. at 103-04.

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK

4520-3974:4825-4177-8968.v1

14. At all times relevant to this case, the Navy was independently aware of potential health hazards associated with asbestos exposure. *See, e.g.*, *Allen*, 2009 WL 4730747 at *4-5; *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001, 1006 (N.D. Ill. 2007); *Machnik*, 506 F. Supp. 2d at 104; *Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725, 730-31 (N.D. Ohio 2007); *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1028 (S.D. Ill.1989).

15. Indeed, numerous federal district courts, including the United States District Court for the Northern District of California and the Central District of California, have found that subject matter jurisdiction exists under 28 U.S.C. §1442(a)(1) relative to asbestos-related personal injury or wrongful death claims brought against Westinghouse and other similarly-situated Navy equipment suppliers. *Redman v. A.W. Chesterton Co.*, 2008 WL 5048205 (N.D. Cal. Nov. 25, 2008), Ruling on Plaintiffs' Motion for Leave to File a Motion for Reconsideration as to the Ruling on Plaintiffs' Motion to Remand (Hon. Jeffrey S. White, J.); *Redman v. A.W. Chesterton Co.*, 2008 WL 4447729 (N.D. Cal. Sept. 30, 2008), Ruling on Plaintiffs' Motion to Remand (Hon. Jeffrey S. White, J.); *Wright v. A.W. Chesterton Co.*, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008), Ruling on Plaintiffs' Motion to Remand (Hon. Martin J. Jenkins, J.); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992), Ruling on Plaintiffs' Motion to Remand (Hon. D. Lowell Jensen, J.); *see also Robert Oberstar, et al. v. CBS Corp., et al.*, CV 08-118-PA (JWJx), In Chambers-Court Order (C.D. Cal. Feb. 11, 2008) (Hon. Percy Anderson, J.); *Donald Nelson, et al. v. Alfa Laval, Inc., et al.*, CV 07-8338 VBF (RCx), Ruling Re: Plaintiff's Motion to Remand (C.D. Cal. Feb. 8. 2008) (Hon. Valerie Baker Fairbank, J.). *See also, e.g. Murphy v. General Electric Co.*, 2009 WL 2151192 (D. Conn. July 15, 2009); *Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001 (W.D. Pa. Apr. 17, 2009); *Beamis v. Buffalo Pumps*, 2009 WL 462543 (D.R.I. Feb. 23, 2009); *Curry v. American Standard, Inc.*, 2009 WL 308029 (S.D.N.Y. Feb. 6, 2009); *Carroll v. Buffalo Pumps*, 2008 WL 4793725 (D. Conn. Oct. 27, 2008); *Dematties v. Acmat Corp.*, 2008 WL 4735145 (D. Conn. Oct. 27, 2008); *Desperes v. AMPCO-Pittsburgh Corp.*, 2008 WL 4329881 (D. Conn. Sept. 22, 2008); *O'Connell v. Foster Wheeler Energy Corp.*, 2008 WL 1722079 (D. Mass. Apr. 7, 2008); *Marley v. Elliot Turbomachinery Co.*, 2008 WL 1700326 (S.D. Fla. Mar. 13, 2008); *Contois v. Able Indus.*, 523 F. Supp. 2d 155 (D. Conn. 2007); *Machnik v. Buffalo Pumps*, 506 F. Supp. 2d 99 (D. Conn. 2007);

*Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725 (N.D. Ohio Feb. 15, 2007); *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005); *McAboy v. Imo Indus.*, 2005 WL 2898047 (W.D. Wash. Oct. 27, 2005); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 (E.D. Va. Dec. 15, 2004); *Fink v. Todd Shipyards*, 2004 WL 856734 (E.D. La. April 20, 2004); *Delancey v. General Elec. Co.*, 2004 WL 3247173 (E.D. La. Mar. 31, 2004); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695 (S.D. Tex. 2002); *Carter v. ACandS, Inc.*, 2002 WL 31682352 (E.D. Tex. 2002); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322 (E.D. La. 1994); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099 (D. Md. 1993). Westinghouse submits that these authorities have properly interpreted and applied 28 U.S.C. §1442(a)(1), and that a similar ruling would be called for in this case in the event Plaintiffs seek a remand of this matter to state court.

## INTRADISTRICT ASSIGNMENT

Because this Court is the United States District Court for the district and division embracing the place where the original State Court Action was filed, it is the appropriate court for removal under 28 U.S.C. § 1446(a). Pursuant to Local Civil Rule 3-2(c), (d), because the state court action arose in the county in Alameda it is appropriate for assignment in the San Francisco or Oakland division.

## PROCEDURAL COMPLIANCE

Because Westinghouse has satisfied the requirements for removal under 28 U.S.C. § 1442(a), it is entitled to remove this entire action. Westinghouse is not required to notify and obtain the consent of any other defendant in this action in order to remove Plaintiffs' action as a whole under § 1442(a)(1). *Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981); *Hunt v. Smith*, 67 F. Supp. 2d. 675 (E.D. Tex 1999); *see, e.g.*, *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006); *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Ely Valley Mines v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981); *Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965); *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962).

As required by 28 U.S.C. § 1446(b) and the local rules of this Court, true and correct copies of the process, pleadings, and orders served upon Westinghouse are attached as <u>Exhibit 1</u> and are

10

1   of the process, pleadings, and orders served upon Westinghouse are attached as <u>Exhibit 1</u> and are

2   filed with this Notice of Removal, along with other relevant exhibits detailed herein.

3        Westinghouse will give notice of the filing of this Notice as required by 28 U.S.C. §

4   1442(a)(1).

5                               **CONCLUSION**

6       Removal of this action is proper under 28 U.S.C. § 1442, because it is a civil action brought in

7   a state court, and the federal district courts have original jurisdiction over the subject matter under 28

8   U.S.C. § 1442(a)(1) for the reasons set forth herein.

9       WHEREFORE, Westinghouse, pursuant to these statutes and in conformance with the

10   requirements set forth in 28 U.S.C. § 1446, removes this action from the Superior Court for the State

11   of California for the County of Alameda on this 24th day of January, 2014, and requests that this

12   action proceed in this Court as a properly removed action.

13   Dated:  January 24, 2014             POND NORTH LLP

14

15                          By: _____

                                 MARY KATHERINE BACK

16                                  Attorneys for Defendant CBS Corporation, a Delaware

                                 corporation, f/k/a Viacom Inc., successor by merger to

17                                  CBS Corporation, a Pennsylvania corporation, f/k/a

                                 Westinghouse Electric Corporation

18

19

20

21

22

23

24

25

26

27

28

                                       11

1        **DEMAND FOR TRIAL BY JURY**

2        Westinghouse hereby demands a trial by jury in this action.

3

4   Dated:  January 24, 2014                    POND NORTH LLP

5

6                                       By: _Mary k Back_____
                                            MARY KATHERINE BACK
7                                           Attorneys for Defendant CBS Corporation, a Delaware
                                            corporation, f/k/a Viacom Inc., successor by merger to
8                                           CBS Corporation, a Pennsylvania corporation, f/k/a
                                            Westinghouse Electric Corporation

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                            1
NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND
              FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK
4520-3974:4825-4177-8968.v1

## DECLARATION OF MARY KATHERINE BACK

I, MARY KATHERINE BACK, declare:

1.     I am an attorney at law, duly licensed by and in good standing with the State Bar of California, and I am admitted to practice before the United States District Court for the Northern District of California.  I am an associate with the law firm of Pond North LLP, attorneys of record for defendant CBS CORPORATION, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation ("Westinghouse"), a party to the underlying litigation herein.

2.     I have participated in the litigation of the claims asserted by Plaintiffs Charles P. Lockett and Dori Lockett (together, the "Plaintiffs") in the State Court Action (defined below) and have reviewed all of the pleadings, discovery, and documents produced in this litigation.  I have personal knowledge of the facts stated herein, or have gained such knowledge from my review of the records and documents maintained in our file in the regular course of business.  If called as a witness in this matter, I could and would testify competently to the matters set forth herein.

3.     I am informed and believe, from a review of the Alameda Superior Court website Register of Actions for the State Court Action, that Plaintiffs commenced an action in the Superior Court of the State of California for the County of Alameda, which was assigned Alameda Superior Court Case Number RG13-086746 (the "State Court Action"), by filing a Complaint for Damages. A true and correct copy of the initial Complaint as obtained from the Alameda Superior Court Domain Web website by Pond North staff and under my direction is attached hereto as Exhibit 1.

4.     Westinghouse was never served with the initial Complaint or process relating thereto in the State Court Action.

5.     On August 6, 2013, Plaintiffs filed their First Amended Complaint in the State Court Action. True and correct copies of the Summons, First Amended Complaint, and accompanying papers are collectively attached hereto as Exhibit 2.

6.     Plaintiffs' First Amended Complaint alleged: 1) that Plaintiff Charles P. Lockett ("Mr. Lockett") was exposed to asbestos while working in various capacities including as a pipefitter at (i) Todd Shipyard in Seattle, Washington, (ii) at Lockheed Shipyard in Seattle Washington, (iii)

1

and at various industrial sites and refineries in Alameda County, Los Angeles County, Contra Costa County, other unnamed California counties, and other unnamed Washington counties, as well as while doing personal construction work in the State of Washington and performing shade tree automotive work in and near Ventura, California; and 2) that Mr. Lockett had been exposed to Westinghouse-attributable asbestos-containing "Turbines, Phoenalics [sic], Pumps, [and] Electrical Equipment." [See First Amended Complaint within <u>Exh. 2</u> at ¶¶ 2, 3, and 19, and Exhibits A and C thereto].

7.    Westinghouse was served with process and the First Amended Complaint in the State Court Action on August 14, 2013.

8.    Westinghouse made its appearance in the State Court Action by filing its Answer to the First Amended Complaint on September 30, 2013, and filed a Demand for Jury Trial at the same time. True and correct copies of Westinghouse's Answer to the First Amended Complaint in the State Court Action and its Demand for Jury Trial are attached hereto as <u>Exhibits 3 and 4</u>, respectively.

9.    On December 13, 2013, Plaintiffs filed their Second Amended Complaint in the State Court Action. As of the date of signing this Declaration, Plaintiffs' Second Amended Complaint is the operative pleading. True and correct copies of the Summons, Second Amended Complaint, and accompanying papers are attached collectively hereto as <u>Exhibit 5</u>.

10.    Plaintiffs' Second Amended Complaint contained identical allegations as within the First Amended Complaint, and specifically alleged: 1) that Mr. Lockett was exposed to asbestos while working in various capacities including as a pipefitter at (i) Todd Shipyard in Seattle, Washington, (ii) at Lockheed Shipyard in Seattle Washington, (iii) and at various industrial sites and refineries in Alameda County, Los Angeles County, Contra Costa County, other unnamed California counties, and other unnamed Washington counties, as well as while doing personal construction work in the State of Washington and performing shade tree automotive work in and near Ventura, California; and 2) that Mr. Lockett had been exposed to Westinghouse-attributable asbestos-containing "Turbines, Phoenalics [sic], Pumps, [and] Electrical Equipment." [See Second Amended Complaint within <u>Exh. 5</u> at ¶¶ 2, 3, and 19, and Exhibits A and C thereto)].

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK
4520-3974:4825-4177-8968.v1

11. Plaintiffs served Westinghouse with their Second Amended Complaint on December 13, 2013.

12. Westinghouse timely filed its Answer to Plaintiffs' Second Amended Complaint in the State Court Action on January 10, 2014. A true and correct copy of Westinghouse's Answer to the Second Amended Complaint in the State Court Action is attached hereto as Exhibit 6.

13. On December 27, 2013, Plaintiffs served their Amended Responses to Alameda Superior Court General Order Standard Interrogatories. A true and correct copy of Plaintiffs' Amended Responses to Alameda Superior Court General Order Standard Interrogatories is attached hereto as Exhibit 7. Within these responses, Plaintiffs stated (in response to Interrogatory No. 29) that Mr. Lockett worked at (i) Todd Shipyard, Harbor Island in Seattle, Washington from 1977 to 1979, from 1980 to 1989, and from 1993 to 1994, and at (ii) Lockheed Shipbuilding in Seattle, Washington from 1984 to 1986, where, at both shipyards, he worked as a pipefitter/welder and "worked with valves, pumps, piping, boilers, gaskets, packing, insulation, turbines, electrical equipment, phoenalics [sic], grinding wheels, decking material, and scaffolding" and claims exposure to asbestos therefrom. [See Exh. 7 at 20:25-21:4, 21:15-22].

14. Additionally, within their Amended Responses to Alameda Superior Court General Order Standard Interrogatories, in response to Interrogatory No. 30, Plaintiffs claim that Mr. Lockett worked on various ships, including the *USS Thomaston* (from 1977 to 1979 as to this ship), and further, that he removed and replaced asbestos-containing "gaskets, packing, and insulation directly associated with the pipes, boilers, turbines, forced draft blowers, and other heavy machinery . . ." [See Exh. 7, at 28:19-25, 29:14-16].

15. Plaintiffs' Amended Responses to Alameda Superior Court General Order Standard Interrogatories represents the first instance in which the names of the ships on which it is alleged Mr. Lockett worked, including the *USS Thomaston*, have been disclosed in the State Court Action.

///

///

///

///

3

16. I have been informed by my client that Westinghouse did, in fact, supply certain propulsion equipment for use aboard the *USS Thomaston* (LSD-28) under contract with the United States Department of the Navy.

I declare under the penalty of perjury under the laws of the United States of America, that the foregoing is true and correct.

Executed this 24th day of January, 2014, at ~~Los Angeles,~~ San Francisco California.

_____
Mary Katherine Back, Declarant

4

**PROOF OF SERVICE**

I declare that I am over the age of eighteen (18) and not a party to this action. My business address is 350 South Grand Avenue, Suite 3300, Los Angeles, CA 90071.

On January 24, 2014, I served the following document(s): **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK** on the interested parties in this action as follows:

**Napoli Bern Ripka Shkolnik & Associates LLP**
**111 Corporate Drive, Suite 225**
**Ladrea Ranch, CA 92694**

☐ I am readily familiar with the business' practice for collection and processing of correspondence for mailing with the United States Postal Service. I know that the correspondence was deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date in the United States mail at, Los Angeles, California.

☒ By Overnight Service: I caused the above-referenced document(s) to be deposited in a box or other facility regularly maintained by the overnight courier, or I delivered the above-referenced document(s) to an overnight courier service, for delivery to the above addressee(s).

☐ By E-Service: I electronically served the above document(s) via **CM/ECF** on the recipients opting for e-service.

☐ By Personal Service: I caused to be delivered by courier **Nationwide Legal Express,** such envelope by hand to the offices of the above addressee(s).

☐ By Personal Service: I delivered such envelope by hand to the offices of the addressee(s).

☐ By Facsimile Machine: The document was transmitted by facsimile transmission to the number(s) indicated and was reported as complete and without error.

Executed: January 24, 2014

☐ (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

*Nanette Leali*

Nanette Leali
4520.3974

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. SECTION 1442(A)(1) (FEDERAL OFFICER); DEMAND FOR JURY TRIAL AND DECLARATION OF MARY KATHERINE BACK
4520-3974:4825-4177-8968.v1

EXHIBIT 1

*11482626*

Ethan A. Horn (CA Bar No. 190296)
Keenan Ng (CA Bar No. 267779)
NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP
111 Corporate Drive, Suite 225
Ladera Ranch, California 92694
Telephone:     (949) 234-6032
Facsimile:     (949) 429-0892

Attorneys for Plaintiffs



FILED
ALAMEDA COUNTY

JUL 09 2013

CLERK OF THE SUPERIOR COURT
By_____
                              Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

CHARLES P. LOCKETT AND DORI LOCKETT,

                    Plaintiffs,

          vs.

A.O. SMITH CORPORATION;
AIR & LIQUID SYSTEMS
  CORPORATION, a/k/a BUFFALO PUMPS, INC.;
ALLIED INSULATION SUPPLY
  COMPANY, INC.;
AMERICAN OPTICAL COMPANY; •
ARMSTRONG INTERNATIONAL, INC.;
ASBESTOS CORPORATION LTD.; •
BASF CATALYST, LLC;
BECHTEL CORPORATION; •
BORGWARNER MORSE TEC, INC. AS
  SUCCESSOR-BY-MERGER to BORG-
  WARNER CORPORATION;
BURNHAM, LLC, f/k/a BURNHAM
  CORPORATION;
CARRIER CORPORATION;
CARVER PUMP COMPANY;
CBS CORPORATION, A DELAWARE
  CORP. f/k/a VIACOM INC., SUCCESSOR
  BY MERGER TO CBS CORP., A
  PENNSYLVANIA CORP. f/k/a
  WESTINGHOUSE ELECTRIC CORP.;
CERTAINTEED CORPORATION;

Case No.  RG-13-086746

COMPLAINT FOR DAMAGES

JURY TRIAL DEMANDED

1 - NEGLIGENCE;
2 - STRICT LIABILITY;
3 - FALSE REPRESENTATION;
4 - INTENTIONAL TORT/INTENTIONAL;
5 - PREMISES/CONTRACTOR LIABILITY;
6 - GENERAL NEGLIGENCE;
7 - VICARIOUS LIABILITY;
8 - LOSS OF CONSORTIUM

| | |
|---|---|
| 1 | **CHEVRON U.S.A. INC.;** |
| 2 | **CHICAGO PNEUMATIC TOOL COMPANY, LLC;** |
| 3 | **CLEAVER-BROOKS, INC.,** f/k/a CLEAVER-BROOKS, A DIVISION OF |
| 4 | AQUA-CHEM, INC.; |
| | **CRANE CO.;** |
| 5 | **DAP, INC.;** |
| 6 | **DORSETT & JACKSON, INC.;** |
| | **ELEMENTIS CHEMICALS, INC.;** |
| 7 | **ELLIOT COMPANY** INDIVIDUALLY AND AS SUCESSOR IN INTEREST OT ELLIOTT |
| 8 | TURBOMACHINERY CO., INC |
| 9 | **EXXON MOBIL OIL CORPORATION;** **EXXONMOBIL OIL CORPORATION** f/k/a |
| 10 | MOBIL OIL CORPORATION; |
| | **FABCO AUTOMOTIVE CORPORATION;** |
| 11 | **FERRO ENGINEERING,** DIVISION OF ON MARINE SERVICES; |
| 12 | **FMC CORPORATON** INDIVIDUALLY & AS SUCCESSOR TO NORTHERN PUMP |
| 13 | COMPANY, COFFIN, PEERLESS PUMP COMPANY AND CHICAGO PUMP |
| 14 | COMPANY; |
| 15 | **FORD MOTOR COMPANY;** |
| 16 | **FOSECO INC.;** **FOSTER WHEELER ENERGY** |
| | **CORPORATION;** |
| 17 | **FRYER-KNOWLES INC.;** |
| 18 | **GENERAL ELECTRIC COMPANY;** **GENUINE PARTS COMPANY;** |
| 19 | **GEORGIA PACIFIC, LLC** f/k/a GEORGIA-PACIFIC CORPORATION; |
| 20 | **GRINNELL LLC,** FORMERLY KNOWN AS GRINNELL CORPORATION, SUED |
| 21 | INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO GRINNELL FIRE |
| 22 | PROTECTION SYSTEMS COMPNAY, INC.; |
| 23 | **HANSON PERMANENTE CEMENT, INC.;** **HILL BROTHERS CHEMICAL** |
| 24 | **COMPANY;** |
| | **HOLLINGSWORTH & VOSE COMPANY;** |
| 25 | **HOMASOTE COMPANY;** |
| 26 | **HONEYWELL INTERNATIONAL, INC.,** f/k/a ALLIEDSIGNAL, INC., f/k/a THE |
| 27 | BENDIX CORPORATION; |
| | **IMO INDUSTRIES, INC.;** |
| 28 | **INGERSOLL-RAND COMPANY;** |

ITT CORPORATION;
J-M MANUFACTURING COMPANY, INC.;
JOHN CRANE, INC.;
JOHN K. BICE, INC.;
KAISER GYPSUM COMPANY, INC.;
KELLY MOORE PAINT COMPANY;
LORILLARD TOBACCO COMPANY;
MAREMOUNT CORPORATION;
MELRATH GASKET, INC.;
METCLAD INSULATION CORPORATION;
NMBFIL, INC.;
OAKFABCO, INC., f/k/a KEWANEE BOILER CORP.;
PARKER-HANNIFIN CORPORATION, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO SACOMO-SIERRA CORP.;
PARSONS CORPORATION;
PEP BOYS MANNY MOE & JACK OF CALIFORNIA;
PNEUMO ABEX CORPORATION;
PRIMESOURCE BUILDING PRODUCTS, INC.;
REPUBLIC SUPPLY COMPANY;
RICH-TEX, INC.;
RILEY POWER, INC., f/k/a RILEY STOKER CORPORATION, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO UNION IRON WORKS;
RSCC WIRE & CABLE, LLC, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO RSCC WIRE & CABLE, INC.;
SCOTT COMPANY OF CALIFORNIA;
SEQUOIA VENTURES, INC. f/k/a BECHTEL CORPORATION;
SHELL OIL COMPANY;
SOCO-WEST, INC., f/k/a BRENNTAG WEST, INC., f/k/a SOCO-LYNCH CORPORATION, SUCCESSOR-IN-INTEREST TO WESTERN CHEMICAL & MANUFACTURING CO.;
THE LUNKENHEIMER COMPANY;
THE WILLIAM POWELL COMPANY;
THOMAS DEE ENGINEERING CO., INC.;
TRANE US, INC., f/k/a AMERICAN STANDARD, INC.;

3

UNION CARBIDE CORPORATION;
UNION OIL COMPANY OF CALIFORNIA;
VELAN VALVE CORP.;
WARREN PUMPS, LLC;
WASHINGTON GROUP
  INTERNATIONAL, INC., INDIVIDUALLY
  AND AS SUCCESSOR-IN-INTEREST TO
  MORRISON-KNUDSEN, INC.;
ZURN INDUSTRIES, LLC,
  INDIVIDUALLY AND AS SUCCESSOR TO
  ERIE CITY IRONWORKS;
DOES 1-500 INCLUSIVE;

                    Defendants.

## GENERAL ALLEGATIONS

COMES NOW Plaintiffs CHARLES P. LOCKETT and DORI LOCKETT and complain and allege as follows:

1. Plaintiff CHARLES P. LOCKETT has been diagnosed with a disease related to exposure to asbestos and asbestos-containing products.

2. Plaintiff CHARLES P. LOCKETT used, handled or was otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiff CHARLES P. LOCKETT's exposure to asbestos and asbestos-containing products occurred at various locations as set forth in Exhibit A, attached hereto and incorporated herein by reference.

3. Plaintiff CHARLES P. LOCKETT's cumulative exposure to asbestos as a result of acts and omissions of defendants and the defective products as hereinafter alleged, individually and together, was a substantial factor in increasing Plaintiff CHARLES P. LOCKETT's risk of Lung Cancer and other related injuries and therefore a legal cause of Plaintiff CHARLES P. LOCKETT injuries.

4. Plaintiff CHARLES P. LOCKETT was not aware at the time of exposure that asbestos or asbestos-containing products presented any risk of injury and/or disease.

5.  As a direct and proximate result of the aforesaid conduct of defendants, their "alternate entities," and each of them as set forth hereinafter, Plaintiff CHARLES P. LOCKETT suffers permanent injuries, including, but not limited to, asbestosis, other lung damage, and cancer, from the effect of exposure to asbestos fibers, all to Plaintiffs' damage in the sum in excess of the jurisdictional limits of Court of Limited Jurisdiction.

6.  As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, By reason of the premises, Plaintiff CHARLES P. LOCKETT has been compelled to incur obligations as and for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays, medical supplies and other medical treatment, the true and exact amount thereof being unknown to Plaintiffs at this time, and Plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

7.  By reasons of the premises, plaintiff CHARLES P. LOCKETT has been caused great pain and suffering.

8.  Each of the herein named defendants is liable for its own tortuous conduct and/or the tortuous conduct of an "alternate entity" as hereinafter defined on Exhibit D. Defendants, and each of them, are liable for the acts of their "alternate entity," and each of them, in that there has been a corporate name change, defendant is the successor by merger or successor by other acquisition resulting in a virtual destruction of Plaintiffs' remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, product line, or a portion thereof, of each such "alternate entity"; such "alternate entity"; defendants, and each of them, caused the destruction of Plaintiffs' remedy against each such "alternate entity"; each such defendant has the ability to assume the risk-spreading role of each such "alternate entity"; and that each such defendant enjoys the goodwill originally attached to each such "alternate entity."

9.  The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of Defendants DOES 1 through 500, inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names.  When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this complaint accordingly.  Plaintiffs are informed and believe, and thereon allege, that each Defendant designated herein as a DOE is responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to the Plaintiffs, as hereinafter alleged.

10.  At all times herein mentioned, each of the Defendants was the agent, servant, employee and/or joint venture of his co-Defendants, and each of them, and at all said times each Defendant was acting in the full course and scope of said agency, service, employment and/or joint venture.

11.  Plaintiffs are informed and believe, and thereon allege that at all times herein mentioned each of the Defendants listed in the left "Defendant" column on Exhibit "C" hereto were individuals, corporations, partnerships and/or unincorporated associations organized and existing under and by virtue of the laws of the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, or the laws of some other state or foreign jurisdiction, and that said Defendants, and each of them, were and are authorized to do and are doing business in the State of California, and that said Defendants have regularly conducted business in the County of Alameda, State of California.

12.  Plaintiffs disclaim any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave.  Plaintiffs also disclaim any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by any acts or omissions of a party defendant committed at the direction of an officer of the United States Government.  Plaintiffs do not seek to recover against themselves, or either of themselves, as a defendant or otherwise, for any asbestos related injuries.

## FIRST CAUSE OF ACTION

### (Negligence)

**PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", AND DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE AS FOLLOWS:**

13. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

14. At all times herein mentioned, defendants, their "alternate entities," and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos and other products containing asbestos. A list of defendants and their asbestos containing products is attached hereto as Exhibit "C."

15. At all times herein mentioned, Defendants, their "alternate entities", and each of them, singularly and jointly, negligently and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, failed to provide adequate use instructions for eliminating the health risks inherent in the use of the products labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged, and advertised a certain substance, the generic name of which is asbestos, and other products and equipment containing said substance, in that said substance proximately caused personal injuries to users, consumers, workers, bystanders, and others, including Plaintiff CHARLES P. LOCKETT (hereinafter collectively called "exposed persons"), while being

7

used in a manner that was reasonably foreseeable, thereby rendering said substance unsafe and dangerous for use by the "exposed persons".

16. Defendants, their "alternate entities," and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and Defendants, and each of them, breached said duty of due care.

17. Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos would be transported by truck, rail, ship and other common carriers, and that in the shipping process the products would break, crumble or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to: sawing, chipping, hammering, scraping, sanding, breaking, removal, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff CHARLES P. LOCKETT herein, would use or be in proximity of and exposed to said asbestos fibers.

18. Defendants, their "alternate entities", and each of them, knew, or should have known, and intended that the aforementioned asbestos and asbestos-containing products and equipment would be used or handled as specified in paragraph 26 above and Exhibits "A," "B", "C" and each of them attached hereto and incorporated by reference herein, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including Plaintiff CHARLES P. LOCKETT herein, would be in proximity to and exposed to said asbestos fibers from defendants' products.

19. Plaintiff CHARLES P. LOCKETT has used, handled, or was otherwise exposed to asbestos and asbestos-containing products as set forth in Exhibit "C" referred to herein in a manner that was reasonably foreseeable. As a result of the exposure to defendants and each of their products

8

COMPLAINT

Case 5:14-cv-00359 Document 9644-1 Filed 01/29/14 Page 28 of 68

as set forth herein, asbestos entered plaintiff's body. Plaintiff CHARLES P. LOCKETT's exposure to asbestos that entered his body from defendants and each of their asbestos-containing products (Exhibit C) occurred at various locations and times as set forth in Exhibit "A", which is attached hereto and incorporated by reference herein.

20. As a direct and proximate result of the conduct of the Defendants, their "alternate entities", and each of them, as aforesaid, Plaintiff CHARLES P. LOCKETT's exposure to asbestos and asbestos-containing products caused Plaintiff CHARLES P. LOCKETT's injuries, as set forth in Exhibit "B", which is attached hereto and incorporated by reference herein. Each of defendants' asbestos containing products was a substantial factor in bringing about Plaintiff CHARLES P. LOCKETT's injuries.

21. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer and other serious diseases are caused by inhalation of asbestos fibers without perceptible trauma and that said disease results from exposure to asbestos and asbestos-containing products over a period of time.

22. Defendants, their "alternate entities", and each of them, and their officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

23. Defendants, their "alternate entities", and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities", and each of them, and each Defendant's officers, directors, and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

24. The herein-described conduct of said Defendants, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and

indifference to the safety and health of "exposed persons". Plaintiff CHARLES P. LOCKETT, for the

sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and

each of them, as hereinafter set forth.

**SECOND CAUSE OF ACTION**

**(Strict Liability)**

**AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

25. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every

paragraph of the General Allegations above.

26. At all times herein mentioned, defendants, their "alternate entities," and each of them,

were and are engaged in the business of researching, manufacturing, fabricating, designing,

modifying, labeling, instructing, assembling, distributing, leasing, buying, offering for sale, supplying,

selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting,

rebranding, manufacturing for others, packaging and advertising a certain product, namely asbestos

and other products containing asbestos. A list of defendants and their asbestos containing products is

attached hereto as Exhibit "C."

27. Defendants, their "alternate entities", and each of them, knew and intended that the above-

referenced asbestos and asbestos-containing products would be used by the purchaser or user without

inspection for defects therein or in any of their component parts and without knowledge of the hazards

involved in such use.

28. Said asbestos and asbestos-containing products were defective and unsafe for their

intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The

defect existed in the said products at the time they left the possession of the Defendants, their

"alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including Plaintiff CHARLES P. LOCKETT herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe, and dangerous for use.

29. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons." Said Defendants, their "alternate entities", and each of them, further failed to adequately warn of the risks to which Plaintiff CHARLES P. LOCKETT, and others similarly situated were exposed.

30. In researching, manufacturing, fabricating, designing, modifying, testing, or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, re-branding, manufacturing for others, packaging, and advertising asbestos and asbestos-containing products and equipment, Defendants, their "alternate entities", and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, including, but not limited to, asbestosis, other lung damages, and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said Defendants, their "alternate entities", and each of them.

31. Defendants, their "alternate entities" and each of them, were aware that members of the general public and other "exposed persons," who would come in contact with their asbestos and asbestos-containing products, had no knowledge or information indicating that asbestos or asbestos-containing products could cause injury, and said Defendants, their "alternate entities," and each of them, knew that members of the general public, and other "exposed persons," who came in contact with asbestos and asbestos-containing products, would assume, and in fact did assume, that exposure to

asbestos and asbestos-containing products was safe, when in fact said exposure was extremely hazardous to health and human life.

32. With said knowledge, said Defendants, their "alternate entities," and each of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute, lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair, market, warrant, re-brand, manufacture for others, package, and advertise said asbestos and asbestos-containing products without attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and asbestos-containing products, Defendants, their "alternate entities," and each of them, intentionally failed to reveal their knowledge of said risk, failed to warn of said risk and consciously and actively concealed and suppressed said knowledge from "exposed persons" and members of the general public, thus impliedly representing to "exposed persons" and members of the general public that asbestos and asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their "alternate entities", and each of them, engaged in this conduct and made these implied representations with the knowledge of the falsity of said implied representations.

33. Plaintiffs allege that the aforementioned defendants, their "alternate entities," and each of them impliedly warranted their asbestos and asbestos-containing products, to be safe for their intended use but that their asbestos and asbestos-containing products created an unreasonable risk of bodily harm to exposed persons.

34. Plaintiffs further allege Plaintiff CHARLES P. LOCKETT's injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their "alternate entities," and each of them

35. Plaintiff CHARLES P. LOCKETT relied upon defendants', their "alternate entities'," and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products. As a direct, foreseeable and proximate result thereof, Plaintiff CHARLES P. LOCKETT suffered injury as alleged herein.

36. The above-referenced conduct of said Defendants, their "alternate entities," and each of them, was motivated by the financial interest of said Defendants, their "alternate entities," and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, re-branding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.

37. In pursuance of said financial motivation, Defendants, their "alternate entities", and each of them, consciously disregarded the safety of "exposed persons" and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including Plaintiff CHARLES P. LOCKETT.

38. Defendants, their "alternate entities," and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

39. Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

40. The herein-described conduct of said defendants, their "alternate entities," and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff CHARLES P. LOCKETT, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

41. As a direct and proximate result thereof, Plaintiffs have suffered the damages previously alleged.

WHEREFORE, Plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (False Representation Under Restatement of Torts Section 402-B)

**AS AND FOR A FURTHER, THIRD, SEPARATE AND DISTINCT CAUSE OF ACTION FOR FALSE REPRESENTATION UNDER RESTATEMENT OF TORTS SECTION 402-B, PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBITS "C", DOES 1-300, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE AS FOLLOWS:**

42. Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations, First (Negligence) and Second (Strict Liability) Causes of Action above.

43. At the aforementioned time when Defendants, their "alternate entities", and each of them, researched, manufactured, fabricated, designed, modified, tested or failed to test, inadequately warned or failed to warn, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, re-branded, manufactured for others, packaged and advertised the said asbestos and asbestos-containing products, as hereinabove set forth, the Defendants, their "alternate entities", and each of them, expressly and impliedly represented to members of the general public, including the purchasers and users of said product, and other "exposed persons", including, without limitation, Plaintiff CHARLES P. LOCKETT and his

14

COMPLAINT

employers, that asbestos and asbestos-containing products, were of merchantable quality, and safe for the use for which they were intended.

44. The purchasers and users of said asbestos and asbestos-containing products, and other "exposed persons", including, without limitation, Plaintiff CHARLES P. LOCKETT, and his employers, relied upon said representations of Defendants, their "alternate entities", and each of them, in the selection, purchase, and use of asbestos and asbestos-containing products.

45. Said representation by Defendants, their "alternate entities", and each of them, were false and untrue, and Defendants knew at the time they were untrue, in that the asbestos and asbestos-containing products and equipment were not safe for their intended use, nor were they of merchantable quality as represented by Defendants, their "alternate entities", and each of them, in that asbestos and asbestos-containing products and equipment have very dangerous properties and defects whereby said products cause asbestosis, other lung damages, and cancer, and have other defects that cause injury and damage to the users of said products and other "exposed persons", thereby threatening the health and life of said persons, including Plaintiff CHARLES P. LOCKETT herein.

46. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, as hereinafter set forth.

///

///

///

///

///

///

COMPLAINT

# FOURTH CAUSE OF ACTION

## (Intentional Tort/Intentional Failure to Warn)

AS AND FOR A FURTHER, FOURTH, SEPARATE AND DISTINCT CAUSE OF ACTION
FOR AN INTENTIONAL TORT UNDER CIVIL CODE SECTIONS 1708 THROUGH 1710,
PLAINTIFFS COMPLAIN OF DEFENDANTS ON EXHIBIT "C", DOES 1-300, THEIR
"ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGE:

47. Plaintiffs hereby incorporate by reference, as though fully set forth herein, each and every allegation contained in the General Allegations, and the First and Third Causes of Action herein, excepting there from allegations pertaining to negligence.

48. At all times pertinent hereto, the Defendants, their "alternate entities", and each of them, owed Plaintiffs a duty, as provided for in Section 1708, 1709, and 1710 of the Civil Code of the State of California, to abstain from injuring the person, property, or rights of the Plaintiffs. When a duty to act was imposed, as set forth herein, the Defendants, their "alternate entities", and each of them, did do the acts and omissions in violation of that duty, thereby causing injury to the Plaintiffs as is more fully set forth herein. Such acts and omissions consisted of acts falling within Section 1709 (Fraudulent Deceit) and Section 1710 (Deceit) of the Civil Code of the State of California and, more specifically, included suggestions of fact which were not true and which Defendants, their "alternate entities", and each of them, did not believe to be true; assertions of fact which were not true and which Defendants, their "alternate entities", and each of them, had no reasonable ground for believing to be true, and the suppression of fact when a duty existed to disclose it, all as more fully set forth herein; the violation of any one such duty gave rise to a cause of action for violation of rights of the Plaintiffs as provided for in the aforementioned Civil Code sections.

49. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained the injuries and damages alleged herein.

50. As a direct and proximate result of said false representations by Defendants, their "alternate entities", and each of them, Plaintiffs sustained great pain and suffering.

51. Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Plaintiff CHARLES P. LOCKETT, and others in Plaintiff CHARLES P. LOCKETT's position working in close proximity with such materials. The Defendants, their "alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiff CHARLES P. LOCKETT, and others in his position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a)     Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiff CHARLES P. LOCKETT and others in his position working in close proximity with such materials, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them. By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff CHARLES P. LOCKETT to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b)     Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to Plaintiff CHARLES P. LOCKETT and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the

hazardous nature thereof when Defendant, their "alternate entities", and each of them, were bound to disclose such information;

(c)     Defendants, their "alternate entities", and each of them, sold the aforementioned products, materials, and equipment to Plaintiff CHARLES P. LOCKETT's employers and others without advising him, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities", and each of them, caused to be positively asserted to Plaintiff CHARLES P. LOCKETT that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff CHARLES P. LOCKETT to work with or in close proximity to such materials;

(d)     Defendants, their "alternate entities", and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities", and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e)     Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff CHARLES P. LOCKETT by the suggestions and deceptions set

18

COMPLAINT

forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Defendants, their "alternate entities", and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff CHARLES P. LOCKETT. Such facts did mislead Plaintiff CHARLES P. LOCKETT and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff CHARLES P. LOCKETT the true facts concerning such knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to disclose;

(g) Defendants, their "alternate entities", and each of them, failed to warn Plaintiff CHARLES P. LOCKETT and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

(h)     Defendants, their "alternate entities", and each of them, failed to provide Plaintiff CHARLES P. LOCKETT with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff CHARLES P. LOCKETT and others applying and installing such material;

(i)     Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiff CHARLES P. LOCKETT the true nature of the industrial exposure of Plaintiff CHARLES P. LOCKETT and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities", and each of them, also concealed from Plaintiff CHARLES P. LOCKETT and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

(j)     Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff CHARLES P. LOCKETT so that said physicians could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

(k)     Defendants, their "alternate entities", and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff CHARLES P. LOCKETT's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff CHARLES P.

COMPLAINT

LOCKETT and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

52. Defendants, their "alternate entities", and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff CHARLES P. LOCKETT was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

53. Defendants, their "alternate entities", and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff CHARLES P. LOCKETT about the true facts, and knowing that Plaintiff CHARLES P. LOCKETT did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiff CHARLES P. LOCKETT to remain unaware of the true facts and to induce Plaintiff CHARLES P. LOCKETT to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

54. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiff CHARLES P. LOCKETT sustained the injuries and damages alleged herein. The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff CHARLES P. LOCKETT, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

///

## FIFTH CAUSE OF ACTION

### (Premises Owner/Contractor Liability)

**AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF THE DEFENDANTS LISTED ON EXHIBIT E, AND DOES 301-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS") AND ALLEGE AS FOLLOWS:**

55. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

56. At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, each of which is listed on attached Exhibit "E" which exhibit is incorporated by this reference, was a business, or successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and/or toxic substances to be constructed, installed, maintained, used, managed, and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein-named defendants is liable for its own tortuous conduct and that of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity that caused the presence as aforesaid of said asbestos- and silica-containing products and insulation and other toxic substances. Said defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the

ability to assume the risk-spreading role of each such "alternate entity", and that each such defendant

enjoys the goodwill originally attached to each such "alternate entity".

57. At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY

DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed and/or controlled

the following premises Plaintiff CHARLES P. LOCKETT worked and/or was present at. The following

information provided is preliminary and is based on recall of events covering many years, and further

investigation and discovery may produce additional information: ATTACHED EXHIBITS A and B.

Additionally, Plaintiff CHARLES P. LOCKETT and/or his family members might have been present at

other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations

and on other occasions.

58. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR

LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing

products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing

products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and

silica-containing insulation, other building materials, products, and toxic substances to be constructed,

installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid

respective premises, by their own workers and/or by various contractors, and caused the release of

dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby

created a hazardous and unsafe condition to Plaintiff CHARLES P. LOCKETT, his family members and

other persons exposed to said asbestos and toxic substances while present at said premises.

59. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY

DEFENDANTS, and each of them, knew or in the exercise or ordinary and reasonable care should have

known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition

and unreasonable risk of harm and personal injury to Plaintiff CHARLES P. LOCKETT, and other workers or persons so exposed, present at each of the aforesaid respective premises.

60. At all times relevant herein, Plaintiff CHARLES P. LOCKETT and/or his family members entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and invitation. In so doing, Plaintiff CHARLES P. LOCKETT was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

61. Plaintiff CHARLES P. LOCKETT at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

62. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, remained in control of the premises where Plaintiff CHARLES P. LOCKETT and/or plaintiff's family members were performing their work.

63. At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS owed to Plaintiff CHARLES P. LOCKETT, and others similarly situated, a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said persons.

64. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection

for, defects or dangerous conditions; and that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises.

65. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect, survey, or control said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous conditions and hazards on said premises.

66. Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products and toxic substances to be constructed, installed, maintained, used, replaced, repaired, and/or removed on each of their aforesaid respective premises, by their own workers and/or by employing various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby injured plaintiff.

67. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, should have recognized that the work of said contractors would create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or would harm plaintiff and others unless special precautions were taken.

68. In part, Plaintiff CHARLES P. LOCKETT was exposed to dangerous quantities of asbestos fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.

69. The work of contractors on premises controlled by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS created unsafe premises and an unsafe work

place by reason of the release of dangerous quantities of toxic substances including, but not limited to, asbestos.

70. The unsafe premises or work place was created, in part, by the negligent conduct of the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS. Said negligent conduct includes, but is not limited to:

(a) Failure to warn of asbestos and other toxic dusts;

(b) Failure to suppress the asbestos-containing or toxic dusts;

(c) Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

(d) Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e) Failure to inspect and/or test the air;

(f) Failure to provide medical monitoring; and

(g) Failure to select and hire a careful and competent contractor or subcontractor.

71. The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code of Procedure, section 1714, and California Labor Code, section 6400, et seq., or Health and Safety Code, section 40.200, et seq., and regulations promulgated there under. Therefore, the Premises Owner/Contractor Liability Defendants are responsible for any breach of said duties whether by themselves or others.

72. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other governmental regulations promulgated by the United States Government, the State of California, and others, including, but not limited to, the General Industry Safety Orders promulgated pursuant to California Labor Code, section 6400 and the California Administrative Code under the Division of Industrial Safety,

COMPLAINT

Department of Industrial Relations, including, but not limited to: Title VIII, Group 9 (Control of Hazardous Substances), Article 81, sections 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table 1 of said Safety Orders; additionally, California Health and Safety Code, section 40.200, et seq., which empowers the South Coast Area Air Quality Management District to promulgate regulations including, but limited to: S.C.A.A.Q.M.D. Rule 1403; Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. -- The National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions. Defendants' violations of said codes include, but are not limited to:

(a)     Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b)     Failing to segregate work involving the release of asbestos or other toxic dusts;

(c)     Failing to suppress dust using prescribed ventilation techniques;

(d)     Failing to suppress dust using prescribed "wet down" techniques;

(e)     Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

(f)     Failing to provide approved respiratory protection devices;

(g)     Failing to ensure "approved" respiratory protection devices were used properly;

(h)     Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

(i)     Failing to provide adequate housekeeping and clean-up of the work place;

(j)     Failing to properly warn of the hazards associated with asbestos as required by these statutes;

(k)     Failing to properly report renovation and disturbance of asbestos-containing materials, including, but not limited to: S.C.A.A.Q.M.D. Rule 1403;

(l)     Failing to have an asbestos removal supervisor as required by regulation;

(m)     Failing to get approval for renovation as required by statutes; and

Failing to maintain records as required by statute.

73.     PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, were the "statutory employer" of Plaintiff CHARLES P. LOCKETT and/or his family members as defined in the California Labor Code and California case law.

74.     Plaintiff CHARLES P. LOCKETT at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances, or statutes.

75.     At all times mentioned herein, Plaintiff CHARLES P. LOCKETT was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

76.     At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

COMPLAINT

77. As a legal consequence of the foregoing, Plaintiff CHARLES P. LOCKETT developed an asbestos-related illness, which has caused great injury as previously set forth, and plaintiffs have suffered damages as alleged herein.

78. Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and of their officers, directors, and managing agents.

79. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

80. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

81. The herein-described conduct of said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff CHARLES P. LOCKETT, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

## SIXTH CAUSE OF ACTION

### [General Negligence]

**AS AND FOR A SIXTH, FURTHER, AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS ON EXHIBIT "E,"; DOES 301-350 INCLUSIVE; THEIR ALTERNATE ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SIXTH CAUSE OF ACTION FOR GENERAL NEGLIGENCE AND ALLEGE AS FOLLOWS:**

82. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

83. At all times herein mentioned, defendants selected, supplied, and distributed asbestos containing materials to their employees and others for use during their regular work activities in areas

29

COMPLAINT

where defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff CHARLES P. LOCKETT worked and/or spent time as alleged herein in Exhibit A.

84. Said employees and others handled, disturbed and otherwise manipulated these asbestos containing materials causing the release of asbestos fibers and dust.

85. Defendants were negligent in selecting, supplying, and distributing the asbestos containing products in that said products were unsafe in that they released asbestos fibers and dust into air when used which would be inhaled by Plaintiff CHARLES P. LOCKETT and settled onto his clothes, shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and by-standers including Plaintiff CHARLES P. LOCKETT would be exposed to dangerous asbestos dust.

86. The asbestos and asbestos-containing materials described herein were unsafe in that handling and disturbing products, which contain asbestos, causes the release of asbestos fibers into the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of asbestos containing materials by defendants' employees and other caused personal injuries to Plaintiff CHARLES P. LOCKETT.

87. At all times herein mentioned, defendants knew or should have known that its employees and bystanders thereto, including Plaintiff CHARLES P. LOCKETT, frequently encountered asbestos-containing products and materials during the course and scope of their work activities.

88. At all times herein mentioned, defendants knew or should have known that the asbestos-containing materials encountered by its employees and bystanders thereto including Plaintiff CHARLES P. LOCKETT, were unsafe in that harmful asbestos fibers were released during the use, handling, breaking, or other manipulation of asbestos-containing products and materials, and that once released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts of those exposed, where further activity causes the fibers to once again be released into the air where they can be inhaled, all of which causes serious disease and/or death.

89. At all times herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that absent adequate training and supervision, their employees and bystanders thereto including Plaintiff CHARLES P. LOCKETT were neither qualified nor able to identify asbestos-containing products nor to identify the hazardous nature of their work activities involving asbestos-containing products.

90. At all times herein mentioned, Plaintiff CHARLES P. LOCKETT was unaware of the dangerous condition and unreasonable risk of personal injury created by the aforesaid presence and use of asbestos-containing products and materials.

91. At all times herein mentioned, defendants, and each of them knew, or in the exercise of reasonable diligence should have known, that workers and bystanders thereto, including Plaintiff CHARLES P. LOCKETT would bring dangerous dust home from the workplace and contaminate their homes, potentially causing injury to others off the premises.

92. At all times herein mentioned, defendants had a duty to use due care in the selection, supply, distribution and disturbance of asbestos containing products and materials to its employees, to adequately instruct, train, and supervise their employees and to implement adequate safety policies and procedures to protect workers and persons encountering those workers, including Plaintiff CHARLES P. LOCKETT, from suffering injury as a result of the asbestos hazards encountered and created by the work of defendants' employees and others.

93. Defendants' duties as alleged herein exist and existed independently of defendants' duties to maintain their premises in reasonably safe condition, free from concealed hazards.

94. Defendants negligently selected, supplied, and distributed the asbestos containing materials and failed to adequately train or supervise their employees to identify asbestos-containing products and materials; to ensure the safe handling of asbestos-containing products and materials encountered during the course of their work activities; and to guard against inhalation of asbestos

fibers and against the inhalation of asbestos fibers by those who would come into close contact with them after they had used, disturbed, or handled, said asbestos-containing products and materials during the course and scope of their employment by defendants.

95. Defendants failed to warn its employees and bystanders thereto including Plaintiff CHARLES P. LOCKETT, of the known hazards associated with asbestos and the asbestos materials they were using and/or disturbing.

96. As a direct and proximate result of the conduct of defendants in selecting, supplying, distributing and disturbing asbestos-containing materials and failing to adequately train and supervise their employees and failing to adopt and implement adequate safety policies and procedures as alleged herein, Plaintiff CHARLES P. LOCKETT became exposed to and inhaled asbestos fibers, which was a substantial factor causing Plaintiff CHARLES P. LOCKETT to develop asbestos-related conditions and diseases from which plaintiffs have suffered damages as herein alleged.

97. Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and of their officers, directors, and managing agents.

98. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

99. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

100. The herein-described conduct of said defendants was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons." Plaintiff CHARLES P. LOCKETT, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants and each of them, as hereinafter set forth.

### SEVENTH CAUSE OF ACTION

**[Vicarious Liability of Defendants Based upon Respondent Superior]**

**AS AND FOR A SEVENTH, FURTHER, AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS ON EXHIBITS "E,"; DOES 301 -350 INCLUSIVE; THEIR ALTERNATE ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SEVENTH CAUSE OF ACTION FOR VICARIOUS LIABILITY OF DEFENDANTS BASED UPON RESPONDEAT SUPERIOR, AND ALLEGE AS FOLLOWS:**

101. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

102. Prior to and during all relevant times defendants employed workers (hereinafter "employees") in areas where defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff worked and/or spent time as alleged herein in Exhibit A.

103. At all times herein mentioned, defendants' employees frequently encountered asbestos-containing products, materials, and debris during the course and scope of their employment, and during their regular work activities negligently disturbed asbestos-containing materials to which Plaintiff was exposed.

104. Employees handling and disturbing asbestos-containing products in plaintiff's vicinity were the agents and employees of defendants and at all times herein relevant were subject to the control of defendants with respect to their acts, labor, and work involving (a) the removal, transport, installation, cleaning, handling, and maintenance of asbestos-containing products, materials, and debris, and (b) the implementation of safety policies and procedures. Defendants controlled both the means and manner of performance of the work of their employees as described herein.

105. Employees handling and disturbing asbestos-containing products in Plaintiff CHARLES P. LOCKETT's vicinity received monetary compensation from defendants in exchange for the work

---

33

performed as described herein, and these employees performed the work as described herein in the transaction and furtherance of the business of defendants.

106. Harmful asbestos fibers were released during defendants' employees' use, handling, breaking, or other manipulation of asbestos-containing products and materials.

107. Once released, the asbestos fibers were inhaled; they also alighted on the clothes, shoes, skin, hair, and body parts of those exposed, including Plaintiff CHARLES P. LOCKETT, and on the surfaces of work areas, where further activity caused the fibers to once again be released into the air and inhaled.

108. The asbestos and asbestos-containing materials were unsafe in that handling and disturbing products which contain asbestos causes the release of asbestos fibers into the air, and onto surrounding surfaces including persons in the area and the inhalation of asbestos fibers causes serious disease and death.

109. Defendants' employees' use, handling and manipulation of asbestos-containing materials, as required by their employment and occurring during the course and scope of their employment, did, in fact cause personal injuries, including Lung Cancer and other lung damage to exposed persons, including Plaintiff CHARLES P. LOCKETT.

110. Defendants' employees were negligent in their use, handling and manipulation in that they failed to isolate their work with asbestos and/or to suppress asbestos fibers from being released into the air and surrounding areas. They also failed to take appropriate steps to learn how to prevent exposure to asbestos, failed to warn and/or adequately warn Plaintiff CHARLES P. LOCKETT that he was being exposed to asbestos, failed to adequately warn him of the harm associated with his exposure to asbestos and/or provide him with protection to prevent his inhalation of asbestos.

111. Defendants' employees knew or should have known that failure to take such steps would result in exposure to bystanders including Plaintiff CHARLES P. LOCKETT.

112. Defendants' employees owed Plaintiff CHARLES P. LOCKETT a duty to exercise due care and diligence in their activities while he was lawfully on the premises so as not to cause him harm.

113. Defendants' employees breached this duty of case as heretofore described.

114. At all times herein mentioned, Plaintiff CHARLES P. LOCKETT was unaware of the dangerous condition and unreasonable risk of personal injury created by defendants' employees' use of and work with asbestos-containing products and materials.

115. As a direct result of the defendants' employees conduct, Plaintiff CHARLES P. LOCKETT's exposure to asbestos and asbestos-containing materials, each individually and together, caused severe and permanent injury to him and the damages and injuries as complained of herein to plaintiffs and each of them.

116. The risks herein alleged and the resultant damages suffered by Plaintiff CHARLES P. LOCKETT were typical of or broadly incidental to defendants' business enterprise. As a practical matter, the losses caused by the torts of defendants' employees as herein alleged were sure to occur in the conduct of defendants' business enterprise. Nonetheless, defendants engaged in, and sought to profit by, their business enterprises, which, on the basis of past experience, involved harm to others through the torts of employees.

117. Based on the foregoing, defendants as the employers of said employees are vicariously liable under the doctrine of respondent superior for all negligent acts and omissions committed by their employees in the course and scope of their work that caused harm to Plaintiff CHARLES P. LOCKETT.

WHEREFORE, plaintiffs pray judgment against defendants and each of them, as hereinafter set forth. Eighth

///

COMPLAINT

## EIGHTH CAUSE OF ACTION

### (Loss of Consortium)

**AS AND FOR A FURTHER, EIGHTH, SEPARATE, AND DISTINCT CAUSE OF ACTION FOR LOSS OF CONSORTIUM, PLAINTIFF DORI LOCKETT COMPLAINS OF DEFENDANTS, DOES 1-500, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, AND ALLEGES AS FOLLOWS:**

121. Plaintiff DORI LOCKETT incorporates by reference, each and every paragraph of the General Allegations and the First through EIGHTH Causes of Action herein.

122. Plaintiffs CHARLES P. LOCKETT and plaintiff DORI LOCKETT were married on To be Provided at a later date and at all times relevant to this action were, and are now, husband and wife.

123. Subsequent to his injuries, Plaintiff CHARLES P. LOCKETT was and is unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home. As a proximate result thereof, DORI LOCKETT was deprived of the consortium of her spouse, including the performance of duties, all to her damages, in an amount presently unknown but which will be proved at the time of trial.

124. As a direct and proximate result of the acts of Defendants, their "alternate entities", and each of them, and the severe injuries caused thereby to Plaintiff CHARLES P. LOCKETT as set forth in this complaint, Plaintiff DORI LOCKETT has suffered, and for a long period of time will continue to suffer, loss of consortium, companionship, love and affection of said spouse, and has suffered severe mental and emotional distress and general nervousness as a result thereof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities", and each of them, in an amount to be proved at trial in each individual case, as follows:

Plaintiff CHARLES P. LOCKETT:

     1.     For plaintiff's general damages according to proof;

     2.     For plaintiff's loss of income, wages, and earning potential according to proof;

     3.     For plaintiff's medical and related expenses according to proof;

COMPLAINT

4.      For exemplary and punitive damages according to proof;

Plaintiff DORI LOCKETT:

5.      For plaintiff's damages for loss of consortium and/or society according to proof;

Plaintiffs CHARLES P. LOCKETT and DORI LOCKETT:

6.      For plaintiffs' cost of suit herein;

7.      For such other and further relief as the Court may deem just and proper, including costs and prejudgment interest as provided in C.C.P. section 998, C.C.P. section 1032, and related provisions of law.


DATED: July 9, 2013             NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP


By: _____
      Ethan A. Horn
      Attorney for Plaintiffs

1

## DEMAND FOR JURY TRIAL

2  Plaintiffs hereby demand trial by jury as to all issues so triable.

3

4

DATED: July 9, 2013                     NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP

5

6                                        By: _____
7                                             Ethan A. Horn
                                             Attorney for Plaintiffs
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "A"

Plaintiff CHARLES P. LOCKETT's exposure to asbestos and asbestos-containing products

occurred at various locations and times within, among other states, California, as set forth below:

| Employer | Location of Exposure | Position | Start Date | End Date |
|---|---|---|---|---|
| Union/Non Union Work | Various refinery & industrial sites in:<br><br>• Alameda<br>• Los Angeles<br>• Contra Costa<br>• CA Counties<br>• WA Counties | Pipefitter | 1980 | 2009 |
| Shade Tree | Various Residences in/near Ventua, CA | Mechanic | 1950 | 1960 |
| Contruction (Personal) | Seattle, WA | | 1970 | 1973 |
| Todd Shipyard | Seattle, WA | Pipefitter | 1970 | 1980 |
| Lockheed Shipyard | Seattle, WA | Pipefitter | 1970 | 1980 |

COMPLAINT

1

<u>EXHIBIT "B"</u>

2     Plaintiff CHARLES P. LOCKETT's exposure to asbestos and asbestos-containing products

3  caused severe and permanent injury to plaintiff including, but not limited to, breathing difficulties,

4  asbestosis, pleural plaques, lung cancer, mesothelioma and/or other cancer and other lung damage.

5     Plaintiff CHARLES P. LOCKETT was diagnosed with Lung Cancer in or about January

6  1, 2012.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT "C"

| DEFENDANT | PRODUCTS CONTAINING ASBESTOS MANUFACTURED AND/OR SUPPLIED BY DEFENDANT BASED UPON CURRENT INFORMATION AND BELIEF |
|---|---|
| A.O. SMITH CORPORATION | Boilers, Gaskets, Packing, Insulation |
| AIR & LIQUID SYSTEMS CORPORATION, a/k/a BUFFALO PUMPS, INC.; | Forced Draft Blowers, Pumps |
| ALLIED INSULATION SUPPLY COMPANY, INC. | Insulation Supplier |
| AMERICAN OPTICAL COMPANY | Protective Clothing & Masks |
| ARMSTRONG INTERNATIONAL, INC | Pumps, Valves, Gaskets & Packing |
| ASBESTOS CORPORATION LTD.; | Asbestos Fiber |
| BASF CATALYSTIC, LLC | Fiber Supplier |
| BORGWARNER MORSE TEC, INC. AS SUCCESSOR-BY-MERGER to BORG-WARNER CORPORATION | Automotive Friction |
| BURNHAM LLC, f/k/a BURNHAM CORPORATION | Boilers, Gaskets, Packing & Insulation |
| CARRIER CORPORATION | Boilers, Compressors & HVAC |
| CARVER PUMP COMPANY | Pumps, Gaskets & Packing |
| CBS CORPORATION, A DELAWARE CORP. f/k/a VIACOM INC., SUCCESSOR BY MERGER TO CBS CORP., A PENNSYLVANIA CORP. F/K/A WESTINGHOUSE ELECTRIC CORP. | Turbines, Phoenalics, Pumps, Electrical Equipment |
| CERTAINTEED CORPORATION | Asbestos Cement, Pipe & Building Material |
| CHICAGO PNEUMATIC TOOL COMPANY, LLC | Grinding Wheels |
| CLEAVER-BROOKS, INC | Boilers, Gaskets, Packing & Insulation |
| CRANE CO. | Pumps, Valves, Gaskets & Packing |
| DAP, INC | Building Material |
| DORSETT & JACKSON, INC | Fiber Supplier |
| ELEMENTIS CHEMICALS, INC. | Fiber Supplier |
| ELLIOT COMPANY | Turbines |
| FABCO AUTOMOTIVE CORPORATION | Automotive Friction |
| FERRO ENGINEERING | Foundry Sands |
| FMC CORPORATON INDIVIDUALLY & AS SUCCESSOR TO NORTHERN PUMP COMPANY, COFFIN, PEERLESS PUMP COMPANY AND CHICAGO PUMP COMPANY | Pumps, Gaskets & Packing |
| FORD MOTOR COMPANY | Automotive Friction |
| FOSECO INC. | Foundry Sands & Sleeves |

41

| | | |
|---|---|---|
| 1 | **FOSTER WHEELER ENERGY CORPORATION** | Boilers, Gaskets, Packing & Insulation |
| | **FRYER-KNOWLES INC.** | Asbestos-Containing Decking Material |
| 2 | **GENERAL ELECTRIC COMPANY** | General Electric Turbines, Electrical Equipment |
| 3 | **GENUINE PARTS COMPANY** | Automotive Friction Products |
| 4 | **GEORGIA PACIFIC, LLC f/k/a GEORGIA-PACIFIC CORPORATION** | Building Materials |
| 5 | **GRINNELL, LLC** | Insulation Supplier |
| 6 | **HANSON PERMANENTE CEMENT, INC.** | Building Materials |
| | **HILL BROTHERS CHEMICAL COMPANY** | Asbesots Decking |
| 7 | **HOLLINGSWORTH & VOSE COMPANY** | Asbestos Fiber Supplier |
| 8 | **HOMASOTE COMPANY** | Building Materials |
| 9 | **HONEYWELL INTERNATIONAL, INC., f/k/a ALLIEDSIGNAL, INC., f/k/a THE BENDIX CORPORATION** | Automotive Friction Products |
| 10 | | |
| 11 | **IMO INDUSTRIES, INC** | Pumps & Valves |
| | **INGERSOLL-RAND COMPANY** | Pumps, Valves, Compressors, Gaskets & Packing |
| 12 | **ITT CORPORATION** | Pumps, Valves, Gaskets & Packing |
| 13 | **J-M MANUFACTURING COMPANY, INC** | Asbestos Cement Pipes |
| 14 | **JOHN CRANE, INC.** | Packing & Gaskets |
| | **JOHN K. BICE, INC.** | Fiber Supplier |
| 15 | **KAISER GYPSUM COMPANY, INC** | Building Materials |
| | **KELLY MOORE PAINT COMPANY** | Builiding Materials |
| 16 | **LORILLARD TOBACCO COMPANY** | Asbestos-Containing Cigaretts |
| 17 | **MAREMOUNT CORPORATION** | Automotive Friction Products |
| | **MELRATH GASKET, INC** | Packing & Gaskets |
| 18 | **METALCLAD INSULATION CORPORATION** | Insulation Supplier |
| 19 | **NMBFIL, INC.** | Autobody  Repair Putty |
| 20 | **OAKFABCO, INC.** | Boilers, Gaskets, Packing & Insulation |
| | **PARKER-HANNIFIN CORPORATION** | Packing & Gaskets |
| 21 | **PEP BOYS MANNY MOE & JACK OF CALIFORNIA** | Asbestos Friction Products |
| 22 | **PNEUMO ABEX CORPORATION** | Automotive Friction Products |
| 23 | **PRIMESOURCE BUILDING PRODUCTS, INC.** | Building Material |
| 24 | **REPUBLIC SUPPLY COMPANY** | Insulation Supplier, Equipment Supplier, Gasket/Packing Supplier |
| 25 | **RICH-TEX, INC** | Building material |
| 26 | **RILEY POWER, INC., f/k/a RILEY STOKER CORPORATION, INDIVIDUALLY AND AS SUCCESSOR IN INTEREST TO UNION IRON WORKS** | Boilers, Gaskets, Packing & Insulation |
| 27 | | |
| 28 | | |

COMPLAINT

| | |
|---|---|
| RSCC WIRE & CABLE LLC, INDIVIDUALLY AND AS SUCESSOR-IN-INTEREST TO RSCC WIRE & CABLE, INC. | Asbestos Cable & Wire |
| SOCO-WEST, INC., f/k/a BRENNTAG WEST, INC., f/k/a SOCO-LYNCH CORPORATION, SUCCESSOR-IN-INTEREST TO WESTERN CHEMICAL & MANUFACTURING CO | Asbestos Fiber Supplier |
| THE LUNKENHEIMER COMPANY | Pumps, Valves, Gaskets & Packing |
| THE WILLIAM POWELL COMPANY | Pumps, Valves, Gaskets & Packing |
| TRANE US, INC., f/k/a AMERICAN STANDARD, INC | Boilers, Gaskets, Packing & Insulation |
| UNION CARBIDE CORPORATION | Fiber Supplier |
| UNION OIL COMPNAY OF CALIFORNIA | Asbestos Insulation |
| VELAN VALVE CORP | Pumps, Valves, Gaskets & Packing |
| WARREN PUMPS, LLC | Pumps, Valves, Gaskets & Packing |
| ZURN INDUSTRIES, LLC, INDIVIDUALLY AND AS SUCESSOR TO ERIE CITY IRONWORKS | Boilers, Gaskets, Packing & Insulation |

COMPLAINT

<u>EXHIBIT "D"</u>

| DEFENDANT | ALTERNATE ENTITY |
|---|---|
| AIR & LIQUID SYSTEMS CORPORATION | BUFFALO PUMPS, INC. |
| BORGWARNER MORSE TEC, INC. | BORG-WARNER CORPORATION |
| BURNHAM, LLC | BURNHAM CORPORATION |
| CBS CORPORATION | VIACOM INC., PENNSYLVANIA CORP. WESTNGHOUSE ELECTRIC CORP. |
| CLEAVER-BROOKS, INC. | CLEAVER-BROOKS, A DIVISION OF AQUA-CHEM, INC. |
| ELLIOTT COMPANY | ELLIOTT TURBOMACHINERY CO., INC. |
| EXXONMOBIL OIL CORPORATION | MOBIL OIL CORPORATION |
| FERRO ENGINEERING | ON MARINE SERVICES |
| FMC CORPORATION | NORTHERN PUMP COMPANY, COFFIN, PEERLESS PUMP COMPANY, CHICAGO PUMP COMPANY |
| GEORGIA PACIFIC, LLC | GEORGIA PACIFIC CORPORATION |
| GRINNELL, LLC | GRINNEL CORPORATION, GRINNEL FIRE PROTECTION SYSTEMS COMPANY, INC. |
| HONEYWELL INTERNATIONAL, INC. | ALLIEDSIGNAL, INC. THE BENDIX CORPORATION |
| OAKFABCO, INC. | KENWANEE BOILER CORP. |
| PARKER HANNIFAN CORPORATION | SACOMO-SIERRA CORP. |
| RILEY POWER, INC. | RILEY STOKER CORPORATION, UNION IRON WORKS |
| RSCC WIRE & CABLE, LLC | RSCC WIRE & CABLE, INC. |

COMPLAINT

| | |
|---|---|
| SEQUOIA VENTURES, INC. | BECHTEL CORPORATION |
| SOCO-WEST, INC. | BRENNTAG WEST, INC., SOCO-LYNCH CORPORATION, WESTERN CHEMICAL & MANUFACTURING COMPANY |
| TRANE US, INC. | AMERICAN STANDARD, INC. |
| WASHINGTON GROUP INTERNATIONAL INC. | MORRISON-KNUDSEN, INC. |
| ZURN INDUSTRIES, LLC | ERIE CITY IRONWORKS |

45

EXHIBIT "E"

## CONTRACTOR/PREMISES DEFENDANTS

BECHTEL CORPORATION

CHEVRON U.S.A. INC

EXXON MOBIL OIL CORPORATION;

EXXONMOBIL OIL CORPORATION f/k/a MOBIL OIL CORPORATION;

FOSTER WHEELER ENERGY CORPORATION

PARSONS CORPORATION

SCOTT COMPANY OF CALIFORNIA

SEQUOIA VENTURES, INC. f/k/a BECHTEL CORPORATION

SHELL OIL COMPANY

THOMAS DEE ENGINEERING CO., INC

UNION OIL COMPNAY OF CALIFORNIA

WASHINGTON GROUP INTERNATIONAL, INC. f/k/a MORRISON-KNUDSEN, INC

DOES 300-400

46

# EXHIBIT 2 PART 1 OF 3

ENDORSED
FILED
ALAMEDA COUNTY

2013 DEC -6 PM 2:48

CLERK OF THE SUPERIOR COURT
M. SALCEDO, DEPUTY

1   Ethan A. Horn (CA Bar No. 190296)
    Keenan W. Ng (CA Bar No. 267779)
2   NAPOLI BERN RIPKA SHKOLNIK & ASSOCIATES, LLP
3   111 Corporate Drive, Suite 225
    Ladera Ranch, California 92694
4   Telephone:    (949) 234-6032
    Facsimile:    (949) 429-0892
5
6   Attorneys for Plaintiffs

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                     FOR THE COUNTY OF ALAMEDA

10

11  |                                      | Case No.   RG13086746
12  | CHARLES P. LOCKETT AND DORI          |
    | LOCKETT,                             |
13  |                                      | FIRST AMENDED COMPLAINT FOR
    |               Plaintiffs,            | DAMAGES
14  |                                      |
15  |          vs.                         | JURY TRIAL DEMANDED
    | A.O. SMITH CORPORATION;              |
16  | AIR & LIQUID SYSTEMS                 | 1 - NEGLIGENCE;
17  | CORPORATION, a/k/a BUFFALO PUMPS,    | 2 - STRICT LIABILITY;
    | INC.;                                | 3 - FALSE REPRESENTATION;
18  | ALLIED INSULATION SUPPLY             | 4 - INTENTIONAL TORT/INTENTIONAL;
    | COMPANY, INC.;                       | 5 - PREMISES/CONTRACTOR LIABILITY;
19  | AMERICAN OPTICAL COMPANY;            | 6 - GENERAL NEGLIGENCE;
    | ARMSTRONG INTERNATIONAL, INC.;       | 7 - VICARIOUS LIABILITY;
20  | ASBESTOS CORPORATION LTD.;           | 8 - LOSS OF CONSORTIUM
21  | BASF CATALYST, LLC;                  |
    | BECHTEL CORPORATION;                 |
22  | BORGWARNER MORSE TEC, INC. AS        |
    | SUCCESSOR-BY-MERGER to BORG-         |
23  | WARNER CORPORATION;                  |
    | BURNHAM, LLC, f/k/a BURNHAM          |
24  | CORPORATION;                         |
25  | CARRIER CORPORATION;                 |
    | CARVER PUMP COMPANY;                 |
26  | CBS CORPORATION, A DELAWARE          |
    | CORP. f/k/a VIACOM INC., SUCCESSOR   |
27  | BY MERGER TO CBS CORP., A            |
    | PENNSYLVANIA CORP. f/k/a             |
28  | WESTINGHOUSE ELECTRIC CORP.;         |

1

1   CERTAINTEED CORPORATION;
    CHEVRON U.S.A. INC.;
2   CHICAGO PNEUMATIC TOOL
    COMPANY, LLC;
3   CLEAVER-BROOKS, INC., f/k/a
4   CLEAVER-BROOKS, A DIVISION OF
    AQUA-CHEM, INC.;
5   CRANE CO.;
    DAP, INC.;
6   DORSETT & JACKSON, INC.;
7   ELEMENTIS CHEMICALS, INC.;
    ELLIOT COMPANY INDIVIDUALLY AND
8   AS SUCESSOR IN INTEREST OT ELLIOTT
    TURBOMACHINERY CO., INC
9   EXXON MOBIL OIL CORPORATION;
    EXXONMOBIL OIL CORPORATION f/k/a
10   MOBIL OIL CORPORATION;
11   FABCO AUTOMOTIVE CORPORATION;
    FERRO ENGINEERING, DIVISION OF ON
12   MARINE SERVICES;
    FMC CORPORATON INDIVIDUALLY &
13   AS SUCCESSOR TO NORTHERN PUMP
    COMPANY, COFFIN, PEERLESS PUMP
14   COMPANY AND CHICAGO PUMP
15   COMPANY;
    FORD MOTOR COMPANY;
16   FOSECO INC.;
    FOSTER WHEELER ENERGY
17   CORPORATION;
18   FRYER-KNOWLES INC.;
    GENERAL ELECTRIC COMPANY;
19   GENUINE PARTS COMPANY;
    GEORGIA PACIFIC, LLC f/k/a GEORGIA-
20   PACIFIC CORPORATION;
    GRINNELL LLC, FORMERLY KNOWN AS
21   GRINNELL CORPORATION, SUED
22   INDIVIDUALLY AND AS SUCCESSOR IN
    INTEREST TO GRINNELL FIRE
23   PROTECTION SYSTEMS COMPNAY, INC.;
    HANSON PERMANENTE CEMENT, INC.;
24   HILL BROTHERS CHEMICAL
    COMPANY;
25   HOLLINGSWORTH & VOSE COMPANY;
26   HOMASOTE COMPANY;
    HONEYWELL INTERNATIONAL, INC.,
27   f/k/a ALLIEDSIGNAL, INC., f/k/a THE
    BENDIX CORPORATION;
28   IMO INDUSTRIES, INC.;

2