ATTACHMENT 1 of 3 of 9

51. Defendants, their "alternate entities", and each of them, have known and have possessed the true facts of medical and scientific data and other knowledge which clearly indicated that the asbestos and asbestos-containing products and equipment referred to in Plaintiffs' First Cause of Action were and are hazardous to the health and safety of Plaintiff CHARLES P. LOCKETT, and others in Plaintiff CHARLES P. LOCKETT's position working in close proximity with such materials. The Defendants, their "alternate entities", and each of them, have known of the dangerous propensities of the aforementioned materials and products since before that time. With intent to deceive Plaintiff CHARLES P. LOCKETT, and others in his position, and with intent that he and such others should be and remain ignorant of such facts with intent to induce Plaintiff and such others to alter his and their positions to his and their injury and/or risk and in order to gain advantages, the following acts occurred:

(a) Defendants, their "alternate entities", and each of them, did not label any of the aforementioned asbestos-containing materials, products, and equipment regarding the hazards of such materials and products to the health and safety of Plaintiff CHARLES P. LOCKETT and others in his position working in close proximity with such materials, when certain of such materials were labeled by some, but not all, of Defendants, their "alternate entities", and each of them. By not labeling such materials, products, and equipment as to their said hazards, Defendants, their "alternate entities", and each of them, caused to be suggested as a fact to Plaintiff that it was safe for Plaintiff CHARLES P. LOCKETT to work in close proximity to such materials, when in fact it was not true; and Defendants, their "alternate entities," and each of them, did not believe it to be true;

(b) Defendants, their "alternate entities", and each of them, suppressed information relating to the danger of use of the aforementioned materials, products, and equipment by requesting the suppression of information to Plaintiff CHARLES P. LOCKETT and the general public concerning the dangerous nature of the aforementioned materials to workers, by not allowing such information to be disseminated in a manner which would have given general notice to the public and knowledge of the

hazardous nature thereof when Defendant, their "alternate entities", and each of them, were bound to disclose such information;

(c) Defendants, their "alternate entities", and each of them, sold the aforementioned products, materials, and equipment to Plaintiff CHARLES P. LOCKETT's employers and others without advising him, his employer, and others of the dangers of use of such materials to persons working in close proximity thereto when Defendants, their "alternate entities", and each of them, knew of such dangers, and had a duty to disclose such dangers all as set forth herein. By said conduct, Defendants, their "alternate entities", and each of them, caused to be positively asserted to Plaintiff CHARLES P. LOCKETT that which was not true and that which Defendants, their "alternate entities," and each of them had no reasonable ground for believing to be true, to wit: that it was safe for Plaintiff CHARLES P. LOCKETT to work with or in close proximity to such materials;

(d) Defendants, their "alternate entities", and each of them, suppressed from Plaintiff medical and scientific data and knowledge of the results of studies including, but not limited to, the information and contents of the "Lanza Report." Although bound to disclose it, Defendants, their "alternate entities", and each of them, influenced A. J. Lanza, M.D. to change his report, the altered version of which was published in Public Health Reports, Volume 50, at page 1, in 1935, thereby causing Plaintiff and others to be and remain ignorant thereof. Defendants, their "alternate entities", and each of them, caused Asbestos Magazine, a widely disseminated trade journal, to omit mention of danger, thereby lessening the probability of notice of danger to the users thereof;

(e) Defendants, their "alternate entities", and each of them, belonged to, participated in, and financially supported the Asbestos Textile Institute Industrial Hygiene Foundation and other industry organizations which, for and on behalf of Defendants, their "alternate entities", and each of them, actively promoted the suppression of information of danger to users of the aforementioned products and materials, thereby misleading Plaintiff CHARLES P. LOCKETT by the suggestions and deceptions set

forth above in this cause of action. The Dust Control Committee, which changed its name to the Air Hygiene Committee, of the Asbestos Textile Institute, was specifically enlisted to study the subject of dust control. Discussions in this committee were held many times regarding the dangers inherent in asbestos and the dangers, which arise from the lack of control of dust, and such information was suppressed from public dissemination;

(f) Commencing in 1930 with the study of mine and mill workers at Asbestos and Thetford Mines in Quebec, Canada, and the study of the workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina, Defendants, their "alternate entities", and each of them, knew and possessed medical and scientific information of the connection between the inhalation of asbestos fibers and asbestosis, which information was disseminated through the Asbestos Textile Institute and other industry organizations to all other Defendants, their "alternate entities", and each of them, herein. Defendants, their "alternate entities", and each of them, suggested to the public as a fact that which is not true and disseminated other facts likely to mislead Plaintiff CHARLES P. LOCKETT. Such facts did mislead Plaintiff CHARLES P. LOCKETT and others by withholding the afore-described medical and scientific data and other knowledge and by not giving Plaintiff CHARLES P. LOCKETT the true facts concerning such knowledge of danger, which Defendants, their "alternate entities", and each of them, were bound to disclose;

(g) Defendants, their "alternate entities", and each of them, failed to warn Plaintiff CHARLES P. LOCKETT and others of the nature of said materials which were dangerous when breathed and which could cause pathological effects without noticeable trauma, despite the fact that Defendants, their "alternate entities", and each of them, possessed knowledge and were under a duty to disclose that said materials were dangerous and a threat to the health of persons coming into contact therewith;

  (h) Defendants, their "alternate entities", and each of them, failed to provide Plaintiff CHARLES P. LOCKETT with information concerning adequate protective masks and other equipment devised to be used when applying and installing the products of the Defendants, their "alternate entities", and each of them, despite knowing that such protective measures were necessary, and that they were under a duty to disclose that such materials were dangerous and would result in injury to Plaintiff CHARLES P. LOCKETT and others applying and installing such material;

  (i) Defendants, their "alternate entities", and each of them, when under a duty to so disclose, concealed from Plaintiff CHARLES P. LOCKETT the true nature of the industrial exposure of Plaintiff CHARLES P. LOCKETT and knew that Plaintiff and anyone similarly situated, upon inhalation of asbestos would, in time, develop irreversible conditions of pneumoconiosis, asbestosis, and/or cancer. Defendants, their "alternate entities", and each of them, also concealed from Plaintiff CHARLES P. LOCKETT and others that harmful materials to which they were exposed would cause pathological effects without noticeable trauma;

  (j) Defendants, their "alternate entities", and each of them, failed to provide information of the true nature of the hazards of asbestos materials and that exposure to these material would cause pathological effects without noticeable trauma to the public, including buyers, users, and physicians employed by Plaintiff CHARLES P. LOCKETT so that said physicians could not examine, diagnose, and treat Plaintiffs and others who were exposed to asbestos, despite the fact that Defendants, their "alternate entities", and each of them, were under a duty to so inform and said failure was misleading; and

  (k) Defendants, their "alternate entities", and each of them, failed to provide adequate information to physicians and surgeons retained by Plaintiff CHARLES P. LOCKETT's employers and their predecessor companies, for purposes of making physical examinations of Plaintiff CHARLES P.

LOCKETT and other employees as to the true nature and risk of such materials and exposure thereto when they in fact possessed such information and had a duty to disclose it.

52. Defendants, their "alternate entities", and each of them, willfully failed and omitted to complete and file a First Report of Occupational Injury or Illness regarding Plaintiff's injuries, as required by law, and did willfully fail and omit to file a Report of Injury and Occupational Disease with the State of California. Plaintiff CHARLES P. LOCKETT was in the class of persons with respect to whom a duty was owed to file such reports and who would have been protected thereby if the fact of danger from products complained of had become known.

53. Defendants, their "alternate entities", and each of them, having such aforementioned knowledge, and the duty to inform Plaintiff CHARLES P. LOCKETT about the true facts, and knowing that Plaintiff CHARLES P. LOCKETT did not possess such knowledge and would breathe such material innocently, acted falsely and fraudulently and with full intent to cause Plaintiff CHARLES P. LOCKETT to remain unaware of the true facts and to induce Plaintiff CHARLES P. LOCKETT to work in a dangerous environment, all in violation of Sections 1708, 1709, and 1710 of the Civil Code of the State of California.

54. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities" and each of them, Plaintiff CHARLES P. LOCKETT sustained the injuries and damages alleged herein. The herein-described conduct of said Defendants, their "alternate entities", and each of them was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff CHARLES P. LOCKETT, for the sake of example and by way of punishing said Defendants, seeks punitive damages according to proof.

WHEREFORE, Plaintiffs pray for judgment against Defendants, their "alternate entities," and each of them, as is hereinafter set forth.

///

## FIFTH CAUSE OF ACTION

(Premises Owner/Contractor Liability)

AS AND FOR A FURTHER, FIFTH, SEPARATE AND DISTINCT CAUSE OF ACTION, PLAINTIFFS COMPLAIN OF THE DEFENDANTS LISTED ON EXHIBIT E, AND DOES 301-350, THEIR "ALTERNATE ENTITIES", AND EACH OF THEM, (HEREINAFTER "PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS") AND ALLEGE AS FOLLOWS:

55. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

56. At all times herein mentioned, each of the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, each of which is listed on attached Exhibit "E" which exhibit is incorporated by this reference, was a business, or successor, successor-in-business, assign, predecessor, predecessor-in-business, parent, subsidiary, wholly or partially owned by, or the whole or partial owner of an entity causing certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and/or toxic substances to be constructed, installed, maintained, used, managed, and/or controlled by them. Said entities shall hereinafter collectively be called "alternate entities". Each of the herein-named defendants is liable for its own tortuous conduct and that of each successor, successor-in-business, assign, predecessor-in-business, parent, subsidiary, whole or partial owner, or wholly or partially owned entity that caused the presence as aforesaid of said asbestos- and silica-containing products and insulation and other toxic substances. Said defendants, and each of them, are liable for the acts of each and every "alternate entity", and each of them, in that there has been a virtual destruction of plaintiff's remedy against each such "alternate entity"; defendants, and each of them, have acquired the assets, or a portion thereof, of each such "alternate entity"; defendants, and each of them, have caused the destruction of plaintiff's remedy against each such "alternate entity"; each such defendant has the

22

FIRST AMENDED COMPLAINT

ability to assume the risk-spreading role of each such "alternate entity", and that each such defendant enjoys the goodwill originally attached to each such "alternate entity".

57. At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, owned, leased, maintained, managed and/or controlled the following premises Plaintiff CHARLES P. LOCKETT worked and/or was present at. The following information provided is preliminary and is based on recall of events covering many years, and further investigation and discovery may produce additional information: ATTACHED EXHIBITS A and B. Additionally, Plaintiff CHARLES P. LOCKETT and/or his family members might have been present at other PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' premises at other locations and on other occasions.

58. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and silica-containing insulation, other building materials, products, and toxic substances to be constructed, installed, maintained, used, supplied, replaced, repaired, and/or removed on each of the aforesaid respective premises, by their own workers and/or by various contractors, and caused the release of dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby created a hazardous and unsafe condition to Plaintiff CHARLES P. LOCKETT, his family members and other persons exposed to said asbestos and toxic substances while present at said premises.

59. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew or in the exercise or ordinary and reasonable care should have known, that the foregoing conditions and activities created a dangerous, hazardous, and unsafe condition

23

FIRST AMENDED COMPLAINT

and unreasonable risk of harm and personal injury to Plaintiff CHARLES P. LOCKETT, and other workers or persons so exposed, present at each of the aforesaid respective premises.

60. At all times relevant herein, Plaintiff CHARLES P. LOCKETT and/or his family members entered said premises and used or occupied each of said respective premises as intended and for each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' benefit and advantage and at each of the respective PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' request and invitation. In so doing, Plaintiff CHARLES P. LOCKETT was exposed to dangerous quantities of asbestos fibers and other toxic substances released into the ambient air by the aforesaid hazardous conditions and activities managed, maintained, initiated, and/or otherwise created, controlled, or caused by said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them.

61. Plaintiff CHARLES P. LOCKETT at all times was unaware of the hazardous condition or the risk of personal injury created by the aforesaid presence and use of asbestos products and materials and other toxic substances on said premises.

62. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, remained in control of the premises where Plaintiff CHARLES P. LOCKETT and/or plaintiff's family members were performing their work.

63. At all times mentioned herein, the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS owed to Plaintiff CHARLES P. LOCKETT, and others similarly situated, a duty to exercise ordinary care in the management of such premises in order to avoid exposing workers such as Plaintiff to an unreasonable risk of harm and to avoid causing injury to said persons.

64. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection

1  for, defects or dangerous conditions; and that the persons present and using said premises would not be
2  aware of the aforesaid hazardous conditions to which they were exposed on the premises.
3
4  65. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY
   DEFENDANTS, and each of them, negligently failed to maintain, manage, inspect, survey, or control
5
6  said premises or to abate or correct, or to warn plaintiff of, the existence of the aforesaid dangerous
7  conditions and hazards on said premises.
8  66. Prior to and at the times and places aforesaid, said PREMISES OWNER/CONTRACTOR
9  LIABILITY DEFENDANTS, and each of them, respectively, caused certain asbestos-containing
10  products and/or machinery requiring or calling for the use of asbestos and/or asbestos-containing
11  products and/or products which caused the release of respirable asbestos fibers and/or asbestos- and
12
13  silica-containing insulation, other building materials, products and toxic substances to be constructed,
14  installed, maintained, used, replaced, repaired, and/or removed on each of their aforesaid respective
15  premises, by their own workers and/or by employing various contractors, and caused the release of
16  dangerous quantities of toxic asbestos fibers and other toxic substances into the ambient air and thereby
17  injured plaintiff.
18
19  67. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY
   DEFENDANTS, and each of them, should have recognized that the work of said contractors would
20
21  create during the progress of the work, dangerous, hazardous, and unsafe conditions which could or
22  would harm plaintiff and others unless special precautions were taken.
23  68. In part, Plaintiff CHARLES P. LOCKETT was exposed to dangerous quantities of asbestos
24  fibers and other toxic substances by reason of such contractors' failure to take the necessary precautions.
25  69. The work of contractors on premises controlled by the PREMISES
26  OWNER/CONTRACTOR LIABILITY DEFENDANTS created unsafe premises and an unsafe work
27
28

25
FIRST AMENDED COMPLAINT

place by reason of the release of dangerous quantities of toxic substances including, but not limited to, asbestos.

70. The unsafe premises or work place was created, in part, by the negligent conduct of the contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS. Said negligent conduct includes, but is not limited to:

(a) Failure to warn of asbestos and other toxic dusts;

(b) Failure to suppress the asbestos-containing or toxic dusts;

(c) Failure to remove the asbestos-containing and toxic dusts through use of ventilation or appropriate means;

(d) Failure to provide adequate breathing protection, i.e., approved respirators or masks;

(e) Failure to inspect and/or test the air;

(f) Failure to provide medical monitoring; and

(g) Failure to select and hire a careful and competent contractor or subcontractor.

71. The PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS' duty to maintain and provide safe premises, a safe place to work, and to warn of dangerous conditions are non-delegable; said duties arise out of common law, Civil Code of Procedure, section 1714, and California Labor Code, section 6400, et seq., or Health and Safety Code, section 40.200, et seq., and regulations promulgated there under. Therefore, the Premises Owner/Contractor Liability Defendants are responsible for any breach of said duties whether by themselves or others.

72. Prior to and at said times and places, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS were subject to certain ordinances, statutes, and other governmental regulations promulgated by the United States Government, the State of California, and others, including, but not limited to, the General Industry Safety Orders promulgated pursuant to California Labor Code, section 6400 and the California Administrative Code under the Division of Industrial Safety,

26

FIRST AMENDED COMPLAINT

Department of Industrial Relations, including, but not limited to: Title VIII, Group 9 (Control of Hazardous Substances), Article 81, sections 4150, 4106, 4107, and 4108, and Threshold Limit Values as documented for asbestos and other toxic substances under Appendix A, Table I of said Safety Orders; additionally, California Health and Safety Code, section 40.200, et seq., which empowers the South Coast Area Air Quality Management District to promulgate regulations including, but limited to: S.C.A.A.Q.M.D. Rule 1403; Title 40 Code of Federal Regulations, Chapter 1, Part 61, et seq. – The National Emission Standards for Hazardous Air Pollutants, which required said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS to provide specific safeguards or precautions to prevent or reduce the inhalation of asbestos dust and other toxic fumes or substances; and said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions, or contractors employed by the PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS failed to provide the required safeguards and precautions. Defendants' violations of said codes include, but are not limited to:

(a) Failing to comply with statutes and allowing ambient levels of airborne asbestos fiber to exceed the permissible/allowable levels with regard to the aforementioned statutes;

(b) Failing to segregate work involving the release of asbestos or other toxic dusts;

(c) Failing to suppress dust using prescribed ventilation techniques;

(d) Failing to suppress dust using prescribed "wet down" techniques;

(e) Failing to warn or educate plaintiff or others regarding asbestos or other toxic substances on the premises;

(f) Failing to provide approved respiratory protection devices;

(g) Failing to ensure "approved" respiratory protection devices were used properly;

(h) Failing to provide for an on-going health screening program for those exposed to asbestos on the premises;

EXHIBIT 2 PART 2 OF 3

1     (i)     Failing to provide adequate housekeeping and clean-up of the work place;

2     (j)     Failing to properly warn of the hazards associated with asbestos as required by these statutes;

(k)     Failing to properly report renovation and disturbance of asbestos-containing materials, including, but not limited to: S.C.A.A.Q.M.D. Rule 1403;

(l)     Failing to have an asbestos removal supervisor as required by regulation;

(m)     Failing to get approval for renovation as required by statutes; and

Failing to maintain records as required by statute.

73. PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, were the "statutory employer" of Plaintiff CHARLES P. LOCKETT and/or his family members as defined in the California Labor Code and California case law.

74. Plaintiff CHARLES P. LOCKETT at all times was unaware of the hazardous condition or the risk of personal injury created by defendants' violation of said regulations, ordinances, or statutes.

75. At all times mentioned herein, Plaintiff CHARLES P. LOCKETT was a member of the class of persons whose safety was intended to be protected by the regulations, statutes, or ordinances described in the foregoing paragraphs.

76. At all times mentioned herein, said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, and each of them, knew, or in the exercise of ordinary and reasonable care should have known, that the premises that were in their control would be used without knowledge of, or inspection for, defects or dangerous conditions, that the persons present and using said premises would not be aware of the aforesaid hazardous conditions to which they were exposed on the premises, and that such persons were unaware of the aforesaid violations of codes, regulations, and statutes.

///

///

77. As a legal consequence of the foregoing, Plaintiff CHARLES P. LOCKETT developed an asbestos-related illness, which has caused great injury as previously set forth, and plaintiffs have suffered damages as alleged herein.

78. Defendants are liable for the fraudulent, oppressive, and malicious acts of their "alternate entities," and each of them, and of their officers, directors, and managing agents.

79. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

80. Defendants' officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their "alternate entities" as set forth herein.

81. The herein-described conduct of said PREMISES OWNER/CONTRACTOR LIABILITY DEFENDANTS, their "alternate entities", and each of them, was and is willful, malicious, fraudulent, outrageous, and in conscious disregard and indifference to the safety and health of "exposed persons". Plaintiff CHARLES P. LOCKETT, for the sake of example and by way of punishing said defendants, seeks punitive damages according to proof.

### SIXTH CAUSE OF ACTION

[General Negligence]

AS AND FOR A SIXTH, FURTHER, AND DISTINCT CAUSE OF ACTION AGAINST DEFENDANTS ON EXHIBIT "E,"; DOES 301-350 INCLUSIVE; THEIR ALTERNATE ENTITIES, AND EACH OF THEM, PLAINTIFFS BRING THIS SIXTH CAUSE OF ACTION FOR GENERAL NEGLIGENCE AND ALLEGE AS FOLLOWS:

82. Plaintiffs incorporate herein by reference, as though fully set forth herein, each and every paragraph of the General Allegations above.

83. At all times herein mentioned, defendants selected, supplied, and distributed asbestos containing materials to their employees and others for use during their regular work activities in areas

29

FIRST AMENDED COMPLAINT

where defendants owned, maintained, controlled, managed and/or conducted business activities where Plaintiff CHARLES P. LOCKETT worked and/or spent time as alleged herein in Exhibit A.

84. Said employees and others handled, disturbed and otherwise manipulated these asbestos containing materials causing the release of asbestos fibers and dust.

85. Defendants were negligent in selecting, supplying, and distributing the asbestos containing products in that said products were unsafe in that they released asbestos fibers and dust into air when used which would be inhaled by Plaintiff CHARLES P. LOCKETT and settled onto his clothes, shoes, hands, face, hair, skin, and other body parts thus creating a situation whereby workers and bystanders including Plaintiff CHARLES P. LOCKETT would be exposed to dangerous asbestos dust.

86. The asbestos and asbestos-containing materials described herein were unsafe in that handling and disturbing products, which contain asbestos, causes the release of asbestos fibers into the air, and the inhalation of asbestos fibers causes serious disease and death. Here, the handling of asbestos containing materials by defendants' employees and other caused personal injuries to Plaintiff CHARLES P. LOCKETT.

87. At all times herein mentioned, defendants knew or should have known that its employees and bystanders thereto, including Plaintiff CHARLES P. LOCKETT, frequently encountered asbestos-containing products and materials during the course and scope of their work activities.

88. At all times herein mentioned, defendants knew or should have known that the asbestos-containing materials encountered by its employees and bystanders thereto including Plaintiff CHARLES P. LOCKETT, were unsafe in that harmful asbestos fibers were released during the use, handling, breaking, or other manipulation of asbestos-containing products and materials, and that once released, asbestos fibers can be inhaled, and can alight on the clothes, shoes, skin, hair, and body parts of those exposed, where further activity causes the fibers to once again be released into the air where they can be inhaled, all of which causes serious disease and/or death.