ATTACHMENT 1 of 6 of 9

Designated Defense Counsel shall not be deemed an attorney for any defendant solely as a result of such activities. Designated Defense Counsel's activities under this Order do not include, among other things, case evaluation or medical evaluation; calendaring or preparation of motions; and/or appearing at or taking of depositions.

(b)     Nothing done by Designated Defense Counsel under this Order shall be deemed to be a waiver by participating defendants of the attorney-client privilege and/or disclosure of confidential attorney work product, including but not limited to receiving, generating, and/or disseminating notes of conversations with medical expert witnesses.

(c)     This order does not preclude Designated Defense Counsel from providing, performing or contracting with any defendant or defense counsel for services beyond those authorized in this Order in connection with this action, so long as there is no conflict of interest or other impropriety that does or may result from said activities or representation and/or conflict(s) have been waived by all interested and affected parties. Any such additional services shall be charged only to defendants requesting and contracting for said additional services.

(d)     Upon written notification, with service upon Plaintiff's counsel and the Court, that all defendants remaining in this action no longer elect to utilize the services of the Designated Defense Counsel and/or no longer elect to schedule or coordinate with the Designated Defense Counsel, the Court shall promptly make a determination whether to set aside this Order, or any parts thereof, and/or whether to replace this Order with any other order that will achieve and/or maintain cost-effective, efficient and reasonable case management of this action. Upon said notification Designated Defense Counsel shall have no further responsibility to perform the functions authorized under this Order until and unless further ordered by the Court to resume said duties. However Designated Defense Counsel shall be paid for the reasonable costs and fees incurred by participating defendants up to the time this order is or has been withdrawn, or modified.

6.     SERVICE OF PLEADINGS AND OTHER CORRESPONDENCE. All counsel shall serve the Designated Defense Counsel with copies of all pleadings and correspondence concerning discovery in this action. Designated Defense Counsel shall appear on the service list of pleadings filed pursuant to this Order as "Designated Defense Counsel."

Designated Defense Counsel's performance of the functions listed below shall not constitute a general appearance in this matter.

7.    DEFENSE STEERING COMMITTEE. A Defense Steering Committee may be established composed of and open to any interested defense counsel to work with the Designated Defense Counsel in the coordination of defense discovery and for the purpose of resolving any dispute which may arise among defendants regarding discovery. Designated Defense Counsel shall meet with the Defense Steering Committee, if such a committee is established by defendants, on a regular basis in the execution of its duties and responsibilities under this Order. Absent the existence of a Defense Steering Committee, Designated Defense Counsel shall meet and confer with all defendants on a regular basis in the execution of its duties and responsibilities under this Order. Any dispute that cannot be resolved among and between defendants, or among and between defendants and Designated Defense Counsel, after reasonable meet and confer, shall be referred to the Court upon noticed motion.

8.    DOCUMENT DEPOSITORY AND COPYING SERVICE. Designated Defense Counsel shall be responsible for the identification and selection of a document depository for all documents, materials and records procured and maintained by the Designated Defense Counsel pursuant to this order. Upon request of the Designated Defense Counsel a party shall allow Designated Defense Counsel to copy any records obtained by a party, without the assistance of Designated Defense Counsel. All parties shall have access to documents, materials and records maintained in the document depository for inspection or copying upon reasonable notice to Designated Defense Counsel and as otherwise provided in this order. Designated Defense Counsel may arrange for a copying service in carrying out the functions set forth in this order. Any defendant requesting copies of records from Designated Defense Counsel shall pay for the reasonable costs and fees for said copies as further detailed below.

9.    OPT-OUT PROVISIONS. Any defendant may opt not to participate in all or part of certain discovery functions under this Order by providing timely, written notice to Designated Defense Counsel as further provided herein.

Notwithstanding the foregoing, all defendants shall be required to share the Designated Defense Counsel's reasonable fees and costs for certain functions required of

4

Designated Defense Counsel under this Order which the Court deems benefit all defendants equally. Said "non-optional" functions are delineated and identified below.

10. **DESIGNATED DEFENSE COUNSEL FUNCTIONS.** Designated Defense Counsel shall perform the following functions:

A. **STANDARD INTERROGATORIES**

(1) Plaintiff (s) Responses to Standard Interrogatories to Plaintiff(s) shall be served upon the office of the Designated Defense Counsel who shall maintain the original of said responses. Copies of the Plaintiff(s) responses to Standard Interrogatories shall be served by Plaintiff(s) on all defendants through their counsel.

(2) Requests for extension of time to respond to standard interrogatories shall be addressed to Designated Defense Counsel. No extension shall be for more than two (30) day extensions without court order and with notice to all parties. No extensions will be granted, absent court order, where settlement conferences, motions to advance, motions for preference, trial setting conferences, or trials have been set. Notice of all extensions shall be provided by plaintiff's counsel to all defendants. Defendants shall notify Designated Defense Counsel of any motion being made to the court respecting responses to Standard Interrogatories, prior to filing said motion(s), as part of the statutory "meet and confer" required prior to filing discovery motions.

B. **PLAINTIFF(S) DEPOSITIONS**

(1) Designated Defense Counsel shall meet and confer with the Defense Steering Committee and any other interested defense counsel respecting the scheduling, timing, priority and protocol for the taking of Plaintiff(s) deposition(s). Designated Defense Counsel will disseminate a proposed deposition schedule to all defense counsel (in its monthly report or otherwise) and specify the deadline for any defendant to opt out from attending or participating in any scheduled deposition(s). Upon expiration of the time specified for defendants to communicate with Designated Defense Counsel the election not to participate, Designated Defense Counsel shall schedule, notice and coordinate the deposition(s).

(2) Designated Defense Counsel will meet and confer with plaintiff counsel to schedule and coordinate the depositions of plaintiff(s). No defendant shall notice,

5

schedule, cancel or withdraw notice of any plaintiff(s) deposition without prior coordination with and approval of the Designated Defense Counsel, absent court order.

## C. DEFENSE MEDICAL EXAMINATIONS AND JOINT DEFENSE REVIEWS.

(1)    The Defense Steering Committee and any other interested defense counsel shall meet and confer with Designated Defense Counsel to identify and discuss coordination of and protocols for joint defense medical examinations and/or joint medical reviews. The results of any agreements reached following this meet and confer shall be provided by Designated Defense Counsel to all defense counsel. Upon expiration of the time specified for defendants to opt out of participating in any said medical examination, test, screening or review, Designated Defense Counsel shall schedule, notice, and coordinate these procedures.

(2)    All reports resulting from such medical examination, assessment, or reviews shall be obtained by Designated Defense Counsel and disseminated to those defendants who have agreed to participate in and pay for this function.

## D.    RECORD PROCUREMENT

(1)    Designated Defense Counsel shall be responsible for initiating the procedures necessary to obtain plaintiff(s) medical and employment records and related medical evidence (e.g. radiographs, x-rays, photographs, pathology specimens) and advise all defendants, in its monthly report or otherwise, that initial procurement has commenced in this case. Upon expiration of the time specified for defendants to communicate to Designated Defense Counsel the election not to participate in this function, the Designated Defense Counsel shall initiate and obtain stipulations, authorizations, subpoenas and waivers as necessary to procure and shall procure the identified relevant medical and employment records and related medical evidence.

(2)    No other defendant shall initiate procedures to obtain the records and evidence herein described, absent court order.

(3)    Any request by a defendant for inspection or copying of records described herein made to Designated Defense Counsel shall constitute an election by said defendant to participate in this function of the Designated Defense Counsel and said defendant shall pay its per capita share of the costs of obtaining said records or evidence.

6

(4)    Designated Defense Counsel shall be the sole repository of radiographs, pathology materials, and other related medical evidence for the defendants.    Designated Defense Counsel. shall be responsible for arranging for the orderly inspection of and/or access to said medical evidence among and between the parties.  Plaintiff(s) and those defendants participating in this function shall  have reasonable and timely access to said materials. Any request for inspection or access to medical materials deposited with Designated Defense Counsel shall constitute an election by said defendant to participate in this function.

E.    **DEPOSITION OF PLAINTIFF(S)' MEDICAL WITNESSES**

(1)    The term "medical witnesses"  shall include plaintiff(s)' treating doctors and other medical providers, medical consultants, and/or medical experts retained by parties.

(2)    The Defense Steering Committee and any interested defendant shall meet and confer with Designated Defense Counsel  to compile a list of jointly requested depositions of Plaintiff(s) medical witnesses and, if appropriate, agree upon the protocol among defendants for taking said depositions. Designated Defense Counsel shall disseminate the results of this meet and confer to all defense counsel (through a monthly report or otherwise).  Individual defendants may also submit a request for the deposition of specified plaintiff's medical experts or providers directly to Designated Defense Counsel.

(3)    Designated Defense Counsel shall coordinate the date, time, place and protocol if applicable, for the depositions of plaintiff-designated medical witnesses, after meeting and conferring with the Defense Steering Committee and/or individual defendants, and plaintiff's counsel.  Designated Defense Counsel shall thereafter timely serve notice of the scheduled depositions of plaintiff-designated medical witnesses upon all parties.

(4)    No defendant shall schedule or notice any deposition of a plaintiff's medical expert without coordination with and approval of the Designated Defense Counsel, absent court order.

(5)    Defendants may elect not to participate in one or more depositions scheduled by Designated Defense Counsel by written notice to Designated Defense

7

Counsel at least one full business day before the start of the deposition. Attendance at any portion of the deposition is an election to participate. The procurement or use by any defendant or defense counsel of any transcript or videotape of the deposition proceeding, or parts thereof, scheduled and taken pursuant to these provisions, from any other source (other than through court pleadings) shall be deemed an election to participate in said deposition, and said defendant shall share in the costs and fees associated with said deposition (as further delineated below), unless otherwise ordered by the Court.

F.     **DESIGNATION OF JOINT DEFENSE MEDICAL EXPERTS**

(1)     Designated Defense Counsel shall prepare and distribute to defense counsel a preliminary list of defense medical experts on common issues for review and consideration. On behalf of those defendants who so authorize, the Designated Defense Counsel shall timely serve the agreed upon "Joint Defense Medical Expert Disclosure" in compliance with C.C.P. section 2034 and said disclosure shall identify all authorizing defendants on whose behalf the disclosure is made. Service of this disclosure shall not constitute a general appearance by Designated Defense Counsel. This joint defense medical expert disclosure shall not constitute the "pared down" expert witness list, if any, ordered by the court and all defendants shall be responsible for service of their own "pared down" witness list. Any defendant not identified on the joint disclosure shall be responsible for timely serving its own expert disclosure pursuant to C.C.P. section 2034 and may not rely on or incorporate by reference the Joint Defense Medical Expert Disclosure in fulfilling its obligations under C.C.P. section 2034. No defendant shall be precluded from serving its own expert disclosure , including any supplemental expert disclosure, permitted by statute or rule of court.

(2)     Designated Defense Counsel shall serve a written notice to all parties of either the withdrawal in whole of the joint defense disclosure of medical experts or withdrawal of any expert witness from said joint disclosure. Any party may re-designate an expert within five (45) days after service of the withdrawal, and in no event not later than five (5) days before the date set for trial. Any defendant re-designating a medical expert shall make such expert available for deposition.

8

(3)     Plaintiff(s) counsel shall serve Designated Defense Counsel with any notice or request for the deposition of any medical witness identified on the Joint Defense Medical Expert Disclosure.

(4)     Designated Defense Counsel shall meet and confer with counsel for Plaintiff(s) and counsel for authorizing defendants to coordinate and schedule the dates, times, places, and protocol if applicable, for requested joint defense medical expert witness depositions.

(5)     No defendant shall schedule or notice any deposition of a jointly designated defense medical expert without coordination with and approval of the Designated Defense Counsel, absent court order.

G.     **REPORTS TO THE COURT AND ATTENDANCE AT COURT PROCEEDINGS.**

(1)     Unless otherwise ordered by the Court, at least five (5) court days before any Case Management Conference scheduled in this action, Designated Defense Counsel shall serve and file a written report to the Court summarizing the status of medical and employment discovery prescribed herein and shall bring to the Court's attention any discovery issues or disputes within the purview of this case management order. Unless otherwise ordered. no defendant shall be required to file individual Case Management Conference Statements with the Court but any defendant may do so (individually or jointly with other defendants) if there is an issue that defendant wishes to bring to the Court's attention.

(2)     Unless otherwise ordered by the Court, Designated Defense Counsel shall appear at each Case Management Conference to provide an oral report to the Court and/or answer questions by the Court concerning the discovery covered by this Order.

(3)     As required and requested by the Court, Designated Defense Counsel shall provide additional reports and/or information or data to the Court concerning any issue arising under this Order and/or appear at court proceedings in connection with any matter concerning functions or duties provided in this Order.

H.     **PERIODIC REPORTS TO DEFENDANTS.** Designated Defense Counsel shall provide periodic reports to all defense counsel, on a monthly basis or more often as the case may warrant, updating defense counsel as to the status of discovery

9

functions covered in this order and shall include a summary of Designated Defense Counsel's actions and activity, the status or progress of scheduled procedures and depositions and other developments of common interest and concern relating to the medical and employment discovery functions covered by this order.

11.  **DESIGNATED DEFENSE COUNSEL FEES AND COSTS.**

A.  **NON OPTIONAL FUNCTIONS.**  Unless otherwise ordered by the Court, Designated Defense Counsel costs and reasonable fees shall be shared equally among all defendants appearing in this action and allocated on a per capita basis (one defendant equals one share of the costs and fees) for the following functions  provided to all defendants  in compliance with this Order:

(1)  Services rendered in connection with the Standard Interrogatory function described in paragraph 6A, above.

(2)  Providing reports, memoranda or updates to the Court, or responding to Court inquiries as described in paragraph 6G above

(3)  Attending court-ordered case management conferences or other court proceedings as described in paragraph 6G, above.

(4)  Providing notice to all defendants required by this Order or by statute, including but not limited to, serving parties notice of scheduled depositions and deposition schedules, joint defense medical examinations, tests, or other procedures as described in paragraph 6 above.

(5)  Preparation for and participation in conferences or meetings of the Defense Steering Committee in connection with all functions covered by this Order.

(6)  Reasonable costs and expenses to prepare and disseminate to all defendants any reports providing the status of discovery and discovery issues as required under this Order and described in paragraph 6 above.

(7)  Miscellaneous expenses reasonably incurred in the administration of the scheduling and coordinating activities, in connection with functions covered in paragraph 6 above.

B.  **OPTIONAL FUNCTIONS.**  The following are "optional" functions which, by the terms of this Order, any defendant may elect not to participate in by providing timely written notice of said election to Designated Defense Counsel.

Designated Defense Counsel's reasonable fees and costs incurred in executing the following specified optional functions shall be shared by all "participating defendants" (i.e. defendants who have not timely communicated to Designated Defense Counsel an election not to participate in a given optional function or function activity). Designating Defense Counsel shall allocate per capita its reasonable fees and costs incurred in connection with optional functions only among the "participating defendants" in the following optional functions:

(1)     Noticing, scheduling and coordination of Plaintiff(s)' depositions, including cost of the court reporter and original transcript, videoconferencing and/or videotaping of said deposition(s), and plaintiff(s)' reasonable travel expenses when plaintiff(s) deposition takes place at a more distant location as provided in C.C.P. section 2025.250, in connection with the function set forth in paragraph 6B, above.

(2)     Noticing, scheduling and coordination of joint defense medical examinations and reviews, dissemination of resulting reports, and joint medical expert fees or costs incurred in connection with functions set forth in paragraph 6C, above.

(3)     ·Coordination, compilation, creation and service of the Joint Defense Medical Expert Disclosure including experts' fees and costs associated with this function, as set forth in paragraph 6F, above.

(4)     Procurement, processing, inventorying, storage, retrieval, maintenance and return of medical and employment records or medical evidence (radiographs, pathology specimens, etc.) in connection with functions set forth in paragraph 6D above, including costs of a copy service, costs associated with electronic storage or preservation, or payments and costs to obtain the original and one copy of records.

(5)     Noticing and scheduling of depositions of plaintiff(s) medical expert and/or defendants' joint medical experts, including the cost of the court reporter and original transcript, videotaping or teleconferencing costs, expert witness fees and costs, and other related fees and costs in connection with the functions set forth in paragraph 6E above.

(6)     Miscellaneous expenses reasonably incurred in the administration of optional scheduling and coordinating activities.

11

(7)   Any defendant who has timely elected not to participate in any optional function or activity ("opted out" function or activity) is deemed to have waived statutory notice requirements applicable to any such procedure and shall not be billed any share of the costs and fees incurred in connection with said "opted out" function or activity. A defendant may also elect not to receive notice of any future optional procedures by providing notification to Designated Defense Counsel and specifying the case name and docket number.

(8)   When a defendant appears at a deposition, requests or orders the results of any medical examination or review, joins in or incorporates by reference experts disclosed in the Joint Defense Medical Expert Disclosure, requests or obtains deposition transcripts of defense depositions coordinated and scheduled by Designating Defense Counsel, or otherwise participates in a specified optional function or activity, said Defendant shall be considered a "participating defendant" for purposes of cost sharing and billing for services as to that function, notwithstanding said Defendant's prior election to opt out of the specified function or activity.

(9)   Any defendant who requests a procedure which relies upon earlier-performed procedure(s) in which said defendant did not participate or requests work product from a procedure which said Defendant had previously elected not to participate shall also be deemed a "participating defendant" for purposes of per capita share of the fees and/or costs associated with that function or activity, including initial costs associated with acquiring the records or materials plus any actual costs and fees of processing what is deemed to be a later request to participate. The amounts billed to the late requesting defendant, minus any billing for processing the late request, shall be credited per capita to each defendant which previously paid or was billed for said functions.

C. BILLING.

(1)   A defendant who is no longer an active party to a case shall provide written advisement to Designated Defense Counsel and within one (1) working day of receipt of said written communication, Designated Defense Counsel shall cease billing that Defendant for any function(s) pursuant to this Order.

12

(2)     Designated Defense Counsel shall submit monthly statements to Defendants of its costs and reasonable fees. Said statements shall include the case name, category/job title of persons performing the work, time charged, total charged, function(s) performed, allocation among defendants, and credits to defendants. Designated Defense Counsel billings may provide for reasonable payment terms, consistent with the industry norm, including payment due dates, late fees and/or interest

(3)     Defendants and defense counsel are obligated to provide Designated Defense Counsel with current contact information during the pendency of this action and failure to do so may subject any credits due to said defendant or defense counsel to forfeiture, upon application to the Court by Designated Defense Counsel.


SO ORDERED.


**NOTICE**

Counsel for Plaintiff(s) shall serve a copy of this order on all counsel of record and self-represented parties forthwith. The clerk is directed to served filed endorsed copy of this order upon counsel for Plaintiff(s).


Dated:  _7/9/13_          _____

Jo-Lynne Q. Lee
Judge of the Superior Court

13



## Superior Court of California, County of Alameda
## Alternative Dispute Resolution (ADR) Information Packet

The person who files a civil lawsuit (plaintiff) must include the ADR Information Packet with the complaint when serving the defendant. Cross complainants must serve the ADR Information Packet on any new parties named to the action.

> The Court *strongly encourages* the parties to use some form of ADR before proceeding to trial. You may choose ADR by:
>
> - Indicating your preference on Case Management Form CM-110;
>
> - Filing the Stipulation to ADR and Delay Initial Case Management Conference for 90 Days (a local form included with the information packet); or
>
> - Agree to ADR at your Initial Case Management Conference.
>
> **QUESTIONS?** Call (510) 891-6055. Email adrprogram@alameda.courts.ca.gov
> Or visit the court's website at http://www.alameda.courts.ca.gov/adr

### What Are The Advantages Of Using ADR?

- *Faster* –Litigation can take years to complete but ADR usually takes weeks or months.

- *Cheaper* – Parties can save on attorneys' fees and litigation costs.

- *More control and flexibility* – Parties choose the ADR process appropriate for their case.

- *Cooperative and less stressful* – In mediation, parties cooperate to find a mutually agreeable resolution.

- *Preserve Relationships* – A mediator can help you effectively communicate your interests and point of view to the other side. This is an important benefit when you want to preserve a relationship.

### What Is The Disadvantage Of Using ADR?

- *You may go to court anyway* – If you cannot resolve your dispute using ADR, you may still have to spend time and money resolving your lawsuit through the courts.

### What ADR Options Are Available?

- *Mediation* – A neutral person (mediator) helps the parties communicate, clarify facts, identify legal issues, explore settlement options, and agree on a solution that is acceptable to all sides.

  o **Court Mediation Program:** Mediators do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediator's regular fees.

ADR Info Sheet. Rev. 12/15/10

*Page 1 of 2*

Some mediators ask for a deposit before mediation starts which is subject to a refund for unused time.

o **Private Mediation:** This is mediation where the parties pay the mediator's regular fees and may choose a mediator outside the court's panel.

- *Arbitration* – A neutral person (arbitrator) hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial and the rules of evidence are often relaxed. Arbitration is effective when the parties want someone other than themselves to decide the outcome.

o **Judicial Arbitration Program (non-binding):** The judge can refer a case or the parties can agree to use judicial arbitration. The parties select an arbitrator from a list provided by the court. If the parties cannot agree on an arbitrator, one will be assigned by the court. There is no fee for the arbitrator. The arbitrator must send the decision (award of the arbitrator) to the court. The parties have the right to reject the award and proceed to trial.

o **Private Arbitration** (binding and non-binding) occurs when parties involved in a dispute either agree or are contractually obligated. This option takes place outside of the courts and is normally binding meaning the arbitrator's decision is final.

## Mediation Service Programs In Alameda County

Low cost mediation services are available through non-profit community organizations. Trained volunteer mediators provide these services. Contact the following organizations for more information:

**SEEDS Community Resolution Center**
1968 San Pablo Avenue, Berkeley, CA 94702-1612
Telephone: (510) 548-2377     Website: www.seedscrc.org
Their mission is to provide mediation, facilitation, training and education programs in our diverse communities – **S**ervices that **E**ncourage **E**ffective **D**ialogue and **S**olution-making.

**Center for Community Dispute Settlement**
291 McLeod Street, Livermore, CA 94550
Telephone: (925) 373-1035     Website: www.trivalleymediation.com
CCDS provides services in the Tri-Valley area for all of Alameda County.

*For Victim/Offender Restorative Justice Services*
**Catholic Charities of the East Bay: Oakland**
433 Jefferson Street, Oakland, CA 94607
Telephone: (510) 768-3100     Website: www.cceb.org
Mediation sessions involve the youth, victim, and family members work toward a mutually agreeable restitution agreement.

**ALA ADR-001**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:  FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

| SUPERIOR COURT OF CALIFORNIA, ALAMEDA COUNTY | |
|---|---|
| STREET ADDRESS:<br>MAILING ADDRESS:<br>CITY AND ZIP CODE:<br>BRANCH NAME | |

| PLAINTIFF/PETITIONER: |
|---|
| DEFENDANT/RESPONDENT: |

| STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS | CASE NUMBER: |
|---|---|

**INSTRUCTIONS:** All applicable boxes must be checked, and the specified information must be provided.

This stipulation is effective when:

- All parties have signed and filed this stipulation with the Case Management Conference Statement at least 15 days before the initial case management conference.
- A copy of this stipulation has been received by the ADR Program Administrator, 1225 Fallon Street, Oakland, CA 94612.

1. Date complaint filed: _____. An Initial Case Management Conference is scheduled for:

   Date:                  Time:                  Department:

2. Counsel and all parties certify they have met and conferred and have selected the following ADR process (*check one*):

   ☐ Court mediation          ☐ Judicial arbitration
   ☐ Private mediation        ☐ Private arbitration

3. All parties agree to complete ADR within 90 days and certify that:

   a. No party to the case has requested a complex civil litigation determination hearing;
   b. All parties have been served and intend to submit to the jurisdiction of the court;
   c. All parties have agreed to a specific plan for sufficient discovery to make the ADR process meaningful;
   d. Copies of this stipulation and self-addressed stamped envelopes are provided for returning endorsed filed stamped copies to counsel and all parties;
   e. Case management statements are submitted with this stipulation;
   f. All parties will attend ADR conferences; and,
   g. The court will not allow more than 90 days to complete ADR.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶ _____
    (TYPE OR PRINT NAME)                (SIGNATURE OF PLAINTIFF)

Date:

_____          ▶ _____
    (TYPE OR PRINT NAME)                (SIGNATURE OF ATTORNEY FOR PLAINTIFF)

Form Approved for Mandatory Use<br>Superior Court of California,<br>County of Alameda<br>ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR) AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Cal. Rules of Court,<br>rule 3.221(a)(4)

ALA ADR-001

| PLAINTIFF/PETITIONER: | CASE NUMBER.: |
|---|---|
| DEFENDANT/RESPONDENT: | |

Date:

_____        ▶ _____

      (TYPE OR PRINT NAME)                 (SIGNATURE OF DEFENDANT)

Date:

_____        ▶ _____

      (TYPE OR PRINT NAME)             (SIGNATURE OF ATTORNEY FOR DEFENDANT)

Form Approved for Mandatory Use
Superior Court of California,
County of Alameda
ALA ADR-001 [New January 1, 2010]

**STIPULATION TO ATTEND ALTERNATIVE DISPUTE RESOLUTION (ADR)
AND DELAY INITIAL CASE MANAGEMENT CONFERENCE FOR 90 DAYS**

Page 2 of 2

Cal. Rules of Court,
rule 3.221(a)(4)

EXHIBIT 3

ENDORSED
FILED
ALAMEDA COUNTY

SEP 3 0 2013

CLERK OF THE SUPERIOR COURT
By CHERYL CLARK
                              Deputy

1   FRANK D. POND (Bar No. 126191)
    KEVIN D. JAMISON (Bar No. 222105)
2   kjamison@pondnorth.com
    JUSTIN F. CRONIN (Bar No. 260188)
3   jcronin@pondnorth.com
    POND NORTH LLP
4   350 South Grand Avenue, Suite 3300
    Los Angeles, CA 90071
5   Telephone: (213) 617-6170
    Facsimile: (213) 623-3594
6
    Attorneys for Defendant CBS Corporation, a Delaware
7   corporation, f/k/a Viacom Inc., successor by merger to
    CBS Corporation, a Pennsylvania corporation, f/k/a
8   Westinghouse Electric Corporation

9           SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                 FOR THE COUNTY OF ALAMEDA

11

12  CHARLES LOCKETT AND              Case No: RG13686746
    DORI LOCKETT,
13                                   **ANSWER TO COMPLAINT FOR DAMAGES**
                Plaintiffs,
14                                   Assigned for all Pre-Trial Purposes to
        vs.                          Judge Jo-Lynn Q. Lee; Dept. 30
15
    A.O. SMITH CORPORATION; et al.,  Case Filed:    July 9, 2013
16
                Defendants.
17

18          Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger

19  to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation

20  ("Westinghouse"), answers Plaintiffs' (as used herein, the term "Plaintiff" refers to all of the

21  captioned Plaintiffs, whether singular or plural), Complaint on its own behalf and on behalf of no

22  other defendant as follows:

23          Pursuant to California Code of Civil Procedure section 431.30(d), Westinghouse denies

24  generally each and every allegation of the Complaint.

25                       **FIRST AFFIRMATIVE DEFENSE**

26          Neither the Complaint nor any purported cause of action alleged by the Plaintiff therein states

27  facts sufficient to constitute a cause of action against Westinghouse.

28  ///

                                        1
                        ANSWER TO COMPLAINT FOR DAMAGES
    4520-3974:1101732.1

**SECOND AFFIRMATIVE DEFENSE**

To the extent the Complaint asserts Westinghouse's alleged "market share" liability, or "enterprise liability," the Complaint fails to state facts sufficient to constitute a cause of action against Westinghouse.

**THIRD AFFIRMATIVE DEFENSE**

Neither the Complaint nor any purported cause of action alleged therein states facts sufficient to entitle Plaintiff to an award of punitive damages against Westinghouse.

**FOURTH AFFIRMATIVE DEFENSE**

The imposition of any punitive damages in this matter would deprive Westinghouse of its property without due process of law under the California Constitution and United States Constitution.

**FIFTH AFFIRMATIVE DEFENSE**

The imposition of any punitive damages in this matter would violate the United States Constitution's prohibition against laws impairing the obligation of contracts.

**SIXTH AFFIRMATIVE DEFENSE**

The imposition of any punitive damages in this matter would constitute a criminal fine or penalty and should, therefore, be remitted on the ground that the award violates the United States Constitution.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's action, and each alleged cause of action, is barred by the applicable statute of limitations, including but not limited to California Code of Civil Procedure, sections 338, 339, 340(3), 340.2, 343, 353, 366.1, 377.34 and 474 and California Commercial Code, section 2725 and including any applicable statute of limitation and/or statute of repose of the state of Plaintiff's residence if not California.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff unreasonably delayed in bringing this action, without good cause therefor, and thereby have prejudiced Westinghouse as a direct and proximate result of such delay; accordingly, this action is barred by laches.

2

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1

## NINTH AFFIRMATIVE DEFENSE

Plaintiff was negligent in and about the matters alleged in the Complaint and in each alleged cause of action; this negligence proximately caused, in whole or in part, the damages alleged in the Complaint. In the event Plaintiff is entitled to any damages, the amount of these damages should be reduced by the comparative fault of Plaintiff and any person whose negligent acts or omissions are imputed to Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff knowingly, voluntarily and unreasonably undertook to encounter each of the risks and hazards, if any, referred to in the Complaint and each alleged cause of action, and this undertaking proximately caused and contributed to any loss, injury or damages incurred by Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

Any loss, injury or damages incurred by Plaintiff were proximately caused by the negligent or willful acts or omissions of parties whom Westinghouse neither controlled nor had the right to control, and was not proximately caused by any acts, omissions or other conduct of Westinghouse.

## TWELFTH AFFIRMATIVE DEFENSE

The products referred to in the Complaint were misused, abused or altered by Plaintiff or by others; the misuse, abuse or alteration was not reasonably foreseeable to Westinghouse, and proximately caused any loss, injury or damages incurred by Plaintiff.

## THIRTEENTH AFFIRMATIVE DEFENSE

Westinghouse alleges that its products were manufactured, produced, supplied, sold and distributed in mandatory conformity with specifications promulgated by the United States Government under its war powers, as set forth in the United States Constitution, and that any recovery by Plaintiff on the Complaint on file herein is barred in consequence of the exercise of those sovereign powers.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff failed to exercise due diligence to mitigate their loss, injury or damages; accordingly, the amount of damages to which Plaintiff is entitled, if any, should be reduced by the amount of damages which would have otherwise been mitigated.

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1

1

### FIFTEENTH AFFIRMATIVE DEFENSE

2    The Court lacks subject matter jurisdiction over the matters alleged in the Complaint because

3    the Complaint and each alleged cause of action against Westinghouse is barred by the provisions of

4    California Labor Code, section 3601, *et seq.*

5

### SIXTEENTH AFFIRMATIVE DEFENSE

6    Westinghouse alleges that at the time of the injuries alleged in the Complaint, Plaintiff was

7    employed and they were entitled to receive Workers' Compensation benefits from their employer;

8    that Plaintiff's employer, other than Westinghouse, was negligent in and about the matters referred

9    to in said Complaint, and that such negligence on the part of said employer proximately and

10   concurrently contributed to the happening of the accident and to the loss or damage complained of

11   by Plaintiff, if any there were, and that by reason thereof Westinghouse is entitled to set off any such

12   benefits to be received by Plaintiff against any judgment which may be rendered in favor of Plaintiff.

13

### SEVENTEENTH AFFIRMATIVE DEFENSE

14   Discovery may show that at the time of the injuries alleged in the Complaint, Plaintiff was

15   employed by and entitled to Workers' Compensation benefits from Westinghouse; such benefits

16   constitute Plaintiff exclusive remedy pursuant to Labor Code section 3600 *et seq.*

17

### EIGHTEENTH AFFIRMATIVE DEFENSE

18   Westinghouse alleges that at the time of the injuries alleged in the Complaint, Plaintiff's

19   employers were negligent in and about the matters referred to in said Complaint, and that such

20   negligence on the part of said employers proximately and concurrently contributed to any loss or

21   damage, including non-economic damages, complained of by Plaintiff, if any there were; and that

22   Westinghouse is not liable for said employers' proportionate share of non-economic damages.

23

### NINETEENTH AFFIRMATIVE DEFENSE

24   Westinghouse alleges that at the time of the injuries alleged in the Complaint, parties other

25   than Westinghouse were negligent in and about the matters referred to in said Complaint, and that

26   such negligence on the part of said parties proximately and concurrently contributed to any loss or

27   damage, including non-economic damages, complained of by Plaintiff, if any; and that Westing-

28   house herein shall not be liable for said parties' proportionate share of non-economic damages.

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1

### TWENTIETH AFFIRMATIVE DEFENSE

Westinghouse alleges that at all times relevant to matters alleged in the Complaint, Plaintiff's employer was a sophisticated user of asbestos-containing products and the employer's negligence in providing the product to its employees in a negligent, careless and reckless manner is a superseding cause of Plaintiff's injuries.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Westinghouse alleges that maritime law is applicable to the extent the Complaint purports to allege exposure from Plaintiff's work with asbestos-containing equipment aboard a vessel on navigable waters. *Conner v. Alfa Laval, Inc.,* 799 F. Supp. 2d 455 (2011). Under federal maritime law, Westinghouse is not responsible for injuries caused by component parts which it did not manufacture or distribute (the "bare metal defense"). *Conner v. Alfa Laval, Inc.,* 842 F. Supp. 2d 791 (E.D. Pa 2012); *Lindstrom v. A-C Prod. Liab. Trust,* 424 F.3d 488, 494-95 (6th Cir. 2005); *see also O'Neil v. Crane Co.*, 53 Cal. 4th 335 (2012) (finding that a product manufacturer is not liable for failure to warn of the dangers of another manufacturer's replacement parts or adjacent products that caused harm); *Taylor v. Elliott Turbomachinery Co., Inc.* 171 Cal.App.4th 564, 571 (2009) (recognizing that bare metal defense under California law negates a defendant's duty to warn of and liability for hazards inherent in defective products manufactured or supplied by third parties).

### TWENTY-SECOND AFFIRMATIVE DEFENSE

If Plaintiff had received, or in the future may receive, Workers' Compensation benefits from Westinghouse under the Labor Code of the State of California as a consequence of the alleged industrial injury referred to in the Complaint, and in the event that Westinghouse is held liable to Plaintiff, any award against Westinghouse must be reduced in the amount of all such benefits received by Plaintiff.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

If Plaintiff had received, or in the future may receive, Workers' Compensation benefits from Westinghouse under the Labor Code of the State of California as a consequence of the alleged industrial injury referred to in the Complaint, and in the event Plaintiff is awarded damages against Westinghouse, Westinghouse claims a credit against this award to the extent that Westinghouse is

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1

barred from enforcing its rights to reimbursement for Workers' Compensation benefits that Plaintiff has received or may in the future receive.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

If Plaintiff had received, or in the future may receive Workers' Compensation benefits from Westinghouse under the Labor Code of the State of California as a consequence of the alleged industrial injury referred to in the Complaint, Westinghouse demands repayment of any such Workers' Compensation benefits in the event that Plaintiff recovers tort damages as a result of the industrial injury allegedly involved here. Although Westinghouse denies the validity of Plaintiff's claims, in the event those claims are held valid and not barred by the statute of limitations or otherwise, Westinghouse asserts that cross-demands for money have existed between Plaintiff and Westinghouse and the demands are compensated, so far as they equal each other, pursuant to California Code of Civil Procedure section 431.70.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

At all times and places in the Complaint, Plaintiff was not in privity of contract with Westinghouse and said lack of privity bars Plaintiff's recovery herein upon any theory of warranty.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery in that all products produced by Westinghouse were in conformity with the existing state-of-the-art, and as a result, these products were not defective in any manner.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

Westinghouse did not and does not have a substantial percentage of the market for the asbestos-containing products which allegedly caused Plaintiff's injuries. Therefore, Westinghouse may not be held liable to Plaintiff based on Westinghouse's alleged percentage share of the applicable market.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Westinghouse denies any and all liability to the extent that Plaintiff asserts Westinghouse's alleged liability as a successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent,

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1

1   alter ego, equitable trustee, subsidiary, wholly or partially owned by, or the whole or partial owner of

2   or member in an entity researching, studying, manufacturing, fabricating, designing, labeling,

3   assembling, distributing, leasing, buying, offering for sale, selling, inspecting, servicing, installing,

4   contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others,

5   packaging and/or advertising products which contain asbestos.

6                     **TWENTY-NINTH AFFIRMATIVE DEFENSE**

7          Westinghouse had no knowledge that any of the alleged activities of which Plaintiff

8   complains, and which allegedly were conducted on premises owned by Westinghouse, were unsafe

9   or dangerous, and Westinghouse therefore did not have a duty to warn Plaintiff regarding any such

10   alleged dangers.

11                      **THIRTIETH AFFIRMATIVE DEFENSE**

12          Westinghouse alleges that it was under no legal duty to warn Plaintiff of the hazards

13   associated with the use of products containing asbestos.  Westinghouse further alleges that the

14   purchasers of said products, Plaintiff's employer/s, his union/s or certain third parties yet to be

15   identified, were knowledgeable and sophisticated users and were in a better position to warn Plaintiff

16   of the risks associated with using products containing asbestos and, assuming a warning was

17   required, it was the failure of such persons or entities to give such a warning that was the proximate

18   and superseding cause of Plaintiff's damages, if any.

19                   **THIRTY-FIRST AFFIRMATIVE DEFENSE**

20          Westinghouse alleges that no conduct by or attributable to it was the cause in fact or the

21   proximate cause of the damages, if any, suffered by Plaintiff, nor a substantial factor in bringing

22   about said damages.

23                  **THIRTY-SECOND AFFIRMATIVE DEFENSE**

24          Westinghouse alleges that its liability, if any, in this matter is extremely minor relative to the

25   liability of various third parties and, therefore, the damages, if any, assessed against it should be

26   proportionate to the degree, nature and extent of its fault.

27   ///

28   ///

---

7

ANSWER TO COMPLAINT FOR DAMAGES

### THIRTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff herein has failed to join indispensable parties and the complaint is thereby defective, and Plaintiff is thereby precluded from any recovery whatsoever as prayed for herein.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

Westinghouse alleges that if Plaintiff's claims were already litigated and resolved in any prior action, Plaintiff's claims herein are barred based on the primary right and res judicata doctrines which prohibit splitting a single cause of action into successive suits, and seeking new recovery for injuries for which the Plaintiff was previously compensated by alleged joint tortfeasors.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

Pursuant to California Code of Civil Procedure sections 378 and 430.10(d), if it is determined that multiple Plaintiffs have been listed on this complaint, then Westinghouse contends the Plaintiffs are misjoined. Because joinder is defective and improper, and defendants will be prejudiced by having to proceed against different Plaintiff with dissimilar cases, a single trial is unfair and a hardship, and separate trials on each individual cause of action should be ordered.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

The matters alleged in this complaint are encompassed within and barred by a settlement and release agreement reached by the parties which operates as a merger and bar against any further litigation on matters raised or potentially raised in connection with the settlement and release.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff has previously filed a dismissal in court dismissing all of its asserted claims, causes of action, and other theories of liability against Westinghouse with prejudice, the matters alleged in this complaint are barred by retraxit.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

To the extent that Plaintiff has reached an accord with Westinghouse regarding this litigation and this accord was then properly satisfied, the claims, causes of action, theories of liability and matters alleged in this complaint are barred by the doctrine of accord and satisfaction.

///

///

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1

### THIRTY-NINTH AFFIRMATIVE DEFENSE

Westinghouse contends that if Plaintiff has released, settled, entered into an accord and satisfaction, or otherwise compromised his claims herein, and accordingly, said claims are barred.

### FORTIETH AFFIRMATIVE DEFENSE

Westinghouse states that the claims of the female Plaintiff, if any, are derivative of her husband's claims, and if his claims are barred or he receives no recovery, then the female Plaintiff's claims are also barred.

### FORTY-FIRST AFFIRMATIVE DEFENSE

The claims stated in Plaintiff's Complaint have been settled, compromised or otherwise discharged and Westinghouse is due a set off.

### FORTY-SECOND AFFIRMATIVE DEFENSE

Westinghouse alleges that another action is pending or has been adjudicated between the parties on the same claims alleged in this action, and therefore, pursuant to section 430.10(c) of the Code of Civil Procedure, this action is duplicative and vexatious and cannot be maintained.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Westinghouse asserts that California Code of Civil Procedure section 361 is a bar to this action because Plaintiff's claims arose in another state and by the laws of that state an action cannot be maintained by reason of the lapse of time, and as a consequence, cannot be maintained in this state.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

Westinghouse alleges that substantial justice requires that, pursuant to section 410.30 of the Code of Civil Procedure, this action be dismissed or stayed because the facts alleged in the Complaint occurred outside of California and California is not the appropriate forum for the action.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

Westinghouse alleges that all or some of the claims and/or legal issues raised in the Complaint are governed by the substantive laws of a state other than California.

///

///

ANSWER TO COMPLAINT FOR DAMAGES

4520-3974:1101732.1