# EXHIBIT C



AlaFile E-Notice

48-CV-2011-900034.00

Judge: EDDIE HARDAWAY

To:   KEAHEY GROVER PATTERSON J
efile@mesohelp.com

---

# NOTICE OF ELECTRONIC FILING

---

IN THE CIRCUIT COURT OF MARENGO COUNTY, ALABAMA

CLEVELAND KITE V. BILL VANN COMPANY, INC. ET AL
48-CV-2011-900034.00

The following matter was FILED on 8/5/2011 12:54:36 PM

**D017 CUMMINS, INC.**

**D044 WARREN PUMPS, INC.**

NOTICE OF REMOVAL

[Filer: MILLS WILLIAM THOMAS II]

Notice Date:      8/5/2011 12:54:36 PM

RUSTY NICHOLS
CIRCUIT COURT CLERK
MARENGO COUNTY, ALABAMA
101 EAST COATS AVENUE
LINDEN, AL 36748

334-295-2219
rusty.nicholas@alacourt.gov

ELECTRONICALLY FILED
8/5/2011 12:54 PM
CV-2011-900034.00
CIRCUIT COURT OF
MARENGO COUNTY, ALABAMA
RUSTY NICHOLS, CLERK

**STATE OF ALABAMA**
Unified Judicial System
Revised 3/5/08

48-MARENGO

☐ District Court    ☑ Circuit Court

Case

Case

CV2

**CIVIL MOTION COVER SHEET**

CLEVELAND KITE V. BILL VANN COMPANY, INC. ET AL

*Name of Filing Party:* D044 - WARREN PUMPS, INC.

---

*Name, Address, and Telephone No. of Attorney or Party. If Not Represented.*

WILLIAM THOMAS MILLS II

22 Inverness Center Parkway Suite 600
BIRMINGHAM, AL 35242

*Attorney Bar No.:*  MIL014

☐ Oral Arguments Requested

---

## TYPE OF MOTION

| Motions Requiring Fee | Motions Not Requiring Fee |
|---|---|

**Motions Requiring Fee**

☐ Default Judgment ($50.00)

☐ Joinder in Other Party's Dispositive Motion (i.e. Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)

☐ Judgment on the Pleadings ($50.00)

☐ Motion to Dismiss, or in the Alternative Summary Judgment($50.00)

☐ Renewed Dispositive Motion(Summary Judgment, Judgment on the Pleadings, or other Dispositive Motion not pursuant to Rule 12(b)) ($50.00)

☐ Summary Judgment pursuant to Rule 56($50.00)

☐ Motion to Intervene ($297.00)

☐ Other _____

pursuant to Rule _____ ($50.00)

_____

*Motion fees are enumerated in §12-19-71(a). Fees pursuant to Local Act are not included. Please contact the Clerk of the Court regarding applicable local fees.

☐ Local Court Costs $ _____

**Motions Not Requiring Fee**

☐ Add Party
☐ Amend
☐ Change of Venue/Transfer
☐ Compel
☐ Consolidation
☐ Continue
☐ Deposition
☐ Designate a Mediator
☐ Judgment as a Matter of Law (during Trial)
☐ Disburse Funds
☐ Extension of Time
☐ In Limine
☐ Joinder
☐ More Definite Statement
☐ Motion to Dismiss pursuant to Rule 12(b)
☐ New Trial
☐ Objection of Exemptions Claimed
☐ Pendente Lite
☐ Plaintiff's Motion to Dismiss
☐ Preliminary Injunction
☐ Protective Order
☐ Quash
☐ Release from Stay of Execution
☐ Sanctions
☐ Sever
☐ Special Practice in Alabama
☐ Stay
☐ Strike
☐ Supplement to Pending Motion
☐ Vacate or Modify
☐ Withdraw
☑ Other      Notice of Removal
pursuant to Rule  NA              (Subject to Filing Fee)

---

Check here if you have filed  or are filing contemporaneously with this motion an Affidavit of Substantial Hardship or if you are filing on behalf of an agency or department of the State, county, or municipal government. (Pursuant to §6-5-1 Code of Alabama (1975), governmental entities are exempt from prepayment of filing fees) ☐

Date:

8/5/2011 12:52:38 PM

Signature of Attorney or Party:

/s/ WILLIAM THOMAS MILLS II

---

*This Cover Sheet must be completed and submitted to the Clerk of Court upon the filing of any motion. Each motion should contain a separate Cover Sheet.

**Motions titled 'Motion to Dismiss' that are not pursuant to Rule 12(b) and are in fact Motions for Summary Judgments are subject to filing fee.

ELECTRONICALLY FILED
8/5/2011 12:54 PM
CV-2011-900034.00
CIRCUIT COURT OF
MARENGO COUNTY, ALABAMA
RUSTY NICHOLS, CLERK

## IN THE CIRCUIT COURT OF MARENGO COUNTY, ALABAMA

| | | |
|---|---|---|
| **CLEVELAND G. KITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action Number:** |
| **v.** | ) | |
| | ) | **CV-11-900034** |
| **BILL VANN COMPANY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>NOTICE OF REMOVAL</u>

TO:     The Honorable Judge of Said Court

Please take notice defendants Cummins Inc. and Warren Pumps LLC (improperly named in the complaint as Warren Pumps, Inc.) have on the 5th day of August, 2011, filed a Notice of Removal of this civil action to the United States District Court for the Southern District of Alabama.  A true and correct copy of said Notice of removal is attached hereto as Exhibit "A."

Respectfully submitted,

<u>s/William T. Mills, II</u>
William T. Mills, II
Attorney for Cummins Inc. and Warren
Pumps LLC
Porterfield, Harper, Mills & Motlow, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, Alabama 35242
Telephone:  205-980-5000
Facsimile:  205-980-5001
ASB-0402-L72W; MIL014
E-mail:  wtm@phm-law.com

## IN THE CIRCUIT COURT OF MARENGO COUNTY, ALABAMA

| | |
|---|---|
| **CLEVELAND G. KITE,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action Number:** |
| ) | |
| **v.** ) | **CV-11-900034** |
| ) | |
| **BILL VANN COMPANY, INC., et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on August 5, 2011, I electronically filed the foregoing with the Clerk of the Court using the AlaFile system which will send notification of such filing to all parties of record.

     Respectfully submitted,

     <u>**s/William T. Mills, II**</u>
William T. Mills, II
Attorney for Cummins Inc. and Warren
Pumps LLC
Porterfield, Harper, Mills & Motlow, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, Alabama 35242
Telephone:  205-980-5000
Facsimile:   205-980-5001
ASB-0402-L72W; MIL014
E-mail:  wtm@phm-law.com

ELECTRONICALLY FILED
8/5/2011 12:54 PM
CV-2011-900034.00
CIRCUIT COURT OF
MARENGO COUNTY, ALABAMA
RUSTY NICHOLS, CLERK

# EXHIBIT

# A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CLEVELAND G. KITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   2:11-cv-00444 |
| | ) |
| BILL VANN COMPANY, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF REMOVAL

The Defendants Cummins Inc. and Warren Pumps LLC (improperly

designated in the complaint as Warren Pumps, Inc.) hereby give notice of removal

to the U.S. District Court for the Southern District of Alabama of the case

Cleveland G. Kite v. Bill Vann Company, Inc., et al., CV-2011-900034, Circuit

Court of Marengo County, Alabama.

I.      Background of this action

The above-referenced civil action was commenced in the Circuit Court of

Marengo County, Alabama, on May 4, 2011, and is now pending therein. The

Plaintiff alleges personal injury from exposure to asbestos. The Plaintiff's

complaint alleges counts for negligence, strict liability, gross/willful/wanton

misconduct, premises liability for fictitious defendants, and conspiracy against one particular defendant. A copy of the clerk's record is filed separately due to its volume.

II.  Warren Pumps LLC's first basis for removal - "federal officer" removal statute

Warren Pumps LLC removes this case pursuant to 28 U.S.C. § 1442(a)(1), the "federal officer" removal statute.[1] Removal is proper under 28 U.S.C. § 1442(a)(1) when a defendant can make two showings. First, the defendant must advance a colorable defense arising from its duty to enforce federal law. Magnin v. Teledyne Continental Motors, 91 F.3d 1424, 1427 (11th Cir. 1996). Second, the defendant must show there is a causal connection between what the federal officer did and the claims against the defendant. Id.

The colorable defense is the "government contractor" defense. In Boyle v. United Technologies Corp., 487 U.S. 500 (1988), the Supreme Court addressed

---

[1]That statute reads, in pertinent part:

(a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

    (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office [...]

28 U.S.C. § 1442(a)(1).

this defense in the context of "when a contractor providing military equipment to the Federal Government can be held liable under state tort law for injury caused by a design defect." Id. at 502. The Court held that liability for "design defects" in military equipment cannot be imposed (and thus, the federal defense is complete) when the United States approved reasonably precise specifications, the equipment conformed to these specifications, and the supplier warned the United States about the dangers in the use of equipment that were known to the supplier but not to the United States. Id. at 512. The "government contractor" defense extends to claims for failure to warn. Dorse v. Eagle-Picher Indus., Inc., 898 F.2d 1487, 1489 (11th Cir. 1990) (also an asbestos personal injury case).

In his complaint, the Plaintiff alleges that the Defendants should be held liable for "designing" asbestos-containing products and for "failing to adequately warn [the Plaintiff] of the danger" from asbestos exposure caused by such products. (Compl. ¶ 58.) It was not until the Plaintiff's discovery deposition on July 12, 2011, when the Plaintiff connected his defective design and failure to warn claims with a specific Defendant. During that deposition, the Plaintiff testified that he worked with or around Warren Pumps equipment during his Coast Guard and Navy service.

Page 3 of 15

Specifically, Kite testified that he worked with Warren pumps on the Coast Guard vessel Salvia out of Mobile, Alabama. (Ex. A, Kite Depo., 12 July 2011, p. 30). He testified that he worked on the "packing" of the pumps during regularly scheduled maintenance. (Id., pp. 31-32.) Kite testified he worked on the Coast Guard vessel Salvia from 1958 to 1960. (Id., p. 31.)

Kite also testified that he worked with Warren pumps while on the Navy vessel USS Hunley out of Charleston, South Carolina. (Ex. A, Kite Depo., 12 July 2011, pp. 153-54). Kite testified that the pumps' "shafts had asbestos packing on it [sic]." (Id., p. 152.)

Finally, Kite identified Warren pumps on the USS Wisconsin out of the Ingalls shipyard in Pascagoula, Mississippi, where he worked. (Id., 18 July 2011, p. 183).

Without waiving any other defenses it may have, Warren Pumps can make out a "colorable" showing in this case that: (1) its Navy equipment was designed and manufactured in compliance with detailed Navy specifications; (2) such equipment was accepted only after the Navy tested and inspected it and found it to be in compliance with said specifications; and (3) the Navy was, at all times relevant to this case, fully and independently aware of potential asbestos-related health hazards. Attached to this notice of removal is the affidavit of Roland

Doktor who offers testimony regarding Navy specifications for Warren Pumps equipment supplied to the Navy. (Exhibit B, Affidavit of Roland Doktor.) These facts establish that Warren Pumps was "act[ing] under" the Navy for purposes of 28 U.S.C. § 1442(a)(1).

As alleged by the Plaintiff, the causal connection to Warren Pumps' actions is straightforward because the Plaintiff alleges exposure to asbestos from Warren Pumps products as the cause of his injury, and the Navy obtained Warren Pumps products for use on Navy vessels. Warren Pumps' involvement with the Navy's official duty to obtain equipment for its vessels is sufficient to show a causal connection. Magnin, 91 F.3d at 1427-28.

III.    Cummins Inc. and Warren Pumps LLC's second basis for removal - "federal enclave" jurisdiction

The U.S. Constitution grants the Congress the power to "exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the acceptance of Congress, become the Seat of the Government of the United States, and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings." U.S. Const. art. I, § 8, cl. 17. These places

are "federal enclaves" over which the United States has exclusive jurisdiction. Surplus Trading Co. v. Cook, 281 U.S. 647, 652 (1930). Actions for injuries on "federal enclaves" arise under the laws of the United States, and therefore federal district courts have jurisdiction over such matters pursuant to 28 U.S.C. § 1331. Mater v. Holley, 200 F.2d 123, 125 (5th Cir. 1953).[2]

Further, the National Parks Act, 16 U.S.C. § 457, states as follows:

Action for death or personal injury within national park or other place under jurisdiction of United States; application of State laws. In the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the exclusive jurisdiction of the United States, within the exterior boundaries of any State, such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be.

16 U.S.C. § 457. United States district courts have jurisdiction under 28 U.S.C. § 1331 for injuries occurring on territory under the exclusive jurisdiction of the United States. Stokes v. Adair, 265 F.2d 662, 665-66 (4th Cir. 1959) (citing the former Fifth Circuit's opinion in Mater, supra).

---

[2]Decisions of the former Fifth Circuit filed prior to October 1, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Case MDL No. 875 Document 9979-1 Filed 08/05/11 Page 7 of 15

While both Cummins Inc. and Warren Pumps LLC maintain they are not liable in any manner whatsoever for the Plaintiff's injuries, nevertheless, these Defendants remove this action to the United States district court pursuant to 28 U.S.C. § 1441(b) based on "federal enclave" jurisdiction.

A.  <u>Plaintiff alleges exposure to asbestos at Guantanamo Bay Cuba, a territory under the exclusive jurisdiction of the United States</u>

In the Plaintiff's discovery deposition on July 12, 2011, he testified that Guantanamo Bay Cuba was a location during the mid-1960s at which he alleges he was exposed to asbestos. (Ex. A, Kite Depo., 12 July 2011, pp. 135, 137.) He testified that he performed "[e]ngineering on the boats on the base." (<u>Id.</u>, p. 135.) He did this work at the "Guantanamo Boat Shed." (<u>Id.</u>, p. 137.) In particular, the Plaintiff testified that he thought he was exposed to asbestos from the naval vessels' exhaust systems, which had asbestos blankets on them. (<u>Id.</u>, p. 137.)

In 1903, the Republic of Cuba leased Guantanamo Bay Cuba to the United States, which lease provides that "the United States shall exercise complete jurisdiction and control over and within said areas." Lease of Lands for Coaling and Naval Stations, Feb. 23, 1903, U.S.-Cuba, Art. III, T.S. No. 418. In 1934, the United States and Cuba agreed that the lease would remain in effect "[s]o long as the United States of America shall not abandon ... the naval station of

Guantanamo." Treaty Defining Relations with Cuba, May 29, 1934, U.S.-Cuba, Art. III, 48 Stat. 1683, T.S. No. 866. The United States government exercises "plenary and exclusive jurisdiction" over Guantanamo Bay Cuba. Rasul v. Bush, 542 U.S. 466, 475 (2004).

Removal is proper based on the Plaintiff's allegations of exposure to asbestos at Guantanamo Bay Cuba, a territory under the exclusive jurisdiction of the United States.

B.   Plaintiff alleges exposure to asbestos at Great Lakes Naval Training Station, a federal enclave

In his discovery deposition on July 12, 2011, the Plaintiff testified that his U.S. Coast Guard training at Great Lakes Naval Training Station in 1964 was a time when, and a location at which, he was allegedly exposed to asbestos when he performed "maintenance on engines." (Ex. A, Kite Depo., 12 July 2011, pp. 130-33.) The Plaintiff testified that he worked on these engines at the station's laboratories that had fully operational engines for training purposes. (Id., p. 131.) In particular, the Plaintiff testified that the vessels' exhaust systems had asbestos blankets on them, the same as with Guantanamo Bay Cuba. (Id., p. 133.)

In 1899, the State of Illinois ceded to the United States exclusive jurisdiction over the land on which now sits the Great Lakes Naval Training

Station. Ill. Gen. Laws of 1899, pp. 375-76 (see Exhibit C, Text of Act); see also

Flynn v. Stevenson, 4 Ill. App. 3d 458, 459, 281 N.E.2d 438, 440 (App. Ct. 1972)

(describing this transfer).

Removal is proper based on the Plaintiff's allegations of exposure to

asbestos at Great Lakes Naval Training Station, a federal enclave.

IV.   Timeliness of removal

This notice of removal is timely filed within thirty days of July 12, 2011,

which is the first day of the Plaintiff's discovery deposition. For the purposes of

removal, that deposition testimony is the "other paper from which it may first be

ascertained that the case is one which is or has become removable..." 28 U.S.C. §

1446(b). That is the first date the Defendants could reasonably assert specific

grounds for federal jurisdiction based on Plaintiff's exposure to asbestos occurring

on a federal enclave and acts supporting a "government contractor" defense.

V.    By filing or joining this notice of removal, the Defendants do not waive any

defenses or objections available to them under the law.

VI.   All Defendants join in this removal based on "federal enclave" jurisdiction.

(Exhibit D, Consent of all Defendants that are not filing a separate notice of

removal. Defendants that are filing a separate notice of removal have consents

within their individual notices.)

VII.   As to the "federal officer" removal statute, 28 U.S.C. § 1442(a)(1), Warren

Pumps may remove the case unilaterally. See Fowler v. Southern Bell Tel. & Tel.

Co., 343 F.2d 150, 152 (5th Cir. 1965) ("[I]t is settled that the filing of a petition

for removal by a single federal officer removes the entire case to the federal

court.").

Date:  August 5, 2011.

Respectfully submitted,

William T. Mills, II
Porterfield Harper Mills & Motlow PA
22 Inverness Center Parkway, Suite 600
Birmingham, AL 35242
Tel. (205) 980-5000
Fax (205) 980-5001
Email wtm@phm-law.com

Counsel for Cummins Inc. and Warren
Pumps LLC

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing on the following counsel of record by U.S. Mail, First Class postage prepaid, and properly addressed as follows:

Counsel for the Plaintiff
G. Patterson Keahey Jr., Esq. (info@mesohelp.com)
Law Offices of G. Patterson Keahey P.C.
One Independence Plaza, Suite # 612
Birmingham, AL 35209

Counsel for the Plaintiff
Marc Keahey, Esq. (marc_keahey@yahoo.com)
PO Box 934
Grove Hill, AL 36451

Counsel for Bill Vann Company Inc., Crane Co., Foster Wheeler Corporation, and Goulds Pumps Inc.
F. Grey Redditt, Esq. (gredditt@vickersriis.com)
Timothy A. Clarke, Esq. (tclarke@vickersriis.com)
Roy W. Harrell III, Esq. (tharrell@vickersriis.com)
Vickers Riis Murray and Curran LLC
PO Drawer 2568
Mobile, AL 36652-2568

Counsel for Motion Industries Inc.
Robert F. Northcutt, Esq. (rfn@chlaw.com)
Capell & Howard P.C.
PO Box 2069
Montgomery, AL 36102-2069

Counsel for Warrior 1-Stop Building Supply
G. Stephen Wiggins, Esq. (swiggins@hsmbb.com)
Christopher L. McIlwain Sr., Esq. (cmcilwain@hsmbb.com)
Raley L. Wiggins, Esq. (rwiggins@hsmbb.com)
Hubbard Wiggins McIlwain & Brakefield P.C.
PO Box 2427
Tuscaloosa, AL 35403

Counsel for Aurora Pump Co.
Jennifer T. Walters, Esq. (jennifer.walters@nelsonmullins.com)
Nelson Mullins Riley & Scarborough LLP
Atlantic Station
201 17th St. NW, Suite 1700
Atlanta, GA 30363

Counsel for A.W. Chesterton Co., Buffalo Pumps Inc., Flowserve Corporation, and Schneider Electric USA Inc.
Edward B. McDonough, Jr., Esq. (ebm@emcdonoughlaw.com)
Edward B. McDonough Jr. PC
PO Box 1943
Mobile, AL 36633

Counsel for Cameron International Corp.
Christopher S. Rodgers, Esq. (csr@hfsllp.com)
Huie Fernambucq & Stewart LLP
Three Protective Center
2801 Hwy 280 South, Suite 200
Birmingham, AL 35223

Counsel for Caterpillar Inc. and The Goodyear Tire & Rubber Company
William L. Waudby, Esq. (bwaudby@bakerdonelson.com)
Baker Donelson Bearman Caldwell & Berkowitz PC
420 North 20th St., Suite 1600
Birmingham, AL 35203

Counsel for CBS Corporation
James A. Harris III, Esq. (jamey@harris-harris.com)
Nicole M. Hardee, Esq. (nicole@harris-harris.com)
Harris & Harris LLP
2501 20th Place South, Suite 450
Birmingham, AL 35223

Counsel for Crown Cork & Seal Co. Inc. and Crown Holdings Inc.
Walter T. Gilmer Jr., Esq. (wgilmer@mcdowellknight.com)
Anne Laurie McClurkin, Esq. (amcclurkin@mcdowellknight.com)
McDowell Knight Roedder & Sledge LLC
PO Box 350
Mobile, AL 36601

Counsel for Dana Companies LLC, Dana Holding Corporation, and Union
Carbide Corporation
Evelyn F. Davis, Esq. (edavis@hptylaw.com)
Catherine A. McCormack, Esq. (cmccormack@hptylaw.com)
Hawkins Parnell Thackston & Young LLP
4000 SunTrust Plaza
303 Peachtree St. NE
Atlanta, GA 30308

Counsel for Eaton Corporation
John A. Smyth III, Esq. (smythj@maynardcooper.com)
Katherine A. Collier, Esq. (kcollier@maynardcooper.com)
Maynard Cooper & Gale PC
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, AL 35203

Counsel for General Electric Company
S. Allen Baker Jr., Esq. (abaker@balch.com)
Jenelle R. Evans, Esq. (jevans@balch.com)
Balch & Bingham LLP
PO Box 306
Birmingham, AL 35201-0306

Counsel for Georgia-Pacific LLC
Allan R. Wheeler, Esq. (awheeler@burr.com)
Burr & Forman LLP
420 North 20th Street, Suite 3400
Birmingham, AL 35203

Counsel for The Gorman-Rupp Company and Sepco Corporation
Frank E. Lankford Jr., Esq. (fel@hfsllp.com)
Huie Fernambucq & Stewart LLP
Three Protective Center
2801 Hwy 280 South, Suite 200
Birmingham, AL 35223

Counsel for The Gorman-Rupp Company, John Crane Inc., Honeywell
International Inc., and Sepco Corporation
Woodford W. Dinning Jr., Esq. (wwdjr@ldllc.com)
Lloyd & Dinning LLC
PO Drawer 740
Demopolis, AL 36732

Counsel for Honeywell International Inc.
Frank E. Lankford Jr., Esq. (fel@hfsllp.com)
Stewart W. McCloud, Esq. (swm@hfsllp.com)
Huie Fernambucq & Stewart LLP
Three Protective Center
2801 Hwy 280 South, Suite 200
Birmingham, AL 35223

Counsel for Metropolitan Life Insurance Company
Michael A. Vercher, Esq. (mavercher@csattorneys.com)
Joi C. Scott, Esq. (jcscott@csattorneys.com)
Christian & Small LLP
505 North Twentieth St.
1800 Financial Center
Birmingham, AL 35203

Counsel for Saint-Gobain Abrasives Inc.
Robert H. Sprain Jr., Esq. (rhs@sprainlaw.com)
Sprain Law Firm PC
1707 29th Court South
Birmingham, AL 35209

Counsel for Viking Pump Inc.
Richard M. Crump, Esq. (crumprm@fpwk.com)
Forman Perry Watkins Krutz & Tardy LLP
200 South Lamar St.
City Centre, Suite 100
PO Box 22608
Jackson, MS 39225

Done this the 5th day of August, 2011.

_____
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,        )
                                 )
        Plaintiff,        )
                                 )
v.                       )  CV_____
                                 )
BILL VANN COMPANY, INC., et al.,  )
                                 )
        Defendants.      )

# EXHIBIT "A"

Excerpts from the Deposition of the Plaintiff, Cleveland G. Kite

# CLEVELAND G. KITE                                    07/12/2011

Page 1

1      IN THE CIRCUIT COURT OF
2      MARENGO COUNTY, ALABAMA
3
4   CIVIL ACTION NUMBER: CV-2001-900034.00
5
6   CLEVELAND G. KITE,
7        Plaintiff,
8
9   vs.
10
11  BILL VANN COMPANY, INC., et al.;
12       Defendants.
13
14
15
16
17      DEPOSITION TESTIMONY OF:
18      CLEVELAND G. KITE
19
20
21      JULY 12, 2011
22      10:00 A.M.
23

Page 2

1          S T I P U L A T I O N S
2      IT IS STIPULATED AND AGREED by and
3   between the parties through their respective
4   counsel that the video deposition of CLEVELAND
5   G. KITE may be taken before Mickey L. Turner,
6   Certified Shorthand Reporter and Notary
7   Public, at the offices of Freedom Court
8   Reporting, The O'Gwynn Building, 204 Conti
9   Street, Suite 1C, Mobile, Alabama 36602, on
10  the 12th day of July, 2011.
11      IT IS FURTHER STIPULATED AND AGREED
12  that the signature to and the reading of the
13  deposition by the witness is not waived, the
14  deposition to have the same force and effect
15  as if full compliance had been had with all
16  laws and rules of Court relating to the taking
17  of depositions.
18      IT IS FURTHER STIPULATED AND AGREED
19  that it shall not be necessary for any
20  objections to be made by counsel to any
21  questions, except as to form or leading
22  questions, and that counsel for the parties
23  may make objections and assign grounds at the

Page 3

1   time of the trial, or at the time said
2   deposition is offered in evidence, or prior
3   thereto.
4       IT IS FURTHER STIPULATED AND AGREED
5   that notice of filing of the deposition by the
6   Commissioner is waived.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

Page 4

1              I N D E X
2   EXAMINATION BY:            PAGE NUMBER:
3   Mr. Partridge            11
4
5
6             E X H I B I T S
7
8   PLAINTIFF'S EXHIBITS:      PAGE NUMBER:
9   1 - Interrogatory Responses     11
10
11  DEFENDANT'S EXHIBITS:
12  1 - Amended Notice of
13       Discovery Deposition     205
14
15
16
17
18
19
20
21
22
23

1  (Pages 1 to 4)

**CLEVELAND G. KITE**                                    **07/12/2011**

---

Page 5

1    A P P E A R A N C E S

2

3    THE KEAHEY LAW FIRM, BY G. Patterson

4    Keahey, Esquire, (info@mesohelp.com), One

5    Independence Plaza, Suite 612, Birmingham,

6    Alabama 35209, appearing on behalf of the

7    Plaintiff.

8    FORMAN, PERRY, WATKINS, KRUTZ & TARDY,

9    by Donald C. Partridge, Esquire,

10   (partridgedc@fpwk.com), 200 South Lamar

11   Street, Suite 100, Jackson, Mississippi 39201,

12   appearing on behalf of a defendant.

13   VICKERS, RIIS, MURRAY AND CURRAN, LLC,

14   by Timothy A. Clarke, Esquire,

15   (tclarke@vickersriis.com), 106 Saint Francis

16   Street, Suite 1100, Mobile, Alabama 36602,

17   appearing on behalf of Bill Vann Company,

18   Inc., Crane Co., Goulds Pumps, Inc. and also

19   appearing for Foster Wheeler Corporation,

20   subject to special appearance without waiver

21   of any objections or defenses.

22   AULTMAN, TYNER & RUFFIN, LTD., by Rocky

23   W. Eaton, Esquire (reaton@aultmantyner.com),

---

Page 6

1    315 Hemphill Street, Hattiesburg, Mississippi

2    39403, appearing on behalf of York

3    International Corporation.

4    BALCH & BINGHAM, LLC, by Jenelle R.

5    Evans, Esquire (jevans@balch.com), 1901 Sixth

6    Avenue North, Suite 1500, Birmingham, Alabama

7    35203, appearing on behalf of General

8    Electric.

9    EDWARD B. MCDONOUGH, JR., P.C., by

10   Edward B. McDonough, Jr., Esquire

11   (ebmc@ebmcdonough.com), 107 St. Francis

12   Street, Mobile, Alabama 36633, appearing on

13   behalf of Chesterton, Buffalo Pumps, Schneider

14   Electric and Flowserve/Duriron.

15   PORTERFIELD, HARPER, MILLS & MOTLOW,

16   PA, by William T. Mills, II, Esquire

17   (wtm@phm-law.com), 22 Inverness Center

18   Parkway, Suite 600, Birmingham, Alabama 35242,

19   appearing on behalf of Cummins and Warner

20   Pump.

21   HAWKINS, PARNELL, THACKSTON & YOUNG,

22   LLP, by Ernest L. Wetzler, II, Esquire

23   (ewetzler@hptylaw.com), 4000 SunTrust Plaza,

---

Page 7

1    303 Peachtree Street NE, Atlanta, Georgia

2    30308, appearing on behalf of Cleaver-Brooks,

3    Oakfabco, Inc., and Cooper Industries.

4    HAWKINS, PARNELL, THACKSTON & YOUNG,

5    LLP, by Catherine A. McCormack, Esquire

6    (cmccormack@hptylaw.com), 4000 SunTrust Plaza,

7    303 Peachtree Street NE, Atlanta, Georgia

8    30308, appearing on behalf of Union Carbide

9    and Dana.

10   HUBBARD, WIGGINS, MCILWAIN &

11   BRAKEFIELD, PC, by G. Stephen Wiggins, Esquire

12   (swiggins@hubbardfirm.com), 808 Lurleen

13   Wallace Boulevard North, Tuscaloosa, Alabama

14   35403, appearing on behalf of Warrior 1-Stop.

15   TUCKER, ELLIS & WEST, by Henry E.

16   Billingsley, Esquire,

17   (hbillingsley@tuckerellis.com), 1150

18   Huntington Building, 925 Euclid Avenue,

19   Cleveland, Ohio 44115, appearing on behalf of

20   UTC.

21   MAYNARD, COOPER & GALE, PC, by J.

22   Walton Jackson, Esquire,

23   (wjackson@maynardcooper.com), 2400

---

Page 8

1    Regions/Harbert Plaza, 1901 6th Avenue North,

2    Birmingham, Alabama 35203, appearing on behalf

3    of Eaton Corporation.

4    MCDOWELL, KNIGHT, ROEDDER & SLEDGE,

5    LLC, by Annie Laurie McClurkin, Esquire,

6    (amcclurkin@mcdowellknight.com), 11 North

7    Water Street, Thirteenth Floor, Battle House

8    Tower, Mobile, Alabama 36602, appearing on

9    behalf of Crown.

10   HUIE, FERNAMBUCQ & STEWART, LLP, by

11   Frank E. Lankford, Jr., Esquire

12   (fel@hfsllp.com), Three Protective Center,

13   Suite 200, 2801 Highway 280 South, Birmimgham,

14   Alabama 35223, appearing on behalf of John

15   Crane, Inc., Honeywell International, Sepco,

16   Gorman Rupp and Cameron International.

17   HARRIS & HARRIS, LLP, by James A.

18   Harris, III, Esquire

19   (jamey@harris-harris.com), BB&T Bank Building,

20   Suite 450, 2501 20th Place South, Birmingham,

21   Alabama 35223, appearing on behalf of CBS.

22   BURR & FORMAN, LLP, by Allan R.

23   Wheeler, Esquire (awheeler@burr.com), 420

---

2  (Pages 5 to 8)

**CLEVELAND G. KITE**                                    **07/12/2011**

|                          | Page 9 |
|---|---|

1  North 20th Street, Suite 3400, Birmingham,
2  Alabama 35203, appearing on behalf of Georgia
3  Pacific.
4        CAPELL & HOWARD, PC, by Robert F.
5  Northcutt, Esquire (rfn@chlaw.com), 150 South
6  Perry Street, Montgomery, Alabama 36104,
7  appearing on behalf of Motion Industries.
8        BAKER, DONELSON, BEARMAN, CALDWELL &
9  BERKOWITZ, PC, by William L. Waudby, Esquire
10  (bwaudby@bakerdonelson.com), Wells Fargo
11  Tower, 420 20th Street North, Suite 1600,
12  Birmingham, Alabama 35203, appearing on behalf
13  of Caterpillar, Inc. and The Goodyear Tire &
14  Rubber Company.
15        SPRAIN LAW FIRM, PC, by Robert H.
16  Sprain, Jr., Esquire (rhs@sprainlaw.com), 1707
17  29th Court South, Birmingham, Alabama 35209,
18  appearing on behalf of a Defendant.
19
20
21
22
23

|                          | Page 10 |
|---|---|

1        I, Mickey L. Turner, Certified
2  Shorthand Reporter and Notary Public, acting
3  as Commissioner, certify that on this date, as
4  provided by the Alabama Rules of Civil
5  Procedure, and the foregoing stipulation of
6  counsel, there came before me at the offices
7  of Freedom Court Reporting, The O'Gwynn
8  Building, 204 Conti Street, Suite 1C, Mobile,
9  Alabama 36602, beginning at 10:00 a.m.,
10  CLEVELAND G. KITE, witness in the above cause,
11  for oral examination, whereupon the following
12  proceedings were had:
13
14        CLEVELAND G. KITE,
15  being first duly sworn, was examined and
16  testified as follows:
17
18        COURT REPORTER:  Usual stipulations?
19        MR. PARTRIDGE:  Yes, ma'am.
20        MR. CLARKE:  Before we begin, this is
21  Tim Clarke on behalf of Foster Wheeler
22  Corporation entering a special appearance.
23  There have been some issues with respect to

|                          | Page 11 |
|---|---|

1  service of the process, and by so specially
2  appearing, Foster Wheeler does not waive any
3  defenses it may have with respect to process
4  service, process jurisdiction or any other
5  defenses or objections, and by so appearing,
6  appearing to protect the interests of Foster
7  Wheeler with respect to this deposition.
8        MR. WETZLER:  And Cooper Industries
9  joins that objection or joins that
10  stipulation.  We haven't been served.
11
12        (Whereupon, Plaintiff's Exhibit 1
13        was marked for identification and
14        same is attached hereto.)
15
16  EXAMINATION BY MR. PARTRIDGE:
17  Q.   Good morning, Mr. Kite.  I'm Donald
18  Partridge.  We just met a few minutes ago.
19  And I'm going to start with you this morning.
20  And just a very few rules.  If I state a
21  question that you don't understand or you
22  don't hear it, just let me know and I'll
23  rephrase it for you.  Otherwise, I will assume

|                          | Page 12 |
|---|---|

1  you have understood my question and heard it
2  and will give me truthful answers.  Is that
3  fair?
4  A.   Yes, sir.
5  Q.   If you need a break at any time, want to
6  quit or whatever you want to do, just let me
7  know.  And we're going to go as far as we can
8  today.  I mentioned to you a few minutes ago
9  that I'm going to ask some questions out of my
10  normal order.  Typically, I would ask a lot of
11  background questions of you in the beginning
12  to make both you and me comfortable with each
13  other and to get some background information
14  out of the way.  But because of something
15  later this morning, I'm going to go right into
16  your work history.  And at least some
17  background, I guess I ought to ask your full
18  name and where you live.
19  A.   Cleveland Grover Kite, 1861 Schillinger
20  Road North, Semmes 36575.
21  Q.   And what's your date of birth?
22  A.   April 19, 1938.
23  Q.   All right.  I'm not very good at math.

**FREEDOM COURT REPORTING    877-373-3660**

**CLEVELAND G. KITE**                    07/12/2011

| Page 29 | Page 31 |
|---|---|
| 1  other motors like the pumps and things.  We | 1  same equipment.  The only thing that would be |
| 2  had motors on them, Westinghouse and GE. | 2  different would be the engine.  Everything |
| 3  Q.   And did you ever have to work on the | 3  else would be the same.  Pipes, lines, pumps, |
| 4  motors? | 4  everything would be the same. |
| 5  A.   Yes, sir. | 5  Q.   You were on the Salvia from '58 to '60, |
| 6  Q.   What did you do? | 6  right? |
| 7  A.   The packing parts of them.  The pump, | 7  A.   '58 to '60, yes. |
| 8  we'd take them loose and repack them, the | 8  Q.   And that's the only vessel you were |
| 9  shafts and things. | 9  assigned to during that three-year period, |
| 10  Q.   On the motors? | 10  correct? |
| 11  A.   Yes, sir. | 11  A.   Yes, sir. |
| 12  Q.   How often would you have to do that? | 12  Q.   Is it your testimony that the pumps you |
| 13  A.   That PMS time I was telling you and also | 13  just named were all on the Salvia? |
| 14  sometimes on one when the packing would burn | 14  A.   Yes, sir. |
| 15  out on it. | 15  Q.   How many pumps were on the Salvia? |
| 16  Q.   So, on the regularly scheduled | 16  A.   There was a lot of them.  I don't |
| 17  maintenance, you're saying you would be the | 17  remember how many, what the total was. |
| 18  person or one of the persons who might work on | 18  Q.   Did you have to work on the pumps? |
| 19  one of these motors? | 19  A.   Yes. |
| 20  A.   Yes, sir. | 20  Q.   What did you do? |
| 21  Q.   And were there -- do you recall any | 21  A.   Packing. |
| 22  emergency repairs on any of the motors? | 22  Q.   Was that during the PMS, regularly |
| 23  A.   Yes, sir. | 23  scheduled maintenance? |

| Page 30 | Page 32 |
|---|---|
| 1  Q.   Motors are typically kind of reliable | 1  A.   Yes, sir.  And if the plume broke down, |
| 2  objects, aren't they? | 2  we had to do it again. |
| 3  A.   Yes, sir. | 3  Q.   Were there other people on the vessel |
| 4  Q.   You just mentioned pumps also.  Did you | 4  that also had to repair pumps? |
| 5  have to work on pumps on the Salvia? | 5  A.   Yes, sir. |
| 6  A.   Yes, sir. | 6  Q.   Did they do it more than you? |
| 7  Q.   What kind of pumps were on the Salvia? | 7  A.   No, sir, we did it all the same. |
| 8  A.   I think Gould and Warren pumps and we | 8  Q.   How many people were assigned in the |
| 9  had Viking. | 9  engine room? |
| 10  Q.   What was that? | 10  A.   About six people. |
| 11  A.   Viking.  You had Buffalo pumps.  Aurora | 11  Q.   Did you rotate shifts? |
| 12  pumps. | 12  A.   Yes, sir. |
| 13   MR. LANKFORD:  I'm sorry.  I didn't | 13  Q.   How many were on a shift? |
| 14  hear. | 14  A.   A couple. |
| 15  A.   Aurora pumps. | 15  Q.   Two? |
| 16   MR. LANKFORD:  Thank you. | 16  A.   Yes, sir. |
| 17  A.   There's some more, but I can't remember | 17  Q.   So you had three shifts of two people? |
| 18  the names right now. | 18  A.   Yes, sir. |
| 19  Q.   Now, are you saying all of these pumps | 19  Q.   Do you know what any of these pumps, any |
| 20  were just on the Salvia, because that's all | 20  in particular, were pumping? |
| 21  I'm asking you about? | 21  A.   Water, fuel, oil, things like that. |
| 22  A.   No, sir.  Anything on the ship, if you | 22  Q.   With regard to any of the names that you |
| 23  went from one ship to another, you had the | 23  just mentioned, and I wrote down five, do you |

8 (Pages 29 to 32)

**CLEVELAND G. KITE**                                    **07/12/2011**

Page 33

1  recall what any of those particular pumps
2  might have been pumping?
3  A. No, sir.
4  Q. For instance, the Viking pump, do you
5  remember what the Viking pump pumped?
6  A. No, sir, I don't.
7  Q. Do you remember what the Aurora pump
8  pumped?
9  A. No, sir.
10  Q. Is it fair to say you just remember
11  these names but can't really tell me what any
12  particular brand pump might have been pumping
13  and doing?
14      MR. KEAHEY: Objection. Go ahead and
15  answer it if you can.
16  A. No.
17  Q. No, I asked you if that was a fair
18  question.
19  A. Ask it, please, again.
20  Q. I'm sorry?
21  A. Ask it again.
22  Q. Okay. Is it a fair statement that you
23  remember these pump names, but with regard to

Page 34

1  any particular pump, you can't tell me what
2  any particular brand name pump was pumping?
3  A. Like I named Gould a while ago, Gould
4  was a water pump. You pump sea water in,
5  fresh water to the engines. I can't remember
6  everything that -- what went on them and what
7  went through them.
8  Q. That's what I was asking. That's where
9  I was going with that, if any of those names
10  that you mentioned you could remember a
11  particular purpose for that pump.
12  A. Yes, sir.
13  Q. So now you've said the Gould pump was
14  pumping fresh sea water?
15  A. Sea water and fresh water.
16  Q. What about any of the other pumps you
17  named? Do you remember a particular purpose
18  for any of them?
19  A. It's hard to remember. I'm sorry.
20  Q. Look, this was 1958 to 1960.
21  A. Believe me --
22  Q. We're not here to trick you. We're just
23  here to find out what you know. I meant to

Page 35

1  tell you that earlier. If you don't remember
2  something, that's a perfect answer, fine. We
3  don't want you to speculate. There's nothing
4  wrong with saying "I don't remember" or "I
5  don't know."
6  A. Yes, sir.
7  Q. All right. Where did you go after 1960?
8  What vessel were you assigned to?
9  A. The Shadbush.
10
11      (Whereupon a discussion was held
12          off the record.)
13
14      (Whereupon a recess was taken.)
15
16  Q. (BY MR. PARTRIDGE:) Now we'll change
17  gears. I'm sorry to have to do this this way.
18  We'll have to change gears. If you don't mind
19  now, Mr. Kite, we can ask some of these
20  background questions.
21  A. Okay.
22  Q. I'm going to ask you about your family
23  and your medical history and maybe a little

Page 36

1  bit more about your education and your
2  training in the Coast Guard and how you grew
3  up.
4      All right. I understand you were raised
5  in Gainesville, Florida and you went through
6  the ninth grade. And then you didn't do much
7  for a couple of years and you joined the Coast
8  Guard. Is that correct so far?
9  A. Yes, sir.
10  Q. Tell me about your mother and father.
11  What was your father's name?
12  A. Grover Cleveland Kite.
13  Q. Senior and you're Junior?
14  A. No Junior, no Senior.
15  Q. You're not? What did your dad?
16  A. He commercial fished. At one time he
17  farmed. He worked for the state road
18  department the last part of his life.
19  Q. Do you think dad worked with or around
20  asbestos in any way?
21  A. No, sir.
22  Q. And what did your dad die from?
23  A. Old age. He died at 93.

**FREEDOM COURT REPORTING    877-373-3660**

**CLEVELAND G. KITE**                                07/12/2011

|  | Page 129 |
|---|---|

1   Q.   On this particular tug, did you have to
2   change out any of that blanket material?
3   A.   No, sir, but you take it off and it's
4   brittle and it'd break and it'd have dust on
5   it.  And then we'd take the hoses and blow --
6   actually, we'd blow the blankets off to clean
7   them off, because you've got dust and dirt
8   from all this stuff around and you'd take the
9   hose and blow it off and blow where you was
10  working, the area, blow it off, and all these
11  particles would just be in the air.  You could
12  see them.
13  Q.   You'd blow the old one?
14  A.   Yes, sir.
15  Q.   Why would you do that?  Weren't you
16  replacing it with new?
17  A.   No, the old blankets would have dirt and
18  dust on them, and you would just blow them
19  off.  You'd blow the dirt and stuff, take them
20  off so the piece of equipment you were going
21  to work on didn't get all this stuff on top of
22  the blanket.
23  Q.   I see.  Okay.  And then you put the old

|  | Page 130 |
|---|---|

1   blanket back on?
2   A.   Back on, yes, sir.  And a lot of times,
3   if they required a new one, you'd put it back
4   on.
5   Q.   Yes, sir.  In 1964, you left this
6   particular tug at some point, right?
7   A.   Yes.
8   Q.   Where did you go after that?
9   A.   I went to C-school, Great Lakes,
10  Illinois.
11  Q.   And we're still in '64?
12  A.   Yes, sir.
13  Q.   What did you learn?  And why did you go
14  to C-school and what did you learn?
15  A.   Maintenance on engines.
16  Q.   Well, that's kind of what you had been
17  doing up to this point, right?
18  A.   Everything I did in the military, you
19  know, like I said, working ships and thing,
20  was as an engineer.
21  Q.   So was this like to learn more advanced
22  things that you didn't know already?
23  A.   To repair and stuff like that, yes, sir.

|  | Page 131 |
|---|---|

1   You had a half a day of classroom, of book
2   stuff and teaching, then you'd go out in the
3   lab and work on the engines.  You'd tear them
4   down and rebuild them.
5   Q.   They actually had engines in the labs,
6   didn't they, fully operational?
7   A.   Yes, sir.
8   Q.   Did you have to -- well, what did you
9   have to do to the engines that were in the lab
10  at C-school?
11  A.   Tear them down, look them over, and put
12  them back together.
13  Q.   Do you remember what kind of engines
14  they were that you remember working on?
15  A.   General Motors, Fairbanks Morris,
16  Packard diesels, and -- I'm trying to think.
17  And they had Hall-Scotts.
18  Q.   Hall-Scotts?
19  A.   Yes, sir.
20  Q.   By now, what is your rank?
21  A.   I was E-5.
22  Q.   E-5 when you went to school?
23  A.   Yes, sir.  I made E-5 in school.

|  | Page 132 |
|---|---|

1   Q.   You started E-4 and in school you got
2   promoted.
3   A.   E-5.
4   Q.   Are you still calling yourself an engine
5   man at E-5?
6   A.   Yes, sir, MK.
7   Q.   How long did C-school last?
8   A.   Nineteen, twenty weeks I was there.
9   Q.   Did you learn anything -- how to
10  maintain any equipment besides engines at
11  C-school?
12  A.   No, sir.  Mostly engineering.  That's
13  what we did, went to school for that.
14  Q.   So it was strictly engines?
15  A.   Yes, sir.
16  Q.   When you say C-school, it's the letter
17  C, isn't it, not S-E-A?
18  A.   Right, it's C.
19  Q.   Right, because there's A-school?
20  A.   A-school and C-school.
21  Q.   You never went to A-school, did you?
22  A.   No, sir.
23  Q.   Do you think you were exposed to

**FREEDOM COURT REPORTING    877-373-3660**

# CLEVELAND G. KITE                    07/12/2011

## Page 133

1  asbestos in any way at C-school?
2  A.   The blankets around the exhaust systems
3  was there and we'd take them off and put them
4  on, take them off and put them on, take them
5  off, put them on.
6  Q.   Same blankets?
7  A.   Same blanket.
8  Q.   Do you have any idea how long those
9  blankets had been there, how old those
10 blankets were?
11 A.   No, sir, they were brittle and they put
12 a lot of stuff out, but you put them back on.
13 Q.   Did you have to fool with any gaskets on
14 these engines at C-school?
15     MR. BILLINGSLEY:  Object to the form.
16 A.   Yeah, on the cylinders and things, you
17 put them back on.
18 Q.   I assume you graduated okay from
19 C-school?
20 A.   Yes, sir.
21 Q.   And by now, are we into 1965?
22 A.   I think so.
23 Q.   Where did you go after C-school?

## Page 134

1  A.   I went to Puerto Rico, to a Navy base in
2  Puerto Rico, worked in CID, Criminal
3  Investigation Department, and base police,
4  shore patrol.
5  Q.   Were you -- oh, gosh -- the equivalent
6  of an MP in the Navy?
7  A.   Yes, sir, shore patrol.
8  SP, yeah.
9  A.   Shore patrol, base police.
10 Q.   Now, after having been an engine man and
11 having going to C-school, why did they send
12 you to CID in Puerto Rico?
13 A.   That was the orders that came and I
14 said, thank you, Lord.
15 Q.   That was the Navy way, the right way and
16 the Navy way.  How long were you in Puerto
17 Rico?
18 A.   I'm trying to think.  About ten months,
19 I think.  It might have been a little longer
20 than that.
21 Q.   Do you think you were exposed to
22 asbestos in any way while stationed in Puerto
23 Rico at CID?

## Page 135

1  A.   No, sir.
2  Q.   Did you have to spend your time on a
3  vessel at all in Puerto Rico or were you in
4  barracks?
5  A.   No, sir, I was living in barracks.
6  Q.   Are we by now into 1966, approximately?
7  A.   Maybe.
8  Q.   1965, '66?
9  A.   I can't remember the date.
10 Q.   What's your next assignment after Puerto
11 Rico.
12 A.   I went to Gitmo, Cuba.  Guantanamo Bay
13 Cuba.
14 Q.   What did you do there?
15 A.   Engineering on boats on the base.  It
16 was the air base rescue boats.  If a plane
17 went down or something, we were the crew to go
18 and pick them up.
19 Q.   In the Caribbean or in --
20 A.   Well, in the Atlantic.
21 Q.   Or the Atlantic, yeah.
22 A.   Cuba.
23 Q.   Yeah.  So, if a plane went down, you

## Page 136

1  went and picked them up?
2  A.   Yes, sir, that's Naval Air Station Boat
3  Shed.  That's what they called where we was
4  at.
5  Q.   Boat what?
6  A.   Boat Shed.
7  Q.   Is that like a rescue mission?
8  A.   Yes, sir.
9  Q.   How were you salvaging planes out of the
10 water?
11 A.   We never had one to crash, so we just
12 practiced.  They'd bring a float plane in and
13 we'd go up to it and work about getting people
14 off of it and putting them in the boat and
15 carry them back to the base.
16 Q.   This was out in the water?
17 A.   Yes, sir.  The sea plane would be out
18 there and we'd go out there and do the rescue.
19 Q.   So you were practicing on sea planes?
20 A.   Yes.
21 Q.   I got you.  This sounds like pretty good
22 duty.  How long did that last?
23 A.   I think I was there nine months.

34 (Pages 133 to 136)

**CLEVELAND G. KITE**                                    07/12/2011

| Page 137 | Page 139 |
|---|---|

**Page 137**

1  Q.  Do you think you were exposed to
2  asbestos in any way in Cuba?
3  A.  The boats had -- the exhaust systems had
4  blankets on them, asbestos blankets.
5  Q.  Were you in charge of those boat
6  engines?
7  A.  Well, I was an E-5 and that was part of
8  my job.  But they had a first class over me
9  and he was part of the engineering group.
10  Q.  You had one or two under you, too,
11  didn't you?
12  A.  Yes, sir.
13  Q.  And did they do most of the work at your
14  direction?
15  A.  Well, yes, sir.
16  Q.  What exactly was your job at Guantanamo
17  Boat Shed?
18  A.  Engineering, working on the boats,
19  gassing them, oiling them, filling them with
20  fuel, diesel fuel.
21  Q.  Maintaining the vessels?
22  A.  Yes, sir.
23  Q.  Was it more than just engine work?

**Page 139**

1  long did language school last?
2  A.  It was five weeks of language, but I had
3  the whole thing, the whole compilation.  I
4  think I was there about twelve weeks, I
5  believe.
6  Q.  Had you had any exposure to the
7  Vietnamese language prior to that?
8  A.  No, sir.
9  Q.  Did you had learn to speak Vietnamese in
10  five to twelve weeks?
11  A.  Well, they had Vietnamese people from
12  Vietnam to come in and teach us.  And they had
13  some from the north and some from the south to
14  teach us their language.  I couldn't speak
15  Vietnamese, and then I got over there and my
16  counterpart, when he said "My bien net qua"
17  (spelled phonetically), I knew I was in
18  trouble.
19  Q.  I'm sure the court reporter just got
20  that.
21  A.  He couldn't speak any English at all.  I
22  said, one of us is going to have to learn the
23  language.  I already had a basic thing of the

**Page 138**

1  A.  Yes, you had to maintain the base
2  itself, the living quarters and the place
3  where we worked at, the shops.  We had to take
4  care of that.
5  Q.  Now, other than the blanket on the
6  exhaust systems, do you think you were exposed
7  to asbestos by any piece of product or
8  equipment while stationed at Guantanamo?
9  A.  No, sir.
10  Q.  And you said you were there about nine
11  months.  Are we into '67 by now, do you think?
12  A.  Something like that, yes.
13  Q.  Where do you go next, San Diego?
14  A.  I went to San Diego to school.
15  Q.  For language school?
16  A.  Yes.
17  Q.  That was in '67, I think you said
18  earlier?
19  A.  '66.
20  Q.  '66?
21  A.  That would be '66 because I was getting
22  ready to go to Vietnam in '66.
23  Q.  Okay.  So we're still in '66.  And how

**Page 140**

1  language.  So, when I left, I could talk to
2  him.
3  Q.  That's pretty fast learning to me.  Do
4  you think you were exposed to asbestos in any
5  way in San Diego?
6  A.  No, I don't think so.
7  Q.  So, then, in '66, you ship off to
8  Vietnam?
9  A.  Right.
10  Q.  Did you stop in the Philippines, by any
11  chance, or go straight to Vietnam?
12  A.  No, we stopped off in Japan and fueled
13  the planes and stuff, and then coming back, we
14  stopped in the Philippines.
15  Q.  So you went over there on a plane?
16  A.  Right, yes, sir, there and back.
17  Q.  Not a troop carrier?
18  A.  No, sir.
19  Q.  You told me you were in Vietnam for 18
20  months total?
21  A.  Yes, sir.
22  Q.  But actually, it would have been 19
23  months on that particular duty?

35  (Pages 137 to 140)

**CLEVELAND G. KITE**                                    **07/12/2011**

| Page 149 | Page 151 |
|---|---|

Page 149

1  warrant officer, and they put my papers in,
2  but I was four months two old. Navy has got
3  an age limit on warrant officers, so they
4  turned me down.
5  Q.   Tell me what you did on a daily basis on
6  the Hunley, please.
7  A.   Maintained the engines, pumps, valves,
8  gauge boards, just a routine day, cleaning,
9  painting.
10  Q.   Did you supervise the people that did
11  that or did you do any of the actual work?
12  A.   Some of it I'd do at times to help the
13  crew out.
14  Q.   By now, were you mostly in a supervisory
15  role?
16  A.   Yes, sir, but you're right there with
17  them all the time. I was right there in the
18  engine room with them. Anything that went on,
19  I was right there.
20  Q.   You said there were four Fairbanks
21  Morris diesel engines?
22  A.   Right.
23  Q.   And three air compressors?

Page 151

1  it when they repaired them. Like I say, it
2  was just my area working.
3  Q.   What kind of repairs do you recall to
4  the Ingersoll-Rand air compressors?
5  A.   Taking the pistons out, replacing the
6  valves in them, doing maintenance on the heads
7  of them, in general just the maintenance on a
8  piece of equipment.
9  Q.   Uh-huh. All right. I will probably
10  come back to that, but I want to move on. Are
11  you ready for a break? It's 2:00.
12  A.   I could take one, yes, sir.
13  Q.   Okay.
14  A.   I could use it.
15  Q.   That'd be fine.
16  
17       (Whereupon, a recess was taken.)
18  
19  Q.   (BY MR. PARTRIDGE:) Okay. We have just
20  come back from break and we were discussing
21  some of the equipment on the Hunley in the aft
22  engine room. And so far, we have talked a
23  little bit about the engines and some air

Page 150

1  A.   Yes, sir.
2  Q.   Did you have to do any work on the air
3  compressors?
4  A.   I had a crew that did it. I was around
5  them when they did it.
6  Q.   Air compressors, that's a piece of
7  equipment that doesn't break down very often;
8  isn't that right?
9  A.   No, we still had to do the PMS on it.
10  Q.   You've got to keep it oiled and maintain
11  it, but it doesn't break down very often, does
12  it?
13  A.   Not very much, but we did have problems
14  with some them at times.
15  Q.   What kind of air compressors were these
16  on the Hunley, do you remember?
17  A.   Ingersoll-Rand.
18  Q.   All three?
19  A.   Yes, sir.
20  Q.   Do you have any specific recollection of
21  doing repair work on any Ingersoll-Rand
22  compressor on the Hunley yourself?
23  A.   No, I was right there. I had to inspect

Page 152

1  compressors. You also mentioned some other
2  pieces of equipment, valves, pumps and
3  coolers, I think; is that right?
4  A.   Yes, sir.
5  Q.   Of this equipment that we're talking
6  about here, do you have any reason to believe
7  that any of this equipment contained asbestos?
8  A.   Yes, sir.
9  Q.   What equipment do you believe contained
10  asbestos?
11  A.   All the valves in there contained
12  asbestos in the stems to keep the liquid,
13  whichever kind of liquid was flowing from
14  coming out of the stems. The pumps, they
15  had -- the shafts had asbestos packing on it.
16  Q.   Is that all of the equipment in the aft
17  engine room of the Hunley that you believe may
18  have contained asbestos?
19  A.   No, all the engines had blankets on them
20  with asbestos and the pipes associated with
21  it.
22  Q.   Were those blankets just coming out of
23  the exhaust?

**CLEVELAND G. KITE**                                    **07/12/2011**

Page 153

1  A.  Yes, sir.  Around the heat parts and the
2  pipes that were hot.
3  Q.  All right.  And besides the engines,
4  pumps and valves, do you have reason to
5  believe any other piece of equipment in the
6  aft engine room of the Hunley contained
7  asbestos?
8  A.  Not that I can remember at this time.
9  Q.  Do you remember the trade brand or
10  manufacturer name of any of the valves on the
11  Hunley?
12  A.  Cramer.
13  Q.  Any others?
14  A.  No, sir.
15  Q.  How about any pumps on the Hunley aft
16  engine room?
17  A.  Yes, sir, the electric pumps were GE and
18  Westinghouse.
19  Q.  The electric pumps?
20  A.  Yes, sir.
21  Q.  Any others?
22  A.  Yes, sir.  The water pumps and things
23  were Gould, Warren, Aurora, Buffalo.  We had

Page 154

1  all these on the ships.
2  Q.  Gould, Warren, Aurora and --
3  A.  Buffalo.
4  Q.  -- Buffalo.
5  A.  Gould.  And there were some more.  I'm
6  trying to think.  Viking.
7  Q.  Is that it?
8  A.  Right now, yes, sir.
9  Q.  Now, you have identified the blankets
10  around the engines, valves, pumps -- let's
11  see, the blankets around the engines, valves
12  and the pumps as equipment on the Hunley that
13  you believe may have contained asbestos?
14  A.  Yes, sir.
15  Q.  Can you think of any other pieces of
16  equipment or products that may have contained
17  asbestos that you might have worked with or
18  around on the Hunley?
19  A.  Just the pipes associated with the
20  equipment.
21  Q.  Again, there were a lot of steam pipe
22  systems on the Hunley?
23  A.  Yeah, you had that.  You had fuel pipes,

Page 155

1  you had water pipes, you had steam, air.
2  There was a lot of pipes and pumps on there.
3  Q.  Right.  Not only in the engine room, but
4  throughout the ship?
5  A.  (Witness nods head.)
6  Q.  Did you as -- at your rank, did you have
7  to disturb the insulation on any of these
8  pipes at any time?
9  A.  Yes, sir.
10  Q.  Yourself?
11  A.  Yes, sir.
12  Q.  And why would you have done that on
13  occasions?
14  A.  Say a valve or something went bad.
15  Something would happen that would get oil or
16  something on it, you'd have to maybe take them
17  off, cut them and they would get holes in them
18  at times, they're brittle and stuff.  They
19  would leak.  And you'd have the fibers all
20  over the place.  And then when you worked on
21  something you would use the air hose to blow
22  everything off.  You have to keep things clean
23  or you would get in trouble.  You'd start

Page 156

1  having more problems, if you don't clean a
2  piece of equipment to the best of your ability
3  because you're going to have problems later on
4  if you don't.
5  Q.  Okay.  Myself and some of the other
6  lawyers will probably come back to some of
7  these specific products that you've named, but
8  in the interest of moving on, I'm going to
9  move on to the next assignment.
10  A.  Okay.
11  Q.  So you are were on the Hunley for how
12  long?
13  A.  I think I was on there about three
14  years.
15  Q.  Three years?  And were you an E-6 the
16  entire time?
17  A.  Yes, sir.
18  Q.  Would it be true that about the whole
19  time you had a crew of 30 or 35 men working
20  for you or whatever?
21  A.  Yes, sir.
22  Q.  What year did you leave the Hunley?
23  A.  That would be in the '70s sometime.

39  (Pages 153 to 156)

**FREEDOM COURT REPORTING    877-373-3660**

**CLEVELAND G. KITE**                                    **07/12/2011**

|                                              |                                              |
| -------------------------------------------- | -------------------------------------------- |
| Page 181                                     | Page 183                                     |

Page 181

1  have contained asbestos on the Point Verde?
2  A.  Exhaust.
3  Q.  Exhaust and the blanket around the
4  exhaust?
5  A.  Right, and some of the lines down there
6  that are associated with the equipment.
7  Q.  The insulation on the -- when you say
8  lines, you're really talking about pipes,
9  right?
10  A.  Pipe, right.
11  Q.  Pipes, okay.  All right.  So you helped
12  out on this boat for six months or so, four
13  months?
14  A.  I think it was, yes, sir.
15  Q.  And then what did you do after that?
16  A.  Went back to base Mobile.
17  Q.  And from there did you retire?
18  A.  Yes, sir.
19  Q.  And is that in 1978?
20  A.  Yes, sir.
21  Q.  Do you remember the exact date of 1978
22  you retired?
23  A.  It was the last of June, June the 30th

Page 182

1  to July 1st, one of the dates there.  I think
2  it was June 30th.
3  Q.  I think that's right.  1978?
4  A.  Yes, sir.
5  Q.  Okay.  All right.  Now, I think after
6  you retired, you told me earlier that you
7  stayed in the Naval Reserve, but you really
8  haven't -- or Coast Guard Reserve?
9  A.  Coast Guard.
10  Q.  Coast Guard Reserve, but you really
11  haven't been called, and you haven't done
12  anything with any of the military branch since
13  '78?
14  A.  No, sir.
15  Q.  Except draw your pension?
16  A.  My pension, yes, sir.
17  Q.  All right.  Are you okay to still keep
18  going?
19  A.  I'm getting a little tired.
20  MR. KEAHEY:  Let's take a quick
21  ten-minute break.
22  THE WITNESS:  Thank you.
23

Page 183

1  (Whereupon, a recess was taken.)
2
3  Q.  (BY MR. PARTRIDGE:)  Okay, Mr. Kite.
4  Are you ready to proceed for just a little bit
5  longer today?
6  A.  Yes, sir.
7  Q.  When you got discharged honorably out of
8  the Navy, June 30th, 1978 --
9  MR. NORTHCUTT:  Coast Guard.
10  Q.  Coast Guard, thank you.  Out of the
11  Coast Guard on June 30, 1978, and that was
12  your last military stint?
13  A.  Yes, sir.
14  Q.  What did you do to earn a living after
15  that?
16  A.  I think I went to work for the L&N
17  Railroad at that time, after that.
18  Q.  And was that soon after June 30, 1978?
19  A.  It wasn't too much longer after, a
20  couple months.
21  Q.  So, how did you come to work for L&N
22  Railroad?
23  A.  I went and applied for the job.

Page 184

1  Q.  And that was here in Mobile?
2  A.  Yes, sir, the roundhouse.
3  Q.  Where is that?
4  A.  East, northeast Mobile, down by the
5  river.  It's called roundhouse.  It's where
6  L&N had their place to repair engines down by
7  the dry docks.
8  Q.  What made you apply there?
9  A.  I heard they were looking for engineers,
10  machinists to work on engines.
11  Q.  And how did you hire in?
12  A.  When they -- I took the test and
13  everything and they told me I had passed and
14  they sent me to the roundhouse.
15  Q.  And did you work there for a number of
16  years?
17  A.  About until '85.
18  Q.  So '78 to '85, you were employed by L&N
19  Railroad?
20  A.  No, sir.  '88, '89 -- '78, '79, I think
21  is when I really got the job and went to work
22  until '85.
23  Q.  Okay.  So you worked there for about six

46  (Pages 181 to 184)

**FREEDOM COURT REPORTING    877-373-3660**

**CLEVELAND G. KITE**                    **07/12/2011**

Page 205

1  Q.  In this particular lawsuit, are you
2  claiming any lost wages?
3  A.  Not from working, no.
4  Q.  All right.  It's a little bit after
5  3:30.  Are you ready to knock off?
6  A.  Yes, sir.
7  Q.  I think you are.
8  A.  Thank you.
9      MR. PARTRIDGE:  Okay.  Yes, sir.  And
10  we'll talk about when we'll come back.
11     MR. KEAHEY:  All right.  Okay.  Thank
12  you.
13     MR. PARTRIDGE:  Thanks very much,
14  Mr. Kite.
15     THE WITNESS:  Thank you.
16     MR. HARRIS:  Can I state for the record
17  that we're adjourning and not concluding.
18  Defendants reserve the right to conclude the
19  deposition before it is offered.
20     (Whereupon, a recess was taken.)
21     (Whereupon, Defendant's Exhibit 1
22     was marked for identification and
23     same is attached hereto.)

Page 206

1  Q.  Mr. Kite, back on the record.  I'm going
2  to show you what we had marked Defendant's
3  Exhibit 1.  It's your notice of deposition.
4  And on the very last page, it's got some items
5  that we asked you to bring to your deposition.
6  Before we got started, I asked you to look at
7  that, and I know you did.  And I'm just going
8  to ask you if you have any of those items that
9  I requested in your possession that you might
10  be able to bring to your next deposition when
11  we convene again?
12  A.  No, sir, I don't have any of these items
13  that I know of, if I can read it.
14     MR. KEAHEY:  Okay, anything else?  Okay.
15  All right.  Thank y'all.
16     MR. PARTRIDGE:  If you have any of those
17  things, will you bring them next time?
18     THE WITNESS:  I don't have them.
19     MR. PARTRIDGE:  That's all right, yes,
20  sir.  Thank you.
21
22     FURTHER DEPONENT SAITH NOT
23

Page 207

1        C E R T I F I C A T E
2
3  STATE OF ALABAMA )
4  JEFFERSON COUNTY )
5
6     I HEREBY CERTIFY that the above
7  and foregoing transcript was taken down by me
8  in stenotype, and the questions and answers
9  thereto were transcribed by means of
10  computer-aided transcription, and that the
11  foregoing represents a true and correct
12  transcript of the testimony given by said
13  witness.
14     I FURTHER CERTIFY that I am
15  neither of counsel, nor of any relation to the
16  parties to the action, nor am I anywise
17  interested in the result of said cause.
18
19
20     /s/Mickey L. Turner
21     MICKEY L. TURNER
22     CCR No. 002
23     Notary Expires 9/16/14

**FREEDOM COURT REPORTING    877-373-3660**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND G. KITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV_____ |
| | ) | |
| BILL VANN COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# EXHIBIT "B"

Affidavit of Roland Doktor

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND G. KITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| BILL VANN COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### AFFIDAVIT OF ROLAND DOKTOR

I, Roland Doktor, declare:

1.      I am Manager, New Navy Programs for Warren Pumps, LLC ("Warren Pumps").
I am an authorized agent of Warren Pumps and I am sufficiently familiar with the facts set forth
herein to competently testify to them and if called as a witness, could and would testify to the
following:

2.      I joined Warren Pumps in 1978, immediately after receiving a Bachelor of
Science degree in Marine Engineering from the Massachusetts Maritime Academy at Buzzard's
Bay, Massachusetts.

3.      My job functions as Manager of New Programs Navy include, but are not limited
to all new pumps sales.

4.      I submit this affidavit to attest to the level of supervision and control by the
United States Navy ("U.S. Navy") and its agents and officers over the design and manufacture
by Warren Pumps of pump equipment intended for installation on U.S. Navy combatants. This
attestation is based on personal knowledge and the review of records kept by Warren Pumps in
the ordinary course of business.

5.      Warren Pumps was founded in 1897 as Warren Steam Pump Company in the

small New England community of Warren, Massachusetts. For over one-hundred years, it has manufactured pumps in the same location from which it was founded.

6. Warren Pumps has manufactured U.S. Navy pumps for use aboard U.S. Navy combatants involved in two World Wars, the Korean War, the Vietnam War, the Cold War, as well as peace-keeping and humanitarian missions.

7. Warren Pumps made and supplied pumps for U.S. Navy combatants under contracts between Warren Pumps and the shipyards and/or the U.S. Navy, which administered those contracts through the Naval Sea Systems Command ("NAVSEA") or its predecessor, the Navy Bureau of Ships ("BUSHIPS"). Pumps manufactured and supplied by Warren Pumps for U.S. Navy combatants had to meet precise U.S. Navy specifications. Additionally, pumps were specifically designed and engineered for the combatant or class of combatants in question. In other words, the pumps for a combatant or class of combatants were custom built, i.e., they were not "off the shelf" products. Under the direction and control of officers and agents of the U.S. Navy, pumps supplied by Warren Pumps were built in accordance with the U.S. Navy specifications, tested pursuant to those specifications and then approved by the U.S. Navy. The U.S. Navy specifications for pumps incorporated several lower-level specifications, including those governing the components or materials used for or with the pumps, such items as metals, bearings, packing, gaskets, etc.

8. In accordance with the Navy's detailed specifications, the pumps that Warren supplied for installation on Navy combatants were individually designed specifically to withstand combat conditions, in a manner different from pumps designed for sale to commercial ships. Navy pumps also incorporated numerous other characteristics and met different standards than pumps supplied for commercial applications, and manuals, drawings and other written materials accompanying pumps were subject to Navy review to ensure compliance with Navy requirements that were far more detailed and stringent than those imposed by commercial

2

customers.

9.      Additionally, pursuant to a particular contract and the U.S. Navy's requirements, Warren Pumps may have prepared U.S. Navy technical manuals for certain pumps that were supplied for U.S. Navy combatants. The U.S. Navy technical manuals were governed by the U.S. Navy and were sent to NAVSEA or its predecessor, BUSHIPS or its acting agent for U.S. Navy approval. The U.S. Navy approved the finished contents of the U.S. Navy technical manuals upon determination that the U.S. Navy technical manual met its requirements under the military specifications.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on this 29 day of July 2011, at Warren, Massachusetts.

_____
ROLAND DOKTOR

Subscribed and sworn to before me
this 29th day of July, 2011

_____
Notary Public, Commonwealth of Massachusetts

Theresa Aubin
_____
Printed Name of Notary

My Commission Expires: 1/19/18

Theresa Aubin
Notary Public
Commonwealth of Massachusetts
My Commission Expires
January 19, 2018

3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )   CV_____
                                      )
BILL VANN COMPANY, INC., et al.,      )
                                      )
        Defendants.                   )

# EXHIBIT "C"

Text of Illinois General Laws of 1899, pp. 375-76

under who shall apply to him for the purpose, and shall tender him the value of the same, a sample sufficient for the analysis of any such article which is in his possession. Whoever hinders, obstructs or in any way interferes with any inspector, analyst or other officer appointed hereunder in the performance of his duty, and whoever wilfully neglects or refuses to do any of the acts or things enjoined by this act, or in any way violates any of the provisions of this act, shall be guilty of a misdemeanor, and upon conviction shall, where no specific penalty is prescribed by this act, be punished by a fine not exceeding two hundred nor less than twenty-five dollars, or by imprisonment in the county jail for a period not exceeding ninety days, or by both such fine and imprisonment in the discretion of the court.

§ 26.   All acts and parts of acts inconsistent with this act, and section 6 of an act entitled "An act to prevent the adulteration of butter and cheese, or the sale or disposal of the same, or the manufacture or sale of any article as a substitute for butter or cheese, or any article to be used as butter and cheese," approved June 1, 1881, be, and they are hereby, repealed.

§ 27.   For the purpose of enabling dealers in products affected by this act to dispose of same without loss, it is hereby expressly provided that the penalties of this act, and prosecution under same, are suspended until the first day of July, 1900.

APPROVED April 24, 1899.

# UNITED STATES.

## JURISDICTION OVER CERTAIN LANDS CEDED

| § 1. | Consent for United States to acquire land in this State for public buildings. | § 3. | When jurisdiction shall vest. |
| § 2. | Jurisdiction of lands ceded to the United States. | § 4. | Emergency. |

AN ACT *ceding to the United States exclusive jurisdiction over certain lands acquired for public purposes within this State, and authorizing the acquisition thereof.*

SECTION 1.   *Be it enacted by the People of the State of Illinois, represented in the General Assembly:*   That the consent of the State of Illinois is hereby given, in accordance with the sixteenth clause, eighth section, of the first article of the constitution of the United States, to the acquisition by the United States, by purchase, condemnation or otherwise, of any land in this State required for custom houses, court houses, post offices, arsenals, or other public buildings whatever, or for any other purposes of the government.

 § 2.   That exclusive jurisdiction in and over any land so acquired by the United States shall be, and the same is hereby, ceded to the United States for all purposes except the administration of the crim-

UNITED STATES—UNIVERSITIES, ETC.

inal laws and the service of all civil processes of this State; but the jurisdiction so ceded shall continue no longer than the said United States shall own such lands.

§ 3.   The jurisdiction hereby ceded shall not vest until the United States shall have acquired the title to the said lands by purchase, condemnation or otherwise; and so long as the said lands shall remain the property of the United States when acquired as aforesaid, and no longer, the same shall be and continued exempt and exonerated from all State, county and municipal taxation, assessment, or other charges which may be levied or imposed under the authority of this State.

· § 4.   WHEREAS, an emergency exists, therefore this act shall take effect and be in force from and after its passage.

APPROVED April 11, 1899.

## UNIVERSITIES, COLLEGES, ACADEMIES, ETC.

### ELECTION OF PRESIDING OFFICER.

| | |
|---|---|
| ₹ 1.  Election of presiding officer of any educational institution possessing no capital stock. | ₹ 2.  Emergency. |

AN ACT *to provide that the board of trustees, directors or managers, or the senate of any college, seminary, academy or other educational institution, incorporated under any general or special law of this State, solely for educational purposes, and possessing no capital stock, may elect its own presiding officer.*

SECTION 1.   *Be it enacted by the People of the State of Illinois, represented in the General Assembly:*  That the board of trustees, directors or managers, or the senate of any college, seminary, academy or other educational institution, incorporated under any general or special law of this State solely for educational purposes and possessing no capital stock, may elect its own presiding officer for such term as such board or senate may determine, the provisions of any special charter to the contrary notwithstanding.

§ 2   WHEREAS, an emergency exists, therefore this act shall take effect and be in force from and after it passage.

APPROVED April 12, 1899.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND G. KITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV_____ |
| | ) | |
| BILL VANN COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

# EXHIBIT "D"

Consents and Joinders in Removal based on Federal Enclave Jurisdiction

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CV-_____
                                      )
BILL VANN COMPANY, INC., et al.,      )
                                      )
        Defendants.                   )

## CONSENT TO REMOVAL

The Defendant, BILL VANN COMPANY, INC., by and through its

undersigned counsel, hereby consent to, authorize, and join in the removal of this

action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to

the U.S. District Court for the Southern District of Alabama under 28 U.S.C. §

1441.

Dated this 4th day of August, 2011.


                        Respectfully submitted,


                        _____
                        F. GREY REDDITT, JR. (REDDF5142)
                        TIMOTHY A. CLARKE (CLART1440)
                        Attorneys for Defendant Bill Vann
                        Company, Inc.


{00522742.DOC-1}

OF COUNSEL:

VICKERS, RIIS, MURRAY and CURRAN, L.L.C.
Post Officer Drawer 2568
Mobile, AL 36652-2568
Phone: (251) 432-9781
Facsimile:  (251) 432-9781
gredditt@vickersriis.com
tclarke@vickersriis.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
         Plaintiff,                   )
                                      )
v.                                    )        CV-_____
                                      )
BILL VANN COMPANY, INC., et al.,      )
                                      )
         Defendants.                  )

## CONSENT TO REMOVAL

The Defendant, FOSTER WHEELER CORPORATION, by and through its

undersigned counsel, hereby consent to, authorize, and join in the removal of this

action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to

the U.S. District Court for the Southern District of Alabama under 28 U.S.C. §

1441.

Dated this 4th day of August, 2011.


                          Respectfully submitted,


                          _____
                          F. GREY REDDITT, JR. (REDDF5142)
                          TIMOTHY A. CLARKE (CLART1440)
                          Attorneys for Defendant FOSTER
                          WHEELER CORPORATION

OF COUNSEL:

VICKERS, RIIS, MURRAY and CURRAN, L.L.C.
Post Officer Drawer 2568
Mobile, AL 36652-2568
Phone: (251) 432-9781
Facsimile:  (251) 432-9781
gredditt@vickersriis.com
tclarke@vickersriis.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                )
                                  )
        Plaintiff,                )
                                  )
v.                                )        CV-_____
                                  )
BILL VANN COMPANY, INC., et al.,  )
                                  )
        Defendants.               )

## CONSENT TO REMOVAL

The Defendant, GOULDS PUMPS, INC., by and through its undersigned

counsel, hereby consent to, authorize, and join in the removal of this action from

the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S.

District Court for the Southern District of Alabama under 28 U.S.C. § 1441.

Dated this 4th day of August, 2011.

Respectfully submitted,

F. GREY REDDITT, JR. (REDDF5142)
TIMOTHY A. CLARKE (CLART1440)
Attorneys for Defendant GOULDS
PUMPS, INC.

{00522771.DOC-1}

OF COUNSEL:

VICKERS, RIIS, MURRAY and CURRAN, L.L.C.
Post Officer Drawer 2568
Mobile, AL 36652-2568
Phone: (251) 432-9781
Facsimile: (251) 432-9781
gredditt@vickersriis.com
tclarke@vickersriis.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                 )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )          CV-_____
                                   )
BILL VANN COMPANY, INC., et al.,   )
                                   )
        Defendants.                )

<u>JOINDER IN REMOVAL</u>

Defendant Crane Co. consents to and joins in the removal of this action in

accordance with U.S. Const. art. I, § 8, cl. 17 and 28 U.S.C. § 1331 with respect to

allegations of alleged exposures to asbestos that occurred at any federal enclaves.

Crane Co. further agrees that removal is appropriate under federal officer

jurisdiction as stated in 28 U.S.C. § 1442(a)(1).  As such, Crane Co. hereby

consents to and joins in the removal of this action from the Circuit Court of

Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the

Southern District of Alabama under 28 U.S.C. § 1441.

{00522779.DOC-1}

Dated this 4th day of August, 2011.

Respectfully submitted,

_F. GREY REDDITT, JR. (REDDF5142)_
F. GREY REDDITT, JR. (REDDF5142)
TIMOTHY A. CLARKE (CLART1440)
Attorneys for Defendant CRANE CO.

OF COUNSEL:

VICKERS, RIIS, MURRAY and CURRAN, L.L.C.
Post Officer Drawer 2568
Mobile, AL 36652-2568
Phone: (251) 432-9781
Facsimile: (251) 432-9781
gredditt@vickersriis.com
tclarke@vickersriis.com

{00522779.DOC-1}

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,       )
             )
     Plaintiff,        )
             )
v.                )     CV_____
             )
BILL VAN COMPANY, INC., et al.,       )
             )
     Defendants.      )

## CONSENT TO REMOVAL

The Defendant AURORA PUMP COMPANY hereby consents to,

authorizes, and joins in the removal of this action from the Circuit Court of

Marengo County, Alabama, CV-2011-099934 *900034*, to the U.S. District Court for the

Southern District of Alabama under 28 U.S.C. § 1441.

Date: July 21, 2011.

Respectfully submitted,

_Jennifer J. Walters_ _____
Jennifer P Walters
Alabama Bar No. ASB-8287-E37T

NELSON MULLINS RILEY & SCARBOROUGH LLP
Atlantic Station
201 17th Street, NW, Suite 1700
Atlanta, GA 30363
Tel: 404.322.6000
Fax: 404.322.6050
COUNSEL FOR DEFENDANT
AURORA PUMP COMPANY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLEVELAND G. KITE,                    *

     Plaintiff,                    *

vs.                                   *        CASE NUMBER

BILL VANN COMPANY, INC.,              *
et al.,
                                      *
     Defendants.                   _____

                                      *

## CONSENT TO REMOVAL

COMES NOW Defendant A.W. Chesterton Company, by and through its undersigned

counsel, and hereby consents to, authorizes, and joins in the removal of this action from the

Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the

Southern District of Alabama pursuant to 28 U.S.C. § 1441.

Dated this _____ day of August, 2011.

Respectfully submitted,

_____
Edward B. McDonough, Jr. (MCDOE0149)
Attorney for Defendant,
A. W. CHESTERTON COMPANY

OF COUNSEL:
EDWARD B. McDONOUGH, JR., P.C.
Post Office Box 1943
Mobile, Alabama 36633
(251) 432-3296
(251) 432-3300 fax

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

CLEVELAND G. KITE,                    *

     Plaintiff,                    *

vs.                                   *        CASE NUMBER

BILL VANN COMPANY, INC.,              *
et al.,
                                      *
     Defendants.                   *
                                      *

## CONSENT TO REMOVAL

COMES NOW Defendant SCHNEIDER ELECTRIC USA, INC., improperly named in the Complaint as "SCHNEIDER ELECTRIC USA, INC., Individually and on behalf of Square D Company," by and through its undersigned counsel, and hereby consents to, authorizes, and joins in the removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the Southern District of Alabama pursuant to 28 U.S.C. § 1441.

Dated this _____ day of August, 2011.

Respectfully submitted,

_____
Edward B. McDonough, Jr.(MCDOE0149)
Attorney for Defendant,
SCHNEIDER ELECTRIC USA, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CLEVELAND G. KITE,                          *

      Plaintiff,                          *

vs.                                         *          CASE NUMBER

BILL VANN COMPANY, INC.,                    *
et al.,                                     
                                            *
      Defendants.                         
                                            *

_____

## CONSENT TO REMOVAL

COMES NOW Defendant FLOWSERVE CORPORATION f/k/a DURCO INTERNATIONAL INC., improperly denominated in the complaint as "FLOWSERVE CORPORATION, f/k/a Durco International, Inc., successor in interest to the Duriron Company, Inc.," by and through its undersigned counsel, and hereby consents to, authorizes, and joins in the removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the Southern District of Alabama pursuant to 28 U.S.C. § 1441.

Dated this 5th day of August, 2011.

Respectfully submitted,

_____
Edward B. McDonough, Jr. (MCDOE0149)
Attorney for Defendant,
FLOWSERVE CORPORATION

## IN THE CIRCUIT COURT OF MARENGO COUNTY, ALABAMA

CLEVELAND G. KITE )
                        )
    Plaintiff )
                        )
vs. )  Civil Action No.: CV-11-900034
                        )
BILL VANN COMPANY, INC., ET AL., )
                        )
    Defendants. )

### CONSENT TO REMOVAL

    The Defendant Cameron International Corporation hereby consents to, authorizes

and joins in the removal of this action from the Circuit Court of Marengo County, Alabama,

CV-2011-~~099934~~ 900034, to the U.S. District Court for the Southern District of Alabama under 28

U.S.C. § 1441.

    Date:  August 3, 2011

                        _____

                        **Christopher S. Rodgers**
                        Alabama Bar No. ASB-4665-G54C
                        **HUIE, FERNAMBUCQ & STEWART, LLP**
                        Three Protective Center
                        2801 Highway 280 South, Suite 200
                        Birmingham, AL 35223
                        **Attorney for Cameron International**
                        **Corporation**

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2011 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

_____

Of Counsel

**OF COUNSEL:**
G. Marc Keahey, Esq.
Keahey Law Office
P. O. Box 934
Grove Hill, Alabama 36451

G. Patterson Keahey, Esq.
One Independence Plaza, Suite 612
Birmingham, Alabama 35209

_____

Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND G. KITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV_____ |
| | ) | |
| BILL VANN COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT TO REMOVAL

Defendant Caterpillar Inc., by and through its undersigned counsel, hereby

consents to, authorizes, and joins in the removal of this action from the Circuit

Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court

for the Southern District of Alabama under 28 U.S.C. § 1441.

Date: August __3__, 2011.

Respectfully submitted,

_Signature_
Attorney for Defendant,
Caterpillar Inc.

<u>Of Counsel:</u>
William L. Waudby
BAKER, DONELSON, BEARMAN
  CALDWELL & BERKOWITZ, P.C.
420 North 20th Street, Suite 1600
Birmingham, Alabama 35203
bwaudby@bakerdonelson.com
(205) 244-3894 – direct telephone

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CV_____
                                      )
BILL VANN COMPANY, INC., et al.,      )
                                      )
        Defendants.                   )

<u>CONSENT TO REMOVAL</u>

Defendant The Goodyear Tire & Rubber Company, by and through its

undersigned counsel, hereby consents to and joins in the removal of this action

from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the

U.S. District Court for the Southern District of Alabama under 28 U.S.C. § 1441.

Date:  August   3  , 2011.


                              Respectfully submitted,


                              _____
                              Attorney for Defendant,
                              The Goodyear Tire & Rubber Company

<u>Of Counsel</u>:
William L. Waudby
BAKER, DONELSON, BEARMAN
  CALDWELL & BERKOWITZ, P.C.
420 North 20th Street, Suite 1600
Birmingham, Alabama  35203
bwaudby@bakerdonelson.com
(205) 244-3894 – direct telephone

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA - SELMA DIVISION

CLEVELAND G. KITE,             )
                                 )
       Plaintiff,               )
                                 )
vs.                             )       CIVIL ACTION NO.
                                 )
BILL VANN COMPANY LLC., et al.,    )
                                 )
       Defendants.           )
                                 )

## DEFENDANT CBS CORPORATION'S NOTICE OF CONSENT TO REMOVAL AND OF ADDITIONAL GROUNDS FOR REMOVAL JURISDICTION UNDER 28 U.S.C. § 1442(a)(1)

Defendant CBS Corporation, a Delaware corporation, f/k/a Viacom Inc., successor by merger to CBS Corporation, a Pennsylvania corporation, f/k/a Westinghouse Electric Corporation, (hereinafter "Westinghouse"), hereby gives formal notice of its consent to the removal of this action from the Circuit Court of Marengo County as affected by Defendants Cummins Inc. and Warren Pumps LLC. Additionally, as Plaintiff appears to allege that Plaintiff Cleveland G. Kite ("Plaintiff") was exposed to asbestos due to work with or around pump motors and/or similar items of marine equipment which were designed, manufactured and supplied by Westinghouse under the Navy's detailed direction and control and which included asbestos-containing components only as dictated by the Navy's own plans, specifications and/or regulations, Westinghouse has a personal right of "federal officer" removal under 28 U.S.C. § 1442(a)(1). Should Plaintiff file a motion to remand this case, Westinghouse respectfully requests an opportunity to respond more fully in writing, but offers the following short and

1

plain statement of its personal right of removal at this time.

Removal is proper under 28 U.S.C. § 1442(a)(1) where a defendant can show: (1) that it acted under the direction of a federal officer; (2) that a "causal nexus" exists between its actions under color of its federal officer and at least one of the plaintiff's claims; and (3) that it can state at least a colorable federal law-based defense to the plaintiffs' claims.  *Mesa v. California*, 489 U.S. 121, 124-25, 129-31, 134-35 (1989).  *See also, Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996).  Westinghouse can satisfy each of these three prongs relative to Plaintiff's asbestos-related claims in the instant case.

In designing, manufacturing and supplying pump motors and similar items of marine equipment to the United States Navy, Westinghouse acted under the detailed direction and control of the Navy and its officers.  More specifically, such equipment was designed and manufactured in strict compliance with precise, detailed, specifications promulgated by Navy Sea Systems Command.  An Inspector of Naval Machinery who was resident at Westinghouse's premises personally oversaw the manufacturing process, enforcing compliance with the Navy's design specifications.  Finally, Westinghouse's Navy equipment was subjected to extensive testing and inspection by the Navy as a prerequisite to its approval, acceptance and use aboard Navy ships.  Such facts clearly establish that Westinghouse was "acting under" the Navy and its officers in its design, manufacture and supply of Navy equipment.

In this case, Plaintiff alleges that he was injured due, in part, to exposure

to asbestos-containing components used in or on Westinghouse Navy equipment. As reflected above, any use of asbestos in conjunction with such equipment was the direct result of the Navy's own detailed plans, specifications and/or regulations. Thus, the existence of a causal nexus between Westinghouse's actions under color of its federal office and Plaintiff's claims is "axiomatic."

Under *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), Westinghouse can state at least a colorable federal defense to this action, i.e., government contractor immunity from liability for injuries arising from any exposure to asbestos attributable to its Navy equipment. More specifically, Westinghouse can make at least a colorable showing in this case that: (1) its Navy equipment was designed and manufactured in compliance with detailed Navy specifications; (2) such equipment was accepted only after the Navy tested and inspected it and found it to be in compliance with said specifications; and (3) the Navy was, at all times relevant to this case, fully and independently aware of potential asbestos-related health hazards. *See Boyle*, 487 U.S. at 512; *Glassco v. Miller Equip. Co.*, 966 F.2d 641, 642-43 (11th Cir. 1992).

Consistent with the above discussion, numerous federal district courts have previously held that jurisdiction exists under 28 U.S.C. § 1442(a)(1) relative to asbestos-related personal injury or wrongful death claims brought against Westinghouse and other similarly-situated Navy equipment suppliers. *See, e.g. Murphy v. General Electric Co.*, 2009 WL 2151192 (D. Conn. July 15, 2009); *Seigfried v. Allegheny Ludlum Corp.*, 2009 WL 1035001 (W.D. Pa. Apr. 17,

2009); *Beamis v. Buffalo Pumps*, 2009 WL 462543 (D.R.I. Feb. 23, 2009); *Curry v. American Standard, Inc.*, 2009 WL 308029 (S.D.N.Y. Feb. 6, 2009); *Redman v. A.W. Chesterton Co.*, 2008 WL 5048205 (N.D. Cal. Nov. 25, 2008); *Carroll v. Buffalo Pumps*, 2008 WL 4793725 (D. Conn. Oct. 27, 2008); *Dematties v. Acmat Corp.*, 2008 WL 4735145 (D. Conn. Oct. 27, 2008); *Redman v. A.W. Chesterton Co.*, 2008 WL 4447729 (N.D. Cal. Sept. 30, 2008); *Despres v. AMPCO-Pittsburgh Corp.*, 2008 WL 4329881 (D. Conn. Sept. 22, 2008); *O'Connell v. Foster Wheeler Energy Corp.*, 2008 WL 1722079 (D. Mass. Apr. 7, 2008); *Marley v. Elliot Turbomachinery Co.*, 2008 WL 1700326 (S.D. Fla. Mar. 13, 2008); *Wright v. A.W. Chesterton Co.*, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008); *Contois v. Able Indus.*, 523 F. Supp. 2d 155 (D. Conn. 2007); *Machnik v. Buffalo Pumps*, 506 F. Supp. 2d 99 (D. Conn. 2007); *Ferguson v. Lorillard Tobacco Co.*, 475 F. Supp. 2d 725 (N.D. Ohio Feb. 15, 2007); *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005); *McAboy v. Imo Indus.*, 2005 WL 2898047 (W.D. Wash. Oct. 27, 2005); *Mitchell v. AC&S, Inc.*, 2004 WL 3831228 (E.D. Va. Dec. 15, 2004); *Fink v. Todd Shipyards*, 2004 WL 856734 (E.D. La. April 20, 2004); *Delancey v. General Elec. Co.*, 2004 WL 3247173 (E.D. La. Mar. 31, 2004); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695 (S.D. Tex. 2002); *Carter v. ACandS, Inc.*, 2002 WL 31682352 (E.D. Tex. 2002); *Crocker v. Borden, Inc.*, 852 F. Supp. 1322 (E.D. La. 1994); *Pack v. ACandS, Inc.*, 838 F. Supp. 1099 (D. Md. 1993); *Fung v. Abex Corp.*, 816 F. Supp. 569 (N.D. Cal. 1992). Westinghouse submits that these authorities have properly interpreted and applied 28 U.S.C. § 1442(a)(1) and that a similar ruling would be called for in this

case in the event that Plaintiff seeks a remand of this matter to state court.

Notably, Westinghouse is not required to notify, or obtain the consent of, any other defendant to this action in order to assert its "federal officer" removal rights relative to this entire suit pursuant to 28 U.S.C. § 1442 (a)(1). *See, Fowler v. Southern Bell Tel. & Tel. Co.*, 343 F.2d 150, 152 (5th Cir. 1965). Rather, the instant pleading is intended solely to give notice to this Court and to all parties to this civil action that all claims stated against Westinghouse in this matter independently fall within the scope of this Court's jurisdiction under 28 U.S.C. § 1442(a)(1) regardless of the merits of the removal as originally affected by Defendants Cummins Inc. and Warren Pumps LLC and that Westinghouse intends to assert its statutory right thereunder to have its federal law-based defense tried in a federal district court.

RESPECTFULLY SUBMITTED, this ___5___ day of August, 2011.

s/

James A. Harris, III
**Bar Id # ASB-0683-R74J**
Nicole M. Hardee
**Bar Id#:  ASB-0073-P71G**
2501 20th Place South, Suite 450
Birmingham, Alabama 35223
FAX:  (205) 871-0029
TEL:  (205) 871-5777
Email: jamey@harris-harris.com
Email: nicole@harris-harris.com

**OF COUNSEL:**

**HARRIS & HARRIS, LLP**

Attorneys for CBS Corporation, a
Delaware corporation, f/k/a Viacom Inc.,
successor by merger to CBS
Corporation, a Pennsylvania
corporation, f/k/a Westinghouse Electric
Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND G. KITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV_____ |
| | ) | |
| BILL VAN COMPANY, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT TO REMOVAL

The Defendants Crown Cork & Seal Company, Inc. and Crown Holdings,

Inc. hereby consent to, authorize, and join in the removal of this action from the

Circuit Court of Marengo County, Alabama, CV-2011-~~099934~~ 900034, to the U.S. District

Court for the Southern District of Alabama under 28 U.S.C. § 1441.

Date: July 28, 2011.


Respectfully submitted,


/s/ *Ann Laurie McClurkin*

WALTER T. GILMER, JR. (GIL022)
ANNE LAURIE McCLURKIN (SMI267)
Attorneys for Defendants Crown Cork &
Seal Company, Inc. and Crown Holdings,
Inc.

**OF COUNSEL:**

**McDOWELL KNIGHT ROEDDER
    & SLEDGE, L.L.C.**
Post Office Box 350
Mobile, Alabama 36601
(334) 432-5300
www.mcdowellknight.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        CV_____
                                      )
BILL VAN COMPANY, INC., et al.,       )
                                      )
        Defendants.                   )

## CONSENT TO REMOVAL

The Defendant <u>Union Carbide Corporation</u> hereby consents to, authorizes,

and joins in the removal of this action from the Circuit Court of Marengo County,

Alabama, CV-2011-~~099934~~ 900034, to the U.S. District Court for the Southern District of

Alabama under 28 U.S.C. § 1441.

Date: August 1, 2011

Respectfully submitted,

HAWKINS PARNELL THACKSTON & YOUNG LLP

*Evelyn Davis*
Evelyn F. Davis (FLE 019)
AL Bar No. ASB-1485-C19E
Counsel for Defendant Union Carbide
Corporation

4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243
404/614-7400

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,               )
                                 )
        Plaintiff,               )
                                 )
v.                               )        CV_____
                                 )
BILL VAN COMPANY, INC., et al.,  )
                                 )
        Defendants.              )

## CONSENT TO REMOVAL

The Defendant Dana Companies, LLC, f/k/a Dana Corporation, incorrectly

sued as Dana Companies, LLC, f/k/a Dana Corporation, as successor in interest to

Victor Manufacturing & Gasket Company, hereby consents to, authorizes, and

joins in the removal of this action from the Circuit Court of Marengo County,

Alabama, CV-2011-099934, to the U.S. District Court for the Southern District of

Alabama under 28 U.S.C. § 1441.

    Date: August 1, 2011

                          Respectfully submitted,

                          HAWKINS PARNELL THACKSTON & YOUNG LLP

                          _____
                          Evelyn F. Davis (FLE 019)
                          AL Bar No. ASB-1485-C19E
                          Counsel for Defendant Dana Companies, LLC

4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA  30308-3243
404/614-7400

10630119-1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
    Plaintiff,                        )
                                      )
v.                                    )          CV_____
                                      )
BILL VAN COMPANY, INC., et al.,       )
                                      )
    Defendants.                       )

## CONSENT TO REMOVAL

    The Defendant <u>Dana Holding Corporation</u> hereby consents to, authorizes,

and joins in the removal of this action from the Circuit Court of Marengo County,

Alabama, CV-2011-~~099934~~, to the U.S. District Court for the Southern District of
                     900034

Alabama under 28 U.S.C. § 1441.

    Date: August 1, 2011

                               Respectfully submitted,

                               HAWKINS PARNELL THACKSTON & YOUNG LLP

                               *Evelyn Davis*
                               Evelyn F. Davis (FLE 019)
                               AL Bar No. ASB-1485-C19E
                               Counsel for Defendant Dana Holding Corporation

4000 SunTrust Plaza
303 Peachtree Street, N.E.
Atlanta, GA 30308-3243
404/614-7400

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

CLEVELAND G. KITE,        )

         )

    Plaintiff,        )

         )

v.          )        CV_____

         )

BILL VAN COMPANY, INC., et al.,  )

         )

    Defendants.      )

## CONSENT TO REMOVAL

The Defendant Eaton Corporation hereby consents to, authorize, and joins in

the removal of this action from the Circuit Court of Marengo County, Alabama,

CV-2011-~~099934~~ 900034, to the U.S. District Court for the Southern District of Alabama

under 28 U.S.C. § 1441.

Date: _____August 3_____, 2011.

                     Respectfully submitted,

                     _____

                     John A. Smyth III (SMY008)

                     Email: jsmyth@maynardcooper.com

                     Katherine A. Collier (BER063)

                     Email: kcollier@maynardcooper.com

**OF COUNSEL:**

MAYNARD, COOPER & GALE, P.C.

1901 Sixth Avenue North, Suite 2400

Birmingham, Alabama 35203

Telephone: (205) 254-1000

# IN THE CIRCUIT COURT OF MARENGO COUNTY
## STATE OF ALABAMA

CLEVELAND G. KITE,        )
                         )
        Plaintiff,        )
                         )       **CIVIL ACTION NO.:**
v.                     )
                         )       **48-CV-2011-900034.00**
BILL VANN COMPANY, INC., et al.  )
                         )
        Defendants.    )

## CONSENT TO REMOVAL

The Defendant Georgia-Pacific LLC, incorrectly named within Plaintiff's Complaint as "Georgia-Pacific LLC, individually and as successor in interest to Bestwall Gypsum Company" (hereinafter, "Georgia-Pacific") hereby consents to, authorizes and joins in the removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the Southern District of Alabama under 28 U.S.C. §1441.

Respectfully submitted this  4  day of August 2011.

C. Paul Cavender ASB-8784-E67C
Allan R. Wheeler ASB-4726-R49A
Attorneys for Defendant
GEORGIA-PACIFIC LLC

OF COUNSEL:
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
Paul.Cavender@burr.com
Allan.Wheeler@burr.com

1935532 v1

## CERTIFICATE OF SERVICE

I hereby certify that on August ___, 2011, I electronically filed the foregoing with the Clerk of the Court using the AlaFile System which sends notification of such filing to all counsel of record.

_____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )          CV_____
                                      )
BILL VAN COMPANY, INC., et al.,       )
                                      )
        Defendants.                   )

CONSENT TO REMOVAL

The Defendant General Electric Company hereby consents to, authorizes, and joins in the removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the Southern District of Alabama under 28 U.S.C. § 1441.

Date: August 4, 2011.

Respectfully submitted,

Jenelle R. Evans (asb)
Bar Number:  ASB-2403-A35J
S. Allen Baker, Jr.
Bar Number:  ASB-5990-E68S
Attorneys for Defendant General Electric Company

OF COUNSEL:
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 251-8799
E-mail: jevans@balch.com
E-mail: abaker@balch.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **CLEVELAND G. KITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO.:** |
| | ) | |
| **v.** | ) | _____ |
| | ) | |
| **BILL VANN COMPANY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## CONSENT TO REMOVAL

The Defendant Metropolitan Life Insurance Company hereby consents to and joins in the removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the Southern District of Alabama.

Date: ___AUGUST 4, 2011___

_____
Michael A. Vercher (ASB-4976-H32M)
One of the Attorneys for Defendant
Metropolitan Life Insurance Company

**OF COUNSEL:**

**CHRISTIAN & SMALL LLP**
505 20th Street North
Suite 1800
Birmingham, AL 35203
Telephone: (205) 795-6588
Facsimile: (205) 328-7234
mavercher@csattorneys.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| CLEVELAND G. KITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | |
| BILL VANN COMPANY, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT TO REMOVAL

The Defendant Motion Industries, Inc. hereby consents to, authorizes, and joins in the

removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-~~099934~~, 900034

to the U.S. District Court for the Southern District of Alabama under 28 U.S.C. § 1441.

Respectfully submitted this 26th day of July, 2011.

_____

ROBERT F. NORTHCUTT (NOR015)

Attorney for Defendant Motion Industries

**OF COUNSEL:**
CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, Alabama  36102-2069
Telephone:     (334) 241-8000
Facsimile:     (334) 241-8282

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,            )
                             )
    Plaintiff,               )
                             )
v.                           )        CV_____
                             )
BILL VAN COMPANY, INC., et al., )
                             )
    Defendants.              )

## CONSENT TO REMOVAL

The Defendant Saint-Gobain Abrasives, Inc., though its undersigned counsel, hereby consents to, authorizes, and joins in the removal of this action from the Circuit Court of Marengo County, Alabama, CV-2011-900034, to the U.S. District Court for the Southern District of Alabama under 28 U.S.C. § 1441.

Date: ____AUGUST 4_____, 2011.

Respectfully submitted,

_____
Robert H. Sprain, Jr. (SPR013)
Attorney for the Defendant, Saint-Gobain
Abrasives, Inc., f/k/a Norton Company

**OF COUNSEL:**
**SPRAIN LAW FIRM, P.C.**
1707 29th Court South
Birmingham, Alabama 35209
(205) 437-3232
FAX (205) 802-7083
**rhs@sprainlaw.com**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                      )
    Plaintiff,                    )
                                      )
v.                                    )          CV_____
                                      )
BILL VAN COMPANY, INC., et al.,       )
                                      )
    Defendants.                   )

## CONSENT TO REMOVAL

    The Defendants **Sepco Corporation**, **John Crane, Inc.**, **Honeywell**

**International Inc.**, and **The Gorman-Rupp Company**,  hereby consent to,

authorize, and join in the removal of this action from the Circuit Court of Marengo

County, Alabama, CV-2011-~~099934~~, to the U.S. District Court for the Southern

900034

District of Alabama under 28 U.S.C. § 1441.

    Date: **July 29, 2011.**

                 Respectfully submitted,

                 _____
                 Frank E. Lankford, Jr.
                 Stewart W. McCloud
                 Attorneys for Defendants Sepco Corporation,
                 John Crane, Inc., Honeywell International Inc.,
                 and The Gorman-Rupp Company

OF COUNSEL:

HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Highway 280 South, Suite 200
Birmingham, AL 35223
205-251-1193

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

CLEVELAND G. KITE,                    )
                                    )
      Plaintiff,                    )
                                      )

v.                                    )          CV_____
                                      )
BILL VAN COMPANY, INC., et al.,       )
                                      )
      Defendants.                   )

## CONSENT TO REMOVAL

The Defendant Viking Pumps, Inc. hereby consents to, authorizes, and joins

in the removal of this action from the Circuit Court of Marengo County, Alabama,

CV-2011-~~099993~~; 900034 to the U.S. District Court for the Southern District of Alabama

under 28 U.S.C. § 1441.

Date:  August 4, 2011.


Respectfully submitted,


Donald C. Partridge
Attorney for Defendant


FORMAN PERRY WATKINS KRUTZ & TARDY LLP
200 South Lamar St.  Ste. 100
Jackson, Mississippi  39201
601-960-8600

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### NORTHERN DIVISION

CLEVELAND G. KITE,

      Plaintiff,

VS.

      CV-_____

BILL VAN COMPANY, INC., et al.,

      Defendants.

## CONSENT TO REMOVAL

The Defendant Warrior 1-Stop Building Supply, Inc., hereby consents to,

authorizes, and joins in the removal of this action from the Circuit Court of

Marengo County, Alabama, CV-2011-099934, to the U.S. District Court for the

(900034)

Southern District of Alabama under 28 U.S.C. § 1441.

Date: July 22, 2011.

Respectfully submitted,

_____

G. Stephen Wiggins (WIG-004)
Attorney for Warrior 1-Stop
Hubbard, Wiggins, McIlwain & Brakefield
808 Lurleen Wallace Boulevard North
P.O. Box 2427
Tuscaloosa, AL 35403-2427
Phone: (205) 345-6789
Fax: (205) 759-1195
Email: swiggins@hubbardfirm.com