# EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **VALERIE K. PRESLEY, as Personal** | ) | |
| **Representative for the Estate of** | ) | |
| **Cleveland G. Kite, deceased,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-00444-WS-N** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BILL VANN COMPANY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

## Defendant Cummins, Inc.'s Motion for Summary Judgment
## And Evidentiary Submission

_____

COMES NOW the Defendant, designated as Cummins, Inc. ("Cummins"),

and moves this Court pursuant to Rule 56, *Federal Rules of Civil Procedure*, for an

Order granting its Motion for Summary Judgment. Cummins seeks entry of

summary judgment in its favor on the basis of the bare metal defense.[1] Cummins

---

[1] While this case was pending in the Eastern District of Pennsylvania as part of MDL-875, Cummins, along with several other defendants, filed motions for summary judgment on statute of limitations grounds. This narrow threshold issue would have been dispositive of the litigation and negated the need for further briefing on the substantive merits of Plaintiff's claims. Ultimately, Judge Robreno denied those motions. Judge Robreno's denial of those earlier motions for summary judgment on statute of limitations grounds has no bearing on and should not prevent Cummins from filing the instant Motion for Summary Judgment based on the bare metal defense. This Court "'has broad discretion in controlling its own docket' and is even free to 'reconsider a previously denied summary judgment motion even in the absence of new material presented.'" Johnson-Mosely v. Alabama Unified Judicial Sys., 2014 WL 3725339, *2 (S.D. Ala. July 25, 2014)(citation omitted). The timing and focus of Cummins' Motion for Summary Judgment here are particularly appropriate given the very recent developments in the law on the bare metal defense, including this Court's decision in Morgan v. Bill Vann Co., Inc., 969 F.Supp.2d 1358 (S.D. Ala. 2013), and Judge Robreno's August 8, 2014 Order in the MDL.

submits that there are no genuine issues of material fact and it is entitled to judgment as a matter of law on Plaintiff's Complaint based upon the application of the bare metal defense.

In support of its Motion for Summary Judgment herein, Cummins relies upon the following evidentiary submission:

Exhibit A    August 8, 2014 Order from Judge Robreno, applying the bare metal defense in the MDL

Exhibit B    Plaintiff's Complaint

Exhibit C    Excerpts from Cleveland Kite's July 12, 2011 Deposition

Exhibit D    Affidavit of Thomas McCaffery

Exhibit E    Excerpts from Deposition of Captain Lowell

Respectfully submitted,

*s/ William T. Mills, II*

William T. Mills, II
Attorney for Cummins, Inc.
Porterfield, Harper, Mills, Motlow
    & Ireland, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, Alabama 35242
(205) 980-5000 / (205) 980-5001 Fax
ASB-0402-L72W; MIL014
E-Mail: wtm@phm-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **February 16, 2015**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

Respectfully submitted,

*s/ William T. Mills, II*
OF COUNSEL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **VALERIE K. PRESLEY, as Personal** | ) | |
| **Representative for the Estate of** | ) | |
| **Cleveland G. Kite, deceased,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-00444-WS-N** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BILL VANN COMPANY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### Defendant Cummins, Inc.'s Memorandum Brief in Support of
### Motion for Summary Judgment
_____

COMES NOW the Defendant, designated as Cummins, Inc. ("Cummins"), and submits the following Memorandum Brief in support of its Motion for Summary Judgment:

## I.      INTRODUCTION AND SUMMARY OF ARGUMENT

During the 1970s, Cleveland Kite served on the U.S. Coast Guard aboard two Coast Guard vessels:  the U.S.C.G.C. *Point Verde* and the U.S.C.G.C. *Mellon*. Decades later, he was diagnosed with mesothelioma. Mr. Kite filed suit against Cummins and numerous other defendants in 2011, alleging that he was exposed to asbestos and asbestos-containing products from multiple sources over the course of

1

his career. According to Mr. Kite, the only contact that he had with Cummins' engines, out of which his claims against Cummins arise, was while he was on board the *Point Verde* and the *Mellon*. Plaintiff's Complaint includes counts for negligence, strict products liability, and gross misconduct under Alabama law.

Cummins is entitled to summary judgment on Plaintiff's Complaint based upon the application of the bare metal defense. The evidence is undisputed that there were no Cummins engines installed on the *Mellon*. Consequently, as a matter of law, any exposure to asbestos or asbestos-containing products while Mr. Kite was on board the *Mellon* cannot be attributable to Cummins and is necessarily attributable to someone else. Moreover, the evidence is uncontroverted that Mr. Kite did not perform any "hands on" engine maintenance or repair while on board the *Point Verde* and that, regardless, any asbestos-containing engine components present on the *Point Verde* at the time Mr. Kite was stationed there would not have been original equipment manufactured or supplied by Cummins. Therefore, as a matter of law, any exposure to asbestos or asbestos-containing products while Mr. Kite was on board the *Point Verde* cannot be attributable to Cummins and is necessarily attributable to someone else.

Application of the bare metal defense in Cummins' favor is consistent with the Alabama Supreme Court's directive that a manufacturer can only be held liable for defects in the products that it manufactured, sold, or otherwise placed in the

stream of commerce. Application of the bare metal defense in Cummins' favor is also consistent with the majority rule that a manufacturer cannot be held liable for asbestos-containing products used in conjunction with its bare metal parts, absent evidence that the manufacturer was part of the chain of distribution for those products. This Court has very recently predicted that the Alabama Supreme Court would follow the majority rule with respect to the bare metal defense. In the Multi-District Litigation, MDL-875, in which this case was previously pending, Judge Eduardo Robreno granted summary judgment for some of the defendants, including Warren Pumps, on the basis of the bare metal defense. [August 8, 2014 Order, Doc. 210, submitted as Exhibit "A"]. This Court should do likewise.

In short, Cummins cannot be held liable for Mr. Kite's alleged injuries. The record is simply devoid of any evidence that Mr. Kite was exposed to an asbestos-containing product either manufactured or supplied by Cummins. Absent facts to support this essential element of Plaintiff's claims, Cummins is entitled to judgment as a matter of law. Accordingly, this Court should enter summary judgment in favor of Cummins as to all pending claims in the Complaint.

## II.    DETERMINATIONS OF UNDISPUTED FACTS

1.      On May 4, 2011, Cleveland Kite filed his Complaint in the Circuit Court of Marengo County, Alabama alleging he sustained an asbestos-related injury as the result of his exposure to asbestos and asbestos-containing products

manufactured or supplied by numerous Defendants. [Complaint, submitted as Exhibit "B"].

2.    Mr. Kite was deposed for discovery purposes on July 12, 2011 and July 18, 2011. A video deposition was subsequently taken over the course of three additional days (November 16, 2011; January 23, 2012 and January 24, 2012) for trial preservation purposes.

3.    Mr. Kite testified that he came into contact with Cummins' engines while serving on the *Point Verde* for approximately six months in the 1977 to1978 time frame. [Kite's July 12, 2011 deposition, pp. 177-179, transcript excerpts submitted as Exhibit "C"]. Mr. Kite also claimed exposure to a Cummins' engine while on board the *Mellon*, on which he served from 1973 to 1975.

4.    Mr. Kite retired from the Coast Guard in 1978. [Kite's July 12, 2011 deposition, pp. 181-182, transcript excerpts submitted as Exhibit "C"].

5.    Thomas McCaffery, a retired Commander in the U.S. Navy and a consultant whose expertise is in the analysis of naval and merchant ship design, construction, maintenance and repair, has  provided sworn testimony in this case. [Affidavit of Thomas McCaffery, attached as Exhibit "D"].

6.    McCaffery confirms that there were no Cummins engines on the *Mellon*. [Exhibit "D", ¶ 8].

7.     The Plaintiff's own expert, Captain William Lowell, likewise confirms that there were no Cummins engines on the *Mellon*. [Deposition of Capt. Lowell, pp. 203-205, transcript excerpts submitted as Exhibit "E"].

8.     In fact, Captain Lowell limited Mr. Kite's exposure to a Cummins' engine, *if any*, to his service on the *Point Verde*. [Exhibit "E"].

9.     However, McCaffery determined that Mr. Kite's duties while on board the *Point Verde* would not have been "hands on" work such as engine maintenance or repair.  [Exhibit "D", ¶ 11].

10.     Moreover, the *Point Verde* was damaged by fire in 1969 and would have undergone at least one, and likely several, overhauls prior to Mr. Kite's brief service.  [Exhibit "D", ¶ 13].

11.     Thus, as McCaffery has testified, "[a]ny asbestos containing engine components would not have been original equipment at the time Mr. Kite was stationed on the *Point Verde*." [Exhibit "D", ¶ 14].

## III.     SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Rule 56(a), *Federal Rules of Civil Procedure*.  As the moving party, Cummins has the initial burden of showing the absence of a genuine issue of material fact. <u>See</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  Once

Cummins makes that showing, the burden shifts to the Plaintiff to "come forward with specific facts showing that there is a genuine issue for trial." See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (quotations and citations omitted).

Confronted with a properly supported motion for summary judgment, the Plaintiff must adduce admissible evidence which creates a material factual dispute. See, Clarke v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Plaintiff must do more than "simply show there is some metaphysical doubt as to the material facts." See, Anderson v. Liberty Lobby, 477 U.S. 24, 251-52 (1986). The Plaintiff must produce evidence. See, id. To defeat Cummins' Motion for Summary Judgment, the Plaintiff must establish a trial-worthy issue by presenting enough competent evidence to enable a finding in the Plaintiff's favor. See, Dominick v. Dixie National Life Ins. Co., 809 F.2d 1559 (11th Cir.1989). If the Plaintiff "fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." See, Clarke, 929 F.2d at 608 (quoting Celotex Corp., 477 U.S. at 322-23).

## IV.     LEGAL ARGUMENT:  CONCLUSIONS OF LAW

It is well settled that a plaintiff in an asbestos case has the burden of proving that an asbestos-containing product manufactured by the defendant was a

substantial factor in producing the subsequent injury. See, Sheffield v. Owens-Corning Fiberglass Corp., 595 So. 2d 443, 450 (Ala. 1992)(discussing asbestos claims brought under maritime law). In other words, the plaintiff must be able to link a defendant's asbestos-containing product to the plaintiff's (or decedent's) alleged asbestos-related disease. Id. The bare metal defense is an extension of the plaintiff's burden of proof in this regard.

As this Court recently observed in Morgan v. Bill Vann Co., Inc., 969 F.Supp.2d 1358, 1364 (S.D. Ala. 2013), "[m]any jurisdictions have embraced some form of [the] bare metal defense in the asbestos context."[1] The factual premise behind the bare metal defense is that the plaintiff (or decedent) only worked around the defendant's bare metal products such as pumps and valves, and there is insufficient evidence that the plaintiff (or decedent) worked with or around an

---

[1] See, e.g., Lindstrom v. A-C Product Liability Trust, 424 F.3d 488, 495 (6th Cir. 2005)(affirming grant of summary judgment for manufacturer of valves that used asbestos packing materials and gaskets, where defendant did not provide replacement packing or gaskets, such that "any asbestos that [defendant] may have been exposed to in connection with a Henry Vogt product would be attributable to some other manufacturer," and "Henry Vogt cannot be held responsible for material 'attached or connected' to its product"); Faddish v. Buffalo Pumps, 881F.Supp.2d 1361, 1372 (S.D. Fla. 2012)(predicting that Florida Supreme Court would conclude "defendant 'bare metal' suppliers cannot be liable for a third party's asbestos containing products under the facts presented in this case."); Conner v. Alfa Laval, Inc., 842 F.Supp.2d 791, 801 (E.D. Pa. 2012)(holding that "under maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute," such that defendants who made products that used asbestos insulation, gaskets and packing could not be held liable when they did not manufacture or distribute the asbestos products themselves); O'Neil v. Crane Co., 53 Cal. 4th 335, 135 Cal. Rptr. 3d 288, 266 P.3d 987, 996-97 (Cal. 2012) (rejecting claim that pump manufacturers were liable for asbestos packing and gaskets used by customer where "it is undisputed that O'Neil was exposed to no asbestos from a product made by the defendants," "there was no evidence that defendants' products required asbestos-containing gaskets or packing in order to function," and "[t]he defective product in this setting was the asbestos insulation, not the pumps and valves to which it was applied after defendants' manufacture and delivery"); Braaten v. Saberhagen Holdings, 165 Wn.2d 373, 198 P.3d 493, 502 (Wash. 2008) ("Because we have held ... that there is no duty to warn of the dangers of other manufacturers' asbestos products, we also conclude that there was no duty to warn with respect to replacement packing and gaskets. ... [T]hese manufacturers should not be held liable for harm caused by asbestos-containing material included in their products postmanufacture.").

asbestos-containing product that was manufactured, sold, or otherwise placed into the stream of commerce by the defendant. Id. "The legal premise of [the bare metal defense] is that a manufacturer of 'bare metal' is not liable for other manufacturers' asbestos-containing components used in connection with that bare metal." Id. "The clear thrust of the bare metal defense is that a manufacturer cannot be held liable for asbestos-containing products used in conjunction with its bare metal [parts], absent evidence that the manufacturer was part of the chain of distribution for those products." Id. at 1369.

Application of the bare metal defense is wholly consistent with Alabama law. The Alabama Supreme Court has held "that a distributor or manufacturer of a nondefective component is not liable for defects in a product that it did not manufacture, sell, or otherwise place in the stream of commerce." Sanders v. Ingram Equipment, Inc., 531 So. 2d 879, 880 (Ala. 1988). Similarly, the Eleventh Circuit has interpreted Alabama law in analogous circumstances, and, relying on Sanders, determined that a manufacturer cannot be held liable for injuries caused by a product it did not manufacture, sell or otherwise place in the stream of commerce. See, Reynolds v. Bridgestone/Firestone, Inc., 989 F. 2d 465, 472 (11th Cir. 1993). As the Eleventh Circuit instructed in Reynolds, the defendant "would have no duty to give a warning concerning a [product] manufactured by [someone else]." Id.

In <u>Morgan</u>, this Court recently predicted that the Alabama Supreme Court would follow the "majority rule" with respect to the bare metal defense. 969 F.Supp.2d at 1366. Summarizing the basis for its conclusion, this Court explained:

> (i) the prevailing majority rule  in other jurisdictions is to recognize the "bare metal defense" (under which a pump manufacturer such as Flowserve cannot be liable for a third party's asbestos materials used with its products, where the pump manufacturer was not in the chain of distribution of such asbestos-containing materials); (ii) the trend in other jurisdictions favors adoption of that defense for sound and even compelling policy reasons; (iii) that defense is a logical outgrowth and application of Alabama law as summarized in *Sanders,... Reynolds* and *[other cases];* and (iv) at least one trial court in Alabama has expressly adopted the defense and concluded that a pump defendant has no liability under Alabama law for third-party asbestos-containing gaskets and packing.

<u>Id.</u> at 1366-67.

Applying the bare metal defense to the facts in <u>Morgan</u>, this Court found that Flowserve, a manufacturer of metal pumps and valves, was not liable to the decedent for his malignant mesothelioma and therefore entitled to judgment as a matter of law. <u>Id.</u> at 1371-72. Flowserve manufactured and sold pumps to the mill where the decedent worked. The record indicated that the pumps were bare metal and did not contain any asbestos fibers. <u>Id.</u> at 1367-68. Some of the pumps contained gasket and packing components and some of those components had encapsulated asbestos fibers. <u>Id.</u> Those components were manufactured and supplied by third parties, not Flowserve. <u>Id.</u> at 1367. The record was further devoid of evidence that Flowserve supplied or had any involvement with the production,

selection, ordering, or shipment of any replacement packing and gaskets used at the mill.  Id. at 1368. Accordingly, this Court granted Flowserve's motion for summary judgment and dismissed the plaintiff's claims with prejudice. Id. at 1371-72.

Judge Robreno reached the same result in the MDL that this Court reached in Morgan. In granting summary judgment for Warren Pumps based on the bare metal defense, Judge Robreno ruled that "no reasonable jury could conclude from the evidence that [Mr. Kite] was exposed to asbestos from a product manufactured or supplied by [Warren Pumps] such that it was a substantial factor in the development of his illness, because any such finding would be based on conjecture." [Exhibit "A", p. 7]. Warren Pumps was also a manufacturer of bare metal parts and did not manufacture, sell, or otherwise place in the stream of commerce any asbestos-containing products.

The logic and reasoning which this Court employed in Morgan and which Judge Robreno employed in the MDL, and the rule of Alabama law pronounced in Sanders and Reynolds, apply with equal force here. Cummins cannot be held liable for Mr. Kite's injuries. Mr. Kite testified that his only contact with Cummins' engines was while on board the *Point Verde* and the *Mellon*. As noted above, however, both Thomas McCaffery and Captain Lowell have confirmed that there were no Cummins engines on the *Mellon*. [Exhibit "D", Exhibit "E"].  Captain

10

Lowell restricted Mr. Kite's exposure to a Cummins engine – if any at all – to his time on the *Point Verde*. Consequently, as a matter of law, any exposure to asbestos or asbestos-containing products while Mr. Kite was on board the *Mellon* cannot be attributable to Cummins and is necessarily attributable to someone else. See, Morgan, 969 F.Supp.2d at 1366; Sanders, 531 So. 2d at 880; Reynolds, 989 F.2d at 472. Accord, Sheffield, 595 So. 2d at 450 ("In these maritime claims, the parties bearing the burden of proof on the issue of causation must, at minimum, demonstrate that an asbestos product manufactured by [the defendant] was aboard a ship on which each plaintiff served at the times relevant to that service.")

Even with respect to Mr. Kite's purported exposure while on board the *Point Verde*, McCaffery testified that Mr. Kite's duties while on board that vessel would not have been "hands on" work such as engine maintenance or repair. [Exhibit "D", ¶ 11]. Moreover, the *Point Verde* was damaged by fire in 1969 and would have undergone at least one, and likely several, overhauls prior to Mr. Kite's brief service. [Exhibit "D", ¶ 13]. Thus, "[a]ny asbestos containing engine components [present on the *Point Verde* at the time Mr. Kite was stationed there] would not have been original equipment [manufactured or supplied by Cummins]." [Exhibit "D", ¶ 14]. As a matter of law, any exposure to asbestos or asbestos-containing products while Mr. Kite was on board the *Point Verde* cannot be attributable to

Cummins and is necessarily attributable to someone else. <u>See</u>, <u>Morgan</u>, 969 F.Supp.2d at 1366; <u>Sanders</u>, 531 So. 2d at 880; <u>Reynolds</u>, 989 F.2d at 472.

## IV. <u>CONCLUSION</u>

Cummins is entitled to judgment as a matter of law upon application of the bare metal defense. There is no evidence before this Court that Mr. Kite was exposed to an asbestos-containing product manufactured or supplied by Cummins. Invoking the words of Judge Robreno, "no reasonable jury could conclude from the evidence that [Mr. Kite] was exposed to asbestos from a product manufactured or supplied by [Cummins] such that it was a substantial factor in the development of his illness, because any such finding would be based on conjecture." [Exhibit "A", p. 7]. Unable to meet the requisite burden of proof, Plaintiff cannot maintain any claims against Cummins. As such, this Court should enter summary judgment in favor of Cummins on Plaintiff's Complaint.

Respectfully submitted,

*s/ William T. Mills, II*
William T. Mills, II
Attorney for Cummins, Inc.
Porterfield, Harper, Mills, Motlow
    & Ireland, P.A.
22 Inverness Center Parkway, Suite 600
Birmingham, Alabama 35242
(205) 980-5000 / (205) 980-5001 Fax
ASB-0402-L72W; MIL014
E-Mail: wtm@phm-law.com

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **February 16, 2015**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

Respectfully submitted,

*s/ William T. Mills, II*
OF COUNSEL

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CLEVELAND G. KITE,                 :      CONSOLIDATED UNDER
                                   :      MDL 875
                                   :
        Plaintiff,                 :      Transferred from the
                                   :      Southern District of
        v.                         :      Alabama
                                   :      (Case No. 11-00444)
                                   :
BILL VANN COMPANY, INC.,           :      E.D. PA CIVIL ACTION NO.
ET AL.,                            :      2:11-67753-ER
                                   :
        Defendants.                :

**O R D E R**

AND NOW, this **8th** day of **August, 2014**, it is hereby

**ORDERED** that the Motion for Summary Judgment of Defendant Warren

Pumps LLC (Doc. No. 74) is **GRANTED**.[1]

_____

[1]    This case was transferred in November of 2011 from the
United States District Court for the Southern District of Alabama
to the United States District Court for the Eastern District of
Pennsylvania as part of MDL-875.

        Plaintiff alleges that Decedent Cleveland Kite
("Decedent" or "Mr. Kite") was exposed to asbestos, _inter alia_,
while serving in the U.S. Navy and the Coast Guard from 1962 to
1978, and from 1988 to 1989, while Decedent worked on the
restoration of the USS Wisconsin. Defendant Warren Pumps, LLC
("Warren" or "Warren Pumps") manufactured pumps used aboard
vessels. The alleged exposure pertinent to Defendant Warren
occurred during Decedent's work aboard:

-  USCGC Salvia
-  USS Hunley
-  USS Wisconsin

        Mr. Kite was diagnosed with mesothelioma in 2011 and
passed away as a result of his disease. Plaintiff asserts that
Mr. Kite developed mesothelioma as a result of asbestos exposure
for which Defendant is liable. Mr. Kite was deposed in this
action in November of 2011.

Plaintiff brought claims against various defendants. Defendant Warren has moved for summary judgment, arguing that (1) there is insufficient evidence to establish causation with respect to any product for which it can be liable, (2) it is entitled to summary on grounds of the Alabama statute of limitations. The parties assert that Alabama law applies.

## I.    Legal Standard

### A.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

### B.    The Applicable Law

The parties assert that Alabama law applies. However, where a case sounds in admiralty, application of a state's law (including a choice of law analysis under its choice of law rules) would be inappropriate. Gibbs ex rel. Gibbs v. Carnival Cruise Lines, 314 F.3d 125, 131-32 (3d Cir. 2002). Therefore, if the Court determines that maritime law is applicable, the analysis ends there and the Court is to apply maritime law. See id.

---

Whether maritime law is applicable is a threshold dispute that is a question of federal law, see U.S. Const. Art. III, § 2; 28 U.S.C. § 1333(1), and is therefore governed by the law of the circuit in which this MDL court sits. See Various Plaintiffs v. Various Defendants ("Oil Field Cases"), 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009)(Robreno, J.). This court has previously set forth guidance on this issue. See Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455 (E.D. Pa. 2011)(Robreno, J.).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. Id. at 463-66 (discussing Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534 (1995)). The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury be caused by a vessel on navigable waters. Id. In assessing whether work was on "navigable waters" (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters. See Sisson v. Ruby, 497 U.S. 358 (1990). This Court has previously clarified that this includes work aboard a ship that is in "dry dock." See Deuber v. Asbestos Corp. Ltd., No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011)(Robreno, J.)(applying maritime law to ship in "dry dock" for overhaul). By contrast, work performed in other areas of the shipyard or on a dock, (such as work performed at a machine shop in the shipyard, for example, as was the case with the Willis plaintiff discussed in Conner) is land-based work. The connection test requires that the incident could have "'a potentially disruptive impact on maritime commerce,'" and that "'the general character' of the 'activity giving rise to the incident' shows a 'substantial relationship to traditional maritime activity.'" Grubart, 513 U.S. at 534 (citing Sisson, 497 U.S. at 364, 365, and n.2).

Locality Test

If a service member in the Navy performed some work at shipyards (on land) or docks (on land) as opposed to onboard a ship on navigable waters (which includes a ship docked at the shipyard, and includes those in "dry dock"), "the locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters." Conner, 799 F. Supp. 2d at 466; Deuber, 2011 WL 6415339, at *1 n.1. If, however, the worker never sustained asbestos exposure onboard a

vessel on navigable waters, then the locality test is
not met and state law applies.

Connection Test

When a worker whose claims meet the locality test was
primarily sea-based during the asbestos exposure, those
claims will almost always meet the connection test
necessary for the application of maritime law. Conner,
799 F. Supp. 2d at 467-69 (citing Grubart, 513 U.S. at
534). This is particularly true in cases in which the
exposure has arisen as a result of work aboard Navy
vessels, either by Navy personnel or shipyard workers.
See id. But if the worker's exposure was primarily
land-based, then, even if the claims could meet the
locality test, they do not meet the connection test and
state law (rather than maritime law) applies. Id.

It is undisputed that Decedent's alleged exposure to
Defendant's product(s) occurred while aboard a ship. Therefore,
this exposure was during sea-based work. See Conner, 799 F. Supp.
2d 455. Accordingly, maritime law is applicable to Plaintiff's
claims against Defendant. See id. at 462-63.

C.    Bare Metal Defense Under Maritime Law

This Court has held that the so-called "bare metal
defense" is recognized by maritime law, such that a manufacturer
has no liability for harms caused by – and no duty to warn about
hazards associated with – a product it did not manufacture or
distribute. Conner v. Alfa Laval, Inc., No. 09-67099, – F. Supp.
2d –, 2012 WL 288364, at *7 (E.D. Pa. Feb. 1, 2012)(Robreno, J.).

D.    Product Identification/Causation Under Maritime Law

In order to establish causation for an asbestos claim
under maritime law, a plaintiff must show, for each defendant,
that "(1) he was exposed to the defendant's product, and (2) the
product was a substantial factor in causing the injury he
suffered." Lindstrom v. A-C Prod. Liab. Trust, 424 F.3d 488, 492
(6th Cir. 2005); citing Stark v. Armstrong World Indus., Inc., 21
F. App'x 371, 375 (6th Cir. 2001). This Court has also noted
that, in light of its holding in Conner v. Alfa Laval, Inc., No.
09-67099, – F. Supp. 2d –, 2012 WL 288364 (E.D. Pa. Feb. 1,
2012)(Robreno, J.), there is also a requirement (implicit in the
test set forth in Lindstrom and Stark) that a plaintiff show that

4

Case 2:11-cv-00474-WBerment 9979-83 Filed 02/13/15 Page 23 of 70
Case 2:11-cv-00474-WBerment 130 Filed 02/16/15 Page 6 of 8

Case 2:11-cv-67753-ER   Document 210   Filed 08/11/14   Page 5 of 7

---

(3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. <u>Abbay v. Armstrong Int'l., Inc.</u>, No. 10-83248, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012)(Robreno, J.).

Substantial factor causation is determined with respect to each defendant separately. <u>Stark</u>, 21 F. App'x. at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. <u>Id.</u> at 376 (quoting <u>Harbour v. Armstrong World Indus., Inc.</u>, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. <u>Lindstrom</u>, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." <u>Id.</u> Rather, the plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" <u>Id.</u> (quoting <u>Harbour</u>, 1991 WL 65201, at *4). The exposure must have been "actual" or "real", but the question of "substantiality" is one of degree normally best left to the fact-finder. <u>Redland Soccer Club, Inc. v. Dep't of Army of U.S.</u>, 55 F.3d 827, 851 (3d Cir. 1995). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." <u>Stark</u>, 21 F. App'x at 376 (citing <u>Matthews v. Hyster Co., Inc.</u>, 854 F.2d 1166, 1168 (9th Cir. 1988)(citing Restatement (Second) of Torts, § 402A (1965))).

## II.  Defendant Warren Pumps LLC's Motion for Summary Judgment

### A.  Defendant's Arguments

<u>Statute of Limitations</u>

Defendant argues that, under Alabama law, any claims arising from asbestos exposure prior to 1979 are barred by a one-year statute of limitations. Specifically, it contends that since all of Plaintiff's evidence pertains to alleged exposure that occurred prior to 1979 - and since this action was not filed until approximately thirty (30) years later - it is entitled to summary judgment.

Case: MDL No. 875 Document 9979-8 Filed 03/13/15 Page 24 of 70
Case 2:11-cv-00445-W Document 330 Filed 02/16/19 Page 9 of 8
Case 2:11-cv-67753-ER   Document 210   Filed 08/11/14   Page 6 of 7

_____

Product Identification / Causation / Bare Metal Defense

      Warren Pumps argues that, under Alabama law or maritime law, it has no duty to warn about and cannot be liable for injury arising from any product or component part that it did not manufacture or supply.

**B.  Plaintiff's Arguments**

Statute of Limitations

      Plaintiff contends that the applicable statute of limitations is that set forth in Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), which Plaintiff contends has pre-empted the Alabama statute of limitations that would otherwise be applicable.

Product Identification / Causation / Bare Metal Defense

      In support of her assertion that she has identified sufficient evidence of product identification/causation to survive summary judgment, Plaintiff cites to the following evidence:

- Deposition of Mr. Kite
  Mr. Kite testified that he was exposed to respirable dust from asbestos-containing gaskets and packing used with Warren Pumps during his maintenance work removing and replacing these parts. He identifies these pumps as being aboard three different ships: USS Salvia, USS Hunley, and USS Wisconsin.

  (Pl. Ex. 4, Doc. No. 117-4.)

      Moreover, Plaintiff contends that her claims are not barred by any "bare metal defense" because Defendant is liable for foreseeable modifications to its products.

**C.  Analysis**

Statute of Limitations

      Defendant contends that Plaintiff's claims are barred by Alabama's statute of limitations for asbestos-related claims.

E.D. Pa. No. 2:11-67753-ER          **AND IT IS SO ORDERED.**

_[signature]_

EDUARDO C. ROBRENO, J.

---

Having determined that maritime law – not Alabama law – governs
Plaintiff's claims against Defendant, the Alabama statute of
limitations is inapplicable and Defendant is therefore not
entitled to summary judgment on that basis. See Anderson, 477
U.S. at 248. Accordingly, Defendant's motion for summary judgment
on grounds of the statute of limitations is denied.

<u>Product Identification / Causation / Bare Metal Defense</u>

Plaintiff alleges that Decedent was exposed to asbestos
from gaskets and packing used in connection with Warren pumps.
There is evidence that Decedent was repeatedly exposed to
respirable dust from asbestos-containing gaskets and packing used
in connection with Warren pumps. Importantly, however, there is
no evidence that the gaskets or packing were manufactured or
supplied by Warren – either as original parts supplied with the
pumps or replacement parts later used with them. Therefore, no
reasonable jury could conclude from the evidence that Decedent
was exposed to asbestos from a product manufactured or supplied
by Warren such that it was a substantial factor in the
development of his illness, because any such finding would be
based on conjecture. See Lindstrom, 424 F.3d at 492. Accordingly,
summary judgment in favor of Defendant Warren Pumps is warranted.
Anderson, 477 U.S. at 248-50.

**D.   Conclusion**

Summary judgment in favor of Defendant on grounds of
the Alabama statute of limitations is denied because Plaintiff's
claims are governed by maritime law rather than Alabama law.

However, summary judgment in favor of Defendant on
grounds of the so-called "bare metal defense" is granted in its
entirety because Plaintiff has failed to identify sufficient
evidence to support a finding of causation with respect to any
product manufactured or supplied by Defendant.

7

# Exhibit B


ELECTRONICALLY FILED
5/4/2011 10:52 AM
CV-2011-900034.00
CIRCUIT COURT OF
MARENGO COUNTY, ALABAMA
RUSTY NICHOLS, CLERK

## IN THE CIRCUIT COURT OF MARENGO COUNTY, STATE OF ALABAMA

| | | |
|---|---|---|
| CLEVELAND G. KITE | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| BILL VANN COMPANY, INC. | ) | |
| | ) | |
| MOTION INDUSTRIES, INC. | ) | |
| | ) | |
| WARRIOR 1-STOP BUILDING | ) | Civil Action No.: |
| SUPPLY | ) | |
| | ) | |
| ABB, INC. | ) | _____ |
| | ) | |
| AMERICAN STANDARD, INC. | ) | |
| | ) | |
| AURORA PUMP | ) | |
| | ) | JURY DEMAND |
| A.W. CHESTERTON COMPANY | ) | |
| | ) | |
| BUFFALO PUMPS, INC. | ) | |
| | ) | |
| CAMERON INTERNATIONAL | ) | |
| CORPORATION | ) | |
| | ) | |
| CATERPILLAR, INC. | ) | |
| | ) | |
| CBS CORPORATION, f/k/a | ) | |
| Viacom, Inc., successor by merger to | ) | |
| CBS Corporation, f/k/a | ) | |
| Westinghouse Electric Corporation | ) | |
| | ) | |
| CLEAVER-BROOKS, INC., a | ) | |
| division of Aqua Chem, Inc. | ) | |
| | ) | |
| COOPER INDUSTRIES, INC. | ) | |
| | ) | |
| CRANE COMPANY | ) | |
| | ) | |
| CROWN CORK & SEAL | ) | |
| COMPANY, INC., individually and | ) | |
| as successor in interest to Mundet | ) | |
| Cork Corporation | ) | |
| | ) | |

CROWN HOLDINGS, INC.      )
             )
CUMMINS, INC.        )
             )
DANA COMPANIES, LLC, f/k/a   )
**Dana Corporation**, as successor in   )
interest to **Victor Manufacture &**   )
**Gasket Company**       )
             )
**DANA HOLDING**       )
**CORPORATION**       )
             )
**EATON CORPORATION**     )
             )
**EATON HYDRAULICS, LLC,**    )
individually and as successor in    )
interest to **Vickers, Inc.**     )
             )
**FLOWSERVE CORPORATION,**   )
f/k/a **Durco International, Inc.,**    )
successor in interest to the **Duriron**   )
**Company, Inc.**        )
             )
**FOSTER-WHEELER**      )
**CORPORATION**       )
             )
**GENERAL ELECTRIC**     )
**COMPANY**        )
             )
**GENERAL MOTORS LLC,**    )
individually and as successor in    )
interest to **ACDelco**      )
             )
**GEORGIA-PACIFIC LLC**     )
             )
**GOODYEAR TIRE & RUBBER**   )
**COMPANY**        )
             )
**GORMAN-RUPP COMPANY**    )
             )
**GOULDS PUMPS,**       )
**INCORPORATED**       )
             )
**HONEYWELL**        )
**INTERNATIONAL, INC.**     )
             )

INGERSOLL-RAND COMPANY )
)
JOHN CRANE, INC., f/k/a John )
Crane Packing Company )
)
LESLIE CONTROLS, INC. )
)
METROPOLITAN LIFE )
INSURANCE COMPANY )
)
OAKFABCO, INC., f/k/a Kewanee )
Boiler Corporation )
)
ROCKWELL AUTOMATION, )
INC., a/k/a Rockwell International )
Corporation )
)
SAINT-GOBAIN ABRASIVES, )
INC., f/k/a Norton Company )
)
SCHNEIDER ELECTRIC USA, )
INC., individually and on behalf of )
Square D Company )
)
SEPCO CORPORATION )
)
TRANE U.S., INC. )
)
UNION CARBIDE )
CORPORATION, f/k/a Union )
Carbide Chemicals and Plastics )
Company, Inc. )
)
UNITED TECHNOLOGIES )
CORPORATION, individually and )
as successor in interest to Pratt & )
Whitney )
)
VIKING PUMP )
)
WARREN PUMPS, INC. )
)
YORK INTERNATIONAL )
CORPORATION )
)
JOHN DOE, 1-100, inclusive )

3

| premises owners, manufactures, | ) |
| sellers or installers of asbestos- | ) |
| containing materials and products | ) |
| (Names & Addresses unknown) | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

**COMES NOW** Plaintiff by and through counsel and files this Complaint stating as follows:

## BACKGROUND FACTS – PLAINTIFF

1.      Plaintiff, CLEVELAND G. KITE, (hereinafter "Kite" or "Plaintiff") a resident of Alabama, was exposed to asbestos dust, asbestos particles, asbestos containing materials and products that were produced, manufactured, specified for use, installed, distributed, sold and/or placed into the stream of commerce by the producer and/or distributor Defendants during his employment as a machinist, engine room worker, and security guard.

2.      As a result of his exposure to asbestos dust, asbestos particles, asbestos containing materials and products, Kite has been injured and suffers damages including being diagnosed with an asbestos related disease.

3.      At all times relevant hereto, with the exception of Metropolitan Life Insurance Company, the above-named Defendants were in control of premises and/or were manufacturers, processors, importers, converters, compounders, merchants, installers, removers, sellers, distributors, marketers, suppliers of asbestos, asbestos insulation materials, and/or asbestos-containing products (hereinafter referred to as "asbestos products"). In addition, each of the above-named Defendants, acting by and through their servants, agents and employees, caused such asbestos products to be sold and placed in the stream of commerce.

## BACKGROUND FACTS - THE DEFENDANTS

4

4.     The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

5.     With the exception of defendant, Metropolitan Life Insurance Company, each and every one of the following defendants produced, distributed, manufactured, installed, insured, owned, and/or maintained and/or controlled the premises, facilities and worksites containing asbestos-containing products and/or materials, including their own asbestos-containing products and/or materials and asbestos-containing products and/or materials produced or manufactured by others:

6.     Bill Vann Company, Inc., an Alabama corporation, may be served through its registered agent c/o William O. Vann, 2944 Redmont Park Lane, Birmingham, AL 35205.

7.     Motion Industries, Inc., a Delaware corporation with its principal place of business in Alabama, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

8.     Warrior 1-Stop Building Supply, an Alabama corporation incorporated in Marengo County, Alabama, may be served through its highest ranking officer at its principal place of business at 1005 Cypress Point East, Demopolis, AL 36732.

9.     ABB, Inc., f/k/a Asea Brown Boveri, f/k/a BBC Brown Boveri Electric, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

10.     American-Standard, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

5

11.     Aurora Pump, an Illinois corporation, may be served through its registered agent c/o Lynette Jones, 13175 Balantyne Corporate Place, Charlotte, NC 28277.

12.     A.W. Chesterton Company, a Massachusetts corporation, may be served through its registered agent, CT Corporation System, 818 West Seventh Street, Los Angeles, CA 90017.

13.     Buffalo Pumps, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

14.     Cameron International Corporation, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

15.     Caterpillar, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

16.     CBS Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation, a Delaware corporation, may be served through its highest ranking officer at 1515 Broadway, 51st Floor, New York, NY 10036.

17.     Cleaver-Brooks, Inc., a division of Aqua Chem, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

18.     Cooper Industries, Inc., an Ohio corporation, may be served through its registered agent c/o CT Corporation System, 707 Virginia Street East, Charleston, WV 25301.

19.     Crane Company, an Illinois corporation, may be served through its registered agent c/o CT Corporation System, 208 South LaSalle Street, Chicago, IL 60604.

20.     Crown Cork & Seal Company, Inc., individually and as successor in interest to Mundet Cork Corporation, a Pennsylvania corporation, may be served through its highest

ranking officer at One Crown Way, Philadelphia, PA 19154.

21.    Crown Holdings, Inc., a Pennsylvania corporation, may be served through its highest ranking officer at One Crown Way, Philadelphia, PA 19154.

22.    Cummins, Inc., an Indiana corporation, may be served through its registered agent c/o CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, AL 36104.

23.    Dana Companies, LLC, f/k/a Dana Corporation, as successor in interest to Victor Manufacture & Gasket Company, a Virginia corporation, may be served through its registered agent c/o CT Corporation System, 1300 East Ninth Street, Suite 1010, Cleveland, OH 44114.

24.    Dana Holding Corporation, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 1300 East Ninth Street, Suite 1010, Cleveland, OH 44114.

25.    Eaton Corporation, an Ohio corporation, may be served through its registered agent c/o CT Corporation System, 1300 East Ninth Street, Suite 1010, Cleveland, OH 44114.

26.    Eaton Hydraulics, LLC, individually and as successor in interest to Vickers, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 1300 East Ninth Street, Suite 1010, Cleveland, OH 44114.

27.    Flowserve Corporation, f/k/a Durco International, Inc., successor in interest to the Duriron Company, Inc., a New York corporation, may be served through its registered agent c/o CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

28.    Foster-Wheeler Corporation, a New York corporation, may be served through its registered agent c/o CT Corporation System, 111 Eighth Avenue, New York, NY 10011.

29.    General Electric Company, a New York corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery,

AL 36104.

30.    General Motors LLC, individually and as successor in interest to ACDelco, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

31.    Georgia-Pacific LLC, individually and as successor in interest to Bestwall Gypsum Company, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

32.    Goodyear Tire & Rubber Company, an Ohio corporation, may be served through its registered agent c/o CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, AL 36104.

33.    Gorman-Rupp Company, an Ohio corporation, may be served through its registered agent c/o James C. Gorman, 600 South Airport Road, Mansfield, OH 44903.

34.    Goulds Pumps, Incorporated, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

35.    Honeywell International, Inc., individually and as successor in interest to Allied Chemical Inc., f/k/a Bendix Corporation, a Delaware corporation, may be served through its registered agent c/o CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, AL 36104.

37.    Ingersoll-Rand Company, a New Jersey corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

38.    John Crane, Inc., f/k/a John Crane Packing Company, a Delaware corporation,

8

may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

39.     Leslie Controls, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 4701 Cox Road, Suite 301, Glen Allen, VA 23060.

40.     Metropolitan Life Insurance Company, a New York corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104. Metropolitan Life Insurance Company did not produce or distribute asbestos or asbestos containing products; rather, Metropolitan Life Insurance Company insured asbestos products.

41.     Oakfabco, Inc., f/k/a Kewanee Boiler Corporation, an Illinois corporation, may be served through its registered agent c/o Vanessa Cici Fry, 210 West 22nd Street, Suite 105, Oak Brook, Illinois 60523.

42.     Rockwell Automation, Inc., a/k/a Rockwell International Corporation, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

43.     Saint-Gobain Abrasives, Inc., f/k/a Norton Company, a Massachusetts corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

44.     Schneider Electric USA, Inc., individually and on behalf of Square D Company, Inc., a Delaware corporation, may be served through its registered agent c/o CSC Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, AL 36104.

45.     Sepco Corporation, a California corporation, may be served through its registered agent c/o CT Corporation System, 818 West Seventh Street, Los Angeles, CA 90017.

9

46.     Trane U.S., Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

47.     Union Carbide Corporation, f/k/a Union Carbide Chemicals and Plastics Company, Inc., a New York corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

48.     United Technologies Corporation, individually and as successor interest to Pratt & Whitney, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

49.     Viking Pump, Inc., a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 500 East Court Avenue, Des Moines, IA 50309.

50.     Warren Pumps, Inc., a Massachusetts corporation, may be served through its registered agent c/o CT Corporation System, 101 Federal Street, Boston, MA 02110.

51.     York International Corporation, a Delaware corporation, may be served through its registered agent c/o CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

52.     Defendants JOHN DOE, 1-100, inclusive manufacturers, sellers, or installers of asbestos-containing products (Names & Addresses unknown), and/or in control of premises where asbestos containing products are/were in use, are Alabama or foreign corporations, partnerships, associations or other legal entities which transact business in the State of Alabama and in this county and which is capable of being sued. Once the identity and whereabouts of John Doe, 1-100, are established, said Defendants will be served with a copy of summons and complaint as provided by law. Defendants JOHN DOE, 1-100, are subject to the jurisdiction and venue of this Court.

10

## ALLEGATIONS

53.    Kite has been diagnosed with and suffers from an asbestos related disease as a result of his exposure to crocidolite, amosite, chrysotile, tremolite and other fibrous, incombustible, and chemical-resistant mineral substances commonly and generically referred to as "asbestos".

54.    Asbestos fibers are highly carcinogenic when inhaled or otherwise ingested into the human body and cause irreparable, progressive and deadly tissue damage which can manifest itself as malignant mesothelioma, lung cancer and other cancers.  Most airborne asbestos fibers are microscopic in size, fall at a very slow rate and can easily be "re-entrained" into the atmosphere.  All asbestos fibers are indestructible up to very high temperatures and do not disintegrate.  Asbestos fibers can be found suspended in the atmosphere of an industrial plant indefinitely, even many years after the ACMs from which the fibers were released are no longer in use.  Suspended asbestos fibers settle on all objects introduced into such environments, including, but not limited to, work clothing, and can be carried from place to place, even away from the work place, by the movement of the person wearing the clothing.  Such asbestos-laden clothing can contaminate a home, car or other locations by subsequently releasing asbestos fibers into the atmosphere of the new location.

55.    From approximately 1957 through 1993, Kite was exposed to asbestos and asbestos containing products.

56.    During the above-stated years, Kite, while working with and around asbestos and asbestos products manufactured and supplied by Defendants, was caused to inhale asbestos fibers which were released from the said products and became airborne during the products' intended use.

11

57.    At all times pertinent hereto, the product or products manufactured, distributed, sold and supplied by the defendant corporations reached Kite without any substantial changes in the condition of the product or products from the time they were sold.

58.    Each Defendant, both substantially prior to and during the exposure period, contaminated the work sites of Kite with respirable asbestos fibers by one or more of the following means:

a.    installing, removing, handling, designing, testing, evaluating, manufacturing, mining, packaging, furnishing, supplying and/or selling ACMs;

b.    recommending and/or approving (at least tacitly) of the use of ACMs in conjunction with, in, or on equipment and/or other products they installed, removed, handled, designed, manufactured, packaged, furnished, supplied and/or sold;

c.    failing to warn of the health hazards associated with or otherwise discourage the use of ACMs in conjunction with, on or in equipment and/or other products they installed, removed, handled, designed, manufactured, packaged, furnished, supplied and/or sold when the use of the same was reasonably foreseeable;

d.    failing to maintain the work sites of Kite in a reasonably safe manner by allowing those sites to become contaminated with asbestos;

e.    failing to adequately warn Kite of the danger posed by the inhalation or injection of asbestos fibers, and/or failing to provide appropriate safety equipment to eliminate her exposure to asbestos;

12

f.      In addition, contractors and subcontractors are sued for negligently installing, removing, selecting, selling, sanding, cutting, and otherwise disturbing asbestos-containing products in such a manner to cause the release of asbestos fibers;

g.      In addition, premises owners are sued for negligently installing, removing, maintaining or disturbing asbestos and failing to warn contractor employees of the hazards in their facilities including their exposure to asbestos.

59.     At all relevant times hereto, the Defendants knew or should have known all of the following: (1) that asbestos is a deleterious and carcinogenic substance, extremely hazardous to human life; (2) that asbestos fibers in all ACMs are easily released into the air and indefinitely contaminate a work environment; (3) that asbestos fibers are virtually indestructible and can easily be "re-entrained" into the work environment for many years after they are initially released; (4) that people are exposed to asbestos through the use and/or presence of ACMs; and (5) that the combined use of ACMs over a significant period of time would pollute Kite's home and work environment, virtually insuring that he would constantly be exposed to asbestos.

## REMOVAL

60.     Removal of this action is improper for the following reasons: (a) the federal courts lack subject matter jurisdiction over this action; (b) this action does not involve a federal question; (c) there is lack of complete diversity of citizenship between the Plaintiff and Defendants; (d) the presence of Alabama Defendants eliminates the Defendants' right of removal even when there is complete diversity of citizenship between the Plaintiff and Defendants; (e) the Plaintiff expressly disclaims every claim arising under the Constitution, treaties or law of the United States (including any claim arising from an act or omission on a federal enclave, or by

any officer of the United States or any agency or person acting under him/her under color of such office); (f) no claim of admiralty or maritime law is raised; and (g) the Circuit Court of Marengo County, Alabama is proper venue for this action.

61. Removal based in whole or in part on the bankruptcy of any Defendant, whether named or fictitious, any joint tortfeasors and/or any predecessor, successor, subsidiary, affiliate, assignee, etc., thereof, would be frivolous. Under Alabama law, the Defendants are jointly and severally liable to Plaintiff with no right of contribution and/or indemnity among or between themselves, any other joint tortfeasors and/or third persons. The Plaintiff in his/her sole discretion may choose to pursue a claim against one joint tortfeasor, all tortfeasors, or of any combination thereof. Moreover, the Plaintiff, in his/her sole discretion, may choose to collect any judgment entered against multiple Defendants from one, all, or any combination thereof. Therefore, the bankruptcy of any entity referenced hereinabove will have no effect on removing Defendant's liability to the Plaintiff whatsoever.

## VENUE

62. Venue is proper in this Court pursuant to *Ala. Code* § 6-3-7 (a) (1975). One of the Defendants who manufactured, sold, distributed, and/or supplied asbestos-containing products to which Plaintiff was exposed was incorporated in and/or has its principal place of business in Marengo County, Alabama. Venue is appropriate with regard to the remaining Defendants by virtue of the fact that they are joint tortfeasors with the resident Defendant. In addition, Cleveland Kite worked in and around Marengo County and thus would have been exposed to asbestos-containing products in Marengo County. Therefore, venue is proper in Marengo County, Alabama.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

14

63.     The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

64.   At all times relevant hereto, with the exception of Defendant Metropolitan Life Insurance,  the above-named defendants are liable to the plaintiff jointly and/or severally for being generally negligent in failing to provide a safe product, and more specifically as follows:

a.      For carelessly and negligently installing, distributing, supplying, manufacturing and selling the said asbestos and asbestos products so as to cause injury to the plaintiff-decedent;

b.      For carelessly and negligently creating and allowing a dangerous condition to exist by failing to properly package the said products;

c.      For carelessly and negligently allowing a dangerous condition by failing to inspect the packaging of the said products;

d.      For carelessly and negligently creating and allowing a dangerous condition by failing to provide proper instructions for handling said products;

e.      For failing to exercise the requisite degree of care and caution in the distribution, manufacture, supply and sale of the said products;

f.      For failing to warn and/or adequately warn of the dangers of the product or products when the defendant corporations knew or should have known that the use and/or exposure to the product or products would cause disease and injury;

g.      For failing to take reasonable precautions to warn of the dangers to which plaintiff-decedent was exposed when the defendants knew or should have known of the said dangers;

h.      In failing to warn the plaintiff-decedent what would be safe and sufficient wearing apparel for a person who is exposed to or using the said product or products;

i.      For negligently failing to inform the plaintiff-decedent of what would be

15

safe, sufficient and proper protective equipment and appliances when using or being exposed to the products.;

j.     For failing to test the products;

k.     For failing to remove the product from the market when the defendant corporations knew or should have known of the hazards of exposure to the products;

l.     For failing to use substitute materials for the asbestos in the asbestos-containing products;

m.     For failing to mark, label or otherwise identify and distinguish during installation and subsequently those products which contain asbestos;

n.     For failing to warn the plaintiff-decedent's employer of the dangers associated with the inhalation of asbestos fibers;

o.     In negligently suppressing the dissemination of medical and scientific information relating to the harmful effects of exposure to asbestos and asbestos containing products and in prohibiting the publication of certain scientific and medical articles.

WHEREFORE, Plaintiff demands judgment against each of the Defendants, including the fictitious party Defendants, jointly and severally, and that punitive damages be awarded to Plaintiff in an amount which will fairly and adequately compensate the Plaintiff for the injuries and damages sustained by the Plaintiff due to Defendants' outrageous and/or other wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar acts. Plaintiff requests reasonable attorney's fees. Further, Plaintiff requests that the Court enter a judgment consistent with the verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY

·65.    The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

66.    At all times relevant hereto, with the exception of Defendant Metropolitan Life Insurance, the above-named defendants are strictly liable to the plaintiff as follows:

    a.    For failure to properly, adequately and safely label the produce or products;

    b.    For selling a product or products which were in a defective condition and unreasonably dangerous in their design and manufacture at the said time of sale;

    c.    For selling a product or products which were in a defective condition because they were without all necessary elements to make them safe for use;

    d.    For selling a product or products that were in a defective condition and because of a failure to give adequate and complete warnings of the known or knowable dangers involved in the use and exposure to the product or products.

WHEREFORE, Plaintiff demands judgment against each of the Defendants, including the fictitious party Defendants, jointly and severally, and that punitive damages be awarded to Plaintiff in an amount which will fairly and adequately compensate the Plaintiff for the injuries and damages sustained by the Plaintiff due to Defendants' outrageous and/or other wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar acts. Plaintiff requests reasonable attorney's fees. Further, Plaintiff requests that the Court enter a judgment consistent with the verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

17

## THIRD CAUSE OF ACTION
## GROSS, WILLFUL AND WANTON MISCONDUCT

67.     The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

68.     The Defendants are liable to the Plaintiff for their gross, willful and wanton misconduct in knowingly and intentionally concealing and misrepresenting the dangerous characteristics of their asbestos products, as well as concealing the detrimental aspects of asbestos contained in its products to the plaintiff-decedent's health and physical condition.

WHEREFORE, Plaintiff demands judgment against each of the Defendants, including the fictitious party Defendants, jointly and severally, and that punitive damages be awarded to Plaintiff in an amount which will fairly and adequately compensate the Plaintiff for the injuries and damages sustained by the Plaintiff due to Defendants' outrageous and/or other wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar acts. Plaintiff requests reasonable attorney's fees. Further, Plaintiff requests that the Court enter a judgment consistent with the verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## FOURTH CAUSE OF ACTION
## PREMISE LIABILITY AS TO DEFENDANTS JOHN DOE, 1-100

69.     The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

18

70.    Plaintiff was exposed to asbestos while on the premises of the Premise Defendants. Plaintiff was on Premises Defendants' premises at their express or implied invitation and entered for a purpose connected with the business of Premises Defendants, or their predecessors in interest, that resulted or may have resulted in their mutual economic benefit.

71.    The condition of Premises Defendants' property posed an unreasonable risk of harm to those on the premises and their families, including Kite. The presence of asbestos and asbestos dust on Premises Defendants' premises constituted a concealed defect at the time that Plaintiff arrived at the premises. The manner of use of asbestos and asbestos-containing materials at Premises Defendants' facilities created an unreasonably dangerous condition at these facilities for both primary and secondary asbestos exposure.

72.    While Plaintiff was working at these premises, his work activity included being exposed to asbestos particles and asbestos dust.

73.    As the possessors, owners, operators, managers, and/or occupiers of the premises, Premises Defendants had non-delegable duties to keep the premises safe for invitees.

74.    Premises Defendants knew or should have known of the danger of exposure to asbestos or asbestos dust on their premises and failed to exercise ordinary care to protect Plaintiff from the danger.  Premises Defendants failed to adequately warn Plaintiff of the presence and hazards of asbestos, asbestos dust and others working with asbestos and failed to make this condition reasonably safe.  These failures were a proximate cause of Plaintiff's injuries and damages.

75.    Further, Premises Defendants, or their predecessors in interest, engaged in negligent activity by exposing Plaintiff secondarily to asbestos particles and/or asbestos dust. Premises Defendants, their agents, servants, and/or employees were further guilty of certain acts,

wrongs, omissions, and/or undertakings with respect to the use and misuse of asbestos-containing products at Premises Defendant's facilities, each of which, independently or in combination with one another, amount to negligence. This negligent activity, omission or undertaking was a proximate cause of Plaintiff's injuries and damages.

WHEREFORE, Plaintiff demands judgment against each of the Defendants, including the fictitious party Defendants, jointly and severally, and that punitive damages be awarded to Plaintiff in an amount which will fairly and adequately compensate the Plaintiff for the injuries and damages sustained by the Plaintiff due to Defendants' outrageous and/or other wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar acts. Plaintiff requests reasonable attorney's fees. Further, Plaintiff requests that the Court enter a judgment consistent with the verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

### FIFTH CAUSE OF ACTION
### CONSPIRACY AGAINST METROPOLITAN LIFE INSURANCE COMPANY

76.     The Plaintiff adopts, alleges, and incorporates herein by reference all of the averments and allegations set forth in the preceding paragraphs of this complaint as if fully set forth herein.

77.     Defendant Metropolitan Life Insurance Company agreed and conspired with miners, manufacturers, sellers, distributors, and installers of asbestos-containing products to suppress and misrepresent the hazards of exposure to asbestos.

78.     Defendant Metropolitan Life Insurance Company, as well as other members of the asbestos industry, engaged in investigations and research as to the hazards of asbestos and often edited out material deemed to be potentially harmful to the asbestos industry and only published

20

favorable portions of their findings and/or refrained from publishing anything. Furthermore, Metropolitan Life financially aided the asbestos industry in its endeavors to mislead and obfuscate.

79.   Defendant Metropolitan Life Insurance Company knowingly and willfully conspired to perpetuate the actions and omissions referred to herein as well as aided and abetted manufacturers of asbestos-containing products in keeping the Plaintiff, other business invitees, users, bystanders, household members, members of the general public and others similarly situated ignorant of the risks they faced when exposed to asbestos and asbestos containing products knowing that they would not discover or realize the danger or would fail to protect themselves against it.

80.   Defendant Metropolitan Life Insurance Company directly and indirectly materially misrepresented that asbestos was not hazardous and/or could be used safely when they:

      a.   Had no adequate basis for such representations;

      b.   Knew that a significant health hazard to human life existed from asbestos.

81.   Defendant Metropolitan Life Insurance Company had reason to expect that as a result of such representation, Plaintiff, other business invitees, users, bystanders, household members, members of the general public and others similarly situated would be exposed to asbestos.

82.   Even after the dangers of asbestos finally began to be known to Plaintiff, other business invitees, users, bystanders, household members, members of the general public or others similarly situated, Metropolitan Life Insurance Company continued to act wrongfully both individually and together in a conspiracy to mislead and misrepresent the extent of the past

wrongful actions and omissions and to destroy records and hide witnesses and other evidence and to such other wrongful and unnecessary action so as to:

    a.   Prevent and delay Plaintiff and others similarly situated from filing legal action to recover for these injuries and/or;

    b.   Defeat and/or delay such legal actions and the final collection of any judgment.

83.    Similarly, Defendant Metropolitan Life Insurance Company aided and abetted the manufacturers, miners, suppliers, and users of asbestos and asbestos products in keeping the true dangers of asbestos exposure secret and/or misrepresented.

84.    As a direct and proximate result of the above wrongful conspiracy of Metropolitan Life Insurance Company, Plaintiff was exposed to asbestos and Plaintiff developed the asbestos-related diseases discussed and sustained the injuries described herein.

85.    As a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of Metropolitan Life Insurance Plaintiff was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Plaintiff to develop the asbestos-related diseases aforesaid, which has disabled and disfigured Plaintiff. Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his asbestos-induced diseases and conditions. Plaintiff has experienced great physical pain and mental anguish as a result of his asbestos-induced diseases and conditions. Plaintiff has been hindered and prevented from pursuing his normal course of employment, thereby loosing large sums of money which otherwise would have accrued him.

WHEREFORE, Plaintiff demands judgment against each of the Defendants, including the fictitious party Defendants, jointly and severally, and that punitive damages be awarded to

22

Plaintiff in an amount which will fairly and adequately compensate the Plaintiff for the injuries and damages sustained by the Plaintiff due to Defendants' outrageous and/or other wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar acts. Plaintiff requests reasonable attorney's fees. Further, Plaintiff requests that the Court enter a judgment consistent with the verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## DAMAGES

86.     Plaintiff adopts, alleges, and incorporates herein by reference all of the applicable averments, allegations, and disclaimers set forth in the preceding paragraphs of this complaint as if fully set forth herein and further state:

87.     As a direct and proximate result of one or more of the foregoing acts and/or omissions on the part of Defendants, Plaintiff was exposed to and inhaled, ingested or otherwise absorbed asbestos fibers causing Plaintiff to develop the asbestos-related diseases aforesaid, which has disabled and disfigured Plaintiff. Plaintiff has been compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his asbestos-induced diseases and conditions. Plaintiff has experienced great physical pain and mental anguish as a result of his asbestos-induced diseases and conditions. Plaintiff has been hindered and prevented from pursuing his normal course of employment, thereby loosing large sums of money which otherwise would have accrued him.

WHEREFORE, Plaintiff demands judgment against each of the Defendants, including the fictitious party Defendants, jointly and severally, and that punitive damages be awarded to Plaintiff in an amount which will fairly and adequately compensate the Plaintiff for the injuries

23

and damages sustained by the Plaintiff due to Defendants' outrageous and/or other wrongful behavior, and in an amount which will adequately reflect the enormity of the Defendants' wrongful acts, and which will effectively prevent other similar acts. Plaintiff requests reasonable attorney's fees. Further, Plaintiff requests that the Court enter a judgment consistent with the verdict, and that it also award Plaintiff interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

This 4th day of May, 2011.

s/G. Marc Keahey
George Marshall Keahey

Keahey Law Office
PO Box 934
Grove Hill, Alabama 36451
PHONE. 251-275-3127
FACSIMILE. 251-275-3129
EMAIL. marc_keahey@yahoo.com

s/G. Patterson Keahey
G. PATTERSON KEAHEY  (KEA004)
ASB-6357-A64G
*Attorney for Plaintiff*

LAW OFFICES OF G. PATTERSON KEAHEY
One Independence Plaza, Suite 612
Birmingham, Alabama 35209
PHONE:      205-871-0707
FACSIMILE: 205-871-0801
EMAIL:      alasbestos@mesohelp.com

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

s/G. Patterson Keahey
G. PATTERSON KEAHEY

24

NOTICE TO THE CLERK OF COURT:

PLEASE SERVE A COPY OF THIS COMPLAINT UPON ALL DEFENDANTS BY U.S.

CERTIFIED MAIL.

# Exhibit C

**CLEVELAND G. KITE**                                    **07/12/2011**

---

Page 1

```
 1              IN THE CIRCUIT COURT OF
 2            MARENGO COUNTY, ALABAMA
 3
 4    CIVIL ACTION NUMBER: CV-2001-900034.00
 5
 6    CLEVELAND G. KITE,
 7          Plaintiff,
 8
 9          vs.
10
11    BILL VANN COMPANY, INC., et al.;
12          Defendants.
13
14
15
16
17          DEPOSITION TESTIMONY OF:
18             CLEVELAND G. KITE
19
20
21             JULY 12, 2011
22             10:00 A.M.
23
```

Page 2

```
 1          S T I P U L A T I O N S
 2          IT IS STIPULATED AND AGREED by and
 3   between the parties through their respective
 4   counsel that the video deposition of CLEVELAND
 5   G. KITE may be taken before Mickey L. Turner,
 6   Certified Shorthand Reporter and Notary
 7   Public, at the offices of Freedom Court
 8   Reporting, The O'Gwynn Building, 204 Conti
 9   Street, Suite 1C, Mobile, Alabama 36602, on
10   the 12th day of July, 2011.
11          IT IS FURTHER STIPULATED AND AGREED
12   that the signature to and the reading of the
13   deposition by the witness is not waived, the
14   deposition to have the same force and effect
15   as if full compliance had been had with all
16   laws and rules of Court relating to the taking
17   of depositions.
18          IT IS FURTHER STIPULATED AND AGREED
19   that it shall not be necessary for any
20   objections to be made by counsel to any
21   questions, except as to form or leading
22   questions, and that counsel for the parties
23   may make objections and assign grounds at the
```

Page 3

```
 1   time of the trial, or at the time said
 2   deposition is offered in evidence, or prior
 3   thereto.
 4          IT IS FURTHER STIPULATED AND AGREED
 5   that notice of filing of the deposition by the
 6   Commissioner is waived.
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
```

Page 4

```
 1                I N D E X
 2   EXAMINATION BY:            PAGE NUMBER:
 3   Mr. Partridge            11
 4
 5
 6            E X H I B I T S
 7
 8   PLAINTIFF'S EXHIBITS:      PAGE NUMBER:
 9   1 - Interrogatory Responses     11
10
11   DEFENDANT'S EXHIBITS:
12   1 - Amended Notice of
13        Discovery Deposition     205
14
15
16
17
18
19
20
21
22
23
```

1 (Pages 1 to 4)

**CLEVELAND G. KITE**                    **07/12/2011**

| Page 5 |
|---|
| 1    A P P E A R A N C E S |
| 2 |
| 3       THE KEAHEY LAW FIRM, BY G. Patterson |
| 4    Keahey, Esquire, (info@mesohelp.com), One |
| 5    Independence Plaza, Suite 612, Birmingham, |
| 6    Alabama 35209, appearing on behalf of the |
| 7    Plaintiff. |
| 8       FORMAN, PERRY, WATKINS, KRUTZ & TARDY, |
| 9    by Donald C. Partridge, Esquire, |
| 10   (partridgedc@fpwk.com), 200 South Lamar |
| 11   Street, Suite 100, Jackson, Mississippi 39201, |
| 12   appearing on behalf of a defendant. |
| 13      VICKERS, RIIS, MURRAY AND CURRAN, LLC, |
| 14   by Timothy A. Clarke, Esquire, |
| 15   (tclarke@vickersriis.com), 106 Saint Francis |
| 16   Street, Suite 1100, Mobile, Alabama 36602, |
| 17   appearing on behalf of Bill Vann Company, |
| 18   Inc., Crane Co., Goulds Pumps, Inc. and also |
| 19   appearing for Foster Wheeler Corporation, |
| 20   subject to special appearance without waiver |
| 21   of any objections or defenses. |
| 22      AULTMAN, TYNER & RUFFIN, LTD., by Rocky |
| 23   W. Eaton, Esquire (reaton@aultmantyner.com), |

| Page 6 |
|---|
| 1    315 Hemphill Street, Hattiesburg, Mississippi |
| 2    39403, appearing on behalf of York |
| 3    International Corporation. |
| 4       BALCH & BINGHAM, LLC, by Jenelle R. |
| 5    Evans, Esquire (jevans@balch.com), 1901 Sixth |
| 6    Avenue North, Suite 1500, Birmingham, Alabama |
| 7    35203, appearing on behalf of General |
| 8    Electric. |
| 9       EDWARD B. MCDONOUGH, JR., P.C., by |
| 10   Edward B. McDonough, Jr., Esquire |
| 11   (ebmc@ebmcdonough.com), 107 St. Francis |
| 12   Street, Mobile, Alabama 36633, appearing on |
| 13   behalf of Chesterton, Buffalo Pumps, Schneider |
| 14   Electric and Flowserve/Duriron. |
| 15      PORTERFIELD, HARPER, MILLS & MOTLOW, |
| 16   PA, by William T. Mills, II, Esquire |
| 17   (wtm@phm-law.com), 22 Inverness Center |
| 18   Parkway, Suite 600, Birmingham, Alabama 35242, |
| 19   appearing on behalf of Cummins and Warner |
| 20   Pump. |
| 21      HAWKINS, PARNELL, THACKSTON & YOUNG, |
| 22   LLP, by Ernest L. Wetzler, II, Esquire |
| 23   (ewetzler@hptylaw.com), 4000 SunTrust Plaza, |

| Page 7 |
|---|
| 1    303 Peachtree Street NE, Atlanta, Georgia |
| 2    30308, appearing on behalf of Cleaver-Brooks, |
| 3    Oakfabco, Inc., and Cooper Industries. |
| 4       HAWKINS, PARNELL, THACKSTON & YOUNG, |
| 5    LLP, by Catherine A. McCormack, Esquire |
| 6    (cmccormack@hptylaw.com), 4000 SunTrust Plaza, |
| 7    303 Peachtree Street NE, Atlanta, Georgia |
| 8    30308, appearing on behalf of Union Carbide |
| 9    and Dana. |
| 10      HUBBARD, WIGGINS, MCILWAIN & |
| 11   BRAKEFIELD, PC, by G. Stephen Wiggins, Esquire |
| 12   (swiggins@hubbardfirm.com), 808 Lurleen |
| 13   Wallace Boulevard North, Tuscaloosa, Alabama |
| 14   35403, appearing on behalf of Warrior 1-Stop. |
| 15      TUCKER, ELLIS & WEST, by Henry E. |
| 16   Billingsley, Esquire, |
| 17   (hbillingsley@tuckerellis.com), 1150 |
| 18   Huntington Building, 925 Euclid Avenue, |
| 19   Cleveland, Ohio 44115, appearing on behalf of |
| 20   UTC. |
| 21      MAYNARD, COOPER & GALE, PC, by J. |
| 22   Walton Jackson, Esquire, |
| 23   (wjackson@maynardcooper.com), 2400 |

| Page 8 |
|---|
| 1    Regions/Harbert Plaza, 1901 6th Avenue North, |
| 2    Birmingham, Alabama 35203, appearing on behalf |
| 3    of Eaton Corporation. |
| 4       MCDOWELL, KNIGHT, ROEDDER & SLEDGE, |
| 5    LLC, by Annie Laurie McClurkin, Esquire, |
| 6    (amcclurkin@mcdowellknight.com), 11 North |
| 7    Water Street, Thirteenth Floor, Battle House |
| 8    Tower, Mobile, Alabama 36602, appearing on |
| 9    behalf of Crown. |
| 10      HUIE, FERNAMBUCQ & STEWART, LLP, by |
| 11   Frank E. Lankford, Jr., Esquire |
| 12   (fel@hfsllp.com), Three Protective Center, |
| 13   Suite 200, 2801 Highway 280 South, Birmimgham, |
| 14   Alabama 35223, appearing on behalf of John |
| 15   Crane, Inc., Honeywell International, Sepco, |
| 16   Gorman Rupp and Cameron International. |
| 17      HARRIS & HARRIS, LLP, by James A. |
| 18   Harris, III, Esquire |
| 19   (jamey@harris-harris.com), BB&T Bank Building, |
| 20   Suite 450, 2501 20th Place South, Birmingham, |
| 21   Alabama 35223, appearing on behalf of CBS. |
| 22      BURR & FORMAN, LLP, by Allan R. |
| 23   Wheeler, Esquire (awheeler@burr.com), 420 |

# CLEVELAND G. KITE
07/12/2011

| Page 9 | Page 11 |
|---|---|
| 1 North 20th Street, Suite 3400, Birmingham, | 1 service of the process, and by so specially |
| 2 Alabama 35203, appearing on behalf of Georgia | 2 appearing, Foster Wheeler does not waive any |
| 3 Pacific. | 3 defenses it may have with respect to process |
| 4 CAPELL & HOWARD, PC, by Robert F. | 4 service, process jurisdiction or any other |
| 5 Northcutt, Esquire (rfn@chlaw.com), 150 South | 5 defenses or objections, and by so appearing, |
| 6 Perry Street, Montgomery, Alabama 36104, | 6 appearing to protect the interests of Foster |
| 7 appearing on behalf of Motion Industries. | 7 Wheeler with respect to this deposition. |
| 8 BAKER, DONELSON, BEARMAN, CALDWELL & | 8 MR. WETZLER: And Cooper Industries |
| 9 BERKOWITZ, PC, by William L. Waudby, Esquire | 9 joins that objection or joins that |
| 10 (bwaudby@bakerdonelson.com), Wells Fargo | 10 stipulation. We haven't been served. |
| 11 Tower, 420 20th Street North, Suite 1600, | 11 |
| 12 Birmingham, Alabama 35203, appearing on behalf | 12 (Whereupon, Plaintiff's Exhibit 1 |
| 13 of Caterpillar, Inc. and The Goodyear Tire & | 13 was marked for identification and |
| 14 Rubber Company. | 14 same is attached hereto.) |
| 15 SPRAIN LAW FIRM, PC, by Robert H. | 15 |
| 16 Sprain, Jr., Esquire (rhs@sprainlaw.com), 1707 | 16 EXAMINATION BY MR. PARTRIDGE: |
| 17 29th Court South, Birmingham, Alabama 35209, | 17 Q. Good morning, Mr. Kite. I'm Donald |
| 18 appearing on behalf of a Defendant. | 18 Partridge. We just met a few minutes ago. |
| 19 | 19 And I'm going to start with you this morning. |
| 20 | 20 And just a very few rules. If I state a |
| 21 | 21 question that you don't understand or you |
| 22 | 22 don't hear it, just let me know and I'll |
| 23 | 23 rephrase it for you. Otherwise, I will assume |

| Page 10 | Page 12 |
|---|---|
| 1 I, Mickey L. Turner, Certified | 1 you have understood my question and heard it |
| 2 Shorthand Reporter and Notary Public, acting | 2 and will give me truthful answers. Is that |
| 3 as Commissioner, certify that on this date, as | 3 fair? |
| 4 provided by the Alabama Rules of Civil | 4 A. Yes, sir. |
| 5 Procedure, and the foregoing stipulation of | 5 Q. If you need a break at any time, want to |
| 6 counsel, there came before me at the offices | 6 quit or whatever you want to do, just let me |
| 7 of Freedom Court Reporting, The O'Gwynn | 7 know. And we're going to go as far as we can |
| 8 Building, 204 Conti Street, Suite 1C, Mobile, | 8 today. I mentioned to you a few minutes ago |
| 9 Alabama 36602, beginning at 10:00 a.m., | 9 that I'm going to ask some questions out of my |
| 10 CLEVELAND G. KITE, witness in the above cause, | 10 normal order. Typically, I would ask a lot of |
| 11 for oral examination, whereupon the following | 11 background questions of you in the beginning |
| 12 proceedings were had: | 12 to make both you and me comfortable with each |
| 13 | 13 other and to get some background information |
| 14 CLEVELAND G. KITE, | 14 out of the way. But because of something |
| 15 being first duly sworn, was examined and | 15 later this morning, I'm going to go right into |
| 16 testified as follows: | 16 your work history. And at least some |
| 17 | 17 background, I guess I ought to ask your full |
| 18 COURT REPORTER: Usual stipulations? | 18 name and where you live. |
| 19 MR. PARTRIDGE: Yes, ma'am. | 19 A. Cleveland Grover Kite, 1861 Schillinger |
| 20 MR. CLARKE: Before we begin, this is | 20 Road North, Semmes 36575. |
| 21 Tim Clarke on behalf of Foster Wheeler | 21 Q. And what's your date of birth? |
| 22 Corporation entering a special appearance. | 22 A. April 19, 1938. |
| 23 There have been some issues with respect to | 23 Q. All right. I'm not very good at math. |

3 (Pages 9 to 12)

**CLEVELAND G. KITE**                                    **07/12/2011**

Page 177

1   Q.   Was most of your time spent in Panama
2   City?
3   A.   Quite a bit.
4   Q.   When you visited these various local,
5   more local Coast Guard stations, did that just
6   entail you driving over there in a vehicle and
7   spending some time and then coming back?
8   A.   Well, sometimes, yes, sir. And Eufaula,
9   had a station there. I'd have to spend the
10  night, see, in a hotel somewhere. If they had
11  a problem, I'd work with them. Same with
12  them, if I had something that was serious, I
13  would spend the night and work until we got
14  the problem solved.
15  Q.   Do you ever remember -- well, from
16  Mobile in 1977, where did you go next?
17  A.   Right here in base Mobile. I retired in
18  '78 from base Mobile.
19  Q.   Did you spend -- your work history here
20  from your attorney's office says there was
21  another Coast Guard base on Dauphin Island?
22  A.   Yes, sir, I was on Point Verde for about
23  six months.

Page 178

1   Q.   Is that a vessel?
2   A.   Yes, sir, Coast Guard cutter, search and
3   rescue boat, 82-footer.
4   Q.   What did you do there?
5   A.   Engineering.
6   Q.   You were still an E-7?
7   A.   Yes, sir.
8   Q.   I mean, yeah, was that your last work on
9   any vessel?
10  A.   Yes, sir.
11  Q.   Can you describe that vessel for me,
12  please?
13  A.   It's 82 foot, which is a Coast Guard
14  cutter, search and rescue vessel.
15  Q.   Were you assigned to the engine room?
16  A.   Yes, sir.
17  Q.   Was that a demotion or, I mean --
18  A.   Well, what happened, I was a group
19  engineer here in base Mobile. There was a
20  chief on the boat down there. He couldn't get
21  along with the CO because he wanted my job and
22  he couldn't have it. So he gave them a lot of
23  problems because he lived out on the island.

Page 179

1   So he give them a lot of trouble. So my XO
2   called me in and asked me if I would go down
3   there and be the chief engineer on the boat
4   until they could replace this guy. And that's
5   what I did. I went down there. I stayed on
6   the boat but I lived at home. I traveled back
7   and forth. And then when they got a
8   replacement, they put me back on my job, as
9   group engineer.
10  Q.   How long were you on this vessel, then?
11  A.   I think about four to six months, I
12  believe.
13  Q.   Did you do any hands-on work on it?
14  A.   Oh, yes, sir.
15  Q.   Tell me what you did.
16  A.   We had Cummins engines on it and we'd do
17  repairs, same associated equipment, valves,
18  pumps, same, insulation, maintenance and PM,
19  maintenance on the engines, valves, pumps.
20  Q.   Do you remember the names of any of the
21  valves on this particular vessel on Point
22  Verde?
23  A.   All these ships and things had the same

Page 180

1   stuff, Cramer, same thing. It would go from
2   one to the other and you don't change very
3   much. They all had the same. The military
4   had contracts with the same people.
5         MR. SPRAIN: Move to strike the
6   nonreponsive portion.
7   Q.   Do you think you were exposed to
8   asbestos in any way on Point Verde?
9   A.   Yes, sir.
10  Q.   In what way?
11  A.   Like I say, the exhaust blankets, the
12  valves, you had to keep them up, and pumps,
13  and packing and stuff. So like I say,
14  everything is about the same. It didn't
15  change when you go into these ships.
16  Q.   I'm going to ask you, and this may sound
17  repetitive to you, but I'm going to ask you if
18  you remember the names in particular of any of
19  the valves on the Point Verde?
20  A.   I think they were Cramer.
21  Q.   And any pumps on the Point Verde?
22  A.   They were Westinghouse and GE.
23  Q.   And what other equipment did you say may

**FREEDOM COURT REPORTING    877-373-3660**

**CLEVELAND G. KITE**                    07/12/2011

| Page 181 | Page 183 |
|---|---|

**Page 181**

1  have contained asbestos on the Point Verde?
2  A.   Exhaust.
3  Q.   Exhaust and the blanket around the
4  exhaust?
5  A.   Right, and some of the lines down there
6  that are associated with the equipment.
7  Q.   The insulation on the -- when you say
8  lines, you're really talking about pipes,
9  right?
10  A.   Pipe, right.
11  Q.   Pipes, okay.  All right.  So you helped
12  out on this boat for six months or so, four
13  months?
14  A.   I think it was, yes, sir.
15  Q.   And then what did you do after that?
16  A.   Went back to base Mobile.
17  Q.   And from there did you retire?
18  A.   Yes, sir.
19  Q.   And is that in 1978?
20  A.   Yes, sir.
21  Q.   Do you remember the exact date of 1978
22  you retired?
23  A.   It was the last of June, June the 30th

**Page 183**

1        (Whereupon, a recess was taken.)
2
3  Q.   (BY MR. PARTRIDGE:)  Okay, Mr. Kite.
4  Are you ready to proceed for just a little bit
5  longer today?
6  A.   Yes, sir.
7  Q.   When you got discharged honorably out of
8  the Navy, June 30th, 1978 --
9        MR. NORTHCUTT:  Coast Guard.
10  Q.   Coast Guard, thank you.  Out of the
11  Coast Guard on June 30, 1978, and that was
12  your last military stint?
13  A.   Yes, sir.
14  Q.   What did you do to earn a living after
15  that?
16  A.   I think I went to work for the L&N
17  Railroad at that time, after that.
18  Q.   And was that soon after June 30, 1978?
19  A.   It wasn't too much longer after, a
20  couple months.
21  Q.   So, how did you come to work for L&N
22  Railroad?
23  A.   I went and applied for the job.

**Page 182**

1  to July 1st, one of the dates there.  I think
2  it was June 30th.
3  Q.   I think that's right.  1978?
4  A.   Yes, sir.
5  Q.   Okay.  All right.  Now, I think after
6  you retired, you told me earlier that you
7  stayed in the Naval Reserve, but you really
8  haven't -- or Coast Guard Reserve?
9  A.   Coast Guard.
10  Q.   Coast Guard Reserve, but you really
11  haven't been called, and you haven't done
12  anything with any of the military branch since
13  '78?
14  A.   No, sir.
15  Q.   Except draw your pension?
16  A.   My pension, yes, sir.
17  Q.   All right.  Are you okay to still keep
18  going?
19  A.   I'm getting a little tired.
20        MR. KEAHEY:  Let's take a quick
21  ten-minute break.
22        THE WITNESS:  Thank you.
23

**Page 184**

1  Q.   And that was here in Mobile?
2  A.   Yes, sir, the roundhouse.
3  Q.   Where is that?
4  A.   East, northeast Mobile, down by the
5  river.  It's called roundhouse.  It's where
6  L&N had their place to repair engines down by
7  the dry docks.
8  Q.   What made you apply there?
9  A.   I heard they were looking for engineers,
10  machinists to work on engines.
11  Q.   And how did you hire in?
12  A.   When they -- I took the test and
13  everything and they told me I had passed and
14  they sent me to the roundhouse.
15  Q.   And did you work there for a number of
16  years?
17  A.   About until '85.
18  Q.   So '78 to '85, you were employed by L&N
19  Railroad?
20  A.   No, sir.  '88, '89 -- '78, '79, I think
21  is when I really got the job and went to work
22  until '85.
23  Q.   Okay.  So you worked there for about six

**CLEVELAND G. KITE**                                    07/12/2011

| Page 205 |
|---|
| 1   Q.   In this particular lawsuit, are you |
| 2   claiming any lost wages? |
| 3   A.   Not from working, no. |
| 4   Q.   All right.  It's a little bit after |
| 5   3:30.  Are you ready to knock off? |
| 6   A.   Yes, sir. |
| 7   Q.   I think you are. |
| 8   A.   Thank you. |
| 9       MR. PARTRIDGE:  Okay.  Yes, sir.  And |
| 10   we'll talk about when we'll come back. |
| 11       MR. KEAHEY:  All right.  Okay.  Thank |
| 12   you. |
| 13       MR. PARTRIDGE:  Thanks very much, |
| 14   Mr. Kite. |
| 15       THE WITNESS:  Thank you. |
| 16       MR. HARRIS:  Can I state for the record |
| 17   that we're adjourning and not concluding. |
| 18   Defendants reserve the right to conclude the |
| 19   deposition before it is offered. |
| 20       (Whereupon, a recess was taken.) |
| 21       (Whereupon, Defendant's Exhibit 1 |
| 22       was marked for identification and |
| 23       same is attached hereto.) |

| Page 206 |
|---|
| 1   Q.   Mr. Kite, back on the record.  I'm going |
| 2   to show you what we had marked Defendant's |
| 3   Exhibit 1.  It's your notice of deposition. |
| 4   And on the very last page, it's got some items |
| 5   that we asked you to bring to your deposition. |
| 6   Before we got started, I asked you to look at |
| 7   that, and I know you did.  And I'm just going |
| 8   to ask you if you have any of those items that |
| 9   I requested in your possession that you might |
| 10   be able to bring to your next deposition when |
| 11   we convene again? |
| 12   A.   No, sir, I don't have any of these items |
| 13   that I know of, if I can read it. |
| 14       MR. KEAHEY:  Okay, anything else?  Okay. |
| 15   All right.  Thank y'all. |
| 16       MR. PARTRIDGE:  If you have any of those |
| 17   things, will you bring them next time? |
| 18       THE WITNESS:  I don't have them. |
| 19       MR. PARTRIDGE:  That's all right, yes, |
| 20   sir.  Thank you. |
| 21 |
| 22       FURTHER DEPONENT SAITH NOT |
| 23 |

| Page 207 |
|---|
| 1           C E R T I F I C A T E |
| 2 |
| 3   STATE OF ALABAMA ) |
| 4   JEFFERSON COUNTY ) |
| 5 |
| 6       I HEREBY CERTIFY that the above |
| 7   and foregoing transcript was taken down by me |
| 8   in stenotype, and the questions and answers |
| 9   thereto were transcribed by means of |
| 10   computer-aided transcription, and that the |
| 11   foregoing represents a true and correct |
| 12   transcript of the testimony given by said |
| 13   witness. |
| 14       I FURTHER CERTIFY that I am |
| 15   neither of counsel, nor of any relation to the |
| 16   parties to the action, nor am I anywise |
| 17   interested in the result of said cause. |
| 18 |
| 19 |
| 20   /s/Mickey L. Turner |
| 21   MICKEY L. TURNER |
| 22   CCR No. 002 |
| 23   Notary Expires 9/16/14 |

**FREEDOM COURT REPORTING    877-373-3660**

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

CIVIL ACTION NUMBER 2:11-CV-00444

|  |  |
|---|---|
| CLEVELAND KITE | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BILL VANN CO., et al. | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF THOMAS F. McCAFFERY

I, Thomas F. McCaffery do state and depose the following:

1.    I am a technical consultant, researcher and head of a company, McCaffery &
Associates, Inc., in Alexandria, Virginia, whose focus is the location and analysis of United
States Navy and merchant ship design, development, construction, maintenance and repair
records.  I also specialize in research of personnel records, specifications, qualified product lists
and related records.

2.    I am a 1976 graduate of the United States Merchant Marine Academy, with a
Bachelor of Science degree in Marine Transportation & Management.  I also hold a Masters of
Business Administration degree from Georgetown University.

3.    I am a retired Commander in the United States Navy.  Prior to my retirement, I
had been assigned on active duty to a number of cruiser and destroyer type ships assigned to the
U.S. Atlantic and Pacific Fleets.

4.    My *curriculum vitae* and resume of trial and deposition testimony are attached to

this report. My billing rates for this research were \$185/hour. Deposition or trial testimony is billed at \$370/hour. The billing rates for other researchers and staff range from \$155/hour to \$51/hour. I have not published any publications on this subject in the past 10 years.

5. I have reviewed the partial U.S. Navy and U.S. Coast Guard Service Record of Cleveland G. Kite that were provided by Mr. Kite's Attorney. These records are specifically missing the semi-annual Evaluations of Mr. Kite's performance by his Commanding Officer. I reserve my right to revise and expand this Affidavit upon the ability to review Mr. Kite's full and complete U.S. Navy and U.S. Coast Guard Service Records.

6. I have read the relevant portions of Mr. Kite's deposition.

7. I have conducted a comprehensive research and review into the history of the marine diesel engines aboard the High Endurance Cutter USCGC Mellon (WHEC-717) and the 83' Patrol Boat USCGC Point Verde (WPB-82311). I have been advised that the plaintiff, Cleveland Kite, contends that there were Cummins engines aboard both ships and that his exposure to these engines contributed to his alleged asbestos-related disease.

8. The research conducted on the USCGC Mellon included reviewing documents which identify the manufacturer of the main engine and the auxiliary engines aboard the ship. The main propulsion engines were manufactured by Fairbanks Morse. The auxiliary engines were manufactured by General Motors. There were no Cummins engines.

9. The research conducted on the USCGC Point Verde included reviewing documents which identify the manufacturer of the main engine and the auxiliary engines aboard the ship. The main propulsion engines were manufactured by Cummins. The auxiliary engines were manufactured by General Motors.

10. The Cummins engines aboard the USCGC Point Verde were built and installed in 1960. The Point Verde was commissioned into the U.S. Coast Guard on March 15, 1961.

11.    According to Mr. Kite's testimony, he was assigned to the USCGC Point Verde for a period of three to four months in 1977 as the boat's Chief Engineer. At this time he was a Chief Machinery Technician. He testified that his work assignments were primarily supervisory in nature. He would not have regularly performed any "hands on" work including engine maintenance or repair.

12.    Under Coast Guard maintenance protocols, the engines aboard the USCGC Point Verde would have been regularly serviced and maintained. This would have included periodic overhauls and repair periods. According to the U.S. Coast Guard history of the USCGC Point Verde, the boat was damaged in January 1969 by a fire in during a one of these repair periods.

13.    The engines aboard the USCGC Point Verde would have undergone at least one, and likely several, overhauls prior to Mr. Kite's brief service aboard the boat.

14.    Any asbestos containing engine components would not have been original equipment at the time Mr. Kite was stationed on the Point Verde.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 24th DAY OF AUGUST 2012.

Thomas F. McCaffery

Subscribed and sworn before this 24th day of August, 2012.

Notary Public

CATHERINE VIERNES
Notary Public
Commonwealth of Virginia
My Commission Expires Aug 31, 2015
Commission ID# 280976

# Exhibit E

```
 1              IN THE UNITED STATES DISTRICT COURT

 2        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

 3

 4     IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION

 5            MDL DOCKET 875

 6     CIVIL ACTION NO:  2:11-CV-67753

 7

 8     CLEVELAND KITE,

 9                Plaintiff,

10     vs.

11     BILL VANN COMPANY, INC.,

12     et al.,

13                Defendants.

14

15                    DEPOSITION

16                       OF

17            CAPTAIN WILLIAM A. LOWELL, II

18

19     REPORTED BY: Kelly Jackson

20                Registered Professional

21                Reporter

22                and Notary Public

23     DATE:  8-20-2013
```

**Captain William A. Lowell, II**                                    **203**

1    Q.    You know what my mama told me?

2    A.    What did she say?

3    Q.    She said you can put a boat on a ship,

4    but you can't put a ship on a boat.

5    A.    That is a good idea.

6    Q.    Now, I represent Cummings.  The only

7    place that I see in your notes or in your

8    report where you really talked about Cummings

9    was the Point Verde; correct?

10   A.    That's right.

11   Q.    And that would have been during his

12   Coast Guard experience?

13   A.    That's right.

14   Q.    And assuming if Mr. Kite had any

15   exposure to Cummings, it had to occur while he

16   served on that ship?

17   A.    I believe that to be the case.

18   Q.    And then once he left the Navy or the

19   Coast Guard, he would have had no more

20   exposure to a Cummings engine on the Point

21   Verde; correct?

22   A.    I haven't tried to follow what he did

23   after he got out of the Navy.  My references

Captain William A. Lowell, II                                    204

```
 1    to Cummings were that the propulsion diesels
 2    on the Point Verde were Cummings engines.
 3     Q.    And you didn't find any Cummings on any
 4    other ships or boats or vessels that he served
 5    on; correct?
 6     A.    I did not.
 7     Q.    Interestingly enough, earlier on in this
 8    deposition, you mentioned sometime that
 9    Mr. Kite was confused or might have been
10    mistaken.  And I bring this to point on the
11    USS Mellon where in one of the latter parts of
12    his deposition, he mentioned he thought
13    Cummings was on the USS Mellon.  When you did
14    your search, you didn't find Cummings on the
15    USS Mellon, did you?
16     A.    No.  And I didn't find a lot of data.
17    What I am certain of on the Mellon is that
18    Fairbanks Morse had the main engines and Pratt
19    Whitney had the gas turbines.  I do not
20    remember who had the diesel generators on the
21    treasury 378 foot cutters.
22     Q.    But that might have been a situation
23    where he was mistaken?
```

**Captain William A. Lowell, II**                                          **205**

| | |
|---|---|
| 1 | A.    Absolutely.  It could have been where he |
| 2 | was mistaken.  But I don't know who had those |
| 3 | engines. |
| 4 |        MR. MILLS:  Thank you. |
| 5 | EXAMINATION BY MS. MCCORMACK: |
| 6 |   Q.    Captain Lowell, my name is Catherine |
| 7 | McCormack, and I represent Dana in this case. |
| 8 | And the product at issue for Dana here is |
| 9 | Victor gaskets.  And I first want to ask you |
| 10 | about the report you did in this case.  On |
| 11 | pages seventeen and eighteen and nineteen, you |
| 12 | make references to Victor gaskets. |
| 13 |   A.    That's right. |
| 14 |   Q.    Are those references contained in your |
| 15 | report based solely on your memory of |
| 16 | Mr. Kite's deposition testimony? |
| 17 |   A.    Yes. |
| 18 |   Q.    To the extent that Mr. Kite may have |
| 19 | been confused, your report might not be |
| 20 | accurate because you are citing from his |
| 21 | testimony; is that right? |
| 22 |        MR. VALLES:  Object to the form. |
| 23 |   A.    I have to assume that if he talked about |

**Freedom Court Reporting, Inc**                          **877-373-3660**

Case: MDL No. 875 Document 9979-8 Filed 02/13/15 Page 68 of 70
Case 2:11-cv-00447-WS-C Document 130-6 Filed 02/16/TSUP Page 67 of 6

**Captain William A. Lowell, II**           255

```
 1          MR. REDDITT:  Thank you.

 2              FURTHER DEPONENT SAITH NOT

 3                C E R T I F I C A T E

 4

 5      STATE OF ALABAMA )

 6      COUNTY OF JEFFERSON )

 7

 8          I hereby certify that the above and

 9  foregoing deposition was taken down by me in

10  stenotype and the questions and answers

11  thereto were transcribed by means of computer-

12  aided transcription under my supervision; that

13  the foregoing represents a true and correct

14  transcript of the deposition given by said

15  witness upon hearing.

16          I further certify that I am neither

17  of counsel nor of kin to the parties to the

18  action, nor am I in anywise interested in the

19  result of said cause.

20

21  _____

22  Kelly B. Jackson, RPR

23  ACCR #225
```

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **VALERIE K. PRESLEY, as Personal** | ) | |
| **Representative for the Estate of** | ) | |
| **Cleveland G. Kite, deceased,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No. 11-00444-WS-N** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BILL VANN COMPANY, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### Order Granting Defendant Cummins' Motion for Summary Judgment
_____

This matter is before the Court on Defendant Cummins, Inc.'s Motion for Summary Judgment. Upon consideration of the parties' written submissions, the Court hereby finds that the Defendant's motion is due to be **GRANTED**. Judgment is entered in favor of Cummins, Inc. as to all pending claims. The Court further finds that there is no just reason for delay and expressly enters a **FINAL JUDGMENT** pursuant to Rule 54(b), *Federal Rules of Civil Procedure*.

DONE and ORDERED this __ day of _____, 2015.

_____
Hon. Katherine P. Nelson
Magistrate Judge

COPY TO:   All Counsel of Record