## U.S. District Court
## Middle District of Florida (Orlando)
## CIVIL DOCKET FOR CASE #: 6:15-cv-00557-GAP-KRS
## Internal Use Only

Penny et al v. AT&T Corporation et al
Assigned to: Judge Gregory A. Presnell
Referred to: Magistrate Judge Karla R. Spaulding
Case in other court: Florida Southern, 0:14-cv-62838
Cause: 28:1441 Notice of Removal-Asbestos Litigation

Date Filed: 04/07/2015
Jury Demand: Defendant
Nature of Suit: 368 P.I. : Asbestos
Jurisdiction: Federal Question

#### Plaintiff

**Kris Penny**

represented by **Jonathan Ruckdeschel**
The Ruckdeschel Law Firm
8357 Main Street
Ellicott city, MD 21043
410-750-7825
Fax: 443-583-0430
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

#### Plaintiff

**Lori McNamara**
*his wife*

represented by **Jonathan Ruckdeschel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

#### Defendant

**AT&T Corporation**

represented by **Jeremy P. Brummond**
Lewis Rice & Fingers, LC
600 Washington Avenue
Suite 2500
St. Louis, MO 63101
314-4441339
Email: jbrummond@lewisrice.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Kent Burlington**
Coffey Burlington
2699 S Bayshore Drive
Penthouse
Miami, FL 33133
305-858-2900
Fax: 858-5261
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alice Evelyn Meyer**
Coffey Burlington
2699 South Bayshore Drive
Penthouse
Miami, FL 33133
305-858-2900

Fax: 305-858-5261
Email: ameyer@coffeyburlington.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Alcatel-Lucent USA, Inc.**                    represented by **Dale Jay Spurr**
Bennett Aiello & Cohen
Suite 808
25 SE Second Ave
Miami, FL 33131
305/358-9011
Fax: 305/358-9012
Email: DSpurr@baclawfirm.com
*ATTORNEY TO BE NOTICED*

**Stuart L. Cohen**
Bennett Aiello & Cohen
Suite 808
25 SE Second Ave
Miami, FL 33131
305/358-5577
Fax: 305/371-7580
Email: scohen@baclawfirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**BellSouth Telecommunications, LLC**          represented by **Alice Evelyn Meyer**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeremy P. Brummond**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Robert Kent Burlington**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mastec Inc.**                                represented by **Brian Douglas Equi**
Seipp & Flick, LLP
Four Northpoint Center
1064 Greenwood Blvd., Suite 212
Four Northpoint Center
Lake Mary, FL 32746-5419
407-585-7600
Fax: 407-585-7610
Email: bequi@seippflick.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 12/12/2014 | 1 | NOTICE OF REMOVAL Filing fees $ 400.00 receipt number 113C-7314761, filed by AT&T Corporation. (Attachments: # 1 Civil Cover Sheet, # 2 Exhibit 1 - complaint and |

| | | other filings, # 3 Exhibit 2 - notice of filing removal in broward county, # 4 Exhibit 3 - Sec 159.03 - 159.04 revised code of ohio, # 5 Exhibit 4-ohio atty gen op 1972-037) (Meyer, Alice) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 12/12/2014) |
|---|---|---|
| 12/12/2014 | 2 | Judge Assignment to Judge William P. Dimitrouleas and Magistrate Judge Lurana S. Snow (cbr) [Transferred from flsd on 4/7/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 3 | NOTICE OF REMOVAL to the US District Court for the Southern District of Florida against All Plaintiffs, filed by AT&T Corporation. (Attachments: # 1 Exhibit 1- summons, complaint and other pleadings, # 2 Exhibit notice of filing notice of removal, # 3 Exhibit state statutes, # 4 Exhibit attorney general opinion)(Meyer, Alice) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 12/15/2014) |
| 12/15/2014 | 4 | NOTICE OF CONSENT TO JOIN as party plaintiff by Alice Evelyn Meyer on behalf of Bellsouth Telecommunications, LLC. Attorney Alice Evelyn Meyer added to party Bellsouth Telecommunications, LLC(pty:dft). (Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 5 | NOTICE by Mastec, Inc. *Consent to Removal*. Attorney Brian Douglas Equi added to party Mastec, Inc.(pty:dft). (Equi, Brian) [Transferred from flsd on 4/7/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 6 | NOTICE by Alcatel-Lucent USA Inc *of Consent to Removal*. Attorney Stuart L. Cohen added to party Alcatel-Lucent USA Inc(pty:dft). (Cohen, Stuart) [Transferred from flsd on 4/7/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 7 | NOTICE of Attorney Appearance by Stuart L. Cohen on behalf of Alcatel-Lucent USA Inc (Cohen, Stuart) [Transferred from flsd on 4/7/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 8 | NOTICE of Attorney Appearance by Dale Jay Spurr on behalf of Alcatel-Lucent USA Inc. Attorney Dale Jay Spurr added to party Alcatel-Lucent USA Inc(pty:dft). (Spurr, Dale) [Transferred from flsd on 4/7/2015.] (Entered: 12/15/2014) |
| 12/15/2014 | 9 | Rule 7.1 Corporate Disclosure Statement by Alcatel-Lucent USA Inc identifying Corporate Parent Alcatel Lucent Holdings Inc. for Alcatel-Lucent USA Inc (Spurr, Dale) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 12/15/2014) |
| 12/15/2014 | 10 | Rule 7.1 Certificate of Interested Parties/Corporate Disclosure Statement by Bellsouth Telecommunications, LLC (Meyer, Alice) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 12/15/2014) |
| 12/15/2014 | 11 | Rule7.1 Certificate of Interested Parties/Corporate Disclosure Statement by AT&T Corporation (Meyer, Alice) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 12/15/2014) |
| 12/16/2014 | 12 | Order Requiring counsel To Meet, Joint Scheduling Report and Joint Discovery Report Signed by Judge William P. Dimitrouleas on 12/15/2014. (cqs) [Transferred from flsd on 4/7/2015.] (Entered: 12/16/2014) |
| 12/16/2014 | 13 | NOTICE of Attorney Appearance by Robert Kent Burlington on behalf of AT&T Corporation, Bellsouth Telecommunications, LLC. Attorney Robert Kent Burlington added to party AT&T Corporation(pty:dft), Attorney Robert Kent Burlington added to party Bellsouth Telecommunications, LLC(pty:dft). (Burlington, Robert) [Transferred from flsd on 4/7/2015.] (Entered: 12/16/2014) |
| 12/16/2014 | 14 | MOTION to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing for Jeremy P. Brummond. Filing Fee $ 75.00. Receipt # 91528. (ksa) [Transferred from flsd on 4/7/2015.] (Entered: 12/16/2014) |

| 12/17/2014 | 15 | ORDER granting 14 Motion to Appear Pro Hac Vice, Consent to Designation, and Request to Electronically Receive Notices of Electronic Filing. Signed by Judge William P. Dimitrouleas on 12/17/2014. (cqs) [Transferred from flsd on 4/7/2015.] (Entered: 12/17/2014) |
|---|---|---|
| 12/19/2014 | 16 | ANSWER and Affirmative Defenses to Amended Complaint with Jury Demand by Alcatel-Lucent USA Inc. (Spurr, Dale) [Transferred from flsd on 4/7/2015.] (Entered: 12/19/2014) |
| 12/22/2014 | 17 | Rule 7.1 Corporate Disclosure Statement by Mastec, Inc. (Equi, Brian) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 12/22/2014) |
| 12/22/2014 | 18 | NOTICE of Attorney Appearance by Jonathan Ruckdeschel on behalf of Lori McNamara, Kris Penny (Ruckdeschel, Jonathan) [Transferred from flsd on 4/7/2015.] (Entered: 12/22/2014) |
| 12/29/2014 | 19 | ANSWER and Affirmative Defenses to Amended Complaint with Jury Demand by Mastec, Inc.. (Equi, Brian) [Transferred from flsd on 4/7/2015.] (Entered: 12/29/2014) |
| 01/30/2015 | 20 | SCHEDULING REPORT - Rule 16.1 by Kris Penny, Lori McNamara (Attachments: # 1 Exhibit A, Joint Proposed Scheduling Order)(Ruckdeschel, Jonathan) [Transferred from flsd on 4/7/2015.] (Entered: 01/30/2015) |
| 01/30/2015 | 21 | ORDER Setting Trial Date and Discovery Deadlines, Referring Case To Mediation and Referring discovery Motions To United States Magistrate Jdge: ( Jury Trial set for 1/25/2016 before Judge William P. Dimitrouleas., Calendar Call set for 1/22/2016 10:00 AM before Judge William P. Dimitrouleas., Amended Pleadings due by 7/2/2015., Discovery due by 9/30/2015., In Limine Motions due by 1/8/2016., Pretrial Stipulation due by 1/8/2016.), ORDER REFERRING CASE to Mediation., ORDER REFERRING CASE to Magistrate Judge Lurana S Snow for Discovery Signed by Judge William P. Dimitrouleas on 1/30/2015. (cqs) [Transferred from flsd on 4/7/2015.] (Entered: 01/30/2015) |
| 01/30/2015 | 22 | GENERAL ORDER ON DISCOVERY OBJECTIONS AND PROCEDURES Signed by Magistrate Judge Lurana S. Snow on 1/30/2015. (cqs) [Transferred from flsd on 4/7/2015.] (Entered: 01/30/2015) |
| 02/13/2015 | 23 | NOTICE of Mediator Selection: Lawrence M. Watson, Jr. selected.(Equi, Brian) [Transferred from flsd on 4/7/2015.] (Entered: 02/13/2015) |
| 02/23/2015 | 24 | MOTION to Change Venue For Forum Non Conveniens by AT&T Corporation. Responses due by 3/12/2015 (Attachments: # 1 Exhibit EX 1 - Central Florida Pullers, # 2 Exhibit EX 2 - Statement of Jeorje Mulroney, # 3 Exhibit EX 3 - Forum Non Conveniens Fact Sheet, # 4 Exhibit EX 4 - Certifications for Hospital Records, # 5 Exhibit EX 5 - Letter from Danella Construction, # 6 Exhibit Ex 6 - Decl. of Alice E. Meyer)(Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 02/23/2015) |
| 02/23/2015 | 25 | (STRICKEN PER DE # 28)NOTICE of Filing Discovery: Penny Interrogatory Responses by AT&T Corporation. (Attachments: # 1 Deposition Penny Vol I., # 2 Deposition Penny Vol II.)(Meyer, Alice)Text Modified on 2/24/2015 (cqs). [Transferred from flsd on 4/7/2015.] (Entered: 02/23/2015) |
| 02/23/2015 | 26 | Clerks Notice to Filer re 25 Notice of Filing Discovery. Document Not Related to Case, appears to be a state court document or Missing document to show as District Court filing i.e. case number of District Court;CORRECTIVE ACTION REQUIRED - Filer must file a Notice of Striking, then refile the document in the appropriate case. (cqs) [Transferred from flsd on 4/7/2015.] Modified on 4/7/2015 (LAK). (Entered: 02/23/2015) |
| 02/23/2015 | 27 | NOTICE by AT&T Corporation, Bellsouth Telecommunications, LLC of Filing the Executed Declaration of Alice E. Meyer (Attachments: # 1 Exhibit Executed Declaration of Alice E. Meyer) (Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 02/23/2015) |

| 02/23/2015 | 28 | NOTICE of Striking *Docket Entry # 25* by AT&T Corporation, Bellsouth Telecommunications, LLC (Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 02/23/2015) |
|---|---|---|
| 02/23/2015 | 29 | NOTICE by AT&T Corporation, Bellsouth Telecommunications, LLC *of Filing Appendix to Motion to Transfer Venue* (Attachments: # 1 Exhibit Penny Deposition Volume I, # 2 Exhibit Penny Deposition Volume II, # 3 Exhibit Penny Interrogaory Responses) (Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 02/23/2015) |
| 02/24/2015 | 30 | ORDER denying 24 Motion to Change Venue Without Prejudice Signed by Judge William P. Dimitrouleas on 2/24/2015. (cqs) [Transferred from flsd on 4/7/2015.] (Entered: 02/24/2015) |
| 03/06/2015 | 31 | Renewed MOTION to Change Venue *to U.S.D.C. of middle district* by AT&T Corporation, Bellsouth Telecommunications, LLC. Responses due by 3/23/2015 (Attachments: # 1 Exhibit 1-state division of corporations, # 2 Exhibit 2-affidavit of Jeorje Mulroney, # 3 Exhibit 3-forum non conveniens fact sheet, # 4 Exhibit 4-certification or records for both hospital, # 5 Exhibit 5-ltr dtd 12-3 frm Danella construc)(Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 03/06/2015) |
| 03/23/2015 | 32 | RESPONSE in Opposition re 31 Renewed MOTION to Change Venue *to U.S.D.C. of middle district* filed by Lori McNamara, Kris Penny. Replies due by 4/2/2015. (Attachments: # 1 Exhibit 1-5C)(Ruckdeschel, Jonathan) [Transferred from flsd on 4/7/2015.] (Entered: 03/23/2015) |
| 04/01/2015 | 33 | REPLY to Response to Motion re 31 Renewed MOTION to Change Venue *to U.S.D.C. of middle district Plaintiffs' Opposition to the Renewed Motion to Transfer* filed by AT&T Corporation, Bellsouth Telecommunications, LLC. (Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 04/01/2015) |
| 04/03/2015 | 34 | NOTICE by AT&T Corporation, Bellsouth Telecommunications, LLC *of Additional Basis for Jurisdiction* (Meyer, Alice) [Transferred from flsd on 4/7/2015.] (Entered: 04/03/2015) |
| 04/03/2015 | 35 | NOTICE by Alcatel-Lucent USA Inc *of Joinder in (DE 34) Defendant's Notice of Additional Basis for Jurisdiction.* (Spurr, Dale) [Transferred from flsd on 4/7/2015.] (Entered: 04/03/2015) |
| 04/06/2015 | 36 | ORDER granting 31 Motion to Change Venue. Signed by Judge William P. Dimitrouleas on 4/6/2015. (cqs) [Transferred from flsd on 4/7/2015.] (Entered: 04/06/2015) |
| 04/07/2015 | 37 | Case transferred in from District of Florida Southern; Case Number 0:14-cv-62838. File received electronically (Entered: 04/07/2015) |

Filing # 20576434 Electronically Filed 11/14/2014 11:59:46 AM

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO. 14-021594

KRIS PENNY and
LORI MCNAMARRA, his wife,

Jonathan Ruckdeschel: 12875

        Plaintiffs,

vs.

AT&T CORPORATION
ALCATEL-LUCENT USA, INC.
BELLSOUTH TELECOMMUNICATIONS, LLC
MASTEC, INC.

        Defendants.

_____/

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

1.     This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00).

2.     Plaintiffs KRIS PENNY and LORI MCNAMARRA, his wife, are citizens of the State of Florida and citizens of the United States of America. Plaintiff KRIS PENNY has been diagnosed as having an asbestos-related disease, specifically, malignant mesothelioma.

3.     Defendants are as follows:

     a.     Defendant AT&T CORPORATION, f/k/a AMERICAN TELEPHONE AND TELEGRAPH COMPANY, ("AT&T CORPORATION") a New York Corporation with its principal place of business in New Jersey. Defendant AT&T CORPORATION is the successor by merger to WESTERN ELECTRIC COMPANY, INC., which merged with and into AT&T CORPORATION, AT&T CORPORATION being the surviving entity from the merger;

1

b.   Defendant AT&T CORPORATION, f/k/a AMERICAN TELEPHONE AND TELEGRAPH COMPANY, is a New York Corporation with its principal place of business in New Jersey.   Defendant AT&T CORPORATION is the successor to BELL LABORATORIES, INC., formerly known as AT&T BELL TELEPHONE LABORATORIES, formerly known as BELL TELEPHONE LABORATORIES;

c.   Defendant AT&T CORPORATION, f/k/a AMERICAN TELEPHONE AND TELEGRAPH COMPANY, is a New York Corporation with its principal place of business in New Jersey. Defendant AT&T CORPORATION is the successor to BELL SOUTH, formerly known as SOUTHERN BELL TELEPHONE;

d.   Defendant BELLSOUTH TELECOMMUNICATIONS, LLC is a Georgia Limited Liability Company with its principal place of business in Georgia, and is the successor to BELLSOUTH TELECOMMUNICATIONS, INC., which is the successor to SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

e.   Defendant ALCATEL-LUCENT USA, INC., is the successor by contract and successor by assumption of liability to WESTERN ELECTRIC COMPANY, INC. and as successor by indemnification agreement with AT&T CORPORATION, and for its BELL LABS unit, also known as BELL LABORATORIES, INC., formerly known as AT&T BELL LABORATORIES, formerly known as BELL TELEPHONE LABORATORIES. ALCATEL-LUCENT USA, INC. is a Delaware corporation with its principal place of business in New Jersey;

f.   Defendant MASTEC, INC. is a Florida corporation with its principal place of business in Florida. Defendant MASTEC, INC. is the successor by merger to BURNIP & SIMS, INC. Specifically, BURNIP & SIMS, INC. changed its name to MASTEC, INC., which

2

merged into MASTEC REINCORPORATION, INC., which then changed its name to MASTEC, INC. BURNIP & SIMS, INC., supplied and installed asbestos-cement conduit for AT&T and its merged predecessors in the state of Florida.

4.      The Defendants identified in the caption of this Complaint are corporations who are amenable to jurisdiction in the Courts of Florida because they are either Florida corporations or foreign corporations that now conduct or have conducted business or business ventures, or have had office or agencies within Florida, which subjects them to the jurisdiction within Florida. The alleged causes of action arises out of, or are incidental to, the business or business ventures conducted within Florida by each of the Defendants.  Each foreign corporation has through brokers, jobbers, wholesalers, or distributors sold, consigned, or leased tangible or intangible personal property to persons in this state.

5.      Defendant AT&T CORPORATION further owned, leased, occupied, operated or otherwise possessed and/or controlled real property in the state of Florida on which KRIS PENNY worked and was exposed to asbestos fibers.

6.      Additionally, as discussed more below, Defendant AT&T individually and in conjunction with its now merged subsidiary Bell Telephone Laboratories, undertook to provide Western Electric and Southern Bell and BellSouth, with information, instructions, guidance, policies and procedures relating to all aspects of safety, design and equipment related to Southern Bell's operations in the state of Florida.

7.      Defendant AT&T, directly and through its now merged subsidiaries, Bell Telephone Laboratories, Western Electric, Southern Bell and BellSouth, designed, supplied, installed, possessed and/or controlled underground conduit runs and manholes, asbestos-cement

3

conduit and telecommunication cables that were present in the asbestos cement-conduit throughout the state of Florida, both for local and long-distance telecommunications.

8.  On information and belief, Defendant AT&T, directly and through its now merged subsidiaries, Western Electric, supplied and installed, directly or through the use of subcontractors, the underground conduit runs and manholes used at the NASA launch facility in Cape Canaveral, Florida on and in which KRIS PENNY worked decades later.

9.  The NASA launch facility at Cape Canaveral is not a federal enclave. To the contrary, the jurisdictional status of the United States over the land is proprietary according to the GSA report on jurisdictional status of federal lands.

10.  On information and belief, Defendant AT&T, directly and through its now merged subsidiaries, Western Electric, supplied and installed, directly or through the use of subcontractors, the underground conduit runs and manholes used at the Wright-Patterson Air Force Base on and in which KRIS PENNY worked decades later.

11.  The Wright-Patterson Air Force Base is not a federal enclave. To the contrary, the jurisdictional status of the United States over the land is proprietary according to the GSA report on jurisdictional status of federal lands.

12.  Plaintiffs hereby disclaim any claim for relief against Defendants regarding Kris Penny's work at the Kennedy Space Center and Wright-Patterson Air Force Base other than failure to warn. To the extent that any Defendant asserts that the selection, use and/or installation of asbestos-cement conduit at either of these locations was done under the direction of a federal officer, Plaintiffs specifically disclaim any claim for relief under such theory. Rather, Plaintiffs assert that the Defendants are liable for failing to warn of the dangers of the asbestos cement conduit. Plaintiffs specifically assert that no federal officer ever issued any

4

specification prohibiting any of the defendants from warning of the danger of asbestos dust from the asbestos cement conduit.

13.     On information and belief, Defendant MASTEC, supplied, installed, maintained and/or repaired asbestos cement telephone communications cable conduit for the Bell System and on which KRIS PENNY worked and from which Plaintiff KRIS PENNY was exposed to asbestos dust.

14.     Each foreign corporation has committed wrongful acts either outside or inside this state causing injury to Plaintiff KRIS PENNY.  Each foreign corporation derives substantial revenue from interstate or international commerce and should reasonably have expected their acts to have consequences in this state or any other state.  Each foreign corporation has conducted substantial and not isolated activity within Florida.  Each foreign corporation mines or mined, manufactures or manufactured, processes or processed, imports or imported, converts or converted, compounds or compounded, designed, specified or supplied, directly or indirectly, and/or retains or retained asbestos, products containing substantial amounts of asbestos and/or products designed to be used with asbestos materials which are or were sold, distributed and/or used in Florida.

15.     Each Defendant:

    a.      compounds or compounded,

    b.      converts or converted, and/or

    c.      designs or designed,

    d.      imports or imported,

    e.      installs or installed,

    f.      manipulates or manipulated,

5

        g.      manufactures or manufactured,

        h.      mines or mined,

        i.      processes or processed,

        j.      provided instructions on the use of,

        k.      removes or removed,

        l.      requires or required the use of,

        m.      specifies or specified the use of,

        n.      supervises or supervised the use of,

        o.      uses or used,

products (a.) containing substantial amounts of asbestos and/or (b.) products designed to be used with asbestos containing materials and/or (c.) products that foreseeably would be used with asbestos containing products (collectively "Defendants' Asbestos Products").

16.     Defendants also owned, leased, occupied, operated or otherwise possessed the property (the "Premises" and "Premise Owners") in Florida and other states at which asbestos containing products were installed, manipulated, removed or otherwise used by or in the presence of KRIS PENNY for which those Defendants are legally responsible. Defendants' Premises are or were located in Florida and other states in which KRIS PENNY worked. Defendants' Asbestos Products are or were sold, distributed and/or used in Florida and other states in which KRIS PENNY worked.

17.     Plaintiffs allege that the Defendants have, at all times material to this cause of action, and through and including the present, maintained sufficient contact with the State of Florida and/or transacted substantial revenue-producing business in the State of Florida to

6

subject them to the jurisdiction of this Court pursuant to Florida statute 48.181 and/or 48.182 and/or 48.193 and/or 47.16.

## BACKGROUND

18.     From approximately 2001 through approximately 2004, Plaintiff, KRIS PENNY, worked with and was exposed to Defendants' Asbestos Products and was exposed to asbestos dust as a result of that work. Specifically, KRIS PENNY was exposed to asbestos dust from asbestos-cement conduit used to house telecommunications cables, the dust from which was released into and accumulated in manholes and handholes used in connection with telecommunications. This dust not only was released into and accumulated in the manholes and handholes, but also was necessarily released into the atmosphere surrounding the manholes and handholes as a necessary result of the work performed in the manholes and handholes. KRIS PENNY and his co-workers ran new fiber optic telecommunications cables through existing asbestos cement conduit runs. Often, this involved removing the existing old wire cables from the conduit runs. This frequently involved using compressed air to propel a "rabbit" or "bird" towing a pulling cord through the conduit run in order to pull the new cable into the conduit. Additionally, on a regular basis, KRIS PENNY and his co-workers would have dig up and expose degraded asbestos cement conduit, break it apart to remove the degraded section and then repair the damaged portion of the conduit run. All of these activities created visible airborne dust and debris.

19.     From approximately 2001 through approximately 2004, Plaintiff, KRIS PENNY, also worked in, on and around Defendants' Premises and was exposed to asbestos dust as a result of that work.

20.     Plaintiff worked on Premises owned, leased and/or operated by AT&T CORPORATION in connection with its long-lines business. Plaintiff worked in Premises owned, leased and/or operated by Southern Bell/BellSouth for which AT&T CORPORATION provided Southern Bell/BellSouth with safety information. Furthermore, AT&T CORPORATION, provided Southern Bell/BellSouth with specifications, policies and procedures for construction of its premises and specifications for the machinery and materials used in and on those premises. AT&T CORPORATION further provided Southern Bell/BellSouth with comprehensive specifications, policies and procedures regarding the work practices of Southern Bell/BellSouth employees regarding every aspect of their employment.

21.     AT&T and its merged subsidiaries disregarded their specific and longstanding knowledge of the hazards of asbestos and the dangers faced by employees of the Bell System and others working on their equipment and in their premises, including manholes and handholes, for its pecuniary gain and knowingly and deliberately allowed individuals like KRIS PENNY to work with and around hazardous asbestos containing products despite knowing that:

> a.  many of the conduit runs through which they had installed telecommunications cables were made of asbestos cement;
>
> b.  working in telecommunications manholes and pulling cable through asbestos cement conduit causes measureable exposures to asbestos well above that found in the ambient environment;
>
> c.  individuals like KRIS PENNY were working in manholes and handholes removing old cables of AT&T and its merged subsidiaries and pulling new fiber-optic cable;

8

    d.   it was impossible for individuals like KRIS PENNY to be aware that they were being exposed to deadly asbestos dust without being informed by AT&T that the conduit runs installed by it and its merged subsidiaries were made of asbestos cement, and that;

    e.   invisible amounts of asbestos dust could kill and that there was no safe level of asbestos to prevent the development of cancer, including mesothelioma;

    f.   any warnings regarding the latent danger of dust from the asbestos cement conduit would only be effective if given directly to the workers, for example, and not by way of limitation, by conspicuously marking each asbestos cement conduit with appropriate warning language and/or marking each manhole with appropriate warnings.

22.     While engaging in the conduct described above, Defendants knew or should have known, based on prior reports of individuals contracting cancer from working with and around asbestos-containing products and based on explicit warnings specifically identifying cancer from exposure to asbestos dust created by asbestos containing products, was virtually certain to result in injury or death to persons like KRIS PENNY.

23.     Furthermore, Defendants were or should have been aware that individuals like KRIS PENNY were not aware of the risk because the danger was not apparent. Defendants concealed and misrepresented the danger so as to prevent individuals like KRIS PENNY from exercising informed judgment about whether to perform the work. Defendants concealed this information because instituting procedures to protect individuals like KRIS PENNY from the deadly asbestos dust necessarily created when performing the work that KRIS PENNY

9

performed would have been prohibitively expensive and prevented Defendants the financial benefits of allowing other companies to use AT&T conduit runs for their fiber-optic cable.

24.     Defendants further did not share this information with its customers, including the United States Government, or with the persons known to it to be working on the conduit runs so that it would avoid the expense of remediating the dangerous asbestos cement conduit from the premises to which it had supplied and installed such materials.

25.     Defendants knew or should have known that KRIS PENNY's employers would have no way of knowing of the deadly, latent hazard posed by its asbestos cement conduit unless it took affirmative steps to ensure that they and their employees, such as KRIS PENNY, were informed of the deadly danger and the intricate steps necessary to prevent potentially deadly exposure to asbestos. Furthermore, Defendants knew that, irrespective of what KRIS PENNY's employers may have known about the dangers of the Defendants' Asbestos Products, those employers were not passing such information along to their employees such as KRIS PENNY.

26.     Plaintiff KRIS PENNY's employers, did not know of the need for precautions against the deadly, latent danger of asbestos dust created by the work KRIS PENNY performed.

27.     Plaintiff KRIS PENNY's employers, did not warn KRIS PENNY against the deadly, latent danger of asbestos dust created by the work KRIS PENNY performed.

28.     Plaintiff and others working around him used Defendants' Asbestos Products in the intended manner and without significant change in their condition and relied on the Defendants to provide appropriate and sufficient instructions as to proper methods of handling the Asbestos Products, being unaware of the presence of asbestos in these products, that deadly asbestos dust would be created by their work and of the dangerous properties of that asbestos dust.

10

29.     Plaintiff KRIS PENNY relied upon Defendants to maintain their Premises, in a reasonably safe condition and to warm him and his coworkers of latent, non-obvious and/or unreasonable dangers such as asbestos dust.

30.     Plaintiff KRIS PENNY relied upon Defendants to design such premises in a reasonably safe condition and to warn Plaintiff and his co-workers of the latent hazards that they would encounter when working in and on such premises in the manner and with the materials designed, specified, supplied and/or installed by or for the benefit of AT&T.

31.     Plaintiff KRIS PENNY relied upon Defendants to provide him and his co-workers with adequate warning, training, information and protection, so that he would not be exposed to deadly poisons such as asbestos.

32.     As a direct and proximate result of the negligence, strict liability, and failure to exercise reasonable care of the Defendants', KRIS PENNY was repeatedly injured by inhaled asbestos dust.  As a result of those injuries and the damage that accumulated in his body from each of these injuries, KRIS PENNY contracted malignant mesothelioma and sustained physical, psychological, and non-economic damages.

33.     As a direct and proximate result of the negligence, strict liability, and failure to exercise reasonable care of the Defendants Plaintiff LORI MCNAMARRA has suffered loss of consortium.

34.     Specifically, at the time their marriage to each other, neither KRIS PENNY, nor LORI MCNAMARRA, was aware, nor was there any way for them to be aware, that KRIS PENNY had inhaled deadly asbestos.  At the time of their marriage to each other, neither KRIS PENNY nor LORI MCNAMARRA was aware, nor was there any way for them to be aware, that KRIS PENNY would develop a malignant pleural mesothelioma, or any other asbestos-related

11

health condition.  At the time of their marriage to each other, KRIS PENNY had not been diagnosed with any asbestos-related health condition under Florida's Asbestos and Silica Compensation Fairness Act, Florida Stat. 774.201 et. seq.  Specifically, at the time of their marriage to each other, KRIS PENNY did not have any "physical impairment" as defined under Fl. Stat. 774.204, having neither been diagnosed with mesothelioma nor suffered any discernable ill-effects of his exposure to asbestos.  As a result, at the time of their marriage to each other, KRIS PENNY did not have any legally cognizable cause of action in the state of Florida for any asbestos-related injury.  Indeed, at the time of their marriage to each other, KRIS PENNY was unaware of the fact that he had been exposed to deadly asbestos dust from his work.

35.      KRIS PENNY developed a malignant mesothelioma as a result of the cumulative damage to his body from his exposures to asbestos, and the exposure to asbestos for which the Defendants are responsible contributed to Plaintiff's injuries and was a legal cause of them.  Plaintiff's injuries arose out of, were connected to, and were incidental to, the manufacture, sale and distribution by Defendants of their asbestos-containing products and intended use of those asbestos containing products, the lack of supervision of the use of such products, the lack of adequate warning and the failure to use reasonable care towards the Plaintiff and others similarly situated and the other actions described in this complaint.  Plaintiff's exposure to asbestos from Defendants' Asbestos Products and on Defendants' Premises as described, caused Plaintiff to inhale deadly asbestos fibers repeatedly throughout his career

36.      Because asbestos is a latent hazard, and because asbestos related diseases take decades to manifest themselves after the exposures to asbestos occur, Plaintiff did not discover that he had any asbestos-related injury until he was diagnosed with mesothelioma.

12

37.     Plaintiff's injuries arose out of, were connected to, and were incidental to the negligence of Defendants described in this complaint, including designing its Premises, providing the design specifications for the Premises of Southern Bell/BellSouth (hereafter collectively "Premises"); providing specifications and instructions for the use of asbestos containing materials in and on those Premises; providing specifications and instructions for the work practices to be used at such Premises; providing specifications, instructions and training regarding all aspects of safety in the Bell System; and failing to warn Plaintiff, Plaintiff's employers or others who would foreseeably come into contact with the dangers.

38.     As a direct and proximate result of the conduct described, Plaintiff has incurred damages in the form of the cost of treatment for his diseases and injuries.  Plaintiff continues to be obliged for the expenses of same.  As a direct and proximate result of Defendants' conduct, Plaintiff's enjoyment of life has been impaired and his life expectancy shortened.

39.     From the time Plaintiff first learned of his disease, he has suffered mental and physical pain and anguish as a result of his disease.  Additionally Plaintiff, has suffered, and will continue to suffer, mental anguish.

## COUNT I – NEGLIGENCE
### (All Defendants)

40.     Plaintiff incorporates into Count I all relevant allegations contained in this Complaint as if separately stated in Count I.

41.     At the time of Plaintiff's exposure to their Asbestos Products and on their Premises, Defendants knew, or in the exercise of ordinary care should have known, that the use of Asbestos Products was hazardous to the health of workers such as the Plaintiff.  This knowledge, included, but is not limited to, the knowledge that asbestos is a deadly poison and carcinogen; that levels of asbestos-containing dust that are invisible to the naked eye can and do

cause terminal illnesses, including malignant mesothelioma; that any product containing asbestos must be tested to determine whether the product releases asbestos into the air during handling, use or maintenance; that handling materials that contain asbestos requires the most stringent of precautions. Plaintiff relied upon the skill and knowledge of the Defendants, who had a duty to advise users of their products and on their premises of the proper method of handling the products.

42. Defendants had a duty to use reasonable care to protect the Plaintiff from potential harm caused by their Asbestos Products and on their Premises, including the duty to adequately warn Plaintiff. The following actions of the Defendants, separately or in combination, resulted in a breach of the Defendants' duty:

a. Defendants failed to advise Plaintiff that their products contained asbestos;

b. Defendants failed to advise Plaintiff that their premises were contaminated with asbestos;

c. Defendants failed to advise Plaintiff that the purging of manholes, removal of old telecommunications cables and/or installation of new telecommunications cables would release deadly asbestos;

d. Defendants failed to advise Plaintiff that the manipulation and handling of old asbestos cement conduit, including breaking the conduit apart to remove sections of it for repair purposes, would cause release of dangerous asbestos dust and that specific work practices were required to prevent danger from that activity;

e. Defendants failed to adequately warn Plaintiff of the latent dangers it knew he would face when working on their premises and with their equipment and conduit,

14

notwithstanding the fact that Defendants were aware of these hazards and provided such warnings and instructions to Defendants' own employees;

       f.    Defendants failed to adequately warn Plaintiff that use and exposure to asbestos products could be injurious to his health;

       g.    Defendants failed to adequately warn Plaintiff about how to protect himself from asbestos in their products, including safe handling and use, appropriate protective clothing and equipment, and other protective measures;

       h.    Defendants failed to take reasonable steps to warn individuals of the danger of exposure to asbestos in their products when those products were being used by others;

       i.    Defendants failed to provide warnings to the Plaintiff regarding the danger of past exposures to asbestos in their products as additional information regarding the dangers of asbestos became available to them;

       j.    Defendants failed to exercise reasonable care to develop, publish, adopt and disseminate safe methods of handling and installing asbestos materials;

       k.    Defendants failed to use reasonable care to ensure that their asbestos containing products were only distributed to entities and individuals who had been sufficiently trained in their safe use;

       l.    Defendants failed to provide accurate information to the Plaintiff and other members of the public regarding the dangers of asbestos and their asbestos containing products by advertising, labeling and otherwise, that the asbestos products manufactured, sold, or distributed were safe in their ordinary and foreseeable use;

m.      Defendants failed to provide to the Plaintiff and the public the information that they provided to their own employees regarding the hazards of asbestos and their asbestos containing products;

n.      Defendants failed to test their products and/or failed to disseminate the results of tests that they did conduct;

o.      Defendants failed to recall all of the asbestos products from the stream of commerce and the marketplace upon learning that asbestos products would cause various asbestos-related diseases or to provide any reasonably available alternative means of warning the public;[1] and

p.      Defendants failed to warn or advise Plaintiff and others to cease all future exposure to asbestos fumes, smoke, dust and fibers, and to keep away from the home environment asbestos dust and fibers on work clothes and tools.

43.     The Defendants' Asbestos Products to which Plaintiff was exposed were used in the manner in which they were intended to be used; however, they failed to safely perform their purposes in that they caused Plaintiff to develop severe asbestos-related diseases or injuries.

44.     In addition to the allegations above, Defendant AT&T was further negligent in

a.      Providing designs for the Premises to use substantial amounts of asbestos-containing products when non-asbestos-containing products were available to serve the same purpose;

b.      Specifying the use of asbestos-containing products in and on its long-lines Premises and not providing appropriate warning;

---

[1] In making this allegation, Plaintiff expressly does NOT allege an independent duty to recall. To the contrary, Plaintiff simply lists recall as a possible action that, alone or in combination with other actions, may have satisfied Defendants' duty of reasonable care.

16

    c.    Providing specifications regarding the use of asbestos-containing products in and on the premises of Southern Bell, with the intention of Southern Bell relying upon said specifications, and not providing appropriate warning;

    d.    Allowing asbestos-containing products to be used on Premises which it owned, leased or occupied without adequate controls, protections or warnings;

    e.    failing to warn individuals who came onto the Premises it owned, leased or occupied and for which it provided specifications, described above, of the latent hazards of the asbestos-containing products in and on those premises to which the individuals would be exposed during their work;

    f.    failing to provide to KRIS PENNY, his employers or the public the information known to it regarding the contamination of its manholes and handholes with asbestos, the release of asbestos from pulling cables into and out of asbestos cement conduit, the presence of asbestos in the cement conduit and the deadly hazard posed by that asbestos, despite having knowledge of such exposures and danger.

45.    Plaintiff's illness is a direct and proximate result of the negligent conduct of the Defendants and Plaintiff has suffered the damages as described.

WHEREFORE, Plaintiff KRIS PENNY demands compensatory damages excess of Fifteen Thousand Dollars ($15,000) and trial by jury of all issues so triable in this cause.

## COUNT II - STRICT LIABILITY
(All Defendants)

46.    Plaintiff incorporates into Count II all relevant allegations contained in this Complaint as if separately stated in Count II.

47.    Defendants' Asbestos Products were defective and unreasonably dangerous at the time they were manufactured and distributed and at the time Plaintiff was exposed to them.

17

48.     At the time of Plaintiff's exposure, the Defendants' Asbestos Products were being used in the manner intended by the defendants or anticipated by them. Defendants' Asbestos Products were used without substantial unanticipated change affecting their condition.

49.     Defendants' Asbestos Products were defectively designed in a manner that made them unreasonably dangerous and unfit for their intended use. Specifically, Defendants' products contained asbestos or were designed to be used with materials known to be asbestos-containing or forseeably going to be used with asbestos containing products. Asbestos was and is known to be harmful to the human body and to cause, among other things, terminal diseases at levels of exposure invisible to the naked eye. Defendants' Asbestos Products were defectively designed because they released asbestos into the environment of the Plaintiff during ordinary and anticipated handling, use and maintenance.

50.     At the time of Plaintiff's exposure, Defendants' Asbestos Products were unreasonably dangerous because of their design, as the products failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the Defendants.

51.     At the time of Plaintiff's exposure, Defendants' Asbestos Products were unreasonably dangerous because of their design, as the risk of danger in the design outweighed the benefits obtained with the use of the product and reasonably available alternatives to asbestos were available, either immediately or through use of reasonable efforts.

52.     At the time of Plaintiff's exposure, the Defendants' Asbestos Products were defective in that they did not contain a sufficient warning to advise Plaintiff that the products could be extremely harmful to his health due to the asbestos released from them during use and handling.

18

53.     The lack of a sufficient warning on Defendants' asbestos products rendered them unreasonably dangerous and unfit for their intended use.

54.     Plaintiff's illness was a direct and proximate result of the products' defects and Plaintiff has suffered the damages described.

WHEREFORE, Plaintiff KRIS PENNY demands compensatory damages excess of Fifteen Thousand Dollars ($15,000) and trial by jury of all issues so triable in this cause.

## COUNT III – FAILURE TO USE REASONABLE CARE
### (Only Defendants That Assert They Are Not A Manufacturer Under Fla. Stat. 774.208)

55.     Plaintiff incorporates into Count III all relevant allegations in this Complaint as if separately stated in Count III.

56.     The actions of the Defendants described in Counts I and II constitute a failure to exercise reasonable care towards the Plaintiff.

57.     In addition to failing to exercise reasonable care to adequately warn the Plaintiff, as described in Counts I &II, Defendant AT&T CORPORATION failed to use reasonable care in designing, specifying, supplying, wholesaling and/or selling Asbestos Products that posed an unreasonable risk of harm to Plaintiff and others who worked with and around those products.

58.     Defendants knew or should have known that asbestos is a deadly poison and carcinogen and that levels of asbestos-containing dust that are invisible to the naked eye can and do cause terminal illnesses.

59.     Defendants knew or should have known that any Asbestos Product must be tested to determine whether the product releases asbestos into the air during handling, use or maintenance. Despite this knowledge, Defendants sold Asbestos Products to which the Plaintiff

was exposed without first either testing the products or affirmatively determining that they had been reliably tested and did not release asbestos.

60.     Defendants further failed to use reasonable care in selling Asbestos Products to which the Plaintiff was exposed because Defendants knew or should have known that handling materials that contain asbestos, therefore, requires the most stringent of precautions. Nevertheless, Defendants sold their asbestos-containing products to the Plaintiff and others without ascertaining whether they were sufficiently knowledgeable, skilled and equipped to safely handle the products.

61.     Defendants failed to exercise reasonable care towards Plaintiff when they allowed their Asbestos Products to be sold at their premises without adequate controls, warnings or protections.

62.     Plaintiff's illness was a direct and proximate result of the products' defects and Plaintiff has suffered the damages described.

WHEREFORE, Plaintiff KRIS PENNY demands compensatory damages and trial by jury of all issues so triable in this cause.

## COUNT IV - LOSS OF CONSORTIUM

63.     The allegations contained in paragraphs 1 through 39 are re-alleged.

64.     As a direct and proximate result of the foregoing allegations, Plaintiff LORI MCNAMARRA has suffered and will continue to suffer the loss of Plaintiff KRIS PENNY' services, consortium, and the care and comfort of his society because of his injuries and disabilities, and she has incurred expenses for medical attention rendered to her husband.

20

WHEREFORE, Plaintiff LORI MCNAMARRA demands compensatory damages in excess of Fifteen Thousand Dollars ($15,000) and a trial by jury of the issues so triable in this cause.

### DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury on all issues.

Respectfully submitted,

/s/ Jonathan Ruckdeschel
JONATHAN RUCKDESCHEL
Florida Bar No.: 12875
The Ruckdeschel Law Firm, LLC
8357 Main Street
Ellicott City, Maryland 21043
T. 410.750.7825
F. 443.583.0430
ruck@rucklawfirm.com

ATTORNEYS FOR PLAINTIFFS

DATED: November 14, 2014

21