**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

---

**IN RE:** ASBESTOS PRODUCTS
LIABILITY LITIGATION (NO. VI)

MDL No. 875

---

This Filing Relates To The Following Cases Only:
*Hoffeditz, et al. v. AM General, LLC et al.,*
    E.D. Pennsylvania C.A. No.: 09-cv-70103
    D. New Jersey C.A. No.: 09-cv-00257

---

**BRIEF IN SUPPORT OF DEFENDANT, ARVINMERITOR, INC.'S MOTION TO VACATE CONDITIONAL REMAND ORDER**

---

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

ARGUMENT.......................................................................................................... 4

    I.    Rockwell Will Suffer Undue Prejudice By A Late Remand Of The Punitive
        Damages Claim ................................................................................... 6

  II. Plaintiffs Have Not Established A Viable Claim For Punitive Damages. ................. 7

      A.  Punitive Damages Are Barred Under Applicable Michigan Law........................ 8

      B.   Plaintiffs' "Evidence" Does Not Satisfy The Standard For Establishing Punitive
      Damages Under Pennsylvania Law, Even If It Applies. ............................. 13

CONCLUSION...................................................................................................... 16

## TABLE OF AUTHORITIES

**CASES**

Almog v. Israel Travel Advisory Service, Inc., 689 A.2d 158 (N.J. Super. App. Div. 1997) ................................................................................................................... 12

Ass'n Research & Devel. Corp. v. CNA Fin. Corp., 333 N.W.2d 206 (Mich. Ct.App. 1983) ...................................................................................................................... 13

Campbell v. Fawber, 975 F. Supp. 2d 485 (E.D. Pa. 2013) ............................................... 13

Casey v. Auto Owners Ins. Co., 729 N.W.2d 277 (Mich. Ct. App. 2006) ...................... 13

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) ...................... 3

Dery v. Ortho-McNeil Pharm., Inc., No. L-5743-07, 2010 N.J. Super. Unpub. LEXIS 3160 (N.J. Super. Law Div. Dec. 8, 2010) ........................................................................ 12

Dunn v. Hovic, 1 F.3d 1371, 1374 (3rd. Cir. 1993) ........................................................... 13

Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) ...................... 8

Feld v. Merriam, 506 Pa. 383 (1984) ................................................................................. 13

Fu v. Fu, 733 A.2d 1133 (1999) ................................................................................... 9, 11

Harrell v. Fibreboard Corp., 1989 U.S. Dist. LEXIS 14196 (Eastern Dist. PA 1989) ....... 8

Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766 (Pa. 2005) ............................... 13, 14

In re Asbestos Products Liability Litig., No. 09-70626, 2010 WL 4158521 (E.D. Pa. Apr. 30, 2010) ........................................................................................................................ 8, 9

In re Collins, 233 F.3d 809 (3d Cir. 2000) ............................................................... passim

In re Roberts, 178 F.3d 181 (3d Cir. 1999)) ........................................................................ 4

In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563 (S.D. Tex. 2005) ......................... 1, 4

Irby v. Novartis Pharms. Corp., No. L-7670-07MT, 2011 N.J. Super. Unpub. LEXIS 3188 (N.J. Super. Law Div. Nov. 18, 2011) .................................................................... 12

Ivins v. Celotex Corp., 115 F.R.D. 159, 160-161 (Eastern Dist. PA. 1986) .................... 13

Ivy v. Ford Motor Co., 646 F.3d 769 (11th Cir. 2011) ...................................................... 14

Kewin v. Mass. Mutual Life Ins. Co., 295 N.W.2d 50 (Mich. 1980) .......................... 8, 12

Martin v. Johns-Manville Corp., 494 A.2d 1088 (1984) .................................................. 13

McAuley v. Gen. Motors Corp., 578 N.W.2d 282 (Mich. 1998) ..................................... 12

Meng v. Novartis Pharmaceuticals Corp., No. L-7670-07MT, 2009 N.J. Super. Unpub.
    LEXIS 3249 (N.J. Super. Law Div. Nov. 23, 2009)........................................ 10, 11, 12

P.V. ex. rel. T.V. v. Camp Jaycee, 197 N.J. 132 (N.J. 2008) .......................... 9, 10, 11, 12

Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005)............................................. 14

Rafferty v. Markovitz, 602 N.W.2d 367, 370-71 (Mich. 1999) ....................................... 12

Terry v. McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Practices &
    Prods. Liab. Litig.), 2015 U.S. Dist. LEXIS 66698 (Eastern District of PA 2015)........ 8

Veazey v. Doremus, 510 A.2d 1187 (N.J. 1986)................................................................. 9

**STATUTES**
28 U.S.C. § 1407(a) ...................................................................................................... 1, 5

**OTHER AUTHORITIES**
Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation at 32
    (March 1991) ............................................................................................................ 1, 5

**TREATISES**
Restatement (Second) of Conflicts of Laws § 145 comment e................................. 10, 11

Restatement (Second) of Torts § 908(2) (1977) .............................................................. 13

## PRELIMINARY STATEMENT

"The power to remand a case to the transferor court lies solely with the [Panel]." In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563, 667 (S.D. Tex. 2005). The MDL statute also gives the Panel express authority to "separate any claim . . . and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. § 1407(a).

As to the entire MDL-875, this Panel exercised its authority and separated punitive damages claims from compensatory damages, because "[i]t is responsible public policy to give priority to compensatory claims over exemplary punitive damage windfalls." In re Collins, 233 F.3d 809, 812 (3d Cir. 2000). Further, "to the extent that some states do not permit punitive damages, such awards can be viewed as a malapportionment of a limited fund." Id. (citing Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation at 32 (March 1991)).

ArvinMeritor, Inc. ("Rockwell") will suffer undue prejudice, if punitive damages are remanded now.[1] Most significantly, Rockwell will not have an opportunity to move for summary judgment on this issue. Given the history of the MDL litigation and the longstanding and well-established practice of severing punitive damages claims, this Panel should not remand punitive damages claim on the eve of trial, as it would deprive Rockwell of the opportunity to properly mount a defense to those claims at trial. Additionally, remand of Plaintiffs' punitive damages claim in this case is not necessary, because Plaintiffs cannot establish a viable claim for punitive damages against Rockwell. Finally, remand of Plaintiffs' punitive damages claim is contrary to well-establish public

---

[1] ArvinMeritor, Inc. is the successor-in-interest to the former automotive products segment of Rockwell International Corporation.

policy. In re Collins, 233 F.3d 809, 810 (3d Cir. 2000). Accordingly, the Panel should vacate its September 10, 2018 Conditional Remand Order.

## BACKGROUND

On November 5, 2008, Plaintiffs, Gerald and Judith Hoffeditz, filed this action sounding in strict liability, breach of warranties, both express and implied, and negligence, with a derivative claim of loss of consortium, in the Superior Court of the State of New Jersey against eleven (11) defendants, including Rockwell. In early January 2009, Mr. Hoffeditz was deposed. His alleged exposures to asbestos took place in Chambersburg, Pennsylvania at the Letterkenny Army Depot. After Mr. Hoffeditz's deposition, defendants Cummins, Inc. ("Cummins") and AM General, LLC ("AM General") filed notices of removal in the United States District Court for the District of New Jersey on January 16, 2009, and January 20, 2009, respectively. Cummins based removal on federal question jurisdiction, arguing that Mr. Hoffeditz's employer, Letterkenny Army Depot, was a federal enclave. AM General based removal on federal question jurisdiction as well, arguing federal officer removal. On March 4, 2009, the Judicial Panel of the Multidistrict Litigation ("Panel") entered an order conditionally transferring the action and on April 8, 2009 transferred this matter to Asbestos MDL-875 ("MDL") in the Eastern District of Pennsylvania before the Honorable Eduardo C. Robreno. See Court's Order dated April 8, 2009, attached hereto as Exhibit A.

After discovery in the MDL, Rockwell filed a Motion for Summary Judgment. On July 29, 2011, Judge Robreno denied Rockwell's Motion. See Court's Order dated July 29, 2011, attached hereto as Exhibit B. On August 10, 2011, MDL suggested remand to United States District Court of New Jersey for trial, except for Plaintiffs' punitive

damages claims. See Court's Order dated August 10, 2011, attached hereto as Exhibit C. This Panel ordered the remand of Plaintiffs' claims, except for punitive damages. See Court's Order dated August 24, 2011, attached hereto as Exhibit D. Plaintiffs' punitive damages claims remain in the MDL. Id.

On February 3, 2012, Defendants filed a Motion for Summary Judgment for lack of medical causation. On December 11, 2013 and December 13, 2013, the District Court of New Jersey held a F.R.E. 104 according to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). On August 4, 2017, the District Court of New Jersey denied Defendants' Motion for Summary Judgment for lack of medical causation. See Court's Opinion dated August 4, 2017, attached hereto as Exhibit E. On May 3, 2018, the District Court of New Jersey held a status conference and issued a scheduling order of the same date. See Court's Order dated May 3, 2018, attached hereto as Exhibit F. The District Court of New Jersey ordered a trial in this matter for January 9, 2019 with Motions in Limine filed by October 19, 2018. See id.

Plaintiffs' punitive damages claim has been severed and deferred for over seven (7) years. On August 31, 2018, the MDL suggested the remand of the Plaintiffs' punitive damages claim to the District Court of New Jersey. See Court's Suggestion dated August 31, 2018, attached hereto as Exhibit G. On September 10, 2018, the Judicial Panel on Multidistrict Litigation entered a Conditional Remand Order remanding Plaintiffs' claims for punitive or exemplary damages to the respective transferor court. See Conditional Remand Order (Sept. 10, 2018) [ECF No. 10126]. On September 17, 2018, Rockwell filed a Notice of Opposition to the Conditional Remand Order. [ECF No. 10130]. This Motion to Vacate the Conditional Remand Order followed.

## ARGUMENT

This Panel should decline to remand Plaintiffs' punitive damages claim to the District of New Jersey at this time. This Panel alone has the power to remand a case. In re Silica Prods. Liab. Litig., 398 F. Supp. 2d 563, 667 (S.D. Tex. 2005). The MDL statute also gives the Panel express authority to "separate any claim . . . and remand any of such claims before the remainder of the action is remanded." 28 U.S.C. § 1407(a).

For asbestos cases in MDL-875, over the past two (2) decades, the MDL has consistently severed punitive damages from cases, retained jurisdiction over punitive damages claims, but remanded compensatory claims to trial. In re Collins, 233 F.3d 809, 810 (3d Cir. 2000). The Court has previously determined that the issue of punitive damages must be resolved at a future date with regard to the entire MDL-875 action and, therefore, all claims for punitive or exemplary damages are to be severed from the case and retained by the Court within its jurisdiction over MDL-875 in the Eastern District of Pennsylvania. Id.; see also In re Roberts, 178 F.3d 181 (3d Cir. 1999)).

In Collins, the Court allowed the MDL to sever and retain the punitive damages claim and found compelling the Panel's interpretation of the public policy underlying the practice of severing punitive damages claims. The Third Circuit agreed with the MDL in prior cases that its objectives in resolving the thousands of cases assigned to it are "that the sick and dying, their widows and survivors should have their claims addressed first." Id. The Third Circuit stated that the Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation accurately appraised the problem when it said:

> Although there may be grounds to support an award, multiple judgments for punitive damages in the mass tort context against a finite number of defendants with limited assets threaten fair compensation to pending claimants and future claimants who await their recovery, and threaten the economic viability of the defendants. To the extent that some states do not [sic] permit punitive damages, such awards can be viewed as a malapportionment of a limited fund. Meritorious claims may go uncompensated while earlier claimants enjoy a windfall unrelated to their actual damages. [Id. (citing Report of the Judicial Conference Ad Hoc Committee on Asbestos Litigation at 32 (March 1991)).]

The Third Circuit found that "punitive damages are a windfall to the recipients over and above compensatory damages to which they are entitled." Id. It acknowledged that the resources available to persons injured by asbestos are steadily being depleted and that the continuing filings of bankruptcy by asbestos defendants disclose that the process is accelerating. Id. It concluded that it is responsible public policy to give priority to compensatory claims over exemplary punitive damages windfalls and stated that this prudent conservation more than vindicates the Panel's decision to withhold punitive damages claims on remand. Id. It admonished other courts stating that it "is discouraging that while the Panel and transferee court follow this enlightened practice, some state courts allow punitive damages in asbestos cases. The continued hemorrhaging of available funds deprives current and future victims of rightful compensation." Id.

MDL proceedings are designed to promote "the just and efficient conduct" of the case, 28 U.S.C. § 1407(a). Remanding a punitive damages claim at the eleventh hour– shortly before trial, where no discovery has taken place and where the defendants cannot obtain summary adjudication on those claims would also  run counter to the aim of the MDL statute and would not promote "just and efficient conduct." Further, the Conditional Remand Order should be vacated, because Plaintiffs have failed to even establish a viable

claim for punitive damages, because punitive damages are not available and Plaintiffs have no evidence of "evil motive." Therefore, it is not necessary to remand the same. Further, a remand would be unduly prejudicial and against public policy outlined in In re Collins. See 233 F.3d 809, 810 (3d Cir. 2000).

### I.    Rockwell Will Suffer Undue Prejudice By A Late Remand Of The Punitive Damages Claim

Remanding the punitive damages claim to the District of New Jersey at this point would unfairly prejudice Rockwell. On remand of this matter for trial to the District Court of New Jersey in 2011, punitive damages were severed and remained in the MDL. Given the history of the MDL litigation and the longstanding and well-established practice of severing punitive damages claims, Rockwell could not expect that Plaintiffs' punitive damages claim would be at issue in the MDL. The parties did not conduct discovery related to this claim. Rockwell did not retain experts on the issue of punitive damages. Likewise, Rockwell did not separately move for summary judgment on the punitive damages claim in the MDL, because it understood that the punitive damages claim was deferred.

Similarly, since the 2011 remand, the parties and the District Court of New Jersey did not consider Plaintiffs' punitive damages claim. Rockwell did not file a Motion for Summary Judgment on the issue of punitive damages in the District Court. Rockwell could not file such a Motion for Summary Judgment in the District Court, because the District Court does not have jurisdiction over those punitive damages claims. As described above, this case – with the exception of the severed punitive damages claim – is set to go to trial in the District of New Jersey on January 9, 2019. Motions *in limine* will be filed on October 19, 2018. A remand will not provide Rockwell with sufficient

time to file a Motion for Summary Judgment on Plaintiffs' punitive damages claim, or even a Motion *in limine*. Therefore, remanding the punitive damages claim now will deprive Rockwell of any opportunity to seek summary adjudication of that claim. Not permitting a party the opportunity to seek summary adjudication underscores any ability for the Court to rule on issues that as a matter of law should be dismissed.

Further, the deadline for service of rebuttal expert reports passed on July 16, 2018, and expert discovery ended on September 7, 2018. Based on the trial schedule, Rockwell would be barred from serving expert reports and conducting expert discovery on the issue of punitive damages. Further, because the deadline for serving expert reports has passed and expert discovery closed, Rockwell would not have an adequate opportunity to prepare a defense to the punitive damages claim before trial. This would unfairly prejudice Rockwell and limit its ability to present applicable and necessary defenses at the time of trial.

Based on the Court's actions remanding the punitive damages claim to the District Court, Rockwell has not been provided an opportunity to defend its interest against Plaintiffs' claim in violation of its due process rights. Accordingly, the Panel should vacate its September 10, 2018 Conditional Remand Order.

## II. Plaintiffs Have Not Established A Viable Claim For Punitive Damages.

The Panel should vacate the conditional remand order, because Plaintiffs have not established a viable claim for punitive damages. Plaintiffs seek punitive damages for Rockwell's allegedly egregious and outrageous behavior. This claim fails as a matter of law for two reasons. First, Michigan law applies to the issue and bars Plaintiffs' claim for punitive damages. Kewin v. Mass. Mutual Life Ins. Co., 295 N.W.2d 50, 55 (Mich.

1980). Further, even if Pennsylvania law applied, Plaintiffs' claim for punitive damages fails as Plaintiffs' proofs to establish a factual basis for punitive damages were not produced in the context of this matter, are distinguishable from the instant matter and do not provide a basis for punitive damages. Moreover, during fact discovery, which ended in 2011, Plaintiffs did not provide any documents related to punitive damages. Any of Plaintiffs' purported proofs should not be considered by the Panel.

### A. Punitive Damages Are Barred Under Applicable Michigan Law.

The Panel should not remand Plaintiffs' punitive damages claim, because punitive damages are barred under the applicable law. The Eastern District of Pennsylvania has found that in diversity cases state law provides the substantive law on punitive damages. Harrell v. Fibreboard Corp., 1989 U.S. Dist. LEXIS 14196, *37 (Eastern Dist. PA 1989); citing Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938). In the context of an MDL, courts routinely apply the choice-of-law rules of the court from which the case was transferred. Terry v. McNeil-PPC, Inc. (In re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.), 2015 U.S. Dist. LEXIS 66698, *6 (Eastern District of PA 2015).

Because this case was transferred from the District of New Jersey, New Jersey choice of law rules apply. See In re Asbestos Products Liability Litig., No. 09-70626, 2010 WL 4158521, at *1 n.1 (E.D. Pa. Apr. 30, 2010). Therefore, in the present case, the choice of law rules of New Jersey will apply because the case was originally filed in New Jersey. Under New Jersey law, a choice of law analysis is performed on an issue-by-issue basis, and for the reasons below, Michigan law applies to (and bars) Plaintiffs' claim for punitive damages.

New Jersey "employ[s] a flexible 'governmental-interest' analysis to determine which state has the greatest interest in governing the specific issue that arises in the underlying litigation. New Jersey has adopted Section 145 of the Restatement (Second) of Conflict of Laws as the "method by which a court ought to determine which state has the most significant relationship to the issue under consideration." Id. at 1213. "The second prong of the governmental-interest analysis requires the Court to determine which state has the most significant relationship to the occurrence and the parties with respect to the issue … In doing so, we must 'identify the governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties.' The relevant factors set forth in sections 6, 145, and 174 of the Restatement (Second) of Conflict of Laws (1971) guide our evaluation of the governmental interests at stake." Fu v. Fu, 733 A.2d 1133, 1138-39 (1999) (quoting Veazey v. Doremus, 510 A.2d 1187, 1189 (N.J. 1986)).

In P.V. ex. rel. T.V. v. Camp Jaycee, 197 N.J. 132 (N.J. 2008), the New Jersey Court adopted the significant relationship test enunciated in the Restatement (Second) of Conflict of Laws (1971). See P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132 (2008). After analyzing the conflict of law concepts applied previously by New Jersey courts, the Court adopted a new framework for analyzing choice-of-law questions. The New Jersey Supreme Court noted that under New Jersey's form of the governmental interest test, "the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues." Id. at 460. Under the "significant relationship test," there is a presumption that the law of the place of injury governs, unless another state has a more significant relationship to the issue at bar. Absent a conflict, there is no

choice-of-law issue to be resolved.  However, if there is a conflict, the first contact to examine is the place where the injury occurred, as the law of the place where the injury occurred is presumed to apply. Id.  However, "the presumption that the law of the place of injury governs may be overcome if one state has a more significant interest than another state." Meng v. Novartis Pharmaceuticals Corp., No. L-7670-07MT, 2009 N.J. Super. Unpub. LEXIS 3249, at *6 (N.J. Super. Law Div. Nov. 23, 2009).  The other contacts under inquiry beyond the place of injury include the domicile of the parties involved and the place where the relationship is centered.  "Courts should focus not only on an entity's place of incorporation but also on its principal place of business. Indeed, in balancing those two epicenters, [a]t least with respect to most issues, a corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter place." P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 146 (2008).

For punitive damages claims, the state where the defendant's conduct allegedly occurred is generally the place with the most significant interest in the claim. The Restatement provides that "when the tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often the state where the plaintiff resides, may have the greater interest in the matter." Restatement (Second) of Conflicts of Laws § 145 comment e. By contrast, for tort rules aimed primarily at punishing the defendant or deterring conduct, the state with the most significant relationship is the state where defendant's alleged misconduct occurred. See Restatement (Second) of Conflicts of Laws § 146 comment. e.

Following the analysis of the Supreme Court of New Jersey in <u>P.V. ex rel. T.V. v.</u> <u>Camp Jaycee</u>, the Appellate Court in <u>Meng</u> stated that "the place of injury becomes less important when it is simply fortuitous." <u>Meng v. Novartis Pharmaceuticals Corp.</u>, No. L-7670-07MT, 2009 N.J. Super. Unpub. LEXIS 3249, at *9. (<u>quoting</u> <u>Fu v. Fu</u>, 160 N.J. 108, 125-26 (1999)). "The place of the injury is fortuitous when it bears little relation to the occurrence and the parties with respect to the particular issue." <u>Id</u>; <u>quoting</u> <u>Restatement (Second) of Conflicts of Laws § 145 comment e</u>. The court found that, in a mass tort action, while the plaintiffs had been caused harm in multiple states, the defendant was domiciled in New Jersey so the location of the harm bore little relation to the defendant's alleged punitive conduct toward the parties. <u>Id.</u> at *10. It then examined the location of the alleged conduct causing the injury that warranted punitive damages, such as the marketing, distributing, and selling of the product, and communication with federal regulators, which occurred at the defendant's headquarters in New Jersey. <u>Id.</u> Finally, in considering the significant relationship test, the court evaluated the following principles to determine which law to apply: "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." <u>Id.</u> at *13.

In this analysis, the court considered that the imposition of punitive damages, generally, is not intended to address the expectations of a plaintiff because a plaintiff's interest is addressed through the award of compensatory damages. <u>Id.</u> at *14. It reasoned that a defendant "should reasonably expect to be governed by the punitive damages law of the state in which it maintains its principal place of business." <u>Id.</u> at *15.  Other New Jersey opinions have applied the same analysis. <u>See</u> <u>Irby v. Novartis Pharms. Corp.</u>, No.

L-7670-07MT, 2011 N.J. Super. Unpub. LEXIS 3188 (N.J. Super. Law Div. Nov. 18, 2011) (applying analysis in same mass tort as <u>Meng</u>); <u>Dery v. Ortho-McNeil Pharm., Inc.</u>, No. L-5743-07, 2010 N.J. Super. Unpub. LEXIS 3160 (N.J. Super. Law Div. Dec. 8, 2010). This is also consistent with the decision of the Appellate Division in <u>Almog v. Israel Travel Advisory Service, Inc.</u>, 689 A.2d 158 (N.J. Super. App. Div. 1997).

Unlike in <u>Meng</u>, New Jersey does not have a significant interest in this case as Rockwell is neither headquartered nor incorporated in New Jersey. Michigan law applies to the issue due to its significant relationship with Rockwell. Plaintiffs' punitive damages claim implicates the interests of Michigan as this is the state in which Rockwell's principal place of business was located during the time of Mr. Hoffeditz's alleged exposures. Like in <u>P.V. ex rel. T.V. v. Camp Jaycee</u>, Rockwell's principal place of business was where Rockwell should have reasonably expected to be governed by the punitive damages law. Rockwell not having been incorporated or conducting its primarily place of business in New Jersey, would never have anticipated being governed by New Jersey law with relation to punitive damages. All of the alleged proofs from Plaintiff relate back to conduct that occurred in the state of Michigan. There are no allegations of conduct by Rockwell that occurred in New Jersey or any other jurisdiction outside of Michigan. Therefore, Michigan has the most significant relationship to the issue of punitive damages.

Michigan law categorically bars punitive damages in product liability cases. <u>See</u> <u>Kewin v. Mass. Mutual Life Ins. Co.</u>, 295 N.W.2d 50, 55 (Mich. 1980); <u>McAuley v. Gen. Motors Corp.</u>, 578 N.W.2d 282, 285 (Mich. 1998), <u>overruled in part on other grounds by</u> <u>Rafferty v. Markovitz</u>, 602 N.W.2d 367, 370-71 (Mich. 1999); <u>Casey v. Auto Owners</u>

Ins. Co., 729 N.W.2d 277, 286 (Mich. Ct. App. 2006); Ass'n Research & Devel. Corp. v. CNA Fin. Corp., 333 N.W.2d 206, 210-11 (Mich. Ct.App. 1983). That policy decision reflects Michigan's interest in protecting defendants headquartered in the state from excessive financial liability. See Campbell v. Fawber, 975 F. Supp. 2d 485 (E.D. Pa. 2013).

### B. Plaintiffs' "Evidence" Does Not Satisfy The Standard For Establishing Punitive Damages Under Pennsylvania Law, Even If It Applies.

Plaintiffs will likely argue that Pennsylvania law applies. In Pennsylvania, punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Ivins v. Celotex Corp., 115 F.R.D. 159, 160-161 (Eastern Dist. PA. 1986) (citing Restatement (Second) of Torts § 908(2) (1977)). "Such conduct must be shown by clear and convincing evidence." Dunn v. Hovic, 1 F.3d 1371, 1374 (3rd. Cir. 1993). Punitive damages must be based on conduct which is "malicious," "wanton," "reckless," "willful," or "oppressive." Feld v. Merriam, 506 Pa. 383 (1984).   They "may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either 'the defendant's evil motive or his reckless indifference to the rights of others.'" Id. (quoting Martin v. Johns-Manville Corp., 494 A.2d 1088 (1984)).

Punitive damages "are proper only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005).  "A defendant acts recklessly when 'his conduct creates an unreasonable risk of physical harm to another [and] such risk is substantially greater than that which is necessary to make his conduct negligent." Phillips

v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005) (quoting Hutchison, 870 A.2d at 771) (alteration in original). "Thus, in Pennsylvania, a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Hutchison, 870 A.2d at 772. Consequently, actual knowledge of the risk is required.

In the case at bar, Plaintiffs have no proof of any outrageous and reckless conduct on the part of Rockwell to warrant an award of punitive damages, including expert proofs on the same. There is no evidence in the record which would satisfy the standards for punitive damages. Safety measures or air sampling for its own employees does not establish that Rockwell acted with an "evil motive." In addition, "the wanton and willful standard is not satisfied where there is a bona fide dispute as to the propriety of the defendant's actions." Ivy v. Ford Motor Co., 646 F.3d 769, 777 (11th Cir. 2011). Where experts disagree about whether a product posed a risk, a plaintiff cannot show that the defendant acted wantonly or willfully. Id. Here, Rockwell retained Brent L. Finley, Ph.D., DABT and James McCluskey, M.D., Ph.D., MPH to discuss medical causation. Both opine that it is well established in the epidemiological literature that garage mechanics are not at an increased risk in developing asbestos-related diseases as a result of working with the same. See Relevant Portions of Report of Finley attached hereto as Exhibit H, p. 51-52; see Relevant Portions of Report of McCluskey, attached hereto as Exhibit I, p. 16-18. This is due to the fact that only chrysotile asbestos was used in the manufacture of automotive friction products and the chrysotile fibers in brake and clutch wear debris were very short in length and present at very low concentrations. See Exhibit

H, Report of Finley, p. 36-37; see Exhibit I, Report of McCluskey, p. 18-20.   Further, the

friction products are encapsulated, locked-in, and do not become airborne. See Exhibit H,

Report of Finley, p. 37-38; see Exhibit I, Report of McCluskey, p. 17. Chrysotile asbestos

exposure associated with automotive work with friction products was very low. Dr.

Finley and Dr. McCluskey conclude that Mr. Hoffeditz's work with or around asbestos-

containing friction products did not contribute to the development of his disease.

Accordingly, there is substantial evidence that encapsulated chrysotile asbestos-

containing products do not cause mesothelioma at all, much less that Rockwell acted with

an evil motive to justify the imposition of punitive damages.

   As noted above, Rockwell will suffer undue prejudice, if punitive damages are

remanded now. Most significantly, Rockwell will not have the opportunity to properly

mount a defense to those claims at trial. Further, remand is not necessary, because

Plaintiffs have not established a viable claim for punitive damages against Rockwell.

Finally, remand of Plaintiffs' punitive damages claim is contrary to well-establish public

policy. In re Collins, 233 F.3d 809, 810 (3d Cir. 2000).


*[Remainder of page left intentionally blank]*

## CONCLUSION

For the foregoing reasons, the Panel should vacate its September 10, 2018 Conditional Remand Order [ECF No. 10126].

Respectfully submitted,

**REILLY, MCDEVITT & HENRICH, P.C**

BY:      /s/  Brandy L. Harris
        Brandy L. Harris, Esquire
        REILLY, MCDEVITT & HENRICH, P.C.
        3 Executive Campus, Suite 310
        Cherry Hill, NJ 08002

        Counsel for Defendant,
        Arvin Meritor, Inc. as successor-in-interest to Rockwell International Automotive