IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | : | MDL DOCKET NO. 875 |
| LIABILITY LITIGATION (No. VI) | : | |

---

| | | |
|---|---|---|
| | : | E.D.Pa Civil Action No. |
| | : | 09-cv-70103 |
| JUDITH L. HOFFEDITZ, Individually and | : | |
| as Executor and Executor ad Prosequendem | : | D.N.J. Civil Action No: |
| of the Estate of GERALD HOFFEDITZ | : | 2:09-cv-00257-DMC-JAD |
| | : | |
| vs. | : | |
| | : | |
| | : | Transferor District Court: |
| AM GENERAL, LLC, Individually and as | : | District of New Jersey |
| successor-in-interest to AM General, et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS ARVINMERITOR, INC.'S
AND FORD MOTOR COMPANY'S MOTIONS TO VACATE
CONDITIONAL REMAND ORDER**

**INTRODUCTION**

Plaintiff submits this brief in opposition to the Motions to Vacate the Panel's Conditional

Remand Order entered on September 10, 2018 of Defendants Ford Motor Company ("Ford") and

ArvinMeritor, Inc. ("Rockwell").  Remand of Plaintiff's punitive damages claims against these

two Defendants, in accordance with Judge Robreno's Suggestion of Remand, is appropriate as

the Transferor/Trial Court is in the best position to adjudicate Plaintiff's claims and because

Plaintiff has provided sufficient evidence of her punitive damages claims against Rockwell.[1]

---

[1] Defendant Ford only moves on the grounds that Remand will be prejudicial to it because it
argues it will not have an opportunity to move for summary judgment on Plaintiff's punitive
damages claims.  Rockwell raises the same argument and additionally argues about the merits of
Plaintiff's punitive damages claims against it.  As such, in this brief, Plaintiff only addresses the
merits of her punitive damages claims with respect to Rockwell.
{00416203.DOCX}

## ARGUMENT

**I.      Defendants Will Not Suffer Prejudice from the Remand of Plaintiff's Punitive Damages Claims to the Transferor/Trial Court and The Transferor/Trial Court is Best Placed to Adjudicate the Merits of Plaintiff's Punitive Damages Claims Against Rockwell**

Judge Robreno suggested remand of Plaintiff's punitive damages claims in an Order dated August 31, 2018. *See* Order, 8/31/18, (*See* Dkt. No. 175 in Case No. 2:09-cv-70103). The JPML Panel has consistently given "great weight" to the transferee judge's determination that remand is appropriate. *In re Patenaude*, 210 F.3d 135, 141 (3rd Cir. 2000) quoting *In re King Resources Co. Sec. Litig.*, 458 F. Supp. 220, 222 (JPML 1978). The Panel should give Judge Robreno's Suggestion of Remand here great weight and follow the court's suggestion to remand Plaintiff's punitive damages claims.

While the MDL was active, it declined to address the merits of severed punitive damages claims and, specifically stated that such claims would retained and "resolved at a future date." *See Pavlick v. Advance Stores Co.*, 2013 U.S. Dist. LEXIS 40564, *5 (EDPA Feb. 19, 2013), *Ferguson v. Lorillard Tobacco Co.*, 2011 U.S. Dist. LEXIS 121976, *4 (EDPA Mar. 2, 2011). Recently, the determination was made by the MDL that the time is appropriate to address Plaintiff's punitive damages claims in this matter by remanding them to the Transferor/Trial Court for adjudication.  Judge Robreno explained the reasoning behind this decision:

> In that the MDL-875 is largely resolved and this case is the last transferred case left in the MDL with a severed punitive damage claim, this Court sees no need to retain the claim. The purpose of retaining the punitive damages claim was to facilitate a global resolution of their merits. With only one severed punitive damage claim remaining, the Court concludes that the public policies for severing and retaining the claims discussed in *In re Collins*, 233 F.3d 809 (3d Cir. 2000), no longer apply. Specifically, there is no longer a danger that 'multiple judgments for punitive damages in the mass tort context against a finite number of

{00416203.DOCX}

defendants with limited assets [will] threaten fair compensation to pending claimants and future claimants who await their recovery, and [will] threaten the economic viability of the defendants.'

*See* Order, 8/31/18, (*See* Dkt. No. 175 in Case No. 2:09-cv-70103) at 1 n.2 (citations omitted). Given that the justifications for severing MDL plaintiffs' punitive damages claims no longer exists and that the MDL has determined that remand of Plaintiff's claims in this matter is appropriate, the Panel should follow the MDL's suggestion. In fact, given that Plaintiff's punitive damages claims are the only remaining punitive damages claim in the MDL, if the claims are not remanded, it is questionable whether any proceedings in the MDL on Plaintiff's punitive damages claims would still be "coordinated or consolidated" as required by 28 U.S.C. § 1407(a). Thus, these claims should be remanded.

Defendants' claims that they will be prejudiced by remand are unavailing. In suggesting remand of Plaintiff's punitive damages claim, Judge Robreno took note of the case being "largely ready for trial in the transferor court," as well as the January 9, 2019 trial date. *See* Order, 8/31/18, (*See* Dkt. No. 175 in Case No. 2:09-cv-70103) at 1 n.1. The upcoming trial date in this matter evidentially did not raise concerns of prejudice for Judge Robreno that would preclude remand of Plaintiff's punitive damages claims.

Further, the Transferor/Trial Court, as the District Court overseeing the trial of this matter, has broad discretion to manage this case in order to avoid any potential prejudice to the parties as a result of the remand of Plaintiff's punitive damages claims. For instance, the trial court has broad discretion as to whether to reopen discovery and as to the scope of any additional discovery. *See, e.g.*, *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1213 (3rd Cir. 1984). Further, the trial court has the discretion to bifurcate the trial of issues such as punitive damages claims, when appropriate. *See Miller v. New Jersey Transit Auth. Rail Operations*, 160

{00416203.DOCX}

F.R.D. 37, 40 (D.N.J. 1995). Thus, Defendants will have the opportunity to raise any alleged prejudice occasioned by the remand of Plaintiff's punitive damages claims and the Transferor/Trial Court possesses the discovery and trial management mechanisms necessary to address any such issues.

In addition, the Transferor/Trial Court is familiar with the facts and legal issues of this case, and has already presided over extensive motion practice related to the admissibility of Plaintiff's expert proofs, including holding a *Daubert* hearing, and deciding Defendant's motion to exclude Plaintiff's expert witness' testimony. *See* Minute Entry for *Daubert* Hearing held 12/11/13 and Opinion, 8/4/17 (*See* Dkt. No. 110 and 152 in Case No. 2:09-cv-70103). Thus, as Judge Robreno found, "for purposes of judicial efficiency, the best course of action is for the transferor court to adjudicate the merits of the case as well as the punitive damage claim in due course." *See* Order, 8/31/18, (*See* Dkt. No. 175 in Case No. 2:09-cv-70103) at 1-2 n.2.

II.     **Plaintiffs Have Established a Valid Claim for Punitive Damages Against Rockwell**

### A. Pennsylvania Law Applies to Plaintiff's Punitive Damages Claims Against Rockwell

The Panel should remand Plaintiff's punitive damages claims without addressing their merits, including Rockwell's argument that Michigan, rather than Pennsylvaina law, applies to Plaintiff's punitive damages claims.  To the extent, however, the Panel is inclined to consider the merits of Plaintiff's punitive damages claims against Rockwell, those claims are governed by Pennsylvania law.[2]

---

[2] Plaintiff notes that Defendants have previously agreed that Pennsylvania law applies to this case. *See* Opinion, 8/4/17 (*See* Dkt. No. 152 in Case No. 2:09-cv-70103) at 4. ("The Parties agree that Pennsylvania law rather than New Jersey law applies to this case.")

{00416203.DOCX}

Plaintiff agrees with Rockwell that there is a conflict between the punitive damages law of Pennsylvania and Michigan and that choice of law analysis of New Jersey, the forum where Plaintiff filed her case, applies to that conflict. New Jersey's choice-of-law analysis is outlined in the decision in the case of *P.V. ex rel. T. V. v. Camp Jaycee*, 197 N.J. 132 (2008). In *Camp Jaycee*, the Court adopted a "most significant relationship" test articulated in the Restatement (Second) of Conflict of Laws (1971). *Camp Jaycee*, 197 N.J. at 143. "Under the most-significant-relationship test in personal injury cases, the analysis begins with section 146 and the presumption that the law of the state where the injury occurred applies." *In re Accutane Litig.*, 2018 N.J. LEXIS 1187, *6 (N.J. Oct. 3, 2018); *see also Camp Jaycee*, 197 N.J. at 136. "Section 146 recognizes the intuitively correct principle that the state in which the injury occurs is likely to have the predominant, if not exclusive, relationship to the parties and issues in the litigation." *Camp Jaycee*, 197 N.J. at 144.

Here, the place where the injury occurred is Pennsylvania where Mr. Hoffeditz was exposed to asbestos and where he developed and died from mesothelioma. *See, e.g.*, *Cornett v. Johnson & Johnson*, 414 N.J. Super. 365, 379 (App. Div. 2010) (place of injury was Kentucky where plaintiff lived and presumably was treated with defendant's allegedly defective stent). Thus, it is presumed that Pennsylvania law will govern the rights and liabilities of the parties in this action. *See Camp Jaycee*, 197 N.J. at 144. The choice of Pennsylvania law, as the place of injury, is then "tested against the contacts detailed in section 145 and the general principles outlined in section 6 of the Second Restatement." *Camp Jaycee*, 197 N.J. at 136.  "If another state has a more significant relationship to the parties or issues, the presumption [in favor of Pennsylvania law] will be overcome. If not, it will govern." *Id.*

{00416203.DOCX}

"Reduced to their essence, the section 6 principles are: 'the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states.'" *Id*. at 147 quoting *Erny v. Estate of Merola*, 171 N.J. 86, 101-102 (2002). Further, section 145 of the Restatement provides that in determining which state has the most significant relationship to the occurrence and the parties under section six, the contacts to be weighed include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. *Id*. at 140-141.  Applying an analysis of these various factors and interests to the facts of this case, it is apparent that the interests of Michigan do not outweigh the presumption that Pennsylvania law applies to Plaintiff's punitive damages claims.

In *Camp Jaycee* the plaintiff, a New Jersey resident, was injured at camp the defendant ran in Pennsylvania. The Supreme Court found that Pennsylvania law applied despite that the defendant was incorporated and maintained an administrative office in New Jersey. *Camp Jaycee*, 197 N.J. at 136. The conflict in the laws of Pennsylvania and New Jersey that the Supreme Court was analyzing in *Camp Jaycee* was that New Jersey immunizes charitable organizations from negligence, while Pennsylvania does not. The Supreme Court found that under such circumstances, the policies were aligned with Pennsylvania's contacts. *Id.* at 151. The Supreme Court noted that the place of injury was not fortuitous because the defendant purposefully conducted business in Pennsylvania and "Pennsylvania was not an unanticipated detour on the way to another location; it was the final destination." *Id.* at 146. Here, Plaintiff was continuously occupationally exposed to Rockwell's asbestos containing parts for decades in

{00416203.DOCX}

Pennsylvania – it was not fortuitous that he was injured there.  Further, the relationship between the parties is centered in Pennsylvania, where Mr. Hoffeditz was exposed to Rockwell's products. *See id.*at 147.

Like New Jersey immunizing charitable organizations from negligence in *Camp Jaycee*, Michigan has chosen to immunize corporations acting within its borders from punitive damages. Michigan's interest in immunizing corporations, however, is greatly reduced when such corporations' injurious conduct takes place outside of Michigan – "immunity laws are designed to encourage persons to engage in particular conduct within the state. Where defendant's conduct takes place in another state, the immunity goals are diminished." *Camp Jaycee*, 197 N.J. 132, 152. In contrast, if Michigan's law immunizing defendants from punitive damages is applied, "Pennsylvania's ability to regulate the conduct of those who chose to operate within its borders will be substantially impaired." *Id.* at 153. Thus, although New Jersey courts "have departed from the rigid application of the *lex loci* approach, [they] have continuously deferred to the rights of other jurisdictions to regulate conduct within their borders. That is particularly so when the conduct is ongoing and directed towards residents and non-residents alike." *Camp Jaycee*, 197 N.J. at 153. Here, Pennsylvania's interest in regulating Rockwell's ongoing and directed conduct within its borders outweighs any interest Michigan may have in immunizing corporations operating within its borders from the imposition of punitive damages.

Further, any expectation that Rockwell may have had that it would be immunized from punitive damages for its conduct in Pennsylvania by Michigan's law is not a reasonable or justified expectation. As the New Jersey Supreme Court explained, "[i]n *Fu*, we dismissed the notion that a corporation could reasonably expect automatic immunization when conducting affairs outside the state … 'any blanket reliance on this State's law as a defense to conduct

{00416203.DOCX}

occurring in a foreign jurisdiction could not be justified.'" *Id.* at 154 quoting *Fu v. Fu*, 160 N.J. 108, 135 (1999). As for concerns of certainty, predictability and uniformity, the presumption in section 146 that the law of the place of injury governs, furthers these interests. *See Camp Jaycee*, 197 N.J. at 154.

Similarly, in *Cornett v. Johnson & Johnson*, 414 N.J. Super. 365, 380 (App. Div. 2010), the Appellate Division found that law of the place of injury applied, despite that the defendant's parent company was headquartered and incorporated in New Jersey and the defendant maintained facilities in New Jersey. *Cornett v. Johnson & Johnson*, 414 N.J. Super. 365, 380 (App. Div. 2010). In so ruling, the Court noted that Kentucky, the place where the injury occurred, had an interest in having its own weighing of the various concerns underlying tort law apply "to all in-state conduct by manufacturers, regardless of whether they are residents." *Id*. at 381. "Applying New Jersey law would thus threaten 'the values of uniformity and predictability" that are the main interests of judicial administration, by impairing ability to regulate conduct within its borders according to its own standards." *Id.* at 381. Here, applying Michigan law to Plaintiff's punitive damages claims would impair Pennsylvania's ability to regulate conduct within its borders.  Given this analysis of the interests of Pennsylvania and Michigan, there is no interest that overcomes the presumption that the law of Pennsylvania, where the injury occurred, is the governing law in this case.

The pharmaceutical cases Rockwell cites in support of applying Michigan's punitive damages law are unavailing.  The decisions of the Supreme Court and Appellate Division in the cases cited above hold more precedential value than the unpublished decisions which Rockwell relies upon. In fact, under the rules of New Jersey, such opinions have no binding effect upon any court:

{00416203.DOCX}

No unpublished opinion shall constitute precedent or be binding upon any court. Except for appellate opinions not approved for publication that have been reported in an authorized administrative law reporter, and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court. No unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and of all contrary unpublished opinions known to counsel.

*See* N.J. Court Rules, R. 1:36-3.  Thus, to the extent the Court reaches the question of whether Pennsylvania or Michigan law applies to Plaintiff's punitive damages claims, it should find that under New Jersey's choice of law analysis Pennsylvania law governs.

### B. Plaintiff's Presents Sufficient Evidence Under Pennsylvania Law of Rockwell's Malicious, Wanton, Reckless, Willful and/or Oppressive Conduct to Present her Claims for Punitive Damages to the Jury in the Transferor Court

As argued above, the Transferor/Trial Court is in the best position to adjudicate the merits of Plaintiff's punitive damages claims against Rockwell and Ford.  To the extent, however, that the Panel decides to reach Rockwell's argument on the merits of Plaintiff's punitive damages claims against it under Pennsylvania law, in opposition to that argument Plaintiff adopts and incorporates as if set forth herein Plaintiff's factual recitation and legal arguments in the Report of Plaintiff's Punitive Damage's Claim, at Points II.A-C, and Exhibits A-M to the Report. *See* Report of Plaintiff Re Punitive Damages Claim, 7/12/18 (*See* Dkt. No. 169 in Case No. 09-cv-70103) at 4-8.

### CONCLUSION

As it has done throughout the pendency of the asbestos MDL, the Panel should give great weight to Judge Robreno's Order suggesting remand of Plaintiff's punitive damages claims against Rockwell and Ford and deny Defendant's Motions to Vacate the Conditional Remand Order. Neither Defendant raises any argument that should cause the Panel to depart from the

{00416203.DOCX}

suggestion of Judge Robreno. As Judge Robreno determined, the Transferor/Trial Court is best placed to adjudicate these claims. Defendants will suffer no undue prejudice from the remand of Plaintiff's claims because the Transferor/Trial Court is well equipped to address any potential prejudice. Additionally, Plaintiff presents sufficient evidence of her punitive damages claims against Rockwell to justify remand of these claims. For the foregoing reasons, Plaintiff respectfully requests that Defendants' Motions to Vacate the Panel's Conditional Remand Order be denied.

LEVY KONIGSBERG, LLP
Attorneys for Plaintiffs
/s/ Amber R. Long
Amber R. Long
800 Third Avenue, 11th Floor
New York, NY 10022
P (212) 605-6249
F (212) 605-6290
along@levylaw.com

Dated: October 24, 2018

{00416203.DOCX}