# U.S. District Court
## Eastern District of Louisiana (New Orleans)
## CIVIL DOCKET FOR CASE #: 2:22-cv-01991-GGG-JVM

| | |
|---|---|
| Reno v. Anco Insulations Inc, et al | Date Filed: 06/29/2022 |
| Assigned to: Judge Greg Gerard Guidry | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Janis van Meerveld | Nature of Suit: 195 Contract Product |
| Case in other court: Civil District Court, Orleans Parish, | Liability |
|                 20-03366 B-5 | Jurisdiction: Diversity |
| Cause: 28:1332 Diversity-Asbestos Litigation | |

**Plaintiff**

**James B Reno**             represented by    **Mickey P. Landry**
Landry & Swarr, LLC
1100 Poydras Street
Ste 2000
New Orleans, LA 70163
502-299-1214
Email: mlandry@landryswarr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Frank J. Swarr**
Landry & Swarr, LLC
1100 Poydras Street
Ste 2000
New Orleans, LA 70163
504-299-1214
Fax: 504-299-1215
Email: fswarr@landryswarr.com
*ATTORNEY TO BE NOTICED*

**Matthew C. Clark**
Landry & Swarr, LLC
1100 Poydras Street
Suite 2000
New Orleans, LA 70163
504-299-1214
Fax: 504-299-1215
Email: mclark@landryswarr.com
*ATTORNEY TO BE NOTICED*

**Philip C Hoffman**
Philip C. Hoffman, LLC
643 Magazine Street
Suite 300 A
New Orleans, LA 70130
504-822-6050



CLERK'S OFFICE
A TRUE COPY

Jul 16 2022

Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, LA

Fax: 504-313-3911
Email: phil@pchlawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Anco Insulations Inc**

**Defendant**

**Eagle Inc.**
*formerly known as*
Eagle Asbestos & Packing Company

**Defendant**

**J. Graves Insulation Company, Inc.**
*formerly known as*
Graves-Aber Insulation Company, Inc.

**Defendant**

**McCarty Corporation**

**Defendant**

**Taylor-Seidenbach, Inc.**

**Defendant**

**Arrowood Indemnity Company**
*As Successor to Queen Insurance
Company of America and Royal Indemnity
Insurance Company, As Insurer of Aber
Company*

**Defendant**

**Travelers Casualty and Surety
Company**
*formerly known as*
Aetna Casualty and Surety Company

**Defendant**

**Louisiana Insurance Guarantee
Association**

**Defendant**

**Bayer Cropscience LP**
*as successor to Rhone-Poulenc
BasicChemicals*
*formerly known as*
Aventis Cropscience USA

**Defendant**

**Cabot Corporation**

**Defendant**

**CF Industries Nitrogen, LLC**
*formerly known as*
Triad Nitrogen, Inc.
*formerly known as*
Ampro Chemical, Inc.

**Defendant**

**CF Industries Inc**

**Defendant**

**CIBA-GEIGY Corporation**
*also known as*
Novartis Corporation

**Defendant**

**CITGO Petroleum Corporation**

**Defendant**

**Cleco Cajun, LLC**
*formerly known as*
Cleco Energy, LLC

**Defendant**

**Cleco Corporate Holdings, LLC**
*formerly known as*
CLECO Corporation

**Defendant**

**ConocoPhillips Company**
*Individually and as successor to Conoco,*
*Inc. and Phillips Petroleum Company*

**Defendant**

**Dow Chemical Company**

**Defendant**

**Entergy Louisiana, LLC**

**Defendant**

**Exxon Mobil Corporation**
*successor by merger to Enjay Chemical*
*Company*

**Defendant**

**Formosa Plastics Corporation,**
**Louisiana**

<u>**Defendant**</u>

**Georgia-Pacific Consumer Products LP**
*individually and as successor-in-interest to*
*James River Corporation*
*formerly known as*
Crown Zellerbach Corporation

<u>**Defendant**</u>

**Hercules, LLC**
*formerly known as*
Hercules Inc
*formerly known as*
Hercules Chemical Company, Inc.

<u>**Defendant**</u>

**Honeywell International Inc.**
*as successor in interest to Allied Chemcial*
*Corporation and the Solvay Process*
*Company*

<u>**Defendant**</u>

**Melamine Chemicals, Inc.**
*also known as*
CF Industries Nitrogen, LLC

<u>**Defendant**</u>

**Phillips 66 Company**

<u>**Defendant**</u>

**Shell Oil Company**

<u>**Defendant**</u>

**Triad Chemical Company**

<u>**Defendant**</u>

**Uniroyal Inc**
*formerly known as*
United States Rubber Company, Inc.

<u>**Defendant**</u>

**Ref-Chem LP**

<u>**Defendant**</u>

**Bayer Cropscience LP**
*as successor to Rhone-Poulenc AG*
*Company*

*formerly known as*
Benjamin Foster Co

### Defendant

**CBS Corporation**
*formerly known as*
Viacom Inc
*formerly known as*
Westinghouse Electric Corporation

### Defendant

**Foster Wheeler Energy Corporation**

### Defendant

**Foster Wheeler LLC**

### Defendant

**General Electric Company**

### Defendant

**Riley Power, Inc.**
*formerly known as*
Babcock Borsig Power, Inc.
*formerly known as*
D.B. Riley, Inc.
*also known as*
Riley Stoker Corporation

### Defendant

**Mechanical Insulation, Inc.**
*Page 1 of doc. 1-2*

### Defendant

**Jacobs Constructors, Inc.**
*Page 2 of 1-2*
*formerly known as*
Jacobs/Wiese Constructors, Inc.
*formerly known as*
H.E. Wiese

### Defendant

**Turner Industries Group, L.L.C.**
*Page 2 of doc. 1-2; as successor to Nichols*
*Construction Company, LLC*

### Defendant

**Continental Casualty Company**
*Page 3 of doc 1-2; as the insurer of*
*Uniroyal Inc.*

**Defendant**

**Underwriters At Lloyds London**
*Page 3 of doc. 1-2; as the insurer of*
*Uniroyal, Inc.*

**Defendant**

**Chevron USA Inc**
*Page 3 of doc. 1-2; as successor to Gulf*
*Oil Corporation*

**Third Party Plaintiff**

| | | |
|---|---|---|
| **Certain Underwriters at Lloyd's London** | represented by | **Paula Marcello Wellons** |

**Certain Underwriters at Lloyd's London**
*Page 1 of Doc 1-3*

represented by **Paula Marcello Wellons**
Taylor, Wellons, Politz & Duhe APLC
Louisiana
1555 Poydras St.
Suite 2000
New Orleans, Suite 1900
New Orleans, LA 70112
504-387-9888
Fax: 504-525-9899
Email: pwellons@twpdlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan B. Womack**
Taylor, Wellons, Politz & Duhe APLC
1555 Poydras Street
Ste 2000
New Orleans, LA 70112
504-525-9888
Fax: 504-525-9899
Email: jwomack@twpdlaw.com
*ATTORNEY TO BE NOTICED*

**Paul Jeffrey Verlander**
Taylor, Wellons, Politz & Duhe, APLC
1555 Poydras Street
Suite 2000
New Orleans, LA 70112
504-525-9888
Fax: 504-525-9899
Email: pverlander@twpdlaw.com
*ATTORNEY TO BE NOTICED*

**Samantha Paula Griffin**
Taylor, Wellons, Politz & Duhe, APLC
1555 Poydras Street
Ste 2000
New Orleans, LA 70112-4042
504-525-9888

Fax: 504-525-9899
Email: sgriffin@twpdlaw.com
*ATTORNEY TO BE NOTICED*

V.

**Third Party Defendant**

**Uniroyal Holding, Inc.**                    represented by   **Thomas Peyton Smith**
*Page 1 of doc. 1-3*                                          Forman, Watkins & Krutz LLP (New
                                                              Orleans)
                                                              201 St. Charles Ave.
                                                              Suite 2100
                                                              New Orleans, LA 70170
                                                              504-799-4383
                                                              Email: peyton.smith@formanwatkins.com
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Mary Reeves Arthur**
                                                              Forman, Watkins & Krutz LLP (New
                                                              Orleans)
                                                              201 St. Charles Ave.
                                                              Suite 2100
                                                              New Orleans, LA 70170
                                                              504-799-4383
                                                              Email: Mimi.Arthur@formanwatkins.com
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/29/2022 | 1 | NOTICE OF REMOVAL from Civil District Court, Orleans Parish, case number 2020-03366 B-5 (Filing fee $ 402 receipt number ALAEDC-9423098) filed by Uniroyal Holding, Inc. (Attachments: # 1 State Court Pleading-Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Civil Cover Sheet) Attorney Thomas Peyton Smith added to party Uniroyal Holding, Inc.(pty:3pd).(Smith, Thomas) Modified text on 7/16/2022 (mm). (Entered: 06/29/2022) |
| 06/29/2022 | 2 | Initial Case Assignment to Judge Greg Gerard Guidry and Magistrate Judge Janis van Meerveld. (cc) (Entered: 06/29/2022) |
| 06/30/2022 | 3 | MOTION to Dismiss for Failure to State a Claim by Uniroyal Holding, Inc.. Motion(s) will be submitted on 7/20/2022. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Notice of Submission)(Smith, Thomas) (Entered: 06/30/2022) |
| 06/30/2022 | 4 | MOTION to Transfer Case by Uniroyal Holding, Inc.. Motion(s) will be submitted on 7/20/2022. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Notice of Submission)(Smith, Thomas) (Entered: 06/30/2022) |

| 06/30/2022 | 5 | Statement of Corporate Disclosure by Uniroyal Holding, Inc. (Smith, Thomas) (Entered: 06/30/2022) |
|---|---|---|
| 06/30/2022 | 6 | EXPARTE/CONSENT MOTION to Enroll as Counsel of Record *Mary R. Arthur* by Uniroyal Holding, Inc. (Attachments: # 1 Proposed Order)(Smith, Thomas) (Entered: 06/30/2022) |
| 07/01/2022 | 7 | ORDER GRANTING 6 Motion to Enroll as Counsel of Record. IT IS ORDERED that Mary R. Arthur, of the law firm of Forman Watkins & Krutz LLP, be and is hereby enrolled as additional counsel of record for Defendant, Uniroyal Holding, Inc., in the above entitled and referenced matter. Signed by Judge Greg Gerard Guidry on 7/1/2022. (pp) (Entered: 07/01/2022) |
| 07/12/2022 | 8 | MOTION to Continue *Submission Date on Uniroyal Holding, Inc.'s 12(B)(6) Motion and Motion to Transfer Case* re: rec. docs. 3 & 4 by Certain Underwriters at Lloyd's London. Motion(s) will be submitted on 8/3/2022. (Attachments: # 1 Memorandum in Support, # 2 Proposed Order, # 3 Notice of Submission)(Griffin, Samantha) (Entered: 07/12/2022) |
| 07/12/2022 | 9 | RESPONSE/MEMORANDUM in Opposition filed by Certain Underwriters at Lloyd's London re 3 MOTION to Dismiss for Failure to State a Claim. (Griffin, Samantha) (Entered: 07/12/2022) |
| 07/12/2022 | 10 | RESPONSE/MEMORANDUM in Opposition filed by Certain Underwriters at Lloyd's London re 4 MOTION to Transfer Case. (Griffin, Samantha) (Entered: 07/12/2022) |
| 07/13/2022 | 11 | Correction of Docket Entry by Clerk re 9 Response/Memorandum in Opposition to Motion, 8 MOTION to Continue *Submission Date on Uniroyal Holding, Inc.'s 12(B)(6) Motion and Motion to Transfer Case*, 10 Response/Memorandum in Opposition to Motion. **The Plaintiff's name must be corrected on all future documents to reflect James B Reno.** (mm) (Entered: 07/13/2022) |
| 07/13/2022 | 12 | Notice of Compliance by Uniroyal Holding, Inc. re 1 Notice of Removal. (Arthur, Mary) Modified text/added linkage on 7/14/2022 (mm). (Entered: 07/13/2022) |
| 07/15/2022 | 13 | RESPONSE to Motion filed by Uniroyal Holding, Inc. re 8 MOTION to Continue *Submission Date on Uniroyal Holding, Inc.'s 12(B)(6) Motion and Motion to Transfer Case* . (Arthur, Mary) (Entered: 07/15/2022) |
| 07/16/2022 | 14 | Directive of the Clerk regarding compliance with 28:1447(b) re: 1 Notice of Removal filed by Uniroyal Holding, Inc. By the Clerk. (mm) (Entered: 07/16/2022) |

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES RENO** | * | **CIVIL ACTION NO: 2:22-cv-1991** |
| | * | |
| **Plaintiff** | * | |
| | * | |
| **VERSUS** | * | |
| | * | |
| **ANCO INSULATIONS, INC., ET AL.** | * | |
| | * | |
| **Defendants** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* *

## NOTICE OF REMOVAL

**TO THE HONORABLE COURT, AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

In accordance with 28 U.S.C. §§ 1332, 1441, and 1446, Uniroyal Holding, Inc. ("Holding"), files and serves this Notice of Removal, hereby removing this Action from the Civil District Court for the Parish of Orleans, Louisiana, to the United States District Court for the Eastern District of Louisiana. Holding states the following as grounds for removal:

1. On April 28, 2020, Plaintiff James B. Reno filed an action in Louisiana state court for injuries allegedly caused by asbestos, which he attributed to 36 separate defendants. *See* Plaintiff's Petition, attached hereto as Exhibit "A." Mr. Reno filed his sixth amended petition, adding Certain Underwriters at Lloyd's London ("Certain Underwriters") as a defendant, on June 15, 2021. *See* Plaintiff's Sixth Amended Petition, attached hereto as Exhibit "B."

2. On January 28, 2022, Underwriters filed a Third Party Demand against Holding in the matter styled *James B. Reno v. Anco Insulations, Inc., et al.*, Cause No. 2020-03366 in the Civil District Court for the Parish of Orleans, State of Louisiana ("the Underlying Action"). *See,* Third Party Demand, attached hereto as Exhibit "C." Certain Underwriters' Third Party

Demand seeks the Court to determine the application of a Settlement Agreement between Certain Underwriters and Holding to the Plaintiff's claims in *Reno*. *Id.* Third Party Demand seeks reimbursement of "defense costs, attorney's fees, court costs and other amounts and damages" relating to the *Reno* litigation. *Id.* at ¶ 13.

3.      The *Reno* case was set for trial on May 9, 2022.  *See, Reno* Notice of Trial, attached hereto as Exhibit "D."  Upon information and belief, prior to the commencement of the trial, the case resolved as to all of the plaintiff's claims and with regard to all defendants before Certain Underwriters served Holding with its Third Party Demand.

4.      After it was clear the case would resolve before Holding could be served, Certain Underwriters moved to sever their Third Party Demand from the Underlying Action, and the Honorable Rachael Johnson of the Civil District Court for the Parish of Orleans granted the motion by an order entered on May 9, 2022. *See,* Order of Severance, attached hereto as Exhibit "E."

5.      Certain Underwriters' Third Party Demand, upon severance from the Underlying Action, became this action, effectively converting the Third Party Demand to a traditional Plaintiff/Defendant matter in the absence of the original parties.  Holding was finally served with the sole remaining issue in this matter – Certain Underwriters' demand for reimbursements and attorneys' fees on or about May 31, 2022. *See,* Long Arm Affidavit, attached hereto as Exhibit "F."

After a Third Party Demand is severed from the original action, the third party defendant may remove an action to federal court based upon complete diversity.  *See, Johns, Pendleton & Associates v. Miranda, Warwick & Milazzo,* No. CIV.A. 02-1486, 2002 WL 31001838 (E.D. La. Sept. 4, 2002).  In a case similar to the matter at hand, the *Johns* Court stated

The Court finds the circumstances of this case are analogous to those presented to the Fifth Circuit in *Reigel*. In both cases, the main demand was resolved separate and apart from the third-party complaint. While the main demand in the instant case was not "severed" from the third-party complaint, it was dismissed with prejudice upon payment of the claim by the third-party. Further, allowing third-party removal *after* the severance or dismissal of the plaintiff's cause of action does not run afoul of the policy concern announced in *Shamrock* – that a third-party defendant should not be permitted to destroy an original plaintiff's choice of forum…permitting third-party removal under § 1441(a) when the original choice of forum is not at issue, permits a third-party defendant to do what he could have, had the third-party complaint been filed as a separate lawsuit – remove the matter based on diversity.

*Johns,* 2002 WL 31001838, at *3 (emphasis in original). Here, the *Reno* Plaintiff has resolved his claims and, therefore, Holding is not prohibiting his choice of forum in state court. Rather, this separate and distinct action is removable based upon diversity jurisdiction.

6.     There only two parties to this action: (1) Certain Underwriters, and (2) Holding. Certain Underwriters is domiciled in New York and has its principal place of business in New York. *See* pleadings filed in *Devall, et. al v. Certain Underwriters Lloyd's London*, attached collectively as Exhibit "G." Holding is a New Jersey entity that is domiciled in Connecticut and has its principal place of business in Connecticut. *See,* Holding's Certificate of Incorporation in the State of New Jersey and all amendments thereto, attached collectively as Exhibit "H." Accordingly, the controversy in this action is, at the time of commencement thereof was, and at all times since has been, a controversy between citizens of different states. There is complete diversity of citizenship between the parties.

7.     Based upon the allegations and nature of the demand for damages in the Third Party Demand, the amount in controversy exclusive of interest and costs in this action exceeds the jurisdictional requirement of $75,000. *See,* 28 U.S.C. §1332. Specifically, Certain Underwriters has demanded in excess of $75,000 plus attorneys' fees to resolve this matter.

8. Because Holding received the Third Party Demand on or about May 31, 2022, this Notice of Removal is timely filed within 30 days of receipt of that initial pleading in accordance with the provisions of 28 U.S.C. § 1446(b). *See,* Exhibit "F." Moreover, this Notice of Removal is filed within one year of the filing of the Certain Underwriters' Third Party Demand. *See,* Exhibit "C."

9. Pursuant to the Court's rules, Holding will file a certified copy of the state court file within 14 days from the day of removal. Holding is also serving a copy of the Notice of Removal on Certain Underwriters through their counsel of record and filing a copy of the Notice of Removal with the Clerk of the Civil District Court for the Parish of Orleans, Louisiana.

10. Removal of this action is proper under 28 U.S.C. §§ 1332 and 1441.

11. By filing this Notice of Removal, Holding does not waive any defenses and expressly reserves all available defenses in this matter.

WHEREFORE, Uniroyal Holding, Inc. prays that this action proceed in this Court as a properly removed action.

THIS the 29th day of June, 2022.

Respectfully Submitted,

FORMAN WATKINS & KRUTZ LLP

*/s/ T. Peyton Smith*
T. Peyton Smith, LA. Bar #34984
Mary R. Arthur, LA. Bar #32644
mimi.arthur@formanwatkins.com
peyton.smith@formanwatkins.com
201 St. Charles Avenue, Suite 2100
New Orleans, LA 70170
Telephone: (504) 799-4383
Facsimile: (504) 799-4384

**ATTORNEYS FOR UNIROYAL HOLDING, INC.**

4



CLERK'S OFFICE
A TRUE COPY
Jul 16 2022
Deputy Clerk, U.S. District Court
Eastern District Of Louisiana
New Orleans, LA

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have on this 29th day of June 2022, the undersigned served a copy of the foregoing pleading on all counsel of record in this proceeding in accordance with the Code of Civil Procedure.

/s/ T. Peyton Smith
T. PEYTON SMITH

**B**

**Section 5**

**JURY**

### CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

#### STATE OF LOUISIANA

NO.: _____          SECTION: _____

#### JAMES B. RENO

#### VERSUS

#### ANCO INSULATIONS, INC., ET AL.

FILED: _____          _____

                                              DEPUTY CLERK

#### PETITION FOR DAMAGES

        Petitioner, James B. Reno, by and through undersigned counsel, respectfully represents as follows:

1.    Petitioner is an adult domiciliary of the Parish of East Baton Rouge, State of Louisiana, who resides in Baton Rouge, Louisiana.

2.    The following Defendants are domestic or foreign companies licensed to do, doing or having done business in the State of Louisiana that caused injury to Petitioner, all of which are liable to Petitioner, as asserted below:

#### INSULATION CONTRACTORS, PROFESSIONAL VENDORS OF INSULATION, AND THEIR INSURERS

    A.  ANCO INSULATIONS, INC., domiciled in Louisiana

    B.  EAGLE INC., fka Eagle Asbestos & Packing Company ("Eagle"), domiciled in Louisiana

    C.  THE J. GRAVES INSULATION COMPANY, INC. f/k/a Graves-Aber Insulation Company, Inc., domiciled in Louisiana

    D.  MCCARTY CORPORATION, domiciled in Louisiana

    E.  TAYLOR-SEIDENBACH, INC. ("Taylor-Seidenbach"), domiciled in Louisiana

    F.  ARROWOOD INDEMNITY COMPANY, as successor to Queen Insurance Company of America and Royal Indemnity Insurance Company, AS INSURER OF ABER COMPANY, INC., a foreign insurer domiciled in Delaware.

    G.  TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a The Aetna Casualty and Surety Company (collectively, "Travelers"), as the insurer of B&B ENGINEERING & SUPPLY COMPANY, INC. and B&B ENGINEERING & SUPPLY COMPANY OF LOUISIANA, INC. (collectively, "B&B"), a foreign insurer domiciled in Connecticut.

    H.  LOUISIANA INSURANCE GUARANTEE ASSOCIATION ("LIGA"), with respect to American Mutual Liability Insurance Company, who issued policies of insurance to GABLER INSULATIONS, INC ("Gabler"). LIGA is domiciled in Louisiana.

1

**EXHIBIT**

**A**

# B

## Section 5

**PREMISES DEFENDANTS**

I.   BAYER CROPSCIENCE LP, as successor to Rhone-Poulenc Basic Chemicals f/k/a Stauffer Chemical Company fka Aventis Cropscience USA (with regard to Stauffer Chemical in Baton Rouge, LA); Bayer is domiciled in Delaware.

J.   CABOT CORPORATION (with regard to the Ville Platte, LA carbon black facility), domiciled in Delaware

K.   CF INDUSTRIES NITROGEN, LLC fka Triad Nitrogen, Inc. successor by merger to AMPRO Fertilizer, Inc. fka AMPRO CHEMICAL, INC. (with regard to the AMPRO chemical facility in Donaldsonville, LA), domiciled in Delaware

L.   CF INDUSTRIES, INC. (with regard to the Donaldsonville, LA facility), domiciled in Delaware

M.   CIBA-GEIGY CORPORATION nka Novartis Corporation (with regard to the St. Gabriel, LA facility), domiciled in New York

N.   CITGO PETROLEUM CORPORATION (with regard to the Gulf refinery in Lake Charles, LA), domiciled in Delaware

O.   CLECO CAJUN, LLC fka Cleco Energy, LLC, successor in interest to NRG Energy, Inc. power plant Big Cajun II in New Roads, LA; Cleco is domiciled in Louisiana.

P.   CLECO CORPORATE HOLDINGS LLC, fka Cleco Corporation (with regard to the Bunkie, LA power plant)

Q.   CONOCOPHILLIPS COMPANY, individually and as successor to Conoco, Inc. and Phillips Petroleum Company (with regard to the Gulf refinery in Lake Charles, LA), domiciled in Delaware

R.   DOW CHEMICAL COMPANY (with regard to the Plaquemine, LA facility), domiciled in Delaware

S.   ENTERGY LOUISIANA, LLC (with regard to the Willow Glen, Baton Rouge, and Little Gypsy power plants), domiciled in Texas

T.   EXXON MOBIL CORPORATION, successor by merger to Enjay Chemical Company (with regard to the plastics plant in Baton Rouge, LA), domiciled in New Jersey

U.   FORMOSA PLASTICS CORPORATION, LOUISIANA (with regard to the Baton Rouge, LA facility), domiciled in Delaware

V.   GEORGIA-PACIFIC CONSUMER PRODUCTS, L.P., individually and as successor-in-interest to James River Corporation f/k/a Crown Zellerbach Corporation (with regard to the Crown Zellerbach paper mill in St. Francisville, LA); Georgia-Pacific is domiciled in Delaware.

W.   HERCULES LLC f/k/a Hercules Incorporated fka Hercules Chemical Company, Inc. (with regard to the Hercules chemical plant), domiciled in Delaware

X.   HONEYWELL INTERNATIONAL INC. as successor in interest to Allied Chemical Corporation and The Solvay Process Company (with regard to Allied Chemical in Geismar, LA), domiciled in Delaware

Y.   MELAMINE CHEMICALS, INC. nka CF INDUSTRIES NITROGEN, LLC (with regard to the Donaldsonville, LA facility), domiciled in Delaware

**B**

Section 5  Z. PHILLIPS 66 COMPANY (with regard to the Gulf refinery in Lake Charles, LA), domiciled in Delaware

AA.        SHELL OIL COMPANY (with regard to the Norco, LA facility), domiciled in Delaware

BB.        TRIAD CHEMICAL COMPANY (with regard to the Donaldsonville, LA facility), domiciled in Delaware

CC.        UNIROYAL, INC. f/k/a United States Rubber Company, Inc., domiciled in New Jersey

### OTHER CONTRACTOR DEFENDANTS

DD.        REF-CHEM, LP (with regard to work done at the Good Hope refinery in Norco, LA), domiciled in Texas

### MANUFACTURER DEFENDANTS

EE. BAYER CROPSCIENCE, LP, as successor to Rhone-Poulenc AG Company f/k/a Benjamin Foster Company, domiciled in Delaware

FF. CBS CORPORATION f/k/a Viacom, Inc. f/k/a Westinghouse Electric Corporation, domiciled in Delaware

GG.        FOSTER WHEELER ENERGY CORPORATION, domiciled in Delaware

HH.        FOSTER WHEELER LLC, domiciled in Delaware

II. GENERAL ELECTRIC COMPANY, domiciled in New York.

JJ. RILEY POWER, INC., f/k/a Babcock Borsig Power, Inc., f/k/a D.B. Riley, Inc., a/k/a Riley Stoker Corporation, domiciled in Massachusetts

3.        This action is within the jurisdiction of the Court because one or more of the Defendants named in Paragraph 2 is an Orleans Parish domiciliary or, at the relevant time, was an insurer of an Orleans Parish domiciliary, including Taylor-Seidenbach, Eagle, Travelers as the insurer of B&B, Arrowood as the insurer of Aber, and LIGA as the insurer of Gabler. *See* La. Code Civ. Proc. Ann. art. 42 (2020). Also, Orleans Parish is a proper venue because each Defendant listed in Paragraph 2 contributed to Petitioner's exposures to asbestos and subsequent contraction of an asbestos-related disease and, therefore, each is solidarily liable to Petitioner with each of its co-Defendants. *See* LA. CODE CIV. PROC. ANN. art. 73 (2016).

### BACKGROUND

4.        From birth in 1955 through the early 1970s, Petition lived with his father, Mr. Victor Reno, in their family home. Petitioner's father was a career insulator during that timeframe, who worked directly with asbestos-containing materials ("ACM") and in proximity to others doing the same at the jobsites referenced in Paragraph 2's list of Premises Defendants. Unbeknown to Petitioner and his

2020-03566    MDL No. 875    Document 10153-1    Filed 07/19/22    Page 17 of 79

Case 2:22-cv-04991-GGG-JVM    Document 1-1    Filed 06/20/22    Page 4 of 12

FILED

2020 APR 28   P 02:06

CIVIL
DISTRICT COURT

father, hazardous asbestos dust and fibers on his work clothes and person contaminated the family home,

vehicle and Petitioner's breathing zone.

5.    Before and during Petitioner's exposure period, each of the Defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied or sold asbestos-containing materials ACM for use at the sites described in Paragraph 4 above, where Petitioner was exposed to ACMs.

6.    When inhaled or otherwise ingested, asbestos causes irreparable and progressive damage that can manifest itself as lung cancer, pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

7.    Each of the Defendants knew or should have known through, for example, industry and medical studies, of the health hazards inherent in the asbestos-containing products they were selling or using. Instead of warning Petitioner or his father of those hazards, which were unknown to him at the time of the work at the sites described in Paragraph 4 above, Defendants ignored this information and sold or used ACMs.

8.    As a direct and proximate result of having inhaled, ingested or otherwise been exposed to ACMs as described above, Petitioner contracted and suffers from malignant pleural mesothelioma, a signature asbestos disease. Petitioner's mesothelioma was diagnosed in or around April 2020.

9.    Because of the latency period between exposure to asbestos and the onset of cancer, Petitioner did not know, and reasonably could not have known, that his injuries were caused by his asbestos exposure until (at the earliest) less than one year prior to the filing of the instant Petition for Damages.

10.    Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Petitioner disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of the United States Government, its officer, or agent. Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust by any party not included in this Petition or its supplements or amendments.

11.    All causative exposures to asbestos sustained by Petitioner occurred on or before December 1980. Petitioner did not sustain causative exposures to asbestos after November 4, 1980.

4

**B**

**Section 5**

## NEGLIGENCE OF ALL DEFENDANTS

12.     On information and belief, the Defendants identified in Paragraph 2 were responsible to

provide Petitioner and his father with protections against the hazardous conditions at their premises or

relating to their work or products, including the following responsibilities:

A.     Inspection, approval and supervision of these various premises for hazards and vices that may present a hazard to Petitioner;

B.     To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C.     To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as to Petitioner;

D.     To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E.     To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F.     To keep abreast of state-of-the-art knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G.     To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was necessary, in order to prevent Petitioner from being harmed by exposure to asbestos in the environment in which he was required to be present;

H.     To make certain that Petitioner was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I.     To measure the levels of asbestos dust in the premises working environment;

J.     To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

K.     To warn Petitioner of the dangers posed by the polluted atmosphere in which he was required to work including, but not limited to the risk of asbestosis, pleural disease, mesothelioma, lung cancer, other cancers, and the carcinogenic effect of the risk of lung cancer caused by asbestos exposure to persons with pre-existing smoking habits from the handling and use of asbestos.

13.     Not only did Defendants have the duties and responsibilities set forth in the immediately

preceding Paragraph, but they also negligently failed to meet those duties and assumed other duties

in the manner asserted in the following paragraphs.

14.     Upon information and belief, Defendants knew of the dusty atmospheres in which

Petitioner's father was required to enter and work, which was damaging and dangerous to

**B**

**Section 5**

Petitioner's father and his family. Each knew, or should have known, of the dangers to health posed

by working in an atmosphere polluted with asbestos dust without proper protections. Petitioner

alleges that Defendants knew or should have known that respiratory illness, including asbestos

diseases, could have been avoided by the use of adequate ventilation, warnings, packaging and safety

equipment.

15.     The negligence of Defendants was a substantial factor and contributed in causing damages

to Petitioner.

**STRICT LIABILITY FOR CARE, CUSTODY OR CONRTROL OF ACMs**

16.     Pursuant to La. Civil Code Article 2315 *et seq.*, Petitioner alleges a claim for strict liability

against all Defendants. Defendants failed to provide his father with a safe place in which to work,

free from the hazards of asbestos, which failure was a proximate cause of Petitioner's injuries.

17.     The premises within which Petitioner was exposed to asbestos were owned by or in the

custody of Premises Defendants and were unreasonably dangerous due to the presence and use of

ACMs without adequate precautions taken to minimize the risk of exposure. These unreasonably

dangerous conditions were a direct and proximate cause of Petitioner's injuries.

18.     During the course of Petitioner's father's work, the ACMs that contributed to Petitioner's

mesothelioma were all within the care, custody, and control of all Defendants, jointly. They are all,

therefore, strictly liable for Petitioner's injuries pursuant to Louisiana Civil Code Articles 2317, *et*

*seq.*

19.     All Defendants failed to properly discharge their duties to Petitioner in the following

particulars:

      A.     failure to provide Petitioner's father with a safe place to work;

      B.     failure to provide Petitioner's father with adequate engineering or industrial hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, and air monitoring; and

      C.     failure to inform or warn Petitioner or his father of the hazards of asbestos exposure.

      D.     failed to provide the Petitioner's father with safety equipment;

      E.     failed to provide the Petitioner's father with correct, adequate, or proper safety equipment;

      F.     recklessly and negligently failed to disclose, warn or reveal critical medical and

6

2020 APR 28  P 02:06

CIVIL

DISTRICT COURT

safety information to Petitioner or his father regarding asbestos hazards in general and with regard to those specific hazards at the work sites listed in Paragraph 2 above;

G.  negligently omitted to reveal critical medical and safety information from Petitioner and his father regarding the safety and health risks associated with the asbestos and asbestos-containing products at the worksites;

H.  failed to timely remove asbestos hazards from his father's work place;

I.  failed to properly supervise or monitor his father's work areas for compliance with safety regulations; and

J.  failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air of his father's work place and at Petitioner's home.

20.  These specific acts of fault were a proximate cause of Petitioner's injuries.

**STRICT LIABILITY FOR MANUFACTURE
OR SALE OF ACMs OR PRODUCTS INCLUDING ACMs**

21.  Defendants were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of ACMs, or representing themselves as manufacturers of ACMs, or are professional vendors of ACMs, which were expected to and did reach the Petitioner's father's job site and ultimately Petitioner's home.

22.  The products manufactured, distributed, supplied, sold or used by these Defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to the Petitioner, who was an intended and foreseeable bystander that was exposed to these products.  These defects include, without limitation, the following:

A.  the manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B.  manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them in the petitioner's father's trade;

C.  lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D.  lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E.  failure of Defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F.  failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

G.  failure to truthfully report or adequately report the results of product testing, and

7

2020-03366

Case Case 2:22-cv-04991-GGG-JVM Document 10153-1 Filed 07/19/22 Page 2 of 19

2020 APR 28 P 02:06

CIVIL
DISTRICT COURT

FILED

**B**

**Section 5**

medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

    H.    failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

    I.    defects in the composition and construction of these products;

    J.    failure to recall these products manufactured, sold and supplied;

    K.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of; and

    L.    overwarranting the safety of these products.

23.    These Defendants are liable to Petitioner in strict liability for the harm caused by their products.

## INSURANCE COVERAGE

24.    The following Defendants are insurance companies authorized to do and/or doing business in Louisiana and subject to the jurisdiction of this Honorable Court. These Defendants, on information and belief, at all times pertinent herein, were the liability insurers of the subject entities, and as such, are directly sued herein pursuant to the provisions of Title 22, Section 655 of the Louisiana Revised Statutes:

    i.    ARROWOOD INDEMNITY COMPANY, as successor to Queen Insurance Company of America and Royal Indemnity Insurance Company, AS INSURER OF ABER COMPANY, INC.

    ii.    TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a The Aetna Casualty and Surety Company (collectively, "Travelers"), as the insurer of B&B ENGINEERING & SUPPLY COMPANY, INC. and B&B ENGINEERING & SUPPLY COMPANY OF LOUISIANA, INC.

    iii.    LOUISIANA INSURANCE GUARANTEE ASSOCIATION ("LIGA"), with respect to American Mutual Liability Insurance Company, who issued policies of insurance to GABLER INSULATIONS, INC.

25.    Insurer Defendants, on information and belief, had in full force and effect policies of liability insurance insuring the respective entities as identified above, against the causes of action asserted herein and covering the premises, matters, persons, things, actions, inactions, and damages that are the subject of this petition, and, as such, the Insurer Defendants are directly liable to Petitioner under the provisions of the Louisiana Revised Statutes, Title 22, Section 655.

## DAMAGES

26.    All of the allegations of the above paragraphs are incorporated by reference herein.

27.    By reason of the Defendants' concurrent and indivisible fault resulting in their solidary

E-Filed

# B
## Section 5

liability, as described above, and because of the injuries to the Petitioner, he is entitled to recover for his damages as follows:

    A.    Past, present, and future physical pain and suffering;

    B.    Past, present, and future mental anguish;

    C.    Fear of future cancers;

    D.    Past, present, and future medical expenses and rehabilitation;

    E.    Past, present, and future disability;

    F.    Past, present, and future loss of income;

    G.    Loss of enjoyment and quality of life; and

    F.    Any other losses, costs and interest that are established at the trial or that Petitioner is legally entitled to in this matter.

### JURY DEMAND

Petitioner, James B. Reno, prays for a trial by jury on all issues.

WHEREFORE, Petitioner prays that all Defendants named in this Petition for Damages be cited to appear and answer as the law directs, and that, after due proceedings are had, Petitioner recover of and from the Defendants individually, jointly and *in solido* for his damages as alleged, in an amount which the evidence may show proper at the time of trial, together with costs, and legal interest from the date of judicial demand until paid, and for such other and further relief, special and general, as law and equity may permit.

RESPECTFULLY SUBMITTED,

**LANDRY & SWARR, LLC**

**/s/ Matthew C. Clark**

MICKEY P. LANDRY, Bar No. 22817
FRANK J. SWARR, Bar No. 23322
PHILIP C. HOFFMAN, Bar No. 32277
MATTHEW C. CLARK, Bar No. 31102
1100 Poydras Street
Energy Centre – Suite 2000
New Orleans, LA 70163
Telephone: (504) 299-1214
Facsimile: (504) 299-1215
**COUNSEL FOR PETITIONER**

### PLEASE SERVE THE FOLLOWING WITH THE ORIGINAL PETITION FOR DAMAGES:

    1. ANCO INSULATIONS, INC.
Through Agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

**B**

Section 5 EAGLE INC.
Through Registered Agent: Susan B. Kohn
1100 Poydras Street, Suite 2900, 30th Floor
New Orleans, LA 70163

3. THE J. GRAVES INSULATION COMPANY, INC. f/k/a Graves-Aber Insulation Co, Inc.
Through its registered agent for service of process: CT Corporation System
3867 Plaza Tower Dr., 2nd floor
Baton Rouge, LA 70816

4. MCCARTY CORPORATION
Through It's Registered Agent: Paul H. Spaht
4232 Bluebonnet Blvd.
Baton Rouge, LA 70809

5. TAYLOR-SEIDENBACH, INC.
Through Agent: Robert I. Shepard
731 South Scott Street
New Orleans, Louisiana 70119

6. ARROWOOD INDEMNITY COMPANY, as successor to Queen Insurance Company of
America and Royal Indemnity Insurance Co., AS INSURER OF ABER COMPANY, INC.
Through: Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

7. TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a The Aetna Casualty and
Surety Company, as the insurer of B&B ENGINEERING & SUPPLY COMPANY, INC.
and B&B ENGINEERING & SUPPLY COMPANY OF LOUISIANA, INC.
Through: Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809

8. LOUISIANA INSURANCE GUARANTEE ASSOCIATION, with respect to American
Mutual Liability Insurance Company, who issued policies of insurance to GABLER
INSULATIONS, INC
Through its Agent for Service of Process:
Deidre Arceneaux
2142 Quail Run Drive
Baton Rouge, LA 70808

9. BAYER CROPSCIENCE LP, as successor to Rhone-Poulenc Basic Chemicals f/k/a Stauffer
Chemical Company fka Aventis Cropscience USA
Through their agent for service of process: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

10. CABOT CORPORATION
Through Registered Agent: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

11. CF INDUSTRIES NITROGEN, LLC fka Triad Nitrogen, Inc. successor by merger to
AMPRO Fertilizer, Inc. fka AMPRO CHEMICAL, INC.
Through their agent for service of process: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

E-Filed

**B**

Section 5

12. CF INDUSTRIES, INC.
*Via Louisiana Long Arm Statute*
Through Registered Agent: Corporation Service Company
251 Little Falls Drive
Wilmington, DE 19808

13. CIBA-GEIGY CORPORATION nka Novartis Corporation
*Via Louisiana Long Arm Statute*
Through Registered Agent:
The Prentice-Hall Corporation System
80 State Street
Albany, New York 12207

14. CITGO PETROLEUM CORPORATION
Through its Registered Agent:  CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

15. CLECO CAJUN, LLC fka Cleco Energy, LLC, successor in interest to NRG Energy, Inc.
Through Registered Agent: Mike Joseph or Lauren Soileau Leboeuf
2030 Donahue Ferry Road
Pineville, LA 71360

16. CLECO CORPORATE HOLDINGS LLC, fka Cleco Corporation
Through Registered Agent: Mike Joseph or Lauren Soileau Leboeuf
2030 Donahue Ferry Road
Pineville, LA 71360

17. CONOCOPHILLIPS COMPANY, individually and as successor to Conoco, Inc. and Phillips
     Petroleum Company
Through Agent: United States Corporation Company
501 Louisiana Avenue
Baton Rouge, LA 70802

18. DOW CHEMICAL COMPANY
Through its registered agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70808

19. ENTERGY LOUISIANA, LLC
Through Registered Agent: John A. Braymer or Marcus Brown
639 Loyola Ave., 26th Floor
New Orleans, LA 70113

20. EXXON MOBIL CORPORATION, successor by merger to Enjay Chemical Company
Through Registered Agent: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

21. FORMOSA PLASTICS CORPORATION, LOUISIANA
Through Registered Agent: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

22. GEORGIA-PACIFIC CONSUMER PRODUCTS, L.P., individually and as successor-in-
     interest to James River Corporation f/k/a Crown Zellerbach Corporation
Through its Registered Agent:  CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

11

**B**

**Section 5**

23. HERCULES LLC f/k/a Hercules Incorporated fka Hercules Chemical Company, Inc.
Through Agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

24. HONEYWELL INTERNATIONAL INC. as successor in interest to Allied Chemical
Corporation and The Solvay Process Company
Through its Registered Agent: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

25. MELAMINE CHEMICALS, INC. nka CF INDUSTRIES NITROGEN, LLC
Through their agent for service of process: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

26. PHILLIPS 66 COMPANY
Through LA RA: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

27. SHELL OIL COMPANY
Through its registered agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

28. TRIAD CHEMICAL COMPANY
*Via Louisiana Long Arm Statute*
Through Registered Agent: The Prentice-Hall Corporation System, Inc,
251 Little Falls Drive
Wilmington, DE 19808

29. UNIROYAL, INC. f/k/a United States Rubber Company, Inc.
*Via Louisiana Long Arm Statute*
Through Agent c/o Legal Department
70 Great Hill Road
Naugatuck, Connecticut 06770

30. REF-CHEM, LP
Through Registered Agent: Incorp Services, Inc.
3867 Plaza Tower Drive, First Floor
Baton Rouge, LA 70816

31. BAYER CROPSCIENCE, LP, successor to Rhone-Poulenc AG Co f/k/a Benjamin Foster
Company
Through their agent for service of process: Corporation Service Company
501 Louisiana Avenue
Baton Rouge, LA 70802

32. CBS CORPORATION f/k/a Viacom, Inc. f/k/a Westinghouse Electric Corporation
*Via the Louisiana Long Arm Statute*
Through Its Registered Agent: Corporation Service Company
251 Little Falls Drive
Wilmington, DE  19808

33. FOSTER WHEELER ENERGY CORPORATION
Through Agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

12

2020-03366 Case 2:22-cv-01991-CGG-JVM Document 1-1 Filed 06/29/22 Page 13 of 23

Case MDL No. 875 Document 10153-1 Filed 07/19/22 Page 2 of 29

FILED

2020 APR 28  P 02:06

CIVIL
DISTRICT COURT

**B**

**Section 5.**

34. FOSTER WHEELER LLC
Through It's Registered Agent: United Agent Group, Inc.
1070-B West Causeway Approach
Mandeville, LA 70471

35. GENERAL ELECTRIC COMPANY
Through Agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

36. RILEY POWER, INC., f/k/a Babcock Borsig Power, Inc., f/k/a D.B. Riley, Inc., a/k/a Riley
Stoker Corporation
Through its Registered Agent: CT Corporation System
3867 Plaza Tower Drive, Second Floor
Baton Rouge, LA 70816

E-Filed

**FILED**

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

2021 JUN 15 PM 12: 10

**STATE OF LOUISIANA**

CIVIL
DISTRICT COURT

NO.: 2020-03366 **DIVISION: B** **SECTION: 5**

**ORIGINAL**

**JAMES B. RENO**

**VERSUS**

**ANCO INSULATIONS, INC., ET AL.**

FILED: _____ _____

DEPUTY CLERK

## SIXTH AMENDING PETITION FOR DAMAGES

Petitioner, James B. Reno, by and through undersigned counsel, respectfully represents as follows:

CHELSEY RICHARD NAPOLEON
CLERK, CIVIL DISTRICT COURT
402 CIVIL COURTS BUILDING
421 LOYOLA AVENUE - ROOM 402
NEW ORLEANS, LA 70112
504 - 407 - 0000

1. Petitioner is an adult domiciliary of the Parish of East Baton Rouge, State of Louisiana, who resides in Baton Rouge, Louisiana.

2. The following Defendants are domestic or foreign companies licensed to do, doing or having done business in the State of Louisiana that caused injury to Petitioner, all of which are liable to Petitioner, as asserted below:

Receipt Number    880602
Register          CDC Cash Register 3
Case Number       2020 -03366

**INSULATION CONTRACTORS, PROFESSIONAL VENDORS OF INSULATION, AND THEIR INSURERS** Received  $872.50
Balance Due  $0.00

A. ANCO INSULATIONS, INC., domiciled in Louisiana $0.00

B. (*intentionally omitted*)
Payment / Transaction List
Check # 34677 $872.50

C. (*intentionally omitted*)

D. MCCARTY CORPORATION, domiciled in Louisiana   Charged    Paid    Bal

E. TAYLOR-SEIDENBACH, INC. ("Taylor-Seidenbach"), domiciled in Louisiana   Supplemental and/or $141.50  $141.50  $0.00

F. ARROWOOD INDEMNITY COMPANY, as successor to Queen Insurance Company of   JSC  $26.00  $26.00  $0.00
America and Royal Indemnity Company, AS INSURER OF ABER COMPANY,   Inter-added Defendant $141.00  $141.00  $0.00
INC., a foreign insurer domiciled in Delaware; Additional Defendant  $141.00  $141.00  $0.00

G. TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a The Aetna Casualty and Surety Company (collectively, "Travelers"), as the insurer of B&B ENGINEERING & SUPPLY COMPANY, INC. and B&B ENGINEERING & SUPPLY COMPANY OF LOUISIANA, INC. (collectively, "B&B"), a foreign insurer domiciled in Connecticut.

H. (*intentionally omitted*)

MM. MECHANICAL INSULATION, INC., domiciled in Louisiana.

**EXHIBIT**
**B**

VERIFIED

OO.     JACOBS CONSTRUCTORS, INC., f/k/a Jacobs/Wiese Constructors, Inc., f/k/a H.E. Wiese, successor-in-interest to Jacobs Constructors of California, Inc., domiciled in California.

PP.     TURNER INDUSTRIES GROUP, LLC, as successor to Nichols Construction Company, LLC, domiciled in Louisiana.

## PREMISES DEFENDANTS

I.   *(intentionally omitted)*

J.   CABOT CORPORATION (with regard to the Ville Platte, LA carbon black facility), domiciled in Delaware

K.   CF INDUSTRIES NITROGEN, LLC fka Triad Nitrogen, Inc., domiciled in Delaware

L.   CF INDUSTRIES, INC. (with regard to the Donaldsonville, LA facility), domiciled in Delaware

M.   *(intentionally omitted)*

N.   *(intentionally omitted)*

O.   *(intentionally omitted)*

P.   *(intentionally omitted)*

Q.   *(intentionally omitted)*

R.   DOW CHEMICAL COMPANY (with regard to the Plaquemine, LA facility), domiciled in Delaware

S.   *(intentionally omitted)*

T.   EXXON MOBIL CORPORATION, successor by merger to Enjay Chemical Company, Humble Oil & Refining Company, and Esso Standard Oil Company (with regard to the Exxon Refinery, Chemical, and Plastics plants in Baton Rouge, LA). Exxon is domiciled in New Jersey.

U.   *(intentionally omitted)*

V.   GEORGIA-PACIFIC CONSUMER PRODUCTS, L.P., individually and as successor-in-interest to James River Corporation f/k/a Crown Zellerbach Corporation (with regard to the Crown Zellerbach paper mill in St. Francisville, LA); Georgia-Pacific is domiciled in Delaware.

W.   HERCULES LLC f/k/a Hercules Incorporated fka Hercules Chemical Company, Inc. (with regard to the Hercules chemical plant), domiciled in Delaware

X.   HONEYWELL INTERNATIONAL INC. as successor in interest to Allied Chemical Corporation and The Solvay Process Company (with regard to the old Solvay facility and Allied Chemical's facility in Geismar, LA), domiciled in Delaware

Y.   *(intentionally omitted)*

Z.   *(intentionally omitted)*

AA.     *(intentionally omitted)*

BB.     *(intentionally omitted)*

CC.        *(intentionally omitted)*

KK.       *(intentionally omitted)*

NN.       *(intentionally omitted)*

**QQ.**       **CONTINENTAL CASUALTY COMPANY ("Continental"), as the insurer of Uniroyal, Inc. Continental is domiciled in Illinois.**

**RR.**       **UNDERWRITERS AT LLOYDS, LONDON ("Lloyds"), as the insurer of Uniroyal, Inc. Lloyds is domiciled in New York.**

**SS.**       **CHEVRON USA, INC., as successor to Gulf Oil Corporation (with regard to the Gulf Oil facility in Lake Charles, LA), domiciled in Pennsylvania.**

**OTHER CONTRACTOR DEFENDANTS**

DD.       *(intentionally omitted)*

**MANUFACTURER DEFENDANTS**

EE.  BAYER CROPSCIENCE, LP, as successor to Rhone-Poulenc AG Company f/k/a Benjamin Foster Company, domiciled in Delaware

FF. CBS CORPORATION f/k/a Viacom, Inc. f/k/a Westinghouse Electric Corporation, domiciled in Delaware

GG.       FOSTER WHEELER ENERGY CORPORATION, domiciled in Delaware

HH.       FOSTER WHEELER LLC, domiciled in Delaware

II.  GENERAL ELECTRIC COMPANY, domiciled in New York.

JJ.  RILEY POWER, INC., f/k/a Babcock Borsig Power, Inc., f/k/a D.B. Riley, Inc., a/k/a Riley Stoker Corporation, domiciled in Massachusetts

**TT.**       **CONTINENTAL CASUALTY COMPANY ("Continental"), as the insurer of Uniroyal, Inc. Continental is domiciled in Illinois.**

**UU.**       **UNDERWRITERS AT LLOYDS, LONDON ("Lloyds"), as the insurer of Uniroyal, Inc. Lloyds is domiciled in New York.**

**EMPLOYER DEFENDANTS**

LL.       MECHANICAL INSULATION, INC., domiciled in Louisiana.

3.       This action is within the jurisdiction of the Court because one or more of the Defendants named in Paragraph 2 is an Orleans Parish domiciliary or, at the relevant time, was an insurer of an Orleans Parish domiciliary, including Taylor-Seidenbach, Eagle, Travelers as the insurer of B&B, Arrowood as the insurer of Aber, and LIGA as the insurer of Gabler. *See* La. Code Civ. Proc. Ann. art. 42 (2020). Also, Orleans Parish is a proper venue because each Defendant listed in Paragraph 2 contributed to Petitioner's exposures to asbestos and subsequent contraction of an asbestos-related

disease and, therefore, each is solidarily liable to Petitioner with each of its co-Defendants. *See* LA. CODE CIV. PROC. ANN. art. 73 (2016).

**BACKGROUND**

4.      From birth in 1955 through the early 1970s, Petitioner lived with his father, Mr. Victor Reno, in their family home. Petitioner's father was a career insulator during that time frame, who worked directly with asbestos-containing materials ("ACM") and in proximity to others doing the same at the jobsites referenced in Paragraph Two's list of Premises Defendants. Unbeknown to Petitioner and his father, hazardous asbestos dust and fibers on his work clothes and person contaminated the family home, vehicle, and Petitioner's breathing zone. As a teenager, Petitioner worked directly with ACMs while in the employ of Mechanical Insulation, Inc.

5.      Before and during Petitioner's exposure period, each of the Defendants designed, tested, evaluated, manufactured, packaged, furnished, stored, handled, transported, installed, supplied or sold asbestos-containing materials ACM for use at the sites described in Paragraph 4 above, where Petitioner was exposed to ACMs.

6.      When inhaled or otherwise ingested, asbestos causes irreparable and progressive damage that can manifest itself as lung cancer, pleural disease, asbestosis, mesothelioma, pulmonary and bronchogenic carcinoma, gastrointestinal cancer, cardiac problems, other lung diseases, pneumoconiosis, and various other injuries.

7.      Each of the Defendants knew or should have known through, for example, industry and medical studies, of the health hazards inherent in the asbestos-containing products they were selling or using. Instead of warning Petitioner or his father of those hazards, which were unknown to him at the time of the work at the sites described in Paragraph 4 above, Defendants ignored this information and sold or used ACMs.

8.      As a direct and proximate result of having inhaled, ingested or otherwise been exposed to ACMs as described above, Petitioner contracted and suffers from malignant pleural mesothelioma, a signature asbestos disease. Petitioner's mesothelioma was diagnosed in or around April 2020.

9.      Because of the latency period between exposure to asbestos and the onset of cancer, Petitioner did not know, and reasonably could not have known, that his injuries were caused by his asbestos exposure until (at the earliest) less than one year prior to the filing of the instant Petition for Damages.

10. Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust that occurred in a federal enclave. Petitioner disclaims any cause of action or recovery for any injuries resulting from any exposure to asbestos dust caused by any acts or omissions of a party committed at the direction of the United States Government, its officer, or agent. Petitioner disclaims any cause of action or recovery for any injuries caused by any exposure to asbestos dust by any party not included in this Petition or its supplements or amendments.

11. All causative exposures to asbestos sustained by Petitioner occurred on or before December 1980. Petitioner did not sustain causative exposures to asbestos after November 4, 1980.

## NEGLIGENCE OF ALL DEFENDANTS

12. On information and belief, the Defendants identified in Paragraph 2 were responsible to provide Petitioner or his father with protections against the hazardous conditions at their premises or relating to their work or products, including but not limited to the following responsibilities:

A. Inspection, approval and supervision of these various premises for hazards and vices that may present a hazard to Petitioner;

B. To see that proper safety rules were adopted, promulgated, and enforced concerning the use and handling of hazardous materials that may present harm to people on the premises;

C. To see that workers performed their duties pertaining to their work in a proper, safe and workmanlike manner so as not to present an unreasonable risk of harm to the workers, as well as to Petitioner;

D. To see that the Defendants and their employees used safe and sound principles and practices in their work involving the use and storage of hazardous materials;

E. To make health and hygiene decisions on any and all questions regarding the use of respiratory protection devices involving the use and storage of hazardous materials;

F. To keep abreast of state-of-the-art knowledge, as it pertains to the dangers of asbestos inhalation, involving the use and storage of hazardous materials;

G. To provide adequate warnings, safety equipment, ventilation, and breathing apparatus, where such was necessary, in order to prevent Petitioner from being harmed by exposure to asbestos in the environment in which he was required to be present;

H. To make certain that Petitioner or his father was provided a safe environment, free from excess asbestos dust inhalation and operations free from excess asbestos dust;

I. To measure the levels of asbestos dust in the premises working environment;

J. To comply with applicable state and federal regulations regulating exposure to asbestos, including but not limited to, those regulations promulgated by the U. S. Department of Labor pursuant to the Walsh/Healy Act and the Occupational Safety and Health Act;

K. To warn Petitioner of his father of the dangers posed by the polluted atmosphere in

Case 2:22-cv-01991-GGG-JVM Document 1-2 Filed 06/29/22 Page 6 of 10

which he was required to work including, but not limited to the risk of asbestosis, pleural disease, mesothelioma, lung cancer, other cancers, and the carcinogenic effect of the risk of lung cancer caused by asbestos exposure to persons with pre-existing smoking habits from the handling and use of asbestos.

13.     Not only did Defendants have the duties and responsibilities set forth in the immediately preceding Paragraph, but they also negligently failed to meet those duties and assumed other duties in the manner asserted in the following paragraphs.

14.     Upon information and belief, Defendants knew of the dusty atmospheres in which Petitioner or his father was required to enter and work, which was damaging and dangerous to Petitioner. Each knew, or should have known, of the dangers to health posed by working in an atmosphere polluted with asbestos dust without proper protections. Petitioner alleges that Defendants knew or should have known that respiratory illness, including asbestos diseases, could have been avoided by the use of adequate ventilation, warnings, packaging and safety equipment.

15.     The negligence of Defendants was a substantial factor and contributed in causing damages to Petitioner.

**STRICT LIABILITY OF PREMISES AND EMPLOYER DEFENDANTS**

16.     Pursuant to La. Civil Code Article 2315 *et seq.*, Petitioner alleges a claim for strict liability against the Premises and Employer Defendants. These defendants failed to provide Petitioner and his father with a safe place in which to work, free from the hazards of asbestos, which failure was a proximate cause of Petitioner's injuries.

17.     The premises within which Petitioner or his father was exposed to asbestos were owned by or in the custody of these Defendants and were unreasonably dangerous due to the presence and use of ACMs without adequate precautions taken to minimize the risk of exposure. These unreasonably dangerous conditions were a direct and proximate cause of Petitioner's injuries.

18.     During the course of Petitioner's and his father's work, the ACMs that contributed to Petitioner's mesothelioma were all within the care, custody, and control of Premises and Employer Defendants, and these Defendants are, therefore, strictly liable for Petitioner's injuries pursuant to Louisiana Civil Code Articles 2317, *et seq.*

19.     These Defendants failed to properly discharge their duties to Petitioner in the following particulars:

A.      failure to provide Petitioner or his father with a safe place to work;

B.      failure to provide Petitioner or his father with adequate engineering or industrial

hygiene measures to control the level of exposure to asbestos, including but not limited to local exhaust, general ventilation, respiratory protection, segregation of work involving asbestos, use of wet methods to reduce the release of asbestos into the ambient air, medical monitoring, and air monitoring; and

C.  failure to inform or warn Petitioner or his father of the hazards of asbestos exposure.

D.  failed to provide the Petitioner or his father with safety equipment;

E.  failed to provide the Petitioner or his father with correct, adequate, or proper safety equipment;

F.  recklessly and negligently failed to disclose, warn or reveal critical medical and safety information to Petitioner or his father regarding asbestos hazards in general and with regard to those specific hazards at the work sites listed in Paragraph 2 above;

G.  negligently omitted to reveal critical medical and safety information to Petitioner or his father regarding the safety and health risks associated with the asbestos and asbestos-containing products at the worksites;

H.  failed to timely remove asbestos hazards from Petitioner's or his father's work place;

I.  failed to properly supervise or monitor Petitioner's or his father's work areas for compliance with safety regulations; and

J.  failed to provide a safe and suitable means of eliminating the amount of asbestos dust in the air of Petitioner's or his father's work place and at Petitioner's home.

20.  These specific acts of fault were a proximate cause of Petitioner's injuries.

## STRICT LIABILITY FOR MANUFACTURE, SUPPLY, USE, OR SALE OF ACMs

21.  Defendants were engaged in or materially participated in the business of manufacturing, or assisted in the manufacturing, or facilitating the manufacturing of ACMs, or representing themselves as manufacturers of ACMs, or are professional vendors of ACMs, which were expected to and did reach the Petitioner's or his father's job sites and Petitioner's home.

22.  The products manufactured, distributed, supplied, sold or used by Defendants were defective, unreasonably dangerous, and unreasonably dangerous per se to the Petitioner, who was an intended and foreseeable user and bystander that was exposed to these products. These defects include, without limitation, the following:

A.  the manufacture, sale, supply and use of products that are unreasonably dangerous, or unreasonably dangerous per se;

B.  manufacture, sale, supply and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting high potential for causing serious injury, such as respiratory disease, cancer, and other health problems to those who would be foreseeably exposed to them in the petitioner's and his

7

father's trade;

C.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal foreseeable use or intended use;

D.    lack of safety instructions or of sufficient safety instructions for eliminating or reducing the health risks associated with the intended use of these products;

E.    failure of Defendants to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

F.    failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

G.    failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of these products by intended or foreseeable users;

H.    failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

I.    defects in the composition and construction of these products;

J.    failure to recall these products manufactured, sold and supplied;

K.    failure to properly package these products so that they could be safely transported, handled, stored or disposed of; and

L.    overwarranting the safety of these products.

23.    Defendants are liable to Petitioner in strict liability for the harm caused by their ACMs.

## INSURANCE COVERAGE

24.    The following Defendants are insurance companies authorized to do and/or doing business in Louisiana and subject to the jurisdiction of this Honorable Court. These Defendants, on information and belief, at all times pertinent herein, were the liability insurers of the subject entities, and as such, are directly sued herein pursuant to the provisions of Title 22, Section 655 of the Louisiana Revised Statutes:

i.    ARROWOOD INDEMNITY COMPANY, as successor to Queen Insurance Company of America and Royal Indemnity Insurance Company, AS INSURER OF ABER COMPANY, INC.

ii.    TRAVELERS CASUALTY AND SURETY COMPANY, f/k/a The Aetna Casualty and Surety Company (collectively, "Travelers"), as the insurer of B&B ENGINEERING & SUPPLY COMPANY, INC. and B&B ENGINEERING & SUPPLY COMPANY OF LOUISIANA, INC.

iii.    (*intentionally omitted*)

iv.    (*intentionally omitted*)

v.    CONTINENTAL CASUALTY COMPANY ("Continental"), AS THE INSURER OF UNIROYAL, INC.

   vi. UNDERWRITERS AT LLOYDS, LONDON ("Lloyds"), AS THE INSURER OF
     UNIROYAL, INC.

25. Insurer Defendants, on information and belief, had in full force and effect policies of liability

insurance insuring the respective entities as identified above, against the causes of action asserted

herein and covering the premises, matters, persons, things, actions, inactions, and damages that are

the subject of this petition, and, as such, the Insurer Defendants are directly liable to Petitioner under

the provisions of the Louisiana Revised Statutes, Title 22, Section 655.

**DAMAGES**

26. All of the allegations of the above paragraphs are incorporated by reference herein.

27. By reason of the Defendants' concurrent and indivisible fault resulting in their solidary

liability, as described above, and because of the injuries to the Petitioner, he is entitled to recover for

his damages as follows:

   A. Past, present, and future physical pain and suffering;

   B. Past, present, and future mental anguish;

   C. Fear of future cancers;

   D. Past, present, and future medical expenses and rehabilitation;

   E. Past, present, and future disability;

   F. Past, present, and future loss of income;

   G. Loss of enjoyment and quality of life; and

   F. Any other losses, costs and interest that are established at the trial or that Petitioner is
     legally entitled to in this matter.

**JURY DEMAND**

Petitioner, James B. Reno, prays for a trial by jury on all issues.

  WHEREFORE, Petitioner prays that all Defendants named in this Petition for Damages be

cited to appear and answer as the law directs, and that, after due proceedings are had, Petitioner

recover of and from the Defendants individually, jointly and *in solido* for his damages as alleged, in

an amount which the evidence may show proper at the time of trial, together with costs, and legal

interest from the date of judicial demand until  paid,  and for such other and further relief, special

and general, as  law  and  equity may permit.

RESPECTFULLY SUBMITTED,

LANDRY & SWARR, LLC

MICKEY P. LANDRY, Bar No. 22817
FRANK J. SWARR, Bar No. 23322
PHILIP C. HOFFMAN, Bar No. 32277
MATTHEW C. CLARK, Bar No. 31102
1100 Poydras Street
Energy Centre – Suite 2000
New Orleans, LA 70163
Telephone: (504) 299-1214
Facsimile: (504) 299-1215
**COUNSEL FOR PETITIONER**

**PLEASE SERVE:**

1.  JACOBS CONSTRUCTORS, INC., f/k/a Jacobs/Wiese Constructors, Inc., f/k/a H.E.
    Wiese, successor-in-interest to Jacobs Constructors of California, Inc.
    CT Corporation System
    3867 Plaza Tower Drive
    Baton Rouge, LA 70816

2.  TURNER INDUSTRIES GROUP, LLC, as successor to Nichols Construction Company,
    LLC
    Through Agent: John H. Fenner, III
    8687 United Plaza Blvd.
    Baton Rouge, LA 70809

3.  CONTINENTAL CASUALTY COMPANY, as the insurer of Uniroyal, Inc.
    Through the Louisiana Secretary of State
    8585 Archives Avenue
    Baton Rouge, LA 70809

4.  UNDERWRITERS AT LLOYDS, LONDON, as the insurer of Uniroyal, Inc.
    Through the Louisiana Secretary of State
    8585 Archives Avenue
    Baton Rouge, LA 70809

5.  CHEVRON USA, INC., as successor to Gulf Oil Corporation
    The Prentice-Hall Corporation System, Inc.
    501 Louisiana Avenue
    Baton Rouge, LA 70802

**PETITIONERS COUNSEL WILL SERVE ALL REMAINING COUNSEL OF RECORD
PURSUANT TO La. C.C.P. Art. 1313.**

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO.: 2020-03366        **DIVISION: B**        **SECTION: 5**

JAMES B. RENO

**VERSUS**

ANCO INSULATIONS, INC., ET AL.

FILED: _____     _____

                                      DEPUTY CLERK

### THIRD PARTY DEMAND OF
### CERTAIN UNDERWRITERS AT LLOYD'S LONDON

     **NOW INTO COURT**, through undersigned counsel, comes Defendant, Certain Underwriters at Lloyd's London subscribing to policy/certificate nos. K71169, K71170, K71171, CU1400, CU1401, CU1402, CK1076, CK3269, K36449, K36625, K52715, K52716 (collectively "Underwriters") and pursuant to La. Code of Civil Procedure 1111, file this Third Party Demand against Uniroyal Holding, Inc., a Connecticut company.

1.

     Certain Underwriters is a collection of persons/entities who subscribed to policies of insurance issued to Uniroyal Holding, Inc. and/or its predecessors in interest at times in which Mr. James B. Reno was allegedly exposed to asbestos containing materials.

2.

     During the 1980s, 1990s, and beyond, Uniroyal Holding, Inc., Uniroyal, Inc. and other related and affiliated entities allege to be insured by Underwriters, faced liabilities arising out of their manufacture, distribution, and/or use of asbestos-containing materials.

3.

     Uniroyal entities sought coverage from Underwriters under the policies of insurance to which Underwriters subscribed. Underwriters disputed or denied liability, in whole or in part, to the Uniroyal entities.

4.

     To resolve this dispute, Uniroyal Holding, Inc., Uniroyal, Inc. and Underwriters entered into a confidential settlement agreement on or about October 4, 2001.

E-Filed

---

**EXHIBIT**
**C**

FILED

2022 JAN 28  A 11:41

CIVIL
DISTRICT COURT

5.

Pursuant to the terms of the agreement Underwriters and certain London market insurance companies issued payments to Uniroyal to resolve a dispute regarding the scope and extent of insurance coverage afforded under the subject insurance policies with respect to Uniroyal's past and future asbestos liabilities.

6.

The Uniroyal entities released all claims to insurance coverage under the subject policies with respect to certain types of asbestos-related claims.

7.

Under the terms of that agreement, Uniroyal, Inc. and Uniroyal Holding on behalf of themselves and the other Releasors acknowledged future claims would arise and expressly assumed the risk that acts, omissions, matters, causes, or things may have occurred which they do not know or do not suspect to exist.

8.

Under the terms of that agreement, Uniroyal Holding agreed to indemnify, defend, and hold harmless Underwriters in respect of "any and all claims arising under or relating to the Subject Insurance Policies, including all such claims, *whether by direct action or otherwise*, made by ... any Person who has made or could make a claim under the Subject Insurance Policies...."

9.

Plaintiffs in this action have asserted direct action claims against Underwriters, which claims are encompassed by and subject to Uniroyal Holding's indemnity obligations.

10.

On August 17, 2021, Underwriters demanded that Uniroyal Holding comply with its contract obligations to defend, indemnify, and hold harmless Underwriters against the claims asserted by Plaintiffs herein.

11.

On August 24, 2021, Uniroyal Holding rejected the demand/tender of Underwriters.

**FILED**

2022 JAN 28  A 11:41

CIVIL

DISTRICT COURT

12.

Uniroyal Holding's rejection of Underwriters' demand/tender constitutes a breach of the 2001 settlement agreement.

13.

Uniroyal Holding is obligated to reimburse Underwriters for all amounts set forth in the 2001 Settlement Agreement, including, but not limited to, reimbursement of defense costs, attorney's fees, court costs and other amounts and damages.

14.

Although Underwriters denies any and all liability to Plaintiffs, should it be found liable to Plaintiffs for claims that are encompassed within Uniroyal Holding's indemnity obligation, Underwriters is entitled to be indemnified for such liabilities under the terms of the 2001 Settlement Agreement.

**WHEREFORE,** defendant Underwriters prays that, after due proceedings are had, there be Judgement rendered in its favor against Third Party Defendant Uniroyal Holding, Inc. and that all relief due and owed unto Underwriters, including damages, indemnity, attorneys' fees, defense costs, court costs and interest be awarded, in addition to any and all other equitable relief to which it is entitled.

Respectfully submitted,

TAYLOR, WELLONS, POLITZ & DUHE, LLC

PAULA M. WELLONS, LA. BAR NO. 19028
SAMANTHA P. GRIFFIN, LA BAR NO. 26906
JONATHAN B. WOMACK, LA. BAR NO. 30801
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
sgriffin@twpdlaw.com

*Attorneys for Underwriters at Lloyd's London, as the insurer of Uniroyal, Inc. and Continental Casualty Company, as the insurer of Uniroyal, Inc.*

A TRUE COPY

DEPUTY CLERK CIVIL DISTRICT COURT
PARISH OF ORLEANS
STATE OF LA

E-Filed

3

**FILED**

2022 JAN 28  A 11:41

CIVIL

DISTRICT COURT

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all known counsel of record in this proceeding by:

( )  Hand Delivery           ( )  Prepaid U.S. Mail
(X)  Email/Facsimile         ( )  Federal Express
( )  EDLA CM/ECF System

New Orleans, Louisiana, this 28th day of January 2022.

_____
TAYLOR, WELLONS, POLITZ & DUHE, LLC

**PLEASE SERVE:**
Uniroyal Holding, Inc.
Via the Louisiana Long Arm Statute
Through its registered agent
Connecticut Secretary of State
165 Capital Avenue
Post Office Box 150470
Hartford, CT 06115-0470

And

Through its President and General Counsel
Robert V. D'Angelo, Jr.
Uniroyal Holding, Inc.
70 Great Hill Road
Naugatuck, Connecticut 06770

E-Filed

FiLED

**Civil District Court for the Parish of Orleans**
**STATE OF LOUISIANA**

2022 FEB -1 AM 10: 47

No: 2020 - 03366

Division/Section: B-05
CIVIL
DISTRICT COURT

RENO, JAMES B.
versus
ANCO INSULATIONS, INC. ET AL

Date Case Filed: 4/28/2020

NOTICE OF TRIAL

TO:

Mickey P Landry Esq      22817
1100 Poydras Street
Suite 2000
New Orleans, LA 70163

Matthew C Clark Esq      31102
1100 Poydras Street
Suite 2000
New Orleans, LA 70163

Jamie H Baglio Esq      26326
1100 Poydras Street, Suite 3200
New Orleans, LA 70163-1132

Philip C Hoffman Esq      32277
541 Julia Street
Suite 302
New Orleans, LA 70130

Milele N St Julien Esq      28446
1100 Poydras Street
Suite 3300
New Orleans, LA 70163

Paula M Wellons Esq      19028
1515 Poydras Street, Suite 1900
New Orleans, LA 70112-3767

Patrick J OCain Esq      20993
601 POYDRAS ST.
12TH FLOOR
New Orleans, LA 70130-3405

Stephen R Whalen Esq      24701
P O Box 3197
One American Place, 23rd Floor
Baton Rouge, LA 70821-3197

Arthur H Leith Esq      08435
601 Poydrast Street, 12th Floor
New Orleans, LA 70130

Dawn R Marullo Esq      28011
616 Girod St.
New Orleans, LA 70130

Division B Generated Notice of Trial emailed to Plaintiff's counsel. 1.31.2022
ASBESTOS - Case set for 10 Day Jury Trial.

PLEASE TAKE NOTICE: The above numbered and entitled cause has been fixed for trial on May 9, 2022 , at 9:00 o'clock AM, and appears  on the Docket.

New Orleans, Louisiana
January 31, 2022

_____
MINUTE CLERK

EXHIBIT
D

VERIFIED

Kasie Jiles

2022 FEB 04   P 03:03

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

FILED

2022 FEB -1  AM 10: 47

CIVIL
DISTRICT COURT

NO.   2020-03366                **DIVISION "B"**          **SECTION 5**

**JAMES RENO**

**VS**

**ANCO INSULATIONS, ET AL**

FILED: _____          _____

**DEPUTY CLERK**

# NOTICE OF TRIAL

**PLEASE TAKE NOTICE:** The above numbered and entitled case has been fixed for a **10 (TEN) day JURY** trial commencing **MAY 9TH, 2022 at 9:00AM** in New Orleans, Louisiana. The parties certify that discovery is complete and any additional discovery is by consent of both parties.

A Joint Pre-trial Outline is due ten (10) days prior to trial (a copy of which is attached and/or distributed by this division at the status conference). Two (2) copies of the Outline must be delivered to Division "B" chambers for the Judge and Law Clerk. Proposed Special Jury Charges and Jury Interrogatories must be hand-delivered to the Court via hardcopy **and** an electronic copy in Word format must be submitted to the Law Clerk (marceneaux@orleanscdc.com) at least ten (10) days prior to trial. Page Line Designations must also be submitted ten (10) days prior to trial with two (2) copies hand delivered to Division "B" chambers. Counter Page Line Designations must be submitted five (5) days prior to trial with two (2) copies hand delivered to Division "B" chambers.

NOTE: if any party requires technical services for use at trial (e.g. video display, ELMO interactive document display), that party must contact the Court's IT Department to complete the Video Service Request form. See www.orleanscdc.com or call 504-407-0380. This must be completed prior to the first day of trial.

**TAKE FURTHER NOTICE:** A Settlement Conference and/or Pre-Trial conference with the Judge can be requested by filing the appropriate pleading, prior to the trial date. A mandatory confidential position paper/quantum memo is due seventy-two (72) hours before the Settlement Conference date. Two (2) copies of the position paper/quantum memo must be delivered to Division "B" chambers for the Judge and Law Clerk.

**TAKE FURTHER NOTICE:** All motions for Summary Judgment shall be filed not less than sixty-five (65) days before trial date and heard more than thirty (30) days after filing and not less than thirty (30) days prior to trial and please review and adhere to the changes to the Summary Judgment laws. Motions to limit and/or motions to exclude expert testimony (including any Motions in Limine and Daubert motions) shall be filed not less than sixty (60) days prior to trial and heard at least thirty (30) days before trial. In addition, any motion (including joint motions) to continue trial based on incomplete discovery will not be considered. All discovery shall be completed before a trial date is selected.

**BE ADVISED:** This notice constitutes formal Notice of Trial; there will be no further notices issued. By signature of the parties below, mailing of this Notice is hereby waived pursuant to Uniform Rule 9.14, App. 8. Please mark your calendars accordingly.

_1/31/2022_____          _____

DATE SIGNED                           Ashley Wallace
                                      Minute Clerk, Division B

**_Issued January 31st, 2022 at 12:34PM_**

VERIFIED

Kasie Jiles

2022 FEB 04   P 03:03

Case 2:22-cv-91991-GGG-JVM  Document 1-E  Filed 09/20/22  Page 1 of 4

FILED

2022 MAY -9  AM 9: 01

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

CIVIL
DISTRICT COURT

NO. 2020-03366                          DIVISION: B                          SECTION 5

JAMES B. RENO

VERSUS

ANCO INSULATORS, INC. ET AL.

FILED: _____          _____
                                         DEPUTY CLERK

**MOTION AND INCORPORATED MEMORANDUM TO SEVER THIRD PARTY
DEMAND AGAINST UNIROYAL HOLDING, INC.,
FOR SEPARATE TRIAL PURSUANT TO LA CCP ARTICLE 1038**

    **NOW COMES** Defendant, Certain Underwriters at Lloyd's London, subscribing to policy/certificate nos. K71169, K71170, K71171, CU1400, CU1401, CU1402, CK1076, CK3269, K36449, K36625, K52715, K52716 (collectively "Underwriters"), who move this Court to sever Underwriters' Third Party Demand against Uniroyal Holding, Inc. for separate trial, pursuant to Louisiana Code of Civil Procedure Article 1038, for the reasons set forth herein below:

    Underwriters filed a Motion for Leave and proposed Third Party Demand, on January 28, 2022, served on all parties.  The order was signed, setting the rule for March 22, 2022, but the rule order setting the hearing date was never received by counsel for Underwriters or any of the parties. Consequently, the hearing set for March, 22, 2022 did not go forward.  The matter was refixed for hearing on April 8, 2022, and the motion for leave was granted.  Underwriters promptly circulated a proposed judgment to all parties and then to the Court, but the written judgment was not signed and filed until Friday, May 6, 2022.  Consequently, the Third Party Defendant has not yet been served or made appearance in the action.

    Although Underwriters have reached a confidential settlement with Plaintiffs, trial of the merits of the Plaintiffs' action against the remaining Defendants in the suit is set to begin on Monday, May 9, 2022, at 8:30 a.m.  Consequently, pursuant to the terms of Louisiana Code of Civil Procedure Article 1038, Underwriters hereby moves this Honorable Court to sever the Third Party Demand against Uniroyal Holding for separate, later trial.

    WHEREFORE, Underwriters pray that Underwriters' Third Party Demand against Uniroyal Holding, Inc. will be severed for separate, later trial, pursuant to Louisiana Code of Civil Procedure Article 1038.

**EXHIBIT
E**

5-9-22
VERIFIED
Barbara
Gaude

Case 2:22-cv-01991-GGG-JVM Document 1-5 Filed 06/29/22 Page 2 of 4

Respectfully submitted,

**TAYLOR, WELLONS, POLITZ & DUHE, LLC**

PAULA M. WELLONS, LA BAR NO. 19028
PAUL J. VERLANDER, LA BAR NO. 19196
SAMANTHA P. GRIFFIN, LA BAR NO. 26906
JONATHAN B. WOMACK, LA BAR NO. 30801
1555 Poydras Street, Suite 2000
New Orleans, Louisiana 70112
Telephone: (504) 525-9888
Facsimile: (504) 525-9899
sgriffin@twpdlaw.com

*Attorneys for Underwriters at Lloyd's London, as the insurer of Uniroyal, Inc. and Continental Casualty Company, as the insurer of Uniroyal, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all known counsel of record by either hand-delivery, electronic delivery, facsimile transmission, or U.S. Mail, postage prepaid, this 6th day of May, 2022.

**TAYLOR, WELLONS, POLITZ & DUHE, LLC**

2

FILED

2022 MAY -9 AM 9: 01

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-03366          DIVISION: B                    SECTION 5

JAMES B. RENO

VERSUS

ANCO INSULATORS, INC. ET AL.

FILED: _____          _____
                                          **DEPUTY CLERK**

**ORDER**

Considering Defendant Underwriters' Motion to Sever Third Party Demand against Uniroyal Holding, Inc., for Separate Trial, Pursuant to LA CCP Article 1038, for the reasons orally assigned,

IT IS ORDERED that Underwriters' Third Party Demand against Uniroyal Holding, Inc. be and is hereby severed for separate, later trial, pursuant to Louisiana Code of Civil Procedure Article 1038.

Rendered, Signed and Filed, in Open Court, at New Orleans, Louisiana, this 9th day of May, 2022.

_____
HONORABLE RACHAEL JOHNSON

VERIFIED

  
FILED

2022 MAY -9  AM 9: 01

CIVIL
DISTRICT COURT

**CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS**

**STATE OF LOUISIANA**

NO. 2020-03366                    **DIVISION: B**                    SECTION 5

**JAMES B. RENO**

**VERSUS**

**ANCO INSULATORS, INC. ET AL.**

FILED: _____    _____

                                    **DEPUTY CLERK**

**ORDER**

Considering Defendant Underwriters' Motion to Sever Third Party Demand against Uniroyal Holding, Inc., for Separate Trial, Pursuant to LA CCP Article 1038, for the reasons orally assigned,

IT IS ORDERED that Underwriters' Third Party Demand against Uniroyal Holding, Inc. be and is hereby severed for separate, later trial, pursuant to Louisiana Code of Civil Procedure Article 1038.

Rendered, Signed and Filed, in Open Court, at New Orleans, Louisiana, this 9th day of May, 2022.

_____
HONORABLE RACHAEL JOHNSON


VERIFIED
5-10-2022

**FILED**

2022 JUN 09 P 04:02

CIVIL
DISTRICT COURT

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 2020-03366                DIVISION: B                SECTION 5

JAMES B. RENO

VERSUS

ANCO INSULATORS, INC. ET AL.

FILED: _____

_____
DEPUTY CLERK

AFFIDAVIT OF LONG-ARM SERVICE

STATE OF LOUISIANA

PARISH OF ORLEANS

BEFORE ME, the undersigned notary public, came and appeared Paul J. Verlander, a

person the full age of majority, who resides in the State of Louisiana, who, after being duly sworn,

did depose and state that:

1.        He is the attorney for Certain Underwriter's at Lloyd's London in the matter entitled

*James B. Reno v. Anco Insulations, et al.* on the docket of the Civil District Court for the Parish of

Orleans, State of Louisiana; and

2.        He sent a certified copy of the Citation and Third Party Demand of Certain

Underwriters at Lloyd's London (see attached letters), properly addressed and mailed with proper

postage affixed, to **Uniroyal Holding, Inc.** through its President and General Counsel, Robert

D'Angelo, Jr., 70 Great Hill Road, Naugatuck, CT 06770, by causing same to be deposited in the

United States Mail on or about the 24th day of May, 2022, and that **Robert V. D'Angelo** did receive

the Citation and Third Party Demand of Certain Underwriters at Lloyd's London in this matter on

the 3rd day of June, 2022 (see attached green card).

_____
PAUL J. VERLANDER

SWORN TO AND SUBSCRIBED
Before me, Notary Public, this
9 day of June , 2022.
Name: _____
Notary Bar No.: 37186

**VERIFIED**

Debbie Ciaccio

2022 JUN 09 P 04:31

**EXHIBIT F**



TAYLOR
WELLONS
POLITZ & DUHE

Paul J. Verlander
pverlander@twpdlaw.com
1555 Poydras Street, Suite 2000
New Orleans, LA  70112
TWPDLAW.COM

May 24, 2022

<u>Via Certified Mail (7019 0700 0000 8810 9206)</u>
<u>Return Receipt (#9590 9402 5103 9092 7510 59)</u>

Mr. Robert V. D'Angelo, Jr.
President and General Counsel
Uniroyal Holding, Inc.
70 Great Hill Road
Naugatuck, CT 06770

Re:    *James B. Reno v. Anco Insulations, et al.*
       Civil District Court for the Parish of Orleans, State of Louisiana
       Docket No. 2020-03366, Division B, Section 05
       TWPD File No. 549-002

Dear Mr. D'Angelo:

Pursuant to the Louisiana Long Arm Statute R.S. §§13:3210-3207, you are hereby served with the enclosed certified copy of the Citation and Third Party Demand of Certain Underwriters at Lloyd's London.  Please be advised that if Uniroyal Holding, Inc. fails to answer the Third Party Demand, a judgment can be rendered against it thirty (30) days after filing in the record of an affidavit by the individual who mailed the enclosed pleadings to you.  Should you have any questions regarding any of the above, please do not hesitate to contact us.

Sincerely,

Paul J. Verlander

PJV:lo
Enclosures

NEW ORLEANS, LA
1555 Poydras Street | Suite 2000
New Orleans, LA 70112
504-525-9888 PH | 866-514-9888 TF
504-525-9899 FX

BATON ROUGE, LA
4041 Essen Lane | Suite 500
Baton Rouge, LA 70809
225-387-9888 PH | 877-850-1047 TF
225-387-9886 FX

JACKSON, MS
100 Webster Circle | Suite 104
Madison, MS 39110
769-300-2988 PH
769-300-2145 FX



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Robert V. D'Angelo
President & General Counsel
Uniroyal Holdings Inc.
70 Great Hill Rd.
Naugatuck, CT 06770

9590 9402 5103 9092 7510 59

2. Article Number (Transfer from service label)
7019 0700 0000 8810 9206

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
5/31/22

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

**USPS TRACKING #**

9590 9402 5103 9092 7510 59

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

**United States Postal Service**

Received by TWPD on

JUN 08 2022

• Sender: Please print your name, address, and ZIP+4® in this box•

Taylor, Wellons, Politz & Duhe
555 POYDRAS ST. SUITE 2000
NEW ORLEANS, LOUISIANA 70112

Attn: Paul J. Verlander

549-002   Reno

E-Filed

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CARISSA DEVALL AND CHARLES DENNIS | * | CIVIL ACTION NO. |
| *Plaintiffs* | * | |
| | * | |
| VERSUS | * | JUDGE _____ |
| | * | |
| CERTAIN UNDERWRITERS LLOYDS, LONDON | * | |
| *Defendant* | * | MAGISTRATE JUDGE _____ |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW INTO COURT, through undersigned counsel comes Complainants **CARISSA DEVALL** and **CHARLES DENNIS**, (hereinafter "Complainants"), who file their Complaint for Damages against Defendant, **CERTAIN UNDERWRITERS LLOYDS, LONDON** respectfully averring as follows:

## I.   PARTIES

### 1.

Plaintiff is **CARISSA DEVALL**, a person of the full age of majority and resident of Calcasieu Parish, Louisiana.

### 2.

Plaintiff is **CHARLES DENNIS**, a person of the full age of majority and resident of Calcasieu Parish, Louisiana.

### 3.

Made Defendant is **CERTAIN UNDERWRITERS LLOYDS, LONDON**, a foreign insurance company domiciled in the State of New York and having its principal place of

EXHIBIT G

business in New York, and authorized to do and doing business in the State of Louisiana, which may be served through its registered agent for service of process, Hon. R. Kyle Ardoin, Secretary of State of Louisiana, 8585 Archives Avenue, Baton Rouge, Louisiana, 70801.

## II.   <u>JURISDICTION AND VENUE</u>

4.

Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 and §1441 because complete diversity of citizenship exists between the parties and because the amount in controversy is greater than the minimum jurisdictional amount.

5.

Pursuant to 28 U.S.C. §1391(b), venue is proper in the Western District of Louisiana, Lake Charles Division because the property that is subject of this action and where the damages were sustained occurred within the Western District of Louisiana, Lake Charles Division.

## III.   <u>RELEVANT FACTS</u>

6.

At all times relevant hereto, Complainants own the property located at 4490 Choupique Road, Sulphur, LA 70665 (the "Property".)

7.

At all times relevant hereto, **CERTAIN UNDERWRITERS LLOYDS, LONDON** provided a policy of insurance, number **B1180D190620/136LA** (the "Policy"), covering the Property against perils including hurricanes, and provided the following types of coverages commonly known as Dwelling, Other Structures, Contents/Personal Property, and Additional Living Expenses/Loss of Use.

**A. Hurricane Laura**

8.

On or around August 27, 2020, Hurricane Laura caused significant damages to the Complainants' Property.

9.

Said loss was promptly reported to **CERTAIN UNDERWRITERS LLOYDS, LONDON**, who assigned claim number **201000048** (the "Laura Claim".)

10.

As soon as practicable, Complainants took steps to mitigate the damages to their home at their expense to the best of their ability under the circumstances.

11.

On March 1, 2021, an adjuster acting on behalf of **CERTAIN UNDERWRITERS LLOYDS, LONDON** inspected the property and documented damages to the dwelling and other structures of the Property. The adjuster was given full access to the Property and his inspection was not limited by the Complainants in any way.

12.

The inspection of the Property on behalf of **CERTAIN UNDERWRITERS LLOYDS, LONDON** constituted satisfactory proof of loss as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

13.

The inspection of the property was inadequate and did not accurately account for the full extent of the damages to the Property. Payments were issued to the Complainants based upon the inadequate inspection.

14.

Complainants were unable to make meaningful repairs to their Property with the insufficient proceeds allowed by **CERTAIN UNDERWRITERS LLOYDS, LONDON**.

**B. Hurricane Delta**

15.

On or around October 9, 2020, Hurricane Delta caused significant damages to the Complainants' Property and exacerbated damages caused by Hurricane Laura.

16.

Complainants promptly reported the loss to **CERTAIN UNDERWRITERS LLOYDS, LONDON**.

17.

As soon as practicable, Complainants took steps to mitigate the damages to their home at their expense to the best of their ability under the circumstances.

18.

**CERTAIN UNDERWRITERS LLOYDS, LONDON** was given full access to the Property and their ability to re-inspect was not limited by the Complainants in any way.

19.

The inspection of the Property on behalf of **CERTAIN UNDERWRITERS LLOYDS, LONDON** constituted satisfactory proof of loss as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

20.

The inspection of the property was inadequate and did not accurately account for the full extent of the damages to the Property.  Payments were issued to the Complainants based upon the inadequate inspection.

21.

Complainants were unable to make meaningful repairs to their Property with the insufficient proceeds allowed by **CERTAIN UNDERWRITERS LLOYDS, LONDON**.

22.

As a result of **CERTAIN UNDERWRITERS LLOYDS, LONDON'S** failure to timely and adequately compensate Complainants for their covered losses, they were forced to incur the expense of retaining counsel and other expenses to accurately document their damage.

**C. Proofs of Loss**

23.

On or about September 5, 2021, a licensed public adjuster inspected the Property on behalf of, and at the extra expense of, the Complainants and created an estimate of damages that documented significantly more damages to the dwelling and other structures than the original estimate prepared on behalf of **CERTAIN UNDERWRITERS LLOYDS, LONDON**, all of which was as a result of the Insurer's decision to inadequately adjust the claim.

24.

Multiple demands for the release of unconditional tenders were sent to **CERTAIN UNDERWRITERS LLOYDS, LONDON** along with Complainants' adjuster's estimate demonstrating the true loss, which include, but are not limited to, those of **November 2, 2021**.

25.

To date, and despite being provided with satisfactory proofs of loss, **CERTAIN UNDERWRITERS LLOYDS, LONDON** has chosen to underpay the claims.  Defendant is therefore in violation of La. R.S. §22:1892 and §22:1973.

26.

**CERTAIN UNDERWRITERS LLOYDS, LONDON** failed to explain its denial or refusal to unconditionally tender the undisputed amount owed to Complainants.

27.

**CERTAIN UNDERWRITERS LLOYDS, LONDON** failed to investigate or document their reasons for its denial or refusal to unconditionally tender the undisputed amount owed to Complainants.

28.

As a result of **CERTAIN UNDERWRITERS LLOYDS, LONDON'S** failure to timely and adequately compensate Complainants for their substantial losses, the Property remains in a state of disrepair.

29.

The failure of **CERTAIN UNDERWRITERS LLOYDS, LONDON**, as Complainants' insurer, to make an adequate and timely payment for damages sustained, despite being provided with satisfactory proof of loss, is arbitrary and capricious given Complainants' extensive damages, thereby rendering **CERTAIN UNDERWRITERS LLOYDS, LONDON** liable in bad faith for failure to deal fairly with its insured, and consequently liable to Complainants for all damages under the law for property damages sustained by Complainants due to

Hurricanes Laura and Delta, as well as penalties and attorney's fees pursuant to La. R.S. §22:1973.

30.

Upon information and belief, **CERTAIN UNDERWRITERS LLOYDS, LONDON** misrepresented to Complainants the terms and conditions of the policy.

31.

Upon information and belief, **CERTAIN UNDERWRITERS LLOYDS, LONDON** conducted the investigation and claims handling for Complainants' claims in bad faith as that term is used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973.

32.

Upon information and belief, **CERTAIN UNDERWRITERS LLOYDS, LONDON** manipulated its pricing software to artificially suppress the cost of repairs below market value.

33.

Upon information and belief, **CERTAIN UNDERWRITERS LLOYDS, LONDON** purposely or negligently failed to include adequate overhead and profit in its estimates of damages.

34.

Complainants have incurred or will incur additional expenses in restoring the Property as a result of **CERTAIN UNDERWRITERS LLOYDS, LONDON'S** failure to timely compensate them for their substantial and covered losses.

35.

Complainants have incurred and will continue to incur additional living expenses/loss of use as a result of the damages caused to their Property by Hurricanes Laura and Delta, including those additional living expenses that will be incurred during the repair of the Property.

**IV.** **CAUSES OF ACTION**

**A.** **Breach of the Insurance Contract**

36.

Complainants re-allege and re-aver the allegations contained in paragraphs 1-35, above, as if restated herein.

37.

An insurance contract, the Policy, exists between Complainants and **CERTAIN UNDERWRITERS LLOYDS, LONDON**.

38.

The Policy provides coverages for perils including hurricanes.

39.

Despite having received satisfactory proofs of loss for damages caused by Hurricanes Laura and Delta, **CERTAIN UNDERWRITERS LLOYDS, LONDON** failed to timely tender adequate insurance proceeds as required by the Policy.

40.

**CERTAIN UNDERWRITERS LLOYDS, LONDON** breached the policy when it failed to timely tender adequate insurance proceeds after having received satisfactory proofs of a

covered loss by way of the inspection completed by the adjuster on behalf of **CERTAIN UNDERWRITERS LLOYDS, LONDON**.

41.

**CERTAIN UNDERWRITERS LLOYDS, LONDON** breached the policy when it failed to timely tender adequate insurance proceeds after having received satisfactory proofs of a covered loss by way of the multiple demands submitted on behalf of Complainants.

42.

By misrepresenting the terms and conditions of the Policy, **CERTAIN UNDERWRITERS LLOYDS, LONDON** breached the Policy.

43.

By failing to conduct the claims handling for Complainants claims in good faith and with fair dealing, **CERTAIN UNDERWRITERS LLOYDS, LONDON** breached the Policy.

44.

By manipulating its pricing software to artificially suppress the cost of repairs below market value, **CERTAIN UNDERWRITERS LLOYDS, LONDON** breached the Policy.

45.

By failing to include adequate overhead and profit in its estimates of damages, **CERTAIN UNDERWRITERS LLOYDS, LONDON** breached the Policy.

46.

Complainants have suffered and continue to suffer damages as a result of these breaches of the Policy.

**B. <u>Bad Faith</u>**

47.

Complainants re-allege and re-aver the allegations contained in Paragraphs 1-46 above as if restated herein.

48.

The actions and/or inactions of **CERTAIN UNDERWRITERS LLOYDS, LONDON** in failing to timely and adequately compensate Complainants for the covered losses under the Policy were arbitrary, capricious, and without probable cause, as those terms are used in conjunction with Louisiana's bad faith statutes, La R.S. §22:1892 and §22:1973, making **CERTAIN UNDERWRITERS LLOYDS, LONDON** liable for statutory bad faith penalties.

49.

Under La. R.S. §22:1973, an insurer owes a duty of good faith and fair dealing to its insured and has an affirmative duty to adjust claims fairly and promptly.  Failing to pay a claim in a manner arbitrary, capricious or without probable cause is in violation of La. R.S. §22:1973.

50.

"[F]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause" is considered "bad faith" and is in violation of La. R.S. §22:1973.

51.

La. R.S. §22:1892 imposes bad faith penalties on insurers who fail to adequately pay claims following satisfactory proof of loss within thirty (30) days.

52.

**CERTAIN UNDERWRITERS LLOYDS, LONDON** is in violation of La. R.S. §22:1973 and §22:1892 for failing to provide Complainants adequate payment in connection with their claim despite having received satisfactory proofs of loss following its own inspections of the Property and following its receipt of independent proofs of loss from Complainants.

53.

**CERTAIN UNDERWRITERS LLOYDS, LONDON'S** misrepresentation of the relevant facts and/or terms of the Policy was in bad faith.

54.

**CERTAIN UNDERWRITERS LLOYDS, LONDON'S** failure to pay timely for damages it knew, or should have known, existed at the time of the initial adjustment of the relevant claims was in bad faith.

55.

**CERTAIN UNDERWRITERS LLOYDS, LONDON'S** failure to pay timely for damages it knew or should have known existed at the time it received the independent proofs of loss from Complainants was in bad faith.

56.

**CERTAIN UNDERWRITERS LLOYDS, LONDON'S** manipulation of its pricing software to artificially suppress the cost of repairs below market value was in bad faith.

57.

**CERTAIN UNDERWRITERS LLOYDS, LONDON'S** failure to include adequate overhead and profit in its estimates of damages was in bad faith.

58.

**CERTAIN UNDERWRITERS LLOYDS, LONDON'S** handling of Complainant's claims was in bad faith.

**V.** **DAMAGES**

59.

Complainants re-allege and re-aver the allegations contained in Paragraphs 1-58 above as if restated herein.

60.

As a result of **CERTAIN UNDERWRITERS LLOYDS, LONDON'S** breaches of contract, bad faith claims adjusting, and other bad acts, Complainants have incurred the following, non-exclusive damages:

   a. Diminution in value of the Property;

   b. Actual repair costs;

   c. Reimbursement for personal repairs at the Property;

   d. Actual costs related to personal property manipulation, cleaning, repair, and/or replacement;

   e. Damages to personal property/contents;

   f. Additional living/loss of use expenses;

   g. Mental anguish;

   h. Penalties delineated in La. R.S. §22:1892 and §22:1973; and

   i. Attorney's fees, other professional fees, and litigation costs associated with the bringing of this action.

WHEREFORE, Complainants, **CARISSA DEVALL** and **CHARLES DENNIS**, pray that Defendant, **CERTAIN UNDERWRITERS LLOYDS, LONDON**, be served with a copy of this Complaint and be duly cited to appear and answer the allegations contained therein, and that after expiration of all legal delays and proper legal proceedings, there by a judgment entered in favor of Complainants and against **CERTAIN UNDERWRITERS LLOYDS, LONDON** in an amount that will fully and fairly compensate Complainants pursuant to the evidence and in accordance with the law, all sums with legal interest thereon, from the date of judicial demand until fully paid, for all costs of these proceedings, and for all general and equitable relief.

COMPLAINANTS FURTHER PRAY for all orders and decrees necessary in the premises, and for full, general and equitable relief.

Respectfully submitted:

*s/ J. Lee Hoffoss, Jr.*
J. LEE HOFFOSS, JR. (29254)
Email: lee@hdinjurylaw.com
DONALD W. MCKNIGHT (10042)
Email: don@hdinjurylaw.com
D. COOPER FOURNET (34549)
Email: cooper@hdinjurylaw.com
MAX E. GUTHRIE (32487)
Email: max@hdinjurylaw.com
517 West College Street
Lake Charles, Louisiana 70605
Telephone:    (337) 433-2053
Facsimile:    (337) 433-2055

COUNSEL FOR PLAINTIFFS, CARISSA DEVALL
AND CHARLES DENNIS

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CARISSA DEVALL AND CHARLES DENNIS** | * | **CIVIL ACTION NO. 22-00067** |
| *Plaintiffs* | * | |
| | * | |
| **VERSUS** | * | **JUDGE: JDC** |
| | * | |
| | * | |
| **CERTAIN UNDERWRITERS LLOYDS, LONDON** | * | **MAGISTRATE: KK** |
| | * | |
| *Defendant* | * | |

\*   \*   \*   \*   \*   \*   \*   \*

## ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Certain Underwriters at Lloyd's London Subscribing to Policy No. B1180D190620/136LA (incorrectly named "Certain Underwriters Lloyds, London"), hereinafter referred to as "Lloyd's" or "Defendant," and submits its Answer and Affirmative Defenses to the *Complaint* filed by Plaintiffs, Carissa Devall and Charles Dennis ("Plaintiffs").

## AFFIRMATIVE DEFENSES

Defendant pleads all of the affirmative defenses available to it pursuant to the Louisiana Code of Civil Procedure Article 1005 including, but not limited to, the following non-exclusive affirmative defenses.

## FIRST DEFENSE

Defendant denies the allegations of any unnumbered or misnumbered paragraphs and any allegations contained in the Complaint, which have not heretofore been addressed, as well as those allegations contained in the prayer for relief.

1

**SECOND DEFENSE**

At all times pertinent hereto, Defendant and/or its agents have acted reasonably and in good faith in the investigation and handling of the Plaintiffs' claim, and at no time has Defendant and/or its agents acted arbitrarily or capriciously or without probable cause.

**THIRD DEFENSE**

Defendant breached no contractual obligation owed to Plaintiffs or any other party.

**FOURTH DEFENSE**

Defendant violated no legal duty owed to Plaintiffs.

**FIFTH DEFENSE**

Plaintiffs' claims are precluded or limited by the terms, conditions, exclusions, deductibles, and limitations in the Policy.

**SIXTH DEFENSE**

A timely and thorough inspection by Defendant, or its agents, of the Property at issue and the damage claimed by Plaintiffs revealed that the portions of the damage claimed, upon which this lawsuit is based, may be excluded under the Policy provisions below.

**SEVENTH DEFENSE**

The following Policy Provisions apply and exclude coverage for Plaintiffs' property damage claim, which forms the basis of this lawsuit:

**<u>HOMEOWNERS DECLARATION PAGE</u>**

This Declaration Page is attached to and forms part of the certificate provisions

…

6.    **Sums Insured:**             USD 560, 320 each and every occurrence

**Section I**

| | | |
|---|---|---|
| Coverage A: | Dwelling | USD 560,320 |
| Coverage B: | Other Structures | USD Excluded |
| Coverage C: | Personal Property | USD Excluded |
| Coverage D: | Loss of Use | USD Excluded |

…

**Deductibles**

| | |
|---|---|
| All Other Perils Deductibles | USD 5,000 each and every occurrence |
| Named Windstorm or Hail Coverage A Deductible | 2% each and every occurrence calculated on |

…

# HOMEOWNERS 3 – SPECIAL FORM

…

## SECTION I – PROPERTY COVERAGES

…

### B. Coverage B – Other Structures

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

…

## SECTIONS I AND II – CONDITIONS

…

### E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

…

3

## EXISTING DAMAGE EXCLUSION ENDORSEMENT

## APPLIES TO ALL FORMS

**EXCLUSIONS**

The following exclusions are added under
**Section I – Exclusions**
in Forms **HO 00 03, HO 00 04, HO 00 05** and **HO 00 06**, and
**Exclusions**
in Forms **DP 00 01** and **DP 00 03** only.

**Existing Damage**

We do not insure for loss caused directly or indirectly by existing damage. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects as substantial area.

Existing Damage means:

a)  Any damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or at a later date;
b)  Any claims or damages arising out of workmanship, repairs and or lack of repairs arising from damage which occurred prior to policy inception; or
c)  Any claims or damages unless all structures covered by your previous policy have been fully and completely repaired. Prior to such completion of repairs, coverage will be limited to the actual cash value of the property at the time of a covered loss occurring during the policy period.

All other provisions of this policy apply.

## EIGHTH DEFENSE

Defendant timely inspected and adjusted the claim made by Plaintiffs as a result of damage sustained to the Property at issue in Hurricane Laura and Hurricane Delta under the Policy.

4

## NINTH DEFENSE

The policy issued by Certain Underwriters at Lloyd's – Lloyd's of London to the Harold and Maurine Rhodes bearing Policy No. B1180D190620/136LA (the "Policy"), being a written document, is the best evidence of its terms, conditions, endorsements, and exclusions. The policy B1180D190620/136LA is pled in its entirety, and attached hereto as ***Exhibit "A."***

## TENTH DEFENSE

Lloyd's affirmatively asserts that any further liability it may have under the Policy, which liability is expressly denied, is subject to the limits of insurance coverage contained in the Policy. Lloyd's has no liability exceeding the limits of coverage set forth in the terms of the Policy.

## ELEVENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that evidence relevant to this dispute was lost, spoliated, suppressed, or otherwise not preserved as required by Louisiana law.

## TWELFTH DEFENSE

Plaintiffs have no right of action against Lloyd's as the Policy was issued to Harold and Maurine Rhodes and the loss events upon which Plaintiffs' complaint is based occurred more than six months prior to the sale of the Property at issue to Plaintiffs.

## THIRTEENTH DEFENSE

In the further alternative, Defendant alleges and avers that the Plaintiffs have or may have failed to mitigate their alleged damages, and recovery herein is defeated or mitigated.

## FOURTEENTH DEFENSE

Plaintiffs' counsel's proof of loss submission substantially exceeded prior estimates and/or proofs of loss and contained damage unrelated to that sustained in Hurricane Laura and

Hurricane Delta and/or was not visible upon inspection.

## FIFTEENTH DEFENSE

The cause of the incident was due to superseding and/or intervening acts over which Lloyd's had no control and for which Lloyd's cannot be liable.

## SIXTEENTH DEFENSE

In the further alternative, in the event Defendant is found liable for any loss or expense, which is specifically denied, any mortgagee named in the Policy or any successor mortgagees must be included in any payment.

## SEVENTEENTH DEFENSE

Defendant further avers that the Plaintiffs have or may have failed to submit timely and adequate proof of loss for the claims asserted in accordance with the terms, conditions and limitations of the subject policy as well as La. R.S. 22:1264.

## EIGHTEENTH DEFENSE

Plaintiffs have no cause of action and/or no right of action against Defendant.

## NINETEENTH DEFENSE

Any rights under this policy were improperly assigned to Plaintiff Carissa Devall and Plaintiff Charles Dennis by Harold and Maurine Rhodes.

## TWENTIETH DEFENSE

Defendant reserves the right to supplement and/or amend these pleadings as necessary, including, but not limited to, the right to raise any additional affirmative defenses, which may be uncovered in the course of discovery, which has yet to begin.

**AND NOW**, without waiving any of the foregoing defenses, Defendant answers the allegations of the Complaint, categorically and by paragraph:

1.

The allegations contained in Paragraph 1 are denied for lack of information sufficient to justify a belief therein.

2.

The allegations contained in Paragraph 2 are denied for lack of information sufficient to justify a belief therein.

3.

Defendant, Certain Underwriters at Lloyd's London Subscribing to Policy No. B1180D190620/136LA, denies Paragraph 3 as written, as it contains legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied for lack of information sufficient to justify a belief therein. Further, Defendant is an approved, unauthorized surplus lines carriers doing business in the State of Louisiana. Any and all connotations of liability contained therein are denied.

4.

The allegations in Paragraph 4 contain legal conclusions for which no answer is required. To the extent that a response is required, the allegations are denied.

5.

The allegations in Paragraph 5 contain legal conclusions for which no answer is required. To the extent that a response is required, the allegations are denied.

6.

The allegations contained in Paragraph 6 are denied. Plaintiffs did not purchase the Property at issue until April 22, 2021. *See Exhibit B, attached hereto.*

7.

Defendant denies the allegations in Paragraph 7 to the extent that it presumes liability. The allegations contained in Paragraph 7 are admitted to the extent Defendant issued a policy of insurance to Harold and Maurine Rhodes, Policy No. B1180D190620/136LA, to insure the property located at 4490 Choupique Road, Sulphur, LA 70665, effective from October 21, 2019 through October 21, 2020, which is the best evidence of its terms and conditions. Defendant denies any remaining allegations contained in Paragraph 7.

8.

The allegations in Paragraph 8 are denied as written.

9.

Defendant denies the allegations in Paragraph 9 to the extent that it presumes liability. The allegations contained in Paragraph 9 are admitted only to the extent that Plaintiffs made a claim under Policy No. B1180D190620/136LA with claim number 201000048.

10.

The allegations in Paragraph 10 contain legal conclusions for which no answer is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied. Plaintiffs did not purchase the Property at issue until April 22, 2021. *See Exhibit B, attached hereto.*

11.

The allegations contained in Paragraph 11 are denied as written.

12.

The allegations in Paragraph 12 contain legal conclusions for which no answer is required and further call for technical/scientific expert opinion. To the extent that a response is

8

required, the allegations are denied.

13.

The allegations contained in Paragraph 13 are denied.

14.

The allegations contained in Paragraph 14 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

15.

The allegations contained in Paragraph 15 are denied.

16.

The allegations contained in Paragraph 16 are denied. Further, Plaintiffs did not purchase the Property at issue until April 22, 2021. *See Exhibit B, attached hereto.*

17.

The allegations contained in Paragraph 17 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied. Further, Plaintiffs did not purchase the Property at issue until April 22, 2021. *See Exhibit B, attached hereto.*

18.

The allegations contained in Paragraph 18 are admitted only to the extent that Lloyd's was able to coordinate and conduct an inspection of the Property. All other allegations contained in Paragraph 18 are denied.

19.

The allegations contained in Paragraph 19 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied for lack of

information sufficient to justify a belief therein.

20.

The allegations contained in Paragraph 20 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied for lack of information sufficient to justify a belief therein.

21.

The allegations contained in Paragraph 21 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

22.

The allegations contained in Paragraph 22 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

23.

The allegations contained in Paragraph 23 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied.

24.

The allegations contained in Paragraph 24 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied.

25.

The allegations contained in Paragraph 25 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

26.

The allegations contained in Paragraph 26 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

27.

The allegations contained in Paragraph 27 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

28.

The allegations contained in Paragraph 28 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

29.

The allegations contained in Paragraph 29 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied.

30.

The allegations contained in Paragraph 30 are denied.

31.

The allegations contained in Paragraph 31 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

32.

The allegations contained in Paragraph 32 are denied.

33.

The allegations contained in Paragraph 33 are denied.

34.

The allegations contained in Paragraph 34 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

35.

The allegations contained in Paragraph 35 are denied for lack of information sufficient to justify a belief therein.

36.

The admissions and denials of Paragraphs 1-35 of the Answer are repeated with the same force and effect as if set forth at length herein. Any remaining allegations contained in Paragraph 36 are denied.

37.

Defendant denies the allegations in Paragraph 37 to the extent that it presumes liability and legal assignment of the Policy. Defendant further responds that it issued a policy of insurance to Harold and Maurine Rhodes, Policy No. B1180D190620/136LA, to insure the property located at 4490 Choupique Road, Sulphur, LA 70665, effective from October 21, 2019 through October 21, 2020, which is the best evidence of its terms and conditions. Defendant denies any remaining allegations contained in Paragraph 37.

38.

Defendant denies the allegations in Paragraph 38 as written and to the extent that it presumes liability. The allegations contained in Paragraph 38 are admitted to the extent Defendant issued a policy of insurance to Harold and Maurine Rhodes, Policy No. B1180D190620/136LA, to insure the property located at 4490 Choupique Road, Sulphur, LA 70665, effective from October 21, 2019 through October 21, 2020, which is the best evidence of

12

its terms and conditions. Defendant denies any remaining allegations contained in Paragraph 38.

39.

The allegations contained in Paragraph 39 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied.

40.

The allegations contained in Paragraph 40 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

41.

The allegations contained in Paragraph 41 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied.

42.

The allegations contained in Paragraph 42 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

43.

The allegations contained in Paragraph 43 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

44.

The allegations contained in Paragraph 44 are denied.

45.

The allegations contained in Paragraph 45 are denied.

46.

The allegations contained in Paragraph 46 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

47.

The admissions and denials of Paragraphs 1-46 of the Answer are repeated with the same force and effect as if set forth at length herein. Any remaining allegations contained in Paragraph 47 are denied.

48.

The allegations contained in Paragraph 48 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

49.

The allegations contained in Paragraph 49 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

50.

The allegations contained in Paragraph 50 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

51.

The allegations contained in Paragraph 51 contain legal conclusions to which no response is required. Further, Defendant asserts that Plaintiffs mischaracterize the wording of La. R.S.22:1892. To the extent that a response is required, the allegations are denied.

52.

The allegations contained in Paragraph 52 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. Further, Defendant asserts that

14

Plaintiffs mischaracterize the wording of La. R.S.22:1892 and La. R.S. 22:1973. To the extent that a response is required, the allegations are denied.

53.

The allegations contained in Paragraph 53 are denied.

54.

The allegations contained in Paragraph 54 contain legal conclusions to which no response is required. To the extent that a response is required, the allegations are denied.

55.

The allegations contained in Paragraph 55 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations are denied.

56.

The allegations contained in Paragraph 56 are denied.

57.

The allegations contained in Paragraph 57 are denied.

58.

The allegations contained in Paragraph 58 are denied.

59.

The admissions and denials of Paragraphs 1-58 of the Answer are repeated with the same force and effect as if set forth at length herein. Any remaining allegations contained in Paragraph 59 are denied.

15

60.

The allegations contained in Paragraph 60 contain legal conclusions to which no response is required and further call for technical/scientific expert opinion. To the extent that a response is required, the allegations contained in Paragraph 60 and all subparts therein are denied.

61.

The allegations contained in the paragraph beginning with "WHEREFORE...," all subparts therein, and any unnumbered paragraphs are denied.

## **JURY DEMAND**

Defendant prays for and is entitled to a trial by jury on all issues herein.

**WHEREFORE**, the premises considered, Defendant, Certain Underwriters at Lloyd's London Subscribing to Policy No. B1180D190620/136LA (incorrectly named "Certain Underwriters Lloyds, London"), prays that this its Answer to the Complaint of Plaintiffs, Carissa Devall and Charles Dennis, be deemed good and sufficient, and that after due proceedings are had, there be judgment herein in favor of Defendant and against the Plaintiffs, dismissing the Plaintiffs' suit at Plaintiffs' cost, and that Defendant be granted such other and further relief as equity and the justice of cause may require and permit.

Respectfully submitted,

*/s/ Jennifer R. Buckingham*

_____
**RICHARD G. DUPLANTIER, JR. (#18874)**
**JENNIFER R. BUCKINGHAM (#33636)**
**HENRY M. WEBER (#35374)**
**GALLOWAY, JOHNSON, TOMPKINS,**
     **BURR & SMITH**
701 Poydras Street, 40th Floor
New Orleans, Louisiana 70139
Telephone:    (504) 525-6802
Facsimile:    (504) 525-2456
*Counsel for Defendant,*
*Certain Underwriters at Lloyd's London Subscribing to*
*Policy No. B1180D190620/136LA*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 9th day of March, 2022, undersigned electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to all counsel of record.

*/s/ Jennifer R. Buckingham*

_____
**JENNIFER R. BUCKINGHAM**

17